Richard Heimann (CA State Bar # 063607)
Nimish R. Desai (CA State Bar # 244953)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery St., 29th Fl
San Francisco, CA 94111-3339
Telephone: 415-956-1000
Facsimile: 415-956-1008
rheimann@lchb.com
ndesai@lchb.com

David S. Stellings (*pro hac vice forthcoming*)
Katherine I. McBride (*pro hac vice forthcoming*)
Jessica A. Moldovan (*pro hac vice forthcoming*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: 212.355.9500
Facsimile: 212.355.9592
dstellings@lchb.com
kmcbride@lchb.com
jmoldovan@lchb.com

*Attorneys for Plaintiffs*

*[Additional counsel listed on signature page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Eloise Ackiss, et al., | Case No. 4:21-cv-06338-JST |
| Plaintiffs, | **AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| GENERAL MOTORS LLC, et al., | **JURY TRIAL DEMANDED** |
| Defendant. | |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................. 1

II. PARTIES ............................................................................................................. 3

    A. Plaintiffs ..................................................................................................... 3

    B. Defendants ................................................................................................ 37

III. JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT ........................ 38

IV. GENERAL FACTUAL ALLEGATIONS ................................................................. 38

    A. SDMs are supposed to detect crashes and control airbags and seatbelts. ............. 38

    B. GM used a dangerous and defective SDM software calibration in its trucks and SUVs. ................................................................................................ 41

    C. GM knew that the SDM Calibration Defect was dangerous and unjustified but has failed to warn or compensate consumers. ......................................... 44

        1. Old GM recklessly downplayed serious risks of injury when it chose to include the SDM Calibration Defect in the Class Vehicles. ........ 45

        2. The 45-millisecond cutoff was not necessary to protect against "late" airbag deployments. ................................................................ 47

        3. GM knew about a pattern of suspicious accidents involving the SDM Calibration Defect but has done nothing to correct it. .................... 49

            a. GM has litigated personal injury lawsuits for suspicious airbag failures in the Class Vehicles. ........................................... 50

            b. GM knew or should have known about hundreds of publicly reported airbag failures in the Class Vehicles. ............................... 53

    D. Despite its knowledge, GM misrepresented and concealed important information about the SDM Calibration Defect and Class Vehicle safety. .......... 72

        1. Labels and window stickers on the Class Vehicles stated that they were equipped with working airbags and seatbelts and failed to disclose the SDM Calibration Defect. ........................................................ 73

        2. GM published owners' manuals for the Class Vehicles that detailed their safety features but did not disclose the SDM Calibration Defect. ............................................................................................ 76

        3. GM marketed the Class Vehicles to be safe and reliable but failed to mention the SDM Calibration Defect. ........................................... 79

        4. Defendants provided warranties to repair defects in the Class Vehicles and have not done so. ......................................................... 83

V. CLASS ACTION ALLEGATIONS ....................................................................... 84

    A. The Class Definition ................................................................................. 84

    B. Numerosity: Federal Rule of Civil Procedure 23(a)(1) ................................ 85

    C. Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3) ............................................................................................ 86

    D. Typicality: Federal Rule of Civil Procedure 23(a)(3) ................................. 87

    E. Adequacy: Federal Rule of Civil Procedure 23(a)(4) ................................. 87

**TABLE OF CONTENTS**
(continued)

Page

F.     Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2)...... 87

G.     Superiority: Federal Rule of Civil Procedure 23(b)(3) ........................................ 88

VI.    ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED........................... 88

VII.   CAUSES OF ACTION ................................................................................................ 89

A.     Claims Asserted on Behalf of the Nationwide Class ............................... 89

B.     State-Specific Claims ................................................................................ 92

1.     Alabama ......................................................................... 92
2.     Alaska............................................................................ 97
3.     Arkansas ...................................................................... 102
4.     California ..................................................................... 107
5.     Colorado ...................................................................... 119
6.     Delaware ...................................................................... 124
7.     Florida ......................................................................... 129
8.     Georgia ........................................................................ 134
9.     Idaho............................................................................ 141
10.    Illinois ......................................................................... 146
11.    Indiana ......................................................................... 151
12.    Kansas ......................................................................... 155
13.    Louisiana ..................................................................... 160
14.    Maryland ..................................................................... 164
15.    Michigan ...................................................................... 169
16.    Minnesota .................................................................... 175
17.    Mississippi .................................................................. 182
18.    Missouri ....................................................................... 187
19.    Nevada ......................................................................... 192
20.    New Jersey ................................................................... 197
21.    New York ..................................................................... 202
22.    North Carolina............................................................. 208
23.    Ohio.............................................................................. 213
24.    Oklahoma ..................................................................... 221
25.    Oregon ......................................................................... 226
26.    Pennsylvania ............................................................... 230
27.    South Carolina............................................................. 235
28.    Tennessee ..................................................................... 241
29.    Texas ............................................................................ 246

**TABLE OF CONTENTS**
**(continued)**

                                                                                                Page

             30.    Utah...........................................................................................................252
             31.    Virginia .....................................................................................................256
             32.    Washington ................................................................................................261
             33.    West Virginia ............................................................................................268
             34.    Wisconsin ..................................................................................................274
VIII.    PRAYER FOR RELIEF...............................................................................................279
IX.      DEMAND FOR JURY TRIAL......................................................................................280

1    Plaintiffs, individually and on behalf of all others similarly situated (the "Class" or

2  "Classes"), allege the following against General Motors LLC, General Motors Holdings LLC, and

3  General Motors Company (collectively, "Defendants," "GM," or "New GM") based, where

4  applicable, on personal knowledge, information and belief, and the pre-filing investigation of

5  counsel and their experts.  Plaintiffs file this Amended Complaint as a matter of course, as no

6  responsive pleading or Rule 12 motion has been served. *See* Fed. R. Civ. P. 15(a)(1)(B).

7  **I.    INTRODUCTION**

8    1.    Car crashes kill or seriously injure hundreds of thousands of people every year.

9  Because of this risk, the federal government requires automobile manufacturers to include critical

10 safety features—seatbelts and airbags—in all vehicles sold in the United States. This life-saving

11 equipment has been mandatory in passenger vehicles since 1997. *See* 49 U.S.C. § 30127.

12   2.    This case involves a dangerous defect that compromises these critical safety

13 systems in millions of GM trucks and SUVs. When working properly, during a frontal crash of

14 sufficient severity, the seatbelts should tighten to hold the vehicle occupants in place, and the

15 airbags should inflate to protect them from hard impacts.  A defect in GM trucks and SUVs,

16 however, can prevent seatbelt tightening and airbag deployment during certain types of crashes,

17 leaving vehicle occupants without protection exactly when they need it most.

18   3.    The defect is contained in the vehicles' airbag control unit, which is referred to by

19 GM and herein as an "SDM" or "Sensing and Diagnostic Module." The defect itself is referred to

20 herein as the "SDM Calibration Defect."

21   4.    The SDM is a small computer connected to sensors placed throughout the vehicle.

22 These sensors tell the SDM when they detect irregular behavior and, based on these signals, the

23 SDM will fire the airbags and tighten seatbelts when needed in a crash.

24   5.    In the Class Vehicles, GM calibrated the software program that controls the SDM

25 to prevent airbag and seatbelt deployment just 45 milliseconds after a crash has begun.[1] This has

26

27 ─────────────────────
[1] The "Class Vehicles" include all vehicles in the United States that contain the SDM Calibration
Defect that were (1) manufactured, sold, distributed, or leased by Defendants or (2)

28 manufactured, sold, distributed, or leased by Old GM and purchased or leased by Plaintiffs or a
Class member after July 10, 2009.

1  serious repercussions in real-world accidents that last longer than 45 milliseconds—such as

2  accidents that involve multiple impacts, or that increase in severity over a period of time—in

3  which the airbags and seatbelts in the Class Vehicles can fail.

4       6.    GM made the decision to prematurely close the window for airbag deployment in

5  the Class Vehicles in the late 1990s, overriding the concerns of a team from Delphi (then

6  operating as Delco Electronics).  A team of software engineers from Delco—which designed the

7  SDM software program in the Class Vehicles—expressly warned Old GM in 1999 that preventing

8  airbag and seatbelt deployment after 45 milliseconds was a reckless and dangerous design

9  decision.[2] Old GM's trucks group, which was in charge of design and development for trucks and

10  SUVs, ignored this warning and insisted on using a defective SDM calibration that shuts off the

11  airbags after 45 milliseconds. Tellingly, a separate team in charge of design and development for

12  GM cars rejected this approach after hearing the Delco team's concerns and included a much

13  longer window (150 milliseconds) for the airbags and seatbelts to deploy in a crash for the

14  vehicles they designed.

15       7.    When it was formed in 2009, General Motors, LLC ("GM LLC") acquired books,

16  records, and personnel from Old GM that reflected this reckless decision to use the dangerous

17  SDM calibration in its trucks and SUVs. Despite this acquired knowledge, GM continued to use

18  Delco SDMs in its vehicles and, on information and belief, continued to use the defective

19  calibration associated with those Delco SDMs as well.

20       8.    Since it was formed, GM has continued to gain knowledge of the defect through

21  individual lawsuits, consumer complaints, and its own investigations into serious crashes where

22  the airbags and seatbelts failed to deploy in the Class Vehicles. As an example, documents in a

23  personal-injury lawsuit filed against GM LLC in 2011 describe the defect in detail and relate Old

24  GM's reckless decision to use it. *See* § IV.C.3.a, infra.

25       9.    Further, publicly available consumer complaints to the National Highway Traffic

26  and Safety Administration ("NHTSA") detail more than eight hundred instances where the

27

28  [2] As detailed further below, Old GM filed for bankruptcy in 2009, which led to the creation of the contemporary GM entities named as Defendants herein.

airbags and/or seatbelts suspiciously failed in the Class Vehicles during frontal crashes. Many of these reports specifically state that GM knew about and investigated the crash after the reported airbag failures. A separate NHTSA dataset indicates that, from 1999 to the present, at least 1,298 people were killed or injured in a frontal collision in which the airbags did not deploy in one of these vehicles. *See* IV.C.3.b, infra.

10. Despite its knowledge of the defect and its impact on safety, GM has concealed the defect and failed to recall or repair the Class Vehicles, presumably to avoid the significant costs and inconveniences of recalling millions of vehicles. GM has hidden the defect despite its obligation to disclose it, misrepresented the Class Vehicles to be safe, and continued to sell them to consumers.

11. Because of GM's failure to disclose the truth, consumers continue to purchase and drive Class Vehicles with the SDM Calibration Defect every day—on road trips, commutes, and weekend errands alike—unaware that their airbags and seatbelts may not operate in a prolonged frontal crash. This lawsuit seeks redress from GM for the damages incurred when Plaintiffs and proposed Class members paid for vehicles with a safety system that may fail them in life-threatening collisions.

## II.   PARTIES

### A.   Plaintiffs

12. For ease of reference, the following chart identifies the representative Plaintiffs and the state(s) in which they reside and purchased their Class Vehicles:

| Representative Plaintiff | State of Purchase/Lease | State of Residence |
|---|---|---|
| Eloise Ackiss | GA | GA |
| Rachel Bailey | MI | MI |
| Richard Baker | MD | MD |
| Kerry Batman | KS | KS |
| Ric Batten | TX | TX |
| George Bayer | MI | MI |
| Jerome Blatt | IN | MN |
| Ira Bondsteel | TX | TX |
| Adam Brown | NY | NY |

| Representative Plaintiff | State of Purchase/Lease | State of Residence |
|---|---|---|
| David Casey | NC | NC |
| Christina Colatriano | DE | DE |
| Delbert Dehne | IL | IL |
| Ashley Dheel | WA | WA |
| Travis Dieter | ID | ID |
| Greg Douthwaite | WI | WI |
| Ed Driggers, Jr. | GA | GA |
| Stephen Duncan | AK | AR |
| Douglas Dye | VA | VA |
| William Endress | PA | NJ |
| Lee Ford | NJ | NJ |
| William Free | FL | FL |
| Lisa Gerould | SC | SC |
| Alisha Gonzalez | MI | MI |
| Harryette Gosa | MS | MS |
| Rex Hartman | PA | PA |
| Judy Haviland | MI | MI |
| Bruce Heise | PA | PA |
| Zeckery Henslee | MI | MI |
| John Hickey | WV | WV |
| Kimberly Hickle | MN | MN |
| Randy Holdren | IL | FL |
| Kevin Hopkins | NV | NV |
| Kara Hummel | WA | WA |
| Aaron Jackson | AL | AL |
| David James | IN | IN |
| Gregory Juskiewicz | OH | OH |
| ShaVon Keith | NV | GA |
| Jason Klinger | NC | NC |
| Debra Knerr | VA | TN |
| Clarise Knight | FL | FL |
| Andrew Lawson | SC | SC |
| Eric Leeds | VA | NJ |
| Toni Lowe | FL | FL |
| Stephen Loyd | TN | AL |
| Angelica Mar | IL | IL |
| Allan Martin | LA | LA |
| Michael Merkley | ID | ID |
| Allan Miles | MS | MS |
| Stephen Miles | OR | OR |

| Representative Plaintiff | State of Purchase/Lease | State of Residence |
|---|---|---|
| James Milstead | CA | CA |
| Ira Nash | VA | VA |
| Patrick O'Connor | NY | NY |
| Jorge L. Orihuela | NJ | NJ |
| Gary Owens | TN | TN |
| Larry Paetzold | TX | TX |
| Ramiro Pereda | CA | CA |
| Delana Petersen | UT | UT |
| Frank Pignone | NY | NY |
| Dolly Price | MO | KS |
| Michael Romania | PA | PA |
| Donald Roxberry | OK | OK |
| Lakiesha Shears | CO | CO |
| David Stalcup | AR | AR |
| Larry Swafford | GA | GA |
| Brian Swann | OH | AL |
| Joseph Sweat | GA | GA |
| David Taylor | AL | AL |
| Walter Tooson | OH | OH |
| Richard Vargas | CA | CA |
| Warren Whitsey | IN | IN |
| Denise Wilson | MS | MS |
| Carl Wurmlinger | MI | MI |

13. Plaintiff Eloise Ackiss ("Plaintiff" for the purposes of this paragraph) is an individual residing in Ellaville, GA. In or around summer 2015, Plaintiff purchased a pre-owned 2010 GMC Terrain SLE (for purposes of Plaintiff's allegations, the "Class Vehicle") from a used car dealership in Georgia. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or

1    would have paid less for it, if Defendants did not conceal material information about the defective

2    SDM calibration.

3        14.    Plaintiff Rachel Bailey ("Plaintiff" for the purposes of this paragraph) is an

4    individual residing in Saginaw, MI. On or around 2020, Plaintiff purchased a 2011 GMC Terrain

5    SLT (for purposes of Plaintiff's allegations, the "Class Vehicle") from Cliff's Chevrolet, located

6    in Adrian, MI. At the time, Plaintiff reasonably expected that the airbags and seatbelts would

7    function in the event of a crash and had no way of knowing that it contained a dangerous and

8    defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the

9    contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through

10   television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and

11   GM vehicles generally. GM concealed the existence of the defective SDM calibration from

12   consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would

13   have paid less for it, if Defendants did not conceal material information about the defective SDM

14   calibration.

15       15.    Plaintiff Richard Baker ("Plaintiff" for the purposes of this paragraph) is an

16   individual residing in Ijamsville, MD. On or around 2012, Plaintiff purchased a 2012 GMC

17   Terrain (for purposes of Plaintiff's allegations, the "Class Vehicle") from Ideal Motors in

18   Frederick, MD. At the time, Plaintiff reasonably expected that the airbags and seatbelts would

19   function in the event of a crash and had no way of knowing that it contained a dangerous and

20   defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the

21   contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through

22   television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and

23   GM vehicles generally. GM concealed the existence of the defective SDM calibration from

24   consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would

25   have paid less for it, if Defendants did not conceal material information about the defective SDM

26   calibration.

27       16.    Plaintiff Kerry Batman ("Plaintiff" for the purposes of this paragraph) is an

28   individual residing in Ashland, KS. In or around 2013, Plaintiff purchased a 2013 Chevrolet

1  Pickup 2500 HD (for purposes of Plaintiff's allegations, the "Class Vehicle") from Mcguirk

2  Dealership in Dodge City, KS. At the time, Plaintiff reasonably expected that the airbags and

3  seatbelts would function in the event of a crash and had no way of knowing that it contained a

4  dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during

5  a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and

6  reviews through television, radio, and the internet that touted the safety and reliability of

7  Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM

8  calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class

9  Vehicle, or would have paid less for it, if Defendants did not conceal material information about

10  the defective SDM calibration.

11        17.     Plaintiff Ric Batten ("Plaintiff" for the purposes of this paragraph) is an individual

12  residing in Arlington, TX. In or around 2016, Plaintiff purchased a 2011 GMC Crew Cab Pickup

13  2500 (for purposes of Plaintiff's allegations, the "Class Vehicle") from a pre-owned Car Lot in

14  the Greater Texas area. At the time, Plaintiff reasonably expected that the airbags and seatbelts

15  would function in the event of a crash and had no way of knowing that it contained a dangerous

16  and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To

17  the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews

18  through television, radio, and the internet that touted the safety and reliability of Plaintiff's

19  vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration

20  from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or

21  would have paid less for it, if Defendants did not conceal material information about the defective

22  SDM calibration.

23        18.     Plaintiff George Bayer ("Plaintiff" for the purposes of this paragraph) is an

24  individual residing in Lowell, MI. On or around 2014, Plaintiff purchased a 2014 GMC Sierra

25  1500 (for purposes of Plaintiff's allegations, the "Class Vehicle") from Whittenbag GMC, Lowell

26  (now Betton Baker GMC) in Lowell, MI. At the time, Plaintiff reasonably expected that the

27  airbags and seatbelts would function in the event of a crash and had no way of knowing that it

28  contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to

fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

19.     Plaintiff Jerome Blatt ("Plaintiff" for the purposes of this paragraph) is an individual residing in Eagan, MN. In or around 2019, Plaintiff purchased a 2014 GMC Sierra (for purposes of Plaintiff's allegations, the "Class Vehicle") from a private party in Indiana. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

20.     Plaintiff Ira Bondsteel ("Plaintiff" for the purposes of this paragraph) is an individual residing in Webster, TX.  In or about January 2018, Plaintiff purchased a 2012 Chevrolet Silverado 1500 (for purposes of Plaintiff's allegations, the "Class Vehicle") from A1 Auto Finance, located in Kemah, TX. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash.  To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class

Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

21.     Plaintiff Adam Brown ("Plaintiff" for the purposes of this paragraph) is an individual residing in Beacon, NY. On or around July 2015, Plaintiff purchased a pre-owned 2012 GMC Yukon (for purposes of Plaintiff's allegations, the "Class Vehicle") from a used car dealership in New York, NY. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

22.     Plaintiff David Casey ("Plaintiff" for the purposes of this paragraph) is an individual residing in Pleasant Garden, NC.  On or around February 17, 2021, Plaintiff purchased a 2021 Chevrolet Silverado (for purposes of Plaintiff's allegations, the "Class Vehicle") from Powers Swain Chevrolet, located in Fayetteville, NC. At the time, Plaintiff reasonably expected that the Vehicles' airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash.  To the contrary, before acquiring the Class Vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

23.     Plaintiff Christina Colatriano ("Plaintiff" for the purposes of this paragraph) is an individual residing in Delmar, DE. In or around 2018, Plaintiff purchased a 2013 Chevy Silverado

3500 (for purposes of Plaintiff's allegations, the "Class Vehicle") from Hertrich Buick/GMC in Seaford, DE. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

24.     Plaintiff Delbert Dehne ("Plaintiff" for the purposes of this paragraph) is an individual residing in East Peoria, IL. In or around 2013, Plaintiff purchased a 2013 Chevrolet Silverado 1550 (for purposes of Plaintiff's allegations, the "Class Vehicle") from the Sam Leman Dealership in Morton, IL. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

25.     Plaintiff Ashley Dheel ("Plaintiff" for the purposes of this paragraph) is an individual residing in Lakewood, WA. In or about spring 2021, Plaintiff purchased a pre-owned 2010 GMC Acadia SLT (for purposes of Plaintiff's allegations, the "Class Vehicle") from JRS Auto Sales in Tacoma, WA. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during

a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

26.     Plaintiff Travis Dieter ("Plaintiff" for the purposes of this paragraph") is an individual residing in Sandpoint, ID. On April 20, 2013, Plaintiff purchased a 2013 Chevrolet Silverado LTZ (for purposes of Plaintiff's allegations, the "Class Vehicle") from Taylor & Sons Chevrolet in Ponderay, ID. At the time, Plaintiff reasonably expected that the Vehicles' airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash.  To the contrary, before acquiring the Vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. Plaintiff reviewed GM's promotional materials such as GM's website, sales brochures, television advertisements, Monroney sticker and spoke with at least one sales representative, none of which disclosed the SDM Calibration Defect.  GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

27.     Plaintiff Greg Douthwaite ("Plaintiff" for the purposes of this paragraph) is an individual residing in Beaver Dam, WI. On or around 2016/2017, Plaintiff purchased a 2013 Chevy Silverado 1500 (for purposes of Plaintiff's allegations, the "Class Vehicle") from Countryside GM in Beaver Dam, WI. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of

1    Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM

2    calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class

3    Vehicle, or would have paid less for it, if Defendants did not conceal material information about

4    the defective SDM calibration.

5         28.    Plaintiff Ed Driggers, Jr. ("Plaintiff" for the purposes of this paragraph) is an

6    individual residing in Savannah, GA. On or around 2016, Plaintiff purchased a 2012 Chevy

7    Silverado 1500 (for purposes of Plaintiff's allegations, the "Class Vehicle") from Metter Ford in

8    Metter, GA. At the time, Plaintiff reasonably expected that the airbags and seatbelts would

9    function in the event of a crash and had no way of knowing that it contained a dangerous and

10   defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the

11   contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through

12   television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and

13   GM vehicles generally. GM concealed the existence of the defective SDM calibration from

14   consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would

15   have paid less for it, if Defendants did not conceal material information about the defective SDM

16   calibration.

17        29.    Plaintiff Stephen Duncan ("Plaintiff" for the purposes of this paragraph) is an

18   individual residing in Clinton, AR. On or around 2016, Plaintiff purchased a 2011 GMC Sierra

19   Pickup (for purposes of Plaintiff's allegations, the "Class Vehicle") from Peyton Dodge –

20   Cowboy Dodge in Clinton, AK. At the time, Plaintiff reasonably expected that the airbags and

21   seatbelts would function in the event of a crash and had no way of knowing that it contained a

22   dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during

23   a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and

24   reviews through television, radio, and the internet that touted the safety and reliability of

25   Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM

26   calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class

27   Vehicle, or would have paid less for it, if Defendants did not conceal material information about

28   the defective SDM calibration.

30.     Plaintiff Douglas Dye ("Plaintiff" for the purposes of this paragraph) is an individual residing in Cedar Bluff, Virginia.  In or about December 2020, Plaintiff purchased a 2021 GMC Canyon (for purposes of Plaintiff's allegations, the "Class Vehicle") from Ramey Princeton, a GM dealership, located in Princeton, West Virginia. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash.  To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

31.     Plaintiff William Endress ("Plaintiff" for the purposes of this paragraph) is an individual residing in Lebanon, NJ.  In May 2012 Plaintiff purchased a 2012 Chevrolet Colorado (for purposes of Plaintiff's allegations, the "Class Vehicle") from Brown-Daub Chevrolet, a GM dealership, located in Nazareth, PA. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash.  To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

32.     Plaintiff Lee Ford ("Plaintiff" for the purposes of this paragraph) is an individual residing in Egg Harbor City, NJ.  In or about November 2020, Plaintiff purchased a 2011 Chevrolet Tahoe (for purposes of Plaintiff's allegations, the "Class Vehicle") from 322 Motors, located in Williamstown, NJ. At the time, Plaintiff reasonably expected that the airbags and

1  seatbelts would function in the event of a crash and had no way of knowing that it contained a

2  dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during

3  a crash.  To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and

4  reviews through television, radio, and the internet that touted the safety and reliability of

5  Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM

6  calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class

7  Vehicle, or would have paid less for it, if Defendants did not conceal material information about

8  the defective SDM calibration.

9        33.    Plaintiff William Free ("Plaintiff" for the purposes of this paragraph) is an

10  individual residing in Cocoa, FL. In or around 2016, Plaintiff purchased a 2010 GMC Yukon XL

11  (for purposes of Plaintiff's allegations, the "Class Vehicle") from Mullin X Ford Dealership

12  Orlando in Orlando, FL. At the time, Plaintiff reasonably expected that the airbags and seatbelts

13  would function in the event of a crash and had no way of knowing that it contained a dangerous

14  and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To

15  the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews

16  through television, radio, and the internet that touted the safety and reliability of Plaintiff's

17  vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration

18  from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or

19  would have paid less for it, if Defendants did not conceal material information about the defective

20  SDM calibration.

21        34.    Plaintiff Lisa Gerould ("Plaintiff" for the purposes of this paragraph) is an

22  individual residing in Spartanburg, SC.  In or about January 2016, Plaintiff purchased a 2013

23  Chevrolet Silverado 1500 (for purposes of Plaintiff's allegations, the "Class Vehicle") from

24  Greenway Chevrolet, located in Spartanburg, SC. At the time, Plaintiff reasonably expected that

25  the airbags and seatbelts would function in the event of a crash and had no way of knowing that it

26  contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to

27  fail during a crash.  To the contrary, before acquiring the vehicle, Plaintiff viewed or heard

28  commercials and reviews through television, radio, and the internet that touted the safety and

1   reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the

2   defective SDM calibration from consumers including Plaintiff. Plaintiff would not have

3   purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material

4   information about the defective SDM calibration.

5           35.    Plaintiff Alisha Gonzalez ("Plaintiff" for the purposes of this paragraph) is an

6   individual residing in Six Lakes, MI. In or around December 2019, Plaintiff purchased a 2012

7   GMC Acadia (for purposes of Plaintiff's allegations, the "Class Vehicle") from The Car Corner in

8   Vestaburg, MI. At the time, Plaintiff reasonably expected that the airbags and seatbelts would

9   function in the event of a crash and had no way of knowing that it contained a dangerous and

10  defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the

11  contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through

12  television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and

13  GM vehicles generally. GM concealed the existence of the defective SDM calibration from

14  consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would

15  have paid less for it, if Defendants did not conceal material information about the defective SDM

16  calibration.

17          36.    Plaintiff Harryette Gosa ("Plaintiff" for the purposes of this paragraph) is an

18  individual residing in Greenwood Springs, MS. In or around 2014, Plaintiff purchased a 2014

19  GMC Acadia (for purposes of Plaintiff's allegations, the "Class Vehicle") from Larry Clark

20  Chevy Dealership in Amory, MS. At the time, Plaintiff reasonably expected that the airbags and

21  seatbelts would function in the event of a crash and had no way of knowing that it contained a

22  dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during

23  a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and

24  reviews through television, radio, and the internet that touted the safety and reliability of

25  Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM

26  calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class

27  Vehicle, or would have paid less for it, if Defendants did not conceal material information about

28  the defective SDM calibration.

37.     Plaintiff Rex Hartman ("Plaintiff" for the purposes of this paragraph) is an individual residing in Bedford, PA. On or around 2017/2018, Plaintiff purchased a 2014 Chevy Silverado Pickup (for purposes of Plaintiff's allegations, the "Class Vehicle") from Team Auto in Duncansville, PA. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

38.     Plaintiff Judy Haviland ("Plaintiff" for the purposes of this paragraph) is an individual residing in Harrison, MI.  In August 2021, Plaintiff purchased a 2009 Chevrolet Silverado 1500 (for purposes of Plaintiff's allegations, the "Class Vehicle") from Lakeside Motors LLC, located in Houghton Lake, Michigan. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash.  To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

39.     Plaintiff Bruce Heise ("Plaintiff" for the purposes of this paragraph) is an individual residing in Blairsville, PA.  In or about, January 2017 Plaintiff purchased a 2016 Chevrolet Silverado 1500 (for purposes of Plaintiff's allegations, the "Class Vehicle") from Watson Chevrolet, located in Blairsville, PA. At the time, Plaintiff reasonably expected that the

airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash.  To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

40.     Plaintiff Zeckery Henslee ("Plaintiff" for the purposes of this paragraph) is an individual residing in Decatur, MI. On or around 2017, Plaintiff purchased a 2009 Chevy Silverado (for purposes of Plaintiff's allegations, the "Class Vehicle") from Autowest in Plainwell, MI. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

41.     Plaintiff John Hickey ("Plaintiff" for the purposes of this paragraph) is an individual residing in Keyser, WV. On or around 2019, Plaintiff purchased a 2010 GMC Sierra (for purposes of Plaintiff's allegations, the "Class Vehicle") from a private party in West Virginia. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and

GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

42.     Plaintiff Kimberly Hickle ("Plaintiff" for the purposes of this paragraph) is an individual residing in Crystal, MN. On or around 2018, Plaintiff purchased a 2010 Chevy Traverse LT (for purposes of Plaintiff's allegations, the "Class Vehicle") from Jake's Auto Mall in Ham Lake, MN. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

43.     Plaintiff Randy Holdren ("Plaintiff" for the purposes of this paragraph) is an individual residing in Fort Meyers, FL. In or around 2014, Plaintiff purchased a 2014 Chevy Travers and a 2012 GMC Sierra Truck (for purposes of Plaintiff's allegations, the "Class Vehicles") from Sullivan Chevy Dealership and Warton Martin Dealership in Champagne, IL. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicles, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicles and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicles, or would have paid

- 18 -

1    less for them, if Defendants did not conceal material information about the defective SDM

2    calibration.

3       44.    Plaintiff Kevin Hopkins ("Plaintiff" for the purposes of this paragraph) is an

4    individual residing in Las Vegas, NV. In or around 2019, Plaintiff purchased a 2011 Chevrolet

5    Silverado (for purposes of Plaintiff's allegations, the "Class Vehicle") from Fairway Chevrolet in

6    Las Vegas, NV. At the time, Plaintiff reasonably expected that the airbags and seatbelts would

7    function in the event of a crash and had no way of knowing that it contained a dangerous and

8    defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the

9    contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through

10   television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and

11   GM vehicles generally. GM concealed the existence of the defective SDM calibration from

12   consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would

13   have paid less for it, if Defendants did not conceal material information about the defective SDM

14   calibration.

15      45.    Plaintiff Kara Hummel ("Plaintiff" for the purposes of this paragraph") is an

16   individual residing in Longview, Washington. On or around March 15, 2016, Plaintiff purchased

17   a 2015 Chevrolet Suburban (for purposes of Plaintiff's allegations, the "Class Vehicle") from

18   Alan-Webb Chevrolet in Vancouver, WA. At the time, Plaintiff reasonably expected that the

19   Vehicles' airbags and seatbelts would function in the event of a crash and had no way of knowing

20   that it contained a dangerous and defective SDM calibration that could cause the airbags and

21   seatbelts to fail during a crash.  To the contrary, before acquiring the vehicle, Plaintiff viewed or

22   heard commercials and reviews through television, radio, and the internet that touted the safety

23   and reliability of Plaintiff's vehicle and GM vehicles generally, and spoke with at least one sales

24   representative who did not disclose the SDM Calibration Defect. GM concealed the existence of

25   the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have

26   purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material

27   information about the defective SDM calibration.

28

46. Plaintiff Aaron Jackson ("Plaintiff" for the purposes of this paragraph) is an individual residing in Huntsville, AL. On or around 2016, Plaintiff purchased a 2013 Chevy Pickup (for purposes of Plaintiff's allegations, the "Class Vehicle") from a Chevrolet Dealership in Huntsville, AL. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

47. Plaintiff David James ("Plaintiff" for the purposes of this paragraph) is an individual residing in Lebanon, IN. On or around 2018, Plaintiff purchased a 2012 GMC Sierra (for purposes of Plaintiff's allegations, the "Class Vehicle") from Bart Car Sales in Fort Wayne, IN. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

48. Plaintiff Gregory Juskiewicz ("Plaintiff" for the purposes of this paragraph) is an individual residing in Chardon, OH. In or around 2013, Plaintiff purchased a 2013 Chevy 1500 Silverado (for purposes of Plaintiff's allegations, the "Class Vehicle") from Preston Chevy in Burton, OH. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and

defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

49.     Plaintiff ShaVon Keith ("Plaintiff" for the purposes of this paragraph) is an individual residing in Villa Rica, GA. In or around 2021, Plaintiff purchased a 2014 Chevy Silverado (for purposes of Plaintiff's allegations, the "Class Vehicle") from Fairway Chevrolet in Las Vegas, NV. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

50.     Plaintiff Jason Klinger ("Plaintiff" for the purposes of this paragraph) is an individual residing in Indian Trial, NC. In or around 2014, Plaintiff purchased a 2014 Chevy Silverado LT (for purposes of Plaintiff's allegations, the "Class Vehicle") from City Chevy in Charlotte, NC. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from

1  consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would

2  have paid less for it, if Defendants did not conceal material information about the defective SDM

3  calibration.

4         51.     Plaintiff Debra Knerr ("Plaintiff" for the purposes of this paragraph) is an

5  individual residing in Trade, TN. In or about fall 2019, Plaintiff purchased a pre-owned 2016

6  Chevrolet Silverado 1500 LTZ (for purposes of Plaintiff's allegations, the "Class Vehicle") from

7  Ramey Auto Group in Virginia. At the time, Plaintiff reasonably expected that the airbags and

8  seatbelts would function in the event of a crash and had no way of knowing that it contained a

9  dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during

10  a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and

11  reviews through television, radio, and the internet that touted the safety and reliability of

12  Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM

13  calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class

14  Vehicle, or would have paid less for it, if Defendants did not conceal material information about

15  the defective SDM calibration.

16         52.     Plaintiff Clarise Knight ("Plaintiff" for the purposes of this paragraph) is an

17  individual residing in Miami Gardens, FL. In or around 2014, Plaintiff purchased a pre-owned

18  2014 Chevrolet Traverse (for purposes of Plaintiff's allegations, the "Class Vehicle") from

19  AutoNation, located in Miami, FL. At the time, Plaintiff reasonably expected that the airbags and

20  seatbelts would function in the event of a crash and had no way of knowing that it contained a

21  dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during

22  a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and

23  reviews through television, radio, and the internet that touted the safety and reliability of

24  Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM

25  calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class

26  Vehicle, or would have paid less for it, if Defendants did not conceal material information about

27  the defective SDM calibration.

28

53.     Plaintiff Andrew Lawson ("Plaintiff" for the purposes of this paragraph) is an individual residing in Pauline, SC. On or around 2021, Plaintiff purchased a 2013 Chevy Silverado (for purposes of Plaintiff's allegations, the "Class Vehicle") from Bradshaw Chevrolet in Greer, SC. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

54.     Plaintiff Eric Leeds ("Plaintiff" for the purposes of this paragraph) is an individual residing in Northfield, NJ.  In or about September 2019, Plaintiff purchased a 2012 Chevrolet Tahoe (for purposes of Plaintiff's allegations, the "Class Vehicle") from Koons Ford, located in Falls Church, VA. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash.  To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

55.     Plaintiff Toni Lowe ("Plaintiff" for the purposes of this paragraph) is an individual residing in Lakeland, FL.  In or about August 2018, Plaintiff purchased a 2018 GM Chevrolet 1500 Silverado (for purposes of Plaintiff's allegations, the "Class Vehicle") from Stingray Chevrolet, located in Plant City, FL. At the time, Plaintiff reasonably expected that the airbags

and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash.  To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

56.     Plaintiff Stephen Loyd ("Plaintiff" for the purposes of this paragraph) is an individual residing in Toney, AL. On or around 2016, Plaintiff purchased a 2012 Chevy Silverado 1500 (for purposes of Plaintiff's allegations, the "Class Vehicle") from Howard Bentley Chevy Dealership in Fayetteville, TN. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

57.     Plaintiff Angelica Mar ("Plaintiff" for the purposes of this paragraph) is an individual residing in Melrose Park, IL. In or around late 2016, Plaintiff purchased a pre-owned 2015 GMC Terrain SLT (for purposes of Plaintiff's allegations, the "Class Vehicle") from The Hawk Auto Group in IL.  At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's

vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

58.     Plaintiff Allan Martin ("Plaintiff" for the purposes of this paragraph) is an individual residing in Winnsboro, LA. On or around 2017, Plaintiff purchased a 2009 Chevrolet Silverado 1500 from a private party in Louisiana, and a 2010 Buick Enclave from a pre-owned car lot in Monroe, LA (for purposes of Plaintiff's allegations, the "Class Vehicles"). At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicles, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicles and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicles, or would have paid less for them, if Defendants did not conceal material information about the defective SDM calibration.

59.     Plaintiff Michael Merkley ("Plaintiff" for the purposes of this paragraph) is an individual residing in Boise, ID. On or around July 2017, Plaintiff purchased a 2012 Chevy Silverado (for purposes of Plaintiff's allegations, the "Class Vehicle") from Elite Auto Sales in Idaho Falls, ID. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

60.     Plaintiff Allan Miles ("Plaintiff" for the purposes of this paragraph) is an individual residing in Pearl, MS. On or around 2018, Plaintiff purchased a 2014 GMC Sierra Denali Pickup (for purposes of Plaintiff's allegations, the "Class Vehicle") from Pops Auto Sales in Florence, MS. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

61.     Plaintiff Stephen Miles ("Plaintiff" for the purposes of this paragraph) is an individual residing in Forest Grove, OR. On or around 2021, Plaintiff purchased a 2010 GMC Sierra HD 3500 (for purposes of Plaintiff's allegations, the "Class Vehicle") from Bridge City Auto in Gladstone, OR. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

62.     Plaintiff James Milstead ("Plaintiff" for the purposes of this paragraph) is an individual residing in Oxnard, CA. On September 11, 2021, Plaintiff purchased a 2012 Avalanche (for purposes of Plaintiff's allegations, the "Class Vehicle") from Escondido Auto Super Center in Escondido, CA. At the time, Plaintiff reasonably expected that the airbags and seatbelts would

function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

63. Plaintiff Ira Nash ("Plaintiff" for the purposes of this paragraph) is an individual residing in Honaker, VA. In or around 2017, Plaintiff purchased a 2014 GMC Denali Pickup (for purposes of Plaintiff's allegations, the "Class Vehicle") from Ramey Chevy Dealership in Richlands, VA. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

64. Plaintiff Patrick O'Connor ("Plaintiff" for the purposes of this paragraph) is an individual residing in Depew, NY. In or around 2018, Plaintiff purchased a 2013 Chevrolet Equinox (for purposes of Plaintiff's allegations, the "Class Vehicle") from Joe Basil Chevrolet in Depew, NY. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and

GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

65.    Plaintiff Jorge Orihuela ("Plaintiff" for the purposes of this paragraph) is an individual residing in Hamburg, NJ.  In or around October 2020, Plaintiff purchased a 2021 Chevrolet Tahoe (for purposes of Plaintiff's allegations, the "Class Vehicle") from Paul Miller Chevrolet, a GM dealership, located in West Caldwell, NJ. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash.  To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

66.    Plaintiff Gary Owens ("Plaintiff" for the purposes of this paragraph) is an individual residing in Kenton, TN. In or about May 2019, Plaintiff purchased a 2012 GMC Sierra 1500 (for purposes of Plaintiff's allegations, the "Class Vehicle") from Herman Jenkins Motors, a GM dealership, located in Union City, Tennessee. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash.  To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

67.     Plaintiff Larry Paetzold ("Plaintiff" for the purposes of this paragraph) is an individual residing in Brownwood, TX. On or around 2011, Plaintiff purchased a 2011 GMC Acadia (for purposes of Plaintiff's allegations, the "Class Vehicle") from Stevens Chevrolet in Herford, TX. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

68.     Plaintiff Ramiro Pereda ("Plaintiff" for the purposes of this paragraph) is an individual residing in San Leandro, CA.  During 2016, Plaintiff purchased a pre-owned 2010 Silverado 2500 HD (for purposes of Plaintiff's allegations, the "Class Vehicle") from Trucks and Toyz, a used vehicle dealership, located in Fairfield, CA. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash.  To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

69.     Plaintiff Delana Petersen ("Plaintiff" for the purposes of this paragraph) is an individual residing in Lehi, UT. During May 2019, Plaintiff purchased a pre-owned 2016 Chevrolet Silverado 2500 (for purposes of Plaintiff's allegations, the "Class Vehicle") from Larry H. Miller Super Ford in Salt Lake City, UT. At the time, Plaintiff reasonably expected that the

airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

70.     Plaintiff Frank Pignone ("Plaintiff" for the purposes of this paragraph) is an individual residing in Derby, NY. On or around 2013, Plaintiff purchased a 2014 Chevy Silverado (for purposes of Plaintiff's allegations, the "Class Vehicle") from Emerling Chevy (Now Capilono Chevy) in Boston, NY. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

71.     Plaintiff Dolly Price ("Plaintiff" for the purposes of this paragraph) is an individual residing in Kansas City, KS. On or around December 2013, Plaintiff purchased a pre-owned 2011 Chevrolet Traverse LTZ (for purposes of Plaintiff's allegations, the "Class Vehicle") from Cable Dahmer Chevrolet in Independence, MO. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety

and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

72.     Plaintiff Michael Romania ("Plaintiff" for the purposes of this paragraph) is an individual residing in Benton, PA. In or about September 2021, Plaintiff purchased a Chevrolet Silverado 3500 HD (for purposes of Plaintiff's allegations, the "Class Vehicle") from Blaise Alexander Chevrolet, a GM dealership, located in Muncy, PA. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash.  To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

73.     Plaintiff Donald Roxberry ("Plaintiff" for the purposes of this paragraph) is an individual residing in Durant, OK. In or around 2018, Plaintiff purchased a 2012 GMC Sierra (for purposes of Plaintiff's allegations, the "Class Vehicle") from Hudiburg Chevrolet in Oklahoma City, OK. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

74.     Plaintiff Lakiesha Shears ("Plaintiff" for the purposes of this paragraph) is an individual residing in Denver, CO. In or around 2021, Plaintiff purchased a 2010 Cadillac SRX (for purposes of Plaintiff's allegations, the "Class Vehicle") from the Besnibad Lot in Colorado. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

75.     Plaintiff David Stalcup ("Plaintiff" for the purposes of this paragraph) is an individual residing in Mammoth Springs, AR.  In or about January 2018, Plaintiff purchased a 2011 GMC Sierra (for purposes of Plaintiff's allegations, the "Class Vehicle") from Mark Martin Chevrolet, a GM dealership, located in Ash Flat, Arkansas. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash.  To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Moreover, Plaintiff experiences issues with his 2011 GMC Sierra where the seatbelt does not lock. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

76.     Plaintiff Larry Swafford ("Plaintiff" for the purposes of this paragraph") is an individual residing in Cedartown, GA. In May of 2013, Plaintiff purchased a 2013 GMC Sierra (for purposes of Plaintiff's allegations, the "Class Vehicle") from John Thornton Chevrolet in Carrollton, Georgia. At the time, Plaintiff reasonably expected that the Vehicles' airbags and

1   seatbelts would function in the event of a crash and had no way of knowing that it contained a

2   dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during

3   a crash.  To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and

4   reviews through television, radio, and the internet that touted the safety and reliability of

5   Plaintiff's vehicle and GM vehicles generally. Plaintiff also spoke with at least one sales

6   representative without Defendants disclosing the SDM System Defect. In September of 2021,

7   Plaintiff received a recall notice from GM for the replacement of a part of the airbag mechanism

8   on the passenger side of his Vehicle due to a risk of deployment delivered shrapnel. Plaintiff has

9   presented his Vehicle to GM dealers for airbag recall and numerous other repairs, yet GM never

10  disclosed the SDM Calibration Defect. GM concealed the existence of the defective SDM

11  calibration from consumers including Plaintiff. Moreover, Plaintiff experiences issues with his

12  2011 GMC Sierra where the seatbelt does not lock. Plaintiff would not have purchased the Class

13  Vehicle, or would have paid less for it, if Defendants did not conceal material information about

14  the defective SDM calibration.

15         77.    Plaintiff Brian Swann ("Plaintiff" for the purposes of this paragraph) is an

16  individual residing in Madison, AL. On or around 2017, Plaintiff purchased a 2010 Chevrolet

17  Silverado (for purposes of Plaintiff's allegations, the "Class Vehicle") from Bob Chevrolet in

18  Cincinnati, OH. At the time, Plaintiff reasonably expected that the airbags and seatbelts would

19  function in the event of a crash and had no way of knowing that it contained a dangerous and

20  defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the

21  contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through

22  television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and

23  GM vehicles generally. GM concealed the existence of the defective SDM calibration from

24  consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would

25  have paid less for it, if Defendants did not conceal material information about the defective SDM

26  calibration.

27         78.    Plaintiff Joseph Sweat ("Plaintiff" for the purposes of this paragraph) is an

28  individual residing in Lilburn, GA. In or around 2015, Plaintiff purchased a 2009 Chevrolet

Silverado (for purposes of Plaintiff's allegations, the "Class Vehicle") from Cole Automotive Sale in Monroe, GA. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

79.    Plaintiff David Taylor ("Plaintiff" for the purposes of this paragraph) is an individual residing in Theodore, AL. On or around 2014, Plaintiff purchased a 2014 Chevy Silverado LT Pickup (for purposes of Plaintiff's allegations, the "Class Vehicle") from Terry Thompson Chevy Dealership in Daphne, AL. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

80.    Plaintiff Walter Tooson ("Plaintiff" for the purposes of this paragraph) is an individual residing in Springfield, OH. On or around 2014, Plaintiff purchased a 2012 GMC Terrain (for purposes of Plaintiff's allegations, the "Class Vehicle") from Jeff Wiler in Springfield, OH. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the

contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

81.     Plaintiff Richard Vargas ("Plaintiff" for the purposes of this paragraph) is an individual residing in Menifee, California. In or around December 2012, Plaintiff purchased a 2012 Chevrolet Suburban (for purposes of Plaintiff's allegations, the "Class Vehicle") from El Camino Real Chevrolet located in Monterey Park, California. At the time, Plaintiff reasonably expected that the Vehicles' airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash.  To the contrary, before acquiring the Vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle, including its "Five Star" safety rating, and GM vehicles generally. Additionally, when at the dealership before making his purchase, Plaintiff inquired about the airbags in the Class Vehicle. GM concealed the existence of the defective SDM calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective SDM calibration.

82.     Plaintiff Warren Whitsey ("Plaintiff" for the purposes of this paragraph) is an individual residing in Indianapolis, IN. On or around 2021, Plaintiff purchased a 2013 Yukon XL (for purposes of Plaintiff's allegations, the "Class Vehicle") from Andy Moore VW in Avon, IN. At the time, Plaintiff reasonably expected that the airbags and seatbelts would function in the event of a crash and had no way of knowing that it contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles

generally. GM concealed the existence of the defective SDM calibration from consumers
including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less
for it, if Defendants did not conceal material information about the defective SDM calibration.

83.     Plaintiff Denise Wilson ("Plaintiff" for the purposes of this paragraph) is an
individual residing in Fayette, MS. On or around February 2020, Plaintiff purchased a pre-owned
2019 Chevrolet Silverado 1500 (for purposes of Plaintiff's allegations, the "Class Vehicle") from
Gray-Daniels Chevrolet, located in Jackson, MS. At the time, Plaintiff reasonably expected that
the airbags and seatbelts would function in the event of a crash and had no way of knowing that it
contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to
fail during a crash. To the contrary, before acquiring the vehicle, Plaintiff viewed or heard
commercials and reviews through television, radio, and the internet that touted the safety and
reliability of Plaintiff's vehicle and GM vehicles generally. GM concealed the existence of the
defective SDM calibration from consumers including Plaintiff. Plaintiff would not have
purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material
information about the defective SDM calibration.

84.     Plaintiff Carl Wurmlinger ("Plaintiff" for the purposes of this paragraph) is an
individual residing in Croswell, MI. In or around 2014, Plaintiff purchased a 2014 GMC Sierra
(for purposes of Plaintiff's allegations, the "Class Vehicle") from Saint Claire Automotive in
Saint Claire, Michigan. At the time, Plaintiff reasonably expected that the airbags and seatbelts
would function in the event of a crash and had no way of knowing that it contained a dangerous
and defective SDM calibration that could cause the airbags and seatbelts to fail during a crash. To
the contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews
through television, radio, and the internet that touted the safety and reliability of Plaintiff's
vehicle and GM vehicles generally. GM concealed the existence of the defective SDM calibration
from consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or
would have paid less for it, if Defendants did not conceal material information about the defective
SDM calibration.

B.     **Defendants**

85.     General Motors LLC ("GM LLC") is a Delaware limited liability company with its principal place of business located at 300 Renaissance Center, Detroit, Michigan, and is a citizen of the States of Delaware and Michigan. The sole member and owner of GM LLC is General Motors Holdings LLC.

86.     General Motors Holdings LLC ("GM Holdings") is a Delaware limited liability company with its principal place of business in Detroit, Michigan, and is a citizen of the States of Delaware and Michigan. The sole member and owner of GM Holdings is General Motors Company.

87.     General Motors Company ("GM Parent") is a Delaware corporation with its principal place of business in Detroit, Michigan, and is a citizen of the States of Delaware and Michigan. GM Parent's only asset is its 100% ownership interest in GM Holdings. In public SEC filings, GM Parent states: "We design, build and sell cars, trucks, crossovers and automobile parts worldwide." GM Parent sells vehicles throughout the United States "through [its] dealer network to retail customers." As further noted in SEC filings, GM Parent is also responsible for making reports to NHTSA related to vehicle safety and making determinations as to vehicle recalls.[3]

88.     Each of GM LLC, GM Holdings, and GM Parent operates out of GM's Global Headquarters in Detroit, Michigan.

89.     In June 2009, General Motors Corporation ("Old GM") filed for bankruptcy. Defendants were then created on or about July 10, 2009, in connection with the sale of substantially all of Old GM's assets pursuant to a Master Sale and Purchase Agreement. As a result of the sale, GM LLC acquired substantially all of Old GM's books, records, and personnel. GM LLC then transferred some of these assets to GM Holdings (formed shortly after the bankruptcy sale). Defendants thereby acquired from Old GM the knowledge about the SDM Calibration Defect (defined below) that those books, records, and personnel held. GM Parent and GM LLC also took responsibility for any necessary recalls of Old GM vehicles going forward.

---

[3] *See* General Motors Company's Form 10-K for fiscal year 2019.

90.     The causes of action in this Complaint are directed to GM Parent, GM Holdings, and GM LLC and are based on their misconduct.

**III.     JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT**

91.     This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

92.     This Court has personal jurisdiction over Defendants under California Code of Civil Procedure section 410.10. The Court has pendent jurisdiction as to the claims of Plaintiffs that arose in states other than California.

93.     Venue is proper in this District under 28 U.S.C. § 1391, and assignment is proper to this division under N.D. Cal. L.R. 3-2, because a substantial part of the events or omissions which give rise to the claims occurred in this District, and because Defendants have caused harm to Class members residing in this District, including Plaintiff Pereda. GM conducts substantial business, including through numerous dealerships, and marketed, advertised, sold, and leased Class Vehicle in this District.

**IV.     GENERAL FACTUAL ALLEGATIONS**

**A.     SDMs are supposed to detect crashes and control airbags and seatbelts.**

94.     Federal law requires that motor vehicles use safety features to protect occupants in the event of a crash. These features include seatbelt pretensioners, which tighten seatbelts to secure the occupants, and airbags, which are cushions that rapidly inflate from the steering wheel and other areas of the vehicle. During an accident, seatbelt pretensioners hold vehicle occupants in place, and airbags buffer or prevent impact between occupants and hard structures in the vehicle. Without the airbags, slamming into the hard structures (such as the steering wheel) during a crash can cause serious injuries or death.

95.     When functioning properly, the combination of seatbelts and airbags is highly effective in reducing the safety risk in automobile collisions. NHTSA reports that the use of seatbelts and airbags reduces fatality risk by 61 percent compared to an unbelted occupant in a

1   vehicle without airbags.[4] From 1987 to 2017, an estimated 50,457 lives were saved because

2   frontal airbags deployed during a crash.[5]

3       96.     Although airbags work effectively to protect occupants when necessary, they are

4   not meant to deploy with every impact. A crash may be of lower intensity (e.g., a fender bender in

5   a parking lot) such that the seatbelt alone will be sufficient protection for the occupant.[6] Airbags

6   are designed to deploy in "moderate to severe" frontal or near-frontal crashes. A "moderate to

7   severe" frontal crash is the equivalent of hitting a solid, fixed barrier at 8-14 miles per hour or

8   higher.[7]

9       97.     Seatbelt and airbag systems are known as "passive" safety systems because, when

10  they are needed, they are supposed to operate automatically (meaning, the driver does not need to

11  hit a button to deploy the airbag). They use sophisticated components and software to activate and

12  deploy the seatbelts and airbags systems automatically.

13      98.     The "brain" behind this operation is the airbag control unit or "ACU" (also known

14  as an Electronic Control Unit or "ECU").  GM refers to this component as the "Sensing and

15  Diagnostic Module" or "SDM," and that term is used throughout this Complaint. SDMs are

16  effectively computers that control the car's safety systems. They are intended, where necessary,

17  to issue a "command" to deploy airbags and tighten seatbelts to prevent or mitigate injury to the

18  vehicle occupants in a crash.

19      99.     The SDM operates in three basic phases. First, during regular vehicle operation,

20  the SDM is set in a resting or "normal" mode. In this mode, the SDM constantly receives signals

21  from sensors placed throughout the vehicle, which collect and report information on inputs such

22

23

24

25

26  [4] U.S. Department of Transportation, NHTSA, *Fatalities in Frontal Crashes Despite Seat Belts and Airbags*, NHTSA Technical Report No. DOT HS 811 202 (September 2009).
    [5] NHTSA, Air Bags Overview. Available at: https://www.nhtsa.gov/equipment/air-bags (last visited August 4, 2021).

27  [6] Dr. Ching-Yao Chan, *Fundamentals of Crash Sensing in Automotive Airbag Systems*. Copyright Society of Automotive Engineers, (2000), at p. 50.

28  [7] Air Bags Overview, *supra* note 5.

1    as acceleration, wheel speed, brake pressure, and impacts.[8]  The SDM monitors and interprets

2    these signals to determine whether the vehicle is involved (or about to be involved) in a crash.

3         100.    Second, while monitoring these signals in "normal" mode, if and when the SDM

4    detects an irregular input that suggests a potential crash, it "wakes up" to search for confirmation

5    of a crash (as opposed to, for example, an irregular input from slamming on the brakes and then

6    avoiding a collision). In this second stage—known as "wake up" or "standby" mode—the SDM's

7    crash-sensing software algorithm is engaged to quickly decipher crash status.[9] After this "wake

8    up" mode is initially triggered by an irregular input, if additional inputs confirm a moderate to

9    severe frontal crash, the SDM should issue a command to "fire" the airbag and/or tighten the

10   seatbelts as needed.[10]

11        101.    Third, the final phase in this sequence is the "reset" phase. From "wake up" mode,

12   after it detects that a crash or a potential crash has fully completed, (i.e., that the vehicle has

13   returned to normal operation after an irregular input) the SDM ultimately returns to its normal

14   operating state through "resetting."

15        102.    A vehicle striking a pothole illustrates this three-phase sequence. The vehicle first

16   operates with the SDM in "normal" mode as it drives down the road.  Then, suddenly, the driver

17   hits an unseen pothole. This jolt from hitting the pothole (and/or related inputs like deceleration)

18   will trigger the SDM to "wake up" mode where it searches for more inputs, quickly asking: "How

19   fast is the vehicle slowing down? Is the front bumper crushed? Is the vehicle speeding back up

20   normally?" and reacting in turn.[11]  If the SDM senses that the vehicle returns to normal operation

21   and continues down the road, it will stop looking for confirmation of a crash and reset back to

22   normal after it determines the danger has passed. On the other hand, if, after it hits the pothole,

23

---

24   [8] Clemson University Vehicular Electronics Laboratory, "Airbag Deployment Systems."
     Available at: https://cecas.clemson.edu/cvel/auto/systems/airbag_deployment.html (last visited
25   August 4, 2021).
     [9] John Pearley Huffman, "The Physics of Airbags," *Car & Driver*, June 14, 2011. Available at:
26   https://www.caranddriver.com/features/a15121591/the-physics-of-airbags-feature (last visited
     August 4, 2021).
27   [10] Jesse Kendall, P.E., and Kenneth Solomon, Ph.D., "Airbag Deployment Criteria" at p. 11.
     Available at: https://www.experts.com/content/articles/Kenneth-Solomon-Airbag-Paper.pdf (last
28   visited August 4, 2021).
     [11] Solomon, *supra* note 10, at p. 11.

the vehicle veers out of its lane and crashes into another vehicle head on, the SDM should detect this second input and fire the airbag.[12]

103.    This entire sequence—from sensing an irregular signal (the pothole), to waking up and searching for confirmation of a crash, to firing the airbag where needed—might take only fractions of a second.  Indeed, a typical "crash duration" in a frontal, vehicle-to-barrier collision lasts for approximately 80-150 milliseconds (0.08-0.15 seconds).[13] For that reason, timing this sequence properly is critically important to ensure that the seatbelts are tightened, and the airbags deploy to protect the occupants when they need to.

**B.    GM used a dangerous and defective SDM software calibration in its trucks and SUVs.**

104.    Throughout the three-phase sequence described above, SDMs rely on software algorithms to interpret signals, estimate crash dynamics, and issue a "deploy" or "do not deploy" command to the safety systems.  For the SDM to function as intended, the software that controls it must be designed to recognize and react to crashes so that the airbags inflate when they are needed.

105.    Crash sensing occurs in "real-time," meaning that the sensing algorithm can only examine a limited window of data to predict and judge the severity of crash events before conclusion, so that the airbags can deploy and protect the occupant on impact.[14] A decision to "deploy" the airbags should occur when thresholds set to tell the SDM a crash is severe enough (i.e. a moderate to severe frontal collision) are met or exceeded. These deployment thresholds are programmed into the SDM software through a process in which engineers "calibrate" the software in the vehicle.

106.    In the Class Vehicles, the software calibration that controls how the SDM detects accidents and deploys the safety system contains a serious defect (the "SDM Calibration Defect"). Specifically, for frontal crashes, GM calibrated the SDM to prevent deployment of airbags and pretensioners more than 45 milliseconds after it enters "wake up" mode.  GM did this

---

[12] *Id.* at p. 8.
[13] Chan, *supra* note 6, at p. 169.
[14] Chan, *supra* note 6, at p. 95.

- 41 -

by increasing the deployment thresholds to unattainable values 45 milliseconds into the crash sequence. With this calibration in place, no matter how severe the inputs the SDM received after 45 milliseconds, the airbags and pretensioners would not deploy.

107.     This defect was no accident; rather, as detailed below, GM included it by design when it modified the SDM software program (known as ALGO-S) in the Class Vehicles to include it.

108.     In affirmatively blocking these critical safety features after 45 milliseconds, GM greatly and needlessly increased the risk of injury and death in a variety of frontal crashes. Specifically, the defect manifests in frontal crashes that endure for 45 milliseconds or longer and require airbag deployment or seatbelt tightening after 45 milliseconds.

109.     For example, this includes frontal crashes with multiple, distinct points of impact known as "concatenated" events. A vehicle that first hits a curb and then veers and hits a tree, or first hits a speed bump and then crashes into the vehicle in front of it, are examples of concatenated crashes. By their nature, concatenated accidents involve multiple discrete inputs for the SDM to detect during a crash sequence.

110.     In concatenated crashes, the first part of the incident (hitting a curb) sends the SDM into its "wake up" or "stand by" mode. The initial curb hit does not trigger the airbag or tighten the seatbelt, but the SDM "wakes up" to confirm whether further irregular signals will follow and indicate a need for the seatbelts or airbags. In the Class Vehicles—because of the software calibration that controls the SDM—the "wake up" mode lasts for just 45 milliseconds after the first irregular signal. After that time, and by GM's design, the deployment thresholds in the software drastically increase, such that no further input, no matter how severe, could exceed the thresholds and trigger the airbag to deploy or seatbelts to tighten.[15]

111.     In addition to concatenated crashes, the defect is also implicated in frontal crashes that increase in severity and require airbag deployment or seatbelt tightening after an initial, "soft" impact. These types of crashes are referred to herein as "prolonged" or "long-soft" crash

---

[15] As detailed in this section, the triggering thresholds are pre-set inputs in the software that tell the SDM that a crash is severe enough to deploy an airbag.

onsets. This would include, for example, a crash into another vehicle's bumper which—because the bumper is comparatively "soft"—may take time before the "soft" bumper collapses, and a "hard" impact into the engine compartment begins.[16]  "Soft" crashes involve a "relatively long crash duration" that may last 20-50 percent longer than a head-on crash into a rigid barrier, like a cement wall.[17]

112.    In a prolonged onset crash, the initial impact into a "soft" surface, such as a bumper, starts the SDM clock ticking. Depending on the crash conditions such as speed, road incline, angle of impact, weather, ice on the road, etc., this "soft" impact may last longer than 45 milliseconds. Throughout the "soft" impact, the SDM will be in wake-up mode to search for a confirmatory signal.  But it will not find another input sufficient to trigger the airbags from the "soft" impact. As explained above, in the Class Vehicles, the SDM clock effectively times out when the 45-millisecond mark hits. So, if the crash proceeds through the "soft" layers and into the engine compartment of another vehicle at say, 70 milliseconds, no airbag or seatbelt deployment is possible no matter how severe the later, "hard" impact gets.

113.    In practice, this means that the airbags and seatbelt pretensioners in the Class Vehicles can *only* fire within 45 milliseconds of a first, irregular signal. If a second signal occurs after 45 milliseconds, the SDM purposefully, by design, disregards signals that would otherwise trigger airbag deployment.

114.    The net result is a "dead zone" starting just 45 milliseconds into a crash, after which vehicle occupants are completely vulnerable. The dead zone lasts until the SDM detects that the crash has ended completely (meaning that the irregular signals have concluded, and the vehicle has resumed normal operation), and then resets back to normal mode.

115.    This significant gap in protection after 45 milliseconds is unreasonably dangerous because accidents—particularly complicated, real-world accidents—are not necessarily completed at that point. In many cases, a crash continues, and airbags and seatbelts are needed,

---

[16] An example of a "soft" crash is where a vehicle crashes into a deformable barrier, or crashes at an angle, which will result in a "softer" impact than a head-on crash into a rigid barrier (which is a "hard" crash). Chan, *supra* note 6, at p. 40.
[17] Chan, *supra* note 6, at p. 40.

1   well after that time. Yet, GM's SDM software calibration in the Class Vehicles makes it

2   impossible for the airbags to deploy and seatbelts to tighten in the "dead zone" in which a crash

3   may still be underway—which is a serious, unjustified, and dangerous safety defect. Indeed, even

4   GM's own cars division includes a significantly longer window for potential deployment.

5        **C.    GM knew that the SDM Calibration Defect was dangerous and unjustified**
         **but has failed to warn or compensate consumers.**

6

7        116.   GM knew or had reason to know of the SDM Calibration Defect and the risks it

8   entails from at least July 10, 2009, when GM acquired substantially all of Old GM's books,

9   records, and personnel, and the knowledge about the defective SDM software calibration those

10  books, records, and personnel held. GM has continued to acquire knowledge—based on lawsuits

11  implicating the SDM Calibration Defect and hundreds of publicly reported accidents with airbag

12  and seatbelt failures—from 2009 to the present.

13       117.   Nonetheless, GM has continued to conceal this problem and the pattern of

14  accidents, injuries, and deaths that have resulted from it. GM has failed to share this information

15  with the consumers who paid for and drive these Class Vehicles every day.

16       118.   It should come as no surprise that GM has unreasonably and unsafely delayed

17  disclosure of the SDM Calibration Defect. Indeed, GM has a recent history of attempts to avoid

18  the costs, potential liabilities, and reputational harms from a safety recall for Takata airbags and

19  seems to have repeated that same tactic here.

20       119.   As is now public knowledge, millions of GM vehicles contain the dangerous and

21  defective Takata airbag inflators that can explode with too much force and spray metal shrapnel

22  into vehicle passenger compartments. While the dangers of these Takata airbags were widely

23  known for years, GM lobbied regulators to delay a recall for its affected vehicles to avoid a

24  resulting hit to its profits.[18] In 2016, GM reported that recalling its vehicles with Takata inflators

25  would cost hundreds of millions of dollars.[19]

26  _____

27  [18] "GM seeks to delay recall of 1 million vehicles with Takata air bag inflators." *Reuters*,
    September 16, 2016. Available at: https://www.reuters.com/article/us-gm-recall/gm-seeks-to-
    delay-recall-of-1-million-vehicles-with-takata-air-bag-inflators-idUSKCN11M27N (last visited

28  August 4, 2021).
    [19] *Id.*

120.     Consumers brought a putative class action seeking redress. *See In re Takata Airbag Product Liability Litigation*, Case No. 14-cv-240009, Dkt. 2750, (S.D. Fl.). While other vehicle manufacturers had earlier and voluntarily recalled their vehicles with Takata airbags, it was only years later, with that consumer litigation pending, that GM finally issued a belated recall. And importantly, it did so only after regulators from NHTSA denied GM's petition for inconsequentiality, in which it attempted to argue that a recall was not necessary.[20]

121.     Here, as in Takata, GM knew or should have known that the SDM software calibration in the Class Vehicles—which includes a dead zone that prevents the airbag and seatbelts from deploying after 45 milliseconds—was dangerous. Nonetheless, GM kept using it anyway, did not recall or repair the Class Vehicles to correct it, and still has not told consumers about it.

### 1.     Old GM recklessly downplayed serious risks of injury when it chose to include the SDM Calibration Defect in the Class Vehicles.

122.     In general, the vehicle manufacturer sets the deployment thresholds in the SDM software calibration that will trigger a command to fire the airbags and/or tighten the seatbelts. The vehicle manufacturer uses results from laboratory crash testing to inform these parameters.[21]

123.     But laboratory results are not sufficient in themselves, because real-world accidents—which can occur from multiple angles and involve inputs from myriad variables like weather, temperature, or incline—will differ from the testing environment.[22] For that reason, manufacturers must exercise appropriate care to design crash sensing frameworks that function to keep people safe in the real world.

124.     Old GM worked with an external team of engineers from Delco Electronics (later called Delphi Electronics) to develop the SDM software program used in the Class Vehicles, starting with Model Year 1999. The team from Delco developed a proposed software program, known as ALGO-S, which it presented to Old GM for review.

---

[20] "GM will recall 7 million vehicles for air bag issue worldwide." *Reuters*, November 23, 2020. Available at: https://www.reuters.com/article/us-gm-recall/gm-will-recall-7-million-vehicles-for-air-bag-issue-worldwide-idUSKBN2831TH (last visited August 4, 2021).
[21] Huffman, *supra* note 9.
[22] Solomon, *supra* note 10, at 13.

125.     During this time, Old GM divided the design and development of its vehicles into a "cars" group and a "trucks" group, with the trucks group responsible for design, development, and production of larger model trucks and SUVs. After it reviewed the Delco team's proposed SDM software algorithm, ALGO-S, the trucks group insisted on adding the 45-millisecond cut off described above when it calibrated that program for use in its trucks and SUVs.  On information and belief, the trucks group proposed this cutoff based on test results which indicated that frontal-barrier accidents in its trucks and SUVs would be complete within 45 milliseconds or less in laboratory conditions.

126.     In response, the Delco team expressly warned the trucks group that such an aggressive cutoff could fail to capture additional signals in complex crashes outside of the laboratory, leaving occupants completely unprotected during prolonged onset crashes or crashes with multiple impact points. The trucks group insisted, however, and the 45-millisecond cutoff was added in the SDM software calibration for GM trucks and SUVs.

127.     On information and belief, documents, records, and personnel reflecting GM trucks' insistence—over Delco's objection—to include this cutoff were passed on from Old GM to New GM in 2009.  On information and belief, other major vehicle manufacturers throughout the industry include a significantly longer window for the SDM to detect a potential accident and deploy the airbags and seatbelts.

128.     Indeed, in the ALGO-S program as it was designed by Delco, the window in which the airbags and seatbelts can deploy in a crash is up to at least 150 milliseconds—over three times the interval that GM trucks added in the defective calibration.  Tellingly, after the Delco team repeated the same warnings about the truck group's proposed 45-millisecond cutoff to GM's cars group, the cars group rejected the shorter cutoff. Instead, the cars group used the ALGO-S software with the Delco-recommended period of 150 milliseconds for deployment.

129.     Delco's original 150 millisecond window allows for airbag and seatbelt deployment in real-world frontal crashes, which themselves can endure for up to 150 milliseconds.[23] When GM trucks added the defective 45-millisecond cutoff to the software

_____

[23] Chan, *supra* note 6, at p. 169.

1    calibration in the Class Vehicles, it prematurely, and dangerously, prevented the airbags and

2    seatbelts from functioning when a frontal crash may still be well underway.

3              **2.      The 45-millisecond cutoff was not necessary to protect against "late"**
                       **airbag deployments.**

4

5    130.    GM trucks group's insistence on the 45 millisecond window after which the

6    airbags and seatbelts cannot deploy was unjustified and unsafe.

7    131.    On information and belief, the trucks group chose to set this aggressive cutoff due

8    to concerns about the potential for airbags to deploy "too late" during an accident. But as the

9    trucks group also knew, these concerns were unwarranted given technology that mitigated the

10   risks of "late" airbag deployments.

11   132.    A brief history of airbags in motor vehicles puts this reckless decision in context.

12   Before 1998, airbag systems were effectively one-size-fits-all. Designed to protect against only

13   frontal crashes, these "first-generation" airbags were built to meet a standardized government test

14   that required they protect an unbelted, midsize adult male dummy (175 pounds) in a 30-MPH

15   crash into a rigid barrier.[24] To do so, an airbag had to fill up quickly with gas, resulting in a

16   deployment speed of up to 200 MPH.[25]

17   133.    Not all vehicle occupants fit this description, however, and the intensity of first-

18   generation airbag deployment could prove dangerous for children and those who were positioned

19   too close to the bag when it inflated (for example, because they had already been thrown forward

20   toward the steering wheel during an under-way accident).[26]

21   134.    Public perception about airbag safety in motor vehicles, and in turn, the vehicle

22   manufacturers that sold them, turned increasingly unfavorable following reports of late and

23   aggressive deployments in first generation airbags. Both regulators and vehicle manufacturers

24   _____

[24] Jack Keebler, *Airbags Safe Insane? – Special Report*, Motortrend (Sept. 1, 2000),
25   https://www.motortrend.com/news/airbags-safe-insane-special-report/ (last visited August 4,
     2021).
26   [25] *Id.*; *see also* David B. Ottaway & Warren Brown, *From Life Saver to Fatal Threat*, The Wash.
     Post (June 1, 1997), https://www.washingtonpost.com/archive/politics/1997/06/01/from-life-
27   saver-to-fatal-threat/56d05b9e-a1bc-49b7-beb4-43480762b25e/ (last visited August 4, 2021).
     [26] Susan A. Ferguson & Lawrence W. Schneider, *An Overview of Frontal Airbag Performance*
28   *with Changes in Frontal Crash-Test Requirements: Findings of the Blue Ribbon Panel for the*
     *Evaluation of Advanced Technology Airbags*, Traffic Injury Prevention 3 (Nov. 2008).

recognized the need to address these issues.[27] Beginning in October 1995, NHTSA initiated a series of actions to minimize and eventually eliminate the adverse effects of late and aggressive airbag deployments while preserving their life-saving benefits.[28]

135.    In 1997, NHTSA issued modified federal rules to allow automakers to reduce the energy in frontal airbags. This led to "an industry-wide changeover" to "redesigned" airbags in the very next model years (1998-1999).[29] The "redesign" consisted of several new technology innovations. The first and immediate solution was "depowered" airbags: automobile manufacturers removed some of the gas-generating propellant or stored gas from the inflators to reduce the pressure and velocity of deployments. This change alone was highly effective in reducing low-to-moderate speed fatalities.[30]

136.    Other innovations to reduce the risk of aggressive deployments included reducing the volume or rearward extent of airbags, positioning them further from occupants, revised folding techniques, and tethering and shifting from pyrotechnic inflators to hybrids including stored gas.[31]

137.    Old GM knew about and employed these new technologies in its vehicles. Indeed, as the director of Old GM's Safety Center Terry Connolly said in 2000, there were no significant downsides to using this new "depowered" airbag technology, even for unbelted passengers.[32]

138.    Further innovations referred to as "advanced" or "smart" airbags followed soon thereafter.[33] "Advanced" airbags alter deployment patterns according to feedback from several sensors. These sensors tailor how the airbag deploys based on the severity of the crash, the size

---

[27] U.S. Department of Transportation, NHTSA, *An Evaluation of the 1998–1999 Redesign of Frontal Air Bags,* NHTSA Technical Report No. DOT HS 810 685, p.11, (August 2006) [hereinafter "NHTSA Redesign Report"]; *see also* Ferguson & Schneider, *supra* note 26.
[28] NHTSA Redesign Report, *supra* note 27, at vii.
[29] *Id.*; *see also* Micah Wright, *The Hidden Dangers of Older Airbags*, MotorBiscuit (May 8, 2015), https://www.motorbiscuit.com/the-hidden-dangers-of-older-airbags (last visited August 4, 2021).
[30] *See* NHTSA Redesign Report, *supra* note 27 at 25.
[31] *Id.* at vii.
[32] Keebler, *supra* note 24.
[33] *See* NHTSA Redesign Report, *supra* note 27 at p. 3.

1    and posture of the vehicle occupant, whether the occupant is wearing a seatbelt, and how close

2    the occupant is to the airbag. [34]

3        139.    Many "advanced" systems use dual-stage or multi-stage inflators. This means that

4    they have two inflation stages that can be ignited sequentially or simultaneously depending on

5    crash severity.

6        140.    "Advanced" airbags phased into production beginning September 1, 2003 and

7    were required in all new vehicles by September 1, 2006.[35]

8        141.    Thus, based on the depowered and advanced airbag technology starting in 1998

9    and 1999, the risks posed by "late" deployments in early generation airbags had greatly

10   diminished. Indeed, while NHTSA estimates that more than 290 deaths were caused by frontal

11   airbag inflation between 1990 and 2008, nearly 90 percent of those deaths occurred in vehicles

12   manufactured before 1998 (i.e. with first generation airbag technology).[36] Today, with this new

13   technology, serious injuries from properly functioning airbags are rare.[37]

14       142.    Despite knowledge and use of the new technology mitigating the risks of late

15   deployments, the trucks group still insisted on shutting off the airbags and seatbelts in the Class

16   Vehicles after 45 milliseconds. On information and belief, despite these well-established

17   advancements in airbag technology outlined above, GM continued to use this same defective

18   software algorithm in its vehicles in 2009 and beyond.[38]

19       143.    This reckless decision and continued disregard for clear warnings about the risks

20   in shutting off the SDM too soon during an accident has had real and tragic consequences.

21              **3.    GM knew about a pattern of suspicious accidents involving the SDM
               Calibration Defect but has done nothing to correct it.**

22

23       144.    As outlined above, GM has known about the SDM Calibration Defect since it took

24   over Old GM's books, records, and personnel in 2009. GM has continued to accrue knowledge of

---

[34] Wright, *supra* note 29.

[35] NHTSA Redesign Report, *supra* note 27, at vii.

[36] Insurance Institute for Highway Safety. "Airbags" (2021), available at:
https://www.iihs.org/topics/airbags (last visited August 4, 2021).

[37] *Id.*

[38] Publicly available crash data reports from NHTSA indicate that the Delco SDM was used in
GM trucks vehicles up through at least MY 2015.

the defect, and its serious consequences, in the years since. Indeed, GM has known about, investigated, and even litigated numerous crashes in which airbags suspiciously failed to deploy in multi-impact or prolonged onset frontal crashes in the Class Vehicles—a clear indication of the SDM Calibration Defect.

145.     Despite obvious signs of a known and dangerous risk, GM concealed these accidents and the SDM Calibration Defect from consumers and regulators to avoid or at least delay a recall and the attendant costs and reputational damage therefrom. To date, GM has taken no corrective action to repair or recall the Class Vehicles to address this defect.

a.       **GM has litigated personal injury lawsuits for suspicious airbag failures in the Class Vehicles.**

146.     In addition to its institutional records and knowledge, GM was on notice of the SDM Calibration Defect through litigating personal injury lawsuits involving airbag and seatbelts failures consistent with the SDM Calibration Defect.

147.     In one case filed in 2011—just two years after GM was formed—Plaintiffs James Nossar sued GM LLC following a crash in his 2005 Chevrolet Trailblazer (a Class Vehicle here). As detailed in that complaint, on or about February 25, 2010, Mr. Nossar drove his Trailblazer into the back of a 1999 Suburban "and sustained a moderate to severe frontal impact . . . at a rate of speed that exceeded the airbag system's predetermined deployment threshold." *See Nossar v. General Motors LLC*, Dkt. 4, Case No. 1:11-cv-02129 (N.D. Ga.). Despite this "significant frontal collision," the airbag failed to deploy and seatbelt pretensioners failed to trigger. Without the airbag or seatbelt to protect him, Mr. Nossar's head slammed into the steering wheel, which caused "fracturing practically every bone in his face and brain injuries." *Id.*

148.     In support of his claims, in April 2012, Mr. Nossar filed an expert report from Chris Caruso.  Mr. Caruso is an expert in automotive crash sensing systems and worked for Delco engineering during the development of the defective SDM software in the Class Vehicles. *See id.* at Dkt. 40-2.

149.     In that report, Caruso detailed the same flaws in the SDM software calibration described herein. He explained that the airbag sensing system in the Trailblazer was "defective by

design and has the potential to not deploy frontal impact airbags in high speed frontal impacts where conditions vary slightly from the perfect laboratory conditions where the system was designed and tested." Based on Caruso's experience working in the development of the SDM software, he related that there were concerns, due to the calibration, "that in longer duration, but high severity events and in concatenated events (such as a curb impact followed by a utility pole impact), the airbags would fail to deploy because the algorithm deployment thresholds were no longer active." *Id.*

150. Caruso further explained that as that litigation proceeded into discovery, he would "expect to identify emails and other correspondence between GM Truck Engineers and Delphi Crash Sensor engineers discussing the concerns over GM Truck Groups' edict to set certain crash sensor calibration parameters outside the recommended minimum guidelines set by the crash sensing algorithm designers [i.e. the Delphi/Delco engineers]." Caruso "ha[d] seen these documents before and kn[e]w the content," and summarized that "the calibration values result in premature turning off of algorithm thresholds which effectively disables the front airbags after 45 to 50ms." *Id.* (emphasis added).

151. As to Mr. Nossar's crash specifically, Caruso concluded that the airbags and seatbelts failed because, at the time the airbags should have deployed, and consistent with the SDM Calibration Defect here, "the SDM calibration had already timed out after 45-ms after the crash started." Caruso's conclusion there was that "[t]he failure by GM to understand the risks of certain dictated calibration values [in the SDM software calibration] led directly to the design defect that rendered the frontal impact airbag system in the 2005 Chevrolet Trailblazer defective and unreasonably dangerous in certain field relevant, real-world crashes." *Id.*

152. GM LLC, a named defendant in that case, clearly knew about and received Mr. Caruso's report outlining the history of these issues in the SDM software calibration.

153. Another Plaintiff, Chad Vaith, filed a lawsuit against GM LLC in 2017 after an accident in his MY 2014 Silverado. As that complaint relates, in December 2015, Mr. Vaith was involved in an accident in which he drove his Silverado "off the road into a ditch," after which he "continued through the ditch for approximately forty yards before launching over the

driveway/culvert. . . before coming to a final rest approximately twenty yards south." *See Vaith v. General Motors LLC*, Dkt. 1, Case No. 18-cv-00031 (D. Minn.). Despite multiple impacts in that prolonged accident, the airbags and seatbelts did not deploy, causing Mr. Vaith to "suffer severe personal injuries." Mr. Caruso was also a disclosed expert in that case, although a report from Caruso was not publicly filed. *See, e.g.*, *id.* at Dkt. 64.

154.    Mr. Vaith's case proceeded into fact discovery and ultimately resulted in a "negotiated settlement" between Mr. Vaith and GM. *Id.* at Dkt. 82.

155.    Apart from previous lawsuits against GM with Mr. Caruso as an expert, another automotive crash expert, Sal Fariello, wrote directly to GM's CEO Mary Barra twice in December 2016 to raise similar concerns about issues he had observed in the airbag sensing system in model year 2006 GM SUVs. Mr. Fariello's letters are available in NHTSA's public records.[39]

156.    Mr. Fariello's letters to GM's CEO focused on an accident in a 2006 Trailblazer (a Class Vehicle here) for which he served as a litigation consultant in a lawsuit filed in or around 2014. Therein, he lists multiple technical issues with the airbag sensing system that he wanted to bring to GM's attention and urge them to address. For example, he cautions that, in his view:

a.      "The deployment thresholds [i.e. the inputs that will trigger deployment] for the airbag were set too high and compromised driver and passenger safety as a result of GM's improper effort to mitigate lawsuits related to relatively low speed deployments of the airbag.";

b.      "The deployment threshold did not meet GM's and generally accepted standards for when an airbag should deploy in order to prevent occupant death based on written technical papers and educational videos produced by GM or its employees."; and

c.      "Failure of the SDM to independently process a crash pulse and deploy the airbag implicates a defective software algorithm; specifically 'Algo S-H' [the software algorithm in the Class Vehicles]."

---

[39] Mr. Fariello is a forensic crash investigator. *See* Bill Saporito, "Air Bag Blow Out," *Time Magazine,* (December 4, 2014). Available at: https://time.com/3617681/the-air-bag-blowout (last visited August 4, 2021).

157.    At the time, in 2016, Mr. Fariello noted that the SDM could be re-programed "with a more responsive algorithm" to resolve these issues, and that GM's "only apparent motive for not doing this related to the cost of implementing a recall."

158.    Frustrated by the response he received from GM's counsel in response to these letters, Mr. Fariello then wrote to Senator Bill Nelson of Florida enclosing his correspondence to GM and escalating his concerns. Senator Nelson then forwarded that correspondence to NHTSA.[40]

159.    As Mr. Fariello concluded, in his view, GM was stalling on this issue "just as they did with the Takata airbag matter."

**b.    GM knew or should have known about hundreds of publicly reported airbag failures in the Class Vehicles.**

160.    GM was also on notice of the SDM Calibration Defect and its attendant safety risks from consumer complaints. These complaints are publicly available online through NHTSA's website. Between 1999 and the present, hundreds of consumers reported to NHTSA that airbags and/or seatbelts had suspiciously failed during frontal crashes involving concatenated (multiple) impacts or potentially prolonged crash onsets.

161.    On information and belief, vehicle manufacturers such as GM monitor these public databases for complaints about their vehicles, considering their statutory obligations to report known safety defects in their vehicles to NHTSA and to consumers. Moreover, in many of these reports, it is expressly clear that GM was directly informed of, and even investigated, the accident in question. While GM has access to the full body of these complaints from 1999 and onward in the public database, it bears mention that over three hundred of them were filed after the new GM entities were created in 2009.[41]

162.    One such complaint details an accident in a 2004 Chevrolet Trailblazer in August 2014. The driver states that they were traveling 50 MPH on a four-lane highway where another

---

[40] Mr. Fariello's letters to GM and further documentation are available at:
https://static.nhtsa.gov/odi/cmpl/2017/CL-10955948-3381.pdf (last visited August 4, 2021).
[41] Many publicly reported accidents occurred prior to 2009, which information would likewise have been available to Old GM. GM would have acquired Old GM's knowledge of these accidents, reflected in its books, records, and personnel, when it was formed in 2009.

vehicle, waiting to U-turn, "decided to turn right into me—oncoming traffic." The vehicles

crashed, which then "sent [the driver] into a head on collision with the guard rail." The driver

questions that "there were 2 incidents in that sequence of events that the airbags should have

deployed, but did not! This accident caused several injuries to myself and my passenger. We

definitely could have been killed and no airbags to help save our lives…" Photos of the damage to

the vehicle from that accident follow. (NHTSA Complaint #1100694).





163.    Another report describes a September 2012 accident in a 2005 Chevrolet Trailblazer. It states that the driver, at 30 MPH, swerved to avoid a deer in the road, which caused the vehicle to lose control, exit the road, and ultimately "crash[] off a 9 foot embankment." From there, the vehicle continued to crash through a field, into a dirt levy, and finally into a drainage ditch. None of the airbags deployed. The driver "became unconscious after his head crashed into the steering wheel" and "suffered severe neck injuries." The dealer later inspected the vehicle but responded that the results were "inconclusive" and that the manufacturer "was notified but offered no assistance." Photos of the damage to the vehicle from that accident follow. (NHTSA Complaint #942950).[42]



---

[42] Accident documentation and photos are available at: https://static.nhtsa.gov/odi/cmpl/2012/EQ-10477257-8767.pdf (last visited August 4, 2021).

1
2
3
4
5
6
7
8
9
10
11
12



13    164.    In another example, the complaint describes a serious accident in March 2019

14  involving a 2005 Chevrolet Equinox. The vehicle crashed into the front of another vehicle at 35

15
16
17
18
19
20
21
22
23
24
25
26
27
28

MPH. The airbags did not deploy. The driver sustained injuries to the head and ankle and required medical attention.  Photos of the damage to the vehicle from that accident follow.



165.	(NHTSA Complaint #1550406).[43]

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15

16          166.    Another account of a July 2007 accident in a model year 2001 Isuzu Rodeo

17   describes a crash at 65 MPH so severe that "the median on the highway sustained property

18   damage" and "the vehicle was destroyed," but the airbags did not deploy. This is how the vehicle

19   looked after that accident:

20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10



167.    Additional examples of similarly suspicious frontal accidents—i.e., frontal accidents with multiple discrete impacts, or potentially prolonged onset frontal crashes involving "soft" impacts—in which the airbags and/or seatbelts failed include:

a.    NHTSA complaint #753287 dated Tuesday, October 16, 2001, reported an accident on Monday, October 8, 2001 involving a 1999 CHEVROLET SUBURBAN in Andover, KS. The complaint states: "60 MPH CROSS WIND BLEW THE SUBURBAN HEAD ON INTO THE CONCRETE MEDIAN. THE VEHICLE SPUN 360 DEGREES, WENT INTO THE DITCH, THE FRONT END HIT AGAIN THE VEHICLE WENT UP THE OTHER SIDE OF THE EMBANKMENT AND STOPPED IN A FIELD. ENTIRE FRONT END OF THE FRAME NOT REPAIRABLE . . . FRONT CROSSMEMBER BENT AND ENGINE MOVED UPWARDS AT A 10 DEGREE ANGLE. **AIR BAGS FAILED TO DEPLOY**. *AK"[44]

b.    NHTSA complaint #859858 dated Friday, April 7, 2000, reported an accident on Saturday, April 3, 1999 involving a 1999 CHEVROLET SILVERADO. The complaint states: "WHILE TRAVELING ON A WET ROAD AT HIGHWAY SPEED OF 60 MPH VEHICLE HYDROPLANED, SPUN INTO A DITCH, AND COLLIDED INTO A TREE WITH BOTH SIDES AND FRONT OF VEHICLE. **UPON IMPACT, AIR BAGS FAILED TO DEPLOY**. MFR. NOTIFIED. *AK"

[44] Emphasis is supplied here and in the paragraphs that follow.

- 59 -

1          c.        NHTSA complaint #877320 dated Wednesday, January 3, 2001, reported

2     an accident on Friday, December 1, 2000 involving a 1999 CHEVROLET SUBURBAN in

3     Amarillo, TX. The complaint states: "CONSUMER WAS TRAVELING ABOUT 40MPH ON

4     HIGHWAY AND ANOTHER VEHICLE VEERED INTO HER LANE, HITTING HER HEAD-

5     ON, AND PUSHING VEHICLE INTO ANOTHER LANE. **VEHICLE HIT TELEPHONE**

6     **POLE, AND DUAL AIRBAGS DIDN'T DEPLOY**. CONSUMER WAS INJURED.

7     CHEVROLET HAS BEEN NOTIFIED. *AK"

8          d.        NHTSA complaint #10060150 dated Tuesday, March 2, 2004, reported an

9     accident on Tuesday, February 24, 2004 involving a 2001 CHEVROLET BLAZER in Austin,

10    TX. The complaint states: "D**RIVER SIDE AIR BAG FAILED TO DEPLOY IN A CRASH**

11    THROUGH: 1. A SIX FOOT TALL WOODEN FENCE AT ALMOST 30MPH, THEN 2. THE

12    EXTERIOR SIDE OF A 2-STORY HOME THAT CONTAINED THE KITCHEN SINK AND

13    PLUMBING FIXTURES, WHILE SMASHING UP AND OVER THE FIFTEEN-INCH

14    CONCRETE FOUNDATION, FRONT-END FIRST.*AK"

15         e.        NHTSA complaint #10082050 dated Thursday, July 15, 2004, reported an

16    accident on Wednesday, July 14, 2004 involving a 2003 CHEVROLET SUBURBAN in Fresno,

17    CA. The complaint states: "THE CONSUMER WAS INVOLVED IN AN ACCIDENT WHERE

18    IT WAS HIT FROM THE FRONT DRIVER SIDE, THE IMPACT CAUSED THE VEHICLE

19    TO HIT A TELEPHONE POLE HEAD ON. **THE AIR BAGS DID NOT DEPLOY**. *JB"

20         f.        NHTSA complaint #10103512 dated Friday, December 10, 2004, reported

21    an accident on Sunday, December 5, 2004 involving a 2001 CHEVROLET SILVERADO in

22    Rialto, CA. The complaint states: "CONSUMER'S VEHICLE WAS REAR ENDED WHILE

23    DRIVING 50 MPH. THE VEHICLE WAS FORCE[D] INTO A SPIN AND THEN, IT HIT A

24    CONCRETE ROAD DIVIDER. UPON IMPACT, **NEITHER FRONTAL AIR BAGS**

25    **DEPLOYED**. DRIVER SUSTAINED INJURIES, AND HAD TO BE TRANSPORTED TO A

26    LOCAL HOSPITAL. DEALER AND MANUFACTURER WERE NOTIFIED. THE

27    CONSUMER STATED THAT THE SEAT BELT DID NOT KEEP HER FROM HITTING HER

28    CHEST ON THE STEERING WHEEL."

g.      NHTSA complaint #10108404 dated Tuesday, February 1, 2005, reported an accident on Tuesday, January 11, 2005 involving a 2000 CHEVROLET SILVERADO in Toney, AL. The complaint states: "A CAR PULLED OUT IN FRONT OF ME WHICH STILL HIT THE DRIVER'S SIDE OF MY VEHICLE (2000 CHEVY SILVERADO). **THEN MY TRUCK HAD A FULL FRONTAL IMPACT AT GREATER THAN 30 MPH INTO A DIRT WALL IN WHICH NEITHER THE DRIVER'S NOR PASSENGER'S AIRBAGS DEPLOYED (THE TRUCK IS TOTALLED)**. I HIT THE STEERING WHEEL AND GOT A CONCUSSION WITH BLOOD AROUND THE BRAIN, A BROKE CHEEK BONE, AND FRACTURED HIP. MY WIFE WAS 33 WEEKS PREGNANT AT THE TIME AND HER WATER BROKE AND SHE GOT A COMPOUND FRACTURE IN THE LOWER LEG/ANKLE. AS A RESULT OF THE WATER BREAKING MY SON WAS BORN 3 DAYS LATER 7 WEEKS PREMATURE. AS FOR WHAT WAS DONE TO CORRECT THE PROBLEM I'M HOPING IT WILL AT LEAST BE INVESTIGATED TO MAKE SURE THIS IS NOT A SYSTEMIC PROBLEM (I.E. SOFTWARE SCREWUP SOMETHING NOT HOOKED UP RIGHT IN THE AIRBAG SYSTEM ETC)."

h.      NHTSA complaint #10115806 dated Thursday, March 24, 2005, reported an accident on Thursday, March 24, 2005 involving a 2002 CHEVROLET SILVERADO in Claremore, OK. The complaint states: "A PIECE OF FURNITURE WAS LOCATED IN THE MIDDLE OF THE HIGHWAY WHILE DRIVING, CAUSING THE DRIVER TO HIT THE FURNITURE. DRIVER LOST CONTROL OF A VEHICLE, AND IT CRASHED INTO A CONCRETE WALL. DRIVER'S SIDE SEAT BELT FAILED, AND **THE AIRBAGS DID NOT DEPLOY**."

i.      NHTSA complaint #10158090 dated Tuesday, May 23, 2006, reported an accident on Sunday, February 26, 2006 involving a 2004 CHEVROLET TRAILBLAZER in Fayetteville, NC. The complaint states: "DT*: THE CONTACT STATED WHILE DRIVING 50 MPH THE VEHICLE WAS INVOLVED IN A HEAD ON COLLISION WITH ANOTHER VEHICLE. THE VEHICLE CONTINUED MOVING AND STOPPED BY COLLIDING WITH A STORE SIGN. **THE AIR BAGS DID NOT DEPLOY** AND SEAT BELTS WERE WORN . .

. THE INSURANCE COMPANY DETERMINED THE VEHICLE WAS TOTALED DUE TO THE ACCIDENT. THE DEALER DOES NOT HAVE THE MEANS TO TEST FOR AIR BAG NON-DEPLOYMENT. UPDATED 1/24/2007 - *NM"

j.     NHTSA complaint #10161658 dated Thursday, July 6, 2006, reported an accident on Saturday, June 3, 2006 involving a 1999 CHEVROLET BLAZER in Ludlow, MA. The complaint states in part: "CHEVY DRIVER HIT A CAR IN HER LANE FIRST, THEN RICOCHETED HEAD ON INTO A TREE. **NEITHER TIME DID AIRBAGS DEPLOY**. *TT"

k.     NHTSA complaint #10163811 dated Friday, July 28, 2006, reported an accident on Thursday, July 20, 2006 involving a 2000 ISUZU RODEO in Nederland, TX. The complaint states: "A GIRL RAN A RED LIGHT AND I HIT HER IN THE PASSENGER SIDE OF HER CAR HEAD ON WITH MY 2000 ISUZU RODEO. IT WAS A FULL FRONTAL COLLISION FOR ME AND MY CHILDREN. LUCKILY, WE ARE ALWAYS BUCKLED UP BECAUSE **NONE OF MY AIRBAGS DEPLOYED AT ALL**. THE OTHER CAR WAS GOING ABOUT 60 MPH AND HER AIRBAG DEPLOYED WHEN I HIT HER BUT MINE DID NOT. LUCKILY, MY CHILDREN WERE NOT HURT BADLY BUT UNFORTUNATELY, I SUSTAINED NECK, BACK AND KNEE INJURIES. I WAS AND STILL AM VERY UPSET THAT MY AIRBAGS FAILED. EVEN THE OWNER OF THE BODY SHOP I USE WAS IN SHOCK THAT THEY DID NOT DEPLOY AS THE IMPACT WAS ENOUGH TO SPLIT THE FRAME OF MY RODEO AND TOTAL IT OUT . . . THANK YOU FOR YOUR TIME, I HOPE I CAN HELP ANOTHER FAMILY FROM GETTING INJURED."

l.     NHTSA complaint #10217793 dated Tuesday, February 12, 2008, reported an accident on Thursday, February 7, 2008 involving a 2006 CHEVROLET TRAILBLAZER in Lakewood, OH. The complaint states: "A 2006 CHEVY TRAILBLAZER TRAVELING OVER THE SPEED LIMIT ON MY STREET CRASHED INTO A TREE, A PARKED CAR, AND THEN CONTINUED TO ROLL OVER ACROSS MY FRONT LAWN, LANDING SIDEWAYS AFTER FLIPPING SEVERAL TIMES. THE OCCUPANTS WERE SEVERELY

1    INJURED. **NO AIRBAGS DEPLOYED DURING THE CRASH**. THE DRIVER OF THE

2    VEHICLE IS IN ICU NEEDING FACIAL RECONSTRUCTIVE SURGERY. *TR"

3         m.      NHTSA complaint #10221319 dated Saturday, March 15, 2008, reported

4    an accident on Thursday, February 21, 2008 involving a 2005 CHEVROLET TRAILBLAZER in

5    Clay, NY. The complaint states: "I WAS DRIVING ON A 2 LANE ROAD GOING 45MPH. A

6    CAR WAS FOLLOWING CLOSE BEHIND ME SO I WENT TO GET INTO RIGHT LANE

7    AND MY TRUCK DID 5 360 AND HIT 3 TREES HEAD ON AND **AIR BAG NEVER**

8    **DEPLOYED**. *TR"

9         n.      NHTSA complaint #10263896 dated Wednesday, April 1, 2009, reported

10   an accident on Thursday, March 26, 2009 involving a 2002 CHEVROLET TRAILBLAZER in

11   Elizabeth, NJ. The complaint states: "I WAS IN A CAR ACCIDENT, WHERE I WAS

12   TRAVELING AT ABOUT 35 MPH. AN AGGRESSIVE DRIVER SPEED AROUND ME AND

13   CUT ME OFF AND THAN STOMPED ON THIS BRAKES IN FRONT OF ME. DUE TO

14   THAT I SWERVED TO MISS HIM CLIPPING HIS RIGHT BACK LIGHT AD BUMPER

15   WITH MY LEFT HEADLIGHT AND BUMPER. AS I WAS SWERVING I HIT A TREE JUST

16   ABOUT DEAD ON WITH MY CAR . . . I HIT THE TREE AT A SPEED OF ABOUT 28-30

17   MPH. AFTER INITIAL IMPACT I WAS RUSHED TO THE HOSPITAL DUE TO

18   UNCONSCIOUS AND FACIAL CONTUSIONS. DURING THE FIRST MOMENTS AFTER

19   THE ACCIDENT, ONE OF THE FIRST THINGS OFFICERS, EMTS AND WITNESSES SAID

20   WAS "**I CAN'T BELIEVE THE AIRBAGS DIDN'T GO OFF**." IN THE RECENT DAYS

21   AFTER THE ACCIDENT I HAVE HAD SEVERAL MECHANICS AND SUCH APPRAISE

22   THE CAR, THE ONE COMMON THEME THEY ALL SHARE IS THAT THEY SUSPECT

23   THERE MIGHT NOT BE AN AIRBAG WHERE IT BELONGS. OR THE LACK THERE OF.

24   *TR"

25         o.      NHTSA complaint #10463248 dated Wednesday, June 27, 2012, reported

26   an accident on Friday, July 15, 2011 involving a 2005 GMC in Richmond, VA. The complaint

27   states: "THE CONTACT STATED WHILE DRIVING 55 MPH, HE CRASHED INTO A TREE.

28   **THE AIR BAGS FAILED TO DEPLOY** . . . A POLICE REPORT WAS FILED. THE

MANUFACTURER WAS MADE AWARE OF THE FAILURE; HOWEVER, THEY

PROVIDED NO ASSISTANCE . . . THE CONSUMER'S VEHICLE WAS DAMAGED WHEN

HE TRIED TO AVOID HITTING THE VEHICLE BY SWERVING SIDEWAYS AND

SLIDING INTO THE GRASS. HE TRIED STOPPING THE VEHICLE WHILE IT WAS STILL

ON THE PAVEMENT BUT HE INEVITABLY RAN INTO THE DITCH AND FLEW

AIRBORNE INTO A TREE, AND THE TRUCK OVERTURNED."

p.       NHTSA complaint #10524151 dated Wednesday, July 10, 2013, reported

an accident on Thursday, May 30, 2013 involving a 2006 CHEVROLET TRAILBLAZER in

Mansfield, OH. The complaint states: "THIS COMPLAINT IS BEING FILED ON BEHALF OF

THE VEHICLE OWNER AND DRIVER. THIS CHEVY TRAILBLAZER WAS INVOLVED

IN A TWO VEHICLE, DOUBLE FATAL CRASH. THE FRONT OF THE TRAILBLAZER

STRUCK THE DRIVER'S SIDE DOOR OF A CAVALIER THAT FAILED TO YIELD FROM

A STOP SIGN. THE TRAILBLAZER STAYED CONNECTED WITH THE CAVALIER,

FORCING IT OFF THE LEFT SIDE OF THE ROADWAY AND INTO A LARGE TREE.

BOTH OCCUPANTS IN THE CAVALIER WERE FATALLY INJURED. **THE FRONT

AIRBAGS DID NOT DEPLOY ON THE TRAILBLAZER** AND NO EVENT WAS

RECORDED ON THE AIRBAG CONTROL MODULE. *TR"

q.       NHTSA complaint #10537593 dated Tuesday, August 27, 2013, reported

an accident on Tuesday, August 13, 2013 involving a 2003 CHEVROLET BLAZER in Harrison

Township, MI. The complaint states: "I WAS TRAVELING SOUTHBOUND WHEN I

EXPERIENCED A SEIZURE AND LOST CONTROL OF MY VEHICLE. I PROCEEDED TO

VEER TO THE LEFT WHERE I CLIPPED SEVERAL CARS THAT WERE HEADED

NORTHBOUND . . . I THEN PROCEEDED OVER A TREE LAWN AND INTO A PARKING

LOT. I HIT A DODGE RAM PICKUP WITH THE RIGHT FRONT CORNER OF MY

VEHICLE AND PUSHED THAT VEHICLE INTO ANOTHER PARKED CAR THAT WAS

NEXT TO IT. BOTH VEHICLES ENDED UP SIDEWAYS AND MY VEHICLE ENDED UP

SPUN AROUND 180 DEGREES . . . THE JAWS OF LIFE WERE USED TO EXTRACT ME

FROM MY VEHICLE. I WAS TAKEN TO A LOCAL HOSPITAL WHERE IT WAS

DETERMINED THAT I SUFFERED BURST FRACTURES OF L1, L2, AND L3. I ALSO

SUFFERED AN EVULSION FRACTURE OF MY LEFT ANKLE. THE POLICE REPORT

STATES THAT I WAS TRAVELLING AT A HIGH RATE OF SPEED AND THAT THE

VEHICLES WHICH WERE NORTHBOUND WERE JUST CLIPPED. **THE AIRBAGS ARE**

**BOTH STILL WITHIN THEIR CASES AS NEITHER DEPLOYED** . . . THE INSURANCE

INVESTIGATOR EVEN EXPRESSED TO MY WIFE THAT HE WAS SURPRISED THAT

THE AIR BAG DID NOT DEPLOY."

r.        NHTSA complaint #10550276 dated Wednesday, October 30, 2013,

reported an accident on Monday, October 28, 2013 involving a 2006 CHEVROLET

TRAILBLAZER in Neihart, MT. The complaint states: "TL* THE CONTACT OWNS A 2006

CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING

APPROXIMATELY 35 MPH, SHE LOST CONTROL OF THE VEHICLE WHILE DRIVING

IN SNOWY WEATHER. THE VEHICLE NOSE DIVED INTO AN EMBANKMENT AND

THEN CRASHED INTO A BOULDER. **THE AIR BAGS FAILED TO DEPLOY**. THE

CONTACT WAS TRANSPORTED TO THE HOSPITAL VIA AMBULANCE FOR

TREATMENT OF A CONCUSSION AND BRUISING. THE FRONT PASSENGER WAS

ALSO INJURED AND SUSTAINED BRUISING. THE VEHICLE WAS DESTROYED. THE

MANUFACTURER WAS MADE AWARE OF THE FAILURE."

s.        NHTSA complaint #10574295 dated Sunday, March 23, 2014, reported an

accident on Friday, February 21, 2014 involving a 2010 GMC TERRAIN in Saint Joe, IN. The

complaint states: "INVOLVED IN A 21 CAR PILE UP IN THE UPPER PENINSULA DURING

A COMPLETE WHITE OUT. WE WERE ONLY TRAVELING APPROXIMATELY 25

MILES PER HOUR BUT, WE DID HAVE SERIOUS IMPACT IN THE FRONT, AFTER

HITTING A TRAILER AND ALSO SERIOUS IMPACT FROM BEHIND WHEN HIT BY A

TRUCK AND TRAILER. **NO AIRBAGS DEPLOYED**. THE TRUCK TRAVELING AHEAD

OF US, THAT WE HIT, THE AIRBAGS DID DEPLOY. MY FATHER AND BROTHER,

WHO WERE ALSO BOTH DRIVING CHEVY TRUCKS, AND ALSO HAD SERIOUS

1    FRONT END DAMAGE DURING THE SAME ACCIDENT, THEIR AIRBAGS DID NOT

2    DEPLOY EITHER. *TR"

3             t.       NHTSA complaint #10576031 dated Monday, March 31, 2014, reported an

4    accident on Sunday, March 23, 2014 involving a 2012 CADILLAC SRX in Kaplan, LA. The

5    complaint states: "I FELL ASLEEP WHILE DRIVING, JUMPED A LEVEE, RAN THROUGH

6    A FENCE, AND WRECKED IN A GRASSY WATERY AREA. MY ENGINE WAS

7    SMASHED, THE MOTOR MOUNT BROKE, AND MY TIRES ARE PUSHED BACK. MY

8    **AIR BAGS DID NOT DEPLOY**. MY FACE HIT THE STEERING WHEEL AND MY NOSE

9    IS BROKEN. I WOULD LIKE TO FIND OUT IF THERE IS ANY RECALLS ON THIS CAR.

10   *TR"

11            u.       NHTSA complaint #10583703 dated Saturday, April 19, 2014, reported an

12   accident on Thursday, March 13, 2014 involving a 2012 GMC TERRAIN in Moneta, VA. The

13   complaint states: "I INADVERTENTLY VEERED OFF SIDE ROADWAY, (VA HIGHWAY

14   220) COLLIDING WITH A TREE/ROADSIDE SHRUBS, ETC (WAS KNOCKED

15   UNCONSCIOUS AS FOREHEAD HIT STEERING WHEEL ON INITIAL IMPACT).

16   **AIRBAGS DID NOT DEPLOY** ALLOWING ME TO SUSTAIN A HEAD INJURY THAT

17   KNOCKED ME UNCONSCIOUS... FOREHEAD WAS GASHED WITH SIGNIFICANT

18   BLEEDING. I WAS TRANSPORTED BY AMBULANCE IN UNCONSCIOUS STATE.

19   DAMAGE TO VEHICLE IS IN EXCESS OF $8,000 SO FAR AS VEHICLE STILL IN

20   REPAIR SHOP WITH MASSIVE FRONT END DAMAGE THAT AFFECTS STEERING

21   LINKAGE, ETC. THE IMPACT OF VEHICLE AGAINST FOLIAGE, TREES SHRUBS,

22   SHOULD HAVE FORCED AIR BAGS TO DEPLOY AND I BELIEVE THAT I WOULD NOT

23   HAVE SUSTAINED A HEAD INJURY THAT RENDERED ME UNCONSCIOUS WITH

24   MILD CONCUSSION AND COULD NOT CONTROL VEHICLE LEAVING ROADWAY.

25   *TR"

26            v.       NHTSA complaint #10592423 dated Monday, May 19, 2014, reported an

27   accident on Thursday, May 8, 2014 involving a 2003 CHEVROLET SILVERADO in

28   Burtonsville, MD. The complaint states: "TRUCK COLIDED WITH GUARD RAIL.

1   BOUNCED OFF, HIT VEHICLE 1, THEN INTO VEHICLE 2 THEN STOPPED AFTER

2   HITTING VEHICLE 3 A SEMI TRUCK. ALL DAMAGE WAS DONE TO FRONT OF THE

3   CHEVY SILVERADO. **AT NO TIME DID THE AIRBAGS DEPLOY**.”

4           w.     NHTSA complaint #10622016 dated Wednesday, August 13, 2014,

5   reported an accident on Saturday, August 9, 2014 involving a 2012 CHEVROLET TAHOE in

6   The Colony, TX. The complaint states: “WHILE TURNING LEFT (TAHOE) WITH A

7   PROTECTED GREEN ARROW AT AN X-SHAPED INTERSECTION, VEHICLE (KIA

8   SEDAN) AT FAULT FAILED TO YIELD AND ENTERED THE INTERSECTION AT

9   SPEEDS UPWARDS OF 40 MPH FROM THE LEFT OF THE TAHOE. FRONT-IMPACT

10   COLLISION OCCURRED . . . TAHOE STRUCK PASSENGER SIDE OF KIA SEDAN.

11   TRAJECTORY OF IMPACT CAUSED DIRECTIONAL CHANGES IN UPWARDS OF 90*

12   FOR BOTH VEHICLES; THE FORCE OF THE PRIMARY ACCIDENT DESCRIBED ABOVE

13   ALSO CAUSED MENTIONED VEHICLES TO COLLIDE WITH LEFT REAR OF ANOTHER

14   VEHICLE (HONDA SEDAN) . . . DUE TO THE FORCE OF IMPACT, FRONT & SIDE

15   AIRBAGS DEPLOYED ON BOTH THE KIA SEDAN AND THE HONDA SEDAN, BUT

16   **FAILED TO DEPLOY ON THE TAHOE** . . . FORCE WAS SUCH THAT AFTER THE

17   COLLISION, TAHOE TRANSMISSION WAS IN DRIVE, BUT REMAINED AT A

18   COMPLETE STOP. DAMAGE SUSTAINED ON THE TAHOE INCLUDE FRONT-END

19   BODY DAMAGE, ENGINE DAMAGE (VEHICLE REQUIRED TOWING AND WAS

20   INOPERABLE), AND FRAME DAMAGE, AT A MINIMUM . . . MULTIPLE FIRST-

21   RESPONDERS COMMENTED ON THE ODDITY THAT, GIVEN THE DAMAGE

22   SUSTAINED BY THE TAHOE AND THE VELOCITY AT IMPACT, THE AIRBAGS

23   DEPLOYED ON ALL VEHICLES BUT THE TAHOE. *TR”

24           x.     NHTSA complaint #10641399 dated Saturday, October 4, 2014, reported

25   an accident on Tuesday, June 7, 2011 involving a 2002 CHEVROLET TAHOE in Cheney, WA.

26   The complaint states: “THE CONTACT STATED THAT WHILE THE DRIVER WAS

27   DRIVING AT 45 MPH AND ATTEMPTED TO AVOID A CRASH WITH ANOTHER

28   VEHICLE. AS A RESULT, THE DRIVER CRASHED INTO A GUARDRAIL AND **THE AIR**

1  **BAGS FAILED TO DEPLOY.** A POLICE REPORT WAS FILED. THE CONTACT WAS

2  TAKEN TO A HOSPITAL AND SUSTAINED INJURIES TO THE RIBS, THE COLLAR

3  BONES, A BRAIN TRAUMA AND A COLLAPSED LUNG. THE DRIVER SUFFERED

4  FROM FATAL INJURIES."

5  y.     NHTSA complaint #10767586 dated Tuesday, September 22, 2015,

6  reported an accident on Saturday, August 1, 2015 involving a 2004 CHEVROLET

7  TRAILBLAZER in Tallahassee, FL. The complaint states: "MY MOTHER WAS INVOLVED

8  IN A 1 CAR ACCIDENT ON BAUM RD LOCATED IN TALLAHASSEE, FL. SHE WAS THE

9  ONLY PASSENGER DETERMINED TO BE IN THE VEHICLE AT THE TIME OF THE

10  ACCIDENT. ACCORDING TO THE CRASH REPORT, D1 (DRIVER ONE) WAS

11  TRAVELING WESTBOUND ON BAUM RD GOING THE NORMAL POSTED SPEED OF

12  55MPH, WHEN SHE VEERED TOWARDS THE CENTER OF THE RD AND SUDDENLY

13  TURNED RIGHT VEERING OF THE RIGHT SHOULDER OF THE RD AND STRIKING

14  SEVERAL TREES ON THE DRIVERS SIDE AND FRONT END . . . WHEN I WENT TO

15  RETRIEVE MY MOTHERS THINGS FROM HER TRAILBLAZER, I NOTICED THAT **NO**

16  **AIR BAGS HAD DEPLOYED**. AND AS FAST AS MY MOM WAS GOING AND THE

17  TYPE OF IMPACT & DAMAGE HER SUV SUSTAINED, I WOULD THINK AND HOPE

18  THE AIRBAGS WOULD DEPLOY IN THIS TYPE OF ACCIDENT, THUS PREVENTING

19  SERIOUS INJURY OR DEATH. MY MOM WAS NOT SO LUCKY, AND MYSELF AND MY

20  FAMILY HAVE ENDURED GREAT PAIN FROM LOOSING HER SO SUDDENLY."

21  z.     NHTSA complaint #10907149 dated Friday, September 16, 2016, reported

22  an accident on Thursday, September 1, 2016 involving a 2006 CADILLAC SRX in Happy

23  Valley, OR. The complaint states: "THE VEHICLE HIT A CURB AND DROVE INTO A

24  BUILDING. **THE AIR BAGS FAILED TO DEPLOY**. THE CONTACT SUSTAINED

25  INJURIES THAT REQUIRED MEDICAL ATTENTION . . . THE MANUFACTURER WAS

26  NOTIFIED OF THE FAILURE."

27

28

168.    GM knew or had reason to know about these complaints, which are publicly available on NHTSA's website. Indeed, many complaints explicitly state that GM was directly informed of and/or investigated these suspicious accidents. For example:

a.    A complaint about an August 2018 accident in a 2008 GMC Acadia details that the airbags and seatbelt pretensioners did not deploy after the complainant's wife fell asleep at the wheel and struck a utility pole and then a large dirt embankment—which caused her to "hit the steering column so hard . . . it broke the column and broke her sternum," and caused the granddaughter in the passenger seat to break her back in two places. It continues that "GENERAL MOTORS . . . SENT A MAN TO DOWNLOAD THE COMPUTER INFORMATION THEY SENT ME A COPY OF THE INFO AND LATER CONTACTED ME SAYING THE INFO SHOWED EVERYTHING WAS WORKING PROPERLY." NHTSA complaint #11066850.

b.    After a July 2014 head on collision at 50 MPH where the airbags did not deploy in a 2007 Silverado, totaling the vehicle, another driver was "TOLD BY GM THAT CRASH DID NOT MEET CRITERIA FOR DEPLOYMENT." The driver expressed skepticism about this response, and in the complaint, stated "A HEAD ON COLLISION AT 50 MPH THAT TOTALED 2500 SERIES CHEVY TRUCK. HARD FOR ME TO BELIEVE . . . DO I NEED TO [BE] CONCERNED?" NHTSA complaint #10608220.

c.    Another driver reported on a May 2014 accident in a 2012 GMC Terrain in Moneta, VA. The driver struck "something" head on after veering off the highway and proceeded through trees and brush. They were knocked unconscious after hitting their head on the steering wheel upon the first impact, as the airbags had failed to deploy. They were transported to a hospital by ambulance and spent two days in inpatient care. The driver later "CONTACTED GMC CORPORATE . . . TO ADVISE MY CONCERNS FOR SAFETY . . . RECEIVED A FOLLOW UP TELEPHONE CALL FROM GMC REPRESENTATIVE . . . HE EXPRESSED NO INTEREST IN MY COMPLAINT . . . REFUSED TO COMMENT ON MY STATEMENT THAT AIR BAG FAILED TO DEPLOY RESULTING IN EXTENSIVE DAMAGE TO FRONT OF VEHICLE AND SUSTAINING A HEAD INJURY AS NO BAG DEPLOYED . . . I WAS

1     ADVISED THAT GMC HAD NO FURTHER INTEREST IN THIS MATTER AND WOULD

2     NOT EVALUATE MY SAFETY CONCERNS." NHTSA complaint #10588334.

3                 d.          After a July 2012 accident involving a 2012 GMC Terrain in San

4     Clemente, CA in which the Terrain was hit multiple times in an intersection in the driver's front

5     end, but no airbags deployed, resulting in whiplash and contusions to the driver, a GM

6     representative responded to a complaint lodged by the driver's parents and stated that there was

7     "NO NEED FOR DEPLOYMENT" because it was a "LOW THRESHOLD EVENT." NHTSA

8     complaint #10466384.

9                 e.          After hitting a patch of black ice at 58 MPH in a Chevrolet Silverado in

10    January 2008, another complainant described that they lost control of the vehicle, ran off the road,

11    crashed into a telephone pole and ultimately into a frozen embankment. The airbags did not

12    deploy, causing the driver to hit the steering wheel. As the complainant relates, they "FILED A

13    COMPLAINT WITH THE MANUFACTURER, BUT THE COMPLAINT WAS DENIED. THE

14    MANUFACTURER WAS UNABLE TO DIAGNOSE THE VEHICLE; HOWEVER, AFTER

15    INSPECTION OF THE VEHICLE, THE MANUFACTURER CONFIRMED THAT THE AIR

16    BAGS WERE ENABLED AT THE TIME OF IMPACT. THEY DID NOT GIVE AN

17    EXPLANATION FOR THE DEPLOYMENT FAILURE." NHTSA complaint #10238395.

18                f.          In a report about a March 2006 accident involving a 2005 Cadillac

19    Escalade in Louisville, KY, the complainant describes that after none of the airbags deployed in a

20    front end collision in their 4-week old vehicle, they "CALLED CADILLAC CUSTOMER

21    SERVICE AND WAS GIVEN AN AIRBAG HISTORY LESSON VIA TELEPHONE FROM

22    SOMEONE THAT HAD NEVER SEEN MY VEHICLE OR INSPECTED IT FOR DAMAGE

23    AFTER THE ACCIDENT. AT THE END OF OUR CONVERSATION I WAS TOLD ALL

24    WAS OK, NONE OF MY AIRBAGS SHOULD HAVE DEPLOYED AND NOT TO WORRY

25    ABOUT IT. THE ENTIRE FRONT END OF MY VEHICLE WAS KNOCKED OFF, THE

26    FRAME HAS MULTIPLE CRACKS AND IS BENT AS A RESULT OF THE COLLISION

27    AND THE COLLISION CENTER IS 90% CERTAIN THE VEHICLE IS NOT REPAIRABLE.

28    *JB" NHTSA complaint #10152376.

g.     After an August 2004 accident involving a 1999 Chevrolet Astro in Norfolk, Virginia in which the vehicle jumped a curb, struck and fire hydrant, and then struck a tree without the airbags deploying, the driver was taken by ambulance to the hospital for head and neck injuries. After the accident, the "CONSUMER CONTACTED THE MANUFACTURER AND A REPRESENTATIVE CAME DOWN TO MEET WITH THE DEALER AND CONSUMER. THE REPRESENTATIVE INFORMED CONSUMER THAT THE VEHICLE WAS FUNCTIONING AS DESIGNED." NHTSA complaint # 10087718.

h.     Another driver contacted GM after the airbags did not deploy in a February 2004 front end collision at 25-30 MPH in their 2000 Isuzu Rodeo in Westwood, NJ. "THE CONSUMER CONTACTED THE MANUFACTURER ABOUT THE AIR BAGS BUT THE REPRESENTATIVE DID NOT SEEM TO BE TOO CONCERNED ABOUT THE SITUATION." NHTSA complaint #10087550.

i.     Another driver described a head on collision at 39 MPH in their 2002 Chevrolet Tahoe in which the airbags did not deploy and the seatbelts did not tighten. The driver hit their head on the steering wheel, knocking them unconscious. A readout from the vehicle's computer showed the seatbelts were in working order, and GM responded by sending a representative to inspect the vehicle in person. The complainant was awaiting a response from GM at the time of the report. NHTSA complaint #10353935.

169.     More than eight hundred similar complaints—i.e. frontal crashes in the Class Vehicles with airbag and seatbelt failures following multiple impacts, or, potentially long-soft frontal impacts—are attached hereto as Exhibit A.[45]

170.     In addition to these consumer complaints, a separate, public dataset from NHTSA, the Fatality Analysis Reporting System ("FARS") provides a nationwide census of crashes that resulted in fatal injuries.  While the complaints outlined above are reported to NHTSA by consumers and can include any type of complaint or incident, FARS data is reported by state agencies responsible for monitoring all qualifying fatal crashes in their states. To be included in

---

[45] The accidents in the preceding paragraph and Exhibit A include data for Class Vehicles in model years 1999-2014.

1   FARS data, a crash must involve a motor vehicle traveling on a public road and result in the death

2   of a person in one or more of the vehicles involved in the crash within 30 days of the crash.  The

3   dataset collects information on over 100 different data elements that characterize the crash, the

4   vehicles, and the people involved—including whether or not the airbags deployed.

5          171.   NHTSA's FARS dataset also reveals a recurring pattern of suspicious

6   nondeployments during frontal crashes (i.e., the crash dynamics that can implicate the SDM

7   Calibration Defect) and reinforces the extremely high stakes of such incidents. From 1999 to

8   present, FARS data reflects at least 1,946 frontal crashes where the airbags did not deploy in a

9   Class Vehicle—1,167 of which occurred in 2009 or later, after New GM was formed.  This same

10  data reflects that at least 1,298 individual occupants (drivers or passengers) in a Class Vehicle

11  were injured or killed in these crashes.

**D.      Despite its knowledge, GM misrepresented and concealed important**
**information about the SDM Calibration Defect and Class Vehicle safety.**

14         172.   For many consumers, including Plaintiffs, safety is one of the most important

15  factors when buying or leasing a vehicle. GM capitalized on this fact in advertising and other

16  consumer-facing representations about the Class Vehicles and touted the safety of the Class

17  Vehicles in national marketing campaigns.

18         173.   In nationwide advertisement campaigns and promotional materials, GM

19  maintained that the Class Vehicles were safe and reliable, and it did not correct representations

20  about the Class Vehicles' safety and reliability made by Old GM in the past. Instead, GM has

21  repeatedly touted the Class Vehicles' passenger safety systems and assured consumers they could

22  be relied upon to activate the airbags and seatbelts during a crash. These representations are false

23  and misleading because of what they fail to say; GM uniformly failed to disclose that the SDM

24  Calibration Defect could—at the worst possible moment—prevent the airbags and seatbelts from

25  activating.

26         174.   Plaintiffs and Class members, directly or indirectly, were exposed to these

27  advertisements and promotional materials prior to purchasing or leasing their Class Vehicles. If

28  GM had instead chosen to disclose the truth about the SDM Calibration Defect—including at

1    dealerships, on its website, in brochures, press releases or in other promotional materials—

2    Plaintiffs and Class members would have seen those disclosures. The misleading statements about

3    Class Vehicles' safety in GM's advertisements and promotional materials, as well as GM's

4    omission of the truth about the SDM Calibration Defect, influenced Plaintiffs and Class

5    members' decisions to purchase or lease Class Vehicles.

6              1.      **Labels and window stickers on the Class Vehicles stated that they were**
              **equipped with working airbags and seatbelts and failed to disclose the**
7              **SDM Calibration Defect.**

8        175.    To sell vehicles in the United States, GM was required to "certify to the distributor

9    or dealer at delivery that the vehicle or equipment complies with applicable motor vehicle safety

10   standards prescribed" by NHTSA under Chapter 301 of Title 49 of the U.S. Code. GM "may not

11   issue the certificate if, in exercising reasonable care," they have "reason to know the certificate is

12   false or misleading in a material respect." 49 U.S.C. § 30115; see also 49 U.S.C. § 30112.

13       176.    Because "[c]ertification of a vehicle must be shown by a label permanently fixed

14   to the vehicle," all Class Vehicles have a permanent label certifying compliance with the safety

15   regulations prescribed by NHTSA. Since all the Class Vehicles are passenger vehicles, the

16   permanent label must state: "This vehicle conforms to all applicable Federal motor vehicle safety,

17   bumper, and theft prevention standards in effect on the date of manufacture shown above." 49

18   C.F.R. § 567.4(g)(5).

19       177.    These labels were false and misleading because they failed to warn consumers

20   about the risk that the SDM would fail during a frontal crash, and instead indicated that the

21   passenger safety system would function properly. See 49 C.F.R. § 571.208 (S4.1.5.4, S4.1.5.5)

22   (Federal motor vehicle safety standards requiring Occupant Restraint Systems with airbags and

23   seatbelts).

24       178.    Vehicle manufacturers have a duty to disclose known safety defects to the public

25   and to NHTSA. When a vehicle manufacturer learns of a safety defect, federal law requires it to

26   disclose the defect to NHTSA and to the owners, purchasers, and dealers of the vehicle. 49 U.S.C.

27   § 30118(c). Indeed, GM Parent acknowledges these obligations in its public SEC filings. In its

28   Form 10-K for fiscal year 2019, GM Parent states: "If we or NHTSA determine that either a

vehicle or vehicle equipment does not comply with a safety standard or if a vehicle defect creates

an unreasonable safety risk, the manufacturer is required to notify owners and provide a remedy."

179.     The interiors of the Class Vehicles also contain prominent labels that alert the

driver and passengers to the vehicle's airbag system. For example, steering wheels and passenger

dashboards typically have labels identifying the airbag and safety restraint system (or "SRS").

180.     GM was also specifically required to include in their vehicles warning labels that

alerted consumers of the need to perform airbag maintenance. For example, S4.5.1 of 49 C.F.R.

§ 571.208 states:

> Air bag maintenance or replacement information. If the vehicle
> manufacturer recommends periodic maintenance or replacement of
> an inflatable restraint system, as that term is defined in S4.1.5.1(b)
> of this standard, installed in a vehicle, that vehicle shall be labeled
> with the recommended schedule for maintenance or replacement.
> The schedule shall be specified by month and year, or in terms of
> vehicle mileage, or by intervals measured from the date appearing
> on the vehicle certification label provided pursuant to 49 CFR Part
> 567. The label shall be permanently affixed to the vehicle within
> the passenger compartment and lettered in English in block capital
> and numerals not less than three thirty-seconds of an inch high.
> This label may be combined with the label required by S4.5.1(b) of
> this standard to appear on the sun visor.

181.     Plaintiffs is unaware of any label in any Class Vehicle that alerted consumers to

the SDM Calibration Defect or the need to perform maintenance to protect the SDM from

preventing airbag deployment or seatbelt tightening when they are needed.

182.     GM also distributed the Class Vehicles with so-called "Monroney" labels (also

known as "window stickers") that described the equipment and safety features of the vehicles,

including airbags. Dealers sell Class Vehicles to consumers with these labels visible. An image of

a Monroney label for the 2012 Silverado is included below as a representative example. In the

center of the image, it features a "Five Star" frontal crash rating for drivers. Under "Safety &

Security" features, it touts the "dual stage" airbags.



183.     Monroney labels for many of the Class Vehicles are available at:
https://monroneylabels.com. Additional exemplars of Monroney labels from some of the Class
Vehicles are attached as Exhibit B.

184.     As demonstrated by these examples, Monroney labels uniformly assured
consumers that the Class Vehicles had working airbags and seatbelts. This information would
have suggested to any reasonable consumer that the passenger safety system did not suffer from a
defect and would perform its intended function of activating the seatbelts and airbags during a
frontal collision.

185.     Had GM disclosed the defective nature of the SDM software calibration on the
Monroney labels or other labels or in marketing for the Class Vehicles, Plaintiffs and Class
members would have seen that disclosure.

**2.**     <u>GM published owners' manuals for the Class Vehicles that detailed their safety features but did not disclose the SDM Calibration Defect.</u>

186.    GM (and Old GM before it) published owners' manuals for each of the Class Vehicles, which were distributed and available throughout the United States. These manuals were directed at consumers and included misleading statements regarding seatbelts, airbags, and passenger safety systems. These statements uniformly omitted any warning to consumers that the SDM could effectively shut off during a crash after just 45 milliseconds.

187.    Representative examples of statements from owners' manuals with materially misleading omissions concerning the effectiveness of their airbags follow in the paragraphs below.

188.    The manual for the 2002 Cadillac Escalade provides extensive detail about the vehicle's airbags, including the below details and images. In addition to explaining the types of airbags and where they are located, the manual specifically alerts consumers that the airbags "are designed to inflate in moderate to severe frontal or near-frontal crashes" where "the impact speed is above the system's designed 'threshold level.'" As to frontal airbags, it explains that they have been "designed to help reduce the risk of injury from the force of an inflating airbag."

**Supplemental Restraint Systems (SRS)**

This part explains the frontal and side impact Supplemental Restraint Systems (SRS) or air bag systems.

Your vehicle has four air bags -- a frontal air bag for the driver, another frontal air bag for the right front passenger, a side impact air bag for the driver, and another side impact air bag for the right front passenger.

Frontal air bags are designed to help reduce the risk of injury from the force of an inflating frontal air bag. But these air bags must inflate very quickly to do their job and comply with federal regulations.

**When should an air bag inflate?**

The driver's and right front passenger's frontal air bags are designed to inflate in moderate to severe frontal or near-frontal crashes. But they are designed to inflate only if the impact speed is above the system's designed "threshold level."

If your vehicle goes straight into a wall that doesn't move or deform, the threshold level is about 9 to 16 mph (14 to 26 km/h). The threshold level can vary, however, with specific vehicle design, so that it can be somewhat above or below this range.

If your vehicle strikes something that will move or deform, such as a parked car, the threshold level will be higher. The driver's and right front passenger's frontal air bags are not designed to inflate in rollovers, side impacts, or rear impacts, because inflation would not help the occupant.

## How the Air Bag Systems Work

### Where are the air bags?





The right front passenger's frontal air bag is in the instrument panel on the passenger's side.

The driver's side impact air bag is in the side of the driver's seatback closest to the door.

The driver's frontal air bag is in the middle of the steering wheel.

## How the Air Bag Systems Work

### Where are the air bags?





The right front passenger's frontal air bag is in the instrument panel on the passenger's side.

The driver's side impact air bag is in the side of the driver's seatback closest to the door.

The driver's frontal air bag is in the middle of the steering wheel.

## When Should an Airbag Inflate?

Frontal airbags are designed to inflate in moderate to severe frontal or near-frontal crashes to help reduce the potential for severe injuries mainly to the driver's or right front passenger's head and chest. However, they are only designed to inflate if the impact exceeds a predetermined deployment threshold. Deployment thresholds are used to predict how severe a crash is likely to be in time for the airbags to inflate and help restrain the occupants.

Whether the frontal airbags will or should deploy is not based on how fast your vehicle is traveling. It depends largely on what you hit, the direction of the impact, and how quickly your vehicle slows down.

All of the airbags in the vehicle will have the word AIRBAG embossed in the trim or on an attached label near the deployment opening.

For frontal airbags, the word AIRBAG will appear on the middle part of the steering wheel for the driver and on the instrument panel for the right front passenger.

With seat-mounted side impact airbags, the word AIRBAG will appear on the side of the seatback closest to the door.

With roof-rail airbags, the word AIRBAG will appear along the headliner or trim.

Airbags are designed to supplement the protection provided by safety belts. Even though today's airbags are also designed to help reduce the risk of injury from the force of an inflating bag, all airbags must inflate very quickly to do their job.

## Airbag System

The vehicle has the following airbags:

- A frontal airbag for the driver.
- A frontal airbag for the right front passenger.
- A seat-mounted side impact airbag for the driver.
- A seat-mounted side impact airbag for the right front passenger.
- A roof-rail airbag for the driver, passenger seated directly behind the driver, and the third row outboard passenger position.
- A roof-rail airbag for the right front passenger, passenger seated directly behind the right front passenger, and the third row outboard passenger position.

189.    The manuals for the 2009 Chevy Traverse and 2010 Buick Enclave include similar details and images. Like the manual for the 2002 Cadillac Escalade, they also assure consumers that the vehicle's airbags are "designed to help reduce the risk of injury from the force of an inflating bag" and, thus, that the aggressive deployment problems that plagued first-generation airbags had been alleviated.  It also assures that the frontal airbags have been "designed to inflate in moderate to severe frontal crashes to help reduce the potential for severe injuries…." It continues that airbag "deployment thresholds are used to predict how severe a crash is likely to be in time for the airbags to inflate and help restrain the occupants." While it gives very specific detail on the way the passenger safety systems should function, the manual notably fails to say that the deployment thresholds are wholly and intentionally ignored just 45 milliseconds into a crash sequence, preventing the airbags and seatbelts from functioning when they need to.

190.    The manual for the 2014 GMC Acadia provides additional detail about how the passenger safety system functions. It explains that "Airbags are designed to inflate if the impact exceeds the specific airbag system's deployment thresholds." Yet again, however, the manual does not indicate that the SDM and its sensors are rendered useless in multi-impact crashes that endure for longer than a specific, 45 millisecond time frame.

1
2
3
4
5
6
7
8

**Where Are the Airbags?**



The driver frontal airbag is in the center of the steering wheel.



The front outboard passenger frontal airbag is in the passenger side instrument panel.



If the vehicle has a front center airbag, it is in the inboard side of the driver seatback.

9

**When Should an Airbag Inflate?**

This vehicle is equipped with airbags. See *Airbag System on page 3-23*. Airbags are designed to inflate if the impact exceeds the specific airbag system's deployment threshold. Deployment thresholds are used to predict how severe a crash is likely to be in for the airbags to inflate and help restrain the occupants. The vehicle has electronic sensors that help the airbag system determine the severity of the impact. Deployment thresholds can vary with specific vehicle design.

Frontal airbags are designed to inflate in moderate to severe frontal or near frontal crashes to help reduce the potential for severe injuries, mainly to the driver's or front outboard passenger's head and chest.

Whether the frontal airbags will or should inflate is not based primarily on how fast the vehicle is traveling.

10
11
12
13
14
15
16
17

It depends on what is hit, the direction of the impact, and how quickly the vehicle slows down.

Frontal airbags may inflate at different crash speeds depending on whether the vehicle hits an object straight on or at an angle, and whether the object is fixed or moving, rigid or deformable, narrow or wide.

Frontal airbags are not intended to inflate during vehicle rollovers, rear impacts, or many side impacts.

In addition, the vehicle has advanced technology frontal airbags. Advanced technology frontal airbags adjust the restraint according to crash severity.

The front center airbag, if equipped, is designed to inflate in moderate to severe side crashes depending upon the location of the impact, when either side of the vehicle is struck. In addition, the front center airbag is designed to inflate when the sensing system predicts that the vehicle is about to roll over on its

side. The front center airbag is not designed to inflate in frontal impacts, near frontal impacts, or rear impacts.

Seat-mounted side impact airbags are designed to inflate in moderate to severe side crashes depending on the location of the impact. Seat-mounted side impact airbags are not designed to inflate in frontal impacts, near frontal impacts, rollovers, or rear impacts.

A seat-mounted side impact airbag is designed to inflate on the side of the vehicle that is struck.

Roof-rail airbags are designed to inflate in moderate to severe side crashes depending on the location of the impact. In addition, these roof-rail airbags are designed to inflate during a rollover or in a severe frontal impact. Roof-rail airbags are not designed to inflate in rear impacts. Both roof-rail airbags will inflate when either side of the vehicle is struck, if the sensing

18
19

### 3.   **GM marketed the Class Vehicles to be safe and reliable but failed to mention the SDM Calibration Defect.**

20   191.   Like its other consumer-facing representations, GM's advertisements for the Class

21   Vehicles left out a crucial part of the story. By uniformly omitting any information about the

22   SDM Calibration Defect, GM misled consumers into believing that their airbags would function

23   properly in a crash, despite its knowledge to the contrary.

24   192.   A 2013 press release about the 2014 Chevy Silverado 1500, GMC Sierra, and

25   Sierra Denali 1500 is further illustrative of GM's misleading statements about the Class Vehicles.

26   Acknowledging that safety is "as important to truck buyers as it is to car buyers," Gay Kent, GM

27   general director of Vehicle Safety and Crashworthiness, stated that the "Silverado and Sierra set a

28   benchmark for pickup truck safety by offering a full array of advanced features designed to

1   protect occupants before, during and after a collision." The press release noted the vehicle's "[s]ix

2   standard air bags and 360-degree sensor system, including dual-stage frontal air bags, head-

3   curtain side-impact air bags with rollover protect, and front outboard seat-mounted side-impact

4   air bags."

5        193.    Brochures and press releases for other Class Vehicles use similar language to send

6   a misleading message of safety. Illustrative examples are described below.

7             a.    Beginning with the 1999 Chevy Blazer, GM promised to go "to the ends of

8   the earth to bring you driving security," assuring "peace of mind" with its "mainstay features such

9   as Next Generation driver and right-front-passenger airbags."

10            b.    "Because safety and security are so important to your family," the brochure

11  for the 2002 Chevy Astro reads, "Astro features a comprehensive system to help you feel secure

12  while you're driving." Among other safety features, "[s]tandard driver and front-passenger air

13  bags . . . [are] designed to give you peace of mind. Chevy Astro. It's the midsize van that's

14  serious about safety and security."

15            c.    The brochure for the 2006 GMC Yukon promises, "should the worst

16  happen, your Yukon will protect you and your passengers with front and rear crush zones, a

17  sturdy steel safety cage, up to four air bags and a host of other important safety features."

18            d.    The brochure for the 2008 Buick Enclave explains that "[s]afety and

19  protection were top priorities in the design of the Enclave" and touts the vehicle's "360°

20  perimeter safety system [that] will deploy the appropriate airbags."

21            e.    Promising "[f]eelings of security and confidence," the brochure for the

22  2009 Chevy Equinox states the vehicle's "dual-stage frontal and head-curtain side-impact air

23  bags" helped earn it "the highest possible government rating for frontal crash tests – five stars."

24            f.    Declaring that "[s]afety never goes out of style," the brochure for the 2009

25  Chevy Traverse highlights the vehicle's "five-star frontal and side-impact crash test ratings" and

26  its "six air bags that help protect all three rows of seating."

27

28

1          g.      A press release for the 2009 Cadillac Escalade ESV goes further,

2   proclaiming that the "Escalade is designed to be among the industry's safest and most secure

3   vehicles, with numerous safety systems and crash-avoidance technologies."

4          h.      "Speaking of safety," the brochure for the 2010 Buick Enclave reads,

5   "Enclave has earned an impressive five-star crash rating for both front and side impacts . . . .

6   Five-star rating is for the driver and front passenger seating positions in the frontal crash test and

7   for the front and rear seating positions in the side-impact crash test."

8          i.      The brochure for the 2010 GMC Terrain describes the vehicle as "the state

9   of the art in air bags" and contends that "[s]egment-best safety is anticipated, with features that

10   include . . . six standard air bags: dual frontal airbags; head curtain side air bags and pelvic/thorax

11   seat-mounted side airbags."

12          j.      The brochure for the 2010 Silverado assures that the "head of security

13   never goes off the clock," boasting of a "five-star frontal crash test rating," including through its

14   "driver and right-front passenger dual-stage airbags."

15          k.      A press release for the 2011 Cadillac Escalade Hybrid explains, "[f]ront-

16   image airbags for the driver and passenger have been designed to protect the head during a frontal

17   crash."

18          l.      According to the brochure for the 2011 Cadillac SRX, "[p]assenger safety

19   is a primary consideration throughout the engineering process." If an incident occurs, "the SRX

20   looks out for you and yours," with its "six standard airbags, including advanced, frontal dual-

21   stage and seat mounted side-impact airbags for the driver and front-seat passenger, as well as

22   first- and second- row outboard head-curtain airbags."

23          m.      Describing Buick's "holistic[]" approach to safety, the brochure for the

24   2012 Enclave proclaims, "Enclave's approach to safety helps you and your companions feel safe

25   and secure before, during and after your travels." Inside the vehicle, "all rows have curtain side-

26   impact air bags with rollover protection, along with driver and front-passenger side-impact and

27   dual-sage airbags."

28

n.      In a 2013 press release announcing that NHTSA gave "its highest possible 5-star Overall Score" to a number of Chevrolet vehicles, including the Traverse and the Silverado, Kent said "We design safety and crashworthiness into our vehicles very early in development." He continued, "We are committed to offering advanced safety technologies on a broad range of models . . . . All of our vehicles are designed to provide continuous protection for customers before, during and after a crash."

o.      A press release for the 2013 Buick Enclave likewise publicized Buick's safety record: "In 2012, every Buick model was named a Top Safety Pick by the Insurance Institute for Highway Safety, underscoring the brand's commitment to safety leadership. The 2013 builds on that distinction with the industry's first front center side air bag – a standard feature."

p.      "With head curtain side-impact air bags reaching from the front to the third row of seating for outboard passengers," the 2014 brochure for the GMC Yukon XL reads, "Yukon is engineered to help protect passengers regardless of where they're seated."

q.      Claiming to "set[] the standard . . . in everything from safety to performance," the brochure for the 2014 Cadillac Escalade touts the vehicle's "eight standard airbags," including "[d]ual-stage driver and front passenger, front-impact, Automatic Occupant Sensing System, driver and front passenger seat-mounted side-impact airbags for thorax and pelvic protection and head-curtain side-impact airbags with rollover protection for all outboard passenger rows."

r.      The brochure for the 2014 Buick Enclave promises that the vehicle has "your back, front and sides, proclaiming that "in an industry first, the standard driver's seat side-mounted front center air bag adds another layer of protection by providing cushioning between you and your front passenger to help reduce injuries in side impacts." The brochure includes the below picture, indicating that the airbags will function as expected.



194.     Based on information and belief, every single Class Vehicle advertisement omitted any mention that the vehicles' airbags and seatbelts could fail in a serious frontal collision due to the SDM Calibration Defect.

### 4.     Defendants provided warranties to repair defects in the Class Vehicles and have not done so.

195.     Defendants also provided Plaintiffs and Class members with an express warranty "to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle related to materials or workmanship" in the Class Vehicles.

196.     The warranty terms became part of the basis of the bargain when Plaintiffs and each Class member purchased or leased their Class Vehicles.

197.     Plaintiffs and each Class member have had sufficient direct dealings with either Defendants or their agents (including dealerships) to establish privity of contract between Defendants, on the one hand, and Plaintiffs and each Class member, on the other hand, as to the express and implied warranties described in the Claims for Relief below.

198.     Nonetheless, privity is not required here because Plaintiffs and each Class member are intended third-party beneficiaries of contracts between Defendants and their dealers, and of their implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit consumers only. Finally, privity is

1    also not required because the Class Vehicles are dangerous instrumentalities due to the safety

2    defect in the SDM Calibration.

3                                              * * *

4        199.    GM's deceptive actions harmed Plaintiffs and the Class(es). As a result of GM's

5    unfair, deceptive, and/or fraudulent business practices, and failure to disclose that the Class

6    Vehicles carried a dangerous safety defect that would cause the passenger safety systems to shut

7    off during certain types of accidents, owners and lessees of the Class Vehicles have lost money

8    and/or property.

9    **V.**      **CLASS ACTION ALLEGATIONS**

10       200.    This case is about GM's legal responsibility for its knowledge, conduct, and

11   products. The proposed Class members' claims all derive directly from a single course of conduct

12   by GM. The objective facts are the same for all Class members. Within each Count asserted by

13   Plaintiffs on behalf of themselves and the respective proposed Classes, the same legal standards

14   govern. Additionally, many states share the same legal standards and elements of proof,

15   facilitating the certification of multistate or nationwide classes for some or all claims.

16       201.    Accordingly, Plaintiffs bring this lawsuit as a class action on their own behalf, and

17   on behalf of all other persons similarly situated, as members of the proposed Classes pursuant to

18   Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3), and/or (c)(4). This action satisfies

19   the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements

20   of those provisions. Certification of Plaintiffs' claims for class-wide treatment is appropriate

21   because Plaintiffs can prove the elements of the claims on a class-wide basis using the same

22   evidence as would be used in individual actions alleging the same claims.

23       **A.**      **The Class Definition**

24       202.    The "Class Vehicles" herein include all vehicles in the United States that contain

25   the SDM Calibration Defect that were (1) manufactured, sold, distributed, or leased by

26   Defendants or (2) manufactured, sold, distributed, or leased by Old GM and purchased or leased

27   by Plaintiffs or a Class member after July 10, 2009.

28

203.    On information and belief, the SDM Calibration Defect exists in all GM trucks and SUVs starting with model year 1999.  This would include, for example, trucks and SUVs such as the Silverado, Tahoe, Astro, and Trailblazer. Discovery will reveal when, if ever, GM discontinued use of the SDM Calibration Defect in its trucks and SUVs.

204.    The proposed Nationwide Class includes all persons and entities that purchased or leased a Class Vehicle in the United States, including its territories. Alternatively, Plaintiffs propose separate State Classes as to the state claims herein, each of which includes all persons and entities that purchased or leased a Class Vehicle in that state.

205.    Excluded from the Classes are:

a.      Defendants' officers, directors and employees and participants in the Porsche Associate Lease Program; Defendants' affiliates and affiliates' officers, directors, and employees; Defendants' distributors and distributors' officers, directors, and employees; and

b.      Judicial officers and their immediate family members and associated court staff assigned to this case.

206.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used in individual actions alleging the same claims.

207.    Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that any Class should be expanded, reduced, divided into additional subclasses under Rule 23(c)(5), or otherwise modified.

**B.      Numerosity: Federal Rule of Civil Procedure 23(a)(1)**

208.    The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. There are millions of Class Vehicles and Class members nationwide. The precise number and identities of Nationwide Class and State Class members may be ascertained from Defendants' records and motor vehicle regulatory data. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

**C.**     **Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2)
and 23(b)(3)**

209.     This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These include, without limitation, the following:

a.     Whether the Class Vehicles' SDM software calibration is defective, as described herein;

b.     Whether Defendants knew, or should have known, about the SDM Calibration Defect, and, if so, how long they have or should have known about it;

c.     Whether Defendants had a duty to disclose the defective nature of the Class Vehicles to Plaintiffs and Class members;

d.     Whether Defendants' concealment of the SDM Calibration Defect caused Plaintiffs and Class members to act to their detriment by purchasing or leasing the Class Vehicles;

e.     Whether Defendants' certifications concerning vehicle safety were misleading considering the risk that the SDMs will not trigger airbags and seatbelts during certain types of collisions;

f.     Whether Defendants' conduct tolls any or all applicable limitations periods by acts of fraudulent concealment, application of the discovery rule, or equitable estoppel;

g.     Whether Defendants misrepresented that the Class Vehicles were safe;

h.     Whether Defendants concealed the SDM Calibration Defect;

i.     Whether Defendants' statements, concealments, and omissions regarding the Class Vehicles were material, in that a reasonable consumer could consider them important in purchasing, leasing, selling, maintaining, or operating such vehicles;

j.     Whether Defendants engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices, in trade or commerce, by failing to disclose that the Class Vehicles were designed, manufactured, sold, and leased with defective airbag components;

k.     Whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

1     l.     Whether Defendants' concealment of the true defective nature of the Class

2   Vehicles caused their market price to incorporate a premium reflecting the assumption by

3   consumers that the Class Vehicles were equipped with fully functional passenger safety systems

4   and, if so, the market value of that premium; and

5     m.     Whether Plaintiffs and the other Class members are entitled to damages

6   and other monetary relief and, if so, in what amount.

7           **D.     Typicality: Federal Rule of Civil Procedure 23(a)(3)**

8          210.    Plaintiffs' claims are typical of the claims of Class members whom they seek to

9   represent under Fed. R. Civ. P. 23(a)(3), because Plaintiffs and each Class member purchased or

10  leased a Class Vehicle and were comparably injured through Defendants' wrongful conduct as

11  described above. Plaintiffs and the other Class members suffered damages as a direct proximate

12  result of the same wrongful practices by Defendants. Plaintiffs' claims arise from the same

13  practices and courses of conduct that give rise to the claims of the other Class members.

14  Plaintiffs' claims are based upon the same legal theories as the claims of the other Class

15  members.

16          **E.     Adequacy: Federal Rule of Civil Procedure 23(a)(4)**

17         211.    Plaintiffs will fairly and adequately represent and protect the interests of the Class

18  members as required by Fed. R. Civ. P. 23(a)(4). Plaintiffs' interests do not conflict with the

19  interests of the Class members. Plaintiffs have retained counsel competent and experienced in

20  complex class action litigation, including automobile defect litigation and other consumer

21  protection litigation. Plaintiffs intend to prosecute this action vigorously. Neither Plaintiffs nor

22  their counsel have interests that conflict with the interests of the other Class members. Therefore,

23  the interests of the Class members will be fairly and adequately protected.

24          **F.     Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2)**

25         212.    Defendants have acted or refused to act on grounds generally applicable to

26  Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief

27  and declaratory relief, as described below, with respect to the Class as a whole.

28

### G.      Superiority: Federal Rule of Civil Procedure 23(b)(3)

213.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in its management. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants such that it would be impracticable for members of the Classes to individually seek redress for Defendants' wrongful conduct.

214.     Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.     ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED

215.     Defendants have known of the SDM Calibration Defect since at least 2009, when GM learned, through books, records, and personnel, that Old GM had launched the defective algorithm despite clear warnings of the risk of doing so, and then continued to use that defective software thereafter. They obtained further knowledge of the risks of the SDM Calibration Defect from lawsuits and multiple suspicious accidents (involving airbag and seatbelt failures in frontal accidents) occurring in practically every year since, which provided additional and confirmatory notice of the continued risks of the SDM Calibration Defect.

216.     Despite this knowledge, for years, Defendants did not disclose the seriousness of the issue and in fact concealed its prevalence. In so doing, Defendants have failed to warn consumers, initiate timely recalls, or inform NHTSA, as GM is obligated to do.

217.     Defendants had a duty to disclose the SDM Calibration Defect to consumers and NHTSA. Contrary to this duty, GM concealed the defect by continuing to distribute, sell, and/or lease the Class Vehicles to Plaintiffs and the Class members; to advertise the safety of the Class Vehicles; and to fail to notify regulators or Plaintiffs and the Class members about the true nature of the Class Vehicles.

218.     Due to the highly technical nature of the SDM Calibration Defect, Plaintiffs and Class members were unable to independently discover it using reasonable diligence. Prior to the retention of counsel and without third-party experts, Plaintiffs and Class members lack the necessary expertise to analyze the software algorithm for the SDMs and to understand its defective nature.

219.     Accordingly: (1) Defendants' fraudulent concealment tolls the statute of limitations; (2) Defendants are estopped from relying on the statute of limitations; and (3) the statute of limitations is tolled by the discovery rule.

## VII.     CAUSES OF ACTION

### A.     Claims Asserted on Behalf of the Nationwide Class

**NATIONWIDE COUNT I:**
**FRAUD BY CONCEALMENT**
**(Common Law)**

220.     Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

221.     Plaintiffs bring this claim on behalf of themselves and the Nationwide Class under the common law of fraudulent concealment, as there are no true conflicts among various states' laws of fraudulent concealment. In the alternative, Plaintiffs bring this claim on behalf of the State Classes against all Defendants.

222.     Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

223.     Defendants intentionally and knowingly concealed and suppressed material facts from regulators and consumers regarding the SDM Calibration Defect that causes the airbags and seatbelts to fail in prolonged onset, complex, or otherwise multi-impact accidents, causing a serious risk or injury or death.

224.     A reasonable consumer would not have expected that the Class Vehicles contained a software program that was calibrated to prevent seatbelt tightening and airbag deployment during certain types of frontal crashes.  Defendants knew that reasonable consumers expect that

1    their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in

2    deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a

3    manufacturer's products are safe and reliable, and whether that manufacturer stands behind its

4    products, are material concerns to a consumer.

5         225.    Defendants ensured that Plaintiffs and the Class did not discover this information

6    by actively concealing and misrepresenting the true nature of the Class Vehicles' safety systems.

7    Defendants intended for Plaintiffs and the Class to rely on their omissions—which they did by

8    purchasing and leasing the Class Vehicles at the prices they paid.

9         226.    Defendants had a duty to disclose the SDM Calibration Defect because:

10            a.    GM had exclusive and/or far superior knowledge and access to the facts

11   about this hidden and complex safety defect. Defendants also knew that these technical facts were

12   not known to or reasonably discoverable by Plaintiffs and the Class;

13            b.    GM knew the SDM Calibration Defect (and its safety risks) was a material

14   fact that would affect Plaintiffs' or Class members' decisions to buy or lease Class Vehicles;

15            c.    GM is subject to statutory duties to disclose known safety defects to

16   consumers and to NHTSA; and

17            d.    GM made incomplete representations about the safety and reliability of the

18   Class Vehicles and their passenger safety systems, while purposefully withholding material facts

19   about a known safety defect. In uniform advertising and materials provided with each Class

20   Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to Plaintiffs and

21   the Class that the Class Vehicles contained the dangerous SDM Calibration Defect. Because they

22   volunteered to provide information about the Class Vehicles that they offered for sale to Plaintiffs

23   and the Class, Defendants had the duty to disclose the whole truth. They did not.

24        227.    To this day, Defendants have not made full and adequate disclosure and continue

25   to conceal material information regarding the SDM Calibration Defect. The omitted and

26   concealed facts were material because a reasonable person would find them important in

27   purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact

28   the value of the Class Vehicles purchased or leased by Plaintiffs and the Class.

228.     Defendants actively concealed or suppressed these material facts, in whole or in part, to maintain a market for their vehicles, to protect profits, and to avoid costly recalls that would hurt the GM brand's image. They did so at the expense of Plaintiffs and the Class. Had they been aware of the SDM Calibration Defect in the Class Vehicles, and Defendants' callous disregard for safety, Plaintiffs and the Class either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

229.     Accordingly, Defendants are liable to Plaintiffs and the Class for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Class Vehicles at the time of purchase or lease.

230.     Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of Plaintiffs' and the Class' rights and well-being; and to enrich themselves. Their misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**NATIONWIDE COUNT II:**
**UNJUST ENRICHMENT**
**(Common Law)**

231.     Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

232.     Plaintiffs assert this Unjust Enrichment count on behalf of themselves and the Nationwide Class or, in the alternative, on behalf of the State Classes.

233.     By reason of their conduct, Defendants caused damages to Plaintiffs and Class members. Plaintiffs and Class members conferred a benefit on the Defendants by overpaying for Class Vehicles at prices that were artificially inflated by Defendants' concealment of the SDM Calibration Defect and misrepresentations regarding the Class Vehicles' safety.

234.     As a result of Defendants' fraud and deception, Plaintiffs and Class members were not aware of the true facts concerning the Class Vehicles and did not benefit from the Defendants' misconduct.

235.    Defendants knowingly benefitted from their unjust conduct. They sold and leased Class Vehicles equipped with the SDM Calibration Defect for more than what the vehicles were worth, at the expense of Plaintiffs and Class members.

236.    Defendants readily accepted and retained these benefits from Plaintiffs and Class members.

237.    It is inequitable and unconscionable for Defendants to retain these benefits because they misrepresented that the Class Vehicles were safe, and intentionally concealed, suppressed, and failed to disclose the SDM Calibration Defect to consumers. Plaintiffs and Class members would not have purchased or leased the Class Vehicles or would have paid less for them, had Defendants not concealed the SDM Calibration Defect.

238.    Plaintiffs and Class members do not have an adequate remedy at law.

239.    Equity cannot in good conscience permit the Defendants to retain the benefits that they derived from Plaintiffs and Class members through unjust and unlawful acts, and therefore restitution or disgorgement of the amount of the Defendants' unjust enrichment is necessary.

**B.**    **State-Specific Claims**

**1.**    **Alabama**

**ALABAMA COUNT I:**
**Violations of the Alabama Deceptive Trade Practices Act**
**Ala. Code § 8-19-1, *et seq.***
**(On Behalf of the Alabama State Class)**

240.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

241.    Plaintiffs Aaron Jackson and David Taylor (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Alabama State Class against all Defendants.

242.    Plaintiffs and Alabama State Class members are "consumers" within the meaning of Ala. Code § 8-19-3(2).

243.    Plaintiffs and Alabama State Class members and Defendants are "persons" within the meaning of Ala. Code § 8-19-3(5).

1     244.    The Class Vehicles are "goods" within the meaning of Ala. Code § 8-19-3(3).

2     245.    Defendants were and are engaged in "trade or commerce" within the meaning of

3  Ala. Code § 8-19-3(8).

4     246.    The Alabama Deceptive Trade Practices Act ("Alabama DTPA") declares several

5  specific actions to be unlawful, including: "(5) Representing that goods or services have

6  sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not

7  have," "(7) Representing that goods or services are of a particular standard, quality, or grade, or

8  that goods are of a particular style or model, if they are of another," and "(27) Engaging in any

9  other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or

10  commerce." Ala. Code § 8-19-5.

11     247.    In the course of their business, Defendants violated the Alabama DTPA by

12  knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose

13  material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed

14  above.

15     248.    Specifically, by misrepresenting the Class Vehicles as safe and/or free from

16  defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class

17  Vehicles and/or the SDM Calibration Defect, Defendants engaged in unfair methods of

18  competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the

19  conduct of any trade or commerce, as prohibited by Ala. Code § 8-19-5.

20     249.    Defendants' unfair or deceptive acts or practices, including misrepresentations,

21  concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to

22  mislead and create a false impression in consumers, and were likely to and did in fact deceive

23  reasonable consumers, including Plaintiffs and Alabama State Class members, about the true

24  safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the

25  Class Vehicles.

26     250.    Defendants' scheme and concealment of the SDM Calibration Defect and true

27  characteristics of the passenger safety systems in the Class Vehicles were material to Plaintiffs

28  and Alabama State Class members, as the Defendants intended. Had they known the truth,

1    Plaintiffs and Alabama State Class members would not have purchased or leased the Class

2    Vehicles, or would have paid significantly less for them.

3            251.    Plaintiffs and Alabama State Class members had no way of discerning that

4    Defendants' representations were false and misleading and/or otherwise learning the facts that

5    Defendants had concealed or failed to disclose. Plaintiffs and Alabama State Class members did

6    not, and could not, unravel Defendants' deception on their own.

7            252.    Defendants had an ongoing duty to Plaintiffs and Alabama State Class members to

8    refrain from unfair or deceptive practices under the Alabama DTPA in the course of their

9    business. Specifically, Defendants owed Plaintiffs and Alabama State Class members a duty to

10   disclose all the material facts concerning the SDM Calibration Defect in the Class Vehicles

11   because they possessed exclusive knowledge, they intentionally concealed the defect from

12   Plaintiffs and Alabama State Class members, and/or they made misrepresentations that were

13   misleading because they were contradicted by withheld facts.

14           253.    Defendants' violations present a continuing risk to Plaintiffs and Alabama State

15   Class members, as well as to the general public. Defendants' unlawful acts and practices

16   complained of herein affect the public interest.

17           254.    Plaintiffs and Alabama State Class members suffered ascertainable losses and

18   actual damages as a direct and proximate result of the Defendants' concealment,

19   misrepresentations, and/or failure to disclose material information.

20           255.    Defendants were provided notice of the issues raised in this count and this

21   Complaint by a notice letter sent August 20, 2021 pursuant to Ala. Code § 8-19-10(e). Because

22   the Defendants failed to adequately remedy their unlawful conduct within the requisite time

23   period, Plaintiffs seeks all damages and relief to which they and Alabama State Class members

24   are entitled.

25           256.    Pursuant to Ala. Code § 8-19-10, Plaintiffs and the Alabama State Class members

26   seek an order enjoining the Defendants' unfair or deceptive acts and/or practices and awarding

27   damages and any other just and proper relief available under the Alabama DTPA.

28

**ALABAMA COUNT II:**
**Breach of Express Warranty**
**Ala. Code §§ 7-2-313 and 7-2A-210**
**(On Behalf of the Alabama State Class)**

257.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

258.    Plaintiffs Aaron Jackson and David Taylor (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Alabama State Class against all Defendants.

259.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ala. Code §§ 7-2-104(1) and 7-2A-103(3), and a "seller" of motor vehicles under § 7-2-103(1)(d).

260.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ala. Code. § 7-2A-103(1)(p).

261.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ala. Code §§ 7-2-105(1) and 7-2A-103(1)(h).

262.    In connection with the purchase or lease of Class Vehicles, the Defendants provided Plaintiffs and Alabama State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

263.    Defendants' warranties formed the basis of the bargain that was reached when Plaintiffs and Alabama State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

264.    However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Alabama State Class members.

265.    Plaintiffs and Alabama State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

266.     Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiffs and Alabama State Class members.

267.     Plaintiffs and Alabama State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public NHTSA complaints and individual lawsuits, as detailed herein.

268.     Alternatively, any opportunity to cure the breach is unnecessary and futile.

269.     As a direct and proximate result of the Defendants' breach of express warranties, Plaintiffs and Alabama State Class members have been damaged in an amount to be proven at trial.

**ALABAMA COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Ala. Code §§ 7-2-314 and 7-2A-212**
**(On Behalf of the Alabama State Class)**

270.     Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

271.     Plaintiffs Aaron Jackson and David Taylor (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Alabama State Class against all Defendants.

272.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ala. Code §§ 7-2-104(1) and 7-2A-103(3), and a "seller" of motor vehicles under § 7-2-103(1)(d).

273.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ala. Code. § 7-2A-103(1)(p).

274.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Ala. Code §§ 7-2-105(1) and 7-2A-103(1)(h).

275.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ala. Code §§ 7-2-314 and 7-2A-212.

276.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

277.    Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs on August 20, 2021, as well as numerous public NHTSA complaints and individual lawsuits, as detailed herein.

278.    Alternatively, any opportunity to cure the breach is unnecessary and futile.

279.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Alabama State Class members have been damaged in an amount to be proven at trial.

**2.    Alaska**

**ALASKA COUNT I:**
**Violations of the Alaska Unfair Trade Practices and Consumer Protection Act**
**Alaska Stat. Ann. § 45.50.471 *et seq.***
**(On Behalf of the Alaska State Class)**

280.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

281.    Plaintiff Stephen Duncan (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Alaska State Class against all Defendants.

282.    The Alaska Unfair Trade Practices And Consumer Protection Act ("Alaska CPA") declares unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce unlawful, including: "(4) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not

1  have;" "(6) representing that goods or services are of a particular standard, quality, or grade, or

2  that goods are of a particular style or model, if they are of another;" "(8) advertising goods or

3  services with intent not to sell them as advertised;" or "(12) using or employing deception, fraud,

4  false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or

5  omitting a material fact with intent that others rely upon the concealment, suppression or

6  omission in connection with the sale or advertisement of goods or services whether or not a

7  person has in fact been misled, deceived or damaged." Alaska Stat. § 45.50.471.

8    283.    In the course of their business, Defendants violated the Alaska CPA by knowingly

9  and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts

10  regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

11    284.    Specifically, by misrepresenting the Class Vehicles as safe and/or free from

12  defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class

13  Vehicles and/or the SDM Calibration Defect, Defendants engaged in unfair methods of

14  competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the

15  conduct of any trade or commerce, as prohibited by Alaska Stat. § 45.50.471.

16    285.    Defendants' unfair or deceptive acts or practices, including misrepresentations,

17  concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to

18  mislead and create a false impression in consumers, and were likely to and did in fact deceive

19  reasonable consumers, including Plaintiff and Alaska State Class members, about the true safety

20  and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class

21  Vehicles.

22    286.    Defendants' scheme and concealment of the SDM Calibration Defect and true

23  characteristics of the passenger safety systems in the Class Vehicles were material to Plaintiff and

24  Alaska State Class members, as the Defendants intended. Had they known the truth, Plaintiff and

25  Alaska State Class members would not have purchased or leased the Class Vehicles, or would

26  have paid significantly less for them.

27    287.    Plaintiff and Alaska State Class members had no way of discerning that

28  Defendants' representations were false and misleading and/or otherwise learning the facts that

1  Defendants had concealed or failed to disclose. Plaintiff and Alaska State Class members did not,

2  and could not, unravel Defendants' deception on their own.

3      288.    Defendants had an ongoing duty to Plaintiff and Alaska State Class members to

4  refrain from unfair or deceptive practices under the Alaska CPA in the course of their business.

5  Specifically, Defendants owed Plaintiff and Alaska State Class members a duty to disclose all the

6  material facts concerning the SDM Calibration Defect in the Class Vehicles because they

7  possessed exclusive knowledge, they intentionally concealed the defect from Plaintiff and Alaska

8  State Class members, and/or they made misrepresentations that were misleading because they

9  were contradicted by withheld facts.

10     289.    Defendants' violations present a continuing risk to Plaintiff and Alaska State Class

11  members, as well as to the general public. Defendants' unlawful acts and practices complained of

12  herein affect the public interest.

13     290.    Pursuant to Alaska Stat. § 45.50. 531, the Alaska State Class seeks monetary relief

14  against Defendants measured as the greater of (a) three times the actual damages in an amount to

15  be determined at trial or (b) $500 for each Alaska State Class member.

16     291.    Plaintiff and the Alaska State Class also seek an order enjoining Defendants'

17  unfair, unlawful, and/or deceptive practices pursuant to Alaska Stat. § 45.50. 535, attorneys' fees,

18  and any other just and proper relief available under the Alaska CPA.

19     292.    Pursuant to Alaska Stat. § 45.50.535, Plaintiffs sent notice letters to Defendants.

20  The Alaska State Class seeks all damages and relief to which it is entitled.

21                          **ALASKA COUNT II:**
22                      **Breach of Express Warranty**
                    **Alaska Stat. §§ 45.02.313 and 45.12.210**
23                   **(On Behalf of the Alaska State Class)**

24     293.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though

25  fully set forth herein.

26     294.    Plaintiff Stephen Duncan (for the purposes of this count, "Plaintiff") brings this

27  claim on behalf of himself and the Alaska State Class against all Defendants.

28

295.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Alaska Stat. §§ 45.02.104(a) and 45.12.103(c)(11), and a "seller" of motor vehicles under Alaska Stat. § 45.02.103(a)(4).

296.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Alaska Stat. § 45.12.103(a)(16).

297.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Alaska Stat. §§ 45.02.105(a) and 45.12.103(a)(8).

298.     In connection with the purchase or lease of Class Vehicles, the Defendants provided Plaintiff and Alaska State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

299.     Defendants' warranties formed the basis of the bargain that was reached when Plaintiff and Alaska State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

300.     However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiff and Alaska State Class members.

301.     Plaintiff and Alaska State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

302.     Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiff and Alaska State Class members.

303.     Plaintiff and Alaska State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public NHTSA complaints and individual lawsuits, as detailed herein.

304.     Alternatively, any opportunity to cure the breach is unnecessary and futile.

305.    As a direct and proximate result of the Defendants' breach of express warranties, Plaintiff and Alaska State Class members have been damaged in an amount to be proven at trial.

**ALASKA COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Alaska Stat. §§ 45.02.314 and 45.12.212**
**(On Behalf of the Alaska State Class)**

306.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

307.    Plaintiff Stephen Duncan (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Alaska State Class against all Defendants.

308.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Alaska Stat. §§ 45.02.104(a) and 45.12.103(c)(11), and a "seller" of motor vehicles under Alaska Stat. § 45.02.103(a)(4).

309.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Alaska Stat. § 45.12.103(a)(16).

310.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Alaska Stat. §§ 45.02.105(a) and 45.12.103(a)(8).

311.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Alaska Stat. §§ 45.02.314 and 45.12.212.

312.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

313.    Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs on August 20, 2021, as well as numerous public NHTSA complaints and individual lawsuits, as detailed herein.

314.     Alternatively, any opportunity to cure the breach is unnecessary and futile.

315.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Alaska State Class members have been damaged in an amount to be proven at trial.

### 3.     Arkansas

**ARKANSAS COUNT I:**
**Violations of the Deceptive Trade Practices Act**
**Ark. Code Ann. § 4-88-101 *et seq.***
**(On Behalf of the Arkansas State Class)**

316.     Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

317.     Plaintiff David Stalcup (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Arkansas State Class against the Defendants.

318.     Defendants and Arkansas State Class members are "persons" within the meaning of Arkansas Deceptive Trade Practices Act ("Arkansas DTPA"), Ark. Code Ann. § 4-88-102(5).

319.     The Class Vehicles are "goods" within the meaning of Ark. Code Ann. § 4-88-102(4).

320.     The Arkansas DTPA prohibits "[d]eceptive and unconscionable trade practices," which include, but are not limited to, a list of enumerated items, including "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade[.]" Ark. Code Ann. § 4-88-107(a)(10). The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; or (2) The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission." Ark. Code Ann. § 4-88-108.

321.     In the course of their business, Defendants violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

322.     Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the SDM Calibration Defect, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by Ark. Code Ann. § 4-88-107(a)(10).

323.     Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and Arkansas State Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

324.     Defendants' scheme and concealment of the SDM Calibration Defect and true characteristics of the passenger safety systems in the Class Vehicles were material to Plaintiff and Arkansas State Class members, as the Defendants intended. Had they known the truth, Plaintiff and Arkansas State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

325.     Plaintiff and Arkansas State Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiff and Arkansas State Class members did not, and could not, unravel Defendants' deception on their own.

326.     Defendants had an ongoing duty to Plaintiff and Arkansas State Class members to refrain from unfair or deceptive practices under the Arkansas DTPA in the course of their business. Specifically, Defendants owed Plaintiff and Arkansas State Class members a duty to disclose all the material facts concerning the SDM Calibration Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiff and Arkansas State Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

327.     Defendants' violations present a continuing risk to the Arkansas State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

328.     The Arkansas State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Arkansas DTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

329.     As a direct and proximate result of Defendants' violations of the Arkansas DTPA, Plaintiff and members of the Arkansas State Class have suffered injury-in-fact and/or actual damage.

330.     The Arkansas State Class seeks monetary relief against Defendants in an amount to be determined at trial. The Arkansas State Class also seeks punitive damages because Defendants acted wantonly in causing the injury or with conscious indifference to the consequences.

331.     Plaintiff also seeks an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

**ARKANSAS COUNT II:**
**Breach of Express Warranty**
**Ark Code Ann. §§ 4-2-313 and 4-2A-210**
**(On Behalf of the Arkansas State Class)**

332.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

333.     Plaintiff David Stalcup (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Arkansas State Class against the Defendants.

334.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ark. Code §§ 4-2-104(1) and 4-2A-103(3), and "seller[s]" of motor vehicles under § 4-2-103(1)(d).

335.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ark. Code § 4-2A-103(1)(p).

336.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Ark. Code §§ 4-2-105(1) and 4-2A-103(1)(h).

337.   In connection with the purchase or lease of Class Vehicles, the Defendants provided Plaintiff and Arkansas State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

338.   Defendants' warranties formed the basis of the bargain that was reached when Plaintiff and Arkansas State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

339.   However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiff and Arkansas State Class members.

340.   Plaintiff and Arkansas State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

341.   Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiff and Arkansas State Class members.

342.   Plaintiff and Arkansas State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public NHTSA complaints and individual lawsuits, as detailed herein.

343.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

344.    As a direct and proximate result of the Defendants' breach of express warranties, Plaintiff and Arkansas State Class members have been damaged in an amount to be proven at trial.

**ARKANSAS COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Ark. Code Ann. §§ 4-2-314 and 4-2A-212**
**(On Behalf of the Arkansas State Class)**

345.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

346.    Plaintiff David Stalcup (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Arkansas State Class against the Defendants.

347.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ark. Code §§ 4-2-104(1) and 4-2A-103(3), and "seller[s]" of motor vehicles under § 4-2-103(1)(d).

348.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ark. Code § 4-2A-103(1)(p).

349.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ark. Code §§ 4-2-105(1) and 4-2A-103(1)(h).

350.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ark. Code §§ 4-2-314 and 4-2A-212.

351.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

352.    Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs on August 20, 2021, as well as numerous public NHTSA complaints and individual lawsuits, as detailed herein.

353.    Alternatively, any opportunity to cure the breach is unnecessary and futile.

354.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Arkansas State Class members have been damaged in an amount to be proven at trial.

**4.    California**

**CALIFORNIA COUNT IV:**
**Violation of California Consumers Legal Remedies Act**
**Cal. Civ. Code § 1750, *et seq.***
**(On Behalf of the California State Class)**

355.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

356.    Plaintiffs Ramiro Pereda, James Milstead, and Richard Vargas (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the California State Class against the Defendants.

357.    Plaintiffs and California State Class members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

358.    Defendants, the California Plaintiffs, and California State Class members are "persons" within the meaning of Cal. Civ. Code § 1761(c).

359.    The Class Vehicles are "goods" within the meaning of Cal. Civ. Code § 1761(a).

360.    The California Legal Remedies Act ("CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770.

361.    Defendants engaged in unfair or deceptive acts or practices when, in the course of their business they, among other acts and practices, intentionally and knowingly made materially

false representations regarding the reliability, safety, and performance of the Class Vehicles and/or the defective SDM software calibration, as detailed above.

362.    Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles, Defendants engaged in one or more of the following unfair or deceptive business practices as defined in Cal. Civ. Code § 1770(a):

a.    Representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have.

b.    Representing that the Class Vehicles are of a particular standard, quality, and grade when they are not.

c.    Advertising the Class Vehicles and/or with the intent not to sell or lease them as advertised.

d.    Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

Cal. Civ. Code §§ 1770(a)(5), (7), (9), and (16).

363.    Additionally, in the various channels of information through which Defendants sold and marketed Class Vehicles, Defendants failed to disclose material information concerning the Class Vehicles, which they had a duty to disclose. Defendants had a duty to disclose the defect because, as detailed above: (a) Defendants knew about the defect in the SDM software calibration in the Class Vehicles; (b) Defendants had exclusive knowledge of material facts not known to the general public or the other California State Class members; (c) Defendants actively concealed material facts concerning the software calibration from the general public and Plaintiffs and California State Class members; and (d) Defendants made partial representations about the Class Vehicles that were misleading because they did not disclose the full truth.

364.    Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and California State Class

1   members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles,

2   and the true value of the Class Vehicles.

3          365.    Plaintiffs and the other California State Class members have suffered injury in fact

4   and actual damages resulting from Defendants' material omissions.

5          366.    Defendants' violations present a continuing risk to Plaintiffs and California State

6   Class members, as well as to the general public, and therefore affect the public interest.

7          367.    Defendants are on notice of the issues raised in this count and this Complaint by

8   way of, among other things, the individual personal injury litigation and hundreds of public

9   consumer complaints detailed above, as well as their own intrinsic knowledge of defect they have

10  included in the Class Vehicles by design. Plaintiffs has also sent a notice letter to Defendants in

11  accordance with Cal. Civ. Code § 1782(a) of the CLRA, notifying Defendants of their alleged

12  violations of Cal. Civ. Code § 1770(a) and demanding that Defendants correct or agree to correct

13  the actions described therein within thirty (30) days of the notice letter. If Defendants fail to do

14  so, Plaintiffs will amend this Complaint as of right (or otherwise seek leave to amend the

15  Complaint) to include compensatory and monetary damages to which Plaintiffs and California

16  Class Members are entitled under the CLRA.

17         368.    Attached hereto as Exhibit C is the venue affidavit required by CLRA, Cal. Civ.

18  Code § 1780(d).

19                          **CALIFORNIA COUNT V:**
                    **Violations of the California Unfair Competition Law**
20                      **Cal. Bus. & Prof. Code § 17200,** *et seq.*
                       **(On Behalf of the California State Class)**
21

22         369.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though

23  fully set forth herein.

24         370.    Plaintiffs Ramiro Pereda, James Milstead, and Richard Vargas (for the purposes of

25  this count, "Plaintiffs") bring this claim on behalf of themselves and the California State Class

26  against the Defendants.

27         371.    The California Unfair Competition Law ("UCL"), Cal. Bus. and Prof. Code

28  § 17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."

372.    Defendants' knowing and intentional conduct described in this Complaint constitutes unlawful, fraudulent, and unfair business acts and practices in violation of the UCL. Specifically, Defendants' conduct is unlawful, fraudulent, and unfair in at least the following ways:

a.    by knowingly and intentionally concealing from Plaintiffs and California State Class members that the Class Vehicles suffer from the SDM Calibration Defect while obtaining money from the California State Class members;

b.    by marketing Class Vehicles as possessing a functional, safe, and defect-free passenger safety system.

c.    by purposefully designing and manufacturing the Class Vehicles to contain a defective SDM software calibration that causes airbags and seatbelts to fail in certain accidents contrary to what was disclosed to regulators and represented to consumers who purchased or leased Class Vehicles, and failing to fix the SDM Calibration Defect free of charge; and

d.    by violating the other California laws alleged herein, including the False Advertising Law, Consumers Legal Remedies Act, California Commercial Code, and Song-Beverly Consumer Warranty Act.

373.    Defendants' misrepresentations, omissions, and concealment were material to the California Plaintiffs and California State Class members, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that consumers would rely on the misrepresentations, concealment, and omissions.

374.    Defendants' material misrepresentations and omissions alleged herein caused Plaintiffs and the California State Class members to make their purchases or leases of their Class Vehicles. Absent those misrepresentations and omissions, Plaintiffs and California State Class members would not have purchased or leased these vehicles or would not have purchased or leased these Class Vehicles at the prices they paid.

375.    Accordingly, Plaintiffs and California State Class members have suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and their concealment of and failure to disclose material information.

376.    Defendants' violations present a continuing risk to Plaintiffs and California State Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

377.    Plaintiffs requests that this Court enter an order enjoining Defendants from continuing their unfair, unlawful, and/or deceptive practices and restoring to members of the California State Class any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Bus. & Prof. Code § 3345, and for such other relief set forth below.

<strong>CALIFORNIA COUNT VI:</strong><br><strong>Violations of the California False Advertising Law</strong><br><strong>Cal. Bus. & Prof. Code § 17500, <em>et seq.</em></strong><br><strong>(On Behalf of the California State Class)</strong>

378.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

379.    Plaintiffs Ramiro Pereda, James Milstead, and Richard Vargas (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the California State Class against the Defendants.

380.    The California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, prohibits false advertising.

381.    Defendants, Plaintiffs, and California State Class members are "persons" within the meaning of Cal. Bus. & Prof. Code § 17506.

382.    Defendants violated the FAL by causing to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements regarding the safety of the Class Vehicles that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers, including California State Class members. Numerous examples of these statements and advertisements appear in the preceding paragraphs throughout this Complaint and in Exhibit B.

383.     The misrepresentations and omissions regarding the reliability and safety of Class Vehicles as set forth in this Complaint were material and had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and California State Class members, about the true safety and reliability of Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

384.     In purchasing or leasing their Class Vehicles, the California State Class members relied on the misrepresentations and/or omissions of Defendants with respect to the safety and reliability of the Class Vehicles. Defendants' representations turned out not to be true because the Class Vehicles are distributed with a dangerous safety defect, rendering the vehicles' airbags and seatbelts inoperative in certain types of accidents.

385.     Plaintiffs and the other California State Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices. Had they known the truth, Plaintiffs and California State Class members would not have purchased or leased the Class Vehicles or would have paid significantly less for them.

386.     Plaintiffs and California State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and California State Class members did not, and could not, unravel Defendants' deception on their own.

387.     Defendants had an ongoing duty to Plaintiffs and California State Class members to refrain from unfair or deceptive practices under the California False Advertising Law in the course of their business. Specifically, the Defendants owed Plaintiffs and California State Class members a duty to disclose all the material facts concerning the SDM Calibration Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiffs and California State Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

388.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

389.    Defendants' violations present a continuing risk to Plaintiffs and California State Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

390.    Plaintiffs requests that this Court enter an order enjoining Defendants from continuing their unfair, unlawful, and/or deceptive practices and restoring to the California State Class any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

**CALIFORNIA COUNT VII:**
**Breach of Express Warranty**
**Cal. Com. Code §§ 2313 and 10210**
**(On Behalf of the California State Class)**

391.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

392.    Plaintiffs Ramiro Pereda, James Milstead, and Richard Vargas (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the California State Class against the Defendants.

393.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and "sellers" of motor vehicles under § 2103(1)(d).

394.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Cal. Com. Code § 10103(a)(16).

395.    All California State Class members who purchased Class Vehicles in California are "buyers" within the meaning of Cal. Com. Code § 2103(1)(a).

396.    All California State Class members who leased Class Vehicles in the California are "lessees" within the meaning of Cal. Com. Code § 10103(a)(14).

397.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

398.     In connection with the purchase or lease of Class Vehicles, Defendants provided Plaintiffs and California State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

399.     Defendants' warranties formed the basis of the bargain that was reached when Plaintiffs and California State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

400.     However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and California State Class members.

401.     Plaintiffs and California State Class members reasonably relied on Defendants' express warranties when purchasing or leasing their Class Vehicles.

402.     Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiffs and California State Class members.

403.     Defendants were on reasonable notice of these issues and an opportunity to cure the breaches due to their extensive knowledge of the SDM Calibration Defect, as detailed herein. Any opportunity to cure the breach is unnecessary and futile, Defendants have not cured the breaches of their warranties despite years of knowledge of those breaches.

404.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and California State Class members have been damaged in an amount to be proven at trial.

**CALIFORNIA COUNT VIII:**
**Breach of Implied Warranty of Merchantability**
**Cal. Com. Code §§ 2314 and 10212**
**(On Behalf of the California State Class)**

405.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

406.    Plaintiffs Ramiro Pereda, James Milstead, and Richard Vargas (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the California State Class against the Defendants.

407.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and "sellers" of motor vehicles under § 2103(1)(d).

408.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Cal. Com. Code § 10103(a)(16).

409.    All California State Class members who purchased Class Vehicles in California are "buyers" within the meaning of Cal. Com. Code § 2103(1)(a).

410.    All California State Class members who leased Class Vehicles in the California are "lessees" within the meaning of Cal. Com. Code § 10103(a)(14).

411.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

412.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

413.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Cal. Com. Code §§ 2314 and 10212.

414.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the

SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

415. Defendants were on reasonable notice of these issues and an opportunity to cure the breaches due to their extensive knowledge of the SDM Calibration Defect, as detailed herein. Any opportunity to cure the breach is unnecessary and futile, Defendants have not cured the breaches of their warranties despite years of knowledge of those breaches.

416. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and California State Class members have been damaged in an amount to be proven at trial.

**CALIFORNIA COUNT IX:**
**Violation of Song-Bervely Consumer Warranty Act,**
**Breach of Implied Warranty**
**Cal Civ. Code § 1790, *et seq*.**
**(On Behalf of the California State Class)**

417. Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

418. Plaintiffs Ramiro Pereda, James Milstead, and Richard Vargas (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the California State Class against the Defendants.

419. All California State Class members who purchased Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

420. All California State Class members who leased Class Vehicles in California are "lessors" within the meaning of Cal. Civ. Code § 1791(h).

421. The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

422. Defendants are the "manufacturer[s]" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

423. Defendants impliedly warranted to Plaintiffs and the other members of the California State Class that the Class Vehicles were "merchantable" within the meaning of Cal.

Civ. Code §§ 1791.1(a) & 1792; however, the Class Vehicles do not have the quality that a buyer would reasonably expect.

424. The Class Vehicles would not pass without objection in the automotive trade due to the SDM Calibration Defect. Because the Class Vehicles contain defective SDMs, the Class Vehicles are not in merchantable condition and thus not fit for ordinary purposes.

425. The Class Vehicles are not adequately labeled because the labeling fails to disclose the SDM Calibration Defect. The Class Vehicles do not conform to the promises and affirmations made by the Defendants regarding safety.

426. The Defendants' breach of the implied warranty of merchantability caused damage to Plaintiffs and California State Class members who purchased or leased the defective Class Vehicles. The amount of damages due will be proven at trial.

427. Pursuant to Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiffs and California State Class members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and any other just and proper relief available under the Song-Beverly Consumer Warranty Act.

**CALIFORNIA COUNT X:**
**Violation of the Song-Beverly Consumer Protection Act,**
**Breach of Express Warranty**
**Cal Civ. Code § 1790, *et seq*.**
**(On Behalf of the California State Class)**

428. Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

429. Plaintiffs Ramiro Pereda, James Milstead, and Richard Vargas (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the California State Class against the Defendants.

430. All California State Class members who purchased Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

431. All California State Class members who leased Class Vehicles in California are "lessors" within the meaning of Cal. Civ. Code § 1791(h).

432.     The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

433.     Defendants are "manufacturer[s]" of the Class Vehicles within the meaning of California Civil Code § 1791(j).

434.     Defendants are and were at all relevant times "sellers" of motor vehicles under Cal. Civ. Code § 1791(l).

435.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Cal. Civ. Code § 1791(i).

436.     Defendants made express warranties to members of the California State Class within the meaning of California Civil Code §§ 1791.2 and 1793.2.

437.     In connection with the purchase or lease of Class Vehicles, Defendants provided Plaintiffs and California State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

438.     Defendants' warranties formed the basis of the bargain that was reached when Plaintiffs and California State Class members unknowingly purchased or leased their Class Vehicles equipped with the SDM Calibration Defect.

439.     However, Defendants knew or should have known that their warranties were false and misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and California State Class members.

440.     Plaintiffs and California State Class members reasonably relied on Defendants' express warranties when purchasing or leasing the California Class Vehicles.

441.     Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiffs and California State Class members.

442.     Defendants were on reasonable notice of these issues and an opportunity to cure the breaches due to their extensive knowledge of the SDM Defect, as detailed herein. Any

1   opportunity to cure the breach is unnecessary and futile, Defendants have not cured the breaches

2   of their warranties despite years of knowledge of those breaches, as detailed herein.

3        443.   As a result of Defendants' breach of their express warranties, members of the

4   California State Class received goods whose defect substantially impairs their value to Plaintiffs

5   and the other members of the California State Class. Plaintiffs and members of the California

6   State Class have been damaged as a result of, inter alia, the diminished value of Defendants'

7   products.

8        444.   Pursuant to California Civil Code §§ 1793.2 & 1794, Plaintiffs and members of

9   the California State Class are entitled to damages and other legal and equitable relief including, at

10   their election, the purchase price of their Class Vehicles, or the overpayment or diminution in

11   value of their Class Vehicles.

12        445.   Pursuant to California Civil Code § 1794, the Class is entitled to costs and

13   attorneys' fees.

### 5.   Colorado

**COLORADO COUNT I:**
**Violations of the Colorado Consumer Protection Act**
**Colo. Rev. Stat. § 6-1-101 *et seq.***
**(On Behalf of the Colorado State Class)**

18        446.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

19        447.   Plaintiff Lakiesha Shears (for the purposes of this count, "Plaintiff") brings this

20   claim on behalf of herself and the Colorado State Class against all Defendants.

21        448.   Defendants are "person[s]" under § 6-1-102(6) of the Colorado Consumer

22   Protection Act "Colorado CPA"), Col. Rev. Stat. § 6-1-101, *et seq.*

23        449.   Plaintiff and Colorado State Class members are "consumers" for purposes of Col.

24   Rev. Stat § 6-1-113(1)(a) who purchased or leased one or more Class Vehicles.

25        450.   The Colorado CPA prohibits deceptive trade practices in the course of a person's

26   business.  Defendants engaged in deceptive trade practices prohibited by the Colorado CPA,

27   including: (1) knowingly making a false representation as to the characteristics, uses, and benefits

28   of the Class Vehicles that had the capacity or tendency to deceive Colorado State Class members;

(2) representing that the Class Vehicles are of a particular standard, quality, and grade even though Defendants knew or should have known they are not; (3) advertising the Class Vehicles with the intent not to sell them as advertised; and (4) failing to disclose material information concerning the Class Vehicles that was known to Defendants at the time of advertisement or sale with the intent to induce Colorado State Class members to purchase, lease or retain the Class Vehicles.

451.    In the course of their business, Defendants violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

452.    Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the SDM Calibration Defect, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by the Colorado CPA.

453.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and Colorado State Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

454.    Defendants' scheme and concealment of the SDM Calibration Defect and true characteristics of the passenger safety systems in the Class Vehicles were material to Plaintiff and Colorado State Class members, as the Defendants intended. Had they known the truth, Plaintiff and Colorado State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

455.    Plaintiff and Colorado State Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that

1  Defendants had concealed or failed to disclose. Plaintiff and Colorado State Class members did

2  not, and could not, unravel Defendants' deception on their own.

3      456.    Defendants had an ongoing duty to Plaintiff and Colorado State Class members to

4  refrain from unfair or deceptive practices under the Colorado CPA in the course of their business.

5  Specifically, Defendants owed Plaintiff and Colorado State Class members a duty to disclose all

6  the material facts concerning the SDM Calibration Defect in the Class Vehicles because they

7  possessed exclusive knowledge, they intentionally concealed the defect from Plaintiff and

8  Colorado State Class members, and/or they made misrepresentations that were misleading

9  because they were contradicted by withheld facts.

10      457.    Defendants' violations present a continuing risk to the Colorado State Class as

11  well as to the general public. Defendants' unlawful acts and practices complained of herein affect

12  the public interest.

13      458.    Plaintiff and the Colorado State Class suffered ascertainable loss and actual

14  damages as a direct and proximate result of Defendants' misrepresentations and concealment of

15  and failure to disclose material information. Defendants had an ongoing duty to all their

16  customers to refrain from unfair and deceptive practices under the Colorado CPA. All owners and

17  lessees of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and

18  unfair acts and practices made in the course of Defendants' business.

19                      **COLORADO COUNT II:**
                        **Breach of Express Warranty**
20                **Colo. Rev. Stat. §§ 4-2-313 and 4-2.5-210**
                   **(On Behalf of the Colorado State Class)**
21

22      459.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though

23  fully set forth herein.

24      460.    Plaintiff Lakiesha Shears (for the purposes of this count, "Plaintiff") brings this

25  claim on behalf of herself and the Colorado State Class against all Defendants.

26      461.    Defendants are and were at all relevant times "merchant[s]" with respect to motor

27  vehicles under Colo. Rev. Stat. §§ 4-2-104(1) and 4-2.5-103(3), and "sellers" of motor vehicles

28  under § 4-2-103(1)(d).

462.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Colo. Rev. Stat. § 4-2.5-103(1)(p).

463.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Colo. Rev. Stat. §§ 4-2-105(1) and 4-2.5-103(1)(h).

464.     In connection with the purchase or lease of Class Vehicles, Defendants provided Plaintiff and Colorado State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

465.     Defendants' warranties formed the basis of the bargain that was reached when Plaintiff and Colorado State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

466.     However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiff and Colorado State Class members.

467.     Plaintiff and Colorado State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

468.     Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiff and Colorado State Class members.

469.     Plaintiff and Colorado State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public NHTSA complaints and individual lawsuits, as detailed herein.

470.     Alternatively, any opportunity to cure the breach is unnecessary and futile.

471.     As a direct and proximate result of the Defendants' breach of express warranties, Plaintiff and Colorado State Class members have been damaged in an amount to be proven at trial.

**COLORADO COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Colo. Rev. Stat. §§ 4-2-314 and 4-2.5-212**
**(On Behalf of the Colorado State Class)**

472.     Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

473.     Plaintiff Lakiesha Shears (for the purposes of this count, "Plaintiff") brings this claim on behalf of herself and the Colorado State Class against all Defendants.

474.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Colo. Rev. Stat. §§ 4-2-104(1) and 4-2.5-103(3), and "sellers" of motor vehicles under § 4-2-103(1)(d).

475.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Colo. Rev. Stat. § 4-2.5-103(1)(p).

476.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Colo. Rev. Stat. §§ 4-2-105(1) and 4-2.5-103(1)(h).

477.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Colo. Rev. Stat. §§ 4-2-313 and 4-2.5-212.

478.     The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

479.     Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs on August 20, 2021, as well as numerous public NHTSA complaints and individual lawsuits, as detailed herein.

480.     Alternatively, any opportunity to cure the breach is unnecessary and futile.

481.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Colorado State Class members have been damaged in an amount to be proven at trial.

### 6.     Delaware

**DELAWARE COUNT I:**
**Violations of the Delaware Consumer Fraud Act**
**6 Del. Code § 2513 *et seq.***
**(On Behalf of the Delaware State Class)**

482.     Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

483.     Plaintiff Christina Colatriano (for the purposes of this count, "Plaintiff") brings this claim on behalf of herself and the Delaware State Class against all Defendants.

484.     Defendants are "person[s]" within the meaning of 6 Del. Code § 2511(7).

485.     The Delaware Consumer Fraud Act ("Delaware CFA") prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby." 6 Del. Code § 2513(a).

486.     In the course of their business, Defendants violated the Delaware CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

487.     Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the SDM Calibration Defect, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by 6 Del. Code § 2513(a).

488.     Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to

mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and Delaware State Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

489.    Defendants' scheme and concealment of the SDM Calibration Defect and true characteristics of the passenger safety systems in the Class Vehicles were material to Plaintiff and Delaware State Class members, as the Defendants intended. Had they known the truth, Plaintiffs and Delaware State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

490.    Plaintiff and Delaware State Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiff and Delaware State Class members did not, and could not, unravel Defendants' deception on their own.

491.    Defendants had an ongoing duty to Plaintiff and Delaware State Class members to refrain from unfair or deceptive practices under the Delaware CFA in the course of their business. Specifically, Defendants owed Plaintiffs and Delaware State Class members a duty to disclose all the material facts concerning the SDM Calibration Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiff and Delaware State Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

492.    Defendants' violations present a continuing risk to the Delaware Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

493.    The Delaware State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Delaware CFA. All owners of Class Vehicles

suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

494.     As a direct and proximate result of Defendants' violations of the Delaware CFA, the Delaware State Class have suffered injury-in-fact and/or actual damage.

495.     The Delaware State Class seeks damages under the Delaware CFA for injury resulting from the direct and natural consequences of Defendants' unlawful conduct. *See, e.g.*, *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1077 (Del. 1983). The Delaware State Class also seeks an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Delaware CFA.

496.     Defendants engaged in gross, oppressive or aggravated conduct justifying the imposition of punitive damages.

**DELAWARE COUNT II:**
**Breach of Express Warranty**
**6 Del. Code §§ 2-313 and 2A-210**
**(On Behalf of the Delaware State Class)**

497.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

498.     Plaintiff Christina Colatriano (for the purposes of this count, "Plaintiff") brings this claim on behalf of herself and the Delaware State Class against all Defendants.

499.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under 6 Del. C. §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(1)(d).

500.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under 6 Del. C. § 2A-103(1)(p).

501.     The Class Vehicles are and were at all relevant times "goods" within the meaning of 6 Del. C. §§ 2-105(1) and 2A-103(1)(h).

502.    In connection with the purchase or lease of Class Vehicles, Defendants provided Plaintiff and Delaware State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

503.    Defendants' warranties formed the basis of the bargain that was reached when Plaintiff and Delaware State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

504.    However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiff and Delaware State Class members.

505.    Plaintiff and Delaware State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

506.    Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiffs and Delaware State Class members.

507.    Plaintiff and Delaware State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public NHTSA complaints and individual lawsuits, as detailed herein.

508.    Alternatively, any opportunity to cure the breach is unnecessary and futile.

509.    As a direct and proximate result of the Defendants' breach of express warranties, Plaintiff and Delaware State Class members have been damaged in an amount to be proven at trial.

**DELAWARE COUNT III:**
**Breach of Implied Warranty of Merchantability**
**6 Del. Code §§ 2-314 and 7-2A-212**
**(On Behalf of the Delaware State Class)**

510.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

511.    Plaintiff Christina Colatriano (for the purposes of this count, "Plaintiff") brings this claim on behalf of herself and the Delaware State Class against all Defendants.

512.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under 6 Del. C. §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(1)(d).

513.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under 6 Del. C. § 2A-103(1)(p).

514.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 6 Del. C. §§ 2-105(1) and 2A-103(1)(h).

515.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 6 Del. C. §§ 2-314 and 2A-212.

516.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

517.    Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs on August 20, 2021, as well as numerous public NHTSA complaints and individual lawsuits, as detailed herein.

518.    Alternatively, any opportunity to cure the breach is unnecessary and futile.

519.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Delaware State Class members have been damaged in an amount to be proven at trial.

**7.    Florida**

**FLORIDA COUNT I:**
**Violations of the Florida Unfair & Deceptive Trade Practices Act**
**Fla. Stat. § 501.201, *et seq.***
**(On Behalf of the Florida State Class)**

520.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

521.    Plaintiffs Toni Lowe, Clarise Knight, and William Free (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Florida State Class against all Defendants.

522.    Plaintiffs and members of the Florida State Class are "consumers" within the meaning of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), Fla. Stat. § 501.203(7).

523.    Defendants engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

524.    FUDTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . ." Fla. Stat. § 501.204(1). Defendants participated in unfair and deceptive trade practices that violated the FUDTPA as described herein.

525.    In the course of their business, Defendants violated the FUDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

526.    Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the SDM Calibration Defect, Defendants engaged in unfair methods of

competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by Fla. Stat. § 501.204(1).

527.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Florida State Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

528.    Defendants' scheme and concealment of the SDM Calibration Defect and true characteristics of the passenger safety systems in the Class Vehicles were material to Plaintiffs and Florida State Class members, as the Defendants intended. Had they known the truth, Plaintiffs and Florida State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

529.    Plaintiffs and Florida State Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Florida State Class members did not, and could not, unravel Defendants' deception on their own.

530.    Defendants had an ongoing duty to Plaintiffs and Florida State Class members to refrain from unfair or deceptive practices under the FUDTPA in the course of their business. Specifically, Defendants owed Plaintiffs and Florida State Class members a duty to disclose all the material facts concerning the SDM Calibration Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiffs and Florida State Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

531.    Defendants' violations present a continuing risk to Plaintiffs and Florida State Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

532.    Pursuant to Fla. Stat. § 501.211, Plaintiffs and Florida State Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the FUDTPA.

533.    Plaintiffs and the Florida State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information.

534.    Plaintiffs and the Florida State Class are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

535.    Plaintiffs and the Florida State Class also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the FUDTPA.

**FLORIDA COUNT II:**
**Breach of Express Warranty**
**Fla. Stat. §§ 672.313 and 680.21**
**(On Behalf of the Florida State Class)**

536.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

537.    Plaintiffs Toni Lowe, Clarise Knight, and William Free (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Florida State Class against all Defendants.

538.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Fla. Stat. §§ 672.104(1) and 680.1031(3)(k), and a "seller" of motor vehicles under § 672.103(1)(d).

539.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Fla. Stat.  § 680.1031(1)(p).

540.    All Florida State Class members who purchased Class Vehicles in Florida are "buyers" within the meaning of Fla. Stat. §§ 672.103(1)(a).

541.    All Florida State Class members who leased Class Vehicles in Florida are "lessees" within the meaning of Fla. Stat. § 680.1031(1)(n).

542.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Fla. Stat. §§ 672.105(1) and 680.1031(1)(h).

543.     In connection with the purchase or lease of Class Vehicles, Defendants provided Plaintiffs and Florida State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

544.     Defendants' warranties formed the basis of the bargain that was reached when Plaintiffs and Florida State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

545.     However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Florida State Class members.

546.     Plaintiffs and Florida State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

547.     Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiffs and Florida State Class members.

548.     Plaintiffs and Florida State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021, as well as numerous public NHTSA complaints and individual lawsuits, as detailed herein.

549.     Alternatively, any opportunity to cure the breach is unnecessary and futile.

550.     As a direct and proximate result of the Defendants' breach of express warranties, Plaintiffs and Florida State Class members have been damaged in an amount to be proven at trial.

**FLORIDA COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Fla. Stat. §§ 672.314 and 680.212**
**(On Behalf of the Florida State Class)**

551.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

552.     Plaintiffs Toni Lowe, Clarise Knight, and William Free (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Florida State Class against all Defendants.

553.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Fla. Stat. §§ 672.104(1) and 680.1031(3)(k), and a "seller" of motor vehicles under § 672.103(1)(d).

554.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Fla. Stat. § 680.1031(1)(p).

555.     All Florida State Class members who purchased Class Vehicles in Florida are "buyers" within the meaning of Fla. Stat. §§ 672.103(1)(a).

556.     All Florida State Class members who leased Class Vehicles in Florida are "lessees" within the meaning of Fla. Stat. § 680.1031(1)(n).

557.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Fla. Stat. §§ 672.105(1) and 680.1031(1)(h).

558.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Fla. Stat. §§ 672.314 and 680.212.

559.     The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

560.     Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public NHTSA complaints and individual lawsuits, as detailed herein.

561.     Alternatively, any opportunity to cure the breach is unnecessary and futile.

562.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Florida State Class members have been damaged in an amount to be proven at trial.

**8.     Georgia**

**GEORGIA COUNT I:**
**Violations of Georgia's Fair Business Practices Act**
**Ga. Code Ann. § 10-1-390 *et seq.***
**(On Behalf of the Georgia State Class)**

563.     Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

564.     Plaintiffs Eloise Ackiss, Joseph Sweat, Ed Driggers, Jr., and Larry Swafford (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Georgia State Class against all Defendants.

565.     The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, Ga. Code. Ann. § 10-1-393(a), including but not limited to "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised," Ga. Code. Ann. § 10-1-393(b).

566.     In the course of their business, Defendants violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

567.     Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class

Vehicles and/or the SDM Calibration Defect, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by Ga. Code. Ann. § 10-1-393(b).

568. Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Georgia State Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

569. Defendants' scheme and concealment of the SDM Calibration Defect and true characteristics of the passenger safety systems in the Class Vehicles were material to Plaintiffs and Georgia State Class members, as the Defendants intended. Had they known the truth, Plaintiffs and Georgia State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

570. Plaintiffs and Georgia State Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Georgia State Class members did not, and could not, unravel Defendants' deception on their own.

571. Defendants had an ongoing duty to Plaintiffs and Georgia State Class members to refrain from unfair or deceptive practices under the Georgia FBPA in the course of their business. Specifically, Defendants owed Plaintiffs and Georgia State Class members a duty to disclose all the material facts concerning the SDM Calibration Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiffs and Georgia State Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

572. Defendants' violations present a continuing risk to Plaintiffs and Georgia State Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

573. As a direct and proximate result of Defendants' violations of the Georgia FBPA, Plaintiffs and the Georgia State Class has suffered injury-in-fact and/or actual damage.

574. Plaintiffs and the Georgia State Class are entitled to recover damages and exemplary damages (for intentional violations) per Ga. Code. Ann. § 10-1-399(a).

575. Plaintiffs and the Georgia State Class also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia FBPA per Ga. Code. Ann. § 10-1-399.

576. Pursuant to Ga. Code Ann. § 10-1-399, Plaintiffs sent a notice letter to Defendants. Plaintiffs and the Georgia State Class seek all damages and relief to which it is entitled.

**GEORGIA COUNT II:**
**Violations of Georgia's Uniform Deceptive Trade Practices Act**
**Ga. Code Ann. § 10-1-370 *et seq.***
**(On Behalf of the Georgia State Class)**

577. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

578. Plaintiffs Eloise Ackiss, Joseph Sweat, Ed Driggers, Jr., and Larry Swafford (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Georgia State Class against all Defendants.

579. Defendants, Plaintiffs, and members of the Georgia State Class are "persons" within the meaning of Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), Ga. Code. Ann. § 10-1-371(5).

580. The Georgia UDTPA prohibits "deceptive trade practices," which include the "misrepresentation of standard or quality of goods or services," and "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Ga. Code. Ann. § 10-1-372(a).

581. In the course of their business, Defendants violated the Georgia UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

582.     Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the SDM Calibration Defect, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by the Georgia UDTPA.

583.     Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Georgia State Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

584.     Defendants' scheme and concealment of the SDM Calibration Defect and true characteristics of the passenger safety systems in the Class Vehicles were material to Plaintiffs and Georgia State Class members, as the Defendants intended. Had they known the truth, Plaintiffs and Georgia State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

585.     Plaintiffs and Georgia State Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Georgia State Class members did not, and could not, unravel Defendants' deception on their own.

586.     Defendants had an ongoing duty to Plaintiffs and Georgia State Class members to refrain from unfair or deceptive practices under the Georgia UDTPA in the course of their business. Specifically, Defendants owed Plaintiffs and Georgia State Class members a duty to disclose all the material facts concerning the SDM Calibration Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiffs and Georgia State Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

587. Defendants' violations present a continuing risk to Plaintiffs and Georgia State Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

588. As a direct and proximate result of Defendants' violations of the Georgia UDTPA, Plaintiffs and the Georgia State Class have suffered injury-in-fact and/or actual damage.

589. Plaintiffs and the Georgia State Class seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia UDTPA per Ga. Code. Ann § 10-1-373.

**GEORGIA COUNT III:**
**Breach of Express Warranty**
**Ga. Code Ann. §§ 11-2-313 and 11-2A-210**
**(On Behalf of the Georgia State Class)**

590. Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

591. Plaintiffs Eloise Ackiss, Joseph Sweat, Ed Driggers, Jr., and Larry Swafford (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Georgia State Class against all Defendants.

592. Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), and a "seller" of motor vehicles under § 11-2-103(1)(d).

593. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ga. Code Ann. § 11-2A-103(1)(p).

594. The Class Vehicles are and were at all relevant times "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

595. In connection with the purchase or lease of Class Vehicles, the Defendants provided Plaintiffs and Georgia State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

596.     Defendants' warranties formed the basis of the bargain that was reached when Plaintiffs and Georgia State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

597.     However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Georgia State Class members.

598.     Plaintiffs and Georgia State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

599.     Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiffs and Georgia State Class members.

600.     Plaintiffs and Georgia State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public NHTSA complaints and individual lawsuits, as detailed herein.

601.     Alternatively, any opportunity to cure the breach is unnecessary and futile.

602.     As a direct and proximate result of the Defendants' breach of express warranties, Plaintiffs and Georgia State Class members have been damaged in an amount to be proven at trial.

**GEORGIA COUNT IV:**
**Breach of Implied Warranty of Merchantability**
**Ga. Code Ann. §§ 11-2-314 and 11-2A-212**
**(On Behalf of the Georgia State Class)**

603.     Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

604.     Plaintiffs Eloise Ackiss, Joseph Sweat, Ed Driggers, Jr., and Larry Swafford for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Georgia State Class against all Defendants.

605.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), and a "seller" of motor vehicles under § 11-2-103(1)(d).

606.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ga. Code Ann. § 11-2A-103(1)(p).

607.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

608.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ga. Code Ann. §§ 11-2-314 and 11-2A-212.

609.     The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

610.     Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs on August 20, 2021, as well as numerous public NHTSA complaints and individual lawsuits, as detailed herein.

611.     Alternatively, any opportunity to cure the breach is unnecessary and futile.

612.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Georgia State Class members have been damaged in an amount to be proven at trial.

**9.**     **Idaho**

**IDAHO COUNT I:**
**Violations of the Idaho Consumer Protection Act**
**Idaho Code Ann. § 48-601,** *et seq.*

613.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

614.     Plaintiffs Michael Merkley and Travis Dieter (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Idaho State Class against all Defendants.

615.     Defendants are "person[s]" under the Idaho Consumer Protection Act ("Idaho CPA"), Idaho Code § 48-602(1).

616.     Defendants' acts or practices as set forth above occurred in the conduct of "trade" or "commerce" under Idaho Code § 48-602(2).

617.     Defendants participated in misleading, false, or deceptive acts that violated the Idaho CPA.

618.     In the course of their business, Defendants violated the Idaho CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

619.     Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the SDM Calibration Defect, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by the Idaho CPA.

620.     Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Idaho State Class members, about the true safety

1  and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class

2  Vehicles.

3       621.    Defendants' scheme and concealment of the SDM Calibration Defect and true

4  characteristics of the passenger safety systems in the Class Vehicles were material to Plaintiffs

5  and Idaho State Class members, as the Defendants intended. Had they known the truth, Plaintiffs

6  and Idaho State Class members would not have purchased or leased the Class Vehicles, or would

7  have paid significantly less for them.

8       622.    Plaintiffs and Idaho State Class members had no way of discerning that

9  Defendants' representations were false and misleading and/or otherwise learning the facts that

10  Defendants had concealed or failed to disclose. Plaintiffs and Idaho State Class members did not,

11  and could not, unravel Defendants' deception on their own.

12       623.    Defendants had an ongoing duty to Plaintiffs and Idaho State Class members to

13  refrain from unfair or deceptive practices under the Idaho CPA in the course of their business.

14  Specifically, Defendants owed Plaintiffs and Idaho State Class members a duty to disclose all the

15  material facts concerning the SDM Calibration Defect in the Class Vehicles because they

16  possessed exclusive knowledge, they intentionally concealed the defect from Plaintiffs and Idaho

17  State Class members, and/or they made misrepresentations that were misleading because they

18  were contradicted by withheld facts.

19       624.    Defendants' violations present a continuing risk to the Idaho State Class as well as

20  to the general public. Defendants' unlawful acts and practices complained of herein affect the

21  public interest.

22       625.    The Idaho State Class suffered ascertainable loss and actual damages as a direct

23  and proximate result of Defendants' misrepresentations and concealment of and failure to

24  disclose material information. Defendants had an ongoing duty to all their customers to refrain

25  from unfair and deceptive practices under the Idaho CPA. All owners of Class Vehicles suffered

26  ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the

27  course of Defendants' business.

28

626.     As a direct and proximate result of Defendants' violations of the Idaho CPA, the Idaho State Class has suffered injury-in-fact and/or actual damage.

627.     Pursuant to Idaho Code § 48-608, the Idaho State Class seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $1,000 for each Idaho State Class member.

628.     The Idaho State Class also seeks an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Idaho CPA.

629.     The Idaho State Class also seeks punitive damages against Defendants because Defendants conduct evidences an extreme deviation from reasonable standards. Defendants flagrantly and fraudulently misrepresented the reliability of the Class Vehicles, deceived Class members, and concealed material facts that only they knew—all to avoid the expense and public relations nightmare of correcting a flaw in the Class Vehicles. Defendants' unlawful conduct constitutes oppression and fraud warranting punitive damages.

**IDAHO COUNT II:**
**Breach of Express Warranty**
**Idaho Code §§ 28-2-313 and 28-12-210**
**(On Behalf of the Idaho State Class)**

630.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

631.     Plaintiffs Michael Merkley and Travis Dieter (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Idaho State Class against all Defendants.

632.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Idaho Code §§ 28-2-104(1) and 28-12-103(3), and "sellers" of motor vehicles under § 28-2-103(1)(d).

633.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Idaho Code § 28-12-103(1)(p).

634.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Idaho Code §§ 28-2-105(1) and 28-12-103(1)(h).

635.     In connection with the purchase or lease of Class Vehicles, the Defendants provided Plaintiffs and Idaho State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

636.     Defendants' warranties formed the basis of the bargain that was reached when Plaintiffs and Idaho State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

637.     However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Idaho State Class members.

638.     Plaintiffs and Idaho State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

639.     Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiffs and Idaho State Class members.

640.     Plaintiffs and Idaho State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public NHTSA complaints and individual lawsuits, as detailed herein.

641.     Alternatively, any opportunity to cure the breach is unnecessary and futile.

642.     As a direct and proximate result of the Defendants' breach of express warranties, Plaintiffs and Idaho State Class members have been damaged in an amount to be proven at trial.

**IDAHO COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Idaho Code §§ 28-2-314 and 28-12-212**
**(On Behalf of the Idaho State Class)**

643.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

644.    Plaintiffs Michael Merkley and Travis Dieter (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Idaho State Class against all Defendants.

645.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Idaho Code §§ 28-2-104(1) and 28-12-103(3), and "sellers" of motor vehicles under § 28-2-103(1)(d).

646.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Idaho Code § 28-12-103(1)(p).

647.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Idaho Code §§ 28-2-105(1) and 28-12-103(1)(h).

648.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Idaho Code §§ 28-2-314 and 28-12-212.

649.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

650.    Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs on August 20, 2021, as well as numerous public NHTSA complaints and individual lawsuits, as detailed herein.

651.    Alternatively, any opportunity to cure the breach is unnecessary and futile.

652.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Idaho State Class members have been damaged in an amount to be proven at trial.

### 10.     Illinois

**ILLINOIS COUNT I:**
**Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 ILCS 505/1, *et seq.* and 720 ILCS 295/1a**
**(On Behalf of the Illinois State Class)**

653.     Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

654.     Plaintiffs Angelica Mar, Delbert Dehne, and Randy Holdren (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Illinois State Class against all Defendants.

655.     Defendants are "person[s]" as that term is defined in 815 ILCS 505/1(c).

656.     Members of the Illinois State Class are "consumers" as that term is defined in 815 ILCS 505/1(e).

657.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

658.     In the course of their business, Defendants violated the Illinois CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

659.     Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the SDM Calibration Defect, Defendants engaged in unfair methods of

competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by 815 ILCS 505/2.

660.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Illinois State Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

661.    Defendants' scheme and concealment of the SDM Calibration Defect and true characteristics of the passenger safety systems in the Class Vehicles were material to Plaintiffs and Illinois State Class members, as the Defendants intended. Had they known the truth, Plaintiffs and Illinois State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

662.    Plaintiffs and Illinois State Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Illinois State Class members did not, and could not, unravel Defendants' deception on their own.

663.    Defendants had an ongoing duty to Plaintiffs and Illinois State Class members to refrain from unfair or deceptive practices under the Illinois CFA in the course of their business. Specifically, Defendants owed Plaintiffs and Illinois State Class members a duty to disclose all the material facts concerning the SDM Calibration Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiffs and Illinois State Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

664.    Defendants' violations present a continuing risk to Plaintiffs and Illinois State Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

665.     Plaintiffs and the Illinois State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Illinois CFA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

666.     As a direct and proximate result of Defendants' violations of the Illinois CFA, Plaintiffs and members of the Illinois State Class have suffered injury-in-fact and/or actual damage.

667.     Pursuant to 815 ILCS 505/10a(a), the Illinois State Class seeks monetary relief against Defendants in the amount of actual damages, as well as punitive damages because Defendants acted with fraud and/or malice and/or was grossly negligent.

668.     Plaintiffs and the Illinois State Class also seek an order enjoining Defendants' unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 ILCS § 505/1 *et seq.*

**ILLINOIS COUNT II:**
**Breach of Express Warranty**
**810 Ill. Comp. Stat. §§ 5/2-313 and 5/2A-210**
**(On Behalf of the Illinois State Class)**

669.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

670.     Plaintiffs Angelica Mar, Delbert Dehne, and Randy Holdren (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Illinois State Class against all Defendants.

671.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3), and "sellers" of motor vehicles under § 5/2-103(1)(d).

672.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under 810 Ill. Comp. Stat. § 5/2A-103(1)(p).

673.     The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. §§ 5/2-105(1) and 5/2A-103(1)(h).

674.     In connection with the purchase or lease of Class Vehicles, the Defendants provided Plaintiffs and Illinois State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

675.     Defendants' warranties formed the basis of the bargain that was reached when Plaintiffs and Illinois State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

676.     However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Illinois State Class members.

677.     Plaintiffs and Illinois State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

678.     Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiffs and Illinois State Class members.

679.     Plaintiffs and Illinois State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public NHTSA complaints and individual lawsuits, as detailed herein.

680.     Alternatively, any opportunity to cure the breach is unnecessary and futile.

681.     As a direct and proximate result of the Defendants' breach of express warranties, Plaintiffs and Illinois State Class members have been damaged in an amount to be proven at trial.

**ILLINOIS COUNT III:**
**Breach of Implied Warranty of Merchantability**
**810 Ill. Comp. Stat. §§ 5/2-314 and 5/2A-212**
**(On Behalf of the Illinois State Class)**

682.     Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

683.     Plaintiffs Angelica Mar, Delbert Dehne, and Randy Holdren (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Illinois State Class against all Defendants.

684.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3), and "sellers" of motor vehicles under § 5/2-103(1)(d).

685.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under 810 Ill. Comp. Stat. § 5/2A-103(1)(p).

686.     The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. §§ 5/2-105(1) and 5/2A-103(1)(h).

687.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 810 Ill. Comp. Stat. §§ 28-2-314 and 28-12-212.

688.     The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

689.     Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs on August 20, 2021, as well as numerous public NHTSA complaints and individual lawsuits, as detailed herein.

690.     Alternatively, any opportunity to cure the breach is unnecessary and futile.

691.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Illinois State Class members have been damaged in an amount to be proven at trial.

### 11.    Indiana

**INDIANA COUNT I:**
**Violations of the Indiana Deceptive Consumer Sales Act**
**Ind. Code § 24-5-0.5-3**
**(On Behalf of the Indiana State Class)**

692.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

693.    Plaintiffs Warren Whitsey, David James, and Jerome Blatt (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Indiana State Class against all Defendants.

694.    Defendants are "suppliers" within the meaning of Ind. Code § 24-5-0.5-2(a)(3).

695.    Defendants, Plaintiffs, and the Indiana State Class members are "persons" within the meaning of Ind. Code § 24-5-0.5-2(a)(2).

696.    Defendants were and are engaged in "consumer transactions" within the meaning of Ind. Code § 24-5-0.5-2(a)(1).

697.    The Indiana Deceptive Consumer Sales Act ("Indiana DCSA") prohibits a supplier from committing an "unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction." Ind. Code § 24-5-0.5-3(a).

698.    In the course of their business, Defendants violated the Indiana DCSA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

699.    Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the SDM Calibration Defect, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by Ind. Code § 24-5-0.5-3(a).

700.     Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Indiana State Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

701.     Defendants' scheme and concealment of the SDM Calibration Defect and true characteristics of the passenger safety systems in the Class Vehicles were material to Plaintiffs and Indiana State Class members, as the Defendants intended. Had they known the truth, Plaintiffs and Indiana State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

702.     Plaintiffs and Indiana State Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Indiana State Class members did not, and could not, unravel Defendants' deception on their own.

703.     Defendants had an ongoing duty to Plaintiffs and Indiana State Class members to refrain from unfair or deceptive practices under the Indiana DCSA in the course of their business. Specifically, Defendants owed Plaintiffs and Indiana State Class members a duty to disclose all the material facts concerning the SDM Calibration Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiffs and Indiana State Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

704.     Plaintiffs and the Indiana State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information.

705.     Pursuant to Ind. Code § 24-5-0.5-4, the Indiana State Class seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined

1    at trial and (b) statutory damages in the amount of $500 for each Indiana State Class member,

2    including treble damages up to $1,000 for Defendants' willfully deceptive acts.

3         706.    The Indiana State Class also seeks punitive damages based on the outrageousness

4    and recklessness of the Defendants' conduct and Defendants' high net worth.

5         707.    Pursuant to Ind. Code § 24-5-0.5-5(a), Plaintiffs sent notice letters to Defendants.

6    The Indiana State Class seeks all damages and relief to which it is entitled.

7    **INDIANA COUNT II:**
     **Breach of Express Warranty**
8    **Ind. Code §§ 26-1-3-313 and 26-1-2.1-210**
     **(On Behalf of the Indiana State Class)**
9

10        708.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though

11   fully set forth herein.

12        709.    Plaintiffs Warren Whitsey, David James, and Jerome Blatt (for the purposes of this

13   count, "Plaintiffs") bring this claim on behalf of themselves and the Indiana State Class against

14   all Defendants.

15        710.    Defendants are and were at all relevant times "merchant[s]" with respect to motor

16   vehicles under Ind. Code §§ 26-1-2-104(1) and 26-1-2.1-103(3), and "sellers" of motor vehicles

17   under § 26-1-2-103(1)(d).

18        711.    With respect to leases, Defendants are and were at all relevant times "lessors" of

19   motor vehicles under Ind. Code § 26-1-2.1-103(1)(p).

20        712.    The Class Vehicles are and were at all relevant times "goods" within the meaning

21   of Ind. Code §§ 26-1-2-105(1) and 26-1-2.1-103(1)(h).

22        713.    In connection with the purchase or lease of Class Vehicles, the Defendants

23   provided Plaintiffs and Indiana State Class members with written express warranties covering the

24   repair or replacement of components that are defective in materials or workmanship.

25        714.    Defendants' warranties formed the basis of the bargain that was reached when

26   Plaintiffs and Pennsylvania State Class members unknowingly purchased or leased Class

27   Vehicles that came equipped with the SDM Calibration Defect.

28

715.    However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Indiana State Class members.

716.    Plaintiffs and Indiana State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

717.    Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiffs and Indiana State Class members.

718.    Plaintiffs and Indiana State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public NHTSA complaints and individual lawsuits, as detailed herein.

719.    Alternatively, any opportunity to cure the breach is unnecessary and futile.

720.    As a direct and proximate result of the Defendants' breach of express warranties, Plaintiffs and Indiana State Class members have been damaged in an amount to be proven at trial.

**INDIANA COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Ind. Code §§ 26-1-3-314 and 26-1-2.1-212**
**(On Behalf of the Indiana State Class)**

721.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

722.    Plaintiffs Warren Whitsey, David James, and Jerome Blatt (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Indiana State Class against all Defendants.

723.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ind. Code §§ 26-1-2-104(1) and 26-1-2.1-103(3), and "sellers" of motor vehicles under § 26-1-2-103(1)(d).

724.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ind. Code § 26-1-2.1-103(1)(p).

725.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ind. Code §§ 26-1-2-105(1) and 26-1-2.1-103(1)(h).

726.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ind. Code §§ 26-1-2-314 and 26-1-2.1-212.

727.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

728.    Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs on August 20, 2021, as well as numerous public NHTSA complaints and individual lawsuits, as detailed herein.

729.    Alternatively, any opportunity to cure the breach is unnecessary and futile.

730.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Indiana State Class members have been damaged in an amount to be proven at trial.

### 12.    Kansas

**KANSAS COUNT I:**
**Violations of the Kansas Consumer Protection Act**
**Kan. Stat. Ann. § 50-623 *et seq.***
**(On Behalf of the Kansas State Class)**

731.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

732.    Plaintiff Kerry Batman (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Kansas State Class against all Defendants.

733. Each Defendant is a "supplier" under the Kansas Consumer Protection Act ("Kansas CPA"), Kan. Stat. Ann. § 50-624(l).

734. Kansas State Class members are "consumers," within the meaning of Kan. Stat. Ann. § 50-624(b), who purchased or leased one or more Class Vehicles.

735. The sale of the Class Vehicles to the Kansas State Class members was a "consumer transaction" within the meaning of Kan. Stat. Ann. § 50-624(c).

736. The Kansas CPA states "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction," Kan. Stat. Ann. § 50-626(a), and that deceptive acts or practices include: (1) knowingly making representations or with reason to know that "(A) Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;" and "(D) property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation;" "(2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact;" and "(3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact." The Kansas CPA also provides that "[n]o supplier shall engage in any unconscionable act or practice in connection with a consumer transaction." Kan. Stat. Ann. § 50-627(a).

737. In the course of their business, Defendants violated the Kansas CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

738. Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the SDM Calibration Defect, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by Kan. Stat. Ann. § 50-627(a).

739. Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive

reasonable consumers, including Plaintiff and Kansas State Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

740.    Defendants' scheme and concealment of the SDM Calibration Defect and true characteristics of the passenger safety systems in the Class Vehicles were material to Plaintiff and Kansas State Class members, as the Defendants intended. Had they known the truth, Plaintiff and Kansas State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

741.    Plaintiff and Kansas State Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiff and Kansas State Class members did not, and could not, unravel Defendants' deception on their own.

742.    Defendants had an ongoing duty to Plaintiff and Kansas State Class members to refrain from unfair or deceptive practices under the Kansas CPA in the course of their business. Specifically, Defendants owed Plaintiff and Kansas State Class members a duty to disclose all the material facts concerning the SDM Calibration Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiff and Kansas State Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

743.    Defendants' violations present a continuing risk to the Kansas State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

744.    Members of the Kansas State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Kansas CPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

745.     As a direct and proximate result of Defendants' violations of the Kansas CPA, Plaintiff and the Kansas State Class have suffered injury-in-fact and/or actual damage.

746.     Pursuant to Kan. Stat. Ann. § 50-634, the Kansas State Class seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $10,000 for each Kansas State Class member.

747.     Plaintiff also seeks an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under Kan. Stat. Ann § 50-623, *et seq.*

**KANSAS COUNT II:**
**Breach of Express Warranty**
**Kan. Stat. §§ 84-2-313 and 84-2A-210**
**(On Behalf of the Kansas State Class)**

748.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

749.     Plaintiff Kerry Batman (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Kansas State Class against all Defendants.

750.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Kan. Stat. §§ 84-2-104(1) and 84-2A-103(3), and "sellers" of motor vehicles under § 84-2-103(1)(d).

751.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Kan. Stat. § 84-2A-103(1)(p).

752.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Kan. Stat. §§ 84-2-105(1) and 84-2A-103(1)(h).

753.     In connection with the purchase or lease of Class Vehicles, Defendants provided Plaintiff and Kansas State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

754.     Defendants' warranties formed the basis of the bargain that was reached when Plaintiff and Kansas State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

755. However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiff and Kansas State Class members.

756. Plaintiff and Kansas State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

757. Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiff and Kansas State Class members.

758. Plaintiff and Kansas State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public NHTSA complaints and individual lawsuits, as detailed herein.

759. Alternatively, any opportunity to cure the breach is unnecessary and futile.

760. As a direct and proximate result of the Defendants' breach of express warranties, Plaintiff and Kansas State Class members have been damaged in an amount to be proven at trial.

**KANSAS COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Kan. Stat. §§ 84-2-314 and 84-2A-212**
**(On Behalf of the Kansas State Class)**

761. Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

762. Plaintiff Kerry Batman (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Kansas State Class against all Defendants.

763. Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Kan. Stat. §§ 84-2-104(1) and 84-2A-103(3), and "sellers" of motor vehicles under § 84-2-103(1)(d).

764.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Kan. Stat. § 84-2A-103(1)(p).

765.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Kan. Stat. §§ 84-2-105(1) and 84-2A-103(1)(h).

766.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Kan. Stat. §§ 84-2-314 and 84-2A-212.

767.     The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

768.     Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs on August 20, 2021, as well as numerous public NHTSA complaints and individual lawsuits, as detailed herein.

769.     Alternatively, any opportunity to cure the breach is unnecessary and futile.

770.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Kansas State Class members have been damaged in an amount to be proven at trial.

### 13.   Louisiana

**LOUISIANA COUNT I:**
**Violations of the Louisiana Unfair Trade Practices and**
**Consumer Protection Law**
**La. Stat. Ann. § 51:1401, *et seq.***
**(On Behalf of the Louisiana State Class)**

771.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

772.     Plaintiff Allan Martin (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Louisiana State Class against all Defendants.

773.     Defendants, Plaintiff, and the Louisiana State Class are "persons" within the meaning of the La. Rev. Stat. § 51:1402(8)

774.     Plaintiff and Louisiana State Class members are "consumers" within the meaning of La. Rev. Stat. § 51:1402(1).

775.     Defendants engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. § 51:1402(10).

776.     The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. § 51:1405(A). Defendants participated in misleading, false, or deceptive acts that violated the Louisiana CPL.

777.     In the course of their business, Defendants violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

778.     Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the SDM Calibration Defect, Defendants engaged in one or more unfair or deceptive business practices prohibited by La. Rev. Stat. § 51:1405(A).

779.     Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and Louisiana State Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

780.     Defendants' scheme and concealment of the SDM Calibration Defect in the Class Vehicles were material to Plaintiff and Louisiana State Class members, as Defendants intended.

Had they known the truth, Plaintiff and Louisiana State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

781.    Plaintiff and Louisiana State Class members had no way of discerning that the Defendants' representations were false and misleading and/or otherwise learning the facts that the Defendants had concealed or failed to disclose. Plaintiff and Louisiana State Class members did not, and could not, unravel the Defendants' deception on their own.

782.    Defendants had an ongoing duty to Plaintiff and Louisiana State Class members to refrain from unfair or deceptive practices under the Louisiana CPL in the course of their business. Specifically, Defendants owed Plaintiff and Louisiana State Class members a duty to disclose all the material facts concerning the SDM Calibration Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiff and Louisiana State Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

783.    Defendants' violations present a continuing risk to Plaintiff and Louisiana State Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

784.    Plaintiff and the Louisiana State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information.

785.    Pursuant to La. Rev. Stat. § 51:1409, Plaintiff and the Louisiana State Class seek to recover actual damages in an amount to be determined at trial; treble damages for Defendants' knowing violations of the Louisiana CPL; an order enjoining Defendants' unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under La. Rev. Stat. § 51:1409.

1
2
3
4

**LOUISIANA COUNT II:**
**Breach of Implied Warranty of Merchantability/**
**Warranty Against Redhibitory Defects**
**La. Civ. Code Art. 2520, 2524**
**(On Behalf of the Louisiana State Class)**

5      786.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully

6   set forth herein.

7      787.    Plaintiff Allan Martin (for the purposes of this count, "Plaintiff") brings this claim

8   on behalf of himself and the Louisiana State Class against all Defendants.

9      788.    Defendants are and were at all relevant times merchants with respect to motor

10  vehicles.

11     789.    A warranty that the Class Vehicles were in merchantable condition is implied by

12  law in the instant transactions.

13     790.    The Class Vehicles did not comply with the implied warranty of merchantability

14  because, at the time of sale and at all times thereafter, they were defective and not in

15  merchantable condition, would not pass without objection in the trade, and were not fit for the

16  ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the

17  SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an

18  accident, rendering the Class Vehicles inherently defective and dangerous.

19     791.    Defendants were provided reasonable notice of these issues by way of a letter sent

20  on August 20, 2021, as well as numerous public NHTSA complaints and individual lawsuits, as

21  detailed herein.

22     792.    Alternatively, any opportunity to cure the breach is unnecessary and futile.

23     793.    As a direct and proximate result of Defendants' breach of the warranty of

24  merchantability, Plaintiff and Louisiana State Class members have been damaged in an amount to

25  be proven at trial.

26
27
28

2312766.6

AMENDED CLASS ACTION COMPLAINT
4:21-CV-06338-JST

1    **14.    Maryland**

2

**MARYLAND COUNT I:**
3    **Violations of the Maryland Consumer Protection Act**
**Md. Code Com. Law § 13-101 *et seq.***
4    **(On Behalf of the Maryland State Class)**

5    794.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

6    795.    Plaintiff Richard Baker (for the purposes of this count, "Plaintiff") brings this

7    claim on behalf of himself and the Maryland State Class against all Defendants.

8    796.    Defendants and the Maryland State Class are "persons" within the meaning of Md.

9    Code Com. Law § 13-101(h).

10    797.    The Maryland Consumer Protection Act ("Maryland CPA") provides that a person

11    may not engage in any unfair or deceptive trade practice in the sale of any consumer good. Md.

12    Code Com. Law § 13-303. Defendants participated in misleading, false, or deceptive acts that

13    violated the Maryland CPA.

14    798.    In the course of their business, Defendants violated the Maryland CPA by

15    knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose

16    material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed

17    above.

18    799.    Specifically, by misrepresenting the Class Vehicles as safe and/or free from

19    defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class

20    Vehicles and/or the SDM Calibration Defect, Defendants engaged in unfair methods of

21    competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the

22    conduct of any trade or commerce, as prohibited by Md. Code Com. Law § 13-303.

23    800.    Defendants' unfair or deceptive acts or practices, including misrepresentations,

24    concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to

25    mislead and create a false impression in consumers, and were likely to and did in fact deceive

26    reasonable consumers, including Plaintiff and Maryland State Class members, about the true

27    safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the

28    Class Vehicles.

801.     Defendants' scheme and concealment of the SDM Calibration Defect and true characteristics of the passenger safety systems in the Class Vehicles were material to Plaintiff and Maryland State Class members, as the Defendants intended. Had they known the truth, Plaintiff and Maryland State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

802.     Plaintiff and Maryland State Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiff and Maryland State Class members did not, and could not, unravel Defendants' deception on their own.

803.     Defendants had an ongoing duty to Plaintiff and Maryland State Class members to refrain from unfair or deceptive practices under the Maryland CPA in the course of their business. Specifically, Defendants owed Plaintiff and Maryland State Class members a duty to disclose all the material facts concerning the SDM Calibration Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiff and Maryland State Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

804.     Defendants' violations present a continuing risk to the Maryland State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

805.     The Maryland State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Maryland CPA. All owners and lessees of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

806.     As a direct and proximate result of Defendants' violations of the Maryland CPA, the Maryland State Class has suffered injury-in-fact and/or actual damage.

807.    Pursuant to Md. Code Com. Law § 13-408, the Maryland State Class seeks actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

**MARYLAND COUNT II:**
**Maryland Lemon Law**
**Md. Code Com. Law § 14-1501 *et seq.***
**(On Behalf of the Maryland State Class)**

808.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth.

809.    Plaintiff Richard Baker (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Maryland State Class against all Defendants.

810.    Plaintiff and the Maryland State Class own or lease "motor vehicles" within the meaning of Md. Code, Com. Law § 14-1501(f), because these vehicles were registered in the state and fall within the categories of vehicles manufactured, assembled, or distributed by Defendants. These vehicles are not auto homes.

811.    Defendants are "manufacturer[s]" of the Class Vehicles within the meaning of Md. Code, Com. Law § 14-1501(d).

812.    The Maryland State Class members are "consumers" within the meaning of Md. Code Com. Law § 14-1501(b) because they: purchased the Class Vehicles, were transferred the Class Vehicles during the warranty period, or are otherwise entitled to the attendant terms of warranty.

813.    The Class Vehicles did not conform to their "warranties" under Md. Code Com. Law § 14-1501(g) during the warranty period because they contained the SDM Calibration Defect and were therefore not fit for the ordinary purpose for which vehicles are used.

814.    Defendants had actual knowledge of the SDM Calibration Defect during the "warranty period" within the meaning of Md. Code, Com. Law § 14-1501(e). But the Defect continued to exist throughout this term, as it has not been fixed. Plaintiff and Maryland State Class members are excused from notifying Defendants of the Defect because they were already fully aware of the problem and any repair attempt is futile.

815.   Defendants have had a reasonable opportunity to cure the SDM Calibration Defect during the warranty period because of their actual knowledge of, creation of, and attempt to conceal the Defect, but has not done so as required under Md. Code, Com. Law § 14-1502.

816.   Plaintiff and the Maryland State Class demands a full refund of the purchase price, including all license fees, registration fees, and any similar governmental charges. Md. Code Com. Law § 14-1502(c). Once payment has been tendered, Maryland State Class members will return their vehicles.

## MARYLAND COUNT III:
### Breach of Express Warranty
### Md. Code Com. Law §§ 2-313 and 2a-210
### (On Behalf of the Maryland State Class)

817.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

818.   Plaintiff Richard Baker (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Maryland State Class against all Defendants.

819.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Md. Code Com. Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

820.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Md. Code Com. Law § 2A-103(1)(p).

821.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Md. Code Com. Law §§ 2-105(1) and 2a-103(1)(h).

822.   In connection with the purchase or lease of Class Vehicles, the Defendants provided Plaintiff and Maryland State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

823.   Defendants' warranties formed the basis of the bargain that was reached when Plaintiff and Maryland State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

824.     However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiff and Maryland State Class members.

825.     Plaintiff and Maryland State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

826.     Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiff and Maryland State Class members.

827.     Plaintiff and Maryland State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public NHTSA complaints and individual lawsuits, as detailed herein.

828.     Alternatively, any opportunity to cure the breach is unnecessary and futile.

829.     As a direct and proximate result of the Defendants' breach of express warranties, Plaintiff and Maryland State Class members have been damaged in an amount to be proven at trial.

**MARYLAND COUNT IV:**
**Breach of Implied Warranty of Merchantability**
**Md. Code Com. Law §§ 2-314 and 2a-212**
**(On Behalf of the Maryland State Class)**

830.     Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

831.     Plaintiff Richard Baker (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Maryland State Class against all Defendants.

832.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Md. Code Com. Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

833.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Md. Code Com. Law § 2A-103(1)(p).

834.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Md. Code Com. Law §§ 2-105(1) and 2a-103(1)(h).

835.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Md. Code Com. Law §§ 2-314, and 2a-212.

836.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

837.    Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs on August 20, 2021, as well as numerous public NHTSA complaints and individual lawsuits, as detailed herein.

838.    Alternatively, any opportunity to cure the breach is unnecessary and futile.

839.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Maryland State Class members have been damaged in an amount to be proven at trial.

### 15.    Michigan

**MICHIGAN COUNT I:**
**Violations of the Michigan Consumer Protection Act**
**Mich. Comp. Laws § 445.903, *et seq.***
**(On Behalf of the Michigan State Class)**

840.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

841.     Plaintiffs Alisha Gonzalez, Rachel Bailey, Carl Wurmlinger, George Bayer, Zeckery Henslee, and Judy Haviland (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Michigan State Class against all Defendants.

842.     Plaintiffs and Michigan State Class members are "person[s]" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

843.     Defendants are "person[s]" engaged in "trade or commerce" within the meaning of the Mich. Comp. Laws § 445.902(1)(d) and (g).

844.     The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce . . . ." Mich. Comp. Laws § 445.903(1).

845.     In the course of their business, Defendants violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

846.     Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the SDM Calibration Defect, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Mich. Comp. Laws § 445.903:

a.     Representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have;

b.     Representing that the Class Vehicles are of a particular standard, quality, and grade when they are not;

c.     Advertising the Class Vehicles with the intent not to sell or lease them as advertised;

d.     Failing to reveal the defective SDM calibration, which could not reasonably be known by the consumer;

e.     Making a representation of fact or statement of fact regarding the safety of the Class Vehicles, which is material to the lease or purchase of the Class Vehicles, such that

1  consumers reasonably believe the represented or suggested state of affairs to be other than it

2  actually is; and

3           f.       Failing to reveal the SDM Calibration Defect in light of representations of

4  fact regarding the safety of the Class Vehicles made in a positive manner.

5  Mich. Comp. Laws §§ 445.903(1)(c), (e), (g), (s), (bb), and (cc).

6       847.    Defendants' unfair or deceptive acts or practices, including misrepresentations,

7  concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to

8  mislead and create a false impression in consumers, and were likely to and did in fact deceive

9  reasonable consumers, including Plaintiffs and Michigan State Class members, about the true

10  safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the

11  Class Vehicles.

12       848.    Defendants' scheme and concealment of the SDM Calibration Defect in the Class

13  Vehicles were material to Plaintiffs and Michigan State Class members, as Defendants intended.

14  Had they known the truth, Plaintiffs and Michigan State Class members would not have

15  purchased or leased the Class Vehicles, or would have paid significantly less for them.

16       849.    Plaintiffs and Michigan State Class members had no way of discerning that the

17  Defendants' representations were false and misleading and/or otherwise learning the facts that the

18  Defendants had concealed or failed to disclose. Plaintiffs and Michigan State Class members did

19  not, and could not, unravel the Defendants' deception on their own.

20       850.    Defendants had an ongoing duty to Plaintiffs and Michigan State Class members

21  to refrain from unfair or deceptive practices under the Michigan CPA in the course of their

22  business. Specifically, Defendants owed Plaintiffs and Michigan State Class members a duty to

23  disclose all the material facts concerning the SDM Calibration Defect in the Class Vehicles

24  because they possessed exclusive knowledge, they intentionally concealed the defect from

25  Plaintiffs and Michigan State Class members, and/or they made misrepresentations that were

26  misleading because they were contradicted by withheld facts.

27

28

851.    Defendants' violations present a continuing risk to Plaintiffs and Michigan State Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

852.    Plaintiffs and the Michigan State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information.

853.    Plaintiffs and the Michigan State Class seek injunctive relief to enjoin Defendants from continuing its unfair and deceptive acts; monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial, and (b) statutory damages in the amount of $250 for each Michigan State Class member; reasonable attorneys' fees; and any other just and proper relief available under Mich. Comp. Laws § 445.911.

854.    Plaintiffs and the Michigan State Class also seeks punitive damages against Defendants because they carried out despicable conduct with willful and conscious disregard of the rights of others. Defendants intentionally and willfully misrepresented the reliability and safety of the Class Vehicles and concealed material facts that only they knew—all to avoid the expense and public relations nightmare of correcting a flaw in the Class Vehicles. Defendants' unlawful conduct constitutes oppression and fraud warranting punitive damages.

**MICHIGAN COUNT II:**
**Breach of Express Warranty**
**Mich. Comp. Law §§ 440.2313 and 440.2860**
**(On Behalf of the Michigan State Class)**

855.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

856.    Plaintiffs Alisha Gonzalez, Rachel Bailey, Carl Wurmlinger, George Bayer, Zeckery Henslee, and Judy Haviland (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Michigan State Class against all Defendants.

857.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Mich. Comp. Laws § 440.2104(1) and "sellers" of motor vehicles under § 440.2103(1)(d).

858.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Mich. Comp. Laws § 440.2803(1)(p).

859.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Mich. Comp. Laws §§ 440.2105(1) and 440.2803(1)(h).

860.    All Michigan State Class members who purchased Class Vehicles in Michigan are "buyers" within the meaning of Mich. Comp. Laws § 440.2103(1)(a).

861.    All Michigan State Class members who leased Class Vehicles in Michigan are "lessees" within the meaning of Mich. Comp. Laws § 440.2803(1)(n).

862.    In connection with the purchase or lease of Class Vehicles, Defendants provided Plaintiffs and Michigan State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

863.    Defendants' warranties formed the basis of the bargain that was reached when Plaintiffs and Michigan State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

864.    However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Michigan State Class members.

865.    Plaintiffs and Michigan State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

866.    Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiffs and Michigan State Class members.

867.    Plaintiffs and Michigan State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public NHTSA complaints and individual lawsuits, as detailed herein.

868.    Alternatively, any opportunity to cure the breach is unnecessary and futile.

869.    As a direct and proximate result of the Defendants' breach of express warranties, Plaintiffs and Michigan State Class members have been damaged in an amount to be proven at trial.

**MICHIGAN COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Mich. Comp. Laws §§ 440.2314 and 440.2860**
**(On Behalf of the Michigan State Class)**

870.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

871.    Plaintiffs Alisha Gonzalez, Rachel Bailey, Carl Wurmlinger, George Bayer, Zeckery Henslee, and Judy Haviland (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Michigan State Class against all Defendants.

872.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Mich. Comp. Laws § 440.2104(1) and "sellers" of motor vehicles under § 440.2103(1)(d).

873.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Mich. Comp. Laws § 440.2803(1)(p).

874.    All Michigan State Class members who purchased Class Vehicles in Michigan are "buyers" within the meaning of Mich. Comp. Laws § 440.2103(1)(a).

875.    All Michigan State Class members who leased Class Vehicles in Michigan are "lessees" within the meaning of Mich. Comp. Laws § 440.2803(1)(n).

876.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Mich. Comp. Laws §§ 440.2105(1) and 440.2803(1)(h).

877.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Mich. Comp. Laws §§ 440.2314 and 440.2862.

878.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in

1    merchantable condition, would not pass without objection in the trade, and were not fit for the

2    ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the

3    SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an

4    accident, rendering the Class Vehicles inherently defective and dangerous.

5         879.    Defendants were provided reasonable notice of these issues by way of a letter sent

6    by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public

7    NHTSA complaints and individual lawsuits, as detailed herein.

8         880.    Alternatively, any opportunity to cure the breach is unnecessary and futile.

9         881.    As a direct and proximate result of Defendants' breach of the implied warranty of

10   merchantability, Plaintiffs and Michigan State Class members have been damaged in an amount

11   to be proven at trial.

12                      **16.    Minnesota**

13                      **MINNESOTA COUNT I:**
                **Violations of the Minnesota Prevention of Consumer Fraud Act**
14                        **Minn. Stat. § 325F.68 *et seq.***
                       **(On Behalf of the Minnesota State Class)**
15

16        882.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

17        883.    Plaintiff Kimberly Hickle (for the purposes of this count, "Plaintiff") brings this

18   claim on behalf of herself and the Minnesota State Class against all Defendants.

19        884.    The Class Vehicles constitute "merchandise" within the meaning of Minn. Stat.

20   § 325F.68(2).

21        885.    The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits

22   "[t]he act, use, or employment by any person of any fraud, false pretense, false promise,

23   misrepresentation, misleading statement or deceptive practice, with the intent that others rely

24   thereon in connection with the sale of any merchandise, whether or not any person has in fact

25   been misled, deceived, or damaged thereby . . . ." Minn. Stat. § 325F.69(1). Defendants

26   participated in misleading, false, or deceptive acts that violated the Minnesota CFA.

27        886.    In the course of their business, Defendants violated the Minnesota CFA by

28   knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose

material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

887.    Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the SDM Calibration Defect, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by Minn. Stat. § 325F.69(1).

888.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and Minnesota State Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

889.    Defendants' scheme and concealment of the SDM Calibration Defect and true characteristics of the passenger safety systems in the Class Vehicles were material to Plaintiff and Minnesota State Class members, as the Defendants intended. Had they known the truth, Plaintiff and Minnesota State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

890.    Plaintiff and Minnesota State Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiff and Minnesota State Class members did not, and could not, unravel Defendants' deception on their own.

891.    Defendants had an ongoing duty to Plaintiff and Minnesota State Class members to refrain from unfair or deceptive practices under the Minnesota CFA in the course of their business. Specifically, Defendants owed Plaintiff and Minnesota State Class members a duty to disclose all the material facts concerning the SDM Calibration Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from

Plaintiff and Minnesota State Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

892.     Defendants' violations present a continuing risk to the Minnesota State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

893.     Minnesota State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Minnesota CFA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

894.     As a direct and proximate result of Defendants' violations of the Minnesota CFA, Minnesota State Class members have suffered injury-in-fact and/or actual damage.

895.     Pursuant to Minn. Stat. § 8.31(3a), Minnesota State Class members seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

896.     Minnesota State Class members also seek punitive damages under Minn. Stat. § 549.20(1)(a) given the clear and convincing evidence that Defendants' acts show deliberate disregard for the rights of others.

**MINNESOTA COUNT II:**
**Violations of the Minnesota Uniform Deceptive Trade Practices Act**
**Minn. Stat. § 325D.43-48** *et seq.*
**(On Behalf of the Minnesota State Class)**

897.     Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

898.     Plaintiff Kimberly Hickle (for the purposes of this count, "Plaintiff") brings this claim on behalf of herself and the Minnesota State Class against all Defendants.

899.     The Minnesota Deceptive Trade Practices Act ("Minnesota DTPA") prohibits deceptive trade practices, which occur when a person "(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person

1   does not have;" "(7) represents that goods or services are of a particular standard, quality, or

2   grade, or that goods are of a particular style or model, if they are of another;" and "(9) advertises

3   goods or services with intent not to sell them as advertised." Minn. Stat. § 325D.44. In the course

4   of the Defendants' business, it engaged in deceptive practices by representing that Class Vehicles

5   have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do

6   not have; representing that Class Vehicles are of a particular standard, quality, or grade, or that

7   goods are of a particular style or model, if they are of another; and advertising Class Vehicles

8   with intent not to sell them as advertised. Defendants participated in misleading, false, or

9   deceptive acts that violated the Minnesota DTPA.

10        900.    Defendants' actions as set forth herein occurred in the conduct of trade or

11   commerce.

12        901.    In the course of their business, Defendants violated the Minnesota DTPA by

13   knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose

14   material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed

15   above.

16        902.    Specifically, by misrepresenting the Class Vehicles as safe and/or free from

17   defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class

18   Vehicles and/or the SDM Calibration Defect, Defendants engaged in unfair methods of

19   competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the

20   conduct of any trade or commerce, as prohibited by Minn. Stat. § 325D.44.

21        903.    Defendants' unfair or deceptive acts or practices, including misrepresentations,

22   concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to

23   mislead and create a false impression in consumers, and were likely to and did in fact deceive

24   reasonable consumers, including Plaintiff and Minnesota State Class members, about the true

25   safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the

26   Class Vehicles.

27        904.    Defendants' scheme and concealment of the SDM Calibration Defect and true

28   characteristics of the passenger safety systems in the Class Vehicles were material to Plaintiff and

1    Minnesota State Class members, as the Defendants intended. Had they known the truth, Plaintiff

2    and Minnesota State Class members would not have purchased or leased the Class Vehicles, or

3    would have paid significantly less for them.

4         905.    Plaintiff and Minnesota State Class members had no way of discerning that

5    Defendants' representations were false and misleading and/or otherwise learning the facts that

6    Defendants had concealed or failed to disclose. Plaintiff and Minnesota State Class members did

7    not, and could not, unravel Defendants' deception on their own.

8         906.    Defendants had an ongoing duty to Plaintiff and Minnesota State Class members

9    to refrain from unfair or deceptive practices under the Minnesota DTPA in the course of their

10   business. Specifically, Defendants owed Plaintiff and Minnesota State Class members a duty to

11   disclose all the material facts concerning the SDM Calibration Defect in the Class Vehicles

12   because they possessed exclusive knowledge, they intentionally concealed the defect from

13   Plaintiff and Minnesota State Class members, and/or they made misrepresentations that were

14   misleading because they were contradicted by withheld facts.

15        907.    Defendants' violations present a continuing risk to the Minnesota State Class as

16   well as to the general public. Defendants' unlawful acts and practices complained of herein affect

17   the public interest.

18        908.    Minnesota State Class members suffered ascertainable loss and actual damages as

19   a direct and proximate result of Defendants' misrepresentations and concealment of and failure to

20   disclose material information. Defendants had an ongoing duty to all their customers to refrain

21   from unfair and deceptive practices under the Minnesota DTPA. All owners of Class Vehicles

22   suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made

23   in the course of Defendants' business.

24        909.    As a direct and proximate result of Defendants' violations of the Minnesota

25   DTPA, Minnesota State Class members have suffered injury-in-fact and/or actual damage.

26        910.    Pursuant Minn. Stat. §§ 8.31(3a) and 325D.45, the Minnesota State Class seeks

27   actual damages, attorneys' fees, and any other just and proper relief available under the

28   Minnesota DTPA.

**MINNESOTA COUNT III:**
**Breach of Express Warranty**
**Minn. Stat. §§ 336.2-313 and 336.2A-210**
**(On Behalf of the Minnesota State Class)**

911.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

912.    Plaintiff Kimberly Hickle (for the purposes of this count, "Plaintiff") brings this claim on behalf of herself and the Minnesota State Class against all Defendants.

913.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Minn. Stat. § 336.2-104(1) and "sellers" of motor vehicles under § 336.2-103(1)(d).

914.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Minn. Stat. § 336.2A-103(1)(p).

915.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Minn. Stat. §§ 336.2-105(1) and 336.2A-103(1)(h).

916.    In connection with the purchase or lease of Class Vehicles, Defendants provided Plaintiff and Minnesota State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

917.    Defendants' warranties formed the basis of the bargain that was reached when Plaintiff and Minnesota State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

918.    However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiff and Minnesota State Class members.

919.    Plaintiff and Minnesota State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

920.    Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles.

Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiff and Minnesota State Class members.

921.     Plaintiff and Minnesota State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public NHTSA complaints and individual lawsuits, as detailed herein.

922.     Alternatively, any opportunity to cure the breach is unnecessary and futile.

923.     As a direct and proximate result of the Defendants' breach of express warranties, Plaintiff and Minnesota State Class members have been damaged in an amount to be proven at trial.

**MINNESOTA COUNT IV:**
**Breach of Implied Warranty of Merchantability**
**Minn. Stat. §§ 336.2-314 and 336.2A-212**
**(On Behalf of the Minnesota State Class)**

924.     Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

925.     Plaintiff Kimberly Hickle (for the purposes of this count, "Plaintiff") brings this claim on behalf of herself and the Minnesota State Class against all Defendants.

926.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Minn. Stat. § 336.2-104(1) and "sellers" of motor vehicles under § 336.2-103(1)(d).

927.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Minn. Stat. § 336.2A-103(1)(p).

928.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Minn. Stat. §§ 336.2-105(1) and 336.2A-103(1)(h).

929.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Minn. Stat. §§ 336.2-314 and 336.2A-212.

930.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

931.    Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs on August 20, 2021, as well as numerous public NHTSA complaints and individual lawsuits, as detailed herein.

932.    Alternatively, any opportunity to cure the breach is unnecessary and futile.

933.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Minnesota State Class members have been damaged in an amount to be proven at trial.

### 17.    Mississippi

**MISSISSIPPI COUNT I:**
**Violations of Mississippi Consumer Protection Act**
**Miss. Code. Ann. § 75-24-1, *et seq.***
**(On Behalf of the Mississippi State Class)**

934.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

935.    Plaintiffs Denise Wilson, Allan Miles, and Harryette Gosa (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Mississippi State Class against all Defendants.

936.    The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits "unfair or deceptive trade practices in or affecting commerce." Miss. Code. Ann. § 75-24-5(1). Unfair or deceptive practices include, but are not limited to, "(e) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;" "(g) Representing that goods or services are of a particular standard, quality, or grade,

or that goods are of a particular style or model, if they are of another;" and "(i) Advertising goods or services with intent not to sell them as advertised." Miss. Code. Ann. § 75-24-5.

937.    Defendants participated in deceptive trade practices that violated the Mississippi CPA as described herein, including representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard and quality when they are not; and advertising Class Vehicles with the intent not to sell them as advertised.

938.    In the course of their business, Defendants violated the Mississippi CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

939.    Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the SDM Calibration Defect, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by Miss. Code. Ann. § 75-24-5.

940.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Mississippi State Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

941.    Defendants' scheme and concealment of the SDM Calibration Defect and true characteristics of the passenger safety systems in the Class Vehicles were material to Plaintiffs and Mississippi State Class members, as the Defendants intended. Had they known the truth, Plaintiffs and Mississippi State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

942.     Plaintiffs and Mississippi State Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Mississippi State Class members did not, and could not, unravel Defendants' deception on their own.

943.     Defendants had an ongoing duty to Plaintiffs and Mississippi State Class members to refrain from unfair or deceptive practices under the Mississippi CPA in the course of their business. Specifically, Defendants owed Plaintiffs and Mississippi State Class members a duty to disclose all the material facts concerning the SDM Calibration Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiffs and Mississippi State Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

944.     Defendants' violations present a continuing risk to Plaintiffs and Mississippi State Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

945.     Mississippi State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Mississippi CPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

946.     As a direct and proximate result of Defendants' violations of the Mississippi CPA, Mississippi State Class members have suffered injury-in-fact and/or actual damage.

947.     Plaintiffs' seek actual damages in an amount to be determined at trial any other just and proper relief available under the Mississippi CPA.

**MISSISSIPPI COUNT II:**
**Breach of Express Warranty**
**Miss. Code §§ 75-2-313 and 75-2A-210**
**(On Behalf of the Mississippi State Class)**

948.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

949.    Plaintiffs Denise Wilson, Allan Miles, and Harryette Gosa (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Mississippi State Class against all Defendants.

950.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Miss. Code § 75-2-104(1) and "sellers" of motor vehicles under § 75-2-103(1)(d).

951.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Miss. Code § 75-2A-103(1)(p).

952.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Miss. Code §§ 75-2-105(1) and 75-2A-103(1)(h).

953.    In connection with the purchase or lease of Class Vehicles, Defendants provided Plaintiffs and Mississippi State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

954.    Defendants' warranties formed the basis of the bargain that was reached when Plaintiffs and Mississippi State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

955.    However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Mississippi State Class members.

956.    Plaintiffs and Mississippi State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

957.     Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiffs and Mississippi State Class members.

958.     Plaintiffs and Mississippi State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public NHTSA complaints and individual lawsuits, as detailed herein.

959.     Alternatively, any opportunity to cure the breach is unnecessary and futile.

960.     As a direct and proximate result of the Defendants' breach of express warranties, Plaintiffs and Mississippi State Class members have been damaged in an amount to be proven at trial.

**MISSISSIPPI COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Miss. Code §§ 75-2-314 and 75-2A-212**
**(On Behalf of the Mississippi State Class)**

961.     Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

962.     Plaintiffs Denise Wilson, Allan Miles, and Harryette Gosa (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Mississippi State Class against all Defendants.

963.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Miss. Code § 75-2-104(1) and "sellers" of motor vehicles under § 75-2-103(1)(d).

964.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Miss. Code § 75-2A-103(1)(p).

965.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Miss. Code §§ 75-2-105(1) and 75-2A-103(1)(h).

966. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Miss. Code §§ 75-2-314 and 75-2A-212.

967. The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

968. Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs on August 20, 2021, as well as numerous public NHTSA complaints and individual lawsuits, as detailed herein.

969. Alternatively, any opportunity to cure the breach is unnecessary and futile.

970. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Mississippi State Class members have been damaged in an amount to be proven at trial.

## 18.  Missouri

**MISSOURI COUNT I:**
**Violations of the Missouri Merchandising Practices Act**
**Mo. Rev. Stat. § 407.010 *et seq.***
**(On Behalf of the Missouri State Class)**

971. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

972. Plaintiff Dolly Price (for the purposes of this count, "Plaintiff") brings this claim on behalf of herself and the Missouri State Class against all Defendants.

973. Defendants, Plaintiff, and the Missouri State Class are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

974. Defendants engaged in "trade" or "commerce" in the State of Missouri within the meaning of Mo. Rev. Stat. § 407.010(7).

975.    The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." Mo. Rev. Stat. § 407.020.

976.    In the course of their business, Defendants violated the Missouri MPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

977.    Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the SDM Calibration Defect, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by Mo. Rev. Stat. § 407.020.

978.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and Missouri State Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

979.    Defendants' scheme and concealment of the SDM Calibration Defect and true characteristics of the passenger safety systems in the Class Vehicles were material to Plaintiff and Missouri State Class members, as the Defendants intended. Had they known the truth, Plaintiff and Missouri State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

980.    Plaintiff and Missouri State Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiff and Missouri State Class members did not, and could not, unravel Defendants' deception on their own.

981. Defendants had an ongoing duty to Plaintiff and Missouri State Class members to refrain from unfair or deceptive practices under the Missouri MPA in the course of their business. Specifically, Defendants owed Plaintiff and Missouri State Class members a duty to disclose all the material facts concerning the SDM Calibration Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiff and Missouri State Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

982. Defendants' violations present a continuing risk to Plaintiff and Missouri State Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

983. Plaintiff and Missouri State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Missouri MPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

984. As a direct and proximate result of Defendants' violations of the Missouri MPA, Plaintiff and Missouri State Class members have suffered injury-in-fact and/or actual damage.

985. Defendants are liable to Plaintiff and the Missouri State Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Defendants' unfair and deceptive practices, and any other just and proper relief under Mo. Rev. Stat. § 407.025.

**MISSOURI COUNT II:**
**Breach of Express Warranty**
**Mo. Stat. §§ 400.2-313 and 400.2A-210**
**(On Behalf of the Missouri State Class)**

986. Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

987. Plaintiff Dolly Price (for the purposes of this count, "Plaintiff") brings this claim on behalf of herself and the Missouri State Class against all Defendants.

988. Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Mo. Stat. § 400.2-104(1) and "sellers" of motor vehicles under § 400.2-103(1)(d).

989. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Mo. Stat. § 400.2A-103(1)(p).

990. The Class Vehicles are and were at all relevant times "goods" within the meaning of Mo. Stat. § 400.2-105(1) and Mo. Stat. § 400.2A-103(1)(h).

991. In connection with the purchase or lease of Class Vehicles, the Defendants provided Plaintiff and Missouri State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

992. Defendants' warranties formed the basis of the bargain that was reached when Plaintiff and Missouri State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

993. However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiff and Missouri State Class members.

994. Plaintiff and Missouri State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

995. Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiff and Missouri State Class members.

996. Plaintiff and Missouri State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public NHTSA complaints and individual lawsuits, as detailed herein.

997.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

998.   As a direct and proximate result of the Defendants' breach of express warranties, Plaintiff and Missouri State Class members have been damaged in an amount to be proven at trial.

**MISSOURI COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Mo. Stat. §§ 400.2-314 and 400.2A-212**
**(On Behalf of the Missouri State Class)**

999.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

1000.   Plaintiff Dolly Price (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Missouri State Class against all Defendants.

1001.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Mo. Stat. § 400.2-104(1) and "sellers" of motor vehicles under § 400.2-103(1)(d).

1002.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Mo. Stat. § 400.2A-103(1)(p).

1003.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Mo. Stat. § 400.2-105(1) and Mo. Stat. § 400.2A-103(1)(h).

1004.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Mo. Stat. § 400.2-314 and Mo. Stat. § 400.2A-212.

1005.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

1006.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs on August 20, 2021, as well as numerous public NHTSA complaints and individual lawsuits, as detailed herein.

1007.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

1008.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Missouri State Class members have been damaged in an amount to be proven at trial.

### 19.   Nevada

**NEVADA COUNT I:**
**Violations of the Nevada Deceptive Trade Practices Act**
**Nev. Rev. Stat. § 598.0903 *et seq.***
**(On Behalf of the Nevada State Class)**

1009.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1010.   Plaintiffs ShaVon Keith and Kevin Hopkins (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Nevada State Class against all Defendants.

1011.   The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev. Rev. Stat. § 598.0903, *et seq.* prohibits deceptive trade practices. Nev. Rev. Stat. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person: "5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith"; "7. Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model"; "9. Advertises goods or services with intent not to sell or lease them as advertised"; or "15. Knowingly makes any other false representation in a transaction."

1012.   In the course of their business, Defendants violated the Nevada DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

1013.   Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the SDM Calibration Defect, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by Nev. Rev. Stat. § 598.0915.

1014.   Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Nevada State Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1015.   Defendants' scheme and concealment of the SDM Calibration Defect and true characteristics of the passenger safety systems in the Class Vehicles were material to Plaintiffs and Nevada State Class members, as the Defendants intended. Had they known the truth, Plaintiffs and Nevada State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1016.   Plaintiffs and Nevada State Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Nevada State Class members did not, and could not, unravel Defendants' deception on their own.

1017.   Defendants had an ongoing duty to Plaintiffs and Nevada State Class members to refrain from unfair or deceptive practices under the Nevada DTPA in the course of their business. Specifically, Defendants owed Plaintiffs and Nevada State Class members a duty to disclose all the material facts concerning the SDM Calibration Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiffs and Nevada State Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

1018.   Defendants' violations present a continuing risk to Plaintiffs and Nevada State Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1019.   Nevada State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Nevada DTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1020.   Pursuant to Nev. Rev. Stat. §§ 41.600, Plaintiffs and Nevada State Class members seek an order enjoining the Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Nevada DTPA.

**NEVADA COUNT II:**
**Breach of Express Warranty**
**N.R.S. §§ 104.2313 and 104A.2210**
**(On Behalf of the Nevada State Class)**

1021.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1022.   Plaintiffs ShaVon Keith and Kevin Hopkins (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Nevada State Class against all Defendants.

1023.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.R.S. § 104.2104(1) and "sellers" of motor vehicles under § 104.2103(1)(c).

1024.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.R.S. § 104A.2103(1)(p).

1025.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.R.S. §§ 104.2105(1) and 104A.2103(1)(h).

1026.   In connection with the purchase or lease of Class Vehicles, Defendants provided Plaintiffs and Nevada State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

1027.   Defendants' warranties formed the basis of the bargain that was reached when Plaintiffs and Nevada State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

1028.   However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Nevada State Class members.

1029.   Plaintiffs and Nevada State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

1030.   Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiffs and Nevada State Class members.

1031.   Plaintiffs and Nevada State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public NHTSA complaints and individual lawsuits, as detailed herein.

1032.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

1033.   As a direct and proximate result of the Defendants' breach of express warranties, Plaintiffs and Nevada State Class members have been damaged in an amount to be proven at trial.

**NEVADA COUNT III:**
**Breach of Implied Warranty of Merchantability**
**N.R.S. §§ 104.2314 and 104A.2212**
**(On Behalf of the Nevada State Class)**

1034.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

1035.   Plaintiffs ShaVon Keith and Kevin Hopkins (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Nevada State Class against all Defendants.

1036.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.R.S. § 104.2104(1) and "sellers" of motor vehicles under § 104.2103(1)(c).

1037.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.R.S. § 104A.2103(1)(p).

1038.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.R.S. §§ 104.2105(1) and 104A.2103(1)(h).

1039.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.R.S. §§ 104.2314 and 104A.2212.

1040.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

1041.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs on August 20, 2021, as well as numerous public NHTSA complaints and individual lawsuits, as detailed herein.

1042.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

1043.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Nevada State Class members have been damaged in an amount to be proven at trial.

20.     **New Jersey**

**NEW JERSEY COUNT I:**
**Violations of the New Jersey Consumer Fraud Act**
**N.J. Stat. Ann. § 56:8-1 *et seq.***
**(On Behalf of the New Jersey State Class)**

1044.   Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

1045.   Plaintiffs Jorge L. Orihuela and Lee Ford (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the New Jersey State Class against all Defendants.

1046.   Plaintiffs and New Jersey State Class members and Defendants are "persons" under the New Jersey Consumer Fraud Act ("New Jersey CFA"), N.J. Stat. § 56:8-1(d).

1047.   Defendants engaged in "sales" of "merchandise" within the meaning of N.J. Stat. §56:8-1(c), (e). Defendants' actions as set forth herein occurred in the conduct of trade or commerce.

1048.   The New Jersey CFA makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby." N.J. Stat. § 56:8-2.

1049.   In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Specifically, Defendants failed to disclose and actively concealed the dangers and risk posed by the Class Vehicles and/or the SDM Calibration Defect.

1050.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of

a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

1051.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the New Jersey State Class.

1052.   Plaintiffs and New Jersey State Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts the Defendants had concealed or failed to disclose. Plaintiffs and New Jersey State Class members did not, and could not, unravel the Defendants' deception on their own.

1053.   Defendants knew or should have known that their conduct violated the New Jersey CFA.

1054.   Defendants owed Plaintiffs and the New Jersey State Class a duty to disclose all the material facts concerning the SDM Calibration Defect in the Class Vehicles because Defendants:

> A.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;
>
> B.    intentionally concealed the foregoing from regulators, Plaintiffs, and New Jersey State Class members; and/or
>
> C.    made incomplete representations about the Class Vehicles' safety while purposefully withholding material facts that contradicted these representations.

1055.   Defendants' concealment of the true characteristics of the Class Vehicles' safety and SDM Calibration system was material to Plaintiffs and the New Jersey State Class.

1056.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs and the New Jersey State Class, about the true safety of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1057.   Defendants' violations present a continuing risk to Plaintiffs and the New Jersey State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1058.   Plaintiffs and New Jersey State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the New Jersey CFA. All owners and lessees of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1059.   As a direct and proximate result of Defendants' violations of the New Jersey CFA, Plaintiffs and the New Jersey State Class have suffered injury-in-fact and/or actual damage in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual and statutory damages, treble damages, an order enjoining Defendants' deceptive and unfair conduct, costs and reasonable attorneys' fees under N.J. Stat. § 56:8-19, and all other just and appropriate relief.

**NEW JERSEY COUNT II:**
**Breach of Express Warranty**
**N.J.S. 12A:2-313 and 2A-210**
**(On Behalf of the New Jersey State Class)**

1060.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1061.   Plaintiffs Jorge L. Orihuela and Lee Ford (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the New Jersey State Class against all Defendants.

1062.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.J.S. 12A:2-104(1) and "sellers" of motor vehicles under 2-103(1)(d).

1063.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.J.S. 12A:2A-103(1)(p).

1064.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.J.S. 12A:2-105(1) and 2A-103(1)(h).

1065.   In connection with the purchase or lease of each Class Vehicle, Defendants provided Plaintiffs and New Jersey State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

1066.   Defendants' warranties formed a basis of the bargain that was reached when Plaintiffs and New Jersey Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

1067.   However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and New Jersey State Class members.

1068.   Plaintiffs and New Jersey State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

1069.   Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiffs and New Jersey State Class members.

1070.   Plaintiffs and New Jersey State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public NHTSA complaints and individual lawsuits, as detailed herein.

1071.   Alternatively, any opportunity to cure the breach is unnecessary and futile. Accordingly, recovery by Plaintiffs and New Jersey State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

1072.   As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and New Jersey State Class members have been damaged in an amount to be determined at trial.

**NEW JERSEY COUNT III:**
**Breach of Implied Warranty of Merchantability**
**N.J.S. 12A:2-314 and 2A-212**
**(On Behalf of the New Jersey State Class)**

1073.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

1074.   Plaintiffs Jorge L. Orihuela and Lee Ford (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the New Jersey State Class against all Defendants.

1075.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.J.S. 12A:2-104(1) and "sellers" of motor vehicles under 2-103(1)(d).

1076.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.J.S. 12A:2A-103(1)(p).

1077.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.J.S. 12A:2-105(1) and 2A-103(1)(h).

1078.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.J.S. 12A:2-314 and 2A-212.

1079.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

1080.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs on August 20, 2021, as well as numerous public NHTSA complaints and individual lawsuits, as detailed herein.

1081.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

- 201 -

1082.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and New Jersey State Class members have been damaged in an amount to be proven at trial.

### 21.   New York

**NEW YORK COUNT I:**
**Violations of the New York General Business Law § 349**
**N.Y. Gen. Bus. Law § 349**
**(On Behalf of the New York State Class)**

1083.   Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

1084.   Plaintiffs Adam Brown, Patrick O'Connor, and Frank Pignone (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the New York State Class against all Defendants.

1085.   The New York State Class members and Defendants are "persons" under N.Y. Gen. Bus. Law § 349(h), the New York Deceptive Acts and Practices Act ("NY DAPA").

1086.   Defendants' actions as set forth herein occurred in the conduct of trade or commerce under the NY DAPA.

1087.   The NY DAPA makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349. Defendants' conduct, as set forth herein, constitutes deceptive acts or practices under this section.

1088.   In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Specifically, Defendants failed to disclose and actively concealed the dangers and risk posed by the Class Vehicles and/or the SDM Calibration Defect.

1089.   Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

1090. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the New York State Class.

1091. Defendants knew or should have known that their conduct violated the NY DAPA.

1092. Defendants owed the New York State Class a duty to disclose the true nature of the Class Vehicles, because Defendants:

  a.  possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

  b.  intentionally concealed the foregoing from regulators and New York State Class members; and/or

  c.  made incomplete representations about the Class Vehicles' safety while purposefully withholding material facts that contradicted these representations.

1093. Defendants' concealment of the true characteristics of the Class Vehicles' true was material to the New York State Class.

1094. Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs and the New York State Class, about the true safety of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1095. Defendants' violations present a continuing risk to Plaintiffs and the New York State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1096. Plaintiffs and New York State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the NY DAPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1097. As a direct and proximate result of Defendants' violations of the NY DAPA, New York State Class members have suffered injury-in-fact and/or actual damage.

1098.   As a result of the foregoing willful, knowing, and wrongful conduct of Defendants, Plaintiffs and New York State Class members have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including but not limited to actual damages or $50, whichever is greater, treble damages up to $1,000, punitive damages to the extent available under the law, reasonable attorneys' fees and costs, an order enjoining Defendants' deceptive and unfair conduct, and all other just and appropriate relief available under the NY DAPA.

**NEW YORK COUNT II:**
**Violations of the New York General Business Law § 350**
**N.Y. Gen. Bus. Law § 350**
**(On Behalf of the New York State Class)**

1099.   Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

1100.   Plaintiffs Adam Brown, Patrick O'Connor, and Frank Pignone (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the New York State Class against all Defendants.

1101.   Defendants were engaged in the "conduct of business, trade or commerce," within the meaning of N.Y. Gen. Bus. Law § 350, the New York False Advertising Act ("NY FAA")

1102.   The NY FAA makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of . . . representations [made] with respect to the commodity . . . ." N.Y. Gen. Bus. Law § 350-a.

1103.   Defendants caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements and omissions that were untrue or misleading, and that were known by Defendants, or that through the exercise of reasonable care should have been known by Defendants, to be untrue and misleading to the New York State Class.

1104.   Defendants made numerous material misrepresentations and omissions of fact with intent to mislead and deceive concerning the Class Vehicles, particularly concerning the safety of

the Class Vehicles. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the New York State Class. The misrepresentations and omissions set forth above were material and likely to deceive a reasonable consumer.

1105.   Defendants' false advertising was likely to and did in fact deceive regulators and reasonable consumers, including the New York State Class, about the safety of the Class Vehicles, the quality of Defendants brand and the true value of the Class Vehicles.

1106.   Defendants' violations of the NY FAA present a continuing risk to New York State Class members and to the general public. Defendants' deceptive acts and practices affect the public interest.

1107.   New York State Class members have suffered injury-in-fact and/or actual damages and ascertainable loss as a direct and proximate result of the Defendants' false advertising in violation of the NY FAA.

1108.   The New York State Class seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial, and (b) statutory damages in the amount of $500 each for New York State Class members. Because Defendants' conduct was committed willingly and knowingly, New York State Class members are entitled to recover three times actual damages, up to $10,000.

1109.   The New York State Class also seeks an order enjoining Defendants' false advertising, attorneys' fees, and any other just and proper relief under N.Y. Gen. Bus. Law § 350.

**NEW YORK COUNT III:**
**Breach of Express Warranty**
**N.Y. U.C.C. Law §§ 2-313 and 2A-210**
**(On Behalf of the New York State Class)**

1110.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1111.   Plaintiffs Adam Brown, Patrick O'Connor, and Frank Pignone (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the New York State Class against all Defendants.

1112. Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.Y. UCC Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

1113. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.Y. UCC Law § 2A-103(1)(p).

1114. The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

1115. In connection with the purchase or lease of each Class Vehicle, Defendants provided Plaintiffs and New Jersey State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

1116. Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

1117. However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and New York State Class members.

1118. Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiffs and New York State Class members.

1119. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile.

1120. Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make New York State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1121. Accordingly, recovery by New York State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

1122.   Plaintiffs and New Jersey State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public NHTSA complaints and individual lawsuits, as detailed herein.

1123.   As a direct and proximate result of Defendants' breach of express warranties, New York State Class members have been damaged in an amount to be determined at trial.

**NEW YORK COUNT IV:**
**Breach of Implied Warranty of Merchantability**
**N.Y. U.C.C. Law §§ 2-314 and 2A-212**
**(On Behalf of the New York State Class)**

1124.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

1125.   Plaintiffs Adam Brown, Patrick O'Connor, and Frank Pignone (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the New York State Class against all Defendants.

1126.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.Y. UCC Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

1127.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.Y. UCC Law § 2A-103(1)(p).

1128.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

1129.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.Y. UCC Law §§ 2-314 and 2A-212.

1130.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the

SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

1131.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs on August 20, 2021, as well as numerous public NHTSA complaints and individual lawsuits, as detailed herein.

1132.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

1133.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, New York State Class members have been damaged in an amount to be proven at trial.

### 22.    North Carolina

**NORTH CAROLINA COUNT XI:**
**Violations of the North Carolina Unfair and Deceptive Acts and Practices Act**
**N.C. Gen. Stat. § 75-1.1, *et seq.***
**(On Behalf of the North Carolina State Class)**

1134.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1135.   Plaintiffs David Casey and Jason Klinger (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the North Carolina State Class against all Defendants.

1136.   Plaintiffs and North Carolina State Class members are persons under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.* ("NCUDTPA").

1137.   Defendants' acts and practices complained of herein were performed in the course of Defendants' trade or business and thus occurred in or affected "commerce," as defined in N.C. Gen. Stat. § 75-1.1(b).

1138.   The NCUDTPA makes unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" The NCUDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the NCUDTPA. N.C. Gen. Stat. § 75-16.

1139.   In the course of their business, Defendants violated the NCUDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

1140.   Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the SDM Calibration Defect, Defendants engaged in the unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce prohibited by N.C. Gen § 75-16.

1141.   Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and North Carolina State Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1142.   Defendants' scheme and concealment of the SDM Calibration Defect in the Class Vehicles were material to Plaintiffs and North Carolina State Class members, as the Defendants intended. Had they known the truth, Plaintiffs and North Carolina State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1143.   Plaintiffs and North Carolina State Class members had no way of discerning that the Defendants' representations were false and misleading and/or otherwise learning the facts that the Defendants had concealed or failed to disclose. Plaintiffs and North Carolina State Class members did not, and could not, unravel the Defendants' deception on their own.

1144.   Defendants had an ongoing duty to Plaintiffs and North Carolina State Class members to refrain from unfair or deceptive practices under the NCUDTPA in the course of their business. Specifically, Defendants owed Plaintiffs and North Carolina State Class members a duty to disclose all the material facts concerning the SDM Calibration Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect

1    from Plaintiffs and North Carolina State Class members, and/or they made misrepresentations

2    that were misleading because they were contradicted by withheld facts.

3         1145.   Defendants' violations present a continuing risk to Plaintiffs and North Carolina

4    State Class members, as well as to the general public. Defendants' unlawful acts and practices

5    complained of herein affect the public interest.

6         1146.   Plaintiffs and the North Carolina State Class suffered ascertainable loss and actual

7    damages as a direct and proximate result of Defendants' misrepresentations and concealment of

8    and failure to disclose material information.

9         1147.   Pursuant to N.C. Gen. Stat. § 75-16, Plaintiffs and the North Carolina State Class

10   members and seek all just and proper remedies, including but not limited to treble damages, an

11   order enjoining Defendants' deceptive and unfair conduct, court costs and reasonable attorneys'

12   fees, and any other just and proper relief available.

**NORTH CAROLINA COUNT II:**
**Breach of Express Warranty**
**N.C. Gen. Stat. §§ 25-2-313 and 252A-210**
**(On Behalf of the North Carolina State Class)**

16        1148.   Plaintiffs reallege and incorporate by reference all preceding allegations as though

17   fully set forth herein.

18        1149.   Plaintiffs David Casey and Jason Klinger (for the purposes of this count,

19   "Plaintiffs") bring this claim on behalf of themselves and the North Carolina State Class against

20   all Defendants.

21        1150.   Defendants are and were at all relevant times "merchant[s]" with respect to motor

22   vehicles under N.C. Gen. Stat. § 25-2-104(1) and "sellers" of motor vehicles under § 25-2-

23   103(1)(d).

24        1151.   With respect to leases, Defendants are and were at all relevant times "lessors" of

25   motor vehicles under N.C. Gen. Stat. § 25-2A-103(1)(p).

26        1152.   All North Carolina State Class members who purchased Class Vehicles are

27   "buyers" within the meaning of N.C. Gen. Stat. § 25-2-103(1)(a).

28

1153.   All North Carolina State Class members who leased Class Vehicles are "lessees" within the meaning of N.C. Gen. Stat. § 25-2A-103(1)(n).

1154.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.C. Gen. Stat. §§ 25-2-105(1) and 25-2A-103(1)(h).

1155.   In connection with the purchase or lease of Class Vehicles, the Defendants provided Plaintiffs and North Carolina State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

1156.   Defendants' warranties formed the basis of the bargain that was reached when Plaintiffs and North Carolina State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

1157.   However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and North Carolina State Class members.

1158.   Plaintiffs and North Carolina State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

1159.   Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiffs and North Carolina State Class members.

1160.   Plaintiffs and North Carolina State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public NHTSA complaints and individual lawsuits, as detailed herein.

1161.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

1162.   As a direct and proximate result of the Defendants' breach of express warranties, Plaintiffs and North Carolina State Class members have been damaged in an amount to be proven at trial.

**NORTH CAROLINA COUNT III:**
**Breach of Implied Warranty of Merchantability**
**N.C. Gen. Stat. §§ 25-2-314 and 252A-212**
**(On Behalf of the North Carolina State Class)**

1163.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1164.   Plaintiffs David Casey and Jason Klinger (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the North Carolina State Class against all Defendants.

1165.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.C. Gen. Stat. § 25-2-104(1) and "sellers" of motor vehicles under § 25-2-103(1)(d).

1166.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.C. Gen. Stat. § 25-2A-103(1)(p).

1167.   All North Carolina State Class members who purchased Class Vehicles are "buyers" within the meaning of N.C. Gen. Stat. § 25-2-103(1)(a).

1168.   All North Carolina State Class members who leased Class Vehicles are "lessees" within the meaning of N.C. Gen. Stat. § 25-2A-103(1)(n).

1169.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.C. Gen. Stat. §§ 25-2-105(1) and  25-2A-103(1)(h).

1170.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.C. Gen. Stat. §§ 25-2-314 and 25-2A-212.

1171.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

1172. Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public NHTSA complaints and individual lawsuits, as detailed herein.

1173. Alternatively, any opportunity to cure the breach is unnecessary and futile.

1174. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and North Carolina State Class members have been damaged in an amount to be proven at trial.

### 23.    Ohio

**OHIO COUNT I:**
**Violations of the Ohio Consumer Sales Practices Act**
**Ohio Rev. Code § 1345.01, *et seq*.**
**(On Behalf of the Ohio State Class)**

1175. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1176. Plaintiffs Brian Swann, Walter Tooson, and Gregory Juskiewicz (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Ohio State Class against all Defendants.

1177. Defendants, Plaintiffs, and Ohio State Class members are "persons" within the meaning of Ohio Rev. Code § 1345.01(B).

1178. Each Defendant is a "supplier" as defined by Ohio Rev. Code § 1345.01(C).

1179. Plaintiffs and the Ohio State Class are "consumers" as that term is defined in Ohio Rev. Code § 1345.01(D), and their purchase and leases of the Class Vehicles are "consumer transactions" within the meaning of Ohio Rev. Code § 1345.01(A).

1180. Ohio Rev. Code § 1345.02, prohibits unfair or deceptive acts or practices in connection with a consumer transaction.

1181. In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles and/or the defective SDMs, as detailed above. Specifically, Defendants misrepresented the Class Vehicles as safe and/or free from defects and failed to

1    disclose and actively concealed the dangers and risk posed by the Class Vehicles and/or the SDM

2    Calibration Defect, including serious injury or death.

3        1182.    Defendants thus violated the CSPA by, at minimum:

4            a.      representing that Class Vehicles have characteristics, uses, benefits, and

5    qualities which they do not have;

6            b.      representing that Class Vehicles are of a particular standard, quality, and

7    grade when they are not; and

8            c.      representing that the subject of a transaction involving Class Vehicles has

9    been supplied in accordance with a previous representation when it has not.

10    Ohio Rev. Code § 1345.02(A), (B)(1), (2), and (4).

11        1183.    Defendants intentionally and knowingly misrepresented material facts regarding

12    the Class Vehicles with intent to mislead Plaintiffs and the Ohio State Class.

13        1184.    Defendants knew or should have known that their conduct violated the Ohio

14    CSPA.

15        1185.    Plaintiffs and Ohio State Class members had no way of discerning that the

16    Defendants' representations were false and misleading and/or otherwise learning the facts that the

17    Defendants had concealed or failed to disclose. Plaintiffs and Ohio State Class members did not,

18    and could not, unravel the Defendants' deception on their own.

19        1186.    The Ohio Attorney General has made available for public inspection prior state

20    court decisions which have held that the types of acts and omissions of Defendants in this

21    Complaint—including, but not limited to, the failure to honor both implied warranties and express

22    warranties, the making and distribution of false, deceptive, and/or misleading representations, and

23    the concealment and/or non-disclosure of a substantial defect—constitute deceptive sales

24    practices in violation of the CSPA. These cases include, but are not limited to, the following:

25            a.      *Mason v. Mercedes Benz USA, LLC* (OPIF #10002382);

26            b.      *State ex rel. Betty D. Montgomery v. Ford Motor Co.* (OPIF #10002123);

27            c.      *State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc.* (OPIF

28    #10002025);

d.      *Bellinger v. Hewlett-Packard Co.*, No. 20744, 2002 Ohio App. LEXIS 1573 (Ohio Ct. App. Apr. 10, 2002) (OPIF #10002077);

e.      *Borror v. MarineMax of Ohio*, No. OT-06-010, 2007 Ohio App. LEXIS 525 (Ohio Ct. App. Feb. 9, 2007) (OPIF #10002388);

f.      *State ex rel. Jim Petro v. Craftmatic Organization, Inc.* (OPIF #10002347);

g.      *Cranford v. Joseph Airport Toyota, Inc.* (OPIF #10001586);

h.      *Brown v. Spears* (OPIF #10000403);

i.      *Brinkman v. Mazda Motor of America, Inc.* (OPIF #10001427);

j.      *Mosley v. Performance Mitsubishi aka Automanage* (OPIF #10001326); and

k.      *Walls v. Harry Williams dba Butch's Auto Sales* (OPIF #10001524).

1187.   Defendants owed Plaintiffs and the Ohio State Class a duty to disclose the safety risks associated with the SDM Calibration Defect, the true nature of the Class Vehicles, because Defendants possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised; intentionally concealed the foregoing from regulators, Plaintiffs, and Ohio State Class members; and/or made incomplete representations about the Class Vehicles' true airbag and seatbelt safety features while purposefully withholding material facts that contradicted these representations.

1188.   Defendants' concealment of the true characteristics of the Class Vehicles' safety systems was material to Plaintiffs and the Ohio State Class.

1189.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs and the Ohio State Class, about the true safety features of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1190.   Defendants' violations present a continuing risk to Plaintiffs and the Ohio State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1191.   Plaintiffs and Ohio State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information.

1192.   Pursuant to Ohio Rev. Code § 1345.09, Plaintiffs and the Ohio State Class members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, actual damages - trebled, and attorneys' fees, costs, and any other just and proper relief under the Ohio CSPA.

**OHIO COUNT II:**
**Violations of the Ohio Deceptive Trade Practices Act**
**Ohio Rev. Code § 4165.01, *et seq.***
**(On Behalf of the Ohio State Class)**

1193.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1194.   Plaintiffs Brian Swann, Walter Tooson, and Gregory Juskiewicz (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Ohio State Class against all Defendants.

1195.   Defendants, Plaintiffs, and the Ohio State Class are "persons" within the meaning of Ohio Rev. Code § 4165.01(D).

1196.   Defendants engaged in "the course of [its] business" within the meaning of Ohio Rev. Code § 4165.02(A) with respect to the acts alleged herein.

1197.   The Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165.02(A) ("Ohio DTPA") prohibits deceptive trade practices.

1198.   In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles and/or the defective SDMs, as detailed above. Specifically, Defendants misrepresented the Class Vehicles as safe and/or free from defects and failed to disclose and actively concealed the dangers and risk posed by the Class Vehicles and/or the SDM Calibration Defect, including serious injury or death.

1199.   Defendants thus violated the Act by, at minimum:

- 216 -

a.      representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have;

b.      representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and

c.      advertising the Class Vehicles as safe with the intent not to sell them as advertised.

Ohio Rev. Code § 4165.02(A)(7), (9), and (11).

1200.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Ohio State Class.

1201.   Defendants knew or should have known that their conduct violated the Ohio DTPA.

1202.   Defendants owed Plaintiffs and the Ohio State Class a duty to disclose the safety risks associated with the SDM Calibration Defect, the true nature of the Class Vehicles, because Defendants possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised; intentionally concealed the foregoing from regulators, Plaintiffs, and Ohio State Class members; and/or made incomplete representations about the Class Vehicles' true airbag and seatbelt safety features while purposefully withholding material facts that contradicted these representations.

1203.   Defendants' concealment of the true characteristics of the Class Vehicles' safety systems was material to Plaintiffs and the Ohio State Class.

1204.   Plaintiffs and Ohio State Class members had no way of discerning that the Defendants' representations were false and misleading and/or otherwise learning the facts that the Defendants had concealed or failed to disclose. Plaintiffs and Ohio State Class members did not, and could not, unravel the Defendants' deception on their own.

1205.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs and the Ohio State Class, about

the true safety features of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1206.   Defendants' violations present a continuing risk to Plaintiffs and the Ohio State Class, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1207.   Plaintiffs and Ohio State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Ohio DTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1208.   Pursuant to Ohio Rev. Code § 4165.03, Plaintiffs and the Ohio State Class members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Ohio DTPA.

**OHIO COUNT III:**
**Breach of Express Warranty**
**Ohio. Rev. Code § 1302.26, *et seq.* / U.C.C. § 2-313**
**(On Behalf of the Ohio State Class)**

1209.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1210.   Plaintiffs Brian Swann, Walter Tooson, and Gregory Juskiewicz (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Ohio State Class against all Defendants.

1211.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ohio Rev. Code §§ 1302.01(5) and 1310.01(A)(20), and "sellers" of motor vehicles under § 1302.01(4).

1212.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ohio Rev. Code § 1310.01(A)(20).

1213.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Ohio Rev. Code §§ 1302.01(8), and 1310.01(A)(8).

1214.   In connection with the purchase or lease of Class Vehicles, the Defendants provided Plaintiffs and Ohio State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

1215.   Defendants' warranties formed the basis of the bargain that was reached when Plaintiffs and Ohio State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

1216.   However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Ohio State Class members.

1217.   Plaintiffs and Ohio State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

1218.   Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiffs and Ohio State Class members.

1219.   Plaintiffs and Ohio State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public NHTSA complaints and individual lawsuits, as detailed herein.

1220.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

1221.   As a direct and proximate result of the Defendants' breach of express warranties, Plaintiffs and Ohio State Class members have been damaged in an amount to be proven at trial.

1222.   Finally, because of Defendants' breach of warranty as set forth herein, Plaintiffs and Ohio State Class members assert, as additional and/or alternative remedies, the revocation of

acceptance of the goods and the return to them of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

**OHIO COUNT IV:**
**Breach of Implied Warranty of Merchantability**
**Ohio Rev. Code §§ 1302.27 and 1310.19**
**(On Behalf of the Ohio State Class)**

1223.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1224.   Plaintiffs Brian Swann, Walter Tooson, and Gregory Juskiewicz (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Ohio State Class against all Defendants.

1225.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ohio Rev. Code §§ 1302.01(5) and 1310.01(A)(20), and "sellers" of motor vehicles under § 1302.01(4).

1226.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ohio Rev. Code § 1310.01(A)(20).

1227.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Ohio Rev. Code §§ 1302.01(8), and 1310.01(A)(8).

1228.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ohio Rev. Code §§ 1302.27 and 1310.19.

1229.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

1230.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs on August 20, 2021, as well as numerous public NHTSA complaints and individual lawsuits, as detailed herein.

1231.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

1232.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Ohio State Class members have been damaged in an amount to be proven at trial.

## 24.   Oklahoma

**OKLAHOMA COUNT I:**
**Violations of the Oklahoma Consumer Protection Act**
**Okla. Stat. Tit. 15 § 751 *et seq.***
**(On Behalf of the Oklahoma State Class)**

1233.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1234.   Plaintiff Donald Roxberry (for the purposes of this count, "Plaintiff") brings this claim on behalf of themselves and the Oklahoma State Class against all Defendants.

1235.   Defendants and the Oklahoma State Class are "persons" within the meaning of Okla. Stat. Tit. 15 § 752.1.

1236.   Defendants engaged in "the course of [its] business" within the meaning of Okla. Stat. Tit. 15 § 752.3 with respect to the acts alleged herein.

1237.   The Oklahoma Consumer Protection Act ("Oklahoma CPA") prohibits, in the course of business: "mak[ing] a false or misleading representation, knowingly or with reason to know, as to the characteristics . . ., uses, [or] benefits, of the subject of a consumer transaction," or making a false representation, "knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another or "[a]dvertis[ing], knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised;" and otherwise committing "an unfair or deceptive trade practice." Okla. Stat. Tit. 753.

1238.   In the course of their business, Defendants violated the Oklahoma CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose

material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

1239.   Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the SDM Calibration Defect, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by Okla. Stat. Tit. 753.

1240.   Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Oklahoma State Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1241.   Defendants' scheme and concealment of the SDM Calibration Defect and true characteristics of the passenger safety systems in the Class Vehicles were material to Plaintiffs and Oklahoma State Class members, as the Defendants intended. Had they known the truth, Plaintiffs and Oklahoma State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1242.   Plaintiff and Oklahoma State Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Oklahoma State Class members did not, and could not, unravel Defendants' deception on their own.

1243.   Defendants had an ongoing duty to Plaintiff and Oklahoma State Class members to refrain from unfair or deceptive practices under the Oklahoma CPA in the course of their business. Specifically, Defendants owed Plaintiff and Oklahoma State Class members a duty to disclose all the material facts concerning the SDM Calibration Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from

Plaintiffs and Oklahoma State Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

1244.   Defendants' violations present a continuing risk to Plaintiff and Oklahoma State Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1245.   Oklahoma State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Oklahoma CPA. All owners and lessees of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1246.   Pursuant to Okla. Stat. Tit. 15 § 761.1, the Oklahoma State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Oklahoma CPA.

**OKLAHOMA COUNT II:**
**Breach of Express Warranty**
**Okla. Stat. Tit. 12 §§ 2-313 and 2A-210**
**(On Behalf of the Oklahoma State Class)**

1247.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1248.   Plaintiffs Donald Roxberry (for the purposes of this count, "Plaintiff") brings this claim on behalf of themselves and the Oklahoma State Class against all Defendants.

1249.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Okla. Stat. Tit. 12A §§ 2-104(1) and 2-1103(3), and "sellers" of motor vehicles under § 2A-103(1)(t).

1250.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Okla. Stat. Tit. 12A § 2A-103(1)(p).

1251.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Okla. Stat. Tit. 12A §§ 2-105(1) and 2A-103(1)(h).

1252.   In connection with the purchase or lease of Class Vehicles, Defendants provided Plaintiff and Oklahoma State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

1253.   Defendants' warranties formed the basis of the bargain that was reached when Plaintiff and Oklahoma State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

1254.   However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiff and Oklahoma State Class members.

1255.   Plaintiffs and Oklahoma State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

1256.   Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiff and Oklahoma State Class members.

1257.   Plaintiff and Oklahoma State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public NHTSA complaints and individual lawsuits, as detailed herein.

1258.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

1259.   As a direct and proximate result of the Defendants' breach of express warranties, Plaintiffs and Oklahoma State Class members have been damaged in an amount to be proven at trial.

**OKLAHOMA COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Okla. Stat. Tit. 12A §§ 2-314 and 2A-212**
**(On Behalf of the Oklahoma State Class)**

1260.  Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

1261.  Plaintiff Donald Roxberry (for the purposes of this count, "Plaintiffs") brings this claim on behalf of themselves and the Oklahoma State Class against all Defendants.

1262.  Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Okla. Stat. Tit. 12A §§ 2-104(1) and 2-1103(3), and "sellers" of motor vehicles under § 2A-103(1)(t).

1263.  With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Okla. Stat. Tit. 12A § 2A-103(1)(p).

1264.  The Class Vehicles are and were at all relevant times "goods" within the meaning of Okla. Stat. Tit. 12A §§ 2-105(1) and 2A-103(1)(h).

1265.  A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Okla. Stat. Tit. 12A §§ 2-314 and 2A-212.

1266.  The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

1267.  Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs on August 20, 2021, as well as numerous public NHTSA complaints and individual lawsuits, as detailed herein.

1268.  Alternatively, any opportunity to cure the breach is unnecessary and futile.

1    1269.   As a direct and proximate result of Defendants' breach of the implied warranty of

2    merchantability, Plaintiff and Oklahoma State Class members have been damaged in an amount

3    to be proven at trial.

4    **25.    Oregon**

5                                    **OREGON COUNT I:**
                  **Violations of the Oregon Unlawful Trade Practices Act**
6                         **Or. Rev. Stat. § 646.605, *et seq.***
7                        **(On Behalf of the Oregon State Class)**

8    1270.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

9    1271.   Plaintiff Stephen Miles (for the purposes of this count, "Plaintiff") brings this

10   claim on behalf of himself and the Oregon State Class against all Defendants.

11   1272.   Plaintiff, Defendants, and the Oregon State Class are "persons" within the meaning

12   of Or. Rev. Stat. § 646.605(4).

13   1273.   Defendants are engaged in "trade" or "commerce" within the meaning of Or. Rev.

14   Stat. § 646.605(8).

15   1274.   The Oregon Unfair Trade Practices Act ("Oregon UTPA") prohibits "unfair or

16   deceptive acts conduct in trade or commerce . . . ." Or. Rev. Stat. § 646.608(1).

17   1275.   In the course of their business, Defendants violated the Oregon UTPA by

18   knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose

19   material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed

20   above.

21   1276.   Specifically, by misrepresenting the Class Vehicles as safe and/or free from

22   defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class

23   Vehicles and/or the SDM Calibration Defect, Defendants engaged in unfair methods of

24   competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the

25   conduct of any trade or commerce, as prohibited by Or. Rev. Stat. § 646.608(1).

26   1277.   Defendants' unfair or deceptive acts or practices, including misrepresentations,

27   concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to

28   mislead and create a false impression in consumers, and were likely to and did in fact deceive

reasonable consumers, including Plaintiff and Oregon State Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1278.   Defendants' scheme and concealment of the SDM Calibration Defect and true characteristics of the passenger safety systems in the Class Vehicles were material to Plaintiff and Oregon State Class members, as the Defendants intended. Had they known the truth, Plaintiff and Oregon State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1279.   Plaintiff and Oregon State Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiff and Oregon State Class members did not, and could not, unravel Defendants' deception on their own.

1280.   Defendants had an ongoing duty to Plaintiff and Oregon State Class members to refrain from unfair or deceptive practices under the Oregon UTPA in the course of their business. Specifically, Defendants owed Plaintiff and Oregon State Class members a duty to disclose all the material facts concerning the SDM Calibration Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiff and Oregon State Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

1281.   Defendants' violations present a continuing risk to Plaintiff and Oregon State Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1282.   Plaintiff and Oregon State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Oregon UTPA. All owners and lessees of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1283.   Pursuant to Or. Rev. Stat. § 646.638, the Oregon State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Oregon UTPA.

**OREGON COUNT II:**
**Breach of Express Warranty**
**Or. Rev. Stat. §§ 72.3130 and 72A.2100**
**(On Behalf of the Oregon State Class)**

1284.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1285.   Plaintiff Stephen Miles (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Oregon State Class against all Defendants.

1286.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Or. Rev. Stat. §§ 72.1040(1) and 72A.1030(1)(t), and "sellers" of motor vehicles under § 72.1030(1)(d).

1287.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Or. Rev. Stat. § 72A.1030(1)(p).

1288.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Or. Rev. Stat. §§ 72.1050(1) and 72A.1030(1)(h).

1289.   In connection with the purchase or lease of Class Vehicles, Defendants provided Plaintiff and Oregon State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

1290.   Defendants' warranties formed the basis of the bargain that was reached when Plaintiff and Oregon State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

1291.   However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiff and Oregon State Class members.

1292.   Plaintiff and Oregon State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

1293.   Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiff and Oregon State Class members.

1294.   Plaintiff and Oregon State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public NHTSA complaints and individual lawsuits, as detailed herein.

1295.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

1296.   As a direct and proximate result of the Defendants' breach of express warranties, Plaintiffs and Michigan State Class members have been damaged in an amount to be proven at trial.

**OREGON COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Or. Rev. Stat. §§ 72.3140 and 72A.2120**
**(On Behalf of the Oregon State Class)**

1297.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

1298.   Plaintiff Stephen Miles (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Oregon State Class against all Defendants.

1299.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Or. Rev. Stat. §§ 72.1040(1) and 72A.1030(1)(t), and "sellers" of motor vehicles under § 72.1030(1)(d).

1300.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Or. Rev. Stat. § 72A.1030(1)(p).

1301.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Or. Rev. Stat. §§ 72.1050(1) and 72A.1030(1)(h).

1302.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Or. Rev. Stat. §§ 72.3140 and 72A-2120.

1303.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

1304.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs on August 20, 2021, as well as numerous public NHTSA complaints and individual lawsuits, as detailed herein.

1305.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

1306.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Oregon State Class members have been damaged in an amount to be proven at trial.

**26.**   **Pennsylvania**

**PENNSYLVANIA COUNT I:**
**Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law**
**73 P.S. § 201-1** *et seq.*
**(On Behalf of the Pennsylvania State Class)**

1307.   Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

1308.   Plaintiffs Bruce Heise, Michael Romania, Rex Hartman, and William Endress (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Pennsylvania State Class against all Defendants.

1309.   Plaintiffs, Defendants, and the Pennsylvania State Class are "persons" within the meaning of 73 P.S. § 201-2(2).

1    1310.   Defendants engaged in "trade" or "commerce" within the meaning of 73 P.S.

2    § 201-2(3).

3    1311.   The Pennsylvania Unfair Trade Practices Act ("Pennsylvania UTPA") prohibits

4    "unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 P.S. § 201-3.

5    1312.   In the course of their business, Defendants violated the Pennsylvania UTPA by

6    knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose

7    material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed

8    above.

9    1313.   Specifically, by misrepresenting the Class Vehicles as safe and/or free from

10   defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class

11   Vehicles and/or the SDM Calibration Defect, Defendants engaged in one or more unfair or

12   deceptive business practices prohibited by the Pennsylvania UTPA:

13          a.      Representing that the Class Vehicles and/or the SDM Calibration system

14   have characteristics, uses, benefits, and qualities which they do not have.

15          b.      Representing that the Class Vehicles and/or the SDM Calibration system

16   are of a particular standard, quality, and grade when they are not.

17          c.      Advertising the Class Vehicles and/or the SDM Calibration system with

18   the intent not to sell or lease them as advertised.

19          d.      Engaging in any other fraudulent or deceptive conduct which creates a

20   likelihood of confusion or of misunderstanding.

21   1314.   Defendants' unfair or deceptive acts or practices, including misrepresentations,

22   concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to

23   mislead and create a false impression in consumers, and were likely to and did in fact deceive

24   reasonable consumers, including the Plaintiffs and Pennsylvania State Class members, about the

25   true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value

26   of the Class Vehicles.

27   1315.   Defendants' scheme and concealment of the SDM Calibration Defect in the Class

28   Vehicles were material to the Plaintiffs and Pennsylvania State Class members, as Defendants

intended. Had they known the truth, Plaintiffs and Pennsylvania State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1316.   Plaintiffs and Pennsylvania State Class members had no way of discerning that the Defendants' representations were false and misleading and/or otherwise learning the facts that the Defendants had concealed or failed to disclose. Plaintiffs and Pennsylvania State Class members did not, and could not, unravel the Defendants' deception on their own.

1317.   Defendants had an ongoing duty to Plaintiffs and Pennsylvania State Class members to refrain from unfair or deceptive practices under the Pennsylvania UTPA in the course of their business. Specifically, Defendants owed Plaintiffs and Pennsylvania State Class members a duty to disclose all the material facts concerning the SDM Calibration Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiffs and Pennsylvania State Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts

1318.   Defendants' violations present a continuing risk to the Pennsylvania State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1319.   Plaintiffs and Pennsylvania State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Pennsylvania UTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1320.   As a direct and proximate result of Defendants' violations of the Pennsylvania UTPA, Pennsylvania State Class members have suffered injury-in-fact and/or actual damage.

1321.   Pursuant to 73 P.S. § 201-9.2(a), Plaintiffs and the Pennsylvania State Class seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Pennsylvania UTPA.

**PENNSYLVANIA COUNT II:**
**Breach of Express Warranty**
**13. Pa. Cons. Stat. §§ 2313 and 2A210**
**(On Behalf of the Pennsylvania State Class)**

1322.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1323.   Plaintiffs Bruce Heise, Michael Romania, Rex Hartman, and William Endress (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Pennsylvania State Class against all Defendants.

1324.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103(a), and "sellers" of motor vehicles under § 2103(a).

1325.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under 13 Pa. Cons. Stat. § 2A103(a).

1326.   The Class Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

1327.   In connection with the purchase or lease of Class Vehicles, the Defendants provided Plaintiffs and Pennsylvania State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

1328.   Defendants' warranties formed the basis of the bargain that was reached when Plaintiffs and Pennsylvania State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

1329.   However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Pennsylvania State Class members.

1330.   Plaintiffs and Pennsylvania State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

1331.   Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiffs and Pennsylvania State Class members.

1332.   Plaintiffs and Pennsylvania State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public NHTSA complaints and individual lawsuits, as detailed herein.

1333.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

1334.   As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and Pennsylvania State Class members have been damaged in an amount to be determined at trial.

**PENNSYLVANIA COUNT III:**
**Breach of Implied Warranty of Merchantability**
**13. Pa. Cons. Stat. §§ 2314 and 2A212**
**(On Behalf of the Pennsylvania State Class)**

1335.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

1336.   Plaintiffs Bruce Heise, Michael Romania, Rex Hartman, and William Endress (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Pennsylvania State Class against all Defendants.

1337.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103(a), and "sellers" of motor vehicles under § 2103(a).

1338.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under 13 Pa. Cons. Stat. § 2A103(a).

1339.   The Class Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

1340.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 13 Pa. Cons. Stat. §§ 2314 and 2A212.

1341.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

1342.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs on August 20, 2021, as well as numerous public NHTSA complaints and individual lawsuits, as detailed herein.

1343.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

1344.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Pennsylvania State Class members have been damaged in an amount to be proven at trial.

### 27.   South Carolina

**SOUTH CAROLINA COUNT I:**
**Violations of the South Carolina Unfair Trade Practices Act**
**S.C. Code Ann. § 39-5-10 *et seq.***
**(On Behalf of the South Carolina State Class)**

1345.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

1346.   Plaintiffs Lisa Gerould and Andrew Lawson, (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the South Carolina State Class against all Defendants.

1347.   Defendants and the South Carolina State Class are "persons" within the meaning of S.C. Code § 39-5-10(a).

1348.   Defendants are engaged in "trade" or "commerce" within the meaning of S.C. Code § 39-5-10(b).

1349.   The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code § 39-5-20(a).

1350.   In the course of their business, Defendants violated the South Carolina UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

1351.   Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the SDM Calibration Defect, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by S.C. Code Ann. § 39-5-20(a).

1352.   Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and South Carolina State Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1353.   Defendants' scheme and concealment of the SDM Calibration Defect and true characteristics of the passenger safety systems in the Class Vehicles were material to Plaintiffs and South Carolina State Class members, as the Defendants intended. Had they known the truth, Plaintiffs and South Carolina State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1354.   Plaintiffs and South Carolina State Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that

1    Defendants had concealed or failed to disclose. Plaintiffs and South Carolina State Class

2    members did not, and could not, unravel Defendants' deception on their own.

3        1355.   Defendants had an ongoing duty to Plaintiffs and South Carolina State Class

4    members to refrain from unfair or deceptive practices under the South Carolina UTPA in the

5    course of their business. Specifically, Defendants owed Plaintiffs and South Carolina State Class

6    members a duty to disclose all the material facts concerning the SDM Calibration Defect in the

7    Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the

8    defect from Plaintiffs and South Carolina State Class members, and/or they made

9    misrepresentations that were misleading because they were contradicted by withheld facts.

10       1356.   Defendants' violations present a continuing risk to Plaintiffs and South Carolina

11   State Class members, as well as to the general public. Defendants' unlawful acts and practices

12   complained of herein affect the public interest.

13       1357.   Plaintiffs and the South Carolina State Class suffered ascertainable loss and actual

14   damages as a direct and proximate result of Defendants' misrepresentations and concealment of

15   and failure to disclose material information.

16       1358.   Pursuant to S.C. Code § 39-5-140(a), Plaintiffs and the South Carolina State Class

17   seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, treble

18   damages for willful and knowing violations, punitive damages, and attorneys' fees, costs, and any

19   other just and proper relief available under the South Carolina UTPA.

20                    **SOUTH CAROLINA COUNT II:**
21   **Violations of the South Carolina Regulation of Manufacturers,**
                  **Distributors, & Dealers Act**
22               **S.C. Code Ann. § 56-15-10 *et seq.***
                **(On Behalf of the South Carolina State Class)**
23

24       1359.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set

25   forth herein.

26       1360.   Plaintiffs Lisa Gerould and Andrew Lawson, (for the purposes of this count,

27   "Plaintiffs") bring this claim on behalf of themselves and the South Carolina State Class against

28   all Defendants.

1361.   Defendants are "manufacturer[s]" as set forth in S.C. Code Ann. § 56-15-10, as it is engaged in the business of manufacturing or assembling new and unused motor vehicles.

1362.   Defendants committed unfair or deceptive acts or practices that violated the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act ("Dealers Act"), S.C. Code Ann. § 56-15-30.

1363.   Defendants engaged in actions which were arbitrary, in bad faith, unconscionable, and which caused damage to the South Carolina State Class and to the public.

1364.   Defendants' bad faith and unconscionable actions include, but are not limited to: (1) representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Class Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Class Vehicles with the intent not to sell them as advertised, (4) representing that a transaction involving Class Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

1365.   Defendants resorted to and used false and misleading advertisements in connection with their business. As alleged above, Defendants made numerous material statements about the safety and reliability of the Class Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Defendants' unlawful advertising and representations as a whole.

1366.   Pursuant to S.C. Code Ann. § 56-15-110(2), Plaintiffs bring this action on behalf of themselves and the South Carolina State Class, as the action is one of common or general interest to many persons and the parties are too numerous to bring them all before the court.

1367.   The South Carolina State Class is entitled to double their actual damages, the cost of the suit, attorney's fees pursuant to S.C. Code Ann. § 56-15-110. Plaintiffs also seek injunctive relief under S.C. Code Ann. § 56-15-110.

**SOUTH CAROLINA COUNT III:**
**Breach of Express Warranty**
**S.C. Code §§ 36-2-313 and 36-2A-210**
**(On Behalf of the South Carolina State Class)**

1368.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1369.   Plaintiffs Lisa Gerould and Andrew Lawson, (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the South Carolina State Class against all Defendants.

1370.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under S.C. Code §§ 36-2-104(1) and 36-2A-103(1)(t), and "sellers" of motor vehicles under § 36-2-103(1)(d).

1371.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under S.C. Code § 36-2A-103(1)(p).

1372.   All South Carolina State Class members who purchased Class Vehicles in South Carolina are "buyers" within the meaning of S.C. Code Ann. § 36-2-103(1)(a).

1373.   All South Carolina State Class members who leased Class Vehicles in South Carolina are "lessees" within the meaning of S.C. Code Ann. § 36-2A-103(1)(n).

1374.   The Class Vehicles are and were at all relevant times "goods" within the meaning of S.C. Code §§ 36-2-105(1) and 36-2A-103(1)(h).

1375.   In connection with the purchase or lease of Class Vehicles, the Defendants provided Plaintiffs and South Carolina State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

1376.   Defendants' warranties formed the basis of the bargain that was reached when Plaintiffs and South Carolina State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

1377.   However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the

Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and South Carolina State Class members.

1378.   Plaintiffs and South Carolina State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

1379.   Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiffs and South Carolina State Class members.

1380.   Plaintiffs and South Carolina State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021 and numerous public NHTSA complaints.

1381.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

1382.   As a direct and proximate result of Defendants' breach of express warranties, South Carolina State Class members have been damaged in an amount to be determined at trial.

**SOUTH CAROLINA COUNT IV:**
**Breach of Implied Warranty of Merchantability**
**S.C. Code §§ 36-2-314 and 36-2A-212**
**(On Behalf of the South Carolina State Class)**

1383.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

1384.   Plaintiffs Lisa Gerould and Andrew Lawson, (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the South Carolina State Class against all Defendants.

1385.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under S.C. Code §§ 36-2-104(1) and 36-2A-103(1)(t), and "sellers" of motor vehicles under § 36-2-103(1)(d).

1386.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under S.C. Code § 36-2A-103(1)(p).

1387. Plaintiffs and South Carolina State Class members who purchased Class Vehicles in South Carolina are "buyers" within the meaning of S.C. Code Ann. § 36-2-103(1)(a).

1388. Plaintiffs and South Carolina State Class members who leased Class Vehicles in South Carolina are "lessees" within the meaning of S.C. Code Ann. § 36-2A-103(1)(n).

1389. The Class Vehicles are and were at all relevant times "goods" within the meaning of S.C. Code §§ 36-2-105(1) and 36-2A-103(1)(h).

1390. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to S.C. Code §§ 36-2-314 and 36-2A-212.

1391. The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

1392. Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs on August 20, 2021, as well as numerous public NHTSA complaints and individual lawsuits, as detailed herein.

1393. Alternatively, any opportunity to cure the breach is unnecessary and futile.

1394. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, South Carolina State Class members have been damaged in an amount to be proven at trial.

**28.**   **Tennessee**

**TENNESSEE COUNT I:**
**Violations of the Tennessee Consumer Protection Act**
**Tenn. Code Ann. § 47-18-101 *et seq.***
**(On Behalf of the Tennessee State Class)**

1395. Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

1396.   Plaintiffs Gary Owens and Stephen Loyd (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Tennessee State Class against all Defendants.

1397.   Tennessee State Class members are "natural persons" and "consumers" within the meaning of Tenn. Code § 47-18-103(2). Defendants are "person[s]" within the meaning of Tenn. Code § 47-18-103(9).

1398.   Defendants are engaged in "trade" or "commerce" or "consumer transactions" within the meaning Tenn. Code § 47-18-103(9).

1399.   The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code § 47-18-104.

1400.   In the course of their business, Defendants violated the Tennessee CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

1401.   Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the SDM Calibration Defect, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by Tenn. Code § 47-18-104.

1402.   Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Tennessee State Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1403.   Defendants' scheme and concealment of the SDM Calibration Defect and true characteristics of the passenger safety systems in the Class Vehicles were material to Plaintiffs

and Tennessee State Class members, as the Defendants intended. Had they known the truth, Plaintiffs and Tennessee State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1404.   Plaintiffs and Tennessee State Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Tennessee State Class members did not, and could not, unravel Defendants' deception on their own.

1405.   Defendants had an ongoing duty to Plaintiffs and Tennessee State Class members to refrain from unfair or deceptive practices under the Tennessee CPA in the course of their business. Specifically, Defendants owed Plaintiffs and Tennessee State Class members a duty to disclose all the material facts concerning the SDM Calibration Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiffs and Tennessee State Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

1406.   Defendants' violations present a continuing risk to Plaintiffs and the Tennessee State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1407.   Tennessee State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Tennessee CPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1408.   Pursuant to Tenn. Code § 47-18-109, Plaintiffs and the Tennessee State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, treble damages for willful and knowing violations, pursuant to § 47-18-109(a)(3), punitive damages, and attorneys' fees, costs, and any other just and proper relief to the extent available under the Tennessee CPA.

**TENNESSEE COUNT II:**
**Breach of Express Warranty**
**Tenn. Code Ann. §§ 47-2-313 and 47-2A-210**
**(On Behalf of the Tennessee State Class)**

1409.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1410.   Plaintiffs Gary Owens and Stephen Loyd (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Tennessee State Class against all Defendants.

1411.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Tenn. Code §§ 47-2-104(1) and 47-2A-103(1)(t), and "sellers" of motor vehicles under § 47-2-103(1)(d).

1412.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Tenn. Code § 47-2A-103(1)(p).

1413.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Tenn. Code §§ 47-2-105(1) and 47-2A-103(1)(h).

1414.   In connection with the purchase or lease of Class Vehicles, the Defendants provided Plaintiffs and Tennessee State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

1415.   Defendants' warranties formed the basis of the bargain that was reached when Plaintiffs and Tennessee State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

1416.   However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Tennessee State Class members.

1417.   Plaintiffs and Tennessee State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

1418.   Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiffs and Tennessee State Class members.

1419.   Plaintiffs and Tennessee State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021 and numerous public NHTSA complaints.

1420.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

1421.   As a direct and proximate result of the Defendants' breach of express warranties, Plaintiffs and Tennessee State Class members have been damaged in an amount to be proven at trial.

**TENNESSEE COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Tenn. Code Ann. §§ 47-2-314 and 47-2A-212**
**(On Behalf of the Tennessee State Class)**

1422.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

1423.   Plaintiffs Gary Owens and Stephen Loyd (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Tennessee State Class against all Defendants.

1424.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Tenn. Code §§ 47-2-104(1) and 47-2A-103(1)(t), and "sellers" of motor vehicles under § 47-2-103(1)(d).

1425.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Tenn. Code § 47-2A-103(1)(p).

1426.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Tenn. Code §§ 47-2-105(1) and 47-2A-103(1)(h).

1427.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Tenn. Code §§ 47-2-314 and 47-2A-212.

1428.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

1429.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs on August 20, 2021 and numerous public NHTSA complaints.

1430.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

1431.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Tennessee State Class members have been damaged in an amount to be proven at trial.

### 29.   Texas

**TEXAS COUNT I:**
**Violations of the Deceptive Trade Practices Act**
**Tex. Bus. & Com. Code § 17.41, *et seq.***
**(On Behalf of the Texas State Class)**

1432.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1433.   Plaintiffs Ira Bondsteel, Ric Batten, Larry Paetzold (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Texas State Class against all Defendants.

1434.   Plaintiffs and the Texas State Class are "consumers" pursuant to Tex. Bus. & Com. Code § 17.45(4); Tex. Bus. & Com. Code § 17.41.

1435.   Defendants are "person[s]" within the meaning of Tex. Bus. & Com. Code § 17.45(3).

1436.   Defendants engaged in "trade" or "commerce" or "consumer transactions" within the meaning Tex. Bus. & Com. Code § 17.46(a).

1437.   The Texas Deceptive Trade Practices – Consumer Protection Act ("Texas DTPA") prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code § 17.46(a), and an "unconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code §§ 17.45(5) and 17.50(a)(3).

1438.   In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles, as detailed above.  Specifically, Defendants misrepresented the Class Vehicles as safe and/or free from defects and failed to disclose and actively concealed the dangers and risk posed by the Class Vehicles and/or the SDM Calibration Defect, including serious injury or death. These acts and practices were unconscionable, and to the Texas Plaintiffs' and Texas State Class members' detriment, took advantage of their lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

1439.   Defendants thus violated the Act by, at minimum:

a.      representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have;

b.      representing that Class Vehicles are of a particular standard, quality, and grade when they are not;

c.      advertising Class Vehicles with the intent not to sell or lease them as advertised.

Tex. Bus. & Com. Code Ann. §§ 17.46(5), (7), and (9).

1440.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Texas State Class.

1441.   Defendants knew or should have known that their conduct violated the Texas DTPA.

1442.   Plaintiffs and Texas State Class members had no way of discerning that the Defendants' representations were false and misleading and/or otherwise learning the facts that the Defendants had concealed or failed to disclose. Plaintiffs and Texas State Class members did not, and could not, unravel the Defendants' deception on their own.

1443.   Defendants owed Plaintiffs and the Texas State Class a duty to disclose the safety risks associated with the SDM Calibration Defect, the true nature of the Class Vehicles, because Defendants possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised; intentionally concealed the foregoing from regulators and Texas State Class members; and/or made incomplete representations about the Class Vehicles' airbag and safety features while purposefully withholding material facts that contradicted these representations.

1444.   Defendants' concealment of the true characteristics of the Class Vehicles' safety systems was material to Plaintiffs and the Texas State Class.

1445.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs and the Texas State Class, about the true safety features of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1446.   Defendants' violations present a continuing risk to Plaintiffs and the Texas State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1447.   Plaintiffs and Texas State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information.

1448.   Pursuant to Tex. Bus. & Com. Code § 17.50, the Texas State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, multiple damages for knowing and intentional violations, pursuant to § 17.50(b)(1), punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Texas DTPA.

1449.   Pursuant to Tex. Bus. & Com. Code Ann. § 17.505, Plaintiffs sent notice letters to Defendants informing them of the issues raised in this count and this Complaint on August 20, 2021, as well as numerous public NHTSA complaints and individual lawsuits, as detailed herein.The Texas State Class seeks all damages and relief to which it is entitled.

**TEXAS COUNT II:**
**Breach of Express Warranty**
**Tex. Bus. & Com. Code §§ 2.313 and 2A.210**
**(On Behalf of the Texas State Class)**

1450.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1451.   Plaintiffs Ira Bondsteel, Ric Batten, Larry Paetzold (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Texas State Class against all Defendants.

1452.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Tex. Bus. & Com. Code §§ 2.104(1) and 2A.103(a)(20), and "sellers" of motor vehicles under § 2.103(a)(4)

1453.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Tex. Bus. & Com. Code § 2A.103(a)(16).

1454.   All Texas State Class members who purchased Class Vehicles are "buyers" within the meaning of Tex. Bus. & Com. Code Ann. § 2.103(a)(1).

1455.   All Texas State Class members who leased Class Vehicles "lessees" within the meaning of Tex. Bus. & Com. Code Ann. § 2A.103(a)(14).

1456.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Tex. Bus. & Com. Code §§ 2.105(a) and 2A.103(a)(8).

1457.   In connection with the purchase or lease of Class Vehicles, the Defendants provided Plaintiffs and Texas State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

1458.   Defendants' warranties formed the basis of the bargain that was reached when Plaintiffs and Texas State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

1459.   However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Texas State Class members.

1460.   Plaintiffs and Texas State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

1461.   Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiffs and Texas State Class members.

1462.   Plaintiffs and Texas State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public NHTSA complaints and individual lawsuits, as detailed herein.

1463.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

1464.   As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and Texas State Class members have been damaged in an amount to be proven at trial.

**TEXAS COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Tex. Bus. & Com. Code §§ 2.314 and 2A.212**
**(On Behalf of the Texas State Class)**

1465.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1466.   Plaintiffs Ira Bondsteel, Ric Batten, Larry Paetzold (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Texas State Class against all Defendants.

1467.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Tex. Bus. & Com. Code §§ 2.104(1) and 2A.103(a)(20), and "sellers" of motor vehicles under § 2.103(a)(4)

1468.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Tex. Bus. & Com. Code § 2A.103(a)(16).

1469.   All Texas State Class members who purchased Class Vehicles are "buyers" within the meaning of Tex. Bus. & Com. Code Ann. § 2.103(a)(1).

1470.   All Texas State Class members who leased Class Vehicles "lessees" within the meaning of Tex. Bus. & Com. Code Ann. § 2A.103(a)(14).

1471.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Tex. Bus. & Com. Code §§ 2.105(a) and 2A.103(a)(8).

1472.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Tex. Bus. & Com. Code §§ 2.314 and 2A.212.

1473.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

1474.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs on August 20, 2021, as well as numerous public NHTSA complaints and individual lawsuits, as detailed herein.

1475.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

1476.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Texas State Class members have been damaged in an amount to be proven at trial.

**30.**   **Utah**

**UTAH COUNT I:**
**Violations of the Utah Consumer Sales Practices Act**
**Utah Code Ann. §§ 13-11-1 *et seq.***
**(On Behalf of the Utah State Class)**

1477.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

1478.   Plaintiff Delana Petersen (for the purposes of this count, "Plaintiff") brings this claim on behalf of herself and the Utah State Class against all Defendants.

1479.   Plaintiff and Utah State Class members are "persons" under the Utah Consumer Sales Practices Act ("Utah CSPA"), Utah Code § 13-11-3(5). The sales and leases of the Class Vehicles to Plaintiff and Utah State Class members were "consumer transactions" within the meaning of Utah Code § 13-11-3(2).

1480.   Defendants are "supplier[s]" within the meaning of Utah Code § 13-11-3(6).

1481.   The Utah CSPA makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction." Specifically, "a supplier commits a deceptive act or practice if the supplier knowingly or intentionally: (a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not" or "(b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not." Utah Code § 13-11-4. "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA. Utah Code § 13-11-5.

1482.   In the course of their business, Defendants violated the Utah CSPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

1483.   Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the SDM Calibration Defect, Defendants engaged in unfair methods of

competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by the Utah CSPA.

1484.   Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and Utah State Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1485.   Defendants' scheme and concealment of the SDM Calibration Defect and true characteristics of the passenger safety systems in the Class Vehicles were material to Plaintiff and Utah State Class members, as the Defendants intended. Had they known the truth, Plaintiff and Utah State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1486.   Plaintiff and Utah State Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiff and Utah State Class members did not, and could not, unravel Defendants' deception on their own.

1487.   Defendants had an ongoing duty to Plaintiff and Utah State Class members to refrain from unfair or deceptive practices under the Utah CSPA in the course of their business. Specifically, Defendants owed Plaintiff and Utah State Class members a duty to disclose all the material facts concerning the SDM Calibration Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiff and Utah State Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

1488.   Defendants' violations present a continuing risk to Plaintiff and Utah State Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1489.   Plaintiff and Utah State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Utah CSPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1490.   Pursuant to Utah Code Ann. § 13-11-4, Plaintiff and the Utah State Class seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $2,000 for each Utah State Class member, reasonable attorneys' fees, and any other just and proper relief available under the Utah CSPA.

**UTAH COUNT II:**
**Breach of Express Warranty**
**Utah Code §§ 70A-2-313 and 70-2A-210**
**(On Behalf of the Utah State Class)**

1491.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1492.   Plaintiff Delana Petersen (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Utah State Class against all Defendants.

1493.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Utah Code § 70A-2-104(1) and 70A-2a-103(1)(t), and "sellers" of motor vehicles under § 70A-2-103(1)(d).

1494.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Utah Code § 70A-2a-103(1)(p).

1495.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Utah Code §§ 70A-2-105(1) and 70A-2a-103(1)(h).

1496.   In connection with the purchase or lease of Class Vehicles, Defendants provided Plaintiff and Utah State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

1497.   Defendants' warranties formed the basis of the bargain that was reached when Plaintiff and Utah State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

1498.   However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiff and Utah State Class members.

1499.   Plaintiff and Utah State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

1500.   Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiff and Utah State Class members.

1501.   Plaintiff and Utah State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public NHTSA complaints and individual lawsuits, as detailed herein.

1502.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

1503.   As a direct and proximate result of the Defendants' breach of express warranties, Plaintiff and Utah State Class members have been damaged in an amount to be proven at trial.

**UTAH COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Utah Code §§ 70A-2-314 and 70-2A-212**
**(On Behalf of the Utah State Class)**

1504.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

1505.   Plaintiff Delana Petersen (for the purposes of this count, "Plaintiff") brings this claim on behalf of herself and the Utah State Class against all Defendants.

1506.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Utah Code §§ 70A-2-104(1) and 70A-2a-103(1)(t), and "sellers" of motor vehicles under § 70A-2-103(1)(d).

1507.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Utah Code § 70A-2a-103(1)(p).

1508.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Utah Code §§ 70A-2-105(1) and 70A-2a-103(1)(h).

1509.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Utah Code §§ 70A-2-314 and 70A-2a-212.

1510.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

1511.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs on August 20, 2021 and numerous public NHTSA complaints.

1512.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

1513.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Utah State Class members have been damaged in an amount to be proven at trial.

### 31.   Virginia

**VIRGINIA COUNT I:**
**Violations of the Virginia Consumer Protection Act**
**Va. Code Ann. §§ 59.1-196 *et seq.***
**(On Behalf of the Virginia State Class)**

1514.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1515.   Plaintiffs Eric Leeds, Douglas Dye, Debra Knerr, and Ira Nash (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Virginia State Class against all Defendants.

1516.   Defendants and the Virginia State Class are "persons" within the meaning of Va. Code § 59.1-198.

1517.   Defendants are "supplier[s]" within the meaning of Va. Code § 59.1-198.

1518.   The Virginia Consumer Protection Act ("Virginia CPA") makes unlawful "fraudulent acts or practices." Va. Code § 59.1-200(A).

1519.   In the course of their business, Defendants violated the Virginia CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

1520.   Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the SDM Calibration Defect, Defendants engaged in one or more unfair or deceptive business practices prohibited by the Virginia CPA.

1521.   Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Plaintiffs and Virginia State Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1522.   Defendants' scheme and concealment of the SDM Calibration Defect in the Class Vehicles were material to the Plaintiffs and Virginia State Class members, as Defendants intended. Had they known the truth, Plaintiffs and Virginia State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1523.   Plaintiffs and Virginia State Class members had no way of discerning that the Defendants' representations were false and misleading and/or otherwise learning the facts that the

Defendants had concealed or failed to disclose. Plaintiffs and Virginia State Class members did not, and could not, unravel the Defendants' deception on their own.

1524. Defendants had an ongoing duty to Plaintiffs and Virginia State Class members to refrain from unfair or deceptive practices under the Virginia CPA in the course of their business. Specifically, Defendants owed Plaintiffs and Virginia State Class members a duty to disclose all the material facts concerning the SDM Calibration Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiffs and Virginia State Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

1525. Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

1526. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Virginia State Class.

1527. Defendants knew or should have known that their conduct violated the Virginia CPA.

1528. Defendants' violations present a continuing risk to the Virginia State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1529. Virginia State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Virginia CPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1530.   Pursuant to Va. Code § 59.1-204(A)–(B), the Virginia State Class is entitled to the greater of actual damages or $500 for each Virginia State Class member, attorneys' fees, and costs. Because Defendants' actions were willful, Virginia State Class members should each receive the greater of treble damages or $1,000. *Id.*

**VIRGINIA COUNT II:**
**Breach of Express Warranty**
**Va. Code §§ 8.2-313 and 8.2A-210**
**(On Behalf of the Virginia State Class)**

1531.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1532.   Plaintiffs Eric Leeds, Douglas Dye, Debra Knerr, and Ira Nash (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Virginia State Class against all Defendants.

1533.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Va. Code §§ 8.2-104(1) and 8.2A-103(1)(t), and "sellers" of motor vehicles under § 8.2-103(1)(d).

1534.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Va. Code § 8.2A-103(1)(p).

1535.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Va. Code §§ 8.2-105(1) and 8.2A-103(1)(h).

1536.   In connection with the purchase or lease of Class Vehicles, the Defendants provided Plaintiffs and Virginia State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

1537.   Defendants' warranties formed a basis of the bargain that was reached when Plaintiffs and Virginia State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

1538.   However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the

Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Virginia State Class members.

1539.   Plaintiffs and Virginia State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

1540.   Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiffs and Virginia State Class members.

1541.   Plaintiffs and Virginia State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021 and numerous public NHTSA complaints.

1542.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

1543.   As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and Virginia State Class members have been damaged in an amount to be determined at trial.

**VIRGINIA COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Va. Code §§ 8.2-314 and 8.2A-212**
**(On Behalf of the Virginia State Class)**

1544.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

1545.   Plaintiffs Eric Leeds, Douglas Dye, Debra Knerr, and Ira Nash (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Virginia State Class against all Defendants.

1546.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Va. Code §§ 8.2-104(1) and 8.2A-103(1)(t), and "sellers" of motor vehicles under § 8.2-103(1)(d).

1547.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Va. Code § 8.2A-103(1)(p).

1548.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Va. Code §§ 8.2-105(1) and 8.2A-103(1)(h).

1549.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Va. Code §§ 8.2-314 and 8.2A-212.

1550.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

1551.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs on August 20, 2021, as well as numerous public NHTSA complaints and individual lawsuits, as detailed herein.

1552.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

1553.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Virginia State Class members have been damaged in an amount to be proven at trial.

### 32.   <u>Washington</u>

**WASHINGTON STATE COUNT I:**
**Violations of the Washington Consumer Protection Act**
**Wash. Rev. Code Ann. § 19.86.010 *et seq.***
**(On Behalf of the Washington State Class)**

1554.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

1555.   Plaintiffs Ashley Dheel and Kara Hummel (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Washington State Class against all Defendants.

1556.   Defendants and the Washington State Class are "persons" within the meaning of Wash. Rev. Code § 19.86.010(2).

1557.   Defendants engaged in "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.86.010(2).

1558.   The Washington Consumer Protection Act ("Washington CPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020.

1559.   In the course of their business, Defendants violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

1560.   Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the SDM Calibration Defect, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by Wash. Rev. Code § 19.86.020.

1561.   Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Washington State Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1562.   Defendants' scheme and concealment of the SDM Calibration Defect and true characteristics of the passenger safety systems in the Class Vehicles were material to Plaintiffs and Washington State Class members, as the Defendants intended. Had they known the truth, Plaintiffs and Washington State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1563.   Plaintiffs and Washington State Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Washington State Class members did not, and could not, unravel Defendants' deception on their own.

1564.   Defendants had an ongoing duty to Plaintiffs and Washington State Class members to refrain from unfair or deceptive practices under the Washington CPA in the course of their business. Specifically, Defendants owed Plaintiffs and Washington State Class members a duty to disclose all the material facts concerning the SDM Calibration Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiffs and Washington State Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

1565.   Defendants' violations present a continuing risk to Plaintiffs and Washington State Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1566.   Washington State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Washington CPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1567.   Pursuant to Wash. Rev. Code § 19.86.090, the Washington State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Washington CPA. Because Defendants' actions were willful and knowing, Washington State Class members' damages should be trebled.

**WASHINGTON STATE COUNT II:**
**Washington Lemon Law**
**Wash. Rev. Code § 19.118.005** *et seq.*
**(On Behalf of the Washington State Class)**

1568.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1569.   Plaintiffs Ashley Dheel and Kara Hummel (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Washington State Class against all Defendants.

1570.   The Washington State Class own or lease "new motor vehicles" within the meaning of Wash. Rev. Code § 19.118.021(12), because these vehicles are self-propelled primarily designed for the transportation of persons or property over the public highways and were originally purchased or leased at retail from a new motor vehicle dealer or leasing company in Washington. These vehicles do not include vehicles purchased or leased by a business as part of a fleet of ten or more vehicles at one time or under a single purchase or lease agreement or those portions of a motor home designated, used, or maintained primarily as a mobile dwelling, office, or commercial space.

1571.   Defendants are "manufacturer[s]" of the Class Vehicles within the meaning of Wash. Rev. Code § 19.118.021(8) because it is in the business of constructing or assembling new motor vehicles or is engaged in the business of importing new motor vehicles into the United States for the purpose of selling or distributing new motor vehicles to new motor vehicle dealers.

1572.   The Washington State Class are "consumers" within the meaning of Wash. Rev. Code § 19.118.021(4) because they entered into an agreement or contract for the transfer, lease, or purchase of a new motor vehicle, other than for purposes of resale or sublease, during the eligibility period as defined by Wash. Rev. Code § 19.118.021(6).

1573.   The Class Vehicles did not conform to their warranties as defined by Wash. Rev. Code § 19.118.021(22), during the "eligibility period," defined by Wash. Rev. Code § 19.118.021(6), or the coverage period under the applicable written warranty because they

1   contained the SDM Calibration Defect. Wash. Rev. Code § 19.118.031. This Defect substantially

2   impaired the use and market value of their motor vehicles.

3       1574.   Defendants had actual knowledge of the SDM Calibration Defect during warranty

4   periods. But the SDM Calibration Defect continued to exist throughout this term, as it has not

5   been fixed. Washington State Class members are excused from notifying Defendants of the SDM

6   Calibration Defect because they were already fully aware of the problem and any repair attempt is

7   futile.

8       1575.   Defendants have had a reasonable opportunity to cure the SDM Calibration Defect

9   because of its actual knowledge of, creation of, and attempt to conceal the nonconformities, but

10   has not done so as required under Wash. Rev. Code § 19.118.031.

11       1576.   For vehicles purchased, the Washington State Class demands a full refund of the

12   contract price, all collateral charges, and incidental costs. Wash. Rev. Code § 19.118.041(1)(b).

13   For vehicles leased, the Washington State Class demands all payments made under the lease

14   including but not limited to all lease payments, trade-in value or inception payment, security

15   deposit, and all collateral charges and incidental costs. The consumer is also relieved of any

16   future obligation to the lessor or lienholder. The Washington State Class rejects an offer of

17   replacement and will retain their vehicles until payment is tendered.

**WASHINGTON STATE COUNT III:**
**Breach of Express Warranty**
**Wash Rev. Code §§ 62A.2-313 and 62A.2A-210**
**(On Behalf of the Washington State Class)**

21       1577.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though

22   fully set forth herein.

23       1578.   Plaintiffs Ashley Dheel and Kara Hummel (for the purposes of this count,

24   "Plaintiffs") bring this claim on behalf of themselves and the Washington State Class against all

25   Defendants.

26       1579.   Defendants are and were at all relevant times "merchant[s]" with respect to motor

27   vehicles under Wash. Rev. Code §§ 62A.2-104(1) and 62A.2A-103(1)(t), and "sellers" of motor

28   vehicles under § 2.103(a)(4).

1    1580.   With respect to leases, Defendants are and were at all relevant times "lessors" of

2    motor vehicles under Wash. Rev. Code § 62A.2A-103(1)(p).

3    1581.   The Class Vehicles are and were at all relevant times "goods" within the meaning

4    of Wash. Rev. Code §§ 62A.2-105(1) and 62A.2A-103(1)(h).

5    1582.   In connection with the purchase or lease of Class Vehicles, Defendants provided

6    Plaintiffs and Washington State Class members with written express warranties covering the

7    repair or replacement of components that are defective in materials or workmanship.

8    1583.   Defendants' warranties formed the basis of the bargain that was reached when

9    Plaintiffs and Washington State Class members unknowingly purchased or leased Class Vehicles

10   that came equipped with the SDM Calibration Defect.

11   1584.   However, Defendants knew or should have known that the warranties were false

12   and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the

13   Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they

14   were sold and leased to Plaintiffs and Washington State Class members.

15   1585.   Plaintiffs and Washington State Class members reasonably relied on the

16   Defendants' express warranties when purchasing or leasing their Class Vehicles.

17   1586.   Defendants knowingly breached their express warranties to repair defects in

18   materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles.

19   Defendants also breached their express warranties by providing a product containing defects that

20   were never disclosed to Plaintiffs and Washington State Class members.

21   1587.   Plaintiffs and Washington State Class members have provided the Defendants with

22   reasonable notice and opportunity to cure the breaches of their express warranties by way of letter

23   sent by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public

24   NHTSA complaints and individual lawsuits, as detailed herein.

25   1588.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

26   1589.   As a direct and proximate result of the Defendants' breach of express warranties,

27   Plaintiffs and Washington State Class members have been damaged in an amount to be proven at

28   trial.

**WASHINGTON STATE COUNT IV:**
**Breach of Implied Warranty of Merchantability**
**Wash Rev. Code §§ 62A.2-314 and 62A.2A-212**
**(On Behalf of the Washington State Class)**

1590.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

1591.   Plaintiffs Ashley Dheel and Kara Hummel (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Washington State Class against all Defendants.

1592.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Wash. Rev. Code § 62A.2-104(1) and 62A.2A-103(1)(t), and "sellers" of motor vehicles under § 2.103(a)(4).

1593.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Wash. Rev. Code § 62A.2A-103(1)(p).

1594.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Wash. Rev. Code §§ 62A.2-105(1) and 62A.2A-103(1)(h).

1595.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Wash. Rev. Code §§ 62A.2-314 and 62A.2A-212.

1596.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

1597.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs on August 20, 2021.

1598.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

1599.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Washington State Class members have been damaged in an amount to be proven at trial.

### 33.   West Virginia

**WEST VIRGINIA COUNT I:**
**Violations of the West Virginia Consumer Credit and Protection Act**
**W. Va. Code § 46A-1-101 *et seq.***
**(On Behalf of the West Virginia State Class)**

1600.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

1601.   Plaintiff John Hickey (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the West Virginia State Class against all Defendants.

1602.   Defendants and the West Virginia State Class are "persons" within the meaning of W. Va. Code § 46A-1-102(31). West Virginia State Class members are "consumers" within the meaning of W. Va. Code §§ 46A-1-102(2) and 46A-1-102(12).

1603.   Defendants are engaged in "trade" or "commerce" within the meaning of W. Va. Code § 46A-6-102(6).

1604.   The West Virginia Consumer Credit and Protection Act ("West Virginia CCPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." W. Va. Code § 46A-6-104.

1605.   In the course of their business, Defendants violated the West Virginia CCPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

1606.   Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the SDM Calibration Defect, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by W. Va. Code § 46A-6-104.

1607.  Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and West Virginia State Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1608.  Defendants' scheme and concealment of the SDM Calibration Defect and true characteristics of the passenger safety systems in the Class Vehicles were material to Plaintiff and West Virginia State Class members, as the Defendants intended. Had they known the truth, Plaintiff and West Virginia State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1609.  Plaintiff and West Virginia State Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiff and West Virginia State Class members did not, and could not, unravel Defendants' deception on their own.

1610.  Defendants had an ongoing duty to Plaintiff and West Virginia State Class members to refrain from unfair or deceptive practices under the West Virginia CCPA in the course of their business. Specifically, Defendants owed Plaintiff and West Virginia State Class members a duty to disclose all the material facts concerning the SDM Calibration Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiff and West Virginia State Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

1611.  Defendants' violations present a continuing risk to Plaintiff and West Virginia State Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1612.  West Virginia State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain

from unfair and deceptive practices under the West Virginia CCPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1613.   Pursuant to W. Va. Code § 46A-6-106(a), the West Virginia State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and any other just and proper relief available under the West Virginia CCPA.

1614.   Pursuant to W. Va. Code § 46A-6-106(b), Plaintiffs sent notice letters to Defendants. The West Virginia State Class seeks all damages and relief to which it is entitled.

**WEST VIRGINIA COUNT II:**
**West Virginia Lemon Law**
**W. Va. Code § 46A-6A-1 *et seq.***
**(On Behalf of the West Virginia State Class)**

1615.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

1616.   Plaintiff John Hickey (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the West Virginia State Class against all Defendants.

1617.   West Virginia State Class members who purchased or leased the Class Vehicles in West Virginia are "consumers" within the meaning of W. Va. Code § 46A-6A-2(1).

1618.   Defendants are "manufacturer[s]" of the Class Vehicles within the meaning of W. Va. Code § 46A-6A-2(2).

1619.   The Class Vehicles are "motor vehicles" as defined by W. Va. Code § 46A-6A-2(4).

1620.   In connection with the purchase or lease of Class Vehicles, the Defendants provided Plaintiff and West Virginia State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

1621.   Defendants' warranties formed the basis of the bargain that was reached when Plaintiff and West Virginia State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

1622.   However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiff and West Virginia State Class members.

1623.   Plaintiff and West Virginia State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

1624.   Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiff and West Virginia State Class members.

1625.   Pursuant to W.Va. Code §§ 46A-6A-3(a) and 5(c), Plaintiffs have sent notice letters to Defendants.

1626.   As a direct and proximate result of the Defendants' breaches of their duties under West Virginia's Lemon Law, West Virginia State Class members received goods whose defect substantially impairs their value. The West Virginia State Class has been damaged by the diminished market value of the vehicles along with the compromised functioning and/or non-use of their Class Vehicles.

1627.   Defendants have a duty under § 46A-6A-3 to make all repairs necessary to correct the defect herein described to bring the Class Vehicles into conformity with all written warranties. In the event that Defendants cannot affect such repairs, they have a duty to replace each Class Vehicle with a comparable new motor vehicle that conforms to the warranty.

1628.   As a result of Defendants' breaches, Plaintiff and the West Virginia State Class are entitled to the following:

A.   Revocation of acceptance and refund of the purchase price, including, but not limited to, sales tax, license and registration fees, and other reasonable expenses incurred for the purchase of the new motor vehicle, or if there be no such revocation of acceptance, damages for diminished value of the motor vehicle;

- 271 -

B.      Damages for the cost of repairs reasonably required to conform the motor

vehicle to the express warranty;

C.      Damages for the loss of use, annoyance or inconvenience resulting from

the nonconformity, including, but not limited to, reasonable expenses incurred for

replacement transportation during any period when the vehicle is out of service by reason

of the nonconformity or by reason of repair; and

D.      Reasonable attorney fees.

**WEST VIRGINIA COUNT III:**
**Breach of Express Warranty**
**W. Va. Code §§ 46-2-313 and 46-2A-210**
**(On Behalf of the West Virginia State Class)**

1629.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1630.   Plaintiff John Hickey (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the West Virginia State Class against all Defendants.

1631.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under W. Va. Code § 46-2-104(1) and 46-2A-103(1)(t), and "sellers" of motor vehicles under § 46-2-103(1)(d).

1632.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under W. Va. Code § 46-2A-103(1)(p).

1633.   The Class Vehicles are and were at all relevant times "goods" within the meaning of W. Va. Code §§ 46-2-105(1) and 46-2A-103(1)(h).

1634.   In connection with the purchase or lease of Class Vehicles, the Defendants provided Plaintiff and West Virginia State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

1635.   Defendants' warranties formed the basis of the bargain that was reached when Plaintiff and West Virginia State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

1636. However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiff and West Virginia State Class members.

1637. Plaintiff and West Virginia State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

1638. Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiff and West Virginia State Class members.

1639. Plaintiff and West Virginia State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public NHTSA complaints and individual lawsuits, as detailed herein.

1640. Alternatively, any opportunity to cure the breach is unnecessary and futile.

1641. As a direct and proximate result of the Defendants' breach of express warranties, Plaintiff and West Virginia State Class members have been damaged in an amount to be proven at trial.

**WEST VIRGINIA COUNT IV:**
**Breach of Implied Warranty of Merchantability**
**W. Va. Code §§ 46-2-314 and 46-2A-212**
**(On Behalf of the West Virginia State Class)**

1642. Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

1643. Plaintiff John Hickey (for the purposes of this count, "Plaintiff") bring this claim on behalf of himself and the West Virginia State Class against all Defendants.

1644. Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under W. Va. Code §§ 46-2-104(1) and 46-2A-103(1)(t), and "sellers" of motor vehicles under § 46-2-103(1)(d).

1645.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under W. Va. Code § 46-2A-103(1)(p).

1646.   The Class Vehicles are and were at all relevant times "goods" within the meaning of W. Va. Code §§ 46-2-105(1) and 46-2A-103(1)(h).

1647.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to W. Va. Code §§ 46-2-314 and 46-2A-212.

1648.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

1649.   Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs on August 20, 2021.

1650.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

1651.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and West Virginia State Class members have been damaged in an amount to be proven at trial.

### 34.   **Wisconsin**

**WISCONSIN COUNT I:**
**Violations of the Wisconsin Deceptive Trade Practices Act**
**Wis. Stat. § 100.18 *et seq.***
**(On Behalf of the Wisconsin State Class)**

1652.   Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

1653.   Plaintiff Greg Douthwaite (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Wisconsin State Class against all Defendants.

1654.   Wisconsin State Class members are "persons" and members of "the public" under the Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA"), Wis. Stat. § 100.18(1). Wisconsin State Class members purchased or leased one or more Class Vehicles.

1655.   Defendants are "person[s], firm[s], corporation[s] or association[s]" within the meaning of Wis. Stat. § 100.18(1).

1656.   The Wisconsin DTPA makes unlawful any "representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. § 100.18(1).

1657.   In the course of their business, Defendants violated the Wisconsin DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

1658.   Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the SDM Calibration Defect, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by Wis. Stat. § 100.18(1).

1659.   Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and Wisconsin State Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1660.   Defendants' scheme and concealment of the SDM Calibration Defect and true characteristics of the passenger safety systems in the Class Vehicles were material to Plaintiff and Wisconsin State Class members, as the Defendants intended. Had they known the truth, Plaintiff and Wisconsin State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1661.   Plaintiff and Wisconsin State Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiff and Wisconsin State Class members did not, and could not, unravel Defendants' deception on their own.

1662.   Defendants had an ongoing duty to Plaintiff and Wisconsin State Class members to refrain from unfair or deceptive practices under the Wisconsin DTPA in the course of their business. Specifically, Defendants owed Plaintiff and Wisconsin State Class members a duty to disclose all the material facts concerning the SDM Calibration Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiff and Wisconsin State Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

1663.   Defendants' violations present a continuing risk to Plaintiff and Wisconsin State Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1664.   Wisconsin State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Wisconsin DTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1665.   As a direct and proximate result of Defendants' violations of the Wisconsin DTPA, the Wisconsin State Class have suffered injury-in-fact and/or actual damage.

1666.   The Wisconsin State Class seeks damages, court costs and attorneys' fees under Wis. Stat. § 100.18(11)(b)(2), and any other just and proper relief available under the Wisconsin DTPA.

**WISCONSIN COUNT II:**
**Breach of Express Warranty**
**Wis. Stat. §§ 402.313 and 411.210**
**(On Behalf of the Wisconsin State Class)**

1667.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1668.   Plaintiff Greg Douthwaite (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Wisconsin State Class against all Defendants.

1669.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Wis. Stat. §§ 402.104(3) and 411.103(1)(t), and "sellers" of motor vehicles under § 402.103(1)(d).

1670.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Wis. Stat. § 411.103(1)(p).

1671.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Wis. Stat. §§ 402.105(1)(c) and 411.103(1)(h).

1672.   In connection with the purchase or lease of Class Vehicles, the Defendants provided Plaintiff and Wisconsin State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

1673.   Defendants' warranties formed the basis of the bargain that was reached when Plaintiff and Wisconsin State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.

1674.   However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiff and Wisconsin State Class members.

1675.   Plaintiff and Wisconsin State Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

1676.   Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles.

Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiff and Wisconsin State Class members.

1677.   Plaintiff and Wisconsin State Class members have provided the Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of letter sent by Plaintiffs on August 20, 2021. Defendants are further on notice due to numerous public NHTSA complaints and individual lawsuits, as detailed herein.

1678.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

1679.   As a direct and proximate result of the Defendants' breach of express warranties, Plaintiff and Wisconsin State Class members have been damaged in an amount to be proven at trial.

**WISCONSIN COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Wis. Stat. §§ 402.314 and 411.212**
**(On Behalf of the Wisconsin State Class)**

1680.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

1681.   Plaintiff Greg Douthwaite (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Wisconsin State Class against all Defendants.

1682.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Wis. Stat. §§ 402.104(3) and 411.103(1)(t), and "sellers" of motor vehicles under § 402.103(1)(d).

1683.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Wis. Stat. § 411.103(1)(p).

1684.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Wis. Stat. §§ 402.105(1)(c) and 411.103(1)(h).

1685.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Wis. Stat. §§ 402.314 and 411.212.

1686.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

1687.   Defendants were provided reasonable notice of these issues by way of a letter sent on August 20, 2021.

1688.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

1689.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Wisconsin State Class members have been damaged in an amount to be proven at trial.

## VIII.   PRAYER FOR RELIEF

Plaintiffs, on behalf of himself and all others similarly situated, requests the Court to enter judgment against the Defendants, as follows:

a.   An order certifying the proposed Class(es), designating Plaintiffs as the named representatives of the Class(es), designating the undersigned as Class Counsel, and making such further orders for the protection of Class members as the Court deems appropriate, under Fed. R. Civ. P. 23;

b.   An order enjoining the Defendants to desist from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles and such other injunctive relief that the Court deems just and proper;

c.   An award to Plaintiffs and Class Members of compensatory, exemplary, and punitive remedies and damages and statutory penalties, including interest, in an amount to be proven at trial;

d.   A declaration that Defendants are financially responsible for all Class notice and the administration of Class relief;

e. Costs, restitution, compensatory damages for economic loss and out-of-pocket costs, multiple damages under applicable states' laws, punitive and exemplary damages under applicable law; and disgorgement, in an amount to be determined at trial;

f. Any applicable statutory and civil penalties;

g. An award of costs and attorneys' fees, as allowed by law;

h. An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded.

i. Leave to amend this Complaint to conform to the evidence produced at trial; and

j. Such other or further relief as the Court may deem appropriate, just, and equitable under the circumstances.

## IX.     DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action triable by a jury.

1     Dated: October 26, 2021            Respectfully Submitted,

2                                         By: */s/ Nimish R. Desai*
                                              Richard Heimann (CA Bar # 063607)
3                                             Nimish R. Desai  (CA Bar # 244953)
                                          **LIEFF CABRASER HEIMANN**
4                                         **& BERNSTEIN, LLP**
                                          275 Battery St., 29th Fl.
5                                         San Francisco, CA 94111-3339
                                          Telephone: 415-956-1000
6                                         Facsimile: 415-956-1008
                                          rheimann@lchb.com
7                                         ndesai@lchb.com

8
9                                         David S. Stellings (*pro hac vice forthcoming*)
                                          Katherine I. McBride (*pro hac vice forthcoming*)
10                                        Jessica A. Moldovan (*pro hac vice forthcoming*)
                                          **LIEFF CABRASER HEIMANN**
11                                        **& BERNSTEIN, LLP**
                                          250 Hudson Street, 8th Floor
12                                        New York, NY 10013
                                          Telephone: 212.355.9500
13                                        Facsimile: 212.355.9592
                                          dstellings@lchb.com
14                                        kmcbride@lchb.com
15                                        jmoldovan@lchb.com

16
                                          Roland Tellis (CA Bar #186269)
17                                        David Fernandes (CA Bar #280944)
                                          Adam Tamburelli (CA Bar #301902)
18                                        **BARON & BUDD, P.C.**
                                          15910 Ventura Boulevard, Suite 1600
19                                        Encino, California 91436
                                          Telephone: (818) 839-2333
20                                        Facsimile: (818)-986-9698
                                          rtellis@baronbudd.com
21                                        dfernandes@baronbudd.com
22                                        atamburelli@baronbudd.com

23
                                          Christopher A. Seeger (*pro hac vice forthcoming*)
24                                        Christopher L. Ayers (*pro hac vice forthcoming*)
                                          **SEEGER WEISS LLP**
25                                        55 Challenger Road, 6th Floor
                                          Ridgefield Park, NJ 07660
26                                        Telephone: (973) 639-9100
                                          Facsimile: (973) 639-9393
27                                        cseeger@seegerweiss.com
                                          cayers@seegerweiss.com
28

2312766.6                        - 281 -           AMENDED CLASS ACTION COMPLAINT
                                                             4:21-CV-06338-JST

1

2    Shauna Brie Itri (*pro hac vice forthcoming*)
     **SEEGER WEISS LLP**
3    1515 Market Street, Suite 1380
     Philadelphia, PA 19102
4    Telephone: (215) 564-2300
     Facsimile: (215) 851-8029
5    sitri@seegerweiss.com

6
     W. Daniel "Dee" Miles, III (*pro hac vice forthcoming*)
7    H. Clay Barnett, III (*pro hac vice forthcoming*)
     J. Mitch Williams (*pro hac vice forthcoming*)
8    Rebecca D. Gilliland (*pro hac vice forthcoming*)
     Dylan T. Martin (*pro hac vice forthcoming*)
9    **BEASLEY, ALLEN, CROW,**
     **METHVIN, PORTIS & MILES, P.C**.
10   272 Commerce Street
     Montgomery, AL 36104
11   Telephone: (334) 269-2343
     Dee.Miles@beasleyallen.com
12   Clay.Barnett@beasleyallen.com
     Mitch.Williams@beasleyallen.com
13   Rebecca.Gilliland@beasleyallen.com
     Dylan.Martin@beasleyallen.com
14
15
     David M. Birka-White  (CA Bar # 85721)
16   **BIRKA-WHITE LAW OFFICES**
     178 E. Prospect Avenue
17   Danville, CA 94526
     Telephone: (925) 362-9999
18   dbw@birka-white.com
19
     James E. Cecchi (*pro hac vice forthcoming*)
20   Caroline F. Bartlett (*pro hac vice forthcoming*)
     Jordan M. Steele (*pro hac vice forthcoming*)
21   **CARELLA, BYRNE, CECCHI,**
     **OLSTEIN, BRODY & AGNELLO, P.C.**
22   5 Becker Farm Road
     Roseland, New Jersey 07068
23   Telephone: (973) 994-1700
     Facsimile:  (973) 994-1744
24   jcecchi@carellabyrne.com
     cbartlett@carellabyrne.com
25   jsteele@carellabyrne.com
26
27
28   Joseph H. Meltzer (*pro hac vice forthcoming*)

Melissa L. Troutner (*pro hac vice forthcoming*)
Eric. K. Gerard (*pro hac vice forthcoming*)
Lauren M. McGinley (*pro hac vice forthcoming*)
**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
jmeltzer@ktmc.com
mtroutner@ktmc.com
egerard@ktmc.com
lmcginley@ktmc.com

Charles E. Schaffer (*pro hac vice forthcoming*)
David C. Magagna Jr. (*pro hac vice forthcoming*)
**LEVIN, SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
cschaffer@lfsblaw.com
dmagagna@lfsblaw.com

E. Powell Miller (*pro hac vice forthcoming*)
**THE MILLER LAW FIRM, P.C.**
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com

Jason P. Sultzer, Esq. (*pro hac vice forthcoming*)
**THE SULTZER LAW GROUP P.C.**
270 Madison Avenue, Suite 1800
New York, NY 10016
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com

# EXHIBIT A

| NHTSA ID No. | make | model | year | failure_date | full_text |
|---|---|---|---|---|---|
| 10915473 | BUICK | ENCLAVE | 2014 | 2016-06-25 | TL* THE CONTACT OWNED A 2014 BUICK ENCLAVE. WHILE DRIVING INTO AN INTERSECTION, THE DRIVER'S SIDE OF THE CONTACT'S VEHICLE WAS STRUCK BY AN ONCOMING VEHICLE. THE CONTACT'S VEHICLE SPUN OFF THE ROAD AND LANDED IN A DITCH. THE FRONT END AND DRIVER'S SIDE OF THE VEHICLE WERE SEVERELY DAMAGED. THE CONTACT WAS UNABLE TO RECALL THE DETAILS OF THE CRASH. THE AIR BAGS DID NOT DEPLOY. THE CONTACT WAS INFORMED THAT THE SEAT BELT FAILED TO LOCK AND PROPERLY RESTRAIN HIM. THE VEHICLE WAS TOWED AND TOTALED. A POLICE REPORT WAS FILED. THE CONTACT RECEIVED INJURIES TO THE RIBS, CLAVICLE, AND SHOULDER, WHICH REQUIRED MEDICAL ATTENTION. THE APPROXIMATE FAILURE MILEAGE WAS 40,000. |
| 10995504 | BUICK | ENCORE | 2014 | 2017-06-15 | I TOOK MY VEHICLE INTO THE SERRA DEALERSHIP IN WASHINGTON, MI ON 3/20/17 TO HAVE THE FRONTAL AIRBAG AND PRETENSIONER NON DEPOY SAFETY RECALL (16007) REPAIRED. ON, 6/15/17, I WAS IN A CAR ACCIDENT TRAVELING AT ROUGHLY 50 MPH AND MY AIRBAGS DID NOT DEPLOY.  A FORD F-150 TURNED INTO ONCOMING TRAFFIC WITHOUT LOOKING CAUSING THE FRONT OF MY VEHICLE TO CRASH INTO THE SIDE OF HER TRUCK. THE OTHER DRIVER WAS ISSUED THE CITATION FROM THE POLICE.  MY BUICK ENCORE IS MOST LIKELY TOTALED (AWAITING CONFIRMATION ON THAT). |
| 10726387 | CADILLAC | SRX | 2014 | 2015-06-17 | I WAS IN A SEVERE CRASH AND SUFFERED A SEVERE CONCUSSION. MY RIBBON FLEW OFF MY HEAD WHEN I CAME TO, I DID LOSE CONSCIOUSNESS AND WOKE UP TO ON STAR TELLING ME MY VEHICLE WAS IN A CRASH. I HAVE SEVERE PAIN IN MY NECK SHOULDER, ABRASIONS TO THE LEFT SIDE OF MY BODY AND BRUISING. THE VEHICLE IS TOTALED BUT THE AIRBAG NEVER DEPLOYED AND IT SHOULD HAVE WITHOUT A DOUBT. THERE WAS SEVERE DAMAGE TO THE ENTIRE VEHICLE. |
| 10871604 | CADILLAC | SRX | 2014 | 2016-05-27 | TL* THE CONTACT OWNS A 2014 CADILLAC SRX. WHILE DRIVING 65 MPH, THE CONTACT LOST CONTROL OF THE VEHICLE AND IT VEERED OFF THE ROAD IN BOTH DIRECTIONS AND CRASHED. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT DID NOT SUSTAIN INJURIES. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO A DEALER WHERE IT WAS DIAGNOSED THAT THE REAR DRIVER SIDE CONTROL ARM NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED. THE VEHICLE WAS PREVIOUSLY REPAIRED UNDER NHTSA CAMPAIGN NUMBER: 14V571000 (SUSPENSION). THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 32,000. |
| 10615335 | CHEVROLET | EQUINOX | 2014 | 2014-05-24 | TL* THE CONTACT OWNS A 2014 CHEVROLET EQUINOX. THE CONTACT STATED THAT WHILE DRIVING 16 MPH, THE CONTACT CRASHED INTO THE DRIVER'S SIDE DOOR OF ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. THE CONTACT SUSTAINED CHEST, RIGHT KNEE, SHOULDER AND SPINE INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE MANUFACTURER WAS NOT AWARE OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS UNKNOWN. |
| 10864509 | CHEVROLET | EQUINOX | 2014 | 2016-05-05 | I BOUGHT MY  2014 CHEVY EQUINOX NEW. I WAS IN CRASH WHICH I HIT A FULL SIZE CHEVY TRUCK IN THE DRIVER DOOR AND IT TOTALED MY CAR AND NOT ONE AIR BAG CAME. I WAS CROSSING EAST AND WEST THE TRUCK WAS GOING NORTH TO SOUTH |
| 10915132 | CHEVROLET | EQUINOX | 2014 | 2016-09-08 | WAS INVOLVED IN ACCIDENT 9/8/2016. IT WAS A TOTAL LOSS. FRONT END HEAVILY DAMAGED. AIRBAGS DID NOT WORK OR THE PASSENGER SIDE SEATBELT. DRIVING STRAIGHT AT INTERSECTION AND OTHER PARTY RAN RED LIGHT STRIKING THE LEFT FRONT AND CAUSING FRAME TO CRACK. |
| 11124021 | CHEVROLET | EQUINOX | 2014 | 2018-09-01 | I HIT A DEER ON SEPT. 1, 2018 AND MY AIRBAGS DIDN'T DEPLOY. |
| 11186171 | CHEVROLET | EQUINOX | 2014 | 2019-03-05 | VEHICLE WAS IN MOTION TRAVELING STRAIGHT GOING APPROXIMATELY 50MPH WHEN IT STRUCK ANOTHER VEHICLE THAT FAILED TO YIELD THE RIGHT OF WAY.  THE EQUINOX SUFFERED EXTENSIVE FRONT END DAMAGE ON THE DRIVERS SIDE BUT NO AIRBAGS DEPLOYED. |
| 11376003 | CHEVROLET | EQUINOX | 2014 | 2020-11-16 | I WAS INVOLVED IN A CAR ACCIDENT ON NOVEMBER 16, 2020 AND NEITHER OF MY AIRBAGS DEPLOYED. |
| 10599029 | CHEVROLET | SILVERADO | 2014 | 2014-06-10 | MY WIFE & SISTER WERE RUN OFF THE ROAD . THEY WENT UP A DITCH & HIT A COLVURT . THE SEATBELTS DID NOT LOCK IN PLACE & AIR BAGS DID NOT INFLATE . THIS WAS A LOANER TRUCK FROM DEALER . IT WAS A 2014 4 DOOR CHEVY SILVERADO FROM LUCAS CHEVY IN COLUMBIA TN. 38401 . I THINK THE SAME SORT OF TROUBLE WITH THIS HAPPENING . PLEAS CALL FOR COMPLETE INFO ON THIS .  *TR |
| 10695408 | CHEVROLET | SILVERADO | 2014 | 2015-02-18 | TL* THE CONTACT OWNED A 2014 CHEVROLET SILVERADO. WHILE DRIVING APPROXIMATELY 60 MPH, THE CONTACT REACHED OVER TO TURN THE HEAT OFF AND THE VEHICLE WENT OFF THE ROAD, DOWN A HILL, AND INTO A DITCH. THE VEHICLE CONTINUED ON UNTIL IT CRASHED INTO A CABLE THAT WAS CONNECTED TO A TELEPHONE POLE. THE TELEPHONE POLE SPLIT IN HALF. THE SEAT BELT FAILED TO RESTRAIN THE CONTACT AND THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED INJURIES TO HIS BACK, KNEE, AND HIP THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED AND TOWED TO A LOT. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 7,956. |

| | | | | | |
|---|---|---|---|---|---|
| 10712235 | CHEVROLET | SILVERADO | 2014 | 2015-03-21 | TL* THE CONTACT OWNS A 2014 CHEVROLET SILVERADO. WHILE DRIVING AT APPROXIMATELY 70 MPH, THE VEHICLE STRUCK A DEER ON THE HIGHWAY. THE FRONT AND REAR AIR BAGS FAILED TO DEPLOY. THERE WERE NO INJURIES AND A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS TAKEN TO A DEALER, BUT WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 8,000. |
| 11129851 | CHEVROLET | TRAVERSE | 2014 | 2018-09-15 | TL* THE CONTACT OWNS A 2014 CHEVROLET TRAVERSE. WHILE DRIVING 45 MPH, THE CONTACT CRASHED INTO THE REAR PASSENGER QUARTER PANEL OF A HONDA ACCORD. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE AIR BAGS DID NOT DEPLOY. THE CONTACT SUSTAINED NECK AND BACK INJURIES, WHICH DID NOT REQUIRE MEDICAL ATTENTION. THE TWO OCCUPANTS OF THE HONDA SUSTAINED UNKNOWN INJURIES, WHICH REQUIRED MEDICAL ATTENTION AT THE SCENE. A POLICE REPORT WAS FILED. THE VEHICLE WAS TAKEN TO AN INDEPENDENT MECHANIC, BUT WAS NOT DIAGNOSED OR REPAIRED. THE LOCAL DEALER AND MANUFACTURER WERE NOT CONTACTED. THE FAILURE MILEAGE WAS APPROXIMATELY 62,000. THE VIN WAS NOT AVAILABLE. |
| 10909600 | GMC | TERRAIN | 2014 | 2016-09-18 | TL* THE CONTACT OWNED A 2014 GMC TERRAIN. THE CONTACT STATED THAT WHILE DRIVING AT APPROXIMATELY 10 MPH AND MAKING A LEFT TURN, ANOTHER VEHICLE CRASHED INTO THE VEHICLE HEAD ON. THE FRONTAL AIR BAGS DID NOT DEPLOY. THE POLICE AND FIRE DEPARTMENT WERE PRESENT. NO INJURIES WERE REPORTED. THE VEHICLE WAS DESTROYED AND TOWED TO A COLLISION LOT. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 27,448. |
| 10608599 | GMC | YUKON | 2014 | 2014-07-04 | I HAD A FRONT END COLLISION AT 25 MPH WITH A PARKED CAR.  MY AIRBAG(S) DID NOT DEPLOY. THE ENTIRE FRONT END OF MY CAR WAS DESTROYED.  THE HOOD WAS CRUMPLED AND BOTH FRONT QUARTER PANELS DAMAGED.  THE FRONT DOORS ARE NOT EASILY OPENED DUE TO THE QUARTER PANEL DAMAGE.  IT IS HARD FOR ME TO UNDERSTAND HOW AN IMPACT AT THE SPEED I WAS TRAVELING AND THE LOCATION OF IMPACT DID NOT CAUSE THE AIRBAG(S) TO DEPLOY.  I HAD TO BE TRANSPORTED VIA AMBULANCE FROM THE SCENE AND SUFFERED A CONCUSSION FROM MY HEAD SLAMMING DOWN ON THE STEERING WHEEL.  *JS |
| 10595132 | BUICK | ENCLAVE | 2013 | 2014-05-29 | TL* THE CONTACT OWNS A 2013 BUICK ENCLAVE.  THE CONTACT STATED THAT WHILE TRAVELING 5 MPH, THE VEHICLE CRASHED HEAD-ON INTO ANOTHER VEHICLE AND THE AIR BAGS DID NOT DEPLOY. THE CONTACT WAS INJURED AND REQUIRED IMMEDIATE MEDICAL ATTENTION. THE VEHICLE WAS DESTROYED.  THE MANUFACTURER WAS NOTIFIED OF THE FAILURE.  THE FAILURE AND CURRENT MILEAGE WAS 11,500. |
| 11352287 | CADILLAC | SRX | 2013 | 2020-08-27 | HEAD ON COLLISION AT 40 MPH ON A CITY STREET. AIR BAGS DID NOT DEPLOY AND SEAT MOVED FORWARD. RESULTING IN ER VISIT AND HEAD LACERATION AND LOSS OF CONSCIOUSNESS. |
| 10575764 | CHEVROLET | EQUINOX | 2013 | 2013-11-11 | HIT A DEER WITH FRONT END OF VEHICLE CAUSING APPROXIMATELY $6,000 IN DAMAGES. AIRBAGS DID NOT DEPLOY CAUSING CONCUSSION RECEIVED BY DRIVER.  DRIVER IS STILL EXPERIENCING MEDICAL PROBLEMS DUE TO THIS ACCIDENT.  *TR |
| 10667442 | CHEVROLET | EQUINOX | 2013 | 2014-12-14 | I WAS INVOLVED IN AN ACCIDENT THAT RESULTED IN DAMAGES OVER $14,000 TO THE FRONT END OF THE VEHICLE. THE AIR BAGS DID NOT DEPLOY. I HAVE CONTACTED GM TWICE THIS WEEK AND HAVE NOT YET SPOKEN TO ANYONE IN THEIR PRODUCT ASSISTANCE DEPARTMENT.  *DT |
| 10958946 | CHEVROLET | EQUINOX | 2013 | 2016-11-23 | TL* THE CONTACT OWNED A 2013 CHEVROLET EQUINOX. WHILE DRIVING APPROXIMATELY 60 MPH, THE CONTACT'S VEHICLE CRASHED INTO A SECOND VEHICLE. THE FRONT END OF THE VEHICLE SUSTAINED SIGNIFICANT DAMAGE. THE AIR BAGS DID NOT DEPLOY. THE REAR PASSENGER SEAT OCCUPANT SUSTAINED A HEAD INJURY, WHICH REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS DESTROYED. A POLICE REPORT WAS FILED. THE FAILURE MILEAGE WAS 50,000. |
| 10993565 | CHEVROLET | EQUINOX | 2013 | 2017-05-09 | "TAMARA RECALL"   I'M WRITING REGUARDING AN ACCIDENT THAT TOTALED OUT MY VEHICLE BUT NONE OF MY AIR BAGS DEPLOYED ? I HIT A DEER AT 75-80 MPH ON A HWY IT HIT MY DRIVERS SIDE HEADLIGHT AND CONTINUED UP OVER MY HOOD AND ACTUALLY DENTED PART OF MY PASSENGER SIDE FENDER I COULDN'T EVEN OPEN THE DOOR ALL THE WAY! NONE OF MY AIR BAGS WENT OFF. LUCKILY I HAD MY SEAT BELT ON WHICH SOMETHING IN THE SEAT BELT BLEW WHEN IT LOCKED ME IN PLACE DUE TO THE IMPACT OF THE DEER HITTING JUMPING OUT AT ME A WARNING POPPED UP ON MY DASH BELIEVE SAID "LOCKED" BUT ALL HAPPENED SO FAST , IT PUSHED & CRACKED JUST ABOUT EVERYTHING UNDER MY HOOD. I HAD SMOKE COMING FROM MY VEHICLE, FLUIDS ON THE GROUND NO FIRE THANKFULLY ! MY SUV WAS TOTALED AND MANY HAVE QUESTIONED ME ABOUT THE AIR BAGS. I'M NOW WONDERING THE SAME THING. WHY IN THE WORLD DID NONE OF THESE GO OFF ? IF I WOULDN'T HAVE HAD MY SEAT BELT ON WHO KNOWS WHAT WOULD HAVE HAPPENED WITH THE AIR BAGS NOT GOING OFF ! I'VE DONE RESEARCH I HAVEN'T SEEN ANY RECALLS, BUT I AM A LITTLE CONFUSED BY THIS! |

| | | | | | |
|---|---|---|---|---|---|
| 10576260 | CHEVROLET | SILVERADO | 2013 | 2014-03-18 | ON TUESDAY MARCH 18, 2014 I WAS DRIVING A 2013 CHEVY SILVERADO AND REAR ENDED A CHEVY TAHAO AT APPROXIMATELY 20 MPH WITHOUT HITTING MY BRAKES. CONDITIONS AT THE TIME WERE CLEAR AND DRY ALTHOUGH VERY WINDY. I WAS THE ONLY PASSENGER IN MY TRUCK. I WAS WEARING MY SEATBELT. I HIT THE STEERING WHEEL WITH MY CHEST. THE ONSTAR SYSTEM CALLED TO SAY THEY COULD SEE I WAS IN AN ACCIDENT AND HELP WAS ON THE WAY. I EXCHANGED INFO WITH THE OTHER DRIVER AND RETURNED TO MY VEHICLE. THE SEATBELT WAS IN THE EXTENDED POSITION AND WOULD NOT EXTEND FURTHER OR RETRACT. ON THE DISPLAY PANEL IT HAD AN 'AIRBAG DEPLOYED' ICON AND MESSAGE 'SERVICE AIRBAG'. MY INSURANCE COMPANY GAVE ME A AUTO REPAIR SHOP TO GO TO FOR AN ESTIMATE, HOWEVER, THE SHOP TOLD ME THEY WOULD NOT TOUCH THE VEHICLE UNTIL A GM REPRESENTATIVE INVESTIGATED THE SYSTEM FIRST AS THEY FELT THE SEATBELT SHOULD HAVE PREVENTED ME FROM HITTING THE STEERING WHEEL. I CALLED GM AND SPOKE WITH WALTER IN CUSTOMER SERVICE. HE ARRANGED TO HAVE A 'THIRD PARTY' INVESTIGATOR COME AND DO A INTERROGATION OF THE SYSTEM AND ARRANGED FOR A LOANER VEHICLE. RAYTHEON REPRESENTATIVE 'JEFF' CALLED ME SUNDAY MARCH 20 AND STATED HE WAS TO INTERROGATE THE SYSTEM AND WOULD CONTACT ME FROM THE AIRPORT WHEN HE GOT TO TOWN ON WEDNESDAY MARCH 23. ON WEDNESDAY MARCH 23 I CALLED JEFF TO SEE IF HE WAS IN TOWN AND HE STATED HE WAS AT THE AIRPORT 'LEAVING' TOWN, HE HAD DONE HIS INVESTIGATION AND DETERMINED EVERYTHING WORKED LIKE IT SHOULD. I ASKED HIM IF I WAS SUPPOSED TO HIT THE STEERING WHEEL AND HE STATED HE DID NOT AGREE OR DISAGREE.  *TR |
| 10598445 | CHEVROLET | SILVERADO | 2013 | 2014-06-08 | TL* THE CONTACT OWNS A 2013 CHEVROLET SILVERADO. THE CONTACT STATED WHILE DRIVING APPROXIMATELY 35 MPH A DRUNK DRIVER CRASHED INTO THE CONTACTS VEHICLE. THE AIR BAGS DID NOT DEPLOY. THE PASSENGER SUSTAINED A BROKEN FOOT AND WAS TAKEN TO THE HOSPITAL. THE APPROXIMATE FAILURE MILEAGE WAS 22,000. |
| 11055507 | CHEVROLET | TRAVERSE | 2013 | 2016-10-25 | ON OCT 25 OF LAST YEAR WE WERE INVOLVED IN A ACCIDENT WHERE WE HIT A CAR BROADSIDED DOING ABOUT 30 MPH CAUSING CONSIDERABLE DAMAGE TO OUR CAR, BOTH MY WIFE AND MYSELF HAD TERRIBLE WHIPLASHES. AND I BELIEVE THAT SOME OF OUR PAIN COULD HAVE BEEN PREVENTED IF THE AIR BAGS WOULD HAVE DEPLOYED WHICH THEY DID NOT DO. WE WERE ON 4 LANE DIVIDED ROAD GOING THROUGH THE TOWN OF CHIEFLAND FL. WE WERE PASSING A SEMI TRUCK WHICH WAS SLOWING DOWN TO MAKE A TURN WHEN A VEHICLE CAME ACROSS THE FRONT OF THE TRUCK AND  CONTINUED TO COME INTO OUR LANE WITH NO REGARDS TO STOPPING AND WE HAD NO CHOICE OR TIME TO STOP. |
| 11093533 | CHEVROLET | TRAVERSE | 2013 | 2017-09-18 | HAVE HAD MY VEHICLE IN DEALER TO FIX AIR BAG LIGHT SEVERAL TIMES AND IT IS STILL ON. MY WIFE WAS INVOLVED IN AN ACCIDENT WHERE AIRBAGS SHOULD OF DEPLOYED AND DIDN'T. LUCKILY SHE WAS NOT INJURED. |
| 10556077 | GMC | TERRAIN | 2013 | 2013-12-13 | VEHICLE WAS INVOLVED IN A SEVERE ACCIDENT WHERE THE OTHER DRIVER RAN A STOP SIGN AND HIT TERRAIN CAUSING SEVERE FRONT END AND ENGINE DAMAGE. AIR BAGS FAILED TO DEPLOY. INJURIES INCLUDED WERE NECK AND BACK. DAMAGE WAS SEVERE ENOUGH TO CAUSE AIRBAGS TO DEPLOY BUT NEVER DID . HAVING AN INDEPT INSPECTION CONDUCTED AS TO WHY THEY NEVER DEPLOYED.  *TR |
| 10895896 | GMC | TERRAIN | 2013 | 2016-08-15 | WAS DRIVING DOWN HIGHWAY US19 AND COLLIDED WITH ANOTHER VEHICLE AT AT LEAST 40MPH AND AIRBAGS DID NOT DEPLOY |
| 11222110 | BUICK | ENCLAVE | 2012 | 2019-06-21 | I WAS IN A COLLISION ON 6/21/2019 THAT HAD SEVERE FRONT END OBSTRUCTIONS AND WITH A STRONG TOTAL LOSS AS A RESULT. MY AIRBAGS NEVER DEPLOYED. THE VEHICLE WAS IN MOTION ON ASSEMBLY STREET, COLUMBIA SC. |
| 10576031 | CADILLAC | SRX | 2012 | 2014-03-23 | I FELL ASLEEP WHILE DRIVING, JUMPED A LEVEE, RAN THROUGH A FENCE, AND WRECKED IN A GRASSY WATERY AREA.  MY ENGINE WAS SMASHED, THE MOTOR MOUNT BROKE, AND MY TIRES ARE PUSHED BACK.  MY AIR BAGS DID NOT DEPLOY.  MY FACE HIT THE STEERING WHEEL AND MY NOSE IS BROKEN.  I WOULD LIKE TO FIND OUT IF THERE IS ANY RECALLS ON THIS CAR.  *TR |
| 10576905 | CADILLAC | SRX | 2012 | 2014-03-27 | VEHICLE DRIVER AIR BAG DID NOT DEPLOY, NOR ANY OTHER AIR BAG, UPON COLLISION TO REAR OF A STOPPED PICK UP TRUCK. SPEED OF OFFENDING VEHICLE WAS APPROXIMATELY 45 MPH. DRIVER SUFFERED CHEST INJURY FROM SEAT BELT. DAMAGE ESTIMATED TO FRONT END EXCEEDS $10,000.  *TR |
| 10682471 | CADILLAC | SRX | 2012 | 2014-12-14 | MVA WITH TWO IMPACTS; FRONT DRIVER SIDE (SIGNIFICANT IMPACT) AND FRONT OF VEHICLE  NO AIRBAGS DEPLOYED.  *TR |
| 10993443 | CADILLAC | SRX | 2012 | 2017-05-31 | TWO CARS AHEAD OF ME WAS GOING STRAIGHT AND ALL OF A SUDDEN TURNED INTO A STRIP MALL WITHOUT INDICATOR, THE CAR IN FRONT OF ME SLAMMED ON THEIR BRAKES AND SO DID I , BUT I STILL ENDED UP REAR ENDING THE VEHICLE IN FRONT. I THINK MY SPEED WAS AROUND 30 AT THE TIME OF IMPACT. I HIT MY CHIN TO THE STEERING WHEEL. GOT MULTIPLE CUTS INSIDE OF MY MOUTH. AND COUPLE OF THEM ON MY FACE WHICH REQUIRED STITCHES.  MY AIR BAG DID NOT DEPLOY AND NEITHER THE SEATBELT PREVENTED IT, WHICH I THOUGHT WAS ODD. CHECKED WITH CADILLAC IF THEY WERE AWARE OF ANY PROBLEM WITH THE CAR. THEY DENIED THE EXISTENCE OF SUCH AN ISSUE. SO I WANT TO GET THE VEHICLE INVESTIGATED , SO THAT NOBODY ELSE SHOULD GET HURT THE WAY I DID; ALSO I HAVE ANOTHER CADILLAC AND NEED TO KNOW. WILL REALLY APPRECIATE IT. THANKS |

| | | | | | |
|---|---|---|---|---|---|
| 11138938 | CADILLAC | SRX | 2012 | 2018-06-25 | ON 6/25/18, MY WIFE WAS TRAVELING 45 MPH., IN OUR 2012 CADILLAC SRX. THE VEHICLE IN FRONT OF HER WENT TO MAKE A LEFT TURN INTO A SUBDIVISION. BUT, THEN DECIDED NOT TO DO THAT AND PULLED BACK INTO THE LANE OF MY WIFE. SHE SLAMMED ON HER BRAKES, TO AVOID HITTING THE VEHICLE. HOWEVER, SHE COULDN?T ANTICIPATE THEIR MOVE. SHE HIT THEM FROM BEHIND, GOING 45MPH. SHE HIT HER FOREHEAD ON THE VISOR BAR TWICE, CAUSING A SKULL FRACTURE, BRAIN BLEED, SEVER CONCUSSION, DEEP LACERATIONS, A BURST ARTERY IN HER FOREHEAD TO WHERE SHE WAS BLEEDING HEAVILY AND UNCONSCIOUS. HER CHEST HIT THE STEERING WHEEL, WHICH BADLY BRUISED HER RIBS, CAUSING A HIATAL HERNIA, DUE TO THE IMPACT. SHE SUFFERED LACERATIONS TO HER LEFT ARM, KNEE AND HAS RUPTURED DISCS IN HER CERVICAL SPINE. SHE WAS ICU FOR SEVERAL DAYS DUE TO THE BRAIN BLEED AND HEAD INJURIES SHE SUSTAINED. OUR AIR BAG NEVER DEPLOYED AND THE DRIVER SEAT BELT DIDN?T LOCK ON IMPACT, ALLOWING HER TO BOUNCE UPWARD TWICE AND SUSTAINED THE HEAD INJURIES. THE CADILLAC AIR BAGS AND SEAT LOCKING MECHANISMS FAILED TO PROTECT HER FROM INJURIES SHE SHOULD HAD NEVER HAD. SOMEONE NEEDS TO RESEARCH FURTHER THESE ISSUES FOR THE 2012 SRX SO OTHER CONSUMERS DON?T FEEL SAFE IN A VEHICLE, WHERE THE  SAFETY MECHANISMS FAIL. CADILLAC SHOULD NOT BE ABLE TO GET AWAY WITH THIS. SHOULD THE 2012 SRX HAVE A RECALL ON AIR BAGS AND SEAT BELT LOCKING MECHANISMS FAILING? MORE THAN ONE COMPLAINT HAS BEEN POSTED, SO I HOPE THE NHTSA INVESTIGATES THIS FOR US ALL. PLEASE CONSIDER THIS A FORMAL COMPLAINT!  THANK YOU,  AND PLEASE FOLLOW UP!  *TR |
| 10546238 | CHEVROLET | EQUINOX | 2012 | 2013-09-20 | I WAS TRAVELING SOUTH AS ANOTHER CAR WAS TRAVELING NORTH. THE CAR TRAVELING NORTH MADE A RAPID LEFT TURN DIRECTLY IN MY TRAVELING PATH.  WE COLLIDED AND MY CAR WAS TOTALED. I HIT THE STEERING WHEEL PRETTY HARD BECAUSE THE AIRBAG DID NOT DEPLOY.  HOW SHOULD I PROCEED?  *TR |
| 10979985 | CHEVROLET | EQUINOX | 2012 | 2017-03-31 | I WAS INVOLVED IN AN ACCIDENT WHERE I REAR ENDED A STOPPED VEHICLE. MY CRUISE WAS SET AT 57 MPH AND I DID NOT APPLY BRAKES. BECAUSE CRUISE WAS SET, I HIT ONCE, BOUNCED BACK AND HIT AGAIN. MY AIRBAGS DID NOT DEPLOY AT ALL. THE VEHICLE HAS EXTENSIVE DAMAGE TO THE FRAME BUT NO AIRBAG DEPLOYMENT. |
| 11329614 | CHEVROLET | EQUINOX | 2012 | 2020-05-31 | TL* THE CONTACT OWNED A 2012 CHEVROLET EQUINOX. THE CONTACT STATED THAT WHILE HER HUSBAND WAS DRIVING ABOUT 25 MPH, HE SUFFERED A MEDICAL CONDITION AND LOST CONTROL OF THE VEHICLE, CRASHING INTO A THREE FEET HIGH CEMENT BOULDER. THE AIR BAGS DID NOT DEPLOY. BOTH THE DRIVER AND THE FRONT PASSENGER SUSTAINED INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE DRIVER AND THE PASSENGER HAD THEIR SEAT BELTS LATCHED AT THE TIME OF THE CRASH. THE VEHICLE WAS TOTALED AND WAS TOWED TO A TOW YARD. THE DEALER AND THE MANUFACTURER WERE NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 133,000. |
| 10790202 | CHEVROLET | SILVERADO | 2012 | 2015-09-30 | RECENTLY I WAS INVOLVED IN AN ACCIDENT THAT WAS A DIRECT IMPACT. AT THE TIME OF THIS ACCIDENT THE SEAT BELT DID NOT LOCK NOR DID THE AIR BAGS DEPLOY.  THE SPEED FROM THIS ACCIDENT WAS BETWEEN 50-55 MPH ON THE HIGHWAY. AT THE RATE OF SPEED I WAS GOING BEFORE THE ACCIDENT AND THE FACT THAT I HAD TO  SLAM ON THE BREAKS TO BEGIN SLOWING DOWN ONE WOULD HAVE THOUGHT THE SEAT BELT WOULD HAVE LOCKED BUT IT DID NOT AND AT THE POINT OF IMPACT I WAS VERY SURPRISED THAT THE AIRBAGS DID NOT DEPLOY BUT YET THE SYSTEM INDICATED THAT IT DID AND NEEDED TO BE RESET.  HOWEVER NOW THAT THE VEHICLE IS IN PROCESS OF BEING REPAIRED I AM BEING TOLD THAT THE ENTIRE AIRBAG SYSTEM HAS TO BE REPLACED ALONG WITH THE DRIVER SEAT BELT. |
| 10622016 | CHEVROLET | TAHOE | 2012 | 2014-08-09 | WHILE TURNING LEFT (TAHOE) WITH A PROTECTED GREEN ARROW AT AN X-SHAPED INTERSECTION, VEHICLE (KIA SEDAN) AT FAULT FAILED TO YIELD AND ENTERED THE INTERSECTION AT SPEEDS UPWARDS OF 40 MPH FROM THE LEFT OF THE TAHOE.  FRONT-IMPACT COLLISION OCCURRED; DUE TO THE SHAPE OF THE INTERSECTION AND THE VELOCITY OF THE IMPACT, TAHOE STRUCK PASSENGER SIDE OF KIA SEDAN. TRAJECTORY OF IMPACT CAUSED DIRECTIONAL CHANGES IN UPWARDS OF 90* FOR BOTH VEHICLES; THE FORCE OF THE PRIMARY ACCIDENT DESCRIBED ABOVE ALSO CAUSED MENTIONED VEHICLES TO COLLIDE WITH LEFT REAR OF ANOTHER VEHICLE (HONDA SEDAN), CAUSING NEAR 360* ROTATION OF THE HONDA SEDAN.  DUE TO THE FORCE OF IMPACT, FRONT & SIDE AIRBAGS DEPLOYED ON BOTH THE KIA SEDAN AND THE HONDA SEDAN, BUT FAILED TO DEPLOY ON THE TAHOE.  SCENE INDICATED THAT THE KIA SEDAN MADE NO ATTEMPT TO BRAKE OR DECREASE SPEED PRIOR TO COLLISION; POSTED SPEED LIMIT AT INTERSECTION IS 40 MPH.  FORCE WAS SUCH THAT AFTER THE COLLISION, TAHOE TRANSMISSION WAS IN DRIVE, BUT REMAINED AT A COMPLETE STOP.  DAMAGE SUSTAINED ON THE TAHOE INCLUDE FRONT-END BODY DAMAGE, ENGINE DAMAGE (VEHICLE REQUIRED TOWING AND WAS INOPERABLE), AND FRAME DAMAGE, AT A MINIMUM.  IN ADDITION, ENGINE SERVICE LIGHTS AS WELL AS ONSTAR VEHICLE DIAGNOSTIC REPORTS INDICATE THAT THE AIRBAG SYSTEM, ANTILOCK BRAKING SYSTEM, AND THE STABILITRAK STABILITY CONTROL SYSTEM ALSO SUSTAINED DAMAGE AND REQUIRE ATTENTION.  MULTIPLE FIRST-RESPONDERS COMMENTED ON THE ODDITY THAT, GIVEN THE DAMAGE SUSTAINED BY THE TAHOE AND THE VELOCITY AT IMPACT, THE AIRBAGS DEPLOYED ON ALL VEHICLES BUT THE TAHOE.  *TR |

| | | | | | |
|---|---|---|---|---|---|
| 11194940 | CHEVROLET | TAHOE | 2012 | 2018-03-19 | I WAS DRIVING WEST BOUND ON 176TH ST AND AS I APPROACHED THE LIGHT I COULD NOT BRAKE OR TURN MY CAR TO THE RIGHT IN WHICH I HAD A HEAD ON COLLISION WITH ANOTHER VEHICLE. ON IN PACKED MY AIRBAGS DID NOT DEPLOY! THE DRIVER OF THE OTHER VEHICLE EVEN TOLD THE OFFICER HE WAS TRYING TO TURN , HIS EYES WERE AS BIG AS A COWS CLEARLY HE WAS IN DISTRESS.  LUCKILY NEITHER OF US WERE INJURED. |
| 11278797 | CHEVROLET | TAHOE | 2012 | 2018-08-24 | AS I WAS DRIVING ON 176TH GETTING READY TO TURN ON SPANAWAY LOOP MY WOULDN'T COMPLETE THE RIGHT TURN OR STOP SO I HAD A HEAD ON COLLISION WITH ANOTHER TRUCK AND MY AIR BAGS DIDN'T DEPLOY. |
| 10885565 | CHEVROLET | TRAVERSE | 2012 | 2016-06-30 | THE DRIVER STEERING WHEEL FRONT AIRBAG DID NOT DEPLOY WHEN I HIT ANOTHER VEHICLE FROM BEHIND. WHEN WE RECEIVED THE LETTER ABOUT RECALL WE BROUGHT THE VEHICLE INTO SERVICE CHEVROLET IN LAFAYETTE, LA. |
| 10882239 | GMC | ACADIA | 2012 | 2016-06-14 | MY WIFE AND THREE DAUGHTERS, AGES 11, 9, AND 6, WERE INVOLVED IN A MAJOR CRASH.  AN ELDERLY MALE TRAVELED ON A STEADY RED TRAFFIC SIGNAL AND STRUCK THE PASSENGER SIDE OF MY WIFE'S VEHICLE AS SHE WAS CROSSING THE INTERSECTION WITH A GREEN TRAFFIC SIGNAL. AFTER IMPACT, THEY WERE PUSHED HEAD ON INTO A TRAFFIC STANDARD (WHICH WAS TAKEN OUT COMPLETELY) AND THEN INTO A TELEPHONE POLE, ALSO HEAD ON.  NOT ONE AIRBAG DEPLOYED.  THE VEHICLE IS SUPPOSEDLY EQUIPPED WITH FRONT AND SIDE AIRBAGS.  IN MARCH OF 2014 THERE WAS A RECALL CONCERNING THE AIRBAGS NOT DEPLOYING IN THESE VEHICLES (# 14V118000).  I HAVE OWNED THIS VEHICLE SINCE NEW AND DID RETURN TO THE DEALERSHIP  IN MAY OF 2014 FOR THE RECALL SHORTLY AFTER RECEIVING NOTIFICATION.  I WAS ADVISED THAT IT WAS TAKEN CARE OF. |
| 10925628 | GMC | ACADIA | 2012 | 2016-09-27 | THE VEHICLE WAS IN MOTION  NEAR AN INTERSECTION AND  APPROACHING THE LIGHT TO TURN. ( NEAR AIRPORT IN RALEIGH NC)  THE FRONT AND SIDE AIRBAGS FAILED TO DEPLOY DURING  THE CRASH. THE OTHER VEHICLE HAS BEEN DECLARED TOTAL LOSS AND MINE HAS SIGNIFICANT DAMAGE AND COULD BE CLASSIFIED AS TOTAL LOSS. THERE ARE PERSONAL INJURIES. I AM ATTACHING PICTURES OF THE VEHICLE AND ACCIDENT REPORT. |
| 10466384 | GMC | TERRAIN | 2012 | 2012-04-16 | ?ON APRIL 16TH OUR SON WAS DRIVING ON FAIRVIEW RD. AND TRAVELING THROUGH A GREEN LIGHT WHEN A CAR THAT RAN A RED LIGHT HIT HIM.  ?HIS CAR ? A GMC 2012 TERRAIN WAS HIT MULTIPLE TIMES ? DRIVER'S FRONT END, FRONT END AND SPUN AROUND FROM THE FORCE AND HIT ON THE PASSENGER SIDE. NO AIRBAGS DEPLOYED  ?[XXX] WAS IMMEDIATELY CONTACTED BY ON STAR, THEY CALLED POLICE, HIS CAR WAS TOTALED   ?ON 4/21 I EMAILED GMC AND ASKED WHAT DEPARTMENT I WOULD CONTACT TO FILE A COMPLAINT ABOUT THE FRONT AND SIDE AIRBAGS NOT DEPLOYING  CALL FROM GMC 866-790-5700  EXT. 22745 SAID ON VOICE MAIL ? THE AIRBAG DID NOT DEPLOY AS IT SHOULD HAVE?  HE MADE A CASE NUMBER [XXX]  GMC HAS SINCE DECLARED THIS WAS A LOW THRESHOLD EVENT - NO NEED FOR AIRBAG DEPLOYMENT - YET THE CAR WAS TOTALED AND OUR SON HAS WHIPLASH AND CONTUSIONS    INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6).  *TR |
| 10477166 | GMC | TERRAIN | 2012 | 2012-09-04 | TL* THE CONTACT OWNS A 2012 GMC TERRAIN. THE CONTACT STATED THAT HE FELL ASLEEP WHILE DRIVING AN UNKNOWN SPEED. THE VEHICLE TRAVELED TO THE RIGHT SIDE OF THE ROAD AND WENT AIRBORNE APPROXIMATELY 20 FEET, LANDING ON ALL FOUR TIRES. THE VEHICLE THEN TRAVELED APPROXIMATELY 200 FEET AND CRASHED INTO AN EMBANKMENT. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED A FRACTURED BACK AS A RESULT. A POLICE OFFICER WITNESSED THE INCIDENT AND FILED A REPORT. THE VEHICLE WAS DESTROYED AND TOWED TO A COLLISION CENTER. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAULTY AIR BAGS. THE APPROXIMATE FAILURE MILEAGE WAS 7,000.  UPDATED 10/16/12*LJ |
| 10516265 | GMC | TERRAIN | 2012 | 2013-06-08 | VEHICLE WAS INVOLVED IN A CAR ACCIDENT AND CRASHED INTO A BRIDGE IRON BEAM HEAD-ON. VEHICLE'S AIR BAGS FAILED TO DEPLOY. HOOD AND FRONT OF CAR SMASHED AS VEHICLE WAS WRAPPED AROUND BEAM.  ONLY MINOR INJURIES TO DRIVER, AS DRIVER WAS WEARING A SEATBELT.  *TR |
| 10583703 | GMC | TERRAIN | 2012 | 2014-03-13 | I INADVERTENTLY VEERED OFF SIDE ROADWAY, (VA HIGHWAY 220) COLLIDING WITH A TREE/ROADSIDE SHRUBS, ETC (WAS KNOCKED UNCONSCIOUS AS FOREHEAD HIT STEERING WHEEL ON INITIAL IMPACT). AIRBAGS DID NOT DEPLOY ALLOWING ME TO SUSTAIN A HEAD INJURY THAT KNOCKED ME UNCONSCIOUS... FOREHEAD WAS GASHED WITH SIGNIFICANT BLEEDING.  I WAS TRANSPORTED BY AMBULANCE IN UNCONSCIOUS STATE.  DAMAGE TO VEHICLE IS IN EXCESS OF $8,000 SO FAR AS VEHICLE STILL IN REPAIR SHOP WITH MASSIVE FRONT END DAMAGE THAT AFFECTS STEERING LINKAGE, ETC.  THE IMPACT OF VEHICLE AGAINST FOLIAGE, TREES SHRUBS, SHOULD HAVE FORCED AIR BAGS TO DEPLOY AND I BELIEVE THAT I WOULD NOT HAVE SUSTAINED A HEAD INJURY THAT RENDERED ME UNCONSCIOUS WITH MILD CONCUSSION AND COULD NOT CONTROL VEHICLE LEAVING ROADWAY.  *TR |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | VEERED OFF SIDE OF HIGHWAY, STRUCK SOMETHING HEAD-ON AND WAS RENDERED UNCONSCIOUS AS HEAD HIT STEERING WHEEL.  I WAS TRANSPORTED UNCONSCIOUS IN AMBULANCE FROM CRASH SCENE TO LOCAL HOSPITAL, WHERE I WAS AN INPATIENT FOR TWO DAYS. EXTENSIVE DAMAGE TO FRONT OF VEHICLE INDICATED THE SEVERITY OF IMPACT... YET AIR BAGS DID NOT DEPLOY.  I BELIEVE AIR BAGS SHOULD HAVE DEPLOYED ON IMPACT AND I WOULD NOT HAVE BEEN RENDERED UNCONSCIOUS, AND COULD HAVE CONTROLLED VEHICLE  TO AVOID STRIKING TREE, BRUSH, ETC. I CONTACTED GMC CORPORATE.. TO ADVISE MY CONCERNS FOR SAFETY... RECEIVED A FOLLOW UP TELEPHONE CALL FROM GMC REPRESENTATIVE... (HE) EXPRESSED NO INTEREST IN MY COMPLAINT... REFUSED TO COMMENT ON MY STATEMENT THAT AIR BAG FAILED TO DEPLOY RESULTING IN EXTENSIVE DAMAGE TO FRONT OF VEHICLE AND SUSTAINING A HEAD INJURY AS NO BAG DEPLOYED.  NO MATTER THAT I AM LEASING THE VEHICLE AND FEAR FOR MY SAFETY... I WAS ADVISED THAT GMC HAD NO FURTHER INTEREST IN THIS MATTER AND WOULD NOT EVALUATE MY SAFETY CONCERNS.  *TR |
| 10588334 | GMC | TERRAIN | 2012 | 2014-03-13 | |
| 10722057 | GMC | TERRAIN | 2012 | 2015-05-19 | CAR CRASH AT 45 MPH. FRONT IN DAMAGE AND AIR BAG DID NOT DEPLOY. SEATBELTS DID NOT LOCK UP. |
| 10924918 | GMC | TERRAIN | 2012 | 2016-11-06 | I WAS TRAVELING ABOUT 75MPH WHEN A DEER RAN INFRONT OF ME, I WASN'T ABLE TO STOP COMPLETELY AND HIT THE DEER ON MY RIGHT FRONT SIDE OF MY VEHICLE.. THE SMELL OF SMOKE CAME FROM MY VEHICLE AND MY "SERVICE AIRBAGS" INDICATOR CAME ON.. NO AIRBAGS DEPLOYED.. I HAD MY 6 YEAR OLD SON IN THE CAR WITH ME!! MY CAR ISN'T DRIVABLE DUE TO THE SIGNAL BEING ON EVEN THOUGH THE AIRBAGS DIDN'T DEPLOY. |
| 11088412 | GMC | TERRAIN | 2012 | 2016-04-21 | TL* THE CONTACT OWNED A 2012 GMC TERRAIN. WHILE DRIVING AT AN UNKNOWN SPEED, THE DRIVER CRASHED INTO A LANDSCAPING TRUCK. THE AIR BAGS FAILED TO DEPLOY. THERE WERE NO INJURIES. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO A TOW LOT AND DEEMED DESTROYED. THE DEALER WAS NOT CONTACTED TO DETERMINE THE CAUSE OF THE AIR BAG FAILURE. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS UNKNOWN. |
| 11219747 | GMC | TERRAIN | 2012 | 2019-06-12 | TL* THE CONTACT OWNS A 2012 GMC TERRAIN. THE CONTACT STATED THAT WHILE HER GRANDSON WAS DRIVING APPROXIMATELY 40-45 MPH, A DEER JUMPED INTO THE FRONT OF THE VEHICLE CAUSING SEVERE DAMAGE TO THE FRONT END OF THE VEHICLE BUT THE AIR BAGS DID NOT DEPLOY. THE CONTACT MENTIONED THAT THE RADIATOR WAS PUSHED INTO THE ENGINE. THE CONTACT SUSTAINED WHIPLASH INJURIES THAT DID NOT REQUIRE MEDICAL ATTENTION. A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS TOWED. THE CAUSE OF THE FAILURE WAS NOT DETERMINED BY THE INDEPENDENT MECHANIC. THE LOCAL DEALER WAS NOT NOTIFIED OF THE FAILURE. THE MANUFACTURER WAS CONTACTED AND A CASE WAS OPENED BUT NO ASSISTANCE WAS OFFERED. THE FAILURE MILEAGE WAS 103,000.  *AS *AS |
| 10573780 | BUICK | ENCLAVE | 2011 | 2012-10-10 | TURNED CORNER ON IRONWOOD46615 AND REAR ENDED CAR THAT STOPPED SUDDENLY. CRUSHED MY FRONT  END BACK TO PUNCTURING THE RADIATOR. NO AIR BAG DEPLOYED AND NO SEAT BELT ON IMPACT. MY KNEES HIT THE DASH UNDER THE STEERING WHEEL. NO ONSTAR AS NO AIRBAG DEPLOYED. HOLDING STEERING WHEEL WAS MY ONLY DETERRENT TO HITTING FORWARD. REPAIRS COST $5000.+ AND GM DEALER INSISTED AIRBAG AND SEAT BELT WERE FUNCTIONING. KNEES STILL HURT. AND SEEN DOCTOR ABOUT KNEES AND GOING AGAIN SOON. I AM REPORTING THIS AFTER HEARING THAT THERE ARE RECALLED ON SEAT BELTS AND AIRBAGS ON DRIVER SIDE. *TR |
| 10608978 | BUICK | ENCLAVE | 2011 | 2014-06-30 | TL - THE CONTACT OWNS A 2011 BUICK ENCLAVE. THE CONTACT STATED WHILE DRIVING AT UNKNOWN SPEED, THE VEHICLE CRASHED INTO A DEER CAUSING THE VEHICLE TO CATCH ON FIRE AND THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE AND CURRENT MILEAGE WAS 56,000. PAM  UPDATED 11/24/14*LJ   UPDATED 8/17/2015*JS |
| 10732977 | BUICK | ENCLAVE | 2011 | 2015-07-04 | DRIVING DOWN THE ROAD ON A 50MPH ZONE AND A VEHICLE PULLED OUT IN FRONT OF US.  OUR CAR T-BONED THE CAR THAT PULLED IN FRONT OF US.  EVERYONE HAD THERE SEATBELTS ON BUT THE FRONT AIRBAGS NEVER DEPLOYED. I DONT UNDERSTAND WHY THEY WOULDNT HAVE DEPLOYED WHEN WE HIT THE OTHER CAR AT AT LEAST 40MPH AFTER SLAMMING ON THE BREAKS. |
| 10654934 | CADILLAC | SRX | 2011 | 2014-10-23 | I WAS TURNING SOUTH WITH A GREEN ARROW WHEN THE SECOND DRIVER RAN A RED LIGHT TRAVELING EAST AND WE COLLIDED.  HE WAS TRAVELING AT APPROXIMATELY 40-45 MILES PER HOUR AND I WAS TRAVELING AT APPROXIMATELY 30 MILES AN HOUR.  OUR IMPACT WAS SOMEWHAT OF A T-INCIDENT WITH THE FRONT END OF MY CAR DAMAGED AND HIS CAR ON THE DRIVER'S SIDE DAMAGED.  MY AIR BAGS DID NOT INFLATE, EVEN THOUGH WE BELIEVE THE IMPACT WAS AT THE ANGLE AND THE REQUIRED SPEED OF VEHICLES TO INFLATE THEM.  THE AIR BAGS IN THE SECOND DRIVER'S CAR (FORD FOCUS) DID INFLATE.  *TR |
| 10679589 | CADILLAC | SRX | 2011 | 2015-01-08 | TL* THE CONTACT OWNED A 2011 CADILLAC SRX. WHILE DRIVING 35 MPH, THE CONTACT CRASHED INTO ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY AND THE FRONT PASSENGERS SIDE SEAT BELT WAS LOOSE. A POLICE REPORT WAS FILED AND THREE UNKNOWN INJURIES WERE REPORTED. THE CONTACT DID NOT DISCLOSE IF MEDICAL ATTENTION WAS REQUIRED OR NOT. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 60,000. |

| 11192908 | CADILLAC | SRX | 2011 | 2018-12-19 | I WAS INVOLVED IN AN ACCIDENT, I RAN INTO A VEHICLE THE DAMAGE WAS TO THE FRONT OF THE CAR . THE AIRBAGS DIDNT DEPLOY OR THE SENSORS OF THE FRONT OF MY CAR DID NOT GO OFF EITHER. |
| --- | --- | --- | --- | --- | --- |
| 10391449 | CHEVROLET | EQUINOX | 2011 | 2011-03-10 | I WAS RECENTLY IN A PRETTY BAD FRONT END VEHICLE ACCIDENT GOING ABOUT 45 MPH WHEN I REAR ENDED SOMEONE. MY CAR HAS BEEN TOTALED DO TO THE DAMAGE TO THE FRONT END OF THE VEHICLE. MY AIR BAGS DID NOT DEPLOY IN THIS ACCIDENT, EVERYONE ONE I HAVE TALKED TO FROM THE TOWING COMPANY TO THE PARAMEDIC ON SEEN SAID THAT IT SHOULD HAVE DEPLOYED. |
| 10449809 | CHEVROLET | EQUINOX | 2011 | 2012-01-23 | 2011 CHEVROLET EQUINOX. CONSUMER STATES AIRBAGS DID NOT DEPLOY DURING CRASH  *TGW THE CONSUMER STATED ANOTHER VEHICLE PULLED OUT IN FRONT OF HIM FROM A SIDE STREET, ON HIS RIGHT SIDE, WHICH RESULTED IN THE CONSUMER HITTING THE OTHER VEHICLE, WHEN THAT VEHICLE FAILED TO STOP AT A STOP SIGN. THE CONSUMER STATED THE ENTIRE FRONT END OF THE VEHICLE WAS DESTROYED. *JB |
| 10552442 | CHEVROLET | EQUINOX | 2011 | 2013-07-31 | AIR BAGS DID NOT DEPLOY AT OR ABOVE THE MFG. THRESHOLDS.WHICH CAUSED FOR NO AIR BAG DEPLOYMENT AND SIGNIFICANT FACIAL TRAUMA ON THE STEERING WHEEL. SEAT BELT PRETENSTIONERS ALSO DID PRETENSION CAUSING THE UPPER TORSO TO GO FORWARD AND CAUSE THE FACIAL TRAUMA ON THE STEERING WHEEL.  *TR |
| 10682338 | CHEVROLET | EQUINOX | 2011 | 2015-01-29 | WHILE CHANGING LANES DURING AN ICE STORM, THE VEHICLE'S BACK END LET LOSE AND THE DRIVER LOST CONTROL AND SLIDE INTO THE MEDIA AT WHICH TIME THE VEHICLE WAS PROJECTED INTO THE GUARDRAIL HEAD ON. NEITHER FRONT AIRBAGS DEPLOYED NOR DID ANY OF THE AIRBAGS DEPLOY.  *TR |
| 10721958 | CHEVROLET | EQUINOX | 2011 | 2015-05-09 | TL* THE CONTACT OWNS A 2011 CHEVROLET EQUINOX. THE CONTACT WAS INVOLVED IN A FRONTAL CRASH. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS NOT FILED AND NO INJURIES WERE SUSTAINED. THE VEHICLE WAS DECLARED DESTROYED BY THE INSURANCE COMPANY. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 58,000. |
| 10949808 | CHEVROLET | EQUINOX | 2011 | 2017-01-31 | INVOLVED IN AN ACCIDENT WHERE I COLLIDED WITH ANOTHER CAR.  THE FRONT END OF MY CAR WAS COMPLETED DAMAGED TO THE POINT WHERE THE CAR WAS TOTALED.  THE PROBLEM WITH THIS ACCIDENT WAS THE AIR BAGS DID NOT GO OFF CAUSING INJURY TO MYSELF AND MY WIFE. I ESTIMATE THE SPEED AT COLLISION TO BE AROUND 30MPH.  I WAS TRAVELING WEST BOUND AT ABOUT 630PM IN THE EVENING, ON A FOUR LANE CITY ROAD WITH A CENTER TURN LANE.  I WAS IN MY LANE AND FAILED TO STOP BEFORE HITTING THE CAR IN FRONT OF ME.  MY WIFE SPOKE WITH THE REPAIR SHOP CLERK WHO INFORMED THAT THIS WAS A COMMON ISSUE WITH MANY EQUINOX'S UNDER THE SAME CONDITIONS.  I BELIEVE THE AIR BAGS SHOULD HAVE GONE OFF AND THEREFORE I |
| 11010876 | CHEVROLET | EQUINOX | 2011 | 2017-06-09 | JUNE 9, 2017 AT 10:00 PM I HIT A DEER ON SOUTH DAKOTA HWY 11 IN LINCOLN COUNTY.  THE SPEED LIMIT WAS 65 MPH AND I WAS GOING 68 MPH WHEN I HIT THE DEER HEAD ON.  I DROVE OVER TO THE SIDE OF THE ROAD AND THE VEHICLE STOPPED.  AFTER A FEW MINUTES MY WIFE AND I SMELLED BURNING ELECTRICAL WIRE.  WE GOT OUT OF THE CAR AND STARTED TO WALK AWAY AND WITHIN 10 MINUTES THE WHOLE THING WENT UP IN FLAMES.  THE CAR WAS TOTALED AND THE AIRBAGS DID NOT GO OFF.  IF WE WOULD HAVE WENT IN THE DITCH AND BEEN UNCONSCIOUS WE WOULD HAVE BURNT UP WITH THE VEHICLE.  THERE IS NO REASON THAT VEHICLE SHOULD HAVE STARTED ON FIRE.  GMC WILL NOT ACKNOWLEDGE THAT THERE WAS ANYTHING WRONG WITH THE VEHICLE. |
| 11189908 | CHEVROLET | EQUINOX | 2011 | 2019-03-08 | VECHICAL WAS INVOLVED IN A CRASH, REAR ENDED ANOTHER VEHICLE,  VECHICAL WAS TOTALED. AIRBAGS NEVER WENT OFF. ON A HIGHWAY ABOUT 50-60 MPH. |
| 10607261 | CHEVROLET | SILVERADO | 2011 | 2014-02-14 | MY VEHICLE WAS FORCED OFF THE ROAD BY ANOTHER VEHICLE CAUSING MY VEHICLE TO HIT A LIGHT POLE HEAD ON. NO AIR BAGS DEPLOYED. DRIVER AND PASSENGER SUFFERED INJURY.  *TR |

| 10487443 | CHEVROLET | TAHOE | 2011 | 2012-12-02 | I WAS DRIVING WEST ON RIO RD. IN CHARLOTTESVILLE, VA, AT ROUGHLY 35 MPH. AT APPROXIMATELY 6:00 PM, A DEER EMERGED FROM THE PASSENGER SIDE OF THE VEHICLE. IT HAPPENED INSTANTANEOUSLY AND AVOIDING THE DEER WAS NOT AN OPTION. IMMEDIATELY AFTER STRIKING THE DEER AT THE FRONT RIGHT BUMPER (UNDERNEATH HEADLIGHT), THE SIDE AIRBAGS DEPLOYED IN MY 2011 CHEVY TAHOE. HOWEVER, THE AIRBAG THAT WAS SUPPOSE TO DEPLOY FROM THE DRIVERS SEAT (ON THE SIDE NEAR SEATBELT) DID NOT DEPLOY. ADDITIONALLY, THE FRONT TWO AIRBAGS (FROM STEERING WHEEL AND DASHBOARD) DID NOT DEPLOY AS WELL. MOREOVER, APPROXIMATELY THREE MONTHS BACK, ANOTHER FAMILY MEMBER ALSO HIT A DEER WITH THE SAME VEHICLE (2011 CHEVY TAHOE) AND AT THAT TIME NO AIRBAGS DEPLOYED. IN THIS INCIDENT THE VEHICLE WAS TRAVELING 70 MPH AND THE DEER STRUCK THE LEFT SIDE OF THE FRONT BUMPER AND NO AIRBAGS DEPLOYED. AT THE TIME, WE DIDN'T EVEN THINK ABOUT DEFECTIVE AIRBAGS, BUT NOW, WE ARE VERY, VERY CONCERNED THAT THERE'S A DEFECT.    WE SIMPLY DO NOT KNOW WHAT TO DO. I HAVE CONTACTED CHEVROLET DIRECTLY AND THEY ASSURE ME SOMEONE WILL COME OUT AND LOOK AT THE VEHICLE THIS WEEK SOMETIME. I WOULD BE RELIEVED IF SOMEONE FROM THE NHTSA ALSO INVESTIGATES THESE TWO SCENARIOS. WHAT IS CHEVROLET'S RESPONSIBILITY TO ME AND MY FAMILY IN THESE TWO CASES? AND WHAT IS THE BEST COURSE OF ACTION?   FURTHERMORE, I CAN ARRANGE FOR MY INSURANCE ADJUSTOR TO GATHER ANY DOCUMENTATION FROM THE FIRST INCIDENT (WHERE AIRBAGS DID NOT DEPLOY) SUCH AS PHOTOS, REPORTS AND PROVIDE THEM TO YOU. THE VEHICLE IS SITTING IN MY DRIVEWAY BECAUSE I AM WAITING FOR A CHEVROLET REPRESENTATIVE TO COME AND INSPECT IT. I WOULD APPRECIATE YOUR PROMPT ACTION IN THIS MATTER. THANK YOU!  *TR |
| 10586298 | CHEVROLET | TRAVERSE | 2011 | 2011-05-31 | I WAS GOING STRAIGHT AT 40 MPH (CONFIRMED BY GM ENGINEER).  ANOTHER VEHICLE TURNED IN FRONT OF ME AND THERE WAS A T-BONE STYLE OF ACCIDENT.  THE OTHER CAR WAS TOTALED AND MINE TOOK ABOUT $18000 OF DAMAGE.  NONE OF MY AIRBAGS DEPLOYED.  I COMPLAINED TO GM, THEY SENT AN ENGINEER OUT TO LOOK AT THE VEHICLE BEFORE IT WAS REPAIRED TO ASSESS AND THEY SAID THAT THE AIRBAGS NOT DEPLOYING MEANT THAT THEY FUNCTIONED CORRECTLY.  THE ENGINEERS REPORT SAID AT THE MOMENT OF IMPACT, MY CAR WAS TRAVELING 40MPH, AND I HAVE A HARD TIME BELIEVING THAT THE AIRBAGS WOULDN'T DEPLOY UNDER ANY CIRCUMSTANCES WHILE THE VEHICLE IS TRAVELING 40MPH.  *TR |
| 11113909 | CHEVROLET | TRAVERSE | 2011 | 2018-07-16 | AIR BAGS DO NOT COME OUT IN HIGHWAY IMPACT OF 70 MILES PER HOUR. |
| 10794590 | GMC | TERRAIN | 2011 | 2015-11-12 | TL* THE CONTACT OWNS A 2011 GMC TERRAIN. WHILE DRIVING APPROXIMATELY 55 MPH, THE CONTACT CRASHED INTO THE SIDE OF ANOTHER VEHICLE THAT VEERED INTO THE CONTACT'S LANE. THE AIR BAGS FAILED TO DEPLOY. THERE WERE MINOR INJURIES THAT DID NOT REQUIRE MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO A TOW YARD. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 70,000. ......UPDATED 04/01/16 *BF   *CN |
| 10851422 | GMC | TERRAIN | 2011 | 2016-01-15 | TL* THE CONTACT OWNS A 2011 GMC TERRAIN. WHILE DRIVING 55 MPH, THE CONTACT FELL ASLEEP CRASHED INTO THE REAR OF ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED INJURIES TO THE SPINE, WHICH REQUIRED MEDICAL ATTENTION. THERE WERE NO INJURIES SUSTAINED TO THE DRIVER OF THE OTHER VEHICLE. THE VEHICLE WAS TOWED TO AN INDEPENDENT MECHANIC. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 62,000. |
| 11166326 | GMC | TERRAIN | 2011 | 2019-01-04 | MY 2011 GMC TERRAIN HIT A VEHICLE IN FRONT, CAUSING MAJOR DAMAGE (THE VEHICLE IS TOTALED OUT) AND NO AIR BAGS DEPLOYED.  MY VEHICLE WAS TRAVELING AT APPROXIMATELY 55 MPH NORTHBOUND IN THE #3 LANE OF THE 41 FREEWAY, SOUTH OF THE SHAW EXIT.  IMPACT WAS ESTIMATED TO BE BETWEEN 20 TO 30 MPH.  THE DRIVER, MY 18 YEAR GRAND-DAUGHTER HIT HER HEAD ON THE STEERING WHEEL AND HER LEFT WRIST WAS INJURED HOLDING ON TO THE STEERING WHEEL.  THE 18 YEAR OLD FEMALE RIGHT FRONT SEAT PASSENGER SUFFERED AN ANKLE INJURY.  WHY DID THE AIR BAGS FAIL TO DEPLOY, WITH A STRAIGHT ON FRONT END COLLISION WITH THE VEHICLE IN FRONT?! UNACCEPTABLE!!! |
| 10732291 | CADILLAC | SRX | 2010 | 2015-06-22 | HIT HEAD ON BY TRUCK GOING APPROX. 45 MPH THAT SWERVED INTO MY CENTER TURN LANE. FRONT END DEMOLISHED - CAR WAS TOTALED - BUT AIR BAGS DID NOT DEPLOY.  SEAT BELT DID NOT LOCK ON IMPACT. SIDE OF MY HEAD HIT DRIVER'S WINDOW OR FRAME - WAS CATAPULTED FORWARD AND CAUGHT IN SEAT BELT WHEN IT PULLED OUT ALL THE WAY, RESULTING IN HORRIFIC AND PAINFUL CHEST, ABDOMEN AND LEFT LEG INJURIES (SOFT TISSUE). |
| 10927215 | CADILLAC | SRX | 2010 | 2016-11-16 | I WAS IN A MINOR COLLISION. RAN INTO THE BACK OF SOMEONE. MY AIRBAGS DIDN'T DEPLOY AND MY ENGINE IMMEDIATELY CAUGHT ON FIRE AND IN A FEW MINUTES MY WHOLE CARE WAS ON FIRE AND DESTROYED. THERE WAS NO KNOWN REASON HOW OR WHY THE FIRE STARTED. |
| 11053454 | CADILLAC | SRX | 2010 | 2017-12-02 | I WAS IN A CAR ACCIDENT ALONG WITH TWO OTHER PASSENGERS AND NONE OF THE AIR BAGS DEPLOYED |

| 10383428 | CHEVROLET | EQUINOX | 2010 | 2011-01-17 | ON JAN 17TH,2011 MY VEHICLE WAS WRECKED BY THE DEALER ON SITE OF DEALERSHIP. THE WHOLE FRONT END WAS CAVED IN ON CENTER. THE DRIVER A MECHANIC AT DON WOODS CHEVROLET WAS DRIVING AT A HIGHER THEN NORMAL SPEED. HE HIT A POLE DEAD CENTER AND THE AIR BAG DID NOT DEPLOY. THE DRIVER WAS INJURED TO WHAT EXTENT I AM NOT SURE, BUT I AM NOT WANTING THIS CAR BACK FEELING THE AIRBAG MAY DEPLOY AT ANYTIME DUE TO THE HIT IT TOOK OR IT ISN'T SAFE AND WILL NOT DEPLOY UPON AN ACCIDENT.  *TR |
| 10460416 | CHEVROLET | EQUINOX | 2010 | 2012-05-18 | AS I APPROACHED AN INTERSECTION, I HIT THE REAR END OF A FORD 150 PICK UP TRUCK THAT WAS IN THE INTERSECTION WAITING TO MAKE A LEFT TURN. MY APPROX SPEED WAS 15 MILES PER HOUR. I HAD MY SEATBELT ON, I WAS TAKEN BY AMBULANCE TO THE HOSPITAL - MY EVALUATION REVEALED  SPRAIN/STRAIN TO MY NECK, FRACTURED RIGHT ANKLE, AND CHEST WALL DISCOMFORT RELATED TO THE SEAT BELT.  THE CAR WAS TOTALED --- THE AIRBAG DID NOT DEPLOY. *TR |
| 10508670 | CHEVROLET | EQUINOX | 2010 | 2013-03-25 | TL* THE CONTACT OWNS A 2010 CHEVROLET EQUINOX.  THE CONTACT STATED THAT WHILE TRAVELING 15 MPH, ANOTHER DRIVER CRASHED INTO THE FRONT DRIVER'S SIDE CORNER OF THE VEHICLE. THE COLLISION CAUSED THE CONTACT TO THEN CRASH INTO A UTILITY POLE. THE AIR BAGS FAILED TO DEPLOY. THE POLICE ARRIVED AND A REPORT WAS FILED. THE CONTACTS INSURANCE COMPANY INSPECTED THE VEHICLE AND ADVISED THE CONTACT THAT THE AIR BAGS SHOULD HAVE DEPLOYED UPON IMPACT. THE CONTACT SUSTAINED A FRACTURED RIB AND INJURY TO THE HEAD. THE VEHICLE WAS DESTROYED.  THE FAILURE AND THE CURRENT MILEAGE WAS 42,000.  *TR |
| 10746722 | CHEVROLET | EQUINOX | 2010 | 2015-07-08 | I WAS DRIVING IN TRAFFIC WHEN THE CAR IN FRONT OF ME STOPPED ABRUPTLY IN FRONT OF ME. I READ ENDED HIM GOING ABOUT 40 MILES PER HOUR.  MY AIR BAGS DID NOT INFLATE.  I EXITED THE CAR AND BEGAN SPEAKING WITH THE OTHER DRIVER WHEN WE HEARD A POP IN MY CAR. SMOKE STARTING COMING OUT OF THE ENGINE COMPARTMENT AND THEN ALMOST IMMEDIATELY MY CAR ENGINE CAUGHT ON FIRE.  THE CAR WAS NOT RUNNING.  I INJURED MY KNEE AND SHOULDER IN THE INCIDENT. |
| 10809547 | CHEVROLET | EQUINOX | 2010 | 2015-12-08 | TL* THE CONTACT OWNED A 2010 CHEVROLET EQUINOX. WHILE DRIVING 35 MPH, THE CONTACT ATTEMPTED TO AVOID HITTING A DEER AND STRUCK THE GUARDRAIL. THE AIR BAGS FAILED TO DEPLOY. THE EMERGENCY ONSTAR SYSTEM RESPONDED AND CALLED THE POLICE AND AMBULANCE. THE VEHICLE WAS TOWED TO A COLLISON CENTER WHERE THE VEHICLE WAS DIAGNOSED AS DESTROYED. THE CONTACT SUSTAINED INJURIES TO THE HEAD, NECK, BACK, AND HANDS. A POLICE REPORT WAS FILED. THE MANUFACTURER WAS NOTIFIED. THE APPROXIMATE FAILURE MILEAGE WAS 57,000. |
| 10928817 | CHEVROLET | EQUINOX | 2010 | 2016-11-25 | AIRBAGS DID NOT DEPLOY WHEN INVOLVED IN CAR ACCIDENT ON 11/25/2016 |
| 10649152 | CHEVROLET | SILVERADO | 2010 | 2013-11-14 | LETTER FROM CONGRESSMAN WITTMAN ON BEHALF OF CONSTITUENT RE AIRBAGS THAT DID NOT DEPLOY.  *SMD  2010 CHEVROLET SILVERADO. THE CONSUMER WAS INVOLVED IN AN ACCIDENT. AS A RESULT,  SHE SUSTAINED A BRAIN INJURY.*JB |
| 10315713 | CHEVROLET | TRAVERSE | 2010 | 2010-02-25 | 1. STOPPED AT RED LIGHT IN 2010 CHEVROLET TRAVERSE SUV AND REAR ENDED BY A NISSAN FRONTIER PICK UP TRUCK TRAVELING AT A HIGH RATE OF SPEED. DRIVER'S SEAT BELT ON BUT DRIVER'S  HEAD THROWN AGAINST WINDSHIELD AND THEN  DRIVER'S BODY SLAMMED AGAINST THE BACK OF THE DRIVER'S SEAT WHICH WAS FORCED BACK TO A RECLINING POSITION. AIRBAG DID NOT DEPLOY.  2. SEAT BELT FAILED TO PREVENT DRIVER'S HEAD FROM  HITTING WINDSHIELD IF IT IS SUPPOSED TO IN THIS TYPE OF COLLISION. DID THE SEAT BACK ACT PROPERLY IN SUCH A COLLISION? WAS THE AIRBAG SUPPOSED TO DEPLOY IN THIS TYPE OF COLLISION.  3. IN BODY SHOP TO REPAIR TO PRE-ACCIDENT CONDITION.. *TR |
| 10637484 | CHEVROLET | TRAVERSE | 2010 | 2010-07-19 | WAS GETTING READY TO PARK ON THE STREET WHEN A CAR HIT ME,I HIT A CAR IN FRONT OF ME,MY CAR WAS THROWN ON THE SIDE WALK,I WAS PASS OUT FOR A FEW SECONDS,BUMP MY HEAD,MY CAR WAS TOTAL, FRONT AND REAR,SURPRISINGLY MY AIR BAG DID NOT DEPLOY TO HELP PROTECT ME FROM MY INJURIES I GOT.   *TR |
| 10749869 | CHEVROLET | TRAVERSE | 2010 | 2015-08-06 | TL* THE CONTACT OWNS A 2010 CHEVROLET TRAVERSE. WHILE DRIVING AT AN UNKNOWN SPEED ATTEMPTING TO MAKE A LEFT TURN, ANOTHER VEHICLE CRASHED INTO THE CONTACTS VEHICLE. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED UNKNOWN INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO A SALVAGE YARD. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE APPROXIMATE FAILURE MILEAGE WAS 75,000. |
| 11210243 | CHEVROLET | TRAVERSE | 2010 | 2018-12-01 | TL* THE CONTACT OWNS A 2010 CHEVROLET TRAVERSE. WHILE DRIVING 30 MPH, THE VEHICLE WAS HIT BY ANOTHER VEHICLE COMING FROM THE OPPOSITE DIRECTION AS IT WAS MAKING A TURN INTO A PARKING LOT. THE CONTACT WAS INJURED BUT NOT TRANSPORTED BY AMBULANCE TO A HOSPITAL SHE WENT TO THE DOCTOR THE SAME DAY DAY. A POLICE REPORT WAS FILED  THE VEHICLE WAS TOTALED AND TOWED AWAY TO A SALVAGE LOT. THE FRONTAL AIR BAGS DID NOT DEPLOY DURING THE CRASH.THE FAILURE MILEAGE WAS 103,000. TF |
| 10574295 | GMC | TERRAIN | 2010 | 2014-02-21 | INVOLVED IN A 21 CAR PILE UP IN THE UPPER PENINSULA DURING A COMPLETE WHITE OUT. WE WERE ONLY TRAVELING APPROXIMATELY 25 MILES PER HOUR BUT, WE DID HAVE SERIOUS IMPACT IN THE FRONT, AFTER HITTING A TRAILER AND ALSO SERIOUS IMPACT FROM BEHIND WHEN HIT BY A TRUCK AND TRAILER. NO AIRBAGS DEPLOYED. THE TRUCK TRAVELING AHEAD OF US, THAT WE HIT, THE AIRBAGS DID DEPLOY. MY FATHER AND BROTHER, WHO WERE ALSO BOTH DRIVING CHEVY TRUCKS, AND ALSO HAD SERIOUS FRONT END DAMAGE DURING THE SAME ACCIDENT, THEIR AIRBAGS DID NOT DEPLOY EITHER.  *TR |

| 10810541 | GMC | TERRAIN | 2010 | 2015-12-05 | TL* THE CONTACT OWNED A 2010 GMC TERRAIN. WHILE DRIVING 45 MPH, THE CONTACT CRASHED INTO THE REAR OF ANOTHER VEHICLE AND THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED FACIAL INJURIES THAT REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE VIN WAS INVALID. THE APPROXIMATE FAILURE MILEAGE WAS 51,000. |
|---|---|---|---|---|---|
| 10547172 | BUICK | ENCLAVE | 2009 | 2009-08-16 | GOT INTO A MAJOR ACCIDENT TWO CARS RAN INTO MY VEHICLE AND EVERYONE WAS INJURED AND THE AIR BAGS DID NOT COME ON TO PREVENT THAT. I HAVE INSURANCE AND POLICE REPORT THAT STATES THIS.  *TR |
| 10572633 | CHEVROLET | EQUINOX | 2009 | 2014-03-11 | I HAD PASSED OUT WHILE DRIVING TO WORK DUE TO LOW BLOOD SUGAR. THE FRONT OF MY VEHICLE CRASHED INTO A STRUCTURE AT APPROXIMATELY 55/60 MPH. NONE OF MY AIRBAGS EVER DEPLOYED. I WAS TRANSPORTED TO THE HOSPITAL.  *TR |
| 10331539 | CHEVROLET | SILVERADO | 2009 | 2010-04-19 | TL* THE CONTACT OWNS A 2009 CHEVROLET SILVERADO. THE CONTACT  STATED THAT WHILE TRAVELING APPROXIMATELY 35 MPH AND APPROACHING AN INTERSECTION, THE VEHICLE ABNORMALLY VEERED OFF THE ROAD. THE VEHICLE PROCEED TO TRAVEL OFF THE ROADWAY AND WENT AIRBORNE OVER AND EMBANKMENT BEFORE CRASHING INTO A DITCH. THE AIR BAGS DID NOT DEPLOY UPON IMPACT AND THE CONTACT SUSTAINED MODERATE TO SEVER INJURIES. THE CONTACT WAS TRANSPORTED TO THE HOSPITAL VIA AMBULANCE AND A POLICE REPORT WAS FILED ACCORDINGLY.  THE VEHICLE WAS TOWED TO A CHEVROLET DEALER FOR REPAIRS. THE FAILURE WAS 13,800   UPDATED 7/16/10 *CN  UPDATED 08/18/10 |
| 10447821 | CHEVROLET | SILVERADO | 2009 | 2011-10-13 | TL* THE CONTACT OWNS A 2009 CHEVROLET SILVERADO. THE CONTACT STATED THAT WHILE DRIVING 55 MPH, HE FELL ASLEEP AND LOST CONTROL OF THE VEHICLE. THE VEHICLE CRASHED INTO A CEMENT WALL AND THE FRONT DRIVERS AIR BAG DID NOT DEPLOY. THE CONTACT SUFFERED HEAD INJURIES DURING THE CRASH. THE VEHICLE WAS REPAIRED. THE MANUFACTURER INVESTIGATED THE FAILURE AND CONCLUDED THAT THE AIR BAG PERFORMED AS DESIGNED. THE FAILURE MILEAGE WAS 46,000 AND THE CURRENT MILEAGE WAS 55,000. |
| 10496236 | CHEVROLET | SILVERADO | 2009 | 2013-02-01 | 2009 CHEVY SILVERADO LOST TRACTION ON HIGHWAY DURING SLIPPERY ROAD CONDITIONS, VEHICLE SPUN OUT AND HIT A METAL ROPED FENCE HEAD ON AND ALSO WENT ACROSS THE MEDIAN AND SLAMMED THE FRONT END OF VEHICLE INTO A GUARD RAIL STOPPING IT INSTANTLY FROM GOING INTO ON COMING TRAFFIC.  THE VEHICLES DAMAGE WAS ON THE FRONT END DIRECTLY IN THE CENTER CAUSING A WEDGE INTO THE RADIATOR, ENGINE AND BENT THE FRONT OF THE FRAME.  THE IMPACT WAS VERY LOUD AND SOLID.  THE IMPACT CAUSED THE TRUCK TO STAND ON THE FRONT OF VEHICLE, SLAMMING THE  BACK END OF THE VEHICLE ON THE GROUND WITH GREAT FORCE.  THE AIRBAG DIDN'T DEPLOY WHICH AT THE SPEED OF AROUND 60 MPH AND THE PLACE THE VEHICLE WAS HIT IN, MAKES ME VERY CONCERNED ON THE SAFETY OF THIS VEHICLE.  MY 5 YEAR OLD SON SAID HIS RIGHT ARM WAS HURTING AFTER THE ACCIDENT AND WITH IN THE HOUR OF HAVING THE ACCIDENT MYSELF ENDED UP IN THE HOSPITAL WITH A STIFF NECK AND A VERY SOAR AND BRUISED BACK, I WAS RELEASED WITH MINOR INJURIES AND I CONSIDER MYSELF LUCKY.  PLEASE LET ME KNOW IF ANYTHING CAN BE DONE ABOUT THIS SITUATION AND THE SAFETY OF MYSELF AND MY SON.  *TR |
| 11340458 | CHEVROLET | SUBURBAN | 2009 | 2020-02-17 | TL* THE CONTACT OWNS A 2009 CHEVROLET SUBURBAN. THE CONTACT STATED THAT WHILE HIS WIFE WAS DRIVING AT A LOW RATE OF SPEED, SHE ATTEMPTED TO MAKE A LEFT TURN AND WAS HIT BY A CAR COMING FROM THE OPPOSITE SIDE. THE AIR BAGS DID NOT DEPLOY UPON IMPACT. THE DRIVER WAS TREATED FOR WHIPLASH AND MULTIPLE BULGED DISKS IN HER BACK WHICH WOULD REQUIRE SURGERY. A POLICE REPORT WAS NOT FILED. THE DRIVER WAS ABLE TO DRIVE THE VEHICLE HOME AFTER THE ACCIDENT. THE CONTACT STATED THAT THE VEHICLE HAD BEEN INCLUDED IN NHTSA CAMPAIGN NUMBER: 16V381000 (AIR BAGS); HOWEVER, THE PARTS TO DO THE REPAIR WERE UNAVAILABLE. THE DEALER NOR THE MANUFACTURER HAD BEEN NOTIFIED OF THE FAILURE. THE VEHICLE HAD YET TO BE REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 167,000. |
| 10944639 | CHEVROLET | TRAILBLAZER | 2009 | 2017-01-06 | TL* THE CONTACT OWNED A 2009 CHEVROLET TRAILBLAZER. WHILE DRIVING 70 MPH, THE CONTACT'S VEHICLE REAR ENDED ANOTHER VEHICLE. IN TURN, THE CONTACT'S VEHICLE WAS STRUCK BY A SEMI-TRUCK. THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED INJURIES TO THE HEAD, KNEES, AND ARMS, WHICH REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS DESTROYED AND TOWED. THE MANUFACTURER WAS NOT MADE AWARE OF THE CRASH. THE FAILURE MILEAGE WAS 135,000. |
| 11184731 | CHEVROLET | TRAILBLAZER | 2009 | 2019-02-22 | TRAVELING ON HIGHWAY APPLIED BRAKES AND HIT CAR IN REAR. AIR BAGS NOT DEPLOYED. |
| 10375125 | CHEVROLET | TRAVERSE | 2009 | 2010-12-17 | TL*THE CONTACT OWNS A 2009 CHEVROLET TRAVERSE. THE CONTACT APPLIED THE BRAKES WHILE DRIVING 35 MPH AND THE VEHICLE CRASH INTO THE REAR END OF THE VEHICLE IN FRONT. THE AIR BAG DID NOT DEPLOY. THE CONTACT SUFFERED A FRACTURED STERNUM BY HITTING THE STEERING WHEEL. THE CONTACT STATED THAT THE SEAT BELT DID NOT LOCK DURING THE CRASH. THE CONTACT WAS TAKEN TO THE HOSPITAL. THE MANUFACTURER STATED THAT THEY WILL PERFORM AN INVESTIGATION REGARDING THE SEAT BELT.  THE FAILURE MILEAGE WAS 30,000. |

| 10501339 | CHEVROLET | TRAVERSE | 2009 | 2013-02-22 | TL* THE CONTACT OWNS A 2009 CHEVROLET TRAVERSE. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 55 MPH, CRASHED INTO A HIGHWAY BARRIER WHILE ATTEMPTING TO AVOID CRASHING INTO ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. THE VEHICLE WAS TOWED TO A SALVAGE YARD. THE POLICE REPORTED TO THE SCENE AND A REPORT WAS FILED. THE CONTACT WAS TRANSPORTED TO THE HOSPITAL VIA AMBULANCE FOR TREATMENT OF INJURIES TO THE BACK. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE VIN WAS NOT AVAILABLE. THE APPROXIMATE FAILURE MILEAGE WAS 48,000. |
| 10620828 | GMC | ACADIA | 2009 | 2014-07-12 | TL*  THE CONTACT OWNS A 2009 GMC ACADIA. THE CONTACT STATED WHILE DRIVING 20 MPH THE FRONT PASSENGER SIDE TIRE BLEW AND THE CONTACT LOST CONTROL OF THE VEHICLE, CRASHING INTO A TWO FOOT DITCH. THE VEHICLE THEN WENT THROUGH A ROW OF HEDGES AND CRASHED INTO A TREE ON THE DRIVER'S SIDE. THE SEAT BELT DID NOT RESTRAIN THE CONTACT AND THE AIR BAGS DID NOT DEPLOY. THE REAR SEATS COLLAPSED AS WELL. THE CONTACT SUSTAINED A SEVERE CONCUSSION FROM HITTING HER HEAD ON THE WINDSHIELD, BRUISED LEGS, ARM, FRACTURED NOSE, AND BRUISING TO THE FACE. THE CONTACT WAS FOUND LYING OVER THE CONSOLE AND WAS TAKEN TO THE EMERGENCY ROOM. A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS TOWED TO A COLLISION SHOP. THE CONTACT LATER RECEIVED NOTIFICATION OF NHTSA RECALL CAMPAIGN NUMBER 14V266000 (SEAT BELT) HOWEVER, THE PART NEEDED FOR THE REPAIR WAS NOT AVAILABLE. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 120,000. |
| 11308898 | GMC | ACADIA | 2009 | 2020-02-07 | I WAS DRIVING ON THE MAIN HIGHWAY GOING 35MPH AND ANOTHER VEHICLE PULLED OUT I FRONT OF ME CAUSING ME TO HIT HER WITH MY FRONT END. MY AIRBAGS NEVER DEPLOYED BUT MY SERVICE AIRBAGS LIGHT IS ON AS WELL AS THE MESSAGE ON MY BOARD. |
| 10966352 | GMC | YUKON | 2009 | 2017-03-13 | TL* THE CONTACT OWNS A 2009 GMC YUKON. WHILE DRIVING 35 MPH, THE CONTACT CRASHED INTO THE DRIVER'S SIDE DOOR OF ANOTHER VEHICLE, WHICH THEN ROLLED OVER. THE AIR BAGS FAILED TO DEPLOY. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE CONTACT SUSTAINED INJURIES TO THE LEFT FOOT, LEFT KNEE, A CONCUSION, CHEST PAINS, AND A BLACK EYE. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO A DEALER WHERE THE FAILURE WAS DIAGNOSED. THE DRIVER OF THE OTHER VEHICLE ALSO SUSTAINED MINOR INJURIES. THE CONTACT HAD NOT RECEIVED NOTIFICATION OF NHTSA CAMPAIGN NUMBER: 16V381000 (AIR BAGS), WHICH WAS ASSOCIATED WITH THE VIN. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 69,000. |
| 11055457 | BUICK | ENCLAVE | 2008 | 2017-12-13 | TL* THE CONTACT OWNS A 2008 BUICK ENCLAVE. WHILE DRIVING APPROXIMATELY 20 MPH, THE CONTACT LOST CONTROL AND CRASHED HEAD ON INTO ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED INJURIES TO THE HEAD, WHICH REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS TOWED TO THE CONTACT'S RESIDENCE. THE CONTACT WAS NOT SURE IF THE VEHICLE WAS DESTROYED. A LOCAL DEALER AND MANUFACTURER WERE NOT CONTACTED. THE VIN AND FAILURE MILEAGE WERE NOT AVAILABLE. |
| 10632511 | CHEVROLET | EQUINOX | 2008 | 2014-05-14 | TL* THE CONTACT OWNS A 2008 CHEVROLET EQUINOX. THE CONTACT STATED THAT WHILE DRIVING AT AN UNKNOWN SPEED, THE VEHICLE HYDRO-PLANED AND CRASHED. THE CONTACT MENTIONED THAT NONE OF THE AIR BAGS DEPLOYED. A POLICE REPORT WAS FILED AND INJURIES WERE SUSTAINED. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE VEHICLE WAS INSPECTED AND THE TECHNICIAN STATED THAT THE AIR BAGS WERE NOT EXPECTED TO DEPLOY. THE FAILURE MILEAGE WAS 91,000. PAM..UPDATED 09/25/14 *BF  UPDATED 10/23/2014*LJ  THE CONSUMER STATED THE KEY WAS STUCK IN THE IGNITION. UPDATED 12/08/14 .*JB  UPDATED 12/28/15.*JB  THE CONSUMER STATED GM CLAIMED TO HAVE INVESTIGATED THE CRASH AND STATED THE AIR BAG WAS NOT DESIGNED TO DEPLOY IN THE TYPE OF CRASH THE CONSUMER WAS INVOLVED IN. UPDATED 01/05/16.*JB  UPDATED 06/02/16.*JB *JS |
| 10442223 | CHEVROLET | SILVERADO | 2008 | 2011-12-30 | TL* THE CONTACT OWNS A 2008 CHEVROLET SILVERADO.  THE CONTACT LOST CONTROL OF THE VEHICLE AND CRASHED INTO A TREE.  NEITHER THE DRIVER NOR THE PASSENGER SIDE AIR BAGS DEPLOYED.  THE VEHICLE WAS DESTROYED AND THE CONTACT SUSTAINED HEAD AND BACK INJURIES.  THE CONTACT DID CALL THE MANUFACTURER. THE FAILURE MILEAGE WAS 66,000. UPDATED 02/15/12*LJ  UPDATED 02/24/12 |
| 10565014 | CHEVROLET | SILVERADO | 2008 | 2014-02-18 | 7:10 A.M. TUESDAY MORNING, I HIT BLACK ICE AND LOST CONTROL OF MY VEHICLE. I PROCEEDED TO SLIDE UNCONTROLLABLY ACROSS THE ROAD. I THEN HIT A CLIFF WITH THE FRONT END OF MY VEHICLE, ONCE I HIT THE THE CLIFF MY VEHICLE THEN FLIPPED IN THE AIR AND LANDED ON THE DRIVER SIDE OF THE VEHICLE. ONCE I HAD LANDED ON THE PAVEMENT, ANOTHER VEHICLE CAME ALONG PROCEEDING AT AROUND 45 MPH. THE VEHICLE PROCEEDED TO HIT THE HOOD OF MY VEHICLE. THE DRIVER HIT MY HOOD DIRECTLY WITH THE FRONT END OF HIS VEHICLE. DURING THE WHOLE INCIDENT, I HAD MY SEATBELT ON. ALSO IT WAS INDICATED THAT MY AIR BAGS WERE ONE AND FUNCTIONING CORRECTLY. THE VEHICLE ITSELF WAS TOTALED AND I SUSTAINED WHIPLASH, A SLIGHT CONCUSSION, SEVERE BRUISES AND CUTS, AND ALSO RECEIVED A CHIPPED TOOTH FROM HITTING THE STEERING WHEEL WITH MY FACE.  *TR |

| | | | | | |
|---|---|---|---|---|---|
| 10672875 | CHEVROLET | SILVERADO | 2008 | 2015-01-07 | I WAS ON MY WAY HOME FROM WORK AFTER WORKING A VERY LONG DAY AND I FELL ASLEEP AT THE WHEEL AND WENT OFF THE SIDE OF 225. ALL I REMEMBER WAS WAKING UP IN BETWEEN TREES ABOUT TWO FEET AWAY FROM SIMS BAYOU. MY VEHICLE WAS TOTALED. NO AIR BAGS DEPLOYED.  *TR |
| 10678613 | CHEVROLET | SILVERADO | 2008 | 2015-01-16 | 2008 CHEVY SILVERADO 4X4 WT. DRIVER SIDE AIRBAG DID NOT DEPLOY DURING CRASH. VEHICLE IMPACT WAS ON THE FRONT. A FATALITY OCCURRED DURING THIS CRASH. (PASSENGER IN OTHER VEHICLE) POINT OF IMPACT WAS FRONT OF SILVERADO INTO PASSENGER SIDE OF OTHER VEHICLE. *TR |
| 10681040 | CHEVROLET | SILVERADO | 2008 | 2015-01-21 | TL* THE CONTACT OWNS A 2008 CHEVROLET SILVERADO. THE CONTACT STATED THAT THE AIR BAGS FAILED TO DEPLOY AFTER BEING INVOLVED IN A CRASH. THE SPECIFICS OF THE CRASH WERE NOT AVAILABLE. A POLICE REPORT WAS FILED AND THE DRIVER SUSTAINED INJURIES TO THE HEAD, THE NECK, AND THE BACK THAT DID NOT REQUIRE MEDICAL ATTENTION. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 111,687. |
| 10761080 | CHEVROLET | SILVERADO | 2008 | 2015-08-25 | TL* THE CONTACT OWNS A 2008 CHEVROLET SILVERADO. WHILE DRIVING 65 MPH, THE CONTACT FELL ASLEEP BEHIND THE WHEEL AND THE VEHICLE DROVE OFF THE ROAD. THE CONTACT CRASHED INTO THE SUPPORT CABLES ON THE SIDE OF THE ROAD. THE CONTACT STATED THAT THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS FILED. THERE WERE NO INJURIES. THE VEHICLE WAS TOWED TO AN INDEPENDENT MECHANIC WHERE IT WAS DEEMED DESTROYED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 127,000. |
| 10261711 | CHEVROLET | TRAILBLAZER | 2008 | 2009-03-07 | TL*THE CONTACT OWNS A 2008 CHEVROLET TRAILBLAZER.  WHILE DRIVING 35 MPH, THE CONTACT WAS INVOLVED IN A HEAD-ON CRASH. THE ENTIRE FRONT END OF HIS VEHICLE WAS CRUSHED AND THE INSURANCE COMPANY DECLARED THE VEHICLE AS DESTROYED.  THE SEAT BELTS PROPERLY RESTRAINED THE CONTACT, BUT THE AIR BAGS FAILED TO DEPLOY.  THERE WERE NO INJURIES, BUT A POLICE REPORT WAS FILED.  THE FAILURE MILEAGE WAS 6,500. |
| 10679071 | CHEVROLET | TRAILBLAZER | 2008 | 2015-01-18 | THE VEHICLE LOST CONTROL ON BLACK ICE, THE STEERING WHEEL AND BRAKES LOCKED UP AND THE TRAILBLAZER HIT A TREE.THE AIRBAG NEVER DEPLOYED.  THE VEHICLE'S FRAME WAS BENT. THE SUV WAS CONSIDERED A TOTAL LOSS. THE VEHICLE PICKED UP A LITTLE MORE SPEED WHILE ON THE ICE, BUT NO MORE THAN 30 MPH.  *TR |
| 11143666 | CHEVROLET | TRAILBLAZER | 2008 | 2018-10-19 | WAS TRAVELING 40 MPH AND WAS HIT HEAD ON BY ANOTHER VEHICLE.  NONE OF THE AIR BAGS DEPLOYED. WAS ON A CITY STREET WITH A 40 MPH SPEED LIMIT. GOING STRAIGHT. |
| 11324166 | CHEVROLET | TRAILBLAZER | 2008 | 2020-05-05 | TL* THE CONTACT OWNED A 2008 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT HE CRASHED AND REAR ENDED INTO ANOTHER VEHICLE STOPPED AT A STOP LIGHT AT 53 MPH. THE CONTACT STATED THAT THE AIR BAGS FAILED TO DEPLOY AS WELL AS THE SEAT BELT PRETENSIONER FAILED TO ENGAGE. THE CONTACT SUSTAINED A SEVERE CONCUSSION & ALMOST BIT HIS TONGUE OFF WITH HIS HEAD SMASHING INTO THE WINDSHIELD. HE ALSO SUSTAINED CUTS AND BRUISES ON HIS LOWER BODY AND LEGS AND A BRUISED NECK. THERE WAS A PASSENGER IN THE OTHER VEHICLE THAT HAD TO BE TRANSPORTED TO THE HOSPITAL WITH INJURIES AS WELL. THE VEHICLE WAS TOTALED WITH THE WHOLE FRONT SMASHED IN UP TO THE WINDSHIELD. THE DEALER AND MANUFACTURER HAD NOT BEEN CONTACTED YET. THE FAILURE MILEAGE WAS 220,000. THE VIN WAS NOT AVAILABLE. *LN*JB |
| 10615043 | GMC | ACADIA | 2008 | 2013-04-30 | TL* THE CONTACT OWNS A 2008 GMC ACADIA. THE CONTACT STATED THAT WHILE DRIVING 50 MPH, THE VEHICLE WAS INVOLVED IN A FRONT END CRASH IN WHICH NO AIR BAGS DEPLOYED. A POLICE REPORT WAS FILED AND NO INJURIES WERE SUSTAINED. THE VEHICLE WAS TAKEN TO A DEALER. THE FAILURE MILEAGE WAS 113,000 AND THE CURRENT MILEAGE WAS 132,653. |
| 11066850 | GMC | ACADIA | 2008 | 2015-08-21 | MY WIFE FELL ASLEEP RAN OFF THE ROAD STRUCK A UTILITY POLE AND A LARGE DIRT EMBANKMENT. THE AIR BAGS DID NOT DEPLOY NOR DID THE BELT TENSIONERS,SHE HIT THE STEERING COLUMN SO HARD SHE IT BROKE THE COLUMN  AND BROKE HER STERNUM. OUR GRANDDAUGHTER WAS IN THE FRONT PASSENGER SEAT  THE AIR BAG NOR THE TENNSIONERS DEPLOYED RESULTING HER BACK BEING BROKEN IN TWO PLACES AND ALSO HER FOOT WAS BROKEN. I CONTACTED  GENERAL MOTORS AND THEY SENT A MAN TO DOWNLOAD THE COMPUTER INFORMATION THEY SENT ME A COPY OF THE INFO AND LATER CONTACTED ME SAYING THE INFO SHOWED EVERYTHING WAS WORKING PROPERLY. PRYOR TO THE ACCIDENT  I HAD THE AUTO IN FOR THE RECALL ON THIS PROBLEM. I ALSO HAD IT IN FOR ANOTHER RECALL FOR THE HEADLIGHTS AND THEY HAD TO REMOVE A LARGE PART OF THE FRONT TO DO THE REPAIR AND DONE A POOR JOB OF PUTTING IT BACK TOGETHER I RETURNED IT AND THEY FINALLY GOT IT RIGHT,IN THE MEAN TIME THE SERVICE AIR BAG LIGHT CAME ON AND THEY REPAIRED THAT.LATER AFTER THE ACCIDENT I WENT BACK TO THE DEALER AND QUESTIONED THE BODY SHOP MANAGER ABOUT PUTTING IT BACK TOGETHER PROPERLY AND THEN TOLD HIM ABOUT THE ACCIDENT THEN HE HAD NOTHING ELSE TO SAY. THE AUTO WAS A TOTAL LOSS AFTER A LENGTH OF TIME WIFE AND GRANDDAUGHTER GOT OUT OF HOSPITAL. THIS CAR WAS RECALLED FOR THIS VERY REASON. MY INSURANCE COMPANY PAID MY GRANDDAUGHTER $95,000 FOR HER INJURIES AND COMMENTED THAT THEY WOULD PROBABLY SUE GM TO GET THAT BACK. |

| | | | | | |
|---|---|---|---|---|---|
| 11310375 | GMC | ACADIA | 2008 | 2015-11-26 | VEHICLE WAS SOUTHBOUND ON COUNTY ROAD AND ATTEMPTED TO MAKE A RIGHT TURN AT THE INTERSECTION, WHEN THE CAR STRUCK THE SOUTH EMBANKMENT OF THE T INTERSECTION, AS DRIVER WAS UNABLE TO NAVIGATE THE TURN. NONE OF THE SIDE OR FRONT AIRBAGS IN THE CAR DEPLOYED AS A RESULT OF THE CRASH. I AM ALSO UNSURE IF THE SEAT BELT HAD OPERATED CORRECTLY (SEAT BELT WAS BEING WORN AT THE TIME OF THE CRASH).  THE DRIVER'S HEAD HIT THE SIDE WINDOW AND AS A RESULT HE SUSTAINED A HEAD INJURY AND AN EYE INJURY RESULTING IN OPTIC NERVE DAMAGE AND COMPLETE LOSS OF VISION IN THE EYE.  I UNDERSTAND THERE WERE PROBLEMS WITH THE AIRBAGS ON THESE VEHICLES WITH A POSSIBLE RECALL ISSUED. I DO HAVE ALL THE CORRESPONDING ACCIDENT REPORTS, MEDICAL REPORTS, ETC. |
| 10667413 | GMC | ENVOY | 2008 | 2014-12-19 | I WAS IN AN AUTO ACCIDENT ON A MAJOR HIGHWAY AND UPON CRASHING MY AIRBAG DIDN'T DEPLOY AND MY FACE SMASHED INTO THE STEERING WHEEL. |
| 11143613 | GMC | ENVOY | 2008 | 2018-10-24 | ON 10/24/2018 WHILE DRIVING MY 2008 GMC ENVOY SLT, I WAS INVOLVED IN A HEAD-ON COLLISION WHICH RESULTED IN MY CAR BEING TOTALED. NONE OF MY AIR BAGS DEPLOYED. |
| 11080754 | GMC | YUKON XL | 2008 | 2017-01-08 | TL* THE CONTACT OWNS A 2008 GMC YUKON XL. WHILE DRIVING 65 MPH, THE CONTACT NOTICED THAT ANOTHER VEHICLE WAS SWERVING TOWARDS HER VEHICLE. THE CONTACT HAD TO DEPRESS THE ACCELERATOR PEDAL TO INCREASE SPEED AND AVOID A COLLISION; HOWEVER, THE OTHER VEHICLE LOST CONTROL AND CRASHED INTO THE CONTACT'S VEHICLE. THE FRONT FRAME, FRONT PASSENGER SIDE, AND REAR FRAME OF THE CONTACT'S VEHICLE WERE DAMAGED. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT WAS KNOCKED UNCONSCIOUS AND REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED FROM THE SCENE. THE CONTACT STATED THAT THE VEHICLE WAS INSPECTED BY A MECHANIC FRIEND WHO CONFIRMED THE AIR BAGS FAILED TO DEPLOY. THE VEHICLE WAS NOT REPAIRED. THE DEALER WAS NOT CONTACTED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE AND A CASE WAS OPENED. THE CONTACT STATED THAT THE CASE HAD CLOSED. THE APPROXIMATE FAILURE MILEAGE WAS 150,000. |
| 10207326 | CADILLAC | ESCALADE | 2007 | 2007-10-06 | TL*THE CONTACT OWNED A 2007 CADILLAC ESCALADE.  THE CONTACT FELL ASLEEP WHILE DRIVING AT AN UNKNOWN SPEED.  THE VEHICLE STRUCK A DITCH, WENT AIRBORNE, AND ROLLED OVER SEVERAL TIMES.  A POLICE REPORT WAS FILED.  ALL FOUR WHEELS AND TIRES CAME OFF THE VEHICLE AND EACH WINDOW WAS BROKEN AND SMASHED.  NONE OF THE EIGHT AIR BAGS DEPLOYED.  THE CONTACT SUSTAINED A BROKEN COLLAR BONE, SHOULDER BONE, ROTARY CUP, AND A BROKEN HAND IN TWO PLACES.  THE INSURANCE COMPANY STATED THAT THE VEHICLE WAS DESTROYED.  CADILLAC HAS BEEN NOTIFIED AND WILL INSPECT THE VEHICLE.  THE CURRENT AND FAILURE MILEAGES WERE 28,000. |
| 10226642 | CADILLAC | ESCALADE | 2007 | 2008-04-26 | TL*THE CONTACT OWNS A 2007 CADILLAC ESCALADE.  WHILE DRIVING 35 MPH IN THE RAIN, THE VEHICLE HYDROPLANED AND CRASHED INTO SEVERAL TREES.  THE VEHICLE SPUN AROUND AND ENDED UP FACING THE OPPOSITE DIRECTION.  THE AIR BAGS FAILED TO DEPLOY AND THE CONTACT WAS INJURED.  A POLICE REPORT WAS FILED.  THE FAILURE MILEAGE WAS UNKNOWN. |
| 10292325 | CADILLAC | ESCALADE | 2007 | 2009-11-14 | TL* THE CONTACT OWNS A 2007 CADILLAC ESCALADE.  WHILE DRIVING SHE  CRASHED INTO A TREE. THE ENTIRE FRONT-END OF THE VEHICLE WAS DAMAGED, AND NONE OF THE AIR BAGS DEPLOYED.  CONSEQUENTLY SHE RECEIVED INJURIES TO HER NECK.  A POLICE REPORT WAS FILED. ALSO THE FRONT BRAKE PADS FRACTURED WITHIN THE FIRST TWO MONTHS OF PURCHASING THE VEHICLE.  THE BRAKE PADS  WERE REPLACED UNDER THE SERVICE WARRANTY.  THE FAILURE AND CURRENT MILEAGES WERE 58,000. |
| 10317216 | CHEVROLET | EQUINOX | 2007 | 2010-03-03 | I WAS IN AN ACCIDENT WERE I STRUCK TWO HORSES THAT RUN OUT INTO THE HIGHWAY IN FRONT OF ME IN MY 2007 CHEVROLET EQUINOX LSI. THE FIRST HORSE STRUCK MY PASSENGERSIDE FRONT QUARTER PANEL AND THIS CAUSED ME TO SWERVE INTO ANOTHER HORSE ON THE DRIVER SIDE. I WAS TRAVELING AT APPROXIMATELY 50 MPH AND THE DAMAGE  TO THE FRONT OF MY CAR WAS VERY SERIOUS AND MY COMPLAINT IS THAT THE AIRBAGS NEVER DEPLOYED DURING THE CRASH. I KNOW THAT THE AIRBAGS ARE SET OF BY SPECIFIC SPEEDS AND DAMAGE BUT MY WHOLE FRONT OF MY 2007 CHEVROLET EQUINOX LS WAS NEARLY REMOVED. I WAS WEARING MY SAFETY BELT AND IT OFFERED LITTLE HELP SINCE I WAS HIT TWICE FROM OPPOSITE SIDES. I WAS TOLD BY RESPONDING EMERGENCY CREW THAT THE AIRBAG MUST HAVE BEEN FAULTY SINCE IT DID NOT DEPLOY. *TR |
| 10370521 | CHEVROLET | EQUINOX | 2007 | 2010-12-13 | AUTOMOBILE ACCIDENT AT ROUGHLY 20 MILES AN HOUR IN A 2007 CHEVY EQUINOX MOSTLY FRONT END AND DRIVER SIDE DAMAGE. THE AIR BAGS DID NOT DEPLOY.  MAJOR FRONT END DAMAGE SUSTAINED.  *TR |
| 11128142 | CHEVROLET | EQUINOX | 2007 | 2018-05-28 | TL* THE CONTACT OWNED A 2007 CHEVROLET EQUINOX. WHILE DRIVING 20 MPH, THE CONTACT CRASHED INTO A CONCRETE EMBANKMENT TO AVOID COLLIDING WITH ANOTHER VEHICLE. THE AIR BAG FAILED TO DEPLOY. THE CONTACT SUSTAINED INJURIES TO THE RIGHT SHOULDER AND LEFT ARM THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS DESTROYED AND TOWED TO A TOW LOT. THE CONTACT CALLED ALLEN TILLERY AUTO (LOCATED AT 4573 CENTRAL AVE, HOT SPRING, AR 71913, (501) 881-4160) AND WAS INFORMED THAT THE AIR BAG SHOULD HAVE DEPLOYED SINCE IT WAS JUST INSTALLED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE AND DID NOT ASSIST. THE APPROXIMATE FAILURE MILEAGE WAS 135,000. |

| | | | | |
|---|---|---|---|---|
| 10331536 | CHEVROLET | SILVERADO | 2007 | 2007-09-07 | TL* THE CONTACT OWNS A 2007 CHEVROLET SILVERADO. THE CONTACT  STATED THAT WHILE TRAVELING APPROXIMATELY 35 MPH, A VEHICLE AHEAD OF HIM MADE AN UNEXPECTED LEFT TURN. THE CONTACT CRASHED INTO THE  THE PRECEDING VEHICLE AND THE AIR BAGS DID NOT DEPLOY UPON IMPACT. THE CONTACT WAS INJURED AND A POLICE REPORT WAS FILED ACCORDINGLY. THE VEHICLE WAS TOWED TO A LOCAL DEALER WHERE UNKNOWN REPAIRS WERE MADE THE VEHICLE WAS TRADED IN. THE VIN WAS NOT AVAILABLE AND THE FAILURE MILEAGE WAS APPROXIMATELY 28,000.     UPDATED 07/19/10  *BF   UPDATED 07/21/10 |
| 10585572 | CHEVROLET | SILVERADO | 2007 | 2014-04-22 | TL* THE CONTACT OWNS A 2007 CHEVROLET SILVERADO. THE CONTACT STATED THAT WHILE DRIVING 45 MPH, THE VEHICLE HYDRO PLANED AND THE CONTACT CRASHED INTO THE ROAD BARRIER. NO AIR BAGS DEPLOYED UPON IMPACT. THERE WERE FOUR INJURIES AND A POLICE REPORT WAS FILED. INJURY DETAILS WERE NOT AVAILABLE. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE AND CURRENT MILEAGE WAS 102,000. |
| 10606814 | CHEVROLET | SILVERADO | 2007 | 2014-06-12 | ON IMPACT TO FRONT END OF MY VEHICLE THE AIR BAGS DID NOT DEPLOY. THE AIR BAGS ON THE OTHER VEHICLE DID DEPLOY. HOW CAN I BE SURE MY AIRBAGS ARE FUNCTIONING PROPERLY. THERE IS ABOUT $9,000 DAMAGE TO MY VEHICLE. I AM SENDINGAGAIN BECAUSE I AM NOT CERTAIN THE FIRST ONE WENT THROUGH. *TR |
| 10608220 | CHEVROLET | SILVERADO | 2007 | 2012-08-17 | VEHICLE WAS INVOLVED IN HEAD ON COLLISION THAT TOTALED IT. OTHER VEHICLE WAS AN OLDER MODEL VAN, DO NOT KNOW EXTENT OF DAMAGES TO IT.  MY CONCERN IS THE AIR BAGS DID NOT DEPLOY  WAS TOLD BY GM THAT CRASH DID NOT MEET CRITERIA FOR DEPLOYMENT!!!!!  A HEAD ON COLLISION AT 50 MPH THAT TOTALED 2500 SERIES CHEVY TRUCK.     HARD FOR ME TO BELIEVE I NOW OWN A 2008 CHEVY 1500 SERIES , DO I NEED TO CONCERNED? *TR |
| 10649638 | CHEVROLET | SILVERADO | 2007 | 2014-09-29 | TL* THE CONTACT OWNS A 2007 CHEVROLET SILVERADO 1500. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 15 MPH, THE VEHICLE CRASHED INTO A TREE CAUSING EXTENSIVE DAMAGE TO THE FRONT END. THE CONTACT INDICATED THAT DURING THE CRASH THE FRONT AIR BAGS DID NOT DEPLOY AND THE DRIVER SUFFERED INJURIES TO THE RIGHT KNEE, WHILE THE FRONT PASSENGER SUFFERED INJURIES TO BOTH KNEES AND HEAD.  A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 95,000. |
| 10512756 | CHEVROLET | SUBURBAN | 2007 | 2013-05-19 | WE WERE DRIVING HOME WHEN A PERSON RAN A RED LIGHT AND HIT US.  WE WERE CROSSING AN INTERSECTION ABOUT 15 MILES AN HOUR AND THEY HIT THE FRONT PART OF OUR SUBURBAN. EVERYTHING WAS DAMAGED THE HOOD , AND EVERYTHING INSIDE THE HOOD SUSTAINED DAMAGE.  THERE WAS A LIQUID THAT WAS LEAKING BUT I AM UNAWARE OF THE SUBSTANCE.  THE PERSON THAT HIT US MUST HAVE BEEN GOING ABOUT 40-60 MILES AN HOUR.  AFTER THEY FLED THE SEEN POLICE MENTIONED THAT THEIR AIR BAGS WERE DEPLOYED.  MY CONCERN WAS WHY OUR AIR BAGS DID NOT DEPLOY AS WELL.  MY DAUGHTER AND I BOTH HIT OUR HEADS ON OUR SIDE WINDOWS.  MY SON HAD SLIGHT INJURY MOSTLY FROM THE SEATBELT.  MY SONS DOOR HAD TO BE OPENED FROM THE POLICE OFFICER ON THE SCREEN.  MY BIGGEST CONCERN WAS ABOUT THE AIRBAGS AND ALSO THE ONSTAR DID NOT WORK AS WELL.  *TR |
| 10400538 | CHEVROLET | TAHOE | 2007 | 2010-03-19 | TL* THE CONTACT OWNS A 2007 CHEVROLET TAHOE. THE CONTACT STATED THAT THE VEHICLE WAS INVOLVED IN A FRONTAL CRASH WITH ANOTHER VEHICLE AT APPROXIMATELY 30 MPH BUT THE AIR BAGS DID NOT DEPLOY. THE DRIVER OF THE CONTACT'S VEHICLE AND A PASSENGER SUFFERED MINOR INJURIES. THE VEHICLE WAS DESTROYED AND A POLICE REPORT WAS FILED. THE CONTACT CALLED THE MANUFACTURER WHO TOOK A COMPLAINT BUT PROVIDED NO FURTHER ASSISTANCE. THE CURRENT AND FAILURE MILEAGES WERE UNKNOWN. THE VIN WAS UNAVAILABLE. |
| 10659540 | CHEVROLET | TAHOE | 2007 | 2014-03-16 | 2007 CHEVROLET TAHOE. AIRBAG DEPLOYMENT FAILURE DURING AN ACCIDENT. *TA |
| 10811111 | CHEVROLET | TAHOE | 2007 | 2014-04-17 | TL* THE CONTACT OWNS A 2007 CHEVROLET TAHOE. THE CONTACT STATED THAT WHILE DRIVING 50 MPH, THE CONTACT BLACKED OUT AND CRASHED INTO THE GUARDRAIL. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED HEAD INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. ON ANOTHER OCCASIONS, WHILE MAKING A LEFT TURN AT 15 MPH, THE CONTACT CRASHED INTO ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED AND THERE WERE NO INJURIES REPORTED. THE CONTACT ALSO STATED THAT THERE WERE TWO LARGE CRACKS IN THE DASHBOARD AND A THIRD CRACK DEVELOPED AS A RESULT OF THE FIRST CRASH. THE VEHICLE WAS TAKEN TO A DEALER HOWEVER, THE DIAGNOSIS WAS UNKNOWN. THE VEHICLE WAS REPAIRED AFTER BOTH FAILURES.  THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 120,000. |
| 10821342 | CHEVROLET | TAHOE | 2007 | 2015-11-16 | CRACKED DASH, POTENT HAZARD OF PLASTIC DASH PIECES BECOMING AIRBORNE SHRAPNEL IN THE EVENT OF CRASH WITH AIR BAGS DEPLOY. 2007 TAHOE DASH HAD SMALL 6 INCH CRACK AT THE 2 O CLOCK POSITION ON DRIVERS SIDE INSTRUMENT CLUSTER AND SMALL 1 INCH CRACK ON RIGHT SIDE OF PASSENGER SIDE AIRBAG. AFTER 25 MPH HEAD ON CRASH AIR BAGS DIDN'T DEPLOY BUT ADDITIONAL CRACKS HAVE APPEARED. NOW 10 X WORST. PICS WILL SHOW. DEALER DOESN'T WANT TO REPLACE NOR INSURANCE COMPANY. |
| 10854032 | CHEVROLET | TAHOE | 2007 | 2016-03-31 | TAHOE WAS INVOLVED IN FRONT COLISION WITH ANOTHER VEHICLE AND BAGS DID NOT DEPLOY. BUMPER, HOOD DAMAGED. BUMPER METAL BRACKET PUSHED IN.TAHOE WAS TURNING LEFT ON LIGHT WHEN STRUCK BE ANOTHER VEHICLE LIKE HEAD ON. |

| | | | | | |
|---|---|---|---|---|---|
| 10959039 | CHEVROLET | TAHOE | 2007 | 2017-02-01 | TL* THE CONTACT OWNS A 2007 CHEVROLET TAHOE. WHILE DRIVING APPROXIMATELY 60 MPH, THE CONTACT'S VEHICLE CRASHED INTO THE REAR OF A SECOND VEHICLE. DURING THE CRASH, THE FRONT END OF THE VEHICLE SUSTAINED SIGNIFICANT DAMAGE. THE AIR BAGS DID NOT DEPLOY. THE DRIVER SUSTAINED INJURIES TO THE BACK, SHOULDERS, ARMS, LEFT LEG, AND KNEE. THE PASSENGER SUFFERED INJURIES TO BOTH KNEES. MEDICAL ATTENTION WAS RECEIVED. A POLICE REPORT WAS FILED. THE CAUSE OF THE FAILURE WAS NOT DIAGNOSED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE VIN WAS NOT AVAILABLE. THE FAILURE MILEAGE WAS 100,000. |
| 11265920 | CHEVROLET | TAHOE | 2007 | 2019-07-16 | TL* THE CONTACT OWNED A 2007 CHEVROLET TAHOE. WHILE DRIVING 35 MPH, A 2012 NISSAN FRONTIER SIDESWIPED THE CONTACT'S VEHICLE. THE CONTACT VEERED OFF THE ROAD AND CRASHED INTO A LIGHT POLE. THE AIR BAGS DID NOT DEPLOY. THE CONTACT SUSTAINED HEAD, BACK, NECK, HAND, AND KNEE INJURIES. MEDICAL ATTENTION WAS RECEIVED. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO AN INDEPENDENT LOT.  THE CONTACT CALLED PATTERSON HYUNDAI TYLER (3120 S SW LP, TYLER, TX 75701, (903) 561-2404) AND INFORMED THEM OF THE FAILURE. THE VEHICLE WAS NOT DIAGNOSED. THE MANUFACTURER WAS NOT CONTACTED. THE VEHICLE WAS DEEMED A TOTAL LOSS BY THE INSURANCE COMPANY. THE FAILURE MILEAGE WAS 128,122. |
| 10252163 | CHEVROLET | TRAILBLAZER | 2007 | 2008-09-24 | ON 9/24/08 I WAS INVOLVED IN AN AUTO ACCIDENT WHERE MY 2007 CHEVROLET TRAILBLAZER'S AIRBAGS FAILED TO DEPLOY.  MY VEHICLE IMPACTED ANOTHER WITH MY ENTIRE FRONT END AT APPROXIMATELY 45 MPH.  MY TRAILBLAZER WAS TOTALED.  NOT ONLY DID MY AIRBAGS FAIL TO DEPLOY, THE ONSTAR SYSTEM DID NOT AUTOMATICALLY GO OFF.  I HAD TO HIT THE BUTTON TO SUMMON ASSISTANCE.   WHEN WE ASKED THE DEALER ABOUT IT, THEIR RESPONSE WAS "SOMETIMES THEY GO OFF, SOMETIMES THEY DON'T"   I SUSTAINED A BROKEN LEFT ARM, NUMEROUS BRUISES, A CUT ON MY ANKLE AND AN ANKLE SPRAIN. I ALSO INJURED MY BACK AND NECK WHICH IS REQUIRING ONGOING CARE. *TR |
| 10289962 | CHEVROLET | TRAILBLAZER | 2007 | 2009-10-18 | AIRBAGS DID NOT DEPLOY IN CRASH IMPACT ESTIMATED AT APROX 60 MPH.  VEHICLES AIRBAG THAT DID NOT DEPLOY WAS A FRONTAL CRASH.  T-BONED ANOTHER VEHICLE THAT PULLED OUT IN FRONT OF MENTIONED VEHICLE. *TR |
| 10478475 | CHEVROLET | TRAILBLAZER | 2007 | 2012-05-14 | TL* THE CONTACT OWNS A 2007 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING 40 MPH, THE CONTACT CRASHED HEAD ON INTO ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT WAS TAKEN TO THE HOSPITAL FOR TREATMENT OF WHIPLASH AND EYE INJURIES.  THE ENTIRE FRONT END OF THE VEHICLE WAS SEVERELY DAMAGED. THE POLICE WERE NOTIFIED AND A REPORT WAS FILED. THE MANUFACTURER WAS NOTIFIED AND A REPRESENTATIVE WAS SENT TO INSPECT THE VEHICLE, STATING THAT THE VEHICLE PERFORMED AS DESIGNED. THE VIN WAS UNKNOWN. THE FAILURE MILEAGE WAS 64,056. |
| 10482863 | CHEVROLET | TRAILBLAZER | 2007 | 2012-05-13 | TL* THE CONTACT OWNS A 2007 CHEVROLET TRAILBLAZER. THE CONTACT STATED HE WAS GETTING SICK WHILE DRIVING AND CRASH INTO ANOTHER VEHICLE. THE CONTACT STATED THAT THE AIR BAGS DID NOT DEPLOY. THE VEHICLE WAS NOT DESTROYED AND THERE WAS A POLICE REPORT FILED. THE CONTACT SUSTAINED A WHIPLASH INJURY AND SEVERE HEADACHE. THE MANUFACTURER WAS NOTIFIED WHO SENT A TECHNICIAN TO LOOK AT THE VEHICLE AND THEY STATED THAT THE AIR BAGS FUNCTIONED PROPERLY. THE FAILURE MILEAGE WAS 65,000. UPDATED 01/10/13*LJ UPDATED 1/11/13 *JS |
| 10661436 | CHEVROLET | TRAILBLAZER | 2007 | 2014-12-01 | TL* THE CONTACT OWNED A 2007 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 20 MPH, ANOTHER VEHICLE CRASHED INTO THE CONTACTS VEHICLE WHILE CROSSING AN INTERSECTION. THE AIR BAGS FAILED TO DEPLOY. THE VEHICLE WAS DESTROYED. IT WAS UNKNOWN IF ANY INJURIES WERE SUSTAINED OR IF A POLICE REPORT WAS FILED. THE MANUFACTURER WAS NOT NOTIFIED. THE FAILURE MILEAGE WAS 140,000. THE VIN WAS UNAVAILABLE. |
| 10661920 | CHEVROLET | TRAILBLAZER | 2007 | 2014-11-12 | TL* THE CONTACT OWNS A 2007 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING AT APPROXIMATELY 20 MPH CROSSING AN INTERSECTION, ANOTHER VEHICLE CRASHED INTO THE CONTACTS VEHICLE AND THE AIR BAGS FAILED TO DEPLOY. THE VEHICLE WAS DESTROYED. NO INJURIES WERE REPORTED. THE MANUFACTURER WAS NOT NOTIFIED OF THE ISSUE. THE FAILURE MILEAGE WAS 140,000. THE VIN WAS UNAVAILABLE. |
| 10664216 | CHEVROLET | TRAILBLAZER | 2007 | 2014-05-17 | IT WAS RAINING AND WE WERE ON OUR WAY HOME DRIVING DOWN THE HIGHWAY AND HIT A WATER PUDDLE AND HYDROPLANED OF THE SIDE OF THE ROAD THE TRUCK CUT OFF AND SPENT AROUND HIT A TREE HEAD ON AND THE AIRBAGS DIDN'T DEPLOY. I WAS HOSPITALIZED WITH MULTIPLE INJURIES AND IM STILL SUFFERING.  *TR |
| 10715742 | CHEVROLET | TRAILBLAZER | 2007 | 2015-04-27 | A VEHICLE WAS STOPPED IN FRONT OF ME AND I REAR ENDED THEM. I WAS GOING AROUND 44-55 MPH. AFTER I HIT THE OTHER CAR FROM BEHIND I CROSSED 2 LANES OF TRAFFIC AND WENT THRU A PRETTY DEEP DITCH.  THE AIR BAGS DID NOT DEPLOY AT ALL. I SUSTAINED A CONCUSSION., SEVERAL HEAD LACERATIONS AND A FRACTURED LUMBAR SPINE. |
| 10733714 | CHEVROLET | TRAILBLAZER | 2007 | 2015-07-04 | SWERVED TO AVOID HITTING A DEER ALMOST HIT MAILBOXES SO SWERVED  TO AVOID THEM. I SWERVED TO MUCH THAN IN MY CORRECTION HIT THE GAS INSTEAD OF THE BRAKE.  I THAN HIT A TREE BETWEEN 45 - 50 MPH. MY AIRBAGS NEVER DEPLOYED. |

| | | | | | |
|---|---|---|---|---|---|
| 10934884 | CHEVROLET | TRAILBLAZER | 2007 | 2016-12-07 | I HAD MY CRUISE SET ON 55 MPH AND WAS HIT HEAD ON BY VW JETTA PULLING OUT TOWARD MY VEHICLE, THEN FORCED TO LEFT INTO A TELEPHONE POLE. AIRBAGS DIDN'T DEPLOY, AND RECEIVED BROKEN STERNUM. DON'T KNOW IF SEATBELT INJURED ME,  OR IF THE SEATBELT DIDN'T LOCK ON 2ND IMPACT AND POSSIBLY HIT THE STEERING WHEEL. |
| 10208661 | GMC | ACADIA | 2007 | 2007-10-12 | INVOLVED IN FRONTAL COLLISION WITH CONSIDERABLE DAMAGE, BUT AIR BAG DID NOT DEPLOY. *TR |
| 10498046 | GMC | ACADIA | 2007 | 2013-02-09 | TL* THE CONTACT OWNS A 2007 GMC ACADIA. THE CONTACT STATED THAT WHILE DRIVING 20 MPH, ANOTHER VEHICLE CRASHED INTO HIS VEHICLE IN THE MIDDLE OF THE INTERSECTION. UPON IMPACT, THE AIR BAGS FAILED TO DEPLOY. THE CONTACT STATED THAT HE WAS PINNED IN THE VEHICLE AND COULD NOT GET OUT. THE VEHICLE HAD SEVERE DAMAGES TO THE DRIVER SIDE AND WAS COMPLETELY DESTROYED. THE CONTACT SUSTAINED INJURIES TO HIS HEAD AND CHEST. THE CONTACT WAS TAKEN TO THE EMERGENCY ROOM BY FAMILY. THE POLICE WERE NOTIFIED AND A REPORT WAS AVAILABLE IF NEEDED. THE MANUFACTURER WAS NOTIFIED WHO STATED THAT A REPRESENTATIVE WILL GIVE HIM A RETURN CALL. THE FAILURE MILEAGE WAS 91,000.   UPDATED 3/10/13 *CN |
| 10959190 | GMC | ACADIA | 2007 | 2017-03-02 | TL* THE CONTACT OWNED A 2007 GMC ACADIA. WHILE MAKING A LEFT TURN AT APPROXIMATELY 5 MPH FROM A STOP SIGN, A SPEEDING VEHICLE CRASHED HEAD-ON INTO THE FRONT CENTER OF THE CONTACT'S VEHICLE. THE AIR BAGS DID NOT DEPLOY. BOTH THE CONTACT AND A MINOR PASSENGER, SEATED IN THE REAR BEHIND THE DRIVER, SUSTAINED INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE CONTACT'S VEHICLE WAS TOTALED AND WAS TOWED TO A TOW YARD. THE FAILURE MILEAGE WAS APPROXIMATELY 140,000. |
| 10604975 | GMC | ENVOY | 2007 | 2014-06-20 | MY WIFE WAS DRIVING HOME FROM THE DOCTOR AND A FULL SIZE CHEVY CAME ACROSS ON HER SIDE AND HIT HER HEAD ON NEITHER AIR BAG DEPLOYED ON THE ENVOY BOTH VEHICLES WAS TOTALED WHAT SHOULD WE DO THANKS.  *TR |
| 10639641 | GMC | ENVOY | 2007 | 2014-04-27 | A GUY HIT ME ON THE DRIVERS SIDE THEN IT PUSHED ME INTO A DRIVEWAY OF A BUSINESS WHICH HAD A BRICK WALL WHICH I HIT &BOUNCED OFF IT .POPPED BOTH TIRES ON THE DRIVERS SIDE. THEN I HIT A TELEPHONE POLE STRAIGHT ON &SMASHED IN MY FRONT ON MY CAR..I MOVED THE TELEPHONE POLE IN THE CONCRETE ABOUT 2 IN..I WAS THE SECOND OWNER. THE OTHER OWNER WAS THE DEALERSHIP &THY HAD IT JUST FOR THERE CAR TO RUN FROM 1 DEALERSHIP TO THE OTHER..I HAD TO GO TO THE HOSPITAL &I AM STILL HAVING TREATMENT ON MY NECK BACK &SHOULDER..NOT 1 OF THE AIR BAGS WENT OFF..IT WAS TOWED AWAY &THEN WAS TOTALED. ..I HAVE HIRED AN ATTORNEY.  *TR |
| 10915508 | GMC | ENVOY | 2007 | 2016-08-10 | I HIT A GUARD RAIL AT 67 MPH...SPIKE WITH GMC AND SHE NOTIFY ME THAT MY THRESHOLD (SPEED AND IMPACT) WERE NOT ENOUGH TO SET AIRBAGS OFF..REALLY. .67 MPH..I WAS ON A HIGHWAY SWEATED TO MISS SEMI ..KICKED IT AND IT FLEW ME IN A CIRCLE AND HIT GAURDRAIL. .IMPACT HIT HARD THAT THEY HAD TO PRY BUMPER OFF RAIL AND CAR..FRAME WENT THROUGH RADIATOR BUT NO AIRBAGS DEPLOEYED??? TRYING TO FIND LAWYER NO ONE WILL TAKE XASE???? |
| 10290508 | GMC | YUKON | 2007 | 2009-09-14 | TRAVELING AT NIGHT, AT 65 MILES AN HOUR IN A 2007 YUKON SLE2 4 DR WAGON, I HIT A  STEER (APPROXIMATELY 880LBS).  UPON IMPACT, THE BOTTOM OF MY POWER DRIVER'S SEAT MOVED FORWARD AND THE BACK OF THE SEAT TILTED FORWARD, CAUSING ME TO HIT THE STEERING WHEEL.  I HAD TO MOVE THE SEAT BACK TO GET OUT OF THE VEHICLE. THE AIRBAGS DID NOT DEPLOY.  I REPORTED THE INCIDENT TO THE DEALER, AND MY INSURANCE AGENT BOTH VERBALLY AND IN WRITING.  THE VEHICLE HAD OVER $11,000.00 WORTH OF DAMAGE, BUT THE REPAIR CENTER STATED THEY WERE UNABLE TO FIND ANY DAMAGE TO THE SEAT.  I TRADED THE VEHICLE IN, AS I DID NOT FEEL SAFE DRIVING IT WITH THE SEAT NOT BEING REPLACED OR REPAIRED. THE VEHICLE IS NOW FOR SALE AGAIN, AND I AM FEARFUL THAT SOMEONE ELSE WILL BE IN A WRECK AND THE SEAT WILL MALFUNCTION AGAIN. *TR |
| 10701604 | GMC | YUKON | 2007 | 2015-03-06 | TL* THE CONTACT OWNS A 2007 GMC YUKON. WHILE DRIVING APPROXIMATELY 60 MPH, THE CONTACT CRASHED INTO ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. THERE WERE NO INJURIES AND A POLICE REPORT WAS FILED. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 180,000. THE VIN WAS NOT AVAILABLE. |
| 11034703 | GMC | YUKON | 2007 | 2014-10-09 | I HAVE TRIED TO SUBMIT MY YUKON FOR TANAKA RECALL REMEDY SEVERAL TIMES BY CONTACTING MY LOCAL GMC DEALERSHIP.  THEIR SERVICE DEPT CONTINUES TO TELL ME THAT THEY DO NOT HAVE PARTS AVAILABLE TO MODIFY MY VEHICLE.  A FEW YEARS AGO I BROADSIDED A LEXUS SUV WHICH 'RAN A TRAFFIC LIGHT'.  MY AIRBAGS DID NOT DEPLOY, WHILE SEVERAL OF THE AIRBAGS DEPLOYED IN THE LEXUS.  I FELT THAT MY LIFE MIGHT HAVE BEEN AT RISK SINCE THE AIRBAGS DID NOT DEPLOY, OR ALTERNATELY, AT EVEN WORST RISK IF THEY DID EXPLODE UPON DEPLOYMENT.  WHO IS RESPONSIBLE FOR ADDRESSING THIS ISSUE?  THE GMC DEALER SAYS THEY ARE NOT!  I HAVE PHOTOS OF THE ACCIDENT AND A POLICE REPORT STATING THAT THE LADY WAS RESPONSIBLE FOR |
| 10907149 | CADILLAC | SRX | 2006 | 2016-09-01 | TL* THE CONTACT OWNED A 2006 CADILLAC SRX. WHILE DRIVING VARIOUS SPEEDS, THE VEHICLE HIT A CURB AND DROVE INTO A BUILDING. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO AN INDEPENDENT MECHANIC WHERE IT WAS DEEMED DESTROYED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 77,814. UPDATED 10/26/16*LJ *TR |

| 10223015 | CHEVROLET | EQUINOX | 2006 | 2008-02-28 | FOUR CAR PILEUP ON HWY 41 NB. WE WERE VEH.#3 AND HIT FORWARD AND WERE HIT FROM BEHIND. OUR SEAT BELTS DID NOT RESTRAIN US AND THE AIR BAGS DID NOT DEPLOY. MY HUSBAND , ERNST, FLEW INTO THE DASHBOARD AND I SLAMMED INTO THE STEERING WHEEL. *TR |
| 10241948 | CHEVROLET | EQUINOX | 2006 | 2008-09-10 | THE VEHICLE WAS INVOLVED IN A FRONTAL CRASH.  THE DRIVER NOR THE PASSENGER AIRBAG DEPLOYED.  THE WHOLE FRONT END OF THE VEHICLE WAS PUSHED IN. *TR |
| 10279951 | CHEVROLET | EQUINOX | 2006 | 2009-08-04 | VEHICLE INVOLVED IN A ONE-AUTO ACCIDENT - 2006 CHEVROLET EQUINOX - HYDROPLANED AND HIT AN EMBANKMENT WITH THE FRONT END AND FLIPPED OVER.  THE AIR BAG DID NOT DEPLOY. THIS IS NOT THE FIRST TIME THIS VEHICLE HAS HAD AN IMPACT TO THE FRONT BUMPER AND THE AIR BAG HAS NEVER DEPLOYED.  EACH TIME THE FRONT BUMPER HAD DAMAGE SUSTAINED WHICH SHOULD HAVE CAUSED THE IMPACT THE SET THE AIR BAG OFF.    *TR |
| 10342436 | CHEVROLET | EQUINOX | 2006 | 2010-07-07 | 2006 CHEVY EQUINOX AIR BAGS DID NOT DEPLOY IN MY DAUGHTER'S FRONT CRASH ACCIDENT. HER CAR WAS TOTALED. SHE HIT A MAILBOX AND IN A SPIN ON THE DRIVER'S FRONT SIDE HIT A TELEPHONE POLE.  SHE HIT HER HEAD ON THE STEERING WHEEL AND HURT HER BACK.  THE REAR WINDSHIELD WAS ALSO SHATTERED AND ALSO HAD A BACK FLAT TIRE. I CALLED OUR LOCAL GM DEALER AND THEY TOLD ME TO CALL GM. SHE CALLED GM BUT THEY GOT HER UPSET AND SHE IN OTHER WORDS SAID THERE WAS NOTHING THEY COULD DO ABOUT THE AIR BAGS NOT DEPLOYING. IN OTHER WORDS THIS IS A DEFECT OF THIS MODEL AND THEY AREN'T GOING TO DO ANYTHING ABOUT IT. *TR |
| 10503970 | CHEVROLET | EQUINOX | 2006 | 2013-03-19 | I RAN OFF THE SIDE OF THE ROAD INTO A GUARDRAIL AND COULD NOT STOP UNTIL I WAS ON TOP OF THE GUARDRAIL INTO AN EMBANKMENT. MY ENTIRE FRONT END WAS DESTROYED AS WELL AS MOST OF THE UNDERNEATH OF THE CAR. MY FACE HIT THE STEERING WHEEL CAUSING ME TO LOSE CONSCIOUSNESS AS WELL AS GIVING ME A BLACK EYE, CROOKED TEETH, CUTS, BROKEN DENTAL APPLIANCES, AND MY TEETH WENT THROUGH MY LIP. I STRONGLY BELIEVE MY AIRBAGS SHOULD HAVE DEPLOYED AND PREVENTED THE IMPACT OF MY FACE TO THE STEERING WHEEL SINCE I THOUGHT THAT IS WHAT AIRBAGS ARE FOR. MY CAR WAS TOTALED.  *TR |
| 10560310 | CHEVROLET | EQUINOX | 2006 | 2013-11-14 | HIT A ONE TON LOW BED DUMP TRUCK, THE WHOLE FRONT END OF MY SUV WAS DEMOLISHED, MY AIRBAGS DIDN'T DEPLOY AND I ENDED UP WITH REALLY BAD WHIPLASH FROM THE ACCIDENT, TO WHERE I'M STILL IN MAJOR PAIN! WONDERING IF THERE WAS A LAWSUIT AGAINST THIS? NEVER DEALT WITH A WRECK THIS BAD, I WAS JUST CURIOUS!  *TR |
| 10586081 | CHEVROLET | EQUINOX | 2006 | 2014-05-01 | MY AIRBAG DID NOT DEPLOY WHEN THE CAR HIT THE TREE.  IT HIT SO HARD THE BACK TIRES CAME COMPLETELY OFF THE GROUND.  *TR |
| 10939297 | CHEVROLET | EQUINOX | 2006 | 2016-12-30 | MY GRANDDAUGHTER WAS INVOLVED IN AN ACCIDENT WHERE AS ANOTHER VEHICLE FAILED TO STOP AT A STOP SIGN AND PULLED INTO HER PATH. SHE AND THE OTHER VEHICLE WERE BOTH AT A SPEED OF 25 MPH. THE FRONT CLIP WAS TORN FROM HER CAR AND NO DRIVERS AIRBAG DEPLOYED. SHE DID HAVE HER SEATBELT ON WHICH DID PREVENT SERIOUS INJURY. THE ACCIDENT OCCURRED 30 DEC 2016. THIS HAPPENED ON CITY STREETS. |
| 10343112 | CHEVROLET | SILVERADO | 2006 | 2010-03-22 | TL* THE CONTACT OWNS A 2006 CHEVROLET SILVERADO. THE CONTACT STATED WHILE TRAVELING AT 40 MPH WHEN AN 18-WHEELER DROVE IN FRONT OF THE CONTACT SUDDENLY. THE CONTACT DID NOT HAVE ENOUGH TIME TO STOP THE VEHICLE BEFORE CRASHING INTO THE TRUCK. THE AIR BAGS DID NOT DEPLOY. THE CONTACT SUSTAINED MINOR BRUISING. THE VEHICLE WAS TOWED TO A LOCAL REPAIR FACILITY WHERE THE CONTACT WAS AWAITING REPAIRS. THE POLICE ADVISED THAT THE AIR BAGS SHOULD HAVE DEPLOYED UPON IMPACT. THE FAILURE MILEAGE AND CURRENT MILEAGES WERE 88,508. |
| 10411579 | CHEVROLET | SILVERADO | 2006 | 2010-07-28 | MY 2006 SILVERADO 2500 HD AIR BAG DID NOT DEPLOY DURING MY ACCIDENT ON JULY 28, 2010. I TRIED SENDING ALL INFORMATION IN THE MAIL BUT, YOU JUST SENT IT BACK TO ME. COPING THAT WAS SENT TO ME FROM GENERAL MOTORS OF THEIR EXPLANATION OF THEY ARE NOT THE ONES RESPONSIBLE FOR THIS BECAUSE THEY DIDN'T MAKE THIS PRODUCT. NOT TO MENTION THAT ONSTAR DIDN'T COME ON AS THEY SHOW ON THEIR TV ADS'.  IF I HAD NOT REGAIN CONSCIENCE. DON'T KNOW WHEN THEY WOULD HAVE FOUND ME THERE WHERE I WENT OFF THE ROAD JUST 4 MILES FROM MY HOME.  DON'T KNOW IF ANYONE WOULD HAVE THOUGHT OF CALLING ONSTAR ABOUT LOOKING FOR MY TRUCK.  IF GM VEHICLES ARE SO SAFE AND LEAD US TO BELIEVE HOW? SAFE AND RELIABLE THEIR VEHICLES ARE.  THEN WHY? THEY ARE NOT STANDING BEHIND THEIR PARTS NOW.  THE VEHICLE WAS TOTAL AND THE ONLY THING THAT SAVED ME WAS MY SEAT BELT. EVEN DOE I WAS STILL BADLY INJURED FROM MY NECK TO MY TAIL BONE.  GM DOESN'T CARE TO OWN UP TO NO KIND OF RESPONSIBILITY FOR ANYTHING.  I'M STILL AFRAID TO DRIVE MY 2010 CAMARO BECAUSE IT HAS THE SAME EQUIPMENT  AS THE 2006 PICKUP THAT I TOTALED.  I DRIVE IT WHENEVER I HAVE NO CHOICE.  WHEN THE DODGE TRUCK ISN'T HERE.  EVERY OTHER WEEK WHEN MY HUSBAND NEEDS IT.  I'VE SENT YOU ALL THE PICTURES AND SOME OF THE LETTERS THAT GM'S [XXX] HAS SENT TO ME BUT, YOU DIDN'T EVEN OPEN IT ALL YOU DID WAS SEND IT BACK UNOPENED.  WHAT'S UP WITH THIS???????????  MY NAME IS: [XXX] , MY ADDRESS IS:[XXX]; [XXX]   INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6). *TR |

| | | | | | |
|---|---|---|---|---|---|
| 10775393 | CHEVROLET | SILVERADO | 2006 | 2010-03-22 | TL* THE CONTACT OWNS A 2006 CHEVROLET SILVERADO. WHILE DRIVING AT 25 MPH, ANOTHER VEHICLE FAILED TO YIELD. AS A RESULT, THE CONTACT CRASHED INTO THE PASSENGER SIDE OF ANOTHER VEHICLE AND THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED HIP AND PELVIC INJURIES ON THE RIGHT SIDE THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 70,000. |
| 10717429 | CHEVROLET | TAHOE | 2006 | 2015-05-09 | DRIVER FELL ASLEEP RAN INTO THE BACK OF A SEMI TRUCK, AIRBAG DID NOT DEPLOY.  VEHICLE WAS A TOTAL LOSS. |
| 10217793 | CHEVROLET | TRAILBLAZER | 2006 | 2008-02-07 | AROUND 11:45PM A 2006 CHEVY TRAILBLAZER TRAVELING OVER THE SPEED LIMIT ON MY STREET CRASHED INTO A TREE, A PARKED CAR, AND THEN CONTINUED TO ROLL OVER ACROSS MY FRONT LAWN, LANDING SIDEWAYS SEVERAL TIMES.  THE OCCUPANTS WERE SEVERELY INJURED.     NO AIRBAGS DEPLOYED DURING THE CRASH.  THE DRIVER OF THE VEHICLE IS IN ICU NEEDING FACIAL RECONSTRUCTIVE SURGERY. *TR |
| 10227418 | CHEVROLET | TRAILBLAZER | 2006 | 2008-05-09 | WHILE DRIVING ON A DIRT ROAD THAT ONLY FITS ON CAR, I WAS INVOLVED IN A HEAD ON COLLISION INVOLVING A JEEP CHEROKEE.  THERE WAS EXTENSIVE FRONT DAMAGE HOWEVER, THE AIRBAG DID NOT DEPLOY NOR DID ONSTAR CONTACT ME.  I HAVE VERY PAINFUL NECK, HEAD, SHOULDER, AND RIGHT ARM PAIN. *TR |
| 10244652 | CHEVROLET | TRAILBLAZER | 2006 | 2008-08-28 | WE WERE INVOLVED IN A HEAD ON COLLISION WITH ANOTHER VEHICLE.  BOTH WERE TRAVELING AT APPROXIMATELY 45 MPH.  THE AIR BAGS DID NOT DEPLOY.  I WAS DRIVING THE VEHICLE AND HAVE A BROKEN RIGHT LEG, BROKEN LEFT HEEL AND ANKLE.  I WAS TEMPORARILY KNOCKED UNCONSCIOUS FROM HITTING THE STEERING WHEEL.  MY WIFE SUFFERED A BROKEN WRIST, FRACTURED PELVIS, AND FRACTURED TIBULA. *TR |
| 10364174 | CHEVROLET | TRAILBLAZER | 2006 | 2010-10-01 | IN APPROXIMATELY APRIL OF 2010 MY GAS GAGE ON MY 06 TRAILBLAZER QUIT WORKING. THE PART WAS NO LONGER UNDER WARRANTY AT 84K MILES. VERY DANGEROUS WHEN TRAVELING 400 MILES WITH ELDERLY AUNT AND SMALL CHILD 2X A WEEK. ON OCTOBER 1, 2010 I WAS INVOLVED IN A HIGH SPEED COLLISION WHEN A CAR PULLED IN FRONT OF ME, WHILE I WAS GOING 70MPH. THE AIRBAGS DID NOT DEPLOY, I SUFFERED MAJOR TRAUMA TO MY KNEES AND AM UNABLE TO WALK WELL OR DRIVE. I HIT MY HEAD ON THE STEERING WHEEL AND CONTINUE TO HAVE PAIN. MY ELDERLY AUNT BROKE 3 CERVICAL VERTEBRAE AND STILL HAS A TRACHIOTOMY OVER A MONTH LATER. SHE IS STILL IN THE HOSPITAL, AND IT IS UNKNOWN IF SHE WILL COME HOME. *TR |
| 10389988 | CHEVROLET | TRAILBLAZER | 2006 | 2011-02-24 | INERTIA REEL ON SEATBELT FAILED.  NO AIR BAG DEPLOYMENT.  2006 TRAILBLAZER, FULL STRAIGHT HEAD ON CRASH. *TR |
| 10524151 | CHEVROLET | TRAILBLAZER | 2006 | 2013-05-30 | THIS COMPLAINT IS BEING FILED ON BEHALF OF THE VEHICLE OWNER AND DRIVER.  THIS CHEVY TRAILBLAZER WAS  INVOLVED IN A TWO VEHICLE, DOUBLE FATAL CRASH.  THE FRONT OF THE TRAILBLAZER STRUCK THE DRIVER'S SIDE DOOR OF A CAVALIER THAT FAILED TO YIELD FROM A STOP SIGN.  THE TRAILBLAZER STAYED CONNECTED WITH THE CAVALIER, FORCING IT OFF THE LEFT SIDE OF THE ROADWAY AND INTO A LARGE TREE.  BOTH OCCUPANTS IN THE CAVALIER WERE FATALLY INJURED.  THE FRONT AIRBAGS DID NOT DEPLOY ON THE TRAILBLAZER AND NO EVENT WAS RECORDED ON THE AIRBAG CONTROL MODULE.  *TR |
| 10548331 | CHEVROLET | TRAILBLAZER | 2006 | 2013-10-10 | I WAS DRIVING DOWN THE HIGHWAY AND HAD GOT CUT OFF BY A CAR. I SWERVED AND AVOIDED HITTING THE CAR BUT ENDED UP HITTING THE MEDIAN ALMOST DIRECTLY HEAD ON. THE WHOLE FRONT OF THE VEHICLE WAS SMASHED IN AND THE VEHICLE WAS TOTALED. THE AIRBAGS NEVER WENT OFF, ME AND MY PASSENGER WERE BOTH WEARING OUR SEAT BELT AND I ENDED UP HITTING MY HEAD ON THE STEERING WHEEL LEAVING ME UNCONSCIOUS. AN AMBULANCE RUSHED ME TO THE HOSPITAL AND I RECEIVED 10 STITCHES ABOVE MY LEFT EYE.  *TR |
| 10550276 | CHEVROLET | TRAILBLAZER | 2006 | 2013-10-28 | TL* THE CONTACT OWNS A 2006 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 35 MPH, SHE LOST CONTROL OF THE VEHICLE WHILE DRIVING IN SNOWY WEATHER. THE VEHICLE NOSE DIVED INTO AN EMBANKMENT AND THEN CRASHED INTO A BOULDER. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT WAS TRANSPORTED TO THE HOSPITAL VIA AMBULANCE FOR TREATMENT OF A CONCUSSION AND BRUISING. THE FRONT PASSENGER WAS ALSO INJURED AND SUSTAINED BRUISING. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 102,000. |
| 10679561 | CHEVROLET | TRAILBLAZER | 2006 | 2014-10-06 | TL* THE CONTACT OWNED A 2006 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING AT 35 MPH, THE DRIVER DRIFTED OFF THE ROAD AND CRASHED THE VEHICLE INTO A TREE. THE AIR BAGS DID NOT DEPLOY. THE CONTACT SUSTAINED A FRACTURED NOSE AND LEFT CHEEKBONE THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED AND TOWED BACK TO THE CONTACTS RESIDENCE. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 199,000. |
| 10888990 | CHEVROLET | TRAILBLAZER | 2006 | 2016-07-21 | VEHICLE WAS TRAVELING ON CITY STREET AT 30MPH WHEN IT STRUCK A UTILITY POLE,  SHEARING IT OFF AT THE BASE. VEHICLE THEN TRAVELED STRAIGHT UP A HILL AND STRUCK A HOUSE, COMING TO REST THERE. NONE OF THE AIR BAGS DEPLOYED. NEWS STORY AT HTTP://WWW.WGEM.COM/CATEGORY/133158/VIDEO-LANDING-PAGE?&CLIPID=12610200&AUTOSTART=TRUE |

| | | | | | |
|---|---|---|---|---|---|
| 10955948 | CHEVROLET | TRAILBLAZER | 2006 | 2016-09-08 | LETTER FROM SENATOR NELSON ON BEHALF OF CONSTITUENT REGARDING GENERAL MOTOR SAFETY DEFECTS. *LD  THE CONSUMER SUGGESTED THERE WAS A DEFECT WITH THE GM AIR BAGS IN 2006 CHEVROLET TRAILBLAZER, IN WHICH THE DRIVER SUSTAINED A BRAIN INJURY AND HIS WIFE WAS INJURED, WHEN IT WAS IMPACTED ON THE DRIVER'S SIDE, RESULTING IN LEFT A-PILLAR CONTACT WHEN THE AIR BAG FAILED TO DEPLOY AND HIS SEAT BELT RESTRAINTS FAILED.  THE CRASH WAS OF ENORMOUS SEVERITY, WITH A SPEED CHANGE OF 38 MPH WITH A LINE FORCE IN THE DIRECTION OF THE A PILLAR. *JB |
| 10966507 | CHEVROLET | TRAILBLAZER | 2006 | 2017-02-27 | I WAS IN A CRASH AND NEITHER FRONT AIRBAG DEPLOYED, MY INSURANCE ADJUSTER QUESTIONED IF THE AIR BAG SYSTEM EVEN WORKS. I HAVE COPY OF THE ESTIMATE TO REPAIR AS WELL. DUE TO THE FORCE OF IMPACT EVEN LOCAL REPAIR SHOP STATED THAT MY AIR BAGS SHOULD HAVE GONE OFF AS WELL. IS THERE A RECALL ON THIS MODEL FOR AIR BAGS NOT DEPLOYING? I WAS IN A SECOND WRECK ON 3/7/17 AND NEITHER AIR BAG DEPLOYED AT THAT TIME EITHER AND THERE WAS NO BUMPER SO AIR BAGS SHOULD HAVE DEFINITELY GONE OFF. |
| 10403445 | GMC | ENVOY | 2006 | 2011-05-20 | I HAD A CRASH AT 45 MPH INTO A LARGE TREE $9000+ DAMAGE TO THE FRONT END OF MY CAR AND THE AIRBAG NEVER WENT OFF. ONSTAR WAS CALLED AND HELPED ME. |
| 10704170 | GMC | ENVOY | 2006 | 2015-03-22 | I WAS INVOLVED IN A HEAD ON COLLISION, WHERE A CAR CAME AROUND A BUS INTO MY LANE . IT WAS A CLEAR CUT CASE OF WHO WAS AT FAULT.  MY CONCERN IS THAT MY AIR BAG NEVER DEPLOYED. THERE IS A DRIVER AND PASSENGER AIRBAG  IN THAT MODEL. IF NOT FOR MY SEAT BELT , I WOULD HAVE GONE THROUGH THE WINDSHIELD AND  THE  VEHICLE WAS TOTALED FROM THE FORCE.  THERE ARE PICTURES I COULD FORWARD OF THE ACCIDENT. I WANTED TO KNOW IF THERE WAS ANY THING ELSE I COULD DO TO ADDRESS THIS ISSUE.  THANK YOU  *TR |
| 10780171 | GMC | YUKON | 2006 | 2015-08-21 | MY FATHER  WAS DRIVING FROM DIALYSIS ON THE DECLINE OF A BRIDGE WHEN HE PASSED OUT BEHIND THE WHEEL. HE WAS WEARING HIS SEATBELT, AND THE VEHICLE RESTED AFTER HITING A TREE. THE AIRBAGS DID NOT DEPLOY. I HAVE CONTACTED GMC AND THERE IS AN INVESTIGATION PENDING, THEY HAVE SENT A REPRESENTAIVE TO INSPECT THE VEHICLE AND I AM AWAITING THE OUTCOME. I HAVE CONTACTED COPART AND HAD THE VEHICLE PLACED ON HOLD TO ALLOW NHTSA THE OPPORTUNITY TO DO THE SAME, IF YOU CHOOSE. 5017 DUNCAN ROAD, PUNTA GORDA, FL (941) 505-9700. PLEASE FEEL FREE TO CONTACT ME WITH ANY QUESTIONS. |
| 11377560 | GMC | YUKON | 2006 | 2011-06-07 | AIRBAG FAILED FUNCTION DUE TO LACK OF  INFLATOR PERFORMANCE DURING MY HUSBANDS HEAD-ON CRASH AND HE SUFFERED COLLAR BONE AND RIB FRACTURES,MASSIVE HEAD TRAUMA RESULTING IN A CRAINIOTOMY,BRAIN DAMAGE AND DEATH ONE MONTH LATER. THE VEHICLE WAS TRAVELLING AT 45MPH ON A PAVED TWO LANE STREET. |
| 10275950 | BUICK | RAINIER | 2005 | 2009-06-30 | 2005 BUICK RAINIER WAS IN A HEAD ON  COLLISION WITH A CHRYSLER TOWN & COUNTRY VAN IN COMING TRAFFIC.  MY WIFE DRIVING THE RAINIER HIT HER HEAD ON THE STEERING WHEEL AND BENT IT. SHE RECEIVE A LARGE LACERATION REQUIRING ABOUT 30 STITCHES, CLAVICLE STRAIN, BROKEN COLLAR BONE AND MULTIPLE BRUISES. SHE WAS WEARING THE SEAT BELT.  COLLISION WAS STRONG ENOUGH TO LIFT THE REAR OF THE CAR OFF THE GROUND AND TURN IT FACING THE SAME DIRECTION AS THE VAN SHE HIT.  THE AIRBAGS DID NOT DEPLOY! *TR |
| 10152376 | CADILLAC | ESCALADE | 2005 | 2006-03-01 | HAD A FRONT END COLLISION WITH ANOTHER VEHICLE AND NONE OF MY AIRBAGS DEPLOYED. THE VEHICLE WAS 4 WEEKS OLD AND HAD 1850 MILES AT THE TIME OF THE ACCIDENT.   CALLED CADILLAC CUSTOMER SERVICE AND WAS GIVEN AN AIRBAG HISTORY LESSON VIA TELEPHONE FROM SOMEONE THAT HAD NEVER SEEN MY VEHICLE OR INSPECTED IT FOR DAMAGE AFTER THE ACCIDENT.  AT THE END OF OUR CONVERSATION I WAS TOLD ALL WAS OK, NONE OF MY AIRBAGS SHOULD HAVE DEPLOYED AND NOT TO WORRY ABOUT IT.  THE ENTIRE FRONT END OF MY VEHICLE WAS KNOCKED OFF, THE FRAME HAS MULTIPLE CRACKS AND IS BENT AS A RESULT OF THE COLLISION AND THE COLLISION CENTER IS 90% CERTAIN THE VEHICLE IS NOT REPAIRABLE. *JB |
| 10895442 | CADILLAC | SRX | 2005 | 2016-08-11 | AIRBAG DIDN'T DEPLOY IN AN ACCIDENT ON AUGUST 11 2016. AIRBAG IS FAULTY AND CONCERN ABOUT THE SAFETY OF THE 2005 SRC |
| 10968319 | CADILLAC | SRX | 2005 | 2017-03-14 | TL* THE CONTACT'S DAUGHTER OWNED A 2005 CADILLAC SRX. WHILE DRIVING APPROXIMATELY 40 MPH ON AN ICY, SNOWY ROAD, THE VEHICLE STARTED TO SKID AND THE DRIVER LOST CONTROL OF THE VEHICLE. THE DRIVER CRASHED INTO A CEMENT WALL. ALL THE AIR BAGS FAILED TO DEPLOY. THE DRIVER SUSTAINED HEAD INJURIES THAT REQUIRED MEDICAL ATTENTION ALONG WITH BRUISES TO THE CHEST, RIGHT ARM, AND LEG. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED AND DEEMED DESTROYED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 110,000. THE VIN WAS UNAVAILABLE. |
| 10120423 | CHEVROLET | EQUINOX | 2005 | 2005-05-01 | 2005 CHEVROLET EQUINOX REAR ENDED ANOTHER VEHICLE AFTER BEING HIT IN THE REAR WHILE STOPPED.  THE AIR BAGS DID NOT DEPLOY AND THE SEAT BELTS DID NOT ENGAGE.*MR  THE DRIVER SUSTAINED SOME INJURIES WHEN HE WAS PUSHED FORWARD INTO THE STEERING WHEEL AND DASH.  *NM |
| 10221708 | CHEVROLET | EQUINOX | 2005 | 1901-01-01 | 2005 CHEVY EQUINOX AIR BAGS DID NOT DEPLOY. CONSUMER STATES THAT HE WAS INVOLVED IN A FRONTAL CRASH AND AIR BAGS FAILED TO DEPLOY. HE STATES THAT THE CRASH SPEED WAS ABOUT 35 MPH.  *KB |

| | | | | | |
|---|---|---|---|---|---|
| 10221964 | CHEVROLET | EQUINOX | 2005 | 2007-12-15 | I HAD A HEAD ON COLLISION WITH A CONCRETE WALL IN MY 2005 CHEVROLET EQUINOX ON DECEMBER 15, 2007. I WAS TRAVELING ABOUT 55-60 MPH WHEN THE HEAD ON COLLISION OCCURRED. MY AIRBAGS DID NOT DEPLOY. HOWEVER THE TALC POWER AND THE SMELL CAME OUT.  I HAD AN INVESTIGATION DONE ON THE AIRBAGS. I WAS TOLD BY A GM INVESTIGATION REP THAT THE VEHICLE HAS TO SLOW DOWN 10-15 MPH FOR THE AIRBAGS TO DEPLOY. THE INVESTIGATION SHOWED THAT THE VEHICLE SLOWED DOWN 11.85 MPH WHICH FALLS WITHIN THE RANGE FOR THE AIRBAGS TO DEPLOY. I NEED A SECOND OPINION BECAUSE GM STATED THAT DESPITE WHAT THE REPORT SAYS, THEY ARE NOT AT FAULT FOR THE AIRBAGS.  *TR |
| 10266217 | CHEVROLET | EQUINOX | 2005 | 2009-04-14 | TL*THE CONTACT OWNS A 2005 CHEVROLET EQUINOX.  WHILE DRIVING 40 MPH, ANOTHER DRIVER PULLED OUT IN FRONT OF THE CONTACT'S VEHICLE.  AS A RESULT, THE CONTACT CRASHED INTO THE OTHER VEHICLE.  THE FRONT DRIVER'S SIDE AIR BAG FAILED TO DEPLOY AND THE CONTACT SUSTAINED MINOR NECK INJURIES.  A POLICE REPORT WAS FILED.  THE VEHICLE WAS INSPECTED BY HER INSURANCE AGENCY AND THEY STATED THAT IT WAS DESTROYED.  THE ADJUSTER WAS UNABLE TO DETERMINE WHY THE AIR BAGS DID NOT DEPLOY.  THE CONTACT CALLED THE MANUFACTURER AND WAS INFORMED THAT SHE WOULD RECEIVE A CALL BACK REGARDING THE CRASH.  THE FAILURE MILEAGE WAS 30,000. |
| 10440022 | CHEVROLET | EQUINOX | 2005 | 2011-12-13 | TL* THE CONTACT OWNS A 2005 CHEVROLET EQUINOX. THE CONTACT WAS DRIVING 30 MPH WHEN A DEER JUMPED A FENCE AND LANDED ON THE HOOD OF THE VEHICLE WITH EXTREME FORCE. THE CONTACT STATED THE ENGINE CONTINUED TO RUN BUT THE INTERIOR AND EXTERIOR LIGHTNING FAILED. THE AIR BAGS ALSO FAILED TO DEPLOY.  THE POLICE WERE NOT CONTACTED AND THERE WERE NO INJURIES. THE VEHICLE WAS TAKEN TO A LOCAL REPAIR SHOP AND THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE VIN WAS UNAVAILABLE. THE FAILURE AND THE CURRENT MILEAGES WERE 73,000.  UPDATED 01/10/12*LJ |
| 10489315 | CHEVROLET | EQUINOX | 2005 | 2012-12-15 | I WAS DRIVING, HIT ICE, FISH TAILED, STARTED TO SPIN, WENT HEAD FIRST INTO THE MEDIAN, PROBABLY GOING 30-45 MPH.  AFTER THAT WE CAME TO A STOP, AND WERE HIT BY A SEMI TRAILER TRAVELING AT APPROXIMATELY 45-60 MPH.  NEITHER IMPACT SET THE AIR BAGS OFF AND WE BELIEVE THAT IT SHOULD HAVE.  *TR |
| 10597676 | CHEVROLET | EQUINOX | 2005 | 2004-10-31 | TL* THE CONTACT OWNS A 2005 CHEVROLET EQUINOX.  WHILE DRIVING APPROXIMATELY 70 MPH ON THE HIGHWAY, THE CONTACT NOTICED THE KEY WAS DETACHING FROM THE IGNITION. THE DEALER STATED THAT THE VIN WAS NOT INCLUDED IN NHTSA CAMPAIGN NUMBER: 04V302000 (POWER TRAIN).  WHILE DRIVING 35 MPH, THE CONTACT WAS INVOLVED IN A CRASH AND THE AIR BAGS FAILED TO DEPLOY.  THE CONTACT WAS INJURED AND RECEIVED MEDICAL ATTENTION.  THE VEHICLE WAS REPAIRED BY THE DEALER.  THE MANUFACTURER WAS NOT NOTIFIED.  THE APPROXIMATE FAILURE MILEAGE WAS 70. |
| 10597688 | CHEVROLET | EQUINOX | 2005 | 2005-10-31 | DRIVING DOWN STREET CUT OFF BY SEMI RAN INTO FLASHING SIGN WITH NOWHERE ELSE TO GO. OVER HALF PASSENGER FRONT BUMPER WAS CRUSHED RADIATOR  SMASHED, WHOLE FRONT PASSENGER QUARTER SMASHED. CAR WAS UNDRIVEABLE BUT AIR BAGS DID NOT GO OFF.  *TR |
| 10716175 | CHEVROLET | EQUINOX | 2005 | 2013-12-13 | HEAD ON ACCIDENT INTO DITCH, AIRBAGS DID NOT GO OFF |
| 10936302 | CHEVROLET | EQUINOX | 2005 | 2016-12-15 | I WAS IN AN ACCIDENT ON 12/15/2016 WHERE I HIT SOMEONE FROM BEHIND.  I WAS DRIVING STRAIGHT DOWN THE HIGHWAY AND DIDN'T NOTICE THE PEOPLE IN FRONT OF ME STOPPING. WHEN I HIT THE BRAKES, IT WAS TOO LATE AND MY CHEST WENT FLYING AGAINST THE STEERING WHEEL.   WHEN MY EQUINOX HIT THEM, MY SEAT BELT DID NOT LOCK AND MY CHEST HIT THE STEERING WHEEL.  I HAD TO GO TO THE HOSPITAL BECAUSE OF THE FORCE OF THE IMPACT.  THE FORCE WAS SO HARD THAT THE AIR BAG DID NOT COME OUT.  I DON'T KNOW IF THERE IS AN AIR BAG INSIDE THE VEHICLE.  I COULD NOT CATCH MY BREATH AND I TESTED OUT MY SEAT BELT AND REALIZED IT DOES NOT LOCK WHEN BREAKING.  IT IS ACTUALLY LOSE THE WHOLE TIME I AM DRIVING.  THIS IS NOT SAFE FOR ME OR A PASSAGE THAT I HAVE IN THE CAR.  TESTED OUT THE PASSAGE SIDE AS WELL AND IT IS THE SAME THING.  *TR |
| 11023592 | CHEVROLET | EQUINOX | 2005 | 2017-09-06 | TL* THE CONTACT OWNS A 2005 CHEVROLET EQUINOX. WHILE DRIVING 45 MPH, THE CONTACT CRASHED INTO ANOTHER VEHICLE. ALL THE AIR BAGS FAILED TO DEPLOY. THE CONTACT NOTICED SMOKE COMING FROM THE RADIATOR. THE VEHICLE WAS TOWED TO XTREME COLOR INC. IN KANSAS CITY, KS 66102; 913-281-0830. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED A NECK AND BACK INJURY THAT REQUIRED MEDICAL ATTENTION. THE MANUFACTURER WAS NOT CONTACTED. THE APPROXIMATE FAILURE MILEAGE WAS 146,500. |
| 11127938 | CHEVROLET | EQUINOX | 2005 | 2018-07-20 | TL* THE CONTACT OWNS A 2005 CHEVROLET EQUINOX. WHILE DRIVING 24 MPH ON AN EXIT RAMP, THE VEHICLE INADVERTENTLY DROVE OFF THE SIDE OF THE RAMP AND CRASHED. THE AIR BAGS FAILED TO DEPLOY AND THE SEAT BELT FAILED TO RESTRAIN THE CONTACT. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE CONTACT SUSTAINED MINOR INJURIES TO THE HEAD AND HIPS THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO A TOW LOT. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND A FIELD INSPECTOR WAS SENT TO INSPECT THE VEHICLE. THE CONTACT WAS AWAITING THE INSPECTION RESULTS. THE VEHICLE WAS NOT TAKEN TO A DEALER FOR DIAGNOSTIC TESTING. THE FAILURE MILEAGE WAS 140,000. |

| 11191960 | CHEVROLET | EQUINOX | 2005 | 2019-03-27 | TL* THE CONTACT OWNS A 2005 CHEVROLET EQUINOX. WHILE DRIVING 35 MPH AND DRIVING STRAIGHT PREPARING TO MAKE A RIGHT TURN, THE CONTACT CRASHED INTO THE FRONT QUARTER PANEL OF ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. THE CONTACT SUSTAINED INJURIES TO THE HEAD AND ANKLE, WHICH REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO AN INDEPENDENT LOT. THE DEALER AND MANUFACTURER WERE NOT CONTACTED. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE FAILURE MILEAGE WAS 65,000. *DT  *TR |
| 11297402 | CHEVROLET | EQUINOX | 2005 | 2020-01-05 | TL* THE CONTACT OWNED A 2005 CHEVROLET EQUINOX. THE CONTACT STATED THAT WHILE DRIVING 55 MPH AND TURNING ON CURVE TOO FAST, CONTROL OF THE VEHICLE WAS LOST. THE VEHICLE SWERVED LEFT AND RIGHT ULTIMATELY COMING TO A STOP AFTER CRASHING INTO A TREE. THE AIR BAGS FAILED TO DEPLOY. DURING THE IMPACT THE CONTACT HEAD WAS HIT ON THE WINDSHIELD AND ABRASION TO THE KNEE WERE SUSTAINED. MEDICAL ATTENTION WAS NOT SOUGHT. A POLICE REPORT WAS FILED.  THE VEHICLE WAS TOWED TO A TOW YARD. THE VEHICLE WAS DESTROYED. THE DEALER AND MANUFACTURER WERE NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 165,000. |
| 10117624 | CHEVROLET | SILVERADO | 2005 | 2005-03-29 | WHILE DRIVING 40 MPH VEHICLE CRASHED INTO A STORE FRONT. UPON IMPACT,  DUAL AIRBAGS DID NOT DEPLOY. NO INJURIES REPORTED. *AK |
| 10137371 | CHEVROLET | SILVERADO | 2005 | 2005-09-20 | I HAD AN ACCIDENT ON TUESDAY SEPT. 20, 2005 DRIVING MY 2005 CHEVY PICKUP K2500 HD 4 WHEEL DRIVE. I LOST CONTROL AND WENT OFF HIGHWAY STRIKING A CITY DUMPSTER HEADON AND MOVING THE DUMPSTER APPROXIMATELY 50-60 FT. BY POLICE REPORT AND THAN GOING BACK ON HIGHWAY AND CROSSING ALL 4 LANES BEFORE THE TRUCK STOPPED. MY TRUCK WAS TOTALED BUT MY AIRBAG NEVER DEPLOYED. I WAS UNCONSCIOUS AND WAS AIRLIFTED TO VANDERBILT HOSPITAL IN NASHVILLE TN. WHY DIDN'T MY AIRBAG DEPLOY WITH A HEADON CRASH OF THIS FORCE? THIS SEEMS TO BE A DEFECT IN THE PRODUCT. I RECEIVED A 4 INCH CUT ACROSS THE BOTTOM OF MY CHIN THAT REQUIRED SEVERAL STITCHES AND VERY SORE FROM MY HEAD DOWN MY RIGHT LEG. STILL FOLLOWING UP WITH DOCTORS....  *NM |
| 10153906 | CHEVROLET | SILVERADO | 2005 | 2006-03-27 | DT*:  THE CONTACT STATED THE VEHICLE WAS INVOLVED IN AN ACCIDENT ON DRY ROADS.  TWO VEHICLES COLLIDED IN FRONT OF THE CONTACT, CAUSING AN EMERGENCY BRAKING SITUATION. THE CONTACT COLLIDED WITH THE REAR OF THE SECOND VEHICLE, AND THE AIR BAGS DID NOT DEPLOY.  THE CONTACT WAS INJURED IN THE ACCIDENT.  AN INDEPENDENT REPAIR SHOP WAS CONSULTED AND THEY WERE UNABLE TO DUPLICATE THE PROBLEM. |
| 10201747 | CHEVROLET | SILVERADO | 2005 | 2007-08-27 | AIRBAG FAILURE IN HEAD-ON COLLISION, TOTALING 2 TRUCKS.  *JB |
| 10455110 | CHEVROLET | SUBURBAN | 2005 | 2011-12-06 | TL* THE CONTACT OWNS A 2005 CHEVROLET SUBURBAN. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 30 MPH, SHE CRASHED INTO THE REAR OF A TRASH TRUCK. UPON IMPACT, THE AIR BAGS DID NOT DEPLOY. THE DRIVER SUSTAINED INJURIES TO THE LEFT ARM AND LEFT LEG. THE POLICE WERE CONTACTED AND A REPORT WAS FILED. THE VEHICLE WAS TOWED TO AN INDEPENDENT MECHANIC WHERE THEY DEEMED THE VEHICLE AS BEING DESTROYED. THE MANUFACTURER WAS CONTACTED AND AFTER DIAGNOSING THE VEHICLE, THEY ADVISED HER THAT THE VEHICLE WAS NOT TRAVELING FAST ENOUGH AT THE TIME OF IMPACT FOR THE AIRBAGS TO DEPLOY. THE FAILURE MILEAGE WAS APPROXIMATELY 80,000. |
| 10130316 | CHEVROLET | TAHOE | 2005 | 2005-07-16 | DT: ON JULY 16, 2005  WHILE TRAVELING AT 55 MPH CONSUMER'S VEHICLE  WAS INVOLVED IN A HEAD ON COLLISION WITH ANOTHER VEHICLE.  TOTALED THE OTHER VEHICLE.  UPON IMPACT, THE AIR BAGS DID NOT DEPLOY. VEHICLE HAS NOT  BEEN INSPECTED TO SEE WHY THEAIR BAGS  DID NOT DEPLOY.  AIR BAG LIGHT CAME ON.  CONSUMER CALLED THE DEALERSHIP, AND THEY ADVISED CONSUMER NOT DRIVE THE VEHICLE TO THE DEALERSHIP  BECAUSE THE AIRBAGS MIGHT DEPLOY. THE VEHICLE WAS TAKEN TO THE BODY SHOP YESTERDAY TO BE FIXED.  THE CONSUMER SPRAINED BACK AND NECK.  A POLICE REPORT WAS  ISSUED.*AK |
| 10200191 | CHEVROLET | TAHOE | 2005 | 2007-06-18 | AIR BAGS FAILED TO DEPLOY IN A CRASH. THE FRAME OF OUR 2005 CHEVROLET TAHOE WAS BUCKLED IN THE CRASH.  CRASH TEST DATA WAS RETRIEVED FROM THE VEHICLE, ALTHOUGH GENERAL MOTORS DOES NOT FEEL THAT THEY ARE IN A POSITION TO HONOR OUR REQUEST FOR DAMAGES AGAINST THEM. MY HUSBAND AND  I  BOTH RECEIVED BACK AND NECK INJURIES DURING THE ACCIDENT. *TR |
| 10335468 | CHEVROLET | TAHOE | 2005 | 2009-06-12 | TL*THE CONTACT OWNS A 2005 CHEVROLET TAHOE. THE CONTACT STATED THAT WHILE DRIVING AT APPROXIMATELY 55 MPH, THE VEHICLE CRASHED INTO A DEER BUT THE AIR BAGS DID NOT DEPLOY. THERE WAS EXTENSIVE DAMAGE TO THE VEHICLE. A POLICE REPORT WAS FILED. THE DEALER STATED THAT THE VEHICLE COULD BE INSPECTED AT THE CONTACT'S EXPENSE. THE BODY DAMAGE HAD BEEN REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 75,000. THE CURRENT MILEAGE WAS APPROXIMATELY 100,000. |
| 10494771 | CHEVROLET | TAHOE | 2005 | 2013-01-24 | 2005 CHEVY TAHOE WAS IN AN ACCIDENT AND HIT FRONT DRIVERS SIDE INTO DIRT EMBANKMENT AT 35-40 MPH PUSH DRIVERS SIDE TIRE BACK ABOUT 3" AND BUCKLED HOOD AND FENDER AND THE AIRBAGS DIDN'T GO OFF. *TR |

| | | | | | |
|---|---|---|---|---|---|
| 10748242 | CHEVROLET | TAHOE | 2005 | 2015-08-11 | TL* THE CONTACT OWNED A 2005 CHEVROLET TAHOE. WHILE DRIVING APPROXIMATELY 50 MPH, THE REAR DRIVER SIDE WHEEL BECAME DETACHED FROM THE VEHICLE AND CAUSED THE CONTACT TO LOSE CONTROL OF THE VEHICLE. THE CONTACT CRASHED INTO A WOODEN POLE, WHICH CRASHED THROUGH THE FRONT WINDOW. THE VEHICLE FLIPPED OVER THREE TIMES AND LANDED UPSIDE DOWN. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED BROKEN BONES AND INJURIES THAT REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS TOWED TO THE TOWING COMPANY. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 131,000. |
| 10134099 | CHEVROLET | TRAILBLAZER | 2005 | 2005-05-12 | I WAS INVOLVE IN AN ACCIDENT WHERE I HAVE LOST CONTROL OF A CHEVROLET TRAILBLAZER AND HIT A CENTER DIVIDER ON THE FREEWAY. WITH THE FRONT BUMPER SMASHED ONTO THE CENTER DIVIDER, THE AIR BAG FAILED TO DELPLOY. |
| 10141221 | CHEVROLET | TRAILBLAZER | 2005 | 2005-10-19 | CHEVY TRAILBLAZER ('05 OR '06) REAR ENDED ANOTHER VEHICLE AT A SPEED FAST ENOUGH TO TOTAL THE TRAILBLAZER. THE AIRBAG DID NOT DEPLOY AND THE DRIVER SUSTAINED CHEST AND HEART INJURIES. *NM |
| 10143976 | CHEVROLET | TRAILBLAZER | 2005 | 2005-11-20 | DT: THE CONTACT'S  BOY FRIEND WAS TRAVELING AT  78 MPH WHEN HE LOST CONTROL OF THE VEHICLE, AND IT  WAS INVOLVED IN  A FRONTAL IMPACT.  THE VEHICLE ROLLED OVER SIX TIMES. UPON IMPACT,  THE AIR BAG DID NOT DEPLOY.  THE CONTACT AND PASSENGER  SUSTAINED INJURIES.  MANUFACTURER WAS NOT CONTACTED.  *AK |
| 10161963 | CHEVROLET | TRAILBLAZER | 2005 | 2006-07-08 | 7/8/06, WHILE TRAVELING HIGHWAY 31 IN NILES, MICHIGAN, SPEED LIMIT OF 70 MPH, WE HIT A DEER HEAD ON WITH OUR 2005 CHEVY TRAILBLAZER LS, S/N.  WE HAD NO TIME TO EVEN BRAKE PRIOR TO THE IMPACT. THE IMPACT TOOK OUT THE FRONT END OF THE CAR, PUSHING THE RADIATOR BACK INTO THE ENGINE COMPARTMENT.  NEITHER AIR BAG DEPLOYED.  THERE WERE 4 PASSENGERS IN THE VEHICLE, INCLUDING AN 11-YEAR OLD BOY, AND A 14-YEAR OLD BOY.  *JB |
| 10173065 | CHEVROLET | TRAILBLAZER | 2005 | 2006-11-08 | DT*:  THE CONTACT STATED WHILE DRIVING 40 MPH ENTERING THE FREEWAY, THE VEHICLE REAR ENDED ANOTHER VEHICLE  AND NONE OF THE AIR BAGS DEPLOYED.  THE AIRBAG WARNING LIGHT DID NOT ILLUMINATE PRIOR TO THE CRASH. A POLICE REPORT WAS FILED IN THE STATE OF CALIFORNIA. THERE WERE TWO PEOPLE INJURED; THE NOSE OF THE CHILD WAS BLEEDING AND THE CONTACT SUFFERED A NECK INJURY.  THE CHILD WAS 6 YEARS OLD AND THE CONTACT WAS 22 YEARS OLD. BOTH OF THE PASSENGERS WERE WEARING SEAT BELT.   THE WEATHER WAS CLOUDY. A POLICE REPORT WAS PROCESS. THE SERVICE DEALER AND THE MANUFACTURER WERE NOT NOTIFIED. |
| 10178482 | CHEVROLET | TRAILBLAZER | 2005 | 2007-01-08 | TL* - THE CONTACT'S 2005 CHEVY TRAILBLAZER WAS PURCHASED USED ON AUGUST 13, 2005 FROM BERGLUND CHEVROLET OF VIRGINIA, WITH 13000 MILES.  THE VEHICLE WAS INVOLVED IN AN ACCIDENT ON JANUARY 8TH, 2007 WERE THERE WAS ONE FATALITY AND FIVE PEOPLE WERE INJURED.  A SECOND VEHICLE, A BUICK LASABRE, FAILED TO STOP AT STOP SIGN WHILE MAKING A LEFT HAND TURN.  THE CONTACTS VEHICLE STRUCK THE SECOND VEHICLE DIRECTLY ON THE DRIVERS SIDE.  THE CONTACTS VEHICLE WAS TRAVELING AT 50 MPH.  THE DRIVER OF THE SECOND VEHICLE WAS PRONOUNCED DEAD AT THE SCENE.  THE CONTACTS VEHICLE PASSENGER AND DRIVER SIDE AIR BAGS NEVER DEPLOYED, EVEN THOUGH THERE WERE PASSENGERS IN ALL SEATS. SIX STATE TROOPERS WERE ON THE SCENE AND NO ONE WAS SITED. |
| 10205154 | CHEVROLET | TRAILBLAZER | 2005 | 2007-10-06 | I WAS DRIVING ON AN ELEVATED INTERSTATE AND LOST CONTROL OF THE VEHICLE. I HIT THE GUARDRAIL IN A DIRECT FRONTAL IMPACT. THE ENTIRE FRONT OF THE CAR WAS CRUSHED ABOUT 40 INCHES. THE CAR IS TOTALED BUT THE AIRBAGS DID NOT DEPLOY. I SUFFERED SOME INJURIES ON MY HEAD EVEN THOUGH I HAD MY SEATBELT ON.  *JB |
| 10221319 | CHEVROLET | TRAILBLAZER | 2005 | 2008-02-21 | I WAS DRIVING ON A 2 LANE ROAD GOING 45MPH.  A CAR WAS FOLLOWING CLOSE BEHIND ME SO I WENT TO GET INTO RIGHT LANE AND MY TRUCK DID 5 360 AND HIT 3 TREES HEAD ON AND AIR BAG NEVER DEPLOYED.  *TR |
| 10239994 | CHEVROLET | TRAILBLAZER | 2005 | 2008-08-25 | TL*THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER.  WHILE DRIVING 60 MPH, THE CONTACT STRUCK THE GUARDRAIL.  THE VEHICLE WAS DESTROYED AND THE AIR BAGS FAILED TO DEPLOY. THE CONTACT HAS PICTURES OF THE VEHICLE.  SHE WAS TRANSPORTED TO THE HOSPITAL AND IS CURRENTLY IN PAIN.  A POLICE REPORT WAS FILED.  THE AIR BAGS WERE NOT SERVICED PRIOR TO THE CRASH. THE VIN WAS UNKNOWN.  THE FAILURE MILEAGE WAS 44,000. |
| 10241433 | CHEVROLET | TRAILBLAZER | 2005 | 2005-09-07 | TL*THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER.  WHILE DRIVING APPROXIMATELY 45 MPH, THE CONTACT CRASHED INTO ANOTHER VEHICLE, WHICH RESULTED IN A THREE CAR PILE UP. THE FRONT END OF HER VEHICLE WENT UNDERNEATH THE PRECEDING VEHICLE.  THE AIR BAGS FAILED TO DEPLOY.  SHE WAS UNABLE TO RECEIVE ASSISTANCE FROM ON STAR DUE TO THE AIR BAG FAILURE.  THERE WERE NO PRIOR FAILURES WITH HER VEHICLE.  THE CONTACT AND THREE CHILDREN IN SAFETY SEATS SUSTAINED MINOR INJURIES.  A POLICE REPORT WAS FILED.  THE CURRENT AND FAILURE MILEAGES WERE 76,000. |

| | | | | | |
|---|---|---|---|---|---|
| 10254382 | CHEVROLET | TRAILBLAZER | 2005 | 2008-12-16 | MY DAUGHTER HAD AN ACCIDENT ON 12/16/2008. SHE HAS(HAD) A 2005 CHEVROLET TRAILBLAZER LS, 2 WHEEL DRIVE SUV. WHILE DRIVING ON THE OHIO TURNPIKE DURING A SNOW STORM SHE LOST CONTROL AND HAD A HEAD ON CRASH WITH A CEMENT RETAINING WALL WHILE TRAVELING BETWEEN 25 TO 35 MILES PER HOUR. THE AIR BAG DID NOT DEPLOY DURING THE ACCIDENT AND SHE SLAMMED HARD INTO THE STEERING WHEEL RESULTING IN A CONCUSSION, CHEST INJURIES, SORE WRIST, DIZZINESS, AND STILL HAS RINGING IN ONE EAR. SHE DID HAVE HER SAFETY BELT ON AT THE TIME OF THE ACCIDENT AND ALWAYS WEARS IT.  WE ARE BAFFLED AS TO WHY THE AIR BAG DID NOT COME OUT AS IT WOULD HAVE SAVE HER MUCH PAIN. THE CAR IS A TOTAL WRECK AS DESCRIBED BY THE PONTIAC DEALER THAT HER INSURANCE COMPANY TOWED THE SUV TO FOR REPAIRS. THE TRAILBLAZER SUSTAINED MUCH DAMAGE SUCH AS A BENT FRAME, BROKEN TRANSMISSION, ALL OF THE MOTOR MOUNTS AND THE TRANSMISSION MOUNTS BROKE LOOSE FROM THE FRAME, BENT STEERING WHEEL, AND ALL PARTS FROM THE ENGINE FORWARD ARE EITHER GONE OR BENT BEYOND REPAIR. WITH THIS VIOLENT OF A CRASH NO ONE HAS BEEN ABLE TO TELL US WHY THE AIR BAGS DID NOT DEPLOY. WE BOUGHT THIS SUV USED FROM A CHEVY DEALER IN JULY OF 2005 AND IT HAD AROUND 8000 MILES ON IT AT THAT TIME. I WOULD LIKE TO KNOW IF THERE IS SOME WAY OF CHECKING THE FUNCTIONALLY OF THIS AIR BAG TO SEE IF THERE MAY BE A POSSIBLE PROBLEM WITH IT. HER CRASH WAS HEAD ON AND IN MY OPINION VIOLENT ENOUGH TO ACTIVATE THE DRIVER SIDE AIR BAG. ANY SUGGESTIONS AS TO WHAT WE SHOULD DO? *TR |
| 10256371 | CHEVROLET | TRAILBLAZER | 2005 | 2009-01-12 | TL*THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER.  THE CONTACT WAS THE PASSENGER IN A VEHICLE TRAVELING 35 MPH ON ICY ROAD CONDITIONS.  ANOTHER VEHICLE PULLED OUT IN FRONT OF THEM AND CRASHED INTO THE VEHICLE.  THE VEHICLE WAS DESTROYED AND THE AIR BAGS FAILED TO DEPLOY.  THE CONTACT WAS TRANSPORTED TO THE HOSPITAL BY AMBULANCE. HER NECK WAS SNAPPED BACKWARDS.  THE SEAT BELT PROPERLY RESTRAINED HER AT THE TIME OF THE CRASH.  A POLICE REPORT WAS FILED AND THE OTHER DRIVER RECEIVED A CITATION.  THE DEALER WAS UNABLE TO DETERMINE WHY THE AIR BAGS FAILED.  THE FAILURE MILEAGE WAS 80,000. |
| 10266680 | CHEVROLET | TRAILBLAZER | 2005 | 2009-04-20 | AIRBAGS DID NOT DEPLOY. A DRIVER PULLED OUT IN FRONT OF MY WIFE. SHE WAS TRAVELING AT NEARLY 40MPH. SHE STRUCK ANOTHER VEHICLE BROAD SIDE. THE AIRBAGS DID NOT DEPLOY. THE FRONT BUMPER FROM OUR TRAILBLAZER WAS ABOUT 30 YARDS BEHIND OUR VEHICLE. MY WIFE EXPERIENCED SEVERE BRUISING TO ABD AND CHEST. HER SEATBELT WAS IN USE. *TR |
| 10269109 | CHEVROLET | TRAILBLAZER | 2005 | 2009-04-13 | LOST CONTROL OF CAR ON NARROW ROAD UNDER NORMAL DRIVING CONDITIONS.  COLLISION INTO TWO TREES HEAD ON.  DRIVER SIDE AIRBAG NEVER DEPLOYED. *TR |
| 10328284 | CHEVROLET | TRAILBLAZER | 2005 | 2010-04-29 | I WAS IN AN ACCIDENT WHERE ANOTHER DRIVER PULLED OUT IN FRONT OF ME CROSSING ONCOMING TRAFFIC. I HIT HIM BROADSIDE DOING APPROXIMATELY 30-35 MILES PER HOUR. MY FRONT END WAS NEARLY  SHOVED ALL THE WAY UP TO THE WINDSHIELD. MY 2005 TRAILBLAZER WAS TOTALED. MY AIRBAG DID NOT DEPLOY AND IF IT WASN'T FOR MY SEATBELT I WOULD HAVE WENT THROUGH THE WINDSHIELD THE IMPACT WAS SO HARD. I SUSTAINED A HURT SHOULDER AND ARM AND PROBABLY WOULDN'T HAD SUCH A PAINFUL INJURY IF THE AIRBAG HAD OF DEPLOYED. *TR |
| 10357310 | CHEVROLET | TRAILBLAZER | 2005 | 2010-07-09 | TL* THE CONTACT OWNS A 2005 CHEVROLET TRAIL BLAZER. THE CONTACT WAS DRIVING 50 MPH ON A SLICK MOUNTAIN ROAD WHEN THE VEHICLE HYDROPLANED AND CRASHED INTO THE SIDE OF A MOUNTAIN BEFORE FALLING INTO A DITCH. THE AIR BAGS DID NOT DEPLOY AND THE CONTACT AND TWO PASSENGERS SUSTAINED INJURIES. THE VEHICLE WAS DESTROYED. THE VEHICLE WAS NOT INSPECTED FOR THE FAILURE OF THE AIR BAGS. THE CONTACT WAS ADVISED BY HIS INSURANCE ADJUSTER THAT THE AIR BAGS SHOULD HAVE DEPLOYED. A POLICE REPORT WAS AVAILABLE. THE VIN WAS NOT AVAILABLE. THE FAILURE AND CURRENT MILEAGE WAS APPROXIMATELY 100,000. |
| 10398899 | CHEVROLET | TRAILBLAZER | 2005 | 2011-04-28 | AIR BAG DID NOT DEPLOY IN HEAD-ON COLLISION.  *TR |
| 10470760 | CHEVROLET | TRAILBLAZER | 2005 | 2012-07-27 | TL* THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT THE DRIVER WAS TRAVELING BETWEEN 30 AND 40 MPH WHEN THE VEHICLE CRASHED INTO ANOTHER VEHICLE HEAD ON AND THE AIR BAGS FAILED TO DEPLOY. THE DRIVER SUSTAINED INJURIES TO THE HEAD, MOUTH, CHEST, LEG, AND WRIST. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE VEHICLE WAS NOT TAKEN TO THE DEALER. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE AND CURRENT MILEAGE WAS 40,000. |
| 10475331 | CHEVROLET | TRAILBLAZER | 2005 | 2012-06-27 | TL* THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. THE CONTACT WAS TRAVELING 45 MPH WHEN HE CRASHED AGAINST THE STREET MEDIAN, A UTILITY POLE AND THEN INTO A BUILDING. THE CONTACT STATED THAT NONE OF THE AIR BAGS IN THE VEHICLE DEPLOYED. THE CONTACT SUSTAINED LESIONS TO THE FACE, A CONTUSION TO THE RIGHT EYE AND CONTUSIONS TO THE CHEST AND LOWER ABDOMEN AREA. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE, VEHICLE WAS INSPECTED HOWEVER, THE FINDINGS WERE NOT DISCLOSED TO CONTACT. THE FAILURE AND CURRENT MILEAGE WAS 118,000. |

| | | | | | |
|---|---|---|---|---|---|
| 10477042 | CHEVROLET | TRAILBLAZER | 2005 | 2012-09-17 | TL* THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. THE CONTACT WAS DRIVING IN RAINY WEATHER AT VARIOUS SPEEDS WHEN HE UNEXPECTEDLY CRASHED INTO ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED FOR THE INCIDENT. THE CONTACT SUSTAINED SEVERE HEAD TRAUMA AND WAS TRANSPORTED BY AN AMBULANCE TO THE HOSPITAL. THE VEHICLE WAS DESTROYED AND TOWED TO A SAVAGE FACILITY. THE MANUFACTURER WAS NOTIFIED OF THE PROBLEM. THE APPROXIMATE FAILURE MILEAGE WAS 122,000.  UPDATED 10/31/12 *BF  UPDATED 11/02/12 |
| 10477257 | CHEVROLET | TRAILBLAZER | 2005 | 2012-05-20 | TL* THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING 30 MPH ATTEMPTING TO AVOID IMPACTING A DEER ON THE ROAD, HE CRASHED OFF A 9 FOOT EMBANKMENT AND NONE OF THE AIR BAGS DEPLOYED. THE CONTACT BECAME UNCONSCIOUS AFTER HIS HEAD CRASHED INTO THE STEERING WHEEL. ALSO, THE CONTACT SUFFERED SEVERE NECK INJURIES. THE VEHICLE WAS INSPECTED BY THE DEALER BUT THE RESULTS WERE INCONCLUSIVE. THE MANUFACTURER WAS NOTIFIED BUT OFFERED NO ASSISTANCE. THE FAILURE AND CURRENT MILEAGE WAS 108,429. THE VIN WAS UNAVAILABLE.   UPDATED 10/31/12 *CN UPDATED 11/9/2012 *JS |
| 10669444 | CHEVROLET | TRAILBLAZER | 2005 | 2014-11-18 | HIT BLACK ICE. TRUCK SLID OFF THE ROAD AND  FRONT END IMPACTED THE DITCH CAUSING HEAVY DAMAGE TO THE FRONT END. AIR BAG FAILED TO DEPLOY CAUSING INJURY.   *JS |
| 10678235 | CHEVROLET | TRAILBLAZER | 2005 | 2015-01-21 | TL*THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING AT 25 MPH, ANOTHER VEHICLE CRASHED INTO THE FRONT PASSENGER SIDE OF THE CONTACT'S VEHICLE. AS A RESULT, THE CONTACT CRASHED INTO A SIGN AND THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED BACK INJURIES AND THE PASSENGER SUSTAINED NECK AND BACK INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE CONTACT WAS UNABLE TO CONFIRM IF THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 122,000. THE VIN WAS UNAVAILABLE. |
| 10689540 | CHEVROLET | TRAILBLAZER | 2005 | 2015-02-16 | TL* THE CONTACT OWNED A 2005 CHEVROLET TRAILBLAZER. WHILE DRIVING VARIOUS SPEEDS, THE VEHICLE SLID AND CRASHED. THE DRIVER SIDE AIR BAG FAILED TO DEPLOY. THE VEHICLE WAS NOT INCLUDED IN NHTSA CAMPAIGN NUMBER: 06V417000 (AIR BAGS). THE CONTACT SUSTAINED LACERATIONS TO THE FACE, STITCHES UNDER THE EYEBROWS ON BOTH EYES, AND AN INJURED NECK THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE VIN WAS NOT AVAILABLE. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS NOT AVAILABLE. |
| 10721128 | CHEVROLET | TRAILBLAZER | 2005 | 2015-04-27 | 2005 CHEVY TRAILBLAZER WAS DRIVEN BY MY GRANDDAUGHTER. SHE WAS TRYING TO ENTER ONTO I-10 INTERSTATE AND WAS GOING TOO FAST ON THE ENTRANCE RAMP. ROAD CONDITIONS WERE HAZARDOUS AS IT WAS A SEVERE RAIN STORM. SHE HYDROPLANED AND HIT A VEHICLE IN FRONT OF HER WHICH CAUSED HER TO SPIN INTO ONCOMING TRAFFIC. SHE WAS HIT ON THE DRIVER'S SIDE AND THE TRUCK SPUN AROUND SEVERAL TIMES BEFORE IT STOPPPED. THE AIRBAG DID NOT DEPLOY!!! THE POLICE OFFICER AND THE TOW COMPANY DRIVER SAID SHE WAS LUCKY TO BE ALIVE.    MY CONCERN IS THIS COULD HAVE BEEN A FATAL ACCIDENT AND THE AIRBAG FAILED TO DEPLOY. THE TRAILBLAZER WAS TOTALED AS THE AXLE AND THE ENGINE WERE ON THE GROUND. THE DRIVER'S SIDE FRONT WHEEL CAME OFF.  I HAVE ALWAYS LIKE CHEVY VEHICLES BUT AM NOW HESITANT TO PURCHASE ANOTHER ONE B/C OF THIS ISSUE WITH THE AIR BAG. |
| 10885198 | CHEVROLET | TRAILBLAZER | 2005 | 2016-06-20 | HEAD ON COLLISION BOTH VEHICLES TRAVELING ABOUT 30MPH ON IMPACT AND TRAILBLAZER AIR BAGS DID NOT DEPLOY. I HAD MY SEATBELT ON AND WAS NOT INJURED. |
| 10983668 | CHEVROLET | TRAILBLAZER | 2005 | 2017-05-02 | TL* THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. WHILE DRIVING 35 MPH, THE CONTACT CRASHED INTO THE REAR OF ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS FILED. THE DRIVER SUSTAINED VARIOUS INJURIES TO THE FACE, WHICH REQUIRED MEDICAL ATTENTION. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE VEHICLE WAS TOWED TO A TOW YARD AND WAS NOT DIAGNOSED FOR THE AIR BAG FAILURE. THE FAILURE MILEAGE WAS 140,000. |
| 11011530 | CHEVROLET | TRAILBLAZER | 2005 | 2017-07-27 | AIRBAG DID NOT WORK |
| 10111298 | GMC | ENVOY | 2005 | 2005-01-25 | COMPLAINT RECEIVED VIA E-MAIL.   MY WIFE WAS IN HER 2005 GMC ENVOY WHEN IT WAS HIT ON THE DRIVER'S TIRE, AND WAS DRIVEN INTO A CONCRETE POWER POLE AT 40 MPH HEAD ON.  THE POWER LINES WERE KNOCKED DOWN. DRIVER'S SIDE AIR BAG NEVER DEPLOYED, AND HER HEAD HIT THE STEERING, CAUSING A BUMP ON THE HEAD, A BLACK EYE AND A CUT LIP.*AK |
| 10119967 | GMC | ENVOY | 2005 | 2005-04-22 | SEVERE CAR CRASH WITH MY LEASED 2005 GMC ENVOY. MUCH SIDE AND FRONT DAMAGE OCCURED, BUT AIR BAGS DID NOT DEPLOY. GMC WILL BE SENDING SOMEONE FROM THE PROTECTION ALLEGATION DEPARTMENT TO PERFORM A DIAGNOSTIC TEST ON THE AIR BAGS WITHIN THE NEXT 14 DAYS. THE ACCIDENT OCCURED ON 4/22/05.   I DO NOT WANT THE VEHICLE REPAIRED AND GIVEN BACK TO ME FOR THE FOLLOWING 2 REASONS: THE VEHICLE INCURRED (IN MY OPINION, POLICE REPORT, ALLSTATE INSURANCE CO., STERLING AUTO BODY REPAI SHOP) ETC ... EXTENSIVE DAMAGE.   THE 2ND REASON IS THE AIRBAGS, AS STATED, DID NOT DEPLOY. IF ANYONE WERE TO BE SEATED IN THE PASSENGER SEAT, THEY WOULD HAVE BEEN SERIOUSLY HURT.  I HAVE READILY AT MY DISPOSAL ANY AND ALL ADDITIONAL INFO. WHICH I WILL GLADLY SUBMIT  WHEN NECESSARY. |

| 10183935 | GMC | ENVOY | 2005 | 2007-02-13 | TL* - THE CONTACT OWNS A 2005 GMS ENVOY.  IN MID FEBRUARY 2007  THE CONTACT'S  VEHICLE WAS INVOLVED IN A HEAD ON COLLISION WHILE DRIVING AT 35 MPH.  THE CONTACT DROVE INTO A TREE DUE TO ICY ROAD CONDITIONS.  NONE OF THE AIR BAGS  DEPLOYED. THERE WERE NO PASSENGERS IN THE VEHICLE. THE CONTACT WAS WEARING A SEAT BELT. THERE WERE NO WARNING INDICATOR LIGHTS ON THE DASHBOARD BEFORE OR AFTER THE CRASH.  THE VEHICLE WAS TOWED TO A THE DEALER, AND THE INSURANCE COMPANY ADVISED THE CONTACT THAT THE VEHICLE WAS TOTALED.  THE CONTACT HAD REQUESTED THAT THE MANUFACTURER ISSUE A COMPUTER READ OUT INDICATING WHY THE AIR BAGS DIDN'T DEPLOY. THE DEALER SENT THE CONTACT PRIOR TO THE COLLISION A DIAGNOSTIC EMAIL STATING THE VEHICLE WAS OPERATING NORMALLY.  A POLICE REPORT WAS TAKEN.   THE CURRENT AND FAILURE MILEAGE WERE BOTH 25000.*AK |
| 10257735 | GMC | ENVOY | 2005 | 2009-01-28 | TL*THE CONTACT OWNS A 2005 GMC ENVOY.  THE CONTACT WAS INVOLVED IN A HEAD-ON CRASH.  THE CONTACT WAS SEVERELY INJURED AND THE ENTIRE FRONT END OF THE VEHICLE WAS CRUSHED.  ALL FOUR TIRES BLEW OUT AND THE FRONTAL AIR BAGS FAILED TO DEPLOY.  THERE WERE NO OTHER PASSENGERS IN THE VEHICLE AND NO MAINTENANCE WAS PERFORMED ON THE VEHICLE PRIOR TO THE CRASH.  THE VEHICLE WAS DESTROYED AND TOWED FROM THE SCENE.  A POLICE REPORT WAS FILED.  THE MILEAGES, SPEED, AND VIN WERE UNKNOWN. |
| 10463248 | GMC | ENVOY | 2005 | 2011-07-15 | TL* THE CONTACT OWNED A 2005 GMC ENVOY. THE CONTACT STATED WHILE DRIVING 55 MPH, HE CRASHED INTO A TREE. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED MINOR TISSUE DAMAGE ON THE UPPER BODY FROM THE IMPACT. THE VEHICLE WAS TOWED TO A REPAIR SHOP, WHERE IT WAS DECLARED DESTROYED. A POLICE REPORT WAS FILED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE; HOWEVER, THEY PROVIDED NO ASSISTANCE. THE CURRENT AND FAILURE MILEAGE WERE UNAVAILABLE.  UPDATED 09/24/2012 *JS  THE CONSUMER STATED THE ACCIDENT WAS INITIATED BY A VEHICLE GOING WEST BOUND THAT CROSSED THE SOLID DOUBLE LINES, ULTIMATELY CAUSING A DOMINO EFFECT. THE CONSUMER'S VEHICLE WAS DAMAGED WHEN HE TRIED TO AVOID HITTING THE VEHICLE BY SWERVING SIDEWAYS AND SLIDING INTO THE GRASS. HE TRIED STOPPING THE VEHICLE WHILE IT WAS STILL ON THE PAVEMENT BUT HE INEVITABLY RAN INTO THE DITCH AND FLEW AIRBORNE INTO A TREE, AND THE TRUCK OVERTURNED. UPDATED 03/25/14  UPDATED 01//22/15. *JB.......UPDATED 03/17/16 *BF UPDATED 09/06/16.*JB  UPDATED 09/18/2017*JS  *JS |
| 10503799 | GMC | ENVOY | 2005 | 2013-03-15 | THE ACCIDENT HAPPENED ON 2-15-2013 ON PENNSYLVANIA AVENUE SE DURING RUSH HOUR THE OTHER CAR DID NOT YIELD TO ONGOING TRAFFIC ON PENNSYLVANIA AVENUE AND DODGED OUT FROM A SIDE STREET AND HIT MY VEHICLE ON THE FRONT SIDE AND MY SON WHO IS 13 HEAD HIT THE DASHBOARD AND MY DAUGHTERS DOG FLEW FROM THE BACK SEAT UP TO THE FRONT. THE OTHER VEHICLE AIRBAG DID DEPLOY BUT MINES DID NOT.  *TR |
| 10607728 | GMC | ENVOY | 2005 | 2008-03-16 | SINGLE CAR ACCIDENT WITH CAR RUNNING OFF ROAD RAN INTO DITCH, OVERTURNED AND HITTING PHONE POLE.  AIRBAG DID NOT DEPLOY. QUESTIONABLE SEAT BELT ISSUES.  *TR |
| 10632374 | GMC | ENVOY | 2005 | 2011-09-16 | ON SEPTEMBER 16TH, 2011, I WAS INVOLVED IN AN AUTO ACCIDENT THAT WAS A HEAD ON CRASH. THE AIR BAGS NEVER DEPLOYED AND I SUSTAINED BACK INJURIES. ON SITE OF THE ACCIDENT MY BACK WAS HURTING SOME BUT DID NOT GO TO HOSPITAL UNTIL LATER THAT EVENING, AFTER THE ADRENALIN AND THE SHOCK WORE OFF. I NOW HAVE SEVER BACK PROBLEMS WITH A LOT OF PAIN AND WAS DECLARED DISABLED IN 2012. AT THE TIME OF DOING RESEARCH I WAS TOLD BY ON-STAR, WHICH NEVER CAME ON, THAT IF MY AIR BAGS DIDN'T DEPLOY THEY WOULDN'T COME ON.. BUT, THE FRAME WAS BENT SO BAD THAT THEY TOTALED THE VEHICLE, WITH A LOT OF OTHER DAMAGE. THE WHOLE FRONT WAS DAMAGED, THE BUMPER WAS DESTROYED ALONG WITH DAMAGE TO THE MOTOR. AND WE COULD NOT UNDERSTAND WHY THE AIR BAGS DID NOT DEPLOY.  *TR |
| 10908300 | GMC | ENVOY | 2005 | 2016-08-22 | I HAD THREE CARS IN FRONT OF ME STOPPED. I DID NOT SEE ANY BREAKL LIGHTS AND I HIT THE CAR IN FRONT OF ME PUSHING THE OTHER CARS TO HIT EACH OTHER. MY FRONT END OF MY CAR WAS SEVERELY DAMAGED BAD ENOUGH TO DAMAGE THE RADIATOR AND DESTROY MY AC UNIT. I'M NOT SURE WHAT ELSE WAS DAMAGED. IT SENT THE PERSON IN FRONT OF ME AND MYSELF TO THE EMERGENCY ROOM. " MY AIR BAGS DID NOT DEPLOY ". MY VEHICLE WAS MOVING ON A CITY STREET. |

| | | | | | |
|---|---|---|---|---|---|
| 10370915 | ISUZU | ASCENDER | 2005 | 2010-12-10 | I WAS DRIVING EAST ON INTERSTATE 10 IN PENSACOLA, FLORIDA.  A VEHICLE TRAVELING WEST LOST CONTROL AND CAME ACROSS THE SLOPED GRASSY MEDIAN, OVERTURNED AN SLID ACROSS MY TRAFFIC LANE, CAUSING ME TO CRASH INTO THEIR ROOF.  MY ODOMETER SAYS AT THE POINT OF IMPACT I WAS ONLY TRAVELING 48 MPH.  ONCE I REALIZED I WAS ALIVE, I WAS IN AWE THAT THE AIRBAG DID NOT DEPLOY.  I SPOKE TO A MANAGER AT ISUZU IN CALIFORNIA.  HE REQUESTED THE VIN NUMBER AND SOME OTHER PERSONAL INFORMATION AND SAID IF THE INSURANCE COMPANY ADJUSTER SAW ANY MANUFACTURER DEFECTS, THEN THE INSURANCE COMPANY WOULD CONTACT ISUZU.  I ALSO CONTACTED MY INSURANCE PROVIDER, THEY SAID SINCE I WAS NOT KILLED IN THE ACCIDENT, THEY WOULD NOT PURSUE ANYTHING WITH ISUZU.  I THOUGHT SOMEONE SHOULD KNOW BECAUSE I WAS PINNED IN THE VEHICLE AND HAD TO BE CUT OUT.  THE TOW TRUCK DRIVER ALSO MENTIONED SOMETHING ABOUT THE STEERING COLUMN HAD MALFUNCTIONED, NOT SURE WHAT THE MALFUNCTION WAS, BUT IT DID NOT DO WHAT IT WAS DESIGNED TO DO FOR SAFETY PURPOSES.  I SUSTAINED A FRACTURED RIGHT FOOT, BRUISED LUNGS/RIBS, NUMEROUS LACERATIONS, BRUISED LEFT KNEE AND LEFT ELBOW.  *TR |
| 10449350 | ISUZU | ASCENDER | 2005 | 2012-02-20 | WE HAD A CAR ACCIDENT AND THE AIRBAGS DIDN'T ACTIVATE...THE IMPACT WAS VERY HARD THAT THE INSURANCE COMPANY DECIDED TO TOTAL THE CAR BECAUSE THE DAMAGE WAS TO BIG...I AM PREGNANT AND I HAVE 2 MORE KIDS, AND I'M SO DISAPPOINTED WITH THIS EXPERIENCE THAT SOMETHING COULD HAPPENED TO ME OR MY KIDS IF WE WERE IN THE ACCIDENT.  *TR |
| 10228093 | BUICK | RAINIER | 2004 | 2008-03-20 | MY FIANCE WAS IN ACCIDENT WITH MY SUV AND THE AIR BAG DIDN'T DEPLOY CAN I SUE THE COMPANY WHO SOLD ME THE VEHICLE?  *TR |
| 10266690 | BUICK | RAINIER | 2004 | 2009-04-05 | WHILE TRAVELING  AT A SPEED OF APPROX 50-55 ON A INTERSTATE, I WAS REARED ENDED BY A AUTO, MY AUTO WAS STRUCK THEN SHOVELED INTO A CEMENT WALL BLOCK AND THEN BOUNCED INTO ON COMING TRAFFIC TO THE OTHER CEMENT WALL BLOCK ON THE OPPOSITE SITE WHILE TRYING TO STOP, I WAS WEARING A SEAT BELT, THE VEHICLE'S AIR BAGS DIDN'T GO OFF AT ALL IN THE VEHICLE. A HEAD INJURY OCCURRED, NECK AND SHOULDER INJURIES OCCURRED.  THE AUTO WAS A TOTAL LOSS!  *TR |
| 10638828 | BUICK | RAINIER | 2004 | 2012-11-17 | A PERSON RAN TWO STOP SIGNS AND ENTERED VEHICLE PATH.  THE TWO VEHICLES HIT HEAD ON AND THIS VEHICLE MADE IMPACT AT 40 MPH AFTER IT DECELERATED FROM 43 MPH.  THE TWO VEHICLE HIT HEAD ON WITH NEAR PERFECT EVEN IMPACT, BASED UPON THIRD PARTY VISUAL DESCRIPTION OF THE FRONT END OF THE VEHICLES DAMAGE.  THE VEHICLE DECELERATED AT A MAX SDM RECORDED VELOCITY CHANGE RATE OF -14.07 (MPH) AND A ALGORITHM ENABLED TO MAXIMUM SDM RECORDED VELOCITY CHANGE OF 127.5 MSEC.  DRIVER OF THE VEHICLE HIT THE STEERING WHEEL WITH HEAD KNOCKING THE PERSON OUT.  AIRBAGS DID NOT DEPLOY.  ONSTAR WAS NOT NOTIFIED THAT THERE WAS AN ACCIDENT.  COMPUTER SHOWS THE SEATBELT WAS WORN BY DRIVER.  WHEN THE ONSTAR WAS MANUALLY ACTIVATED BY THE DRIVER WHEN HE CAME TOO, THE GPS SHOWED THE VEHICLE FURTHER NORTH UP THE ROAD CAUSING INCORRECT POLICE DIVISION BEING CALLED. VEHICLE WAS GOING UP HILL WHEN THE ACCIDENT OCCURRED. OTHER VEHICLE WAS GOING DOWNHILL.  THE OTHER VEHICLE WAS A SUBARU.  VEHICLE COMPUTER DATA WAS RETRIEVED BY A BOSCH CRASH DATA RETRIEVAL TOOL USING VERSION 8.0 SOFTWARE.  I HAVE A COPY OF THIS DATA.  GM REPORTS THAT THE COMPUTER WAS CORRECT NOT TO DEPLOY AIRBAGS AND NOT CALL FOR HELP USING ONSTAR.    THE VEHICLE HAD A SOFTWARE MODIFICATION DUE TO A FAULT WITH THE FAN SPEED CALIBRATION SETTING OFF A WARNING LIGHT.  WE HAD COMPLAINED THAT THINGS WERE NEVER CORRECT AFTER THIS MODIFICATION OF THE SOFTWARE AND TOOK THE VEHICLE TO TWO DIFFERENT DEALERSHIPS COMPLAINING THAT COMPUTERS WERE DOING STRANGE THINGS AFTER THIS FIRMWARE MODIFICATION.   VEHICLE VIN: [XXX]  INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6).  *TR |

| | | | | | |
|---|---|---|---|---|---|
| 10638830 | BUICK | RAINIER | 2004 | 2012-11-17 | A PERSON RAN TWO STOP SIGNS AND ENTERED VEHICLE PATH. THE TWO VEHICLES HIT HEAD ON AND THIS VEHICLE MADE IMPACT AT 40 MPH AFTER IT DECELERATED FROM 43 MPH. THE TWO VEHICLE HIT HEAD ON WITH NEAR PERFECT EVEN IMPACT, BASED UPON THIRD PARTY VISUAL DESCRIPTION OF THE FRONT END OF THE VEHICLES DAMAGE. THE VEHICLE DECELERATED AT A MAX SDM RECORDED VELOCITY CHANGE RATE OF -14.07 (MPH) AND A ALGORITHM ENABLED TO MAXIMUM SDM RECORDED VELOCITY CHANGE OF 127.5 MSEC. DRIVER OF THE VEHICLE HIT THE STEERING WHEEL WITH HEAD KNOCKING THE PERSON OUT. AIRBAGS DID NOT DEPLOY. ONSTAR WAS NOT NOTIFIED THAT THERE WAS AN ACCIDENT. COMPUTER SHOWS THE SEATBELT WAS WORN BY DRIVER. WHEN THE ONSTAR WAS MANUALLY ACTIVATED BY THE DRIVER WHEN HE CAME TOO, THE GPS SHOWED THE VEHICLE FURTHER NORTH UP THE ROAD CAUSING INCORRECT POLICE DIVISION BEING CALLED. VEHICLE WAS GOING UP HILL WHEN THE ACCIDENT OCCURRED. OTHER VEHICLE WAS GOING DOWNHILL. THE OTHER VEHICLE WAS A SUBARU. VEHICLE COMPUTER DATA WAS RETRIEVED BY A BOSCH CRASH DATA RETRIEVAL TOOL USING VERSION 8.0 SOFTWARE. I HAVE A COPY OF THIS DATA. GM REPORTS THAT THE COMPUTER WAS CORRECT NOT TO DEPLOY AIRBAGS AND NOT CALL FOR HELP USING ONSTAR. THE VEHICLE HAD A SOFTWARE MODIFICATION DUE TO A FAULT WITH THE FAN SPEED CALIBRATION SETTING OFF A WARNING LIGHT. WE HAD COMPLAINED THAT THINGS WERE NEVER CORRECT AFTER THIS MODIFICATION OF THE SOFTWARE AND TOOK THE VEHICLE TO TWO DIFFERENT DEALERSHIPS COMPLAINING THAT COMPUTERS WERE DOING STRANGE THINGS AFTER THIS FIRMWARE MODIFICATION. VEHICLE VIN: [XXX] INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6).  *TR |
| 11099015 | BUICK | RAINIER | 2004 | 2016-04-29 | TL* THE CONTACT OWNED A 2004 BUICK RAINIER. WHILE DRIVING APPROXIMATELY 30 MPH IN THE RAIN, THE VEHICLE HYDROPLANED. THE CONTACT LOST CONTROL OF THE VEHICLE AND CRASHED INTO A WALL. AS A RESULT, THE CONTACT WAS RENDERED UNCONSCIOUS AND TRANSPORTED TO THE HOSPITAL VIA AMBULANCE. THE CONTACTS HEAD STRUCK THE DRIVER'S SIDE WINDOW AND THE CONTACT REMAINED IN A COMA FOR SEVERAL MONTHS. THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED INJURIES TO THE RIGHT SIDE OF THE HEAD, WHICH CAUSED WALKING COMPLICATIONS AND A LOSS OF FEELING IN THE RIGHT SIDE OF THE BODY. IN ADDITION, THE CONTACT SUFFERED A LOSS OF SIGHT IN THE RIGHT EYE DUE TO A CRUSHED SKULL. THE VEHICLE WAS TOWED TO A TOW LOT AND DEEMED DESTROYED. A DEALER WAS NOT MADE AWARE OF THE AIR BAG FAILURE. THE VEHICLE WAS NOT DIAGNOSED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS UNKNOWN. |
| 10125145 | CADILLAC | ESCALADE | 2004 | 2005-05-11 | INVOLVED IN A HORRIFIC AUTO ACCIDENT WITH OTHER VEHICLE.   HIT IN FRONT PASSENGER & FRONT PART OF VEHICLE (BY RADIATOR AREA) AT HIGH  SPEED.  EST.SPEED APPROX. 45-55 MPH WITH NO SKID MARKS, OTHER VEHICLE STOPPED WHEN IT HIT US.  NEW GM/ESCALADE-SUV/"04- WITH 11,000 MILES, BOUGHT NEW DECLARED TOTAL LOSS, WITH APPARENT SERIOUS FRAME DAMAGE/BENT 12 IN. AND FOUND STRESS CRK. SHOULD GIVE AN IDEA HIGH SPEED OTHER VEHICLE TRAVELING.  8-10 SECONDS FROM IMPACT, ONSTAR CAME ON AUTOMATICALLY, THEY RECD. EMERGENCY MESSAGE VIA SATELLITE,  VEHICLE HAD BEEN IN A SERIOUS MVA AND AIR BAGS DEPLOYED.  WE DIDN'T CALL ONSTAR THEY CALLED US.  NEXT DAY WE CALLED ASKED HOW THEY KNEW WE WERE ACCIDENT.  TOLD US DEPENDING ON THE SEVERITY, THEY GET CERTAIN SIGNALS, WHICH OURS HAD ADVISED OF SERIOUSNESS & AIRBAG DEPLOYMENT.  UNBELIEVABLY, NONE OF OUR 4 AIRBAGS DEPLOYED.  WE & HUNDREDS OF OUR FRIENDS ARE IN TOTAL DISBELIEF WHEN YOU SEE THE CONDITION VEIHICLE WAS LEFT IN & THAT 4 AIR BAGS DIDN'T DEPLOY.  WE WERE INJURED BUT BY GRACE OF GOD INJURIES WERE NOT LIFE THREATENING. HEAD,UPPERANDLOWERBACK,NECK,LEGS,SHOULDER,HIPSAND ARMS EXTREMLEY SORE. HAS BEEN 33 DAYS SINCE THE ACCIDENT AND AM STILL FEELING PAINS & SERIOUS HEADACHES BUT ALIVE. HAVE DECIDED TO BECOME ADVOCATES AND REPORT ACCIDENT/INCIDENT TO POSSIBLY SAFE A PERSON(S) LIFE AND MAKE GENERAL MOTORS AWARE THAT THEY HAVE A POSSIBLE DEFECT IN THEIR AIR BAGS, LEADING TO MASSIVE RECALL AND POSSIBLY A CLASS ACTION LAW SUIT IF NOT FIXED.  THIS IS A VERY SERIOUS MATTER.  ANYTIME ANYONE IS HIT AT RATE OF SPEED THAT WE WERE, TO LEAVE BRAND NEW SUV ESCALADE A TOTAL LOSS/ 12 IN. BENT FRAME & STRESS CRACK & 4 AIR BAGS NOT DEPLOY - LEADS US TO BELIEVE OF A SERIOUS PROBLEM AND A SERIOUS ONE FOR GM/CADILLAC.  CALL FOR FURTHER DETAILS  (956) 533-0811 (956)358-5272.  THANK YOU & GOD BLESS. |
| 10127916 | CADILLAC | ESCALADE | 2004 | 2005-05-11 | THE CONSUMER WAS INVOLVED IN AN A SERIOUS ACCIDENT AND THE AIR BAGS DID NOT DEPLOY. THERE WERE 2 INJURIES.  *JB  *SC |

| | | | | | |
|---|---|---|---|---|---|
| 10152700 | CADILLAC | ESCALADE | 2004 | 2005-07-16 | ON JULY 16TH, 2005; I WAS INVOLVED IN A LIFE CHANGING, SINGLE VEHICLE AUTO ACCIDENT. I STRUCK A HILL WITH THE FRONT RIGHT SIDE OF THE VEHICLE WITH ENOUGH EXCESSIVE FORCE TO FLIP THIS CADILLAC ESCALADE HEAD FIRST. THE ESCALADE FLIPPED TWICE, IMPACTING THE FRONT OF THE VEHICLE AND LANDING UP SIDE DOWN. ASTONISHINGLY, OUT OF THE FOUR AIR BAGS IN THIS VEHICLE, NOT ONE OF THEM DEPLOYED. I PURCHASED THIS 2004 ESCALADE BRAND NEW AND AT THE TIME OF THE ACCIDENT IT ONLY HAD 15,000 MILES. THE VEHICLE IS A TOTAL LOSS AND IT IS UTTERLY UNBELIEVABLE THAT THE AIR BAGS DID NOT DEPLOY. I WAS SO IMPRESSED WITH THE RAVED REVIEWS, CONSUMER REPORTS INCLUDING SAFETY FEATURES, AND STYLISH BODY THAT THIS CADILLAC ESCALADE BECAME THE VEHICLE OF MY DREAMS. NEEDLESS TO SAY, I AM VERY DISAPPOINTED WITH MY CADILLAC EXPERIENCE. I DO NOT TRUST THIS VEHICLE ENOUGH TO GET INTO ANOTHER ONE. I KNOW THAT I AM ONLY HERE BECAUSE GOD DECIDED THE SPARE MY LIFE. AS A DIRECT RESULT OF THIS ACCIDENT I FREQUENTLY SUFFER SEVERE MIGRAINES, DIZZY SPELLS, BLURRED VISION, MEMORY LOSS, AND ANXIETY/PANIC ATTACKS ALL WHICH KEEP ME FROM SLEEPING. IT IS EXTREMELY DIFFICULT TO COMMUTE FROM DOCTORS APPOINTMENTS AND WORK FOR FEAR OF ANOTHER ACCIDENT. THE NEXT WEEK I HAD SEVERE CHEST, SHOULDER AND LOWER BACK PAINS; ALL OF WHICH I AM BEING TREATED FOR ON A REGULAR BASIS. I ALSO SEEK TREATMENT FROM A NEUROLOGIST FOR THE HEAD INJURY. I BELIEVE THAT THIS VEHICLE HAS A SERIOUS PROBLEM WITH THE AIR BAGS AND GM SHOULD STRONGLY CONSIDER INVESTIGATING THIS MATTER. *NM |
| 10386829 | CADILLAC | ESCALADE | 2004 | 2010-02-10 | TL* THE CONTACT OWNS A 2004 CADILLAC ESCALADE. WHILE DRIVING APPROXIMATELY 65-75 MPH, THE CONTACT FELL ASLEEP. THE VEHICLE DRIFTED OFF THE ROAD AND CRASHED INTO A BRIDGE BARRIER. THE CONTACT SUSTAINED A BROKEN WRIST AND FACIAL LACERATIONS. THE FRONT SEAT PASSENGER WAS AIR-LIFTED TO THE HOSPITAL AND SUSTAINED A BROKEN RIGHT LEG AND SEVERE FACIAL INJURIES. THE REAR SEAT PASSENGER SUSTAINED INJURIES TO THE SPINE. THE AIRBAGS FAILED TO DEPLOY WITH THE MASSIVE IMPACT. A POLICE REPORT WAS FILED AND THE VEHICLE WAS TOWED TO A COLLISION CENTER.  UPDATED 10/14/11 |
| 10436436 | CADILLAC | ESCALADE | 2004 | 2011-11-01 | I WAS IN AN MVA ON NOV. 1, 2011 THAT TOTALED MY 2004 ESCALADE.  NONE OF THE AIRBAGS DEPLOYED, DESPITE DAMAGE TO ALL SIDES OF THE AUTOMOBILE, INCLUDING FRONT END IMPACT. THE CAR ACTUALLY ROLLED. THE FRAME WAS BENT AND THE FRONT HIT AN EMBANKMENT NOSE FIRST WITH GREAT IMPACT. I SUFFERED SEVERAL INJURIES, INCLUDING HEAD TRAUMA.  *TR |
| 10324984 | CADILLAC | SRX | 2004 | 2010-01-19 | 2004 CADILLAC SRX INVOLVED IN A FRONT END RASH ON JAN 19, 2010. SEVERE FRONT END CRASH HOWEVER AIRBAGS DID NOT DEPLOY. *TR |
| 10638570 | CADILLAC | SRX | 2004 | 2014-09-17 | TL* THE CONTACT OWNS A 2004 CADILLAC SRX. THE CONTACT STATED THAT A TIRE BLEW OUT CAUSING THE VEHICLE TO SPIN OUT OF CONTROL AND CRASH. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED AND ONE INJURY WAS REPORTED THAT DID NOT REQUIRE MEDICAL ATTENTION. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 120,000. |
| 10245434 | CHEVROLET | ASTRO | 2004 | 2008-10-10 | MY WIFE WAS DRIVING A 2004 CHEVY ASTRO VAN APPROX. 35-40 MPH ON A TWO-WAY STREET. ANOTHER DRIVER FROM THE OPPOSITE DIRECTION CUT ACROSS INTO HER LANE AND HAD A HEAD-ON COLLISION. SHE SUFFERED A BROKEN WRIST & BRUISED RIBS. SHE HAD THREE OF OUR CHILDREN IN THEIR SEATS. THEY WERE SHAKEN AND HAD SEATBELT BRUISES. THE VAN WAS NOT DRIVABLE AND WAS TOWED AWAY.   THE POLICE & THE TOW DRIVER REPORTED THAT THE AIRBAGS DID NOT DEPLOY. WE HAVE SOME EXPECTATION THAT THE AIRBAGS WOULD HAVE SECONDARY ROLE TO MINIMIZE INJURIES. MY COMPLIANT THAT THE HARD COLLISION WAS SUFFICIENT TO DEPLOY SAFETY EQUIPMENT BUT DID NOT WORK AS DESIGNED. WAS THERE A RECALL FOR AIRBAG FAILURES FOR THIS MODEL OF VEHICLE? *TR |
| 10057529 | CHEVROLET | SILVERADO | 2004 | 2004-01-27 | WHILE DRIVING 40 MPH  VEHICLE WAS INVOLVED IN A HEAD ON COLLISION. UPON IMPACT, DUAL AIR BAGS DID NOT DEPLOY.  PASSENGER SUSTAINED TO NECK, JAW,  AND A BROKEN ARM. *AK *JB |
| 10065268 | CHEVROLET | SILVERADO | 2004 | 2004-03-30 | WHILE DRIVING 60 MPH DRIVER APPLIED THE BRAKES AND  PEDAL WENT TO THE FLOOR.  THIS CAUSED THE DRIVER TO LOSE CONTROL OF THE VEHICLE, AND  HIT ANOTHER VEHICLE ON THE PASSENGER SIDE. UPON IMPACT,  BOTH AIR  BAGS DID NOT DEPLOY. THERE WERE NO INJURIES. *AK |
| 10073357 | CHEVROLET | SILVERADO | 2004 | 2004-05-10 | THE CONSUMER STATED THE FRONTAL AIR BAGS DID NOT DEPLOY DURING AN ACCIDENT. THERE WERE NO INJURIES.  THE DRIVER HAD THE VEHICLE TOWED TO A BODY SHOP.  *JB   WHILE TRAVELING AT 30 MPH AND  APPROACHING AN INTERSECTION, A SECOND VEHICLE ENTERED ON THE CONSUMER'S LEFT HAND SIDE, THERE WAS NO TIME TO REACT,  THE CONSUMER STRUCK THE SECOND VEHICLE ON IT'S RIGHT SIDE.  THE DRIVERS SIDE AIR BAG DID NOT DEPLOY.  *SC  *JB |
| 10083968 | CHEVROLET | SILVERADO | 2004 | 2004-06-19 | WHILE DRIVING AT 35 MPH CONSUMER'S VEHICLE WAS INVOLVED IN A FRONTAL COLLISION. UPON IMPACT, NONE OF THE FRONTAL AIRBAGS DEPLOYED. DRIVER SUSTAINED MINOR BRUISES TO THEIR CHEST FROM THE SEAT BELT, AND THE FRONT PASSENGER SUSTAINED A BRUISED KNEE. THIS COLLISION RESULTED IN $800.00 FRONTAL DAMAGE.  *AK |

| | | | | | |
|---|---|---|---|---|---|
| 10086614 | CHEVROLET | SILVERADO | 2004 | 2004-08-06 | 2001 CHEVROLET PICKUP INVOLVED IN A CRASH WITH A TREE AND AIR BAG DID NOT DEPLOY. DRIVE SUSTAINED SEVERE INJURY TO MOUTH BY HITTING STEERING WHEEL, DISPLACING FIVE LOWER FRONT TEETH CAUSING EXTENSIVE PAIN HAVING TEETH REPOSITIONED.  *JB |
| 10105126 | CHEVROLET | SILVERADO | 2004 | 2004-12-10 | WHILE DRIVING 60 MPH VEHICLE HYDROPLANED, LOST CONTROL, AND CRASHED INTO A BUILDING HEAD ON . UPON IMPACT,  DRIVER'S SIDE AIR BAG DID NOT DEPLOY, AND  PASSENGER'S SIDE AIR BAG WAS DEACTIVATED.  NO INJURIES REPORTED. *AK |
| 10117538 | CHEVROLET | SILVERADO | 2004 | 2005-04-01 | CONSUMER'S VEHICLE WAS INVOLVED IN A FRONTAL COLLISION WITH AN OAK TREE AT 5 MPH. UPON IMPACT,  NEITHER FRONTAL AIR BAG DEPLOYED. ALTHOUGH  CONSUMER WAS PROPERLY RESTRAINED  THE CRASH PUSHED THE ENGINE THROUGH THE FIREWALL AGAINST THE PASSENGER'S SEAT. DRIVER SUSTAINED INJURIES, AND AN  AMBULANCE TRANSPORTED THE DRIVER TO THE LOCAL HOSPITAL. *AK |
| 10134302 | CHEVROLET | SILVERADO | 2004 | 2005-08-23 | DT:  2004 CHEVROLET SILVERADO.  THE CONSUMER WAS IN AN ACCIDENT ON AUGUST 23, 2005. WHILE DRIVING 40 MPH.   A DEER CAME ONTO THE ROAD, CONSUMER'S VEHICLE SWERVED TO AVOID IT, AND  WENT INTO RAVINE.  TOOK OUT TWO TREES.  THIS DAMAGED THE FRONT END OF THE VEHICLE.  UPON IMPACT, THE AIRBAGS DID NOT DEPLOY.  THE VEHICLE WAS DRIVEN HOME, AND IS CURRENTLY AT THE AUTO BODY SHOP.  THERE HAS BEEN NO DETERMINATION AS TO WHY THE AIR BAGS DID NOT DEPLOY.  A POLICE REPORT TAKEN.  THE CONSUMER SUSTAINED INJURIES. SHE BRUISED THE CHEST, AND SHE HAD A BULGING DISC I NECK NEAR  SPINAL CORD. *AK |
| 10134631 | CHEVROLET | SILVERADO | 2004 | 2005-08-28 | DT:  THE CONTAC OWNS A 2004 CHEVROLET SILVERADO.  THE CONTACT'S VEHICLE WAS INVOLVED IN A FRONT END COLLISION  WHILE TRAVELING 65 MPH ON AUGUST 28, 2005. UPON IMPACT,  THE AIR BAGS DID NOT DEPLOY.  THERE WERE NO WARNING LIGHTS ON INDICATING THERE WAS A PROBLEM WITH THE AIR BAG SYSTEM.   THE CONTACT  STATED ANOTHER VEHICLE LOST CONTROL OF  AND HIT THE SIDE OF  CONTACT'S VEHICLE,  CAUSING IT TO HIT THE CENTER MEDIAN.  THE CONSUMER  CONTACTED THE DEALERSHIP AND THE MANUFACTURER.  *AK |
| 10141161 | CHEVROLET | SILVERADO | 2004 | 2005-10-25 | DT:  THE CONTACT STATED THE COMPANY TRUCK THAT HE DROVE WAS INVOLVED IN  AN ACCIDENT. UPON IMPACT,  THE AIRBAGS DID NOT DEPLOY.  THE ENTIRE FRONT END OF THE VEHICLE WAS DESTROYED.  THE CONTACT SUSTAINED  INJURIES. HE BRUISED HIS CHEST, SHIN AND TORE  THE TENDON IN HIS ANKLE.  THERE HAD BEEN NO ACCIDENTS IN THIS VEHICLE PRIOR TO THIS.  A POLICE REPORT  WAS TAKEN AT THE SCENE.     *AK |
| 10149082 | CHEVROLET | SILVERADO | 2004 | 2006-01-10 | ON JAN. 10 OF 2006 I LOST CONTROL OF MY 2004 CHEVY SILVERADO WHILE I WAS DRIVING ON ICY ROAD. I HIT A CONCRETE DIVIDER HEAD ON. MY CONCERN IS THAT THE AIR BAG NEVER DEPLOYED EVEN THOUGH THE DAMAGE TO THE TRUCK WAS QUITE BIG. I WAS GIVEN A ESTIMATE OF $9820 OF DAMAGE BECAUSE THEY HAVE TO REPLACE THE BODY FRAME. EVEN WITH ALL THIS DAMAGE MY AIRBAG NEVER DEPLOYED. *NM |
| 10153763 | CHEVROLET | SILVERADO | 2004 | 2006-03-20 | WHILE  DRIVING ON SLICK ROADS MY TRUCK WENT OFF THE ROAD, DOWN A HILL AND CRASHED INTO AN EMBANKMENT. THE ENTIRE FRONT END WAS SEVERELY DAMAGED. THE FRAME WAS BENT, THE BUMPER WAS WRAPPED UP UNDER THE FENDER, GRILL GUARD PUSHED INTO THE RADIATOR. UPON IMPACT NEITHER OF THE AIRBAGS DEPLOYED. MY FACE SLAMMED INTO THE STEERING WHEEL BREAKING MY NOSE. TRUCK SALVAGED. *JB |
| 10155380 | CHEVROLET | SILVERADO | 2004 | 2006-02-19 | I HAD AN ACCIDENT IN MY 2004 CHEVY TRUCK AT A SPEED OF APPROX 80 MPH  HEAD ON IMPACT. THE TRUCK WAS TOTALED BUT MY AIR BAGS DIDN'T WORK.  I MADE A COMPLAINT TO GMAC, THEY HAD AN INVESTIGATION AND ACCORDING TO THEM THERE WAS NOTHING WRONG WITH THE AIR BAGS.  I FIND THAT HARD TO BELIEVE WITH THAT KIND OF IMPACT, THIS IS A SAFETY ISSUE AND I HAVE 2001 CHEVY  SUBURBAN THAT MY WIFE DRIVES WITH MY CHILDREN. CAN YOU PLEASE LOOK INTO THIS BECAUSE I WOULD LIKE TO KNOW GMAC IS NOT TAKEN RESPONSIBILITY FOR THE AIR BAG FAILURE. THANK GOD I WAS WEARING MY SEAT BELT , BECAUSE IT WAS THE ONLY THING THAT SAVED MY LIFE. *NM |
| 10156562 | CHEVROLET | SILVERADO | 2004 | 2004-09-04 | DT*:  THE CONTACT STATED WHILE STOPPED AT A STOP SIGN, THE VEHICLE WAS HIT ON THE DRIVER'S SIDE FRONT END.  THE AIR BAGS DID NOT DEPLOY.  SEAT BELTS WERE IN USE HOWEVER BACK AND NECK INJURIES WERE SUSTAINED.  THE IMPACT WAS SO SEVERE; BOTH PASSENGER TIRES CAME OFF THE RIMS AND DUG INTO THE PAVEMENT.  THE POLICE WERE ON SCENE AND A REPORT WAS FILED.  THE VEHICLE WAS TOWED TO DEALER, UPON INSPECTION NO DETERMINATION COULD BE MADE WHY THE AIR BAGS DID NOT DEPLOY.  THE MANUFACTURER WAS ALERTED.   UPDATED 05/16/06. *JB |
| 10202240 | CHEVROLET | SILVERADO | 2004 | 2006-02-08 | I WAS DRIVING UP TP A STOP LIGHT  WHEN THE LIGHT TURNED RED THERE WAS A CAR IN FRONT OF ME THAT HAD STOPPED, I REALIZED I DIDN'T HAVE A LOT OF ROOM BUT THOUGHT IT WOULD BE ENOUGH TO STOP. I PUT THE PEDAL TO THE FLOOR AND STILL HIT THEM TWO PEOPLE WERE INJURED.  *TR  THEN ON 9/8/07 AND A DEER RAN OUT IIN FRONT OF ME, AGAIN MY FOOT TO THE FLOOR I HIT THE DEER. 1ST I WAS SUPRISED THAT MY AIR BAGS DIDN'T DEPLOY (REALLY TORE UP THE FRONT OF THE TRUCK) AND 2ND I SHOULD OF BEEN ABLE TO SLOW DOWN IN TIME. AFTER READING ALL OF THE ISSUES WITH THE BRAKES ON CHEVYS AND NO ONE IS DOING ANYTHING ABOUT IT, I THINK ITS TIME TO LOOK FOR A DIFFERENT CAR COMPANY. |

| 10238395 | CHEVROLET | SILVERADO | 2004 | 2008-01-22 | TL*THE CONTACT OWNS A 2004 CHEVROLET SILVERADO. WHILE DRIVING APPROXIMATELY 58 MPH, THE CONTACT SLID ON A PATCH OF ICE AND LOST CONTROL OF THE VEHICLE. THE VEHICLE RAN OFF THE ROAD AND CRASHED INTO A TELEPHONE POLL ON THE PASSENGER SIDE. THE VEHICLE STOPPED WHEN IT CRASHED INTO A FROZEN EMBANKMENT. UPON IMPACT, THE FRONT AIR BAGS FAILED TO DEPLOY EVEN THOUGH THE CONTACT MADE IMPACT WITH THE STEERING WHEEL. THE CONTACT WAS INJURED. THE VEHICLE WAS COMPLETELY DESTROYED AND A POLICE REPORT WAS FILED. THE CONTACT FILED A COMPLAINT WITH THE MANUFACTURER, BUT THE COMPLAINT WAS DENIED. THE MANUFACTURER WAS UNABLE TO DIAGNOSE THE VEHICLE; HOWEVER, AFTER INSPECTION OF THE VEHICLE, THE MANUFACTURER CONFIRMED THAT THE AIR BAGS WERE ENABLED AT THE TIME OF IMPACT. THEY DID NOT GIVE AN EXPLANATION FOR THE DEPLOYMENT FAILURE. THE VIN WAS UNKNOWN. THE FAILURE AND CURRENT MILEAGES WERE 180,000. UPDATED 09/03/08 *BF UPDATED 09/04/08. *JB |
| 10115547 | CHEVROLET | SUBURBAN | 2004 | 2004-08-03 | THE CONSUMER WAS INVOLVED IN AN ACCIDENT IN HIS 2004 CHEVROLET SUBURBAN IN WHICH THE AIR BAGS DID NOT DEPLOY. AN OCCUPANT IN THE VEHICLE WAS INJURED WHEN THE AIR BAGS DID NOT DEPLOY. *NM  *SC *JB |
| 10125146 | CHEVROLET | SUBURBAN | 2004 | 2005-06-10 | DT: VEHICLE WAS GOING ABOUT 35-40 MPH AND THE SIDE AND FRONT AIR BAGS DID NOT DEPLOY DURING AN ACCIDENT. *AK |
| 10200729 | CHEVROLET | TAHOE | 2004 | 2007-08-09 | I WAS INVOLVED IN A HEAD ON COLLISION WITH 2 OTHER VEHICLES, AT 45 TO 50 MPH, AND MY AIR BAGS FAILED TO DEPLOY. *TR |
| 10409000 | CHEVROLET | TAHOE | 2004 | 2011-06-16 | 2004 CHEVROLET TAHOE, AFTER BEING INVOLVED IN AN ACCIDENT WITH SEVERE IMPACT TO BOTH FRONT CORNERS AND BUMPER, HARD IMPACT COLLISION, AND AFTER FLIPPING THREE TIMES, BOTH FRONT AIR BAGS DID NOT DEPLOY. SEVERE DRIVER INJURY AS A RESULT OF THE AIRBAG FAILURE. *TR |
| 10836861 | CHEVROLET | TAHOE | 2004 | 2015-02-09 | MY HUSBAND AND I WAS INVOLVED IN AN ACCIDENT AND THE AIR BAGS DID NOT DEPLOY WE WERE HIT AT 55 MPH |
| 10314549 | CHEVROLET | TRACKER | 2004 | 2010-02-04 | MYSELF AND 2 DAUGHTERS WERE IN A HEAD ON WRECK 2/04/2010 WHEN A GUY PULLED OUT IN FRONT OF US, NEITHER OF THE AIRBAGS DEPLOYED. MY DAUGHTER HIT THE WINDSHIELD AND I HIT THE STEERING WHEEL AND DASH. THE PREGNANT ONE WAS THANKFULLY IN THE BACK SEAT. *TR |
| 10567426 | CHEVROLET | TRACKER | 2004 | 2014-02-23 | TL* THE CONTACT OWNS A 2004 CHEVROLET TRACKER. THE CONTACT STATED THAT WHILE DRIVING IN THE SNOW, SHE LOST CONTROL OF THE VEHICLE AND CRASHED THE FRONT OF END INTO AN EMBANKMENT. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUFFERED CONTUSIONS AND BRUISING TO THE TORSO REGION. A POLICE REPORT WAS TAKEN. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED. THE FAILURE MILEAGE WAS APPROXIMATELY 20,000. UPDATED 04/22/14*LJ THE CONSUMER STATED SHE HIT A PATCH OF ICE WHILE DRIVING, SHE VEERED OFF THE HIGHWAY LOST CONTROL OF THE VEHICLE, AND FLIPPED OVER 3 TIMES. UPDATE 04/24/14 |
| 10083860 | CHEVROLET | TRAILBLAZER | 2004 | 2004-07-16 | WHILE DRIVING AT 70 MPH DRIVER SWERVED TO LEFT TO AVOID HITTING A MOTORIST. WHEN THE DRIVER ATTEMPTED TO STRAIGHTEN BACK THE STEERING WHEEL BY TURNING IT TO THE RIGHT IT OVERCORRECTED SEVERELY. THIS RESULTED IN THE DRIVER LOSING  CONTROL OF THE VEHICLE AND CRASHING  INTO A TREE.  UPONIMPACT, AIR BAGS DID NOT  DEPLOY.  DRIVER DIED, AND FRONT PASSENGER SUSTAINED A BROKEN NECK, SEVERE LACERATION TO THEIR SCULL, AND BRUISES. THE PASSENGER IN THE REAR SUSTAINED A BROKEN ANGLE , A DISLOCATED HIP, AND TWO BROKEN RIBS. *AK |
| 10087212 | CHEVROLET | TRAILBLAZER | 2004 | 2004-08-03 | WHILE DRIVING 45 MPH CONSUMER'S VEHICLE COLLIDED INTO ANOTHER VEHICLE. UPON IMPACT, BOTH  FRONTAL AIR BAGS FAILED TO DEPLOY. VEHICLE WAS TOWED TO A GARAGE.  *AK  THE CONSUMER SUSTAINED A HAIR LINE FRACTURE IN THE CHEST AREA.  *NM |
| 10094926 | CHEVROLET | TRAILBLAZER | 2004 | 2004-10-03 | AT APPROXIMATELY 45 MPH  CONSUMER'S VEHICLE WAS INVOLVED IN A COLLISION, STRIKING A BARRIER HEAD ON.  UPON IMPACT,  AIR BAGS DID NOT DEPLOY.*AK |
| 10100282 | CHEVROLET | TRAILBLAZER | 2004 | 2004-10-29 | I WAS GOING BETWEEN 25 AND 35 MPH I SWRIVED TO AVOID A VEHICLE BACKING UP THAT HAD MISSED A TURN. I TRIED TO STREER BACK AND LOST CONTROL HITTING A TELEPHONE POLE HEAD ON. AIRBAGS DID NOT DEPLOY NEITHER DID ONSTAR. TO THIS POINT NOTHING HAS BEEN DONE TO REPAIR THE FAILURE AS FOR MY DAD'S TRAILBLAZER THATS A WORK IN PROGRESS .  *AK |
| 10103148 | CHEVROLET | TRAILBLAZER | 2004 | 2004-11-24 | CONSUMER WAS DRIVING 60 MPH AND LOST CONTROL, HITTING A UTILITY POLE. UPON IMPACT, THE AIRBAGS FAILED TO DEPLOY. VEHICLE WAS TOTALED. *AK |
| 10106552 | CHEVROLET | TRAILBLAZER | 2004 | 2004-12-29 | I WAS DRIVING A CHEVY TRAILBLAZER RENTED FROM HERTZ ON DECEMBER 29, 2004.  ON HIGHWAY 285 NEAR MILE MARKER 189.5, I ENCOUNTERED BLACK ICE ON A CURVE.  THE VEHICLE STARTED A 4-WHEEL DRIFT INTO THE ONCOMING LANE.  I ATTEMPTED TO AVOID COLLIDING WITH ANOTHER VEHICLE THAT HAD SPUN OUT.  THE ABS DID NOT WORK.  THERE WAS NO STABILITY CONTROL.  I STRUCK AN EMBANKMENT AND THE VEHICLE FLIPPED OVER.  ALTHOUGH THERE WAS BOTH FRONTAL AND SIDE IMPACT, NO AIRBAGS DEPLOYED.  IT IS MY BELIEF THAT THE CHEVY TRAILBLAZER IS INHERENTLY UNSAFE.  THERE IS NO WAY THIS VEHICLE SHOULD HAVE ROLLED OVER AT THE SPEED AT WHICH I WAS DRIVING.  *NM |
| 10123920 | CHEVROLET | TRAILBLAZER | 2004 | 2005-05-30 | OTHER VEHICLE FAILED TO YIELD FROM A YIELD SIGN. FRONT OF TRAILBLAZER STRUCK RIGHT SIDE REAR OF OTHER VEHICLE. IMPACT DAMAGED CROSS BAR ON FRAME PUSHING RADIATOR INTO MOTOR. DRIVER AND PASSENGER AIR BAG FAILED TO DEPLOY. ESTIMATED IMPACT SPEED 45-50 |

| 10135169 | CHEVROLET | TRAILBLAZER | 2004 | 2005-01-19 | MY DAUGHTER WAS DRIVING MY 2004 TRAILBLAZER ON AN ICY, SLIPPERY ROAD AT 25 -30 MILES PER HOUR, (THE SPEED LIMIT IS 30, IT WAS THE STREET WE LIVE ON)  WHEN SHE LOST CONTROL, HIT A TREE AND TOTALED ($22,000.00) THE VEHICLE.  THE OFFICER AND I WALKED THE PATH IN THE STREET AND COULD NOT FIND ANY SIGNS OF SKIDDING OR BRAKING, THERE FORE LEADING ME TO BELIEVE NOW THAT THERE WAS A BRAKING FAILURE.   UP UNTIL NOW, WHEN I HEARD ABOUT THE BRAKES FAILING DO TO CORROSION FROM ROAD SALT, I ALWAYS THOUGHT IT WAS JUST AN ACCIDENT IN POOR ROAD CONDITIONS. WHEN I FIRST READ THE REPORT OF THE INVESTIGATION I COULDN'T BELIVE IT WAS THE SAME SCENARIO AS HER ACCIDENT. POOR ROAD CONDITIONS, THEREFORE POSSIBLE SALT BUILDUP, A SLOW SPEED AND INABILITY TO STOP.  I AM SO GRATEFULL THAT SHE WALKED AWAY WITHOUT A SCRATCH, ALSO CONSIDERING THE AIR BAGS DID NOT DEPLOY, EVEN THOUGH THE FRONT END WAS TOTALED.  I AM SURE THIS IS A PROBLEM THAT MUST BE IDENTIFIED FOR THOSE LIVING IN COLDER, NORTHERN STATES. |
| 10154051 | CHEVROLET | TRAILBLAZER | 2004 | 2005-10-23 | FOIA REQUEST ALL DOCUMENTS/INFO RELATIVE TO ANY RECALLS OR KNOWN DEFECTS OF THE AIR BAG SYSTEM IN THE 2004 CHEVROLET TRAILBLAZER.  *TS ATTORNEY'S CLIENTS WERE SERIOUSLY INJURED WHEN THE VEHICLE THEY WERE OPERATING WAS INVOLVED IN A HIGH SPEED, FRONT END COLLISION.  THE AIR BAG SYSTEM DID NOT DEPLOY AT THE TIME OF IMPACT AND AS A RESULT THE THREE OCCUPANTS WERE INJURED.  *NM ***NAR*** |
| 10158090 | CHEVROLET | TRAILBLAZER | 2004 | 2006-02-26 | DT*:  THE CONTACT STATED WHILE DRIVING 50 MPH THE VEHICLE WAS INVOLVED IN A HEAD ON COLLISION WITH ANOTHER VEHICLE.  THE VEHICLE CONTINUED MOVING AND STOPPED BY COLLIDING WITH A STORE SIGN.  THE AIR BAGS DID NOT DEPLOY AND SEAT BELTS WERE WORN.  THERE WERE NO WARNING LIGHTS TO INDICATE THE AIR BAGS WOULD FAIL.  THE CONTACT SUFFERED A KNEE INJURY.  A POLICE REPORT WAS FILED AT THE SCENE.  THE INSURANCE COMPANY DETERMINED THE VEHICLE WAS TOTALED DUE TO THE ACCIDENT.  THE DEALER DOES NOT HAVE THE MEANS TO TEST FOR AIR BAG NON-DEPLOYMENT.   UPDATED 1/24/2007 - *NM |
| 10177618 | CHEVROLET | TRAILBLAZER | 2004 | 2006-12-01 | TL* - THE CONTACT OWNS A 2005 CHEVROLET TRAIL BLAZER.   DURING A SNOW STORM THE CONTACT'S  VEHICLE WAS INVOLVED  IN A  HEAD ON COLLISION.  THE CONTACT WAS DRIVING ON THE HIGHWAY AT 55 MPH,  AND THE AIR BAGS DID NOT DEPLOY.  THERE WERE NO WARNING INDICATOR LIGHTS.  THE MANUFACTURER SENT AN INVESTIGATOR TO ACCESS THE DAMAGE, AND STATED THAT THERE WAS $10,000 WORTH OF DAMAGE, AND THAT THE VEHICLE WAS ONLY TRAVELING 8 MPH.  *AK |
| 10178863 | CHEVROLET | TRAILBLAZER | 2004 | 2007-01-13 | TL* -  THE CONTACT STATED THAT ON 1/13/07  HE CRASHED INTO ANOTHER VEHICLE WITH HIS 2004 CHEVROLET TRAILBLAZER.  THE ODOMETER READ 33,000 MILES AT THE TIME OF THE CRASH.  HE WAS DRIVING AT 45 MPH AND COLLIDED WITH THE SECOND VEHICLE IN A PERPENDICULAR ANGLE "T-BONE" STRIKING IT ON THE SIDE AS IT CROSSED IN FRONT OF HIM. THE DRIVER WAS THE ONLY OCCUPANT IN THE VEHICLE AND THE DRIVER'S SIDE AIRBAG NEVER DEPLOYED.  THERE WERE 5 PEOPLE INJURED IN THE SECOND VEHICLE.  *NM |
| 10218896 | CHEVROLET | TRAILBLAZER | 2004 | 2008-02-22 | TL*THE CONTACT OWNS A 2004 CHEVROLET TRAILBLAZER.  WHILE DRIVING APPROXIMATELY 35 MPH, THE CONTACT REAR ENDED A SCHOOL BUS.  THE VEHICLE WAS COMPLETELY DESTROYED AND NONE OF THE AIR BAGS DEPLOYED.  TWO PASSENGERS WERE INJURED AND A POLICE REPORT WAS FILED.  PRIOR TO THE FAILURE, SHE NEVER EXPERIENCED ANY AIR BAG FAILURE.  THE DEALER AND MANUFACTURER HAVE NOT BEEN NOTIFIED.  THE CONTACT HAS PICTURES.  THE VIN AND ENGINE SIZE WERE UNKNOWN.  THE CURRENT AND FAILURE MILEAGES WERE 44,000. |
| 10228023 | CHEVROLET | TRAILBLAZER | 2004 | 2006-11-06 | I WAS SIDE SWIPED BY ANOTHER CAR THAT WENT THROUGH A RED LIGHT.  MY TRUCK THEN PROCEEDED TO HIT ANOTHER CAR AND FINALLY THE FRONT END OF THE TRUCK GOT AIRBORNE AND LANDED WITH THE TIRES IN THE FRONT WINDSHIELD OF ANOTHER CAR.  THE TRUCK SUSTAINED OVER $6,000 IN DAMAGE AS WELL AS THE FRONT FRAME WHERE THE MOTOR SITS WAS DAMAGED.  INSURANCE COMPANY SAID IT COULD BE REPLACED.  NOT SURE HOW BECAUSE IT WAS WELDED IN PLACE.  AND MY AIRBAGS NEVER DEPLOYED.  *TR |
| 10228026 | CHEVROLET | TRAILBLAZER | 2004 | 2007-03-07 | I WAS REAR ENDED BY A GUY DOING 40 MPH.  MY TRUCK WAS LIFTED IN THE AIR AND PUSHED INTO THE REAR END OF ANOTHER VEHICLE.  MY AIRBAGS NEVER DEPLOYED AND MY SEAT BROKE!! POSSIBLE DEFECT IN THE SEAT? I WAS STOPPED AT A RED LIGHT WHEN THE ACCIDENT HAPPENED.  THE SPARE TIRE HOLDER WAS RIPPED OFF MY TRUCK.  *TR |
| 10240623 | CHEVROLET | TRAILBLAZER | 2004 | 2008-08-26 | SLIGHTLY TURNED STEERING WHEEL TO LEFT TO AVOID ANOTHER MOTORIST IN FRONT OF ME.  ATTEMPTED TO STRAIGHTEN OUT THE VEHICLE, VEHICLE OVER-CORRECTED SEVERELY, UNABLE TO BRAKE, VEHICLE SLAMMED HEAD-ON INTO CONCRETE HIGHWAY BARRIER 45-60MPH, AIR BAGS FAILED TO DEPLOY.  DRIVER WAS WEARING SEATBELT, SUBSTANTIAL BRUISING & NECK/BACK INJURY. *TR |
| 10313103 | CHEVROLET | TRAILBLAZER | 2004 | 2009-10-02 | TL*THE CONTACT OWNS A 2004 CHEVROLET TRAILBLAZER. WHILE THE CONTACT WAS DRIVING 35 MPH HE CRASHED INTO ANOTHER VEHICLE AND THEN INTO A LIGHT POLE WHICH DESTROYED THE VEHICLE; HOWEVER, DURING THE CRASH NONE OF THE AIR BAGS DEPLOYED. THE DRIVER AND PASSENGER WERE INJURED. NO ONE WAS INJURED IN THE OTHER VEHICLE. THE VEHICLE WAS DIAGNOSED BY THE DEALERSHIP WHO STATED THAT NO FAILURES COULD BE FOUND. THERE WERE NO PRIOR WARNINGS. THE CURRENT AND FAILURE MILEAGES WERE 95,272 UPDATED 03/30/10. *LJ  ACCORDING TO GM, THE NOTICE ON THE DASH READOUT STATED THE AIR BAGS DEPLOYED. UPDATED 06/30/10.*JB |

| | | | | | |
|---|---|---|---|---|---|
| 10327766 | CHEVROLET | TRAILBLAZER | 2004 | 2010-04-21 | TL* THE CONTACT OWNS A 2004 CHEVROLET TRAILBLAZER. WHILE DRIVING  35 MPH, THE CONTACT ATTEMPTED TO MANEUVER THE STEERING WHEEL TO AVOID CRASHING INTO A DEER AND LOST CONTROL OF THE VEHICLE. THE VEHICLE CRASHED INTO A TREE. THE AIR BAGS DID NOT DEPLOY UPON IMPACT. THE CONTACTS FACE HIT THE STEERING WHEEL UPON IMPACT AND SUSTAINED A BROKEN NOSE. THE CONTACT WAS TAKEN TO THE HOSPITAL. THE VEHICLE WAS DESTROYED AND WAS TOWED BY HER INSURANCE COMPANY TO AN UNKNOWN LOCATION. A POLICE REPORT WAS AVAILABLE, IF NEEDED. THE MANUFACTURER WAS NOT CONTACTED. THE FAILURE MILEAGE WAS 80,700. |
| 10356973 | CHEVROLET | TRAILBLAZER | 2004 | 2010-09-19 | TL* THE CONTACT OWNED A 2004 CHEVROLET TRAILBLAZER.  THE CONTACT STATED THAT THE AIRBAGS DID NOT DEPLOY WHEN HIS WIFE CRASHED INTO A DEER AT APPROXIMATELY 35 MPH. THE DRIVER WAS ALSO INVOLVED IN ANOTHER CRASH WHEN TRAVELING APPROXIMATELY 55 MPH. SHE LOOKED DOWN TO CHECK ON A NOISE SHE HEARD AND WHEN SHE LOOKED UP THE THE VEHICLE LOST CONTROL AND CRASHED HEAD ON INTO A TREE.  THE DRIVER AND THREE OTHER OCCUPANTS WERE INURED.  THE GEORGIA HIGHWAY PATROL RESPONDED AND FILED A REPORT. THE PARAMEDICS ALSO RESPONDED AND TRANSPORTED THE FOUR OCCUPANTS TO THE HOSPITAL. THE VEHICLE WAS DESTROYED AND TOWED TO A STORAGE LOT.  THE FAILURE MILEAGE WAS APPROXIMATELY 107,000. |
| 10419650 | CHEVROLET | TRAILBLAZER | 2004 | 2011-08-13 | I HIT A DEER AT APPROXIMATELY 65 MPH AND THE AIR BAG DID NOT DEPLOY. MY SON THAT WAS RIDING IN THE PASSENGER SEAT ALSO WAS WEARING HIS SEAT BELT BUT THE SEAT BELT DID NOT CATCH AND HE WAS SLAMMED INTO THE DASH. I REFUSE TO BELIEVE THAT THIS IS NORMAL BEHAVIOR FOR THOSE SAFETY DEVICES.  *KB |
| 10551484 | CHEVROLET | TRAILBLAZER | 2004 | 2013-10-29 | TL* THE CONTACT OWNS A 2004 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING 35 MPH, THE DRIVER BECAME DISTRACTED AND CRASHED INTO A TREE. THE AIR BAGS FAILED TO DEPLOY AND THE SEAT BELT FAILED TO RESTRAIN, CAUSING THE DRIVER TO BE THROWN FORWARD. THE DRIVER'S HEAD IMPACTED THE WINDSHIELD AND AS A RESULT, HE SUSTAINED BLEEDING FROM THE BRAIN. A POLICE REPORT WAS FILED.  THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE VEHICLE WAS DESTROYED. THE VIN WAS NOT AVAILABLE. THE FAILURE AND CURRENT MILEAGE WAS UNKNOWN. THE VIN WAS NOT AVAILABLE. |
| 10576838 | CHEVROLET | TRAILBLAZER | 2004 | 2008-06-16 | ON THE AFTERNOON OF 6/16/08, ME IN MY FAMILY WAS TRAVELING NORTH ON I95 IN NORTH CAROLINA GOING TOWARD OUR DESTINATION IN BALTIMORE MD., WHEN ANOTHER VEHICLE CLICK US AND CAUSE MY SISTER TO LOSE CONTROL OF THE VEHICLE CRASHING INTO THE GUARDRAIL.  MY TWO AUNTS AND MYSELF WERE EJECTED FROM THE VEHICLE, BOTH MY AUNTS DIE INSTANTLY. MY MOTHER, SISTERS AND MYSELF SURVIVED BUT HAD SEVERAL INJURIES.  THE AIRBAGS DID NOT DEPLOY, AND THE DOORS THAT WERE INITIALLY LOCKED; BUT SOMEHOW THE REAR DOORS (MIDDLE) OPEN DURING IMPACT CAUSING MY AUNTS IN MYSELF TO BE THROWN FROM THE VEHICLE.  BE ADVISED THE VEHICLE WAS A GREEN TRAILBLAZER (EXTENDED CAB).  *TR |
| 10626582 | CHEVROLET | TRAILBLAZER | 2004 | 2014-08-18 | I WAS ON A 4 LANE HIGHWAY TRAVELING EASTBOUND GOING 50 MPH POSTED SPEED 55 MPH WEARING OUR SEAT BELTS,  WHEN ANOTHER VEHICLE WAITING TO U - TURN IN THE CENTER MEDIAN DECIDED TO TURN RIGHT INTO ME-ONCOMING TRAFFIC. THIS PERSON COLLIDED WITH ME, WHICH THAT IMPACT SENT ME INTO A HEAD ON COLLISION WITH THE GUARD RAIL. THE CHEVROLET TRAILBLAZER IS COMPLETELY TOTALED. THERE WERE 2 INCIDENTS IN THAT SEQUENCE OF EVENTS THAT THE AIRBAGS SHOULD HAVE DEPLOYED,  BUT DID NOT! THIS ACCIDENT CAUSED SEVERAL INJURIES TO MYSELF AND MY PASSENGER. WE DEFINITELY COULD HAVE BEEN KILLED AND NO AIRBAGS TO HELP SAVE OUR LIVES.....UPDATED 09-03-14 *BF  UPDATED 11/7/2014 *JS  *TR |
| 10767586 | CHEVROLET | TRAILBLAZER | 2004 | 2015-08-01 | ON SATURDAY, AUGUST 1, 2015 AT APPROXIMATELY 8:55PM MY MOTHER WAS INVOLVED IN A 1 CAR ACCIDENT ON BAUM RD LOCATED IN TALLAHASSEE, FL. SHE WAS THE ONLY PASSENGER DETERMINED TO BE IN THE VEHICLE AT THE TIME OF THE ACCIDENT. ACCORDING TO THE CRASH REPORT, D1 (DRIVER ONE) WAS TRAVELING WESTBOUND ON BAUM RD  GOING THE NORMAL POSTED SPEED OF 55MPH, WHEN SHE VEERED TOWARDS THE CENTER OF THE RD AND SUDDENLY TURNED RIGHT VEERING OF THE RIGHT SHOULDER OF THE RD AND STRIKING SEVERAL TREES ON THE DRIVERS SIDE AND FRONT END. D1 WAS WEARING HER SEATBELT AND MANAGED TO EXIT OUT THE DRIVERS SIDE WINDOW BEFORE COMING TO HER FINAL RESTING PLACE ON THE SHOULDER OF THE RD. WHEN I WENT TO RETRIEVE MY MOTHERS THINGS FROM HER TRAILBLAZER, I NOTICED THAT NO AIR BAGS HAD DEPLOYED. AND AS FAST AS MY MOM WAS GOING AND THE TYPE OF IMPACT & DAMAGE HER SUV SUSTAINED, I WOULD THINK AND HOPE THE AIRBAGS WOULD DEPLOY IN THIS TYPE OF ACCIDENT, THUS PREVENTING SERIOUS INJURY OR DEATH. MY MOM WAS NOT SO LUCKY, AND MYSELF AND MY FAMILY HAVE ENDURED GREAT PAIN FROM LOOSING HER SO SUDDENLY. |
| 10823597 | CHEVROLET | TRAILBLAZER | 2004 | 2016-01-19 | I WAS RECENTLY IN A CAR ACCIDENT DUE TO BAD WEATHER AND ROAD CONDITIONS. LEAVING WORK DRIVING INTERSTATE I89 9STATE NORTHBOUND.  CAME UPON BLACK ICE MY CAR FISHTAILED OUT OF CONTROL ; TRYING TO GAIN CONTROL BACK BEFORE I KNEW IT I WAS HEADING TORDS A GUARD RAIL. I WAS ONLY DRIVING 50 TO 55MPH. BEYOND THE GUARD RAIL I DO NOT REMEMBER. I SUFFERED UPPERBODY AND HEAD INJURY AND MY FRONT AIR BAG FAILED TO DEPLOY.  OTHERS ARE TELLING ME AND MY HUSBAND TO LOOK INTO THIS AS MY AIRBAG FAILED TO DEPLOY.   CAN YOU HELP |
| 11265285 | CHEVROLET | TRAILBLAZER | 2004 | 2019-09-29 | WELL I HIT A TREE AN THE AIRBAGS DIDNT DEPLOYED BUT THE AIRBAG LIGHT IS ON |

| | | | | | |
|---|---|---|---|---|---|
| 10128270 | GMC | ENVOY | 2004 | 2005-07-08 | DT:  CONSUMER STATES THAT SHE WAS IN A HEAD ON COLLISION ON JULY 8, 2005 AND THE AIR BAGS DID NOT DEPLOY.  SHE WAS GOING 55 MPH WHEN HIT.  THERE WAS DAMAGE TO THE VEHICLE AND A POLICE REPORT WAS TAKEN.  CONSUMER STATES SHE HAS NECK AND BACK INJURIES, SHE IS GOING TO THE DOCTOR FOR A FOLLOW UP VISIT TODAY.  HER DAUGHTER HAS SEAT BELT BURNS ON HER NECK.  THE VEHICLE IS CURRENTLY BEING INSPECTED BY THE INSURANCE COMPANY; IT HAD TO BE TOWED TO A BODY SHOP.  SHE HAS NOT CONTACTED THE DEALERSHIP OR MANUFACTURER, THE ATTORNEY GENERAL ADVISED HER TO CALL US FIRST.  *NM |
| 10152802 | GMC | ENVOY | 2004 | 2006-03-13 | AVOIDING TO HIT AN UPCOMING VEHICLE IN A CURVE, I LOST CONTROL OF MY GMC ENVOY SUV 2004 AND HIT A CONCRETE DRIVEWAY AND STOPPED WITH AN ELECTRICAL UTILITY POST FRONT SIDE.  THE AIRBAGS DID NOT DEPLOY CAUSING MYSELF TO HIT THE STEERING WHEEL AND INJURED MY NECK, MY HEAD, LOWER BACK, KNEES AND LEFT ARM. THE INSURANCE COMPANY TOLD ME THAT IF THE AIR BAGS WOULD DEPLOYED THEY WOULD DECLARED MY VEHICLE TOTAL LOSS DUE TO THE EXTENSIVE DAMAGE. I TOLD THEM I DON'T WANT MY VEHICLE REPAIRED IF THE AIR BAGS ARE NOT CHANGED.  I INTEND TO GO AGAINST GMC LEGALLY. *JB |
| 10182098 | GMC | ENVOY | 2004 | 2007-01-03 | IN ROUTE TO WORK DRIVING MY 2004 GMC ENVOY I WAS INVOLVED IN WHAT I WOULD CONSIDERED A HEAD ON COLLISION WITH A TELEPHONE POLE. THE IMPACT WAS GREAT ENOUGH TO SPILT THE POLE IN TWO, TOP HALF JUST MISSING THE ROOF OF THE VEHICLE . UPON IMPACT THE AIRBAGS DID NOT DEPLOY NOR DID MY SEAT BELTS LOCK ME IN CAUSING ME TO FLY FORWARD HITTING MY HEAD ON THE STEERING WHEEL,  I HAD TO BE EXTRACTED FROM VEHICLE BY FIRE DEPARTMENT AND TRANSPORTED TO ER. I NOW HAVE PERMANENT SCAR APPROXIMATELY 5 INCHES  IN LENGTH ACROSS MY  FOREHEAD. I FILED  A COMPLAINT WITH GMC LATER TO BE INFORMED THAT AFTER THEIR INVESTIGATION THEY CONCLUDED THAT SINCE THE PASSENGER SIDE TOOK THE GREATER OF THE IMPACT THE IMPACT WAS NOT GREAT ENOUGH TO WARRANT AIRBAG DEPLOYMENT. PLEASE NOTE THAT DRIVERS NOR PASSENGER SIDE AIRBAG DEPLOYED. *JB |
| 10237647 | GMC | ENVOY | 2004 | 2008-08-10 | TL*THE CONTACT OWNS A 2004 GMC ENVOY.  WHILE DRIVING APPROXIMATELY 55 MPH, THE VEHICLE STRUCK A GATE, WENT AIRBORNE, DROPPED APPROXIMATELY 35 FEET DOWN AN EMBANKMENT, STRUCK SOME TREES, BOULDERS, AND LANDED IN A SWAMP.  THE AIR BAGS FAILED TO DEPLOY AND THE VEHICLE SUSTAINED MAJOR DAMAGE.  BOTH THE DRIVER AND PASSENGER SUSTAINED MULTIPLE INJURIES.  THE VEHICLE HAD TO BE LIFTED FROM THE EMBANKMENT WITH A CRANE AND WAS TOWED AWAY.  A POLICE REPORT WAS FILED.  THE CURRENT AND FAILURE MILEAGES WERE 51,000. |
| 10266307 | GMC | ENVOY | 2004 | 2009-04-20 | I WAS TRAVELING NORTHBOUND ON RT 251 FROM PERU TO MENDOTA IL WHEN IT BEGAN RAINING AND HAILING VERY HARD.  251 IS FULL OF POT HOLES.  I WAS TRAVELING ABOUT 40 M.P.H. I HIT A POT HOLE AND MY CAR STARTED TO HYDROPLAN.  I WENT INTO THE SOUTHBOUND LANE AND THEN INTO DITCH HEAD ON....I HIT THE DITCHES WALL ALMOST HEAD ON AND MY AIRBAGS DID NOT COME OUT. *TR |
| 10272370 | GMC | ENVOY | 2004 | 2009-05-02 | TL*THE CONTACT OWNS A 2004 GMC ENVOY.  WHILE DRIVING 60 MPH WITH THE CRUISE CONTROL ACTIVATED, THE CONTACT PASSED OUT DUE TO A SEVERE MEDICAL ISSUE .  HE LOST CONTROL OF THE VEHICLE AND CRASHED INTO A TREE.  UPON IMPACT, BOTH FRONTAL AIR BAGS FAILED TO DEPLOY.  THE CONTACT AND PASSENGER WERE SEVERELY INJURED.  THE DRIVER SUSTAINED A BROKEN CLAVICLE AND HIS TEETH WERE KNOCKED OUT OF HIS MOUTH.  THE PASSENGER SUSTAINED A LACERATION TO THE HEAD AND ABDOMINAL INJURIES.  THE VEHICLE WAS INSPECTED BY AN INSURANCE ADJUSTER, WHO WAS UNABLE TO DETERMINE WHY THE AIR BAGS DID NOT DEPLOY.  THE VEHICLE WAS DESTROYED.  THE CONTACT CALLED THE MANUFACTURER AND WAS INFORMED THAT AN INVESTIGATION WAS IMPLEMENTED AND A REPRESENTATIVE WILL CALL HIM BACK IN FIVE BUSINESS DAYS.  THE FAILURE MILEAGE WAS 42,600.  UPDATED 6/5/09 *CN UPDATED 06/09/09.*JB |
| 10275464 | GMC | ENVOY | 2004 | 2009-06-29 | TL*THE CONTACT OWNS A 2004 GMC ENVOY.  WHILE DRIVING 35 MPH, THE CONTACT REAR ENDED ANOTHER VEHICLE.  HIS VEHICLE WAS DESTROYED.  THE AIR BAGS FAILED TO DEPLOY AND THE SEAT BELTS DID NOT RETRACT FOR BOTH OCCUPANTS SEATED IN THE FRONT.  THE CONTACT AND THE PASSENGER STRUCK THE STEERING WHEEL WITH THEIR CHESTS AND SHOULDERS.  BOTH WERE SEVERELY INJURED.  THE CONTACT, PASSENGER, AND OTHER DRIVER WERE TRANSPORTED TO THE HOSPITAL.  THE VEHICLE WAS TOWED TO A REPAIR SHOP AND IS AWAITING AN INVESTIGATION.  A POLICE REPORT WAS FILED.  THE FAILURE MILEAGE WAS 60,000. |
| 10286793 | GMC | ENVOY | 2004 | 2009-10-07 | WHILE TRAVELING DOWN I-95 AT APPX. 60MPH THE CAR IN FRONT OF ME STOPPED SHORT.  I SLAMMED INTO THE BACK OF IT.  MY AIRBAGS DID NOT DEPLOY, NOR DID ONSTAR CALL TO CHECK ON ME (SO MUCH FOR BELIEVING IN THOSE ADS!)  THE ENTIRE FRONT END NEEDS TO BE REPLACED.  FLUIDS WERE SPILLING FROM THE VEHICLE.   2 WITNESSES ARE CAPITOL HILL POLICE OFFICERS WHO WERE SHOCKED THAT THE AIRBAGS DID NOT DEPLOY.  THE SEATBELT DID RESTRAIN ME CAUSING IRRITATION AT THAT SITE.  MY BACK, NECK AND HEAD WERE ACHING.  I WAS CHECKED OUT BY THE ER. *TR |
| 10302345 | GMC | ENVOY | 2004 | 2010-01-26 | TL*THE CONTACT OWNS A 2004 GMC ENVOY. WHILE DRIVING 65 MPH IN SNOWY CONDITIONS, HE ATTEMPTED TO PASS A VEHICLE AND WHILE RETURNING BACK INTO THE LANE THE VEHICLE SLID AND HE CRASHED INTO A CONCRETE BARRIER FRONT-END FIRST. THE FRONTAL AIR BAGS DID NOT DEPLOY AT THE TIME OF THE CRASH. THE CONTACT DID NOT SUFFER ANY INJURIES. THE POLICE ARRIVED SHORTLY AFTER AND A POLICE REPORT WAS FILED.  THE FAILURE AND CURRENT MILEAGES WERE UNDER 97,000. |

| 10594270 | GMC | ENVOY | 2004 | 2014-03-12 | CAR SLID INTO RIGHT GUARDRAIL AND THEN SLID TO LEFT IN DITCH ON EXPRESSWAY. THE AIRBAGS DID NOT DEPLOY. IMPACT WAS SIGNIFICANT ENOUGH TO BEND THE FRONT PASSENGER CORNER OF FRAME. THE FRAME IS ALSO CRACKED UNDERNEATH THE MIDDLE OF VEHICLE AS RESULT OF CRASH. CAR IS NO LONGER DRIVEABLE. DRIVER SUFFERED WHIPLASH.  *TR |
|----------|-----|-------|------|------------|----|
| 10596479 | GMC | ENVOY | 2004 | 2014-03-31 | I HAD AN ACCIDENT ON A MAJOR HIGHWAY DUE TO WEATHER CONDITIONS. I ENDED UP SPINNING THE VEHICLE AROUND WHILE IN THE TRAVEL LANE AND HIT THE CAR IN THE PASSING LANE. MY AIRBAGS NEVER DEPLOYED. ALTHOUGH NO ONE WAS INJURED THANKFULLY. I WONDERED WHY THE AIRBAGS DIDN'T GO OFF. SHOULD I BE WORRIED? HAS ANYONE MADE THIS SAME COMPLAINT? THANK YOU.  *TR |
| 10631914 | GMC | ENVOY | 2004 | 2009-08-25 | MY WIFE WAS IN THE CAR ALONE. VEHICLE RAN OFF ROAD, CRASHED INTO PARKED TRUCK, AIR BAG DID NOT DEPLOY. WIFE DIED OF "CLOSED CHEST TRAUMA",  *TR |
| 11378518 | GMC | ENVOY | 2004 | 2020-12-03 | TL-THE CONTACT OWNS A 2004 GMC ENVOY. THE CONTACT STATED THAT WHILE DRIVING AT 50 MPH HE HAD THE SWERVE TO AVOID A HEADON COLLISION FROM A VEHICLE THAT WAS IN HIS LANE. THE VEHICLE WENT OFF THE ROAD AND CRASHED INTO A CONCRETE BARRIER.THE CONTACT HAD A FRACTURED STERNUM AND A BRUISED RIGHT ANKLE, KNEE AND ELBOW. THE CONTACT VISITED THE EMERGENCY ROOM ON HIS OWN WITHOUT BEING TRANSPORTED BY AN AMBULANCE.THE CONTACT STATED THAT NONE OF THE AIR BAGS IN THE FRONT DEPLOYED. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOTALED BY THE INSURANCE COMPANY AND TOWED FROM THE CRASH SITE. THE ENTIRE FRONT OF THE VEHICLE WAS SMASHED IN INCLUDING THE FRAME.  THE BACK AXEL DROPPED AFTER THE COLLISION AND BOTH RIMS ON THE BACK TIRES WERE SHATTERED. THE FRONT RIMS WERE ALSO CRACKED. THE DEALER AND MANUFACTURER HAD NOT BEEN CONTACTED YET. THE FAILURE MILEAGE WAS 180,000. TF |
| 10067417 | GMC | YUKON | 2004 | 2004-04-16 | WHILE DRIVING  CONSUMER APPLIED THE BRAKES AND WITHOUT WARNING CONSUMER'S VEHICLE COLLIDED WITH THE VEHICLE IN FRONT.  UPON IMPACT,  AIR BAGS DID NOT DEPLOY. DRIVER SUSTAINED MINOR INJURIES AND  WAS TRANSPORTED TO THE HOSPITAL FOR EXAMINATION.   VEHICLE WAS TOWED TO THE DEALER FOR INSPECTION, AND DEALER WAS UNABLE TO DUPLICATE OR RESOLVE THE PROBLEM.  *AK |
| 10372063 | GMC | YUKON | 2004 | 2010-11-12 | TL* THE CONTACT OWNS A 2004 GMC YUKON. THE CONTACT WAS DRIVING APPROXIMATELY 40 MPH WHEN THE VEHICLE WAS INVOLVED IN A HEAD ON CRASH IN WHICH THE AIR BAGS DID NOT DEPLOY. THE POLICE APPEARED ON THE SCENE AND A REPORT WAS AVAILABLE. THE DRIVER AS WELL AS THE FRONT PASSENGER WAS INJURED AND TRANSPORTED VIA AMBULANCE TO THE HOSPITAL TO TREAT INJURIES. THE VEHICLE WAS TOWED TO AN INSURANCE COMPANY LOT BUT DID NOT HAVE THE FAILURE DIAGNOSED. THE VEHICLE WAS NOT REPAIRED. THE FAILURE AND CURRENT MILEAGE WAS 134,000. |
| 8023949 | CHEVROLET | BLAZER | 2003 | 2002-11-19 | WHILE TRAVELING AT 40 MPH, CONSUMER STATES ANOTHER VEHICLE TRAVELING IN FRONT CAME TO A SUDDEN STOP.  CONSUMER REAR ENDED THAT VEHICLE, AND NONE OF CONSUMER AIRBAGS DEPLOYED.  PLEASE PROVIDE ANY FURTHER INFORMATION.  PH |
| 10023373 | CHEVROLET | BLAZER | 2003 | 2003-06-11 | TWO EMPLOYEES WERE INVOLVED IN A CRASH WHERE THEY WERE THE ONES THAT STRUCK A STOPPED CAR AT 50 MPH. THE AIR BAGS DID NOT DEPLOY....IS THIS A PROBLEM. IS THIS A POSSIBLE RECALL SITUATION. WHO DO I CONTACT ABOUT THIS A CHEVROLET??? DOES YOUR AGENCY GET INVOLVED.  *NLM |
| 10040503 | CHEVROLET | BLAZER | 2003 | | CONSUMER STATED WHILE TRAVELING 45 MPH OR OVER ON WET PAVEMENT VEHICLE LOST CONTROL, AND TRAVELED OFF THE ROAD.  REAR HATCH GLASS EXPLODED , BUT AIR BAGS DID NOT DEPLOY AT ANY TIME. *AK |
| 10044264 | CHEVROLET | BLAZER | 2003 | 2003-08-30 | WHILE TRYING TO AVOID HITTING A PEDESTRIAN VEHICLE WENT OF THE ROAD AND HIT A TREE. UPON IMPACT, FRONT AIR BAGS DID NOT DEPLOY.   VEHICLE COULD NO LONGER BE DRIVEN DUE TO THE EXTENSIVE DAMAGE DONE TO THE FRONT END.  *AK |
| 10160753 | CHEVROLET | BLAZER | 2003 | 2006-06-19 | DT*: THE CONTACT STATED THAT BOTH FRONT AIRBAGS OF THE VEHICLE DID NOT DEPLOY DURING A CRASH WHICH OCCURRED WHILE TRAVELING 45 MPH.  THE VEHICLE WAS HEADED EAST ON A NARROW, ROUGH, BUMPY ROAD WHEN IT APPROACHED AN INTERSECTION AND STRUCK ANOTHER VEHICLE HEADING NORTH.  THE OTHER VEHICLE BRIEFLY STOPPED AT THE STOP SIGN AND PULLED OUT INTO THE INTERSECTION 15 FEET BEFORE THE CONTACT'S VEHICLE REACHED THE INTERSECTION. THIS RESULTED IN  THE CONTACT'S VEHICLE CRASHING INTO THE FRONT DRIVER SIDE DOOR OF THE OTHER VEHICLE.  BOTH OCCUPANTS WERE WEARING THEIR SEAT BELTS. THE AIRBAG WARNING LIGHT WAS NOT ON PRIOR TO THE CRASH.  THE POLICE TOOK PICTURES AND A REPORT WAS FILED.  THE VEHICLE WAS TAKEN TO THE DEALER FOR INSPECTION. |

| | | | | | |
|---|---|---|---|---|---|
| 10537593 | CHEVROLET | BLAZER | 2003 | 2013-08-13 | I WAS TRAVELING SOUTHBOUND WHEN I EXPERIENCED A SEIZURE AND LOST CONTROL OF MY VEHICLE. I PROCEEDED TO VEER TO THE LEFT WHERE I CLIPPED SEVERAL CARS THAT WERE HEADED NORTHBOUND AND HAD STOPPED DUE TO THE REALIZATION THAT MY VEHICLE WAS NOT UNDER CONTROL. I THEN PROCEEDED OVER A TREE LAWN AND INTO A PARKING LOT. I HIT A DODGE RAM PICKUP WITH THE RIGHT FRONT CORNER OF MY VEHICLE AND PUSHED THAT VEHICLE INTO ANOTHER PARKED CAR THAT WAS NEXT TO IT. BOTH VEHICLES ENDED UP SIDEWAYS AND MY VEHICLE ENDED UP SPUN AROUND 180 DEGREES. AT THIS TIME MY VEHICLE CAME TO A STOP. POLICE WERE CALLED AN PARAMEDICS ARRIVED. THE JAWS OF LIFE WERE USED TO EXTRACT ME FROM MY VEHICLE. I WAS TAKEN TO A LOCAL HOSPITAL WHERE IT WAS DETERMINED THAT I SUFFERED BURST FRACTURES OF L1, L2, AND L3. I ALSO SUFFERED AN EVULSION FRACTURE OF MY LEFT ANKLE. THE POLICE REPORT STATES THAT I WAS TRAVELLING AT A HIGH RATE OF SPEED AND THAT THE VEHICLES WHICH WERE NORTHBOUND WERE JUST CLIPPED. THE AIRBAGS ARE BOTH STILL WITHIN THEIR CASES AS NEITHER DEPLOYED. I WOULD EXPECT THIS OF THE PASSENGER AIRBAG AS THAT SEAT WAS UNOCCUPIED BUT THE DRIVER BAG SHOULD HAVE DEPLOYED. THE INSURANCE INVESTIGATOR EVEN EXPRESSED TO MY WIFE THAT HE WAS SURPRISED THAT THE AIR BAG DID NOT DEPLOY. I WAS HAVING A SEIZURE AND WAS NOT CONSCIOUS SO I CANNOT PROVIDE ANY INFORMATION OTHER THAN WHAT IS IN THE POLICE REPORT. THE REPORT IS #370763 ISSUED BY THE TOWNSHIP OF CLINTON, MICHIGAN.       THE VEHICLE IS CURRENTLY LOCATED AT COPARD AUTO SALVAGE, 21000 HAYDEN, WOODHAVEN, MI 48183. THE PHONE NUMBER IS 734-365-0070. IT WILL BE HELD THERE FOR BETWEEN 7 AND 10 DAYS FROM 8/26/2013. THANK YOU  *TR |
| 11075512 | CHEVROLET | BLAZER | 2003 | 2016-02-16 | REAR ENDED A STOPPED PICK UP AT 45 MPH AND AIR BAGS DID NOT DEPLOY. IT WAS ON A HIGHWAY WHERE THE SPEED LIMIT IS 55. THE WHOLE FRONT END WAS DAMAGED BUT MOST WAS ON DRIVER SIDE. |
| 8017964 | CHEVROLET | SILVERADO | 2003 | | THE VEHICLE WAS INVOLVED IN A FRONTAL COLLISION AT HIGHWAY SPEED. UPON IMPACT THE PASSENGER SIDE AIR BAG DID NOT DEPLOYED. MANUFACTURER HAS BEEN CONTACTED. PLEASE PROVIDE FURTHER INFORMATION.*JB |
| 10030725 | CHEVROLET | SILVERADO | 2003 | 2003-07-31 | 2003 CHEVROLET SILVERADO EXT. CAB 4X4 WITH ONSTAR, WRECKED. HIT TREES. TRUCK TOTALLED, FRONT-END DAMAGE, SIDE AND REAR END DAMAGE. AIR BAG DID NOT INFLATE. ONSTAR DID NOT WORK. *AK |
| 10032581 | CHEVROLET | SILVERADO | 2003 | 2003-08-01 | AIR BAGS FAILED TO OPEN ON HEAD END COLLISION.  SPEED APPROX. 40 MPH.  2003 CHEVY SILVERADO - NEW CONDITION |
| 10050872 | CHEVROLET | SILVERADO | 2003 | 2003-10-18 | INVOLVED IN A 45 MPH COLLISION WITH ANOTHER VEHICLE. AIRBAGS IN MY 2003 CHEVROLET SILVERADO DID NOT DEPLOY.*AK |
| 10055994 | CHEVROLET | SILVERADO | 2003 | 2004-01-24 | WHILE DRIVING 25 MPH THE VEHICLE WAS INVOLVED IN A FRONTAL COLLISION.  UPON IMPACT, THE FRONT AIR BAGS DID NOT DEPLOY.  THE DRIVER SUSTAINED NECK AND BACK INJURIES.   *AK *SC |
| 10056087 | CHEVROLET | SILVERADO | 2003 | 2004-01-24 | WHILE DRIVING  AT 65 MPH ON THE HIGHWAY, THE DRIVER LOST CONTROL OF THE VEHICLE, RESULTING IN  A FRONTAL COLLISION. THE  VEHICLE WENT  INTO AN EMBANKMENT. UPON IMPACT, THE AIR BAGS DID NOT DEPLOY.  THE  DRIVER SUSTAINED INJURIES. *AK BROKEN STERNUM, SPINE AND RIBS. THE CONSUMER WAS WEARING HIS SEAT BELT.  THE SDM CRASH DOWN LOAD FROM THE CRASH WAS SENT TO ODI WITH PICTURES OF THE VEHICLE.  CW  *MR *JB |
| 10066690 | CHEVROLET | SILVERADO | 2003 | | WHIEL DRIVING AT 40 MPH VEHICLE WAS HIT HEAD ON AND THE AIR BAGS FAILED TO DEPLOY.*MR |

| | | | | | |
|---|---|---|---|---|---|
| 10072429 | CHEVROLET | SILVERADO | 2003 | 2003-05-25 | AIR BAGS NOT DEPLOYING ON A NEW CHEVY SILVERADO PICK-UP/ FOLLOWING A VEHICLE CRASH. DRIVER WAS INJURED, AND SCARRED. WAS HOSPITLIZED AND STILL HAVING PROBLEMS AND WILL HAVE A LIFETIME SCAR ON FACE AREA. ALSO LEGS AND THIGHS ARE SCARRED.  OUR SON WAS TRAVELING AT A HIGH RATE OF SPEED PASSING, LOST CONTROL WENT OFF HIGHWAY HEAD ON INTO DEEP DITCH, FLIPPED OVER, WENT SIDE TO SIDE COMING TO REST SIDEWAYS ON TIRES THAT WERE NOW FLAT AND STILL NO AIRBAG DEPLOYMENT. SENT A COMPLAINT AND PICTURES, POLICE REPORT AND MEDICAL RECORDS TO GM, NO SATISFACTION FROM THERE.  WHAT DOES A VEHICLE HAVE TO HAVE DONE TO HAVE AN AIRBAG DEPLOY???? VEHICLE WAS TOTALED. SON IS PERMANTLY SCARRED, AND PARENTS HAVE LOST FAITH IN CHEVY TRUCKS, AND AIRBAGS. HIS OLDER BROTHER CO-SIGNED SO HE WOULD HAVE A "NEW, SAFER" VEHICLE AND AM NOW SO VERY UPSET WITH GM AS TO AN EXPLANATION AS TO WHY THESE AIR BAGS DID NOT DEPLOY TO PROTECT OUR SON. THIS VEHICLE (HE WAS SPEEDING PASSING) WENT OFF THE ROAD HEAD ON INTO A DEEP DITCH, OVERTURNED SEVERAL TIMES, HIT SIDE TO SIDE IN DITCH, FLATTENED TIRES AND CAME TO REST ON SHOULDER OF ROAD. NOW HOW MUCH MORE DOES IT TAKE TO DEPLOY AN AIR BAG???? I THINK IF WE WERE WEALTHY AND COULD AFFORD A LAWYER THEY MAYBE WOULD OF LISTENED AND CHECKED THIS MORE, BUT AS WE ARE JUST "COMMON" HARD WORKING US CITIZENS, WE DON'T REALLY COUNT. ALSO OUR SON WAS DRINKING AT THE TIME OF THE INCIDENT, ( SHOULD NOT MATTER TO SAFETY OF VEHICLE EQUIPMENT) I WAS TOLD IT WAS NOT "CATASTROPIC ENOUGH" OF AN ACCIDENT TO WARRENT ANY DAMAGES. ?? THEN THEY TRIED TO SAY THE "ACCIDENT" (MEANING VEHICLE) WASN'T. I THINK WE ALL KNOW WHAT THEY MEANT. WE WERE NOT LOOKING FOR "MILLIONS" (STRETCHING IT), JUST HIS MEDICAL BILLS AND THE PROBLEM CORRECTED IN OTHER CHEVY'S SO THIS WOULD NOT HAPPEN TO SOMEONE ELSE. AS USUAL THE HONEST PEOPLE, AND HARD WORKING MIDDLE CLASS CAN GET NO HELP. PRAYERS GO OUT TO ANYONE ELSE THIS HAS HAPPENED TO AND THAT IT WON'T HAPPEN TO SOMEONE ELSE'S CHILD. |
| 10089611 | CHEVROLET | SILVERADO | 2003 | 2004-08-14 | WHILE DRIVING 55 MPH CONSUMER'S VEHICLE WAS INVOLVED IN A FRONT COLLISION. UPON IMPACT,  DUAL AIR BAGS DID NOT DEPLOY.  DRIVER SUSTAINED HEAD INJURIES DUE TO HIS HEAD HITTING THE STEERING WHEEL.*AK    THE CHEVROLET TESTERS CAME TO INSPECT THE VEHICLE. THEY CONCLUDED THAT THE IMPACT WAS NOT HARD ENOUGH NOR WAS THE VEHICLE GOING FAST ENOUGH FOR THE AIR BAG TO DEPLOY.  *NM |
| 10137033 | CHEVROLET | SILVERADO | 2003 | 2005-08-14 | AIR BAGS DID NOT INFLATE WITH A FRONT END CRASH THAT PUSHED THE MOTOR IN THE DASH. SON RECEIVED HEAD INJURIES WOULD LIKE TO KNOW WHAT YOU ARE GOING TO DO ABOUT THIS. PICKUP WAS A TOTAL LOSS. FRAME WAS BENT. OUR ATTORNEY WOULD LIKE TO PUSH THIS BUT I WOULD LIKE TO KNOW WHAT YOU WILL DO FOR US FIRST. I HAVE PICTURES IF YOU WOULD LIKE TO SEE THEM. *JB |
| 10154224 | CHEVROLET | SILVERADO | 2003 | 2006-03-23 | DIRECT FRONTAL IMPACT WITH SIDE OF CAR THAT RAN RED LIGHT. AIR BAG DID NOT DEPLOY. SPEED WAS APPROXIMATELY 40-50 MPH.  *JB |
| 10577089 | CHEVROLET | SILVERADO | 2003 | 2013-11-14 | I HIT A DEER HEAD ON AND TOTALED MY SILVERADO.  I HIT IT AT 55 MPH AND NEITHER OF THE AIRBAGS DEPLOYED.  *TR |
| 10592423 | CHEVROLET | SILVERADO | 2003 | 2014-05-08 | TRUCK COLIDED WITH GUARD RAIL. BOUNCED OFF, HIT VEHICLE 1, THEN INTO VEHICLE 2 THEN STOPPED AFTER HITTING VEHICLE 3 A SEMI TRUCK.  ALL DAMAGE WAS DONE TO FRONT OF THE CHEVY SILVERADO.  AT NO TIME DID THE AIRBAGS DEPLOY.  SILVERADO WAS DETERMINED TO BE TOTALED DUE TO THE EXCESSIVE DAMAGE ON THE FRONT.   AIRBAGS SHOULD HAVE DEPLOYED DURING ONE OF THE IMPACTS.   *JS |
| 10082050 | CHEVROLET | SUBURBAN | 2003 | 2004-07-14 | THE CONSUMER WAS INVOLVED IN AN ACCIDENT WHERE IT WAS HIT FROM THE FRONT DRIVER SIDE, THE IMPACT CAUSED THE VEHICLE TO HIT A TELEPHONE POLE HEAD ON.  THE AIR BAGS DID NOT DEPLOY. *JB |
| 11360703 | CHEVROLET | SUBURBAN | 2003 | 2020-08-07 | TL* THE CONTACT OWNED A 2003 CHEVROLET SUBURBAN. THE CONTACT STATED THAT WHILE TOWING HIS DAUGHTERS VEHICLE AT ABOUT 60 MPH, ANOTHER VEHICLE CRASHED INTO THE VEHICLE BEING TOWED. THE AIR BAGS DID NOT DEPLOY. THE CONTACT SUSTAINED A HEAD AND LOWER BACK INJURY. THE FRONT PASSENGER (HIS DAUGHTER) SUSTAINED A BACK INJURY. THE TWO WENT TO THE DOCTOR THREE DAYS LATER. THERE WAS NO POLICE REPORT. THE VEHICLE BEING TOWED WAS DAMAGED AND WAS DRIVEN TO THE DAUGHTERS DORM WHERE IT WAS TOTALED BY THE INSURANCE COMPANY. THE DEALER AND THE MANUFACTURER WERE NOT CONTACTED. THE CONTACT STATED THAT THE OTHER DRIVERS INSURANCE DENIED ANY COMPENSATION TO THE CONTACT, STATING THAT THE CONTACTS VEHICLE (THE VEHICLE TOWING THE DAMAGED VEHICLE) WAS NOT HIT. THE CONTACT STATED THAT AFTER THE ACCIDENT, A LOUD NOISE WAS HEARD WHENEVER THE VEHICLE WAS TURNED ON. THE CONTACT ALSO STATED THAT THE DASHBOARD WAS CRACKED. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 173,000. |
| 10899484 | CHEVROLET | TAHOE | 2003 | 2016-04-14 | TL* THE CONTACT OWNED A 2003 CHEVROLET TAHOE. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 45 MPH, THE CONTACT LOST CONTROL OF THE VEHICLE AND CRASHED INTO A GUARD RAIL. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED. THE FRONT SEAT PASSENGER SUSTAINED 12 BROKEN RIBS AND 2 COLLAPSED LUNGS THAT REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS TOWED TO AN INDEPENDENT TOWING FACILITY. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS UNKNOWN. THE VIN WAS UNAVAILABLE. |

| | | | | | |
|---|---|---|---|---|---|
| 10008283 | CHEVROLET | TRACKER | 2003 | 2003-02-28 | I RENTED A CHEVROLET TRACKER 2003 AND WAS HIT HEAD ON BY ANOTHER DRIVER AND EVERYONE THERE NOTICE THAT THE AIRBAG DID NOT OPEN.  THIS WAS A HEAD ON ACCIDENT. I WILL BE FILING THIS TO A LAWYER SHORT AS I WAS HURT. *JB |
| 10052731 | CHEVROLET | TRACKER | 2003 | 2003-12-19 | I WAS DRIVING ON I-190 IN THE RIGHT HAND LANE ON DEC 19, 2003.  A CAR COMING UP AN ENTRANCE RAMP MERGED INTO MY LINE ALMOST HITTING ME.  I SWERVED TO AVOID THE CRASH BUT SUBSEQUENTLY HIT SOME BLACK ICE AND WAS UNABLE TO RECOVER CONTROL.  I HIT THE CONCRETE BARRIER HEAD ON.  THE INSURANCE COMPANY'S  (PROGRESSIVE) CLAIMS AGENT FIGURES I WAS GOING ABOUT 50 MPH AT IMPACT. THE IMPACT SO EXTREME THAT MY TRACKER SHIFTED ITSELF INTO 4WD AND TURNED ON THE HIGHBEAMS.  BASICALLY ANYTHING THAT COULD GO FORWARD DID.  THE WHOLE FRONT OF THE VEHICLE WAS PUSHED BACK 6" AND MY LISCENCE PLATE WAS RIPPED OFF, BUT YET MY AIRBAGS NEVER DEPLOYED.  IF IT WEREN'T FOR MY SEATBELT, I MAY NOT BE HERE TO TYPE THIS. I HAD SEVERE WHIPLASH, AS WELL AS, PUTTING MY LEFT KNEE THROUGH MY DASH BOARD.  THE IMPACT OF THE CRASH SHOULD HAVE HIT AT LEAST ONE, IF NOT ALL, SENSORS.  I FEEL THIS IS A MAJOR PROBLEM.  I WILL BE FILING A FORMAL COMPLAINT WITH CHEVY REGARDING THIS ISSUE.*AK |
| 10097100 | CHEVROLET | TRACKER | 2003 | 2004-03-20 | WHILE DRIVING 37 MPH THE VEHICLE WAS INVOLVED IN A HEAD ON COLLISION. THE AIR BAGS DID NOT DEPLOY UPON IMPACT.  THE PASSENGER SUSTAINED SEVERE WHIPLASH. PLEASE PROVIDE ADDITIONAL INFORMATION. *JB |
| 10216640 | CHEVROLET | TRACKER | 2003 | 2008-01-27 | I WAS DRIVING HOME  FROM WORK WHEN MY CAR SWERVED TO THE RIGHT AND WENT OF THE ROAD AND HIT A GROVE OF TREES HEAD ON.  MY CAR WAS TOTALED AND NONE OF MY AIRBAGS WENT OFF.  WHY DOES THIS HAPPEN I COULD HAVE BEEN KILLED.  ALSO I RECEIVED A SAFETY NOTICE ABOUT MY CHEVEROLET TRACKER 4 DAYS BEFORE THIS HAPPENED HAVING A PROBLEM WITH THE FRONT SUSPENSION CROSSMEMBER DOE SOMEONE HAVE TO DIE BEFORE A RECALL IS DONE  AND WHY DIDN'T MY AIR BAGS GO OFF SOMEONE PLEASE LOOK AT THIS CAR BEFORE IT GETS HAULED OFF BY THE ADJUSTER!!!!! I WAS AIRLIFTED TO THE HOSPITAL THE FIRE DEPARTMENT CUT THE ROOF OF MY CAR OFF TO GET ME  OUT NO AIRBAGS WHAT HAPPENED!!!  *TR |
| 8023281 | CHEVROLET | TRAILBLAZER | 2003 | 2002-11-19 | CONSUMER STATES THAT WHILE DRIVING APPROXIMATELY 35-40MPH SLID OFF ROAD AND CRASHED INTO A DITCH HEAD-ON.  BOTH DRIVER AND PASSENGER AIR BAGS DID NOT DEPLOY. TS |
| 10040870 | CHEVROLET | TRAILBLAZER | 2003 | 2003-09-25 | TRAVELING 55 MPH WHEN ANOTHER VEHICLE CROSSED THE ROAD CAUSING ME TO HIT THE SIDE OF HIS VEHICLE HEAD ON. NO AIR BAGS DEPLOYED. |
| 10054479 | CHEVROLET | TRAILBLAZER | 2003 | 2004-01-16 | LOSING CONTROL OF MY VEHICLE ON ICY PAVEMENT , VEHICLE SLID OFF THE ROAD , HEAD-ON INTO A TREE. DRIVERS SIDE AND PASSENGER SIDE AIR BAGS FAILED TO DEPLOY. SERIOUS INJURIES OCCURED , WHICH MAY HAVE BEEN LESSENED IF THE SAFETY FEATURES WE PAY FOR ACTUALLY WORK.*AK  ER DOCTORS AND STATE POLICE WERE TERRIBLY ANNOYED , SINCE THERE HAVE BEEN SEVERAL REPORTS OF SAME FAILURE IN DESIGN.  NO RESPONSE FROM DEALER OR MANUFACTURER, AS OF YET !!!*AK |
| 10055534 | CHEVROLET | TRAILBLAZER | 2003 | 2004-01-11 | AFTER HITTING A TREE HEAD ON AIR BAGS DID NOT DEPLOY. *AK |
| 10065438 | CHEVROLET | TRAILBLAZER | 2003 | 2004-03-24 | WHILE DRIVING AT 40 MPH CONSUMER'S VEHICLE WAS INVOLVED IN A FRONTAL COLLISION. CONSUMER WAS WEARING SEAT BELTS, BUT NONE OF THE AIR BAGS DEPLOYED.  CONSUMER SUSTAINED A BROKEN NOSE,SCRAPES, AND BRUISES TO CHEST AND WRIST.  *AK |
| 10113264 | CHEVROLET | TRAILBLAZER | 2003 | 2004-08-01 | CHEVROLET TRAILBLAZER 2003 UPON IMPACT AIRBAG  DID NOT DEPLOY.  *BF  THE CONSUMER REAR ENDED ANOTHER VEHICLE. *JB |
| 10174616 | CHEVROLET | TRAILBLAZER | 2003 | 2006-11-22 | 2003 CHEVY TRAILBLAZER AIR BAGS NEVER CAME OUT AFTER HAVING IMPACT INTO TWO TREES FORCING THE DRIVER INTO THE STEERING WHEEL. NOTHING AT THIS TIME HAS BEEN CORRECTED TO REPAIR THE SUV. GM NEED TO BE ALERTED OF THIS FAILURE TO CORRECT THE PROBLEM!  *NM |
| 10208796 | CHEVROLET | TRAILBLAZER | 2003 | 2007-11-10 | TL*THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER.  WHILE DRIVING 40 MPH, THE CONTACT SWERVED TO AVOID AN ANIMAL AND CRASHED INTO A TREE.  THE FRONT AIR BAGS FAILED TO DEPLOY.  THE VEHICLE IS CURRENTLY AT A TOW YARD AND WILL BE TOWED TO THE INSURANCE COMPANY FOR INVESTIGATION.  THE MANUFACTURER FILED A REPORT AND THE CONTACT IS AWAITING A CALL BACK.  THE CURRENT AND FAILURE MILEAGES WERE 60,000. |
| 10219898 | CHEVROLET | TRAILBLAZER | 2003 | 2008-02-08 | TL*THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER.  WHILE DRIVING 32 MPH, THE CONTACT CRASHED INTO A BUILDING.  THE VEHICLE WAS DESTROYED.  THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED INJURIES TO HER MOUTH AND EYE.  THE AMBULANCE ARRIVED ON THE SCENE AND TRANSPORTED THE CONTACT TO THE HOSPITAL.  A POLICE REPORT WAS FILED. CHEVROLET HAS NOT BEEN NOTIFIED.  THE VIN, ENGINE SIZE, AND NUMBER OF CYLINDERS WERE UNKNOWN.  THE CURRENT AND FAILURE MILEAGES WERE 71,000. |
| 10223723 | CHEVROLET | TRAILBLAZER | 2003 | 2008-03-13 | TL*THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER.  WHILE DRIVING 45 MPH, THE CONTACT REAR ENDED ANOTHER VEHICLE.  THE FRONT AIR BAGS FAILED TO DEPLOY.  THERE WERE NO INJURIES AND A POLICE REPORT WAS FILED.  THE VIN AND ENGINE SIZE WERE UNKNOWN.  THE FAILURE AND CURRENT MILEAGES WERE 77,000. |
| 10229337 | CHEVROLET | TRAILBLAZER | 2003 | 2008-05-28 | THE AIRBAG DID NOT DEPLOY IN A FRONT-END COLLISION THAT WILL MOST LIKELY TOTAL THE VEHICLE. THE OTHER VEHICLE'S DID DEPLOY.  *TR |
| 10308388 | CHEVROLET | TRAILBLAZER | 2003 | 2009-12-26 | HAD CAR ACCIDENT WAS HIT BY ANOTHER VEHICLE AND HIT A RETAINING WALL GOING ABOUT 45 MILES AN HOUR AND AIR BAG DID NOT DEPLOY 2003 TRAIL BLAZER. *TR |

| 10313800 | CHEVROLET | TRAILBLAZER | 2003 | 2009-12-26 | TL*THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER.  WHILE DRIVING 45-50 MPH IN INCLEMENT WEATHER, THE CONTACT CRASHED INTO A RETAINER WALL.  SHE STATED THAT OTHER PASSING VEHICLES PUSHED HER VEHICLE INTO THE RETAINER WALL. THE AIR BAG DID NOT DEPLOY. SHE WAS ALSO INJURED WHEN THE CRASH OCCURRED. THE MANUFACTURER STATED THAT THEY WOULD TAKE PICTURES OF THE VEHICLE. THE VEHICLE HAS NOT BEEN REPAIRED. A POLICE REPORT WAS FILED. THE CONSUMER STATED THAT THE CURRENT MILEAGES WERE 82,000.   THE CONSUMER STATED IT WAS A HIT AND RUN ACCIDENT. UPDATED 04/07/10.*JB |
| 10315428 | CHEVROLET | TRAILBLAZER | 2003 | 2008-06-03 | 2003 CHEVROLET TRAILBLAZER. S10 COMEBACK FWD LTR TO POTUS RE COMPLAINT AGAINST GM REGARDING DEFECTIVE AIRBAG, INVOLVE IN CAR ACCIDENT AND THE AIRBAG DID NOT DEPLOY. *TGW  THE CONSUMER STATED ANOTHER VEHICLE HIT A DEER, CROSSED THE CENTER LANE AND HIT THEIR VEHICLE HEAD ON. THE CONSUMER STATED THE SEAT BELTS DID NOT RESTRAIN THEM. *JB  UPDATED PHONE NUMBER 05/28/10. *JB |
| 10392644 | CHEVROLET | TRAILBLAZER | 2003 | 2011-01-23 | TL*THE CONTACT OWNS A 2003 CHEVROLET BLAZER. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 45 TO 50 MPH IN THE RAIN HE CRASHED HEAD ON INTO ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. THERE WERE NO AIR BAG WARNING INDICATIONS PRIOR TO THE CRASH. THE DRIVER SUSTAINED A CONCUSSION AND INJURIES TO HIS NECK, KNEE, AND FEET. A POLICE REPORT WAS FILED. THE DRIVER WAS TRANSPORTED TO THE HOSPITAL BY AMBULANCE. THE MANUFACTURER WAS CONTACTED AND OFFERED NO ASSISTANCE. THE FAILURE COULD NOT BE DIAGNOSED SINCE THE INSURANCE COMPANY DEEMED THE VEHICLE AS BEING DESTROYED. THE FAILURE AND CURRENT MILEAGE WAS APPROXIMATELY 130,000. THE VIN WAS UNAVAILABLE. UPDATED 5/2/11 *CN   UPDATED 1/11/11 *CN |
| 10425103 | CHEVROLET | TRAILBLAZER | 2003 | 2011-09-03 | MY WIFE AND I WERE INVOLVED IN A HEAD ON COLLISION (HIT BY A DRUNK DRIVER) OUR AIR BAGS DID NOT DEPLOY,  I SUSTAINED A C7 FRACTURE, SCALPED BY THE REAR VIEW MIRROR (22 STITCHES TO HOLD MY SCALP) 6 STITCHES ON MY NOSE AND BRUISED KNEES. MY WIFE HAS A BROKEN NOSE ALL THE BONES IN HER RIGHT FOOT BROKEN AND BRUISED KNEES.  *TR |
| 10468222 | CHEVROLET | TRAILBLAZER | 2003 | 2010-05-07 | TL* THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT HE CRASHED INTO A LIGHT POLE WHILE DRIVING AT UNKNOWN SPEEDS AND THE AIR BAGS DID NOT DEPLOY. THE CONTACT SUSTAINED INJURIES BUT WAS NOT TRANSPORTED TO THE HOSPITAL. THE POLICE WAS NOTIFIED OF THE CRASHED AND A REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT NOTIFIED. THE VIN WAS NOT AVAILABLE. THE FAILURE MILEAGE WAS 170,000. |
| 10523466 | CHEVROLET | TRAILBLAZER | 2003 | 2013-07-04 | WHILE TRAVELING IN SLOW TRAFFIC, THE CAR IN FRONT OF MY WIFE STOPPED.  BY THE TIME SHE NOTICED THEY STOPPED IT WAS TOO LATE AND SHE HIT THE BACK OF THEIR FORD EXPLORER MOVING AT AROUND 20-30MPH.  THE FRONT END OF OUR TRAILBLAZER WAS CRUSHED.  MY DAUGHTER AND WIFE WERE WEARING THEIR SEAT BELTS.  THE OFFICERS AND PARAMEDICS ON THE SCENE WERE SHOCKED THAT THE AIRBAGS DID NOT COME OUT WITH THE AMOUNT OF FRONT END DAMAGE.  THEY HAD TO CUT THE BATTERY WIRES TO PREVENT THE AIRBAG FROM COMING OUT LATER WHEN SHE CLEANED OUT THE TRAILBLAZER.  AN EXAMPLE OF HOW MUCH DAMAGE WAS TAKEN TO THE FRONT END, THE CORNER FENDERS WERE PUSHED BACK SO FAR THEY COULDN'T OPEN WITHER FRONT DOOR.  THE FENDERS WERE CRUSHED INTO THE DOORS KEEPING THEM SHUT.  I WOULD THINK WITH AN IMPACT LIKE THAT THE AIRBAGS WOULD HAVE CAME OUT, IT WAS A SQUARE HIT MEANING EVEN DAMAGE ACROSS THE FRONT END.  *TR |
| 10551243 | CHEVROLET | TRAILBLAZER | 2003 | 2013-09-26 | DRIVING APPROXIMATELY 40 TO 43 MPH WHEN ANOTHER VEHICLE TURNED DIRECTLY IN FRONT OF ME.  TOTAL FRONTAL DAMAGE BUCKLING UP HOOD ON MY CAR AS I HIT OTHER VEHICLE IN FRONT-END PASSENGER SIDE. THEIR AIRBAG DEPLOYED BUT MINE DIDN'T, EVEN WITH TOTAL FRONT END DAMAGE TO MY CAR.  HAD SEATBELT ON, BUT DUE TO IMPACT STILL PULLED MY WHOLE BODY FORWARD (LIKE CRASH TEST DUMMY).  THIS WAS A VERY HARD CRASH TOTALING MY CAR.   *TR |
| 10568108 | CHEVROLET | TRAILBLAZER | 2003 | 2008-02-14 | TL*  THE CONTACT OWNS A 2003 CHEVROLET TRAIL BLAZER. THE WAS DRIVING 40 MPH, AND CRASHED INTO THE SIDE OF ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED INJURIES TO THE RIGHT SHOULDER, SPINAL STENOSIS AND FRACTURED KNEES. A POLICE REPORT WAS FILED OF THE INCIDENT. THE CONTACT STATED THAT SHE HAD ALSO BEEN INVOLVED IN TWO PRIOR CRASHES IN WHICH THE AIR BAGS FAILED TO DEPLOY. THE PREVIOUS CRASHES DID NOT RESULT IN ANY INJURIES AND A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS INSPECTED BY A REPRESENTATIVE SENT BY THE MANUFACTURER BUT THEY WERE UNABLE TO DETERMINE THE CAUSE OF THE AIR BAG FAILURE. THE FAILURE MILEAGE WAS 80,000.  *TR |
| 10596289 | CHEVROLET | TRAILBLAZER | 2003 | 2007-11-11 | TL*  THE CONTACT OWNS A 2003 CHEVROLET TRAIL BLAZER. THE CONTACT STATED THAT WHILE DRIVING AN UNKNOWN SPEED, THE CONTACT ABRUPTLY APPLIED THE BRAKES TO AVOID A CRASH. THE CONTACT LOST CONTROL OF THE VEHICLE AND CRASHED INTO A CEMENT BARRIER. THE VEHICLE THEN ROLLED OVER AND LANDED IN AN EMBANKMENT. THE DRIVER'S SIDE AIR BAG FAILED TO DEPLOY. THE CONTACT SUFFERED INJURIES TO THE NECK AND A BROKEN LEG. THE CONTACT ALSO STATED THAT THE IGNITION SWITCH WAS REPLACED TWICE PRIOR TO THE CRASH. THE VIN WAS NOT AVAILABLE. THE VEHICLE WAS DESTROYED. THE CAUSE OF THE FAILURE WAS UNKNOWN. THE FAILURE AND CURRENT MILEAGE WAS 70,000. |
| 10606954 | CHEVROLET | TRAILBLAZER | 2003 | 2006-08-08 | AIRBAGS DID NOT DEPLOY DURING ACCIDENT.  VEHICLE WENT THROUGH A GUARD RAIL, SUSTAINED FRONT END DAMAGE.  *TR |

| 10654364 | CHEVROLET | TRAILBLAZER | 2003 | 2002-10-26 | 2003 CHEVROLET TRAILBLAZER. CONSUMER STATED HER HUSBAND WAS INVOLVED IN AN ACCIDENT, AND THE AIR BAGS DID NOT DEPLOY. CONSEQUENTLY, HE DIED FROM HIS INJURIES. *SS UPDATED 02/09/15. *JB |
| 10660781 | CHEVROLET | TRAILBLAZER | 2003 | 2014-11-23 | TL* THE CONTACT OWNED A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 70 MPH, A DEER JUMPED IN FRONT OF THE VEHICLE CAUSING THE CONTACT TO CRASH. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED A NECK AND BACK INJURY THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 170,000. |
| 10681428 | CHEVROLET | TRAILBLAZER | 2003 | 2015-01-24 | TL* THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 35 MPH, THE VEHICLE SLID ON ICE AND CRASHED INTO A CEMENT WALL. THE AIR BAGS DID NOT DEPLOY AND THE SEAT BELT DID NOT RESTRAIN THE CONTACT. THE CONTACT SUSTAINED CHEST, NECK, AND KNEE INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DRIVEN TO THE CONTACT'S RESIDENCE. THE VEHICLE WAS THEN TAKEN TO AN INDEPENDENT MECHANIC, BUT WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 70,000. |
| 10694201 | CHEVROLET | TRAILBLAZER | 2003 | 2013-05-06 | TL* THE CONTACT OWNED A 2003 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING AT 50 MPH DURING INCLEMENT WEATHER CONDITIONS, THE CONTACT LOST CONTROL OF THE VEHICLE AND CRASHED INTO AN EMBANKMENT. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED SPINE INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 90,000.    UPDATED 5/11/15*CN |
| 10721783 | CHEVROLET | TRAILBLAZER | 2003 | 2015-05-12 | TL* THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER EQUIPPED WITH BF GOODRICH RUGGED TRAIL T/A TIRES, SIZE: P245/65RI7. WHILE DRIVING AT 65 MPH, THE CONTACT HEARD A VIBRATION COMING FROM THE TIRES. THE CONTACT LOST CONTROL OF THE VEHICLE AND CRASHED INTO A POLE. THE VEHICLE ROLLED OVER MULTIPLE TIMES AND THE AIR BAGS FAILED TO DEPLOY. IN ADDITION, THE CONTACT NOTICED THAT THE THREADS FROM THE REAR DRIVER SIDE TIRE HAD SEPARATED. THE CONTACT SUSTAINED HEAD, SHOULDER, ELBOW, AND HIP INJURIES THAT REQUIRED MEDICAL ATTENTION.  A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE VEHICLE AND TIRE MANUFACTURERS WERE NOT NOTIFIED OF THE FAILURE. THE VEHICLE FAILURE MILEAGE WAS 116,000 AND THE TIRE FAILURE MILEAGE WAS 40,000. THE DOT NUMBER WAS UNAVAILABLE. |
| 10787837 | CHEVROLET | TRAILBLAZER | 2003 | 2015-10-29 | TL* THE CONTACT OWNED A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 20 MPH UPHILL, A VEHICLE TRAVELING DOWNHILL CRASHED HEAD ON INTO THE CONTACT'S VEHICLE. THE FRONTAL AIR BAGS DID NOT DEPLOY. THE PASSENGER SUSTAINED WHIPLASH AND BRUISES TO THE ELBOW, CHEST, AND STOMACH THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE PASSENGER WAS ALSO INJURED AND TAKEN TO THE HOSPITAL, BUT WAS RELEASED THE SAME DAY. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE VIN WAS INVALID. THE APPROXIMATE FAILURE MILEAGE WAS 141,000. |
| 10850437 | CHEVROLET | TRAILBLAZER | 2003 | 2016-02-03 | TL* THE CONTACT OWNED A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING 50 MPH, THE VEHICLE SLID ON BLACK ICE AND CRASHED INTO A DITCH. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED A CUT TO THE HEAD AND A SEVERE BACK INJURY THAT REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS DESTROYED AND TOWED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 186,000. |
| 10863408 | CHEVROLET | TRAILBLAZER | 2003 | 2016-05-03 | TL* THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING 25 TO 35 MPH, AN ANIMAL APPEARED IN THE ROAD. THE CONTACT SWERVED AND CRASHED INTO A TELEPHONE POLE. THE AIR BAGS DEPLOYED. THE VEHICLE WAS TOWED TO THE CONTACT'S RESIDENCE. THE MANUFACTURER WAS NOT AWARE OF THE FAILURE. A POLICE REPORT WAS NOT FILED. THE CONTACT SUSTAINED HEAD, NECK, AND CHEST INJURIES THAT REQUIRED MEDICAL ATTENTION. THE FAILURE MILEAGE WAS 135,000.....UPDATED 06/15/16 *BF    *CN |
| 10927873 | CHEVROLET | TRAILBLAZER | 2003 | 2016-11-22 | TL* THE CONTACT OWNED A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 78 MPH, A TIRE BLEW OUT. THE CONTACT LOST CONTROL OF THE VEHICLE AND CRASHED. THE VEHICLE WAS DESTROYED AND TOWED. THE AIR BAGS FAILED TO DEPLOY. THE DRIVER SUSTAINED AN INJURED LEFT SHOULDER AND NECK, AND A HEAD ABRASION, WHICH REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 115,000. |
| 10934115 | CHEVROLET | TRAILBLAZER | 2003 | 2016-11-29 | TL* THE CONTACT OWNED A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING 40 MPH IN WET WEATHER, THE VEHICLE HYDROPLANED, DROVE OFF A CLIFF, AND CRASHED INTO A TREE. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED CHEST, KNEE AND ARM INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS TOWED TO A TOWING AGENCY WHERE IT WAS DEEMED DESTROYED. THE FAILURE MILEAGE WAS 160,000. UPDATED 03/01/17*LJ  *JS |

| | | | | | |
|---|---|---|---|---|---|
| 10969901 | CHEVROLET | TRAILBLAZER | 2003 | 2017-03-25 | I WAS INVOLVED IN A HEAD-ON COLLISION, I WAS GOING AROUND 10-15 MPH AND THE VEHICLE THAT CAUSED THE ACCIDENT WAS GOING FASTER THAN I WAS GOING. MY AIRBAGS DID NOT DEPLOY. THEY SHOULD DEPLOY BETWEEN 8-14 MPH. IS ANYONE HOLDING GENERAL MOTORS ACCOUNTABLE FOR THEIR NEGLIGENCE? WE WERE ON A TWO LANE CITY STREET. |
| 10970795 | CHEVROLET | TRAILBLAZER | 2003 | 2017-03-25 | TL* THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING 35 MPH, THE VEHICLE WAS INVOLVED IN A HEAD ON COLLISION. THE CONTACT'S VEHICLE WAS STRUCK FROM THE FRONT END BY ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED INJURIES TO THE LEFT LEG AND LEFT ARM, WHICH REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS TOWED. IT WAS NOT DETERMINED WHETHER OR NOT THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 150,000. |
| 10065821 | GMC | ENVOY | 2003 | 2004-04-05 | MY WIFE WAS IN AN ACCIDENT WITH OUR NEW 2003 GMC ENVOY SLT, PURCHASED IN NOVEMBER OF 2003. TO AVOID REAR ENDING THE CAR IN FRONT OF HER, SHE SWERVED THE ENVOY OFF OF THE ROAD, DOWN A HILL AND AND HIT A TREE IN THE RIGHT FRONT OR PASSENGER SIDE OF THE VEHICLE. SHE HIT THE TREE WITH SUCH FORCE THAT THE DAMAGE TO THE FRONT OF THE VEHICLE RESULTED IN A TOTAL LOSS. MY CONCERN IS THE AIR BAGS NEVER NEVER DEPLOYED IN THIS ACCIDENT. I WOULD LIKE TO KNOW WHY? AND I WOULD LIKE TO KNOW MORE INFORMATION AS TO THE OPERATION OF THE AIR BAG SYSTEM IN A GMC ENVOY.*AK |
| 10076184 | GMC | ENVOY | 2003 | 2004-05-20 | CONSUMER'S VEHICLE REAR ENDED ANOTHER VEHICLE AT 25 MPH. UPON IMPACT, AIR BAGS DID NOT DEPLOY. DEALERSHIP WAS NOTIFIED, BUT DID NOT RESOLVE THE PROBLEM. *AK THE MANUFACTURER DID NOT EXCEPT RESPONSIBILITY. *SC |
| 10101930 | GMC | ENVOY | 2003 | 2004-11-01 | WHILE DRIVING, UPON IMPACT THE AIR BAGS DID NOT DEPLOY AFTER BEING STRUCK IN A SERIOUS FRONT END COLLISION. *BF *SC |
| 10103710 | GMC | ENVOY | 2003 | 2004-11-22 | CONSUMER'S VEHICLE WAS INVOLVED IN A HEAD ON COLLISION AT 35 MPH. UPON IMPACT, AIR BAGS DID NOT DEPLOY. CONSUMER WILL NOTIFY MANUFACTURER.*AK....POLICE REPORT INCLUDED |
| 10103904 | GMC | ENVOY | 2003 | 2004-01-18 | VEHICLE WAS INVOLVED IN A FRONT COLLISION ACCIDENT AT 15 MPH DUE TO WEATHER. UPON IMPACT, AIR BAGS DID NOT DEPLOY. DEALER WAS INFORMED BY CONSUMER. *AK THE CONSUMER STATED THAT THE VEHICLE COULD ONLY BE TURNED OFF BY CUTTING THE BATTERY CABLES. *TC |
| 10259161 | GMC | ENVOY | 2003 | 2009-02-17 | ACCIDENT ON 2/17/2009 FRONT CRASH TO OTHER VEHICLE AND AIR BAG DID NOT DEPLOY HOOD DAMAGE, WINDSHIELD DAMAGE, ALL FRONT DAMAGE, DOORS COULD NOT OPEN RADIATOR DAMAGE, ENGINE DAMAGE. *TR |
| 10281810 | GMC | ENVOY | 2003 | 2009-08-25 | MY HUSBAND FELL ASLEEP AT THE WHEEL ON HIS WAY TO WORK AND HIT SEVERAL TREES. THE CAR IS TOTALED BUT THE AIRBAGS DIDN'T GO OFF. I DO UNDERSTAND THAT THE ACCIDENT WAS 100% MY HUSBANDS FAULT BUT I DON'T UNDERSTAND WHY THE AIR BAGS DIDN'T GO OFF. *TR |
| 10554787 | GMC | ENVOY | 2003 | 2013-11-25 | TL* THE CONTACT OWNS A 2003 GMC ENVOY. THE CONTACT STATED THAT WHILE DRIVING AT AN UNKNOWN SPEED, HE SLIGHTLY CRASHED INTO A CURB AND THE VEHICLE TURNED OVER IN A DITCH. THE AIR BAGS DID NOT DEPLOY AND THE CONTACT SUSTAINED NECK AND LOWER BACK INJURIES. A POLICE REPORT WAS FILED OF THE INCIDENT. THE VEHICLE WAS DEEMED DESTROYED AND TOWED TO A SALVAGE YARD. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS UNAVAILABLE. |
| 10560852 | GMC | ENVOY | 2003 | 2014-01-16 | TL* THE CONTACT OWNS A 2003 GMC ENVOY. THE CONTACT STATED THAT WHILE DRIVING AT VARIOUS SPEEDS, THE CONTACT WAS INVOLVED IN A CRASH. THE VEHICLE TRAVELED DOWN AN EMBANKMENT AND CRASHED INTO A TREE. THE AIR BAGS FAILED TO DEPLOY AND THE CONTACT SUSTAINED INJURIES TO THE ARMS. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE VIN WAS NOT AVAILABLE. THE APPROXIMATE FAILURE AND CURRENT MILEAGE WAS 100,000. *TR |
| 10592465 | GMC | ENVOY | 2003 | 2014-04-14 | MY DAUGHTER WAS DRIVING THE ENVOY AT ABOUT 45 MPH WHEN A DRUNK DRIVER PULLED OUT IN FRONT OF TRAFFIC, CAUSING EVERYONE TO SLAM ON THEIR BRAKES, AND MY DAUGHTER WAS NOT ABLE TO STOP IN TIME BEFORE REAR-ENDING ANOTHER VEHICLE. THE CAR IS TOTALED BUT THE AIRBAGS NEVER DEPLOYED. *JS |
| 10615166 | GMC | ENVOY | 2003 | 2012-06-04 | I WAS DRIVING ABOUT 40 MPH WHEN I WENT THREW A YELLOW LIGHT WHEN A OLDER LADY TURN IN FRONT OF ME, I HIT HER ON THE PASSENGER SIDE BETWEEN THE FRONT N BACK DR, , PUSHING N ROLLING N TOTALING HER SMALL SUV. SHE WAS NOT SERIOUS HURT. MY AIRBAGS DID NOT DEPLOY. MY ENVOY WAS STILL DRIVEABLE . I TOOK MY ENVOY TO MY LOCAL GMC DEALER TO HAVE THEM FIND PROB WHY THE AIRBAGS DIDN'T GO OFF, THEY OR I CALLED A REP FOR GMC, TO COME TO SIOUX FALLS TO INVESTIGATE AND HE TOLD ME THAT THE REASON THEY DIDN'T DEPLOY WAS BECAUSE I WASN'T GOING FAST ENOUGH FOR IMPACT FOR DEPLOY. I THINK THAT IS BUNCH OF BULL. CAN SOMEONE HELP ME ,IS THERE ANYTHING I CAN DO .I HEAR THAT A PERSON CAN RECEIVE CASH FROM GMC IF A PERSON S AIRBAGS DON'T GO OFF. *TR |

| | | | | | |
|---|---|---|---|---|---|
| 10682693 | GMC | ENVOY | 2003 | 2015-02-10 | TL*THE CONTACT OWNS A 2003 GMC ENVOY. THE CONTACT STATED THAT WHILE DRIVING AT 5 MPH, THE CONTACT DEPRESSED THE ACCELERATOR PEDAL INSTEAD OF THE BRAKE PEDAL WHICH CAUSED THE VEHICLE TO CRASH INTO A TREE. AS A RESULT, THE AIR BAG FAILED TO DEPLOY. THE CONTACT SUSTAINED INJURIES TO THE NECK AND LEFT SHOULDER WHICH REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS NOT REPAIRED. THE VIN WAS NOT AVAILABLE. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 189,325. |
| 10816234 | GMC | ENVOY | 2003 | 2015-12-19 | FRONT AIR BAG DID NOT DEPLOY,DRIVING IN SNOW SLID AN HIT A TREE WAS DRIVING ON A HIGHWAY. |
| 11093358 | GMC | ENVOY | 2003 | 2018-04-20 | TL* THE CONTACT OWNED A 2003 GMC ENVOY. WHILE DRIVING APPROXIMATELY 25 MPH AND ATTEMPTING TO MAKE A LEFT TURN, THE CONTACT CRASHED INTO THE FRONT END OF ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE CONTACT SUSTAINED INJURIES THAT DID NOT REQUIRE MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DECLARED TOTALED BY THE INSURANCE COMPANY AND TOWED FROM THE SCENE. THE DEALER AND MANUFACTURER WERE NOT MADE AWARE OF THE FAILURE. THE VEHICLE WAS NOT DIAGNOSED. THE FAILURE MILEAGE WAS APPROXIMATELY 300,000. |
| 10037631 | GMC | YUKON | 2003 | 2003-08-17 | WHILE DRIVING ON A RESIDENTIAL STREET CONSUMER FELL ASLEEP BEHIND THE WHEEL AND HIT ANOTHER VEHICLE ON THE FRONT DRIVER'S  SIDE.  SLIGHT INJURIES WERE SUSTAINED BY THE PASSENGERS OF THE OTHER VEHICLE.   CONSUMER SUFFERED RIB CONTUSIONS EVEN THOUGH SEAT BELTS WERE WORN.  NONE OF THE AIR BAGS DEPLOYED.    CONSUMER WAS GIVEN A CITATION BY THE POLICE THAT ARRIVED ON THE SCENE.*AK |
| 10152567 | GMC | YUKON | 2003 | 2006-03-10 | DT*:  THE CONTACT STATED THE VEHICLE WAS INVOLVED IN A T-BONE COLLISION AT 10MPH AND THE AIRBAGS DID NOT DEPLOY.  THERE WAS NO PRE-BRAKING PRIOR TO IMPACT.  ALTHOUGH THE OCCUPANTS WERE WEARING SEATBELTS, MINOR INJURIES WERE SUSTAINED.  THE VEHICLE WAS TOTALED BY THE INSURANCE AGENCY.  THE POLICE WERE ON THE SCENE AND A REPORT WAS TAKEN.  THE VEHICLE WAS NOT SEEN BY A DEALER FOR INSPECTION. |
| 10160618 | ISUZU | ASCENDER | 2003 | 2006-03-21 | DT: THE CONTACT STATED WHILE DRIVING ON THE INTERSTATE DURING RUSH HOUR AT 55 MPH, A VEHICLE HIT THE WALL AND TAIL SPINNED IN FRONT OF CONTACT'S VEHICLE. THE CONTACT HIT THE VEHICLE WITH A FRONTAL IMPACT CAUSING SEVERE DAMAGE. UPON IMPACT, THE NONE OF THE CONTACT'S AIR BAGS DEPLOYED. THE CONTACT WAS WEARING A SEATBELT HOWEVER INJURIES WERE SUSTAIN TO THE SHOULDERS, BACK AND NECK. WHEN THE VEHICLE WAS TAKEN TO THE DEALERSHIP, THEY DETERMINED THE VEHICLE WAS OPERATING PROPERLY HOWEVER THE AIRBAGS DID NOT DEPLOY.  THE MANUFACTURER HAS BEEN ALERTED. A POLICE REPORT WAS FILED AT THE SCENE. |
| 10266207 | ISUZU | AXIOM | 2003 | 2009-04-11 | TL*THE CONTACT OWNS A 2003 ISUZU AXIOM.  WHILE DRIVING LESS THAN 20 MPH, THE CONTACT REAR-ENDED THE PRECEDING VEHICLE.  THE FRONT END OF HER VEHICLE WAS DAMAGED.  THE AIR BAGS FAILED TO DEPLOY.  THE DRIVER SUSTAINED MINOR NECK, LEG, AND BACK INJURIES.  THE VEHICLE WAS TOWED TO A REPAIR SHOP AND COULD POSSIBLY BE LABELED AS DESTROYED.  A POLICE REPORT WAS FILED.  THE CURRENT AND FAILURE MILEAGES WERE 135,850  UPDATED 05/08/09 *BF  THE CONSUMER STATED THE DRIVER IN FRONT OF HIM/HER PULLED HIS EMERGENCY BRAKE BECAUSE THE DRIVER IN FRONT OF HIM STOPPED SUDDENLY AND THE CONSUMER NEVER SAW THE DRIVERS BRAKE LIGHTS.  UPDATED 05/12/09. *JB  UPDATED 06/09/09.*JB |
| 11325218 | ISUZU | AXIOM | 2003 | 2020-05-15 | DRIVING IN A LARGE PARKING LOT, HIT A LARGE CEMENT POLE DOING 20 MILES PER HOUR.AIR BAGS DID NOT DEPLOY. HAD NOT PUT MY SEAT BELT ON YET & HIT & SHATTERED THE WINDSHIELD KNOCKING OUT ALL OF MY FRONT UPPER TEETH. FRACTURED MAXILLA .WHY DID AIR BAGS NOT DEPLOY?  *TR |
| 8003267 | CADILLAC | ESCALADE | 2002 | 2001-07-19 | WHILE DRIVING 40 MPH VEHICLE VEERED AND HIT A TELEPHONE POLE, AND AIR BAGS DIDNOT DEPLOY.  DRIVER AND PASSENGER WERE INJURED. DEALER CONTACTED. HAD FRONTAL IMPACT. *AK |
| 10064975 | CHEVROLET | ASTRO | 2002 | 2004-02-15 | WHILE DRIVING 40 MPH VEHICLE WAS INVOLVED IN A FRONTAL COLLISION. UPON IMPACT,  DUAL AIRBAGS DID NOT DEPLOY. NO INJURES  WERE REPORTED. *AK |
| 10178492 | CHEVROLET | ASTRO | 2002 | 2007-01-03 | HIGH SPEED CAR ACCIDENT ON 1/3/07 DRIVER SEAT BELT DID NOT WORK CORRECTLY, BELT DID NOT LOCK UPON HARD BRAKING OR UPON CAR CRASH I HIT MY CHEST ON STEERING WHEEL AND MY KNEES ON DASHBOARD, MY AIRBAG DID NOT DEPLOY EITHER.  *JB |
| 10026532 | CHEVROLET | BLAZER | 2002 | 2003-06-20 | CONSUMER STATES THAT WHILE DRIVING  AT 35MPH. VEHICLE WAS IN A COLLISION. CONSUMER STATES THAT BOTH FRONT AIRBAGS DID NOT DEPLOY.DEALER NOTIFIED.*AK |
| 10031954 | CHEVROLET | BLAZER | 2002 | 2003-06-20 | VEHICLE RAN INTO THE BACK OF A SEMI-TRACTOR TRAILER AND AIR BAGS DID NOT DEPLOY BECAUSE IT DIDN'T CONSUMER SUSTAINED INJURIES, PAIN AND SUFFERING. DEALER NOTIFIED. *MR  *CB |
| 10048587 | CHEVROLET | BLAZER | 2002 | 2003-10-29 | THE VEHICLE WAS INVOLVED IN A FRONTAL COLLISION AND THE FRONT AIR BAGS DID NOT DEPLOY. THE DRIVER SUFFERED NECK AND BACK INJURIES.  THE FRONT PASSENGER SUFFERED CHEST INJURIES.  PLEASE PROVIDE FURTHER DETAILS.  *JB |

| | | | | | |
|---|---|---|---|---|---|
| 10347200 | CHEVROLET | BLAZER | 2002 | 2010-07-30 | TL* THE CONTACT OWNS A 2002 CHEVROLET BLAZER. THE CONTACT WAS  DRIVING APPROXIMATELY 35 MPH, AND CRASHED INTO AN UNOCCUPIED PARKED VEHICLE. THE AIR BAGS WOULD NOT DEPLOY WITH THE LEVEL OF IMPACT IN THE CRASH. WHILE THE FRONT DRIVER SIDE SHOULDER SEAT BELT WAS BEING WORN, IT FAILED TO FUNCTION AND CAUSED THE CONTACT TO MOVE IN A FORWARD POSITION AS A RESULT HER FACE STRUCK THE STEERING WHEEL. THE CONTACT SUSTAINED A BROKEN NOSE, BRUISES ON BOTH ARMS AND SHOULDER AREA. THE AMBULANCE, FIRE AND POLICE DEPARTMENT WERE CALLED TO THE SCENE. A POLICE REPORT WAS FILED OF THE INCIDENT. THE VEHICLE WAS TOWED TO A COLLISION FACILITY LOT. THE VEHICLE WAS COMPLETELY DESTROYED. THE FAILURE MILEAGE WAS APPROXIMATELY 130,000.    UPDATED 10/13/10*BF  UPDATED 10/14/10*JB |
| 10402643 | CHEVROLET | BLAZER | 2002 | 2011-05-23 | MY 2002 CHEVY BLAZER X-TREME AIR BAGS DIDN'T DEPLOY ON A FRONT END COLLISION AT THE SPEED OF 45 MPH, MY CAR HAS TOTAL DAMAGE.  *TR |
| 567453 | CHEVROLET | SILVERADO | 2002 | 2002-08-18 | CONSUMER WAS INVOLVED IN AN ACCIDENT WHERE SHE WAS HIT HEAD ON THE RIGHT FRONT SIDE.  THE AIRBAGS FAILED TO DEPLOY. CONSUMER WAS TOLD THE AIRBAGS DIDNT HAVE TO DEPLOY BECAUSE THE VEHICLE WAS STATIONARY DURING BOTH HITS, CONSUMER WAS INJURED IN THE ACCIDENT.  *JG |
| 767453 | CHEVROLET | SILVERADO | 2002 | 2002-09-01 | IN DIRECT FRONTAL IMPACT AT 45 MPH, AIRBAGS FAILED TO DEPLOY.*AK |
| 767929 | CHEVROLET | SILVERADO | 2002 | 2002-05-08 | THIS TRUCK WAS INVOLVED IN A HEAD ON CRASH.   I WAS RUNNING ABOUT 55 MPH AND THE OTHER VEHICLE WAS RUNNING APPROXIMATELY 35 MPH.  THE TRUCK WAS A TOTAL LOSS WITH MOST OF THE DAMAGE DONE TO THE FRONT END.THE DRIVERS SIDE AIR BAG OR THE PASSENGER AIR BAG DID NOT DEPLOY.    MR |
| 767963 | CHEVROLET | SILVERADO | 2002 | 2002-09-26 | THIS VEHICLE WAS INVOLVED IN A HEAD-ON COLLISION WHILE TRAVELING AT 50 MPH.   BOTH THE DRIVER SIDE AND PASSENGER SIDE AIR BAGS DID NOT DEPLOY.      MR |
| 8000974 | CHEVROLET | SILVERADO | 2002 | 2001-12-10 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION AT 25MPH.  UPON IMPACT, AIRBAGS DID NOT DEPLOY. *AK  *YH |
| 8003037 | CHEVROLET | SILVERADO | 2002 | | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION AT 40-45MPH.  UPON IMPACT  AIR BAGS DID NOT DEPLOY.  DEALER HAS BEEN CONTACTED. PLEASE PROVIDE ADDITIONAL INFORMATION.*AK |
| 8010265 | CHEVROLET | SILVERADO | 2002 | 2002-05-21 | WHILE DRIVING AT 35 MPH, THE VEHICLE WAS HIT BY AN AMBALANCE, THE AIR BAGS DIDN'T DEPLOY RESULTING IN  MAJOR INJURIES TO DRIVER.*AK  *MJ |
| 8011057 | CHEVROLET | SILVERADO | 2002 | 2002-05-19 | VEHICLE WAS INVOLVED IN A FRONTAL IMPACT GOING 35MPH.  AIR BAG DIDN'T DEPLOY, AND LIGHT NEVER ILLUMINATED. CHEVROLET WAS CONTACTED, AND WILL BE SENDING AN INSPECTOR OUT FOR  VEHICLE. PLEASE PROVIDE MORE INFORMATION.*AK |
| 8011088 | CHEVROLET | SILVERADO | 2002 | 2002-05-12 | VEHICLE WAS INVOLVED IN A 30-40 MPH FRONTAL COLLISION IN WHICH  DRIVER'S AND PASSENGER'S AIR BAGS DID NOT DEPLOY, CAUSE UNKNOWN.  PLEASE GIVE ANY FURTHER DETAILS.*AK |
| 8016806 | CHEVROLET | SILVERADO | 2002 | 2002-08-19 | CONSUMER WAS TRAVELING ABOUT 20MPH ON A SIDE STREET AND THERE WAS A CONCRETE PIPE LAYING ON THE ROAD, AND WITHOUT PRIOR WARNING SHE HIT THE PIPE. AIRBAGS DIDN'T GO OFF. AT DEALERSHIP IS AWARE OF PROBLEM.THE PIPE WAS A BROKE OFF LIGHT POLE. THE FRAME ON THE VEHICLE IS BENT.  *JG |
| 8017234 | CHEVROLET | SILVERADO | 2002 | 2002-08-19 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION WITH A TREE TRAVELING APPROXIMATLY 30-40MPH, AND AIR BAGS DID NOT DEPLOY.*AK |
| 8019177 | CHEVROLET | SILVERADO | 2002 | 2002-08-23 | WHILE DRIVING AT 72 MPH CONSUMER HIT ANOTHER VEHICLE HEAD ON AND NONE OF THE AIR BAGS DEPLOYED. CONTACTED DEALER, AND  DEALER STATED THAT THE VEHICLE ACTED LIKE IT SHOULD HAVE.AK |
| 8021266 | CHEVROLET | SILVERADO | 2002 | 2002-07-19 | CONSUMER STATES WHILE DRIVING 45MPH HAD A HEAD ON COLLISION AIR BAG DID NOT DEPLOY. TS |
| 8024161 | CHEVROLET | SILVERADO | 2002 | 2002-11-19 | CONSUMER STATES THAT WHEN HIT AT 55 MPH IN THE FRONT CENTER OF THE VEHICLE THE AIR BAG DID NOT DEPLOY CAUSING MINOR INJURIES TO THE CONSUMER. DEALER NOTIFIED.  MR |
| 10004706 | CHEVROLET | SILVERADO | 2002 | 2002-12-16 | CONSUMER COMPLAINED ABOUT HAVING PROBLEMS WITH THE AIR BAG DEPLOYMENT. ALSO, WHILE DRIVING VEHICLE WAS INVOLVED IN A COLLISION, AND AIR BAGS DID NOT DEPLOY .PASSENGER WAS DRIVING AT 50 MPH WHEN PASSING OVER A BRIDGE ON A RAINY DAY, AND WATER FROM THE RIVER WAS SPLASHED ON THE FRONT WINDSHIELD WHICH CAUSED THE DRIVER TO LOOSE CONTROL OF THE VEHICLE. MANUFACTURE WAS NOT CONTACTED AT THE TIME OF THIS PHONE CALL. *AK |
| 10005976 | CHEVROLET | SILVERADO | 2002 | 2003-01-29 | WHILE DRIVING VEHICLE WAS IN A FRONTAL COLLISION, BUT NONE OF THE AIR BAGS DEPLOYED UPON IMPACT. THE DRIVER WAS NOT INJURED BECAUSE THEY WERE WEARING THERE SEAT BELTS.*AK |
| 10009099 | CHEVROLET | SILVERADO | 2002 | 2003-02-21 | THE VEHICLE HIT A TREE, AND NONE OF THE AIR BAGS DEPLOYED.*JB *TS |
| 10015548 | CHEVROLET | SILVERADO | 2002 | | THE VEHICLE WAS INVOLVED IN A  FRONT END COLLISION YET NEITHER FRONTAL AIR BAGS DEPLOYED.   *NLM |
| 10019853 | CHEVROLET | SILVERADO | 2002 | | THE VEHICLE WAS INVOLVED IN A FRONTAL COLLISION AND NONE OF THE AIR BAGS DEPLOYED. *JB |
| 10042035 | CHEVROLET | SILVERADO | 2002 | | WHILE DRIVING AT 43 MPH VEHICLE WAS INVOLVED IN A LEFT FRONT COLLISION. UPON IMPACT, FRONT AIR BAGS DID NOT DEPLOY, AND  PASSENGER SUSTAINED INJURIES.  *AK |

| | | | | | |
|---|---|---|---|---|---|
| 10073268 | CHEVROLET | SILVERADO | 2002 | 2002-08-11 | I WAS AT A COMPLETE STOP AT A RED LIGHT WHEN A YOUNG LADY RAN THE LIGHT FROM THE OPPOSITE DIRECTION.  SHE HIT ANOTHER TRUCK THEN CROSSED OVER INTO MY LANE HITTING ME ON MY RIGHT FRONT BUMPER.  LESS THAN 3 SECONDS LATER THE OTHER TRUCK HIT ME HEAD ON AT 35-40 MPH HEAD ON.  THE IMPACT WAS HARD ENOUGH TO THROW ME BACKWARDS INTO SOME MOTORCYCLES BEHIND ME.  MY FRONTAL AIRBAGS DID NOT DEPLOY DURING EITHER HIT. *MR |
| 10080276 | CHEVROLET | SILVERADO | 2002 | 2004-06-27 | WHILE DRIVING 45 MPH THE DRIVER ATTEMPTED TO AVOID A DEER IN THE STREET.  AS A RESULT THE DRIVER LOST CONTROL OF THE VEHICLE AND HIT A TREE HEAD ON.  THE CONSUMER STATED THAT,"NEITHER FRONTAL AIR BAG DID DEPLOYED ON IMPACT".  THE CONSUMER WILL CONTACT THE DEALER.   *NM |
| 10115806 | CHEVROLET | SILVERADO | 2002 | 2005-03-24 | A PIECE OF FURNITURE WAS LOCATED IN THE MIDDLE OF THE HIGHWAY WHILE DRIVING,  CAUSING THE  DRIVER TO HIT THE FURNITURE.  DRIVER LOST CONTROL OF A VEHICLE ,AND IT CRASHED INTO A CONCRETE WALL.  DRIVER'S SIDE SEAT BELT FAILED, AND THE AIRBAGS DID NOT DEPLOY.  DRIVER REFUSED MEDICAL ATTENTION AT THAT TIME AND WENT TO THE HOSPITAL ON HIS OWN.  VEHICLE WAS TOWED BY THE INSURANCE COMPANY. *AK |
| 10127515 | CHEVROLET | SILVERADO | 2002 | 2005-07-05 | DT: CONTACT STATES WHILE DRIVING APPROXIMATELY 45 MPH THERE WAS A FRONT END COLLISION. UPON IMPACT,  NEITHER AIR BAG DEPLOYED. *AK |
| 10246829 | CHEVROLET | SILVERADO | 2002 | 2008-10-13 | TL*THE CONTACT OWNS A 2002 CHEVROLET SILVERADO.  WHILE DRIVING 30 MPH, THE CONTACT STRUCK A DEER AND SWERVED INTO A DITCH.  HIS CHEST SLAMMED INTO THE STEERING WHEEL AND WAS INJURED.  THE AIR BAGS FAILED TO DEPLOY AND THE SEAT BELT DID NOT RETRACT.  THE DRIVER'S SIDE BUMPER WAS CRUSHED INTO THE FRONT GRILL ALL THE WAY ACROSS TO THE PASSENGER SIDE OF THE VEHICLE.  THE CONTACT CALLED THE INSURANCE AGENT, BUT NO POLICE REPORT WAS FILED.  HE WAS THE ONLY OCCUPANT IN THE VEHICLE AND THE SEAT BELT WAS WORN PROPERLY AT THE TIME OF THE CRASH.  THERE WAS NO MAINTENANCE PERFORMED ON THE AIR BAGS OR SEAT BELT PRIOR TO THE FAILURES.  THE CONTACT FILED A COMPLAINT WITH GM CONCERNING HIS AIR BAGS AND SEAT BELT (COMPLAINT NUMBER 71-670143505).  GM IS NOT TAKING RESPONSIBILITY FOR THE AIR BAG FAILURE.  IN ADDITION, NO ONE CAME OUT TO INSPECT THE VEHICLE.  THE FAILURE MILEAGE WAS 61,752. |
| 10281236 | CHEVROLET | SILVERADO | 2002 | 2007-11-29 | TL*THE CONTACT OWNS A 2002 CHEVROLET SILVERADO. WHILE DRIVING APPROXIMATELY 45 MPH ON NORMAL ROAD CONDITIONS,  A VEHICLE CRASHED INTO THE FRONT OF THE DRIVER SIDE. THE CONTACT WAS TRANSPORTED TO THE HOSPITAL AFTER SUSTAINING INJURIES TO THE HEAD, NECK AND LIP. THE AMBULANCE AND POLICE ARRIVED AND A POLICE REPORT WAS FILED.  THE AIR BAGS FAILED TO DEPLOY WITH THE MASSIVE LEVEL OF IMPACT. THERE WERE NO WARNING LIGHT INDICATORS  ILLUMINATED ON THE INSTRUMENT PANEL AFTER THE CRASH. THE FRONT END OF THE VEHICLE SUSTAINED SEVERE DAMAGE.  THE VEHICLE WAS TOWED TO A COLLISION CENTER AND THE VEHICLE WAS REPAIRED.  THE CONTACT HAD CONCERNS OF THE SAFETY RISK INVOLVED. THE FAILURE MILEAGE WAS 40,000 AND THE CURRENT MILEAGE WAS 55,000. |
| 10679097 | CHEVROLET | SILVERADO | 2002 | 2015-01-16 | I T-BONED A MINI VAN THAT FAILED TO TO YIELD ON A TURN AT 35 MPH, MY AIRBAGS DID NOT DEPLOY. *TR |
| 10039711 | CHEVROLET | SUBURBAN | 2002 | 2003-08-27 | WHILE DRIVING AT 45 MPH  VEHICLE WAS FORCED OFF OF THE ROAD INTO ONCOMING TRAFFIC. CONSUMER SWERVED TO AVOID A HEAD ON COLLISION WITH ANOTHER VEHICLE.  THIS ACTION CAUSED THE VEHICLE TO CRASH THROUGH A FENCE, RUN INTO A DITCH, AND COLLIDE HEAD ON WITH AN OAK TREE.  SEAT BELTS WERE WORN, BUT AT THE TIME OF THE IMPACT, THE LATCH CAME APART.  VEHICLE WAS EQUIPPED WITH  FRONT AND SIDE AIR BAGS. UPON IMPACT, THEY  DID NOT DEPLOY.  CONSUMER'S KNEE WAS BROKEN,  AND HE  SUFFERED A CONCUSSION. POLICE  AND  MEDICAL HELP  DID ARRIVE ON THE SCENE.   MANUFACTURER AND THE DEALER HAVE BEEN NOTIFIED OF THE INCIDENT.  *AK |
| 10041031 | CHEVROLET | SUBURBAN | 2002 | 2003-01-07 | I WAS HIT ON THE HEAD INSIDE MY 2002 SUBURBAN, WEARING MY SEAT BELT AT 48 MPH BY AN ONCOMING MAZDA MIATA.  MY STEERING COLUMN COLLAPSED, I WENT INTO ONCOMING 3 LANES OF TRAFFIC, WENT UP A CURB, WENT THROUGH A BRICK RETAINING WALL, AND HIT A TELEPHONE POLE.  MY AIRBAG DID NOT DEPLOY ON ANY OF THE 3 IMPACTS.  WHY? ALSO, MY DRIVER?S SEAT CAME OFF THE TRACK.  *LA |
| 10108747 | CHEVROLET | SUBURBAN | 2002 | 2004-11-11 | THE CONSUMER WAS INVOLVED IN AN ACCIDENT. THE CONSUMER WAS DRIVING ABOUT 60 MPH AND REAR ENDED ANOTHER VEHICLE AND THE AIR BAGS FAILED TO DEPLOY. ALSO THE SEAT BELTS DID NOT HOLD THE DRIVER AND PASSENGER CAUSING THEM TO GO FORWARD INTO THE WINDSHIELD.  PROVIDE FURTHER DETAILS.   *JB |
| 10121922 | CHEVROLET | SUBURBAN | 2002 | 2005-05-14 | DT: HUSBAND HAD AN ACCIDENT, CAR PULLED OUT IN FRONT OF HIM AND  HIT THEM ON DRIVER AND BACK SEAT PASSENGER SIDE HEAD. UPON IMPACT,  AIR BAG DID NOT DEPLOY.*AK |
| 568470 | CHEVROLET | TAHOE | 2002 | 2002-06-05 | ON TWO OCCASIONS THE FRONT AIR BAGS FAILED TO DEPLOY UPON FRONT IMPACT.  THE VEHCILE WAS INSPECTED BY A CRASH INVESTIGATOR WHO TOLD THE CONSUMER THAT THE VEHICLE OPERATED AS DESIGNED.  *NLM |
| 8022842 | CHEVROLET | TAHOE | 2002 | 2002-10-10 | THE TRUCK HIT A WALL HEAD ON BETWEEN 33-35 MPH.  THE AIR BAGS FAILED TO DEPLOY UPON IMPACT ALLOWING THE DRIVER TO HIT THE WINDSHIELD WITH HIS HEAD SHATTERING IT. GENERAL MOTORS SENT SOMEONE TO DIAGNOSE THE TRUCKS' CONDITION WHICH THE CONSUMER WAS TOLD "EXCEPTIBLE STANDARDS".  PLEASE DESCRIBE DETAILS         TS |

| 10050631 | CHEVROLET | TAHOE | 2002 | 2003-12-04 | HAD A FRONT END COLLISION INTO THE SIDE OF ANOTHER VEHICLE WHOM RAN A RED LIGHT. WE ESTIMATED OUR IMPACT SPEED AT 30 MPH UPON COLLIDING TOGETHER.  NEITHER FRONT AIRBAGS DEPLOYED. SUFFERED NECK AND BACK BRUISING AND MUSCLE STRAIN.*AK |
|---|---|---|---|---|---|
| 10057036 | CHEVROLET | TAHOE | 2002 | 2004-01-23 | ON JANURAY 23. 2004, I WAS REAR-ENDED ON THE FREEWAY. I WAS GOING ABOUT 65-70 MPH. A PERSON HIT ME FROM  THE REAR, HE WAS TRAVELLING AROUND 100-110 MPH. I LOST CONTROL OF MY TAHOE, I WENT SIDEWAYS, THEN I SHOT FORWARD AND HIT THE CENTER DIVIDER( ON THE CENTER RIGHT SIDE OF MY CAR)  AT ABOUT 65 MPH OR FASTER, I WAS SHOT BACKWARDS INTO A GUARD RAIL AND CAME OFF OF  THAT AND THEN THE TAHOE ROLLED ON TO ITS SIDE, SKID FOR ABOUT 30 FEET AND THEN IT FINALLY STOPPED. MY AIR BAGS(FRONT NOR SIDE) NEVER DEPOLYED. I FEEL THAT IF THEY HAD MY WIFE HAT I WOULD HAVE BEEN INJURED. I KNOW THAT THEY ARE DESIGNED TO DEPLOY WHEN YOU HIT SOMETIME LIKE A BRICK WALL AT ABOUT 10-15 MPH. WHAT DO YOU CALL HITTING A CEMENT DIVIDER AT OVER 65 MPH.*AK |
| 10080735 | CHEVROLET | TAHOE | 2002 | 2004-01-23 | I WAS TRAVELING DOWN TO FREEWAY, DOING ABOUT 65-70 MPH. I WAS REAR ENDED BY A GUY GOING BETWEEN 100-110 MPH, I WAS THROWN OUT OF CONTROL. I HIT THE CENTER DIVIDER ALMOST HEAD ON AT ABOUT 70 MPH. I THEN BOUNCED OFF THE DIVIDER, CAME CLEAR AGCROSS ALL LANES AND HIT THE REAR GUARD RAIL, I BOUNDED OFF THAT AND ROLLED ON ITS SIDE. IN ALL MY AIR BAGS NEVER DEPLOYED.*AK |
| 10143613 | CHEVROLET | TAHOE | 2002 | 2005-11-15 | I WAS DRIVING MY 2002 TAHOE ABOUT 30-35 MPH WHEN I BLACKED OUT AND LOST CONTROL OF THE VEHICLE. I HIT A COLUMN OUTSIDE A HOTEL WHICH WAS ABOUT 2X2 FEET WITH STEEL WITHIN THE CENTER OF THE COLUMN. MY TRUCK WAS A TOTAL LOST AND THE FRONT AIRBAGS DID NOT DEPLOY AS THEY WERE SUPPOSED TO. *JB |
| 10152394 | CHEVROLET | TAHOE | 2002 | 2006-03-09 | DT*:  THE CONTACT STATED WHILE DRIVING 55 MPH, THE FRONT DRIVER SIDE TIRE HAD A BLOW OUT, CAUSING THE VEHICLE TO HIT BOTH GUARD RAILS WITH THE FRONT END.  THE AIRBAGS DID NOT DEPLOY.  ALTHOUGH THE SEATBELT WAS WORN, THE CONTACT SUSTAINED A CONCUSSION. THERE WAS A POLICE REPORT TAKEN AT THE SCENE.  THE VEHICLE WAS TOWED TO AN AUTO BODY SHOP, WHERE IT WAS DEEMED A TOTAL LOSS BY THE INSURANCE COMPANY. |
| 10155306 | CHEVROLET | TAHOE | 2002 | 2006-03-24 | ON MY WIFE'S WAY HOME FORM WORK SHE WAS INVOLVED IN AN ACCIDENT, WERE SHE REAR ENDED ANOTHER VEHICLE, THE CRASH WAS AT ABOUT 35 TO 45 MILES PER HOUR AND IT AFFECTED THE FRONT DRIVER SIDE OF OUR 2002 CHEVY TAHOE. THE IMPACT WAS SO SIGNIFICANT THAT THE FRAME OF THE TAHOE WAS BENT. THE CRASH PRETTY MUCH MIMICKED THE SAME OFF CENTER FRONT CRASH THAT THE INSURANCE INSTITUTE FOR HIGHWAY SAFETY CONDUCTS ON THEIR TESTING. THE PROBLEM WAS THAT THE FRONT AIRBAGS NEVER DEPLOYED ALTHOUGH THE ACCIDENT HAPPENED UNEXPECTEDLY, MY WIFE WAS WEARING HER SEAT BELT AND DIDN'T SUSTAINED SERIOUS INJURIES. OUR CONCERN IS THAT THE BAGS NEVER DEPLOYED AND THAT THEY MIGHT DEPLOY AT ANYTIME. THE AUTO BODY SHOP RECOMMENDED BY OUR INSURANCE COMPANY TOLD US THAT BECAUSE THE CRASH IMPACT WAS OFF CENTERED THE AIRBAG SENSOR WERE NEVER TRIGGERED. AFTER SEEING SO OF THE INSURANCE INSTITUTE FOR HIGHWAY SAFETY TEST THE BAGS SHOULD HAVE DEPLOYED. ALSO IT WAS DETERMINED THAT THE FRAME HAS TO BE REPLACED AND ALL THE BODY PARTS FIXED AND REPLACED. IF THE FRAME HAS TO BE REPLACED HOW SAFE WOULD THAT VEHICLE BE? I AM OPEN FOR ANY FARTHER CONVERSATIONS ABOUT THIS TOPIC.  THANK YOU.  *JB |
| 10353935 | CHEVROLET | TAHOE | 2002 | 2010-07-28 | I WAS DRIVING MY 2002 CHEVY TAHOE, A GENTLEMAN RAN A STOP SIGN, I HIT HIM AT 39 MPH, HEAD ON IN MY TAHOE, T-BONED HIS TRUCK.  NEITHER AIRBAG DEPLOYED, NOR DID MY SEATBELT KEEP ME FROM HITTING THE STEERING WHEEL AND MY HEAD KNOCKING ME OUT.  GM SENT SOMEONE TO LOOK AT MY CAR WHICH HAS BEEN DEEMED A TOTAL LOSS.  I HAVE YET TO HEAR BACK FROM GM ON THIS INCIDENT.  I PURCHASED THIS CAR BRAND NEW THINKING IT WAS SAFE. THE ONE TIME I NEEDED MY SEATBELT TO WORK, IT FAILED.  THE COMPUTER IN MY CAR SHOWED BOTH SEATBELTS WERE ON AND IN WORKING ORDER, IT SHOWED THE CRASH WAS AT 39 MPH YET THE AIRBAGS DID NOT DEPLOY AND THEY WERE IN PROPER WORKING ORDER.  WHATEVER ANSWER GM GIVES ME WILL NOT BE GOOD ENOUGH UNLESS THEY ADMIT TO FAULTINESS IN THEIR EQUIPMENT. *TR |
| 10458444 | CHEVROLET | TAHOE | 2002 | 2012-04-08 | REAR ENDED A VEHICLE GOING APPROX. 70 MPH AND HAD EXTENSIVE FRONT END DAMAGE HOWEVER THE AIR BAGS FAILED TO DEPLOY. DRIVER HIT HEAD ON STEERING WHEEL AND PASSENGER SUFFERED SEVER HEAD INJURY.        *JS |
| 10498415 | CHEVROLET | TAHOE | 2002 | 2013-02-14 | TRAFFIC STOPPED IN FRONT OF ME UNEXPECTEDLY, I SWERVED TO AVOID CAR IN FRONT OF ME AND HIT CONCRETE WALL. AIR BAGS DID NOT WORK. MY FACE HIT STEERING WHEEL, CAUSING INJURY TO NOSE AND MOUTH.  *TR |
| 10615602 | CHEVROLET | TAHOE | 2002 | 2014-07-08 | TL* THE CONTACT OWNS A 2002 CHEVROLET TAHOE. WHILE DRIVING 45 MPH, THE CONTACT'S VEHICLE WAS REAR ENDED BY ANOTHER VEHICLE. AND CRASHED INTO A GUARD RAIL. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED AND THE VEHICLE WAS DESTROYED. THE CONTACT'S HEAD STRUCK THE STEERING WHEEL AND HE WAS TRANSPORTED TO THE HOSPITAL BY AMBULANCE. THE CONTACT SUSTAINED SPINAL CORD AND NECK INJURIES. THE DOCTOR X-RAYED THE CONTACT AND DIAGNOSED HIM WITH BURNING PARESTHEGIC, HYPER-ESTHESIA, AND CENTRAL CORD SYNDROME. THE CONTACT WAS RELEASED FROM THE HOSPITAL TWO DAYS AFTER THE CRASH. THE FAILURE MILEAGE WAS 285,000. |

| | | | | | |
|---|---|---|---|---|---|
| 10641399 | CHEVROLET | TAHOE | 2002 | 2011-06-07 | TL - THE CONTACT OWNS A 2002 CHEVROLET TAHOE. THE CONTACT STATED THAT WHILE THE DRIVER WAS DRIVING AT 45 MPH AND ATTEMPTED TO AVOID A CRASH WITH ANOTHER VEHICLE. AS A RESULT, THE DRIVER CRASHED INTO A GUARDRAIL AND THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT WAS TAKEN TO A HOSPITAL AND SUSTAINED INJURIES TO THE RIBS, THE COLLAR BONES, A BRAIN TRAUMA AND A COLLAPSED LUNG. THE DRIVER SUFFERED FROM FATAL INJURIES. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 73,000. DR |
| 10667110 | CHEVROLET | TAHOE | 2002 | 2011-06-07 | TL* THE CONTACT OWNS A 2002 CHEVROLET TAHOE. THE CONTACT STATED THAT THE DRIVER CRASHED INTO A GUARD RAIL AND THE AIR BAGS FAILED TO DEPLOY. THE DRIVER SUSTAINED MASSIVE HEAD TRAUMA, BROKEN RIBS AND BLEEDING FROM THE BRAIN, RESULTING IN A FATALITY. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE CONTACT WAS UNAWARE IF THE VEHICLE WAS DIAGNOSED OF THE FAILURE. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 72,000. |
| 10668043 | CHEVROLET | TAHOE | 2002 | 2014-11-07 | TL* THE CONTACT OWNS 2002 CHEVROLET TAHOE. THE CONTACT STATED THAT WHILE DRIVING 45 MPH, ANOTHER VEHICLE CRASHED INTO THE CONTACT'S VEHICLE CAUSING THE VEHCLE TO SPIN AND BECOME UNCONTROLLABLE. IN ADDITION, ANOTHER VEHICLE CRASHED INTO THE VEHICLE CAUSING IT TO ROLL OVER SEVERAL TIMES BEFORE CRASHING INTO A GUARD RAIL. THE AIR BAGS FAILED TO DEPLOY. THE DRIVER SUSTAINED CRITICAL INJURIES AND THE FRONT PASSENGER SUSTAINED FATAL INJURIES. BOTH THE CONTACT AND FRONT PASSENGER REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 130,000. |
| 10746088 | CHEVROLET | TAHOE | 2002 | 2011-06-07 | TL* THE CONTACT OWNED A 2002 CHEVROLET TAHOE. WHILE DRIVING AT APPROXIMATELY 45 MPH, THE CONTACT CRASHED INTO A GUARD RAIL. THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED A FRACTURED COLLAR BONE, SEVERAL BROKEN RIBS, HEAD TRAUMA, BRAIN BLEEDING, AND STROKES. THE CONTACT WAS PLACED INTO A MEDICALLY INDUCED COMA AND ON A RESPIRATORY MACHINE, BUT LATER DIED. THE VEHICLE WAS TOWED TO A SAVAGE YARD. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 73,000. |
| 11382901 | CHEVROLET | TAHOE | 2002 | 2020-11-17 | TL- THE CONTACT OWNS A 2002 CHEVROLET TAHOE. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 25 MPH WHEN THE VEHICLE RAN ACROSS BLACK ICE CAUSING THE CONTACT TO LOSE CONTROL OF THE VEHICLE. THE VEHICLE BEGAN TO SPEND UNCONTROLLABLY EVENTUALLY CRASHING INTO A CONCRETE WALL WITH THE FRONT-END OF THE VEHICLE. NO AIR BAGS DEPLOYED. THE CONTACT RECEIVED INJURIES TO THEIR KNEE, SHOULDER, NECK, BACK, AND EYE. MEDICAL ATTENTION WAS NEEDED. A POLICE REPORT WAS FILED. THE VEHICLE TOWED AND DEEMED TOTALED. THE DEALER WAS NOT CONTACTED. THE MANUFACTURER WAS NOT MADE AWARE OF THE ISSUE. THE APPROXIMATE FAILURE MILEAGE WAS 150,000. GL |
| 8017394 | CHEVROLET | TRACKER | 2002 | 2002-08-09 | WHILE DRIVING AT 45 MPH CONSUMER T-BONED ANOTHER VEHICLE HEAD ON AND NONE OF THE AIR BAGS DEPLOYED. CONTACTED DEALER, AND THE DEALER WAS AWARE OF THE PROBLEM, BUT THEY HAD NO SOLUTION.  *AK |
| 10087309 | CHEVROLET | TRACKER | 2002 | 2004-07-20 | WHILE DRIVING AT 40 MPH  CONSUMER'S  VEHICLE COLLIDED WITH THE LEFT SIDE OF ANOTHER VEHICLE RUNNING A STOP SIGN.   CONSUMER WAS WEARING SEAT BELTS,  BUT AIR BAGS DID NOT DEPLOY.  CONSUMER AND A PASSENGER SUSTAINED VARIOUS BONE FRACTURES AND BRUISES.  THE POLICE AND AN AMBULANCE DID ARRIVED ON THE SCENE.*AK |
| 10264048 | CHEVROLET | TRACKER | 2002 | 2009-03-29 | TL*THE CONTACT OWNS A 2002 CHEVROLET TRACKER.  WHILE DRIVING AT AN UNKNOWN SPEED, THE VEHICLE LEFT THE ROAD, AND STRUCK A TREE WITH THE FRONT PASSENGER SIDE AND FENDER.  THE FRAME WAS BENT IN TWO PLACES, BUT THE AIR BAGS FAILED TO DEPLOY.  THERE WERE NO INJURIES.  THE SEAT BELT WAS NEVER SERVICED AND WAS WORKING FINE PRIOR TO THE CRASH.  A POLICE REPORT WAS FILED.  THE FAILURE MILEAGE WAS 95,000. |
| 10970730 | CHEVROLET | TRACKER | 2002 | 2017-04-05 | AFTER A COLLISION WHERE MY TRACKER HIT ANOTHER VEHICLE AT AROUND 55 MPH ON A HIGHWAY, MY VEHICLE HIT DEAD ON TO THE SIDE OF ANOTHER (T-BONE) AND MY SENSOR SHOULD HAVE TRIGGERED MY AIRBAGS AND DID NOT. |
| 8002085 | CHEVROLET | TRAILBLAZER | 2002 | 2002-01-03 | WHILE BEING DRIVEN APPROXIMATELY 20 TO 25 MPH VEHICLE WENT OFF THE ROAD AND CRASHED INTO A LARGE OAK TREE.  BOTH FRONTAL AIR BAGS FAILED TO DEPLOY DURING THE CRASH.  BODY SHOP STATED THAT AIR BAGS SHOULD HAVE DEPLOYED DUE TO  DAMAGE VEHICLE RECEIVED.  DEALERSHIP HAS NOT EXAMINED VEHICLE TO DETERMINE IF THERE WAS A PROBLEM WITH THE AIR BAG SYSTEM.  PLEASE PROVIDE ANY ADDITIONAL INFORMATION / DOCUMENTATION.**AK |
| 8010014 | CHEVROLET | TRAILBLAZER | 2002 | 2002-04-08 | CONSUMER STATES THAT DURING A VEHICLE CRASH THE SIDE AIRBAG DID NOT DEPLOY.*JB |
| 8022437 | CHEVROLET | TRAILBLAZER | 2002 | 2002-11-01 | WHILE TRAVELING ABOUT 40MPH THE VEHICLE WAS  INVOLVED WITH A FRONTAL COLLISION. NEITHER AIRBAG DEPLOY PLEASE PROVIDE ADDITIONAL INFORMATION.  DEALER IS AWARE OF THE PROBLEM.        TS |
| 10011300 | CHEVROLET | TRAILBLAZER | 2002 | 2003-03-04 | THE VEHICLE WAS INVOLVED IN A COLLISION, AND THE AIR BAGS DID NOT DEPLOY.*JB |
| 10013828 | CHEVROLET | TRAILBLAZER | 2002 | 2003-03-19 | HYDROPLANED HEAD ON INTO A TREE DOING ABOUT 40 MPH.  HIT THE TREE HARD ENOUGH TO BREAK THE ENGINE MOUNTS AND SHIFT THE ENGINE FORWARD INTO THE FAN, PLUS SOME TRANSMISSION DAMAGE.  THE AIR BAGS DID NOT DEPLOY.   *NLM |

| 10014453 | CHEVROLET | TRAILBLAZER | 2002 | 2003-02-05 | ON FEB 5TH, 2003 I REAR ENDED A STOPPED VEHICLE WHILE GOING 45 MILES AN HOUR. MY CHIN HIT THE STEERING WHEEL BUT NO AIRBAG DEPLOYED. THE BODY SHOP WAS UNABLE TO DETERMINE WHY THE AIR BAG DID NOT DEPLOY.  *NLM |
| 10015367 | CHEVROLET | TRAILBLAZER | 2002 | 2003-04-02 | CONSUMER WAS HIT TWICE IN A SIDE AND FRONTAL COLLISION WHILE TRAVELING APPROXIMATELY 30MPH.  NEITHER THE FRONTAL OR SIDE AIR BAGS DEPLOYED.  *NLM |
| 10027280 | CHEVROLET | TRAILBLAZER | 2002 | 2003-07-12 | THE VEHICLE WAS INVOLVED  IN A COLLISION, AND THE AIR BAGS FAILED TO DEPLOY.  *AK  THE CONSUMER SUFFERED INJURIES.  *JB |
| 10044550 | CHEVROLET | TRAILBLAZER | 2002 | | WHILE CONSUMER WAS DRIVING 25-28 MPH VEHICLE WAS T-BONED FROM ANOTHER VEHICLE  AT ESTIMATED SPEED OF 30 MPH. UPON IMPACT,  FRONTAL AIR BAGS FAILED TO DEPLOY.  *AK |
| 10113109 | CHEVROLET | TRAILBLAZER | 2002 | 2004-12-12 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION WHILE DRIVING BETWEEN  50-55MPH. UPON IMPACT, THE AIR BAGS FAILED TO DEPLOY. AS A RESULT,  DRIVER SUSTAINED CHEST INJURIES WHEN IT IMPACTED THE STEERING WHEEL.*AK |
| 10114818 | CHEVROLET | TRAILBLAZER | 2002 | 2005-03-24 | CRASH AT 35 MPH (FRONT END SQUARE) DRIVER AND PASSENGER AIR BAGS FAILED TO DEPLOY. |
| 10115232 | CHEVROLET | TRAILBLAZER | 2002 | 2005-02-09 | DURING A 30 MPH VEHICLE FRONTAL COLLISION FRONT AIR BAGS DID NOT DEPLOY. CONSUMER SUSTAINED MINOR INJURIES. THE VEHICLE WAS TOWED. DEALERSHIP WAS NOTIFIED, BUT DID NOT RESOLVE THE PROBLEM. *AK...PROBLEM WA SDISCUSSED WITH THE DEALER IN DETAIL BUT DID NOT KNOW HOW TO RESOLVE PROBLEM. *AK |
| 10118790 | CHEVROLET | TRAILBLAZER | 2002 | 2005-04-22 | WHILE DRIVING 55-60 MPH, VEHICLE HIT AN SUV THAT DROVE INTO LANE.  VEHICLE THEN HIT BY TRACTOR TRAILER.  VEHICLE CRASHED WITH GREAT FORCE INTO HIGHWAY DIVIDER AND LOST FRONT LEFT WHEEL, CAUSING VEHICLE TO CONTINUE TO CRASH ALONG DIVIDER.  BOTH FRONT AIRBAGS AND BOTH SIDE AIRBAGS FAILED TO DEPLOY.  PASSENGER IN VEHICLE SUSTAINED FRACTURES TO ORBITAL BONES AND MAXILLARY BONE IN SKULL.  MAJOR RECONSTRUCTIVE SURGERY WAS REQUIRED.  THE VEHICLE WAS DETERMINED TO BE A TOTAL LOSS. |
| 10122088 | CHEVROLET | TRAILBLAZER | 2002 | 2005-05-24 | DT:  AIR BAG  DID NOT DEPLOY IN A OFF CENTER FRONTAL COLLISION.  WHILE TRAVELING ABOUT 35-40 MPH  CONSUMER'S VEHICLE  HIT THE REAR OF ANOTHER VEHICLE.  IT WAS AT A GARAGE NEAR  THE ACCIDENT  SITE.  NO ONE  LOOKED AT THE VEHICLE BUT THE RESCUE SERVICES WERE SURPRISED THAT THE AIRBAGS DID NOT DEPLOY.  INTERMITTENTLY THE SRS LIGHT WOULD COME ON.  TOOK VEHICLE TO DEALER  AND IT WAS REPAIRED IN JULY 2004. *AK  *JB |
| 10136929 | CHEVROLET | TRAILBLAZER | 2002 | 2005-09-15 | DT:  CONSUMER'S VEHICLE  WAS INVOLVED IN AN ACCIDENT ON SEPTEMBER 15, 2005.  UPON IMPACT,  NONE OF THE AIR BAGS DEPLOYED. BACK IN SEPTEMBER OF 2002 CONSUMER'S  WAS INVOLVED IN A HEAD ON COLLISION WITH THIS SAME VEHICLE, AND THE AIR BAGS NEVER DEPLOYED AT THAT TIME EITHER. HAD THE VEHICLE REPAIRED AT THE GMC DEALERSHIP. *AK |
| 10144322 | CHEVROLET | TRAILBLAZER | 2002 | 2005-11-08 | DT:  THE CONTACT STATED  VEHICLE WENT OFF  THE ROAD AND HIT TREES AT 50-55 MPH. UPON IMPACT,  THE AIRBAGS DID NOT DEPLOY.  THE VEHICLE WAS TOTALED.  THE FRONT END COLLAPSED, THE ENGINE WAS IN THE FIREWALL, AND THE BODY WAS PUSHED OFF OF THE FRAME. THE CONTACT  SUSTAINED MINOR BRUISES AND ABRASIONS.   A POLICE REPORT WAS TAKEN AT THE SCENE.  THE DEALERSHIP STATED THEY HAVE NEVER HEARD OF THIS HAPPENING.  *AK |
| 10157599 | CHEVROLET | TRAILBLAZER | 2002 | 2006-05-15 | DT*:  THE CONTACT STATED WHILE TRAVELING 35 MPH WITH PRIOR BRAKING, THE VEHICLE VEERED OFF THE ROAD AND SLID INTO A DITCH.  THERE WAS FRONT END DAMAGE; THE FRAME RAIL AND HOOD BENT.  THE AIRBAGS DID NOT DEPLOY WHEN THIS OCCURRED.  THE CONTACT WAS NOT IN THE VEHICLE AND THE DRIVER WAS UNAWARE OF WHAT CAUSED THE VEHICLE TO VEER OFF THE ROAD.  THE DRIVER SUSTAINED HEAD TRAUMA AND THE SEAT BELT WAS NOT WORN. THERE WAS A POLICE REPORT TAKEN AT THE SCENE.  THE VEHICLE WAS TOWED TO AN INDEPENDENT REPAIR SHOP, BUT HAS NOT BEEN INSPECTED BY A MECHANIC.   UPDATED 06/16/06. *JB |
| 10172513 | CHEVROLET | TRAILBLAZER | 2002 | 2006-07-01 | DT*: THE CONTACT STATED WHILE DRIVING 40 MPH ON A GRAVEL ROAD, CONTROL OF THE VEHICLE WAS LOST AND IT CRASHED INTO A TREE HEAD ON.  THE AIR BAGS DID NOT DEPLOY.  THERE WAS NO PRIOR BRAKING AND SEAT BELTS WERE WORN.  THE DRIVER SUSTAINED MINOR INJURIES.  THE VEHICLE WAS LATER TOWED TO AN INDEPENDENT REPAIR SHOP.  THE DEALER WAS ALERTED. |
| 10254230 | CHEVROLET | TRAILBLAZER | 2002 | 2009-01-08 | TL*THE CONTACT OWNS A 2002 CHEVROLET TRAILBLAZER.  WHILE DRIVING APPROXIMATELY 15 MPH, THE CONTACT STRUCK A PATCH OF ICE AND THE VEHICLE CRASHED INTO A LIGHT POLE.  THE VEHICLE WAS COMPLETELY DESTROYED AND NONE OF THE AIR BAGS DEPLOYED.  A POLICE REPORT WAS FILED AND THERE WERE NO INJURIES.  THE FAILURE AND CURRENT MILEAGES WERE 56,000. |

| | | | | | |
|---|---|---|---|---|---|
| 10257808 | CHEVROLET | TRAILBLAZER | 2002 | 2009-01-21 | WELL SERVICED 90K MILES. TRAVELING AT 35MPH  PUSHED BREAKS ALL THE WAY DOWN (FRACTURING RIGHT ANKLE) SLOWED ME DOWN BUT FAILED TO STOP AT UPCOMING RED LIGHT. STRUCK MEDIUM SIZE VEHICLE INJURING OTHER DRIVER AND CAUSING CONSIDERABLE DAMAGE TO BOTH VEHICLES. CHEVY DEALER COLLISION/SERVICE CENTER ESTIMATED $8K IN REPAIRS. IN OTHER WORDS IT COSTS MORE TO REPAIR IT THAN WHAT THE VEHICLE IS WORTH. ALSO:"MASTER CYLINDER IS BAD" AND AIR BAGS DID NOT DEPLOY. CHEVY TECH. SAID "IMPACT WAS NOT BIG ENOUGH" . AFTER READING SOME EIGHT OTHER COMPLAINTS  VERY SIMILAR TO THIS . I AM CONCERNED ABOUT DRIVING THIS OR GETTING INTO ANOTHER ONE.  IS THERE NOT A BREAK LIGHT SERVICE SENSOR THAT I SHOULD HAVE NOTED.?  SERVICE MANUAL FOR SCHEDULED MAINTENANCE SAYS TO CHECK FRONT AND REAR AXLE FLUID AND ADD FLUID AS NEEDED EVERY 5K TO 7K MILES AFTER 67.5K MILES. *TR |
| 10263896 | CHEVROLET | TRAILBLAZER | 2002 | 2009-03-26 | I WAS IN A CAR ACCIDENT, WHERE I WAS TRAVELING AT ABOUT 35 MPH. AN AGGRESSIVE DRIVER SPEED AROUND ME AND CUT ME OFF AND THAN STOMPED ON THIS BRAKES IN FRONT OF ME. DUE TO THAT I SWERVED TO MISS HIM CLIPPING HIS RIGHT BACK LIGHT AD BUMPER WITH MY LEFT HEADLIGHT AND BUMPER. AS I WAS SWERVING I HIT A TREE JUST ABOUT DEAD ON WITH MY AR. THE MAJORITY OF THE IMPACT OCCURRED JUST ABOUT 6 INCHES TO THE LEFT (IF LOOKING AT THE CAR) OF THE CENTER OF THE FRONT OF THE CAR. I HIT THE TREE AT A SPEED OF ABOUT 28-30 MPH. AFTER INITIAL IMPACT I WAS RUSHED TO THE HOSPITAL DUE TO UNCONSCIOUS AND FACIAL CONTUSIONS. DURING THE FIRST MOMENTS AFTER THE ACCIDENT, ONE OF THE FIRST THINGS OFFICERS, EMTS AND WITNESSES SAID WAS "I CAN'T BELIEVE THE AIRBAGS DIDN'T GO OFF". IN THE RECENT DAYS AFTER THE ACCIDENT I HAVE HAD SEVERAL MECHANICS AND SUCH APPRAISE THE CAR, THE ONE COMMON THEME THEY ALL SHARE IS THAT THEY SUSPECT THERE MIGHT NOT BE AN AIRBAG WHERE IT BELONGS. OR THE LACK THERE OF. *TR |
| 10294686 | CHEVROLET | TRAILBLAZER | 2002 | 2009-11-20 | HIT HEAD ON BY ANOTHER CAR TOTALING MY CAR, AIRBAGS DID NOT DEPLOY. *TR |
| 10314643 | CHEVROLET | TRAILBLAZER | 2002 | 2010-01-07 | INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)   I WAS TRAVELING SOUTHBOUND ON KY HWY 1531 (EASTWOOD FISHERVILLE RD). WHEN I APPROACHED A SHARP CURVE IN THE ROADWAY, I OBSERVED A HONDA ODYSSEY MINIVAN TRAVELING NORTHBOUND TOO FAST FOR THE ICY, SNOWY ROAD CONDITIONS.  THE MINIVAN DRIVER LOST CONTROL OF HER VEHICLE AND STRUCK MY 2002 TRAILBLAZER HEAD-ON IN THE SOUTHBOUND LANE.  AT THE TIME OF IMPACT, MY TRAILBLAZER WAS COMPLETELY STOPPED WITH MY RIGHT FOOT PRESSED FIRMLY ON THE BRAKE PEDAL.  THE HONDA ODYSSEY AIRBAGS FULLY DEPLOYED.  MY TRAILBLAZERS AIRBAGS DID NOT DEPLOY.  BOTH VEHICLES WERE TOTAL LOSS.  MY TRAILBLAZER WAS TOWED TO GM REPAIR SHOP BAUCHMAN CHEVROLET IN LOUISVILLE KY.  IT REMAINS STORED IN ITS ORIGINAL POST-ACCIDENT CONDITION.  I HAVE RETAINED OWNERSHIP TITLE OF THIS VEHICLE.  GM REPAIR SHOP NOTED EXTENSIVE FRAME DAMAGE AND BROKEN AIRBAG SENSOR.  THIS IS THE SECOND FRONT END INJURY CRASH INVOLVING THIS TRAILBLAZER WHERE THE AIRBAGS FAILED TO DEPLOY.  SEE ALSO ODI CASE # 10314629. GM WAS NOTIFIED OF INCIDENT AND AGAIN I OPENED AN INVESTIGATION WITH GM AS TO WHY THE AIRBAGS FAILED TO DEPLOY.  AS OF THIS DATE (2/26/2010) GM INVESTIGATORS HAVEN'T INSPECTED THE VEHICLE.  (GM CASE [XXX] ).  I SUFFERED LOW BACK INJURIES AS A RESULT OF THIS ACCIDENT.  THIS INJURY OCCURRED 8 WEEKS AFTER SPINAL FUSION SURGERY.  I HAVE BEEN IN PHYSICAL THERAPY SINCE THE ACCIDENT FOR JOINT DAMAGE IN THE SACRAL ILLIUM AREA.  *TR |
| 10343917 | CHEVROLET | TRAILBLAZER | 2002 | 2009-12-04 | TL*THE CONTACT OWNS A 2002 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 70 MPH THE VEHICLE WAS INVOLVED IN A CRASH IN WHICH THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT WAS INJURED. THE VEHICLE WAS DESTROYED AND TOWED TO AN INDEPENDENT REPAIR SHOP.  THE MANUFACTURER EXAMINED THE VEHICLE BUT DID NOT INFORM THE CONTACT OF THE CAUSE OF FAILURE; HOWEVER, THEY DID OFFER HIM A SETTLEMENT. THE FAILURE AND CURRENT MILEAGES WERE 150,000.  THE VIN WAS UNAVAILABLE. |
| 10378297 | CHEVROLET | TRAILBLAZER | 2002 | 2011-01-19 | AIRBAGS DIDN'T DEPOLY AND ROOF CAVED.  *TR |
| 10386658 | CHEVROLET | TRAILBLAZER | 2002 | 2007-03-06 | TL* THE CONTACT OWNS A 2002 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 70 MPH IN RAINY WEATHER, THE CONTACT DROVE OVER A PUDDLE OF WATER AND LOST CONTROL OF THE VEHICLE. SHE THEN ENGAGED THE BRAKES AND THE VEHICLE SWERVED ABNORMALLY. THE VEHICLE SPUN AROUND AND CRASHED INTO THE OUTER MEDIAN. THE AIR BAGS DID NOT DEPLOY AND THE CONTACT SUSTAINED A SHOULDER INJURY. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE APPROXIMATE FAILURE MILEAGE WAS 152,000. |
| 10587773 | CHEVROLET | TRAILBLAZER | 2002 | 2014-05-10 | I WAS DRIVING AND A GUY IN A CAR CAME OVER IN MY LANE AND HIT ME HEAD ON CAUSING ME TO FLIP MY VEHICLE 4 TIMES, MY AIRBAGS DIDN'T COME OUT AND THE GUY THAT HIT ME WAS UNDER THE INFLUENCE, MY VEHICLE WAS TOTALED.  *TR |

| | | | | | |
|---|---|---|---|---|---|
| 10626676 | CHEVROLET | TRAILBLAZER | 2002 | 2008-03-10 | I STRUCK A VEHICLE THAT BROADSIDE WHEN HE RAN A STOP SIGN. I WAS GOING APPROXIMATELY 30 TO 35 MPH WHEN I STRUCK HIS VEHICLE. THE AIR BAGS DID NOT DEPLOY. I WAS TAKEN AWAY IN AN AMBULANCE AND HAD DAMAGE TO MY CERVICAL SPINE, STOMACH AND MID SPINE. I DID INQUIRE WHERE I HAD THE VEHICLE REPAIRED, ABOUT $8K IN DAMAGES, ABOUT WHY THE AIRBAGS DIDN'T DEPLOY. THEY SAID THEY DIDN'T KNOW BUT CHECKED AND SAID THE AIRBAG SYSTEM WAS FUNCTIONING? I SEE MANY SUCH "STORIES" ABOUT TRAILBLAZER AIRBAGS NOT DEPLOYING ON THIS SITE. IT REALLY BE NICE TO SEE SOMETHING DONE ABOUT THIS SITUATION. THIS VEHICLE HAS BEEN IN SEVERAL WRECKS AND THE AIRBAGS HAVE NEVER DEPLOYED!!!!! NOTE, I HAVE WRITTEN TO CHEVROLET/GM ABOUT THIS ISSUE BUT DON'T REALLY EXPECT THEM TO RESPOND! SOME SUPPORT FROM THE NHTSA WOULD REALLY BE APPRECIATED AND IS NEEDED BEFORE ANYONE ELSE GET HURT WHEN THE AIRBAGS DON'T DEPLOY! *TR |
| 10758946 | CHEVROLET | TRAILBLAZER | 2002 | 2014-10-15 | TL* THE CONTACT OWNED A 2002 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 15 MPH ON A RAINY ROAD, THE CONTACT CRASHED INTO ANOTHER VEHICLE AND THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED A HEAD INJURY THAT REQUIRED MEDICAL ATTENTION. THE DRIVER AND PASSENGER OF THE OTHER VEHICLE SUSTAINED UNKNOWN INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE AND VIN WERE UNAVAILABLE. |
| 10761168 | CHEVROLET | TRAILBLAZER | 2002 | 2014-10-04 | TL* THE CONTACT OWNS A 2002 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 10 MPH ON AN INCLINE DURING INCLEMENT WEATHER CONDITIONS, THE CONTACT'S VEHICLE VEERED INTO ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE MANUFACTURER WAS NOT MADE AWARE OF THE ISSUE. A POLICE REPORT WAS FILED. THE CONTACT SUFFERED A HEAD CONCUSSION THAT REQUIRED MEDICAL ATTENTION. THE FAILURE MILEAGE WAS NOT PROVIDED. |
| 10825823 | CHEVROLET | TRAILBLAZER | 2002 | 2016-01-09 | THE VEHICLE WAS INVOLVED IN A HEAD ON CRASH INTO A TELEPHONE POLE AND THE AIR BAGS DID NOT DEPLOY. THE FRONT SEAT PASSENGER WAS INJURED AND THE DRIVER STRUCK THE STEERING WHEEL AND DIED AT THE HOSPITAL FROM INTERNAL INJURIES. WE ARE TRYING TO DETERMINE WHY THE AIRBAGS DID NOT DEPLOY. THE PASSENGER WAS NOT WEARING A SEAT BELT AND IT ALSO APPEARS THAT THE DECEASED DRIVER WAS NOT WEARING A SEAT BELT. |
| 10872510 | CHEVROLET | TRAILBLAZER | 2002 | 2016-05-26 | DRIVING APPROXIMATELY 30 MILES PER HOUR, WOMAN PULLED OUT IN FRONT OF ME TO TURN ONTO THE FREEWAY. A VEHICLE NEXT TO ME HONKED THEIR HORN AND MISSED HITTING HER BUT I HIT HER ON THE PASSENGER REAR PANEL OF HER CAR, DAMAGING HER VEHICLE AND BENDING THE REAR TIRE AT AN ANGLE. THE AIRBAG DID NOT DEPLOY AND WAS ON. I WAS TRAVELING ON A CITY STREET, GOING WESTBOUND, THE OTHER DRIVER WAS TURNING TO GO NORTHBOUND. |
| 10899776 | CHEVROLET | TRAILBLAZER | 2002 | 2016-08-29 | TL* THE CONTACT OWNS A 2002 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 25 MPH, THE CONTACT'S VEHICLE CRASHED INTO A BUS AND SUSTAINED SIGNIFICANT DAMAGE TO THE FRONT END. THE AIR BAGS DID NOT DEPLOY. THE VEHICLE WAS TOWED. THE DRIVER SUSTAINED INJURIES TO THE NECK, HEAD, TORSO, AND A DISLOCATED FINGER. MEDICAL ATTENTION WAS REQUIRED. A POLICE REPORT WAS FILED. THE CAUSE OF THE FAILURE WAS NOT DIAGNOSED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 122,000. |
| 10957467 | CHEVROLET | TRAILBLAZER | 2002 | 2017-02-26 | MY WIFE WAS IN A HEAD ON COLLISION WHERE SHE HIT A TREE GOING APPROXIMATELY 45 MILES AN HOUR. SHE WAS ON A COUNTY ROAD AND LOST CONTROL OF THE VEHICLE, HITTING THE TREE ON PRIVATE PROPERTY. THE AIRBAGS DID NOT DEPLOY, WHEN THEY SHOULD HAVE. SHE HIT HER HEAD ON THE STEERING WHEEL AT IMPACT. I HAVE UPLOADED PICTURES OF THE DAMAGE TO THE VEHICLE AND A PICTURE SHOWING THE AIRBAGS DID NOT DEPLOY. |
| 11042967 | CHEVROLET | TRAILBLAZER | 2002 | 2016-11-22 | TL* THE CONTACT OWNED A 2002 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 60 MPH, THE CONTACT SWERVED TO AVOID ANOTHER VEHICLE AND CRASHED INTO A MEDIAN FACING ONCOMING TRAFFIC. THE VEHICLE FLIPPED OVER EIGHT TIMES AND LANDED IN A DITCH ON THE OPPOSITE SIDE OF THE HIGHWAY. THE AIR BAGS DID NOT DEPLOY. THE VEHICLE WAS TOWED AND DEEMED TOTALED. A POLICE REPORT WAS FILED. THE CONTACT PASSED OUT AND RECEIVED INJURIES TO THE HEAD, NECK, BACK, AND SHOULDER. MEDICAL ATTENTION WAS REQUIRED. THE DEALER WAS NOT CONTACTED. THE VEHICLE WAS INCLUDED IN NHTSA CAMPAIGN NUMBER: 04V201000 (SEAT BELTS). THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 100,000. |

| | | | | | |
|---|---|---|---|---|---|
| 11289369 | CHEVROLET | TRAILBLAZER | 2002 | 2019-11-29 | TL* THE CONTACT OWNED A 2002 CHEVROLET TRAILBLAZER. WHILE DRIVING AND TURNING, THE VEHICLE HYDROPLANED AND STRUCK A CONCRETE WALL HEAD ON. THE VEHICLE THEN VEERED TO THE LEFT AND STRUCK THE CENTER DIVIDER TWICE. THE AIR BAGS DID NOT DEPLOY. THE VEHICLE WAS TOTALED AND TOWED. MOST OF THE DAMAGE WAS TO THE FRONT END OF THE VEHICLE AND THE DRIVER'S DOOR COULD NOT BE CLOSED. THE DRIVER SUSTAINED BRUISES WHERE THE SEAT WAS LOCATED. THE DRIVER WAS TRANSPORTED TO THE EMERGENCY ROOM FOR MEDICAL ATTENTION. THE DRIVER'S FACE WAS BRUISED AND A CAT SCAN WAS PERFORMED TO DETERMINE IF THERE WERE ANY BROKEN BONES, BUT THE TESTS WERE NEGATIVE. THE DRIVER ALSO TWISTED HER ANKLE AND THERE WAS A LITTLE BIT OF SWELLING ON HER KNEE. A POLICE REPORT WAS FILED. THE MANUFACTURER WANTED TO VISIT THE CONTACT'S HOME TO EXAMINE THE VEHICLE AND FIND OUT WHY THE AIR BAGS DID NOT DEPLOY. THE DEALER WAS NOT CONTACTED. THE CAUSE OF THE FAILURE WAS NOT DETERMINED. THE FAILURE MILEAGE WAS UNKNOWN. |
| 564451 | GMC | ENVOY | 2002 | 2001-01-13 | WHILE DRIVING IN INCLEMENT WEATHER THE DRIVERS VEHICLE HIT A PATCH OF BLACK ICE SENDING THE VEHICLE OFF THE ROAD HITTING A STONE RETAINING WALL HEAD ON, NEITHER PASSENGER NOR DRIVERS SIDE AIR BAGS DEPLOYED.  NLM |
| 566612 | GMC | ENVOY | 2002 | 2002-01-14 | ALL OF THE EIGHT (8) AIR BAG EQUIPPED IN THE VEHICLE FAILED TO DEPLOY DURING FRONTAL IMPACT,  ALTHOUGHT PROPERLY RESTRAINED THE CONSUMER STILL SUSTAINED SERIOUS INTERNAL INJURIES, INCLUDING A LACERATED LIVER.(ATTORNEY ON BEHALF OF CLIENT0  NLM |
| 8016732 | GMC | ENVOY | 2002 | 2002-07-17 | VEHICLE WAS INVOLVED IN FRONTAL COLLISION WITH POINT OF IMPACT JUST A LITTLE LEFT OF THE CENTER BUMPER.  FRONT END, INCLUDING  FRAME WAS TOTALLED.  UPON IMPACT, NEITHER AIR BAGS DEPLOYED.  PLEASE DESCRIBE DETAILS.  *AK |
| 8023505 | GMC | ENVOY | 2002 | 2002-11-22 | CONSUMER COLLIDED IN THE REAR OF A TRACTOR TRAILER TRAVELLING APPROXIMATELY 60-70MPH.  BOTH THE DRIVER AND PASSENGER AIR BAGS DID NOT DEPLOY. TS |
| 10002513 | GMC | ENVOY | 2002 | | WHILE TRAVELING AT  70 MPH ANOTHER VEHICLE  WAS TRAVELING EAST BOUND CROSSED CONSUMERS PATH UNEXPECTANTLY, CAUSING CONSUMER TO HIT A TREE.  CONSUMER STATES NONE OF THE  AIRBAGS DEPLOYED. PLEASE PROVIDE ANY FURTHER INFORMATION.*JB |
| 10009390 | GMC | ENVOY | 2002 | 2003-02-21 | CONSUMER LOST CONTROL OF VEHICLE AND HIT A LEDGE, AND NONE OF THE AIR BAGS DEPLOYED. *JB  THE DEALER STATED THAT IF THE VEHICLE HIT 6 INCHES TO THE RIGHT, THEN THE AIR BAGS WOULD HAVE DEPLOYED.  *SCC |
| 10029726 | GMC | ENVOY | 2002 | 2003-07-03 | WHILE DRIVING 50 MPH VEHICLE WAS INVOLVED IN A FRONTAL COLLISION, BUT AIR BAGS DID NOT DEPLOY. DEALER NOTIFIED. *AK |
| 10029894 | GMC | ENVOY | 2002 | 2003-07-15 | CONSUMER STATED WHILE SHE AND HER HUSBAND WERE TRAVELING ON THE HIGHWAY AT APPROXIMATELY 40-50 MPH, THE VEHICLE IN FRONT OF THEM  DECIDED TO MAKE A QUICK TURN, WHICH CAUSED HER HUSBAND TO HIT THE VEHICLE IN THE SIDE. UPON IMPACT, THE AIR BAGS DID NOT DEPLOY.  BOTH SHE AND HER HUSBAND SUSTAINED INJURIES.  HIS KNEES WENT INTO THE DASH AND HE WAS SORE FROM HEAD TO TOE.  THIS IMPACT CAUSED HER HEAD TO SNAP BACK, RESULTING IN A CHEST WALL INJURY/A STIFF NECK , AND BACK.   THIS WAS A MALFUNCTION BECAUSE THE AIR BAGS SHOULD HAVE DEPLOYED BECAUSE OF THE RATE OF SPEED. *AK  *CB  THE CONSUMER ALSO FELT THE SEAT BELT DID NOT REALLY PERFORM AS DESIGNED.  *JB |
| 10063773 | GMC | ENVOY | 2002 | 2004-03-21 | 2002 GMC ENVOY SER#[XXX] AIR BAGS DID NOT DEPLOY DRIVER TAKEN BY LIFESTAR TO HARTFORD HOSPITAL THE WHOLE LEFT SIDE OF THE VEHICLE WAS CAVED IN ALL THE WAY TO THE FRONT SEAT.  *NM  UPDATED 07/30/2012 *JS   INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6) |
| 10075683 | GMC | ENVOY | 2002 | 2004-05-14 | WHILE DRIVING 30 MPH, THE CONSUMER WAS INVOLVED IN AN EIGHT VEHICLE PILE UP. UPON IMPACT, THE AIR BAGS DID NOT DEPLOY. AS A RESULT, THE  DRIVER SUSTAINED SEVERE  BACK AND LEG INJURIES.  *AK  *SC |
| 10079342 | GMC | ENVOY | 2002 | 2004-06-16 | WHILE DRIVING 55 MPH DRIVER APPLIED THE BRAKES  TO SLOW DOWN THE SPEED  AND CONSUMER LOST CONTROL, CAUSING THE VEHICLE TO HIT A GUARD RAIL  AND ROLL OVER THREE TIMES.  VEHICLE LANDED UPSIDE DOWN.  UPON IMPACT, THE AIRBAG DID NOT DEPLOY, AND  SEAT BELT  DID NOT HOLD  THE PASSENGER.  *AK |
| 10099326 | GMC | ENVOY | 2002 | 2004-11-01 | AFTER BEING STRUCK HEAD ON BY A SEMI  TRAILER AT 40 MPH AIR BAGS DID NOT DEPLOY.  THE VEHICLE WAS TOTALED.*AK |
| 10101068 | GMC | ENVOY | 2002 | 2004-11-11 | WHILE DRIVING 20 MPH CONSUMER'S VEHICLE COLLIDED WITH THE VEHICLE IN FRONT.  UPON IMPACT, BOTH  FRONTAL AIR BAGS FAILED TO DEPLOY. DRIVER TO SUSTAINED MINOR INJURIES, AND WAS TRANSPORTED TO A HOSPITAL.  THE VEHICLE WAS TOWED TO THE DEALER FOR INSPECTION.  *AK |
| 10129259 | GMC | ENVOY | 2002 | 2005-07-18 | I WAS TRAVELLING AT APPROXIMATELY 35MPH AND AS I WAS HEADING TOWARD A SIGNAL LIGHT WHEN A VAN TURNED LEFT IN THE OPPOSITE DIRECTION OF TRAVEL. MY VEHICLE'S FRONT END STRUCK THE VAN'S PASSENGER SIDE DOOR. AIR BAGS DID NOT DEPLOY UPON IMPACT ALTHOUGH VAN'S BOTH FRONTAL AIR BAGS DID DEPLOY.MY FACE HIT THE STEERING WHEEL AND KNEES HIT THE BOTTOM OF THE DASHBOARD. PASSENGER WAS ALSO BRUISED ON KNEES |

| 10211793 | GMC | ENVOY | 2002 | 2007-12-05 | TL*THE CONTACT OWNS A 2002 GMC ENVOY.  WHILE DRIVING 20 MPH UPHILL IN ICY WEATHER, THE VEHICLE SLID OFF THE ROAD. NONE  OF THE AIR BAGS DEPLOYED AND THE VEHICLE WAS COMPLETELY DESTROYED.  THE PASSENGER WAS SEVERELY INJURED.  THE CONTACT FILED A FORMAL COMPLAINT WITH THE MANUFACTURER.  HE HAS A COPY OF THE POLICE REPORT.  THE CURRENT AND FAILURE MILEAGES WERE 115,000.   UPDATED 01/07/08  *BF  UPDATED *JB |
|---|---|---|---|---|---|
| 10246849 | GMC | ENVOY | 2002 | 2008-10-03 | MY WIFE AND I WERE HEADED SOUTHBOUND ON 685 IN ROUND ROCK, TX IN OUR 2002 GMC ENVOY AT APPROX. 9:35 PM WHEN A DRIVER IN A MINI VAN RAN A RED LIGHT AT THE INTERSECTION OF 685 AND GATTIS SCHOOL RD. OUR VEHICLE STRUCK THEM IN THE REAR PASSENGER QUADRANT. THE SPEED LIMIT IS 60 MPH AT THIS INTERSECTION AND WE DID NOT HAVE TIME TO BRAKE. EVEN THOUGH THE FRONT OF OUR VEHICLE WAS CRUSHED INTO THE ENGINE COMPARTMENT, NO AIRBAGS DEPLOYED. MY WIFE, WHO IS IN THE HABIT OF WEARING HER SEATBELT (ALTHOUGH WE STILL CANNOT CONFIRM ONE WAY OR THE OTHER) STRUCK THE REAR VIEW MIRROR WITH HER HEAD WITH ENOUGH FORCE TO BREAK A HOLE IN THE WINDSHIELD WHERE IT WAS ATTACHED AND BREAK THE WINDSHIELD AROUND IT. SHE WAS TRANSPORTED TO THE HOSPITAL WITH A CONCUSSION AND HAD FOR A TIME GONE INCOHERENT AND UNRESPONSIVE WITH SHORT TERM MEMORY LOSS. SHE HAS HAD DAILY HEADACHES SINCE WITH SOME EXTREMELY SEVERE. SHE ALSO HAD MULTIPLE SEVERE CONTUSIONS DOWN HER LEFT SIDE, PARTICULARLY IN HER UPPER LEFT THIGH WITH A LARGE HEMOTOMA THAT IS STILL GIVING HER PROBLEMS. OUR VEHICLE WAS SUBSEQUENTLY TOTALED BY THE INSURANCE COMPANIES. WE HAVE CONTACTED GM ABOUT THE FAILURE OF THE AIRBAGS TO DEPLOY AND THEY ARE CURRENTLY INVESTIGATING AND SENT AN INVESTIGATOR TO DOWNLOAD THE COMPUTER INFORMATION LAST WEEK. THERE IS A POLICE REPORT THAT WAS FILED BY THE TEXAS DPS INVESTIGATING OFFICER. *TR |
| 10437615 | GMC | ENVOY | 2002 | 2011-11-16 | CAR HAD A HEAD ON COLLISION WITH ANOTHER CAR THAT JUMP FROM THE OPPOSITE TRAFFIC. BOTH CARS WERE TOTALED BECAUSE OF THIS ACCIDENT, BUT MY AIRBAGS DID NOT DEPLOY AT THE TIME OF THE ACCIDENT.  *KB |
| 10667172 | GMC | ENVOY | 2002 | 2013-07-07 | MY SON (17) WAS COMING HOME AND CRASHED INTO A LIGHT POLE, WE DON'T KNOW WHAT CAUSED HIM TO CRASH NO ALCOHOL OR DRUGS WERE INVOLVED AND THE AIRBAGS DID NOT DEPLOY...HE WAS TRAPPED IN THE CAR AND DIED FROM BLUNT FORCE TRAUMA TO THE HEAD. *TR |
| 10723011 | GMC | ENVOY | 2002 | 2014-06-28 | I AND MY PASSENGER WERE IN AN ACCIDENT ABOUT A YEAR AGO, A VERY HARD FRONT END IMPACT, AND NONE OF THE AIR BAGS DEPLOYED. WE WERE BOTH TRANSPORTED TO THE ER BY AMBULANCE, I HIT THE STEERING WHEEL HARD SO HARD THAT IT BENT INWARDS AND BROKE MY NOSE ALSO HAD A CONCUSSION. HE WAS IN THE FRONT PASSENGER SEAT AND HIT THE FRONT DASH, WHERE THE AIR BAG SHOULD HAVE DEPLOYED, HE BROKE HIS FRONT TEETH AND ALSO HAD A CONCUSSION. I'VE ALSO HAD MANY OF THE SAME ISSUES THAT EVERY OTHER 02 OR 03 ENVOY HAS YET MY VIN PULLS NO RECALLS. THIS NEEDS TO BE INVESTIGATED!!!   THANKS. |
| 11179980 | GMC | ENVOY | 2002 | 2019-02-12 | I WAS ON MY WAY HOME ON HWY/US 151 GOING APPROX. 55-60 MPH (65 MPH ZONE) WHEN I HIT A DEER WHICH CAUSED MY VEHICLE TO LOSE CONTROL AND SLAMMED INTO THE START OF A GUARDRAIL AT NO LESS THAN 45 MPH BRINGING MY 2002 GMC ENVOY TO A COMPLETE STOP, AT MOST 2-3 FEET FROM INITIAL IMPACT TO BE EXACT. THE AIRBAGS DID NOT DEPLOY. FRONT DASH NOR SIDE IMPACT BAGS, NOTHING. N I HIT HARD. LUCKILY I WASNT SERIOUSLY INJURED ONLY MINOR BRUISING AND QUITE SORE FROM WHIPLASH AND BEING THROWN INTO THE DOOR AN A BIT SHAKEN N LUCKILY HAD NO PASSENGERS. AS FOR MY ENVOY, IT IS A TOTAL LOSS AND UNFORTUNATELY I ONLY HAD LIABILITY INSURANCE SO NOW IM SCREWED WITHOUT A VEHICLE AND AFTER ALL OTHER PROBLEMS IVE FACED WITH MY GMC ENVOY I WILL NEVER OWN A GM AGAIN. TAKE GM PRODUCTS TO THE DUMP. |
| 8021614 | GMC | YUKON | 2002 | 2002-10-13 | CONSUMER STATES THAT AT 50 MPH UNDER RAINY CONDITIONS, CONSUMER LOSS CONTROL OF VEHICLE AND HIT A TREE.  VEHICLE WAS TOTALLED.  NONE OF THE VEHICLES AIRBAGS DEPLOYED. PLEASE PROVIDE ANY FURTHER INFORMATION.   TS |
| 10004394 | GMC | YUKON | 2002 | 2002-12-09 | WHILE DRIVING AT 25 MPH THE VEHICLE WAS INVOLVED IN AN ACCIDENT WHERE AIRBAGS DID NOT DEPLOY. DEALER NOTIFIED. PLEASE PROVIDE ADDITIONAL INFORMATION. TS |
| 10126105 | GMC | YUKON | 2002 | 2005-06-13 | DT: CONSUMER GOT IN AN ACCIDENT AND TOTALED THE VEHICLE, THE FRONT AND SIDE AIR BAGS NEVER DEPLOYED. CONSUMER WAS GOING ABOUT 70 MPH AND HIT HEAD ON AND THE VEHICLE ROLLED 4 TIMES.  *AK *SB |
| 10132894 | GMC | YUKON | 2002 | 2005-07-15 | DT: WHILE DRIVING DOWN THE MAIN ROAD AT 45 MPH, THE CONSUMER TOOK HIS  EYES OFF THE ROAD AND WENT INTO THE GRAVEL AND THEN INTO A DITCH AND HIT A MAILBOX . THE CONSUMER WENT THROUGH THE PASSENGER SIDE WINDSHIELD. THE RIGHT WHEEL FELL OFF AND THE FRONT BUMPER SMASHED INTO THE ENGINE AND THE FRAME WAS BENT. UPON IMPACT, THE AIR BAGS DID NOT DEPLOY. THE VEHICLE WAS EQUIPPED WITH FRONT AND SIDE AIR BAGS. THE AIR BAG LIGHT WAS NOT ON AND  NEVER HAD  BEEN ON. THERE WERE NO PROBLEMS WITH VEHICLE BEFORE THIS INCIDENT.  THERE WERE NO OTHER VEHICLES INVOLVED. THE VEHICLE HAS NEVER BEEN IN AN ACCIDENT THERE WERE NO RECALLS  ON  THE AIR BAGS. THE MANUFACTURER HAS NOT BEEN CONTACTED, BUT WILL BE CONTACTED TODAY.THERE WAS A POLICE REPORT WAS TAKEN. *AK |

| 10261762 | GMC | YUKON | 2002 | 2009-02-23 | TL*THE CONTACT OWNS A 2002 GMC YUKON.  WHILE DRIVING APPROXIMATELY 55 MPH, THE CONTACT CRASHED INTO ANOTHER VEHICLE.  HIS VEHICLE WAS COMPLETELY DESTROYED AND NONE OF THE AIR BAGS DEPLOYED.  THE DRIVER SUSTAINED MODERATE BODILY INJURIES.  IT HAS NOT YET BEEN DETERMINED WHY THE AIR BAGS FAILED TO DEPLOY.  THE CONTACT HAS PICTURES OF THE FAILED INCIDENT AND A COPY OF THE POLICE REPORT.  HE FILED A COMPLAINT WITH THE MANUFACTURER.  THE FAILURE AND CURRENT MILEAGES WERE 107,000. |
| 10544196 | GMC | YUKON | 2002 | 2013-09-12 | TL* THE CONTACT OWNS A 2002 GMC YUKON. THE CONTACT STATED THAT WHILE DRIVING 45 MPH, HE CRASHED INTO THE PASSENGER'S SIDE OF ANOTHER VEHICLE AND THE AIR BAGS FILED TO DEPLOY WITH THE IMPACT. IN ADDITION, THE SEAT BELT FAILED TO SECURE AS DESIGNED. THE CONTACT SUSTAINED A BRUISED RIB AND AN INJURY TO THE LEFT LEG. A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS DESTROYED AND TOWED TO A SALVAGE FACILITY. THE MANUFACTURER WAS NOT NOTIFIED OF THE DEFECT. THE APPROXIMATELY FAILURE MILEAGE WAS 142,000. |
| 10690133 | GMC | YUKON | 2002 | 2015-01-06 | TL*THE CONTACT OWNS A 2002 GMC YUKON. THE CONTACT STATED THAT AFTER BEING INVOLVED IN A COLLISION, THE AIR BAGS FAILED TO DEPLOY. THE DETAILS OF THE COLLISION WERE NOT AVAILABLE. THE VEHICLE WAS DESTROYED. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED BACK INJURIES THAT DID NOT REQUIRE MEDICAL ATTENTION. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 225,000. THE VIN WAS UNAVAILABLE. |
| 11298082 | GMC | YUKON XL | 2002 | 2019-02-05 | I SWERVED TO MISS A DEER AND I HIT A TREE RUNNING 47 MPH AND MY AIR BAGS DIDN'T DEPLOY AND NO ONE CAN TELL ME WHY. MY HUSBAND AND I WERE VERY LUCKY BUT WHY DIDN'T THE AIR BAGS DEPLOY? MY HUSBAND WAS OUT OF WORK FOR 5 MONTHS DUE TO TORN LIGAMENTS IN HIS SHOULDERS AND STILL HAS TO HAVE SURGERY. |
| 10048726 | ISUZU | AMIGO | 2002 | | THE TRUCK IMPACTED A TREE WHILE DRIVING 40 MPH AND AS A RESULT THE  TRUCK'S FRONT BUMPER WRAPPED AROUND THE TREE.  NEITHER THE DRIVER'S SIDE NOR PASSENGER'S SIDE AIR BAG  DEPLOYED UPON IMPACT. THE DRIVER SUSTAINED SEVERE INJURIES, BUT NO BROKEN BONES. THE CAUSE OF THE AIR BAG FAILURE IS YET TO BE DETERMINED. PLEASE PROVIDE ANY ADDITIONAL INFORMATION. *NLM |
| 764947 | ISUZU | AXIOM | 2002 | 2002-07-02 | WE WERE INVOLVED IN AN ACCIDENT ON I270 IN ST.LOUIS, MO.  A SEMI- TRUCK DOING APPROXIMATELY 35 MPH STRUCK US IN THE REAR AND FORCED US INTO THE PICK UP TRUCK IN FRONT OF US.  THE AIR BAGS DID NOT DEPLOY, DESPITE THE SQUARE FRONT TO REAR IMPACT. THE FRONT PASSENGER SEAT IN MY VEHICLE BROKE, TWISTING THE PASSENGER TO THE SIDE, FACING THE STEERING WHEEL.*AK |
| 10033920 | ISUZU | AXIOM | 2002 | 2003-08-13 | CONSUMER STATED WHILE DRIVING  AT 50 MPH CONSUMER'S VEHICLE REAREND ED ANOTHER VEHICLE. UPON IMPACT, AIR BAGS FAILED TO DEPLOY. *AK |
| 10050524 | ISUZU | AXIOM | 2002 | 2003-12-15 | WHILE DRIVING AT 25 MPH   LEFT FRONT TIRE  BLEW OUT, DRIVER LOST  CONTROL AND HIT A GUARD RAIL. UPON IMPACT,  NONE OF THE AIR BAGS DEPLOYED. GOODYEAR, SIZE P235/65R17, DOT# UNKNOWN. CONSUMER STATED THERE WAS NOT AN ISSUE WITH THE TIRE, BUT HIS SON RAN OVER SOMETHING AND BLEW THE TIRE. *AK |
| 10128420 | ISUZU | AXIOM | 2002 | 2005-07-11 | DT:  ON JULY 3RD THE CONSUMER RECEIVED A RECALL LETTER IN REFERENCE TO THE PASSENGER SIDE AIR BAG, RECALL # 03V113000.  THE VEHICLE WAS TAKEN TO GALLES MOTOR CO. TO HAVE THE RECALL REPAIRED AT NO COST TO THE CONSUMER .  ON JULY 11, 2005 THE CONSUMER'S WIFE HAD AN ACCIDENT IN WHICH SHE WAS INJURED.  SHE REAR ENDED A CAR SITTING AT A RED LIGHT WHILE SHE WAS GOING 45 MPH.  SHE WAS WEARING A SEAT BELT AT THE TIME BUT THE AIR BAGS DID NOT DEPLOY.  THE WEATHER WAS DRY AND THE ROAD CONDITIONS WERE GOOD. T HE VEHICLE HASN'T BEEN TAKEN TOT HE DEALER YET FOR INSPECTION.  THE DEALER WAS CONTACTED AND THEY SAID FOR HIM TO TAKE IT TO A MECHANIC.   HE HASN'T BEEN ABLE TO GET A HOLD OF THE MFR.   AT PRESENT, HIS CAR IS STILL AT THE WRECKING YARD.  *NM |
| 10148582 | ISUZU | AXIOM | 2002 | 2005-12-23 | DT*:  THE CONTACT STATED ON DECEMBER 23, 2005 WHILE DRIVING AT 60 MPH ON A DRY HIGHWAY THE CONTACT WAS RUN OFF THE ROAD BY A TRUCK.  THE VEHICLE THEN COLLIDED WITH THE ROAD PARTITION, AND CRUSHED THE ENTIRE FRONT END OF THE VEHICLE.  THE AIR BAGS DID NOT DEPLOY, AND THE DRIVER SUFFERED BRUISING FROM THE SAFETY BELT.  THERE IS A RECALL, #02V213000 BUT THE CONTACT WAS NOT NOTIFIED OF THE RECALL WHEN THE VEHICLE WAS PURCHASED.  UPDATED 02/28/06. *JB |
| 8023834 | ISUZU | RODEO | 2002 | 2002-10-25 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION WITH A POLE AT 35-40MPH AND NEITHER AIRBAG DEPLOYED.  VEHICLE IS TOTALED DRIVER IN A COMA DEALER IS AWARE OF THE PROBLEM. TS |
| 10049812 | ISUZU | RODEO | 2002 | 2003-11-28 | WHILE MERGING ONTO THE INTERSTATE VEHICLE DROVE OVER SOME BLACK ICE,  VEHICLE THEN SPUN AROUND, HIT A CONCRETE BARRIER,AND A GUARD RAIL.  UPON IMPACT,  FRONT AIR BAGS DID NOT DEPLOY.  THE DRIVER AND PASSENGER SUSTAINED  MINOR INJURIES. *AK |
| 10184163 | ISUZU | RODEO | 2002 | 2006-11-19 | CAR WAS INVOLVED IN AN ACCIDENT WHERE IT STRUCK THE BACK OF ANOTHER VEHICLE. THE COLLISION WAS ENOUGH TO CAUSE OVER $4000.00 IN DAMAGE TO THE ISUZU BUT THE AIR BAGS FAILED TO DEPLOY. *JB |

| | | | | | |
|---|---|---|---|---|---|
| 10443695 | ISUZU | RODEO | 2002 | 2011-05-18 | TL* THE CONTACT OWNS A 2002 ISUZU RODEO. THE CONTACT WAS DRIVING APPROXIMATELY 35 MPH WHEN THE VEHICLE BEGAN TO ERRONEOUSLY DRIFT TO ONE SIDE. THE CONTACT LOST CONTROL OF THE VEHICLE AND THE VEHICLE MOVED INTO THE SHOULDER, CRASHING INTO THE BARRIER WALL ABRUPTLY. THE CONTACT WAS KNOCKED UNCONSCIOUS AND THE CONTACTS FOOT LANDED ON THE ACCELERATOR PEDAL AS HE LOST CONSCIOUSNESS.THE CONTACT WAS NOT AWARE AS THE VEHICLE CONTINUED TO ACCELERATE INTO ONCOMING TRAFFIC. THE VEHICLE THEN CRASHED INTO A TREE BEFORE FLIPPING. THE SEAT BELTS DETACHED FROM ITS HOUSING UNIT AND THE AIR BAGS NEVER DEPLOYED. THE CONTACT SUSTAINED SEVERE INJURIES TO THE HEAD, FACE, PELVIS AND SPINE. A PASSENGER WAS ALSO INJURED AND BOTH THE CONTACT AND THE PASSENGER WERE TRANSPORTED TO THE HOSPITAL. A POLICE REPORT WAS FILED OF THE INCIDENT AND THE VEHICLE WAS DESTROYED. THE FAILURE AND THE CURRENT MILEAGE WAS 150,000. |
| 10553570 | ISUZU | RODEO | 2002 | 2013-11-24 | WHILE TRAVELING ON A ROAD, A HORSE RAN ACROSS AND CAUSED A COLLISION. THE FRONT OF THE VEHICLE IS DAMAGED, AS WELL AS, BOTH SIDE WINDOWS AND THE RADIATOR. NONE OF THE AIRBAGS DEPLOYED CAUSING INJURIES TO TWO PEOPLE IN THE VEHICLE. THE OFFICER AT THE SCENE SAID THE AIRBAGS SHOULD HAVE DEFINITELY DEPLOYED.  *TR |
| 745117 | CHEVROLET | ASTRO | 2001 | 2001-04-19 | VEHICLE WAS IN AN OFFSET FRONTAL CRASH, STRIKING THE REAR OF A FULL SIZE PICKUP TRUCK WITH THE LEFT HALF OF THE FRONT OF THE VAN.  UPON IMPACT, FRONTAL AIR BAGS FAILED TO DEPLOY. *AK |
| 8006423 | CHEVROLET | ASTRO | 2001 | 2002-03-06 | WHILE DRIVING 35 MPH THE VEHICLE REAR ENDED A BUS YET THE AIRBAGS DID NOT DEPLOY, THE VEHICLE WAS A TOTAL LOSS.  NLM *JG |
| 886165 | CHEVROLET | BLAZER | 2001 | | WHILE TRAVELING 30-35 MPH AND AS A  RESULT OF AN ACCIDENT  AIR BAGS DID NOT DEPLOY . PLEASE PROVIDE FURTHER INFORMATION.*AK |
| 894582 | CHEVROLET | BLAZER | 2001 | 2001-08-10 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION. SPEED WAS NOT DETERMINED, UPON IMPACT, BOTH AIR BAGS DID NOT DEPLOY, DEALER WAS NOTIFIED. *AK *YH |
| 8015457 | CHEVROLET | BLAZER | 2001 | 2002-07-05 | WHILE IN A FRONTAL IMPACT  NONE OF THE AIR BAGS DEPLOYED. DEALER CONTACTED.*AK |
| 8017355 | CHEVROLET | BLAZER | 2001 | 2002-07-07 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION INTO A  DIRT WALL. UPON IMPACT,  NEITHER AIR BAG DEPLOYED. FEEL FREE TO PROVIDE ANY FURTHER INFROMATION.*AK |
| 8017786 | CHEVROLET | BLAZER | 2001 | 2002-08-16 | WHILE DRIVING AT 35MPH AND WITH NO WARNING WHEN VEHICLE WAS HIT IN  FRONT CENTER AIR BAGS DID NOT DEPLOY. DEALER NOTIFIED.*AK |
| 8020006 | CHEVROLET | BLAZER | 2001 | 2002-09-14 | CONSUMER STATES THAT WHEN HIT AT 40MPH IN THE FRONT CENTER OF THE VEHICLE THE AIR BAG DID NOT DEPLOY. DEALER NOTIFIED.  NLM |
| 8023471 | CHEVROLET | BLAZER | 2001 | 2002-07-01 | WHILE TRAVELING ABOUT 55MPH ON THE HIGHWAY WITHOUT PRIOR WARNING SHE HIT AN ENBANKMENT. AND THE VEHICLE FLIP AND THE DRIVER SIDE AIRBAG DIDN'T DEPLOY.  PLEASE FILL IN ADDITIONAL INFORMATION DEALER IS AWARE OF THE PROBLEM. PH |
| 10002341 | CHEVROLET | BLAZER | 2001 | | CONSUMER STATES WHILE DRIVING 30MPH HAD FRONT END COLLISION AND NEITHER PASSENGER OR DRIVER AIR BAG DEPLOYED. PLEASE PROVIDE ANY ADDITIONAL INFORMATION. TS |
| 10060150 | CHEVROLET | BLAZER | 2001 | 2004-02-24 | DRIVER SIDE AIR BAG FAILED TO DEPLOY IN A CRASH THROUGH: 1. A SIX FOOT TALL WOODEN FENCE AT ALMOST 30MPH, THEN 2. THE EXTERIOR SIDE OF A 2-STORY HOME THAT CONTAINED THE KITCHEN SINK AND PLUMBING FIXTURES, WHILE SMASHING UP AND OVER THE FIFTEEN-INCH CONCRETE FOUNDATION, FRONT-END FIRST.*AK |
| 10072173 | CHEVROLET | BLAZER | 2001 | 2004-04-30 | WHILE DRIVING AT 53 MPH, THE CONSUMER'S VEHICLE REAR ENDED ANOTHER VEHICLE.  UPON IMPACT, THE AIR BAGS DID NOT DEPLOY.  THE CONSUMER SUSTAINED  MINOR INJURIES.  THE DEALERSHIP WAS NOTIFIED, BUT DID NOT RESOLVE THE PROBLEM.   *AK   *SC |
| 10101364 | CHEVROLET | BLAZER | 2001 | 2004-11-11 | CONSUMER'S VEHICLE WAS AT A COMPLETE STOP AND  ANOTHER VEHICLE WAS COMING HEAD ON WHICH RESULTED IN A HEAD ON COLLISION. THERE WAS A VEHICLE BEHIND  CONSUMER'S VEHICLE WHICH SHE WAS PUSHED INTO DUE TO THE HEAD ON COLLISION. HOWEVER,  UPON IMPACT,  AIR BAGS DID NOT DEPLOY. CONSUMER  SUSTAINED MAJOR INJURIES.  *AK |
| 10105341 | CHEVROLET | BLAZER | 2001 | 2004-12-22 | CONSUMER'S VEHICLE WAS INVOLVED IN A FRONT COLLISION AT 40 MPH DUE TO INCLEMENT WEATHER.  UPON IMPACT, AIR BAGS DID NOT DEPLOY. CONSUMER CONTACTED THE MANUFACTURER. *AK |
| 10106657 | CHEVROLET | BLAZER | 2001 | 2004-12-25 | VEHICLE SLIPPED WHILE TRAVELING ON ICE AT 55 MPH, CAUSING THE VEHICLE TO STRIKE A CONCRETE RETAINING WALL, AND IT  ROLLED OVER. UPON IMPACT,  AIR BAGS DID NOT DEPLOY.*AK |
| 10142568 | CHEVROLET | BLAZER | 2001 | 2005-10-05 | DT:  CONTACT STATED THE AIR BAGS DID NOT DEPLOY IN A HEAD ON CRASH. WHILE TRAVELING AT ABOUT 60 MPH THE VEHICLE HYDRO PLANED. THE CONTACT  LOST CONTROL OF THE VEHICLE AND CRASHED. THREE PEOPLE SUSTAINED  INJURIES.  A POLICE REPORT WAS TAKEN.  THE DEALER WAS CONTACTED BUT OFFERED NO ASSISTANCE. THE MANUFACTURER INFORMED HER THEY HAVE A BUYER FOR THE VEHICLE, AND THEY OFFERED NO FREE REMEDY. VEHICLE WAS TOTALED.*AK |
| 10174898 | CHEVROLET | BLAZER | 2001 | 2006-11-05 | DT*: THE CONTACT STATED WHILE DRIVING 55 MPH, THERE WAS A MOMENTARY LOSS OF VEHICLE CONTROL, THE VEHICLE STRUCK A NEARBY TREE STUMP, AND THE AIRBAGS DID NOT DEPLOY.  THE CONTACT WAS WEARING A SEAT BELT, BUT NO INJURIES WERE SUSTAINED.  THERE WAS MODERATE DAMAGE TO THE FRONT OF THE VEHICLE.  THE POLICE WERE ALERTED, AND A REPORT WAS TAKEN.  THE MANUFACTURER WAS ALERTED. |

| 10175892 | CHEVROLET | BLAZER | 2001 | 2001-12-04 | MY DAUGHTER WAS IN A CAR CRASH. UNFORTUNATELY MY DAUGHTER WAS AT FAULT. SHE WAS GOING 55 MPH AND HIT A CAR THAT WAS STOPPED AT A LIGHT  HER AIR BAG DID NOT DEPLOY. SHE HAS NECK AND BACK PAINS.  *JB |
| 10184395 | CHEVROLET | BLAZER | 2001 | 2005-05-19 | A FRONTAL IMPACT OCCURRED AT 40 MPH AS ANOTHER MOTORIST PULLED OUT IN FRONT OF ME. THE AIR BAGS DID NOT DEPLOY.  THE FRONT DRIVER SEAT BELT DID NOT PROPERLY RESTRAIN ME AND I WAS FORCED INTO THE ROOF AT THE TRIM EDGE OF THE WINDSHIELD, SUSTAINING A MINOR SCALP LACERATION, CERVICAL DISC DAMAGE, AND A CONCUSSION.  THE VEHICLE WAS TOTALED BY NATIONWIDE INSURANCE. *JB |
| 10454988 | CHEVROLET | BLAZER | 2001 | 2012-04-06 | TL* THE CONTACT OWNS A 2001 CHEVROLET BLAZER. THE CONTACT STATED THAT WHILE DRIVING 40 MPH, THE CONTACT CRASHED INTO THE SIDE OF ANOTHER VEHICLE. THE CONTACT STATED THAT THE FORCE OF THE IMPACT CAUSED THE VEHICLE TO BOUNCE OFF THE SECOND VEHICLE. THE AIR BAGS DID NOT DEPLOY. THE PASSENGER SUSTAINED INJURIES TO THE LEFT ANKLE AND KNEES, AS WELL AS A BROKEN THUMB. THE CONTACT WAS TRANSPORTED TO THE HOSPITAL AS A PRECAUTIONARY MEASURE. THE VEHICLE WAS NOT INSPECTED FOR THE CAUSE OF FAILURE NOR REPAIRED. THE FAILURE AND THE CURRENT MILEAGES WERE 122,000. |
| 752662 | CHEVROLET | SILVERADO | 2001 | 2001-09-22 | CRASHED INTO  14FOOT UHAUL  GOING ABOUT 65MPH AIR BAGS NEVER WORKED. PLEASE ADVISE! *AK |
| 754465 | CHEVROLET | SILVERADO | 2001 | 2001-08-04 | A TWO IMPACT WRECK ,WITH THE SECOND AT 55 MPH HIT HEAD ON,NO AIRBAG OR ONSTAR DEPLOYMENT. *AK |
| 757639 | CHEVROLET | SILVERADO | 2001 | 2002-01-16 | DRIVER'S SIDE AIRBAG DID NOT DEPLOY DURING A FRONTAL IMPACT CRASH AT APPROXIMATELY 40 MPH.*AK |
| 765623 | CHEVROLET | SILVERADO | 2001 | 2002-07-24 | NO AIRBAGS DEPLOYED DURING FRONTAL COLLISION AT 40 MPH CRASH. OCCUPANT OF OTHER VEHICLE HAD TO BE EXTRACATED FROM HER VEHICLE AND LIFE FLIGHTED TO MEDICAL FACILITY.*AK |
| 894462 | CHEVROLET | SILVERADO | 2001 | 2001-08-04 | CONSUMER'S VEHICLE REAR ENDED A BIG WEIGHT TRUCK AT  APPROXIMATELY 65 MPH, AND NEITHER DRIVER'S SIDE NOR PASSENGER'S SIDE AIRBAGS DEPLOYED. DEALER  HAS BEEN EXAMINING THE VEHICLE.*AK |
| 896975 | CHEVROLET | SILVERADO | 2001 | 2001-09-22 | WHILE TRAVELING APPROXIMATELY 55 MPH,  VEHICLE REAR ENDED A U-HAUL TRUCK THAT WAS ALSO IN MOTION.  APPROXIMATELY $4600.00 DAMAGE WAS DONE TO THE FRONT END OF VEHICLE, AND AIR BAGS FAILED TO DEPLOY.  DEALERSHIP STATED THAT AIR BAGS FAILED TO DEPLOY BECAUSE BOTH VEHICLES WERE IN MOTION.  PLEASE PROVIDE ANY ADDITIONAL INFORMATION / ATTACHMENTS.  *NOTE: DRIVER OF VEHICLE SUFFERED ARM, WRIST, AND LEG INJURIES.*AK |
| 899261 | CHEVROLET | SILVERADO | 2001 | 2001-10-11 | WHILE OPERATING VEHICLE IN WET ROAD CONDITIONS, AND TRAVELING APPROXIMATELY 50 TO 55 MPH VEHICLE HYDROPLANED AND CRASHED INTO A CEMENT BARRIER.  BOTH FRONTAL AIR BAGS FAILED TO DEPLOY.  NO EXAMINATION OF THE VEHICLE HAS TAKEN PLACE TO DETERMINE A CAUSE FOR THIS PROBLEM. *NOTE:  DRIVER RECEIVED SEVERE FACIAL INJURIES.  PLEASE PROVIDE ANY ADDITIONAL INFORMATION / DOCUMENTATION.  *AK |
| 8001948 | CHEVROLET | SILVERADO | 2001 | 2002-01-07 | VEHICLE WAS INVOLVED IN  20-25 MPH FRONTAL COLLISION IN WHICH DRIVERS AND PASSENGERS AIR BAGS DID NOT DEPLOY, CAUSE UNKNOWN, DEALER HAS BEEN NOTIFIED. *AK*SLC |
| 8002768 | CHEVROLET | SILVERADO | 2001 | 2002-01-16 | FRONTAL IMPACT AT 65MPH TOTALLED VEHICLE; UPON IMPACT, AIR BAGS DIDN'T DEPLOY. DELAER WAS NOTIFIED.*AK |
| 8004056 | CHEVROLET | SILVERADO | 2001 | 2002-02-05 | CONSUMER HAD A HEAD-ON COLLISION AT 55 MPH AND NEITHER AIRBAG DEPLOYED. DRIVER AND PASSENGER SUFFERED CHEST/NECK AND LEG INJURIES.  VEHICLE WAS TOTALLED.*AK  CONSUMER STATES THAT A PERSON FROM THE OTHER VEHICLE WAS KILLED IN THE ACCIDENT.  *SLC |
| 8004268 | CHEVROLET | SILVERADO | 2001 | 2002-02-17 | WHILE DRIVING AT 55 MPH  CONSUMER'S VEHICLE RAN INTO ANOTHER VEHICLE HEAD-ON, BUT NONE OF AIR BAGS DEPLOYED. HAS NOT CONTACTED DEALER.*AK |
| 8005327 | CHEVROLET | SILVERADO | 2001 | 2002-02-27 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION OF APPROXIMATELY  50 MPH, AND NEITHER FRONTAL AIR BAG DEPLOYED. DEALER / MANUFACURER WERE NOTIFIED. FEEL FREE TO PROVIDE ANY FURTHER INFORMATION.*AK |
| 8006559 | CHEVROLET | SILVERADO | 2001 | 2002-03-23 | CONSUMER STATES WHILE DRIVING 30-35 MPH WITHOUT WARNING OCCURRED IN A FRONTAL COLLISION THE AIR BAGS NOT DEPLOY CAUSING MINOR INJURIES.  NLM |
| 8009248 | CHEVROLET | SILVERADO | 2001 | 2002-03-06 | WHILE TRAVELING ON HIGWAY HIT ANOTHER VEHICLE/ VEHICLE IN ANOTHER LANDE TO OVOID CAR HE HIT AND RAN INTO MERIDIAN STRIP. UPON IMPACT,  DUAL AIRBAGS DIDN'T DEPLOY. DEALERSHIP  WASAWARE OF PROBLEM.*AK |
| 8012069 | CHEVROLET | SILVERADO | 2001 | 2002-06-08 | WHILE DRIVING TRUCK AT 40 MPH  VEHICLE INVOLVED IN  A FRONTAL COLLISION  WITH ANOTHER SPEEDING VEHICLE.  UPON IMPACT, AIR BAGS FAILED TO DEPLOY.  TRUCK WAS TAKEN TO DEALERSHIP ,AND THEY INFORMED  OWNER THAT "THERE WAS NO REASON FOR AIR BAGS NOT TO DEPLOY".  PLEASE DESCRIBE DETAILS.  *AK |
| 8012818 | CHEVROLET | SILVERADO | 2001 | 2002-06-08 | IN A FRONTAL COLLISON WHILE DRIVING AT 60MPH NONE OF THE AIR BAGS DEPLOYED. VEHICLE HAD  MAJOR DAMAGE. *AK |
| 8017140 | CHEVROLET | SILVERADO | 2001 | 2002-08-18 | IN A FRONTAL COLLISION NONE OF THE AIR BAGS DEPLOYED ON IMPACT, CAUSING INJURIES TO DRIVER.*AK. ALSO THE PASSENGER WAS INJURED.*JB |
| 10001355 | CHEVROLET | SILVERADO | 2001 | | CONSUMER STATES: WHILE DRIVING AT THE SPEED OF 45MPH WAS INVOLVED IN A FRONTAL COLLISION NEITHER AIR BAG DEPLOYED. DEALER HAS BEEN NOTIFIED. PLEASE PROVIDED ANY ADDITIONAL IN FORMATION. TS |

| 10001771 | CHEVROLET | SILVERADO | 2001 | | WHILE TRAVELING AT 65 MPH, CONSUMER STATES' ANOTHER DRIVER PULLED INFRONT AND CONSUMER HIT THAT VEHICLE ON ITS SIDE.  NONE OF THE VEHICLES ARE BAGS DEPLOYED. CONSUMER FEELS THAT THIS COLLISION WAS A HARD IMPACT AND AIRBAGS SHOULD HAVE DEPLOYED. |
|---|---|---|---|---|---|
| 10006756 | CHEVROLET | SILVERADO | 2001 | 2003-01-30 | CONSUMER WAS  IN A ACCIDENT AND HIT A WALL AND THE AIR BAGS DIDN'T DEPLOY UPON CONTACT.    PH |
| 10020745 | CHEVROLET | SILVERADO | 2001 | 2003-05-23 | FRONTAL IMPACT ON FREEWAY AT 45 MPH CHEVROLET, SILVERADO 4X4 TOTALED.  AIRBAGS DID NOT DEPLOY UPON IMACT.*AK |
| 10024534 | CHEVROLET | SILVERADO | 2001 | 2002-03-12 | PROBLEM WITH AIRBAG SYSTEM ON 2001 CHEVROLET PICK UP TRUCK.  *MR  THE VEHICLE COLLIDED WITH A MOVING ANIMAL AND THE AIRBAG(S) DIDN'T DEPLOY.  (THE ANIMAL WAS ABOUT SIX HUNDRED POUNDS AND THE CONSUMER HAD DRIVEN THE VEHICLE AT A NORMAL SPEED) *SCC  *JB |
| 10041290 | CHEVROLET | SILVERADO | 2001 | 2003-10-17 | A 2001 CHEVY SILVERADO WAS STRUCK ON THE SIDE AND SENT INTO A TREE AT BETWEEN 30-35 MPH.  THERE WAS SIGNIFICANT FRONT END DAMAGE AND THE AIR BAGS DID NOT DEPLOY.  *LA |
| 10042759 | CHEVROLET | SILVERADO | 2001 | 2000-12-31 | WHILE DRIVING AT 55 MPH CONSUMER LOST CONTROL OF  VEHICLE WHILE TRAVELING UP A HILL. THEN VEHICLE STRUCK A WOODEN FENCE.  ONE BEAM OF THE FENCE CAME THROUGH THE WINDSHIELD, STRIKING THE CONSUMER IN THE HEAD, EVENTUALLY KILLING HIM. ALSO, TWO PASSENGERS SUSTAINED INJURIES.   IN THE CONFUSION, CONSUMER DEPRESSED THE GAS PEDAL INSTEAD OF THE BRAKES AND STRUCK A FIRE HYDRANT.  ALL PASSENGERS AND THE CONSUMER WERE WEARING SEAT BELTS.  HOWEVER, THE AIR BAGS DID NOT DEPLOY.  POLICE ARRIVED ON THE SCENE AND MADE A REPORT.   MANUFACTURER AND DEALER HAD BEEN NOTIFIED OF THE INCIDENT.  *AK |
| 10059656 | CHEVROLET | SILVERADO | 2001 | 2001-12-19 | LAWYER REPRESENTING CONSUMER WHO WAS INJURED WHEN THE DRIVER'S SIDE AIRBAG FAILED TO DEPLOY.  *LA  (LAWYER CLYDE JACKSON ON BEHALF OF CLIENT)* JB |
| 10072926 | CHEVROLET | SILVERADO | 2001 | 2001-12-19 | I WAS DRIVING EAST ON F.M. 356 AT ABOUT NOON. I WAS TRAVELLING ABOUT 50 MPH. A CAR TURNED IN FRONT OF ME AND I ATTEMPTED TO PASS THE CAR.  I WAS UNABLE TO DUE TO ONCOMING TRAFFIC, SO I QUICKLY RETURNED TO MY LANE.  ONE OF MY TIRES WENT OFF ONTO THE UNPAVED SHOULDER AND I WENT DOWN A SMALL EMBANKMENT.  IT WAS MUDDY SO I COULD NOT STOP.  I HIT A LARGE PINE TREE HEAD ON AND STOPPED.  BOTH OF US WERE WEARING OUR SEATBELTS.  MY AIRBAG FAILED TO DEPLOY CAUSING MY HEAD AND TORSO TO STRIKE THE STEERING WHEEL.  I SUFFERED 6TH NERVE PAULSEY AND AN ANUERISM DEVELOPED ON MY AORTA.  THE AORTA HAD TO BE SURGICALLY REPAIRED.  MY GRANDDAUGHTER'S AIRBAG HAD BEEN TURNED OFF DUE TO HER SMALL SIZE.  SHE SUFFERED A BROKEN LEG AND A SLIGHT CONCUSSION.  THE TRUCK WAS TOTALLED.  *AK |
| 10079979 | CHEVROLET | SILVERADO | 2001 | 2004-06-25 | WHILE DRIVING CONSUMER WAS TOWING A TRAILERTHE DRIVER'S SIDE REAR TIRE TREADS SEPARATED FROM THE TRAILER.  CONSUMER WAS NOT ABLE TO MAINTAIN CONTROL OF THE VEHICLE, AND COLLIDED INTO A CONCRETE BARRIER.  UPON IMPACT, BOTH FRONTAL AIR BAGS DID NOT DEPLOY.  PASSENGER SUSTAINED HEAD INJURIES, AND WAS TRANSPORTED TO A HOSPITAL BY AN AMBULANCE.  VEHICLE AND TRAILER WERE TOTALED.  *AK  *NM |
| 10103512 | CHEVROLET | SILVERADO | 2001 | 2004-12-05 | CONSUMER'S, VEHICLE WAS REAR ENDED WHILE DRIVING 50 MPH. THE VEHICLE WAS FORCE INTO A SPIN AND THEN, IT HIT A CONCRETE ROAD DIVIDER. UPON IMPACT, NEITHER FRONTAL AIR BAGS DEPLOYED.  DRIVER SUSTAINED INJURIES, AND HAD TO BE TRANSPORTED TO A LOCAL HOSPITAL. DEALER  AND  MANUFACTURER WERE  NOTIFIED.  *AK  THE CONSUMER STATED THAT THE SEAT BELT DID NOT KEEP HER FROM HITTING HER CHEST ON THE STEERING WHEEL.  AFTER THE FRONT AND THE BACK OF THE VEHICLE HIT THE CONCRETE DIVIDER THE AIR BAGS DID NOT DEPLOY. *TC |
| 10107706 | CHEVROLET | SILVERADO | 2001 | 2004-12-29 | AIR BAGS FAILED TO DEPLOY IN A 45 MPH FRONT END COLLISION ON MY 2001 CHEVROLET SILVERADO.   *NM |
| 10109017 | CHEVROLET | SILVERADO | 2001 | 2005-01-04 | WHILE TRAVELING AT 55 MPH  CONSUMER LEFT THE FREEWAY AND STRUCK A LARGE PILE OF DIRT. UPON IMPACT,  THE AIR BAGS DID NOT DEPLOY.  CONSUMER SUSTAINED HEAD  AND BACK INJURIES.   WAS TAKEN TO THE EMERGENCY ROOM.  THE VEHICLE WAS TOTALED.*AK    *AK |
| 10138394 | CHEVROLET | SILVERADO | 2001 | 2005-06-01 | THERE WAS AN ACCIDENT ON JUNE 1, 2005.  UPON IMPACT, THE DRIVER'S SIDE FRONTAL AIRBAG FAILED TO DEPLOY.  THE PASSENGER SIDE AIRBAG HAD BEEN TURNED OFF.  THE DRIVER SUSTAINED MINOR INJURIES.  THE CONSUMER REAR ENDED A TRAILER..  A POLICE REPORT WAS TAKEN.   NO AIRBAG WARNING LIGHT  CAME ON.*AK UPDATED 11/02/05. *JB |

| | | | | |
|---|---|---|---|---|
| 10553271 | CHEVROLET | SILVERADO | 2001 | 2013-11-14 | MY FIANCE AND I WERE DRIVING HOME AND AS WE ENTERED TOWN GOING APPROXIMATELY 35-45 MPH THE VEHICLE SWERVED OFF THE ROAD AND COLLIDED INTO A TELEPHONE POLE BREAKING IT IN HALF CAUSING THE TOP HALF OF THE TELEPHONE POLE TO SWING DOWN AND SMACK INTO THE WINDSHIELD. HE SMACKED HIS FACE OFF OF THE STEERING WHEEL AND I WAS LAYING DOWN ON THE SEAT AND ROLLED OFF AND BROKE THE ASHTRAY HOLDER WITH MY FACE. DURING THE IMPACT NOT A SINGLE AIRBAG DEPLOYED EVEN THOUGH THE AIRBAGS WERE ALL IN WORKING ORDER. THE IMPACT WAS SO SEVERE THAT THE TAILGATE OF THE TRUCK BENT OUTWARD, THE RADIATOR WAS RIPPED OUT FROM BENEATH THE VEHICLE AND THE FRONT PASSENGER SIDE WAS TOTALED. I WAS THEN PUT INTO A NECK BRACE, STRAPPED TO A GURNEY AND RUSHED TO THE HOSPITAL. I WILL REITERATE THE FACT THAT NONE OF THE AIRBAGS DEPLOYED CAUSING THE BOTH OF US TO BE INJURED. WE LUCKILY SURVIVED THE CRASH BUT HAD THE AIRBAGS DEPLOYED THE BOTH OF US WOULD HAVE SUFFERED MINIMAL INJURIES.   *TR |
| 10627738 | CHEVROLET | SILVERADO | 2001 | 2014-01-01 | I REAR ENDED SOMEONE GOING ABOUT 70 MPH AND MY AIR BAGS DID NOT DEPLOY. *TR |
| 560449 | CHEVROLET | SUBURBAN | 2001 | | NO DEPLOYMENT OF THE AIR BAG DURING ACCIDENT CAUSING THE CONSUMER TO JAM HIS HAND ON THE STEERING WHEEL AND TO INJURE HIS BACK.  NLM |
| 747375 | CHEVROLET | SUBURBAN | 2001 | 2001-05-24 | FRONT AIRBAGS FAILED TO DEPLOY DURING A HEAD ON COLLISION AT 30 MPH.  FINAL DAMAGE ESTIMATE UNKOWN DUE TO PENDING SAFETY INVESTIGATION. *AK |
| 879983 | CHEVROLET | SUBURBAN | 2001 | 2000-12-27 | COSNUMER WAS DRIVING AT APPROXIMATELY 35-40 MPH, WENT OFF  ROAD TO AVOID ONCOMING VEHICLE, RAN INTO DITCH HEAD ON, AND HIT A TREE. VEHICLE WAS TOTALED. UPON IMPACT, DUAL AIRBAGS DID NOT DEPLOY, CAUSING MINOR INJURIES.*AK |
| 8004064 | CHEVROLET | SUBURBAN | 2001 | 2002-02-05 | CONSUMER  HAD A FRONT COLLISION AT 35-40 MPH, AND NEITHER AIRBAG DEPLOYED. CONSUMER SUFFERED NECK/ BACK AND KNEE INJURIES. VEHICLE AT DEALERSHIP AT THIS TIME. PLEASE ADD FURTHER DETAILS.*AK |
| 8007135 | CHEVROLET | SUBURBAN | 2001 | 2001-11-26 | WHILE DRIVING AT 45 MPH CONSUMER T BONED ANOTHER VEHICLE, AND THEN SPUN OUT OF CONTROL, AND RAN INTO A DITCH.  UPON IMPACT,  NONE OF THE AIR BAGS DEPLOYED. CONTACTED DEALER, AND THE DEALER WAS NOT WILLING TO DO ANYTHING.  *AK  *YH |
| 8014347 | CHEVROLET | SUBURBAN | 2001 | 2002-07-10 | AT  45MPH VEHICLE CRASHED.  UPON IMPACT, AIRBAGS DID NOT DEPLOY. CAUSE UNKNOWN. DEALER NOTIFIED.*AK |
| 10017673 | CHEVROLET | SUBURBAN | 2001 | | THE VEHICLE WAS INVOLVED IN A FRONTAL COLLISION, AND THE NONE OF THE AIR BAGS DEPLOYED.       *JB |
| 10042734 | CHEVROLET | SUBURBAN | 2001 | 2003-09-27 | WHILE DRIVING 60 MPH VEHICLE WAS INVOLVED IN A HEAD ON COLLISION AND AIR BAGS DID NOT DEPLOY. *AK |
| 10046437 | CHEVROLET | SUBURBAN | 2001 | 2003-10-08 | WHILE DRIVING,  ANOTHER MOTORIST FAILED TO STOP AT A RED LIGHT AND THE CONSUMER HIT HIM ON THE PASSENGER'S SIDE AND THE AIR BAGS DID NOT DEPLOY.  *AK  *SC   *JB |
| 10248294 | CHEVROLET | SUBURBAN | 2001 | 2008-11-06 | TL*THE CONTACT OWNS A 2001 CHEVROLET SUBURBAN.  ON NOVEMBER 6, 2008, THE CONTACT WAS INVOLVED IN A SERIOUS CRASH.  THE AIR BAGS FAILED TO DEPLOY AND THE ENTIRE FRONT END AND PASSENGER SIDE OF THE VEHICLE WERE DAMAGED.  THE VEHICLE WAS DESTROYED.  THE CONTACT HAS PICTURES AND A POLICE REPORT.  THERE WERE NO OTHER PASSENGERS IN THE VEHICLE AND THE CONTACT WAS WEARING HER SEAT BELT AT THE TIME.  THERE WAS NO MAINTENANCE PERFORMED ON THE AIR BAGS PRIOR TO THE CRASH.  THE SPEED WAS UNKNOWN. THE FAILURE MILEAGE WAS 100,000. |
| 10335493 | CHEVROLET | SUBURBAN | 2001 | 2010-05-18 | TL*THE CONTACT OWNS A 2001 CHEVROLET SUBURBAN. THE CONTACT STATED THAT ON MAY 18, 2010, WHILE DRIVING AT 45 MPH, THE VEHICLE COLLIDED WITH AN ONCOMING VEHICLE. THE AIR BAGS DID NOT DEPLOY. THE VEHICLE SUSTAINED EXTENSIVE DAMAGES AND WAS TOWED FROM THE SCENE. THE CONTACT AND PASSENGERS SUSTAINED INJURIES AND WERE TAKEN TO THE HOSPITAL. A POLICE REPORT WAS FILED. THE CONTACT HAD NOT CALLED THE DEALERSHIP OR THE MANUFACTURER AT THE TIME OF THE COMPLAINT. THE FAILURE AND CURRENT MILEAGES WERE APPROXIMATELY 105,000. |
| 10731769 | CHEVROLET | SUBURBAN | 2001 | 2015-06-15 | MY SON WAS DRIVING AND REAR ENDED A MAN GOING APPROXIMATELY 50 MPH.  THE FRONT END SUSTAINED A GREAT DEAL OF DAMAGE, INCLUDING, BUT NOT LIMITED TO, THE ENGINE BEING PUSHED BACK SEVERAL INCHES.  THE AIR BAGS DID NOT DEPLOY.  MY SON SUSTAINED MINOR WHIPLASH TYPE INJURIES TO HIS NECK AND BACK. |
| 10731772 | CHEVROLET | SUBURBAN | 2001 | 2015-06-18 | TL* THE CONTACT OWNED A 2001 CHEVROLET SUBURBAN. WHILE DRIVING AT 55 MPH UPHILL, THE CONTACT DEPRESSED THE BRAKE PEDAL AND THE VEHICLE HYDROPLANED. AS A RESULT, THE CONTACT CRASHED INTO THE REAR OF A PICK-UP TRUCK. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED. THERE WAS ONE INJURY THAT REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS DESTROYED AND TOWED TO AN INDEPENDENT MECHANIC. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 270,000. |
| 764291 | CHEVROLET | TAHOE | 2001 | 2002-07-10 | TAHOE WAS TRAVELING UPHILL ON PRIVATE GRAVEL DRIVE WHEN HIT BY TRUCK TRAVELING DOWNHILL AROUND BLIND CURVE.  TRUCK WAS TRAVELING AT BETWEEN 20 AND 25 MPH WHEN IT HIT TAHOE.  BOTH OF TRUCK'S AIRBAGS INFLATED.  MY AIRBAGS DID NOT INFLATE, AND I HIT THE STEERING WHEEL WITH MY STOMACH AND CHEST.*AK |

| 766175 | CHEVROLET | TAHOE | 2001 | 2002-07-19 | HIT BY A RED LIGHT RUNNER (45/50MPH) ON DRIVER'S SIDE, HIT A SECOND CAR, THEN A CONCRETE POST HEAD ON.  NOT ONE OF THE FOUR AIR BAGS ENGAGED AT ANYTIME.  THE CAR WAS TOTALED.  I HAVE DOCUMENTATION, PICTURES, POLICE REPORT, AND HAVE CONTACTED CHEVY, THEY HAVE NO CLEAR RESPONSE ON WHY?  IF YOU WOULD LIKE MORE DETAIL ON INJURES OR HAVE ANY QUESTION PLEASE FILL FREE TO CONTACT ME.  THANK YOU FOR YOUR TIME, DANIELLE HURST-STONE.  *AK |
|---|---|---|---|---|---|
| 884576 | CHEVROLET | TAHOE | 2001 | 2001-03-21 | VEHICLE WAS INVOLVED IN AN ACCIDENT WHILE TRAVELING AT 50 MPH WHEN  VEHICLE T-BONED A VEHICLE CROSSING AN INTERSECTION.  AIRBAGS FAILED TO DEPLOY.  DEALERSHIP COULD NOT PROVIDE A REASON FOR FAILURE OF  AIRBAGS TO DEPLOY.  *AK  THE  MAUFACTURER INDICATED THAT THE VEHICLE SKIDDED 20 TO 25 FEET AFTER IMPACT AND THE AIR BAG FAILED TO DEPLOY FOR THIS REASON. THE CONSUMER DISAGREES.  *YH |
| 899507 | CHEVROLET | TAHOE | 2001 | 2001-11-01 | DRIVER'S SIDE AND PASSENGER'S SIDE AIRBAGS FAILED TO DEPLOY IN A FRONT END COLLISION. DEALER HAS YET TO BE CONTACTED. PLEASE PROVIDE FURTHER DETAILS.*AK |
| 8000772 | CHEVROLET | TAHOE | 2001 | 2001-12-01 | DRIVER AND PASSENGER  FRONTAL AIRBAGS FAILED TO DEPLOY WHEN CONSUMER WAS INVOLVED IN A 40MPH FRONTAL COLLISION. DEALER HAS YET TO BE CONTACTED. PLEASE PROVIDE FURTHER DETAILS.*AK |
| 8017829 | CHEVROLET | TAHOE | 2001 | 2001-09-19 | WHILE TRAVELING ONTO ON INTERSECTION ANOTHER VEHICLE RAN THE RED LIGHT AND HIT CONSUMER'S VEHICLE. UPON IMPACT, DUAL AIRBAGS DIDN'T DEPLOY.DEALERSHIP WAS AWARE OF PROBLEM.*AK  *YH |
| 8018113 | CHEVROLET | TAHOE | 2001 | 2002-04-05 | WHILE TRAVELING AT 35 MPH CONSUMER WAS HIT HEAD-ON, AND VEHICLE ALMOST TIPPED OVER.  UPON IMPACT, FRONT AIR BAGS FAILED TO DEPLOY. PLEASE PROVIDE ANY FURTHER INFORMATION.*AK |
| 10018205 | CHEVROLET | TAHOE | 2001 | 2003-05-05 | THE VEHICLE WAS INVOLVED IN A FRONTAL COLLISION, AND NONE OF THE AIR BAGS DEPLOYED. *NLM *PH *JB |
| 10044753 | CHEVROLET | TAHOE | 2001 | 2003-10-12 | WHILE DRIVING 50 MPH, THE CONSUMER'S VEHICLE WAS INVOLVED IN A HEAD ON COLLISION. UPON IMPACT, THE AIRBAGS DID NOT DEPLOY. THE DRIVER SUSTAINED SEVERE HEAD INJURIES AND  WAS TAKEN TO A HOSPITAL. *AK  *JB  *NM |
| 10046166 | CHEVROLET | TAHOE | 2001 | 2003-08-03 | WHILE DRIVING 40 MPH DRIVER HIT THE BRAKES SUDDENLY AND VEHICLE HIT THE CURB AND ROLLED TWICE. UPON IMPACT, AIRBAGS DID NOT DEPLOY.  PEOPLE WERE EJECTED FROM THE VEHICLE. AS A RESULT,THEY DIED. *AK |
| 10066520 | CHEVROLET | TAHOE | 2001 | 2004-04-12 | FRONTAL AIRBAGS DID NOT DEPLOY IN COLLISION. *AK |
| 10072577 | CHEVROLET | TAHOE | 2001 | 2004-04-30 | I WAS DRIVINEG ON THE FREEWAY. THE CRUISE CONTROL WAS SET AT 70 MPH. IT WAS RAINING I WENT THROUGH A PUDDLE AND THE CAR HYDROPLANED AND HEADED TOWRD THE CONCRETE MEDIAN, IT WOULD NOT STRAIGHTEN AND I HIT THE MEDIAN HEAD ON.  THE AIRBAGS DID NOT DEPLOY.*AK |
| 10148912 | CHEVROLET | TAHOE | 2001 | 2004-12-06 | HEAD-ON COLLISION AT 50 MPH AND AIRBAGS DID NOT INFLATE.*AK |
| 10197689 | CHEVROLET | TAHOE | 2001 | 2003-11-03 | DRIVING IN LARGE PARKING LOT APPROX 25 MPH, LIGHT POLE WITH CONCRETE BASE WAS IN BLIND SPOT AS I WAS TURNING.  HIT THE CONCRETE HEAD ON, $12,000 WORTH OF DAMAGE TO MY TRUCK, FRAME BENT, FRONT END REPLACED AND THE AIR BAGS FAILED TO DEPLOY.  THE DEALER HAD NO EXPLANATION OTHER THAN THE DAMAGE MUST HAVE BEEN IN JUST THE WRONG SPOT.  I WENT TO THE HOSPITAL WITH HEAD AND NECK INJURIES. *JB |
| 10223626 | CHEVROLET | TAHOE | 2001 | 2008-03-28 | AIRBAGS FAILED TO DEPLOY IN HEAD-ON CRASH.  *TR |
| 10365882 | CHEVROLET | TAHOE | 2001 | 2010-11-12 | I WAS INVOLVED IN A COLLISION IN MY 2001 CHEVROLET TAHOE WHERE I REAR ENDED A CAR. MY VEHICLE WAS TRAVELING 54 MPH AND  THE OTHER VEHICLE WAS SLOWING TO TURN WITHOUT BLINKERS OR BRAKE LIGHTS. MY AIRBAGS DID NOT DEPLOY. *TR |
| 10607227 | CHEVROLET | TAHOE | 2001 | 2007-07-04 | A VEHICLE PULLED IN FRONT OF US AND OUR VEHICLE T BONED THAT VEHICLE.  NONE OF ARE AIR BAGS DEPLOYED.  WE WERE INJURED.  THAT PERSON'S INSURANCE COMPANY CONTACTED US THE DAY AFTER THE ACCIDENT AND QUESTIONED WHY THE AIR BAGS DID NOT COME OUT?  WE WANTED TO KNOW WHY ALSO.  *TR |
| 10783656 | CHEVROLET | TAHOE | 2001 | 2015-10-16 | THE VEHICLE AIRBAGS FAILED TO DEPLOY IN ACCIDENT WERE IT RECEIVED SEVERE FRONT END DAMAGE. |
| 10820375 | CHEVROLET | TAHOE | 2001 | 2014-01-18 | TL* THE CONTACT OWNS A 2001 CHEVROLET TAHOE. WHILE DRIVING AT 45 MPH, ANOTHER VEHICLE FAILED TO YIELD AND THE CONTACT CRASHED INTO THE DRIVER SIDE OF THAT VEHICLE. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT DID NOT SUSTAIN ANY INJURIES. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO AN AUTO BODY REPAIR CENTER FOR BODY REPAIRS, BUT WAS NOT DIAGNOSED FOR THE AIR BAG FAILURE. THREE YEARS LATER, WHILE DRIVING 25 MPH, THE CONTACT CRASHED INTO AN ANIMAL AND THEN INTO A GUARDRAIL. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED BACK INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO AN AUTO BODY REPAIR CENTER, BUT WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 120,000. THE VIN WAS UNAVAILABLE. |
| 891862 | CHEVROLET | TRACKER | 2001 | 2001-07-02 | WHILE TRAVELING  AT 45 TO 50 MPH ANOTHER  VEHICLE IN FRONT SLAMMED ON   VEHICLE'S BRAKES, AND CONSUMER'S VEHICLE REAR ENDED THE OTHER VEHICLE.   NONE OF AIRBAGS DEPLOYED, AND  DRIVERS SIDE SEATBELT FAILED TO LOCK. CONSUMER WAS INJURED BY STEERING WHEEL.  CONSUMER HAD VEHICLE TOWED TO DEALER. PLEASE PROVIDE ANY FURTHER INFORMATION.*AK |
| 8011220 | CHEVROLET | TRACKER | 2001 | 2002-05-28 | IN AN ACCIDENT, VEHICLE HIT A POLE AND UPON IMPACT AIRBAGS DID NOT DEPLOY, CAUSING MINOR INJURIES TO DRIVER.*AK  *YH |

| | | | | | |
|---|---|---|---|---|---|
| 10033620 | CHEVROLET | TRACKER | 2001 | 2003-08-11 | CONSUMER STATED WHILE DRIVING  AT NORMAL SPEED AND WEARING  SEAT BELT HAD A FRONT COLLISION ,AND NEITHER OF THE AIR BAGS DEPLOYED. NO WARNING LIGHT APPEARED  PRIOR TO THE CRASH. POLICE REPORT AND PICTURES ARE AVAILABLE. *AK |
| 10033912 | CHEVROLET | TRACKER | 2001 | | WHILE DRIVING 50 MPH  DRIVER STRUCK A DEER HEAD ON.  UPON IMPACT,  DRIVER SIDE AIRBAG DIDN'T DEPLOY.  THE DRIVER SUSTAINED SLIGHT INJURIES FROM MAKING CONTACT WITH THE STEERING WHEEL. *AK |
| 10226797 | CHEVROLET | TRACKER | 2001 | 2008-04-17 | TL*THE CONTACT OWNS A 2001 CHEVROLET TRACKER.  WHILE DRIVING 40 MPH ON A MAJOR HIGHWAY, THE CONTACT CRASHED INTO ANOTHER VEHICLE THAT WAS STOPPED IN THE ROAD. THE AIR BAGS FAILED TO DEPLOY.  THE VEHICLE WAS DESTROYED.  THE CONTACT WAS INJURED AND TRANSPORTED TO THE HOSPITAL.  A POLICE REPORT WAS FILED.  THE CURRENT AND FAILURE MILEAGES WERE 130,000. |
| 10263033 | CHEVROLET | TRACKER | 2001 | 2009-02-01 | DRIVER OF VEHICLE WHILE TRAVELING 35 MPH HIT A FORD F150 THAT MADE A U-TURN FROM THE RIGHT SHOULDER OF THE ROAD. DRIVER DID NOT HAVE TIME TO HIT BRAKES. AIRBAG DID NOT DEPLOY. DRIVER WAS INJURED. *TR |
| 10298267 | CHEVROLET | TRACKER | 2001 | 2010-01-03 | AIRBAG DID NOT DEPLOY ON CHEVY TRACKER 2001 AFTER BEING REAR ENDED AT 100 MPH WHILE TRAVELING AT A SPEED OF 69 MPH AND HIT THE CENTER DIVIDER HEAD ON. *TR |
| 8014453 | CHEVROLET | TRAILBLAZER | 2001 | | AT A 25MPH VEHICLE CRASHED AND AIRBAGS DID NOT DEPLOY. CAUSE UNKNOWN DEALER NOTIFIED.*AK |
| 8018335 | CHEVROLET | TRAILBLAZER | 2001 | | WHILE DRIVING APPROXIMATELY 58 MPH IN RAINY WEATHER WITH A TRAILER ATTACHED, TRAILER STARTED TO FISHTAIL WHILE GOING DOWN HILL.  TRAILER HAD SWUNG AROUND AND BROKE FREE OF THE HITCH AND HIT THE SIDE OF  TRUCK.  TRUCK GRAZED AN ENBANKMENT, AND WENT INTO THE MEDIUM STRIP, HITTING ANOTHER VEHICLE HEAD ON.  VEHICLE WAS TOTALED, AND DRIVER SUFFERED A HEAD INJURY AND FRACTURED VERTEBRATE.  NEITHER AIR BAG DEPLOYED UPON THE FRONTAL IMPACT.  PLEASE DESCRIBE DETAILS. *AK |
| 566304 | GMC | YUKON | 2001 | | THE VEHICLE HAS BEEN INVOLVED IN TWO ACCIDENTS IN WHICH NEITHER TIME DID THE AIR BAGS DEPLOY,DURING ONE ACCIDENT THE CONSUMER SAYS SHE ALSO DOESNT REMEMBER THE SEAT BELT TIGHTENING CAUSING HER TO STRICK HER HEAD ON THE STEERING WHEEL AND KNEES TO HIT THE DASH. *MJ |
| 878870 | GMC | YUKON | 2001 | 2000-12-23 | VEHICLE INVOLVED IN A FRONTAL COLLISION AT APPROXIMATELY 75 MPH WITH A FORD ESCORT. UPON IMPACT,  BOTH AIR BAGS DID NOT DEPLOY. PASSENGER SUSTAINED A BACK INJURY, AND DRIVER RECEIVED BRUISES TO  NECK AND HEAD. DEALER NOTIFIED.  FEEL FREE TO PROVIDE ANY FURTHER DETAILS ON THIS MATTER.  *AK |
| 883017 | GMC | YUKON | 2001 | 2000-10-17 | VEHICLE INVOLVED IN A FRONTAL COLLISION WITH A DODGE, NEON , SPEED WAS UNDETERMINED. UPON IMPACT,  BOTH AIR BAGS DID NOT DEPLOY.  DEALER / MANUFACTURER NOTIFIED, AND NO RESPONSE WAS RECEIVED. PLEASE FEEL FREE TO PROVIDE ANY FURTHER DETAILS ON THIS MATTER. *AK |
| 6900594 | GMC | YUKON | 2001 | 2001-09-18 | WHILE DRIVING VEHICLE WAS INVOLVED IN AN ACCIDENT, AIR BAGS DID NOT DEPLOY.  *AK THE CONSUMER STATED THAT THE VEHICLE WAS HIT VERY HARD.  THE IMPACT DAMAGED THE INSTRUMENT PANEL, BROKE THE WINDSHIELD, AND THE FRONT AND REAR PASSENGER DOORS NEEDED REPAIR.  *YH |
| 8004110 | GMC | YUKON | 2001 | | CONSUMER WAS INVOLVED IN A FRONT END COLLISION AT 70MPH, AND FRONTAL  AIR BAGS DID NOT TO DEPLOY. PASSENGER SUSTAINED  MAJOR BODY INJURIES.*AK |
| 8004365 | GMC | YUKON | 2001 | 2001-12-04 | WHILE DRIVING 2 MPH VEHICLE WAS STRUCK ON DRIVER'S DOOR,  CAUSING EXTENSIVE DAMAGE TO FRONT END AS WELL. NEITHER AIRBAG DEPLOYED. CONSUMER SUFFERED HEAD INJURIES. DAMAGE TO VEHICLE WAS $ 10000.00. PRIOR TO THIS, CONSUMER OWNED ANOTHER VEHICLE JUST LIKE THIS ONE.  IT ALSO HAD A FRONT CRASH AND AIRBAGS DID NOT DEPLOY. *AK |
| 8006721 | GMC | YUKON | 2001 | 2002-03-30 | WHILE TURNING LEFT AT 15 MPH\  ANOTHER VEHICLE TRAVELING AT 45 HIT CONSUMER'S VEHICLE ON FRONT DRIVER'S SIDE .  UPON IMPACT,  AIRBAGS DID NOT  DEPLOY.  PLEASE PROVIDE ANY FURTHER INFORMATION.*AK |
| 10099161 | GMC | YUKON | 2001 | 2004-11-01 | THE CONSUMER WAS APPROACHING AN INTERSECTION AND WITHOUT WARNING,  ANOTHER DRIVER CUT IN FRONT OF THE CONSUMER VEHILCE.  THE DRIVER APPLIED THE BRAKES, BUT THE PEDAL WENT TO THE FLOOR.  THIS CAUSED THE OTHER VEHICLE TO COLLIDE INTO ON THE PASSENGER 'S SIDE AND PUSHED THE VEHICLE INTO A TREE.  BOTH FRONTAL AIR BAGS DID NOT DEPLOY.  THE DRIVER SUSTAINED INJURIES AND WAS TRANSPORTED BY AMBULANCE TO THE HOSPITAL.  THE VEHICLE WAS TOWED TO THE DEALER.  PLEASE FILL IN ADDITIONAL INFORMATION. *JB |
| 10187683 | GMC | YUKON | 2001 | 2007-03-29 | TL* - THE CONTACT OWNS A 2001 GMC YUKON WITH A CURRENT AND FAILURE MILEAGE OF 110,000 MILES.  THE CONTACT'S VEHICLE WAS INVOLVED IN A CRASH WHILE DRIVING AT 35 MPH, AND THE AIR BAGS DID NOT DEPLOY.  THE CRASH TOOK PLACE ON A DRY DAY.  THE DRIVER BEGAN CHOKING AND PASSED OUT.  THE VEHICLE THEN RAN INTO THE BACK OF A TRUCK SITTING AT A STOP LIGHT.  THE FRONT OF THE CONTACTS VEHICLE WAS DAMAGED.  THE VEHICLE WAS TOWED TO DEALER.  *AK |
| 10587988 | GMC | YUKON | 2001 | 2011-05-04 | LETTER FROM SENATOR SCOTT ON BEHALF OF CONSTITUENT RE GMC YUKON. *SMD  THE CONSUMERS HUSBAND WAS KILLED IN AN ACCIDENT, AND THE AIR BAG DID NOT DEPLOY. *JB |

| 10706540 | GMC | YUKON XL | 2001 | 2014-10-17 | INITIALLY TRAVELING AT 75 MPH N/B ON HWY 99 IN FRESNO COUNTY, LOST VISION (MEDICAL INCIDENT), WIFE INSISTED I PULL OVER. STRUCK GUARD RAIL ON RIGHT SIDE OF ROAD. SECOND TRY TO PULL OVER CAUSED MY VEHICLE TO IMPACT A VERIZON JUNCTION BOX AND THEN150 FEET OF SIX-FOOT CHAIN-LINK FENCE WITH ANTI-CLIMB GUARDS THAT CAME OFF THE FENCE AND SHATTERED THE WINDSHIELD.  THE AIR BAGS DID NOT DEPLOY.  MY INSURANCE AGENT TOLD ME HE WAS GOING TO REPORT THIS INCIDENT TO YOU, BUT SINCE I HAVEN'T HEARD ANYTHING FROM YOU FOLK I'VE ASSUMED MY AGENT DID NOT FOLLOW THROUGH.   MY WIFE AND I SUSTAINED ONLY MINOR INJURIES FROM FLYING GLASS.  WE HAVE PHOTO'S OF THE VEHICLE.  *TR |
| 10127108 | ISUZU | RODEO | 2001 | 2005-06-30 | DT: THERE WAS AN ACCIDENT  AND NO AIRBAGS DEPLOYED. THE CAR WAS EQUIPPED WITH FRONT AIR BAGS. THERE WAS NO WARNING LIGHTS ON TO INDICATE A PROBLEM. LAST TIME THE CAR WAS CHECKED THERE WAS NO INDICATION OF A PROBLEM. THE DRIVER WAS THE ONLY PERSON INJURED WITH A TOOTH KNOCKED OUT.*AK |
| 10155648 | ISUZU | RODEO | 2001 | 2006-03-11 | I HAD A BLOW OUT ON MY 2001 ISUZU RODEO, CAUSING MY VEHICLE TO GO OFF THE ROAD TO THE RIGHT RUNNING INTO ANOTHER VEHICLE. THE SEAT BELT CAME OFF, THE AIRBAGS DID NOT WORK. I SUSTAINED HEAD INJURIES CAUSING SEIZURES, A DISPLAYED SHOULDER, AND A FRACTURED JAW. DUE TO THE HEAD INJURIES I WAS UNCONSCIOUS AND UNABLE TO KEEP CONTROL OF THE VEHICLE. *NM |
| 10196817 | ISUZU | RODEO | 2001 | 2007-07-12 | TL*THE CONTACT OWNS A 2001 ISUZU RODEO.  WHILE DRIVING 65 MPH WITH THE CRUISE CONTROL ACTIVATED, THE CONTACT WAS INVOLVED IN A HIGH IMPACT VEHICLE CRASH. THE MEDIAN ON THE HIGHWAY SUSTAINED PROPERTY DAMAGE.  THE VEHICLE WAS DESTROYED.  THE AIR BAGS FAILED TO DEPLOY.  THE DEALER HAS NOT BEEN NOTIFIED.  THE CONTACT SUSTAINED MODERATE INJURIES TO HIS NECK AND SHOULDERS.  A POLICE REPORT WAS FILED.  THE CURRENT AND FAILURE MILEAGES WERE 97,000.  THE CONSUMER PROVIDED PICTURES OF THE VEHICLE. UPDATED 09/06/07 *TR |
| 10569283 | ISUZU | RODEO | 2001 | 2014-03-13 | I WAS TURNING ONTO A STREET. THE STREET WAS COVERED IN OIL OR SOME TYPE OF SLICK ELEMENT. I SKIDDED AND FELL INTO A DITCH. MY AIRBAG DID NOT DEPLOY. *TR |
| 10001710 | CADILLAC | ESCALADE | 2000 | 2002-12-05 | WHILE DRIVING AT 30 MPH VEHICLE WAS INVOLVED IN A HEAD ON COLLISION AND AIRBAGS DID NOT DEPLOY. DEALER CONTACTED. PLEASE PROVIDE ADDITIONAL INFORMATION. TS |
| 10004423 | CADILLAC | ESCALADE | 2000 | 2002-12-11 | THE CONSUMER HAD AN ACCIDENT THE AIR BAG DIDN'T DEPLOY.  *DT |
| 859836 | CHEVROLET | ASTRO | 2000 | 2000-04-04 | CONSUMER WAS TRAVELING 30MPH WHILE IT WAS RAINING THAT EVENING, AND THERE WAS A SCHOOL BUS IN FRONT OF CONSUMER'S VEHICLE.  CONSUMER APPLIED  BRAKES AND HIT THE SCHOOL BUS FROM BEHIND.  THE COLLISION IMPACT WAS SO HARD THAT VEHICLE MOVED THE SCHOOL BUS.  ALSO, THE DUAL AIRBAGS DIDN'T DEPLOY AT ALL.  *AK |
| 870742 | CHEVROLET | ASTRO | 2000 | 2000-09-01 | WHILE DRIVING 55 MPH AND MAKING A TURN HAD A FRONTAL IMPACT.  FRONT BUMPER WAS SMASHED AND FELL OFF. ALSO,  DRIVER'S AND PASSENGER'S AIRBAGS DID NOT DEPLOY, WHICH DID NOT PROTECT  OCCUPANTS IN THIS CRASH.  DEALER WAS NOT WILLING TO ASSIST CONSUMER.  PLEASE PROVIDE FURTHER INFORMATION.*AK |
| 878344 | CHEVROLET | ASTRO | 2000 | 2001-01-17 | WHILE DRIVING ABOUT 30 MPH CRASHED INTO  ANOTHER VEHICLE THAT CROSSED IN FRONT. UPON IMPACT,  BOTH AIR BAGS FAILED TO  DEPLOY.  CURRENTLY,  COMPANY WAS CONCERNED ABOUT  PROBLEM WITH  AIR BAGS.  *AK |
| 879113 | CHEVROLET | ASTRO | 2000 | 2000-12-11 | A FRONTAL COLLISION AT 20 MPH IMPACT WITH A TREE, AND  BOTH AIR BAGS DID NOT DEPLOY. DRIVER  SUSTAINED  CHEST INJURY. VEHICLE AT BODY SHOP.  PLEASE FEEL FREE TO PROVIDE ANY FURTHER DETAILS ON THIS MATTER.  *AK |
| 882467 | CHEVROLET | ASTRO | 2000 | | CONSUMER WAS INVOLVED IN A FRONTAL COLLISION IN WHICH  DRIVER'S AND PASSENGER'S AIR BAGS DID NOT DEPLOY.  PLEASE GIVE ANY FURTHER DETAILS.*AK |
| 8000775 | CHEVROLET | ASTRO | 2000 | 2001-12-12 | WHILE TRAVELING AT 65 MPH, CONSUMER RAN INTO THE SIDE OF ANOTHER VEHICLE, HEAD-ON, UPON IMPACT NEITHER AIR BAG DEPLOYED, CONSUMER CONTACTED DEALER, AND THEY WERE NOT WILLING TO DO ANYTHING.  *AK *JG |
| 8001716 | CHEVROLET | ASTRO | 2000 | 2002-01-01 | CONSUMER HAD A HEAD ON COLLISION AND AIR BAGS DID NOT DEPLOY.   CONSUMER WAS INJURED.  *AK  *JB |
| 8022460 | CHEVROLET | ASTRO | 2000 | 2002-11-07 | CONSUMER STATES THAT WHILE ON AN EXPRESS WAY, CONSUMER REAR ENDED A TANKER TRUCK. CONSUMERS VEHICLE WAS TOTALLED.  CONSUMER  STATES' NONE OF THE VEHICLES AIRBAGS DEPLOYED. PLEASE PROVIDE ANY FURTHER INFORMATION.      TS |
| 10051329 | CHEVROLET | ASTRO | 2000 | 2003-12-16 | CHECY ASTRO CARGO VAN 2000, FRONTAL COLLISION RESULTING IN TOTAL LOSS BY INSURANCE CARRIER. NEITHER FRONT AIR BAG OPERATED. |
| 736342 | CHEVROLET | BLAZER | 2000 | 2000-07-21 | IN A HEAD-ON COLLISION WITH A GUARDRAIL, BOTH FRONT AIR BAGS FAILED TO DEPLOY.*AK |
| 877186 | CHEVROLET | BLAZER | 2000 | | CONSUMER WAS DRIVING AT APPROXIMATELY 30-35 MPH ,AND TO AVOID A CRASH CONSUMER RAN INTO A TREE HEAD-ON. UPON IMPACT,  DUAL AIRBAGS DID NOT DEPLOY, CAUSING INJURIES.*AK |
| 8013283 | CHEVROLET | BLAZER | 2000 | 2002-07-02 | CONSUMER STATES AT A 25MPH VEHICLE CRASHED, HOWEVER THE AIRBAGS DID NOT DEPLOY. CAUSE UNKNOWN. DEALER NOTIFIED.*JB  CONSUMER ADDS VEHICLE WAS STRUCK HEAD ON BY AN OUT OF CONTROL VEHICLE TRAVELING 45 MILES.  THE RIGHT FRONT FENDER CONTACTED SQUARELY AGAINST CONSUMERS FRONT BUMPER.  RESULTING IMPACT TOTALLED CONSUMERS BLAZER.  INSPECTORS WERE AMAZED THAT AIR BAGS DID NOT DEPLOY.  *TT |
| 8014195 | CHEVROLET | BLAZER | 2000 | | WHILE DRIVING 25-30 MPH AND WITHOUT WARNING INVOLVED IN A HEAD-ON COLLISION. UPON IMPACT, AIR BAGS DID NOT DEPLOY. DEALER HAS BEEN NOTIFIED.*AK THERE WERE 2 INJURIES. *YH |

| 8015817 | CHEVROLET | BLAZER | 2000 | | WHILE DRIVING 25 MPH  ANDWITHOUT WARNING A HEAD ON COLLISION OCCURRED. UPON IMPACT,  AIR BAGS DID NOT DEPLOY, AND DRIVER SUSTAINED  MINOR INJURIES.*AK |
| 8022825 | CHEVROLET | BLAZER | 2000 | 2002-11-01 | FRONT CRASH AT 40 MPH, VEHICLE HIT A TREE. NEITHER AIRBAG DEPLOYED, DRIVER SUFFERED MINOR INJURIES. AMOUNT OF DAMAGE UNKNOWN AT THIS TIME.     TS |
| 10006273 | CHEVROLET | BLAZER | 2000 | 2003-02-01 | VEHICLE WAS IN A FRONTAL COLLISION, BUT NONE OF THE AIRBAG DEPLOYED UPON IMPACT.   THE DRIVER SUSTAINED HEAD,NECK AND BACK INJURIES. PLEASE PROVIDE MORE DETAILS. |
| 10014969 | CHEVROLET | BLAZER | 2000 | 2003-03-15 | THE VEHICLE WAS INVOLVED IN A FRONTAL ACCIDENT, AND NONE OF THE AIR BAGS DEPLOYED. *JB |
| 10015762 | CHEVROLET | BLAZER | 2000 | 2003-04-12 | WHILE DRIVING 45 MPH THE VEHICLE WAS INVOLVED IN A COLLISION BUT THE AIR BAGS DID NOT DEPLOY.  *NLM |
| 10016961 | CHEVROLET | BLAZER | 2000 | 2003-04-08 | HEAD ON COLLISION WITH SOLID CEMENT BRIDGE AT 40+ MPH.  AIR BAGS DID NOT DEPLOY, SEAT BELTS DID NOT LOCK IN PLACE ON IMPACT NOR DURING ROLL OVER ON MY 2000 CHEVY BLAZER. *JB |
| 10059300 | CHEVROLET | BLAZER | 2000 | 2004-02-07 | WHILE DRIVING 45 MPH THE DRIVER DROVE OVER SOME BLACK ICE AND LOST CONTROL OF THE VEHICLE.  THE VEHICLE RAN INTO AN EMBANKMENT HEAD ON. THE CONSUMER STATED THAT NEITHER OF THE FRONTAL AIR BAGS DEPLOYED.  THE CONSUMER CONTACTED THE DEALER.  *NM |
| 10106730 | CHEVROLET | BLAZER | 2000 | 2004-12-14 | WHILE DRIVING 55 MPH THE CONSUMER WAS INVOLVED IN  FRONTAL COLLISION. UPON IMPACT, THE AIR BAGS DID NOT DEPLOY.  THE DRIVER SUSTAINED MAJOR  NECK,BACK , AND HIP INJURIES. THE VEHICLE WAS TOTALED.  *AK  (SEE ALSO ODI REF. NO. 10106755 - SAME VEHICLE) *MJJ   *TC |
| 10108627 | CHEVROLET | BLAZER | 2000 | 2005-01-18 | THE TRUCK SLID ON A PATCH OF ICE 100 YARDS AFTER MERGING ONTO THE INNER STATE. THIS RESULTED IN THE CONSUMER LOSING CONTROL OF THE TRUCK. THE TRUCK FRONT DRIVER SIDE IMPACTED A CONCRETE BRIDGE; THEN SWUNG AROUND;THE REAR DRIVER SIDE HIT THE BRIDGE; THIS THREW THE TRUCK INTO THE RIGHT HAND LANE, INTO THE GUARD RAIL , IMPACTING THE FRONT PASSENGER SIDE; THEN THE TRUCK BOUNCED TO THE LEFT HAND LANE AND IMPACTED THE GUARD RAIL HEAD ON. NONE OF THE AIR BAGS DEPLOYED UPON IMPACT. THE DRIVER SUSTAINED SEVERE INJURIES TO THEIR NECK, BACK, AND LEFT SHOULDER.  *NM |
| 10132243 | CHEVROLET | BLAZER | 2000 | 2005-08-06 | T-BONE COLLISION, APPROXIMATELY 45 MPH. FRONT END OF VEHICLE BADLY DAMAGED. NO AIRBAG DEPLOYMENT.  *NM |
| 10226626 | CHEVROLET | BLAZER | 2000 | 2008-04-30 | THE CONTACT'S SPOUSE OWNS THE 2000 CHEVROLET BLAZER.  THE CONTRACT STATE THAT THIS DAUGHTER WAS DRIVING APPROXIMATELY 30 MPH, THEN SHE HIT A DIVIDER AND THE VEHICLE ROLLED OVER SEVERAL TIMES LANDING ON THE DRIVERS SIDE OF THE VEHICLE.  NEITHER AIR BAR DEPLOYED.  THE DRIVER WAS INJURIES AND THE VEHICLE WAS TOTALED BY THE INSURANCE COMPANY.  THE CURRENT AND FAILURE MILEAGE IS 85210.  JP |
| 10609197 | CHEVROLET | BLAZER | 2000 | 2013-07-10 | HAD A FRONT END COLLISION. THE FRONT END WAS DESTROYED. NO AIR BAGS WENT OFF. BOTH VEHICLES CAME OFF A RED LIGHT, ALL VEHICLES STOPPED SUDDENLY AND MY TEUCK REAR ENDED A TOYOTA PICKUP.  *TR |
| 10693647 | CHEVROLET | BLAZER | 2000 | 2015-01-31 | TL* THE CONTACT OWNED A 2000 CHEVROLET BLAZER. WHILE DRIVING AT APPROXIMATELY 45 MPH, THE VEHICLE CRASHED HEAD ON INTO ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED AND NO INJURIES WERE REPORTED. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 120,650. |
| 731125 | CHEVROLET | SILVERADO | 2000 | 1999-10-23 | A CAR ATTEMPTED TO TURN IN FRONT OF US, HE DID NOT MAKE IT. WE WERE TRAVELING BETWEEN 38-40 MPH WHEN WE HIT THE OTHER VEHICLE HEAD ON.  AIRBAGS DID NOT DEPLOY ON EITHER SIDE OF THE VEHICLE.  THE TRUCK WAS TOTAL LOSS.  THE OTHER PARTY'S VEHICLE ALSO WAS A. *AK |
| 734605 | CHEVROLET | SILVERADO | 2000 | 2000-09-19 | I CONTACTED SARAH SCHILLE OF GENERAL MOTORS ABOUT THIS FAILURE.SHE SENT AN INVESTIGATOR TO TOM BENSON TO LOOK AT THE TRUCK. HE DID WHATEVER HE DOES TO COLLECT DATA FROM THE VEHICLE AND THEN TAKES PICTURES ETC. AND SENDS ALL OF THE INFORMATION TO GM FOR EVALUATION. I FEEL THIS ACCIDENT WAS SEVERE ENOUGH FOR THE AIRBAGS DEPLOY AND I'M NOT SATISFIED AT ALL WITH GM'S RESPONSE TO THE SITUATION. I REQUESTED THE REPORT AND A COPY OF THE DEPLOYMENT CRITERIA FOR THE AIRBAGS I WAS TOLD THAT INFORMATION WILL NOT BE SUPPLIED. HOW AM I TO KNOW IF THIS IS A FAILURE OR NOT. THIS INFORMATION SHOULD NOT BE PRIVATE TO THE MANUFACTURER ONLY. I WANT SOMEONE TO LOOK INTO THIS PROBLEM. |
| 739117 | CHEVROLET | SILVERADO | 2000 | 2001-01-02 | HIT A GUARD RAIL HEAD ON, WENT OVER IT AND NOSE DIVED INTO A 10FT. DEEP DITCH, FLIPPING ONTO THE ROOF.  NEITHER AIRBAG DEPLOYED AFTER HITTING THE FRONT END TWICE.*AK |
| 745943 | CHEVROLET | SILVERADO | 2000 | 2001-05-19 | MY 2000 CHEVROLET SILVERADO TRUCK WAS INVOLVED IN A HEAD-ON COLLISION ON MAY 19, 01. VEHICHLE WAS TRAVELING AT APPROXIMATELY 40 MPH. WHEN VEHICHLE WAS STRUCK HEAD-ON AND KNOCKED APPROXIMATELY 23 FT. BACKWARDS ONTO THE SHOULDER OF ROADWAY.  UPON IMPACT DRIVER SIDE AIRBAG DID NOT DEPLOY.  DRIVER OF TRUCK RECIEVED CONTUSIONS, ABRASIONS, AND BRUISING RESULTING FROM CONTACT WITH STEERING COLUMN AND DASH PANEL.  BOTH VEHICHLES INVOLVED IN CRASH WERE DETERMINED TO BE TOTAL LOSSES.*AK |

| | | | | | |
|---|---|---|---|---|---|
| 766686 | CHEVROLET | SILVERADO | 2000 | 2002-08-22 | THE 2000 CHEVROLET SILVERADO CRASHED HEAD ON INTO A TREE, THE AIRBAGS DID NOT DEPLOY. THE DRIVER, DAKOTA KANETZKY, HAD NUMEROUS FACIAL FRACTURES CAUSED WHEN HIS HEAD HIT AND CRACKED THE WINDSHIELD.  HE WAS HOSPITALIZED FOR 5 DAYS AND IS STILL UNDER A DOCTOR'S CARE.*AK |
| 767253 | CHEVROLET | SILVERADO | 2000 | | AIR BAGS DID NOT DEPLOY ON RIGHT FRONT COLLISION WITH CONCRETE WALL,  *AK |
| 860353 | CHEVROLET | SILVERADO | 2000 | 2000-01-19 | HEADING SOUTH ON HIGHWAY US 1, TRAVELING 55MPH WITH CRUISE CONTROL ON, ANOTHER VEHICLE COMING NORTH TURNED IN FRONT, AND CONSUMER HIT  VEHICLE ON THE SIDE. UPON IMPACT,   DRIVER'S SIDE AIRBAG DID NOT DEPLOY.    CONTACTED DEALER, AND HE WAS NOT ABLE TO HELP. *AK |
| 871368 | CHEVROLET | SILVERADO | 2000 | 2000-09-08 | DRIVER HAD LOST CONTROL OF VEHICLE  HIT A TELEPHONE POLE HEAD-ON WITH A 50-65 MPH IMPACT, AND THEN DROVE INTO A FIELD . UPON IMPACT,  DUAL AIRBAGS DID NOT DEPLOY, BUT SEATBELTS  WERE ON AT THE TIME. AS A RESULT, PASSENGER HAD CRACKED STERNUM,AND DRIVER HAD MILD WHIPLASH.PLEASE PROVIDE FURTHER INFORMATION.  *AK |
| 872110 | CHEVROLET | SILVERADO | 2000 | | CONSUMER WAS INVOLVED IN 55  MPH FRONTAL COLLISION IN WHICH  DRIVER'S AND PASSENGER'S AIR BAGS DID NOT DEPLOY. ALSO,  FRONT END  WAS HEAVILY DAMAGED.  PLEASE GIVE ANY FURTHER DETAILS.*AK |
| 872528 | CHEVROLET | SILVERADO | 2000 | 2000-04-29 | VEHICLE WAS INVOLVED IN A FRONTAL  COLLISION WITH A TREE AT 20 MPH, AND BOTH AIR BAGS DID NOT DEPLOY. DEALER/MANUFACTURER WERE NOT NOTIFIED AT THIS TIME. PLEASE FEEL FREE TO PROVIDE ANY FURTHER DETAILS.  *AK |
| 878288 | CHEVROLET | SILVERADO | 2000 | | WHILE TRAVELING AT  SPEED 45 MPH WHEN REAR ENDED ANOTHER VEHICLE.  UPON IMPACT, DRIVER'S  AIR BAG DID NOT DEPLOY.  *AK |
| 886000 | CHEVROLET | SILVERADO | 2000 | 2001-04-08 | CONSUMER WAS TRAVELING AT APPROXIMATELY 60 MPH WHEN A TRAFFIC JAM AHEAD OF HIM OCCURRED.  CONSUMER APPLIED  BRAKES AND ATTEMPTED TO SLOW DOWN.  BRAKES FAILED TO SLOW VEHICLE DOWN, AND  REAR ENDED A VEHICLE IN FRONT OF HIM ON  FRONT DRIVERS SIDE OF  VEHICLE.  BOTH FRONTAL AIRBAGS FAILED TO DEPLOY.  PLEASE PROVIDE ANY ADDITIONAL INFORMATION/ATTACHMENTS.*AK |
| 887723 | CHEVROLET | SILVERADO | 2000 | 2001-04-23 | WAS TRAVELING 60MPH AND  LOST CONTROL OF VEHICLE DUE TO ITS DRIFTING.  IT WENT SIDEWAYS  AND OFF THE ROAD. THEN,  VEHICLE WENT AIR BORNE AFTER STRADDLING. DRIVEWAY WAS OF CONCRETE TILE. LANDED ON  BUMPER,  THEN FLIPPED ON  TOP. AIR BAGS FAILED TO DEPLOY. DRIVER SUFFERED INJURIES AND WAS HOSPITALIZED.*AK |
| 891918 | CHEVROLET | SILVERADO | 2000 | 2001-06-13 | WHILE TRAVELING AT APPROXIMATELY 45 TO 50 MPH VEHICLE IMPACTED ANOTHER VEHICLE, CAUSING $11,000 WORTH OF DAMAGE TO  FRONT OF  TRUCK.  UPON IMPACT,  DRIVER'S AIR BAG FAILED TO DEPLOY WHILE  PASSENGER'S AIR BAG WAS TURNED OFF.  INSURANCE COMPANY  WAS HAVING  VEHICLE REPAIRED.  PLEASE PROVIDE ANY ADDITIONAL INFORMATION/ATTACHMENTS. *DRIVER EXPERIENCED NECK INJURIES  AND STIFF NECK .*AK |
| 892771 | CHEVROLET | SILVERADO | 2000 | 2001-06-28 | HEAD COLLISION AT 60-65MPH, AND  AIR BAGS DID NOT DEPLOY. THERE WAS NO PRIOR WARNING. CONTACTED MANUFACTURER,  AND  MANUFACTURER  WAS NOT WILLING TO DO ANYTHING.*AK |
| 893040 | CHEVROLET | SILVERADO | 2000 | 2001-06-25 | WHILE DRIVING 30 TO 35 MPH  HAD A CRASH, AND AIRBAGS DID NOT DEPLOY. DAMAGED FRONT END OF TRUCK. CONTACTED DEALER. *AK |
| 895573 | CHEVROLET | SILVERADO | 2000 | 2001-08-29 | CONSUMER WAS TRAVELING ABOUT 40MPH ON  HIGHWAY AND THERE WAS OIL ON  HIGHWAY. CONSUMER  LOST CONTROL OF THE VEHICLE, AND IT HIT A GUARDRAIL.  UPON IMPACT,  DRIVER'S SIDE AIRBAG DIDN'T DEPLOY.  DEALERSHIP  WAS AWARE OF  PROOBLEM. *AK  DRIVER RECEIVED BACK AND NECK INJURIES.  *SLC |
| 8001868 | CHEVROLET | SILVERADO | 2000 | 2001-12-18 | CONSUMER STATED VEHICLE WAS INVOLVED IN A FRONTAL CRASH OF 30 MPH, AND THE AIR BAGS DID NOT DEPLOY, DEALER DID NOT CHECK VEHICLE, BECAUSE GM WOULD NOT GIVE THEM PERMISSION. *AK *JG |
| 8001872 | CHEVROLET | SILVERADO | 2000 | 2001-12-11 | WHILE DRIVING, VEHICLE WAS INVOLVED IN AN ACCIDENT. UPON IMPACT, AIR BAG ON DRIVER/PASSENGER SIDE DID NOT DEPLOY, DRIVER WAS INJURED. *AK  *YH |
| 8014186 | CHEVROLET | SILVERADO | 2000 | 2002-07-03 | WHILE DRIVING WAS HIT HEAD-ON BY ANOTHER VEHICLE AND BOTH DRIVER AND PASSENGERS AIRBAGS DID NOT DEPLOY. CONSUMER WAS DRIVING APPROXIMATELY 30MPH ,AND THE OTHER VEHICLE WAS DRIVING APPROXIMATELY 40-50MPH.*AK THERE WERE 2 INJURIEES.  *YH |
| 8016756 | CHEVROLET | SILVERADO | 2000 | 2002-08-04 | IN A FRONTAL COLLISION, VEHICLE ROLLED  4 TIMES. UPON IMPACT, NONE OF THE AIR BAGS DEPLOYED.*AK |
| 8017393 | CHEVROLET | SILVERADO | 2000 | 2002-08-25 | VEHICLE INVOLVED WAS IN A FRONTAL COLLISION WITH A TREE, UPON IMPACT AIR BAGS DID NOT DEPLOY.  VEHICLE WAS TRAVELING APPROXIMATELY 40MPH.*AK CONSUMER STATED THE ROAD WAS UNEVEN AND THE RIGHT SIDE TIRES WAS CAUGHT IN A WASHOUT, CONSUMER TRIED TO BRING THE TIRES BACK ON THE ROAD BUT OVERCORECTED, THE VEHICLE THEN BEGAN TO FISHTAIL AFTER COMING BACK ON THE ROAD, SLID ACROSS THE HIGHWAY AND HIT A TREE, THE DRIVER SUFFERED INJURIES.*JB |
| 8017521 | CHEVROLET | SILVERADO | 2000 | 2002-08-01 | WHILE TRAVELING AT 55 MPH LOST CONTROL OF VEHICLE AND HIT A CONCRETE DIVIDER, VEHICLE WAS AIRBORNE AND LANDED ON DRIVER'S SIDE.  NONE OF THE AIRBAGS DEPLOYED, AND CONSUMER SUSTAINED LEG INJURY.   PLEASE PROVIDE ANY FURTHER INFORMATION.*AK |
| 8018038 | CHEVROLET | SILVERADO | 2000 | | UPON A FRONTAL IMPACT AT ESTIMATED SPEED OF 55 MPH, NEITHER DUAL AIR BAG DEPLOYED. CHEVROLET TOLD CONSUMER THAT AIR BAGS DEPLOY IN CERTAIN SITUATIONS.  OWNER HAS RECEIVED A RECALL NOTICE FOR  AIR BAGS.  PLEASE DESCRIBE DETAILS.  *AK |

| | | | | | |
|---|---|---|---|---|---|
| 8022592 | CHEVROLET | SILVERADO | 2000 | 2002-09-28 | CONSUMER WAS TRAVELING AROUND A CURVE, CONSUMER SUDDENLY LOST CONTROL OF VEHICLE. CONSUMER STATES VEHICLE SLAMMED INTO A TREE AND NONE OF THE AIRBAGS DEPLOYED.  PLEASE PROVIDE ANY FURTHER INFORMATION.    MR |
| 8023044 | CHEVROLET | SILVERADO | 2000 | 2002-11-06 | VEHICLE WAS IN A FRONT COLLISON AND NONE OF THE AIR BAGS DEPLOYED UPON IMPACT.  NONE OF THE OCCUPANTS IN THE VEHICLE WERE SERIOUSLY INJURED AT TIME OF THE ACCIDENT.  PLEASE PROVIDE MORE DETAILS.       TS |
| 10005962 | CHEVROLET | SILVERADO | 2000 | | AIR BAGS FAILED TO DEPLOY IN A COLLISION, RESULTING IN A FATALITY. *AK  *JB |
| 10008044 | CHEVROLET | SILVERADO | 2000 | 2003-01-26 | AIR BAGS FAILED TO DEPLOY FROM FRONTAL IMPACT DURING MOTOR VEHICLE ACCIDENT |
| 10008151 | CHEVROLET | SILVERADO | 2000 | 2003-02-16 | THE VEHICLE WAS INVOLVED IN AN ACCIDENT, AND THE AIR BAG FAILED TO DEPLOY.*JB |
| 10022039 | CHEVROLET | SILVERADO | 2000 | 2003-04-11 | THE VEHICLE WAS INVOLVED IN FRONTAL COLLISION, AND THE AIR BAGS FAILED TO DEPLOY. THE CONSUMER WAS INJURED.  *AK *TS *JB |
| 10027230 | CHEVROLET | SILVERADO | 2000 | 2003-06-16 | THE VEHICLE WAS INVOLVED IN A FRONTAL COLLISION WHILE DRIVING AT 40 MPH AND NONE OF THE AIR BAGS DEPLOYED UPON IMPACT.  DRIVER IMPACTED THE STEERING WHEEL, AND  DRIVER'S SIDE SEAT BELT DIDN'T RETRACT.*AK   *PH  *JB |
| 10029556 | CHEVROLET | SILVERADO | 2000 | 2003-07-17 | WHILE DRIVING  AT 45MPH CONSUMER HAD A FRONT COLLISION ,AND NEITHER OF THE FRONT BAGS DEPLOYED. *AK |
| 10044432 | CHEVROLET | SILVERADO | 2000 | | AIR BAGS DID NOT DEPLOY WHEN VEHICLE STRUCK A TREE HEAD ON. VEHICLE WAS TRAVELING AT 40 MPH. DRIVER WAS INJURED. *AK |
| 10045511 | CHEVROLET | SILVERADO | 2000 | 2003-09-28 | I REARENDED A VEHICLE THAT WAS SITTING STILL IN THE MIDDLE OF THE ROAD, I WAS TRAVELING ABOUT 40-45 MPH, AND NEITHER AIR BAG DEPLOYED.  I WAS SHIFTED IN THE VEHICLE AND HAVE KNEE AND BACK PROBLEMS.  *LA |
| 10081392 | CHEVROLET | SILVERADO | 2000 | 2004-06-22 | WHILE DRIVING 45-55 MPH CONSUMER'S VEHICLE WAS REAR-END BY A TRACTOR TRAILER. PUSHING CONSUMER'S VEHICLE OFF ROAD AND  INTO A DITCH, FRONT END FIRST. UPON IMPACT, AIR BAGS DID NOT DEPLOY.  *AK  BOTH THE DRIVER AND THE PASSENGER SUSTAINED INJURIES. THE DRIVER INJURED HIS NECK, BACK, HIPS AND PELVIS.  THE PASSENGER INJURED HER RIGHT SHOULDER, CHEST, BACK AND HIPS. |
| 10101301 | CHEVROLET | SILVERADO | 2000 | 2004-11-02 | CONSUMER'S VEHICLE WAS INVOLVED IN A  HEAD ON COLLISION  WHILE DRIVING AT 25-30 MPH. UPON IMPACT,  AIR BAGS DID NOT DEPLOY. RECALL 02V178000 WAS ISSUED.  MANUFACTURER WAS NOT WILLING TO ASSIST THE CONSUMER.  *AK |
| 10108404 | CHEVROLET | SILVERADO | 2000 | 2005-01-11 | THE EVENT WAS A CAR PULLED OUT IN FRONT OF ME WHICH STILL HIT THE DRIVER'S SIDE OF MY VEHICLE (2000 CHEVY SILVERADO).  THEN MY TRUCK HAD A FULL FRONTAL IMPACT AT GREATER THAN 30 MPH INTO A DIRT WALL IN WHICH NEITHER THE DRIVER'S NOR PASSENGER'S AIRBAGS DEPLOYED (THE TRUCK IS TOTALLED). I HIT THE STEERING WHEEL AND GOT A CONCUSSION WITH BLOOD AROUND THE BRAIN, A BROKE CHEEK BONE, AND FRACTURED HIP.  MY WIFE WAS 33 WEEKS PREGANANT AT THE TIME AND HER WATER BROKE AND SHE GOT A COMPOUND FRACTURE IN THE LOWER LEG/ANKLE.  AS A RESULT OF THE WATER BREAKING MY SON WAS BORN 3 DAYS LATER 7 WEEKS PREMATURE.  AS FOR WHAT WAS DONE TO CORRECT THE PROBLEM I'M HOPING IT WILL AT LEAST BE INVESTIGATED TO MAKE SURE THIS IS NOT A SYSTEMIC PROBLEM (I.E. SOFTWARE SCREWUP SOMETHING NOT HOOKED UP RIGHT IN THE AIRBAG SYSTEM ETC).  I HAVE PICS OF THE TRUCK AND THE CRASH SITE I CAN SEND IF NECESSARY.  I CAN ALSO PROVIDE THE LOCATION OF THE TRUCK SO IT CAN BE INSPECTED.*AK |
| 10111181 | CHEVROLET | SILVERADO | 2000 | 2004-12-23 | RECALL CAMPAIGN 02V078 00 CONCERNING AIR BAG SENSING MODULE. CONSUMER'S VEHICLE WAS INVOLVED IN A REAR END COLLISION, IT CRASHED INTO ANOTHER VEHICLE IN FRONT AT 50 MPH. UPON IMPACT,  NEITHER FRONTAL AIR BAG DEPLOYED.  CONSUMER SUSTAINE DINJURIES, AND WAS TRANSPORTED TO THE LOCAL HOSPITAL BY AMBULANCE.  DEALER AND MANUFACTURER WERE NOTIFIED. *AK |
| 10113830 | CHEVROLET | SILVERADO | 2000 | 2005-03-08 | WHILE DRIVING 20 MPH CONSUMER'S VEHICLE WAS INVOLVED IN A FRONTAL COLLISION.  UPON IMPACT, BOTH FRONTAL  AIR BAGS FAILED TO DEPLOY.   VEHICLE WAS TOWED TO A GARAGE FOR INSPECTION.  THE CAUSE HAD NOT BEEN DETERMINED AT THIS TIME.  THIS INFORMATION WAS PROVIDED BY RICKY'S WIFE KAREN FLIMP.  *AK |
| 10120946 | CHEVROLET | SILVERADO | 2000 | 2005-05-06 | I WAS IN A HEAD ON COLLISION AND RECEIVED A COMPOUND FRACTURE TO MY RIGHT FEMUR BONE, 2 BLACK EYES AND FRACTURED RIBS DUE TO THE INACTIVATION OF THE DRIVERS AND PASSENGER AIRBAG MODULES, ALSO THE STEERING WHEEL BENT RESEMBLING AN AIRPLANE WHEEL. MY WIFE CHECKED THE INTERNET AFTER THE INCIDENT AND FOUND THERE WAS A RECALL FOR THE AIRBAG MODULE ON THE YEAR OF MY 2000 CHEVROLET SILVERADO TRUCK. WE WERE NEVER NOTIFIED OF THIS BEFORE THE INCIDENT, BUT ARE CURRENTLY RECEIVING UPDATES TODAY. DO NOT UNDERSTAND WHY WE WERE NEVER NOTIFIED OF THIS. THE TRUCK IS NOW IN A STORAGE YARD AND WE ARE AWAITING THE RESPONSE FROM THE INSURANCE ADJUSTOR. |
| 10122067 | CHEVROLET | SILVERADO | 2000 | 2005-03-19 | OFF CENTER HEAD ON CRASH WITH 2 SIMILAR 2000 CHEVY SILVERADO EXTENDED CAB PICK UP TRUCKS.  ESTIMATED IMPACT SPEED 90 MPH ( 60 MPH VEHICLE 2, 30 MPH VEHICLE 1 PER CHP REPORT) NO AIRBAG DEPLOYMENT OF EITHER VEHICLE. |
| 10128831 | CHEVROLET | SILVERADO | 2000 | 2005-07-01 | AIR BAGS DID NOT DEPLOY UPON IMPACT |
| 10137048 | CHEVROLET | SILVERADO | 2000 | 2005-09-11 | DT:  CONSUMER'S VEHICLE  WAS  INVOLVED IN A CAR ACCIDENT ON SEPTEMBER 11, 2005 WHILE DRIVING 50-55 MPH.  IT WAS A HEAD ON COLLISION.  UPON IMPACT,  DRIVER'S SIDE AIR BAG DID NOT DEPLOY.  THE CONSUMER HAD NOT CONTACTED THE DEALER OR MANUFACTURER. *AK |

| | | | | | |
|---|---|---|---|---|---|
| 10139984 | CHEVROLET | SILVERADO | 2000 | 2005-06-17 | DT:  THE CONTACT'S SON  WAS INVOLVED IN  AN ACCIDENT ON 6-17-05. THE CONTACT RECEIVED A COPY OF THE CRASH REPORT.  UPON IMPACT,  NEITHER AIR BAG DEPLOYED.  THE VEHICLE  HIT SEVERAL TREES. THE POLICE REPORT STATED THE SPEED LIMIT WAS 55 MPH. THE PASSENGER'S HEAD WENT THROUGH THE WINDSHIELD, BUT PASSENGER WAS NOT SERIOUSLY HURT. NEITHER THE DRIVER NOR THE PASSENGER HAD TO GO TO THE HOSPITAL. THE CONTACT REPORTED THAT AIR BAG LIGHT ILLUMINATED IN THE CAR PRIOR TO THE INCIDENT. THE INSURANCE COMPANY HAS BEEN NOTIFIED. THE TRUCK WAS TOTALED. THE CONTACT TOOK PICTURES OF THE PINE TREE THAT WAS EMBEDDED IN THE HOOD.  UPDATED 11/15/05. *JB |
| 10199593 | CHEVROLET | SILVERADO | 2000 | 2007-08-10 | TL*THE CONTACT OWNS A 2000 CHEVROLET SILVERADO.  WHILE DRIVING 30 MPH HE DEPRESSED THE BRAKES AND CRASHED INTO THE VEHICLE IN FRONT OF HIM.  THE AIR BAGS DID NOT DEPLOY. THE FRONT SEAT PASSENGER SUSTAINED A LACERATED SPLEEN AND CONTUSION OF THE HEART.  A COMPLAINT WAS SUBMITTED TO THE MANUFACTURER (COMPLAINT # 71-546827970).  THE CURRENT AND FAILURE MILEAGES WERE 32,000.  UPDATED 02-01-08 *BF  UPDATED 02/01/08 *TR |
| 10328507 | CHEVROLET | SILVERADO | 2000 | 1901-01-01 | CONSUMER STATES THAT AIRBAGS DID NOT DEPLOY DURING ACCIDENT IN A 2000 CHEVROLET SILVERADO CAUSING SERIOUS INJURY. *GR |
| 878851 | CHEVROLET | SUBURBAN | 2000 | 2000-12-11 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION AT 60MPH. UPON IMPACT,  AIRBAGS DID NOT DEPLOY.  VEHICLE ROLLED OVER, AND VEHICLE EXPLODED. THERE WERE MINOR INJURIES.*AK |
| 8002321 | CHEVROLET | SUBURBAN | 2000 | | WHILE DRIVING  AT 25 MPH AN ACCIDENT OCCURRED, AND SEATBELT DID NOT TIGHTEN/ AIRBAG DID NOT DEPLOY. . PLEASE PROVIDE ANY FURTHER INFORMATION, AND IDENTIFICATION NUMBER.*AK |
| 8017775 | CHEVROLET | SUBURBAN | 2000 | | A TIRE SHEARED OFF, ANOTHER TRUCK CROSSING MEDIAN  BEGAN HEADING STRAIGHT TO CONSUMER'S VEHICLE.  DRIVER ATTEMPTED TO MANUEVER, BUT RAN OFF THE ROAD.  UPON FRONTAL OFF CENTERED IMPACT AT 60 MPH, AND DUAL AIR BAGS FAILED TO DEPLOY.*AK |
| 557967 | CHEVROLET | TAHOE | 2000 | 2000-09-01 | RIGHT FRONT TIRE (NO MAKE OR MODEL PROVIDED) EXPERIENCED A BLOWOUT, CAUSING THE VEHICLE TO GO OFF THE ROAD, COME BACK ONTO THE ROADWAY, AND CRASH INTO A CEMENT WALL, THE CONSUMER STATED THAT HE BELIEVED THE BACK RIGHT TIRE EXPERIENCED A BLOWOUT AS WELL, DURING THE CRASH THE AIRBAG EXPERIENCED A NO DEPLOYMENT, ONE PERSON WAS INJURED DUE TO THE INCIDENT. (OHIO TRAFFIC CRASH REPORT) *SLC |
| 563859 | CHEVROLET | TAHOE | 2000 | 2001-10-03 | THE CONSUMER WAS INVOLVED IN A MAJOR ACCIDENT BUT THE DRIVER SIDE AIR BAGS FAILED TO DEPLOY. THE CONSUMER SUFFERED INJURIES.  *YH |
| 567545 | CHEVROLET | TAHOE | 2000 | 2000-11-11 | CONSUMER WAS IN TWO ACCIDENTS.  ONE IN NOVEMER OF 2000 AND THE OTHER IN SEPTEMBER OF 2002.  THE AIR BAGS DID NOT DEPLOY IN EITHER INCIDENT.  CONSUMER DESCRIBED THE INCIDENTS TO A REPRESENTATIVE OF GENERAL MOTORS.  CONSUMER WAS INFORMED THAT THE AIR BAGS SHOULD NOT HAVE DEPLOYED, IN THE FIRST ACCIDENT THERE WAS ONE INJURY, IN THE SECOND ACCIDENT, THERE WERE TWO INJURIES. *JG |
| 740413 | CHEVROLET | TAHOE | 2000 | 2001-02-01 | HEAD ON COLLISION, IMPACT ON FRONT RIGHT SIDE, HIT AND SHEARED IN HALF A WOODEN UTILITY POLE, NO AIR BAG DEPLOYMENT ON EITHER SIDE, BUMPER IS CURLED UNDER FRONT END OF VEHICLE. *AK |
| 767411 | CHEVROLET | TAHOE | 2000 | 2001-11-11 | ON NOVEMBER 11,2000 I HAD A HEAD ON COLLISION (NOT MY FAULT) AND THE AIRBAGS DIDN'T DEPLOY. THEN ON SEPT 1,02  WE HAD A ACCIDENT ON INTERSTATE 95  THAT WE TOTALED THE TAHOE AND THE BODY SHOP CALLED GM SINCE THE AIRBAGS DIDN'T DEPLOY AGAIN. MR. LATTERMERE FROM GM CALLLED ME AND TOLD ME OVER THE PHONE AFTER I DESCRIBE THE ACCIDENT TO HIM THAT , AS HE DREW A PICTURE ON PAPER, "THAT THE AIR BAGS SHOULDN'T HAVE DEPLOYED". I FIND IT VERY DIFFICULT THAT A PERSON CAN DRAW A PICTURE AND TELL ME THIS. I WOULD LIKE FOR YOUR ORGANIZATION TO INSPECT THIS VECHILE AND RETRIEVE THE COMPUTER INFORMATION AND LET ME KNOW WHAT YOU THINK. GM SENT AN "INDEPENDENT" INSPECTOR OUT TO DO A REPORT BUT I HAVE NOTHING FROM HIM OR GM ON THE FINDING. I HAVE LEFT MESSAGES FOR MR. LATTERMERE TO CALL ME TO NO AVAIL.*AK |
| 8018021 | CHEVROLET | TAHOE | 2000 | 2002-09-01 | CONSUMER STATES WHILE DRIVING 55MPH HIT CONCRETE DIVIDER AND AIR BAGS DID NOT DEPLOY.*JB |
| 10111305 | CHEVROLET | TAHOE | 2000 | 2005-01-02 | WHILE DRIVING CONSUMER HIT A PATCH  OF ICE WHICH SENT THE VEHICLE SLIDING, AND CAUSING AN ACCIDENT. HOWEVER, THE AIR BAGS DID NOT DEPLOY, AND CONSUMER WAS INJURED. CONSUMER  CONTACTED THE DEALER, AND MANUFACTURER.  *AK   CONSUMER FEELS THAT MUCH OF THE PAIN AND SUFFERING MIGHT HAVE BEEN PREVENTED BY THE PROTECTION OF THE 4 AIR BAGS IN THIS TAHOE-NONE OF WHICH DEPLOYED UPON AN IMPACT THAT CRUSHED THE FRONT OF THE VEHICLE. JAMMED TH EFRONT PASENGER DOOR WHICH CONSUMER COULD NOT OPEN , AND BENT THE CAR'S FRAME BEYOND REPAIR.  *BF |
| 10150002 | CHEVROLET | TAHOE | 2000 | 2006-02-08 | I WAS RECENTLY IN AN ACCIDENT AND MY 2 CHILDREN WERE IN THE VEHICLE WITH ME.  I WAS IN A 5 CAR WRECK IN WHICH MY VEHICLE, AND THE ONE IN FRONT OF ME WERE TOTALED.  UPON IMPACT ON THE FRONT OF MY TRUCK, MY AIR BAGS DIDN'T DEPLOY NOR DID MY SEAT BELTS LOCK.  MY 11 YR OLD HIT HIS HEAD ON THE DASH, REQUIRING IMMEDIATE MEDICAL ATTENTION FOR A SEVERE LACERATION WHICH REQUIRED STITCHES. I LEARNED FROM GMC THERE WAS A RECALL ON MY TRUCK FOR AIR BAG MALFUNCTIONS AND I WAS NEVER NOTIFIED.  *NM |

| | | | | | |
|---|---|---|---|---|---|
| 10249443 | CHEVROLET | TAHOE | 2000 | 2008-11-05 | TL*THE CONTACT OWNS A 2000 CHEVROLET TAHOE.  WHILE DRIVING APPROXIMATELY 35 MPH, THE VEHICLE CRASHED INTO A LAMP POST THAT WAS SURROUNDED BY CEMENT.  THE FRONT END WAS PUSHED IN, WHICH CAUSED THE ENGINE TO SHIFT.  THE AIR BAGS FAILED TO DEPLOY AND THE DRIVER SUSTAINED INJURIES TO HIS BACK AND NECK.  THE VEHICLE WAS TOWED TO A LOCAL REPAIR SHOP AND THE MECHANIC STATED THAT THE AIR BAGS SHOULD HAVE DEPLOYED.  THE DEALER WAS NOT NOTIFIED.  THE MANUFACTURER FILED A CASE AND STATED THAT THEY WOULD BE IN TOUCH WITH THEIR DECISION.  THE CURRENT AND FAILURE MILEAGES WERE 144,000. |
| 11190477 | CHEVROLET | TAHOE | 2000 | 2019-03-17 | TL* THE CONTACT OWNS A 2000 CHEVROLET TAHOE. WHILE THE CONTACT'S SON WAS DRIVING 40 MPH, HE CRASHED INTO A VEHICLE THAT RAN A RED LIGHT. THE AIR BAGS DID NOT DEPLOY. THE CONTACT'S SON SUSTAINED CHEST, LOWER BACK, AND NECK PAINS THAT REQUIRED MEDICAL ATTENTION. THE CONTACT'S SON WENT TO THE EMERGENCY ROOM TWO SEPARATE TIMES. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO A TOW YARD. THE CONTACT WAS WAITING FOR FINALIZED INFORMATION FROM THE INSURANCE COMPANY TO DETERMINE IF THE VEHICLE WAS TOTALED. THE DEALER AND MANUFACTURER WERE NOT CONTACTED. THE CAUSE OF THE FAILURE WAS NOT DETERMINED. THE FAILURE MILEAGE WAS UNKNOWN. |
| 864850 | CHEVROLET | TRACKER | 2000 | 2000-06-28 | HAD A DIRECT FRONTAL IMPACT, AND DRIVER AND PASSENGER AIRBAG DID NOT DEPLOY WHICH DID NOT PROTECT THE OCCUPANTS IN THE CRASH.  NO PRIOR PROBLEMS WITH THE AIRBAG SYSTEM. *AK *ML |
| 870591 | CHEVROLET | TRACKER | 2000 | 2000-07-22 | DRIVING AT APPROXIMATELY 50 MPH DRIVER SWERVED TO AVOID HITTING ANOTHER VEHICLE AND LOST CONTROL. VEHICLE WENT ACROSS FREEWAY AND HIT A STEEL BARRIER WITH THE RIGHT FRONT PASSENGER'S SIDE, AND CONTINUED ON FOR A BLOCK. THEN, WENT INTO A DITCH, NOSE FIRST UPON IMPACT, DUAL AIRBAGS DID NOT DEPLOY, CAUSING MINOR INJURIES IN STERIUM AND HEAD. NO INDICATION OF AIRBAG BEING DEFECTIVE. VEHICLE WAS A TOTAL LOSS.*AK |
| 883185 | CHEVROLET | TRACKER | 2000 | 2001-01-31 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION WITH A 1985 528I, BMW, SPEED WAS NOT DETERMINED,  AND  BOTH AIR BAGS DID NOT DEPLOY. DEALER / MANUFACTURER WERE NOTIFIED, AND UNWILLING TO ASSIST IN THIS MATTER.  FEEL FREE TO PROVIDE ANY FURTHER DETAILS ON THIS VEHICLE. *AK |
| 891375 | CHEVROLET | TRACKER | 2000 | 2001-06-16 | WHILE DRIVING AT 45 MPH CONSUMER'S VEHICLE WAS INVOLVED IN A DIRECT FRONTAL COLLISION. UPON IMPACT, NEITHER DRIVER'S SIDE NOR PASSENGER'S SIDE AIR BAGS DEPLOYED. DEALER WILL INSPECT VEHICLE.  PLEASE PROVIDE ANY FURTHER DETAILS. *AK |
| 897476 | CHEVROLET | TRACKER | 2000 | 2001-09-29 | FRONTAL AIRBAGS DID NOT DEPLOY WHEN VEHICLE WAS INVOLVED IN A HEAD-ON ACCIDENT AT 30-35 MPH. CONSUMER COLLIDED WITH ANOTHER VEHICLE WHILE MAKING A TURN.  VEHICLE HAD FRONTAL DAMAGE. *AK  8SLC |
| 558644 | GMC | YUKON | 2000 | 2000-12-16 | THE AIRBAG DID NOT DEPLOY IN A HEAD ON COLLISION RESULTING IN INJURIES.  NLM |
| 8009240 | GMC | YUKON | 2000 | 2002-05-05 | FRONTAL COLLISION AT 40-45 MPH, NEITHER AIRBAG DEPLOYED. DRIVER SUFFERED HEAD INJURY. *AK   *YD |
| 10141369 | GMC | YUKON | 2000 | 2005-09-23 | DT: THE CONTACT STATED THAT WHILE TRAVELING 31 MPH ON A GRAVEL ROAD IN DRY CONDITIONS THE CONTACT LOST CONTROL OF THE VEHICLE AND  IT STRUCK A TREE.  UPON IMPACT, THE AIRBAGS DID NOT DEPLOY.  THE FRONT PASSENGER HAD TO BE EXTRACTED FROM THE VEHICLE.  THE DASHBOARD COLLAPSED INTO THE FRONT SEAT ALONG WITH THE FIREWALL.  THERE WERE  3 INJURIES,  AND A POLICE REPORT WAS TAKEN.  THE VEHICLE WAS TOTALED.  A GM REPRESENTATIVE RETRIEVED THE BLACK DETECTION BOX,  VERIFIED THE SPEED OF 31 MPH, AND DETERMINED THAT THE  AIRBAGS SHOULD HAVE DEPLOYED.  GM PURCHASED THE SALVAGED VEHICLE FROM THE  INSURANCE COMPANY AND DESTROYED IT.  *AK |
| 729997 | ISUZU | AMIGO | 2000 | 2000-08-29 | MY WIFE AND DAUGHTER WERE INVOLVED IN A CRASH WITH OUR 2000 ISUZU AMIGO.  MY WIFE IMPACTED A VEHICLE WHICH HAD CRASHED INTO ANOTHER VEHICLE AT APPROXIMATELY 25 MPH.  NEITHER AIR BAG DEPLOYED NOR DID THE SEAT BELT TIGHTEN UP TO RESTRAIN MY WIFE, WHICH RESULTED IN HER IMPACTING THE STEERING WHEEL.  AT THE SAME TIME, THE DRIVERS SEAT MOVED FORWARD AND DID NOT REMAIN STATIONARY. |
| 10052346 | ISUZU | RODEO | 2000 | 2004-01-04 | DURING A 40 MPH CRASH INTO A CONCRETE CENTER DIVIDER ON A INTERSTATE IN WHICH THE VEHICLE MADE CONTACT WITH THE FRONT AND DRIVER FRONT AREA, CAUSING EXTENSIVE DAMAGES.  INCLUDING PUSHING BUMPER,GRILLE,HEADLIGHTS AND HOOD UP INTO THE ENGINE COMPARTMENT.  TO MY SHOCK THE AIRBAGS DID NOT DEPLOY.  WHAT IS UP WITH THIS?  DO THEY JUST TELL YOU THEY ARE THERE AND THEY DON'T WORK WHEN YOU NEED THEM???  I WILL NOT PURCHASE ANOTHER ISUZU PRODUCT AND AM SEEKING A CLAIM AGAINST ISUZU TO FIND OUT WHAT THE PROBLEM MIGHT BE.  THANK YOU FOR YOUR TIME!!  *LA |
| 10083770 | ISUZU | RODEO | 2000 | 2004-02-26 | AIR BAGS ON 2000 ISUZU RODEO ARE DEFECTIVE.*MR  THE CONSUMER WAS INVOLVED IN A FRONT END COLLISION YET NONE OF THE AIR BAGS DEPLOYED.  THE CONSUMER CONTACTED THE MANUFACTURER ABOUT THE AIR BAGS BUT THE REPRESENTATIVE DID NOT SEEM TO BE TOO CONCERNED ABOUT THE SITUATION.  THE CONSUMER BELIEVES THE AIR BAG SHOULD HAVE DEPLOYED AND DOESN'T FEEL SAFE IN THE VEHICLE.  *NM |

| | | | | | |
|---|---|---|---|---|---|
| 10087550 | ISUZU | RODEO | 2000 | 2004-02-26 | VEHICLE WAS INVOLVED IN AN ACCIDENT WHILE TRAVELING AT 25 TO 30 MPH BUT THE AIR BAGS DID NOT DEPLOY.*MR   THE CONSUMER WAS INVOLVED IN A FRONT END COLLISION YET NONE OF THE AIR BAGS DEPLOYED.  THE CONSUMER CONTACTED THE MANUFACTURER ABOUT THE AIR BAGS BUT THE REPRESENTATIVE DID NOT SEEM TO BE TOO CONCERNED ABOUT THE SITUATION. THE CONSUMER BELIEVES THE AIR BAG SHOULD HAVE DEPLOYED AND DOESN'T FEEL SAFE IN THE VEHICLE.  THE VEHICLE SUSTAINED $6881. WORTH OF FRONT END DAMAGE.  *NM |
| 10163811 | ISUZU | RODEO | 2000 | 2006-07-20 | I WAS IN AN ACCIDENT ON JULY 20,2006.  A GIRL RAN A RED LIGHT AND I HIT HER IN THE PASSENGER SIDE OF HER CAR HEAD ON WITH MY 2000 ISUZU RODEO.  IT WAS A FULL FRONTAL COLLISION FOR ME AND MY CHILDREN.  LUCKILY , WE ARE ALWAYS BUCKLED UP BECAUSE NONE OF MY AIRBAGS DEPLOYED AT ALL.  THE OTHER CAR WAS GOING ABOUT 60 MPH AND HER AIRBAG DEPLOYED WHEN I  HIT HER BUT MINE DID NOT.  LUCKILY, MY CHILDREN  WERE NOT HURT BADLY BUT UNFORTUNATELY, I SUSTAINED NECK, BACK AND KNEE INJURIES.  I WAS AND STILL AM VERY UPSET THAT MY AIRBAGS FAILED.  EVEN THE OWNER OF THE BODY SHOP I USE WAS IN SHOCK THAT THEY DID NOT DEPLOY AS THE IMPACT WAS ENOUGH TO SPLIT THE FRAME OF MY RODEO AND TOTAL IT OUT.  I WILL NOT BUY ANOTHER ISUZU AND I WILL ALSO NOT RECOMMEND THEM TO MY FAMILY OR FRIENDS IN THE FUTURE.  THANK YOU FOR YOUR TIME, I HOPE I CAN HELP ANOTHER FAMILY FROM GETTING INJURED. |
| 745106 | ISUZU | TROOPER | 2000 | 2001-05-02 | THE ESTIMATES ARE NOT ALL IN YET, SO THE $27,000 IS A GUESS AT THIS STAGE.  MY FRIEND ALSO HAD A TROOPER WHOSE AIRBAGS FAILED AT LEAST ON ONE FRONT END CRASH.*AK |
| 8009110 | ISUZU | TROOPER | 2000 | 2002-04-13 | WHILE DRIVING 45MPH T-BONED ANOTHER VEHICLE AND AIR BAGS DIDNOT DEPLOY. DRIVER AND 3 PASSENGERS  SUSTAINED INJURIES. *AK |
| 10160322 | ISUZU | TROOPER | 2000 | 2006-06-10 | DT*: THE CONTACT STATED WHILE DRIVING 15 - 20 MPH THROUGH AT INTERSECTION ANOTHER VEHICLE RAN A STOP SIGN AND HIT THE CONTACT'S VEHICLE. THE VEHICLE RAN INTO A TREE SMASHING THE FRONT OF THE VEHICLE. THE FRONTAL AIR BAGS DID NOT DEPLOY. THE AIR BAG LIGHT DID NOT ILLUMINATE PRIOR TO THE INCIDENT. THE CONTACT WAS WEARING A SEATBELT, HOWEVER INJURIES WERE INCURRED. THE CONTACT HAD BRUISING TO THE FACE AND A SPRAINED HIP. A POLICE REPORT WAS FILED AT THE SCENE. THE VEHICLE WAS DEEMED TOTALED BY THE INSURANCE COMPANY. |
| 744466 | CHEVROLET | ASTRO | 1999 | 2001-04-23 | MY VEHICLE WAS STRUCK HEAD ON BY AN ONCOMING AUTO TRAVELING AT 45 MPH. MY VEHICLE WAS TRAVELING AT 35 MPH. THE IMPACT WAS AT 12:00. MY AIRBAG DID NOT DEPLOY NOR DID THE PASSENGER SIDE AIR BAG. I WAS 3 POINT BELTED AT THE TIME OF THE COLLISION. THE OTHER VEHICLE WAS A CHEVROLET BERRETA 2 DOOR AUTOMOBILE.*AK |
| 757589 | CHEVROLET | ASTRO | 1999 | 2001-12-12 | WAS IN FRONT IMPACT HEAD-N COLLISION ON 12/12/01.  SPEED BETWEEN 40 AND 65 MPH. AIRBAGS FAILED TO DEPLOY.*AK |
| 759758 | CHEVROLET | ASTRO | 1999 | 2002-02-19 | AIR BAGS DID NOT DEPLOY IN A NEARLY HEAD-ON CRASH AT AN ESTIMATED SPEED OF 60 MPH. RELATIVE SPEED MAY HAVE BEEN LESS, BECAUSE VEHICLE WHICH THIS VAN HIT WAS SLIDING BACKWARDS IN THE SAME DIRECTION OF TRAVEL AS THE VAN.  HOWEVER, CLOSING SPEED HAD TO BE SIGNIFICANT TO CAUSE IT TO BE DAMAGED BEYOND REPAIR WITHIN ITS $13,000 VALUE. VEHICLE WAS A TOTAL LOSS.  WE HAVE OWNED THIS VEHICLE SINCE NEW, NO MODIFICATIONS HAVE BEEN MADE TO IT, AND IT HAD NEVER BEEN IN AN ACCIDENT BEFORE THIS.  DIGITAL PHOTOS OF DAMAGED VEHICLE ARE AVAILABLE IF DESIRED.  *AK |
| 873826 | CHEVROLET | ASTRO | 1999 | 2000-10-22 | CONSUMER WAS TRAVELING ABOUT 35MPH ON A SIDE STREET AND ANOTHER VEHICLE VEERED INTO HIM BY CROSSING OVER INTO THE MERIDIAN STRIP.  UPON IMPACT,  NEITHER AIRBAG DEPLOYED,  AND  MORE THAN ONE PERSON WAS INJURED.*AK |
| 8016641 | CHEVROLET | ASTRO | 1999 | 2002-08-05 | IN A FRONTAL COLLISION NONE OF THE AIR BAGS DEPLOYED ON IMPACT, CAUSING MAJOR INJURIES TO DRIVER.*AK |
| 10081510 | CHEVROLET | ASTRO | 1999 | 2004-06-22 | WHILE DRIVING 40 MPH VEHICLE STALLED. THEN, VEHICLE SUDDENLY ACCELERATED.  CONSUMER APPLIED THE BRAKES, BUT THEY WERE INOPERATIVE. THIS CAUSED THE VEHICLE TO CRASH INTO A TREE.  UPON IMPACT, BOTH FRONTAL AIR BAGS FAILED TO DEPLOY.  DRIVER AND TWO PASSENGERS SUSTAINED MAJOR INJURIES, AND WERE TRANSPORTED TO THE HOSPITAL BY AMBULANCE.  THE VEHICLE WAS TOWED TO A GARAGE.  *AK |
| 10087718 | CHEVROLET | ASTRO | 1999 | 2004-08-11 | WHILE DRIVING CONSUMER TRIED TO AVOID A  PERSON ON A BICYCLE ON THE ROAD. SWERVED IN ORDER NOT TO HIT THE PERSON, BUT WAS UNABLE TO MAINTAIN CONTROL OF THE VEHICLE, JUMPED A CURB, AND COLLIDED WITH A FIRE HYDRANT, AND STRIKING  A TREE.  UPON IMPACT, BOTH FRONTAL AIR BAGS DID NOT DEPLOY  DRIVER SUSTAINED HEAD AND NECK INJURIES, AND WAS TRANSPORTED BY AMBULANCE TO A HOSPITAL.  VEHICLE WAS TOWED TO THE  DEALER FOR INSPECTION.  CONSUMER CONTACTED THE MANUFACTURER AND A REPRESENTATIVE CAME DOWN TO MEET WITH  THE DEALER AND CONSUMER.  THE REPRESENTATIVE INFORMED CONSUMER THAT THE VEHICLE WAS FUNCTIONING AS DESIGNED,AND THE RATE OF DECELERATION AND  IMPACT WAS PRESENT.  *AK |

| ID | Make | Model | Year | Date | Description |
|---|---|---|---|---|---|
| 10205366 | CHEVROLET | ASTRO | 1999 | 2007-01-31 | TL*THE CONTACT OWNS A 2000 CHEVROLET ASTRO.  WHILE DRIVING 25 MPH THROUGH SNOW AND ICE, THE CONTACT LOST CONTROL OF THE VEHICLE AND SLID OFF THE ROAD.  THE VEHICLE THEN STRUCK A TELEPHONE POLE.  THE AIR BAGS FAILED TO DEPLOY.  THE SEAT BELT FAILED TO RESTRAIN HIM AND HE STRUCK HIS HEAD ON THE WINDSHIELD.  THE WOUND TOOK 24 STITCHES TO CLOSE.  MOST OF THE VEHICLE WAS REPAIRED AT THE COST OF $4,500.  THE MANUFACTURER'S INVESTIGATOR CONCLUDED THAT THE AIR BAG WOULD NOT DEPLOY AT 25 MPH.  THE ARKANSAS POLICE DEPARTMENT FILED REPORT NUMBER 07-00343.  THE CURRENT MILEAGE WAS 146,661 AND FAILURE MILEAGE WAS 125,000. |
| 10347238 | CHEVROLET | ASTRO | 1999 | 2010-08-03 | AIRBAGS FAILED TO DEPLOY IN AN APPROX. 50 MPH HEAD-ON CRASH. *TR |
| 716098 | CHEVROLET | BLAZER | 1999 | 1999-12-12 | VEHICLE IMPACTED A HORSE IN ROAD AT A SPEED OF 45 MPH. IMPACT WAS HEAD-ON. LEGS OF THE HORSE CONTACTED THE FRONT BUMPER PROPELLING THE HORSE INTO THE WINDSHIELD AND ONTO THE ROOF.THE CAR SUSTAINED MAJOR DAMAGE TO THE FRONT. ALTHOUGH THERE WAS SIGNIFICANT DENTING OF THE BUMPER THE AIR BAGS FAILED TO DEPLOY. THE ROOF OVER THE FRONT PASSENGER HAD MAJOR CRUSHING INCLUDING THE DRIVER'S FRONT PILLA. *AK |
| 767338 | CHEVROLET | BLAZER | 1999 | 2002-09-15 | FRONT OF CAR BUMPER AND ENGINE PUSHED IN 6-8 INCHES. WENT UP HILL HIT TREE OVER TURNED 2 TIMES. UPON IMPACT, AIR BAGS FAILED TO DEPLOY. *AK |
| 859664 | CHEVROLET | BLAZER | 1999 | 2000-04-04 | CONSUMER WAS TRAVELING ABOUT 42MPH IN  GOOD WEATHER CONDITIONS, AND WAS HIT BY ANOTHER VEHICLE ON THE DRIVER'S SIDE DOOR  AND THE FRONT HOOD. UPON IMPACT, AIRBAGS DIDN'T DEPLOY.   DEALER WILL BE CONTACTED. *AK |
| 874736 | CHEVROLET | BLAZER | 1999 | 2000-10-20 | CONSUMER WAS TRAVELING 32MPH & HAD A HEAD-ON COLLSION.  CONSUMER WAS WEARING SEAT BELT RESTRAINT AT THE TIME, BUT  FRONTAL AIR BAGS DIDN'T DEPLOY.   DEALER CLOSED THE CASE AT ONE POINT & REOPENED IT ONCE. CONSUMER CONTACTED THEM A SECOND TIME.*AK *SLC |
| 8004945 | CHEVROLET | BLAZER | 1999 | 2002-02-28 | WHILE TRAVELING ON INTERSTATE AND WITHOUT PRIOR WARNING A DEER JUMPED IN FRONT OF VEHICLE. DRIVER'S SIDE SEATBELT DIDN'T HOLD, AND  AIRBAGS DIDN'T DEPLOY.*AK |
| 8020401 | CHEVROLET | BLAZER | 1999 | | THE TRUCK WENT INTO A SKID ON WET ROAD AFTER ATTEMPTING A REAR END COLLISION THAT OCCURED IN FRONT OF THEM.  THE TRUCK DID AVOID COLLIDING WITH THEM BUT SPUN AROUND HITTING CONCRETE WALL.  NEITHER AIR BAGS DEPLOYED UP IMPACT WITH ESTIMATED SPEED OF 65 MPH.  PLEASE DESCRIBE DETAILS.  MR |
| 8021177 | CHEVROLET | BLAZER | 1999 | | WAS DRIVING, WHEN ANOTHER VEHICLE REAR ENDED VEHICLE IN FRONT OF IT. BLAZER AVOID HITTING VEHICLE ON WET ROAD & SPUN AROUND AFTER APPLYING BRAKES. VEHICLE HIT MEDIAN WALL WITH FRONT OF VEHICLE. UPON IMPACT, THE AIR BAGS FAILED TO DEPLOY.    MR |
| 10017194 | CHEVROLET | BLAZER | 1999 | 2003-04-18 | THE VEHICLE WAS INVOLVED IN A FRONTAL COLLISION WITH A DEER  WHILE DRIVING 60 MPH AND NONE OF THE NEITHER AIR BAGS DEPLOYED. THE DEALER WAS NOTIFIED.  *NLM |
| 10021489 | CHEVROLET | BLAZER | 1999 | 2003-06-10 | INVOLVED IN HEAD ON COLLISION, BOTH GOING APPROXIMATELY 30 MPH, NEITHER FRONT AIR BAG DEPLOYED.  SEVERE FACIAL INJURIES FOR ONE AND CONCUSSION FOR PASSENGER RESULTED. *JB |
| 10049340 | CHEVROLET | BLAZER | 1999 | 2003-12-06 | THE AIRBAGS DID NOT DEPLOY. THIS CAUSED INJURY TO THE DRIVER CHEST. THIS SHOULD NEED TO BE FIXED ASAP BY GM. I WILL NEVER PURCHASE A CHEVY AGAIN. AIRBAGS THAT DO NOT DEPLOY WHEN YOU HIT HEAD ON AND ROLL SHOULD NOT BE ALLOWED.  *LA |
| 10050546 | CHEVROLET | BLAZER | 1999 | 2003-12-15 | WHILE DRIVING ON ICY ROAD AT 50 TO 55 MPH DRIVER  LOST CONTROL OF VEHICLE.  IT WENT AIRBORNE AND  LANDED IN A  DITCH .  UPON IMPACT,NONE OF THE AIR BAGS DEPLOYED.  *AK |
| 10063865 | CHEVROLET | BLAZER | 1999 | 1999-03-23 | THE AIRBAGS NEVER WENT OFF IN A FRONT END COLLISION. |
| 10087245 | CHEVROLET | BLAZER | 1999 | 2004-06-09 | WHILE DRIVING 35 MPH,ANOTHER VEHICLE HIT  CONSUMER'S VEHICLE ON THE PASSENGER SIDE. THIS CAUSED THE VEHICLE TO SPIN AROUND AND SLAM INTO ANOTHER VEHICLE HEAD ON. UPON IMPACT, BOTH FRONTAL AIR BAGS DID NOT DEPLOY, NOR DID THE DRIVERS SEAT BELT LOCK. CONSUMER HAD THE VEHICLE TOWED TO THE DEALERSHIP FOR INSPECTION. *AK |
| 10099164 | CHEVROLET | BLAZER | 1999 | 2004-10-21 | WHILE DRIVING 45 MPH, THE VEHICLE COLLIDED WITH THE VEHICLE IN FRONT OF HERS.  THE AIR BAGS FAILED TO DEPLOY.  THIS CAUSED THE DRIVER TO SUSTAINED MAJOR INJURIES AND WAS TRANSPORTED TO THE HOSPITAL.  THE VEHICLE WAS TOWED TO A GARAGE FOR INSPECTION.  THE CAUSE HAS NOT BEEN DETERMINED AT THIS TIME.  PLEASE PROVIDE FURTHER DETAILS. *JB |
| 10161658 | CHEVROLET | BLAZER | 1999 | 2006-06-03 | DT*: THE CONTACT STATED THE VEHICLE IMPACTED A TREE, HEAD ON. THE FRONTAL AIRBAGS FAILED TO DEPLOY, RESULTING IN INJURIES OF THE CONTACT'S LEFT KNEE, ELBOW AND HEAD. A POLICE REPORT WAS FILED AND PICTURES WERE TAKEN AFTER THE VEHICLE WAS MOVED TO THE JUNKYARD. NO REPAIRS WERE MADE BECAUSE THE VEHICLE WAS DETERMINED BY THE INSURER TO BE TOTALED. THE MANUFACTURER WAS CONTACTED.  08/04/06  CHEVY DRIVER HIT A CAR IN HER LANE FIRST, THEN RICOCHETED HEAD ON INTO A TREE.  NEITHER TIME DID AIRBAGS DEPLOY. *TT |
| 10223949 | CHEVROLET | BLAZER | 1999 | 2008-02-09 | 1999 CHEVY BLAZER AIRBAGS FAILED TO DEPLOY IN AN ACCIDENT. CONSUMER STATES THAT THE AIRBAGS DID NOT DEPLOY. CONSUMER WAS INJURED AND VEHICLE WAS TOTALED. CONSUMER MIGHT NOT HAVE THOSE INJURIES IF THE AIRBAGS WORKED PROPERLY.  *KB |
| 548902 | CHEVROLET | SILVERADO | 1999 | 1999-08-13 | NO DEPLOYMENT OF DRIVER AND PASSENGER SIDE AIR BAGS DURING COLLISION WITH FIXED OBJECT (TREE) CAUSED INJURY TO DRIVE.  NLM |

| | | | | | |
|---|---|---|---|---|---|
| 709384 | CHEVROLET | SILVERADO | 1999 | 1999-07-20 | THE 1999 CHEVROLET TRUCK EX SILV  ANTILOCK BREAKS HAVE BEEN FAILING AT RANDOM TIMES SINCE APRIL 1 1999.  FIRST AT SLOW SPEEDS AND THEN AT HIGH SPEEDS RANDOMLY.  ON 720-1999 MY SPEED WAS 60 MI HR AND THE BRAKES FAILED WHEN A DEER CROSSED THE STATE HIGHWAY BETWEEN GRAHAM  TX AND BRECKENRIDGE TX.   THE BRAKES DELAYED AND I HIT THE DEER  DEAD CENTER OF MY BUMPER AND GRILL!  THE AIR BAGS DIDNOT INFLATE  EVER! |
| 741598 | CHEVROLET | SILVERADO | 1999 | 2000-01-13 | MY AIR BAG DID NOT ACTIVATE AND IN A DIRECT FRONT END COLLISION.  THE SUN SETTING BLINDED ME AND I HIT DIRECTLY THE REAR OF THE CAR IN FRONT OF ME AND IT'S AIRBAG DEPLOYED AND THE CHAIN REACTION OF THE TWO CARS IN FRONT OF THE CAR I HIT AIRBAGS DEPLOWED.  GM SAID MY AIRBAG WAS NOT DEFECTIVE AND I ASKED TO HAVE IT CHECKED TWO TIMES.  IT SHOULD HAVE DEPLOYED AND IT DID NOT.  I WAS NOT WEARING A SEAT BELT AND I SUFFERED HEAD INJURIES.  I SOLD TRUCK BECAUSE I DID NOT WANT TO DIE NEXT FAILURE. |
| 746679 | CHEVROLET | SILVERADO | 1999 | 2001-04-30 | DRIVER HIT A STOPPED VEHICLE ON THE INTERSTATE AT APPROXIMATELY  60 MPH.  OCCUPANT OF STALLED VEHICLE WAS KILLED AND OUR AIRBAGS DID NOT DEPLOY.  WE FELT THAT IT SHOULD HAVE DEPLOYED AND GMC IS ARGUING THAT IT SHOULD NOT HAVE.  ANY INFORMATION ABOUT AIRBAGS WOULD BE APPRECIATED. *AK |
| 762651 | CHEVROLET | SILVERADO | 1999 | 2002-05-21 | DRIVER & PASSENGER AIR BAGS DIDN'T DEPLOY IN A 65 MPH COMBINED SPEED , HEAD ON CRASH. *AK |
| 842094 | CHEVROLET | SILVERADO | 1999 | | VEHICLE WAS INVOLVED IN A FULL FRONTAL COLLISION AT 40 MPH, AND NEITHER DRIVER'S SIDE NOR PASSENGER'S SIDE AIRBAGS DEPLOYED. CHEVROLET AND DEALER REFUSED TO GIVE ANY EXPLANATION WHY AIR BAGS DID NOT DEPLOY.  *AK |
| 844072 | CHEVROLET | SILVERADO | 1999 | 1999-07-21 | WHILE DRIVING 40 MPH , LOST CONTROL. VEHICLE WENT INTO A DITCH.  UPON IMPACT,  DRIVER'S AND PASSENGER'S AIRBAGS DID NOT DEPLOY WHICH DID NOT PROTECT THE OCCUPANT IN THIS CRASH.  PLEASE PROVIDE FURTHER INFORMATION AND VIN#.  *AK |
| 851420 | CHEVROLET | SILVERADO | 1999 | 1999-08-13 | CONSUMER  WAS DRIVING  AND A DEER JUMPED IN FRONT OF HIS VEHICLE.  CONSUMER SWERVED TO THE RIGHT AND HE WENT INTO A TREE.  AIRBAGS DIDN'T DEPLOY AT ALL, CONSUMER SUSTAINED HEAD INJURIES. *AK |
| 854784 | CHEVROLET | SILVERADO | 1999 | 1999-10-08 | WHILE DRIVING 60 MPH HAD A FRONTAL IMPACT, AND DRIVER'S AND PASSENGER'S AIR BAGS DID NOT DEPLOY WHICH DID NOT PROTECT THE OCCUPANT IN THIS CRASH. *AK *ML |
| 858532 | CHEVROLET | SILVERADO | 1999 | 2000-03-01 | CONSUMER'S DAUGHTER WAS IN A CAR CRASH.  PASSENGER'S SEAT BELT  DIDN'T HOLD.  THE PASSENGER AND DRIVER WERE EJECTED FROM THE VEHICLE.  ALSO,  AIRBAGS DIDN'T DEPLOY. *AK |
| 858811 | CHEVROLET | SILVERADO | 1999 | 2000-02-18 | VEHICLE WAS INVOLVED IN  A FRONTAL COLLISION AT 35 MPH. VEHICLE  WAS TOTALLED, AND THE AIRBAGS DID NOT DEPLOY, RESULTING IN MINOR INJURIES.   MANUFACTURER HAS INSPECTED THE VEHICLE, AND CLAIMS THAT THE AIR BAGS WERE NOT SUPPOSED TO DEPLOY IN THIS SORT OF ACCIDENT. *AK |
| 859858 | CHEVROLET | SILVERADO | 1999 | 1999-04-03 | WHILE TRAVELING ON A WET  ROAD AT HIGHWAY SPEED OF 60 MPH VEHICLE  HYDROPLANED, SPUN  INTO A DITCH, AND COLLIDED INTO A  TREE WITH BOTH SIDES AND FRONT OF VEHICLE. UPON IMPACT, AIR BAGS FAILED TO DEPLOY. MFR. NOTIFIED. *AK |
| 866622 | CHEVROLET | SILVERADO | 1999 | 2000-07-27 | CONSUMER WAS TRAVELING ABOUT 65 ON THE INTERSTATE AND FELL A SLEEP.   HE HIT AN ENBANKMENT, AND AIRBAGS DIDN'T GO OFF,  THERE WERE 2  INJURIES. *AK |
| 871182 | CHEVROLET | SILVERADO | 1999 | 2000-04-29 | WHILE DRIVING ABOUT 50 MPH  AND WHEN EXITING A FREEWAY RAM STEPPED ON  BRAKE PEDAL, BUT VEHICLE DID NOT STOP AND LOST CONTRO/ SPAN AND  STRUCK A ROAD SIGN FRONT FIRST. UPON IMPACT, NONE OF THE  AIR BAGS DEPLOYED.*AK |
| 875702 | CHEVROLET | SILVERADO | 1999 | 2000-11-08 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION AT 55-60MPH.  UPON IMPACT,  AIRBAGS DID NOT DEPLOY, RESULTING IN MINOR INJURIES.   VEHICLE WAS TOTALLED. *AK |
| 877481 | CHEVROLET | SILVERADO | 1999 | 2000-12-16 | FRONT CRASH AT 50 MPH, VEHICLE TOTALLED, DRIVER INJURED WHEN SHE HIT STEERING WHEEL, AND AIRBAG DID NOT DEPLOY. *AK |
| 886863 | CHEVROLET | SILVERADO | 1999 | 2001-04-21 | WHILE DRIVING 70 MPH CONSUMER HAD A FRONT CRASH .  BUMPER BROKE IN TWO, AND FRONT END WAS PUSHED BACK ABOUT 4-6 INCHES. VEHICLE HIT A TREE. UPON IMPACT,  AIRBAGS DID NOT DEPLOY.  *AK |
| 891163 | CHEVROLET | SILVERADO | 1999 | 2001-06-23 | WHILE TRAVELING 35-40 MPH ON A BRIDGE WITHOUT PRIOR WARNING  BACKEND OF  VEHICLE BEGAN TO FISHTAIL ,CAUSING  VEHICLE TO LOSE CONTROL. CONSUMER RELEASED FOOT FROM GAS TO CORRECT VEHICLE STEERING. VEHICLE WAS UNRESPONSIVE, RESULTING IN A FRONTAL COLLISON WITH A JERSEY WALL.  UPON IMPACT,  PASSENGER AIRBAGS FAILED TO DEPLOY, ENGINE WAS PUSHED SIX INCHES UNDER THE DASH. CONSUMER HAS YET TO CONTACT DEALER. *AK DRIVER WAS INJURED IN ACCIDENT.   *SLC |
| 10026451 | CHEVROLET | SILVERADO | 1999 | 2003-05-06 | 1999 CHEVROLET SILVERADO FAULTY DRIVER RESTRAINT SYSTEM. *MR THE VEHICLE WAS INVOLVED IN AN ACCIDENT. THE SAFETY BELT FAILED TO THE RESTRAIN THE DRIVER, AND THE AIR BAG DID NOT DEPLOY. *TS. THE DRIVER RECEIVED SERIOUS HEAD INJURIES. (LAWYER JOHN KELLY ON BEHALF OF CLIENT, JAMES SCOTT).  *JB |
| 10113304 | CHEVROLET | SILVERADO | 1999 | 2005-02-03 | WHILE DRIVING APPROXIMATELY 20 MPH DRIVER LOST CONTROL OF THE VEHICLE AND IT CRASHED INTO A BRICK WALL.  UPON IMPACT, BOTH FRONTAL AIR BAGS FAILED TO DEPLOY.   DRIVER SUSTAINED MAJOR INJURIES, AND WAS TRANSPORTED TO THE HOSPITAL BY A HELICOPTER.  THE VEHICLE WAS TOWED TO A GARAGE FOR INSPECTION. *AK |

| | | | | | |
|---|---|---|---|---|---|
| 10144603 | CHEVROLET | SILVERADO | 1999 | 2005-11-01 | DT: THE CONTACT STATED  WHILE TRAVELING AT  65 MPH HE FELL ASLEEP AT THE WHEEL.  THE VEHICLE  WAS INVOLVED IN A CRASH, IT HIT A GUARD RAIL. THIS WAS A FRONTAL IMPACT, AND THE DRIVER'S SIDE AIR BAG DID NOT DEPLOY. THE VEHICLE WAS TOTALED. |
| 731578 | CHEVROLET | SUBURBAN | 1999 | 2000-01-15 | AIRBAGS FAILED TO DEPLOY ON FRONTAL INTERSTATE SPEED IMPACT. DEALER DISCLAIMED SERIOUSNESS. DOOR LOCKS WOULD LOCK AUTOMATICALLY, WITHOUT ANY ADULT IN THE CAR... HOWEVER, THERE WERE CHILDREN IN CAR SEATS IN BACK. KEEP SPARE SET OF KEYS IN HAND AT ALL TIMES. |
| 753287 | CHEVROLET | SUBURBAN | 1999 | 2001-10-08 | 60 MPH CROSS WIND BLEW THE SUBURBAN HEAD ON INTO THE CONCRETE MEDIAN. THE VEHICLE SPUN 360 DEGREES, WENT INTO THE DITCH, THE FRONT END HIT  AGAIN THE VEHICLE WENT UP THE OTHER SIDE OF THE EMBANKMENT AND STOPPED IN A FIELD. ENTIRE FRONT END OF THE FRAME NOT REPAIRABLE, THE REAR PORTION OF THE FRAME BENT INTO A DIAMOND SHAPE. FRONT CROSSMEMBER BENT AND ENGINE MOVED UPWARDS AT A 10 DEGREE ANGLE. AIR BAGS FAILED TO DEPLOY. *AK |
| 829803 | CHEVROLET | SUBURBAN | 1999 | 1998-10-09 | CONSUMER WAS TRAVELING ABOUT 30-35 MPH AND ACCIDENTLY REAR ENDED ANOTHER VEHICLE, AIR BAGS DID NOT DEPLOY, CAUSING NECK INJURY/SHOULDER INJURY AND BACK INJURY. *AK |
| 876094 | CHEVROLET | SUBURBAN | 1999 | 2000-12-01 | CONSUMER WAS TRAVELING ABOUT 45 MPH ON  HIGHWAY AND  WAS STRUCK HEAD-ON BY ANOTHER VEHICLE WHO ENTERED  FREEWAY THROUGH EXIT.  UPON IMPACT,  FRONT DUAL AIRBAGS DIDN'T DEPLOY.  CONSUMER WAS INJURED.  *AK |
| 877320 | CHEVROLET | SUBURBAN | 1999 | 2000-12-01 | CONSUMER WAS TRAVELING ABOUT 40MPH ON  HIGHWAY  AND  ANOTHER VEHICLE VEERED INTO HER  LANE, HITTING HER HEAD-ON,  AND  PUSHING VEHICLE INTO ANOTHER LANE.  VEHICLE  HIT TELEPHONE POLE, AND  DUAL AIRBAGS DIDN'T DEPLOY.  CONSUMER WAS INJURED.  CHEVROLET HAS BEEN NOTIFIED.  *AK |
| 896346 | CHEVROLET | SUBURBAN | 1999 | 2001-09-04 | WHILE DRIVING 30-35 MPH  VEHICLE HIT A FIRE HYDRANT, THEN A TREE. NEITHER AIRBAG DEPLOYED, NO INJURIES. DAMAGE TO VEHICLE UNKNOWN AT THIS TIME. IMPACT WAS MIDDLE OF FRONT OF VEHICLE.  *AK |
| 8001742 | CHEVROLET | SUBURBAN | 1999 | 2001-12-28 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION AT 20MPH. UPON IMPACT, AIR BAGS DID NOT DEPLOY.  DEALER HAS BEEN NOTIFIED. PLEASE PROVIDE ADDITIONAL INFORMATION.*AK |
| 10029300 | CHEVROLET | SUBURBAN | 1999 | 2003-05-08 | THIS COMPLAINT IS IN REGARDS TO MY RECENT MOTOR VEHICLE ACCIDENT ON MAY 8, 2003. THE OTHER DRIVER FAILED TO YIELD MY RIGHT AWAY. I WAS DRIVING A 1999 CHEVROLET SRUBURBAN. I SERVED INTO ONCOMING TRAFFIC, INTO A RESIDENCE YARD, STRIKING A TREE HEAD ON AT APPROXIMATELY 35 MILES PER HOUR. I HAVE CORRESPONDED WITH GMC VIA E-MAIL UNTO NOT MY SATISFACTION. I REQUESTED MY VEHICLE HAVE A DIAGNOSTIC EVALUATION CONDUCTED, AS I WANTED TO KNOW WHY THE AIR BAGS DID NOT DEPLOY. I HAVE BASICALLY BEEN TOLD BY GMC THAT IF THE AIRBAG LIGHT IS FUNCTIONING IN THE DASHBOARD OF MY TRUCK THEN THERE IS NOTHING WRONG WITH MY AIR BAGS PER A CUSTOMER RELATIONSHIP MANAGER AND THAT MY ACCIDENT DID NOT, MEET THE CRITERIA FOR AIR BAG DEPLOYMENT. I HIGHLY DISAGREE WITH GMC S EXPLANATION AND CRITICIZE THE LACK OF PROFESSIONAL DIPLOMACY AND CONCERN. I WOULD HAVE EXPECTED MORE FROM ONE OF THE BIG 3 AUTO CORPORATIONS. MY VEHICLE STRUCK A TREE WITH ENOUGH FORCE TO BEND THE FRONT LEFT FRAME RAIL. THE IMPACT ALSO WAS GREAT ENOUGH TO RAISE THE REAR OF THE VEHICLE OF THE GROUND AND SET IT DOWN A FOOT TO THE LEFT OF THE INITIAL IMPACT. THIS HAS ALSO LEFT ME WITH DOCUMENTED INJURIES CAUSING ME TO BE UNABLE TO WORK. MY CONFIDENCE IN THIS VEHICLE S AIR BAG SYSTEM HAS DIMINISHED TO SAY THE LEAST. THIS MATTER HAS NOT BEEN HANDLED NOR COMPLETED TO MY SATISFACTION. I EXPECTED AT LEAST AN OFFERING TO HAVE THE VEHICLE TAKEN TO A LOCAL DEALERSHIP TO HAVE A DIAGNOSTIC EVALUATION CONDUCTED. THIS WOULD ALLOW ME TO DRIVE THE VEHICLE WITH SOME CONFIDENCE THAT THE SYSTEM WOULD WORK IN THE EVENT I NEED IT AGAIN. I AM AT A STAND STILL AND I AM POSITIVE I AM NOT THE ONLY PERSON WHO HAS HAD THIS PROBLEM IN THE PAST.  I WOULD LIKE MORE INFORMATION RELATED TO FAILED AIR BAG DEPLOYMENT AND GMC CHEVY SURBURBAN. I HAVE ALSO SEEN A RECALL ON THE INTERNET WHICH MY VEHICLE FALLS UNDER RELATED TO AIRBAGS. THANK YOU FOR YOUR TIME AND CONSIDERATION.*AK |
| 10194121 | CHEVROLET | SUBURBAN | 1999 | 2007-06-24 | TL*THE CONTACT OWNS A 1999 CHEVROLET SUBURBAN.  WHILE DRIVING 55 MPH, THE CONTACT CRASHED INTO THE FRONT END OF ANOTHER VEHICLE.  THE AIR BAGS FAILED TO DEPLOY.  THE CONTACT WAS SEATED IN THE PASSENGER SEAT AND SUFFERED A CONTUSION ON HER LEFT LEG AND BRUISES ON HER RIGHT LEG.  THE DEALER HAS NOT INSPECTED THE VEHICLE TO DETERMINE THE CAUSE OF FAILURE.  THE VEHICLE WAS DESTROYED.  THE CURRENT AND FAILURE MILEAGES WERE 115,000. |
| 10287421 | CHEVROLET | SUBURBAN | 1999 | 2009-09-25 | DEER ACCIDENT, LOST CONTROL RAN HEAD ON INTO THE CURB, HIT A SIGN. FRAME IS BENT, WINDSHIELD IS SHATTERED AND CAVED IN, FRONT PUSH GUARD IS BENT, AND FRONT PASSENGER FENDER WELL IS CAVED IN. AIRBAGS DID NOT DEPLOY!!! *TR |

| | | | | | |
|---|---|---|---|---|---|
| 10372658 | CHEVROLET | SUBURBAN | 1999 | 2010-12-21 | TL* THE CONTACT OWNS A 1999 CHEVROLET SUBURBAN. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 40 MPH, HE CRASHED INTO THE PASSENGER SIDE OF ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. THE CONTACT AND ANOTHER PASSENGER SUSTAINED MINOR ABRASIONS AND INJURIES TO THE NECK AND BACK. THE DRIVER OF THE SECOND VEHICLE WAS INJURED BUT THE EXTENT OF THE INJURIES WAS UNKNOWN. A POLICE REPORT WAS AVAILABLE. THE VEHICLE WAS TOWED TO AN INDEPENDENT MECHANIC WHERE THE CONTACT WAS INFORMED THAT THE VEHICLE WAS DEEMED AS DESTROYED. THE FAILURE MILEAGE WAS APPROXIMATELY 133,000. UPDATED 03/03/11 |
| 704617 | CHEVROLET | TAHOE | 1999 | 1999-03-04 | THE VEHECLE WAS TRAVELING APPROX 40 MPH WHEN IT HIT BLACK ICE ANDM SLIDE OFF THE ROAD AND HIT A BIG ROCK ON THE PASSENGER SIDE FRONT. THE PASSENGER SIDE FRONT BODY AND AXLE WAS PUSHED BACK APPROX 6 TO 8". NIETHER AIR BAG OPENED PASSENGER OR DRIVER. THE PASSENGER MY WIFE SUFFERED A BROKEN BACK. THE VEHECLE WAS TOTALED BY THE INSURANCE. ONE REASON WE BOUGHT THE CHEVROLET TAHOE WAS BECAUSE OF THE DUEL AIR BAG. I FEEL THAT THE SEVERITY OF THE ACCIDENT THE AIR BAGS SHOULD HAVE OPENED. I HAVE TAKEN PICTURES AND STATE FARM INSURANCE IS ALSO INVESTIGATING THE ACCIDENT FOR THE FAILED AIR BAGS. |
| 757392 | CHEVROLET | TAHOE | 1999 | 2002-01-22 | DRIVERS AIRBAG FAILED TO DEPLOY IN A FRONT END ACCIDENT. *AK |
| 761485 | CHEVROLET | TAHOE | 1999 | 2002-04-19 | THIS WAS A VERY HEAVY FRONT END COLLISION. THE VISUAL DAMMAGE EST. IS 10,000 DOLLARS AND STILL RISING THEY DO NOT HAVE THE INTERNAL DAMAGE EST. I CALLED GM AND FILED A FORMAL COMPLAINT. THEY TOLD ME THAT THEY WERE VERY BUSY AND DID NOT HAVE TIME TO INVESTIGATE THIS FAILURE. THEY ALSO TOLD ME THAT THIS WOULD COST THE TO MUCH MONEY TO DO AN INVESTIGATION. THE REP FROM GM TOLD ME THAT THEY COULD TELL IF THE WRECK WAS BAD ENOUGH BY THE DESCRIPTION OF THE WRECK OVER THE PHONE WITH OUT EVEN SEEING THE WRECK. THE DALLAS FIRE DEPARTMENT, DALLAS POLICE DEPARTMENT, TOW TRUCK DRIVER AND HUFFINES CHEVROLET WHICH IS A CERTIFIED CHEVROLET BODY SHOP SAID THAT THIS WAS WAY TO MUCH DAMAGE TO THE FRONT END AND THEY SHOULD HAVE WENT OFF. BUT COPRORATE GM SAID THAT IT WAS NOT AND THEY COULD TELL THAT WITHOUT SEEING THE VEHICLE. GM ALSO TOLD ME THAT THE OTHER VEHICLE IN THE ACCIDENT TOOK ALL THE IMPACT, WITHOUT EVEN SEEING THE VEHICLES HOW WOULD THEY NOW THIS? I STILL HAVE 10,000 DOLLARS OF FRONT END DAMAGE TO MY VEHICLE AND THAT IS WAY TO MUCH IF THE OTHER VEHICLE TOOK ALL THE IMPACT. THEY REPEATEDLY TOLD ME THAT IT WAS OK THAT THEY DID NOT GO OFF BECAUSE THE REST OF THE SAFTEY EQUIPMENT WORKED "I.E. SEATBELTS, CRUMPLE ZONES" BUT THAT DOES NOT CHANGE THE FACT THAT THE AIRBAG SYSTEM DID NOT WORK AND THIS WOULD HAVE KEPT MY 7 MONTH PREGNANT WIFE FROM HITTING THE DASH BOARD! IF YOU HAVE ANY QUESTION I WILL BE MORE THAN HAPPY TO ANSWER THEM LARGE OR SMALL. THANK YOU!*AK |
| 860103 | CHEVROLET | TAHOE | 1999 | 2000-04-08 | WHILE DRIVING DOWN THE ROAD AT 40 MPH ANOTHER VEHICLE RAN A STOP SIGN, CONSUMER HIT OTHER VEHICLE DIRECTLY IN THE SIDE OF CAR. UPON IMPACT, AIR BAGS DID NOT DEPLOY. CONSUMER FELT AIR BAGS SHOULD HAVE DEPLOYED. *AK |
| 863306 | CHEVROLET | TAHOE | 1999 | | WHILE TRAVELING AT 45 MPH ANOTHER VEHICLE PULLED OUT IN FRONT OF CONSUMER'S VEHICLE RESULTING IN AN ACCIDENT. UPON IMPACT, AIR BAGS DID NOT DEPLOY AT ANY TIME. ALSO, ABS LOCKED UP. PLEASE PROVIDE FURTHER INFORMATION. *AK |
| 878233 | CHEVROLET | TAHOE | 1999 | 2000-12-29 | CONSUMER WAS TRAVELING 55MPH ON HIGHWAY AND ANOTHER VEHICLE RAN IN FRONT, AND CONSUMER'S VEHICLE HIT OTHER VEHICLE BROADSIDE. UPON IMPACT, AIRBAGS DIDN'T GO OFF.*AK |
| 887011 | CHEVROLET | TAHOE | 1999 | 2001-04-13 | CONSUMER WAS TRAVELING ABOUT 30MPH ON HIGHWAY AND WITHOUT PRIOR WARNING FRONT WNT INTO SHOULDERS OF A STEEP HILL. 45 DEGREE ANGLE, AND VEHICLE HIT A TREE. UPON IMPACT, DUAL BAGS DIDN'T GO OFF. DEALERSHIP WAS AWARE OF PROBLEM.*AK |
| 887171 | CHEVROLET | TAHOE | 1999 | 2000-12-27 | VEHICLE HIT A TREE. UPON IMPACT, SEAT BELT DID NOT RETRACT, AND AIR BAGS DID NOT DEPLOY, RESULTING IN INJURIES.*AK |
| 8006232 | CHEVROLET | TAHOE | 1999 | 2002-03-13 | FRONT COLLISION AT 25-30 MPH, AND NEITHER AIRBAG DEPLOYED, CONSUMER SUFFERED MINOR INJURIES.*AK |
| 10040265 | CHEVROLET | TAHOE | 1999 | 2003-09-09 | WHILE DRIVING 40 MPH VEHICLE WAS HIT IN THE FRONT CENTER. BOTH FRONTAL AIR BAGS DID NOT DEPLOY. *AK |
| 10074130 | CHEVROLET | TAHOE | 1999 | 2004-04-27 | DURING A FRONT END COLLISION WHILE DRIVING AT 55 MPH FRONT AIR BAGS DID NOT DEPLOY. THREE PASSENGERS SUSTAINED MINOR INJURIES. CONSUMER HAD THE VEHICLE TOWED TO DEALERSHIP FOR INSPECTION. *AK |
| 10110864 | CHEVROLET | TAHOE | 1999 | 2004-11-15 | THE VEHICLE'S AIR BAGS DID NOT DEPLOY DURING A FRONTAL COLLISION. *NM COUNCIL FOR THE CONSUMER STATED THAT AIR BAGS NEED TO BE TESTED AT CHEVROLET'S EXPENSE. *TC *JB |
| 10265716 | CHEVROLET | TAHOE | 1999 | 2009-02-15 | WHILE DRIVING MY 99 TAHOE DOWN A 4 LANE ROAD, A DRUNK HAD PULLED OUT INFRONT OF ME. I HAD SLAMMED ON MY BRAKES AND SWERVED TO AVOID HIM BUT STILL HIT HIM PRETTY HARD IN HIS REAR QUARTER PANEL. AS A RESULT OF THE ACCIDENT, I HAD SUFFERED A DOUBLE HEMATOMA TO MY BRAIN AND HAD BRAIN SURGERY TO STAY ALIVE. MY COMPLAINT WITH MY TAHOE IS 1) MY AIRBAG IN MY STEERING WHEEL DID NOT DEPLOY. I THINK IF IT DID, MY INJURY WOULD HAVE BEEN AVOIDED. 2) I QUESTION THE STOPPING ABILITY IF MY ANTI DIVE FRONT BRAKES. I WAS ON THE BRAKES HARD WITH THE VEHICLE NOSING DOWN BUT I THINK MY STOPPING DISTANCE SHOULD HAVE BEEN SHORTER. *TR |

| | | | | | |
|---|---|---|---|---|---|
| 10299900 | CHEVROLET | TAHOE | 1999 | 2010-01-10 | TL*THE CONTACT OWNS A 1999 CHEVROLET TAHOE. THE CONTACT WAS DRIVING APPROXIMATELY 15 TO 20 MPH ON NORMAL ROAD CONDITIONS AND  UNEXPECTEDLY,  THE OPPOSING VEHICLE CRASHED INTO THE FRONT END OF THE VEHICLE WHICH RESULTED IN A HEAD ON COLLISION. THE POLICE AND AMBULANCE WERE CALLED TO THE SCENE. THE CONTACT SUSTAINED SEVERE INJURIES. THE AIR BAG FAILED TO DEPLOY WITH THE MASSIVE LEVEL OF IMPACT. THE VEHICLE WAS COMPLETELY DESTROYED. THE VEHICLE WAS TOWED TO A COLLISION CENTER. THE CONTACT HAD CONCERN OF THE SAFETY RISK INVOLVED. THE FAILURE MILEAGE WAS 141,000. |
| 10350098 | CHEVROLET | TAHOE | 1999 | 2009-02-17 | I HAVE A 99 TAHOE THAT I WAS INVOLVED IN AN ACCIDENT. I HIT A CAR WHILE DOING 40MPH THAT HAD PULLED OUT INFRONT OF ME. MY AIR BAGS DIDN'T DEPLOY AND MY SAFETY BELT DIDN'T KEEP ME FROM HITTING THE STEERING WHEEL HARD. UPON REVIEW OF MY SAFETY BELT, I NOTICED THAT IT IS ROUTED INCORRECTLY AT THE TOP HOLDER. IT BINDS ON ITSELF PREVENTING IT FROM RETRACTING. MY PASSENGER SIDE IS ROUTED CORRECTLY AND WORKS PERFECTLY. I SUFFERED A BRAIN INJURY BECAUSE OF THIS AND AM QUITE CONCERNED. *TR |
| 11203728 | CHEVROLET | TAHOE | 1999 | 2019-04-20 | TL* THE CONTACT OWNED A 1999 CHEVROLET TAHOE. WHILE DRIVING 35 MPH, THE CONTACT HAD A HEAD ON COLLISION WITH A LIGHT POLE. THE AIR BAGS DID NOT DEPLOY. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE CONTACT WAS INURED AND RECEIVED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOTALED AND TOWED TO THE CONTACT'S RESIDENCE. AN UNKNOWN DEALER WAS MADE AWARE OF THE FAILURE, BUT DID NOT ASSIST. THE VEHICLE WAS NOT DIAGNOSED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS UNKNOWN. |
| 859422 | CHEVROLET | TRACKER | 1999 | 2000-03-28 | VEHICLE REAR ENDED ANOTHER VEHICLE AT 25 MPH. UPON  IMPACT, BOTH AIR BAGS FAILED TO DEPLOY. DEALER /MANUFACTURER WERE NOT CONTACTED AT THIS TIME.  *AK |
| 865216 | CHEVROLET | TRACKER | 1999 | 2000-06-27 | CONSUMER'S  WIFE  WAS TRAVELING ABOUT 35MPH ON THE HIGHWAYAND  ANOTHER VEHICLE DIDN'T YIELD AND VEERED INTO HER VEHICLE, AND FORCE HER OFF THE ROAD.  THEN SHE  WENT INTO A UTILITY POLE. UPON IMPACT, AIR BAGS DID NOT DEPLOY.  *AK  ALSO HORN IS DIFFICULT TO LOCATE ON THE STEERING WHEEL.  *YH |
| 868967 | CHEVROLET | TRACKER | 1999 | 2000-08-25 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION WITH A DOGE RAM PICK UP AT A IMPACT OF 30-35 MPH, AND AIR BAGS DIDNOT DEPOLY. DEALER NOTIFIED. FEEL FREE TO PROVIDE ANY FURTHER DETAILS. *AK |
| 899309 | CHEVROLET | TRACKER | 1999 | 2001-11-10 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION BETWEEN 35-40 MPH, AND BOTH FRONTAL AIR BAGS DID NOT DEPLOY. DEALER / MANUFACTURER WERE NOTIFIED. FEEL FREE TO PROVIDE ANY FURTHER INFORMATION CONCERNING THIS MATTER. *AK |
| 706419 | GMC | YUKON | 1999 | 1999-04-12 | WE CONTACTED GMC CUSTOMER SERVICE (VICTOR JOHNSON)  AND REQUESTED AN INVESTIGATION. GMC HAS NOW TOLD US THAT SINCE NO ONE WAS FATALLY INJURED THERE WILL BE NO INVESTIGATION. HOW CAN THEY DO THIS? MY WIFE HAS BEEN INJURED - PROBABLY PERMANENTLY- AND WE WANT TO KNOW WHY THEY DID NOT DEPLOY - AS THIS WAS A DIRECT FRONTAL IMPACT. I BELIEVE THAT THE MANUFACTURER HAS AN OBLIGATION TO US AND IS MERELY PLAYING A GAME AT THIS POINT. IS IT IN OUR BEST INTEREST TO HIRE AN ATTORNEY ON THE MATTER OR WHAT SHOULD WE DO? *AK |
| 853931 | GMC | YUKON | 1999 | | OWNER APPLIED BRAKES AND THE VEHICLE KEPT GOING AND HIT ANOTHER VEHICLE.   UPON IMPACT,  NEITHER DRIVER'S SIDE NOR PASSENGER'S SIDE AIRBAGS DEPLOYED.  DEALER HAS SEEN VEHICLE. *AK |
| 862202 | GMC | YUKON | 1999 | 2000-05-17 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION AT APPROXIMATELY 45 MPH WITH ANOTHER VEHICLE. UPON IMPACT, BOTH AIR BAGS FAILED TO DEPLOY. DEALER NOTIFIED. *AK |
| 880890 | GMC | YUKON | 1999 | 2001-02-01 | CONSUMER INVOLVED IN AN ACCIDENT, REARENDED ANOTHER VEHICLE.  VEHICLE TRAVELING AT APPROXIMATELY 50 MPH, AND AIR BAGS DID NOT DEPLOY.  PLEASE FILL IN ANY ADDITIONAL INFORMATION. *AK |
| 8007774 | ISUZU | AMIGO | 1999 | 2002-01-25 | IN A CAR CRASH  AIRBAGS DID NOT DEPLOY. *AK |
| 862789 | ISUZU | RODEO | 1999 | 2000-05-19 | CONSUMER WAS GOING AT ABOUT 55 AND ANOTHER  VEHICLE HIT CONSUMER'S VEHICLE AT ABOUT 85 MPH . CONSUMER'S VEHICLE, IN TURN,  HIT A UTILITY VEHICLE,  AND WENT INTO A GAURDRAIL. UPON IMPACT,  AIRBAGS DIDN'T DEPLOY.  CONSUMER'S VEHICLE WAS TOTALLED. *AK |
| 895855 | ISUZU | RODEO | 1999 | 2001-08-10 | VEHICLE WAS INVOLVED IN A DIRECT FRONTAL IMPACT AT 35MPH. UPON IMPACT,  AIR BAGS DID NOT DEPLOY. PLEASE PROVIDE ADDITIONAL INFORMATION.*AK |
| 10009019 | ISUZU | RODEO | 1999 | | THE VEHICLE WENT AIRBORNE AND LANDED ON THE FRONT END AND THE AIR BAGS FAILED TO DEPLOY.*JB |
| 10019881 | ISUZU | RODEO | 1999 | | WHEN THE BRAKES WERE APPLIED, THE REAR OF THE VEHICLE SLID, AS A RESULT, THE CONSUMER REAR ENDED ANOTHER VEHICLE AND  NONE OF THE AIRBAGS DEPLOYED.    *JB |
| 10044798 | ISUZU | RODEO | 1999 | 2003-10-27 | WHILE DRIVING AT 60 MPH, HIT A DEER, AND NEITHER OF THE AIR BAGS DEPLOYED. DRIVER WORE THE SEAT BELT. *AK |
| 10186592 | ISUZU | RODEO | 1999 | 2007-03-30 | TL*- THE CONTACT  OWNS A 1999 ISUZU RODEO, AND STATED THAT WHILE DRIVING ON THE ROAD AT 30 MPH THE VEHICLE IN FRONT OF THE CONTACT'S  VEHICLE SLAMMED THE BRAKES SUDDENLY, CAUSING THE CONTACT TO DO THE SAME.  THE CONTACT STATED THAT THE VEHICLE HAD SEVERE DAMAGE IN THE FRONT. UPON IMPAQCT,  THE AIRBAGS DID NOT DEPLOY.  THERE WERE NO WARNING LIGHTS CONCERNING THE AIRBAGS BEFORE AND SUBSEQUENT TO THE ACCIDENT. THE CONTACT COULD  PROVIDE PICTURE IF NEEDED. THE FAILURE MILEAGE WAS 96,371 MILES. *AK |

# EXHIBIT B





**2000 ENVOY 4WD (4-DOOR)**

VORTEC 4300 V6 SFI GAS ENGINE

4-SPD AUTO TRANS W/ OVERDRIVE

EXTERIOR  PEWTER METALLIC

INTERIOR  PEWTER INTERIOR TRIM



**GMC**

Division of General Motors Corporation

MANUFACTURER'S SUGGESTED RETAIL PRICE

### STANDARD EQUIPMENT

Items Featured Below are included at NO EXTRA CHARGE in the Standard Vehicle Price Shown at Right

**TRUCK CAPABILITY EQUIPMENT:**
- HIGH INTENSITY HEADLAMPS
- FULL LENGTH STEEL TRUCK FRAME
- ROOF MOUNTED CARGO RACK
- FULL SIZE SPARE TIRE
- ENGINE AND TRANS OIL COOLERS
- HEAVY DUTY BATTERY
- RECOVERY HOOKS
- 8-POINT ELECTRONIC COMPASS
- OUTSIDE TEMPERATURE GAUGE
- TOW/HAUL SHIFT PREFERENCE
- INTEGRAL FOGLAMPS
- PROTECTIVE BODYSIDE CLADDINGS
- 2 SPEED ACTIVE TRANSFER CASE
- HEAVY DUTY TRAILERING PACKAGE
- LOAD LEVELING SUSPENSION
- ON-BOARD AIR COMPRESSOR

**SAFETY & SECURITY FEATURES:**
- DUAL FRONT AIR BAGS
- 4 WHEEL DISC ANTILOCK BRAKES
- PASSLOCK THEFT DETERRENT SYS.

- WINDOW LOCKOUT & CHILD LOCKS
- DAYTIME RUNNING LAMPS

**COMFORT/CONVENIENCE EQUIPMENT:**
- 8-WAY PWR DRIVER SEAT
- 2-POSITION MEMORY DRIVER SEAT
- 8-WAY PWR PASSENGER SEAT
- HEATED PWR LUMBAR FRT SEAT
- ELECTRONIC CLIMATE CONTROL
- REMOTE KEYLESS ENTRY W/PANIC
- BOSE PREMIUM SOUND W/CASSETTE SEEK/SCAN, SSV AND CLOCK
- 6-DISC CD CHANGER
- REAR SEAT AUDIO CONTROLS
- INTERMITTENT WIPER/WASHERS
- DOOR ACTIVATED INTERIOR LAMPS
- SPLIT FOLDING REAR SEAT
- OVERHEAD AND FLOOR CONSOLE
- ELECTROCHROMIC MIRRORS
- HEATED POWER FOLDING MIRRORS
- HOMELINK TRANSMITTER TRIP COMPUTER

Compare this vehicle to others in the FREE FUEL ECONOMY GUIDE available at the dealer

CITY MPG

**16**

HIGHWAY MPG

**20**

Fuel Economy Information

**ACTUAL MILEAGE**
WILL VARY WITH OPTIONS, DRIVING CONDITIONS, DRIVING HABITS AND VEHICLE'S CONDITION. RESULTS REPORTED TO EPA INDICATE THAT THE MAJORITY OF VEHICLES WITH THESE ESTIMATES WILL ACHIEVE BETWEEN

10  AND 16  MPG IN THE CITY AND BETWEEN

17  AND 23  MPG ON THE HIGHWAY.

2000 JIMMY 4WD
4.3 LITER V6 ENGINE
FUEL INJECTION,ELECT W/LOCK UP
4 SPEED TRANSMISSION
CATALYST, FEEDBACK FUEL SYSTEM

ESTIMATED ANNUAL FUEL COST: $1,058

FOR COMPARISON SHOPPING,
ALL VEHICLES CLASSIFIED AS

**SPECIAL PURPOSE**

HAVE BEEN ISSUED MILEAGE RATINGS RANGING FROM

IN  TO  IN  MPG CITY AND

IN  TO  IN  MPG HIGHWAY.

21148

TWA

---

| | |
|---|---|
| **STANDARD VEHICLE PRICE** | **$34,170.00** |
| Options Installed by Manufacturer | |
| MARKETING OPTION PACKAGE - 1SG | NO CHARGE |
| POWER SUNROOF | 750.00 |
| FULL FEATURE BUCKET SEATS | NO CHARGE |
| GVW RATING - 5,350 LBS | NO CHARGE |
| FEDERAL EMISSIONS | NO CHARGE |
| REAR AXLE - 3.42 RATIO | NO CHARGE |
| VORTEC 4300 V6 SFI GAS ENGINE | NO CHARGE |
| 4-SPD AUTO TRANS W/ OVERDRIVE AND ELECTRONIC CONTROL | NO CHARGE |
| LIFTGATE/LIFTGLASS BODY | NO CHARGE |
| RR RADIO CNTRL & EARPHONE JACKS | NO CHARGE |
| ENVOY DECOR | NO CHARGE |
| SOLID COLOR | NO CHARGE |
| **TOTAL OPTIONS** | **$750.00** |

MAXIMUM TOW RATING FOR THIS VEHICLE IS  5,600 LBS/ 2,540KG WITH APPROPRIATELY RATED TRAILER HITCH.  TOW RATING MUST BE REDUCED BY WEIGHT OF PASSENGERS, CARGO AND OPTIONAL EQUIPMENT. SEE DEALER AND OWNER'S MANUAL FOR MORE INFORMATION.

| | |
|---|---|
| **TOTAL VEHICLE & OPTIONS** | **$34,920.00** |
| **DESTINATION CHARGE** | **525.00** |
| **TOTAL VEHICLE PRICE\*** | **$35,445.00** |

DEALER TO WHOM DELIVERED

**BOB SELLERS PONTIAC-GMC TRUCK, INC.**
**P.O. BOX 2070**
**FARMINGTON HILLS, MI 48333-2070**

ORDER NO.
STOCK CODE
DEALER NO. 21148

FINAL ASSEMBLY  MORAINE, OH  U.S.A.

VIN

| | |
|---|---|
| Year: 2004 | Engine: ENGINE, VORTEC 4200 MFI L6 includes transmission oil cooler (275 HP [205.1 kW] @.. |
| Make: Buick | Transmission: TRANSMISSION, 4-SPEED AUTOMATIC, ELECTRONICALLY CONTROLLED WITH ... |
| Model: Rainier 4dr CXL AWD | Exterior: Black |
| VIN: | Interior: Medium Pewter |

## MECHANICAL

· Transfer case, AWD electronic automatic system, variable driving torque percentage
· Alternator, 150 amps
· Battery, heavy-duty, includes rundown protection and retained accessory power
· All-wheel-drive
· GVWR, 5750 lbs.
· Differential, locking, heavy-duty, rear
· Rear axle, 3.73 ratio
· Suspension Package, Premium Smooth Ride
· Suspension, front, double A arm
· Suspension, rear, load-leveling, 5-link solid axle, electronically controlled air suspension
· Trailering equipment, heavy-duty, includes trailering hitch platform, 7-wire harness plus CHMSL wire and heavy-duty flasher
· Trailering wire harness, connector
· Tires, P255/60R17, all-season, blackwall
· Tire, spare, full-size, includes 17" steel wheel located at rear underbody of vehicle
· Wheels, 4 - 17" x 7" custom aluminum, 8-spoke, includes tri-shield center caps and full-size steel spare
· Steering, power
· Brakes, 4-wheel antilock, 4-wheel disc
· Fuel capacity, approximate, 22 gallons

## EXTERIOR

· Luggage rack, rooftop, includes side rails
· Bumpers, front and rear, color-keyed
· Headlamps, dual halogen composite, includes flash-to-pass feature and automatic lamp control
· Daytime running lamps, includes automatic exterior lamp control
· Lamps, cornering
· Fog lamps, front, halogen
· Mirrors, outside rearview, foldaway, heated, with turn signal indicators
· Glass, Solar-Ray deep tinted
· License plate bracket, front, includes cover for states where a front license plate is not required
· Body, liftgate with liftglass, includes electric release and rear-window wiper/washer
· Wipers, intermittent, front

## INTERIOR

· Custom Perforated Leather-appointed seats
· Seats, front leather-appointed reclining buckets, with adjustable head restraints; driver and passenger seat includes 8-way power adjustment and 2- way power lumbar; center console and storage pocket on passenger seat only

· Seat adjuster, power passenger 8-way
· Seats, rear, 2nd row, split-folding
· Floormats, color-keyed, carpeted front and rear, removable
· Steering wheel, leather-wrapped rim, includes accessory controls for audio and Driver Information Center
· Steering column, Tilt-Wheel, adjustable, includes brake/transmission shift interlock
· QuietTuning, includes acoustic laminate in windshield, laminated front door glass, 26 strategically-placed elements of sound insulation, specially- selected quiet-riding tires and exhaust modifications
· Windows, power, includes driver and front passenger, express-down feature and lockout features
· Door locks, power programmable
· Keyless entry, remote, programmable, includes 2 transmitters, panic button and content theft alarm
· Driver Information Center, monitors up to 13 different systems, includes trip computer, fluid levels and door ajar
· OnStar, 1-year Safe and Sound service, includes automatic notification of air bag deployment, emergency services, roadside assistance, stolen-vehicle tracking, AccidentAssist, remote door unlock, remote diagnostics, online concierge and remote horn and lights. Drivers can also opt for other available OnStar services, including making and receiving voice-activated, hands-free phone calls with Personal Calling and getting location-based traffic and weather reports with Virtual Advisor
· Memory Package, 2-position memory, driver seat and outside rearview mirrors
· Cruise control
· Travel Note digital recorder, located in overhead console
· Universal transmitter, HomeLink, includes garage door opener, 3-channel programmable
· Theft-deterrent system, PASSlock
· Theft-deterrent alarm system, content theft alarm
· Air conditioning, dual-zone, automatic, individual climate settings for driver and right front passenger
· Defogger, rear-window, electric
· Sound system, ETR AM/FM stereo with CD and cassette player, includes seek-and- scan, digital clock, auto-tone control, speed-compensated volume, TheftLock, random select, auto-reverse cassette and Radio Data System
· Sound system feature, rear audio controls, includes headphone jacks and controls
· Cupholders, front and rear of center console
· Glovebox, passenger side of instrument panel
· Power outlets, auxiliary, covered, 2 in front bottom of instrument panel, 1 in rear of center console, 12-volt
· Lighting, perimeter with theater dimming, cargo compartment, reading lamps in all rows, door- and tailgate-activated switches, illuminated entry, exit feature and rear map lights
· Console, overhead, custom
· Visors, padded, color-keyed, driver and passenger side with cloth trim, extendable feature, illuminated vanity mirrors
· Cargo storage well

## SAFETY

· Brakes, 4-wheel antilock, 4-wheel disc
· Air bags, frontal, driver and right front passenger
· Daytime running lamps, includes automatic exterior lamp control
· Door locks, child security, rear



| CITY MPG | | HIGHWAY MPG |
|---|---|---|
| **14** | Fuel Economy Information | **19** |

Actual mileage will vary with options, driving conditions, driving habits and vehicle's condition

## *New*

| | |
|---|---|
| **MSRP** | **$37,595.00** |
| **INSTALLED OPTIONS** | |
| Emissions, Federal Requirements | $0 |
| GVWR, 5750 LBS. (2608 KG) | $0 |
| CXL Preferred Equipment Group | $0 |
| • standard equipment | |
| Convenience Package | $150 |
| • convenience net | |
| • rear reversible cargo mat and cargo shade | |
| • rear | |
| Pedals, Power Adjustable | $150 |
| Seats, Heated, Driver And Front Passenger | $275 |
| • separate control for back and seat cushion | |
| Smokers Package | $30 |
| • muffin ashtray and lighter | |
| Sunroof, Power, Tilt Sliding, Electric With Express Open And Wind Deflector | $885 |
| Original Shipping Charge | $685 |
| **RETAIL PRICE (ORIGINALLY NEW)** | **$39,770.00** |

### Get more information on your smartphone:





www.BillMarsh.com
800-596-2774

| | |
|---|---|
| Year: 2012 | Engine: V6 Cylinder Engine |
| Make: Buick | Transmission: TRANSMISSION, 6-SPEED AUTOMATIC |
| Model: Enclave AWD 4dr Premium | Exterior: White Diamond Tricoat |
| VIN: | Interior: Titanium |

## MECHANICAL

· Axle, 3.16 ratio
· All-wheel drive
· Alternator, 170 amps
· Trailering provisions, 2000 lbs. (907 kg)
· GVWR, 6459 lbs. (2930 kg)
· Suspension, Premium Ride, 4-wheel independent
· Steering, power, variable effort
· Exhaust, dual with bright chromed tips

## EXTERIOR

· Luggage rack side rails, roof-mounted, chromed
· Headlights, articulating
· Fog lamps, front, halogen, with projector technology
· Glass, Solar-Ray deep-tinted, rear-side, quarter panel and liftgate
· Wipers, front intermittent with structureless wiper blades
· Wiper, rear intermittent with washer
· Liftgate, rear power

## ENTERTAINMENT

· SiriusXM Satellite Radio is standard on nearly all 2012 GM models. Enjoy a 3-month trial to the 'XM Select' package, with over 170 channels including commercial-free music, all your favorite sports, exclusive talk and entertainment. And now add premium channels to your trial at no-cost. Welcome to the world of satellite radio. (Requires a subscription sold separately by SiriusXM after the trial period. If you decide to continue your service at the end of your subscription, service will automatically renew and bill, at the rates in effect at the time of renewal, until you call SiriusXM at 1-866-635-2349 to cancel. See our Customer Agreement for complete terms at www.siriusxm.com. Available only to those at least 18 and older in the 48 contiguous USA and D.C. Replaced by (UBS) NavTraffic when (UUM) Audio system with Navigation or (U4H) Audio system with Rear Seat Entertainment are ordered.)
· Bluetooth for phone personal cell phone connectivity to vehicle audio system and HMI (Human Machine Inerface)

· QuietTuning Buick exclusive process to reduce, block and absorb noise and vibration to create a quiet interior cabin

## INTERIOR

· Seat adjuster, 4-way power front passenger (fore-aft and recline), power lumbar
· Floor mats, front and rear auxiliary, covering (Floormats first, second and third row.)
· Steering wheel, leather-wrapped with Mahogany wood accents
· Instrumentation includes Driver Information Center, tachometer, speedometer, fuel, coolant temperature, battery, gear selector, outside air temperature and compass display (Digital compass display moves to navigation screen with (UUM) Audio system with Navigation and (U4H) Audio system with Rear Seat Entertainment and Navigation.)
· Instrumentation, engine oil life monitor
· Windows, power with driver Express-Up and -Down features, passenger Express-Down feature
· Universal Home Remote, includes garage door opener, 3-channel programmable
· Theft-deterrent system, vehicle, PASS-Key III, engine immobilizer with content theft alarm
· Air conditioning, tri-zone automatic climate control with individual climate settings for driver and right front passenger and rear seat occupants
· Defogger, rear-window electric
· Glovebox, locking, passenger-side of instrument panel
· Mirror, inside rearview auto-dimming
· Visors, driver and front passenger illuminated vanity mirrors

## SAFETY

· Brakes, 4-wheel antilock, 4-wheel disc
· Air bags, dual-stage frontal and side-impact, driver and front passenger and side curtain for first, second and third row outboard passengers with Passenger Sensing System and roll over protection (Always use safety belts and child restraints. Children are safer when properly secured in a rear seat in the appropriate child restraint. See the Owners Manual for more information.)
· Door locks, rear child security
· Tire Pressure Monitor System



| CITY MPG | | HIGHWAY MPG |
|---|---|---|
| **16** | Fuel Economy Information | **22** |

Actual mileage will vary with options, driving conditions, driving habits and vehicle's condition

## *New*

| MSRP | $45,765.00 |
|---|---|
| **INSTALLED OPTIONS** | |
| Emissions, Federal Requirements | $0 |
| 1 SN Preferred Equipment Group | $0 |
| • Standard Equipment | |
| Wheels, 20" (50.8 CM) Chrome Clad Aluminum | $300 |
| Tires, P255/55 R20 All Season, Blackwall | $0 |
| Wheel, 17" (43.2 CM) Compact Steel Spare Wheel And Tire | $0 |
| White Diamond Tricoat | $795 |
| Titanium, Perforated Leather Seating Surface | $0 |
| Audio System With Rear Seat Entertainment And Navigation | $3,185 |
| Sunroof, Power | $1,400 |
| License Plate Bracket, Front Mounting Package | $15 |
| Navtraffic | $0 |
| Original Shipping Charge | $825 |
| **RETAIL PRICE (ORIGINALLY NEW)** | $52,285.00 |

### Get more information on your smartphone:



# Pilson Auto Centers

pilsonauto.com
217-234-6461

| | |
|---|---|
| **Year:** 2014 | **Engine:** 4 Cylinder Engine |
| **Make:** Buick | **Transmission:** TRANSMISSION, 6-SPEED AUTOMATIC, ELECTRONICALLY CONTROLLED WITH … |
| **Model:** Encore AWD 4dr Leather | **Exterior:** Quicksilver Metallic |
| **VIN:** | **Interior:** Ebony |

## MECHANICAL

· Axle, 3.53 final drive ratio
· Drivetrain, all-wheel drive
· Alternator, 130 amps
· Suspension, Ride and Handling
· Steering, power, variable effort, electronic
· Exhaust system, rear exit
· Exhaust tip, styled stainless-steel
· Keys, ignition, foldable
· Mechanical jack

## EXTERIOR

· Tires, P215/55R18 all-season, blackwall
· Tire, compact spare 16" , located under cargo floor
· Fascias, front and rear accent color includes rocker moldings
· Headlamps, halogen composite projector beam with blue translucent ring and automatic exterior lamp control
· Fog lamps, front
· Lamp, center high-mounted stop/brake
· Glass, acoustic, laminated
· Glass, deep-tinted
· Windshield, solar absorbing
· Mirrors, outside heated power-adjustable, body-color, manual-folding with turn signal indicators
· Door handles, body-color with chrome strips
· Wipers, front intermittent with pulse washers
· Wiper, rear intermittent
· Vehicle protection, corrosion preventative

## ENTERTAINMENT

· Antenna, roof-mounted
· Audio system feature, 6-speaker system
· Audio system feature, color display, 7" diagonal
· QuietTuning Buick exclusive process that consists of acoustically enhanced windshield and side glass, along with numerous noise canceling acoustic treatments to reduce, block and absorb noise and vibration to create a quiet interior cabin
· Noise control system, active noise cancellation

## INTERIOR

· Memory Package driver side "presets" for seat position
· Seats, heated driver and front passenger
· Seat adjuster, driver 6-way power with manual recline and power lumbar adjustment
· Seat adjuster, front passenger 6-way power with manual recline and power lumbar adjustment
· Seatback, passenger flat-folding
· Headrests, 2-way adjustable, up/down
· Door sill plate cover, front
· Steering column, tilt and telescopic, adjustable

· Steering wheel, leather-wrapped 3-spoke, color-keyed with theft-deterrent locking feature
· Steering wheel, heated
· Steering wheel controls, mounted audio and phone interface controls
· Driver Information Center includes tachometer, speedometer, fuel, coolant temperature, battery and compass
· Instrumentation, outside temperature display, located on audio system
· Instrumentation, analog with mpg speedometer and tachometer
· Oil life monitoring system
· Cruise control, electronic with set and resume speed
· Air conditioning, dual-zone automatic climate control with individual climate settings for driver and right front passenger
· Air filter, particle
· Defogger, rear-window electric
· Shift knob, satin silver and chrome
· Glovebox, dual
· Power outlet, 120-volt, located on the rear of center console
· Mirror, inside rearview auto-dimming
· Visors, driver and front passenger illuminated vanity mirrors, covered
· Lighting, interior, dimming instrument panel cluster
· Lighting, interior, Ice Blue ambient, located on instrument panel
· Lighting, interior, overhead courtesy lamp
· Lighting, interior, rear cargo compartment lamp
· Cargo storage, tray under rear floor
· Cargo cover, rear, stowable and removable
· Side Blind Zone Alert

## SAFETY

· Brakes, 4-wheel antilock, 4-wheel disc
· StabiliTrak, stability control system
· Daytime Running Lamps, reduced intensity low beam
· Air bags, frontal and knee for driver and front passenger, side-impact seat-mounted and roof rail for front and rear outboard seating positions
· Air bag, Passenger Sensing System, sensor indicator inflatable restraint, front passenger/child presence detector
· Safety belts, 3-point, driver and front passenger height-adjustable with load limiters
· Safety belts, 3-point rear, all seating positions
· Restraint provisions, child, Isofix 2 point only, point/latch includes 3 top tether points
· Rear Cross-Traffic Alert
· Rear Vision Camera
· Door locks, child security, rear, electrical
· Tire Pressure Monitor, manual learn
· Horn, dual note tone



| **CITY MPG** | | **HIGHWAY MPG** |
|---|---|---|
| **23** | Fuel Economy Information | **30** |

Actual mileage will vary with options, driving conditions, driving habits and vehicle's condition

## INSTALLED OPTIONS

| | |
|---|---|
| Emissions, Connecticut, Delaware, Maine, Maryland, Massachusetts, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont And Washington State Requirements | $0 |
| 1 SL Preferred Equipment Group | $0 |
| • Standard Equipment | |
| Quicksilver Metallic | $0 |
| • (BT3) Dark Argent Metallic lower accent color | |
| Dark Argent Metallic Lower Accent Color | included |
| Ebony, Leather Appointed Seats | $0 |
| Audio System With Navigation, Am/Fm/Siriusxm Stereo, Single CD Player And MP3 Player | $795 |
| • navigation | |
| • IntelliLink 7" diagonal color LCD display | |
| • GPS navigation system | |
| • USB port | |
| • Radio Data System (RDS) and auxiliary input jack | |
| License Plate Bracket, Front Mounting Package | $0 |
| Original Shipping Charge | $925 |



## www.creditnow.com
## 866-864-9899

Year:  2012
Make:  Cadillac
Model:  Escalade 2WD 4dr Platinum Edition
VIN:

Engine:  8 Cylinder Engine
Transmission:  TRANSMISSION, 6-SPEED AUTOMATIC, HEAVY-DUTY, 6L80E, ELECTRONICALLY..
Exterior:  White Diamond Tricoat
Interior:  Cocoa/Light Linen

## MECHANICAL

· Throttle control, electronic
· Cooling, external engine oil cooler, heavy-duty
· Cooling, external transmission oil cooler, heavy-duty air-to-oil
· Rear wheel drive
· Differential, heavy-duty locking rear
· Rear axle, 3.42 ratio
· Battery, heavy-duty with rundown protection and retained accessory power
· Alternator, 160 amps
· Trailering equipment, heavy-duty includes trailering hitch platform, 7-wire harness with independent fused trailering circuits and 7-way sealed connector
· GVWR, 7100 lbs.
· Suspension, front independent, SLA, coil over shock and stabilizer bar
· Suspension, rear 5-link coil springs
· Automatic level control, heavy-duty, air
· Steering, power, rack-and-pinion
· Exhaust, dual-outlet stainless-steel

## EXTERIOR

· Tires, P285/45R22, all-season, blackwall TL AL2
· Tire inflation kit
· Fascia, front, body-color
· Fascia, rear, body-color
· Moldings, color-keyed bodyside with chrome accents
· Headlamps, LED
· Headlamps, Twilight Sentinel automatic delay
· Headlamps, IntelliBeam
· Fog lamps, front rectangular halogen, integral in front fascia
· Tail lamps, LED illumination
· Mirrors, outside heated power-adjustable, power-folding and driver-side auto-dimming, color-keyed with integrated turn signal indicators, ground illumination and programmable to provide curb view when in reverse
· Wipers, front intermittent

· Wiper, rear intermittent with washer
· Door handles, chrome
· Body, power liftgate

## ENTERTAINMENT

· Bluetooth for phone, personal cell phone connectivity to vehicle audio system and HMI
· NavTraffic is available in over 100 markets and works with your vehicle's navigation system to give you continuously updated traffic data right when you need it most - while you're driving. You'll avoid traffic tie-ups, save time and gas by getting alternate routes, and, in some cases, receive traffic speed and drive-time information. Plus, you can use NavTraffic at the same time you're enjoying SiriusXM Satellite Radio. You'll find that once you start using NavTraffic, you won't want to drive without it.
· Audio system feature, Bose 5.1 Cabin Surround Sound system with 10 speakers

## INTERIOR

· Seat release, second row, power for tumble and fold
· Floor covering, color-keyed carpeting
· Steering wheel, power-tilt, color-keyed with wood and leather-wrapped rim, locking.
· Steering wheel controls, mounted audio and Driver Information Center controls
· Instrumentation, analog with speedometer, odometer, fuel level, engine temperature and tachometer
· Windows, power with driver and front passenger Express-Up/Down and lockout features
· Pedals, power-adjustable for accelerator and brake
· Remote vehicle start, adaptive
· Cruise control, electronic with set and resume speed
· Theft-deterrent system, vehicle, PASS-Key III+
· Cup holders, quad front, dual second row and single third row
· Cup holders, heated and cooled
· Mirror, inside rearview auto-dimming, includes OnStar controls.
· Visors, driver and front passenger illuminated vanity mirrors with extenders

## SAFETY

· Brakes, 4-wheel antilock, 4-wheel disc, VAC power
· Daytime Running Lamps with automatic exterior lamp control
· Air bags, head curtain side-impact, first, second and third row outboard seating positions with rollover sensor
· Air bags, seat-mounted side-impact, driver and right-front passenger for thorax and pelvic protection
· Rear Park Assist
· Rear Vision Camera
· Safety belts, first and second row belts to body, third row belts to seat, lap and shoulder all seating positions
· Door locks, child rear security



| CITY MPG | HIGHWAY MPG |
|----------|-------------|
| **14** | **18** |

Actual mileage will vary with options, driving conditions, driving habits and vehicle's condition

# *New*

| MSRP | **$79,945.00** |
|------|----------------|
| **INSTALLED OPTIONS** | |
| Emissions, Federal Requirements | $0 |
| Platinum Edition Preferred Equipment Group | $0 |
| • Standard Equipment | |
| White Diamond Tricoat | $0 |
| Cocoa/Light Linen, Tehama Full Leather Seats With Mini Perforated Inserts | $0 |
| Audio System With Navigation, Compact Flash, Am/Fm/Siriusxm Stereo With MP3/CD/DVD Video/Audio Changer | $0 |
| Lpo, Wheel Locks | $55 |
| Original Shipping Charge | $995 |
| **RETAIL PRICE (ORIGINALLY NEW)** | **$80,995.00** |

## Get more information on your smartphone:





www.AtlantaAutos.com
678-213-4455

MonroneyLabels.com

| Year: | 2005 | Engine: | 8 Cylinder Engine |
| Make: | GMC | Transmission: | TRANSMISSION, 4-SPEED AUTOMATIC , electronically controlled with overdrive. |
| Model: | Yukon XL 4dr 1500 4WD SLT | Exterior: | Sport Red Metallic |
| VIN: | | Interior: | Pewter/Dark Pewter |

## MECHANICAL

· Battery, heavy-duty, 600 cold-cranking amps, includes rundown protection and retained accessory power
· Alternator, 160 amps
· Trailering wiring harness, 7-wire
· Recovery hooks, 2 front, frame-mounted
· GVWR, 7200 lbs.
· Suspension Package, Premium Smooth Ride, includes 46mm diameter high pressure gas shocks
· Suspension, front, independent torsion bar, and stabilizer bar
· Suspension, rear, multi-link with coil springs
· Tire carrier, lockable, outside spare, winch-type mounted under frame at rear
· Steering, power
· Fuel capacity, approximate, gallon 31
· Exhaust, aluminized stainless-steel muffler and tailpipe
· Tools, mechanical jack and wheel wrench, stored in rear quarter trim

## EXTERIOR

· Luggage rack, roof-mounted, Black
· Bumper, front, chrome
· Bumper, rear, chrome step, includes pad
· Air dam, Gray
· Moldings, bodyside, body-color, with bright insert
· Grille, chrome surround
· Assist steps, Black, mounted between front and rear wheels at bottom of rocker panel
· Headlamps, dual halogen composite, includes flash-to-pass feature and automatic lamp control
· Fog lamps, front, rectangular, halogen
· Glass, Solar-Ray deep tinted
· Body, liftgate with liftglass, rear door system, includes rear-window wiper/washer

## INTERIOR

· SLT decor
· Seats, middle leather appointed 60/40 split-folding bench, 3-passenger with center armrest, storage tray and rear passenger easy entry
· Seats, rear 3rd row vinyl bench, 3-passenger, 1-piece removable

· Cupholders, in front seating area
· Cupholders, in rear of floor console
· Cupholders, driver and passenger side in 3rd row side trim
· Smokers Package, includes ashtray and lighter
· Floor covering, color-keyed carpeting
· Floormats, color-keyed, carpeted front and 2nd row, removable
· Steering column, Tilt-Wheel, adjustable, includes brake/transmission shift interlock
· Steering wheel, leather-wrapped rim, Black
· Steering wheel, mounted controls, includes audio and driver information center controls
· Driver Information Center, full functionality, monitors numerous systems
· Tire pressure monitoring system
· Instrumentation, analog, includes speedometer, odometer with trip odometer, fuel level, voltmeter, engine temperature, oil pressure and tachometer
· Warning tones, headlamp on, key-in-ignition, buckle-up reminder, turn signal on
· Windows, power, includes driver express-down and lockout features
· Cruise control, electronic with set and resume speed, includes telltale in instrument panel cluster
· Heater and defogger, includes front and side window defoggers, rear passenger heating ducts and heater, rear auxiliary
· Defogger, rear-window, electric
· Sound system feature, Bose Premium speaker system, 9 speakers, includes subwoofer in center console
· OnStar, 1-year Safe and Sound Service, includes automatic notification of air bag deployment, stolen vehicle tracking, emergency services, roadside assistance, remote door unlock, remote horn and lights, GM Goodwrench remote diagnostics, AccidentAssist and online concierge. Drivers can also obtain the available voice-activated, hands-free Personal Calling service and Virtual Advisor that provides location-based traffic and weather reports and other personalized information
· Door trim, lights on front doors, side reflectors on rear doors
· Armrests, driver and passenger doors, padded
· Mirror, inside rearview, electrochromic , 8-point compass, outside temperature indicator and right front passenger air bag status
· Visors, padded, Shale-colored, driver and passenger side with cloth trim, extenders, illuminated vanity mirrors and corner storage pockets on back of visors
· Assist handles, front passenger and outboard 2nd row seats
· Coat hooks, driver and passenger side, rear seat and cargo area
· Storage bin, behind rear driver side quarter panel

## SAFETY

· Air bags, frontal, dual-stage, driver and right front passenger, includes Passenger Sensing System
· Brake/transmission shift interlock



| CITY MPG | | HIGHWAY MPG |
|---|---|---|
| **14** | Fuel Economy Information | **18** |

Actual mileage will vary with options, driving conditions, driving habits and vehicle's condition

# *New*

| MSRP | $42,155.00 |
|---|---|
| **INSTALLED OPTIONS** | |
| Suspension Package, Autoride | included |
| Emissions, Federal Requirements | $0 |
| SLT Preferred Equipment Group | $5,080 |
| Tires, P265/70 R17, All Season, White Outlined Letter | $125 |
| Seats, Front Leather Seating Surfaces Power Reclining Full Feature Buckets | included |
| Sound System, Etr Am/Fm Stereo With 6 Disc CD Changer | included |
| Wheels, 4 17" X 7.5" (43.2 CM X 19.1 CM) 6 Spoke Premium Aluminum Ultra Bright Polish | $645 |
| Safe And Secure Package | $1,470 |
| Sun, Sound And Entertainment Package | $2,720 |
| Trailering Equipment, Heavy Duty | $330 |
| Air Cleaner, High Capacity | $0 |
| Cooling, External Transmission Oil Cooler, Heavy Duty Air To Oil | included |
| Cargo Package | included |
| Mirrors, Outside Rearview, Power Folding, Power Adjustable, Heated, Color Keyed, Driver Side Electrochromic | included |
| Air Bags, Side Impact, Driver And Right Front Passenger | included |
| Entertainment System, Rear Seat | included |
| Pedals, Power Adjustable | included |
| Sound System Feature, XM Satellite Radio. | included |
| Sunroof, Power, Tilt Sliding, Electric | included |
| Universal Transmitter, Homelink | included |
| Customer Dialogue Network | $0 |
| Original Shipping Charge | $850 |
| **RETAIL PRICE (ORIGINALLY NEW)** | $53,375.00 |



www.BillMarsh.com
800-596-2774

Year: 2007
Make: GMC
Model: Acadia FWD 4dr SLT
VIN:

Engine: V6 Cylinder Engine
Transmission: Automatic 6-spd
Exterior: Liquid Silver Metallic
Interior: Ebony

## MECHANICAL

· Axle, 3.16 ratio
· Front wheel drive
· Alternator, 170 amps
· GVWR, 6400 lbs. (2903 kg)
· Suspension, Ride and Handling
· Steering, power, variable effort
· Exhaust, double dual with chrome tips

## EXTERIOR

· Spoiler, rear
· Roof rails, brushed aluminum, longitudinal
· Moldings, body-color bodyside
· Headlamps, dual halogen projector lamp
· Headlamp control, automatic on and off
· Fog lamps, front round halogen
· Glass, Solar-Ray deep-tinted (all windows except light-tinted glass on windshield and driver- and front passenger-side glass)
· Door handles, chrome (Bright beltline molding.)
· Wipers, front intermittent with washers
· Wiper, rear intermittent with washer
· Body, manual rear liftgate

## INTERIOR

· Seats, heated driver and front passenger
· Console, front center with 2 cup holders and storage

· Cup holders, 2 front on the floor console
· Cup holders, 2 in the second row
· Floor mats, color-keyed carpeted front, second and third row, removable
· Floor covering, color-keyed carpeting
· Insulation, acoustical package
· Steering wheel, leather-wrapped with redundant audio controls
· Steering wheel, Tilt-Wheel and telescopic with brake/transmission shift interlock
· Instrumentation, 5-gauge with Enhanced Driver Information Center and outside temperature indicator
· Tire Pressure Monitoring System
· Cruise control, electronic with set and resume speed
· OnStar, 1-year of Directions and Connections plan. Includes the innovative easy to use Turn-by-Turn Navigation services which provide voice-guided directions (where available). Also includes Automatic Notification of Air Bag Deployment, Stolen Vehicle Location Assistance, Emergency Services, Roadside Assistance, Remote Door Unlock, OnStar Vehicle Diagnostics, Hands-Free Calling, AccidentAssist, Remote Horn and Lights, Information and Convenience Services, and Driving Directions (OnStar services require vehicle electrical system (including battery), wireless service and GPS satellite signals to be available and operating for features to function properly. OnStar acts as a link to existing emergency service providers. Stolen Vehicle Location Assistance and Remote Door Unlock success varies with conditions. OnStar Vehicle Diagnostic available on most 2004 MY and newer GM vehicles. Diagnostic capability varies by model. Turn-by-Turn Navigation requires ABS and is not available in certain areas. Visit onstar.com or call 1-888-466-7827 for system limitations and details)
· Universal Home Remote, includes garage door opener, 3-channel programmable
· Theft-deterrent system, vehicle, PASS-Key III, engine immobilizer
· Defogger, rear-window, electric
· Audio system controls, rear with 2 headphone jacks (headphones not included) and controls for volume, station selection and media
· Antenna, Quad-Band for AM/FM stereo and OnStar
· Mirror, inside rearview auto-dimming with 8-point compass display
· Visors, driver and front passenger, padded with cloth trim, color-keyed
· Cargo storage, under rear floor

## SAFETY

· Door locks, rear child security
· Horn, dual-note



| CITY MPG | HIGHWAY MPG |
|---|---|
| **16** | **22** |

Actual mileage will vary with options, driving conditions, driving habits and vehicle's condition

## *New*

| MSRP | $33,225.00 |
|---|---|
| **INSTALLED OPTIONS** | |
| Body, Power Rear Liftgate | included |
| Emissions, Federal Requirements | $0 |
| SLT 2 Preferred Equipment Group | $0 |
| Tires, P255/55 R19 H Rated | $0 |
| Audio System With Navigation, Am/Fm Stereo With MP3 Compatible CD/DVD Player And DVD Based Navigation | $2,145 |
| Wheels, 4 19" X 7.5" (48.3 CM X 19.1 CM) Machined Ultrabright Aluminum | $1,295 |
| Mirrors, Outside Heated Power Adjustable, Power Folding And Driver Side Auto Dimming, Body Color | included |
| Audio System Controls, In The Rear Cargo Area | $150 |
| Cargo Package | included |
| Convenience Package | included |
| Trailering Package | $425 |
| Trailer Hitch, Factory Installed | included |
| Entertainment System, Rear Seat DVD Player | $1,295 |
| Audio System Feature, Bose Advanced 10 Speaker System | $0 |
| XM Satellite Radio. | included |
| Antenna, Quad Band | included |
| Head Up Display | $350 |
| Power Outlet, 3 Prong Household Style, 115 Volt | included |
| Remote Vehicle Start | included |
| Seat, 8 Way Power Driver | included |
| Seat, 4 Way Power Passenger | included |
| Sunroof, Dual Skyscape 2 Panel Power, Tilt Sliding Front And Fixed Rear | $1,300 |
| Washer Nozzles, Heated Windshield | included |
| Original Shipping Charge | $735 |
| **RETAIL PRICE (ORIGINALLY NEW)** | $40,920.00 |



www.BillMarsh.com
800-596-2774

| Year: 2009 | Engine: 8 Cylinder Engine |
|---|---|
| Make: GMC | Transmission: TRANSMISSION, 6-SPEED AUTOMATIC, HEAVY-DUTY, ELECTRONICALLY CONTR. |
| Model: Yukon XL Denali AWD 4dr 1500 | Colors: Summit White / Ebony |
| VIN: | Mileage: 200,006 |

Stock #: 2019-321

## MECHANICAL

- Rear axle, 3.42 ratio
- Tow/haul mode selector button located at end of shift lever
- Cooling, external engine oil cooler, heavy-duty air-to-oil integral to driver side of radiator
- Cooling, auxiliary external transmission oil cooler, heavy-duty air-to-oil
- Transfer case, AWD, electronic automatic control
- All-wheel drive
- Alternator, 160 amps
- Recovery hooks, 2 front, frame-mounted
- Differential, heavy-duty locking rear
- GVWR, 7400 lbs.
- Suspension Package, Autoride, bi-state variable shock dampening and rear air-assisted load-leveling includes automatic air level control
- Suspension, front coil-over-shock with stabilizer bar
- Suspension, rear multi-link with coil springs
- Trailering equipment, heavy-duty includes trailering hitch platform, 7-wire harness with independent fused trailering circuits mated to a 7-way sealed connector and 2" trailering receiver
- Steering, power
- Brakes, 4-wheel antilock, 4-wheel disc
- Exhaust, aluminized stainless-steel muffler and tailpipe
- Tools, mechanical jack and wheel wrench stored in rear quarter trim

## EXTERIOR

- Wheels, 4-20" x 8.5" chrome aluminum
- Tires, P275/55R20 all-season, blackwall
- Wheel, 17" full-size, steel spare
- Tire, spare P265/70R17
- Tire carrier, lockable outside spare winch-type mounted under frame at rear
- Fascia, front color-keyed
- Fascia, rear color-keyed
- Luggage rack, roof-mounted, body-color with bright accent
- Luggage rack center rails
- Moldings, body-color bodyside with bright inserts
- Grille, chrome surround
- Assist steps, Black with chrome insert, mounted between the front and rear wheels
- Headlamps, projector beam with automatic exterior lamp control and flash-to-pass feature
- Fog lamps, front round, halogen
- Mirrors, outside heated power-adjustable, power-folding and driver-side auto-dimming, body-color, with integrated turn signal indicators, ground illumination and curb-tilt
- Glass, Solar-Ray deep-tinted
- Wipers, front intermittent, Rainsense
- Wiper, rear intermittent with washer
- Liftgate with liftglass, rear door system with rear-window wiper/washer
- Liftgate, rear power-operated controlled from front overhead console, remote key fob or button inside liftgate

## ENTERTAINMENT

- Audio system, AM/FM stereo with MP3 compatible 6-disc in-dash CD changer seek-and-scan, digital clock and auto-tone control
- Audio system feature, Bose Centerpoint Surround Sound 10-speaker system
- XM Radio, XM Radio includes 3 trial months of service. XM tune your world on with commercial-free music channels from Rock to Jazz, Country to Classical, Latin Pop to Hip Hop, and virtually everything in between, all in amazing digital sound. Turn on your favorite Sports with every Major League Baseball game from Opening Day until the World Series, NHL Hockey, the PGA TOUR and college football and basketball. Plus XM brings you the biggest names in news and talk, outrageous comedy, award-winning family programming -- wherever you go from coast to coast. Exclusive live concerts, Oprah and Friends, Radio Disney, and so much more. Find what turns you on
- Audio system controls, rear with 2 headphone jacks , power outlet and controls for volume, station selection and media
- Bluetooth for phone personal cell phone connectivity to vehicle audio system

## INTERIOR

- Seats, front bucket with leather-appointed seating, 12-way power driver and front passenger seat adjusters, including power lumbar control, power recline, heated seat cushion and seatbacks, 2-position driver memory, adjustable head restraints, storage pockets and floor console
- Seat adjuster, driver power
- Seat adjuster, front passenger power

- Seats, heated second row
- Seat release, second row, power release only
- Seats, third row 50/50 split-bench with vinyl, 3-passenger removable, all- belts-to-seat
- Console, floor with storage area, 4 cup holders and integrated second row audio and HVAC controls
- Cup holders, in front seating area
- Cup holders, in rear of floor console
- Cup holders, driver and passenger-side in third row side trim
- Floor covering, color-keyed carpeting
- Floor mats, color-keyed carpeted front and second row removable
- Acoustical Insulation Package, premium
- Steering column, Tilt-Wheel, adjustable with brake/transmission shift interlock
- Steering wheel, Deluxe, leather-wrapped with power-tilt
- Steering wheel, heated
- Steering wheel controls, mounted audio and cruise controls includes Driver information Center controls
- Driver Information Center, full-functionality included with temperature and compass
- Instrumentation, analog with speedometer, odometer with trip odometer, fuel level, voltmeter, engine temperature, oil pressure and tachometer
- Warning tones headlamp on, key-in-ignition, driver and passenger buckle up reminder and turn signal on
- Windows, power with driver Express-Down and lockout features
- Door locks, power programmable with lockout protection
- Remote vehicle starter system includes Remote Keyless Entry
- Pedals, power-adjustable for accelerator and brake, includes Rear Parking Assist
- Universal Home Remote includes garage door opener, 3-channel programmable
- Cruise control, electronic with set and resume speed
- Air conditioning, tri-zone automatic climate control with individual climate settings for driver and right-front passenger
- Air conditioning, rear auxiliary
- Heater, rear auxiliary with rear passenger heating ducts
- Defogger, rear-window electric
- Rear Parking Assist, Ultrasonic with rearview LED display and audible warning
- Theft-deterrent system, vehicle, PASS-Key III
- Door trim, side reflectors on the rear doors
- Armrests, driver and passenger doors, padded
- Mirror, inside rearview auto-dimming
- Console, overhead mini with map lights
- Visors, driver and front passenger illuminated vanity mirrors, padded with cloth trim, extends on rod, Shale-colored
- Assist handles, front passenger and second row outboard
- Coat hooks, driver- and passenger-side rear seat and cargo area
- Lighting, interior with dome light, driver- and passenger-side door switch with delayed entry feature, cargo lights, door handle or Remote Keyless Entry-activated illuminated entry and map lights in front and second seat positions
- Power outlets, 4 auxiliary with covers, 12-volt, 3 in floor console, 1 in cargo area
- Storage bin, behind driver-side rear quarter panel
- Cargo mat

## SAFETY

- StabiliTrak, stability control system with traction control
- Air bags, dual-stage frontal, driver and right-front passenger with Passenger Sensing System
- Air bags, head curtain side-impact, first and second row outboard seating positions with rollover sensor, includes third row seating positions with 3-passenger third row bench seat
- OnStar, 1-year of Directions and Connections plan. Includes the innovative easy to use Turn-by-Turn Navigation services which provide voice-guided directions. Also includes Automatic Crash Notification, Automatic Notification of Air Bag Deployment, Stolen Vehicle Location Assistance, a full list of Emergency Services, Roadside Assistance, Remote Door Unlock, OnStar Vehicle Diagnostics, Hands-Free Calling, AccidentAssist, Remote Horn and Lights, Information and Convenience Services, and Driving Directions
- LATCH system for child safety seats
- Tire Pressure Monitoring System



| **CITY MPG** | Fuel Economy Information | **HIGHWAY MPG** |
|---|---|---|
| **12** | | **19** |

Actual mileage will vary with options, driving conditions, driving habits and vehicle's condition

# *New*

| | |
|---|---|
| **MSRP** | **$55,935.00** |
| **INSTALLED OPTIONS** | |
| Emissions, Federal Requirements | $0 |
| Preferred Equipment Group | $0 |
| • standard equipment | |
| Solid Paint | $0 |
| Summit White | $0 |
| Ebony, Perforated Nuance Leather Appointed Seat Trim | $0 |
| Audio System With Navigation, Am/Fm Stereo With MP3 Compatible CD/DVD Player And DVD Based Navigation | included |
| Sun, Entertainment And Destinations Package | $4,790 |
| • (UVB) AM/FM stereo MP3 compatible CD/DVD player and DVD-based navigation | |
| • (U42) rear seat entertainment system | |
| • (UVC) rearview camera system and (CF5) power sunroof | |
| • (CF5) power sunroof | |
| Sunroof, Power, Tilt Sliding | included |
| • express-open and close and wind deflector | |
| License Plate Bracket, Front | $15 |
| Entertainment System, Rear Seat DVD Player | included |
| • remote control | |
| • overhead display | |
| • 2 sets of 2-channel wireless infrared headphones and auxiliary audio/video input jacks | |
| Seats, Heated And Cooled, Seat Cushion And Seat Back For Driver And Front Passenger | $650 |
| Rearview Camera System | included |
| XM Navtraffic | $0 |
| Customer Dialogue Network | $0 |
| Original Shipping Charge | $950 |
| **RETAIL PRICE (ORIGINALLY NEW)** | **$62,340.00** |



## www.redsautoandtruck.com
## 303-726-5520

# EXHIBIT C

1

2

3

4

5

6

7

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

Ramiro Pereda, individually and on behalf
of all others similarly situated,

**CLRA VENUE
DECLARATION OF RAMIRO
PEREDA PURSUANT TO
CALIFORNIA CIVIL CODE
SECTION 1780(d)**

Plaintiffs,

10

11

v.

12

GENERAL MOTORS LLC, et al.,

13

Defendants.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2274330.1

1        I, RAMIRO PEREDA, declare as follows:

2    1.  I have personal knowledge of the facts stated herein and, if called upon to do

3    so, could competently testify thereto.

4    2.  I am a Plaintiff in the above-captioned action.

5    3.  I submit this declaration in support of the Complaint in this case, which is

6    based in part on violations of the Consumers Legal Remedies Act, California Civil

7    Code section 1750 *et seq*.

8    4.  Venue is proper in this judicial District because Defendants conduct business

9    in the counties comprising the Northern District of California. I reside in Alameda

10    County and my vehicle that is the subject of this action is situated in this district.

11    5.  The Complaint has been filed in the proper place for trial of this action.

12        I declare under penalty of perjury under the laws of the United States that the

13    foregoing is true and correct to the best of my knowledge.

14        Executed on August 10, 2021 in San Leandro, California.

15

16                By: _____

17                   Ramiro Pereda

18

19

20

21

22

23

24

25

26

27

28

CLRA VENUE DECLARATION OF ROMERO PEREDA PURSUANT TO
CALIFORNIA CIVIL CODE SECTION 1780(D)