UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES MILSTEAD, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GENERAL MOTORS LLC, et al.,<br><br>Defendants. | Case No. 21-cv-06338-JST<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 188 |

Before the Court is Defendants General Motors LLC, General Motors Holdings LLC, and General Motors Company's (collectively "GM") motion to dismiss.[1] ECF No. 188. The Court will grant the motion.

I.  **BACKGROUND**

A.  **Factual Background**[2]

Plaintiffs James Milstead, Arthur Ray, and Richard Vargas bring this action on behalf of themselves and a class of "persons and entities that purchased or leased" GM trucks or SUVs in California that were model years 1999 through 2018 (the "Class Vehicles"). ECF No. 180 ¶¶ 160–162.

Because the facts are well-known to the parties and the Court has summarized Plaintiffs' allegations in detail in its prior motion to dismiss order, ECF No. 177, the Court will not elaborate them here. In summary, the Class Vehicles have a defect that causes their airbag control unit, also known as the Sending and Diagnostic Module ("SDM"), to "prematurely close the time window to

---

[1] The Court finds the motion suitable for disposition without oral argument and hereby vacates the August 24, 2023 motion hearing. *See* Fed. R. Civ. P. 78(b); Civil L.R. 7-1(b).
[2] For the purposes of resolving the present motion, the Court accepts as true the factual allegations in the second amended complaint ("SAC"), ECF No. 180.

engage airbags and seatbelts in a crash, putting occupants of the Class Vehicles in serious danger." ECF No. 180 ¶ 3. Specifically, "the software program that controls the SDM is calibrated in such a way that it prevents airbag and seatbelt deployment just 45 milliseconds after a crash has begun." *Id.* GM had "knowledge of" the defect, but it "concealed the defect and failed to recall or repair the Class Vehicles." *Id.* ¶ 11.

**B.      Procedural Background**

On August 17, 2021, 72 named plaintiffs—3 from California and 69 from other states—filed this action. ECF No. 1. A first amended complaint ("FAC") was filed on October 26, 2021. ECF No. 12.

GM moved to dismiss the FAC, arguing that: (1) the Court could not exercise jurisdiction over claims brought by the non-California named Plaintiffs; (2) the Court should transfer the case to the Eastern District of Michigan; and (3) the California Plaintiffs' claims should be dismissed because they did not plausibly allege a defect in their vehicles and the complaint failed to state a claim under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. ECF No. 150 at 21–42.

The Court granted GM's motion to dismiss the FAC. ECF No. 177. The Court dismissed the non-California named plaintiffs for lack of jurisdiction, *id.* at 6–8, and dismissed the complaint for failure to allege a plausible defect, *id.* at 10–14. The Court also held that: (1) Plaintiffs adequately pleaded their fraudulent omission claims, *id.* at 14–18; (2) Plaintiffs adequately pleaded the absence of an adequate remedy at law, *id.* at 18–19; (3) Plaintiffs failed to plead unjust enrichment because no Plaintiffs pleaded that they purchased a new vehicle from an authorized GM dealer, *id.* at 19–21; (4) although Plaintiffs sufficiently alleged a manifestation of the defect, their express warranty claim failed because they did not present their vehicles for repair as required by warranty, *id.* at 21–23; and (5) Plaintiffs' implied warranty claims were barred by the statute of limitations, *id.* at 23–24. The Court granted Plaintiffs leave to amend to correct the deficiencies identified in its order.[3] *Id.* at 25.

---

[3] GM notes that "the SAC . . . removed one of the named plaintiffs (Ramiro Pereda (FAC ¶ 68)) and replaced him with a new one (Arthur Ray (SAC ¶ 14))," even though this was not one of the

2

1  Plaintiffs filed the SAC on January 27, 2023. ECF No. 180. Plaintiffs assert the following claims for relief: (1) fraud by concealment; (2) unjust enrichment; (3) violations of the California Consumer Legal Remedies Act ("CLRA"); (4) violations of the California Unfair Competition Law ("UCL"); (5) violations of the California False Advertising Law; (6) breaches of express warranty under the California Commercial Code and the Song-Beverly Consumer Warranty Act; and (7) breach of implied warranty of merchantability under the Song-Beverly Consumer Warranty Act. *Id.* ¶¶ 182–292.

Now before the Court is GM's motion to dismiss the SAC. ECF No. 188. Plaintiffs opposed the motion, ECF No. 191, and GM replied, ECF No. 192.

## II.  LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks and citation omitted). In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). If the motion to dismiss is granted, the court should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of

---

deficiencies identified in the Court's order dismissing Plaintiffs' FAC. ECF No. 188 at 14 n.10. While Plaintiffs did not move for leave to amend to replace Pereda with Ray, GM does not object to this amendment or request that the Court strike Ray as a named Plaintiff. *Id.* Accordingly, the Court will allow the addition of Ray as a named plaintiff and the removal of Pereda as a named plaintiff.

3

other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (quotation marks and citation omitted).

Any claims that are "grounded in fraud . . . must satisfy the traditional plausibility standard of Rules 8(a) and 12(b)(6), as well as the heightened pleading requirements of Rule 9(b)." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018). Under Rule 9(b) "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Allegations of fraud must "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (alteration in original) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997)).

## III. DISCUSSION

### A. Incorporation by Reference

GM argues that the complaint incorporates by reference the "*McCoy* materials." ECF Nos. 188 at 21, 192 at 9–11. While GM does not explicitly define the term "*McCoy* materials," it appears to be referring to two documents from a lawsuit captioned *McCoy v. General Motors LLC*, No. X03-HHD-CV-20-6142910-S (Conn. Sup. Ct.): (1) an expert report prepared by Chris Caruso, an expert in automotive crash sensing systems who worked for Delco engineering during the development of the allegedly defective SDM software in the Class Vehicles; and (2) Caruso's deposition transcript. ECF No. 192 at 9–11. GM contends that these materials have been incorporated by reference because "the SAC includes more than a dozen *McCoy*-related allegations . . . [;] attaches as an exhibit Caruso's . . . *McCoy* expert report"; "inserts photos of the *McCoy* vehicle; cites *McCoy*'s Amended Complaint and *McCoy*'s Opposition to GM's Motion for Summary Judgment (which includes over 20 pages from Caruso's deposition); and alleges that GM settled *McCoy* '[f]ollowing service of Mr. Caruso's expert report and deposition.'" ECF No. 192 at 8 (alteration in original) (quoting ECF No. 180 ¶ 109).

"As a general rule, [courts] 'may not consider any material beyond the pleadings in ruling

on a Rule 12(b)(6) motion.'" *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment," unless the evidence considered has been "attached to the complaint, . . . incorporated by reference in the complaint, or [is a] matter[] of judicial notice." *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

Documents "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim," *id.* at 908, and "the documents' authenticity . . . is not contested," *Lee*, 250 F.3d at 688 (quotation marks and citation omitted). "[T]he mere mention of the existence of a document is insufficient to incorporate [its] contents." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). The Court may assume the contents of incorporated documents are true, though not for the sole purpose of disputing facts in a well-pleaded complaint. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018).

Here, the Court finds that Caruso's report has been incorporated by reference because it is referred to extensively in the SAC, is attached to the SAC, and forms the basis of Plaintiffs' claims. However, the Court finds that the transcript of Caruso's deposition has not been incorporated by reference. The deposition is referred to only once in the SAC. ECF No. 180 ¶ 109 ("Following service of Mr. Caruso's expert report and deposition in the McCoy case, GM agreed to settle the case in December 2022."). And Plaintiffs do not rely upon Caruso's deposition testimony to form the basis of a claim, i.e., to support its allegations that "the plausible, and most reasonable, inference is that the defect persisted [in GMC trucks and SUVs] in the years between 1999, 2005[,] and 2018." *Id.* ¶ 108. Instead, the Plaintiffs rely upon Caruso's expert report in *McCoy*. Additionally, while the summary judgment motion filed in *McCoy* references 20 pages from the deposition transcript, the SAC references the summary judgment motion once solely to provide context for McCoy's expert report. *Id.* ¶ 101 ("Caruso also served as an expert for plaintiff in the McCoy case and submitted a detailed report in connection with summary

5

1    judgment briefing . . . ."). Plaintiffs do not rely upon the motion to support any of their claims.

2    Accordingly, the Court considers Caruso's expert report and the arguments that rely upon

3    the report, but it does not consider Caruso's deposition transcript or GM's arguments that rely

4    upon the transcript.

### B.  Defect Arguments

GM argues that Plaintiffs' claims fail because they have not plausibly alleged a defect. ECF Nos. 188 at 20–23, 192 at 8–17. Specifically, GM contends that Plaintiffs have not adequately pleaded that the alleged safety defect "from 1999 continued for decades and existed in their own 2010 and 2012 vehicles." ECF No. 188 at 20. GM also contends that even if Plaintiffs had alleged a safety defect, the alleged defect is not actionable. *Id.* at 23.

"[A]llegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged . . . ." *Bly-Magee*, 236 F.3d at 1019 (quotation marks and citation omitted). Claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations[.]" *Swartz v. KPMG LLP*, 476 F.3d 757, 764 (9th Cir. 2007) (quotation marks and citation omitted). "Courts have dismissed causes of action sounding in fraud when the alleged defect is not well-defined." *Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 797 (N.D. Cal. 2019) (collecting cases).

GM argues that Court should again conclude that Plaintiffs have failed to allege the same continued in existence throughout the class period because Plaintiffs "primarily reprise the same 'corroborating' sources from the FAC," ECF No. 192 at 12, and the new sources in the SAC demonstrate that "the software calibrations [in the Class Vehicles] were neither static nor uniform," ECF No. 188 at 21. Plaintiffs disagree, arguing that their allegations "strongly support the inference that GM used the defective calibration in its trucks and SUVs from 1999 to 2018 (necessarily including Plaintiffs' 2010 and 2012 vehicles in between)." ECF No. 191 at 13.

Plaintiffs rely upon many of the same allegations as they did in the FAC, including: (1) that "GM continued to use this same defective software calibration strategy in its vehicles in 2009 and beyond," ECF No. 180 ¶ 83; (2) that there are hundreds of publicly available NHTSA Reports regarding airbag deployment issues in 1999-2014 GM Trucks and SUVs, but they do not mention

the 45-millisecond shut off, ECF No. 180-1 at 2–70; (3) that Caruso issued an expert report regarding the failure of airbags following a crash of a 2005 Chevrolet Trailblazer in connection with *Nossar v. General Motors LLC*, No. 1:11-cv-02129 (N.D. Ga.), ECF No. 180 ¶¶ 91–98, in which Caruso concluded that "[t]he airbags and seatbelts failed because, at the time the airbags should have deployed . . . 'the SDM calibration had already timed out after 45-50ms after the crash started,'" *id.* ¶ 95, and that "it [was] clear that the calibration values result in premature turning off of algorithm thresholds which effectively disable[d] the front airbags after 45 to 50ms," *id.*; (4) that "[d]espite multiple impacts in [a] prolonged accident, the airbags and seatbelts did not deploy" in the plaintiff's 2014 Chevy Silverado as alleged in the lawsuit *Vaith v. General Motors LLC*, No. 18-cv-00031 (D. Minn.), where Caruso was disclosed as an expert, *id.* ¶¶ 110–111; and (5) that automotive crash expert Sal Fariello raised concerns about issues in the model year 2006 GM SUVs' airbag sending system, *id.* ¶¶ 112–116.

The SAC does also include new factual allegations. First, Plaintiffs reference Caruso's expert report in *McCoy*. Caruso's report describes his work as an expert witness since 2006 in "failure-to-deploy lawsuits where the root cause was determined to be the 45ms SHUTOFF criteria [i.e., the SDM Calibration Defect] in numerous GM trucks and SUVs in earlier model[s] than model year 2018." ECF No. 180 ¶ 102 (alterations in original) (quotation marks omitted). Caruso "analyzed the actual software calibration file for the SDM software" in the plaintiff's 2018 GMC Sierra Denali 2500, *id.* ¶ 103, and he "concluded that the algorithm in the 2018 vehicle remained a 'carry over' from the SDM software algorithm, ALGO-S, he himself designed years prior," *id.* Caruso "had believed [that GM] was no longer forcing the use of 45ms shutoff times in [the] 2018 model year with the SDM30." ECF No. 180-4 at 19. But after reviewing the plaintiff's 2018 vehicle, Caruso concluded that GM "appeared to be using very similar shutoff times." *Id.* Specifically, Caruso found that the "shutoff time varie[d] . . . but . . . range[d] from 16ms to 50ms." *Id.* at 20.

Caruso also "identif[ied] the SDM hardware used in the McCoy vehicle as the Delco SDM30." ECF No. 180 ¶ 106. And concluded the following: (1) "'The failure to deploy [the] airbags resulted in a condition that was defective, unsafe and unreasonably dangerous' to the

7

driver . . . ."; (2) "'it appears that [GM trucks Group] is still employing very aggressive stop times' in its software calibrations as of model year 2018"; and (3) "GM should have implemented an 'alternative design' to '[m]odify the algorithm calibrations with more robust 120-150ms' cutoff thresholds." *Id.* ¶ 104 (alterations in original) (emphasis omitted).

Second, Plaintiffs refer to an additional lawsuit, *Greenwood v. General Motors LLC*, No. 16-cv-00149 (M.D. Ga). *Id.* ¶ 117. In *Greenwood*, the plaintiff's decedent "was fatally injured when his 'airbag failed to deploy and his seat belt failed to properly restrain him' during a multi-impact crash in his 2006 GM SUV . . . ." *Id.* Finally, Plaintiffs allege additional facts regarding the GM's truck and SUV group's "typical practice of using the same SDM software strategy for groups of vehicles . . . ." *Id.* ¶ 67; *see also id.* ("GM previously recalled some 3,640,000 vehicles across three different model years (from 2014 to 2017) due to a 'software defect' present in the SDM software in all of those vehicles."); *id.* ¶ 106 ("Publicly available crash data reports from NHTSA show the same Delco SDM30 was installed by GM in GM trucks in at least model years 2015 and 2016.").

Defendants are correct that Plaintiffs do not plausibly plead a well-defined defect. In their opposition to the motion to dismiss, Plaintiffs describe the defect as the installation of software in GM trucks and SUVs that "cut off airbag deployments prematurely." ECF No. 191 at 18. Elsewhere, the opposition defines the defect as a cut off that occurs at "45 milliseconds," which "refers to the value as calculated in the software, as opposed to 45 milliseconds in linear time" *id.* (emphasis omitted); as an algorithm "which effectively disables the front airbags after 45 to 50ms," *id.* at 15; as a "cutoff [that] largely remain[s] in the 50ms range," *id.* at 18; and as a "calibration [that] . . . include[s] circumstances where the cutoff occur[s] as early as 16 ms," *id.*

There are two problems with Plaintiffs' defect definition. The first is that it is not uniform: if the software were the same in all the vehicles across the class period, one would expect the cut-off times to be the same or substantially similar. As just stated, however, the cut-off times vary widely. It is not enough simply to say, as Plaintiffs do, that "where [deployment thresholds] end (too high, and too soon) . . . is the same for all Class Vehicles, and is the relevant, defective issue." *Id.* at 19 (emphasis omitted).

8

The second problem with this definition is that it varies from the one in the SAC, which uniformly defines the "defective SDM calibration strategy" as one where the software program that controls the SDM "shut[s] off the ability to deploy airbags and seatbelts *after 45 milliseconds*," ECF No. 180 ¶ 5 (emphasis added), and states that GM "installed the defective SDM calibration in all of the Class Vehicles, at least through model year 2018," *id.* ¶ 6. The SAC repeatedly connects the defect to the shut off of airbag and seatbelt deployment precisely 45 milliseconds after a crash has begun. *See, e.g., id.* ¶¶ 3–4, 13–15, 37, 39, 41, 43, 44–45, 52, 57, 58, 71. Plaintiffs may not use their opposition to revise the defect's definition, *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014), and so the Court must analyze whether Plaintiffs have plausibly alleged that "the software program that controls the SDM [in the Class Vehicles] is calibrated in such a way that it prevents airbag and seatbelt deployment just 45 milliseconds after a crash has begun," ECF No. 180 ¶ 3. For the reasons just stated, the allegations before the Court and the materials properly subject to judicial notice do not support that definition. *See Stewart v. Electrolux Home Prod., Inc.*, 304 F. Supp. 3d 894, 907 (E.D. Cal. 2018) (dismissing fraudulent concealment claims where "it is difficult to know the specific nature of *what* defect or defects [defendant] allegedly concealed from Plaintiffs" (emphasis in original)).

As the Court concluded in its previous motion to dismiss order, there is sufficient information in the SAC for the Court to infer that the SDM defect existed in 1999. ECF No. 177 at 12. But the SAC still fails to plausibly allege that the same defective software continued to be used for decades after it was allegedly placed in the GM trucks and SUVs. Neither of Caruso's expert reports support an inference that the same SDM from 1999 was installed in all the Class Vehicles because Caruso states that the shut off times varied between 16-milliseconds and 50-milliseconds.

However, Caruso's expert report in *McCoy* supports an inference that a SDM defect similar to that from 1999 was installed in all Class Vehicles because it concluded that "'it appears that [GM trucks Group] is still employing very aggressive stop times' in its software calibrations as of model year 2018." *Id.* ¶ 104 (emphasis omitted). Thus, Plaintiffs may be able to allege that

the premature shut-off times used after 1999 constitute a defect.[4]  "Because granting Plaintiffs an additional opportunity to amend the complaint would not be futile, cause undue delay, or unduly prejudice [GM], and Plaintiffs have not acted in bad faith, the Court grants leave to amend." *Sciacca v. Apple, Inc.*, 362 F. Supp. 3d at 803.  The Court therefore dismisses GM's claims without prejudice for failure to allege a plausible claim.[5]

The Court now addresses whether the alleged defect is actionable.  GM argues that there is no actionable safety defect for two reasons.  First, GM argues that the case is "a hallmark 'no injury' products liability action, which seeks to make a consumer-fraud claim out of a non-bargained-for safety feature."  ECF No. 188 at 24.  As GM acknowledges, it raised this argument in its initial motion to dismiss, but the Court concluded that there was "enough information for the Court to infer that the SDM defect existed in 1999," ECF No. 177 at 12, and that the "alleged defect creates an 'unreasonable safety risk,'" *id.* at 16.[6]  The Court finds no reason to revisit these conclusions, and adopts them here.

Second, relying on *Sonneveldt v. Mazda Motor of Am., Inc.*, No. 8:19-cv-01298-JLS-KES, 2023 WL 2292600 (C.D. Cal. Feb. 23, 2023), GM argues that Plaintiffs are required to allege "airbag non-deployment rates are relatively higher than expected as compared to any standard in general, or that non-deployments or injuries are higher in concatenated or multi-impact events in GM trucks and SUVs in particular."  ECF No. 188 at 23.  *Sonneveldt* is distinguishable.  As an initial matter,  the *Sonneveldt* court's order was on a motion for summary judgment, not a motion

---

[4] It may be, as Plaintiffs' opposition suggests, that any cut-off time below a certain threshold would constitute a design defect.  The SAC does not present this theory, and the Court does not opine regarding its plausibility.

[5] Although the Court dismisses the complaint for failure to allege a plausible defect, it nonetheless addresses GM's remaining arguments to provide guidance regarding any future amended pleading.

[6] In the instant motion, GM cites to two additional cases, *Braverman v. BMW of N.A.*, No. 21-55427, 2023 WL 2445684 (9th Cir. Mar. 10, 2023) and *Johnson v. FCA US, LLC*, 2023 WL 2577228 (E.D. Mich. Mar. 20, 2023).  However, both are inapposite.  First, *Braverman* held that the "[p]laintiffs have offered no other applicable theory of recovery that would allow them to survive summary judgment without an expert opining as to a design defect," 2023 WL 2445684, at *2, which has no bearing on what Plaintiffs are required to allege at the motion to dismiss stage.  Second, in *Johnson*, the court concluded that the "[p]laintiffs' own allegations show that [the defendant] did not mislead" the plaintiffs.  2023 WL 2577228, at *4.  Here, there are sufficient allegations to conclude that GM misled the plaintiffs.

to dismiss. 2023 WL 2292600, at *17. Moreover, the defect at issue *Sonnveldt* is distinct from the SDM defect alleged here. In *Sonnveldt*, the plaintiff alleged that a class vehicle's internal water pumps contained a design defect, which caused the water pumps to fail prematurely. *Id.* at *4. The court concluded that because there is no "evidence that the water pumps in the Class Vehicles fail earlier or more frequently" than those in other vehicles, "there is no evidentiary basis to find that a reasonable consumer would consider the Design Defect material." *Id.* at *16. As the Court explained in its prior order, viewing the allegations in the light most favorable to Plaintiffs, GM's failure to disclose the alleged defect was material because the alleged defect creates an unreasonable safety risk, i.e., that airbags in the Class Vehicles will not deploy in specific categories of moderate-to-severe accidents, which can result in injuries or death. ECF No. 177 at 16. Accordingly, Plaintiffs are not required to allege that the airbag non-deployment rates for the Class Vehicles are higher than expected or those for other vehicles.

### C.   Equitable Claims

GM asks the Court to (1) dismiss Ray and Vargas's unjust enrichment claim and (2) dismiss Plaintiffs' equitable claims because "they do not sufficiently allege an inadequate remedy at law" as required by *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020).

#### 1.   Unjust Enrichment

GM argues that Ray and Vargas's unjust enrichment claims fail because they "are based on purchases made pursuant to valid express warranties."[7] ECF No. 188 at 26. Plaintiffs argue that "GM waived this argument by not raising it in GM's earlier motion to dismiss." ECF No. 191 at 27. And even if GM had raised the argument, it fails because Ray and Vargas "state independent bases for unjust enrichment claims for conduct distinct from that covered by the express warranties." *Id.*

While "[t]he plain text of Rule 12(g) prohibits a party from filing a second motion to dismiss on a ground that was available but omitted from an earlier motion to dismiss," courts in

---

[7] GM also argues that Milstead's unjust enrichment claim fail because he purchased a used vehicle. ECF No. 188 at 26. The Court need not address this argument because Milstead has not brought a claim for unjust enrichment. ECF No. 191 at 27 n.21.

11

1       the Ninth Circuit apply "a more flexible and efficiency-oriented view of a district court's ability to
2       review arguments offered for the first time in a second motion to dismiss." *Symantec Corp. v.*
3       *Zscaler, Inc.*, No. 17-cv-04426-JST, 2018 WL 1456678, at *2 (N.D. Cal. Mar. 23, 2018) (citing *In*
4       *re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 317 (9th Cir. 2017), *aff'd sub nom. Apple Inc. v.*
5       *Pepper*, 139 S. Ct. 1514 (2019)). In this case, the result is the same whether the Court considers
6       GM's new argument or not, because the argument fails on the merits. Ray and Vargas's unjust
7       enrichment claims rely upon pre-sale conduct which falls outside the scope of the warranty: GM's
8       concealment of the alleged SDM calibration defect before Ray and Vargas purchased their
9       vehicles. ECF No. 180 ¶ 195 ("Plaintiffs and Class members conferred a benefit on the
10      Defendants by overpaying for Class Vehicles at prices that were artificially inflated by
11      Defendants' concealment of the SDM calibration defect and misrepresentations regarding the
12      Class Vehicles' safety."); *see In re Gen. Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871,
13      882 (N.D. Cal. 2019) (declining to dismiss unjust enrichment claims premised on "GM concealing
14      the fuel pump defect before Plaintiffs purchased their vehicles"); *accord Villanueva v. Am. Honda*
15      *Motor Co.*, No. CV 19-1390-MWF (MAAx), 2019 WL 8112467, at *16 (C.D. Cal. Oct. 10, 2019);
16      *Glenn v. Hyundai Motor Am.*, No. SACV 15–2052–DOC (KESx), 2016 WL 7507766, at *6 (C.D.
17      Cal. Nov. 21, 2016). Accordingly, Ray and Vargas's unjust enrichment claims are adequately
18      pleaded.

19              **2.      Adequate Remedy at Law**

20      GM also urges the Court to reconsider its decision to decline to dismiss Plaintiffs'
21      equitable claims under *Sonner*. ECF No. 188 at 32. GM contends that the Ninth Circuit's
22      decision in *Guzman v. Polaris Industries*, 49 F.4th 1308 (9th Cir. 2022), *cert. denied sub nom.*
23      *Polaris Industries Inc., v. Albright*, No. 22-987, 2023 WL 3937623 (U.S. June 12, 2023),
24      "reinforc[es] the applicability of *Sonner* at the pleadings stage." ECF No. 188 at 32. Plaintiffs
25      argue that *Guzman* "does not disturb the Court's earlier conclusion," ECF No. 191 at 31, because
26      *Guzman* dismissed the plaintiff's claims for an inadequate remedy at law at the summary
27      judgment, not pleadings, stage, *id.* at 32.
28              Plaintiffs have the better argument. As explained in the Court's previous motion to

dismiss order, Plaintiffs plead the absence of an adequate remedy at law, which is all that is required under *Sonner* at the pleadings stage. ECF No. 177 at 18; *see In re Natera Prenatal Testing Litig.*, No. 22-cv-00985-JST, 2023 WL 3370737, at *10 (N.D. Cal. Mar. 28, 2023) (collecting cases and noting that the majority of courts in this district require only that Plaintiffs plead that they lack an adequate remedy at law at the pleadings stage).

*Guzman* does not address what *Sonner* requires at the pleading stage. 49 F.4th at 1312–15. Instead, in *Guzman*, the Ninth Circuit analyzed whether, in deciding a motion for summary judgment, the district court correctly concluded that the plaintiff "had an adequate legal remedy in his time-barred CLRA claim." *Id.* at 1312–13. The *Guzman* court affirmed the district court's holding that it lacked equitable jurisdiction over the plaintiff's UCL claim, but it "reverse[d] the entry of summary judgment . . . [b]ecause the district court . . . should have denied [defendant's] motion for summary judgment and dismissed [plaintiff's] UCL claim without prejudice for lack of equitable jurisdiction." *Id.* at 1313. *Guzman* does not suggest that the district court was required to address whether the plaintiff had an adequate remedy at law on a motion to dismiss. *See id.* at 1312–15. This Court agrees with those district courts that have continued to hold, after *Guzman*, that "*Sonner* . . . [does not] impose strict requirements at the pleading stage." *McKay v. Sazerac Co., Inc.*, No. 23-cv-00522-EMC, 2023 WL 3549515, at *8 (N.D. Cal. May 17, 2023) (quoting *Junhan Jeong v. Nexo Financial LLC, et. al.*, No. 21-cv-02392-BLF, 2022 WL 174236, at *27 (N.D. Cal. Jan. 19, 2022)).

Therefore, the Court again concludes that Plaintiffs have sufficiently pleaded their claims for equitable relief.

**D.     Warranty Claims**

      **1.     Implied Warranty Claims**

GM argues that Ray and Vargas's implied warranty claims should be dismissed for two reasons: (1) Ray and Vargas fail to plead fraudulent concealment, and therefore, their claims are barred by the four-year statute of limitations, ECF No. 188 at 27; and (2) Ray and Vargas "allege neither a current malfunction or that the defect is substantially certain to manifest in a future

13

malfunction," *id.* at 30 (quotation marks and citations omitted).[8]

### a. Fraudulent Concealment

GM argues Ray and Vargas fail to allege fraudulent concealment because they "do not allege a fiduciary relationship, and they only recite boilerplate allegations." *Id.* at 27–28. And they "have not alleged 'when the fraud was discovered or the circumstances surrounding the discovery.'" *Id.* at 29 (quoting ECF No. 177 at 24). Plaintiffs argue that their new allegations "identify with specificity (i) when each Plaintiff discovered the fraud (in 2020 and 2021); (ii) the circumstances surrounding the discovery ('in connection with retaining counsel'); and (iii) the absence of Plaintiffs' fault in not uncovering GM's fraud (the 'highly technical nature' of the defect)," ECF No. 191 at 28, and that they are not required to "allege either a fiduciary relationship or affirmative deceptive conduct," *id.* at 29.

The fraudulent concealment doctrine applies when a defendant's "own deception . . . has caused a claim to become stale and a plaintiff dilatory." *Regents of Univ. of Cal. v. Super. Ct.*, 20 Cal. 4th 509, 533 (1999). To toll the statute of limitations under the fraudulent concealment doctrine, a "plaintiff must show (a) the substantive elements of [the] fraud, and (b) an excuse for late discovery of the facts." *Invs. Equity Life Holding Co. v. Schmidt*, 195 Cal. App. 4th 1519, 1533 (2011); *accord Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 888 (N.D. Cal. 2018). To adequately justify the delay in discovery, plaintiffs must "plead with particular[ity] when the fraud was discovered," "the circumstances surrounding [the] discovery," and an explanation for why "they were not at fault for their failure to discover the defect." *Garcia v. Gen. Motors LLC*, No. 1:18-cv-01313-LJO-BAM, 2018 WL 6460196, at *7 (E.D. Cal. Dec. 10, 2018).

GM does not dispute that Plaintiffs have adequately alleged the elements of fraud, but instead challenges whether Plaintiffs have sufficiently alleged "an excuse for the late [discovery] of the facts." *Invs. Equity*, 195 Cal. App. 4th at 1533. In its prior order, however, the Court did not find that Plaintiffs failed to sufficiently allege an excuse for late discovery. In fact, the SAC is

---

[8] Plaintiff Milstead has not brought claims for breach of implied warranty because he purchased a used vehicle. *See* ECF No. 188 at 27 n.24; ECF No. 162 at 42 n.33.

1  replete with allegations that GM concealed the alleged defect.  *See, e.g.*, ECF No. 180 ¶¶ 11
2  ("[d]espite its knowledge of the defect and its impact on safety, GM has concealed the defect"); *id.*
3  ¶ 13 ("GM concealed the existence of the defective SDM calibration from consumers including
4  Plaintiff."); *id.* ("Plaintiff would not have purchased the Class Vehicle, or would have paid less for
5  it, if Defendants did not conceal material information about the defective SDM calibration."); *id.* ¶
6  14 (same); *id.* ¶ 15 (same); *id.* ¶ 48 ("Nonetheless, GM has continued to conceal this problem and
7  the pattern of accidents, injuries, and deaths that have resulted from it."); *id.* ¶ 86 ("Despite
8  obvious signs of a known and dangerous risk, GM concealed these accidents and the SDM
9  Calibration Defect from consumers and regulators to avoid or at least delay a recall and the
10 attendant costs and reputational damage therefrom.").  This is sufficient to allege active
11 concealment on GM's part.  *See Steele v. Gen. Motors LLC*, No. CV 17-04323 TJH (SKx), 2018
12 WL 6039838, at *4 (C.D. Cal. Aug. 8, 2018) ("[The plaintiff] adequately alleged that GM
13 fraudulently concealed the Headlight Defect because GM knew about the Headlight Defect prior
14 to selling the Cadillac to him and that GM had a duty to disclose the Headlight Defect but actively
15 concealed it.").

16        Rather, the Court found that Plaintiffs had failed to plead fraudulent concealment because
17 "there [was] no information regarding when the fraud was discovered or the circumstances
18 surrounding the discovery."  ECF No. 177 at 24.  Plaintiffs have now remedied this defect.  The
19 SAC specifies that Plaintiffs discovered the allegedly fraudulent conduct in 2020 and 2021, that
20 they learned of the fraudulent conduct in connection with retaining counsel, and that they were
21 unable to the discovery the fraud earlier because of the "highly technical nature of the" defect.
22 ECF No. 180 ¶ 180.

23        Additionally, the parties disagree as to whether, in addition to the elements of fraud and an
24 excuse for the late discovery of the facts, Plaintiffs are required to allege either a fiduciary duty or
25 affirmative deceptive conduct.  The authority cited by the parties reaches opposite conclusions.
26 *See, e.g.*, *Siqueiros v. Gen. Motors LLC*, No. 16-cv-07244-EMC, 2022 WL 3717269, at *9 (N.D.
27 Cal. Aug. 29, 2022) ("Any act of concealment must be affirmative."); *Sater v. Chrysler Grp., LLC*,
28 No. EDCV 14-00700-VAP (DTBx), 2015 WL 736273, at *9 (C.D. Cal. Feb. 20, 2015)

(concluding that the plaintiff "specifically allege[d] facts that [the defendant's] fraudulent concealment" because the plaintiff alleged that the defendant "intentionally kept Plaintiffs and other Class members ignorant of vital information essential to the pursuit of their claims, and that [the defendant] continued to manufacture, advertise, sell, lease, and warrant the Trucks without disclosing the defects" (quotation marks and citations omitted)).

Many of the cases concluding that plaintiffs must allege "affirmative deceptive conduct" cite to *Long v. Walt Disney Co.*, 116 Cal. App. 4th 868, 874 (2004). Relying upon *Johnson v. Harcourt, Brace, Jovanovich, Inc.*, 43 Cal. App. 3d 880, 896 (1974), the *Long* court held that "[a]bsent a fiduciary relationship, nondisclosure is not fraudulent concealment—affirmative deceptive conduct is required." 116 Cal. App. 4th at 874. One court in this district has analyzed *Long* and the significance of the opinion's reliance on *Johnson*. *See Garcia v. Harley-Davidson Motor Co., Inc.*, No. 19-cv-02054-JCS, 2019 WL 6050768, at *9 (N.D. Cal. Nov. 15, 2019). In *Garcia*, the court explained that "*Johnson* . . . went on to state not only that no such [fiduciary] relationship existed, but also 'nor were defendants *under a duty* to inform plaintiffs' of the purported misconduct,'" and that "[o]ther California appellate decisions define fraudulent concealment—albeit in the context of a claim for relief, rather than a tolling doctrine—as requiring only 'a duty to disclose the fact to the plaintiff,' rather than a duty necessarily arising from a *fiduciary* relationship" *Id.* (emphasis in original). Therefore, the *Garcia* court "conclude[d] that the California Supreme Court . . . would likely hold omission in the face of a duty to disclose sufficient to support tolling based on fraudulent concealment, even where the duty does not arise from a fiduciary relationship." *Id.* The Court agrees with the *Garcia* court and concludes that because Plaintiffs have "plausibly alleged a safety issue giving rise to a duty to disclose," *id.*, they need not allege affirmative deceptive conduct. Therefore, the Court finds that Plaintiffs have adequately alleged that fraudulent concealment has tolled the statute of limitations.

### b. Actual or Substantially Certain Malfunction

GM argues that because Ray and Vargas fail to "'provide sufficient allegations' of either an actual manifestation or a 'substantial certainty of malfunction,'" their implied warranty claims are "subject to dismissal." ECF No. 188 at 30 (quoting *Keegan v. Am. Honda Motor Co.*, 284

F.R.D. 504, 534 (C.D. Cal. 2012)). Plaintiffs argue that "[t]he Court previously rejected" this argument, and should reject it again, because the alleged defect "is the injury regardless of whether it causes the airbags to fail." ECF No. 191 at 30. The Court agrees with Plaintiffs. As the Court previously described, "[b]ecause 'Plaintiff[s'] theory is that the allegedly defective [SDM] is itself the injury, regardless of whether the [SDM] caused performance issues,' GM's argument is unavailing." ECF No. 177 at 21 (citing *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 822 (9th Cir. 2019)).

### 2. Express Warranty Claims

GM argues that Vargas's breach of express warranty claim fails because while Vargas presented his vehicle for repair in January 2023, "the warranty required presentment for repair 'within the warranty period,'" which expired in December 2015.[9] ECF No. 188 at 30. Plaintiffs respond that Vargas could not have presented his vehicle for "repair during the warranty period" because of GM's fraudulent concealment. ECF No. 191 at 30. They also urge the Court to reject GM's argument because it cites no authority to support its rule "that a plaintiff must present his vehicle during the warranty period without exception," and this rule "would incentivize manufacturers to conceal defects to avoid express warranty claims." *Id.* at 30–31.

Nonetheless, such authority exists. *See, e.g.*, *Sonneveldt v. Mazda Motor of Am., Inc.*, No. 8:19-cv-01298-JLS-KES, 2021 WL 62502, at *13 (C.D. Cal. Jan. 4, 2021) (rejecting plaintiff's argument that presentment was excused because defendant "had knowledge of the defect at the time of sale, but concealed the defect"); *see also Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (affirming "the dismissal of the express warranty claims" where "the defect allegedly existed before the warranty expired, and . . . [the defendant] had knowledge of the defect at the time of sale" because "California has adopted a doctrine . . . that an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed"); *McCarthy v. Toyota Motor Corp.*, No. 8:18-cv-00201-JLS-KES, 2018 WL 6318841, at *8 (C.D. Cal. Sept.

---

[9] GM also argues that Ray and Milstead's breach of express warranty claims fail because they have not presented their vehicles for repair. *Id.* However, the breach of express warranty was brought only on behalf of Vargas. ECF No. 180 ¶¶ 239–252.

14, 2018) ("Courts 'have expressly rejected the proposition that a latent defect, discovered outside the limits of a written warranty, may form the basis for a valid express warranty claim if the warrantor knew of the defect at the time of sale.'" (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 830 (2006)).

Accordingly, because Vargas presented his vehicle after the warranty period expired, his express warranty claim is not adequately pleaded. The Court grants GM's motion to dismiss this claim with prejudice.

### E. Economic Loss Rule

GM also argues that Plaintiffs' fraudulent concealment claims are barred by the economic loss rule. ECF No. 188 at 31. Plaintiffs counter that the Court should adhere to its recent decision in *Lou v. Am. Honda Motor Co., Inc.*, 16-cv-04384-JST, 2022 WL 18539358 (N.D. Cal. Aug. 26, 2022), and hold that "intentional omissions render the economic loss rule inapplicable to fraud claims."[10] ECF No. 191 at 31.

"The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004). "Economic losses include damages for inadequate value, the costs of repair or replacement, and any consequent lost profits." *Avila v. Ford Motor Co.*, No. EDCV 22-00395 JGB (SHKx), 2022 WL 2283310, at *2 (C.D. Cal. May 27, 2022). One exception to the economic loss doctrine is "where the contract was fraudulently induced" due to an affirmative misrepresentation. *Robinson*, 34 Cal. 4th at 989–91; *Rattagan v. Uber Techs, Inc.*, 19 F.4th 1188, 1191 (9th Cir. 2021) ("In *Robinson*, the California Supreme Court held that the economic loss rule does not bar fraud claims premised on affirmative misrepresentations."). But "[w]hether California's economic loss rule bars fraudulent omissions claims based on purely economic injury is unsettled." *Anderson v.*

---

[10] In a footnote, Plaintiffs assert that GM waived its economic loss doctrine argument because it could have, but did not, assert it in the initial motion to dismiss. ECF No. 191 at 31 n.23. As the Court previously explained, the Court is not barred from considering GM's argument. *In re Apple iPhone Antitrust Litig.*, 846 F.3d at 317; *Symantec Corp. v. Zscaler, Inc.*, 2018 WL 1456678, at *2.

*Apple Inc.*, 500 F. Supp. 3d 993, 1019 (N.D. Cal. 2020). While the Ninth Circuit recently certified that question to the California Supreme Court, and it has agreed to take up that question, *see Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188, 1192-93 (9th Cir. 2021); *Rattagan v. Uber Techs., Inc.*, No. 20-16796, ECF No. 43 (Feb. 14, 2022), the California Supreme Court has yet to issue a decision.

In *Lou*, the Court concluded that "the rationale that excepts affirmative misrepresentations from the economic loss rule applies with equal force to intentional omissions." 2022 WL 18539358, at *4; *see also Anderson*, 500 F. Supp. 3d at 1021 ("All of the reasons that supported *Robinson*'s holding about affirmative misrepresentation support finding that fraudulent omissions . . . are not barred by the economic loss doctrine."). GM has not persuaded the Court to reach a contrary result here. Accordingly, pending further clarification from the California Supreme Court, the Court concludes that the economic loss doctrine does not bar Plaintiffs' fraudulent concealment claims.

## CONCLUSION

For the foregoing reasons, the Court grants GM's motion to dismiss without prejudice for a failure to allege a plausible defect. The Court further dismisses Vargas's express warranty claim with prejudice because he failed to present his vehicle pursuant to the terms of the vehicle's warranty.

Plaintiffs may file an amended complaint, solely to correct the deficiencies identified above, within 21 days of the date of this order. Failure to file a timely amended complaint will result in the dismissal of this case with prejudice.

**IT IS SO ORDERED.**

Dated: July 6, 2023

JON S. TIGAR
United States District Judge