UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES MILSTEAD, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GENERAL MOTORS LLC, et al., <br><br> Defendants. | Case No. 21-cv-06338-JST <br><br> **ORDER DENYING MOTION TO DISMISS** <br><br> Re: ECF No. 201 |

Before the Court is Defendants General Motors LLC, General Motors Holdings LLC, and General Motors Company's (collectively, "GM") motion to dismiss Plaintiff James Milstead's Third Amended Complaint ("TAC"). ECF No. 201. The Court will deny the motion.

I. **BACKGROUND**

A. **Factual Background**[1]

Plaintiffs James Milstead, Arthur Ray, and Richard Vargas (collectively, "Plaintiffs") bring this action on behalf of themselves and a class of "persons and entities that purchased or leased" GM trucks or SUVs in California that were model years 1999 through 2018 (the "Class Vehicles"). ECF No. 197 ¶ 168.

Because the facts are well-known to the parties and because the Court has detailed Plaintiffs' allegations in a prior motion to dismiss order, ECF No. 177, the Court will not reiterate them in full. In summary, a defect in the Class Vehicles causes their airbag control unit, also known as the Sending and Diagnostic Module ("SDM"), to "prematurely close the time window to engage airbags and seatbelts in a crash, putting occupants of the Class Vehicles at serious risk."

---

[1] For the purposes of resolving the present motion, the Court accepts as true the factual allegations in the third amended complaint ("TAC"), ECF No. 197.

1    ECF No. 197 ¶ 3.  Specifically, the software program that controls the SDM is calibrated to

2    prevent airbag deployment and seatbelt tightening "long before the 100 millisecond minimum

3    window reasonably required by real-world crashes."  *Id.* ¶ 86.  Despite GM's "knowledge of" the

4    defect and its safety risks, GM "concealed the defect and failed to recall or repair the Class

5    Vehicles . . . ."  *Id.* ¶ 13.

### B.    Procedural Background

On August 17, 2021, 72 named plaintiffs—3 from California and 69 from other states—filed this action.  ECF No. 1.  Plaintiffs filed their first amended complaint ("FAC") on October 26, 2021.  ECF No. 12.

GM moved to dismiss the FAC, arguing that: (1) the Court lacked jurisdiction over the claims of the non-California named Plaintiffs; (2) the Court should transfer the case to the Eastern District of Michigan; and (3) the California Plaintiffs' claims should be dismissed because they had not plausibly alleged a defect in their vehicles and because the complaint failed to state a claim under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.  ECF No. 150.

The Court granted GM's motion.  ECF No. 177.  The Court dismissed the non-California named plaintiffs for lack of jurisdiction, *id.* at 6–8, and dismissed the FAC for failure to allege a plausible defect, *id.* at 10–14.  The Court also held that: (1) Plaintiffs adequately pleaded their fraudulent omission claims, *id.* at 14–18; (2) Plaintiffs adequately pleaded the absence of an adequate remedy at law, *id.* at 18–19; (3) Plaintiffs failed to plead unjust enrichment because no Plaintiffs pleaded that they purchased a new vehicle from an authorized GM dealer, *id.* at 19–21; (4) although Plaintiffs sufficiently alleged a manifestation of the defect, their express warranty claim failed because they did not present their vehicles for repair as required by warranty, *id.* at 21–23; and (5) Plaintiffs' implied warranty claims were barred by the statute of limitations, *id.* at 23–24.  The Court granted Plaintiffs leave to amend to correct the deficiencies identified in its order.  *Id.* at 25.

Plaintiffs filed a second amended complaint (SAC) on January 27, 2023.  ECF No. 180. The SAC asserted the following claims for relief: (1) fraud by concealment; (2) unjust enrichment; (3) violations of the California Consumer Legal Remedies Act ("CLRA"); (4) violations of the

1    California Unfair Competition Law ("UCL"); (5) violations of the California False Advertising
2    Law; (6) breach of express warranty under the California Commercial Code; and (7) breach of
3    implied warranty of merchantability under the California Commercial Code; (8) breach of implied
4    warranty under the Song-Beverly Consumer Warranty Act; and (9) breach of express warranty
5    under the Song-Beverly Consumer Warranty Act.  *Id.* ¶¶ 182–292.
6         GM moved to dismiss the SAC, ECF No. 188, and the Court granted the motion based on
7    Plaintiffs' failure to allege a plausible defect.  ECF No. 196 at 6–10.  The Court explained that
8    Plaintiffs' definition of the defect lacked uniformity.  *Id.* at 8.  Although Plaintiffs pinpointed the
9    defect as a 45-millisecond shutoff time in the SAC, they alleged that some Class Vehicles
10   contained software with programmed shutoff times ranging from 16 milliseconds to approximately
11   50 milliseconds.  *See id.* at 8–9.  Plaintiffs attempted to reconcile this variation in their opposition
12   to the motion to dismiss by explaining that the same defect comprised a range of premature
13   shutoff times.  *Id.* at 8 (citing ECF No. 191 at 18).  The Court, however, concluded that Plaintiffs
14   could not amend their complaint via their opposition to GM's motion to dismiss and considered
15   only the definition alleged in the SAC itself.  *Id.* at 9.
16        The Court next considered GM's arguments regarding Plaintiffs' equitable claims and
17   warranty claims, as well as the applicability of the economic loss rule.  The Court determined that
18   Plaintiffs had adequately pleaded their equitable claims and had sufficiently alleged fraudulent
19   concealment to toll the statute of limitations on their implied warranty claims.  ECF No. 196
20   at 11–17.  The Court also rejected GM's argument that Plaintiffs had failed to allege an actual or
21   substantially certain malfunction because the defect had not caused performance issues in their
22   vehicles, finding that Plaintiffs' theory was that the existence of the defect was "itself the injury."
23   *Id.* at 17 (citation omitted).  The Court further determined that named Plaintiff Vargas's express
24   warranty claim failed and that the economic loss rule did not bar Plaintiffs from successfully
25   alleging fraudulent concealment.  *Id.* at 17–19.
26        The Court granted Plaintiffs leave to amend their complaint with respect to all claims
27   except Vargas's express warranty claim, which the Court dismissed with prejudice.  *Id.* at 19.
28   Plaintiffs filed a third amended complaint (TAC) on July 27, 2023.  ECF No. 197.  The TAC

3

omits the express warranty claims but otherwise asserts the same claims for relief as the SAC.

Now before the Court is GM's motion to dismiss the TAC.[2] ECF No. 201. Plaintiffs opposed the motion, ECF No. 202, and GM replied, ECF No. 203.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter" that, when accepted as true, states a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not contain "detailed factual allegations," but facts pleaded by a plaintiff "must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). Although this standard is not "a probability requirement," "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks and citation omitted). In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Claims that are "grounded in fraud . . . must satisfy the traditional plausibility standard of Rules 8(a) and 12(b)(6), as well as the heightened pleading requirements of Rule 9(b)." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Allegations of fraud must "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (alteration

---

[2] GM does not separately challenge the Court's prior conclusions regarding the adequacy of Plaintiffs' unjust enrichment and implied warranty claims or the inapplicability of the economic loss rule. *See* ECF No. 196 at 11–19. Instead, GM notes that it preserves the position taken in its prior briefing for the reasons articulated there. *See* ECF No. 201 at 16 n.18. Accordingly, the Court adopts its prior conclusions on those issues in this order.

4

1  in original) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "Averments

2  of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct

3  charged." *Id.* (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

**III.   DISCUSSION**

    **A.   Defect Arguments**

GM argues that the Court should dismiss Plaintiffs' TAC because the alleged defect is not well-defined or plausible. ECF No. 201 at 17–21. The Court concludes that Plaintiffs' amendments following the dismissal of the SAC have cured the deficiency in their defect allegations.

        **1.   Definition**

"[A]llegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged . . . ." *Bly-Magee*, 236 F.3d at 1019. Claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations . . . ." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quotation marks and citation omitted). "Courts have dismissed causes of action sounding in fraud when the alleged defect is not well-defined." *Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 797 (N.D. Cal. 2019) (collecting cases).

This Court concluded in its prior order dismissing the SAC that Plaintiffs had provided "enough information for the Court to infer that the SDM defect existed in 1999" and that "a SDM defect similar to that from 1999 was installed in all Class Vehicles" in later model years up to 2018. ECF No. 196 at 9–10. A lack of support for the inference that all Class Vehicles were programmed with a 45-millisecond shutoff time, however, prevented the SAC from alleging a plausible defect. *Id.* at 8–10. In addition to alleging a 45-millisecond shutoff threshold, Plaintiffs alleged shutoff times ranging from 16 to 50 milliseconds during the relevant years. *See id.* at 8. That variation was incompatible with the allegations in the SAC that Class Vehicles contained a 45-millisecond shutoff time defect. *Id.* at 8–9.

Plaintiffs have now addressed this issue by amending the definition of the defect. The TAC alleges that 100 milliseconds is the soonest shutoff point that could be reasonably safe and

5

that the Class Vehicles are defective because their SDMs are programmed with shutoff times less than 100 milliseconds. *See, e.g.*, ECF No. 197 ¶¶ 7, 11, 86, 110.

In addition, Plaintiffs have bolstered these allegations with reference to an accident in which the airbags in a 2009 GM truck did not deploy during a fatal crash, allegedly due to a programmed shutoff time of less than 100 milliseconds. *Id.* ¶¶ 123–25. The proximity of the model year involved in that accident to that of the named Plaintiffs' vehicles, combined with Plaintiffs' other allegations, supports the inference that the alleged defect is present in Plaintiffs' 2010 and 2012 vehicles.

GM argues that the lack of uniformity that doomed the SAC also affects the TAC. ECF No. 201 at 17–21; *see* ECF No. 196 at 8–9. GM focuses first on variations in Plaintiffs' description of the shutoff time, asserting that the use of modifiers such as "aggressive," "premature," "too soon," "short duration," and "unreasonable" in the descriptions of the shutoff times render the definition "vague and contradictory." ECF No. 201 at 14. Plaintiffs respond that their TAC alleges the defect "in clear and consistent detail." ECF No. 202 at 19. They assert that GM makes too much of Plaintiffs' use of different words to describe the same problem and that isolating these descriptors does not change the fact that Plaintiffs specifically define the defect as shutoff times of less than 100 milliseconds. *Id.* at 12–13.

The Court agrees that GM mischaracterizes Plaintiffs' complaint as alleging several different definitions of the defect. Plaintiffs consistently define the defect as shutoff times below 100 milliseconds throughout the TAC, *see, e.g.*, ECF No. 197 ¶¶ 7, 11, 86, 110, belying the argument that Plaintiffs allege only an "unspecified potential to fail," ECF No. 201 at 18. The use of synonymous modifiers does not alter the defect definition or render it "contradictory." ECF No. 201 at 14. Nor do the allegations of different specific shutoff times seen in Class Vehicles— whether 16, 45, or 50 milliseconds—defeat uniformity. Each of these times is below the 100 milliseconds threshold that the TAC alleges as the outer limit of the defect. *See* ECF No. 202 at 12–13.

GM also asserts that the complex subject of airbag deployment requires a particularly high level of detail to state a claim. ECF No. 201 at 19. Plaintiffs respond that GM seeks to impose an

6

arbitrarily heightened pleading standard but that, in any event, they have satisfied both Rule 9(b) and the increased level of specificity that GM urges. ECF No. 202 at 18–19.

        Plaintiffs are correct that they have provided ample detail and evidence of their allegations such that GM is fairly on notice of the claims against it. *See Bly-Magee*, 236 F.3d at 1019; *see also* ECF No. 197 ¶¶ 4, 11, 37–49, 56–68, 109, 126. Indeed, this Court has previously held as much. ECF Nos. 177 at 14–15, 196 at 10. This case is not like *DeCoteau v. FCA US LLC*, cited by GM, in which plaintiffs "experienced rough and jerking transmission shifts" in their vehicles and where the vehicles would "automatically move backward" when plaintiffs stopped the vehicles. No. 2:15-cv-00020-MCE-EFB, 2015 WL 6951296, at *1 (E.D. Cal. Nov. 10, 2015). Plaintiffs there alleged generally that "one or more design and/or manufacturing defects" contained in the vehicles' transmission system caused the vehicles' problems. *Id.* Not surprisingly, the court concluded that plaintiffs' failure to identify the nature of the defect causing these problems meant that plaintiffs' complaint had to be dismissed. *Id.* at *3.[3] Nor is this case like *Loh v. Future Motion, Inc.*, in which plaintiffs alleged that problems with the "pushback feature" on defendants' electric skateboard caused riders to nosedive suddenly without warning. No. 5:21-CV-06088-EJD, 2022 WL 2668380, at *6 (N.D. Cal. July 11, 2022). There, as in *DeCoteau*, plaintiffs failed to plead "specific allegations about the pushback feature, like the mechanical features of the wheel that make it defective." *Id.* at *7. Accordingly, the court found it "entirely unclear from the SAC what features of the Onewheel caused the alleged defects" and dismissed the complaint. *Id.*

        This case more closely resembles *Peguero v. Toyota Motor Sales, USA, Inc.*, in which the court found that plaintiffs adequately pleaded "the 'mechanical details' of the alleged defect, explaining how Defendants' transmission system functions and why Plaintiffs believe the transmission systems in their vehicles are faulty." No. 2:20-cv-05889-VAP(ADSx), 2020 WL 10354127, at *7 (C.D. Cal. Nov. 18, 2020) (citation omitted). As in *Peguero*—and in distinction to *DeCoteau* and *Loh*—Plaintiffs here adequately explain how GM's SDM system works and

---

[3] Even so, the *DeCoteau* court was careful to note that plaintiffs alleging a product defect need not "'plead the mechanical details' of a defect in order to state a claim." *Id.* (citation omitted).

7

identify the alleged software defects that create a risk of injury for GM automobile users.

### 2. Plausibility

GM next argues that Plaintiffs fail to allege a plausible defect because the TAC does not "allege that reports of airbag nondeployment are relatively higher than expected as compared to any standard in general, or that non-deployments or injuries are higher in concatenated or multi-impact events in GM trucks and SUVs in particular." ECF No. 201 at 20. The Court has already concluded, however, that Plaintiffs need not show a higher rate of airbag nondeployments vis-à-vis other manufacturers in order to allege a plausible defect, ECF No. 196 at 11, and will not revisit that conclusion here.

Nor does the absence of evidence proving that the alleged defect caused the airbag failure discussed in the NHTSA complaints prevent the TAC from stating a claim. The NHTSA complaints comprise relevant examples of accidents that one would expect to occur if Plaintiffs' allegations were true. The fact that NHTSA has not commenced an investigation in response to complaints of airbag nondeployment does not support the inference that Plaintiffs' allegations are implausible, as GM contends. *See* ECF No. 201 at 21. Drawing that negative inference would contravene the Court's obligation to view the evidence in the light most favorable to Plaintiffs. *Knievel*, 393 F.3d at 1072. Accordingly, the Court concludes that Plaintiffs have adequately pleaded a well-defined and plausible defect.

### B. Knowledge of Defect

GM next argues that the Court should dismiss Plaintiffs' complaint because Plaintiff fails to sufficiently allege that GM had knowledge of the defect. ECF No. 201 at 21–23. For support, GM points to cases such as *Punian v. Gillette Co.*, in which the court held that "a generalized allegation of consumer complaints, standing alone, is typically insufficient to show knowledge of a product defect . . . ." No. 14-cv-05028-LHK, 2015 WL 4967535, at *11 (N.D. Cal. Aug. 20, 2015). That description does not apply to the TAC in this case.[4] As discussed above in the

---

[4] GM's citations to *Cho v. Hyundai Motor Co.*, 636 F. Supp. 3d 1149, 1168 (C.D. Cal. 2022); *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 866 (N.D. Cal. 2018); and *Deras v. Volkswagen*

8

context of plausibility, the level of detail in the TAC belies GM's descriptions of a "generalized allegation of consumer complaints" and "unspecified potential to fail." ECF No. 201 at 18, 22.

GM specifically challenges Plaintiff's allegations that it knew about the defect because the TAC does not allege that anyone "informed GM" that the shutoff times were dangerous. ECF No. 201 at 22. But the TAC is replete with allegations that necessarily imply GM's knowledge, including that GM intentionally maintained a strategy of programming premature shutoff times despite knowing of its dangers. *See, e.g.*, ECF No. 197 ¶¶ 58–73, 90–128, 136; *see also* ECF No. 196 at 14–15 (finding sufficient allegations to infer GM's active concealment of the defect); *Conti v. Am. Honda Motor Co., Inc.*, No. 19-cv-02160-CJC(GJSx), 2019 WL 10371067, at *5 (C.D. Cal. Oct. 17, 2019) ("Plaintiffs need not prove their case on the pleadings. Instead, they must allege details showing that it is *plausible* that [GM] had knowledge of the defect.") (emphasis in original).

Next, GM once again contends that the absence of allegations that airbag nondeployment reports for GM Class Vehicles are more numerous than for other manufacturers weakens Plaintiffs' position. ECF No. 201 at 22. As explained above, the Court has already rejected this argument in its prior orders.

**C.     Standing**

GM avers that Plaintiffs lack Article III standing for two overlapping reasons: because airbags that deploy in "every conceivable accident sequence" were "not part of the bargain," ECF No. 201 at 23 (emphasis omitted), and because another court dismissed a suit in which plaintiffs alleged defects amounting to the absence of non-bargained-for safety features, *id.* at 24 (citing *Johnson v. FCA US, LLC*, 2023 WL 2577228 (E.D. Mich. Mar. 20, 2023)). GM characterizes Plaintiffs as alleging "that a product functions both as designed and as represented but could have been made safer" and argues that said position fails to allege an injury in fact. ECF No. 201 at 26.

To have Article III standing, "a '[p]laintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed

---

*Grp. of Am., Inc.*, 2018 WL 2267448, at *4 (N.D. Cal. May 17, 2018), are inapposite on the same grounds.

by a favorable judicial decision.'" *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 597 (9th Cir. 2020) (alteration in original) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). Standing is a threshold issue separate from the question of whether Plaintiffs have stated a claim upon which relief can be granted. *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1038 (N.D. Cal. 2014). "The requirements to allege standing are not the same as the requirements to plead injury under the substantive law." *Id.* (citing *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1027 (N.D. Cal. 2012)); *see also Catholic League for Religious and Civil Rights v. City & Cnty. of San Francisco*, 624 F.3d 1043, 1049 (9th Cir. 2010) (en banc) (explaining that standing analysis may not "be used to disguise merits analysis, which determines whether a claim is one for which relief can be granted if factually true").

GM's standing arguments bear on the question whether Plaintiffs have stated a claim rather than whether this Court may exercise jurisdiction. Indeed, GM implicitly conflates the two inquiries in its motion, *see* ECF No. 201 at 24 (arguing that the TAC "cannot satisfy standing requirements or otherwise avoid dismissal"), and has twice advanced similar arguments to contend that Plaintiffs failed to allege an actionable safety defect, *see* ECF Nos. 150 at 24–27, 188 at 24–26. The Court has repeatedly rejected GM's arguments in that context, holding that there was "enough information for the Court to infer that the SDM defect existed in 1999," ECF No. 177 at 12, and that the "alleged defect creates an 'unreasonable safety risk,'" *id.* at 16; *see also* ECF No. 196 at 10. The Court will not alter its conclusion solely because GM attempts to recast the argument as jurisdictional. *See In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1163 (C.D. Cal. 2011) (rejecting defendant's standing challenge because "once the safety defect is sufficiently and plausibly pled by all Plaintiffs, the economic losses resulting from the defect are readily established: defective cars are simply not worth as much"); *cf. McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 707 (9th Cir. 2020) ("[A]t least in the context of a hidden defect, economic injury can be established on an overpayment theory absent misrepresentations.").

/ / /

/ / /

/ / /

10

**CONCLUSION**

For the foregoing reasons, the Court denies GM's motion to dismiss Plaintiffs' complaint.

**IT IS SO ORDERED.**

Dated: November 3, 2023



JON S. TIGAR
United States District Judge