ROBERT E. DAVIES, ESQ. / SBN 106810
GREGORY A. NELSON, ESQ. / SBN 274926
DAVIES BLAKEMORE LLP
P.O. BOX 276148
Sacramento, CA 95827
Telephone: (916) 510-2400
Facsimile:  (916) 500-0275

JACK E. LITTLE, JR., ESQ. (to be admitted pro hac vice)
JILLIAN M. PERRY, ESQ. (to be admitted pro hac vice)
WEINSTEIN, TIPPETTS & LITTLE LLP
7500 San Felipe, Suite 500
Houston, TX 77063
Telephone: (713) 244-0800
Facsimile: (713) 244-0801

Attorneys for Non-Party
APTIV SERVICES US, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES MILSTEAD, et al,<br><br>              Plaintiffs,<br><br>       v.<br><br>GENERAL MOTORS LLC,<br><br>              Defendants. | Case No. 4:21-cv-06338-JST<br><br>**NON-PARTY APTIV SERVICES US, LLC'S MOTION FOR PROTECTIVE ORDER FROM GENERAL MOTORS LLC'S BUSINESS RECORDS SUBPOENA**<br><br>Date:     May 15, 2025<br>Time:    10:00 a.m.<br>Dept.:    E, Honorable Thomas S. Hixson |

Non-Party Aptiv Services US, LLC ("Aptiv"), seeks protection from this Honorable Court against an overly broad and unduly burdensome subpoena served by Defendant General Motors LLC ("GM").  GM's subpoena covered sixteen (16) different vehicle platforms spanning twenty (20) years of vehicle production from 1999-2018.  The scope and subject matter of the requests are overly broad and unduly burdensome; could potentially require Aptiv employees to spend more than 500 hours searching and collecting documents to comply with the subpoena; and potentially exposes Aptiv to objection waiver or court sanctions for inadvertent failure to produce requested documents within such a short period.  Alternatively, GM could

have followed Plaintiffs' lead and agreed to a narrow scope of production relevant to Plaintiffs' claims in the Milstead litigation without unduly burdening Aptiv—as required by the discovery rules.

## A.    Factual Background

The Milstead litigation is a class action lawsuit arising from an alleged defect in software of the Class Vehicles' airbag control unit (the "Sensing Diagnostic Module" or "SDM"). Plaintiffs contend this alleged defect diminished the economic or fair market value of the Class Vehicles. Aptiv, and its predecessors, supplied SDMs to General Motors for the Class Vehicles.

### 1.    Plaintiffs requested a limited scope of discovery from Aptiv.

Plaintiffs and GM served separate subpoenas on Aptiv requesting documents allegedly relevant to the Class Vehicles. Plaintiffs served their subpoena on May 20, 2024. See Ex. 1-A, Plfs' Subp. to Aptiv. GM's subpoena was served January 22, 2025. See Ex. 1-B, GM's Subp. to Aptiv.

After Aptiv received Plaintiffs' subpoena, there were discussions between Plaintiffs' counsel and Aptiv's counsel concerning the breadth and scope of Plaintiffs' subpoena. See Ex. 1, Aff. of D. Nichols, at ¶ 7. Ultimately, the discussions resulted in an agreement with Plaintiffs' counsel to temporarily narrow the scope of Class Vehicles currently covered by the subpoena. Id. By agreement, the scope was modified and limited to the following platforms of General Motors vehicles: GMT800s, GMT900s, and K2XXs. Id. These platforms are generally described as light duty and heavy duty General Motors trucks (GMC Sierras and Chevrolet Silverados), and sport utility vehicles (Tahoes, GMC Yukons, Chevrolet Suburbans, and Cadillac Escalades). Id.

Aptiv employee David J. Nichols (then Aptiv's Field Forensics Manager) conducted the search of Aptiv's electronic data management system and archived paper files to comply with Plaintiffs' subpoena. Ex. 1 at ¶ 8. For this smaller scope, compliance with the subpoena required Mr. Nichols to spend seventy (70) hours searching Aptiv's electronic and physical record storage systems to collect the requested information. Id. The documents located by

Mr. Nichols were produced to all counsel of record in a series of rolling productions beginning July 22, 2024, and ending December 18, 2024. In total, Aptiv produced more than 20,000 pages of documents in response to Plaintiffs' subpoena.

The types of documents produced by Aptiv consist of:

- Design drawings;
- Product Definition Documents;
- Validation documentation;
- End of line testing;
- Failure Mode and Effects Analysis documents;
- Pre-production approval process documents;
- Configuration workbook;
- Peer review documents;
- Frontal algorithm design review documents;
- Simulation release; and
- Vehicle calibration and parameter file documents;

and pertain to the following list of General Motors' vehicles:

- 2001-2006 GMC Sierra Truck (LD) (HD);
- 2007 GMC Sierra Classic Truck (LD) (HD);
- 2007 Chevrolet Silverado Classic (LD) (HD);
- 2000-2007 Chevrolet Silverado (LD)(HD);
- 2002-2006 Chevrolet Avalanche;
- 2002-2006 Cadillac Escalade EXT;
- 2000 GMC Yukon;
- 2000-2006 Chevrolet Tahoe;
- 2002-2006 GMC Yukon;
- 2002-2006 GMC Yukon Denali;
- 2000-2006 GMC Yukon XL;
- 2001-2006 GMC Yukon XL Denali;
- 2002-2006 Cadillac Escalade;
- 2003-2006 Cadillac Escalade ESV;
- 2000-2006 Chevrolet Suburban;
- 2007-2014 Chevrolet Silverado (LD) (HD);
- 2007-2013 GMC Sierra Truck (LD);
- 2007-2014 GMC Sierra Truck (HD);
- 2007-2014 Chevrolet Tahoe;
- 2007-2014 GMC Yukon;
- 2007-2014 GMC Yukon Denali;
- 2007-2014 Cadillac Escalade;
- 2007-2014 Chevrolet Suburban;
- 2007-2014 Chevrolet Suburban 2500;
- 2007-2014 GMC Yukon XL;
- 2007-2014 GMC Yukon XL Denali;
- 2007-2014 GMC Yukon XL 2500;
- 2007-2014 Cadillac Escalade ESV;
- 2007-2013 Cadillac Escalade EXT;
- 2007-2013 Chevrolet Avalanche;
- 2015-2018 GMC Sierra;
- 2014 GMC Sierra Truck (LD);
- 2014 Chevrolet Silverado (LD);

- 2015-2018 Chevrolet Silverado;
- 2015-2018 Chevrolet Suburban;
- 2015-2017 Chevrolet Tahoe;
- 2015-2018 GMC Yukon;
- 2015-2018 GMC Yukon Denali; and
- 2015 Cadillac Escalade.

The documents covered by scope of General Motors' subpoena involve sensing diagnostic modules installed and used by other vehicle platforms not included in the list above.

## 2. **Compliance with GM's subpoena is unnecessarily and unduly burdensome.**

In January 2025, GM served a subpoena to Aptiv, but the scope of Class Vehicles and topics covered by the subpoena was significantly larger than the scope requested and later agreed to by Plaintiffs. See Ex. 1-B. Instead of limiting the scope to a couple of relevant platforms like Plaintiffs, GM requested documents for sixteen (16) different vehicle platforms spanning twenty (20) years. Ex. 1 at ¶ 10.

Based on his previous experience and knowledge gained while searching for documents responsive to Plaintiffs' subpoena, Mr. Nichols calculated a reasonable estimate of the hours anticipated to search, collect, and prepare documents and materials responsive to GM's subpoena. See Ex. 1 at ¶ 9. Mr. Nichols' estimate addressed the estimated number of work hours required to physically search Aptiv's archived files and electronic record management system for the Class Vehicles and other topics to determine if documents responsive to GM's subpoena are in Aptiv's possession. Id. Mr. Nichols estimated it will require approximately 526 hours to search for the requested information and determine if responsive documents exist within Aptiv's possession. Id. at ¶ 10.

When Mr. Nichols conducted the initial search for documents responsive to Plaintiffs' modified subpoena, Mr. Nichols was required to manage and balance his work responsibilities. Id. at ¶ 3. Mr. Nichols was unable to devote his full work schedule or large sections of his time to performing the search because of his other job duties and

///

responsibilities. Id. Aptiv is currently unable to re-assign employees to focus solely on a search for documents responsive to GM's subpoena.

If Aptiv directed one employee to spend one full workday, consisting of eight (8) hours, searching for responsive documents, Mr. Nichols estimated it will require approximately fifty-nine (59) weeks to complete the search for information. Id. at ¶ 11. If Aptiv directed an employee to spend two full workdays (sixteen work hours) per week to perform the search for response documents to comply with GM's subpoena, Mr. Nichols estimated it will require approximately thirty-three (33) weeks to complete the search process.

**3.   Aptiv requested GM to issue a revised subpoena with less burdensome requests.**

Before filing this motion for protective order, Aptiv requested GM narrow the scope of its requests for production to be less burdensome to Aptiv. GM refused Aptiv's request to narrow the scope of its requests for production and refused to compromise on a less burdensome scope. GM asserts the full scope of the subpoena is necessary because Plaintiffs' class action spans the twenty-year period of vehicle platforms and GM believes it needs the documents to defend itself from the claims asserted by Plaintiffs.

**B.   This Court Should Protect Aptiv From GM's Unnecessarily Burdensome and Harassing Requests For Production**

"[A]ny person from whom discovery is sought may move for a protective order in the court where the action is pending . . . ." FED. R. CIV. P. 26(c)(1). A motion for protective order is appropriate "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Id.

**1.   GM's overly broad requests needlessly burden Aptiv.**

Federal Rule of Civil Procedure 26(b)(1) limits discovery to matters that are (1) "relevant to any party's claim or defense" and (2) "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the

///

discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

It is GM's duty when issuing a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45(d)(1). The Court "must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Id. A court evaluating whether a subpoena is unduly burdensome under FED. R. CIV. P. 45(c)(3)(B)(i) must "consider such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." Moon v. SCP Pool Corp., 232 F.R.D. 633, 637 (C.D. Cal. 2005) (internal quotations omitted).

GM's subpoena seeks virtually every document connected to the SDMs in all Model Year 1999-2018 GM trucks and SUVs. See Ex. 1-B (defining "Subject Vehicles" as "Model Year 1999-2018 GM trucks and SUVs"). Therefore, Aptiv is required to search for, gather, and produce documents spanning a 20-year period and across 16 platforms of vehicles. Ex. 1 at ¶ 10. If responsive documents exist within Aptiv's possession, it will require approximately 526 hours to search for and gather the requested information. Id. This will require up to 59 weeks for Aptiv employees to search for, collect, and prepare the requested information. Id. at ¶ 11. And GM has failed to explain to Aptiv why it requires discovery for such a large scope of Class Vehicles, especially when Plaintiffs requested only a fraction of the documents GM now requests. Complying with GM's subpoena would unduly burden Aptiv, and the Court should protect Aptiv from this burden and expense.

2. **GM's requests expose Aptiv to inadvertent objection waiver and sanctions.**

GM's requests are further improper because they are likely to cause Aptiv to waive objections and fail to produce discoverable documents. When objecting to GM's request, Aptiv must specifically state the legal or factual basis for the objections before the deadline for the response. See *A. Farber & Ptnrs., Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006)

("general or boilerplate objections . . . are improper"); *Burlington N. & Santa Fe Ry. v. United States Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005) ("boilerplate objections or blanket refusals inserted into a response to a [] request for production of documents are insufficient to assert a privilege."). Any objection Aptiv fails to make is waived. See *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) (finding a party who failed to timely object to interrogatories and document production requests waived any objections).

Also, Aptiv has an affirmative duty to seek information reasonably available to it, which is responsive to GM's subpoena. See *A. Farber & Ptnrs.*, 234 F.R.D. at 189 (quoting *Gray v. Faulkner*, 148 F.R.D. 220, 223 (N.D. Ind. 1992) ("A party responding to a . . . production request . . . is under an affirmative duty to seek that information reasonably available to [it] from [its] employees, agents, or others subject to [its] control."). An evasive or incomplete answer or response to a discovery request is "to be treated as a failure to disclose, answer, or respond" and may be sanctioned by the Court. FED. R. CIV. P. 37(a)(4).

The scope of documents GM requests is so large it is impossible for Aptiv to search for and gather the requested information by the deadline GM set for Aptiv to comply with the subpoena. Such a large scope of documents makes it unfairly difficult for Aptiv to identify and assert every available objection and produce every discoverable and responsive document in such a short period without inadvertently missing an objection or a document. For example, Aptiv will not be able to determine if privileged documents exist in Aptiv's possession, which may be responsive to GM's requests by GM's deadline. GM's overly broad and unduly burdensome requests expose Aptiv to inadvertent waiver of objections and privileges. The Court should protect Aptiv against these risks.

///
///
///
///
///
///

7
NON-PARTY APTIV SERVICES US, LLC'S MOTION FOR PROTECTIVE ORDER FROM GENERAL MOTORS LLC'S BUSINESS RECORDS SUBPOENA

### C. Conclusion

GM's requests for production are overly broad and attempted compliance with the request is unduly burdensome on Aptiv. This Court should grant Aptiv's request for protection and require GM to either limit the scope of vehicles or categories of documents requested so the search does not unduly burden Aptiv. Alternatively, the Court may modify the subpoena to narrow the scope of Class Vehicles.

DATED: April 9, 2025

**DAVIES BLAKEMORE LLP**

By: /s/ Gregory Nelson
Robert E. Davies
Gregory A. Nelson
Attorneys for Non-Party
**APTIV SERVICES US, LLC**