# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

James Milstead, et al.,

     Plaintiffs,

v.

    Case No. 4:21-cv-06338-JST

GENERAL MOTORS LLC, et al.,

     Defendants.

## AFFIDAVIT OF DAVID J. NICHOLS

| | |
|---|---|
| STATE OF INDIANA | § |
| | § |
| COUNTY OF HAMILTON | § |

BEFORE ME, the undersigned authority, on this day personally appeared David J. Nichols who, on his oath, did depose and state as follows:

1.    My name is David J. Nichols, I am over eighteen (18) years of age, of sound mind, never convicted of a felony or crime involving moral turpitude, and am fully competent to make this Affidavit.

2.    Until March 31, 2025, I was employed by Aptiv as a Field Forensics Manager in Carmel, Indiana, and held this position for four (4) years. As Field Forensics Manager; my review of Aptiv business records; and my direct work experience, I gained personal knowledge of the facts stated in this Affidavit, and affirm they are true and correct. As of April 1, 2025, I transferred to a new position as Technical Program Manager at Aptiv.

3.     My job duties as Aptiv's Field Forensics Manager included: performing internal investigations into potential safety and warranty concerns; providing technical assessments of safety and warranty concerns to legal staff and the quality staff; coaching and assisting in problem solving including any necessary Aptiv process improvements; and providing technical support for legal matters involving Aptiv products.  As the Field Forensics Manager, I was occasionally requested to support Aptiv's Legal Department searching for documents and records requested in litigation and by subpoena. While supporting the Legal Department, I was also required to complete my daily scheduled work assignments as Field Forensics Manager and could not devote 100% of my time to search for records responsive to subpoenas served on Aptiv.  Any work related to subpoena compliance was performed contemporaneously with my role as Field Forensics Manager.

4.     In the *Milstead v. General Motors* lawsuit, I am aware Plaintiffs allege a product defect exists in the software of the Sensing Diagnostic Modules ("SDMs") for a certain class of vehicle models referred to as "the Class Vehicles."  The Class of Vehicles are defined by the Plaintiffs as: "all vehicles in the United States that contain the SDM Calibration Defect that were (1) manufactured, sold, distributed, or leased by Defendants or (2) manufactured, sold, distributed, or leased by General Motors Corporation ("Old GM") and purchased or leased by Plaintiffs or a Class member after July 10, 2009."  ECF Doc. 197 at ¶ 1.  As a result of my employment, I am generally familiar with the SDMs for the Class Vehicles which are the subject of Plaintiffs' class action lawsuit.

5.

6.     I further know and understand Plaintiffs and General Motors LLC ("GM") served separate subpoenas on Aptiv requesting certain documents allegedly relevant to the Class Vehicles in *Milstead v. General Motors* lawsuit. The subpoena issued by Plaintiffs was served May 20, 2024. *See* **Exhibit A**. The subpoena issued by General Motors was served January 22, 2025. *See* **Exhibit B**.

7.     Last year, after Aptiv received service of Plaintiffs' subpoena, I understand there were discussions between Plaintiffs' counsel and Aptiv's outside counsel. concerning  the breadth and scope of Plaintiffs' subpoena.  Ultimately, it is my understanding the discussions resulted in an agreement with Plaintiffs' counsel to temporarily narrow the scope of Class Vehicles currently covered by the subpoena to the following platforms of General Motors vehicles generally described as light duty and heavy duty General Motors trucks (GMC Sierras and Chevrolet Silverados) and sport utility vehicles (Tahoes, GMC Yukons, Chevrolet Suburbans, and Cadillac Escalades): GMT 800s, GMT900s, and K2XXs.

8.     I conducted the search of Aptiv's electronic data management system and paper files to comply with Plaintiffs' subpoena to Aptiv, **Exhibit A**, which Plaintiffs agreed to limit to a smaller scope (limited to platforms: GMT-800 LD, HD, and SUV; GMT-900 LD, HD, and SUV; and K2XX LD, HD, and SUV).  For this smaller scope, I spent seventy (70) hours searching and collecting the requested information.

9.     Based on my previous experience searching for documents responsive to Plaintiffs' subpoena, I am able to provide a reasonably accurate assessment of the  time needed to search for, collect, and prepare documents and materials responsive to the

subpoena for production. Using this knowledge and experience, I reviewed GM's subpoena to Aptiv, attached as **Exhibit B**, and calculated a reasonable estimate of the work hours required to conduct a search of Aptiv archived records and electronic record management system for the complete Class Vehicles to determine if documents responsive to GM's subpoena are in Aptiv's possession.

10.    Under the current version of GM's subpoena, there are potentially sixteen (16) vehicle platforms.  If responsive documents exist within Aptiv's possession, it will require approximately 526 hours to search Aptiv's archived records and electronic record management system for potentially responsive materials and collect  the requested information.  Attached as **Exhibit C** is a summary of the subpoena requests, and my reasonable estimate of the number of hours needed to respond to each of the individual topics in GM's subpoena.

11.    If an individual devoted eight (8) hours of their work schedule per week to perform the search for response documents to comply with GM's subpoena, I estimate it will require at least approximately fifty-nine (59) work weeks to search for, collect, and prepare the requested information.  If an individual tasked with the search devoted sixteen (16) hours per week to perform the search for documents to comply with GM's subpoena, I estimate it will require approximately thirty-three (33) weeks to search and gather the requested information.

12.    As of April 1, 2025, I am no longer in the position of Field Forensics Manager and moved to the role of Technical Program Manager. I will not be the person tasked with conducting a search for responsive documents, and it is my belief my successor

will require additional time to conduct the search because they do not have my level of knowledge, familiarity, and experience with the subject matter.

*Further the affiant sayeth not.*

David J. Nichols

Before me, the undersigned Notary Public, in and for said County and State, personally appeared David J. Nichols who, after being duly sworn, deposes and says on oath the foregoing instrument is true and correct to the best of his knowledge, information, and belief.

Sworn to and subscribed before me on this __1ST__ day of __April__, 2025.

NOTARY PUBLIC
My Commission Expires: July 16, 2031

5



**CT Corporation**
**Service of Process Notification**
01/22/2025
CT Log Number 548231421

## Service of Process Transmittal Summary

**TO:**    BARBARA K. FRANTANGELO
Aptiv Services US, LLC
5725 INNOVATION DR
TROY, MI 48098-2852

**RE:**    **Process Served in Michigan**

**FOR:**    Aptiv Services US, LLC  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | James Milstead, et al. vs. GENERAL MOTORS LLC |
| **CASE #:** | 421CV06338JST |
| **NATURE OF ACTION:** | Subpoena - Business records |
| **PROCESS SERVED ON:** | The Corporation Company, Plymouth, MI |
| **DATE/METHOD OF SERVICE:** | By Process Server on 01/22/2025 at 15:02 |
| **JURISDICTION SERVED:** | Michigan |
| **ACTION ITEMS:** | CT will retain the current log |
| | Image SOP |
| | Email Notification,  Ellen Weir  ellen.weir@aptiv.com |
| | Email Notification,  Marinica Mecca  marinica.mecca@aptiv.com |
| | Email Notification,  BARBARA K. FRANTANGELO  barbara.k.frantangelo@aptiv.com |
| **REGISTERED AGENT CONTACT:** | The Corporation Company |
| | 40600 Ann Arbor Road E |
| | Suite 201 |
| | Plymouth, MI 48170 |
| | 866-401-8252 |
| | LargeCorporationTeam@wolterskluwer.com |

**DOCKET HISTORY:**

| DOCUMENT(S) SERVED | DATE/METHOD OF SERVICE | TO | LOG NUMBER |
|---|---|---|---|
| -- | By Process Server on 05/20/2024 at 12:09 | BARBARA K. FRANTANGELO Aptiv | 546467361 |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

**EXHIBIT**
**1 - A**

Page 1 of 1



# PROCESS SERVER DELIVERY DETAILS

**Date:**                     Wed, Jan 22, 2025
**Server Name:**              Drop Service

| Entity Served | APTIV SERVICES, LLC |
|---|---|
| Case Number | 4:21-cv-06338-JST |
| Jurisdiction | MI |

| Inserts | | |
|---|---|---|
| | | |



AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Northern District of California ☑

| | | |
|---|---|---|
| James Milstead, et al. | ) | |
| _____ | ) | |
| *Plaintiff* | ) | Civil Action No. 4:21-cv-06338-JST |
| v. | ) | |
| General Motors LLC et al. | ) | |
| _____ | ) | |
| *Defendant* | ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Aptiv Services, LLC - Records Custodian, The Corporation Company, 40600 Ann Arbor Rd E, #201, Plymouth, MI 48170

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Please see Exhibits A and B.

| Place: Bush Seyferth PLLC 100 W. Big Beaver Road, Suite 400 Troy, MI 48083 | Date and Time: 01/31/2025 12:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 01/17/2025

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | Justin B. Weiner |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____ _____ , who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 4:21-cv-06338-JST

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*

on *(date)* _____ .

     ☐  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

     ☐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

                                      _____
                                                      *Server's signature*

                                      _____
                                                   *Printed name and title*

                                      _____
                                                   *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT A

## I.    DEFINITIONS

In addition to the definitions set forth in the Federal Rules of Civil Procedure, the following definitions apply to each request contained herein, and are deemed incorporated in each request:

1.    "Communication" shall be construed in its broadest sense to encompass any transmission or exchange of information, ideas, facts, data, proposals, or other matter, between or among Persons, by any means.

2.    "Complaint" means the July 27, 2023 Third Amended Consolidated Class Action Complaint filed against GM in *James Milstead et al. v. General Motors LLC et al.*, 4:21-CV-06338, ECF No. 197 (N.D. Cal.).  The Complaint is attached hereto as Exhibit B.

3.    "Delco Electronics" means and includes the entities Delco Electronics, Delphi Automotive, Aptiv and any of their corporations, businesses, subsidiaries, divisions, subdivisions, affiliated entities, predecessors, successors, and parents; and any current or former directors, officers, employees, agents, representatives or other persons acting, or purporting to act, on behalf of the preceding entities.

4.    "Document" means any record or communication that would be a document within the meaning of Federal Rule of Civil Procedure 34, including but not limited to any kind of handwritten, typewritten, computerized, printed, or recorded material whatsoever, including but not limited to notes, memoranda, diaries, calendars, letters, e-mails, instant messages, text messages, websites, invoices, receipts, reports, spreadsheets, charts, checklists, studies, statements, tabulations, surveys, analyses, graphs, presentations, telegrams, photographs, slides, negatives, films, pictorial representations, publications, contracts, tape or voice recordings, transcriptions, business records, and disks or any other form of computer data storage or electronically stored information, including but not limited to originals, duplicates, all file copies,

all other copies (with or without notes or changes thereon) no matter how prepared, drafts, working papers, computer, media, magnetic media, or similar materials.

5.   "GM" means General Motors LLC, which was created on July 10, 2009 after the United States Bankruptcy Court for the Southern District of New York issued the Sale Order and Injunction approving the sale of substantially all of Motor Liquidation Company f/k/a Old GM's assets to NGMCo, Inc., as successor in interest to Vehicle Acquisition Holdings LLC (defined in the Sale Order as the "Purchaser").

6.   "Old GM" means General Motors Corporation, which filed for bankruptcy protection on June 1, 2009 in the United States Bankruptcy Court for the Southern District of New York.

7.   "Litigation" means *James Milstead, et al. v. General Motors LLC, et al.*, 4:21-CV-6338 (N.D. Cal.), *Jamar Chism et al. v. General Motors LLC, et al.*, 3:21-cv-11802 (E.D. Mich.); *William J. Endress et al. v. General Motors LLC et al.*, 3:21-cv-15508 (D. N.J.); and *Jorge Orihuela v. General Motors LLC et al*, 3:21-cv-16336 (D. N.J.).

8.   "NHTSA" means the National Highway Traffic Safety Administration and any of its divisions, subdivisions, employees, representatives, or agents.

9.   "Plaintiffs" means the plaintiffs that filed the Litigation.

10.   "Plaintiffs' Counsel" means the law firms and attorneys listed on pages 81-83 of the Complaint, including the law firms Lieff Cabraser Heimann & Bernstein, LLP; Barron & Budd, P.C.; Seeger Weiss LLP; Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.; Birka-White Law Offices; Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C.; Kessler Topaz Meltzer & Schack, LLP; Levin, Sedrean & Berman, LLP; The Miller Law Firm, P.C.; and The Sultzer Law Group P.C.

11.     "Subject Vehicles" means Model Year 1999-2018 GM trucks and SUVs.

12.     "SDM" means "Sensing Diagnostic Module" and should be construed to include any type of airbag control unit for the Subject Vehicles.

13.     "EFSs" means "Electronic Front Sensors" and should be construed to include any type of sensing hardware components for the Subject Vehicles.

14.     "ADS" means "Auxiliary Discriminating Sensor(s)."

15.     "You" and "Your" refers to you, and any agents, representatives or others acting on your behalf.

## II.    INSTRUCTIONS

In addition to the instructions set forth in the Federal Rules of Civil Procedure, the following instructions apply to each request contained herein, and are deemed incorporated in each request:

1.     Whenever used herein, the singular includes the plural and vice versa.

2.     Whenever used herein, "and" may be understood to mean "or" and vice versa whenever such construction results in a broader request for information.

## III.    REQUESTS FOR PRODUCTION OF DOCUMENTS

1.     Documents sufficient to describe the frontal sensing system hardware applicable to the Subject vehicles including but not limited to the (a) SDM, (b) EFS, and (c) ADS.

2.     Documents describing or explaining the frontal sensing system requirements in the Subject Vehicles.

3.     PDD (product definition documentation) applicable to the frontal sensing system in the Subject Vehicles.

4.     SDD (software definition documents) applicable to the software in the Subject Vehicles.

5.    ADD (algorithm definition documents) applicable to the frontal sensing algorithm in the Subject Vehicles.

6.    Calibration/parameter files for the frontal sensing system in the Subject Vehicles.

7.    Sensing algorithm simulation plots for the Subject Vehicles.

8.    The production-released configuration workbooks or the frontal sensing system performance summaries applicable to the frontal sensing system calibrations for the Subject Vehicles.

9.    End of line test procedures for the following frontal sensing system components in the Subject Vehicles: (a) SDM, (b) EFS, and (c) ADS.

10.    Failure Mode Effects Analysis (FMEA) documentation for the following frontal sensing system components in the Subject Vehicles: (a) SDM, (b) EFS, and (c) ADS.

11.    Pre-Production Approval Process (PPAP) documentation for the following frontal sensing system components in the Subject Vehicles: (a) SDM, (b) EFS, and (c) ADS.

12.    Peer and/or Design Solutions Peer Review documentation regarding the SDM hardware, SDM software, and the frontal sensing algorithm for the Subject Vehicles.

13.    Frontal Algorithm Design Review documentation presented to GM for the SDMs in the Subject Vehicles.

14.    Any Delco Electronics frontal sensing algorithm and frontal calibration best practices in existence at the time of the development of the SDM frontal sensing algorithms and frontal calibrations for the Subject Vehicles.

15.    All documents and communications with Chris Caruso related to the frontal sensing algorithm including deployment thresholds, cut-offs, or timers in the Subject Vehicles.

16.     All documents and communications with Chris Caruso related to the frontal sensing algorithm including deployment thresholds, cut-offs, or timers in any GM vehicles other than the Subject Vehicles.

17.     All documents and communications with Chris Caruso related to the frontal sensing algorithm including deployment thresholds, cut-offs, or timers in any vehicles manufactured by an OEM other than GM.

18.     All documents and communications with Chris Caruso related to the design of deployment thresholds, cut-offs, or timers to account for concatenated events.

19.     All documents and communications relating to the allegations in Plaintiffs' Complaint that "Old GM overrode serious concerns from a team from Delco Electronics (later called Delphi Electronics, now known as Aptiv), including engineering manager, Chris Caruso" regarding the Subject Vehicles, including but not limited to allegations that "Mr. Caruso and a team of software engineers from Delco . . . expressly warned Old GM in or about 1999 that using its strategy to prematurely cut off the potential for airbag and seatbelt deployment during a crash event was a reckless and dangerous design decision."

20.     All documents and communications relating to the allegations in Plaintiffs' Complaint that "a separate team in charge of the design and development for GM cars rejected GM Trucks' approach [to SDM calibrations] after hearing (and heeding) the Delco team's concerns about the earlier [SDM calibration] cut off."

21.     All documents and communications relating to or describing the event progression timer ("EP-1 timer") utilized in the Subject Vehicles and the rationale for selecting a given EP-1 timer value for those vehicles.

*I*

22.    All documents and communications relating to any concerns or warnings expressed by You to Old GM or GM regarding the SDM frontal calibrations in the Subject Vehicles.

23.    All documents and communications exchanged between You or Your attorneys and Plaintiffs or Plaintiffs' Counsel, including any tolling agreements, regarding the Litigation.

# Exhibit B

1  Richard Heimann (CA State Bar # 063607)
   Nimish R. Desai (CA State Bar # 244953)
2  **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
   275 Battery St., 29th Fl
3  San Francisco, CA 94111-3339
   Telephone: 415-956-1000
4  Facsimile: 415-956-1008
   rheimann@lchb.com
5  ndesai@lchb.com

6  David S. Stellings (*pro hac vice*)
   Katherine I. McBride (*pro hac vice*)
7  Jessica A. Moldovan (*pro hac vice*)
   **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
8  250 Hudson Street, 8th Floor
   New York, NY 10013
9  Telephone: 212.355.9500
   Facsimile: 212.355.9592
10 dstellings@lchb.com
   kmcbride@lchb.com
11 jmoldovan@lchb.com

12 *Attorneys for Plaintiffs*

13 *[Additional counsel listed on signature page]*

14                    UNITED STATES DISTRICT COURT

15                   NORTHERN DISTRICT OF CALIFORNIA

16

17 James Milstead, et al.,                    Case No. 4:21-cv-06338-JST

18              Plaintiffs,                    **THIRD AMENDED CLASS ACTION
                                               COMPLAINT**
19 v.

20 GENERAL MOTORS LLC, et al.,                 **JURY TRIAL DEMANDED**

21              Defendant.

22

23

24

25

26

27

28

2820476.3

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ............................................................................................... 1

II.   PARTIES ........................................................................................................... 4

      A.    Plaintiffs ................................................................................................ 4

      B.    Defendants ............................................................................................. 6

III.  JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT ............. 7

IV.   GENERAL FACTUAL ALLEGATIONS ......................................................... 8

      A.    SDMs are supposed to detect crashes and control airbags and seatbelts. .............. 8

      B.    GM used a dangerous and defective SDM software calibration in its trucks
            and SUVs. ............................................................................................ 11

      C.    GM knew that the SDM Calibration Defect was dangerous and unjustified
            but has failed to warn or compensate consumers. .............................. 14

            1.    Old GM recklessly downplayed serious risks of injury when it
                  chose to include the SDM Calibration Defect in the Class Vehicles. ....... 16

            2.    GM's aggressive cutoff was not necessary to protect against "late"
                  airbag deployments. ................................................................. 20

            3.    GM knew about a pattern of suspicious accidents involving the
                  SDM Calibration Defect in the Class Vehicles. ....................... 22

                  a.    GM has litigated (and settled) many personal injury lawsuits
                        for suspicious airbag failures in the Class Vehicles. ............. 23

                  b.    GM knew or should have known about hundreds of publicly
                        reported airbag failures in the Class Vehicles. ....................... 32

      D.    Despite its knowledge, GM misrepresented and concealed important
            information about the SDM Calibration Defect and Class Vehicle safety. .......... 50

            1.    Labels and window stickers on the Class Vehicles stated that they
                  were equipped with working airbags and seatbelts and failed to
                  disclose the SDM Calibration Defect. ...................................... 51

            2.    GM published owners' manuals for the Class Vehicles that detailed
                  their safety features but did not disclose the SDM Calibration
                  Defect. ....................................................................................... 54

            3.    GM marketed the Class Vehicles to be safe and reliable but failed
                  to mention the SDM Calibration Defect. .................................. 58

            4.    GM provided warranties to repair defects in the Class Vehicles and
                  have not done so. ....................................................................... 61

V.    CLASS ACTION ALLEGATIONS ................................................................. 62

      A.    The Class Definition .......................................................................... 62

      B.    Numerosity: Federal Rule of Civil Procedure 23(a)(1). ................... 63

      C.    Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2)
            and 23(b)(3). ........................................................................................ 64

      D.    Typicality: Federal Rule of Civil Procedure 23(a)(3) ....................... 65

      E.    Adequacy: Federal Rule of Civil Procedure 23(a)(4) ....................... 65

**TABLE OF CONTENTS**
(continued)

Page

F.      Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2)...... 65

G.      Superiority: Federal Rule of Civil Procedure 23(b)(3) ........................................ 66

VI.     ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED............................ 66

VII.    CAUSES OF ACTION .................................................................................................. 68

VIII.   PRAYER FOR RELIEF ................................................................................................ 79

IX.     DEMAND FOR JURY TRIAL...................................................................................... 80

1    Plaintiffs, individually and on behalf of all others similarly situated (the "Class"), allege

2    the following against General Motors LLC, General Motors Holdings LLC, and General Motors

3    Company (collectively, "Defendants," "GM," or "New GM") based, where applicable, on

4    personal knowledge, information and belief, and the investigation of counsel and their experts.

5    Plaintiffs file this complaint pursuant to the Court's Order granting leave (Dkt. 196 at 19) and

6    attach hereto as Exhibit E a redline comparison between this complaint and the previous pleading

7    for the Court's reference.

8    **I.    INTRODUCTION**

9         1.    This case involves a dangerous defect that compromises critical safety systems in

10   millions of GM trucks and SUVs. When working properly, during a frontal crash of sufficient

11   severity, a vehicle's seatbelts should tighten to hold the vehicle occupants in place, and the

12   airbags should inflate to protect them from hard impacts. A defect in the Class Vehicles, however,

13   can prevent seatbelt tightening and airbag deployment during certain types of crashes, leaving

14   vehicle occupants without protection exactly when they need it most.[1]

15        2.    The defect is contained in the software that governs the Class Vehicles' airbag

16   control unit. This unit, also known as the Sending and Diagnostic Module ("SDM"), is a small

17   computer connected to sensors placed throughout a vehicle. These sensors monitor vehicle

18   performance and tell the SDM when they detect irregular behavior.

19        3.    Based on the signals it receives from these sensors, the SDM *should* fire the

20   airbags and tighten seatbelts when needed in a real-world crash of sufficient severity. But in the

21   Class Vehicles, the software program that controls the SDM is calibrated in such a way that it

22   prematurely prevents airbag and seatbelt deployment, long before any reasonable or acceptable

23   time to do so. This has serious repercussions in foreseeable, real-world accidents that need

24   seatbelt and airbag deployment after the software cuts off access to those features—such as

25   accidents that involve multiple impacts, or that start with a soft initial onset and then increase in

26

27   _____

     [1] The "Class Vehicles" include all vehicles in the United States that contain the SDM Calibration

28   Defect that were (1) manufactured, sold, distributed, or leased by Defendants or (2)
     manufactured, sold, distributed, or leased by General Motors Corporation ("Old GM") and
     purchased or leased by Plaintiffs or a Class member after July 10, 2009.

1    severity over time. In such accidents, the airbags and seatbelts in the Class Vehicles can fail. Put

2    simply, because of a persistent, dangerous insistence within the company's Trucks Group, GM

3    used a software calibration that can and does prematurely close the time window to engage

4    airbags and seatbelts in a crash, putting occupants of the Class Vehicles at serious risk.

5         4.    Old GM knew about the effect of this calibration and related dangers from the very

6    outset, when it originally decided to prematurely close the time window for airbag deployment in

7    the Class Vehicles in the late 1990s.[2] In the process, Old GM overrode serious concerns from a

8    team from Delco Electronics (later called Delphi Electronics, now known as Aptiv), including

9    engineering manager, Chris Caruso. Mr. Caruso and a team of software engineers from Delco—

10   which designed the base SDM software program used in the Class Vehicles and other GM

11   vehicles—expressly warned Old GM in or about 1999 that using its strategy to prematurely cut

12   off the potential for airbag and seatbelt deployment during a crash event was a reckless and

13   dangerous design decision.

14        5.    Old GM's Trucks Group, which was in charge of the design and development for

15   all GM trucks and SUVs, ignored this warning and insisted on using its defective SDM

16   calibration strategy. Given their significant concerns, Mr. Caruso and the Delco team insisted that

17   Old GM sign a disclaimer of Delco's liability for the modified algorithm as used in GM trucks

18   and SUVs.

19        6.    Tellingly, a separate team in charge of the design and development for GM cars

20   rejected GM Trucks' approach after hearing (and heeding) the Delco team's concerns about the

21   earlier cutoff. As such, GM cars included a much longer window (fully twice as long as the

22   window used by GM Trucks, approximately 100 milliseconds at minimum) for the airbags and

23   seatbelts to deploy in a crash for the vehicles they designed. As such, not only did GM Trucks

24   reject the warnings from Mr. Caruso and the Delco team, it also ignored its own cars group's

25   views, which included a time window that more reasonably and appropriately tracks the duration

26   of crash events in the real world, as opposed to the laboratory crash test environment.

27   _____

28   [2] As detailed further below, Old GM filed for bankruptcy in 2009, which led to the creation of the
     contemporary GM entities named as Defendants herein.

1       7.     On information and belief, starting in or about 1999, GM Trucks Group (and Old

2    GM before it) used its defective approach to SDM software calibration in all of the trucks and

3    SUVs (mid and large size vehicles) under its direction, and continued to use its dangerous and

4    defective approach to prematurely cut off airbag and seatbelt deployment during crashes at least

5    through model year 2018. Plaintiffs refer to this defective strategy—to calibrate software to

6    prevent airbag and seatbelt deployment during a "dead zone" that begins too soon after a crash

7    has begun, and well before the safer window used by GM cars (a minimum of approximately 100

8    milliseconds after a crash has begun)—as the "SDM Calibration Defect."

9       8.     When General Motors, LLC ("GM LLC") was formed in 2009, it acquired books,

10   records, and personnel from Old GM that reflected this reckless decision to use the dangerous

11   SDM calibration in GM trucks and SUVs. Despite this acquired knowledge, GM continued to use

12   Delco SDMs in its vehicles and, on information and belief, continued to use the defective

13   software calibration associated with those Delco SDMs as well.

14      9.     Since it was formed in 2009, GM has gained still more knowledge of the defect

15   through personal injury lawsuits, consumer complaints, and its own investigations into serious

16   crashes where the airbags and seatbelts failed in the Class Vehicles. As an example, documents in

17   a personal injury lawsuit filed against GM LLC in 2011 describe the SDM Calibration Defect in

18   detail and relate Old GM's reckless decision to use it. *See* § IV.C.3.a, infra.  Chris Caruso, the

19   engineer who originally objected to the defective deployment strategy in the first instance, has

20   gone on to serve as an expert in a number of these cases.

21      10.    While the use of the defective shutoff strategy began some twenty years ago, it

22   remains a real and immediate risk to Plaintiffs and Class members today. Indeed—and while

23   personal injury settlements are not uniformly made public (such that the records available to

24   Plaintiffs only reflect those publicly disclosed)—court records show that GM settled yet another

25   personal injury lawsuit about the SDM Calibration Defect in December 2022.

26      11.    Discovery in that case, *McCoy v. General Motors*, revealed that GM persisted in

27   using its dangerous, early cutoff strategy in a model year 2018 GM SUV.  Mr. Caruso's report in

28   *McCoy* provides direct evidence that, after first insisting on its defective deployment cutoff

1    strategy in approximately 1999, for many years (decades) thereafter up to 2018, GM Trucks
2    failed to adopt a safer and more rational design that would allow for deployment for at least as
3    long as the window used by GM cars (*i.e.*, approximately 100 milliseconds at a minimum). *See*
4    § IV.C.3.a, infra. To the contrary, in both 1999 and 2018, GM's trucks and SUVs dangerously cut
5    off the deployment window far short of that minimum.

6          12.    Finally, publicly available consumer complaints to the National Highway Traffic
7    and Safety Administration ("NHTSA") detail more than *eight hundred* instances where the
8    airbags and/or seatbelts suspiciously failed in the Class Vehicles during frontal crashes. Many of
9    these reports specifically state that GM knew about and investigated the crash after the reported
10   airbag failures. A separate NHTSA dataset indicates that, from 1999 to 2021, at least 1,298
11   people were killed or injured in a frontal collision in which the airbags did not deploy in one of
12   these vehicles. *See* IV.C.3.b, infra.

13         13.    Despite its knowledge of the SDM Calibration Defect and its impact on safety,
14   GM has concealed the defect and failed to recall or repair the Class Vehicles, and has thereby
15   avoided the significant costs, inconveniences, and reputational harms of recalling millions of
16   trucks and SUVs. GM has hidden the defect despite its obligation to disclose it, misrepresented
17   the Class Vehicles to be safe, and continued to sell them to consumers.

18         14.    Because of GM's failure to disclose the truth, consumers continue to purchase and
19   drive Class Vehicles with the SDM Calibration Defect every day—on road trips, commutes, and
20   weekend errands alike—unaware that their airbags and seatbelts may not work in certain serious
21   crashes when they need them. This lawsuit seeks redress from GM for the damages incurred
22   when Plaintiffs and proposed Class members paid for vehicles with a safety system that may fail
23   them in life-threatening collisions.

24   **II.    PARTIES**
25         **A.    Plaintiffs**
26         15.    Plaintiff James Milstead ("Plaintiff" for the purposes of this paragraph) is an
27   individual residing in Oxnard, CA. On September 11, 2021, Plaintiff purchased a 2012 Avalanche
28   (for purposes of Plaintiff's allegations, the "Class Vehicle") from Escondido Auto Super Center

1    in Escondido, CA. On information and belief for the reasons set forth herein, GM installed the

2    SDM Calibration Defect—which shut off the vehicle's ability to deploy airbags in a crash

3    prematurely—in Mr. Milstead's truck during the manufacturing process, and Mr. Milstead's truck

4    contained the SDM Calibration Defect at the time he purchased the vehicle. At the time of

5    purchase, Plaintiff reasonably expected that the airbags and seatbelts would function in the event

6    of a crash and had no way of knowing that it contained a dangerous and defective SDM

7    calibration that could cause the airbags and seatbelts to fail when needed during a crash. To the

8    contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through

9    television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and

10   GM vehicles generally. GM concealed the existence of the defective SDM calibration from

11   consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would

12   have paid less for it, if Defendants did not conceal material information about the defective SDM

13   calibration.

14          16.     Plaintiff Arthur Ray ("Plaintiff" for the purposes of this paragraph) is an individual

15   residing in Brentwood, California. In or around January 22, 2010, Plaintiff purchased a new 2010

16   GMC Sierra 2500 (for purposes of Plaintiff's allegations, the "Class Vehicle") from Concord

17   GMC, an authorized dealership located in Concord, California. On information and belief for the

18   reasons set forth herein, GM installed the SDM Calibration Defect—which shut off the vehicle's

19   ability to deploy airbags in a crash prematurely—in Mr. Ray's truck during the manufacturing

20   process, and Mr. Ray's truck contained the SDM Calibration Defect at the time he purchased the

21   vehicle. At the time of purchase, Plaintiff reasonably expected that the vehicle's airbags and

22   seatbelts would function in the event of a crash and had no way of knowing that it contained a

23   dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail when

24   needed during a crash. To the contrary, before acquiring the Vehicle, Plaintiff viewed or heard

25   commercials and reviews through television and the internet that touted the safety and reliability

26   of Plaintiff's vehicle, including its "Five Star" safety rating, and GM vehicles generally. GM

27   concealed the existence of the defective SDM calibration from consumers including Plaintiff.

28

- 5 -                      THIRD AMENDED CLASS ACTION COMPLAINT
                                                                        4:21-CV-06338-JST

1    Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if

2    Defendants did not conceal material information about the defective SDM calibration.

3            17.    Plaintiff Richard Vargas ("Plaintiff" for the purposes of this paragraph) is an

4    individual residing in Menifee, California. In or around December 2012, Plaintiff purchased a

5    new 2012 Chevrolet Suburban (for purposes of Plaintiff's allegations, the "Class Vehicle") from

6    El Camino Real Chevrolet dealership located in Monterey Park, California. On information and

7    belief for the reasons set forth herein, GM installed the SDM Calibration Defect—which shut off

8    the vehicle's ability to deploy airbags in a crash prematurely—in Mr. Vargas' SUV during the

9    manufacturing process, and Mr. Vargas' SUV contained the SDM Calibration Defect at the time

10   he purchased the vehicle. At the time of purchase, Plaintiff reasonably expected that the Vehicles'

11   airbags and seatbelts would function in the event of a crash and had no way of knowing that it

12   contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to

13   fail when needed during a crash. To the contrary, before acquiring the Vehicle, Plaintiff viewed

14   or heard commercials and reviews through television, radio, and the internet that touted the safety

15   and reliability of Plaintiff's vehicle, including its "Five Star" safety rating, and GM vehicles

16   generally. Additionally, when at the dealership before making his purchase, Plaintiff inquired

17   about the airbags in the Class Vehicle. GM concealed the existence of the defective SDM

18   calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class

19   Vehicle, or would have paid less for it, if Defendants did not conceal material information about

20   the defective SDM calibration.

21           **B.    <u>Defendants</u>**

22           18.    General Motors LLC ("GM LLC") is a Delaware limited liability company with its

23   principal place of business located at 300 Renaissance Center, Detroit, Michigan, and is a citizen

24   of the States of Delaware and Michigan. The sole member and owner of GM LLC is General

25   Motors Holdings LLC.

26           19.    General Motors Holdings LLC ("GM Holdings") is a Delaware limited liability

27   company with its principal place of business in Detroit, Michigan, and is a citizen of the States of

28

1   Delaware and Michigan. The sole member and owner of GM Holdings is General Motors

2   Company.

3         20.     General Motors Company ("GM Parent") is a Delaware corporation with its

4   principal place of business in Detroit, Michigan, and is a citizen of the States of Delaware and

5   Michigan. GM Parent's only asset is its 100% ownership interest in GM Holdings. In public SEC

6   filings, GM Parent states: "We design, build and sell cars, trucks, crossovers and automobile parts

7   worldwide." GM Parent sells vehicles throughout the United States "through [its] dealer network

8   to retail customers." As further noted in SEC filings, GM Parent is also responsible for making

9   reports to NHTSA related to vehicle safety and making determinations as to vehicle recalls.[3]

10        21.     Each of GM LLC, GM Holdings, and GM Parent operates out of GM's Global

11  Headquarters in Detroit, Michigan.

12        22.     In June 2009, Old GM filed for bankruptcy. Defendants were then created on or

13  about July 10, 2009, in connection with the sale of substantially all of Old GM's assets pursuant

14  to a Master Sale and Purchase Agreement. As a result of the sale, GM LLC acquired substantially

15  all of Old GM's books, records, and personnel. GM LLC then transferred some of these assets to

16  GM Holdings (formed shortly after the bankruptcy sale). Defendants thereby acquired from Old

17  GM the knowledge about the SDM Calibration Defect (defined below) that those books, records,

18  and personnel held. GM Parent and GM LLC also took responsibility for any necessary recalls of

19  Old GM vehicles going forward.

20        23.     The causes of action in this Complaint are directed to GM Parent, GM Holdings,

21  and GM LLC and are based on their misconduct.

22  **III.    JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT**

23        24.     This Court has original jurisdiction over this action pursuant to the Class Action

24  Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse

25  citizenship from one Defendant, there are more than 100 Class members, and the aggregate

26  amount in controversy exceeds $5 million, exclusive of interest and costs.

27

28

---

[3] *See* General Motors Company's Form 10-K for fiscal year 2019.

1    25.    This Court has personal jurisdiction over Defendants under California Code of
2    Civil Procedure section 410.10.

3    26.    Venue is proper in this District under 28 U.S.C. § 1391, and assignment is proper
4    to this division under N.D. Cal. L.R. 3-2, because a substantial part of the events or omissions
5    which give rise to the claims occurred in this District, and because Defendants have caused harm
6    to Class members residing in this District, including Plaintiff Ray. GM conducts substantial
7    business, including through numerous dealerships, and marketed, advertised, sold, and leased
8    Class Vehicle in this District.

9    **IV.    GENERAL FACTUAL ALLEGATIONS**

10        **A.    SDMs are supposed to detect crashes and control airbags and seatbelts.**

11    27.    Car crashes kill or seriously injure hundreds of thousands of people every year.
12    Because of this risk, the federal government requires automobile manufacturers to include critical
13    safety features—seatbelts and airbags—in all vehicles sold in the United States. This life-saving
14    equipment has been mandatory in passenger vehicles since 1997. *See* 49 U.S.C. § 30127.

15    28.    These features include seatbelt pretensioners, which tighten seatbelts to secure the
16    occupants, and airbags, which are cushions that rapidly inflate from the steering wheel and other
17    areas of the vehicle. During an accident, seatbelt pretensioners hold vehicle occupants in place,
18    and airbags buffer or prevent impact between occupants and hard structures in the vehicle.
19    Without the airbags, slamming into the hard structures (such as the steering wheel) during a crash
20    can and has caused serious injuries and death.

21    29.    When functioning properly, the combination of seatbelts and airbags is highly
22    effective in reducing the safety risk in automobile collisions. NHTSA reports that the use of
23    seatbelts and airbags reduces fatality risk by *61 percent* compared to an unbelted occupant in a
24    vehicle without airbags.[4] From 1987 to 2017, an estimated 50,457 lives were saved because
25    frontal airbags deployed during a crash.[5]

26

27    [4] U.S. Department of Transportation, NHTSA, *Fatalities in Frontal Crashes Despite Seat Belts and Airbags*, NHTSA Technical Report No. DOT HS 811 202 (September 2009).
28    [5] NHTSA, Air Bags Overview. *Available at*: https://www.nhtsa.gov/equipment/air-bags (last visited July 27, 2023).

1    30.    Although airbags work effectively to protect occupants when necessary, they are

2    not meant to deploy with every impact. A crash may be of lower intensity (e.g., a low-speed

3    fender bender in a parking lot) such that the seatbelt alone will be sufficient protection for the

4    occupant.[6] Airbags are designed to deploy in "moderate to severe" frontal or near-frontal crashes.

5    A "moderate to severe" frontal crash is the equivalent of hitting a solid, fixed barrier at 8-14 miles

6    per hour or higher.[7]

7    31.    Seatbelt and airbag systems are known as "passive" safety systems because, when

8    they are needed, they are supposed to operate automatically (meaning, the driver does not need to

9    hit a button to deploy the airbag). They use sophisticated hardware components and software to

10    activate and deploy the seatbelts and airbags systems automatically.

11    32.    The "brain" behind this operation is the airbag control unit or "ACU" (also known

12    as an Electronic Control Unit or "ECU"). GM refers to this component as the "Sensing and

13    Diagnostic Module" or "SDM," and that term is used throughout this Complaint. SDMs are

14    effectively computers that control the car's safety systems. They are intended, where appropriate,

15    to issue a "command" to deploy airbags and tighten seatbelts to prevent or mitigate injury to

16    vehicle occupants in a crash.

17    33.    The SDM operates in three basic phases:

18    a.    *First*, during regular vehicle operation, the SDM sits in a resting or

19    "normal" mode. In this mode, the SDM constantly receives signals from sensors placed

20    throughout the vehicle, which collect and report information on inputs such as acceleration, wheel

21    speed, brake pressure, and impacts.[8] The SDM monitors and interprets these signals to determine

22    whether the vehicle is involved (or about to be involved) in a crash.

23    b.    *Second*, while monitoring these signals in "normal" mode, if and when the

24    SDM detects an irregular input that suggests a potential crash, it "wakes up" to search for further

25

26    [6] Dr. Ching-Yao Chan, *Fundamentals of Crash Sensing in Automotive Airbag Systems*. Copyright Society of Automotive Engineers, (2000), at p. 50.

27    [7] Air Bags Overview, *supra* note 5.

28    [8] Clemson University Vehicular Electronics Laboratory, "Airbag Deployment Systems." Available at: https://cecas.clemson.edu/cvel/auto/systems/airbag_deployment.html (last visited July 27, 2023).

1   confirmation of a crash (as opposed to, for example, an irregular input from slamming on the

2   brakes and then avoiding a collision). In this second stage—known as "wake up" or "standby"

3   mode—the SDM's crash-sensing software algorithm is engaged to quickly decipher crash status

4   and respond.[9] After "wake up" mode is triggered by an irregular input, if additional inputs

5   confirm a moderate to severe frontal crash, the SDM *should* issue a command to "fire" the airbag

6   and/or tighten the seatbelts as needed.[10]

7          c.      *Third*, the final phase in this sequence is the "reset" phase. From "wake up"

8   mode, after it detects that a crash or a potential crash has fully completed, (i.e., that the vehicle

9   has returned to normal operation after an irregular input) the SDM ultimately returns to its normal

10  operating state through "resetting."

11         34.     A vehicle striking a pothole illustrates this three-phase sequence. The vehicle first

12  operates with the SDM in "normal" mode as it drives down the road. Then, suddenly, the driver

13  hits an unseen pothole. This jolt from hitting the pothole (and/or related inputs like deceleration)

14  will trigger the SDM to enter "wake up" mode where it searches for more inputs. Awake, the

15  SDM quickly asks: "How fast is the vehicle slowing down? Is the front bumper crushed? Is the

16  vehicle speeding back up normally?" and reacting in turn.[11]

17         35.     If the SDM senses that the vehicle returns to normal operation and continues down

18  the road, it will stop looking for confirmation of a crash and reset to normal operation. On the

19  other hand, if, after it hits the pothole, the vehicle veers out of its lane and crashes into another

20  vehicle head on, the SDM should detect this second input and fire the airbag.[12]

21         36.     This entire sequence—from sensing an irregular signal (the pothole), to waking up

22  and searching for confirmation of a crash, to firing the airbag where needed—might take only

23  fractions of a second. For that reason, timing this sequence properly is critically important to

24

25  [9] John Pearley Huffman, "The Physics of Airbags," *Car & Driver*, June 14, 2011. Available at:
    https://www.caranddriver.com/features/a15121591/the-physics-of-airbags-feature (last visited
26  July 27, 2023).
    [10] Jesse Kendall, P.E., and Kenneth Solomon, Ph.D., "Airbag Deployment Criteria" at p. 11.
27  Available at: https://www.experts.com/content/articles/Kenneth-Solomon-Airbag-Paper.pdf (last
    visited July 27, 2023).
28  [11] Solomon, *supra* note 10, at p. 11.
    [12] *Id.* at p. 8.

1    ensure that the seatbelts are tightened, and the airbags deploy, to protect the occupants when they

2    need to.

3        **B.**     **GM used a dangerous and defective SDM software calibration in its trucks**

4                 **and SUVs.**

5        37.     Throughout the three-phase sequence described above, SDMs rely on software

6    algorithms to interpret signals, estimate crash dynamics, and issue a "deploy" or "do not deploy"

7    command to the safety systems.

8        38.     For the SDM to function as intended, the software that controls it must be designed

9    to recognize and respond to real-world crashes so that the airbags inflate and seatbelts tighten

10   when they are needed.

11       39.     Crash sensing occurs in "real-time." This means that the sensing algorithm can

12   only examine a limited window of data to predict and judge the severity of crash events before

13   conclusion, so that the airbags can deploy and protect the occupant on impact.[13] A decision to

14   "deploy" the airbags should occur when certain pre-set thresholds that tell the SDM a crash is

15   severe enough (i.e., a moderate to severe frontal collision) are met or exceeded. These

16   deployment thresholds are programmed into the SDM software through a process in which

17   engineers "calibrate" the software algorithm in the vehicle.

18       40.     In the Class Vehicles, the software calibration that controls how and when the

19   SDM detects accidents and deploys the safety systems contains a serious defect. Specifically, for

20   frontal crashes, GM calibrated the SDM to prevent deployment during a dead zone. The dead

21   zone starts with a cutoff time imposed by GM after the SDM "wakes up." At this early stage,

22   Plaintiffs note that time used and recorded by the SDM software (i.e. 45ms, 50ms, 100ms, etc.),

23   including the time elapsed for purposes of triggering the cutoff and resulting dead zone, is

24   complex. As a general matter, it refers to time as calculated in the software, as opposed to

25   traditional, linear time.

26       41.     Putting aside whether any cutoff is necessary in light of advancements in modern

27   airbag technology, GM Trucks selected cutoff times that are reached too soon by any measure,

28

---

[13] Chan, *supra* note 6, at p. 95.

              - 11 -               THIRD AMENDED CLASS ACTION COMPLAINT
                                                                      4:21-CV-06338-JST

1  i.e., cutoff times of less than approximately 100 milliseconds, which is a more realistic time

2  period for crash sequences to progress, and the safer window used by GM cars.[14] At the

3  premature cutoff time used by GM Trucks, the algorithm increases the deployment thresholds to

4  unattainable values, meaning that no matter how severe the inputs the SDM receives, the airbags

5  and pretensioners will not deploy. Further, when the SDM clock is above the cutoff time, this

6  dead zone does not end until SDM reset, and thus persists through foreseeable real world

7  collisions. In sum, this defective design and premature cutoff—the SDM Calibration Defect—

8  introduces a dead zone to a window where airbag deployment is often necessary in real-world

9  crashes, but by design cannot happen.

10      42.     Cutting off airbag deployment in the short duration GM Trucks used was callous

11  and dangerous, particularly when compared to the time for a typical "crash duration" in a

12  straightforward frontal, vehicle-to-barrier collision, which lasts for approximately 80-150

13  milliseconds (0.08-0.15 seconds), much longer than the cutoff imposed by GM Trucks

14  (approximately 50 milliseconds or less).[15] And of course, more complex, multi-impact crashes

15  may take even longer.

16      43.     This defective calibration was no accident; rather, as detailed below, GM included

17  it by design when it modified the SDM software program (originally known as ALGO-S) in the

18  Class Vehicles to include it.  In affirmatively and prematurely blocking these critical safety

19  features while a crash is foreseeably still underway, GM greatly and needlessly increased the risk

20  of injury and death in a variety of frontal crashes that require airbag deployment during the "dead

21  zone."

22      44.     For example, this includes frontal crashes with multiple, distinct points of impact

23  known as "concatenated" events. A vehicle that first hits a curb and then veers and hits a tree, or

24  first hits a speed bump and then crashes into the vehicle in front of it, are examples of

25  concatenated crashes. By their nature, concatenated accidents involve multiple discrete inputs for

26  the SDM to detect during a crash sequence.

27

28  [14] *See* ¶¶ 109-110 and Mr. Caruso's *McCoy* report, *infra*.
    [15] Chan, *supra* note 6, at p. 169.

45.     In concatenated crashes, the first part of the incident (hitting a curb) sends the SDM into its "wake up" or "stand by" mode. The initial curb hit does not trigger the airbag or tighten the seatbelt, but the SDM "wakes up" to confirm whether further irregular signals will follow and indicate a need for the seatbelts or airbags. In the Class Vehicles—because of the software calibration that controls the SDM—the "wake up" mode lasts for approximately 50 milliseconds or less after the first irregular signal. After that point on the clock, no further input, no matter how severe, could exceed the thresholds and trigger the airbags to deploy and/or seatbelts to tighten. As detailed in this section, the triggering thresholds are pre-set inputs in the software that tell the SDM that a crash is severe enough to deploy an airbag.

46.     In addition to concatenated crashes, the SDM Calibration Defect is also implicated in frontal crashes that increase in severity and require airbag deployment or seatbelt tightening after an initial, "soft" impact.  These types of crashes are referred to herein as "prolonged" or "long-soft" crash onsets. This would include, for example, a crash into another vehicle's bumper which—because the bumper is comparatively "soft"—may take time before the "soft" bumper collapses, and a "hard" impact into the engine compartment begins.[16] "Soft" crashes involve a "relatively long crash duration" that may last 20-50 percent longer than a head-on crash into a rigid barrier, like a cement wall.[17]

47.     In a prolonged onset crash, the initial impact into a "soft" surface, such as a bumper, starts the SDM clock ticking. Depending on the crash conditions, such as speed, road incline, angle of impact, weather, ice on the road, etc., this "soft" impact may not require airbag deployment right away. Throughout the initial "soft" impact, the SDM will be in wake-up mode to search for a confirmatory signal. But it will not find another input sufficient to trigger the airbags from the "soft" impact. In the Class Vehicles, the SDM will then effectively time out at the cutoff imposed by GM Trucks. So, if the crash proceeds through the "soft" layers and into the engine compartment of another vehicle during the "dead zone" after the cutoff—such that airbag

---

[16] An example of a "soft" crash is where a vehicle crashes into a deformable barrier, or crashes at an angle, which will result in a "softer" impact than a head-on crash into a rigid barrier (which is a "hard" crash). Chan, *supra* note 6, at p. 40.
[17] Chan, *supra* note 6, at p. 40.

1    deployment is needed to protect the occupants at say, 75 milliseconds on the SDM clock—no

2    airbag or seatbelt deployment is possible no matter how severe the "hard" impact is.

3        48.    In practice, this means that the airbags and seatbelt pretensioners in the Class

4    Vehicles cannot fire during a time period in crashes when they are necessary. If a second,

5    irregular signal occurs after the cutoff GM imposed due to its defective strategy, the SDM

6    purposefully, by design, disregards the second signal, even if it would otherwise trigger airbag

7    deployment and/or seatbelts to tighten. The net result is a "dead zone," during which vehicle

8    occupants are completely vulnerable during a complex or long-duration crash. When the SDM

9    clock is above the cutoff time, the dead zone lasts until the SDM detects that the crash has ended

10   completely (meaning that the irregular signals have concluded, and the vehicle has resumed

11   normal operation), and then resets back to normal mode. After the SDM has reset, additional

12   impacts or irregular inputs register as new events, triggering the process to begin anew.

13       49.    This significant gap in protection due to the cutoff is unreasonably dangerous

14   because accidents—particularly complicated, real-world accidents—are not necessarily

15   completed at the aggressive cutoff points GM used. In many cases, a crash continues in the "dead

16   zone," and the thresholds severe enough to trigger deployment are technically met during that

17   time, but rendered inert. GM cars recognized this when it used a materially longer and safer

18   cutoff for its vehicles. In contrast, GM's SDM software calibration in the Class Vehicles with its

19   early "dead zone" is a serious, unjustified, and dangerous safety defect.

**C.    GM knew that the SDM Calibration Defect was dangerous and unjustified but has failed to warn or compensate consumers.**

22       50.    GM knew or had reason to know of the SDM Calibration Defect and the risks it

23   entails from at least July 10, 2009, when GM acquired substantially all of Old GM's books,

24   records, and personnel, and the knowledge about the defective SDM software calibration those

25   books, records, and personnel held. GM has continued to acquire knowledge—based on lawsuits

26   implicating the SDM Calibration Defect and hundreds of publicly reported accidents with airbag

27   and seatbelt failures—from 2009 to the present.

28

1     51.    Nonetheless, GM has continued to conceal this problem and the pattern of

2   accidents, injuries, and deaths that have resulted from it. GM has failed to share this information

3   with the consumers who paid for and drive these Class Vehicles every day.

4     52.    It should come as no surprise that GM has unreasonably and unsafely delayed

5   disclosure of the SDM Calibration Defect. Indeed, GM has a recent history of attempts to avoid

6   the costs, potential liabilities, and reputational harms from a safety recall for Takata airbags and

7   seems to have repeated that same tactic here.

8     53.    As is now public knowledge, millions of GM vehicles contain the dangerous and

9   defective Takata airbag inflators that can explode with too much force and spray metal shrapnel

10   into vehicle passenger compartments. While the dangers of these Takata airbags were widely

11   known for years, GM lobbied regulators to delay a recall for its affected vehicles to avoid a

12   resulting hit to its profits.[18] In 2016, GM reported that recalling its vehicles with Takata inflators

13   would cost hundreds of millions of dollars.[19]

14     54.    Consumers brought a putative class action seeking redress. *See In re Takata*

15   *Airbag Product Liability Litigation*, Case No. 14-cv-240009, Dkt. 2750, (S.D. Fl.). While other

16   vehicle manufacturers had earlier and voluntarily recalled their vehicles with Takata airbags, it

17   was only years later, with that consumer litigation pending, that GM finally issued a belated

18   recall. And importantly, it did so only after regulators from NHTSA denied GM's petition for

19   inconsequentiality, in which it attempted to argue that a recall was not necessary.[20]

20     55.    Here, as in *Takata*, GM knew or should have known that the SDM software

21   calibration strategy in the Class Vehicles—which includes a dead zone that prematurely prevents

22   the airbag and seatbelts from deploying—was dangerous. Nonetheless, GM kept using it anyway,

23   did not recall or repair the Class Vehicles to correct it, and still has not told consumers about it.

24

---

25   [18] "GM seeks to delay recall of 1 million vehicles with Takata air bag inflators." *Reuters*,
September 16, 2016. Available at: https://www.reuters.com/article/us-gm-recall/gm-seeks-to-
26   delay-recall-of-1-million-vehicles-with-takata-air-bag-inflators-idUSKCN11M27N (last visited
July 27, 2023).
27   [19] *Id.*
[20] "GM will recall 7 million vehicles for air bag issue worldwide." *Reuters*, November 23, 2020.
28   Available at: https://www.reuters.com/article/us-gm-recall/gm-will-recall-7-million-vehicles-for-
air-bag-issue-worldwide-idUSKBN2831TH (last visited July 27, 2023).

1.    **1.    Old GM recklessly downplayed serious risks of injury when it chose to include the SDM Calibration Defect in the Class Vehicles.**

56.    In general, the vehicle manufacturer provides the requirements to set the deployment thresholds in the SDM software calibration that will trigger a command to fire the airbags and/or tighten the seatbelts. The vehicle manufacturer uses results from laboratory crash testing to inform these parameters.[21]

57.    But laboratory results are not sufficient in themselves, because real-world accidents—which can occur from multiple angles and involve inputs from myriad variables like weather, temperature, or incline—will differ from the testing environment.[22] For that reason, manufacturers must exercise appropriate care to design crash sensing frameworks that function to keep people safe in the real world.

58.    As relevant to the defect here, Old GM worked with Delco Electronics (later called Delphi Electronics, now known as Aptiv) to select and install SDM models and develop the SDM software program used in the Class Vehicles, starting with Model Year 1999. As to the physical component, Old GM installed Delco SDMs in many of its vehicles, including all the Class Vehicles. The model names for Delco SDMs have changed over time, and have included, from earliest to latest, models known as the SDM-GS,[23] SDM-11, SDM30, and others. GM continued to use Delco SDMs and the defective calibration in its vehicles after it was formed in 2009, including in all the Class Vehicles.

59.    In addition to the Delco hardware, GM also worked with Delco to develop and implement the software that controls the SDMs. To that end, Delco developed a proposed software program, known originally as ALGO-S, and presented it to Old GM for review.

60.    During this time, Old GM divided the design and development of its vehicles into a "cars" group and a "trucks" group, with the Trucks Group responsible for design, development, and production of larger model trucks and SUVs. After it reviewed the Delco team's proposed

[21] Huffman, *supra* note 9.
[22] Solomon, *supra* note 10, at 13.
[23] The SDM-GS is the SDM model included in Mr. Nossar's 2005 Trailblazer, which would have been in development during Mr. Caruso's tenure with Delco, which ended in 2006.

1    SDM software algorithm, ALGO-S, the Trucks Group insisted on adding the aggressive and

2    premature cut off when it calibrated that program for use in its trucks and SUVs. Specifically, the

3    Trucks Group insisted on a limit at approximately 45 milliseconds, well before a real-world

4    accident could foreseeably require airbag deployment.

5        61.    The premature cut off was dictated by GM Trucks as part of its calibration strategy

6    for all vehicles within the fleet. This means that regardless of any differences across makes and

7    model years, all vehicles under the direction of the Trucks Group include SDM software that was

8    calibrated to meet GM Trucks' guiding philosophy for when and how the safety systems will

9    deploy, which included the SDM Calibration Defect.

10       62.    On information and belief, the Trucks Group insisted on this cutoff based on test

11   results which indicated that frontal-barrier accidents (i.e., a simulated, single-impact crash into a

12   hard barrier) in its trucks and SUVs would not require airbag deployment after approximately 45

13   milliseconds or less in laboratory conditions.

14       63.    In response, the Delco team expressly warned the Trucks Group that such an

15   aggressive cutoff could fail to capture additional signals in complex crashes outside of the

16   laboratory, leaving occupants completely unprotected during prolonged onset crashes or crashes

17   with multiple impact points. Put another way, using a limit derived from laboratory testing results

18   was not reasonable or safe, because it fails to account for the complexities and durations of real

19   world crash events, which can reasonably and foreseeably take twice as long as the laboratory

20   tests to require airbag deployment. On information and belief, documents, records, and personnel

21   reflecting GM Trucks' insistence—over Delco's objection—to include this cutoff were passed on

22   from Old GM to New GM in 2009.

23       64.    GM's own cars group, and on information and belief, other major vehicle

24   manufacturers throughout the industry, include a significantly longer window for the SDM to

25   detect a potential accident and deploy the airbags and seatbelts. Indeed, in the ALGO-S program

26   as it was originally designed by Delco, the window in which the airbags and seatbelts can deploy

27   in a crash is at a minimum *twice to three times* that used by GM Trucks. Delco's original design

28   reasonably allows for airbag and seatbelt deployment in real-world frontal crashes, which

1   themselves can endure for 100 or even 150 milliseconds.[24] As such, when GM trucks added the

2   defective premature cutoff to the software calibration in the Class Vehicles, it dangerously

3   prevented the airbags and seatbelts from functioning when a frontal crash may still be well

4   underway.

5       65.     Tellingly, after the Delco team repeated the same warnings about the Truck

6   Group's proposed cutoff strategy to GM's cars group, the cars group rejected the shorter cutoff.

7   Instead, the cars group used the ALGO-S software with a materially longer deployment window

8   than GM Trucks group's proposal (a *minimum* of approximately 100 milliseconds for

9   deployment). GM thus also ignored the cars group's decision in insisting on the dangerous

10  calibration for trucks and SUVs.

11      66.     Given their serious concerns about GM Trucks' deployment strategy, Mr. Caruso

12  and his Delco team refused to release the defective software calibration for use in GM trucks and

13  SUVs until Old GM signed a disclaimer of Delco's liability for the modified calibration. The

14  Trucks Group still insisted on the defective calibration, signed the disclaimer, and the dangerous

15  dead zone was added in the SDM software calibration used in GM trucks and SUVs.[25]

16      67.     This defective calibration was included in all of the trucks and SUVs under the

17  direction of GM's Trucks Group, including all the Class Vehicles. This is so because, as

18  explained above, the abrupt cutoff was part of a calibration philosophy that is not vehicle

19  dependent, i.e., it was a decision on the overall strategy for safety system deployment that applied

20  to all vehicles within the group, including all the Class Vehicles.

21      68.     In practice, this meant that GM Trucks leadership set the calibration strategy for

22  all vehicles within the Trucks group (including all the Class Vehicles), and the software engineers

23  tasked with implementing that strategy for individual vehicle platforms were obligated to follow

24  that strategy for all vehicles within the group—the strategy was not set, or adapted, at the

25  individual vehicle level.

26

27  [24] Chan, *supra* note 6, at p. 169.
    [25] *See* Objection to Defendants' Motion for Partial Summary Judgment, *McCoy v. General*
28  *Motors LLC*, Case No. X03- HHD-CV-20-6142910-S (Conn. Sup. Ct), available at:
    https://civilinquiry.jud.ct.gov/DocumentInquiry/DocumentInquiry.aspx?DocumentNo=23354481.

1          69.     This group-level approach to vehicle software is logical from a cost and resources

2    standpoint; developing software algorithms is time intensive and expensive, making it effective

3    and ordinary practice to develop one algorithm for use across multiple vehicle makes and models.

4          70.     This typical practice of using the same SDM software strategy for groups of

5    vehicles is evidenced by a prior recall conducted by GM in September 2016. Specifically, GM

6    previously recalled some 3,640,000 vehicles across three different model years (from 2014 to

7    2017) due to a "software defect" present in the SDM software in all of those vehicles. As GM

8    described it, the SDM software in *all of these* vehicles included the same "oscillation test" in the

9    software that could "interfere with the SDM's proper deployment of frontal airbags or

10   pretensioners as required."[26]

11         71.     This oscillation-test issue is distinct from the defect described in this case, but

12   GM's use of the same software with the identical defective oscillation test in more than three and

13   a half million vehicles is evidence that GM developed and applied the same SDM software across

14   a very large range of makes and model years.

15         72.     The widespread use of this same oscillation test in the SDM software used for a

16   wide variety of makes and models, including both GM cars and trucks, also supports Plaintiffs'

17   allegations in this case that both GM trucks and GM cars used the same SDM software algorithm

18   (which started as ALGO-S) to control the SDMs in the vehicles under their direction, but that GM

19   Trucks modified the algorithm as designed to include the SDM Calibration Defect.

20         73.     Finally, the use of the same software calibration strategy across many different

21   vehicles is further supported by Mr. Caruso's description of his work with Old GM in setting and

22   implementing the software calibration strategy for vehicles at the group level, for the Trucks

23   Group and cars group. *See, e.g.*, Nossar Report, *supra*, at p. 5 (Mr. Caruso recounting the "GM

24   Truck Groups' edict to set certain crash sensor calibration parameters outside the recommended

25   minimum guidelines set by the crash sensing algorithm designers").

26

27

---

28   [26] *See* General Motors LLC Part 573 Vehicle Safety Recall Report, 16-V-651 (September 2016)
     available at: https://static.nhtsa.gov/odi/rcl/2016/RCLRPT-16V651-2475.PDF.

**2.    GM's aggressive cutoff was not necessary to protect against "late" airbag deployments.**

74.    GM Trucks Group's insistence on the early cutoff after which the airbags and seatbelts cannot deploy was unjustified and unsafe.

75.    On information and belief, the Trucks Group chose to set this aggressive cutoff due to concerns about the potential for airbags to deploy "too late" during an accident. But as the Trucks Group also knew, these concerns were unwarranted given technology that mitigated the risks of "late" airbag deployments.

76.    A brief history of airbags in motor vehicles puts this dangerous decision in context. Before 1998, airbag systems were effectively one-size-fits-all. Designed to protect against only frontal crashes, these "first-generation" airbags were built to meet a standardized government test that required they protect an unbelted, midsize adult male dummy (175 pounds) in a 30-MPH crash into a rigid barrier.[27] To do so, an airbag had to fill up quickly with gas, resulting in a deployment speed of up to 200 MPH.[28]

77.    Not all vehicle occupants fit this description, however, and the intensity of first-generation airbag deployment could prove dangerous for children and those who were positioned too close to the bag when it inflated (for example, because they had already been thrown forward toward the steering wheel during an under-way accident).[29]

78.    Public perception about airbag safety in motor vehicles, and in turn, the vehicle manufacturers that sold them, turned increasingly unfavorable following reports of late and aggressive deployments in first-generation airbags. Both regulators and vehicle manufacturers recognized the need to address these issues.[30] Beginning in October 1995, NHTSA initiated a

---

[27] Jack Keebler, *Airbags Safe Insane? – Special Report*, Motortrend (Sept. 1, 2000), https://www.motortrend.com/news/airbags-safe-insane-special-report/ (last visited July 27, 2023).
[28] *Id.*; *see also* David B. Ottaway & Warren Brown, *From Life Saver to Fatal Threat*, The Wash. Post (June 1, 1997), https://www.washingtonpost.com/archive/politics/1997/06/01/from-life-saver-to-fatal-threat/56d05b9e-a1bc-49b7-beb4-43480762b25e/ (last visited July 27, 2023).
[29] Susan A. Ferguson & Lawrence W. Schneider, *An Overview of Frontal Airbag Performance with Changes in Frontal Crash-Test Requirements: Findings of the Blue Ribbon Panel for the Evaluation of Advanced Technology Airbags*, Traffic Injury Prevention 3 (Nov. 2008).
[30] U.S. Department of Transportation, NHTSA, *An Evaluation of the 1998–1999 Redesign of Frontal Air Bags,* NHTSA Technical Report No. DOT HS 810 685, p.11, (August 2006) [hereinafter "NHTSA Redesign Report"]; *see also* Ferguson & Schneider, *supra* note

1   series of actions to minimize and eventually eliminate the adverse effects of late and aggressive

2   airbag deployments while preserving their life-saving benefits.[31]

3       79.    In 1997, NHTSA issued modified federal rules to allow automakers to reduce the

4   energy in frontal airbags. This led to "an industry-wide changeover" to "redesigned" airbags in

5   the very next model years (1998-1999).[32] The "redesign" consisted of several new technological

6   innovations. The first and immediate solution was "depowered" airbags: automobile

7   manufacturers removed some of the gas-generating propellant or stored gas from the inflators to

8   reduce the pressure and velocity of deployments. This change alone was highly effective in

9   reducing low-to-moderate speed fatalities.[33]

10      80.    Other innovations to reduce the risk of aggressive deployments included reducing

11  the volume or rearward extent of airbags, positioning them further from occupants, revised

12  folding techniques, and tethering and shifting from pyrotechnic inflators to hybrids including

13  stored gas.[34]

14      81.    Old GM knew about and employed these new technologies in its vehicles. Indeed,

15  as the director of Old GM's Safety Center Terry Connolly said in 2000, there were no significant

16  downsides to using this new "depowered" airbag technology, even for unbelted passengers.[35]

17      82.    Further innovations referred to as "advanced" or "smart" airbags followed soon

18  thereafter.[36] "Advanced" airbags alter deployment patterns according to feedback from several

19  sensors. These sensors tailor how the airbag deploys based on the severity of the crash, the size

20  and posture of the vehicle occupant, whether the occupant is wearing a seatbelt, and how close

21  the occupant is to the airbag. [37]

22

23

---

24  30.
    [31] NHTSA Redesign Report, *supra* note 31, at vii.
25  [32] *Id.*; *see also* Micah Wright, *The Hidden Dangers of Older Airbags*, MotorBiscuit (May 8,
    2015), https://web.archive.org/web/20220630111938/https://www.motorbiscuit.com/the-hidden-
26  dangers-of-older-airbags (last visited July 27, 2023).
    [33] *See* NHTSA Redesign Report, *supra* note 31 at 25.
27  [34] *Id.* at vii.
    [35] Keebler, *supra* note 27.
28  [36] *See* NHTSA Redesign Report, *supra* note 31 at p. 3.
    [37] Wright, *supra* note 33.

2820476.3                           - 21 -              THIRD AMENDED CLASS ACTION COMPLAINT
                                                                        4:21-CV-06338-JST

83.    Many "advanced" systems use dual-stage or multi-stage inflators. This means that they have two inflation stages that can be ignited sequentially or simultaneously depending on crash severity.

84.    "Advanced" airbags phased into production beginning September 1, 2003 and were required in all new vehicles by September 1, 2006.[38]

85.    Thus, based on the depowered and advanced airbag technology starting in 1998 and 1999, the risks posed by "late" deployments in early generation airbags had greatly diminished. Indeed, while NHTSA estimates that more than 290 deaths were caused by frontal airbag inflation between 1990 and 2008, nearly 90 percent of those deaths occurred in vehicles manufactured before 1998 (i.e., with first-generation airbag technology).[39] Today, with this new technology, serious injuries from properly functioning airbags are rare.[40]

86.    Despite knowledge and use of the new technology mitigating the risks of late deployments, the Trucks Group still insisted on prematurely shutting off the airbags and seatbelts in the Class Vehicles long before the 100 millisecond minimum window reasonably required by real-world crashes, and used by GM's own cars group. On information and belief, despite these well-established advancements in airbag technology outlined above, GM continued to use this same defective software calibration strategy in its vehicles in 2009 and beyond.

**3.    GM knew about a pattern of suspicious accidents involving the SDM Calibration Defect in the Class Vehicles.**

87.    GM's reckless decision and continued disregard for clear warnings about the risks in shutting off the SDM too soon during an accident has had real and tragic consequences.

88.    As outlined above, GM has known about the SDM Calibration Defect since it took over Old GM's books, records, and personnel in 2009. GM has continued to accrue knowledge of the defect, and its serious consequences, in the years since. Indeed, GM has known about, investigated, and even litigated numerous crashes in which airbags suspiciously failed to deploy

---

[38] NHTSA Redesign Report, supra note 31, at vii.
[39] Insurance Institute for Highway Safety. "Airbags" (2021), available at:
https://www.iihs.org/topics/airbags (last visited July 27, 2023).
[40] *Id.*

1    in multi-impact or prolonged-onset frontal crashes in the Class Vehicles—a clear indication of the

2    SDM Calibration Defect.

3        89.    Despite obvious signs of a known and dangerous risk, GM concealed these

4    accidents and the SDM Calibration Defect from consumers and regulators to avoid or at least

5    delay a recall and the attendant costs and reputational damage therefrom. To date, GM has taken

6    no corrective action to repair or recall the Class Vehicles to address this defect.

7                    a.    **GM has litigated (and settled) many personal injury lawsuits
                           for suspicious airbag failures in the Class Vehicles.**

8

9        90.    In addition to its institutional records and knowledge, GM was on notice of the

10   SDM Calibration Defect through litigating and settling personal injury lawsuits involving airbag

11   and seatbelt failures consistent with the SDM Calibration Defect.

12       91.    As noted above, Chris Caruso has served as an expert witness in many of these

13   lawsuits. Mr. Caruso has "over 43 years working in the automotive engineering field." Exhibit D

14   at 4. This includes work as an engineer for Old GM from 1979 to 1986. Thereafter, from 1986 to

15   2006, Mr. Caruso worked for Delco Electronics, where he was "involved in the development and

16   implementation of the second generation of airbag system on GM vehicles and their subsidiaries

17   in the US." *Id.* at 1. Mr. Caruso also worked as a "lead engineer in the development of crash

18   sensor specifications and the airbag sensing systems for major OEM's worldwide," including Old

19   GM, and himself "designed the SDM crash sensing algorithms." *Id.* at 1-2. Mr. Caruso worked

20   for Delco through August of 2006. Thereafter, he began work in his current role as a consultant

21   with Automotive Safety Consulting, where he has "served as a consultant for both plaintiffs and

22   defendants in numerous cases involving automotive safety systems, including cases involving

23   EDR/CDR downloads and readouts." *Id.* at 4.

24       92.    Mr. Caruso recounts much of this work experience and the history of the SDM

25   Calibration Defect in public documents in a case filed in 2011, just two years after GM was

26   formed.

27       93.    In that case, Plaintiff James Nossar sued GM LLC following a crash in his 2005

28   Chevrolet Trailblazer (a Class Vehicle here). As detailed in that complaint, on or about February

1    25, 2010, Mr. Nossar drove his Trailblazer into the back of a 1999 Suburban "and sustained a

2    moderate to severe frontal impact . . . at a rate of speed that exceeded the airbag system's

3    predetermined deployment threshold." *See Nossar v. General Motors LLC*, Dkt. 4, Case No. 1:11-

4    cv-02129 (N.D. Ga.). Despite this "significant frontal collision," the airbag failed to deploy and

5    seatbelt pretensioners failed to trigger. Without the airbag or seatbelt to protect him, Mr. Nossar's

6    head slammed into the steering wheel, which caused "fracturing practically every bone in his face

7    and brain injuries." *Id.*

8        94.    In support of his claims, in April 2012, Mr. Nossar filed an expert report from

9    Chris Caruso who, as explained above, is an expert in automotive crash sensing systems who

10    worked for Delco engineering during the development of the defective SDM software calibration

11    in the Class Vehicles. *See id.* at Dkt. 40-1.

12        95.    In that report, Caruso detailed the same flaws in the SDM software calibration

13    described herein. He explained that the airbag sensing system in the Trailblazer was "defective by

14    design and has the potential to not deploy frontal impact airbags in high speed frontal impacts

15    where conditions vary slightly from the perfect laboratory conditions where the system was

16    designed and tested." Based on Caruso's experience working in the development of the SDM

17    software, he related that there were concerns, due to the calibration, "that in longer duration, but

18    high severity events and in concatenated events (such as a curb impact followed by a utility pole

19    impact), the airbags would fail to deploy because the algorithm deployment thresholds were no

20    longer active." *Id.*

21        96.    Caruso further explained that as that litigation proceeded into discovery, he would

22    "expect to identify emails and other correspondence between GM Truck Engineers and Delphi

23    Crash Sensor engineers discussing the concerns over GM Truck Groups' edict to set certain crash

24    sensor calibration parameters outside the recommended minimum guidelines set by the crash

25    sensing algorithm designers [the Delphi/Delco engineers]." Caruso expected to obtain this

26    corroborating evidence because he "ha[d] seen these documents before and kn[e]w the content,"

27    and summarized that "**the calibration values result in premature turning off of algorithm**

28

1     **thresholds which effectively disables the front airbags after 45 to 50ms.**" *Id.* (emphasis

2     added).

3         97.     Mr. Caruso's expectations as to what discovery would reveal are plausible because

4     of his contemporaneous experience with Delco and Old GM in the time period in which Mr.

5     Nossar's vehicle was developed. Mr. Caruso left Delco in 2006, long after the development

6     concluded for Mr. Nossar's model year 2005 vehicle. (Because vehicles are actually sold in their

7     model year, *i.e.*, 2008 vehicles are sold in 2008, their design and development, including for the

8     SDM software, predates the actual model year by, one, two, or more years).

9         98.     As to Mr. Nossar's 2005 Trailblazer specifically, Caruso observed that the vehicle

10    included a version of the SDM hardware known as the SDM-DS, and concluded:

- 11
  12     The airbags and seatbelts failed because, at the time the airbags should have deployed, and consistent with the SDM Calibration Defect here, "**the SDM calibration had already timed out after 45-50ms** after the crash started."

- 13
  14
  15     "In reviewing the crash performance of the sensing system for the subject vehicle, with respect to the conditions of the subject crash, **it is clear that the calibration values result in premature turning off of algorithm thresholds which effectively disables the front airbags after 45 to 50ms.**"

16

17        99.     "The failure by GM to understand the **risks of certain dictated calibration**

18    **values** [in the SDM software calibration] led directly to the design defect that rendered the frontal

19    impact airbag system in the 2005 Chevrolet Trailblazer defective and unreasonably dangerous in

20    certain field relevant, real-world crashes." *Id.*

21         100.    GM LLC, a named defendant in the *Nossar* case, clearly knew about and received

22    Mr. Caruso's report outlining the history of these issues in the SDM software calibration.

23         101.    The *Nossar* case and Mr. Caruso's report support that Old GM continued to install

24    SDMs with the Calibration Defect in its vehicles at least through model year 2005.

25         102.    More recently, Mark McCoy filed a lawsuit against GM LLC in 2020 after a

26    serious accident in his 2018 Sierra Denali 2500. *See McCoy v. General Motors LLC*, Case No.

27    X03- HHD-CV-20-6142910-S (Conn. Sup. Ct).

28

103. While on a freeway exit ramp, at a sharp turn, Mr. McCoy veered off the road, crashed into a fence, and then crashed into a trailer, before finally crashing into a construction vehicle parked near the ramp. None of the airbags in his vehicle deployed. As a result, Mr. McCoy sustained "catastrophic, painful and severely debilitating injuries," including traumatic spinal injuries, total paralysis from the chest down, a traumatic brain injury, and a broken nose, among other injuries.[41] Below is a picture of Mr. McCoy's Denali after the crash:



104. Mr. Caruso also served as an expert for plaintiff in the *McCoy* case and submitted a detailed report in connection with summary judgment briefing in that matter.[42] Therein, Mr.

---

[41] *See* June 19, 2020 Amended Complaint, ¶ 8, *McCoy v. General Motors LLC*, Case No. X03-HHD-CV-20-6142910-S (Conn. Sup. Ct) ("McCoy"). *Available at*:
https://civilinquiry.jud.ct.gov/DocumentInquiry/DocumentInquiry.aspx?DocumentNo=19161992
[42] Mr. Caruso's opinions in the McCoy case became publicly available only after the April 2022 hearing on the Defendants' motion to dismiss in this matter, and were also not available at the time Plaintiffs filed their amended complaint in October 2021.

1   Caruso described his history with the company, including warning Old GM against using the

2   defective software calibration in trucks and SUVs, and his insistence on a disclaimer of liability

3   before releasing the calibrations for use in the Class Vehicles.

4       105.   Further, Mr. Caruso described his work after he left Delco in 2006 in failure-to-

5   deploy lawsuits "where the root cause was determined to be the 45ms SHUTOFF criteria" [i.e.,

6   the SDM Calibration Defect]" in "numerous" GM trucks and SUVs in "earlier model[s]" than

7   model year 2018.[43]

8       106.   Through discovery in the *McCoy* matter, Mr. Caruso analyzed the actual software

9   calibration file for the SDM software in Mr. McCoy's model year 2018 vehicle. Based on his

10   review of the file, Mr. Caruso concluded that the algorithm in the 2018 vehicle remained a "carry

11   over" from the SDM software algorithm, ALGO-S, he himself designed years prior. Exhibit D at

12   16. Moreover, Caruso concluded that GM's dangerous and defective philosophy about airbag

13   deployment timing persisted in the 2018 Sierra. Put another way, GM "appeared to be using **very**

14   **similar shutoff times in this calibration**" to those he had previously objected to in earlier model

15   years in which GM "forc[ed] the use of 45ms shutoff times." *Id.* at 18.

16       107.   Specifically, in the *McCoy* software, Caruso observed shutoff times at 50

17   milliseconds, consistent with his earlier testimony in *Nossar* that the cutoff occurred at

18   approximately 45-50 milliseconds, and others that were even shorter, at 16 milliseconds.

19       108.   Whether 45, 50, or even 16 milliseconds, each of these cutoff calibrations is

20   defective in the same way, because none are sufficient to account for real world crash events, or

21   come even close to the minimum used by GM cars. Put another way, each creates a "dead zone"

22   far short of the time window needed for deployment in real world crashes, which is the defect that

23   underlies Plaintiffs' claims.

24       109.   The persistence of this defective calibration cutoff strategy in a GM truck sold at

25   least 12 years after he stopped working for Delco came as some surprise to Caruso. Indeed, he

26   "had believed" GM would have discontinued the use of the dangerous calibration prior to model

27   year 2018. But the software itself told a different story. In summary, based on the actual software,

28

---

[43] Mr. Caruso's report in the McCoy matter is attached hereto as Exhibit D. *See id.* at 19.

     - 27 -      THIRD AMENDED CLASS ACTION COMPLAINT
4:21-CV-06338-JST

1  discovery produced in that case, as well as the crash conditions from the McCoy accident, Caruso

2  opined:

3      • "The failure to deploy [the] airbags resulted in a condition that was defective, unsafe
         and unreasonably dangerous" to the driver in this vehicle;

4
       • "[I]t appears that [GM trucks Group] is **still employing very aggressive stop times**"
5        in its software calibrations as of model year 2018; and

6      • GM should have implemented an "alternative design" to "[m]odify the algorithm
         calibrations with more robust 120-150ms" cutoff thresholds.
7

8      *See* Exhibit D.

9          110.    Caruso's report in the *McCoy* case—notably based on his review of the actual

10  software calibration—demonstrates that at least through model year 2018, GM continued to

11  install Delco SDMs governed by dangerous cutoff thresholds in calibrations based on the original

12  ALGO-S software algorithm.  Although it had years to do so, even by 2018, GM had still failed to

13  adopt a safer and more rational design that would allow for deployment for at least as long as the

14  strategy used by GM cars (*i.e.*, approximately 100 milliseconds at a minimum for deployment).

15         111.    Mr. Caruso also was able to identify the SDM hardware used in the McCoy

16  vehicle as the Delco SDM30, which is evidence that GM continued to use the defective software

17  calibration for all vehicles that contain that Delco SDM model. Publicly available crash data

18  reports from NHTSA show the same Delco SDM30 was installed by GM in GM trucks in at least

19  model years 2015 and 2016, including in the model year 2015 Chevrolet Trax, 2015 Chevrolet

20  Tahoe, and 2016 Yukon Denali.

21         112.    Likewise, on information and belief, Plaintiffs Vargas, Ray, and Milstead's Class

22  Vehicles contain SDM-11 model Delco SDMs. Given their model years and the Delco SDM, the

23  plausible, and most reasonable, inference is that they also included the associated defective

24  calibration strategy GM used with Delco SDMs.

25         113.    Based on: (1) Mr. Caruso's early knowledge of the SDM Calibration Defect when

26  it was first used; (2) his subsequent tenure with Delco through 2006, during which model year

27  vehicles for subsequent years were already in development; (3) his expert opinion on the presence

28  of the SDM Calibration Defect in a model year 2005 vehicle (*Nossar*) after his assessment of the

- 28 -

1  vehicle performance and crash dynamics; and (4) his opinion about defect's persistence in a

2  model year 2018 vehicle with the Delco SDM30 (*McCoy*)—the plausible, and most reasonable,

3  inference is that the defect persisted in the years between 1999, 2005 and 2018.

4        114.    Following service of Mr. Caruso's expert report and deposition in the *McCoy* case,

5  GM agreed to settle the case in December 2022.[44]

6        115.    In addition, Chad Vaith filed a lawsuit against GM LLC in 2017 after an accident

7  in his MY 2014 Silverado. As that complaint relates, in December 2015, Mr. Vaith was involved

8  in an accident in which he drove his Silverado "off the road into a ditch," after which he

9  "continued through the ditch for approximately forty yards before launching over the

10  driveway/culvert. . . before coming to a final rest approximately twenty yards south." *See Vaith v.*

11  *General Motors LLC*, Dkt. 1, Case No. 18-cv-00031 (D. Minn.). Despite multiple impacts in that

12  prolonged accident, the airbags and seatbelts did not deploy, causing Mr. Vaith to "suffer severe

13  personal injuries." Mr. Caruso was a disclosed expert for plaintiff in that case, although his

14  opinions about the 2014 Silverado were not publicly filed. *See, e.g., id.* at Dkt. 64.

15        116.    Mr. Vaith's case proceeded into fact discovery and ultimately resulted in a

16  "negotiated settlement" between Mr. Vaith and GM. *Id.* at Dkt. 82.

17        117.    In addition to these previous lawsuits against GM with Mr. Caruso as an expert,

18  another automotive crash expert, Sal Fariello, wrote directly to GM's CEO Mary Barra twice in

19  December 2016 to raise similar concerns about issues he had observed in the airbag sensing

20  system in model year 2006 GM SUVs. Mr. Fariello's letters are available in NHTSA's public

21  records.[45]

22        118.    Mr. Fariello's letters to GM's CEO focused on an accident in a 2006 Trailblazer (a

23  Class Vehicle here) for which he served as a litigation consultant in a lawsuit filed in or around

24

_____

25  [44] Plaintiffs' allegation of a settlement is supported by plaintiff's request in *McCoy* in October
    2022 for additional time to withdraw the case because "additional time is necessary to exchange

26  the necessary settlement documents." *See McCoy*, October 19, 2022 CaseFlow Request. Plaintiff
    then withdrew the matter last month, in December 2022. *See* December 19, 2022 Withdrawal of

27  Action, *McCoy v. General Motors LLC*, Case No. X03- HHD-CV-20-6142910-S (Conn. Sup. Ct.).
    [45] Mr. Fariello is a forensic crash investigator. *See* Bill Saporito, "Air Bag Blow Out," *Time*

28  *Magazine*, (December 4, 2014). Available at: https://time.com/3617681/the-air-bag-blowout (last
    visited July 27, 2023).

1    2014. Therein, he lists multiple technical issues with the airbag sensing system that he wanted to

2    bring to GM's attention and urge them to address. For example, he cautions that, in his view:

3              a.       "The deployment thresholds [i.e., the inputs that will trigger deployment]

4    for the airbag were set too high and compromised driver and passenger safety as a result of GM's

5    improper effort to mitigate lawsuits related to relatively low speed deployments of the airbag.";

6              b.       "The deployment threshold did not meet GM's and generally accepted

7    standards for when an airbag should deploy in order to prevent occupant death based on written

8    technical papers and educational videos produced by GM or its employees."; and

9              c.       "Failure of the SDM to independently process a crash pulse and deploy the

10   airbag implicates a defective software algorithm; specifically 'Algo S-H' [the software algorithm

11   in the Class Vehicles]."

12           119.    At the time, in 2016, Mr. Fariello proposed that the SDM could be re-programed

13   "with a more responsive algorithm" to resolve these issues, and that GM's "only apparent motive

14   for not doing this related to the cost of implementing a recall."

15           120.    Frustrated by the response he received from GM's counsel in response to these

16   letters, Mr. Fariello then wrote to Senator Bill Nelson of Florida enclosing his correspondence to

17   GM and escalating his concerns. Senator Nelson then forwarded that correspondence to

18   NHTSA.[46]

19           121.    As Mr. Fariello concluded, in his view, GM was stalling on this issue "just as they

20   did with the Takata airbag matter."

21           122.    In April 2016, plaintiff Kayla Greenwood filed suit against GM on behalf of her

22   deceased parent, Galen Greenwood. *See Greenwood v. General Motors LLC and General Motors*

23   *Company*, Dkt. 1, Case No. 16-cv-00149 (M.D. GA). Galen Greenwood was fatally injured when

24   his "airbag failed to deploy and his seat belt failed to properly restrain him" during a multi-impact

25   crash in his 2006 GM SUV, a Chevrolet Equinox—hallmarks of the SDM Calibration Defect. *Id.*

26   Specifically, "Mr. Greenwood lost control of the subject vehicle, traveled over the northbound

27

28   _____

[46] Mr. Fariello's letters to GM and further documentation are available at:
https://static.nhtsa.gov/odi/cmpl/2017/CL-10955948-3381.pdf (last visited July 27, 2023).

1    lane and onto the west shoulder in a gradual manner, and impacted two trees with the front of the

2    subject vehicle. During the incident sequence, the driver's side airbag failed to deploy and the

3    seat belt failed to properly restrain Plaintiff's decedent. During the impact, Galen Greenwood

4    suffered severe injuries which resulted in his death." *Id.* GM settled with Ms. Greenwood in May

5    2017. *See id.* Dkt. 20-1.[47]

6        123.    Finally, in 2022, Jerome and Cedric Woods filed suit against MFA Oil Company

7    in Missouri state court as survivors of Richard Stinson. Mr. Stinson was killed when his 2009

8    Chevrolet Silverado truck crashed into an MFA Oil Company truck in November 2021. Mr.

9    Stinson's Silverado was traveling at approximately 46 miles per hour at the time of the collision,

10    and despite the serious "extent of the damage," the speed of the accident, and the change in

11    velocity from the impact, his airbags did not deploy.

12        124.    In or about March 2023, defendant MFA Oil Company filed a third party petition

13    against General Motors LLC in the *Woods* case. As MFA contends in that third party petition:

- "Upon information and belief, the airbag system on the Silverado was designed to not deploy under circumstances when the change in velocity of the vehicle [i.e., a deployment threshold input] **in the initial 45 milliseconds after the initiation of a collision event was under a set rate regardless of the change in velocity of the vehicle after the initial 45 milliseconds,** including a situation such as the collision in this case in which a change in velocity was recorded to exceed 37 miles per hour during the sequence of the collision."

- **The design settings for deployment of the driver's side airbag on the Silverado were defective and unreasonably dangerous because the settings prevented deployment of the driver's side airbag** under circumstances such as the collision at issue in this case in which the change in velocity of the vehicle exceeded 37 miles per hour and in which the deployment of the airbag could or would have reduced or entirely avoided serious or fatal injuries such as the injuries Stinson sustained.[48]

23        125.    The *Woods* litigation on Mr. Stinson's behalf continues.

---

[47] In the *McCoy* matter, GM's designated corporate witness testified that he had previously offered testimony in a personal injury lawsuit about a crash where a vehicle "went off the roadway and struck a tree," where the plaintiff's name was Greenwood. On information and belief, GM's corporate designee in the *McCoy* matter was thus also a deponent in this settled Greenwood lawsuit, demonstrating further corporate knowledge of persistent injuries from the SDM Calibration Defect in the field.

[48] *See* Third-Party Plaintiffs' Petition, *Woods v. MFA Oil Company v. General Motors LLC*, Case No. 22-NM-CV00032 (New Madrid Circuit Court, Missouri).

1      126.    Taken together, these and other allegations support the existence of the SDM

2   Calibration Defect and the reasonable inference that Plaintiffs' model years 2010 and 2012 GM

3   trucks and SUVs included it. Specifically, given that: (1) the model years of Plaintiffs' Class

4   Vehicles were developed *after* Old GM first used the defective Software Calibration in or about

5   1999, and not long after Mr. Caruso left his role with Delco in 2006 (during which subsequent

6   model years were already in development); (2) Plaintiffs' Class Vehicles predate the 2018 vehicle

7   in which Mr. Caruso reviewed the software calibration, and concluded that the algorithm still

8   reflects GM's flawed strategy to cutoff deployment too early, including "very similar shutoff

9   times" to those he had originally raised concerns about twenty years earlier; (3) corroborating

10   instances between those two bookends (1999 and 2018) support the persistence of the defective

11   calibration in the intervening model years (i.e., *Nossar, Vaith, Greenwood, Woods,* and Fariello's

12   letters, discussed *supra*); and (4) the broad, cross-model way that SDM software calibration

13   strategy is set and implemented across GM's fleet within a given model year, the plausible, and

14   most reasonable inference is that GM installed the same defective calibration in all its trucks and

15   SUVs at least through model year 2018.

16           **b.**    **GM knew or should have known about hundreds of publicly**
                 **reported airbag failures in the Class Vehicles.**
17

18      127.    GM was also on notice of the SDM Calibration Defect and its attendant safety

19   risks from consumer complaints. These complaints are publicly available online through

20   NHTSA's website. Between 1999 and the present, hundreds of consumers reported to NHTSA

21   that airbags and/or seatbelts had suspiciously failed during frontal crashes involving concatenated

22   (multiple) impacts or potentially prolonged crash onsets. New allegations—including Mr.

23   Caruso's report showing the defective cutoff strategy continued in a model year 2018 vehicle—

24   make the below crashes even more suspicious as relevant incidents with the hallmarks of the

25   SDM Calibration Defect (airbag and seatbelt failures in concatenated and prolonged frontal

26   impacts) in the very vehicles alleged to be impacted by that Defect (GM trucks and SUVs).

27      128.    On information and belief, vehicle manufacturers such as GM monitor these public

28   databases for complaints about their vehicles, considering their statutory obligations to report

1    known safety defects in their vehicles to NHTSA and to consumers. Moreover, in many of these

2    reports, it is expressly clear that GM was directly informed of, and even investigated, the accident

3    in question. While GM has access to the full body of these complaints from 1999 and onward in

4    the public database, it bears mention that over three hundred of them were filed after the new GM

5    entities were created in 2009.[49]

6         129.    One such complaint details an accident in a 2004 Chevrolet Trailblazer in August

7    2014. The driver states that they were traveling 50 MPH on a four-lane highway where another

8    vehicle, waiting to U-turn, "decided to turn right into me—oncoming traffic." The vehicles

9    crashed, which then "sent [the driver] into a head on collision with the guard rail." The driver

10   questions that "there were 2 incidents in that sequence of events that the airbags should have

11   deployed, but did not! This accident caused several injuries to myself and my passenger. We

12   definitely could have been killed and no airbags to help save our lives..." Photos of the damage to

13   the vehicle from that accident follow. (NHTSA Complaint #1100694).



000-13679321  08/25/2014 COPYRIGHT 2014 · INSURANCE AUTO AUCTIONS

---

[49] Many publicly reported accidents occurred prior to 2009, which information would likewise have been available to Old GM. GM would have acquired Old GM's knowledge of these accidents, reflected in its books, records, and personnel, when it was formed in 2009.

130.    Another report describes a September 2012 accident in a 2005 Chevrolet Trailblazer. It states that the driver, at 30 MPH, swerved to avoid a deer in the road, which caused the vehicle to lose control, exit the road, and ultimately "crash[] off a 9 foot embankment." From there, the vehicle continued to crash through a field, into a dirt levy, and finally into a drainage ditch. None of the airbags deployed. The driver "became unconscious after his head crashed into the steering wheel" and "suffered severe neck injuries." The dealer later inspected the vehicle but responded that the results were "inconclusive" and that the manufacturer "was notified but offered no assistance." Photos of the damage to the vehicle from that accident follow. (NHTSA Complaint #942950).[50]

---

[50] Accident documentation and photos are available at: https://static.nhtsa.gov/odi/cmpl/2012/EQ-10477257-8767.pdf (last visited July 27, 2023).





131.    In another example, the complaint describes a serious accident in March 2019 involving a 2005 Chevrolet Equinox. The vehicle crashed into the front of another vehicle at 35

1    MPH. The airbags did not deploy. The driver sustained injuries to the head and ankle and

2    required medical attention. Photos of the damage to the vehicle from that accident follow.



14    132.    (NHTSA Complaint #1550406).[51]



133.    Another account of a July 2007 accident in a model year 2001 Isuzu Rodeo

describes a crash at 65 MPH so severe that "the median on the highway sustained property

_____

[51] Photos and accident information are available at: https://static.nhtsa.gov/odi/cmpl/2019/EQ-
11191960-7090.pdf (last visited July 27, 2023).

damage" and "the vehicle was destroyed," but the airbags did not deploy. This is how the vehicle looked after that accident:



134.    Additional examples of similarly suspicious frontal accidents—i.e., frontal accidents with multiple discrete impacts, or potentially prolonged onset frontal crashes involving "soft" impacts—in which the airbags and/or seatbelts failed include:

a.    NHTSA complaint #753287 dated Tuesday, October 16, 2001, reported an accident on Monday, October 8, 2001 involving a 1999 CHEVROLET SUBURBAN in Andover, KS. The complaint states: "60 MPH CROSS WIND BLEW THE SUBURBAN HEAD ON INTO THE CONCRETE MEDIAN. THE VEHICLE SPUN 360 DEGREES, WENT INTO THE DITCH, THE FRONT END HIT AGAIN THE VEHICLE WENT UP THE OTHER SIDE OF THE EMBANKMENT AND STOPPED IN A FIELD. ENTIRE FRONT END OF THE FRAME NOT REPAIRABLE . . . FRONT CROSSMEMBER BENT AND ENGINE MOVED UPWARDS AT A 10 DEGREE ANGLE. **AIR BAGS FAILED TO DEPLOY.** *AK"[52]

b.    NHTSA complaint #859858 dated Friday, April 7, 2000, reported an accident on Saturday, April 3, 1999 involving a 1999 CHEVROLET SILVERADO. The complaint states: "WHILE TRAVELING ON A WET ROAD AT HIGHWAY SPEED OF 60 MPH VEHICLE HYDROPLANED, SPUN INTO A DITCH, AND COLLIDED INTO A TREE

---

[52] Emphasis is supplied here and in the paragraphs that follow.

1    WITH BOTH SIDES AND FRONT OF VEHICLE. **UPON IMPACT, AIR BAGS FAILED TO**

2    **DEPLOY**. MFR. NOTIFIED. *AK"

3            c.      NHTSA complaint #877320 dated Wednesday, January 3, 2001, reported

4    an accident on Friday, December 1, 2000 involving a 1999 CHEVROLET SUBURBAN in

5    Amarillo, TX. The complaint states: "CONSUMER WAS TRAVELING ABOUT 40MPH ON

6    HIGHWAY AND ANOTHER VEHICLE VEERED INTO HER LANE, HITTING HER HEAD-

7    ON, AND PUSHING VEHICLE INTO ANOTHER LANE. **VEHICLE HIT TELEPHONE**

8    **POLE, AND DUAL AIRBAGS DIDN'T DEPLOY**. CONSUMER WAS INJURED.

9    CHEVROLET HAS BEEN NOTIFIED. *AK"

10           d.      NHTSA complaint #10060150 dated Tuesday, March 2, 2004, reported an

11   accident on Tuesday, February 24, 2004 involving a 2001 CHEVROLET BLAZER in Austin,

12   TX. The complaint states: "**DRIVER SIDE AIR BAG FAILED TO DEPLOY IN A CRASH**

13   THROUGH: 1. A SIX FOOT TALL WOODEN FENCE AT ALMOST 30MPH, THEN 2. THE

14   EXTERIOR SIDE OF A 2-STORY HOME THAT CONTAINED THE KITCHEN SINK AND

15   PLUMBING FIXTURES, WHILE SMASHING UP AND OVER THE FIFTEEN-INCH

16   CONCRETE FOUNDATION, FRONT-END FIRST.*AK"

17           e.      NHTSA complaint #10082050 dated Thursday, July 15, 2004, reported an

18   accident on Wednesday, July 14, 2004 involving a 2003 CHEVROLET SUBURBAN in Fresno,

19   CA. The complaint states: "THE CONSUMER WAS INVOLVED IN AN ACCIDENT WHERE

20   IT WAS HIT FROM THE FRONT DRIVER SIDE, THE IMPACT CAUSED THE VEHICLE

21   TO HIT A TELEPHONE POLE HEAD ON. **THE AIR BAGS DID NOT DEPLOY**. *JB"

22           f.      NHTSA complaint #10103512 dated Friday, December 10, 2004, reported

23   an accident on Sunday, December 5, 2004 involving a 2001 CHEVROLET SILVERADO in

24   Rialto, CA. The complaint states: "CONSUMER'S VEHICLE WAS REAR ENDED WHILE

25   DRIVING 50 MPH. THE VEHICLE WAS FORCE[D] INTO A SPIN AND THEN, IT HIT A

26   CONCRETE ROAD DIVIDER. UPON IMPACT, **NEITHER FRONTAL AIR BAGS**

27   **DEPLOYED**. DRIVER SUSTAINED INJURIES, AND HAD TO BE TRANSPORTED TO A

28   LOCAL HOSPITAL. DEALER AND MANUFACTURER WERE NOTIFIED. THE

1    CONSUMER STATED THAT THE SEAT BELT DID NOT KEEP HER FROM HITTING HER

2    CHEST ON THE STEERING WHEEL."

3            g.    NHTSA complaint #10108404 dated Tuesday, February 1, 2005, reported

4    an accident on Tuesday, January 11, 2005 involving a 2000 CHEVROLET SILVERADO in

5    Toney, AL. The complaint states: "A CAR PULLED OUT IN FRONT OF ME WHICH STILL

6    HIT THE DRIVER'S SIDE OF MY VEHICLE (2000 CHEVY SILVERADO). **THEN MY**

7    **TRUCK HAD A FULL FRONTAL IMPACT AT GREATER THAN 30 MPH INTO A**

8    **DIRT WALL IN WHICH NEITHER THE DRIVER'S NOR PASSENGER'S AIRBAGS**

9    **DEPLOYED (THE TRUCK IS TOTALLED).** I HIT THE STEERING WHEEL AND GOT A

10   CONCUSSION WITH BLOOD AROUND THE BRAIN, A BROKE CHEEK BONE, AND

11   FRACTURED HIP. MY WIFE WAS 33 WEEKS PREGNANT AT THE TIME AND HER

12   WATER BROKE AND SHE GOT A COMPOUND FRACTURE IN THE LOWER

13   LEG/ANKLE. AS A RESULT OF THE WATER BREAKING MY SON WAS BORN 3 DAYS

14   LATER 7 WEEKS PREMATURE. AS FOR WHAT WAS DONE TO CORRECT THE

15   PROBLEM I'M HOPING IT WILL AT LEAST BE INVESTIGATED TO MAKE SURE THIS

16   IS NOT A SYSTEMIC PROBLEM (I.E., SOFTWARE SCREWUP SOMETHING NOT

17   HOOKED UP RIGHT IN THE AIRBAG SYSTEM ETC)."

18           h.    NHTSA complaint #10115806 dated Thursday, March 24, 2005, reported

19   an accident on Thursday, March 24, 2005 involving a 2002 CHEVROLET SILVERADO in

20   Claremore, OK. The complaint states: "A PIECE OF FURNITURE WAS LOCATED IN THE

21   MIDDLE OF THE HIGHWAY WHILE DRIVING, CAUSING THE DRIVER TO HIT THE

22   FURNITURE. DRIVER LOST CONTROL OF A VEHICLE, AND IT CRASHED INTO A

23   CONCRETE WALL. DRIVER'S SIDE SEAT BELT FAILED, AND **THE AIRBAGS DID**

24   **NOT DEPLOY**."

25           i.    NHTSA complaint #10158090 dated Tuesday, May 23, 2006, reported an

26   accident on Sunday, February 26, 2006 involving a 2004 CHEVROLET TRAILBLAZER in

27   Fayetteville, NC. The complaint states: "DT*: THE CONTACT STATED WHILE DRIVING 50

28   MPH THE VEHICLE WAS INVOLVED IN A HEAD ON COLLISION WITH ANOTHER

- 39 -

1    VEHICLE. THE VEHICLE CONTINUED MOVING AND STOPPED BY COLLIDING WITH

2    A STORE SIGN. **THE AIR BAGS DID NOT DEPLOY** AND SEAT BELTS WERE WORN . .

3    . THE INSURANCE COMPANY DETERMINED THE VEHICLE WAS TOTALED DUE TO

4    THE ACCIDENT. THE DEALER DOES NOT HAVE THE MEANS TO TEST FOR AIR BAG

5    NON-DEPLOYMENT. UPDATED 1/24/2007 - *NM"

6            j.        NHTSA complaint #10161658 dated Thursday, July 6, 2006, reported an

7    accident on Saturday, June 3, 2006 involving a 1999 CHEVROLET BLAZER in Ludlow, MA.

8    The complaint states in part: "CHEVY DRIVER HIT A CAR IN HER LANE FIRST, THEN

9    RICOCHETED HEAD ON INTO A TREE. **NEITHER TIME DID AIRBAGS DEPLOY**.

10   *TT"

11           k.        NHTSA complaint #10163811 dated Friday, July 28, 2006, reported an

12   accident on Thursday, July 20, 2006 involving a 2000 ISUZU RODEO in Nederland, TX. The

13   complaint states: "A GIRL RAN A RED LIGHT AND I HIT HER IN THE PASSENGER SIDE

14   OF HER CAR HEAD ON WITH MY 2000 ISUZU RODEO. IT WAS A FULL FRONTAL

15   COLLISION FOR ME AND MY CHILDREN. LUCKILY, WE ARE ALWAYS BUCKLED UP

16   BECAUSE **NONE OF MY AIRBAGS DEPLOYED AT ALL**. THE OTHER CAR WAS

17   GOING ABOUT 60 MPH AND HER AIRBAG DEPLOYED WHEN I HIT HER BUT MINE

18   DID NOT. LUCKILY, MY CHILDREN WERE NOT HURT BADLY BUT

19   UNFORTUNATELY, I SUSTAINED NECK, BACK AND KNEE INJURIES. I WAS AND

20   STILL AM VERY UPSET THAT MY AIRBAGS FAILED. EVEN THE OWNER OF THE

21   BODY SHOP I USE WAS IN SHOCK THAT THEY DID NOT DEPLOY AS THE IMPACT

22   WAS ENOUGH TO SPLIT THE FRAME OF MY RODEO AND TOTAL IT OUT . . . THANK

23   YOU FOR YOUR TIME, I HOPE I CAN HELP ANOTHER FAMILY FROM GETTING

24   INJURED."

25           l.        NHTSA complaint #10217793 dated Tuesday, February 12, 2008, reported

26   an accident on Thursday, February 7, 2008 involving a 2006 CHEVROLET TRAILBLAZER in

27   Lakewood, OH. The complaint states: "A 2006 CHEVY TRAILBLAZER TRAVELING OVER

28   THE SPEED LIMIT ON MY STREET CRASHED INTO A TREE, A PARKED CAR, AND

1 THEN CONTINUED TO ROLL OVER ACROSS MY FRONT LAWN, LANDING

2 SIDEWAYS AFTER FLIPPING SEVERAL TIMES. THE OCCUPANTS WERE SEVERELY

3 INJURED. **NO AIRBAGS DEPLOYED DURING THE CRASH**. THE DRIVER OF THE

4 VEHICLE IS IN ICU NEEDING FACIAL RECONSTRUCTIVE SURGERY. *TR"

5         m.     NHTSA complaint #10221319 dated Saturday, March 15, 2008, reported

6 an accident on Thursday, February 21, 2008 involving a 2005 CHEVROLET TRAILBLAZER in

7 Clay, NY. The complaint states: "I WAS DRIVING ON A 2 LANE ROAD GOING 45MPH. A

8 CAR WAS FOLLOWING CLOSE BEHIND ME SO I WENT TO GET INTO RIGHT LANE

9 AND MY TRUCK DID 5 360 AND HIT 3 TREES HEAD ON AND **AIR BAG NEVER**

10 **DEPLOYED**. *TR"

11         n.     NHTSA complaint #10263896 dated Wednesday, April 1, 2009, reported

12 an accident on Thursday, March 26, 2009 involving a 2002 CHEVROLET TRAILBLAZER in

13 Elizabeth, NJ. The complaint states: "I WAS IN A CAR ACCIDENT, WHERE I WAS

14 TRAVELING AT ABOUT 35 MPH. AN AGGRESSIVE DRIVER SPEED AROUND ME AND

15 CUT ME OFF AND THAN STOMPED ON THIS BRAKES IN FRONT OF ME. DUE TO

16 THAT I SWERVED TO MISS HIM CLIPPING HIS RIGHT BACK LIGHT AD BUMPER

17 WITH MY LEFT HEADLIGHT AND BUMPER. AS I WAS SWERVING I HIT A TREE JUST

18 ABOUT DEAD ON WITH MY CAR . . . I HIT THE TREE AT A SPEED OF ABOUT 28-30

19 MPH. AFTER INITIAL IMPACT I WAS RUSHED TO THE HOSPITAL DUE TO

20 UNCONSCIOUS AND FACIAL CONTUSIONS. DURING THE FIRST MOMENTS AFTER

21 THE ACCIDENT, ONE OF THE FIRST THINGS OFFICERS, EMTS AND WITNESSES SAID

22 WAS "**I CAN'T BELIEVE THE AIRBAGS DIDN'T GO OFF**." IN THE RECENT DAYS

23 AFTER THE ACCIDENT I HAVE HAD SEVERAL MECHANICS AND SUCH APPRAISE

24 THE CAR, THE ONE COMMON THEME THEY ALL SHARE IS THAT THEY SUSPECT

25 THERE MIGHT NOT BE AN AIRBAG WHERE IT BELONGS. OR THE LACK THERE OF.

26 *TR"

27         o.     NHTSA complaint #10463248 dated Wednesday, June 27, 2012, reported

28 an accident on Friday, July 15, 2011 involving a 2005 GMC in Richmond, VA. The complaint

1    states: "THE CONTACT STATED WHILE DRIVING 55 MPH, HE CRASHED INTO A TREE.

2    **THE AIR BAGS FAILED TO DEPLOY** . . . A POLICE REPORT WAS FILED. THE

3    MANUFACTURER WAS MADE AWARE OF THE FAILURE; HOWEVER, THEY

4    PROVIDED NO ASSISTANCE . . . THE CONSUMER'S VEHICLE WAS DAMAGED WHEN

5    HE TRIED TO AVOID HITTING THE VEHICLE BY SWERVING SIDEWAYS AND

6    SLIDING INTO THE GRASS. HE TRIED STOPPING THE VEHICLE WHILE IT WAS STILL

7    ON THE PAVEMENT BUT HE INEVITABLY RAN INTO THE DITCH AND FLEW

8    AIRBORNE INTO A TREE, AND THE TRUCK OVERTURNED."

9           p.      NHTSA complaint #10524151 dated Wednesday, July 10, 2013, reported

10   an accident on Thursday, May 30, 2013 involving a 2006 CHEVROLET TRAILBLAZER in

11   Mansfield, OH. The complaint states: "THIS COMPLAINT IS BEING FILED ON BEHALF OF

12   THE VEHICLE OWNER AND DRIVER. THIS CHEVY TRAILBLAZER WAS INVOLVED

13   IN A TWO VEHICLE, DOUBLE FATAL CRASH. THE FRONT OF THE TRAILBLAZER

14   STRUCK THE DRIVER'S SIDE DOOR OF A CAVALIER THAT FAILED TO YIELD FROM

15   A STOP SIGN. THE TRAILBLAZER STAYED CONNECTED WITH THE CAVALIER,

16   FORCING IT OFF THE LEFT SIDE OF THE ROADWAY AND INTO A LARGE TREE.

17   BOTH OCCUPANTS IN THE CAVALIER WERE FATALLY INJURED. **THE FRONT**

18   **AIRBAGS DID NOT DEPLOY ON THE TRAILBLAZER** AND NO EVENT WAS

19   RECORDED ON THE AIRBAG CONTROL MODULE. *TR"

20          q.      NHTSA complaint #10537593 dated Tuesday, August 27, 2013, reported

21   an accident on Tuesday, August 13, 2013 involving a 2003 CHEVROLET BLAZER in Harrison

22   Township, MI. The complaint states: "I WAS TRAVELING SOUTHBOUND WHEN I

23   EXPERIENCED A SEIZURE AND LOST CONTROL OF MY VEHICLE. I PROCEEDED TO

24   VEER TO THE LEFT WHERE I CLIPPED SEVERAL CARS THAT WERE HEADED

25   NORTHBOUND . . . I THEN PROCEEDED OVER A TREE LAWN AND INTO A PARKING

26   LOT. I HIT A DODGE RAM PICKUP WITH THE RIGHT FRONT CORNER OF MY

27   VEHICLE AND PUSHED THAT VEHICLE INTO ANOTHER PARKED CAR THAT WAS

28   NEXT TO IT. BOTH VEHICLES ENDED UP SIDEWAYS AND MY VEHICLE ENDED UP

1   SPUN AROUND 180 DEGREES . . . THE JAWS OF LIFE WERE USED TO EXTRACT ME

2   FROM MY VEHICLE. I WAS TAKEN TO A LOCAL HOSPITAL WHERE IT WAS

3   DETERMINED THAT I SUFFERED BURST FRACTURES OF L1, L2, AND L3. I ALSO

4   SUFFERED AN EVULSION FRACTURE OF MY LEFT ANKLE. THE POLICE REPORT

5   STATES THAT I WAS TRAVELLING AT A HIGH RATE OF SPEED AND THAT THE

6   VEHICLES WHICH WERE NORTHBOUND WERE JUST CLIPPED. **THE AIRBAGS ARE**

7   **BOTH STILL WITHIN THEIR CASES AS NEITHER DEPLOYED** . . . THE INSURANCE

8   INVESTIGATOR EVEN EXPRESSED TO MY WIFE THAT HE WAS SURPRISED THAT

9   THE AIR BAG DID NOT DEPLOY."

10       r.      NHTSA complaint #10550276 dated Wednesday, October 30, 2013,

11  reported an accident on Monday, October 28, 2013 involving a 2006 CHEVROLET

12  TRAILBLAZER in Neihart, MT. The complaint states: "TL* THE CONTACT OWNS A 2006

13  CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING

14  APPROXIMATELY 35 MPH, SHE LOST CONTROL OF THE VEHICLE WHILE DRIVING

15  IN SNOWY WEATHER. THE VEHICLE NOSE DIVED INTO AN EMBANKMENT AND

16  THEN CRASHED INTO A BOULDER. **THE AIR BAGS FAILED TO DEPLOY**. THE

17  CONTACT WAS TRANSPORTED TO THE HOSPITAL VIA AMBULANCE FOR

18  TREATMENT OF A CONCUSSION AND BRUISING. THE FRONT PASSENGER WAS

19  ALSO INJURED AND SUSTAINED BRUISING. THE VEHICLE WAS DESTROYED. THE

20  MANUFACTURER WAS MADE AWARE OF THE FAILURE."

21       s.      NHTSA complaint #10574295 dated Sunday, March 23, 2014, reported an

22  accident on Friday, February 21, 2014 involving a 2010 GMC TERRAIN in Saint Joe, IN. The

23  complaint states: "INVOLVED IN A 21 CAR PILE UP IN THE UPPER PENINSULA DURING

24  A COMPLETE WHITE OUT. WE WERE ONLY TRAVELING APPROXIMATELY 25

25  MILES PER HOUR BUT, WE DID HAVE SERIOUS IMPACT IN THE FRONT, AFTER

26  HITTING A TRAILER AND ALSO SERIOUS IMPACT FROM BEHIND WHEN HIT BY A

27  TRUCK AND TRAILER. **NO AIRBAGS DEPLOYED**. THE TRUCK TRAVELING AHEAD

28  OF US, THAT WE HIT, THE AIRBAGS DID DEPLOY. MY FATHER AND BROTHER,

1  WHO WERE ALSO BOTH DRIVING CHEVY TRUCKS, AND ALSO HAD SERIOUS
2  FRONT END DAMAGE DURING THE SAME ACCIDENT, THEIR AIRBAGS DID NOT
3  DEPLOY EITHER. *TR"

4          t.      NHTSA complaint #10576031 dated Monday, March 31, 2014, reported an
5  accident on Sunday, March 23, 2014 involving a 2012 CADILLAC SRX in Kaplan, LA. The
6  complaint states: "I FELL ASLEEP WHILE DRIVING, JUMPED A LEVEE, RAN THROUGH
7  A FENCE, AND WRECKED IN A GRASSY WATERY AREA. MY ENGINE WAS
8  SMASHED, THE MOTOR MOUNT BROKE, AND MY TIRES ARE PUSHED BACK. MY
9  **AIR BAGS DID NOT DEPLOY**. MY FACE HIT THE STEERING WHEEL AND MY NOSE
10 IS BROKEN. I WOULD LIKE TO FIND OUT IF THERE IS ANY RECALLS ON THIS CAR.
11 *TR"

12         u.      NHTSA complaint #10583703 dated Saturday, April 19, 2014, reported an
13 accident on Thursday, March 13, 2014 involving a 2012 GMC TERRAIN in Moneta, VA. The
14 complaint states: "I INADVERTENTLY VEERED OFF SIDE ROADWAY, (VA HIGHWAY
15 220) COLLIDING WITH A TREE/ROADSIDE SHRUBS, ETC (WAS KNOCKED
16 UNCONSCIOUS AS FOREHEAD HIT STEERING WHEEL ON INITIAL IMPACT).
17 **AIRBAGS DID NOT DEPLOY** ALLOWING ME TO SUSTAIN A HEAD INJURY THAT
18 KNOCKED ME UNCONSCIOUS... FOREHEAD WAS GASHED WITH SIGNIFICANT
19 BLEEDING. I WAS TRANSPORTED BY AMBULANCE IN UNCONSCIOUS STATE.
20 DAMAGE TO VEHICLE IS IN EXCESS OF $8,000 SO FAR AS VEHICLE STILL IN
21 REPAIR SHOP WITH MASSIVE FRONT END DAMAGE THAT AFFECTS STEERING
22 LINKAGE, ETC. THE IMPACT OF VEHICLE AGAINST FOLIAGE, TREES SHRUBS,
23 SHOULD HAVE FORCED AIR BAGS TO DEPLOY AND I BELIEVE THAT I WOULD NOT
24 HAVE SUSTAINED A HEAD INJURY THAT RENDERED ME UNCONSCIOUS WITH
25 MILD CONCUSSION AND COULD NOT CONTROL VEHICLE LEAVING ROADWAY.
26 *TR"

27         v.      NHTSA complaint #10592423 dated Monday, May 19, 2014, reported an
28 accident on Thursday, May 8, 2014 involving a 2003 CHEVROLET SILVERADO in

1   Burtonsville, MD. The complaint states: "TRUCK COLIDED WITH GUARD RAIL.

2   BOUNCED OFF, HIT VEHICLE 1, THEN INTO VEHICLE 2 THEN STOPPED AFTER

3   HITTING VEHICLE 3 A SEMI TRUCK. ALL DAMAGE WAS DONE TO FRONT OF THE

4   CHEVY SILVERADO. **AT NO TIME DID THE AIRBAGS DEPLOY**."

5          w.      NHTSA complaint #10622016 dated Wednesday, August 13, 2014,

6   reported an accident on Saturday, August 9, 2014 involving a 2012 CHEVROLET TAHOE in

7   The Colony, TX. The complaint states: "WHILE TURNING LEFT (TAHOE) WITH A

8   PROTECTED GREEN ARROW AT AN X-SHAPED INTERSECTION, VEHICLE (KIA

9   SEDAN) AT FAULT FAILED TO YIELD AND ENTERED THE INTERSECTION AT

10  SPEEDS UPWARDS OF 40 MPH FROM THE LEFT OF THE TAHOE. FRONT-IMPACT

11  COLLISION OCCURRED . . . TAHOE STRUCK PASSENGER SIDE OF KIA SEDAN.

12  TRAJECTORY OF IMPACT CAUSED DIRECTIONAL CHANGES IN UPWARDS OF 90*

13  FOR BOTH VEHICLES; THE FORCE OF THE PRIMARY ACCIDENT DESCRIBED ABOVE

14  ALSO CAUSED MENTIONED VEHICLES TO COLLIDE WITH LEFT REAR OF ANOTHER

15  VEHICLE (HONDA SEDAN) . . . DUE TO THE FORCE OF IMPACT, FRONT & SIDE

16  AIRBAGS DEPLOYED ON BOTH THE KIA SEDAN AND THE HONDA SEDAN, BUT

17  **FAILED TO DEPLOY ON THE TAHOE** . . . FORCE WAS SUCH THAT AFTER THE

18  COLLISION, TAHOE TRANSMISSION WAS IN DRIVE, BUT REMAINED AT A

19  COMPLETE STOP. DAMAGE SUSTAINED ON THE TAHOE INCLUDE FRONT-END

20  BODY DAMAGE, ENGINE DAMAGE (VEHICLE REQUIRED TOWING AND WAS

21  INOPERABLE), AND FRAME DAMAGE, AT A MINIMUM . . . MULTIPLE FIRST-

22  RESPONDERS COMMENTED ON THE ODDITY THAT, GIVEN THE DAMAGE

23  SUSTAINED BY THE TAHOE AND THE VELOCITY AT IMPACT, THE AIRBAGS

24  DEPLOYED ON ALL VEHICLES BUT THE TAHOE. *TR"

25          x.      NHTSA complaint #10641399 dated Saturday, October 4, 2014, reported

26  an accident on Tuesday, June 7, 2011 involving a 2002 CHEVROLET TAHOE in Cheney, WA.

27  The complaint states: "THE CONTACT STATED THAT WHILE THE DRIVER WAS

28  DRIVING AT 45 MPH AND ATTEMPTED TO AVOID A CRASH WITH ANOTHER

1    VEHICLE. AS A RESULT, THE DRIVER CRASHED INTO A GUARDRAIL AND **THE AIR**

2    **BAGS FAILED TO DEPLOY.** A POLICE REPORT WAS FILED. THE CONTACT WAS

3    TAKEN TO A HOSPITAL AND SUSTAINED INJURIES TO THE RIBS, THE COLLAR

4    BONES, A BRAIN TRAUMA AND A COLLAPSED LUNG. THE DRIVER SUFFERED

5    FROM FATAL INJURIES."

6              y.       NHTSA complaint #10767586 dated Tuesday, September 22, 2015,

7    reported an accident on Saturday, August 1, 2015 involving a 2004 CHEVROLET

8    TRAILBLAZER in Tallahassee, FL. The complaint states: "MY MOTHER WAS INVOLVED

9    IN A 1 CAR ACCIDENT ON BAUM RD LOCATED IN TALLAHASSEE, FL. SHE WAS THE

10   ONLY PASSENGER DETERMINED TO BE IN THE VEHICLE AT THE TIME OF THE

11   ACCIDENT. ACCORDING TO THE CRASH REPORT, D1 (DRIVER ONE) WAS

12   TRAVELING WESTBOUND ON BAUM RD GOING THE NORMAL POSTED SPEED OF

13   55MPH, WHEN SHE VEERED TOWARDS THE CENTER OF THE RD AND SUDDENLY

14   TURNED RIGHT VEERING OF THE RIGHT SHOULDER OF THE RD AND STRIKING

15   SEVERAL TREES ON THE DRIVERS SIDE AND FRONT END . . . WHEN I WENT TO

16   RETRIEVE MY MOTHERS THINGS FROM HER TRAILBLAZER, I NOTICED THAT **NO**

17   **AIR BAGS HAD DEPLOYED**. AND AS FAST AS MY MOM WAS GOING AND THE

18   TYPE OF IMPACT & DAMAGE HER SUV SUSTAINED, I WOULD THINK AND HOPE

19   THE AIRBAGS WOULD DEPLOY IN THIS TYPE OF ACCIDENT, THUS PREVENTING

20   SERIOUS INJURY OR DEATH. MY MOM WAS NOT SO LUCKY, AND MYSELF AND MY

21   FAMILY HAVE ENDURED GREAT PAIN FROM LOOSING HER SO SUDDENLY."

22              z.       NHTSA complaint #10907149 dated Friday, September 16, 2016, reported

23   an accident on Thursday, September 1, 2016 involving a 2006 CADILLAC SRX in Happy

24   Valley, OR. The complaint states: "THE VEHICLE HIT A CURB AND DROVE INTO A

25   BUILDING. **THE AIR BAGS FAILED TO DEPLOY**. THE CONTACT SUSTAINED

26   INJURIES THAT REQUIRED MEDICAL ATTENTION . . . THE MANUFACTURER WAS

27   NOTIFIED OF THE FAILURE."

28

135.    GM knew or had reason to know about these complaints, which are publicly available on NHTSA's website. Indeed, many complaints explicitly state that GM was directly informed of and/or investigated these suspicious accidents. For example:

a.    A complaint about an August 2018 accident in a 2008 GMC Acadia details that the airbags and seatbelt pretensioners did not deploy after the complainant's wife fell asleep at the wheel and struck a utility pole and then a large dirt embankment—which caused her to "hit the steering column so hard . . . it broke the column and broke her sternum," and caused the granddaughter in the passenger seat to break her back in two places. It continues that "GENERAL MOTORS . . . SENT A MAN TO DOWNLOAD THE COMPUTER INFORMATION THEY SENT ME A COPY OF THE INFO AND LATER CONTACTED ME SAYING THE INFO SHOWED EVERYTHING WAS WORKING PROPERLY." NHTSA complaint #11066850.

b.    After a July 2014 head on collision at 50 MPH where the airbags did not deploy in a 2007 Silverado, totaling the vehicle, another driver was "TOLD BY GM THAT CRASH DID NOT MEET CRITERIA FOR DEPLOYMENT." The driver expressed skepticism about this response, and in the complaint, stated "A HEAD ON COLLISION AT 50 MPH THAT TOTALED 2500 SERIES CHEVY TRUCK. HARD FOR ME TO BELIEVE . . . DO I NEED TO [BE] CONCERNED?" NHTSA complaint #10608220.

c.    Another driver reported on a May 2014 accident in a 2012 GMC Terrain in Moneta, VA. The driver struck "something" head on after veering off the highway and proceeded through trees and brush. They were knocked unconscious after hitting their head on the steering wheel upon the first impact, as the airbags had failed to deploy. They were transported to a hospital by ambulance and spent two days in inpatient care. The driver later "CONTACTED GMC CORPORATE . . . TO ADVISE MY CONCERNS FOR SAFETY . . . RECEIVED A FOLLOW UP TELEPHONE CALL FROM GMC REPRESENTATIVE . . . HE EXPRESSED NO INTEREST IN MY COMPLAINT . . . REFUSED TO COMMENT ON MY STATEMENT THAT AIR BAG FAILED TO DEPLOY RESULTING IN EXTENSIVE DAMAGE TO FRONT OF VEHICLE AND SUSTAINING A HEAD INJURY AS NO BAG DEPLOYED . . . I WAS

1   ADVISED THAT GMC HAD NO FURTHER INTEREST IN THIS MATTER AND WOULD

2   NOT EVALUATE MY SAFETY CONCERNS." NHTSA complaint #10588334.

3            d.      After a July 2012 accident involving a 2012 GMC Terrain in San

4   Clemente, CA, in which the Terrain was hit multiple times in an intersection in the driver's front

5   end, but no airbags deployed, resulting in whiplash and contusions to the driver, a GM

6   representative responded to a complaint lodged by the driver's parents and stated that there was

7   "NO NEED FOR DEPLOYMENT" because it was a "LOW THRESHOLD EVENT." NHTSA

8   complaint #10466384.

9            e.      After hitting a patch of black ice at 58 MPH in a Chevrolet Silverado in

10  January 2008, another complainant described that they lost control of the vehicle, ran off the road,

11  crashed into a telephone pole and ultimately into a frozen embankment. The airbags did not

12  deploy, causing the driver to hit the steering wheel. As the complainant relates, they "FILED A

13  COMPLAINT WITH THE MANUFACTURER, BUT THE COMPLAINT WAS DENIED. THE

14  MANUFACTURER WAS UNABLE TO DIAGNOSE THE VEHICLE; HOWEVER, AFTER

15  INSPECTION OF THE VEHICLE, THE MANUFACTURER CONFIRMED THAT THE AIR

16  BAGS WERE ENABLED AT THE TIME OF IMPACT. THEY DID NOT GIVE AN

17  EXPLANATION FOR THE DEPLOYMENT FAILURE." NHTSA complaint #10238395.

18           f.      In a report about a March 2006 accident involving a 2005 Cadillac

19  Escalade in Louisville, KY, the complainant describes that after none of the airbags deployed in a

20  front end collision in their 4-week old vehicle, they "CALLED CADILLAC CUSTOMER

21  SERVICE AND WAS GIVEN AN AIRBAG HISTORY LESSON VIA TELEPHONE FROM

22  SOMEONE THAT HAD NEVER SEEN MY VEHICLE OR INSPECTED IT FOR DAMAGE

23  AFTER THE ACCIDENT. AT THE END OF OUR CONVERSATION I WAS TOLD ALL

24  WAS OK, NONE OF MY AIRBAGS SHOULD HAVE DEPLOYED AND NOT TO WORRY

25  ABOUT IT. THE ENTIRE FRONT END OF MY VEHICLE WAS KNOCKED OFF, THE

26  FRAME HAS MULTIPLE CRACKS AND IS BENT AS A RESULT OF THE COLLISION

27  AND THE COLLISION CENTER IS 90% CERTAIN THE VEHICLE IS NOT REPAIRABLE.

28  *JB" NHTSA complaint #10152376.

1           g.      After an August 2004 accident involving a 1999 Chevrolet Astro in

2    Norfolk, VA in which the vehicle jumped a curb, struck a fire hydrant, and then struck a tree

3    without the airbags deploying, the driver was taken by ambulance to the hospital for head and

4    neck injuries. After the accident, the "CONSUMER CONTACTED THE MANUFACTURER

5    AND A REPRESENTATIVE CAME DOWN TO MEET WITH THE DEALER AND

6    CONSUMER. THE REPRESENTATIVE INFORMED CONSUMER THAT THE VEHICLE

7    WAS FUNCTIONING AS DESIGNED." NHTSA complaint # 10087718.

8           h.      Another driver contacted GM after the airbags did not deploy in a February

9    2004 front end collision at 25-30 MPH in their 2000 Isuzu Rodeo in Westwood, NJ. "THE

10   CONSUMER CONTACTED THE MANUFACTURER ABOUT THE AIR BAGS BUT THE

11   REPRESENTATIVE DID NOT SEEM TO BE TOO CONCERNED ABOUT THE

12   SITUATION." NHTSA complaint #10087550.

13          i.      Another driver described a head on collision at 39 MPH in their 2002

14   Chevrolet Tahoe in which the airbags did not deploy and the seatbelts did not tighten. The driver

15   hit their head on the steering wheel, knocking them unconscious. A readout from the vehicle's

16   computer showed the seatbelts were in working order, and GM responded by sending a

17   representative to inspect the vehicle in person. The complainant was awaiting a response from

18   GM at the time of the report. NHTSA complaint #10353935.

19          136.    More than eight hundred similar complaints—i.e., frontal crashes in the Class

20   Vehicles with airbag and seatbelt failures following multiple impacts, or, potentially long-soft

21   frontal impacts—are attached hereto as Exhibit A.[53] These accidents are relevant, and suspicious,

22   because they include hallmarks of the SDM Calibration Defect (airbag and seatbelt failures),

23

24

---

[53] The accidents in the preceding paragraph and Exhibit A include data for Class Vehicles in
model years 1999-2014. In the interest of efficiency, Plaintiffs have not supplemented the
accidents included in Exhibit A from the previously filed versions with their prior pleadings, but
note that significant numbers of similar consumer reports of multi-impact and front-end impact
accidents with airbag and seatbelt failures have continued to accrue in the NHTSA database in
model years 1999-2014, as well as later model years, in the time since Exhibit A was originally
prepared in 2021. Plaintiffs are prepared to submit supplemental examples of such incidents at the
Court's request.

1  under the very crash conditions where it arises, and in the specific population of vehicles

2  Plaintiffs allege to be impacted.

3      137.    In addition to these consumer complaints, a separate, public dataset from NHTSA,

4  the Fatality Analysis Reporting System ("FARS") provides a nationwide census of crashes that

5  resulted in fatal injuries. While the complaints outlined above are reported to NHTSA by

6  consumers and can include any type of complaint or incident, FARS data is reported by state

7  agencies responsible for monitoring all qualifying fatal crashes in their states. To be included in

8  FARS data, a crash must involve a motor vehicle traveling on a public road and result in the death

9  of a person in one or more of the vehicles involved in the crash within 30 days of the crash. The

10  dataset collects information on over 100 different data elements that characterize the crash, the

11  vehicles, and the people involved—including whether or not the airbags deployed.

12      138.    NHTSA's FARS dataset also reveals a recurring pattern of suspicious

13  nondeployments during frontal crashes (i.e., the crash dynamics that can implicate the SDM

14  Calibration Defect) and reinforces the extremely high stakes of such incidents. From 1999 to

15  present, FARS data reflects at least 1,946 frontal crashes where the airbags did not deploy in a

16  Class Vehicle—1,167 of which occurred in 2009 or later, after New GM was formed. This same

17  data reflects that at least 1,298 individual occupants (drivers or passengers) in a Class Vehicle

18  were injured or killed in these crashes.

19      **D.    Despite its knowledge, GM misrepresented and concealed important
       information about the SDM Calibration Defect and Class Vehicle safety.**

20

21      139.    For many consumers, including Plaintiffs, safety is one of the most important

22  factors when buying or leasing a vehicle. GM capitalized on this fact in advertising and other

23  consumer-facing representations about the Class Vehicles and touted the safety of the Class

24  Vehicles in national marketing campaigns.

25      140.    In nationwide advertisement campaigns and promotional materials, GM

26  maintained that the Class Vehicles were safe and reliable, and it did not correct representations

27  about the Class Vehicles' safety and reliability made by Old GM in the past. Instead, GM has

28  repeatedly touted the Class Vehicles' passenger safety systems and assured consumers they could

1   be relied upon to activate the airbags and seatbelts during a crash. These representations are false
2   and misleading because of what they fail to say; GM uniformly failed to disclose that the SDM
3   Calibration Defect could—at the worst possible moment—prevent the airbags and seatbelts from
4   activating.

5        141.    Plaintiffs and Class members, directly or indirectly, were exposed to these
6   advertisements and promotional materials prior to purchasing or leasing their Class Vehicles. The
7   misleading statements about Class Vehicles' safety in GM's advertisements and promotional
8   materials, as well as GM's omission of the truth about the SDM Calibration Defect, influenced
9   Plaintiffs and Class members' decisions to purchase or lease Class Vehicles. If GM had instead
10  chosen to disclose the truth about the SDM Calibration Defect, Plaintiffs and Class members
11  would have seen those disclosures. Indeed, Plaintiffs would have had multiple opportunities to
12  receive information about the SDM Calibration Defect if GM chose to disclose it, including at
13  dealerships, on GM's website, in radio or television advertisements, brochures, press releases or
14  in other promotional materials, as well as in news media reports that would likely follow from the
15  revelation of a serious safety defect in millions of GM vehicles.

16          **1.    Labels and window stickers on the Class Vehicles stated that they were**
17          **equipped with working airbags and seatbelts and failed to disclose the**
            **SDM Calibration Defect.**

18       142.    To sell vehicles in the United States, GM was required to "certify to the distributor
19  or dealer at delivery that the vehicle or equipment complies with applicable motor vehicle safety
20  standards prescribed" by NHTSA under Chapter 301 of Title 49 of the U.S. Code. GM "may not
21  issue the certificate if, in exercising reasonable care," they have "reason to know the certificate is
22  false or misleading in a material respect." 49 U.S.C. § 30115; *see also* 49 U.S.C. § 30112.

23       143.    Because "[c]ertification of a vehicle must be shown by a label permanently fixed
24  to the vehicle," all Class Vehicles have a permanent label certifying compliance with the safety
25  regulations prescribed by NHTSA. Since all the Class Vehicles are passenger vehicles, the
26  permanent label must state: "This vehicle conforms to all applicable Federal motor vehicle safety,
27  bumper, and theft prevention standards in effect on the date of manufacture shown above." 49
28  C.F.R. § 567.4(g)(5).

1  144. These labels were false and misleading because they failed to warn consumers

2 about the risk that the SDM would fail during a frontal crash, and instead indicated that the

3 passenger safety system would function properly. *See* 49 C.F.R. § 571.208 (S4.1.5.4, S4.1.5.5)

4 (Federal motor vehicle safety standards requiring Occupant Restraint Systems with airbags and

5 seatbelts).

6  145. Vehicle manufacturers have a duty to disclose known safety defects to the public

7 and to NHTSA. When a vehicle manufacturer learns of a safety defect, federal law requires it to

8 disclose the defect to NHTSA and to the owners, purchasers, and dealers of the vehicle. 49 U.S.C.

9 § 30118(c). Indeed, GM Parent acknowledges these obligations in its public SEC filings. In its

10 Form 10-K for fiscal year 2019, GM Parent states: "If we or NHTSA determine that either a

11 vehicle or vehicle equipment does not comply with a safety standard or if a vehicle defect creates

12 an unreasonable safety risk, the manufacturer is required to notify owners and provide a remedy."

13  146. The interiors of the Class Vehicles also contain prominent labels that alert the

14 driver and passengers to the vehicle's airbag system. For example, steering wheels and passenger

15 dashboards typically have labels identifying the airbag and safety restraint system (or "SRS").

16  147. GM was also specifically required by law to include in their vehicles warning

17 labels that alerted consumers of the need to perform airbag maintenance. For example, S4.5.1 of

18 49 C.F.R. § 571.208 states:

19     Air bag maintenance or replacement information. If the vehicle
20     manufacturer recommends periodic maintenance or replacement of
      an inflatable restraint system, as that term is defined in S4.1.5.1(b)
21     of this standard, installed in a vehicle, that vehicle shall be labeled
      with the recommended schedule for maintenance or replacement.
22     The schedule shall be specified by month and year, or in terms of
      vehicle mileage, or by intervals measured from the date appearing
23     on the vehicle certification label provided pursuant to 49 CFR Part
      567. The label shall be permanently affixed to the vehicle within
24     the passenger compartment and lettered in English in block capital
      and numerals not less than three thirty-seconds of an inch high.
25     This label may be combined with the label required by S4.5.1(b) of
      this standard to appear on the sun visor.

26

27

28

148.    Plaintiffs are unaware of any label in any Class Vehicle that alerted consumers to the SDM Calibration Defect or the need to perform maintenance to protect the SDM from preventing airbag deployment or seatbelt tightening when they are needed.

149.    GM also distributed the Class Vehicles with so-called "Monroney" labels (also known as "window stickers") that described the equipment and safety features of the vehicles, including airbags. Dealers sell Class Vehicles to consumers with these labels visible. An image of a Monroney label for the 2012 Silverado is included below as a representative example. In the center of the image, it features a "Five Star" frontal crash rating for drivers. Under "Safety & Security" features, it touts the "dual stage" airbags.



150.    Monroney labels for many of the Class Vehicles are available at: https://monroneylabels.com. Additional exemplars of Monroney labels from some of the Class Vehicles are attached as Exhibit B. On information and belief, the original printed Monroney labels for the Class Vehicles included the same content as pertains to safety and airbags as the exemplar Monroney labels from monroneylabels.com.

- 53 -

151.   As demonstrated by these examples, Monroney labels uniformly assured consumers that the Class Vehicles had working and safe airbags and seatbelts. This information would have suggested to any reasonable consumer that the passenger safety system did not suffer from a defect and would perform its intended function of activating the seatbelts and airbags when needed during a frontal collision.

      **2.**  **GM published owners' manuals for the Class Vehicles that detailed their safety features but did not disclose the SDM Calibration Defect.**

152.   GM (and Old GM before it) published owners' manuals for each of the Class Vehicles, and distributed and made them available throughout the United States. These manuals were directed at consumers and included misleading statements regarding seatbelts, airbags, and passenger safety systems. These statements uniformly omitted any warning to consumers that the SDM could shut off too early during a crash, or that the airbags and seatbelt pretensioners may not deploy when expected.

153.   Representative examples of statements from owners' manuals with materially misleading omissions concerning the effectiveness of their airbags follow in the paragraphs below.

154.   The manual for the 2002 Cadillac Escalade provides extensive detail about the vehicle's airbags, including the below details and images. In addition to explaining the types of airbags and where they are located, the manual specifically alerts consumers that the airbags "are designed to inflate in moderate to severe frontal or near-frontal crashes" where "the impact speed is above the system's designed 'threshold level.'" As to frontal airbags, it explains that they have been "designed to help reduce the risk of injury from the force of an inflating airbag."

### Supplemental Restraint Systems (SRS)

This part explains the frontal and side impact Supplemental Restraint Systems (SRS) or air bag systems.

Your vehicle has four air bags — a frontal air bag for the driver, another frontal air bag for the right front passenger, a side impact air bag for the driver, and another side impact air bag for the right front passenger.

Frontal air bags are designed to help reduce the risk of injury from the force of an inflating frontal air bag. But these air bags must inflate very quickly to do their job and comply with federal regulations.

#### When should an air bag inflate?

The driver's and right front passenger's frontal air bags are designed to inflate in moderate to severe frontal or near-frontal crashes. But they are designed to inflate only if the impact speed is above the system's designed "threshold level."

If your vehicle goes straight into a wall that doesn't move or deform, the threshold level is about 9 to 16 mph (14 to 26 km/h). The threshold level can vary, however, with specific vehicle design, so that it can be somewhat above or below this range.

If your vehicle strikes something that will move or deform, such as a parked car, the threshold level will be higher. The driver's and right front passenger's frontal air bags are not designed to inflate in rollovers, side impacts, or rear impacts, because inflation would not help the occupant.

### How the Air Bag Systems Work

#### Where are the air bags?



The driver's frontal air bag is in the middle of the steering wheel.



The right front passenger's frontal air bag is in the instrument panel on the passenger's side.

The driver's side impact air bag is in the side of the driver's seatback closest to the door.



**How the Air Bag Systems Work**

**Where are the air bags?**



The right front passenger's frontal air bag is in the instrument panel on the passenger's side.

The driver's side impact air bag is in the side of the driver's seatback closest to the door.

The driver's frontal air bag is in the middle of the steering wheel.

### When Should an Airbag Inflate?

Frontal airbags are designed to inflate in moderate to severe frontal or near-frontal crashes to help reduce the potential for severe injuries mainly to the driver's or right front passenger's head and chest. However, they are only designed to inflate if the impact exceeds a predetermined deployment threshold. Deployment thresholds are used to predict how severe a crash is likely to be in time for the airbags to inflate and help restrain the occupants.

Whether the frontal airbags will or should deploy is not based on how fast your vehicle is traveling. It depends largely on what you hit, the direction of the impact, and how quickly your vehicle slows down.

All of the airbags in the vehicle will have the word AIRBAG embossed in the trim or on an attached label near the deployment opening.

For frontal airbags, the word AIRBAG will appear on the middle part of the steering wheel for the driver and on the instrument panel for the right front passenger.

With seat-mounted side impact airbags, the word AIRBAG will appear on the side of the seatback closest to the door.

With roof-rail airbags, the word AIRBAG will appear along the headliner or trim.

Airbags are designed to supplement the protection provided by safety belts. Even though today's airbags are also designed to help reduce the risk of injury from the force of an inflating bag, all airbags must inflate very quickly to do their job.

### Airbag System

The vehicle has the following airbags:

* A frontal airbag for the driver.
* A frontal airbag for the right front passenger.
* A seat-mounted side impact airbag for the driver.
* A seat-mounted side impact airbag for the right front passenger.
* A roof-rail airbag for the driver, passenger seated directly behind the driver, and the third row outboard passenger position.
* A roof-rail airbag for the right front passenger, passenger seated directly behind the right front passenger, and the third row outboard passenger position.

155.    The manuals for the 2009 Chevy Traverse and 2010 Buick Enclave include similar details and images. Like the manual for the 2002 Cadillac Escalade, they also assure consumers that the vehicle's airbags are "designed to help reduce the risk of injury from the force of an inflating bag" and, thus, that the aggressive deployment problems that plagued first-generation airbags had been alleviated. It also assures that the frontal airbags have been "designed to inflate

1  in moderate to severe frontal crashes to help reduce the potential for severe injuries….” It

2  continues that airbag “deployment thresholds are used to predict how severe a crash is likely to be

3  in time for the airbags to inflate and help restrain the occupants.” While it provides very specific

4  detail about the way the passenger safety systems should function, the manual notably fails to say

5  that the deployment thresholds are wholly and intentionally ignored early on into a crash

6  sequence, preventing the airbags and seatbelts from functioning when they need to.

7       156.   The manual for the 2014 GMC Acadia provides additional detail about how the

8  passenger safety system functions. It explains that “Airbags are designed to inflate if the impact

9  exceeds the specific airbag system’s deployment thresholds.” Yet again, however, the manual

10 does not indicate that the SDM and its sensors are rendered useless in multi-impact crashes that

11 endure for longer than a specific, aggressive cutoff imposed by GM.







**Where Are the Airbags?**

The driver frontal airbag is in the center of the steering wheel.

The front outboard passenger frontal airbag is in the passenger side instrument panel.

If the vehicle has a front center airbag, it is in the inboard side of the driver seatback.

**When Should an Airbag Inflate?**

This vehicle is equipped with airbags. See Airbag System on page 3-23. Airbags are designed to inflate if the impact exceeds the specific airbag system’s deployment threshold. Deployment thresholds are used to predict how severe a crash is likely to be in time for the airbags to inflate and help restrain the occupants. The electronic sensors that help the airbag system determine the severity of the impact. Deployment thresholds can vary with specific vehicle design.

Frontal airbags are designed to inflate in moderate to severe frontal or near frontal crashes to help reduce the potential for severe injuries, mainly to the driver's or front outboard passenger's head and chest.

Whether the frontal airbags will or should inflate is not based primarily on how fast the vehicle is traveling.

It depends on what is hit, the direction of the impact, and how quickly the vehicle slows down.

Frontal airbags may inflate at different crash speeds depending on whether the vehicle hits an object straight on or at an angle, and whether the object is fixed or moving, rigid or deformable, narrow or wide.

Frontal airbags are not intended to inflate during vehicle rollovers, rear impacts, or many side impacts.

In addition, the vehicle has advanced technology frontal airbags. Advanced technology frontal airbags adjust the restraint according to crash severity.

The front center airbag, if equipped, is designed to inflate in moderate to severe side crashes depending upon the location of the impact, when either side of the vehicle is struck. In addition, the front center airbag is designed to inflate when the sensing system predicts that the vehicle is about to roll over on its

side. The front center airbag is not designed to inflate in frontal impacts, near frontal impacts, rollovers, or rear impacts.

Seat-mounted side impact airbags are designed to inflate in moderate to severe side crashes depending on the location of the impact.

Seat-mounted side impact airbags are not designed to inflate in frontal impacts, near frontal impacts, rollovers, or rear impacts.

A seat-mounted side impact airbag is designed to inflate on the side of the vehicle that is struck.

Roof-rail airbags are designed to inflate in moderate to severe side crashes depending on the location of the impact. In addition, these roof-rail airbags are designed to inflate during a rollover or in a severe frontal impact. Roof-rail airbags are not designed to inflate in rear impacts. Both roof-rail airbags will inflate when either side of the vehicle is struck, if the sensing

### 3. GM marketed the Class Vehicles to be safe and reliable but failed to mention the SDM Calibration Defect.

157.    Like its other consumer-facing representations, GM's advertisements for the Class Vehicles left out a crucial part of the story. By uniformly omitting any information about the SDM Calibration Defect, GM misled consumers into believing that their airbags and seatbelts would function properly in a crash, despite its knowledge to the contrary.

158.    A 2013 press release about the 2014 Chevy Silverado 1500, GMC Sierra, and Sierra Denali 1500 is further illustrative of GM's misleading statements about the Class Vehicles. Acknowledging that safety is "as important to truck buyers as it is to car buyers," Gay Kent, GM general director of Vehicle Safety and Crashworthiness, stated that the "Silverado and Sierra set a benchmark for pickup truck safety by offering a full array of advanced features designed to protect occupants before, during and after a collision." The press release noted the vehicle's "[s]ix standard air bags and 360-degree sensor system, including dual-stage frontal air bags, head-curtain side-impact air bags with rollover protect, and front outboard seat-mounted side-impact air bags."

159.    Brochures and press releases for other Class Vehicles use similar language to send a misleading message of safety. Illustrative examples are listed below.

    a.    Beginning with the 1999 Chevy Blazer, GM promised to go "to the ends of the earth to bring you driving security," assuring "peace of mind" with its "mainstay features such as Next Generation driver and right-front-passenger airbags."

    b.    "Because safety and security are so important to your family," the brochure for the 2002 Chevy Astro reads, "Astro features a comprehensive system to help you feel secure while you're driving." Among other safety features, "[s]tandard driver and front-passenger air bags . . . [are] designed to give you peace of mind. Chevy Astro. It's the midsize van that's serious about safety and security."

    c.    The brochure for the 2006 GMC Yukon promises, "should the worst happen, your Yukon will protect you and your passengers with front and rear crush zones, a sturdy steel safety cage, up to four air bags and a host of other important safety features."

1               d.      The brochure for the 2008 Buick Enclave explains that "[s]afety and

2  protection were top priorities in the design of the Enclave" and touts the vehicle's "360°

3  perimeter safety system [that] will deploy the appropriate airbags."

4               e.      Promising "[f]eelings of security and confidence," the brochure for the

5  2009 Chevy Equinox states the vehicle's "dual-stage frontal and head-curtain side-impact air

6  bags" helped earn it "the highest possible government rating for frontal crash tests – five stars."

7               f.      Declaring that "[s]afety never goes out of style," the brochure for the 2009

8  Chevy Traverse highlights the vehicle's "five-star frontal and side-impact crash test ratings" and

9  its "six air bags that help protect all three rows of seating."

10              g.      A press release for the 2009 Cadillac Escalade ESV goes further,

11  proclaiming that the "Escalade is designed to be among the industry's safest and most secure

12  vehicles, with numerous safety systems and crash-avoidance technologies."

13              h.      "Speaking of safety," the brochure for the 2010 Buick Enclave reads,

14  "Enclave has earned an impressive five-star crash rating for both front and side impacts . . . .

15  Five-star rating is for the driver and front passenger seating positions in the frontal crash test and

16  for the front and rear seating positions in the side-impact crash test."

17              i.      The brochure for the 2010 GMC Terrain describes the vehicle as "the state

18  of the art in air bags" and contends that "[s]egment-best safety is anticipated, with features that

19  include . . . six standard air bags: dual frontal airbags; head curtain side air bags and pelvic/thorax

20  seat-mounted side airbags."

21              j.      The brochure for the 2010 Silverado assures that the "head of security

22  never goes off the clock," boasting of a "five-star frontal crash test rating," including through its

23  "driver and right-front passenger dual-stage airbags."

24              k.      A press release for the 2011 Cadillac Escalade Hybrid explains, "[f]ront-

25  image airbags for the driver and passenger have been designed to protect the head during a frontal

26  crash."

27              l.      According to the brochure for the 2011 Cadillac SRX, "[p]assenger safety

28  is a primary consideration throughout the engineering process." If an incident occurs, "the SRX

1   looks out for you and yours," with its "six standard airbags, including advanced, frontal dual-

2   stage and seat mounted side-impact airbags for the driver and front-seat passenger, as well as

3   first- and second- row outboard head-curtain airbags."

4             m.      Describing Buick's "holistic[]" approach to safety, the brochure for the

5   2012 Enclave proclaims, "Enclave's approach to safety helps you and your companions feel safe

6   and secure before, during and after your travels." Inside the vehicle, "all rows have curtain side-

7   impact air bags with rollover protection, along with driver and front-passenger side-impact and

8   dual-stage airbags."

9             n.      In a 2013 press release announcing that NHTSA gave "its highest possible

10  5-star Overall Score" to a number of Chevrolet vehicles, including the Traverse and the

11  Silverado, Kent said "We design safety and crashworthiness into our vehicles very early in

12  development." He continued, "We are committed to offering advanced safety technologies on a

13  broad range of models . . . . All of our vehicles are designed to provide continuous protection for

14  customers before, during and after a crash."

15            o.      A press release for the 2013 Buick Enclave likewise publicized Buick's

16  safety record: "In 2012, every Buick model was named a Top Safety Pick by the Insurance

17  Institute for Highway Safety, underscoring the brand's commitment to safety leadership. The

18  2013 builds on that distinction with the industry's first front center side air bag – a standard

19  feature."

20            p.      "With head curtain side-impact air bags reaching from the front to the third

21  row of seating for outboard passengers," the 2014 brochure for the GMC Yukon XL reads,

22  "Yukon is engineered to help protect passengers regardless of where they're seated."

23            q.      Claiming to "set[] the standard . . . in everything from safety to

24  performance," the brochure for the 2014 Cadillac Escalade touts the vehicle's "eight standard

25  airbags," including "[d]ual-stage driver and front passenger, front-impact, Automatic Occupant

26  Sensing System, driver and front passenger seat-mounted side-impact airbags for thorax and

27  pelvic protection and head-curtain side-impact airbags with rollover protection for all outboard

28  passenger rows."

1        r.     The brochure for the 2014 Buick Enclave promises that the vehicle has

2 "your back, front and sides, proclaiming that "in an industry first, the standard driver's seat side-

3 mounted front center air bag adds another layer of protection by providing cushioning between

4 you and your front passenger to help reduce injuries in side impacts." The brochure includes the

5 below picture, indicating that the airbags will function as expected.



14    160.    Based on information and belief, every single Class Vehicle advertisement omitted

15 any mention that the vehicles' airbags and seatbelts could fail in a serious frontal collision due to

16 the SDM Calibration Defect.

17       **4.**   **GM provided warranties to repair defects in the Class Vehicles and have not done so.**

18    161.    Plaintiffs and each Class member have had sufficient direct dealings with either

19 Defendants or their agents (including dealerships) to establish privity of contract between

20 Defendants, on the one hand, and Plaintiffs and each Class member, on the other hand, as to the

21 implied warranties described in the Claims for Relief below.

22    162.    Nonetheless, privity is not required here because Plaintiffs and each Class member

23 are intended third-party beneficiaries of contracts between Defendants and their dealers, and of

24 their implied warranties. The dealers were not intended to be the ultimate consumers of the Class

25 Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the

26 warranty agreements were designed for and intended to benefit consumers only. Finally, privity is

27 also not required because the Class Vehicles are dangerous instrumentalities due to the safety

28 defect in the SDM Calibration.

1                                        * * *

2          163.    GM's deceptive actions harmed Plaintiffs and the Class. As a result of GM's

3    unfair, deceptive, and/or fraudulent business practices, and failure to disclose that the Class

4    Vehicles carried a dangerous safety defect that would cause the passenger safety systems to shut

5    off during certain types of accidents, owners and lessees of the Class Vehicles have lost money

6    and/or property.

7    **V.    CLASS ACTION ALLEGATIONS**

8          164.    This case is about GM's legal responsibility for its knowledge, conduct, and

9    products. The proposed Class members' claims all derive directly from a single course of conduct

10   by GM. The objective facts are the same for all Class members. Within each Count asserted by

11   Plaintiffs on behalf of themselves and the proposed Class, the same legal standards govern.

12         165.    Accordingly, Plaintiffs bring this lawsuit as a class action on their own behalf, and

13   on behalf of all other persons similarly situated, as members of the proposed Class pursuant to

14   Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3), and/or (c)(4). This action satisfies

15   the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements

16   of those provisions. Certification of Plaintiffs' claims for class-wide treatment is appropriate

17   because Plaintiffs can prove the elements of the claims on a class-wide basis using the same

18   evidence as would be used in individual actions alleging the same claims.

19         **A.    The Class Definition**

20         166.    The "Class Vehicles" herein include all vehicles in the United States that contain

21   the SDM Calibration Defect that were (1) manufactured, sold, distributed, or leased by

22   Defendants or (2) manufactured, sold, distributed, or leased by Old GM and purchased or leased

23   by Plaintiffs or a Class member after July 10, 2009.

24         167.    The SDM Calibration Defect exists in all GM trucks and SUVs starting with

25   model year 1999. This would include, for example, trucks and SUVs such as the Silverado,

26   Tahoe, Astro, and Trailblazer. The information presently available to Plaintiffs shows that, after it

27   was introduced in or about 1999, GM continued to implement its defective cutoff strategy in

28   software used in GM SUVs through model year 2018. Discovery will reveal when, if ever, GM

1  discontinued use of the SDM Calibration Defect in its trucks and SUVs. This information is

2  uniquely in the Defendants' hands, as only GM (and Delco, n/k/a Aptiv) possess the software

3  calibration files for GM vehicles that will demonstrate the presence of the defect in the software;

4  these files are not downloadable or otherwise accessible from the vehicles themselves, meaning

5  Plaintiffs are unable to obtain those files on their own.

6      168.    The proposed Class includes all persons and entities that purchased or leased a

7  Class Vehicle in the state of California.

8      169.    Excluded from the Class are:

9          a.      Defendants' officers, directors and employees; Defendants' affiliates and

10  affiliates' officers, directors, and employees; Defendants' distributors and distributors' officers,

11  directors, and employees; and

12          b.      Judicial officers and their immediate family members and associated court

13  staff assigned to this case.

14      170.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because

15  Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as

16  would be used in individual actions alleging the same claims.

17      171.    Plaintiffs reserve the right to amend the Class definitions if discovery and further

18  investigation reveal that any Class should be expanded, reduced, divided into additional

19  subclasses under Rule 23(c)(5), or otherwise modified.

20      **B.    Numerosity: Federal Rule of Civil Procedure 23(a)(1)**

21      172.    The members of the Class are so numerous and geographically dispersed that

22  individual joinder of all Class members is impracticable. There are millions of Class Vehicles

23  nationwide, a significant number of which are in the state of California. The precise number and

24  identities of the California Class members may be ascertained from Defendants' records and

25  motor vehicle regulatory data. Class members may be notified of the pendency of this action by

26  recognized, Court-approved notice dissemination methods.

27

28

**C.    Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**

173.    This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These include, without limitation, the following:

a.    Whether the Class Vehicles' SDM software calibration is defective, as described herein;

b.    Whether Defendants knew, or should have known, about the SDM Calibration Defect, and, if so, how long they have or should have known about it;

c.    Whether Defendants had a duty to disclose the defective nature of the Class Vehicles to Plaintiffs and Class members;

d.    Whether Defendants' concealment of the SDM Calibration Defect caused Plaintiffs and Class members to act to their detriment by purchasing or leasing the Class Vehicles;

e.    Whether Defendants' certifications concerning vehicle safety were misleading considering the risk that the SDMs will not trigger airbags and seatbelts during certain types of collisions;

f.    Whether Defendants' conduct tolls any or all applicable limitations periods by acts of fraudulent concealment, application of the discovery rule, or equitable estoppel;

g.    Whether Defendants misrepresented that the Class Vehicles were safe;

h.    Whether Defendants concealed the SDM Calibration Defect;

i.    Whether Defendants' statements, concealments, and omissions regarding the Class Vehicles were material, in that a reasonable consumer could consider them important in purchasing, leasing, selling, maintaining, or operating such vehicles;

j.    Whether Defendants engaged in unfair, deceptive, unlawful, and/or fraudulent acts or practices, in trade or commerce, by failing to disclose that the Class Vehicles were designed, manufactured, sold, and leased with defective airbag components;

k.    Whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

1     l.   Whether Defendants' concealment of the true defective nature of the Class

2 Vehicles caused their market price to incorporate a premium reflecting the assumption by

3 consumers that the Class Vehicles were equipped with fully functional passenger safety systems

4 and, if so, the market value of that premium; and

5     m.   Whether Plaintiffs and the other Class members are entitled to damages

6 and other monetary relief and, if so, in what amount.

7    **D.**   **Typicality: Federal Rule of Civil Procedure 23(a)(3)**

8    174.   Plaintiffs' claims are typical of the claims of Class members whom they seek to

9 represent under Fed. R. Civ. P. 23(a)(3), because Plaintiffs and each Class member purchased or

10 leased a Class Vehicle and were comparably injured through Defendants' wrongful conduct as

11 described above. Plaintiffs and the other Class members suffered damages as a direct proximate

12 result of the same wrongful practices by Defendants. Plaintiffs' claims arise from the same

13 practices and courses of conduct that give rise to the claims of the other Class members.

14 Plaintiffs' claims are based upon the same legal theories as the claims of the other Class

15 members.

16    **E.**   **Adequacy: Federal Rule of Civil Procedure 23(a)(4)**

17    175.   Plaintiffs will fairly and adequately represent and protect the interests of the Class

18 members as required by Fed. R. Civ. P. 23(a)(4). Plaintiffs' interests do not conflict with the

19 interests of the Class members. Plaintiffs have retained counsel competent and experienced in

20 complex class action litigation, including automobile defect litigation and other consumer

21 protection litigation. Plaintiffs intend to prosecute this action vigorously. Neither Plaintiffs nor

22 their counsel have interests that conflict with the interests of the other Class members. Therefore,

23 the interests of the Class members will be fairly and adequately protected.

24    **F.**   **Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2)**

25    176.   Defendants have acted or refused to act on grounds generally applicable to

26 Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief

27 and declaratory relief, as described below, with respect to the Class as a whole.

28

### G.    Superiority: Federal Rule of Civil Procedure 23(b)(3)

177.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in its management. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants such that it would be impracticable for members of the Class to individually seek redress for Defendants' wrongful conduct.

178.    Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.    ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED

179.    Defendants have known of the SDM Calibration Defect since at least 2009, when GM learned, through books, records, and personnel, that Old GM had launched the defective calibration strategy despite clear warnings of the risk of doing so, and then continued to use that defective software strategy thereafter. They obtained further knowledge of the risks of the SDM Calibration Defect from lawsuits and multiple suspicious accidents (involving airbag and seatbelt failures in frontal accidents) occurring in practically every year since, which provided additional and confirmatory notice of the continued risks of the SDM Calibration Defect.

180.    GM had a duty to disclose the SDM Calibration Defect to consumers and NHTSA. Instead, GM knowingly, affirmatively, and actively concealed the defect from regulators and consumers by continuing to distribute, sell, and/or lease the Class Vehicles to Plaintiffs and the Class members; to advertise the safety of the Class Vehicles; and to fail to notify regulators or Plaintiffs and the Class members about the true nature of the Class Vehicles.

181.    As of the date of this Complaint, GM still has not disclosed, and continues to conceal, that the Class Vehicles are defective, that the SDM Calibration Defect could prevent the airbags and seatbelts from activating during certain kinds of frontal collisions, and that these

1  Class Vehicles' safety systems may fail them in life-threatening collisions. Despite its knowledge

2  of the SDM Calibration Defect and its attendant safety risks, GM continues to market the Class

3  Vehicles based on superior safety and reliability while omitting the disclosure safety and

4  reliability risks associated with the SDM Calibration Defect.

5       182.    Plaintiffs and members of the proposed Class could not have discovered through

6  the exercise of reasonable diligence that GM was concealing the SDM Calibration Defect in their

7  vehicles and misrepresenting the defective nature of the Class Vehicles.

8       183.    With respect to Class Vehicles that have not experienced airbags or seatbelt

9  failure, Plaintiffs and other Class members did not discover, could not reasonably have

10  discovered, and had no reason to suspect that their Class Vehicles are defective, that GM

11  calibrated the software program that controls the SDM to prematurely cutoff airbag and seatbelt

12  deployment after a crash has begun, that—in affirmatively blocking these critical safety features

13  too early—GM significantly and unnecessarily increased the risk of injury and death in frontal

14  crashes, that the safety of their Class Vehicles is impaired by this defect such that the Class

15  Vehicles' safety system may fail them in potentially deadly collisions, or that, as a result of the

16  foregoing, they overpaid for their vehicles, and/or the value of their vehicles is diminished.

17       184.    With respect to Class Vehicles that have experienced airbag and/or seatbelt failure

18  prior to the filing of this Complaint, Class members did not discover and could not reasonably

19  have discovered that such failure was due to a defect known to GM through a dangerous and

20  defective approach to SDM software calibration.

21       185.    Plaintiffs and other Class members did not discover, and did not know of, facts

22  that would have caused a reasonable person to suspect that GM did not report this material

23  information within their knowledge to consumers, dealerships, or relevant authorities; nor would

24  a reasonable and diligent investigation have disclosed that GM was aware of the defective nature

25  of the SDM software calibration and the Class Vehicles in which it was incorporated.

26       186.    Due to the highly technical nature of the SDM Calibration Defect, Plaintiffs and

27  Class members were unable to independently discover it using reasonable diligence. Absent

28  counsel and third-party consultants with relevant expertise, Plaintiffs and Class members lack the

1    necessary expertise to analyze the software algorithm for the SDMs, or vehicle safety system

2    performance in an accident, and to understand its defective nature. GM has not issued a recall or

3    issued other similar public statements about the SDM Calibration Defect, and Plaintiffs first

4    learned of the defective nature of the SDM software calibration in their vehicles, and of GM's

5    scheme to design and sell vehicles with defective SDM software calibrations, only in connection

6    with retaining counsel and filing this lawsuit in 2021 (for Plaintiff Vargas and Milstead). Plaintiff

7    Ray learned of the SDM Calibration Defect in connection with retention of counsel in late 2020,

8    and was also aware of the pendency of this putative class action before filing his claims.

9        187.    For the foregoing reasons, GM is estopped from relying on any statutes of

10   limitation or repose as a defense in this action. All applicable statutes of limitation and repose

11   have been tolled by operation of the discovery rule and by GM's fraudulent concealment with

12   respect to all claims against GM.

13   **VII.    <u>CAUSES OF ACTION</u>**

14                                  **COUNT I:**

15                          **FRAUD BY CONCEALMENT**
                                  **(Common Law)**

16

17       188.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set

18   forth herein.

19       189.    Plaintiffs bring this claim against all Defendants on behalf of themselves and the

20   California State Class under the common law of fraudulent concealment.

21       190.    Defendants are liable for both fraudulent concealment and non-disclosure. *See,*

22   *e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

23       191.    Defendants intentionally and knowingly concealed and suppressed material facts

24   from regulators and consumers regarding the SDM Calibration Defect that causes the airbags and

25   seatbelts to fail in prolonged onset, complex, or otherwise multi-impact accidents, causing a

26   serious risk of injury or death.

27       192.    A reasonable consumer would not have expected that the Class Vehicles contained

28   a software program that was calibrated to prevent seatbelt tightening and airbag deployment

1    during certain types of frontal crashes that are otherwise severe enough to require them.

2    Defendants knew that reasonable consumers expect that their vehicle has working airbags and

3    seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or

4    retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and

5    whether that manufacturer stands behind its products, are material concerns to a consumer.

6          193.   Defendants ensured that Plaintiffs and the Class did not discover this information

7    by actively concealing and misrepresenting the true nature of the Class Vehicles' safety systems.

8    Defendants intended for Plaintiffs and the Class to rely on their omissions—which they did by

9    purchasing and leasing the Class Vehicles at the prices they paid.

10         194.   Defendants had a duty to disclose the SDM Calibration Defect because:

11          a.   GM had exclusive and/or far superior knowledge and access to the facts

12    about this hidden and complex safety defect. Defendants also knew that these technical facts were

13    not known to or reasonably discoverable by Plaintiffs and the Class; GM knew the SDM

14    Calibration Defect (and its safety risks) was a material fact that would affect Plaintiffs' or Class

15    members' decisions to buy or lease Class Vehicles; GM is subject to statutory duties to disclose

16    known safety defects to consumers and to NHTSA; GM's actions to avoid investigations and a

17    recall due to the defect deprived consumers of an opportunity in which they could have learned

18    about it; and GM made incomplete representations about the safety and reliability of the Class

19    Vehicles and their passenger safety systems, while purposefully withholding material facts about

20    a known safety defect. In uniform advertising and materials provided with each Class Vehicle,

21    Defendants intentionally concealed, suppressed, and failed to disclose to Plaintiffs and the Class

22    that the Class Vehicles contained the dangerous SDM Calibration Defect. Because they

23    volunteered to provide information about the Class Vehicles that they offered for sale to Plaintiffs

24    and the Class, Defendants had the duty to disclose the whole truth. They did not.

25         195.   To this day, Defendants have not made full and adequate disclosure and continue

26    to conceal material information regarding the SDM Calibration Defect. The omitted and

27    concealed facts were material because a reasonable person would find them important in

28

1  purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact

2  the value of the Class Vehicles purchased or leased by Plaintiffs and the Class.

3      196.    Defendants actively concealed or suppressed these material facts, in whole or in

4  part, to maintain a market for their vehicles, to protect profits, and to avoid costly recalls that

5  would hurt the GM brand's image. They did so at the expense of Plaintiffs and the Class. Had

6  they been aware of the SDM Calibration Defect in the Class Vehicles, and Defendants' callous

7  disregard for safety, Plaintiffs and the Class either would not have paid as much as they did for

8  their Class Vehicles, or they would not have purchased or leased them.

9      197.    Accordingly, Defendants are liable to Plaintiffs and the Class for their damages in

10  an amount to be proven at trial, including, but not limited to, their lost overpayment for the Class

11  Vehicles at the time of purchase or lease.

12      198.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to

13  defraud; in reckless disregard of Plaintiffs' and the Class' rights and well-being; and to enrich

14  themselves. Their misconduct warrants an assessment of punitive damages in an amount

15  sufficient to deter such conduct in the future, which amount shall be determined according to

16  proof at trial.

17                            **COUNT II:**
                          **UNJUST ENRICHMENT**
18                           **(Common Law)**

19      199.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set

20  forth herein.

21      200.    Plaintiffs Richard Vargas and Arthur Ray assert this Unjust Enrichment count on

22  behalf of themselves and the California State Class.

23      201.    By reason of their conduct, Defendants caused damages to Plaintiffs and Class

24  members. Plaintiffs and Class members conferred a benefit on the Defendants by overpaying for

25  Class Vehicles at prices that were artificially inflated by Defendants' concealment of the SDM

26  Calibration Defect and misrepresentations regarding the Class Vehicles' safety.

27

28

1    202.    As a result of Defendants' fraud and deception, Plaintiffs and Class members were

2    not aware of the true facts concerning the Class Vehicles and did not benefit from the

3    Defendants' misconduct.

4    203.    Defendants knowingly benefitted from their unjust conduct. They sold and leased

5    Class Vehicles equipped with the SDM Calibration Defect for more than what the vehicles were

6    worth, at the expense of Plaintiffs and Class members.

7    204.    Defendants readily accepted and retained these benefits from Plaintiffs and Class

8    members.

9    205.    It is inequitable and unconscionable for Defendants to retain these benefits because

10   they misrepresented that the Class Vehicles were safe, and intentionally concealed, suppressed,

11   and failed to disclose the SDM Calibration Defect to consumers. Plaintiffs and Class members

12   would not have purchased or leased the Class Vehicles or would have paid less for them, had

13   Defendants not concealed the SDM Calibration Defect.

14   206.    Plaintiffs and Class members do not have an adequate remedy at law.

15   207.    Equity cannot in good conscience permit the Defendants to retain the benefits that

16   they derived from Plaintiffs and Class members through unjust and unlawful acts, and therefore

17   restitution or disgorgement of the amount of the Defendants' unjust enrichment is necessary.

18
### COUNT III:
### Violation of California Consumers Legal Remedies Act
### Cal. Civ. Code § 1750, *et seq.*
19

20

21   208.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though

22   fully set forth herein.

23   209.    Plaintiffs bring this claim on behalf of themselves and the California State Class

24   against the Defendants.

25   210.    Plaintiffs and California State Class members are "consumers" within the meaning

26   of Cal. Civ. Code § 1761(d).

27   211.    Defendants, the California Plaintiffs, and California State Class members are

28   "persons" within the meaning of Cal. Civ. Code § 1761(c).

1    212.    The Class Vehicles are "goods" within the meaning of Cal. Civ. Code § 1761(a).

2    213.    The California Legal Remedies Act ("CLRA") prohibits "unfair methods of

3  competition and unfair or deceptive acts or practices undertaken by any person in a transaction

4  intended to result or that results in the sale or lease of goods or services to any consumer[.]" Cal.

5  Civ. Code § 1770.

6    214.    Defendants engaged in unfair or deceptive acts or practices when, in the course of

7  their business they, among other acts and practices, intentionally and knowingly made materially

8  false representations regarding the reliability, safety, and performance of the Class Vehicles

9  and/or the defective SDM software calibration, as detailed above.

10    215.    Specifically, by misrepresenting the Class Vehicles as safe and/or free from

11  defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class

12  Vehicles, Defendants engaged in one or more of the following unfair or deceptive business

13  practices as defined in Cal. Civ. Code § 1770(a):

14    a.  Representing that the Class Vehicles have characteristics, uses, benefits, and qualities

15      which they do not have.

16    b.  Representing that the Class Vehicles are of a particular standard, quality, and grade

17      when they are not.

18    c.  Advertising the Class Vehicles and/or with the intent not to sell or lease them as

19      advertised.

20    d.  Representing that the subject of a transaction has been supplied in accordance with a

21      previous representation when it has not.

22    Cal. Civ. Code §§ 1770(a)(5), (7), (9), and (16).

23    216.    Additionally, in the various channels of information through which Defendants

24  sold and marketed Class Vehicles, Defendants failed to disclose material information concerning

25  the Class Vehicles, which they had a duty to disclose. Defendants had a duty to disclose the

26  defect because, as detailed above: (a) Defendants knew about the defect in the SDM software

27  calibration in the Class Vehicles; (b) Defendants had exclusive knowledge of material facts not

28  known to the general public or the other California State Class members; (c) Defendants actively

1    concealed material facts concerning the software calibration from the general public and Plaintiffs

2    and California State Class members; and (d) Defendants made partial representations about the

3    Class Vehicles that were misleading because they did not disclose the full truth.

4         217.    Defendants' unfair or deceptive acts or practices, including their

5    misrepresentations, concealments, omissions, and/or suppressions of material facts, had a

6    tendency or capacity to mislead and create a false impression in consumers, and were likely to

7    and did in fact deceive reasonable consumers, including Plaintiffs and California State Class

8    members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles,

9    and the true value of the Class Vehicles.

10        218.    Plaintiffs and the other California State Class members have suffered injury in fact

11   and actual damages resulting from Defendants' material omissions.

12        219.    Defendants' violations present a continuing risk to Plaintiffs and California State

13   Class members, as well as to the general public, and therefore affect the public interest.

14        220.    Defendants are on notice of the issues raised in this count and this Complaint by

15   way of, among other things, the individual personal injury litigation and hundreds of public

16   consumer complaints detailed above, as well as their own intrinsic knowledge of defect they have

17   included in the Class Vehicles by design. Plaintiffs also sent a notice letter to Defendants in

18   accordance with Cal. Civ. Code § 1782(a) of the CLRA, notifying Defendants of their alleged

19   violations of Cal. Civ. Code § 1770(a) and demanding that Defendants correct or agree to correct

20   the actions described therein within thirty (30) days of the notice letter. Defendants did not

21   correct or agree to correct their actions within thirty days, and Plaintiffs therefore seek

22   compensatory and monetary damages to which Plaintiffs and California Class Members are

23   entitled under the CLRA.

24        221.    Attached hereto as Exhibit C is the venue affidavit required by CLRA, Cal. Civ.

25   Code § 1780(d).

26

27

28

**COUNT IV:**
**Violations of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq.***

222.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

223.     Plaintiffs bring this claim on behalf of themselves and the California State Class against the Defendants.

224.     The California Unfair Competition Law ("UCL"), Cal. Bus. and Prof. Code § 17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."

225.     Defendants' knowing and intentional conduct described in this Complaint constitutes unlawful, fraudulent, and unfair business acts and practices in violation of the UCL. Specifically, Defendants' conduct is unlawful, fraudulent, and unfair in at least the following ways:

a.     by knowingly and intentionally concealing from Plaintiffs and California State Class members that the Class Vehicles suffer from the SDM Calibration Defect while obtaining money from the California State Class members;

b.     by marketing Class Vehicles as possessing a functional, safe, and defect-free passenger safety system;

c.     by purposefully designing and manufacturing the Class Vehicles to contain a defective SDM software calibration that causes airbags and seatbelts to fail in certain accidents contrary to what was disclosed to regulators and represented to consumers who purchased or leased Class Vehicles, and failing to fix the SDM Calibration Defect free of charge; and

d.     by violating the other California laws alleged herein, including the False Advertising Law, Consumers Legal Remedies Act, California Commercial Code, and Song-Beverly Consumer Warranty Act.

226.     Defendants' misrepresentations, omissions, and concealment were material to the California Plaintiffs and California State Class members, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that consumers would rely on the misrepresentations, concealment, and omissions.

1    227.    Defendants' material misrepresentations and omissions alleged herein caused

2 Plaintiffs and the California State Class members to make their purchases or leases of their Class

3 Vehicles. Absent those misrepresentations and omissions, Plaintiffs and California State Class

4 members would not have purchased or leased these vehicles or would not have purchased or

5 leased these Class Vehicles at the prices they paid.

6    228.    Accordingly, Plaintiffs and California State Class members have suffered

7 ascertainable loss and actual damages as a direct and proximate result of Defendants'

8 misrepresentations and their concealment of and failure to disclose material information.

9    229.    Defendants' violations present a continuing risk to Plaintiffs and California State

10 Class members, as well as to the general public. Defendants' unlawful acts and practices

11 complained of herein affect the public interest.

12    230.    Plaintiffs request that this Court enter an order enjoining Defendants from

13 continuing their unfair, unlawful, and/or deceptive practices and restoring to members of the

14 California State Class any money Defendants acquired by unfair competition, including

15 restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and

16 Cal. Bus. & Prof. Code § 3345, and for such other relief set forth below.

17

**COUNT V:**
**Violations of the California False Advertising Law**
**Cal. Bus. & Prof. Code § 17500, *et seq.***

18

19    231.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though

20 fully set forth herein.

21    232.    Plaintiffs bring this claim on behalf of themselves and the California State Class

22 against the Defendants.

23    233.    The California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500,

24 prohibits false advertising.

25    234.    Defendants, Plaintiffs, and California State Class members are "persons" within

26 the meaning of Cal. Bus. & Prof. Code § 17506.

27    235.    Defendants violated the FAL by causing to be made or disseminated through

28 California and the United States, through advertising, marketing and other publications,

1    statements regarding the safety of the Class Vehicles that were untrue or misleading, and which

2    were known, or which by the exercise of reasonable care should have been known to Defendants,

3    to be untrue and misleading to consumers, including California State Class members. Numerous

4    examples of these statements and advertisements appear in the preceding paragraphs throughout

5    this Complaint and in Exhibit B.

6          236.    The misrepresentations and omissions regarding the reliability and safety of Class

7    Vehicles as set forth in this Complaint were material and had a tendency or capacity to mislead

8    and create a false impression in consumers, and were likely to and did in fact deceive reasonable

9    consumers, including Plaintiffs and California State Class members, about the true safety and

10   reliability of Class Vehicles, the quality of the Defendants' brands, and the true value of the Class

11   Vehicles.

12         237.    In purchasing or leasing their Class Vehicles, the California State Class members

13   relied on the misrepresentations and/or omissions of Defendants with respect to the safety and

14   reliability of the Class Vehicles. Defendants' representations turned out not to be true because the

15   Class Vehicles are distributed with a dangerous safety defect, rendering the vehicles' airbags and

16   seatbelts inoperative in certain types of accidents.

17         238.    Plaintiffs and the other California State Class members have suffered an injury in

18   fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or

19   deceptive practices. Had they known the truth, Plaintiffs and California State Class members

20   would not have purchased or leased the Class Vehicles or would have paid significantly less for

21   them.

22         239.    Plaintiffs and California State Class members had no way of discerning that

23   Defendants' representations were false and misleading, or otherwise learning the facts that

24   Defendants had concealed or failed to disclose. Plaintiffs and California State Class members did

25   not, and could not, unravel Defendants' deception on their own.

26         240.    Defendants had an ongoing duty to Plaintiffs and California State Class members

27   to refrain from unfair or deceptive practices under the California False Advertising Law in the

28   course of their business. Specifically, the Defendants owed Plaintiffs and California State Class

1  members a duty to disclose all the material facts concerning the SDM Calibration Defect in the

2  Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the

3  defect from Plaintiffs and California State Class members, and/or they made misrepresentations

4  that were misleading because they were contradicted by withheld facts.

5      241.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the

6  conduct of Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized

7  course of conduct that is still perpetuated and repeated, both in the State of California and

8  nationwide.

9      242.    Defendants' violations present a continuing risk to Plaintiffs and California State

10  Class members, as well as to the general public. Defendants' unlawful acts and practices

11  complained of herein affect the public interest.

12      243.    Plaintiffs request that this Court enter an order enjoining Defendants from

13  continuing their unfair, unlawful, and/or deceptive practices and restoring to the California State

14  Class any money Defendants acquired by unfair competition, including restitution and/or

15  restitutionary disgorgement, and for such other relief set forth below.

16                              **COUNT VI:**
                    **Breach of Implied Warranty of Merchantability**
17                    **Cal. Com. Code §§ 2314 and 10212**

18      244.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though

19  fully set forth herein.

20      245.    Plaintiffs bring this claim on behalf of themselves and the California State Class

21  against the Defendants.

22      246.    Defendants are and were at all relevant times "merchant[s]" with respect to motor

23  vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and "sellers" of motor vehicles under

24  § 2103(1)(d).

25      247.    With respect to leases, Defendants are and were at all relevant times "lessors" of

26  motor vehicles under Cal. Com. Code § 10103(a)(16).

27      248.    All California State Class members who purchased Class Vehicles in California

28  are "buyers" within the meaning of Cal. Com. Code § 2103(1)(a).

249.    All California State Class members who leased Class Vehicles in the California are "lessees" within the meaning of Cal. Com. Code § 10103(a)(14).

250.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

251.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Cal. Com. Code §§ 2314 and 10212.

252.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

253.    Defendants were on reasonable notice of these issues and an opportunity to cure the breaches due to their extensive knowledge of the SDM Calibration Defect, as detailed herein. Defendants have not cured the breaches of their warranties despite years of knowledge of those breaches.

254.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and California State Class members have been damaged in an amount to be proven at trial.

**COUNT VII:**
**Violation of Song-Beverly Consumer Warranty Act,**
**Breach of Implied Warranty**
**Cal Civ. Code § 1790, *et seq.***

255.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

256.    Plaintiffs bring this claim on behalf of themselves and the California State Class against the Defendants.

257.    All California State Class members who purchased Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

258.    All California State Class members who leased Class Vehicles in California are "lessors" within the meaning of Cal. Civ. Code § 1791(h).

259.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

260.    Defendants are the "manufacturer[s]" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

261.    Defendants impliedly warranted to Plaintiffs and the other members of the California State Class that the Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792; however, the Class Vehicles do not have the quality that a buyer would reasonably expect.

262.    The Class Vehicles would not pass without objection in the automotive trade due to the SDM Calibration Defect. Because the Class Vehicles contain defective SDMs, the Class Vehicles are not in merchantable condition and thus not fit for ordinary purposes.

263.    The Class Vehicles are not adequately labeled because the labeling fails to disclose the SDM Calibration Defect. The Class Vehicles do not conform to the promises and affirmations made by the Defendants regarding safety.

264.    The Defendants' breach of the implied warranty of merchantability caused damage to Plaintiff Vargas and California State Class members who purchased or leased the defective Class Vehicles. The amount of damages due will be proven at trial.

265.    Pursuant to Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiffs and California State Class members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and any other just and proper relief available under the Song-Berkeley Consumer Warranty Act.

## VIII.    **PRAYER FOR RELIEF**

Plaintiffs, on behalf of themselves and all others similarly situated, request for the Court to enter judgment against the Defendants, as follows:

1    a. An order certifying the proposed Class, designating Plaintiffs as the named

2 representatives of the Class, designating the undersigned as Class Counsel, and making such

3 further orders for the protection of Class members as the Court deems appropriate, under Fed. R.

4 Civ. P. 23;

5    b. An order enjoining the Defendants to desist from further deceptive

6 distribution, sales, and lease practices with respect to the Class Vehicles and such other injunctive

7 relief that the Court deems just and proper;

8    c. An award to Plaintiffs and Class Members of compensatory, exemplary,

9 and punitive remedies and damages and statutory penalties, including interest, in an amount to be

10 proven at trial;

11    d. A declaration that Defendants are financially responsible for all Class

12 notice and the administration of Class relief;

13    e. Costs, restitution, and compensatory damages for economic loss and out-

14 of-pocket costs, multiple damages under applicable states' laws; punitive and exemplary damages

15 under applicable law; and disgorgement, in an amount to be determined at trial;

16    f. Any applicable statutory and civil penalties;

17    g. An award of costs and attorneys' fees, as allowed by law;

18    h. An order requiring Defendants to pay both pre- and post-judgment interest

19 on any amounts awarded.

20    i. Leave to amend this Complaint to conform to the evidence produced at

21 trial; and

22    j. Such other or further relief as the Court may deem appropriate, just, and

23 equitable under the circumstances.

24 **IX.** **DEMAND FOR JURY TRIAL**

25  Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any

26 and all issues in this action triable by a jury.

27

28

| | |
|---|---|
| 1 | Dated: July 27, 2023 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

Respectfully Submitted,

By: */s/ David S. Stellings*
    David S. Stellings (*pro hac vice*)
    Katherine I. McBride (*pro hac vice*)
    Jessica A. Moldovan (*pro hac vice*)
    **LIEFF CABRASER HEIMANN
    & BERNSTEIN, LLP**
    250 Hudson Street, 8th Floor
    New York, NY 10013
    Telephone: 212.355.9500
    Facsimile: 212.355.9592
    dstellings@lchb.com
    kmcbride@lchb.com
    jmoldovan@lchb.com

    Richard Heimann (CA Bar # 063607)
    Nimish R. Desai  (CA Bar # 244953)
    **LIEFF CABRASER HEIMANN
    & BERNSTEIN, LLP**
    275 Battery St., 29th Fl.
    San Francisco, CA 94111-3339
    Telephone: 415-956-1000
    Facsimile: 415-956-1008
    rheimann@lchb.com
    ndesai@lchb.com

    Roland Tellis (CA Bar #186269)
    David Fernandes (CA Bar #280944)
    Adam Tamburelli (CA Bar #301902)
    **BARON & BUDD, P.C.**
    15910 Ventura Boulevard, Suite 1600
    Encino, California 91436
    Telephone: (818) 839-2333
    Facsimile: (818)-986-9698
    rtellis@baronbudd.com
    dfernandes@baronbudd.com
    atamburelli@baronbudd.com

    Christopher A. Seeger (*pro hac vice*)
    Christopher L. Ayers (*pro hac vice*)
    **SEEGER WEISS LLP**
    55 Challenger Road, 6th Floor
    Ridgefield Park, NJ 07660
    Telephone: (973) 639-9100
    Facsimile: (973) 639-9393
    cseeger@seegerweiss.com
    cayers@seegerweiss.com

1

2          Shauna Itri (*pro hac vice*)
           **SEEGER WEISS LLP**
3          1515 Market Street, Suite 1380
           Philadelphia, PA 19102
4          Telephone: (215) 564-2300
           Facsimile: (215) 851-8029
5          sitri@seegerweiss.com

6          W. Daniel "Dee" Miles, III (*pro hac vice*)
7          H. Clay Barnett, III (*pro hac vice*)
           J. Mitch Williams (*pro hac vice*)
8          Rebecca D. Gilliland (*pro hac vice*)
           Dylan T. Martin (*pro hac vice*)
9          **BEASLEY, ALLEN, CROW,**
           **METHVIN, PORTIS & MILES, P.C.**
10         272 Commerce Street
11         Montgomery, AL 36104
           Telephone: (334) 269-2343
12         Dee.Miles@beasleyallen.com
           Clay.Barnett@beasleyallen.com
13         Mitch.Williams@beasleyallen.com
14         Rebecca.Gilliland@beasleyallen.com
           Dylan.Martin@beasleyallen.com
15
           David M. Birka-White  (CA Bar # 85721)
16         **BIRKA-WHITE LAW OFFICES**
17         178 E. Prospect Avenue
           Danville, CA 94526
18         Telephone: (925) 362-9999
           dbw@birka-white.com
19
20         James E. Cecchi (*pro hac vice*)
           Caroline F. Bartlett (*pro hac vice*)
21         **CARELLA, BYRNE, CECCHI,**
           **OLSTEIN, BRODY & AGNELLO, P.C.**
22         5 Becker Farm Road
23         Roseland, New Jersey 07068
           Telephone: (973) 994-1700
24         Facsimile:  (973) 994-1744
           jcecchi@carellabyrne.com
25         cbartlett@carellabyrne.com

26         Joseph H. Meltzer (*pro hac vice*)
27         Melissa L. Yeates (*pro hac vice*)
           **KESSLER TOPAZ**
28         **MELTZER & CHECK, LLP**

280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
jmeltzer@ktmc.com
myeates@ktmc.com

Charles E. Schaffer (*pro hac vice*)
David C. Magagna Jr. (*pro hac vice*)
**LEVIN, SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
cschaffer@lfsblaw.com
dmagagna@lfsblaw.com

E. Powell Miller (*pro hac vice forthcoming*)
**THE MILLER LAW FIRM, P.C.**
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com

Jason P. Sultzer, Esq. (*pro hac vice*)
**THE SULTZER LAW GROUP P.C.**
270 Madison Avenue, Suite 1800
New York, NY 10016
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com

- 83 -

# EXHIBIT A

| NHTSA ID No. | make | model | year | failure_date | full_text |
|---|---|---|---|---|---|
| 10915473 | BUICK | ENCLAVE | 2014 | 2016-06-25 | TL* THE CONTACT OWNED A 2014 BUICK ENCLAVE. WHILE DRIVING INTO AN INTERSECTION, THE DRIVER'S SIDE OF THE CONTACT'S VEHICLE WAS STRUCK BY AN ONCOMING VEHICLE. THE CONTACT'S VEHICLE SPUN OFF THE ROAD AND LANDED IN A DITCH. THE FRONT END AND DRIVER'S SIDE OF THE VEHICLE WERE SEVERELY DAMAGED. THE CONTACT WAS UNABLE TO RECALL THE DETAILS OF THE CRASH. THE AIR BAGS DID NOT DEPLOY. THE CONTACT WAS INFORMED THAT THE SEAT BELT FAILED TO LOCK AND PROPERLY RESTRAIN HIM. THE VEHICLE WAS TOWED AND TOTALED. A POLICE REPORT WAS FILED. THE CONTACT RECEIVED INJURIES TO THE RIBS, CLAVICLE, AND SHOULDER, WHICH REQUIRED MEDICAL ATTENTION. THE APPROXIMATE FAILURE MILEAGE WAS 40,000. |
| 10995504 | BUICK | ENCORE | 2014 | 2017-06-15 | I TOOK MY VEHICLE INTO THE SERRA DEALERSHIP IN WASHINGTON, MI ON 3/20/17 TO HAVE THE FRONTAL AIRBAG AND PRETENSIONER NON DEPOY SAFETY RECALL (16007) REPAIRED. ON, 6/15/17, I WAS IN A CAR ACCIDENT TRAVELING AT ROUGHLY 50 MPH AND MY AIRBAGS DID NOT DEPLOY. A FORD F-150 TURNED INTO ONCOMING TRAFFIC WITHOUT LOOKING CAUSING THE FRONT OF MY VEHICLE TO CRASH INTO THE SIDE OF HER TRUCK. THE OTHER DRIVER WAS ISSUED THE CITATION FROM THE POLICE. MY BUICK ENCORE IS MOST LIKELY TOTALED (AWAITING CONFIRMATION ON THAT). |
| 10726387 | CADILLAC | SRX | 2014 | 2015-06-17 | I WAS IN A SEVERE CRASH AND SUFFERED A SEVERE CONCUSSION. MY RIBBON FLEW OFF MY HEAD WHEN I CAME TO, I DID LOSE CONSCIOUSNESS AND WOKE UP TO ON STAR TELLING ME MY VEHICLE WAS IN A CRASH. I HAVE SEVERE PAIN IN MY NECK SHOULDER, ABRASIONS TO THE LEFT SIDE OF MY BODY AND BRUISING. THE VEHICLE IS TOTALED BUT THE AIRBAG NEVER DEPLOYED AND IT SHOULD HAVE WITHOUT A DOUBT. THERE WAS SEVERE DAMAGE TO THE ENTIRE VEHICLE. |
| 10871604 | CADILLAC | SRX | 2014 | 2016-05-27 | TL* THE CONTACT OWNS A 2014 CADILLAC SRX. WHILE DRIVING 65 MPH, THE CONTACT LOST CONTROL OF THE VEHICLE AND IT VEERED OFF THE ROAD IN BOTH DIRECTIONS AND CRASHED. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT DID NOT SUSTAIN INJURIES. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO A DEALER WHERE IT WAS DIAGNOSED THAT THE REAR DRIVER SIDE CONTROL ARM NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED. THE VEHICLE WAS PREVIOUSLY REPAIRED UNDER NHTSA CAMPAIGN NUMBER: 14V571000 (SUSPENSION). THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 32,000. |
| 10615335 | CHEVROLET | EQUINOX | 2014 | 2014-05-24 | TL* THE CONTACT OWNS A 2014 CHEVROLET EQUINOX. THE CONTACT STATED THAT WHILE DRIVING 16 MPH, THE CONTACT CRASHED INTO THE DRIVER'S SIDE DOOR OF ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. THE CONTACT SUSTAINED CHEST, RIGHT KNEE, SHOULDER AND SPINE INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS UNKNOWN. |
| 10864509 | CHEVROLET | EQUINOX | 2014 | 2016-05-05 | I BOUGHT MY 2014 CHEVY EQUINOX NEW. I WAS IN CRASH WHICH I HIT A FULL SIZE CHEVY TRUCK IN THE DRIVER DOOR AND IT TOTALED MY CAR AND NOT ONE AIR BAG CAME. I WAS CROSSING EAST AND WEST THE TRUCK WAS GOING NORTH TO SOUTH |
| 10915132 | CHEVROLET | EQUINOX | 2014 | 2016-09-08 | WAS INVOLVED IN ACCIDENT 9/8/2016. IT WAS A TOTAL LOSS. FRONT END HEAVILY DAMAGED. AIRBAGS DID NOT WORK OR THE PASSENGER SIDE SEATBELT. DRIVING STRAIGHT AT INTERSECTION AND OTHER PARTY RAN RED LIGHT STRIKING THE LEFT FRONT AND CAUSING FRAME TO CRACK. |
| 11124021 | CHEVROLET | EQUINOX | 2014 | 2018-09-01 | I HIT A DEER ON SEPT. 1, 2018 AND MY AIRBAGS DIDN'T DEPLOY. |
| 11186171 | CHEVROLET | EQUINOX | 2014 | 2019-03-05 | VEHICLE WAS IN MOTION TRAVELING STRAIGHT GOING APPROXIMATELY 50MPH WHEN IT STRUCK ANOTHER VEHICLE THAT FAILED TO YIELD THE RIGHT OF WAY. THE EQUINOX SUFFERED EXTENSIVE FRONT END DAMAGE ON THE DRIVERS SIDE BUT NO AIRBAGS DEPLOYED. |
| 11376003 | CHEVROLET | EQUINOX | 2014 | 2020-11-16 | I WAS INVOLVED IN A CAR ACCIDENT ON NOVEMBER 16, 2020 AND NEITHER OF MY AIRBAGS DEPLOYED. |
| 10599029 | CHEVROLET | SILVERADO | 2014 | 2014-06-10 | MY WIFE & SISTER WERE RUN OFF THE ROAD . THEY WENT UP A DITCH & HIT A COLVURT . THE SEATBELTS DID NOT LOCK IN PLACE & AIR BAGS DID NOT INFLATE . THIS WAS A LOANER TRUCK FROM DEALER . IT WAS A 2014 4 DOOR CHEVY SILVERADO FROM LUCAS CHEVY IN COLUMBIA TN. 38401 . I THINK THE WAS SOME SORT OF TROUBLE WITH THIS HAPPENING . PLEAS CALL FOR COMPLETE INFO ON THIS . *TR |
| 10695408 | CHEVROLET | SILVERADO | 2014 | 2015-02-18 | TL* THE CONTACT OWNED A 2014 CHEVROLET SILVERADO. WHILE DRIVING APPROXIMATELY 60 MPH, THE CONTACT REACHED OVER TO TURN THE HEAT OFF AND THE VEHICLE WENT OFF THE ROAD, DOWN A HILL, AND INTO A DITCH. THE VEHICLE CONTINUED ON UNTIL IT CRASHED INTO A CABLE THAT WAS CONNECTED TO A TELEPHONE POLE. THE TELEPHONE POLE SPLIT IN HALF. THE SEAT BELT FAILED TO RESTRAIN THE CONTACT AND THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED INJURIES TO HIS BACK, KNEE, AND HIP THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED AND TOWED TO A LOT. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 7,956. |

| | | | | | |
|---|---|---|---|---|---|
| 10712235 | CHEVROLET | SILVERADO | 2014 | 2015-03-21 | TL* THE CONTACT OWNS A 2014 CHEVROLET SILVERADO. WHILE DRIVING AT APPROXIMATELY 70 MPH, THE VEHICLE STRUCK A DEER ON THE HIGHWAY. THE FRONT AND REAR BAGS FAILED TO DEPLOY. THERE WERE NO INJURIES AND A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS TAKEN TO A DEALER, BUT WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 8,000. |
| 11129851 | CHEVROLET | TRAVERSE | 2014 | 2018-09-15 | TL* THE CONTACT OWNS A 2014 CHEVROLET TRAVERSE. WHILE DRIVING 45 MPH, THE CONTACT CRASHED INTO THE REAR PASSENGER QUARTER PANEL OF A HONDA ACCORD. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE AIR BAG DID NOT DEPLOY. THE CONTACT SUSTAINED NECK AND BACK INJURIES, WHICH DID NOT REQUIRE MEDICAL ATTENTION. THE TWO OCCUPANTS OF THE HONDA SUSTAINED UNKNOWN INJURIES, WHICH REQUIRED MEDICAL ATTENTION AT THE SCENE. A POLICE REPORT WAS FILED. THE VEHICLE WAS TAKEN TO AN INDEPENDENT MECHANIC, BUT WAS NOT DIAGNOSED OR REPAIRED. THE LOCAL DEALER AND MANUFACTURER WERE NOT CONTACTED. THE FAILURE MILEAGE WAS APPROXIMATELY 62,000. THE VIN WAS NOT AVAILABLE. |
| 10909600 | GMC | TERRAIN | 2014 | 2016-09-18 | TL* THE CONTACT OWNED A 2014 GMC TERRAIN. THE CONTACT STATED THAT WHILE DRIVING AT APPROXIMATELY 10 MPH AND MAKING A LEFT TURN, ANOTHER VEHICLE CRASHED INTO THE VEHICLE HEAD ON. THE FRONTAL AIR BAGS DID NOT DEPLOY. THE POLICE AND FIRE DEPARTMENT WERE PRESENT. NO INJURIES WERE REPORTED. THE VEHICLE WAS DESTROYED AND TOWED TO A COLLISION LOT. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 27,448. |
| 10608599 | GMC | YUKON | 2014 | 2014-07-04 | I HAD A FRONT END COLLISION AT 25 MPH WITH A PARKED CAR. MY AIRBAG(S) DID NOT DEPLOY. THE ENTIRE FRONT END OF MY CAR WAS DESTROYED. THE HOOD WAS CRUMPLED AND BOTH FRONT QUARTER PANELS DAMAGED. THE FRONT DOORS ARE NOT EASILY OPENED DUE TO THE QUARTER PANEL DAMAGE. IT IS HARD FOR ME TO UNDERSTAND HOW AN IMPACT AT THE SPEED I WAS TRAVELING AND THE LOCATION OF IMPACT DID NOT CAUSE THE AIRBAG(S) TO DEPLOY. I HAD TO BE TRANSPORTED VIA AMBULANCE FROM THE SCENE AND SUFFERED A CONCUSSION FROM MY HEAD SLAMMING DOWN ON THE STEERING WHEEL. *JS |
| 10595132 | BUICK | ENCLAVE | 2013 | 2014-05-29 | TL* THE CONTACT OWNS A 2013 BUICK ENCLAVE. THE CONTACT STATED THAT WHILE TRAVELING 5 MPH, THE VEHICLE CRASHED HEAD-ON INTO ANOTHER VEHICLE AND THE AIR BAGS DID NOT DEPLOY. THE CONTACT WAS INJURED AND REQUIRED IMMEDIATE MEDICAL ATTENTION. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE AND CURRENT MILEAGE WAS 11,500. |
| 11352287 | CADILLAC | SRX | 2013 | 2020-08-27 | HEAD ON COLLISION AT 40 MPH ON A CITY STREET. AIR BAGS DID NOT DEPLOY AND SEAT MOVED FORWARD. RESULTING IN ER VISIT AND HEAD LACERATION AND LOSS OF CONSCIOUSNESS. |
| 10575764 | CHEVROLET | EQUINOX | 2013 | 2013-11-11 | HIT A DEER WITH FRONT END OF VEHICLE CAUSING APPROXIMATELY $6,000 IN DAMAGES. AIRBAGS DID NOT DEPLOY CAUSING CONCUSSION RECEIVED BY DRIVER. DRIVER IS STILL EXPERIENCING MEDICAL PROBLEMS DUE TO THIS ACCIDENT. *TR |
| 10667442 | CHEVROLET | EQUINOX | 2013 | 2014-12-14 | I WAS INVOLVED IN AN ACCIDENT THAT RESULTED IN DAMAGES OVER $14,000 TO THE FRONT END OF THE VEHICLE. THE AIR BAGS DID NOT DEPLOY. I HAVE CONTACTED GM TWICE THIS WEEK AND HAVE NOT YET SPOKEN TO ANYONE IN THEIR PRODUCT ASSISTANCE DEPARTMENT. *DT |
| 10958946 | CHEVROLET | EQUINOX | 2013 | 2016-11-23 | TL* THE CONTACT OWNED A 2013 CHEVROLET EQUINOX. WHILE DRIVING APPROXIMATELY 60 MPH, THE CONTACT'S VEHICLE CRASHED INTO A SECOND VEHICLE. THE FRONT END OF THE VEHICLE SUSTAINED SIGNIFICANT DAMAGE. THE AIR BAGS DID NOT DEPLOY. THE REAR PASSENGER SEAT OCCUPANT SUSTAINED A HEAD INJURY, WHICH REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS DESTROYED. A POLICE REPORT WAS FILED. THE FAILURE MILEAGE WAS 50,000. |
| 10993565 | CHEVROLET | EQUINOX | 2013 | 2017-05-09 | "TAMARA RECALL"  I'M WRITING REGUARDING AN ACCIDENT THAT TOTALED OUT MY VEHICLE BUT NONE OF MY AIR BAGS DEPLOYED ? I HIT A DEER AT 75-80 MPH ON A HWY IT HIT MY DRIVERS SIDE HEADLIGHT AND CONTINUED UP OVER MY HOOD AND ACTUALLY DENTED PART OF MY PASSENGER SIDE FENDER I COULDN'T EVEN OPEN THE DOOR ALL THE WAY! NONE OF MY AIR BAGS WENT OFF. LUCKILY I HAD MY SEAT BELT ON WHICH SOMETHING IN THE SEAT BELT BLEW WHEN IT LOCKED ME IN PLACE DUE TO THE IMPACT OF THE DEER HITTING JUMPING OUT AT ME A WARNING POPPED UP ON MY DASH BELIEVE SAID "LOCKED" BUT ALL HAPPENED SO FAST , IT PUSHED & CRACKED JUST ABOUT EVERYTHING UNDER MY HOOD. I HAD SMOKE COMING FROM MY VEHICLE, FLUIDS ON THE GROUND NO FIRE THANKFULLY ! MY SUV WAS TOTALED AND MANY HAVE QUESTIONED ME ABOUT THE AIR BAGS. I'M NOW WONDERING THE SAME THING. WHY IN THE WORLD DID NONE OF THESE GO OFF ? IF I WOULDN'T HAVE HAD MY SEAT BELT ON WHO KNOWS WHAT WOULD HAVE HAPPENED WITH THE AIR BAGS NOT GOING OFF I I'VE DONE RESEARCH I HAVEN'T SEEN ANY RECALLS, BUT I AM A LITTLE CONFUSED BY THIS! |

| | | | | | |
|---|---|---|---|---|---|
| 10576260 | CHEVROLET | SILVERADO | 2013 | 2014-03-18 | ON TUESDAY MARCH 18, 2014 I WAS DRIVING A 2013 CHEVY SILVERADO AND REAR ENDED A CHEVY TAHOE AT APPROXIMATELY 20 MPH WITHOUT HITTING MY BRAKES. CONDITIONS AT THE TIME WERE CLEAR AND DRY ALTHOUGH VERY WINDY. I WAS THE ONLY PASSENGER IN MY TRUCK. I WAS WEARING MY SEATBELT. I HIT THE STEERING WHEEL WITH MY CHEST. THE ONSTAR SYSTEM CALLED TO SAY THEY COULD SEE I WAS IN AN ACCIDENT AND HELP WAS ON THE WAY. I EXCHANGED INFO WITH THE OTHER DRIVER AND RETURNED TO MY VEHICLE. THE SEATBELT WAS IN THE EXTENDED POSITION AND WOULD NOT EXTEND FURTHER OR RETRACT. ON THE DISPLAY PANEL IT HAD AN 'AIRBAG DEPLOYED' ICON AND MESSAGE 'SERVICE AIRBAG'. MY INSURANCE COMPANY GAVE ME A AUTO REPAIR SHOP TO GO TO FOR AN ESTIMATE, HOWEVER, THE SHOP TOLD ME THEY WOULD NOT TOUCH THE VEHICLE UNTIL A GM REPRESENTATIVE INVESTIGATED THE SYSTEM FIRST AS THEY FELT THE SEATBELT SHOULD HAVE PREVENTED ME FROM HITTING THE STEERING WHEEL. I CALLED GM AND SPOKE WITH WALTER IN CUSTOMER SERVICE. HE ARRANGED TO HAVE A 'THIRD PARTY' INVESTIGATOR COME AND DO A INTERROGATION OF THE SYSTEM AND ARRANGED FOR A LOANER VEHICLE. RAYTHEON REPRESENTATIVE 'JEFF' CALLED ME SUNDAY MARCH 20 AND STATED HE WAS TO INTERROGATE THE SYSTEM AND WOULD CONTACT ME FROM THE AIRPORT WHEN HE GOT TO TOWN ON WEDNESDAY MARCH 23. ON WEDNESDAY MARCH 23 I CALLED JEFF TO SEE IF HE WAS IN TOWN AND HE STATED HE WAS AT THE AIRPORT 'LEAVING' TOWN, HE HAD DONE HIS INVESTIGATION AND DETERMINED EVERYTHING WORKED LIKE IT SHOULD. I ASKED HIM IF I WAS SUPPOSED TO HIT THE STEERING WHEEL AND HE STATED HE DID NOT AGREE OR DISAGREE.  *TR |
| 10598445 | CHEVROLET | SILVERADO | 2013 | 2014-06-08 | TL* THE CONTACT OWNS A 2013 CHEVROLET SILVERADO. THE CONTACT STATED WHILE DRIVING APPROXIMATELY 35 MPH A DRUNK DRIVER CRASHED INTO THE CONTACTS VEHICLE. THE AIR BAGS DID NOT DEPLOY. THE PASSENGER SUSTAINED A BROKEN FOOT AND WAS TAKEN TO THE HOSPITAL. THE APPROXIMATE FAILURE MILEAGE WAS 22,000. |
| 11055507 | CHEVROLET | TRAVERSE | 2013 | 2016-10-25 | ON OCT 25 OF LAST YEAR WE WERE INVOLVED IN A ACCIDENT WHERE WE HIT A CAR BROADSIDED DOING ABOUT 30 MPH CAUSING CONSIDERABLE DAMAGE TO OUR CAR, BOTH MY WIFE AND MYSELF HAD TERRIBLE WHIPLASHES AND I BELIEVE THAT SOME OF OUR PAIN COULD HAVE BEEN PREVENTED IF THE AIR BAGS WOULD HAVE DEPLOYED WHICH THEY DID NOT DO. WE WERE ON 4 LANE DIVIDED ROAD GOING THROUGH THE TOWN OF CHIEFLAND FL. WE WERE PASSING A SEMI TRUCK WHICH WAS SLOWING DOWN TO MAKE A TURN WHEN A VEHICLE CAME ACROSS THE FRONT OF THE TRUCK AND  CONTINUED TO COME INTO OUR LANE WITH NO REGARDS TO STOPPING AND WE HAD NO CHOICE OR TIME TO STOP. |
| 11093533 | CHEVROLET | TRAVERSE | 2013 | 2017-09-18 | HAVE HAD MY VEHICLE IN DEALER TO FIX AIR BAG LIGHT SEVERAL TIMES AND IT IS STILL ON. MY WIFE WAS INVOLVED IN AN ACCIDENT WHERE AIRBAGS SHOUD OF DEPLOYED AND DIDN'T. LUCKILY SHE WAS NOT INJURED. |
| 10556077 | GMC | TERRAIN | 2013 | 2013-12-13 | VEHICLE WAS INVOLVED IN A SEVERE ACCIDENT WHERE THE OTHER DRIVER RAN A STOP SIGN AND HIT TERRAIN CAUSING SEVERE FRONT END AND ENGINE DAMAGE. AIR BAGS FAILED TO DEPLOY. INJURES INCLUDED WERE NECK AND BACK. DAMAGE WAS SEVERE ENOUGH TO CAUSE AIRBAGS TO DEPLOY BUT NEVER DID. HAVING AN INDEPT INSPECTION CONDUCTED AS TO WHY THEY NEVER DEPLOYED.  *TR |
| 10895896 | GMC | TERRAIN | 2013 | 2016-08-15 | WAS DRIVING DOWN HIGHWAY US19 AND COLLIDED WITH ANOTHER VEHICLE AT AT LEAST 40MPH AND AIRBAGS DID NOT DEPLOY |
| 11222110 | BUICK | ENCLAVE | 2012 | 2019-06-21 | I WAS IN A COLLISION ON 6/21/2019 THAT HAD SEVERE FRONT END OBSTRUCTIONS AND WITH A STRONG TOTAL LOSS AS A RESULT. MY AIRBAGS NEVER DEPLOYED. THE VEHICLE WAS IN MOTION ON ASSEMBLY STREET, COLUMBIA SC. |
| 10576031 | CADILLAC | SRX | 2012 | 2014-03-23 | I FELL ASLEEP WHILE DRIVING, JUMPED A LEVEE, RAN THROUGH A FENCE, AND WRECKED IN A GRASSY WATERY AREA.  MY ENGINE WAS SMASHED, THE MOTOR MOUNT BROKE, AND MY TIRES ARE PUSHED BACK.  MY AIR BAGS DID NOT DEPLOY.  MY FACE HIT THE STEERING WHEEL AND MY NOSE IS BROKEN.  I WOULD LIKE TO FIND OUT IF THERE IS ANY RECALLS ON THIS CAR.  *TR |
| 10576905 | CADILLAC | SRX | 2012 | 2014-03-27 | VEHICLE DRIVER AIR BAG DID NOT DEPLOY, NOR ANY OTHER AIR BAG, UPON COLLISION TO REAR OF A STOPPED PICK UP TRUCK. SPEED OF OFFENDING VEHICLE WAS APPROXIMATELY 45 MPH. DRIVER SUFFERED CHEST INJURY FROM SEAT BELT. DAMAGE ESTIMATED TO FRONT END EXCEEDS $10,000.  *TR |
| 10682471 | CADILLAC | SRX | 2012 | 2014-12-14 | MVA WITH TWO IMPACTS; FRONT DRIVER SIDE (SIGNIFICANT IMPACT) AND FRONT OF VEHICLE  NO AIRBAGS DEPLOYED.  *TR |
| 10993443 | CADILLAC | SRX | 2012 | 2017-05-31 | TWO CARS AHEAD OF ME WAS GOING STRAIGHT AND ALL OF A SUDDEN TURNED INTO A STRIP MALL WITHOUT INDICATOR, THE CAR IN FRONT OF ME SLAMMED ON THEIR BRAKES AND SO DID I, BUT I STILL ENDED UP REAR ENDING THE VEHICLE IN FRONT. I THINK MY SPEED WAS AROUND 30 AT THE TIME OF IMPACT. I HIT MY CHIN TO THE STEERING WHEEL, GOT MULTIPLE CUTS INSIDE OF MY MOUTH, AND COUPLE OF THEM ON MY FACE WHICH REQUIRED STITCHES.  MY AIR BAG DID NOT DEPLOY AND NEITHER THE SEATBELT PREVENTED IT, WHICH I THOUGHT WAS ODD. CHECKED WITH CADILLAC IF HEY WERE AWARE OF ANY PROBLEM WITH THE CAR. THEY DENIED THE EXISTENCE OF SUCH AN ISSUE. SO I WANT TO GET THE VEHICLE INVESTIGATED, SO THAT NOBODY ELSE SHOULD GET HURT THE WAY I DID; ALSO I HAVE ANOTHER CADILLAC AND NEED TO KNOW. WILL REALLY APPRECIATE IT. THANKS |

| | | | | | |
|---|---|---|---|---|---|
| 11138938 | CADILLAC | SRX | 2012 | 2018-06-25 | ON 6/25/18, MY WIFE WAS TRAVELING 45 MPH., IN OUR 2012 CADILLAC SRX. THE VEHICLE IN FRONT OF HER WENT TO MAKE A LEFT TURN INTO A SUBDIVISION. BUT, THEN DECIDED NOT TO DO THAT AND PULLED BACK INTO THE LANE OF MY WIFE. SHE SLAMMED ON HER BRAKES, TO AVOID HITTING THE VEHICLE. HOWEVER, SHE COULDN?T ANTICIPATE THEIR MOVE. SHE HIT THEM FROM BEHIND, GOING 45MPH. SHE HIT HER FOREHEAD ON THE VISOR BAR TWICE, CAUSING A SKULL FRACTURE, BRAIN BLEED, SEVER CONCUSSION, DEEP LACERATIONS, A BURST ARTERY IN HER FOREHEAD TO WHERE SHE WAS BLEEDING HEAVILY AND UNCONSCIOUS. HER CHEST HIT THE STEERING WHEEL, WHICH BADLY BRUISED HER RIBS, CAUSING A HIATAL HERNIA, DUE TO THE IMPACT. SHE SUFFERED LACERATIONS TO HER LEFT ARM, KNEE AND HAS RUPTURED DISCS IN HER CERVICAL SPINE. SHE WAS ICU FOR SEVERAL DAYS DUE TO THE BRAIN BLEED AND HEAD INJURIES SHE SUSTAINED. OUR AIR BAG NEVER DEPLOYED AND THE DRIVER SEAT BELT DIDN?T LOCK ON IMPACT, ALLOWING HER TO BOUNCE UPWARD TWICE AND SUSTAINED THE HEAD INJURIES. THE CADILLAC AIR BAGS AND SEAT LOCKING MECHANISMS FAILED TO PROTECT HER FROM INJURIES SHE SHOULD HAD NEVER HAD. SOMEONE NEEDS TO RESEARCH FURTHER THESE ISSUES FOR THE 2012 SRX SO OTHER CONSUMERS DON?T FEEL SAFE IN A VEHICLE, WHERE THE  SAFETY MECHANISMS FAIL. CADILLAC SHOULD NOT BE ABLE TO GET AWAY WITH THIS. SHOULD THE 2012 SRX HAVE A RECALL ON AIR BAGS AND SEAT BELT LOCKING MECHANISMS FAILING? MORE THAN ONE COMPLAINT HAS BEEN POSTED, SO I HOPE THE NHTSA INVESTIGATES THIS FOR US ALL. PLEASE CONSIDER THIS A FORMAL COMPLAINT! THANK YOU,  AND PLEASE FOLLOW UP!  *TR |
| 10546238 | CHEVROLET | EQUINOX | 2012 | 2013-09-20 | I WAS TRAVELING SOUTH AS ANOTHER CAR WAS TRAVELING NORTH. THE CAR TRAVELING NORTH MADE A RAPID LEFT TURN DIRECTLY IN MY TRAVELING PATH.  WE COLLIDED AND MY CAR WAS TOTALED. I HIT THE STEERING WHEEL PRETTY HARD BECAUSE THE AIRBAG DID NOT DEPLOY.  HOW. SHOULD I PROCEED?  *TR |
| 10979985 | CHEVROLET | EQUINOX | 2012 | 2017-03-31 | I WAS INVOLVED IN AN ACCIDENT WHERE I REAR ENDED A STOPPED VEHICLE. MY CRUISE WAS SET AT 57 MPH AND I DID NOT APPLY BRAKES. BECAUSE CRUISE WAS SET, I HIT ONCE, BOUNCED BACK AND HIT AGAIN. MY AIRBAGS DID NOT DEPLOY AT ALL. THE VEHICLE HAS EXTENSIVE DAMAGE TO THE FRAME BUT NO AIRBAG DEPLOYMENT. |
| 11329614 | CHEVROLET | EQUINOX | 2012 | 2020-05-31 | TL* THE CONTACT OWNED A 2012 CHEVROLET EQUINOX. THE CONTACT STATED THAT WHILE HER HUSBAND WAS DRIVING ABOUT 25 MPH, HE SUFFERED A MEDICAL CONDITION AND LOST CONTROL OF THE VEHICLE, CRASHING INTO A THREE FEET HIGH CEMENT BOULDER. THE AIR BAGS DID NOT DEPLOY. BOTH THE DRIVER AND THE FRONT PASSENGER SUSTAINED INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE DRIVER AND THE PASSENGER HAD THEIR SEAT BELTS LATCHED AT THE TIME OF THE CRASH. THE VEHICLE WAS TOTALED AND WAS TOWED TO A TOW YARD. THE DEALER AND THE MANUFACTURER WERE NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 133,000. |
| 10790202 | CHEVROLET | SILVERADO | 2012 | 2015-09-30 | RECENTLY I WAS INVOLVED IN AN ACCIDENT THAT WAS A DIRECT IMPACT. AT THE TIME OF THIS ACCIDENT THE SEAT BELT DID NOT LOCK NOR DID THE AIR BAGS DEPLOY.  THE SPEED FROM THIS ACCIDENT WAS BETWEEN 50-55 MPH ON THE HIGHWAY. AT THE RATE OF SPEED I WAS GOING BEFORE THE ACCIDENT AND THE FACT THAT I HAD TO  SLAM ON THE BREAKS TO BEGIN SLOWING DOWN ONE WOULD HAVE THOUGHT THE SEAT BELT WOULD HAVE LOCKED BUT IT DID NOT AND AT THE POINT OF IMPACT I WAS VERY SURPRISED THAT THE AIRBAGS DID NOT DEPLOY BUT YET THE SYSTEM INDICATED THAT IT DID AND NEEDED TO BE RESET.  HOWEVER NOW THAT THE VEHICLE IS IN PROCESS OF BEING REPAIRED I AM BEING TOLD THAT THE ENTIRE AIRBAG SYSTEM HAS TO BE REPLACED ALONG WITH THE DRIVER SEAT BELT. |
| 10622016 | CHEVROLET | TAHOE | 2012 | 2014-08-09 | WHILE TURNING LEFT (TAHOE) WITH A PROTECTED GREEN ARROW AT AN X-SHAPED INTERSECTION, VEHICLE (KIA SEDAN) AT FAULT FAILED TO YIELD AND ENTERED THE INTERSECTION AT SPEEDS UPWARDS OF 40 MPH FROM THE LEFT OF THE TAHOE.  FRONT-IMPACT COLLISION OCCURRED; DUE TO THE SHAPE OF THE INTERSECTION AND THE VELOCITY OF THE IMPACT, TAHOE STRUCK PASSENGER SIDE OF KIA SEDAN. TRAJECTORY OF IMPACT CAUSED DIRECTIONAL CHANGES IN UPWARDS OF 90° FOR BOTH VEHICLES; THE FORCE OF THE PRIMARY ACCIDENT DESCRIBED ABOVE ALSO CAUSED MENTIONED VEHICLES TO COLLIDE WITH LEFT-REAR OF ANOTHER VEHICLE (HONDA SEDAN), CAUSING NEAR 360° ROTATION OF THE HONDA SEDAN.  DUE TO THE FORCE OF IMPACT, FRONT & SIDE AIRBAGS DEPLOYED ON BOTH THE KIA SEDAN AND THE HONDA SEDAN, BUT FAILED TO DEPLOY ON THE TAHOE.  SCENE INDICATED THAT THE KIA SEDAN MADE NO ATTEMPT TO BRAKE OR DECREASE SPEED PRIOR TO COLLISION; POSTED SPEED LIMIT AT INTERSECTION IS 40 MPH.  FORCE WAS SUCH THAT AFTER THE COLLISION, TAHOE TRANSMISSION WAS IN DRIVE, BUT REMAINED AT A COMPLETE STOP.  DAMAGE SUSTAINED ON THE TAHOE INCLUDE FRONT-END BODY DAMAGE, ENGINE DAMAGE (VEHICLE REQUIRED TOWING AND WAS INOPERABLE), AND FRAME DAMAGE, AT A MINIMUM.  IN ADDITION, ENGINE SERVICE LIGHTS AS WELL AS ONSTAR VEHICLE DIAGNOSTIC REPORTS INDICATE THAT THE AIRBAG SYSTEM, ANTILOCK BRAKING SYSTEM, AND THE STABILITRAK STABILITY CONTROL SYSTEM ALSO SUSTAINED DAMAGE AND REQUIRE ATTENTION.  MULTIPLE FIRST-RESPONDERS COMMENTED ON THE ODDITY THAT, GIVEN THE DAMAGE SUSTAINED BY THE TAHOE AND THE VELOCITY AT IMPACT, THE AIRBAGS DEPLOYED ON ALL VEHICLES BUT THE TAHOE.  *TR |

| 11194940 | CHEVROLET | TAHOE | 2012 | 2018-03-19 | I WAS DRIVING WEST BOUND ON 176TH ST AND AS I APPROACHED THE LIGHT I COULD NOT BRAKE OR TURN MY CAR TO THE RIGHT IN WHICH I HAD A HEAD ON COLLISION WITH ANOTHER VEHICLE. ON IN PACKED MY AIRBAGS DID NOT DEPLOY! THE DRIVER OF THE OTHER VEHICLE EVEN TOLD THE OFFICER HE WAS TRYING TO TURN , HIS EYES WERE AS BIG AS A COWS CLEARLY HE WAS IN DISTRESS.  LUCKILLY NEITHER OF US WERE INJURED. |
| 11278797 | CHEVROLET | TAHOE | 2012 | 2018-08-24 | AS I WAS DRIVING ON 176TH GETTING READY TO TURN ON SPANAWAY LOOP MY WOULDN'T COMPLETE THE RIGHT TURN OR STOP SO I HAD A HEAD ON COLLISION WITH ANOTHER TRUCK AND MY AIR BAGS DIDN'T DEPLOY. |
| 10885565 | CHEVROLET | TRAVERSE | 2012 | 2016-06-30 | THE DRIVER STEERING WHEEL FRONT AIRBAG DID NOT DEPLOY WHEN I HIT ANOTHER VEHICLE FROM BEHIND. WHEN WE RECEIVED THE LETTER ABOUT RECALL WE BROUGHT THE VEHICLE INTO SERVICE CHEVROLET IN LAFAYETTE, LA. |
| 10882239 | GMC | ACADIA | 2012 | 2016-06-14 | MY WIFE AND THREE DAUGHTERS, AGES 11, 9, AND 6, WERE INVOLVED IN A MAJOR CRASH.  AN ELDERLY MALE TRAVELED THRU A STEADY RED TRAFFIC SIGNAL AND STRUCK THE PASSENGER SIDE OF MY WIFE'S VEHICLE AS SHE WAS CROSSING THE INTERSECTION WITH A GREEN TRAFFIC SIGNAL. AFTER IMPACT, THEY WERE PUSHED HEAD ON INTO A TRAFFIC STANDARD (WHICH WAS TAKEN OUT COMPLETELY) AND THEN INTO A TELEPHONE POLE, ALSO HEAD ON.  NOT ONE AIRBAG DEPLOYED.  THE VEHICLE IS SUPPOSEDLY EQUIPPED WITH FRONT AND SIDE AIRBAGS.  IN MARCH OF 2014 THERE WAS A RECALL CONCERNING THE AIRBAGS NOT DEPLOYING IN THESE VEHICLES (# 14V118000).  I HAVE OWNED THIS VEHICLE SINCE NEW AND DID RETURN IT TO THE DEALERSHIP.  IN MAY OF 2014 FOR THE RECALL SHORTLY AFTER RECEIVING NOTIFICATION.  I WAS ADVISED THAT IT WAS TAKEN CARE OF. |
| 10925628 | GMC | ACADIA | 2012 | 2016-09-27 | THE VEHICLE WAS IN MOTION  NEAR AN INTERSECTION AND  APPROACHING THE LIGHT TO TURN. ( NEAR AIRPORT IN RALEIGH NC)  THE FRONT AND SIDE AIRBAGS FAILED TO DEPLOY DURING  THE CRASH. THE OTHER VEHICLE HAS BEEN DECLARED TOTAL LOSS AND MINE HAS SIGNIFICANT DAMAGE AND COULD BE CLASSIFIED AS TOTAL LOSS. THERE ARE PERSONAL INJURIES. I AM ATTACHING PICTURES OF THE VEHICLE AND ACCIDENT REPORT. |
| 10466384 | GMC | TERRAIN | 2012 | 2012-04-16 | ?ON APRIL 16TH OUR SON WAS DRIVING ON FAIRVIEW RD. AND TRAVELING THROUGH A GREEN LIGHT WHEN A CAR THAT RAN A RED LIGHT HIT HIM.  ?HIS CAR ? A GMC 2012 TERRAIN WAS HIT MULTIPLE TIMES ? DRIVER'S FRONT END, FRONT END AND SPUN AROUND FROM THE FORCE AND HIT ON THE PASSENGER SIDE. NO AIRBAGS DEPLOYED  ?[XXX] WAS IMMEDIATELY CONTACTED BY ON STAR, THEY CALLED POLICE. HIS CAR WAS TOTALED.  ?ON 4/21 I EMAILED GMC AND ASKED WHAT DEPARTMENT I WOULD CONTACT TO FILE A COMPLAINT ABOUT THE FRONT AND SIDE AIRBAGS NOT DEPLOYING  CALL FROM GMC 866-790-5700  EXT. 22745 SAID ON VOICE MAIL ? THE AIRBAG DID NOT DEPLOY AS IT SHOULD HAVE? HE MADE A CASE NUMBER [XXX]. GMC HAS SINCE DECLARED THIS WAS A LOW THRESHOLD EVENT - NO NEED FOR AIRBAG DEPLOYMENT - YET THE CAR WAS TOTALED AND OUR SON HAS WHIPLASH AND CONTUSIONS.  INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6).  *TR |
| 10477166 | GMC | TERRAIN | 2012 | 2012-09-04 | TL* THE CONTACT OWNS A 2012 GMC TERRAIN. THE CONTACT STATED THAT HE FELL ASLEEP WHILE DRIVING AN UNKNOWN SPEED. THE VEHICLE TRAVELED TO THE RIGHT SIDE OF THE ROAD AND WENT AIRBORNE APPROXIMATELY 20 FEET, LANDING ON ALL FOUR TIRES. THE VEHICLE THEN TRAVELED APPROXIMATELY 200 FEET AND CRASHED INTO AN EMBANKMENT. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED A FRACTURED BACK AS A RESULT. A POLICE OFFICER WITNESSED THE INCIDENT AND FILED A REPORT. THE VEHICLE WAS DESTROYED AND TOWED TO A COLLISION CENTER. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAULTY AIR BAGS. THE APPROXIMATE FAILURE MILEAGE WAS 7,000.  UPDATED 10/16/12*LJ |
| 10516265 | GMC | TERRAIN | 2012 | 2013-06-08 | VEHICLE WAS INVOLVED IN A CAR ACCIDENT AND CRASHED INTO A BRIDGE IRON BEAM HEAD-ON. VEHICLE'S AIR BAGS FAILED TO DEPLOY. HOOD AND FRONT OF CAR SMASHED AS VEHICLE WAS WRAPPED AROUND BEAM.  ONLY MINOR INJURIES TO DRIVER, AS DRIVER WAS WEARING A SEATBELT.  *TR |
| 10583703 | GMC | TERRAIN | 2012 | 2014-03-13 | I INADVERTENTLY VEERED OFF SIDE ROADWAY, (VA HIGHWAY 220) COLLIDING WITH A TREE/ROADSIDE SHRUBS, ETC (WAS KNOCKED UNCONSCIOUS AS FOREHEAD HIT STEERING WHEEL ON INITIAL IMPACT). AIRBAGS DID NOT DEPLOY ALLOWING ME TO SUSTAIN A HEAD INJURY THAT KNOCKED ME UNCONSCIOUS... FOREHEAD WAS GASHED WITH SIGNIFICANT BLEEDING. I WAS TRANSPORTED BY AMBULANCE IN UNCONSCIOUS STATE.  DAMAGE TO VEHICLE IS IN EXCESS OF $8,000 SO FAR AS VEHICLE STILL IN REPAIR SHOP WITH MASSIVE FRONT END DAMAGE THAT AFFECTS STEERING LINKAGE, ETC. THE IMPACT OF VEHICLE AGAINST FOUAGE, TREES SHRUBS, SHOULD HAVE FORCED AIR BAGS TO DEPLOY AND I BELIEVE THAT I WOULD NOT HAVE SUSTAINED A HEAD INJURY THAT RENDERED ME UNCONSCIOUS WITH MILD CONCUSSION AND COULD NOT CONTROL VEHICLE LEAVING ROADWAY.  *TR |

| | | | | | |
|---|---|---|---|---|---|
| 10588334 | GMC | TERRAIN | 2012 | 2014-03-13 | VEERED OFF SIDE OF HIGHWAY, STRUCK SOMETHING HEAD-ON AND WAS RENDERED UNCONSCIOUS AS HEAD HIT STEERING WHEEL. I WAS TRANSPORTED UNCONSCIOUS IN AMBULANCE FROM CRASH SCENE TO LOCAL HOSPITAL, WHERE I WAS AN INPATIENT FOR TWO DAYS. EXTENSIVE DAMAGE TO FRONT OF VEHICLE INDICATED THE SEVERITY OF IMPACT... YET AIR BAGS DID NOT DEPLOY. I BELIEVE AIR BAGS SHOULD HAVE DEPLOYED ON IMPACT AND I WOULD NOT HAVE BEEN RENDERED UNCONSCIOUS, AND COULD HAVE CONTROLLED VEHICLE TO AVOID STRIKING TREE, BRUSH, ETC. I CONTACTED GMC CORPORATE... TO ADVISE MY CONCERNS FOR SAFETY... RECEIVED A FOLLOW UP TELEPHONE CALL FROM GMC REPRESENTATIVE... (HE) EXPRESSED NO INTEREST IN MY COMPLAINT... REFUSED TO COMMENT ON MY STATEMENT THAT AIR BAG FAILED TO DEPLOY RESULTING IN EXTENSIVE DAMAGE TO FRONT OF VEHICLE AND SUSTAINING A HEAD INJURY AS NO BAG DEPLOYED. NO MATTER THAT I AM LEASING THE VEHICLE AND FEAR FOR MY SAFETY... I WAS ADVISED THAT GMC HAD NO FURTHER INTEREST IN THIS MATTER AND WOULD NOT EVALUATE MY SAFETY CONCERNS. *TR |
| 10722057 | GMC | TERRAIN | 2012 | 2015-05-19 | CAR CRASH AT 45 MPH. FRONT IN DAMAGE AND AIR BAG DID NOT DEPLOY. SEATBELTS DID NOT LOCK UP. |
| 10924918 | GMC | TERRAIN | 2012 | 2016-11-06 | I WAS TRAVELING ABOUT 75MPH WHEN A DEER RAN INFRONT OF ME, I WASN'T ABLE TO STOP COMPLETELY AND HIT THE DEER ON MY RIGHT FRONT SIDE OF MY VEHICLE. THE SMELL OF SMOKE CAME FROM MY VEHICLE AND MY "SERVICE AIRBAGS" INDICATOR CAME ON. NO AIRBAGS DEPLOYED. I HAD MY 6 YEAR OLD SON IN THE CAR WITH ME!! MY CAR ISN'T DRIVABLE DUE TO THE SIGNAL BEING ON EVEN THOUGH THE AIRBAGS DIDN'T DEPLOY. |
| 11088412 | GMC | TERRAIN | 2012 | 2016-04-21 | TL* THE CONTACT OWNED A 2012 GMC TERRAIN. WHILE DRIVING AT AN UNKNOWN SPEED, THE DRIVER CRASHED INTO A LANDSCAPING TRUCK. THE AIR BAGS FAILED TO DEPLOY. THERE WERE NO INJURIES. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO A TOW LOT AND DEEMED DESTROYED. THE DEALER WAS NOT CONTACTED TO DETERMINE THE CAUSE OF THE AIR BAG FAILURE. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS UNKNOWN. |
| 11219747 | GMC | TERRAIN | 2012 | 2019-06-12 | TL* THE CONTACT OWNS A 2012 GMC TERRAIN. THE CONTACT STATED THAT WHILE HER GRANDSON WAS DRIVING APPROXIMATELY 40-45 MPH, A DEER JUMPED INTO THE FRONT OF THE VEHICLE CAUSING SEVERE DAMAGE TO THE FRONT END OF THE VEHICLE BUT THE AIR BAGS DID NOT DEPLOY. THE CONTACT MENTIONED THAT THE RADIATOR WAS PUSHED INTO THE ENGINE. THE CONTACT SUSTAINED WHIPLASH INJURIES THAT DID NOT REQUIRE MEDICAL ATTENTION. A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS TOWED. THE CAUSE OF THE FAILURE WAS NOT DETERMINED BY THE INDEPENDENT MECHANIC. THE LOCAL DEALER WAS NOT NOTIFIED OF THE FAILURE. THE MANUFACTURER WAS CONTACTED AND A CASE WAS OPENED BUT NO ASSISTANCE WAS OFFERED. THE FAILURE MILEAGE WAS 103,000. *AS *AS |
| 10573780 | BUICK | ENCLAVE | 2011 | 2012-10-10 | TURNED CORNER ON IRONWOOD46615 AND REAR ENDED CAR THAT STOPPED SUDDENLY. CRUSHED MY FRONT END BACK TO PUNCTURING THE RADIATOR. NO AIR BAG DEPLOYED AND NO SEAT BELT ON IMPACT. MY KNEES HIT THE DASH UNDER THE STEERING WHEEL. NO ONSTAR AS NO AIRBAG DEPLOYED. HOLDING STEERING WHEEL WAS MY ONLY DETERRENT TO HITTING FORWARD. REPAIRS COST $5000.+ AND GM DEALER INSISTED AIRBAG AND SEAT BELT WERE FUNCTIONING. KNEES STILL HURT. AND SEEN DOCTOR ABOUT KNEES AND GOING AGAIN SOON. I AM REPORTING THIS AFTER HEARING THAT THERE ARE RECALLED ON SEAT BELTS AND AIRBAGS ON DRIVER SIDE. *TR |
| 10608978 | BUICK | ENCLAVE | 2011 | 2014-06-30 | TL* THE CONTACT OWNS A 2011 BUICK ENCLAVE. THE CONTACT STATED WHILE DRIVING AT UNKNOWN SPEED, THE VEHICLE CRASHED INTO A DEER CAUSING THE VEHICLE TO CATCH ON FIRE AND THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE AND CURRENT MILEAGE WAS 56,000. PAM. UPDATED 11/24/14*LJ  UPDATED 8/17/2015*JS |
| 10732977 | BUICK | ENCLAVE | 2011 | 2015-07-04 | DRIVING DOWN THE ROAD ON A 50MPH ZONE AND A VEHICLE PULLED OUT IN FRONT OF US. OUR CAR T-BONED THE CAR THAT PULLED IN FRONT OF US. EVERYONE HAD THERE SEATBELTS ON BUT THE FRONT AIRBAGS NEVER DEPLOYED. I DONT UNDERSTAND WHY THEY WOULDNT HAVE DEPLOYED WHEN WE HIT THE OTHER CAR AT AT LEAST 40MPH AFTER SLAMMING ON THE BREAKS. |
| 10654934 | CADILLAC | SRX | 2011 | 2014-10-23 | I WAS TURNING SOUTH WITH A GREEN ARROW WHEN THE SECOND DRIVER RAN A RED LIGHT TRAVELING EAST AND WE COLLIDED. HE WAS TRAVELING AT APPROXIMATELY 40-45 MILES PER HOUR AND I WAS TRAVELING AT APPROXIMATELY 30 MILES AN HOUR. OUR IMPACT WAS SOMEWHAT OF A T-INCIDENT WITH THE FRONT END OF MY CAR DAMAGED AND HIS CAR ON THE DRIVER'S SIDE DAMAGED. MY AIR BAGS DID NOT INFLATE, EVEN THOUGH WE BELIEVE THE IMPACT WAS AT THE ANGLE AND THE REQUIRED SPEED OF VEHICLES TO INFLATE THEM. THE AIR BAGS IN THE SECOND DRIVER'S CAR (FORD FOCUS) DID INFLATE. *TR |
| 10679589 | CADILLAC | SRX | 2011 | 2015-01-08 | TL* THE CONTACT OWNED A 2011 CADILLAC SRX. WHILE DRIVING 35 MPH, THE CONTACT CRASHED INTO ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY AND THE FRONT PASSENGERS SIDE SEAT BELT WAS LOOSE. A POLICE REPORT WAS FILED AND THREE UNKNOWN INJURIES WERE REPORTED. THE CONTACT DID NOT DISCLOSE IF MEDICAL ATTENTION WAS REQUIRED OR NOT. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 60,000. |

| | | | | | |
|---|---|---|---|---|---|
| 11192908 | CADILLAC | SRX | 2011 | 2018-12-19 | I WAS INVOLVED IN AN ACCIDENT, I RAN INTO A VEHICLE THE DAMAGE WAS TO THE FRONT OF THE CAR . THE AIRBAGS DIDNT DEPLOY OR THE SENSORS OF THE FRONT OF MY CAR DID NOT GO OFF EITHER. |
| 10391449 | CHEVROLET | EQUINOX | 2011 | 2011-03-10 | I WAS RECENTLY IN A PRETTY BAD FRONT END VEHICLE ACCIDENT GOING ABOUT 45 MPH WHEN I REAR ENDED SOMEONE. MY CAR HAS BEEN TOTALED DO TO THE DAMAGE TO THE FRONT END OF THE VEHICLE. MY AIR BAGS DID NOT DEPLOY IN THIS ACCIDENT, EVERYONE ONE I HAVE TALKED TO FROM THE TOWING COMPANY TO THE PARAMEDIC ON SEEN SAID THAT IT SHOULD HAVE DEPLOYED. |
| 10449809 | CHEVROLET | EQUINOX | 2011 | 2012-01-23 | 2011 CHEVROLET EQUINOX. CONSUMER STATES AIRBAGS DID NOT DEPLOY DURING CRASH. *TGW THE CONSUMER STATED ANOTHER VEHICLE PULLED OUT IN FRONT OF HIM FROM A SIDE STREET, ON HIS RIGHT SIDE, WHICH RESULTED IN THE CONSUMER HITTING THE OTHER VEHICLE, WHEN THAT VEHICLE FAILED TO STOP AT A STOP SIGN. THE CONSUMER STATED THE ENTIRE FRONT END OF THE VEHICLE WAS DESTROYED. *JB |
| 10552442 | CHEVROLET | EQUINOX | 2011 | 2013-07-31 | AIR BAGS DID NOT DEPLOY AT OR ABOVE THE MFG. THRESHOLDS,WHICH CAUSED FOR NO AIR BAG DEPLOYMENT AND SIGNIFICANT FACIAL TRAUMA ON THE STEERING WHEEL. SEAT BELT PRETENSIONERS ALSO DID PRETENSION CAUSING THE UPPER TORSO TO GO FORWARD AND CAUSE THE FACIAL TRAUMA ON THE STEERING WHEEL. *TR |
| 10682338 | CHEVROLET | EQUINOX | 2011 | 2015-01-29 | WHILE CHANGING LANES DURING AN ICE STORM, THE VEHICLE'S BACK END LET LOSE AND THE DRIVER LOST CONTROL AND SLIDE INTO THE MEDIA AT WHICH TIME THE VEHICLE WAS PROJECTED INTO THE GUARDRAIL HEAD ON. NEITHER FRONT AIRBAGS DEPLOYED NOR DID ANY OF THE AIRBAGS DEPLOY. *TR |
| 10721958 | CHEVROLET | EQUINOX | 2011 | 2015-05-09 | TL* THE CONTACT OWNS A 2011 CHEVROLET EQUINOX. THE CONTACT WAS INVOLVED IN A FRONTAL CRASH. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS NOT FILED AND NO INJURIES WERE SUSTAINED. THE VEHICLE WAS DECLARED DESTROYED BY THE INSURANCE COMPANY. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 58,000. |
| 10949808 | CHEVROLET | EQUINOX | 2011 | 2017-01-31 | INVOLVED IN AN ACCIDENT WHERE I COLLIDED WITH ANOTHER CAR . THE FRONT END OF MY CAR WAS COMPLETED DAMAGED TO THE POINT WHERE THE CAR WAS TOTALED. THE PROBLEM WITH THIS ACCIDENT WAS THE AIR BAGS DID NOT GO OFF CAUSING INJURY TO MYSELF AND MY WIFE. I ESTIMATE THE SPEED AT COLLISION TO BE AROUND 30MPH. I WAS TRAVELING WEST BOUND AT ABOUT 630PM IN THE EVENING, ON A FOUR LANE CITY ROAD WITH A CENTER TURN LANE. I WAS IN MY LANE AND FAILED TO STOP BEFORE HITTING THE CAR IN FRONT OF ME. MY WIFE SPOKE WITH THE REPAIR SHOP CLERK WHO INFORMED THAT THIS WAS A COMMON ISSUE WITH MANY EQUINOX'S UNDER THE SAME CONDITIONS. I BELIEVE THE AIR BAGS SHOULD HAVE GONE OFF AND THEREFORE I |
| 11010876 | CHEVROLET | EQUINOX | 2011 | 2017-06-09 | JUNE 9, 2017 AT 10:00 PM I HIT A DEER ON SOUTH DAKOTA HWY 11 IN LINCOLN COUNTY. THE SPEED LIMIT WAS 65 MPH AND I WAS GOING 68 MPH WHEN I HIT THE DEER HEAD ON. I DROVE OVER TO THE SIDE OF THE ROAD AND THE VEHICLE STOPPED. AFTER A FEW MINUTES MY WIFE AND I SMELLED BURNING ELECTRICAL WIRE. WE GOT OUT OF THE CAR AND STARTED TO WALK AWAY AND WITHIN 10 MINUTES THE WHOLE THING WENT UP IN FLAMES. THE CAR WAS TOTALED AND THE AIRBAGS DID NOT GO OFF. IF WE WOULD HAVE WENT IN THE DITCH AND BEEN UNCONSCIOUS WE WOULD HAVE BURNT UP WITH THE VEHICLE. THERE IS NO REASON THAT VEHICLE SHOULD HAVE STARTED ON FIRE. GMC WILL NOT ACKNOWLEDGE THAT THERE WAS ANYTHING WRONG WITH THE VEHICLE. |
| 11189908 | CHEVROLET | EQUINOX | 2011 | 2019-03-08 | VECHICAL WAS INVOLVED IN A CRASH, REAR ENDED ANOTHER VEHICLE. VECHICAL WAS TOTALED. AIRBAGS NEVER WENT OFF. ON A HIGHWAY ABOUT 50-60 MPH. |
| 10607261 | CHEVROLET | SILVERADO | 2011 | 2014-02-14 | MY VEHICLE WAS FORCED OFF THE ROAD BY ANOTHER VEHICLE CAUSING MY VEHICLE TO HIT A LIGHT POLE HEAD ON. NO AIR BAGS DEPLOYED. DRIVER AND PASSENGER SUFFERED INJURY. *TR |

| | | | | | |
|---|---|---|---|---|---|
| 10487443 | CHEVROLET | TAHOE | 2011 | 2012-12-02 | I WAS DRIVING WEST ON RIO RD. IN CHARLOTTESVILLE, VA. AT ROUGHLY 35 MPH. AT APPROXIMATELY 6:00 PM, A DEER EMERGED FROM THE PASSENGER SIDE OF THE VEHICLE. IT HAPPENED INSTANTANEOUSLY AND AVOIDING THE DEER WAS NOT AN OPTION. IMMEDIATELY AFTER STRIKING THE DEER AT THE FRONT RIGHT BUMPER (UNDERNEATH HEADLIGHT), THE SIDE AIRBAGS DEPLOYED IN MY 2011 CHEVY TAHOE. HOWEVER, THE AIRBAG THAT WAS SUPPOSE TO DEPLOY FROM THE DRIVERS SEAT (ON THE SIDE NEAR SEATBELT) DID NOT DEPLOY. ADDITIONALLY, THE FRONT TWO AIRBAGS (FROM STEERING WHEEL AND DASHBOARD) DID NOT DEPLOY AS WELL. MOREOVER, APPROXIMATELY THREE MONTHS BACK, ANOTHER FAMILY MEMBER ALSO HIT A DEER WITH THE SAME VEHICLE (2011 CHEVY TAHOE) AND AT THAT TIME NO AIRBAGS DEPLOYED. IN THIS INCIDENT THE VEHICLE WAS TRAVELING 70 MPH AND THE DEER STRUCK THE LEFT SIDE OF THE FRONT BUMPER AND NO AIRBAGS DEPLOYED. AT THE TIME, WE DIDN'T EVEN THINK ABOUT DEFECTIVE AIRBAGS, BUT NOW, WE ARE VERY, VERY CONCERNED THAT THERE'S A DEFECT. WE SIMPLY DO NOT KNOW WHAT TO DO. I HAVE CONTACTED CHEVROLET DIRECTLY AND THEY ASSURE ME SOMEONE WILL COME OUT AND LOOK AT THE VEHICLE THIS WEEK SOMETIME. I WOULD BE RELIEVED IF SOMEONE FROM THE NHTSA ALSO INVESTIGATES THESE TWO SCENARIOS. WHAT IS CHEVROLET'S RESPONSIBILITY TO ME AND MY FAMILY IN THESE TWO CASES? AND WHAT IS THE BEST COURSE OF ACTION? . FURTHERMORE, I CAN ARRANGE FOR MY INSURANCE ADJUSTOR TO GATHER ANY DOCUMENTATION FROM THE FIRST INCIDENT (WHERE AIRBAGS DID NOT DEPLOY) SUCH AS PHOTOS, REPORTS AND PROVIDE THEM TO YOU. THE VEHICLE IS SITTING IN MY DRIVEWAY BECAUSE I AM WAITING FOR A CHEVROLET REPRESENTATIVE TO COME AND INSPECT IT. I WOULD APPRECIATE YOUR PROMPT ACTION IN THIS MATTER. THANK YOU! *TR |
| 10586298 | CHEVROLET | TRAVERSE | 2011 | 2011-05-31 | I WAS GOING STRAIGHT AT 40 MPH (CONFIRMED BY GM ENGINEER). ANOTHER VEHICLE TURNED IN FRONT OF ME AND THERE WAS A T-BONE STYLE OF ACCIDENT. THE OTHER CAR WAS TOTALED AND MINE TOOK ABOUT $18000 OF DAMAGE. NONE OF MY AIRBAGS DEPLOYED. I COMPLAINED TO GM, THEY SENT AN ENGINEER OUT TO LOOK AT THE VEHICLE BEFORE IT WAS REPAIRED TO ASSESS AND THEY SAID THAT THE AIRBAGS NOT DEPLOYING MEANT THAT THEY FUNCTIONED CORRECTLY. THE ENGINEERS REPORT SAID AT THE MOMENT OF IMPACT, MY CAR WAS TRAVELING 40MPH, AND I HAVE A HARD TIME BELIEVING THAT THE AIRBAGS WOULDN'T DEPLOY UNDER ANY CIRCUMSTANCES WHILE THE VEHICLE IS TRAVELING 40MPH. *TR |
| 11113909 | CHEVROLET | TRAVERSE | 2011 | 2018-07-16 | AIR BAGS DO NOT COME OUT IN HIGHWAY IMPACT OF 70 MILES PER HOUR. |
| 10794590 | GMC | TERRAIN | 2011 | 2015-11-12 | TL* THE CONTACT OWNS A 2011 GMC TERRAIN. WHILE DRIVING APPROXIMATELY 55 MPH, THE CONTACT CRASHED INTO THE SIDE OF ANOTHER VEHICLE THAT VEERED INTO THE CONTACT'S LANE. THE AIR BAGS FAILED TO DEPLOY. THERE WERE MINOR INJURIES THAT DID NOT REQUIRE MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO A TOW YARD. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 70,000. ......UPDATED 04/01/16 *BF  *CN |
| 10851422 | GMC | TERRAIN | 2011 | 2016-01-15 | TL* THE CONTACT OWNS A 2011 GMC TERRAIN. WHILE DRIVING 55 MPH, THE CONTACT FELL ASLEEP CRASHED INTO THE REAR OF ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED INJURIES TO THE SPINE, WHICH REQUIRED MEDICAL ATTENTION. THERE WERE NO INJURIES SUSTAINED TO THE DRIVER OF THE OTHER VEHICLE. THE VEHICLE WAS TOWED TO AN INDEPENDENT MECHANIC. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 62,000. |
| 11166326 | GMC | TERRAIN | 2011 | 2019-01-04 | MY 2011 GMC TERRAIN HIT A VEHICLE IN FRONT, CAUSING MAJOR DAMAGE (THE VEHICLE IS TOTALED OUT) AND NO AIR BAGS DEPLOYED. MY VEHICLE WAS TRAVELING AT APPROXIMATELY 55 MPH NORTHBOUND IN THE #3 LANE OF THE 41 FREEWAY, SOUTH OF THE SHAW EXIT. IMPACT WAS ESTIMATED TO BE BETWEEN 20 TO 30 MPH. THE DRIVER, MY 18 YEAR GRAND-DAUGHTER HIT HER HEAD ON THE STEERING WHEEL AND HER LEFT WRIST WAS INJURED HOLDING ON TO THE STEERING WHEEL. THE 18 YEAR OLD FEMALE RIGHT FRONT SEAT PASSENGER SUFFERED AN ANKLE INJURY. WHY DID THE AIR BAGS FAIL TO DEPLOY, WITH A STRAIGHT ON FRONT END COLLISION WITH THE VEHICLE IN FRONT?! UNACCEPTABLE!!! |
| 10732291 | CADILLAC | SRX | 2010 | 2015-06-22 | HIT HEAD ON BY TRUCK GOING APPROX. 45 MPH THAT SWERVED INTO MY CENTER TURN LANE. FRONT END DEMOLISHED - CAR WAS TOTALED - BUT AIR BAGS DID NOT DEPLOY - SEAT BELT DID NOT LOCK ON IMPACT. SIDE OF MY HEAD HIT DRIVER'S WINDOW OR FRAME - WAS CATAPULTED FORWARD AND CAUGHT IN SEAT BELT WHEN IT PULLED OUT ALL THE WAY. RESULTING IN HORRIFIC AND PAINFUL CHEST, ABDOMEN AND LEFT LEG INJURIES (SOFT TISSUE). |
| 10927215 | CADILLAC | SRX | 2010 | 2016-11-16 | I WAS IN A MINOR COLLISION. RAN INTO THE BACK OF SOMEONE. MY AIRBAGS DIDN'T DEPLOY AND MY ENGINE IMMEDIATELY CAUGHT ON FIRE AND IN A FEW MINUTES MY WHOLE CARE WAS ON FIRE AND DESTROYED. THERE WAS NO KNOWN REASON HOW OR WHY THE FIRE STARTED. |
| 11053454 | CADILLAC | SRX | 2010 | 2017-12-02 | I WAS IN A CAR ACCIDENT ALONG WITH TWO OTHER PASSENGERS AND NONE OF THE AIR BAGS DEPLOYED |

| | | | | | |
|---|---|---|---|---|---|
| 10383428 | CHEVROLET | EQUINOX | 2010 | 2011-01-17 | ON JAN 17TH,2011 MY VEHICLE WAS WRECKED BY THE DEALER ON SITE OF DEALERSHIP. THE WHOLE FRONT END WAS CAVED IN ON CENTER. THE DRIVER A MECHANIC AT DON WOODS CHEVROLET WAS DRIVING AT A HIGHER THEN NORMAL SPEED. HE HIT A POLE DEAD CENTER AND THE AIR BAG DID NOT DEPLOY. THE DRIVER WAS INJURED TO WHAT EXTENT I AM NOT SURE, BUT I AM NOT WANTING THIS CAR BACK FEELING THE AIRBAG MAY DEPLOY AT ANYTIME DUE TO THE HIT IT TOOK OR IT ISN'T SAFE AND WILL NOT DEPLOY UPON AN ACCIDENT. *TR |
| 10460416 | CHEVROLET | EQUINOX | 2010 | 2012-05-18 | AS I APPROACHED AN INTERSECTION, I HIT THE REAR END OF A FORD 150 PICK UP TRUCK THAT WAS IN THE INTERSECTION WAITING TO MAKE A LEFT TURN. MY APPROX SPEED WAS 15 MILES PER HOUR. I HAD MY SEATBELT ON, I WAS TAKEN BY AMBULANCE TO THE HOSPITAL. MY EVALUATION REVEALED  SPRAIN/STRAIN TO MY NECK, FRACTURED RIGHT ANKLE, AND CHEST WALL DISCOMFORT RELATED TO THE SEAT BELT. THE CAR WAS TOTALED --- THE AIRBAG DID NOT DEPLOY. *TR |
| 10508670 | CHEVROLET | EQUINOX | 2010 | 2013-03-25 | TL* THE CONTACT OWNS A 2010 CHEVROLET EQUINOX.  THE CONTACT STATED THAT WHILE TRAVELING 15 MPH, ANOTHER DRIVER CRASHED INTO THE FRONT DRIVER'S SIDE CORNER OF THE VEHICLE. THE COLLISION CAUSED THE CONTACT TO THEN CRASH INTO A UTILITY POLE. THE AIR BAGS FAILED TO DEPLOY. THE POLICE ARRIVED AND A REPORT WAS FILED. THE CONTACTS INSURANCE COMPANY INSPECTED THE VEHICLE AND ADVISED THE CONTACT THAT THE AIR BAGS SHOULD HAVE DEPLOYED UPON IMPACT. THE CONTACT SUSTAINED A FRACTURED RIB AND INJURY TO THE HEAD. THE VEHICLE WAS DESTROYED.  THE FAILURE AND THE CURRENT MILEAGE WAS 42,000.  *TR |
| 10746722 | CHEVROLET | EQUINOX | 2010 | 2015-07-08 | I WAS DRIVING IN TRAFFIC WHEN THE CAR IN FRONT OF ME STOPPED ABRUPTLY IN FRONT OF ME. I REAR ENDED HIM GOING ABOUT 40 MILES PER HOUR . MY AIR BAGS DID NOT INFLATE . I EXITED THE CAR AND BEGAN SPEAKING WITH THE OTHER DRIVER WHEN WE HEARD A POP IN MY CAR. SMOKE STARTING COMING OUT OF THE ENGINE COMPARTMENT AND THEN ALMOST IMMEDIATELY MY CAR ENGINE CAUGHT ON FIRE. THE CAR WAS NOT RUNNING.  I INJURED MY KNEE AND SHOULDER IN THE INCIDENT. |
| 10809547 | CHEVROLET | EQUINOX | 2010 | 2015-12-08 | TL* THE CONTACT OWNED A 2010 CHEVROLET EQUINOX. WHILE DRIVING 35 MPH, THE CONTACT ATTEMPTED TO AVOID HITTING A DEER AND STRUCK THE GUARDRAIL. THE AIR BAGS FAILED TO DEPLOY. THE EMERGENCY ONSTAR SYSTEM RESPONDED AND CALLED THE POLICE AND AMBULANCE. THE VEHICLE WAS TOWED TO A COLLISON CENTER WHERE THE VEHICLE WAS DIAGNOSED AS DESTROYED. THE CONTACT SUSTAINED INJURIES TO THE HEAD, NECK, BACK, AND HANDS. A POLICE REPORT WAS FILED. THE MANUFACTURER WAS NOTIFIED. THE APPROXIMATE FAILURE MILEAGE WAS 57,000. |
| 10928817 | CHEVROLET | EQUINOX | 2010 | 2016-11-25 | AIRBAGS DID NOT DEPLOY WHEN INVOLVED IN CAR ACCIDENT ON 11/25/2016 |
| 10649152 | CHEVROLET | SILVERADO | 2010 | 2013-11-14 | LETTER FROM CONGRESSMAN WITTMAN ON BEHALF OF CONSTITUENT RE AIRBAGS THAT DID NOT DEPLOY.  *SMD  2010 CHEVROLET SILVERADO. THE CONSUMER WAS INVOLVED IN AN ACCIDENT. AS A RESULT,  SHE SUSTAINED A BRAIN INJURY.*JB |
| 10315713 | CHEVROLET | TRAVERSE | 2010 | 2010-02-25 | 1. STOPPED AT RED LIGHT IN 2010 CHEVROLET TRAVERSE SUV AND REAR ENDED BY A NISSAN FRONTIER PICK UP TRUCK TRAVELING AT A HIGH RATE OF SPEED. DRIVER'S SEAT BELT ON BUT DRIVER'S HEAD THROWN AGAINST WINDSHIELD AND THEN  DRIVER'S BODY SLAMMED AGAINST THE BACK OF THE DRIVER'S SEAT WHICH WAS FORCED BACK TO A RECLINING POSITION. AIRBAG DID NOT DEPLOY.  2. SEAT BELT FAILED TO PREVENT DRIVER'S HEAD FROM HITTING WINDSHIELD IF IT IS SUPPOSED TO IN THIS TYPE OF COLLISION. DID THE SEAT BACK ACT PROPERLY IN SUCH A COLLISION? WAS THE AIRBAG SUPPOSED TO DEPLOY IN THIS TYPE OF COLLISION.  3. IN BODY SHOP TO REPAIR TO PRE-ACCIDENT CONDITION . *TR |
| 10637484 | CHEVROLET | TRAVERSE | 2010 | 2010-07-19 | WAS GETTING READY TO PARK ON THE STREET WHEN A CAR HIT ME,I HIT A CAR IN FRONT OF ME,MY CAR WAS THROWN ON THE SIDE WALK,I WAS PASS OUT FOR A FEW SECONDS,BUMP MY HEAD,MY CAR WAS TOTAL, FRONT AND REAR,SURPRISINGLY MY AIR BAG DID NOT DEPLOY TO HELP PROTECT ME FROM MY INJURIES I GOT.  *TR |
| 10749869 | CHEVROLET | TRAVERSE | 2010 | 2015-08-06 | TL* THE CONTACT OWNS A 2010 CHEVROLET TRAVERSE. WHILE DRIVING AT AN UNKNOWN SPEED ATTEMPTING TO MAKE A LEFT TURN, ANOTHER VEHICLE CRASHED INTO THE CONTACTS VEHICLE. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED UNKNOWN INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO A SALVAGE YARD. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE APPROXIMATE FAILURE MILEAGE WAS 75,000. |
| 11210243 | CHEVROLET | TRAVERSE | 2010 | 2018-12-01 | TL* THE CONTACT OWNS A 2010 CHEVROLET TRAVERSE. WHILE DRIVING 30 MPH, THE VEHICLE WAS HIT BY ANOTHER VEHICLE COMING FROM THE OPPOSITE DIRECTION AS IT WAS MAKING A TURN INTO A PARKING LOT. THE CONTACT WAS INJURED BUT NOT TRANSPORTED BY AMBULANCE TO A HOSPITAL SHE WENT TO THE DOCTOR THE SAME DAY DAY. A POLICE REPORT WAS FILED  THE VEHICLE WAS TOTALED AND TOWED AWAY TO A SALVAGE LOT. THE FRONTAL AIR BAGS DID NOT DEPLOY DURING THE CRASH.THE FAILURE MILEAGE WAS 103,000. TF |
| 10574295 | GMC | TERRAIN | 2010 | 2014-02-21 | INVOLVED IN A 21 CAR PILE UP IN THE UPPER PENINSULA DURING A COMPLETE WHITE OUT. WE WERE ONLY TRAVELING APPROXIMATELY 25 MILES PER HOUR BUT, WE DID HAVE SERIOUS IMPACT IN THE FRONT, AFTER HITTING A TRAILER AND ALSO SERIOUS IMPACT FROM BEHIND WHEN HIT BY A TRUCK AND TRAILER. NO AIRBAGS DEPLOYED. THE TRUCK TRAVELING AHEAD OF US, THAT WE HIT, THE AIRBAGS DID DEPLOY. MY FATHER AND BROTHER, WHO WERE ALSO BOTH DRIVING CHEVY TRUCKS, AND ALSO HAD SERIOUS FRONT END DAMAGE DURING THE SAME ACCIDENT, THEIR AIRBAGS DID NOT DEPLOY EITHER. *TR |

| | | | | | |
|---|---|---|---|---|---|
| 10810541 | GMC | TERRAIN | 2010 | 2015-12-05 | TL* THE CONTACT OWNED A 2010 GMC TERRAIN. WHILE DRIVING 45 MPH, THE CONTACT CRASHED INTO THE REAR OF ANOTHER VEHICLE AND THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED FACIAL INJURIES THAT REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE VIN WAS INVALID. THE APPROXIMATE FAILURE MILEAGE WAS 51,000. |
| 10547172 | BUICK | ENCLAVE | 2009 | 2009-08-16 | GOT INTO A MAJOR ACCIDENT TWO CARS RAN INTO MY VEHICLE AND EVERYONE WAS INJURED AND THE AIR BAGS DID NOT COME ON TO PREVENT THAT. I HAVE INSURANCE AND POLICE REPORT THAT STATES THIS.  *TA |
| 10572633 | CHEVROLET | EQUINOX | 2009 | 2014-03-11 | I HAD PASSED OUT WHILE DRIVING TO WORK DUE TO LOW BLOOD SUGAR. THE FRONT OF MY VEHICLE CRASHED INTO A STRUCTURE AT APPROXIMATELY 55/60 MPH. NONE OF MY AIRBAGS EVER DEPLOYED. I WAS TRANSPORTED TO THE HOSPITAL.  *TR |
| 10331539 | CHEVROLET | SILVERADO | 2009 | 2010-04-19 | TL* THE CONTACT OWNS A 2009 CHEVROLET SILVERADO. THE CONTACT STATED THAT WHILE TRAVELING APPROXIMATELY 35 MPH AND APPROACHING AN INTERSECTION, THE VEHICLE ABNORMALLY VEERED OFF THE ROAD. THE VEHICLE PROCEED TO TRAVEL OFF THE ROADWAY AND WENT AIRBORNE OVER AN EMBANKMENT BEFORE CRASHING INTO A DITCH. THE AIR BAGS DID NOT DEPLOY UPON IMPACT AND THE CONTACT SUSTAINED MODERATE TO SEVER INJURIES. THE CONTACT WAS TRANSPORTED TO THE HOSPITAL VIA AMBULANCE AND A POLICE REPORT WAS FILED ACCORDINGLY. THE VEHICLE WAS TOWED TO A CHEVROLET DEALER FOR REPAIRS. THE FAILURE WAS 13,800.  UPDATED 7/16/10 *CN. UPDATED 08/18/10 |
| 10447821 | CHEVROLET | SILVERADO | 2009 | 2011-10-13 | TL* THE CONTACT OWNS A 2009 CHEVROLET SILVERADO. THE CONTACT STATED THAT WHILE DRIVING 55 MPH, HE FELL ASLEEP AND LOST CONTROL OF THE VEHICLE. THE VEHICLE CRASHED INTO A CEMENT WALL AND THE FRONT DRIVERS AIR BAG DID NOT DEPLOY. THE CONTACT SUFFERED HEAD INJURIES DURING THE CRASH. THE VEHICLE WAS REPAIRED. THE MANUFACTURER INVESTIGATED THE FAILURE AND CONCLUDED THAT THE AIR BAG PERFORMED AS DESIGNED. THE FAILURE MILEAGE WAS 46,000 AND THE CURRENT MILEAGE WAS 55,000. |
| 10496236 | CHEVROLET | SILVERADO | 2009 | 2013-02-01 | 2009 CHEVY SILVERADO LOST TRACTION ON HIGHWAY DURING SLIPPERY ROAD CONDITIONS, VEHICLE SPUN OUT AND HIT A METAL ROPED FENCE HEAD ON AND ALSO WENT ACROSS THE MEDIAN AND SLAMMED THE FRONT END OF VEHICLE INTO A GUARD RAIL STOPPING IT INSTANTLY FROM GOING INTO ON COMING TRAFFIC.  THE VEHICLES DAMAGE WAS ON THE FRONT END DIRECTLY IN THE CENTER CAUSING A WEDGE INTO THE RADIATOR, ENGINE AND BENT THE FRONT OF THE FRAME.  THE IMPACT WAS VERY LOUD AND SOLID.  THE IMPACT CAUSED THE TRUCK TO STAND ON THE FRONT OF VEHICLE, SLAMMING THE  BACK END OF THE VEHICLE ON THE GROUND WITH GREAT FORCE.  THE AIRBAG DIDN'T DEPLOY WHICH AT THE SPEED OF AROUND 60 MPH AND THE PLACE THE VEHICLE WAS HIT IN, MAKES ME VERY CONCERNED ON THE SAFETY OF THIS VEHICLE.  MY 5 YEAR OLD SON SAID HIS RIGHT ARM WAS HURTING AFTER THE ACCIDENT AND WITH IN THE HOUR OF HAVING THE ACCIDENT MYSELF ENDED UP IN THE HOSPITAL WITH A STIFF NECK AND A VERY SOAR AND BRUISED BACK, I WAS RELEASED WITH MINOR INJURIES AND I CONSIDER MYSELF LUCKY.  PLEASE LET ME KNOW IF ANYTHING CAN BE DONE ABOUT THIS SITUATION AND THE SAFETY OF MYSELF AND MY SON.  *TR |
| 11340458 | CHEVROLET | SUBURBAN | 2009 | 2020-02-17 | TL* THE CONTACT OWNS A 2009 CHEVROLET SUBURBAN. THE CONTACT STATED THAT WHILE HIS WIFE WAS DRIVING AT A LOW RATE OF SPEED, SHE ATTEMPTED TO MAKE A LEFT TURN AND WAS HIT BY A CAR COMING FROM THE OPPOSITE SIDE. THE AIR BAGS DID NOT DEPLOY UPON IMPACT. THE DRIVER WAS TREATED FOR WHIPLASH AND MULTIPLE BULGED DISKS IN HER BACK WHICH WOULD REQUIRE SURGERY. A POLICE REPORT WAS NOT FILED. THE DRIVER WAS ABLE TO DRIVE THE VEHICLE HOME AFTER THE ACCIDENT. THE CONTACT STATED THAT THE VEHICLE HAD BEEN INCLUDED IN NHTSA CAMPAIGN NUMBER: 16V381000 (AIR BAGS); HOWEVER, THE PARTS TO DO THE REPAIR WERE UNAVAILABLE. THE DEALER NOR THE MANUFACTURER HAD BEEN NOTIFIED OF THE FAILURE. THE VEHICLE HAD YET TO BE REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 167,000. |
| 10944639 | CHEVROLET | TRAILBLAZER | 2009 | 2017-01-06 | TL* THE CONTACT OWNED A 2009 CHEVROLET TRAILBLAZER. WHILE DRIVING 70 MPH, THE CONTACT'S VEHICLE REAR ENDED ANOTHER VEHICLE. IN TURN, THE CONTACT'S VEHICLE WAS STRUCK BY A SEMI-TRUCK. THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED INJURIES TO THE HEAD, KNEES, AND ARMS, WHICH REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS DESTROYED AND TOWED. THE MANUFACTURER WAS NOT MADE AWARE OF THE CRASH. THE FAILURE MILEAGE WAS 135,000. |
| 11184731 | CHEVROLET | TRAILBLAZER | 2009 | 2019-02-22 | TRAVELING ON HIGHWAY APPLIED BRAKES AND HIT CAR IN REAR. AIR BAGS NOT DEPLOYED. |
| 10375125 | CHEVROLET | TRAVERSE | 2009 | 2010-12-17 | TL* THE CONTACT OWNS A 2009 CHEVROLET TRAVERSE. THE CONTACT APPLIED THE BRAKES WHILE DRIVING 35 MPH AND THE VEHICLE CRASH INTO THE REAR END OF THE VEHICLE IN FRONT. THE AIR BAG DID NOT DEPLOY. THE CONTACT SUFFERED A FRACTURED STERNUM BY HITTING THE STEERING WHEEL. THE CONTACT STATED THAT THE SEAT BELT DID NOT LOCK DURING THE CRASH. THE CONTACT WAS TAKEN TO THE HOSPITAL. THE MANUFACTURER STATED THAT THEY WILL PERFORM AN INVESTIGATION REGARDING THE SEAT BELT.  THE FAILURE MILEAGE WAS 30,000. |

| 10501339 | CHEVROLET | TRAVERSE | 2009 | 2013-02-22 | TL* THE CONTACT OWNS A 2009 CHEVROLET TRAVERSE. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 55 MPH, CRASHED INTO A HIGHWAY BARRIER WHILE ATTEMPTING TO AVOID CRASHING INTO ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. THE VEHICLE WAS TOWED TO A SALVAGE YARD. THE POLICE REPORTED TO THE SCENE AND A REPORT WAS FILED. THE CONTACT WAS TRANSPORTED TO THE HOSPITAL VIA AMBULANCE FOR TREATMENT OF INJURIES TO THE BACK. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE VIN WAS NOT AVAILABLE. THE APPROXIMATE FAILURE MILEAGE WAS 48,000. |
|---|---|---|---|---|---|
| 10620828 | GMC | ACADIA | 2009 | 2014-07-12 | TL*. THE CONTACT OWNS A 2009 GMC ACADIA. THE CONTACT STATED WHILE DRIVING 20 MPH THE FRONT PASSENGER SIDE TIRE BLEW AND THE CONTACT LOST CONTROL OF THE VEHICLE, CRASHING INTO A TWO FOOT DITCH. THE VEHICLE THEN WENT THROUGH A ROW OF HEDGES AND CRASHED INTO A TREE ON THE DRIVER'S SIDE. THE SEAT BELT DID NOT RESTRAIN THE CONTACT AND THE AIR BAGS DID NOT DEPLOY. THE REAR SEATS COLLAPSED AS WELL. THE CONTACT SUSTAINED A SEVERE CONCUSSION FROM HITTING HER HEAD ON THE WINDSHIELD, BRUISED LEGS, ARM, FRACTURED NOSE, AND BRUISING TO THE FACE. THE CONTACT WAS FOUND LYING OVER THE CONSOLE AND WAS TAKEN TO THE EMERGENCY ROOM. A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS TOWED TO A COLLISION SHOP. THE CONTACT LATER RECEIVED NOTIFICATION OF NHTSA RECALL CAMPAIGN NUMBER 14V266000 (SEAT BELT) HOWEVER, THE PART NEEDED FOR THE REPAIR WAS NOT AVAILABLE. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 120,000. |
| 11308898 | GMC | ACADIA | 2009 | 2020-02-07 | I WAS DRIVING ON THE MAIN HIGHWAY GOING 35MPH AND ANOTHER VEHICLE PULLED OUT I FRONT OF ME CAUSING ME TO HIT HER WITH MY FRONT END. MY AIRBAGS NEVER DEPLOYED BUT MY SERVICE AIRBAGS LIGHT IS ON AS WELL AS THE MESSAGE ON MY BOARD. |
| 10986352 | GMC | YUKON | 2009 | 2017-03-13 | TL* THE CONTACT OWNS A 2009 GMC YUKON. WHILE DRIVING 35 MPH, THE CONTACT CRASHED INTO THE DRIVER'S SIDE DOOR OF ANOTHER VEHICLE, WHICH THEN ROLLED OVER. THE AIR BAGS FAILED TO DEPLOY. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE CONTACT SUSTAINED INJURIES TO THE LEFT FOOT, LEFT KNEE, A CONCUSSION, CHEST PAINS, AND A BLACK EYE. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO A DEALER WHERE THE FAILURE WAS DIAGNOSED. THE DRIVER OF THE OTHER VEHICLE ALSO SUSTAINED MINOR INJURIES. THE CONTACT HAD NOT RECEIVED NOTIFICATION OF NHTSA CAMPAIGN NUMBER: 16V381000 (AIR BAGS), WHICH WAS ASSOCIATED WITH THE VIN. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 69,000. |
| 11055457 | BUICK | ENCLAVE | 2008 | 2017-12-13 | TL* THE CONTACT OWNS A 2008 BUICK ENCLAVE. WHILE DRIVING APPROXIMATELY 20 MPH, THE CONTACT LOST CONTROL AND CRASHED HEAD ON INTO ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED INJURIES TO THE HEAD, WHICH REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS TOWED TO THE CONTACT'S RESIDENCE. THE CONTACT WAS NOT SURE IF THE VEHICLE WAS DESTROYED. A LOCAL DEALER AND MANUFACTURER WERE NOT CONTACTED. THE VIN AND FAILURE MILEAGE WERE NOT AVAILABLE. |
| 10632511 | CHEVROLET | EQUINOX | 2008 | 2014-05-14 | TL* THE CONTACT OWNS A 2008 CHEVROLET EQUINOX. THE CONTACT STATED THAT WHILE DRIVING AT AN UNKNOWN SPEED, THE VEHICLE HYDRO-PLANED AND CRASHED. THE CONTACT MENTIONED THAT NONE OF THE AIR BAGS DEPLOYED. A POLICE REPORT WAS FILED AND INJURIES WERE SUSTAINED. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE VEHICLE WAS INSPECTED AND THE TECHNICIAN STATED THAT THE AIR BAGS WERE NOT EXPECTED TO DEPLOY. THE FAILURE MILEAGE WAS 91,000. PAM: UPDATED 09/25/14 *BF  UPDATED 10/23/2014*LJ  THE CONSUMER STATED THE KEY WAS STUCK IN THE IGNITION. UPDATED 12/08/14 *JB. UPDATED 12/28/15.*JB  THE CONSUMER STATED GM CLAIMED TO HAVE INVESTIGATED THE CRASH AND STATED THE AIR BAG WAS NOT DESIGNED TO DEPLOY IN THE TYPE OF CRASH THE CONSUMER WAS INVOLVED IN. UPDATED 01/05/16.*JB  UPDATED 06/02/16.*JB *JS |
| 10442223 | CHEVROLET | SILVERADO | 2008 | 2011-12-30 | TL* THE CONTACT OWNS A 2008 CHEVROLET SILVERADO. THE CONTACT LOST CONTROL OF THE VEHICLE AND CRASHED INTO A TREE.  NEITHER THE DRIVER NOR THE PASSENGER SIDE AIR BAGS DEPLOYED.  THE VEHICLE WAS DESTROYED AND THE CONTACT SUSTAINED HEAD AND BACK INJURIES.  THE CONTACT DID CALL THE MANUFACTURER. THE FAILURE MILEAGE WAS 66,000. UPDATED 02/15/12*LJ  UPDATED 02/24/12 |
| 10565014 | CHEVROLET | SILVERADO | 2008 | 2014-02-18 | 7:10 A.M. TUESDAY MORNING, I HIT BLACK ICE AND LOST CONTROL OF MY VEHICLE. I PROCEEDED TO SLIDE UNCONTROLLABLY ACROSS THE ROAD. I THEN HIT A CLIFF WITH THE FRONT END OF MY VEHICLE. ONCE I HIT THE THE CLIFF MY VEHICLE THEN FLIPPED IN THE AIR AND LANDED ON THE DRIVER SIDE OF THE VEHICLE. ONCE I HAD LANDED ON THE PAVEMENT, ANOTHER VEHICLE CAME ALONG PROCEEDING AT AROUND 45 MPH. THE VEHICLE PROCEEDED TO HIT THE HOOD OF MY VEHICLE. THE DRIVER HIT MY HOOD DIRECTLY WITH THE FRONT END OF HIS VEHICLE. DURING THE WHOLE INCIDENT, I HAD MY SEATBELT ON. ALSO IT WAS INDICATED THAT MY AIR BAGS WERE ONE AND FUNCTIONING CORRECTLY. THE VEHICLE ITSELF WAS TOTALED AND I SUSTAINED WHIPLASH, A SLIGHT CONCUSSION, SEVERE BRUISES AND CUTS, AND ALSO RECEIVED A CHIPPED TOOTH FROM HITTING THE STEERING WHEEL WITH MY FACE.  *TR |

| | | | | | |
|---|---|---|---|---|---|
| 10672875 | CHEVROLET | SILVERADO | 2008 | 2015-01-07 | I WAS ON MY WAY HOME FROM WORK AFTER WORKING A VERY LONG DAY AND I FELL ASLEEP AT THE WHEEL AND WENT OFF THE SIDE OF 225. ALL I REMEMBER WAS WAKING UP IN BETWEEN TREES ABOUT TWO FEET AWAY FROM SIMS BAYOU. MY VEHICLE WAS TOTALED. NO AIR BAGS DEPLOYED.  *TR |
| 10678613 | CHEVROLET | SILVERADO | 2008 | 2015-01-16 | 2008 CHEVY SILVERADO 4X4 WT. DRIVER SIDE AIRBAG DID NOT DEPLOY DURING CRASH. VEHICLE IMPACT WAS ON THE FRONT. A FATALITY OCCURRED DURING THIS CRASH. (PASSENGER IN OTHER VEHICLE) POINT OF IMPACT WAS FRONT OF SILVERADO INTO PASSENGER SIDE OF OTHER VEHICLE. *TR |
| 10681040 | CHEVROLET | SILVERADO | 2008 | 2015-01-21 | TL* THE CONTACT OWNS A 2008 CHEVROLET SILVERADO. THE CONTACT STATED THAT THE AIR BAGS FAILED TO DEPLOY AFTER BEING INVOLVED IN A CRASH. THE SPECIFICS OF THE CRASH WERE NOT AVAILABLE. A POLICE REPORT WAS FILED AND THE DRIVER SUSTAINED INJURIES TO THE HEAD, THE NECK, AND THE BACK THAT DID NOT REQUIRE MEDICAL ATTENTION. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 111,687. |
| 10761080 | CHEVROLET | SILVERADO | 2008 | 2015-08-25 | TL* THE CONTACT OWNED A 2008 CHEVROLET SILVERADO. WHILE DRIVING 65 MPH, THE CONTACT FELL ASLEEP BEHIND THE WHEEL AND THE VEHICLE DROVE OFF THE ROAD. THE CONTACT CRASHED INTO THE SUPPORT CABLES ON THE SIDE OF THE ROAD. THE CONTACT STATED THAT THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS FILED. THERE WERE NO INJURIES. THE VEHICLE WAS TOWED TO AN INDEPENDENT MECHANIC WHERE IT WAS DEEMED DESTROYED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 127,000. |
| 10261711 | CHEVROLET | TRAILBLAZER | 2008 | 2009-03-07 | TL*THE CONTACT OWNS A 2008 CHEVROLET TRAILBLAZER.  WHILE DRIVING 35 MPH, THE CONTACT WAS INVOLVED IN A HEAD-ON CRASH.  THE ENTIRE FRONT END OF HIS VEHICLE WAS CRUSHED AND THE INSURANCE COMPANY DECLARED THE VEHICLE AS DESTROYED. THE SEAT BELTS PROPERLY RESTRAINED THE CONTACT, BUT THE AIR BAGS FAILED TO DEPLOY.  THERE WERE NO INJURIES, BUT A POLICE REPORT WAS FILED.  THE FAILURE MILEAGE WAS 6,500. |
| 10679071 | CHEVROLET | TRAILBLAZER | 2008 | 2015-01-18 | THE VEHICLE LOST CONTROL ON BLACK ICE. THE STEERING WHEEL AND BRAKES LOCKED UP AND THE TRAILBLAZER HIT A TREE. THE AIRBAG NEVER DEPLOYED. THE VEHICLE'S FRAME WAS BENT. THE SUV WAS CONSIDERED A TOTAL LOSS. THE VEHICLE PICKED UP A LITTLE MORE SPEED WHILE ON THE ICE, BUT NO MORE THAN 30 MPH.  *TR |
| 11143666 | CHEVROLET | TRAILBLAZER | 2008 | 2018-10-19 | WAS TRAVELING 40 MPH AND WAS HIT HEAD ON BY ANOTHER VEHICLE.  NONE OF THE AIR BAGS DEPLOYED. WAS ON A CITY STREET WITH A 40 MPH SPEED LIMIT. GOING STRAIGHT. |
| 11324166 | CHEVROLET | TRAILBLAZER | 2008 | 2020-05-05 | TL* THE CONTACT OWNED A 2008 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT HE CRASHED AND REAR ENDED INTO ANOTHER VEHICLE STOPPED AT A STOP LIGHT AT 53 MPH. THE CONTACT STATED THAT THE AIR BAGS FAILED TO DEPLOY AS WELL AS THE SEAT BELT PRETENSIONER FAILED TO ENGAGE. THE CONTACT SUSTAINED A SEVERE CONCUSSION & ALMOST BIT HIS TONGUE OFF WITH HIS HEAD SMASHING INTO THE WINDSHIELD. HE ALSO SUSTAINED CUTS AND BRUISES ON HIS LOWER BODY AND LEGS AND A BRUISED NECK. THERE WAS A PASSENGER IN THE OTHER VEHICLE THAT HAD TO BE TRANSPORTED TO THE HOSPITAL WITH INJURIES AS WELL. THE VEHICLE WAS TOTALED WITH THE WHOLE FRONT SMASHED IN UP TO THE WINDSHIELD. THE DEALER AND MANUFACTURER HAD NOT BEEN CONTACTED YET. THE FAILURE MILEAGE WAS 220,000. THE VIN WAS NOT AVAILABLE. *LN*JB |
| 10615043 | GMC | ACADIA | 2008 | 2013-04-30 | TL* THE CONTACT OWNS A 2008 GMC ACADIA. THE CONTACT STATED THAT WHILE DRIVING 50 MPH, THE VEHICLE WAS INVOLVED IN A FRONT END CRASH IN WHICH NO AIR BAGS DEPLOYED. A POLICE REPORT WAS FILED AND NO INJURIES WERE SUSTAINED. THE VEHICLE WAS TAKEN TO A DEALER. THE FAILURE MILEAGE WAS 113,000 AND THE CURRENT MILEAGE WAS 132,653. |
| 11066850 | GMC | ACADIA | 2008 | 2015-08-21 | MY WIFE FELL ASLEEP RAN OFF THE ROAD STRUCK A UTILITY POLE AND A LARGE DIRT EMBANKMENT. THE AIR BAGS DID NOT DEPLOY NOR DID THE BELT TENSIONERS SHE HIT THE STEERING COLUMN SO HARD SHE IT BROKE THE COLUMN. AND BROKE HER STERNUM. OUR GRANDDAUGHTER WAS IN THE FRONT PASSENGER SEAT. THE AIR BAG NOR THE TENNSIONERS DEPLOYED RESULTING HER BACK BEING BROKEN IN TWO PLACES AND ALSO HER FOOT WAS BROKEN. I CONTACTED GENERAL MOTORS AND THEY SENT A MAN TO DOWNLOAD THE COMPUTER INFORMATION THEY SENT ME A COPY OF THE INFO AND LATER CONTACTED ME SAYING THE INFO SHOWED EVERYTHING WAS WORKING PROPERLY. PRYOR TO THE ACCIDENT I HAD THE AUTO IN FOR RECALL ON THIS PROBLEM. I ALSO HAD IT IN FOR ANOTHER RECALL FOR THE HEADLIGHTS AND THEY HAD TO REMOVE A LARGE PART OF THE FRONT TO DO THE REPAIR AND DONE A POOR JOB OF PUTTING IT BACK TOGETHER I RETURNED IT AND THEY FINALLY GOT IT RIGHT, IN THE MEAN TIME THE SERVICE AIR BAG LIGHT CAME ON AND THEY REPAIRED THAT LATER AFTER THE ACCIDENT I WENT BACK TO THE DEALER AND QUESTIONED THE BODY SHOP MANAGER ABOUT PUTTING IT BACK TOGETHER PROPERLY AND THEN TOLD HIM ABOUT THE ACCIDENT THEN HE HAD NOTHING ELSE TO SAY. THE AUTO WAS A TOTAL LOSS AFTER A LENGTH OF TIME WIFE AND GRANDDAUGHTER GOT OUT OF HOSPITAL. THIS CAR WAS RECALLED FOR THIS VERY REASON. MY INSURANCE COMPANY PAID MY GRANDDAUGHTER $95,000 FOR HER INJURIES AND COMMENTED THAT THEY WOULD PROBABLY SUE GM TO GET THAT BACK. |

| | | | | | |
|---|---|---|---|---|---|
| 11310375 | GMC | ACADIA | 2008 | 2015-11-26 | VEHICLE WAS SOUTHBOUND ON COUNTY ROAD AND ATTEMPTED TO MAKE A RIGHT TURN AT THE INTERSECTION, WHEN THE CAR STRUCK THE SOUTH EMBANKMENT OF THE T INTERSECTION, AS DRIVER WAS UNABLE TO NAVIGATE THE TURN. NONE OF THE SIDE OR FRONT AIRBAGS IN THE CAR DEPLOYED AS A RESULT OF THE CRASH. I AM ALSO UNSURE IF THE SEAT BELT HAD OPERATED CORRECTLY (SEAT BELT WAS BEING WORN AT THE TIME OF THE CRASH). THE DRIVER'S HEAD HIT THE SIDE WINDOW AND AS A RESULT HE SUSTAINED A HEAD INJURY AND AN EYE INJURY RESULTING IN OPTIC NERVE DAMAGE AND COMPLETE LOSS OF VISION IN THE EYE. I UNDERSTAND THERE WERE PROBLEMS WITH THE AIRBAGS ON THESE VEHICLES WITH A POSSIBLE RECALL ISSUED. I DO HAVE ALL THE CORRESPONDING ACCIDENT REPORTS, MEDICAL REPORTS, ETC. |
| 10667413 | GMC | ENVOY | 2008 | 2014-12-19 | I WAS IN AN AUTO ACCIDENT ON A MAJOR HIGHWAY AND UPON CRASHING MY AIRBAG DIDN'T DEPLOY AND MY FACE SMASHED INTO THE STEERING WHEEL. |
| 11143613 | GMC | ENVOY | 2008 | 2018-10-24 | ON 10/24/2018 WHILE DRIVING MY 2008 GMC ENVOY SLT, I WAS INVOLVED IN A HEAD-ON COLLISION WHICH RESULTED IN MY CAR BEING TOTALED. NONE OF MY AIR BAGS DEPLOYED. |
| 11080754 | GMC | YUKON XL | 2008 | 2017-01-08 | TL* THE CONTACT OWNS A 2008 GMC YUKON XL. WHILE DRIVING 65 MPH, THE CONTACT NOTICED THAT ANOTHER VEHICLE WAS SWERVING TOWARDS HER VEHICLE. THE CONTACT HAD TO DEPRESS THE ACCELERATOR PEDAL TO INCREASE SPEED AND AVOID A COLLISION; HOWEVER, THE OTHER VEHICLE LOST CONTROL AND CRASHED INTO THE CONTACT'S VEHICLE. THE FRONT FRAME, FRONT PASSENGER SIDE, AND REAR FRAME OF THE CONTACT'S VEHICLE WERE DAMAGED. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT WAS KNOCKED UNCONSCIOUS AND REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED FROM THE SCENE. THE CONTACT STATED THAT THE VEHICLE WAS INSPECTED BY A MECHANIC FRIEND WHO CONFIRMED THE AIR BAGS FAILED TO DEPLOY. THE VEHICLE WAS NOT REPAIRED. THE DEALER WAS NOT CONTACTED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE AND A CASE WAS OPENED. THE CONTACT STATED THAT THE CASE HAD CLOSED. THE APPROXIMATE FAILURE MILEAGE WAS 150,000. |
| 10207326 | CADILLAC | ESCALADE | 2007 | 2007-10-06 | TL* THE CONTACT OWNED A 2007 CADILLAC ESCALADE. THE CONTACT FELL ASLEEP WHILE DRIVING AT AN UNKNOWN SPEED. THE VEHICLE STRUCK A DITCH, WENT AIRBORNE, AND ROLLED OVER SEVERAL TIMES. A POLICE REPORT WAS FILED. ALL FOUR WHEELS AND TIRES CAME OFF THE VEHICLE AND EACH WINDOW WAS BROKEN AND SMASHED. NONE OF THE EIGHT AIR BAGS DEPLOYED. THE CONTACT SUSTAINED A BROKEN COLLAR BONE, SHOULDER BONE, ROTARY CUP, AND A BROKEN HAND IN TWO PLACES. THE INSURANCE COMPANY STATED THAT THE VEHICLE WAS DESTROYED. CADILLAC HAS BEEN NOTIFIED AND WILL INSPECT THE VEHICLE. THE CURRENT AND FAILURE MILEAGES WERE 28,000. |
| 10226642 | CADILLAC | ESCALADE | 2007 | 2008-04-26 | TL* THE CONTACT OWNS A 2007 CADILLAC ESCALADE. WHILE DRIVING 35 MPH IN THE RAIN, THE VEHICLE HYDROPLANED AND CRASHED INTO SEVERAL TREES. THE VEHICLE SPUN AROUND AND ENDED UP FACING THE OPPOSITE DIRECTION. THE AIR BAGS FAILED TO DEPLOY AND THE CONTACT WAS INJURED. A POLICE REPORT WAS FILED. THE FAILURE MILEAGE WAS UNKNOWN. |
| 10292325 | CADILLAC | ESCALADE | 2007 | 2009-11-14 | TL* THE CONTACT OWNS A 2007 CADILLAC ESCALADE. WHILE DRIVING SHE CRASHED INTO A TREE. THE ENTIRE FRONT-END OF THE VEHICLE WAS DAMAGED, AND NONE OF THE AIR BAGS DEPLOYED. CONSEQUENTLY SHE RECEIVED INJURIES TO HER NECK. A POLICE REPORT WAS FILED. ALSO THE FRONT BRAKE PADS FRACTURED WITHIN THE FIRST TWO MONTHS OF PURCHASING THE VEHICLE. THE BRAKE PADS WERE REPLACED UNDER THE SERVICE WARRANTY. THE FAILURE AND CURRENT MILEAGES WERE 58,000. |
| 10317216 | CHEVROLET | EQUINOX | 2007 | 2010-03-03 | I WAS IN AN ACCIDENT. WERE I STRUCK TWO HORSES THAT RUN OUT INTO THE HIGHWAY IN FRONT OF ME IN MY 2007 CHEVROLET EQUINOX LSI. THE FIRST HORSE STRUCK MY PASSENGER SIDE FRONT QUARTER PANEL AND THIS CAUSED ME TO SWERVE INTO ANOTHER HORSE ON THE DRIVER SIDE. I WAS TRAVELING AT APPROXIMATELY 50 MPH AND THE DAMAGE TO THE FRONT OF MY CAR WAS VERY SERIOUS AND MY COMPLAINT IS THAT THE AIRBAGS NEVER DEPLOYED DURING THE CRASH. I KNOW THAT THE AIRBAGS ARE SET OF BY SPECIFIC SPEEDS AND DAMAGE BUT MY WHOLE FRONT OF MY 2007 CHEVROLET EQUINOX LS WAS NEARLY REMOVED. I WAS WEARING MY SAFETY BELT AND IT OFFERED LITTLE HELP SINCE I WAS HIT TWICE FROM OPPOSITE SIDES. I WAS TOLD BY RESPONDING EMERGENCY CREW THAT THE AIRBAG MUST HAVE BEEN FAULTY SINCE IT DID NOT DEPLOY. *TR |
| 10370521 | CHEVROLET | EQUINOX | 2007 | 2010-12-13 | AUTOMOBILE ACCIDENT AT ROUGHLY 20 MILES AN HOUR IN A 2007 CHEVY EQUINOX MOSTLY FRONT END AND DRIVER SIDE DAMAGE. THE AIR BAGS DID NOT DEPLOY. MAJOR FRONT END DAMAGE SUSTAINED. *TR |
| 11128142 | CHEVROLET | EQUINOX | 2007 | 2018-05-28 | TL* THE CONTACT OWNED A 2007 CHEVROLET EQUINOX. WHILE DRIVING 20 MPH, THE CONTACT CRASHED INTO A CONCRETE EMBANKMENT TO AVOID COLLIDING WITH ANOTHER VEHICLE. THE AIR-BAG FAILED TO DEPLOY. THE CONTACT SUSTAINED INJURIES TO THE RIGHT SHOULDER AND LEFT ARM THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS DESTROYED AND TOWED TO A TOW LOT. THE CONTACT CALLED ALLEN TILLERY AUTO (LOCATED AT 4573 CENTRAL AVE, HOT SPRING, AR 71913, (501) 881-4160) AND WAS INFORMED THAT THE AIR BAG SHOULD HAVE DEPLOYED SINCE IT WAS JUST INSTALLED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE AND DID NOT ASSIST. THE APPROXIMATE FAILURE MILEAGE WAS 135,000. |

| | | | | | |
|---|---|---|---|---|---|
| 10331536 | CHEVROLET | SILVERADO | 2007 | 2007-09-07 | TL* THE CONTACT OWNS A 2007 CHEVROLET SILVERADO. THE CONTACT STATED THAT WHILE TRAVELING APPROXIMATELY 35 MPH, A VEHICLE AHEAD OF HIM MADE AN UNEXPECTED LEFT TURN. THE CONTACT CRASHED INTO THE THE PRECEDING VEHICLE AND THE AIR BAGS DID NOT DEPLOY UPON IMPACT. THE CONTACT WAS INJURED AND A POLICE REPORT WAS FILED ACCORDINGLY. THE VEHICLE WAS TOWED TO A LOCAL DEALER WHERE UNKNOWN REPAIRS WERE MADE THE VEHICLE WAS TRADED IN. THE VIN WAS NOT AVAILABLE AND THE FAILURE MILEAGE WAS APPROXIMATELY 28,000.    UPDATED 07/19/10  *BF  UPDATED 07/21/10 |
| 10585572 | CHEVROLET | SILVERADO | 2007 | 2014-04-22 | TL* THE CONTACT OWNS A 2007 CHEVROLET SILVERADO. THE CONTACT STATED THAT WHILE DRIVING 45 MPH, THE VEHICLE HYDRO PLANED AND THE CONTACT CRASHED INTO THE ROAD BARRIER. NO AIR BAGS DEPLOYED UPON IMPACT. THERE WERE FOUR INJURIES AND A POLICE REPORT WAS FILED. INJURY DETAILS WERE NOT AVAILABLE. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE AND CURRENT MILEAGE WAS 102,000. |
| 10606814 | CHEVROLET | SILVERADO | 2007 | 2014-06-12 | ON IMPACT TO FRONT END OF MY VEHICLE THE AIR BAGS DID NOT DEPLOY. THE AIR BAGS ON THE OTHER VEHICLE DID DEPLOY. HOW CAN I BE SURE MY AIRBAGS ARE FUNCTIONING PROPERLY. THERE IS ABOUT $9,000 DAMAGE TO MY VEHICLE. I AM SENDINGAGAIN BECAUSE I AM NOT CERTAIN THE FIRST ONE WENT THROUGH. *TR |
| 10608220 | CHEVROLET | SILVERADO | 2007 | 2012-08-17 | VEHICLE WAS INVOLVED IN HEAD ON COLLISION THAT TOTALED IT. OTHER VEHICLE WAS AN OLDER MODEL VAN, DO NOT KNOW EXTENT OF DAMAGES TO IT . MY CONCERN IS THE AIR BAGS DID NOT DEPLOY .WAS TOLD BY GM THAT CRASH DID NOT MEET CRITERIA FOR DEPLOYMENT!!!!!  A HEAD ON COLLISION AT 50 MPH THAT TOTALED 2500 SERIES CHEVY TRUCK .   HARD FOR ME TO BELIEVE I NOW OWN A 2008 CHEVY 1500 SERIES . DO I NEED TO CONCERNED?. *TR |
| 10649638 | CHEVROLET | SILVERADO | 2007 | 2014-09-29 | TL* THE CONTACT OWNS A 2007 CHEVROLET SILVERADO 1500. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 15 MPH, THE VEHICLE CRASHED INTO A TREE CAUSING EXTENSIVE DAMAGE TO THE FRONT END. THE CONTACT INDICATED THAT DURING THE CRASH THE FRONT AIR BAGS DID NOT DEPLOY AND THE DRIVER SUFFERED INJURIES TO THE RIGHT KNEE, WHILE THE FRONT PASSENGER SUFFERED INJURIES TO BOTH KNEES AND HEAD.  A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 95,000. |
| 10512756 | CHEVROLET | SUBURBAN | 2007 | 2013-05-19 | WE WERE DRIVING HOME WHEN A PERSON RAN A RED LIGHT AND HIT US . WE WERE CROSSING AN INTERSECTION ABOUT 35 MILES AN HOUR AND THEY HIT THE FRONT PART OF OUR SUBURBAN. EVERYTHING WAS DAMAGED THE HOOD , AND EVERYTHING INSIDE THE HOOD SUSTAINED DAMAGE.  THERE WAS A LIQUID THAT WAS LEAKING BUT I AM UNAWARE OF THE SUBSTANCE. THE PERSON THAT HIT US MUST HAVE BEEN GOING ABOUT 40-60 MILES AN HOUR . AFTER THEY FILED THE SEEN POLICE MENTIONED THAT THEIR AIR BAGS WERE DEPLOYED . MY CONCERN WAS WHY OUR AIR BAGS DID NOT DEPLOY AS WELL . MY DAUGHTER AND I BOTH HIT OUR HEADS ON OUR SIDE WINDOWS . MY SON HAD SLIGHT INJURY MOSTLY FROM THE SEATBELT . MY SONS DOOR HAD TO BE OPENED FROM THE POLICE OFFICER ON THE SCREEN . MY BIGGEST CONCERN WAS ABOUT THE AIRBAGS AND ALSO THE ONSTAR DID NOT WORK AS WELL . *TR |
| 10400538 | CHEVROLET | TAHOE | 2007 | 2010-03-19 | TL* THE CONTACT OWNS A 2007 CHEVROLET TAHOE. THE CONTACT STATED THAT THE VEHICLE WAS INVOLVED IN A FRONTAL CRASH WITH ANOTHER VEHICLE AT APPROXIMATELY 30 MPH BUT THE AIR BAGS DID NOT DEPLOY. THE DRIVER OF THE CONTACT'S VEHICLE AND A PASSENGER SUFFERED MINOR INJURIES. THE VEHICLE WAS DESTROYED AND A POLICE REPORT WAS FILED. THE CONTACT CALLED THE MANUFACTURER WHO TOOK A COMPLAINT BUT PROVIDED NO FURTHER ASSISTANCE. THE CURRENT AND FAILURE MILEAGES WERE UNKNOWN. THE VIN WAS UNAVAILABLE. |
| 10659540 | CHEVROLET | TAHOE | 2007 | 2014-03-16 | 2007 CHEVROLET TAHOE. AIRBAG DEPLOYMENT FAILURE DURING AN ACCIDENT. *TA |
| 10811111 | CHEVROLET | TAHOE | 2007 | 2014-04-17 | TL* THE CONTACT OWNS A 2007 CHEVROLET TAHOE. THE CONTACT STATED THAT WHILE DRIVING 50 MPH, THE CONTACT BLACKED OUT AND CRASHED INTO THE GUARDRAIL. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED HEAD INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. ON ANOTHER OCCASIONS, WHILE MAKING A LEFT TURN AT 15 MPH, THE CONTACT CRASHED INTO ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED AND THERE WERE NO INJURIES REPORTED. THE CONTACT ALSO STATED THAT THERE WERE TWO LARGE CRACKS IN THE DASHBOARD AND A THIRD CRACK DEVELOPED AS A RESULT OF THE FIRST CRASH. THE VEHICLE WAS TAKEN TO A DEALER HOWEVER, THE DIAGNOSIS WAS UNKNOWN. THE VEHICLE WAS REPAIRED AFTER BOTH FAILURES.  THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 120,000. |
| 10821342 | CHEVROLET | TAHOE | 2007 | 2015-11-16 | CRACKED DASH, POTENT HAZARD OF PLASTIC DASH PIECES BECOMING AIRBORNE SHRAPNEL IN THE EVENT OF CRASH WITH AIR BAGS DEPLOY. 2007 TAHOE DASH HAD SMALL 6 INCH CRACK AT THE 2 O CLOCK POSITION ON DRIVERS SIDE INSTRUMENT CLUSTER AND SMALL 1 INCH CRACK ON RIGHT SIDE OF PASSENGER SIDE AIRBAG. AFTER 25 MPH HEAD ON CRASH AIR BAGS DIDN'T DEPLOY BUT ADDITIONAL CRACKS HAVE APPEARED. NOW 10 X WORST. PICS WILL SHOW. DEALER DOESN'T WANT TO REPLACE NOR INSURANCE COMPANY. |
| 10854032 | CHEVROLET | TAHOE | 2007 | 2016-03-31 | TAHOE WAS INVOLVED IN FRONT COLLISION WITH ANOTHER VEHICLE AND BAGS DID NOT DEPLOY. BUMPER, HOOD DAMAGED. BUMPER METAL BRACKET PUSHED IN.TAHOE WAS TURNING LEFT ON LIGHT WHEN STRUCK BE ANOTHER VEHICLE LIKE HEAD ON. |

| | | | | | |
|---|---|---|---|---|---|
| 10959039 | CHEVROLET | TAHOE | 2007 | 2017-02-01 | TL* THE CONTACT OWNS A 2007 CHEVROLET TAHOE. WHILE DRIVING APPROXIMATELY 60 MPH, THE CONTACT'S VEHICLE CRASHED INTO THE REAR OF A SECOND VEHICLE. DURING THE CRASH, THE FRONT END OF THE VEHICLE SUSTAINED SIGNIFICANT DAMAGE. THE AIR BAGS DID NOT DEPLOY. THE DRIVER SUSTAINED INJURIES TO THE BACK, SHOULDERS, ARMS, LEFT LEG, AND KNEE. THE PASSENGER SUFFERED INJURIES TO BOTH KNEES. MEDICAL ATTENTION WAS RECEIVED. A POLICE REPORT WAS FILED. THE CAUSE OF THE FAILURE WAS NOT DIAGNOSED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE VIN WAS NOT AVAILABLE. THE FAILURE MILEAGE WAS 100,000. |
| 11265920 | CHEVROLET | TAHOE | 2007 | 2019-07-16 | TL* THE CONTACT OWNED A 2007 CHEVROLET TAHOE. WHILE DRIVING 35 MPH, A 2012 NISSAN FRONTIER SIDESWIPED THE CONTACT'S VEHICLE. THE CONTACT VEERED OFF THE ROAD AND CRASHED INTO A LIGHT POLE. THE AIR BAGS DID NOT DEPLOY. THE CONTACT SUSTAINED HEAD, BACK, NECK, HAND, AND KNEE INJURIES. MEDICAL ATTENTION WAS RECEIVED. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO AN INDEPENDENT LOT. THE CONTACT CALLED PATTERSON HYUNDAI TYLER (3120 S SW LP, TYLER, TX 75701, (903) 561-2404) AND INFORMED THEM OF THE FAILURE. THE VEHICLE WAS NOT DIAGNOSED. THE MANUFACTURER WAS NOT CONTACTED. THE VEHICLE WAS DEEMED A TOTAL LOSS BY THE INSURANCE COMPANY. THE FAILURE MILEAGE WAS 128,122. |
| 10252163 | CHEVROLET | TRAILBLAZER | 2007 | 2008-09-24 | ON 9/24/08 I WAS INVOLVED IN AN AUTO ACCIDENT WHERE MY 2007 CHEVROLET TRAILBLAZER'S AIRBAGS FAILED TO DEPLOY. MY VEHICLE IMPACTED ANOTHER WITH MY ENTIRE FRONT END AT APPROXIMATELY 45 MPH. MY TRAILBLAZER WAS TOTALED. NOT ONLY DID MY AIRBAGS FAIL TO DEPLOY, THE ONSTAR SYSTEM DID NOT AUTOMATICALLY GO OFF. I HAD TO HIT THE BUTTON TO SUMMON ASSISTANCE. WHEN WE ASKED THE DEALER ABOUT IT, THEIR RESPONSE WAS "SOMETIMES THEY GO OFF, SOMETIMES THEY DON'T" I SUSTAINED A BROKEN LEFT ARM, NUMEROUS BRUISES, A CUT ON MY ANKLE AND AN ANKLE SPRAIN. I ALSO INJURED MY BACK AND NECK WHICH IS REQUIRING ONGOING CARE. *TR |
| 10289962 | CHEVROLET | TRAILBLAZER | 2007 | 2009-10-18 | AIRBAGS DID NOT DEPLOY IN CRASH IMPACT ESTIMATED AT APROX 60 MPH. VEHICLES AIRBAG THAT DID NOT DEPLOY WAS A FRONTAL CRASH. T-BONED ANOTHER VEHICLE THAT PULLED OUT IN FRONT OF MENTIONED VEHICLE. *TR |
| 10478475 | CHEVROLET | TRAILBLAZER | 2007 | 2012-05-14 | TL* THE CONTACT OWNS A 2007 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING 40 MPH, THE CONTACT CRASHED HEAD ON INTO ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT WAS TAKEN TO THE HOSPITAL FOR TREATMENT OF WHIPLASH AND EYE INJURIES. THE ENTIRE FRONT END OF THE VEHICLE WAS SEVERELY DAMAGED. THE POLICE WERE NOTIFIED AND A REPORT WAS FILED. THE MANUFACTURER WAS NOTIFIED AND A REPRESENTATIVE WAS SENT TO INSPECT THE VEHICLE, STATING THAT THE VEHICLE PERFORMED AS DESIGNED. THE VIN WAS UNKNOWN. THE FAILURE MILEAGE WAS 64,056. |
| 10482863 | CHEVROLET | TRAILBLAZER | 2007 | 2012-05-13 | TL* THE CONTACT OWNED A 2007 CHEVROLET TRAILBLAZER. THE CONTACT STATED HE WAS GETTING SICK WHILE DRIVING AND CRASH INTO ANOTHER VEHICLE. THE CONTACT STATED THAT THE AIR BAGS DID NOT DEPLOY. THE VEHICLE WAS NOT DESTROYED AND THERE WAS A POLICE REPORT FILED. THE CONTACT SUSTAINED A WHIPLASH INJURY AND SEVERE HEADACHE. THE MANUFACTURER WAS NOTIFIED WHO SENT A TECHNICIAN TO LOOK AT THE VEHICLE AND THEY STATED THAT THE AIR BAGS FUNCTIONED PROPERLY. THE FAILURE MILEAGE WAS 65,000. UPDATED 01/10/13*LJ UPDATED 1/11/13 *JS |
| 10661436 | CHEVROLET | TRAILBLAZER | 2007 | 2014-12-01 | TL* THE CONTACT OWNS A 2007 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 20 MPH, ANOTHER VEHICLE CRASHED INTO THE CONTACTS VEHICLE WHILE CROSSING AN INTERSECTION. THE AIR BAGS FAILED TO DEPLOY. THE VEHICLE WAS DESTROYED. IT WAS UNKNOWN IF ANY INJURIES WERE SUSTAINED OR IF A POLICE REPORT WAS FILED. THE MANUFACTURER WAS NOT NOTIFIED. THE FAILURE MILEAGE WAS 140,000. THE VIN WAS UNAVAILABLE. |
| 10661920 | CHEVROLET | TRAILBLAZER | 2007 | 2014-11-12 | TL* THE CONTACT OWNED A 2007 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING AT APPROXIMATELY 20 MPH CROSSING AN INTERSECTION, ANOTHER VEHICLE CRASHED INTO THE CONTACTS VEHICLE AND THE AIR BAGS FAILED TO DEPLOY. THE VEHICLE WAS DESTROYED. NO INJURIES WERE REPORTED. THE MANUFACTURER WAS NOT NOTIFIED OF THE ISSUE. THE FAILURE MILEAGE WAS 140,000. THE VIN WAS UNAVAILABLE. |
| 10664216 | CHEVROLET | TRAILBLAZER | 2007 | 2014-05-17 | IT WAS RAINING AND WE WERE ON OUR WAY HOME DRIVING DOWN THE HIGHWAY AND HIT A WATER PUDDLE AND HYDROPLANED OFF THE SIDE OF THE ROAD THE TRUCK CUT OFF AND SPENT AROUND HIT A TREE HEAD ON AND THE AIRBAGS DIDN'T DEPLOY. I WAS HOSPITALIZED WITH MULTIPLE INJURIES AND IM STILL SUFFERING. *TR |
| 10715742 | CHEVROLET | TRAILBLAZER | 2007 | 2015-04-27 | A VEHICLE WAS STOPPED IN FRONT OF ME AND I REAR ENDED THEM. I WAS GOING AROUND 44-55 MPH. AFTER I HIT THE OTHER CAR FROM BEHIND I CROSSED 2 LANES OF TRAFFIC AND WENT THRU A PRETTY DEEP DITCH. THE AIR BAGS DID NOT DEPLOY AT ALL. I SUSTAINED A CONCUSSION., SEVERAL HEAD LACERATIONS AND A FRACTURED LUMBAR SPINE. |
| 10733714 | CHEVROLET | TRAILBLAZER | 2007 | 2015-07-04 | SWERVED TO AVOID HITTING A DEER ALMOST HIT MAILBOXES SO SWERVED. TO AVOID THEM. I SWERVED TO MUCH THAN IN MY CORRECTION HIT THE GAS INSTEAD OF THE BRAKE. I THAN HIT A TREE BETWEEN 45 - 50 MPH. MY AIRBAGS NEVER DEPLOYED. |

| | | | | | |
|---|---|---|---|---|---|
| 10934884 | CHEVROLET | TRAILBLAZER | 2007 | 2016-12-07 | I HAD MY CRUISE SET ON 55 MPH AND WAS HIT HEAD ON BY VW JETTA PULLING OUT TOWARD MY VEHICLE, THEN FORCED TO LEFT INTO A TELEPHONE POLE. AIRBAGS DIDN'T DEPLOY, AND RECEIVED BROKEN STERNUM. DON'T KNOW IF SEATBELT INJURED ME, OR IF THE SEATBELT DIDN'T LOCK ON 2ND IMPACT AND POSSIBLY HIT THE STEERING WHEEL. |
| 10208661 | GMC | ACADIA | 2007 | 2007-10-12 | INVOLVED IN FRONTAL COLLISION WITH CONSIDERABLE DAMAGE, BUT AIR BAG DID NOT DEPLOY. *TR |
| 10498046 | GMC | ACADIA | 2007 | 2013-02-09 | TL* THE CONTACT OWNS A 2007 GMC ACADIA. THE CONTACT STATED THAT WHILE DRIVING 20 MPH, ANOTHER VEHICLE CRASHED INTO HIS VEHICLE IN THE MIDDLE OF THE INTERSECTION. UPON IMPACT, THE AIR BAGS FAILED TO DEPLOY. THE CONTACT STATED THAT HE WAS PINNED IN THE VEHICLE AND COULD NOT GET OUT. THE VEHICLE HAD SEVERE DAMAGES TO THE DRIVER SIDE AND WAS COMPLETELY DESTROYED. THE CONTACT SUSTAINED INJURIES TO HIS HEAD AND CHEST. THE CONTACT WAS TAKEN TO THE EMERGENCY ROOM BY FAMILY. THE POLICE WERE NOTIFIED AND A REPORT WAS AVAILABLE IF NEEDED. THE MANUFACTURER WAS NOTIFIED WHO STATED THAT A REPRESENTATIVE WILL GIVE HIM A RETURN CALL. THE FAILURE MILEAGE WAS 91,000. UPDATED 3/10/13 *CN |
| 10959190 | GMC | ACADIA | 2007 | 2017-03-02 | TL* THE CONTACT OWNED A 2007 GMC ACADIA. WHILE MAKING A LEFT TURN AT APPROXIMATELY 5 MPH FROM A STOP SIGN, A SPEEDING VEHICLE CRASHED HEAD-ON INTO THE FRONT CENTER OF THE CONTACT'S VEHICLE. THE AIR BAGS DID NOT DEPLOY. BOTH THE CONTACT AND A MINOR PASSENGER, SEATED IN THE REAR BEHIND THE DRIVER, SUSTAINED INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE CONTACT'S VEHICLE WAS TOTALED AND WAS TOWED TO A TOW YARD. THE FAILURE MILEAGE WAS APPROXIMATELY 140,000. |
| 10604975 | GMC | ENVOY | 2007 | 2014-06-20 | MY WIFE WAS DRIVING HOME FROM THE DOCTOR AND A FULL SIZE CHEVY CAME ACROSS ON HER SIDE AND HIT HER HEAD ON NEITHER AIR BAG DEPLOYED ON THE ENVOY BOTH VEHICLES WAS TOTALED WHAT SHOULD WE DO THANKS. *TR |
| 10639641 | GMC | ENVOY | 2007 | 2014-04-27 | A GUY HIT ME ON THE DRIVERS SIDE THEN IT PUSHED ME INTO A DRIVEWAY OF A BUSINESS WHICH HAD A BRICK WALL WHICH I HIT &BOUNCED OFF IT. POPPED BOTH TIRES ON THE DRIVERS SIDE. THEN I HIT A TELEPHONE POLE STRAIGHT ON &SMASHED IN MY FRONT ON MY CAR. I MOVED THE TELEPHONE POLE IN THE CONCRETE ABOUT 2 IN. I WAS THE SECOND OWNER. THE OTHER OWNER WAS THE DEALERSHIP &THY HAD IT JUST FOR THERE CAR TO RUN FROM 1 DEALERSHIP TO THE OTHER. I HAD TO GO TO THE HOSPITAL &I AM STILL HAVING TREATMENT ON MY NECK BACK &SHOULDER. NOT 1 OF THE AIR BAGS WENT OFF. IT WAS TOWED AWAY &THEN WAS TOTALED. I HAVE HIRED AN ATTORNEY. *TR |
| 10915508 | GMC | ENVOY | 2007 | 2016-08-10 | I HIT A GUARD RAIL AT 67 MPH...SPIKE WITH GMC AND SHE NOTIFY ME THAT MY THRESHOLD (SPEED AND IMPACT) WERE NOT ENOUGH TO SET AIRBAGS OFF...REALLY. .67 MPH..I WAS ON A HIGHWAY SWEATED TO MISS SEMI ..KICKED IT AND IT FLEW ME IN A CIRCLE AND HIT GAURDRAIL. .IMPACT HIT HARD THAT THEY HAD TO PRY BUMPER OFF RAIL AND CAR..FRAME WENT THROUGH RADIATOR BUT NO AIRBAGS DEPLOEYED??? TRYING TO FIND LAWYER NO ONE WILL TAKE XASE???? |
| 10290508 | GMC | YUKON | 2007 | 2009-09-14 | TRAVELING AT NIGHT, AT 65 MILES AN HOUR IN A 2007 YUKON SLE2 4 DR WAGON, I HIT A STEER (APPROXIMATELY 880LBS). UPON IMPACT, THE BOTTOM OF MY POWER DRIVER'S SEAT MOVED FORWARD AND THE BACK OF THE SEAT TILTED FORWARD, CAUSING ME TO HIT THE STEERING WHEEL. I HAD TO MOVE THE SEAT BACK TO GET OUT OF THE VEHICLE. THE AIRBAGS DID NOT DEPLOY. I REPORTED THE INCIDENT TO THE DEALER, AND MY INSURANCE AGENT BOTH VERBALLY AND IN WRITING. THE VEHICLE HAD OVER $11,000.00 WORTH OF DAMAGE, BUT THE REPAIR CENTER STATED THEY WERE UNABLE TO FIND ANY DAMAGE TO THE SEAT. I TRADED THE VEHICLE IN, AS I DID NOT FEEL SAFE DRIVING IT WITH THE SEAT NOT BEING REPLACED OR REPAIRED. THE VEHICLE IS NOW FOR SALE AGAIN, AND I AM FEARFUL THAT SOMEONE ELSE WILL BE IN A WRECK AND THE SEAT WILL MALFUNCTION AGAIN. *TR |
| 10701604 | GMC | YUKON | 2007 | 2015-03-06 | TL* THE CONTACT OWNS A 2007 GMC YUKON. WHILE DRIVING APPROXIMATELY 60 MPH, THE CONTACT CRASHED INTO ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. THERE WERE NO INJURIES AND A POLICE REPORT WAS FILED. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 180,000. THE VIN WAS NOT AVAILABLE. |
| 11034703 | GMC | YUKON | 2007 | 2014-10-09 | I HAVE TRIED TO SUBMIT MY YUKON FOR TANAKA RECALL REMEDY SEVERAL TIMES BY CONTACTING MY LOCAL GMC DEALERSHIP. THEIR SERVICE DEPT CONTINUES TO TELL ME THAT THEY DO NOT HAVE PARTS AVAILABLE TO MODIFY MY VEHICLE. A FEW YEARS AGO I BROADSIDED A LEXUS SUV WHICH "RAN A TRAFFIC LIGHT". MY AIRBAGS DID NOT DEPLOY, WHILE SEVERAL OF THE AIRBAGS DEPLOYED IN THE LEXUS. I FELT THAT MY LIFE MIGHT HAVE BEEN AT RISK SINCE THE AIRBAGS DID NOT DEPLOY, OR ALTERNATELY, AT EVEN WORST RISK IF THEY DID EXPLODE UPON DEPLOYMENT. WHO IS RESPONSIBLE FOR ADDRESSING THIS ISSUE? THE GMC DEALER SAYS THEY ARE NOT! I HAVE PHOTOS OF THE ACCIDENT AND A POLICE REPORT STATING THAT THE LADY WAS RESPONSIBLE FOR |
| 10907149 | CADILLAC | SRX | 2006 | 2016-09-01 | TL* THE CONTACT OWNED A 2006 CADILLAC SRX. WHILE DRIVING VARIOUS SPEEDS, THE VEHICLE HIT A CURB AND DROVE INTO A BUILDING. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO AN INDEPENDENT MECHANIC WHERE IT WAS DEEMED DESTROYED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 77,814. UPDATED 10/26/16*LJ *TR |

| | | | | | |
|---|---|---|---|---|---|
| 10223015 | CHEVROLET | EQUINOX | 2006 | 2008-02-28 | FOUR CAR PILEUP ON HWY 41 NB. WE WERE VEH #3 AND HIT FORWARD AND WERE HIT FROM BEHIND. OUR SEAT BELTS DID NOT RESTRAIN US AND THE AIR BAGS DID NOT DEPLOY. MY HUSBAND , ERNST, FLEW INTO THE DASHBOARD AND I SLAMMED INTO THE STEERING WHEEL.  *TR |
| 10241948 | CHEVROLET | EQUINOX | 2006 | 2008-09-10 | THE VEHICLE WAS INVOLVED IN A FRONTAL CRASH.  THE DRIVER NOR THE PASSENGER AIRBAG DEPLOYED.  THE WHOLE FRONT END OF THE VEHICLE WAS PUSHED IN. *TR |
| 10279951 | CHEVROLET | EQUINOX | 2006 | 2009-08-04 | VEHICLE INVOLVED IN A ONE-AUTO ACCIDENT - 2006 CHEVROLET EQUINOX - HYDROPLANED AND HIT AN EMBANKMENT WITH THE FRONT END AND FLIPPED OVER.  THE AIR BAG DID NOT DEPLOY. THIS IS NOT THE FIRST TIME THIS VEHICLE HAS HAD AN IMPACT TO THE FRONT BUMPER AND THE AIR BAG HAS NEVER DEPLOYED.  EACH TIME THE FRONT BUMPER HAD DAMAGE SUSTAINED WHICH SHOULD HAVE CAUSED THE IMPACT THE SET THE AIR BAG OFF .  *TR |
| 10342436 | CHEVROLET | EQUINOX | 2006 | 2010-07-07 | 2006 CHEVY EQUINOX AIR BAGS DID NOT DEPLOY IN MY DAUGHTER'S FRONT CRASH ACCIDENT. HER CAR WAS TOTALED. SHE HIT A MAILBOX AND IN A SPIN ON THE DRIVER'S FRONT SIDE HIT A TELEPHONE POLE.  SHE HIT HER HEAD ON THE STEERING WHEEL AND HURT HER BACK.  THE REAR WINDSHIELD WAS ALSO SHATTERED AND ALSO HAD A BACK FLAT TIRE. I CALLED OUR LOCAL GM DEALER AND THEY TOLD ME TO CALL GM. SHE CALLED GM BUT THEY GOT HER UPSET AND SHE IN OTHER WORDS SAID THERE WAS NOTHING THEY COULD DO ABOUT THE AIR BAGS NOT DEPLOYING. IN OTHER WORDS THIS IS A DEFECT OF THIS MODEL AND THEY AREN'T GOING TO DO ANYTHING ABOUT IT. *TR |
| 10503970 | CHEVROLET | EQUINOX | 2006 | 2013-03-19 | I RAN OFF THE SIDE OF THE ROAD INTO A GUARDRAIL AND COULD NOT STOP UNTIL I WAS ON TOP OF THE GUARDRAIL INTO AN EMBANKMENT. MY ENTIRE FRONT END WAS DESTROYED AS WELL AS MOST OF THE UNDERNEATH OF THE CAR. MY FACE HIT THE STEERING WHEEL CAUSING ME TO LOSE CONSCIOUSNESS AS WELL AS GIVING ME A BLACK EYE, CROOKED TEETH, CUTS, BROKEN DENTAL APPLIANCES, AND MY TEETH WENT THROUGH MY LIP. I STRONGLY BELIEVE MY AIRBAGS SHOULD HAVE DEPLOYED AND PREVENTED THE IMPACT OF MY FACE TO THE STEERING WHEEL SINCE I THOUGHT THAT IS WHAT AIRBAGS ARE FOR. MY CAR WAS TOTALED.  *TR |
| 10560310 | CHEVROLET | EQUINOX | 2006 | 2013-11-14 | HIT A ONE TON LOW BED DUMP TRUCK, THE WHOLE FRONT END OF MY SUV WAS DEMOLISHED, MY AIRBAGS DIDN'T DEPLOY AND I ENDED UP WITH REALLY BAD WHIPLASH FROM THE ACCIDENT, TO WHERE I'M STILL IN MAJOR PAIN! WONDERING IF THERE WAS A LAWSUIT AGAINST THIS? NEVER DEALT WITH A WRECK THIS BAD, I WAS JUST CURIOUS!  *TR |
| 10586081 | CHEVROLET | EQUINOX | 2006 | 2014-05-01 | MY AIRBAG DID NOT DEPLOY WHEN THE CAR HIT THE TREE. IT HIT SO HARD THE BACK TIRES CAME COMPLETELY OFF THE GROUND.  *TR |
| 10939297 | CHEVROLET | EQUINOX | 2006 | 2016-12-30 | MY GRANDDAUGHTER WAS INVOLVED IN AN ACCIDENT WHERE AS ANOTHER VEHICLE FAILED TO STOP AT A STOP SIGN AND PULLED INTO HER PATH. SHE AND THE OTHER VEHICLE WERE BOTH AT A SPEED OF 25 MPH. THE FRONT CLIP WAS TORN FROM HER CAR AND NO DRIVERS AIRBAG DEPLOYED. SHE DID HAVE HER SEATBELT ON WHICH DID PREVENT SERIOUS INJURY. THE ACCIDENT OCCURRED 30 DEC 2016. THIS HAPPENED ON CITY STREETS. |
| 10343112 | CHEVROLET | SILVERADO | 2006 | 2010-03-22 | TL* THE CONTACT OWNS A 2006 CHEVROLET SILVERADO. THE CONTACT STATED WHILE TRAVELING AT 40 MPH WHEN AN 18-WHEELER DROVE IN FRONT OF THE CONTACT SUDDENLY. THE CONTACT DID NOT HAVE ENOUGH TIME TO STOP THE VEHICLE BEFORE CRASHING INTO THE TRUCK. THE AIR BAGS DID NOT DEPLOY. THE CONTACT SUSTAINED MINOR BRUISING. THE VEHICLE WAS TOWED TO A LOCAL REPAIR FACILITY WHERE THE CONTACT WAS AWAITING REPAIRS. THE POLICE ADVISED THAT THE AIR BAGS SHOULD HAVE DEPLOYED UPON IMPACT. THE FAILURE MILEAGE AND CURRENT MILEAGES WERE 88,508. |
| 10411579 | CHEVROLET | SILVERADO | 2006 | 2010-07-28 | MY 2006 SILVERADO 2500 HD AIR BAG DID NOT DEPLOY DURING MY ACCIDENT ON JULY 28, 2010.  I TRIED SENDING ALL INFORMATION IN THE MAIL BUT, YOU JUST SENT IT BACK TO ME. COPING THAT WAS SENT TO ME FROM GENERAL MOTORS OF THEIR EXPLANATION OF THEY ARE NOT THE ONES RESPONSIBLE FOR THIS BECAUSE THEY DIDN'T MAKE THIS PRODUCT. NOT TO MENTION THAT ONSTAR DIDN'T COME ON AS THEY SHOW ON THEIR TV ADS'.  IF I HAD NOT REGAIN CONSCIENCE. DON'T KNOW WHEN THEY WOULD HAVE FOUND ME THERE WHERE I WENT OFF THE ROAD JUST 4 MILES FROM MY HOME.   DON'T KNOW IF ANYONE WOULD HAVE THOUGHT OF CALLING ONSTAR ABOUT LOOKING FOR MY TRUCK.  IF GM VEHICLES ARE SO SAFE AND LEAD US TO BELIEVE HOW? SAFE AND RELIABLE THEIR VEHICLES ARE.  THEN WHY? THEY ARE NOT STANDING BEHIND THEIR PARTS NOW.  THE VEHICLE WAS TOTAL AND THE ONLY THING THAT SAVED ME WAS MY SEAT BELT. EVEN DOE I WAS STILL BADLY INJURED FROM MY NECK TO MY TAIL BONE.  GM DOESN'T CARE TO OWN UP TO NO KIND OF RESPONSIBILITY FOR ANYTHING.  I'M STILL AFRAID TO DRIVE MY 2010 CAMARO BECAUSE IT HAS THE SAME EQUIPMENT  AS THE 2006 PICKUP THAT I TOTALED.  I DRIVE IT WHENEVER I HAVE NO CHOICE.  WHEN THE DODGE TRUCK ISN'T HERE.  EVERY OTHER WEEK WHEN MY HUSBAND NEEDS IT. I'VE SENT YOU ALL THE PICTURES AND SOME OF THE LETTERS THAT GM'S [XXX] HAS SENT TO ME BUT, YOU DIDN'T EVEN OPEN IT ALL YOU DID WAS SEND IT BACK UNOPENED.   WHAT'S UP WITH THIS??????????????  MY NAME IS: [XXX] , MY ADDRESS IS:[XXX]; [XXX]   INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6).  *TR |

| 10775393 | CHEVROLET | SILVERADO | 2006 | 2010-03-22 | TL* THE CONTACT OWNS A 2006 CHEVROLET SILVERADO. WHILE DRIVING AT 25 MPH, ANOTHER VEHICLE FAILED TO YIELD. AS A RESULT, THE CONTACT CRASHED INTO THE PASSENGER SIDE OF ANOTHER VEHICLE AND THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED HIP AND PELVIC INJURIES ON THE RIGHT SIDE THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 70,000. |
| 10717429 | CHEVROLET | TAHOE | 2006 | 2015-05-09 | DRIVER FELL ASLEEP RAN INTO THE BACK OF A SEMI TRUCK, AIRBAG DID NOT DEPLOY. VEHICLE WAS A TOTAL LOSS. |
| 10217793 | CHEVROLET | TRAILBLAZER | 2006 | 2008-02-07 | AROUND 11:45PM A 2006 CHEVY TRAILBLAZER TRAVELING OVER THE SPEED LIMIT ON MY STREET CRASHED INTO A TREE, A PARKED CAR, AND THEN CONTINUED TO ROLL OVER ACROSS MY FRONT LAWN, LANDING SIDEWAYS AFTER FLIPPING SEVERAL TIMES. THE OCCUPANTS WERE SEVERELY INJURED. NO AIRBAGS DEPLOYED DURING THE CRASH. THE DRIVER OF THE VEHICLE IS IN ICU NEEDING FACIAL RECONSTRUCTIVE SURGERY. *TR |
| 10227418 | CHEVROLET | TRAILBLAZER | 2006 | 2008-05-09 | WHILE DRIVING ON A DIRT ROAD THAT ONLY FITS ON CAR, I WAS INVOLVED IN A HEAD ON COLLISION INVOLVING A JEEP CHEROKEE. THERE WAS EXTENSIVE FRONT DAMAGE HOWEVER, THE AIRBAG DID NOT DEPLOY NOR DID ONSTAR CONTACT ME. I HAVE VERY PAINFUL NECK, HEAD, SHOULDER, AND RIGHT ARM PAIN. *TR |
| 10244652 | CHEVROLET | TRAILBLAZER | 2006 | 2008-08-28 | WE WERE INVOLVED IN A HEAD ON COLLISION WITH ANOTHER VEHICLE. BOTH WERE TRAVELING AT APPROXIMATELY 45 MPH. THE AIR BAGS DID NOT DEPLOY. I WAS DRIVING THE VEHICLE AND HAVE A BROKEN RIGHT LEG, BROKEN LEFT HEEL AND ANKLE. I WAS TEMPORARILY KNOCKED UNCONSCIOUS FROM HITTING THE STEERING WHEEL. MY WIFE SUFFERED A BROKEN WRIST, FRACTURED PELVIS, AND FRACTURED TIBULA. *TR |
| 10364174 | CHEVROLET | TRAILBLAZER | 2006 | 2010-10-01 | IN APPROXIMATELY APRIL OF 2010 MY GAS GAGE ON MY 06 TRAILBLAZER QUIT WORKING. THE PART WAS NO LONGER UNDER WARRANTY AT 84K MILES. VERY DANGEROUS WHEN TRAVELING 400 MILES WITH ELDERLY AUNT AND SMALL CHILD 2X A WEEK. ON OCTOBER 1, 2010 I WAS INVOLVED IN A HIGH SPEED COLLISION WHEN A CAR PULLED IN FRONT OF ME, WHILE I WAS GOING 70MPH. THE AIRBAGS DID NOT DEPLOY, I SUFFERED MAJOR TRAUMA TO MY KNEES AND AM UNABLE TO WALK WELL OR DRIVE. I HIT MY HEAD ON THE STEERING WHEEL AND CONTINUE TO HAVE PAIN. MY ELDERLY AUNT BROKE 3 CERVICAL VERTEBRAE AND STILL HAS A TRACHIOTOMY OVER A MONTH LATER. SHE IS STILL IN THE HOSPITAL, AND IT IS UNKNOWN IF SHE WILL COME HOME. *TR |
| 10389988 | CHEVROLET | TRAILBLAZER | 2006 | 2011-02-24 | INERTIA REEL ON SEATBELT FAILED. NO AIR BAG DEPLOYMENT. 2006 TRAILBLAZER. FULL STRAIGHT HEAD ON CRASH. *TR |
| 10524151 | CHEVROLET | TRAILBLAZER | 2006 | 2013-05-30 | THIS COMPLAINT IS BEING FILED ON BEHALF OF THE VEHICLE OWNER AND DRIVER. THIS CHEVY TRAILBLAZER WAS INVOLVED IN A TWO VEHICLE, DOUBLE FATAL CRASH. THE FRONT OF THE TRAILBLAZER STRUCK THE DRIVER'S SIDE DOOR OF A CAVALIER THAT FAILED TO YIELD FROM A STOP SIGN. THE TRAILBLAZER STAYED CONNECTED WITH THE CAVALIER, FORCING IT OFF THE LEFT SIDE OF THE ROADWAY AND INTO A LARGE TREE. BOTH OCCUPANTS IN THE CAVALIER WERE FATALLY INJURED. THE FRONT AIRBAGS DID NOT DEPLOY ON THE TRAILBLAZER AND NO EVENT WAS RECORDED ON THE AIRBAG CONTROL MODULE. *TR |
| 10548331 | CHEVROLET | TRAILBLAZER | 2006 | 2013-10-10 | I WAS DRIVING DOWN THE HIGHWAY AND HAD GOT CUT OFF BY A CAR. I SWERVED AND AVOIDED HITTING THE CAR BUT ENDED UP HITTING THE MEDIAN ALMOST DIRECTLY HEAD ON. THE WHOLE FRONT OF THE VEHICLE WAS SMASHED IN AND THE VEHICLE WAS TOTALED. THE AIRBAGS NEVER WENT OFF, ME AND MY PASSENGER WERE BOTH WEARING OUR SEAT BELT AND I ENDED UP HITTING MY HEAD ON THE STEERING WHEEL LEAVING ME UNCONSCIOUS. AN AMBULANCE RUSHED ME TO THE HOSPITAL AND I RECEIVED 10 STITCHES ABOVE MY LEFT EYE. *TR |
| 10550276 | CHEVROLET | TRAILBLAZER | 2006 | 2013-10-28 | TL* THE CONTACT OWNS A 2006 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 35 MPH, SHE LOST CONTROL OF THE VEHICLE WHILE DRIVING IN SNOWY WEATHER. THE VEHICLE NOSE DIVED INTO AN EMBANKMENT AND THEN CRASHED INTO A BOULDER. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT WAS TRANSPORTED TO THE HOSPITAL VIA AMBULANCE FOR TREATMENT OF A CONCUSSION AND BRUISING. THE FRONT PASSENGER WAS ALSO INJURED AND SUSTAINED BRUISING. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 102,000. |
| 10679561 | CHEVROLET | TRAILBLAZER | 2006 | 2014-10-06 | TL* THE CONTACT OWNED A 2006 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING AT 35 MPH, THE DRIVER DRIFTED OFF THE ROAD AND CRASHED THE VEHICLE INTO A TREE. THE AIR BAGS DID NOT DEPLOY. THE CONTACT SUSTAINED A FRACTURED NOSE AND LEFT CHEEKBONE THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED AND TOWED BACK TO THE CONTACTS RESIDENCE. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 199,000. |
| 10888990 | CHEVROLET | TRAILBLAZER | 2006 | 2016-07-21 | VEHICLE WAS TRAVELING ON CITY STREET AT 30MPH WHEN IT STRUCK A UTILITY POLE, SHEARING IT OFF AT THE BASE. VEHICLE THEN TRAVELED STRAIGHT UP A HILL AND STRUCK A HOUSE, COMING TO REST THERE. NONE OF THE AIR BAGS DEPLOYED. NEWS STORY AT HTTP://WWW.WGEM.COM/CATEGORY/133158/VIDEO-LANDING-PAGE?&CLIPID=12610200&AUTOSTART=TRUE |

| | | | | | |
|---|---|---|---|---|---|
| 10955948 | CHEVROLET | TRAILBLAZER | 2006 | 2016-09-08 | LETTER FROM SENATOR NELSON ON BEHALF OF CONSTITUENT REGARDING GENERAL MOTOR SAFETY DEFECTS. *LD  THE CONSUMER SUGGESTED THERE WAS A DEFECT WITH THE GM AIR BAGS IN 2006 CHEVROLET TRAILBLAZER, IN WHICH THE DRIVER SUSTAINED A BRAIN INJURY AND HIS WIFE WAS INJURED, WHEN IT WAS IMPACTED ON THE DRIVER'S SIDE, RESULTING IN LEFT A-PILLAR CONTACT WHEN THE AIR BAG FAILED TO DEPLOY AND HIS SEAT BELT RESTRAINTS FAILED.  THE CRASH WAS OF ENORMOUS SEVERITY, WITH A SPEED CHANGE OF 38 MPH WITH A LINE FORCE IN THE DIRECTION OF THE A PILLAR. *JB |
| 10966507 | CHEVROLET | TRAILBLAZER | 2006 | 2017-02-27 | I WAS IN A CRASH AND NEITHER FRONT AIRBAG DEPLOYED, MY INSURANCE ADJUSTER QUESTIONED IF THE AIR BAG SYSTEM EVEN WORKS. I HAVE COPY OF THE ESTIMATE TO REPAIR AS WELL. DUE TO THE FORCE OF IMPACT EVEN LOCAL REPAIR SHOP STATED THAT MY AIR BAGS SHOULD HAVE GONE OFF AS WELL. IS THERE A RECALL ON THIS MODEL FOR AIR BAGS NOT DEPLOYING? I WAS IN A SECOND WRECK ON 3/7/17 AND NEITHER AIR BAG DEPLOYED AT THAT TIME EITHER AND THERE WAS NO BUMPER SO AIR BAGS SHOULD HAVE DEFINITELY GONE OFF. |
| 10403445 | GMC | ENVOY | 2006 | 2011-05-20 | I HAD A CRASH AT 45 MPH INTO A LARGE TREE $9000+ DAMAGE TO THE FRONT END OF MY CAR AND THE AIRBAG NEVER WENT OFF. ONSTAR WAS CALLED AND HELPED ME. |
| 10704170 | GMC | ENVOY | 2006 | 2015-03-22 | I WAS INVOLVED IN A HEAD ON COLLISION, WHERE A CAR CAME AROUND A BUS INTO MY LANE . IT WAS A CLEAR CUT CASE OF WHO WAS AT FAULT.  MY CONCERN IS THAT MY AIR BAG NEVER DEPLOYED. THERE IS A DRIVER AND PASSENGER AIRBAG  IN THAT MODEL. IF NOT FOR MY SEAT BELT , I WOULD HAVE GONE THROUGH THE WINDSHIELD AND THE  VEHICLE WAS TOTALED FROM THE FORCE.  THERE ARE PICTURES I COULD FORWARD OF THE ACCIDENT.  I WANTED TO KNOW IF THERE WAS ANY THING ELSE I COULD DO TO ADDRESS THIS ISSUE.  THANK YOU  *TR |
| 10780171 | GMC | YUKON | 2006 | 2015-08-21 | MY FATHER  WAS DRIVING FROM DIALYSIS ON THE DECLINE OF A BRIDGE WHEN HE PASSED OUT BEHIND THE WHEEL. HE WAS WEARING HIS SEATBELT, AND THE VEHICLE RESTED AFTER HITING A TREE. THE AIRBAGS DID NOT DEPLOY. I HAVE CONTACTED GMC AND THERE IS AN INVESTIGATION PENDING, THEY HAVE SENT A REPRESENTAIVE TO INSPECT THE VEHICLE AND I AM AWAITING THE OUTCOME. I HAVE CONTACTED COPART AND HAD THE VEHICLE PLACED ON HOLD TO ALLOW NHTSA THE OPPORTUNITY TO DO THE SAME, IF YOU CHOOSE. 5017 DUNCAN ROAD, PUNTA GORDA, FL (941) 505-9700. PLEASE FEEL FREE TO CONTACT ME WITH ANY QUESTIONS. |
| 11377560 | GMC | YUKON | 2006 | 2011-06-07 | AIRBAG FAILED FUNCTION DUE TO LACK OF  INFLATOR PERFORMANCE DURING MY HUSBANDS HEAD-ON CRASH AND HE SUFFERED COLLAR BONE AND RIB FRACTURES,MASSIVE HEAD TRAUMA RESULTING IN A CRAINIOTOMY,BRAIN DAMAGE AND DEATH ONE MONTH LATER. THE VEHICLE WAS TRAVELLING AT 45MPH ON A PAVED TWO LANE STREET. |
| 10275950 | BUICK | RAINIER | 2005 | 2009-06-30 | 2005 BUICK RAINIER WAS IN A HEAD ON  COLLISION WITH A CHRYSLER TOWN & COUNTRY VAN IN COMING TRAFFIC.  MY WIFE DRIVING THE RAINIER HIT HER HEAD ON THE STEERING WHEEL AND BENT IT. SHE RECEIVE A LARGE LACERATION REQUIRING ABOUT 30 STITCHES, CLAVICLE STRAIN, BROKEN COLLAR BONE AND MULTIPLE BRUISES. SHE WAS WEARING THE SEAT BELT.  COLLISION WAS STRONG ENOUGH TO LIFT THE REAR OF THE CAR OFF THE GROUND AND TURN IT FACING THE SAME DIRECTION AS THE VAN SHE HIT.  THE AIRBAGS DID NOT DEPLOY! *TR |
| 10152376 | CADILLAC | ESCALADE | 2005 | 2006-03-01 | HAD A FRONT END COLLISION WITH ANOTHER VEHICLE AND NONE OF MY AIRBAGS DEPLOYED. THE VEHICLE WAS 4 WEEKS OLD AND HAD 1850 MILES AT THE TIME OF THE ACCIDENT.   CALLED CADILLAC CUSTOMER SERVICE AND WAS GIVEN AN AIRBAG HISTORY LESSON VIA TELEPHONE FROM SOMEONE THAT HAD NEVER SEEN MY VEHICLE OR INSPECTED IT FOR DAMAGE AFTER THE ACCIDENT.  AT THE END OF OUR CONVERSATION I WAS TOLD ALL WAS OK, NONE OF MY AIRBAGS SHOULD HAVE DEPLOYED AND NOT TO WORRY ABOUT IT.  THE ENTIRE FRONT END OF MY VEHICLE WAS KNOCKED OFF, THE FRAME HAS MULTIPLE CRACKS AND IS BENT AS A RESULT OF THE COLLISION AND THE COLLISION CENTER IS 90% CERTAIN THE VEHICLE IS NOT REPAIRABLE. *JB |
| 10895442 | CADILLAC | SRX | 2005 | 2016-08-11 | AIRBAG DIDN'T DEPLOY IN AN ACCIDENT ON AUGUST 11 2016. AIRBAG IS FAULTY AND CONCERN ABOUT THE SAFETY OF THE 2005 SRC |
| 10968319 | CADILLAC | SRX | 2005 | 2017-03-14 | TL* THE CONTACT'S DAUGHTER OWNED A 2005 CADILLAC SRX. WHILE DRIVING APPROXIMATELY 40 MPH ON AN ICY, SNOWY ROAD, THE VEHICLE STARTED TO SKID AND THE DRIVER LOST CONTROL OF THE VEHICLE. THE DRIVER CRASHED INTO A CEMENT WALL. ALL THE AIR BAGS FAILED TO DEPLOY. THE DRIVER SUSTAINED HEAD INJURIES THAT REQUIRED MEDICAL ATTENTION ALONG WITH BRUISES TO THE CHEST, RIGHT ARM, AND LEG. A POLICE REPORT WAS FAILED. THE VEHICLE WAS TOWED AND DEEMED DESTROYED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 110,000. THE VIN WAS UNAVAILABLE. |
| 10120423 | CHEVROLET | EQUINOX | 2005 | 2005-05-01 | 2005 CHEVROLET EQUINOX REAR ENDED ANOTHER VEHICLE AFTER BEING HIT IN THE REAR WHILE STOPPED.  THE AIR BAGS DID NOT DEPLOY AND THE SEAT BELTS DID NOT ENGAGE.*MR  THE DRIVER SUSTAINED SOME INJURIES WHEN HE WAS PUSHED FORWARD INTO THE STEERING WHEEL AND DASH. *NM |
| 10221708 | CHEVROLET | EQUINOX | 2005 | 1901-01-01 | 2005 CHEVY EQUINOX AIR BAGS DID NOT DEPLOY. CONSUMER STATES THAT HE WAS INVOLVED IN A FRONTAL CRASH AND AIR BAGS FAILED TO DEPLOY. HE STATES THAT THE CRASH SPEED WAS ABOUT 35 MPH. *KB |

| 10221964 | CHEVROLET | EQUINOX | 2005 | 2007-12-15 | I HAD A HEAD ON COLLISION WITH A CONCRETE WALL IN MY 2005 CHEVROLET EQUINOX ON DECEMBER 15, 2007. I WAS TRAVELING ABOUT 55-60 MPH WHEN THE HEAD ON COLLISION OCCURRED. MY AIRBAGS DID NOT DEPLOY. HOWEVER THE TALC POWER AND THE SMELL CAME OUT. I HAD AN INVESTIGATION DONE ON THE AIRBAGS. I WAS TOLD BY A GM INVESTIGATION REP THAT THE VEHICLE HAS TO SLOW DOWN 10-15 MPH FOR THE AIRBAGS TO DEPLOY. THE INVESTIGATION SHOWED THAT THE VEHICLE SLOWED DOWN 11.85 MPH WHICH FALLS WITHIN THE RANGE FOR THE AIRBAGS TO DEPLOY. I NEED A SECOND OPINION BECAUSE GM STATED THAT DESPITE WHAT THE REPORT SAYS, THEY ARE NOT AT FAULT FOR THE AIRBAGS.  *TR |
|---|---|---|---|---|---|
| 10266217 | CHEVROLET | EQUINOX | 2005 | 2009-04-14 | TL*THE CONTACT OWNS A 2005 CHEVROLET EQUINOX. WHILE DRIVING 40 MPH, ANOTHER DRIVER PULLED OUT IN FRONT OF THE CONTACT'S VEHICLE.  AS A RESULT, THE CONTACT CRASHED INTO THE OTHER VEHICLE.  THE FRONT DRIVER'S SIDE AIR BAG FAILED TO DEPLOY AND THE CONTACT SUSTAINED MINOR NECK INJURIES.  A POLICE REPORT WAS FILED.  THE VEHICLE WAS INSPECTED BY HER INSURANCE AGENCY AND THEY STATED THAT IT WAS DESTROYED.  THE ADJUSTER WAS UNABLE TO DETERMINE WHY THE AIR BAGS DID NOT DEPLOY. THE CONTACT CALLED THE MANUFACTURER AND WAS INFORMED THAT SHE WOULD RECEIVE A CALL BACK REGARDING THE CRASH.  THE FAILURE MILEAGE WAS 30,000. |
| 10440022 | CHEVROLET | EQUINOX | 2005 | 2011-12-13 | TL* THE CONTACT OWNS A 2005 CHEVROLET EQUINOX. THE CONTACT WAS DRIVING 30 MPH WHEN A DEER JUMPED A FENCE AND LANDED ON THE HOOD OF THE VEHICLE WITH EXTREME FORCE. THE CONTACT STATED THE ENGINE CONTINUED TO RUN BUT THE INTERIOR AND EXTERIOR LIGHTNING FAILED. THE AIR BAGS ALSO FAILED TO DEPLOY.  THE POLICE WERE NOT CONTACTED AND THERE WERE NO INJURIES. THE VEHICLE WAS TAKEN TO A LOCAL REPAIR SHOP AND THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE VIN WAS UNAVAILABLE. THE FAILURE AND THE CURRENT MILEAGES WERE 73,000.  UPDATED 01/10/12*LJ |
| 10489315 | CHEVROLET | EQUINOX | 2005 | 2012-12-15 | I WAS DRIVING, HIT ICE, FISH TAILED, STARTED TO SPIN, WENT HEAD FIRST INTO THE MEDIAN, PROBABLY GOING 30-45 MPH.  AFTER THAT WE CAME TO A STOP, AND WERE HIT BY A SEMI TRAILER TRAVELING AT APPROXIMATELY 45-60 MPH.  NEITHER IMPACT SET THE AIR BAGS OFF AND WE BELIEVE THAT IT SHOULD HAVE.  *TR |
| 10597676 | CHEVROLET | EQUINOX | 2005 | 2004-10-31 | TL* THE CONTACT OWNS A 2005 CHEVROLET EQUINOX.  WHILE DRIVING APPROXIMATELY 70 MPH ON THE HIGHWAY, THE CONTACT NOTICED THE KEY WAS DETACHING FROM THE IGNITION. THE DEALER STATED THAT THE VIN WAS NOT INCLUDED IN NHTSA CAMPAIGN NUMBER: 04V302000 (POWER TRAIN).  WHILE DRIVING 35 MPH, THE CONTACT WAS INVOLVED IN A CRASH AND THE AIR BAGS FAILED TO DEPLOY.  THE CONTACT WAS INJURED AND RECEIVED MEDICAL ATTENTION.  THE VEHICLE WAS REPAIRED BY THE DEALER.  THE MANUFACTURER WAS NOT NOTIFIED.  THE APPROXIMATE FAILURE MILEAGE WAS 70. |
| 10597688 | CHEVROLET | EQUINOX | 2005 | 2005-10-31 | DRIVING DOWN STREET CUT OFF BY SEMI RAN INTO FLASHING SIGN WITH NOWHERE ELSE TO GO. OVER HALF PASSENGER FRONT BUMPER WAS CRUSHED RADIATOR  SMASHED, WHOLE FRONT PASSENGER QUARTER SMASHED. CAR WAS UNDRIVEABLE BUT AIR BAGS DID NOT GO OFF. *TR |
| 10716175 | CHEVROLET | EQUINOX | 2005 | 2013-12-13 | HEAD ON ACCIDENT INTO DITCH, AIRBAGS DID NOT GO OFF |
| 10936302 | CHEVROLET | EQUINOX | 2005 | 2016-12-15 | I WAS IN AN ACCIDENT ON 12/15/2016 WHERE I HIT SOMEONE FROM BEHIND. I WAS DRIVING STRAIGHT DOWN THE HIGHWAY AND DIDN'T NOTICE THE PEOPLE IN FRONT OF ME STOPPING. WHEN I HIT THE BRAKES, IT WAS TOO LATE AND MY CHEST WENT FLYING AGAINST THE STEERING WHEEL.  WHEN MY EQUINOX HIT THEM, MY SEAT BELT DID NOT LOCK AND MY CHEST HIT THE STEERING WHEEL. I HAD TO GO TO THE HOSPITAL BECAUSE OF THE FORCE OF THE IMPACT.  THE FORCE WAS SO HARD THAT THE AIR BAG DID NOT COME OUT.  I DON'T KNOW IF THERE IS AN AIR BAG INSIDE THE VEHICLE. I COULD NOT CATCH MY BREATH AND I TESTED OUT MY SEAT BELT AND REALIZED IT DOES NOT LOCK WHEN BREAKING. IT IS ACTUALLY LOSE THE WHOLE TIME I AM DRIVING.  THIS IS NOT SAFE FOR ME OR A PASSAGE THAT I HAVE IN THE CAR.  TESTED OUT THE PASSAGE SIDE AS WELL AND IT IS THE SAME THING.  *TR |
| 11023592 | CHEVROLET | EQUINOX | 2005 | 2017-09-06 | TL* THE CONTACT OWNS A 2005 CHEVROLET EQUINOX. WHILE DRIVING 45 MPH, THE CONTACT CRASHED INTO ANOTHER VEHICLE. ALL THE AIR BAGS FAILED TO DEPLOY. THE CONTACT NOTICED SMOKE COMING FROM THE RADIATOR. THE VEHICLE WAS TOWED TO XTREME COLOR INC. IN KANSAS CITY, KS 66102; 913-281-0830. A POLICE REPORT WAS FILED.  THE CONTACT SUSTAINED A NECK AND BACK INJURY THAT REQUIRED MEDICAL ATTENTION. THE MANUFACTURER WAS NOT CONTACTED. THE APPROXIMATE FAILURE MILEAGE WAS 146,500. |
| 11127938 | CHEVROLET | EQUINOX | 2005 | 2018-07-20 | TL* THE CONTACT OWNS A 2005 CHEVROLET EQUINOX. WHILE DRIVING 24 MPH ON AN EXIT RAMP, THE VEHICLE INADVERTENTLY DROVE OFF THE SIDE OF THE RAMP AND CRASHED. THE AIR BAGS FAILED TO DEPLOY AND THE SEAT BELT FAILED TO RESTRAIN THE CONTACT. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE CONTACT SUSTAINED MINOR INJURIES TO THE HEAD AND HIPS THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO A TOW LOT. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND A FIELD INSPECTOR WAS SENT TO INSPECT THE VEHICLE. THE CONTACT WAS AWAITING THE INSPECTION RESULTS. THE VEHICLE WAS NOT TAKEN TO A DEALER FOR DIAGNOSTIC TESTING. THE FAILURE MILEAGE WAS 140,000. |

| | | | | | |
|---|---|---|---|---|---|
| 11191960 | CHEVROLET | EQUINOX | 2005 | 2019-03-27 | TL* THE CONTACT OWNS A 2005 CHEVROLET EQUINOX. WHILE DRIVING 35 MPH AND DRIVING STRAIGHT PREPARING TO MAKE A RIGHT TURN, THE CONTACT CRASHED INTO THE FRONT QUARTER PANEL OF ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. THE CONTACT SUSTAINED INJURIES TO THE HEAD AND ANKLE, WHICH REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO AN INDEPENDENT LOT. THE DEALER AND MANUFACTURER WERE NOT CONTACTED. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE FAILURE MILEAGE WAS 65,000. *DT  *TR |
| 11297402 | CHEVROLET | EQUINOX | 2005 | 2020-01-05 | TL* THE CONTACT OWNED A 2005 CHEVROLET EQUINOX. THE CONTACT STATED THAT WHILE DRIVING 55 MPH AND TURNING ON CURVE TOO FAST, CONTROL OF THE VEHICLE WAS LOST. THE VEHICLE SWERVED LEFT AND RIGHT ULTIMATELY COMING TO A STOP AFTER CRASHING INTO A TREE. THE AIR BAGS FAILED TO DEPLOY. DURING THE IMPACT THE CONTACT HEAD WAS HIT ON THE WINDSHIELD AND ABRASION TO THE KNEE WERE SUSTAINED. MEDICAL ATTENTION WAS NOT SOUGHT. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO A TOW YARD. THE VEHICLE WAS DESTROYED. THE DEALER AND MANUFACTURER WERE NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 165,000. |
| 10117624 | CHEVROLET | SILVERADO | 2005 | 2005-03-29 | WHILE DRIVING 40 MPH VEHICLE CRASHED INTO A STORE FRONT. UPON IMPACT, DUAL AIRBAGS DID NOT DEPLOY. NO INJURIES REPORTED. *AK |
| 10137371 | CHEVROLET | SILVERADO | 2005 | 2005-09-20 | I HAD AN ACCIDENT ON TUESDAY SEPT. 20, 2005 DRIVING MY 2005 CHEVY PICKUP K2500 HD 4 WHEEL DRIVE. I LOST CONTROL AND WENT OFF HIGHWAY STRIKING A CITY DUMPSTER HEADON AND MOVING THE DUMPSTER APPROXIMATELY 50-60 FT. BY POLICE REPORT AND THAN GOING BACK ON HIGHWAY AND CROSSING ALL 4 LANES BEFORE THE TRUCK STOPPED. MY TRUCK WAS TOTALED BUT MY AIRBAG NEVER DEPLOYED. I WAS UNCONSCIOUS AND WAS AIRLIFTED TO VANDERBILT HOSPITAL IN NASHVILLE TN. WHY DIDN'T MY AIRBAG DEPLOY WITH A HEADON CRASH OF THIS FORCE? THIS SEEMS TO BE A DEFECT IN THE PRODUCT. I RECEIVED A 4 INCH CUT ACROSS THE BOTTOM OF MY CHIN THAT REQUIRED SEVERAL STITCHES AND VERY SORE FROM MY HEAD DOWN MY RIGHT LEG. STILL FOLLOWING UP WITH DOCTORS....  *NM |
| 10153906 | CHEVROLET | SILVERADO | 2005 | 2006-03-27 | DT*:  THE CONTACT STATED THE VEHICLE WAS INVOLVED IN AN ACCIDENT ON DRY ROADS.  TWO VEHICLES COLLIDED IN FRONT OF THE CONTACT, CAUSING AN EMERGENCY BRAKING SITUATION. THE CONTACT COLLIDED WITH THE REAR OF THE SECOND VEHICLE, AND THE AIR BAGS DID NOT DEPLOY.  THE CONTACT WAS INJURED IN THE ACCIDENT.  AN INDEPENDENT REPAIR SHOP WAS CONSULTED AND THEY WERE UNABLE TO DUPLICATE THE PROBLEM. |
| 10201747 | CHEVROLET | SILVERADO | 2005 | 2007-08-27 | AIRBAG FAILURE IN HEAD-ON COLLISION, TOTALING 2 TRUCKS. *JB |
| 10455110 | CHEVROLET | SUBURBAN | 2005 | 2011-12-06 | TL* THE CONTACT OWNS A 2005 CHEVROLET SUBURBAN. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 30 MPH, SHE CRASHED INTO THE REAR OF A TRASH TRUCK. UPON IMPACT, THE AIR BAGS DID NOT DEPLOY. THE DRIVER SUSTAINED INJURIES TO THE LEFT ARM AND LEFT LEG. THE POLICE WERE CONTACTED AND A REPORT WAS FILED. THE VEHICLE WAS TOWED TO AN INDEPENDENT MECHANIC WHERE THEY DEEMED THE VEHICLE AS BEING DESTROYED. THE MANUFACTURER WAS CONTACTED AND AFTER DIAGNOSING THE VEHICLE, THEY ADVISED HER THAT THE VEHICLE WAS NOT TRAVELING FAST ENOUGH AT THE TIME OF IMPACT FOR THE AIRBAGS TO DEPLOY. THE FAILURE MILEAGE WAS APPROXIMATELY 80,000. |
| 10130316 | CHEVROLET | TAHOE | 2005 | 2005-07-16 | DT: ON JULY 16, 2005  WHILE TRAVELING AT 55 MPH CONSUMER'S VEHICLE  WAS INVOLVED IN A HEAD ON COLLISION WITH ANOTHER VEHICLE.  TOTALED THE OTHER VEHICLE.  UPON IMPACT, THE AIR BAGS DID NOT DEPLOY. VEHICLE HAS NOT  BEEN INSPECTED TO SEE WHY THEAIR BAGS DID NOT DEPLOY.  AIR BAG LIGHT CAME ON.  CONSUMER CALLED THE DEALERSHIP, AND THEY ADVISED CONSUMER NOT DRIVE THE VEHICLE TO THE DEALERSHIP  BECAUSE THE AIRBAGS MIGHT DEPLOY. THE VEHICLE WAS TAKEN TO THE BODY SHOP YESTERDAY TO BE FIXED.  THE CONSUMER  SPRAINED BACK AND NECK.  A POLICE REPORT WAS  ISSUED.*AK |
| 10200191 | CHEVROLET | TAHOE | 2005 | 2007-06-18 | AIR BAGS FAILED TO DEPLOY IN A CRASH. THE FRAME OF OUR 2005 CHEVROLET TAHOE WAS BUCKLED IN THE CRASH. CRASH TEST DATA WAS RETRIEVED FROM THE VEHICLE. ALTHOUGH GENERAL MOTORS DOES NOT FEEL THAT THEY ARE IN A POSITION TO HONOR OUR REQUEST FOR DAMAGES AGAINST THEM. MY HUSBAND  AND  I  BOTH RECEIVED BACK AND NECK INJURIES DURING THE ACCIDENT. *TR |
| 10335468 | CHEVROLET | TAHOE | 2005 | 2009-06-12 | TL*THE CONTACT OWNS A 2005 CHEVROLET TAHOE. THE CONTACT STATED THAT WHILE DRIVING AT APPROXIMATELY 55 MPH, THE VEHICLE CRASHED INTO A DEER BUT THE AIR BAGS DID NOT DEPLOY. THERE WAS EXTENSIVE DAMAGE TO THE VEHICLE. A POLICE REPORT WAS FILED. THE DEALER STATED THAT THE VEHICLE COULD BE INSPECTED AT THE CONTACT'S EXPENSE. THE BODY DAMAGE HAD BEEN REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 75,000. THE CURRENT MILEAGE WAS APPROXIMATELY 100,000. |
| 10494771 | CHEVROLET | TAHOE | 2005 | 2013-01-24 | 2005 CHEVY TAHOE WAS IN AN ACCIDENT AND HIT FRONT DRIVERS SIDE INTO DIRT EMBANKMENT AT 35-40 MPH PUSH DRIVERS SIDE TIRE BACK ABOUT 3" AND BUCKLED HOOD AND FENDER AND THE AIRBAGS DIDN'T GO OFF. *TR |

| | | | | | |
|---|---|---|---|---|---|
| 10748242 | CHEVROLET | TAHOE | 2005 | 2015-08-11 | TL* THE CONTACT OWNED A 2005 CHEVROLET TAHOE. WHILE DRIVING APPROXIMATELY 50 MPH, THE REAR DRIVER SIDE WHEEL BECAME DETACHED FROM THE VEHICLE AND CAUSED THE CONTACT TO LOSE CONTROL OF THE VEHICLE. THE CONTACT CRASHED INTO A WOODEN POLE, WHICH CRASHED THROUGH THE FRONT WINDOW. THE VEHICLE FLIPPED OVER THREE TIMES AND LANDED UPSIDE DOWN. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED BROKEN BONES AND INJURIES THAT REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS TOWED TO THE TOWING COMPANY. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 131,000. |
| 10134099 | CHEVROLET | TRAILBLAZER | 2005 | 2005-05-12 | I WAS INVOLVE IN AN ACCIDENT WHERE I HAVE LOST CONTROL OF A CHEVROLET TRAILBLAZER AND HIT A CENTER DIVIDER ON THE FREEWAY. WITH THE FRONT BUMPER SMASHED ONTO THE CENTER DIVIDER, THE AIR BAG FAILED TO DELPLOY. |
| 10141221 | CHEVROLET | TRAILBLAZER | 2005 | 2005-10-19 | CHEVY TRAILBLAZER ('05 OR '06) REAR ENDED ANOTHER VEHICLE AT A SPEED FAST ENOUGH TO TOTAL THE TRAILBLAZER. THE AIRBAG DID NOT DEPLOY AND THE DRIVER SUSTAINED CHEST AND HEART INJURIES. *NM |
| 10143976 | CHEVROLET | TRAILBLAZER | 2005 | 2005-11-20 | DT: THE CONTACT'S BOY FRIEND WAS TRAVELING AT 78 MPH WHEN HE LOST CONTROL OF THE VEHICLE, AND IT  WAS INVOLVED IN  A FRONTAL IMPACT.  THE VEHICLE ROLLED OVER SIX TIMES. UPON IMPACT, THE AIR BAGS DID NOT DEPLOY.  THE CONTACT AND PASSENGER  SUSTAINED INJURIES.  MANUFACTURER WAS NOT CONTACTED. *AK |
| 10161963 | CHEVROLET | TRAILBLAZER | 2005 | 2006-07-08 | 7/8/06, WHILE TRAVELING HIGHWAY 31 IN NILES, MICHIGAN, SPEED LIMIT OF 70 MPH, WE HIT A DEER HEAD ON WITH OUR 2005 CHEVY TRAILBLAZER LS, S/N.  WE HAD NO TIME TO EVEN BRAKE PRIOR TO THE IMPACT. THE IMPACT TOOK OUT THE FRONT END OF THE CAR, PUSHING THE RADIATOR BACK INTO THE ENGINE COMPARTMENT.  NEITHER AIR BAG DEPLOYED.  THERE WERE 4 PASSENGERS IN THE VEHICLE, INCLUDING AN 11-YEAR OLD BOY, AND A 14-YEAR OLD BOY.  *JB |
| 10173065 | CHEVROLET | TRAILBLAZER | 2005 | 2006-11-08 | DT*: THE CONTACT STATED WHILE DRIVING 40 MPH ENTERING THE FREEWAY, THE VEHICLE REAR ENDED ANOTHER VEHICLE  AND NONE OF THE AIR BAGS DEPLOYED.  THE AIRBAG WARNING LIGHT DID NOT ILLUMINATE PRIOR TO THE CRASH. A POLICE REPORT WAS FILED IN THE STATE OF CALIFORNIA. THERE WERE TWO PEOPLE INJURED, THE NOSE OF THE CHILD WAS BLEEDING AND THE CONTACT SUFFERED A NECK INJURY.  THE CHILD WAS 6 YEARS OLD AND THE CONTACT WAS 22 YEARS OLD. BOTH OF THE PASSENGERS WERE WEARING SEAT BELT.  THE WEATHER WAS CLOUDY. A POLICE REPORT WAS PROCESS. THE SERVICE DEALER AND THE MANUFACTURER WERE NOT NOTIFIED. |
| 10178482 | CHEVROLET | TRAILBLAZER | 2005 | 2007-01-08 | TL* - THE CONTACT'S 2005 CHEV TRAILBLAZER WAS PURCHASED USED ON AUGUST 13, 2005 FROM BERGLUND CHEVROLET OF VIRGINIA, WITH 13000 MILES.  THE VEHICLE WAS INVOLVED IN AN ACCIDENT ON JANUARY 8TH, 2007 WERE THERE WAS ONE FATALITY AND FIVE PEOPLE WERE INJURED.  A SECOND VEHICLE, A BUICK LASABRE, FAILED TO STOP AT STOP SIGN WHILE MAKING A LEFT HAND TURN.  THE CONTACTS VEHICLE STRUCK THE SECOND VEHICLE DIRECTLY ON THE DRIVERS SIDE.  THE CONTACTS VEHICLE WAS TRAVELING AT 50 MPH.  THE DRIVER OF THE SECOND VEHICLE WAS PRONOUNCED DEAD AT THE SCENE.  THE CONTACTS VEHICLE PASSENGER AND DRIVER SIDE AIR BAGS NEVER DEPLOYED, EVEN THOUGH THERE WERE PASSENGERS IN ALL SEATS. SIX STATE TROOPERS WERE ON THE SCENE AND NO ONE WAS SITED. |
| 10205154 | CHEVROLET | TRAILBLAZER | 2005 | 2007-10-06 | I WAS DRIVING ON AN ELEVATED INTERSTATE AND LOST CONTROL OF THE VEHICLE. I HIT THE GUARDRAIL IN A DIRECT FRONTAL IMPACT. THE ENTIRE FRONT OF THE CAR WAS CRUSHED ABOUT 40 INCHES. THE CAR IS TOTALED BUT THE AIRBAGS DID NOT DEPLOY. I SUFFERED SOME INJURIES ON MY HEAD EVEN THOUGH I HAD MY SEATBELT ON. *JB |
| 10221319 | CHEVROLET | TRAILBLAZER | 2005 | 2008-02-21 | I WAS DRIVING ON A 2 LANE ROAD GOING 45MPH.  A CAR WAS FOLLOWING CLOSE BEHIND ME SO I WENT TO GET INTO RIGHT LANE AND MY TRUCK DID 5 360 AND HIT 3 TREES HEAD ON AND AIR BAG NEVER DEPLOYED. *TR |
| 10239994 | CHEVROLET | TRAILBLAZER | 2005 | 2008-08-25 | TL*THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER.  WHILE DRIVING 60 MPH, THE CONTACT STRUCK THE GUARDRAIL.  THE VEHICLE WAS DESTROYED AND THE AIR BAGS FAILED TO DEPLOY. THE CONTACT HAS PICTURES OF THE VEHICLE.  SHE WAS TRANSPORTED TO THE HOSPITAL AND IS CURRENTLY IN PAIN.  A POLICE REPORT WAS FILED.  THE AIR BAGS WERE NOT SERVICED PRIOR TO THE CRASH.  THE VIN WAS UNKNOWN.  THE FAILURE MILEAGE WAS 44,000. |
| 10241433 | CHEVROLET | TRAILBLAZER | 2005 | 2005-09-07 | TL*THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER.  WHILE DRIVING APPROXIMATELY 45 MPH, THE CONTACT CRASHED INTO ANOTHER VEHICLE, WHICH RESULTED IN A THREE CAR PILE UP. THE FRONT END OF HER VEHICLE WENT UNDERNEATH THE PRECEDING VEHICLE.  THE AIR BAGS FAILED TO DEPLOY.  SHE WAS UNABLE TO RECEIVE ASSISTANCE FROM ON STAR DUE TO THE AIR BAG FAILURE.  THERE WERE NO PRIOR FAILURES WITH HER VEHICLE.  THE CONTACT AND THREE CHILDREN IN SAFETY SEATS SUSTAINED MINOR INJURIES.  A POLICE REPORT WAS FILED.  THE CURRENT AND FAILURE MILEAGES WERE 76,000. |

| | | | | | |
|---|---|---|---|---|---|
| 10254382 | CHEVROLET | TRAILBLAZER | 2005 | 2008-12-16 | MY DAUGHTER HAD AN ACCIDENT ON 12/16/2008. SHE HAS(HAD) A 2005 CHEVROLET TRAILBLAZER LS, 2 WHEEL DRIVE SUV. WHILE DRIVING ON THE OHIO TURNPIKE DURING A SNOW STORM SHE LOST CONTROL AND HAD A HEAD ON CRASH WITH A CEMENT RETAINING WALL WHILE TRAVELING BETWEEN 25 TO 35 MILES PER HOUR. THE AIR BAG DID NOT DEPLOY DURING THE ACCIDENT AND SHE SLAMMED HARD INTO THE STEERING WHEEL RESULTING IN A CONCUSSION, CHEST INJURIES, SORE WRIST, DIZZINESS, AND STILL HAS RINGING IN ONE EAR. SHE DID HAVE HER SAFETY BELT ON AT THE TIME OF THE ACCIDENT AND ALWAYS WEARS IT. WE ARE BAFFLED AS TO WHY THE AIR BAG DID NOT COME OUT AS IT WOULD HAVE SAVE HER MUCH PAIN. THE CAR IS A TOTAL WRECK AS DESCRIBED BY THE PONTIAC DEALER THAT HER INSURANCE COMPANY TOWED THE SUV TO FOR REPAIRS. THE TRAILBLAZER SUSTAINED MUCH DAMAGE SUCH AS A BENT FRAME, BROKEN TRANSMISSION, ALL OF THE MOTOR MOUNTS AND THE TRANSMISSION MOUNTS BROKE LOOSE FROM THE FRAME, BENT STEERING WHEEL, AND ALL PARTS FROM THE ENGINE FORWARD ARE EITHER GONE OR BENT BEYOND REPAIR. WITH THIS VIOLENT OF A CRASH NO ONE HAS BEEN ABLE TO TELL US WHY THE AIR BAGS DID NOT DEPLOY. WE BOUGHT THIS SUV USED FROM A CHEVY DEALER IN JULY OF 2005 AND IT HAD AROUND 8000 MILES ON IT AT THAT TIME. I WOULD LIKE TO KNOW IF THERE IS SOME WAY OF CHECKING THE FUNCTIONALLY OF THIS AIR BAG TO SEE IF THERE MAY BE A POSSIBLE PROBLEM WITH IT. HER CRASH WAS HEAD ON AND IN MY OPINION VIOLENT ENOUGH TO ACTIVATE THE DRIVER SIDE AIR BAG. ANY SUGGESTIONS AS TO WHAT WE SHOULD DO? *TR |
| 10256371 | CHEVROLET | TRAILBLAZER | 2005 | 2009-01-12 | TL*THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. THE CONTACT WAS THE PASSENGER IN A VEHICLE TRAVELING 35 MPH ON ICY ROAD CONDITIONS. ANOTHER VEHICLE PULLED OUT IN FRONT OF THEM AND CRASHED INTO THE VEHICLE. THE VEHICLE WAS DESTROYED AND THE AIR BAGS FAILED TO DEPLOY. THE CONTACT WAS TRANSPORTED TO THE HOSPITAL BY AMBULANCE. HER NECK WAS SNAPPED BACKWARDS. THE SEAT BELT PROPERLY RESTRAINED HER AT THE TIME OF THE CRASH. A POLICE REPORT WAS FILED AND THE OTHER DRIVER RECEIVED A CITATION. THE DEALER WAS UNABLE TO DETERMINE WHY THE AIR BAGS FAILED. THE FAILURE MILEAGE WAS 80,000. |
| 10266680 | CHEVROLET | TRAILBLAZER | 2005 | 2009-04-20 | AIRBAGS DID NOT DEPLOY. A DRIVER PULLED OUT IN FRONT OF MY WIFE. SHE WAS TRAVELING AT NEARLY 40MPH. SHE STRUCK ANOTHER VEHICLE BROAD SIDE. THE AIRBAGS DID NOT DEPLOY. THE FRONT BUMPER FROM OUR TRAILBLAZER WAS ABOUT 30 YARDS BEHIND OUR VEHICLE. MY WIFE EXPERIENCED SEVERE BRUISING TO ABD AND CHEST. HER SEATBELT WAS IN USE. *TR |
| 10269109 | CHEVROLET | TRAILBLAZER | 2005 | 2009-04-13 | LOST CONTROL OF CAR ON NARROW ROAD UNDER NORMAL DRIVING CONDITIONS. COLLISION INTO TWO TREES HEAD ON. DRIVER SIDE AIRBAG NEVER DEPLOYED. *TR |
| 10328284 | CHEVROLET | TRAILBLAZER | 2005 | 2010-04-29 | I WAS IN AN ACCIDENT WHERE ANOTHER DRIVER PULLED OUT IN FRONT OF ME CROSSING ONCOMING TRAFFIC. I HIT HIM BROADSIDE DOING APPROXIMATELY 30-35 MILES PER HOUR. MY FRONT END WAS NEARLY SHOVED ALL THE WAY UP TO THE WINDSHIELD. MY 2005 TRAILBLAZER WAS TOTALED. MY AIRBAG DID NOT DEPLOY AND IF IT WASN'T FOR MY SEATBELT I WOULD HAVE WENT THROUGH THE WINDSHIELD THE IMPACT WAS SO HARD. I SUSTAINED A HURT SHOULDER AND ARM AND PROBABLY WOULDN'T HAD SUCH A PAINFUL INJURY IF THE AIRBAG HAD OF DEPLOYED. *TR |
| 10357310 | CHEVROLET | TRAILBLAZER | 2005 | 2010-07-09 | TL* THE CONTACT OWNS A 2005 CHEVROLET TRAIL BLAZER. THE CONTACT WAS DRIVING 50 MPH ON A SLICK MOUNTAIN ROAD WHEN THE VEHICLE HYDROPLANED AND CRASHED INTO THE SIDE OF A MOUNTAIN BEFORE FALLING INTO A DITCH. THE AIR BAGS DID NOT DEPLOY AND THE CONTACT AND TWO PASSENGERS SUSTAINED INJURIES. THE VEHICLE WAS DESTROYED. THE VEHICLE WAS NOT INSPECTED FOR THE FAILURE OF THE AIR BAGS. THE CONTACT WAS ADVISED BY HIS INSURANCE ADJUSTER THAT THE AIR BAGS SHOULD HAVE DEPLOYED. A POLICE REPORT WAS AVAILABLE. THE VIN WAS NOT AVAILABLE. THE FAILURE AND CURRENT MILEAGE WAS APPROXIMATELY 100,000. |
| 10398899 | CHEVROLET | TRAILBLAZER | 2005 | 2011-04-28 | AIR BAG DID NOT DEPLOY IN HEAD-ON COLLISION. *TR |
| 10470760 | CHEVROLET | TRAILBLAZER | 2005 | 2012-07-27 | TL* THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT THE DRIVER WAS TRAVELING BETWEEN 30 AND 40 MPH WHEN THE VEHICLE CRASHED INTO ANOTHER VEHICLE HEAD ON AND THE AIR BAGS FAILED TO DEPLOY. THE DRIVER SUSTAINED INJURIES TO THE HEAD, MOUTH, CHEST, LEG, AND WRIST. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE VEHICLE WAS NOT TAKEN TO THE DEALER. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE AND CURRENT MILEAGE WAS 40,000. |
| 10475331 | CHEVROLET | TRAILBLAZER | 2005 | 2012-06-27 | TL* THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. THE CONTACT WAS TRAVELING 45 MPH WHEN HE CRASHED AGAINST THE STREET MEDIAN, A UTILITY POLE AND THEN INTO A BUILDING. THE CONTACT STATED THAT NONE OF THE AIR BAGS IN THE VEHICLE DEPLOYED. THE CONTACT SUSTAINED LESIONS TO THE FACE, A CONTUSION TO THE RIGHT EYE AND CONTUSIONS TO THE CHEST AND LOWER ABDOMEN AREA. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. VEHICLE WAS INSPECTED HOWEVER, THE FINDINGS WERE NOT DISCLOSED TO CONTACT. THE FAILURE AND CURRENT MILEAGE WAS 118,000. |

| | | | | | |
|---|---|---|---|---|---|
| 10477042 | CHEVROLET | TRAILBLAZER | 2005 | 2012-09-17 | TL* THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. THE CONTACT WAS DRIVING IN RAINY WEATHER AT VARIOUS SPEEDS WHEN HE UNEXPECTEDLY CRASHED INTO ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED FOR THE INCIDENT. THE CONTACT SUSTAINED SEVERE HEAD TRAUMA AND WAS TRANSPORTED BY AN AMBULANCE TO THE HOSPITAL. THE VEHICLE WAS DESTROYED AND TOWED TO A SAVAGE FACILITY. THE MANUFACTURER WAS NOT NOTIFIED OF THE PROBLEM. THE APPROXIMATE FAILURE MILEAGE WAS 122,000. UPDATED 10/31/12 *BF  UPDATED 11/02/12 |
| 10477257 | CHEVROLET | TRAILBLAZER | 2005 | 2012-05-20 | TL* THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING 30 MPH ATTEMPTING TO AVOID IMPACTING A DEER ON THE ROAD, HE CRASHED OFF A 9 FOOT EMBANKMENT AND NONE OF THE AIR BAGS DEPLOYED. THE CONTACT BECAME UNCONSCIOUS AFTER HIS HEAD CRASHED INTO THE STEERING WHEEL. ALSO, THE CONTACT SUFFERED SEVERE NECK INJURIES. THE VEHICLE WAS INSPECTED BY THE DEALER BUT THE RESULTS WERE INCONCLUSIVE. THE MANUFACTURER WAS NOTIFIED BUT OFFERED NO ASSISTANCE. THE FAILURE AND CURRENT MILEAGE WAS 108,429. THE VIN WAS UNAVAILABLE.  UPDATED 10/31/12 *CN UPDATED 11/9/2012 *JS |
| 10669444 | CHEVROLET | TRAILBLAZER | 2005 | 2014-11-18 | HIT BLACK ICE. TRUCK SLID OFF THE ROAD AND  FRONT END IMPACTED THE DITCH CAUSING HEAVY DAMAGE TO THE FRONT END. AIR BAG FAILED TO DEPLOY CAUSING INJURY.  *JS |
| 10678235 | CHEVROLET | TRAILBLAZER | 2005 | 2015-01-21 | TL* THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING AT 25 MPH, ANOTHER VEHICLE CRASHED INTO THE FRONT PASSENGER SIDE OF THE CONTACT'S VEHICLE. AS A RESULT, THE CONTACT CRASHED INTO A SIGN AND THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED BACK INJURIES AND THE PASSENGER SUSTAINED NECK AND BACK INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE CONTACT WAS UNABLE TO CONFIRM IF THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 122,000. THE VIN WAS UNAVAILABLE. |
| 10689540 | CHEVROLET | TRAILBLAZER | 2005 | 2015-02-16 | TL* THE CONTACT OWNED A 2005 CHEVROLET TRAILBLAZER. WHILE DRIVING VARIOUS SPEEDS, THE VEHICLE SLID AND CRASHED. THE DRIVER SIDE AIR BAG FAILED TO DEPLOY. THE VEHICLE WAS NOT INCLUDED IN NHTSA CAMPAIGN NUMBER: 06V417000 (AIR BAGS). THE CONTACT SUSTAINED LACERATIONS TO THE FACE, STITCHES UNDER THE EYEBROWS ON BOTH EYES, AND AN INJURED NECK THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE VIN WAS NOT AVAILABLE. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS NOT AVAILABLE. |
| 10721128 | CHEVROLET | TRAILBLAZER | 2005 | 2015-04-27 | 2005 CHEVY TRAILBLAZER WAS DRIVEN BY MY GRANDDAUGHTER. SHE WAS TRYING TO ENTER ONTO I-10 INTERSTATE AND WAS GOING TOO FAST ON THE ENTRANCE RAMP. ROAD CONDITIONS WERE HAZARDOUS AS IT WAS A SEVERE RAIN STORM. SHE HYDROPLANED AND HIT A VEHICLE IN FRONT OF HER WHICH CAUSED HER TO SPIN INTO ONCOMING TRAFFIC. SHE WAS HIT ON THE DRIVER'S SIDE AND THE TRUCK SPUN AROUND SEVERAL TIMES BEFORE IT STOPPPED. THE AIRBAG DID NOT DEPLOY!!! THE POLICE OFFICER AND THE TOW COMPANY DRIVER SAID SHE WAS LUCKY TO BE ALIVE.   MY CONCERN IS THIS COULD HAVE BEEN A FATAL ACCIDENT AND THE AIRBAG FAILED TO DEPLOY. THE TRAILBLAZER WAS TOTALED AS THE AXLE AND THE ENGINE WERE ON THE GROUND. THE DRIVER'S SIDE FRONT WHEEL CAME OFF. I HAVE ALWAYS LIKE CHEVY VEHICLES BUT AM NOW HESITANT TO PURCHASE ANOTHER ONE B/C OF THIS ISSUE WITH THE AIR BAG. |
| 10885198 | CHEVROLET | TRAILBLAZER | 2005 | 2016-06-20 | HEAD ON COLLISION BOTH VEHICLES TRAVELING ABOUT 30MPH ON IMPACT AND TRAILBLAZER AIR BAGS DID NOT DEPLOY. I HAD MY SEATBELT ON AND WAS NOT INJURED. |
| 10983668 | CHEVROLET | TRAILBLAZER | 2005 | 2017-05-02 | TL* THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. WHILE DRIVING 35 MPH, THE CONTACT CRASHED INTO THE REAR OF ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS FILED. THE DRIVER SUSTAINED VARIOUS INJURIES TO THE FACE, WHICH REQUIRED MEDICAL ATTENTION. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE VEHICLE WAS TOWED TO A TOW YARD AND WAS NOT DIAGNOSED FOR THE AIR BAG FAILURE. THE FAILURE MILEAGE WAS 140,000. |
| 11011530 | CHEVROLET | TRAILBLAZER | 2005 | 2017-07-27 | AIRBAG DID NOT WORK |
| 10111298 | GMC | ENVOY | 2005 | 2005-01-25 | COMPLAINT RECEIVED VIA E-MAIL.  MY WIFE WAS IN HER 2005 GMC ENVOY WHEN IT WAS HIT ON THE DRIVER'S TIRE, AND WAS DRIVEN INTO A CONCRETE POWER POLE AT 40 MPH HEAD ON.  THE POWER LINES WERE KNOCKED DOWN. DRIVER'S SIDE AIR BAG NEVER DEPLOYED, AND HER HEAD HIT THE STEERING, CAUSING A BUMP ON THE HEAD, A BLACK EYE AND A CUT LIP. *AK |
| 10119967 | GMC | ENVOY | 2005 | 2005-04-22 | SEVERE CAR CRASH WITH MY LEASED 2005 GMC ENVOY. MUCH SIDE AND FRONT DAMAGE OCCURED, BUT AIR BAGS DID NOT DEPLOY. GMC WILL BE SENDING SOMEONE FROM THE PROTECTION ALLEGATION DEPARTMENT TO PERFORM A DIAGNOSTIC TEST ON THE AIR BAGS WITHIN THE NEXT 14 DAYS. THE ACCIDENT OCCURED ON 4/22/05.  I DO NOT WANT THE VEHICLE REPAIRED AND GIVEN BACK TO ME FOR THE FOLLOWING 2 REASONS: THE VEHICLE INCURRED (IN MY OPINION, POLICE REPORT, ALLSTATE INSURANCE CO., STERLING AUTO BODY REPAI SHOP) ETC ... EXTENSIVE DAMAGE. THE SECOND REASON IS THE AIRBAGS, AS STATED, DID NOT DEPLOY. IF ANYONE WERE TO BE SEATED IN THE PASSENGER SEAT, THEY WOULD HAVE BEEN SERIOUSLY HURT.  I HAVE READILY AT MY DISPOSAL ANY AND ALL ADDITIONAL INFO. WHICH I WILL GLADLY SUBMIT WHEN NECESSARY. |

| 10183935 | GMC | ENVOY | 2005 | 2007-02-13 | TL*. THE CONTACT OWNS A 2005 GMS ENVOY. IN MID-FEBRUARY 2007, THE CONTACT'S VEHICLE WAS INVOLVED IN A HEAD ON COLLISION WHILE DRIVING AT 35 MPH. THE CONTACT DROVE INTO A TREE DUE TO ICY ROAD CONDITIONS. NONE OF THE AIR BAGS DEPLOYED. THERE WERE NO PASSENGERS IN THE VEHICLE. THE CONTACT WAS WEARING A SEAT BELT. THERE WERE NO WARNING INDICATOR LIGHTS ON THE DASHBOARD BEFORE OR AFTER THE CRASH. THE VEHICLE WAS TOWED TO A THE DEALER, AND THE INSURANCE COMPANY ADVISED THE CONTACT THAT THE VEHICLE WAS TOTALED. THE CONTACT HAD REQUESTED THAT THE MANUFACTURER ISSUE A COMPUTER READ OUT INDICATING WHY THE AIR BAGS DIDN'T DEPLOY. THE DEALER SENT THE CONTACT PRIOR TO THE COLLISION A DIAGNOSTIC EMAIL STATING THE VEHICLE WAS OPERATING NORMALLY. A POLICE REPORT WAS TAKEN. THE CURRENT AND FAILURE MILEAGE WERE BOTH 25000.*AK |
| 10257735 | GMC | ENVOY | 2005 | 2009-01-28 | TL*THE CONTACT OWNS A 2005 GMC ENVOY. THE CONTACT WAS INVOLVED IN A HEAD-ON CRASH. THE CONTACT WAS SEVERELY INJURED AND THE ENTIRE FRONT END OF THE VEHICLE WAS CRUSHED. ALL FOUR TIRES BLEW OUT AND THE FRONTAL AIR BAGS FAILED TO DEPLOY. THERE WERE NO OTHER PASSENGERS IN THE VEHICLE AND NO MAINTENANCE WAS PERFORMED ON THE VEHICLE PRIOR TO THE CRASH. THE VEHICLE WAS DESTROYED AND TOWED FROM THE SCENE. A POLICE REPORT WAS FILED. THE MILEAGES, SPEED, AND VIN WERE UNKNOWN. |
| 10463248 | GMC | ENVOY | 2005 | 2011-07-15 | TL* THE CONTACT OWNED A 2005 GMC ENVOY. THE CONTACT STATED WHILE DRIVING 55 MPH, HE CRASHED INTO A TREE. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED MINOR TISSUE DAMAGE ON THE UPPER BODY FROM THE IMPACT. THE VEHICLE WAS TOWED TO A REPAIR SHOP, WHERE IT WAS DECLARED DESTROYED. A POLICE REPORT WAS FILED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE; HOWEVER, THEY PROVIDED NO ASSISTANCE. THE CURRENT AND FAILURE MILEAGE WERE UNAVAILABLE. UPDATED 09/24/2012 *JS THE CONSUMER STATED THE ACCIDENT WAS INITIATED BY A VEHICLE GOING WEST BOUND THAT CROSSED THE SOLID DOUBLE LINES, ULTIMATELY CAUSING A DOMINO EFFECT. THE CONSUMER'S VEHICLE WAS DAMAGED WHEN HE TRIED TO AVOID HITTING THE VEHICLE BY SWERVING SIDEWAYS AND SLIDING INTO THE GRASS. HE TRIED STOPPING THE VEHICLE WHILE IT WAS STILL ON THE PAVEMENT BUT HE INEVITABLY RAN INTO THE DITCH AND FLEW AIRBORNE INTO A TREE, AND THE TRUCK OVERTURNED. UPDATED 03/25/14 UPDATED 01/22/15. *JB. . . .UPDATED 03/17/16 *BF UPDATED 09/06/16.*JB UPDATED 09/18/2017*JS *JS |
| 10503799 | GMC | ENVOY | 2005 | 2013-03-15 | THE ACCIDENT HAPPENED ON 2-15-2013 ON PENNSYLVANIA AVENUE SE DURING RUSH HOUR THE OTHER CAR DID NOT YIELD TO ONGOING TRAFFIC ON PENNSYLVANIA AVENUE AND DODGED OUT FROM A SIDE STREET AND HIT MY VEHICLE ON THE FRONT SIDE AND MY SON WHO IS 13 HEAD HIT THE DASHBOARD AND MY DAUGHTERS DOG FLEW FROM THE BACK SEAT UP TO THE FRONT. THE OTHER VEHICLE AIRBAG DID DEPLOY BUT MINES DID NOT. *TR |
| 10607728 | GMC | ENVOY | 2005 | 2008-03-16 | SINGLE CAR ACCIDENT WITH CAR RUNNING OFF ROAD RAN INTO DITCH, OVERTURNED AND HITTING PHONE POLE. AIRBAG DID NOT DEPLOY. QUESTIONABLE SEAT BELT ISSUES. *TR |
| 10632374 | GMC | ENVOY | 2005 | 2011-09-16 | ON SEPTEMBER 16TH, 2011, I WAS INVOLVED IN AN AUTO ACCIDENT THAT WAS A HEAD ON CRASH. THE AIR BAGS NEVER DEPLOYED AND I SUSTAINED BACK INJURIES. ON SITE OF THE ACCIDENT MY BACK WAS HURTING SOME BUT DID NOT GO TO HOSPITAL UNTIL LATER THAT EVENING, AFTER THE ADRENALIN AND THE SHOCK WORE OFF. I NOW HAVE SEVER BACK PROBLEMS WITH A LOT OF PAIN AND WAS DECLARED DISABLED IN 2012. AT THE TIME OF DOING RESEARCH I WAS TOLD BY ON-STAR, WHICH NEVER CAME ON, THAT IF MY AIR BAGS DIDN'T DEPLOY THEY WOULDN'T COME ON.. BUT, THE FRAME WAS BENT SO BAD THAT THEY TOTALED THE VEHICLE, WITH A LOT OF OTHER DAMAGE. THE WHOLE FRONT WAS DAMAGED, THE BUMPER WAS DESTROYED ALONG WITH DAMAGE TO THE MOTOR. AND WE COULD NOT UNDERSTAND WHY THE AIR BAGS DID NOT DEPLOY. *TR |
| 10908300 | GMC | ENVOY | 2005 | 2016-08-22 | I HAD THREE CARS IN FRONT OF ME STOPPED. I DID NOT SEE ANY BREAKL LIGHTS AND I HIT THE CAR IN FRONT OF ME PUSHING THE OTHER CARS TO HIT EACH OTHER. MY FRONT END OF MY CAR WAS SEVERELY DAMAGED BAD ENOUGH TO DAMAGE THE RADIATOR AND DESTROY MY AC UNIT. I'M NOT SURE WHAT ELSE WAS DAMAGED. IT SENT THE PERSON IN FRONT OF ME AND MYSELF TO THE EMERGENCY ROOM. " MY AIR BAGS DID NOT DEPLOY ". MY VEHICLE WAS MOVING ON A CITY STREET. |

| | | | | | |
|---|---|---|---|---|---|
| 10370915 | ISUZU | ASCENDER | 2005 | 2010-12-10 | I WAS DRIVING EAST ON INTERSTATE 10 IN PENSACOLA, FLORIDA. A VEHICLE TRAVELING WEST LOST CONTROL AND CAME ACROSS THE SLOPED GRASSY MEDIAN, OVERTURNED AN SLID ACROSS MY TRAFFIC LANE, CAUSING ME TO CRASH INTO THEIR ROOF. MY ODOMETER SAYS AT THE POINT OF IMPACT I WAS ONLY TRAVELING 48 MPH. ONCE I REALIZED I WAS ALIVE, I WAS IN AWE THAT THE AIRBAG DID NOT DEPLOY. I SPOKE TO A MANAGER AT ISUZU IN CALIFORNIA. HE REQUESTED THE VIN NUMBER AND SOME OTHER PERSONAL INFORMATION AND SAID IF THE INSURANCE COMPANY ADJUSTER SAW ANY MANUFACTURER DEFECTS, THEN THE INSURANCE COMPANY WOULD CONTACT ISUZU. I ALSO CONTACTED MY INSURANCE PROVIDER, THEY SAID SINCE I WAS NOT KILLED IN THE ACCIDENT, THEY WOULD NOT PURSUE ANYTHING WITH ISUZU. I THOUGHT SOMEONE SHOULD KNOW BECAUSE I WAS PINNED IN THE VEHICLE AND HAD TO BE CUT OUT. THE TOW TRUCK DRIVER ALSO MENTIONED SOMETHING ABOUT THE STEERING COLUMN HAD MALFUNCTIONED, NOT SURE WHAT THE MALFUNCTION WAS, BUT IT DID NOT DO WHAT IT WAS DESIGNED TO DO FOR SAFETY PURPOSES. I SUSTAINED A FRACTURED RIGHT FOOT, BRUISED LUNGS/RIBS, NUMEROUS LACERATIONS, BRUISED LEFT KNEE AND LEFT ELBOW. *TR |
| 10449350 | ISUZU | ASCENDER | 2005 | 2012-02-20 | WE HAD A CAR ACCIDENT AND THE AIRBAGS DIDN'T ACTIVATE. THE IMPACT WAS VERY HARD THAT THE INSURANCE COMPANY DECIDED TO TOTAL THE CAR BECAUSE THE DAMAGE WAS TO BIG. I AM PREGNANT AND I HAVE 2 MORE KIDS, AND I'M SO DISAPPOINTED WITH THIS EXPERIENCE THAT SOMETHING COULD HAPPENED TO ME OR MY KIDS IF WE WERE IN THE ACCIDENT. *TR |
| 10228093 | BUICK | RAINIER | 2004 | 2008-03-20 | MY FIANCE WAS IN ACCIDENT WITH MY SUV AND THE AIR BAG DIDN'T DEPLOY CAN I SUE THE COMPANY WHO SOLD ME THE VEHICLE? *TR |
| 10266690 | BUICK | RAINIER | 2004 | 2009-04-05 | WHILE TRAVELING AT A SPEED OF APPROX 50-55 ON A INTERSTATE, I WAS REARED ENDED BY A AUTO, MY AUTO WAS STRUCK THEN SHOVELED INTO A CEMENT WALL BLOCK AND THEN BOUNCED INTO ON COMING TRAFFIC TO THE OTHER CEMENT WALL BLOCK ON THE OPPOSITE SITE WHILE TRYING TO STOP, I WAS WEARING A SEAT BELT, THE VEHICLE'S AIR BAGS DIDN'T GO OFF AT ALL IN THE VEHICLE. A HEAD INJURY OCCURRED, NECK AND SHOULDER INJURIES OCCURRED. THE AUTO WAS A TOTAL LOSS! *TR |
| 10638828 | BUICK | RAINIER | 2004 | 2012-11-17 | A PERSON RAN TWO STOP SIGNS AND ENTERED VEHICLE PATH. THE TWO VEHICLES HIT HEAD ON AND THIS VEHICLE MADE IMPACT AT 40 MPH AFTER IT DECELERATED FROM 43 MPH. THE TWO VEHICLE HIT HEAD ON WITH NEAR PERFECT EVEN IMPACT, BASED UPON THIRD PARTY VISUAL DESCRIPTION OF THE FRONT END OF THE VEHICLES DAMAGE. THE VEHICLE DECELERATED AT A MAX SDM RECORDED VELOCITY CHANGE RATE OF -14.07 (MPH) AND A ALGORITHM ENABLED TO MAXIMUM SDM RECORDED VELOCITY CHANGE OF 127.5 MSEC. DRIVER OF THE VEHICLE HIT THE STEERING WHEEL WITH HEAD KNOCKING THE PERSON OUT. AIRBAGS DID NOT DEPLOY. ONSTAR WAS NOT NOTIFIED THAT THERE WAS AN ACCIDENT. COMPUTER SHOWS THE SEATBELT WAS WORN BY DRIVER. WHEN THE ONSTAR WAS MANUALLY ACTIVATED BY THE DRIVER WHEN HE CAME TOO, THE GPS SHOWED THE VEHICLE FURTHER NORTH UP THE ROAD CAUSING INCORRECT POLICE DIVISION BEING CALLED. VEHICLE WAS GOING UP HILL WHEN THE ACCIDENT OCCURRED. OTHER VEHICLE WAS GOING DOWNHILL. THE OTHER VEHICLE WAS A SUBARU. VEHICLE COMPUTER DATA WAS RETRIEVED BY A BOSCH CRASH DATA RETRIEVAL TOOL USING VERSION 8.0 SOFTWARE. I HAVE A COPY OF THIS DATA. GM REPORTS THAT THE COMPUTER WAS CORRECT NOT TO DEPLOY AIRBAGS AND NOT CALL FOR HELP USING ONSTAR. THE VEHICLE HAD A SOFTWARE MODIFICATION DUE TO A FAULT WITH THE FAN SPEED CALIBRATION SETTING OFF A WARNING LIGHT. WE HAD COMPLAINED THAT THINGS WERE NEVER CORRECT AFTER THIS MODIFICATION OF THE SOFTWARE AND TOOK THE VEHICLE TO TWO DIFFERENT DEALERSHIPS COMPLAINING THAT COMPUTERS WERE DOING STRANGE THINGS AFTER THIS FIRMWARE MODIFICATION. VEHICLE VIN: [XXX]  INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6). *TR |

| 10638830 | BUICK | RAINIER | 2004 | 2012-11-17 | A PERSON RAN TWO STOP SIGNS AND ENTERED VEHICLE PATH. THE TWO VEHICLES HIT HEAD ON AND THIS VEHICLE MADE IMPACT AT 40 MPH AFTER IT DECELERATED FROM 43 MPH. THE TWO VEHICLE HIT HEAD ON WITH NEAR PERFECT EVEN IMPACT, BASED UPON THIRD PARTY VISUAL DESCRIPTION OF THE FRONT END OF THE VEHICLES DAMAGE. THE VEHICLE DECELERATED AT A MAX SDM RECORDED VELOCITY CHANGE RATE OF -14.07 (MPH) AND A ALGORITHM ENABLED TO MAXIMUM SDM RECORDED VELOCITY CHANGE OF 127.5 MSEC. DRIVER OF THE VEHICLE HIT THE STEERING WHEEL WITH HEAD KNOCKING THE PERSON OUT. AIRBAGS DID NOT DEPLOY. ONSTAR WAS NOT NOTIFIED THAT THERE WAS AN ACCIDENT. COMPUTER SHOWS THE SEATBELT WAS WORN BY DRIVER. WHEN THE ONSTAR WAS MANUALLY ACTIVATED BY THE DRIVER WHEN HE CAME TOO, THE GPS SHOWED THE VEHICLE FURTHER NORTH UP THE ROAD CAUSING INCORRECT POLICE DIVISION BEING CALLED. VEHICLE WAS GOING UP HILL WHEN THE ACCIDENT OCCURRED. OTHER VEHICLE WAS GOING DOWNHILL. THE OTHER VEHICLE WAS A SUBARU. VEHICLE COMPUTER DATA WAS RETRIEVED BY A BOSCH CRASH DATA RETRIEVAL TOOL USING VERSION 8.0 SOFTWARE. I HAVE A COPY OF THIS DATA. GM REPORTS THAT THE COMPUTER WAS CORRECT NOT TO DEPLOY AIRBAGS AND NOT CALL FOR HELP USING ONSTAR. THE VEHICLE HAD A SOFTWARE MODIFICATION DUE TO A FAULT WITH THE FAN SPEED CALIBRATION SETTING OFF A WARNING LIGHT. WE HAD COMPLAINED THAT THINGS WERE NEVER CORRECT AFTER THIS MODIFICATION OF THE SOFTWARE AND TOOK THE VEHICLE TO TWO DIFFERENT DEALERSHIPS COMPLAINING THAT COMPUTERS WERE DOING STRANGE THINGS AFTER THIS FIRMWARE MODIFICATION. VEHICLE VIN: [XXX] INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6). *TR |
|---|---|---|---|---|---|
| 11099015 | BUICK | RAINIER | 2004 | 2016-04-29 | TL* THE CONTACT OWNED A 2004 BUICK RAINIER. WHILE DRIVING APPROXIMATELY 30 MPH IN THE RAIN, THE VEHICLE HYDROPLANED. THE CONTACT LOST CONTROL OF THE VEHICLE AND CRASHED INTO A WALL. AS A RESULT, THE CONTACT WAS RENDERED UNCONSCIOUS AND TRANSPORTED TO THE HOSPITAL VIA AMBULANCE. THE CONTACTS HEAD STRUCK THE DRIVER'S SIDE WINDOW AND THE CONTACT REMAINED IN A COMA FOR SEVERAL MONTHS. THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED INJURIES TO THE RIGHT SIDE OF THE HEAD, WHICH CAUSED WALKING COMPLICATIONS AND A LOSS OF FEELING IN THE RIGHT SIDE OF THE BODY. IN ADDITION, THE CONTACT SUFFERED A LOSS OF SIGHT IN THE RIGHT EYE DUE TO A CRUSHED SKULL. THE VEHICLE WAS TOWED TO A TOW LOT AND DEEMED DESTROYED. A DEALER WAS NOT MADE AWARE OF THE AIR BAG FAILURE. THE VEHICLE WAS NOT DIAGNOSED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS UNKNOWN. |
| 10125145 | CADILLAC | ESCALADE | 2004 | 2005-05-11 | INVOLVED IN A HORRIFIC AUTO ACCIDENT WITH OTHER VEHICLE. "HIT IN FRONT PASSENGER & FRONT PART OF VEHICLE (BY RADIATOR AREA) AT HIGH SPEED. EST.SPEED APPROX. 45-55 MPH WITH NO SKID MARKS, OTHER VEHICLE STOPPED WHEN IT HIT US. NEW GM/ESCALADE-SUV/"04- WITH 11,000 MILES, BOUGHT NEW DECLARED TOTAL LOSS, WITH APPARENT SERIOUS FRAME DAMAGE/BENT 12 IN. AND FOUND STRESS CRK. SHOULD GIVE AN IDEA HIGH SPEED OTHER VEHICLE TRAVELING. 8-10 SECONDS FROM IMPACT, ONSTAR CAME ON AUTOMATICALLY. THEY RECD. EMERGENCY MESSAGE VIA SATELLITE. VEHICLE HAD BEEN IN A SERIOUS MVA AND AIR BAGS DEPLOYED. WE DIDN'T CALL ONSTAR THEY CALLED US. NEXT DAY WE CALLED ASKED HOW THEY KNEW WE WERE ACCIDENT. TOLD US DEPENDING ON THE SEVERITY, THEY GET CERTAIN SIGNALS, WHICH OURS HAD ADVISED OF SERIOUSNESS & AIRBAG DEPLOYMENT. UNBELIEVABLY, NONE OF OUR 4 AIRBAGS DEPLOYED. WE & HUNDREDS OF OUR FRIENDS ARE IN TOTAL DISBELIEF WHEN YOU SEE THE CONDITION VEHICLE WAS LEFT IN & THAT 4 AIR BAGS DIDN'T DEPLOY. WE WERE INJURED BUT BY GRACE OF GOD INJURIES WERE NOT LIFE THREATENING. HEAD,UPPERANDLOWERBACK,NECK,LEGS,SHOULDER,HIPS AND ARMS EXTREMLEY SORE. HAS BEEN 33 DAYS SINCE THE ACCIDENT AND AM STILL FEELING PAINS & SERIOUS HEADACHES BUT ALIVE. HAVE DECIDED TO BECOME ADVOCATES AND REPORT ACCIDENT/INCIDENT TO POSSIBLY SAFE A PERSON(S) LIFE AND MAKE GENERAL MOTORS AWARE THAT THEY HAVE A POSSIBLE DEFECT IN THEIR AIR BAGS, LEADING TO MASSIVE RECALL AND POSSIBLY A CLASS ACTION LAW SUIT IF NOT FIXED. THIS IS A VERY SERIOUS MATTER. ANYTIME ANYONE IS HIT AT RATE OF SPEED THAT WE WERE, TO LEAVE BRAND NEW SUV ESCALADE A TOTAL LOSS/ 12 IN. BENT FRAME & STRESS CRACK & 4 AIR BAGS NOT DEPLOY - LEADS US TO BELIEVE OF A SERIOUS PROBLEM AND A SERIOUS ONE FOR GM/CADILLAC. CALL FOR FURTHER DETAILS (956) 533-0811 (956)358-5272. THANK YOU & GOD BLESS. |
| 10127916 | CADILLAC | ESCALADE | 2004 | 2005-05-11 | THE CONSUMER WAS INVOLVED IN AN A SERIOUS ACCIDENT AND THE AIR BAGS DID NOT DEPLOY. THERE WERE 2 INJURIES. *JB  *SC |

| | | | | | |
|---|---|---|---|---|---|
| 10152700 | CADILLAC | ESCALADE | 2004 | 2005-07-16 | ON JULY 16TH, 2005, I WAS INVOLVED IN A LIFE CHANGING, SINGLE VEHICLE AUTO ACCIDENT. I STRUCK A HILL WITH THE FRONT RIGHT SIDE OF THE VEHICLE WITH ENOUGH EXCESSIVE FORCE TO FLIP THIS CADILLAC ESCALADE HEAD FIRST. THE ESCALADE FLIPPED TWICE, IMPACTING THE FRONT OF THE VEHICLE AND LANDING UP SIDE DOWN. ASTONISHINGLY, OUT OF THE FOUR AIR BAGS IN THIS VEHICLE, NOT ONE OF THEM DEPLOYED. I PURCHASED THIS 2004 ESCALADE BRAND NEW AND AT THE TIME OF THE ACCIDENT IT ONLY HAD 15,000 MILES. THE VEHICLE IS A TOTAL LOSS AND IT IS UTTERLY UNBELIEVABLE THAT THE AIR BAGS DID NOT DEPLOY. I WAS SO IMPRESSED WITH THE RAVED REVIEWS, CONSUMER REPORTS INCLUDING SAFETY FEATURES, AND STYLISH BODY THAT THIS CADILLAC ESCALADE BECAME THE VEHICLE OF MY DREAMS. NEEDLESS TO SAY, I AM VERY DISAPPOINTED WITH MY CADILLAC EXPERIENCE. I DO NOT TRUST THIS VEHICLE ENOUGH TO GET INTO ANOTHER ONE. I KNOW THAT I AM ONLY HERE BECAUSE GOD DECIDED TO SPARE MY LIFE. AS A DIRECT RESULT OF THIS ACCIDENT I FREQUENTLY SUFFER SEVERE MIGRAINES, DIZZY SPELLS, BLURRED VISION, MEMORY LOSS, AND ANXIETY/PANIC ATTACKS ALL WHICH KEEP ME FROM SLEEPING. IT IS EXTREMELY DIFFICULT TO COMMUTE FROM DOCTORS APPOINTMENTS AND WORK FOR FEAR OF ANOTHER ACCIDENT. THE NEXT WEEK I HAD SEVERE CHEST, SHOULDER AND LOWER BACK PAINS, ALL OF WHICH I AM BEING TREATED FOR ON A REGULAR BASIS. I ALSO SEEK TREATMENT FROM A NEUROLOGIST FOR THE HEAD INJURY. I BELIEVE THAT THIS VEHICLE HAS A SERIOUS PROBLEM WITH THE AIR BAGS AND GM SHOULD STRONGLY CONSIDER INVESTIGATING THIS MATTER. *NM |
| 10386829 | CADILLAC | ESCALADE | 2004 | 2010-02-10 | TL* THE CONTACT OWNS A 2004 CADILLAC ESCALADE. WHILE DRIVING APPROXIMATELY 65-75 MPH, THE CONTACT FELL ASLEEP. THE VEHICLE DRIFTED OFF THE ROAD AND CRASHED INTO A BRIDGE BARRIER. THE CONTACT SUSTAINED A BROKEN WRIST AND FACIAL LACERATIONS. THE FRONT SEAT PASSENGER WAS AIR-LIFTED TO THE HOSPITAL AND SUSTAINED A BROKEN RIGHT LEG AND SEVERE FACIAL INJURIES. THE REAR SEAT PASSENGER SUSTAINED INJURIES TO THE SPINE. THE AIRBAGS FAILED TO DEPLOY WITH THE MASSIVE IMPACT. A POLICE REPORT WAS FILED AND THE VEHICLE WAS TOWED TO A COLLISION CENTER.  UPDATED 10/14/11 |
| 10436436 | CADILLAC | ESCALADE | 2004 | 2011-11-01 | I WAS IN AN MVA ON NOV. 1, 2011 THAT TOTALED MY 2004 ESCALADE. NONE OF THE AIRBAGS DEPLOYED, DESPITE DAMAGE TO ALL SIDES OF THE AUTOMOBILE, INCLUDING FRONT END IMPACT. THE CAR ACTUALLY ROLLED. THE FRAME WAS BENT AND THE FRONT HIT AN EMBANKMENT NOSE FIRST WITH GREAT IMPACT. I SUFFERED SEVERAL INJURIES, INCLUDING HEAD TRAUMA. *TR |
| 10324984 | CADILLAC | SRX | 2004 | 2010-01-19 | 2004 CADILLAC SRX INVOLVED IN A FRONT END RASH ON JAN 19, 2010. SEVERE FRONT END CRASH HOWEVER AIRBAGS DID NOT DEPLOY. *TR |
| 10638570 | CADILLAC | SRX | 2004 | 2014-09-17 | TL* THE CONTACT OWNS A 2004 CADILLAC SRX. THE CONTACT STATED THAT A TIRE BLEW OUT CAUSING THE VEHICLE TO SPIN OUT OF CONTROL AND CRASH. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED AND ONE INJURY WAS REPORTED THAT DID NOT REQUIRE MEDICAL ATTENTION. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 120,000. |
| 10245434 | CHEVROLET | ASTRO | 2004 | 2008-10-10 | MY WIFE WAS DRIVING A 2004 CHEVY ASTRO VAN APPROX. 35-40 MPH ON A TWO-WAY STREET. ANOTHER DRIVER FROM THE OPPOSITE DIRECTION CUT ACROSS INTO HER LANE AND HAD A HEAD-ON COLLISION. SHE SUFFERED A BROKEN WRIST & BRUISED RIBS. SHE HAD THREE OF OUR CHILDREN IN THEIR SEATS. THEY WERE SHAKEN AND HAD SEATBELT BRUISES. THE VAN WAS NOT DRIVABLE AND WAS TOWED AWAY.   THE POLICE & THE TOW DRIVER REPORTED THAT THE AIRBAGS DID NOT DEPLOY. WE HAVE SOME EXPECTATION THAT THE AIRBAGS WOULD HAVE SECONDARY ROLE TO MINIMIZE INJURIES. MY COMPLIANT THAT THE HARD COLLISION WAS SUFFICIENT TO DEPLOY SAFETY EQUIPMENT BUT DID NOT WORK AS DESIGNED. WAS THERE A RECALL FOR AIRBAG FAILURES FOR THIS MODEL OF VEHICLE?  *TR |
| 10057529 | CHEVROLET | SILVERADO | 2004 | 2004-01-27 | WHILE DRIVING 40 MPH, VEHICLE WAS INVOLVED IN A HEAD ON COLLISION. UPON IMPACT, DUAL AIR BAGS DID NOT DEPLOY.  PASSENGER SUSTAINED INJURIES TO NECK, JAW,  AND A BROKEN ARM. *AK *JB |
| 10065268 | CHEVROLET | SILVERADO | 2004 | 2004-03-30 | WHILE DRIVING 60 MPH DRIVER APPLIED THE BRAKES AND  PEDAL WENT TO THE FLOOR.  THIS CAUSED THE DRIVER TO LOSE CONTROL OF THE VEHICLE, AND  HIT ANOTHER VEHICLE ON THE PASSENGER SIDE. UPON IMPACT,  BOTH AIR  BAGS DID NOT DEPLOY. THERE WERE NO INJURIES. *AK |
| 10073357 | CHEVROLET | SILVERADO | 2004 | 2004-05-10 | THE CONSUMER STATED THE FRONTAL AIR BAGS DID NOT DEPLOY DURING AN ACCIDENT. THERE WERE NO INJURIES.  THE DRIVER HAD THE VEHICLE TOWED TO A BODY SHOP.  *JB  WHILE TRAVELING AT 30 MPH AND  APPROACHING AN INTERSECTION, A SECOND VEHICLE ENTERED ON THE CONSUMER'S LEFT HAND SIDE, THERE WAS NO TIME TO REACT, THE CONSUMER STRUCK THE SECOND VEHICLE ON IT'S RIGHT SIDE . THE DRIVERS SIDE AIR BAG DID NOT DEPLOY. *SC* *JB |
| 10083968 | CHEVROLET | SILVERADO | 2004 | 2004-06-19 | WHILE DRIVING AT 35 MPH CONSUMER'S VEHICLE WAS INVOLVED IN A FRONTAL COLLISION. UPON IMPACT, NONE OF THE FRONTAL AIRBAGS DEPLOYED. DRIVER SUSTAINED MINOR BRUISES TO THEIR CHEST FROM THE SEAT BELT, AND THE FRONT PASSENGER SUSTAINED A BRUISED KNEE. THIS COLLISION RESULTED IN $800.00 FRONTAL DAMAGE.  *AK |

| 10086614 | CHEVROLET | SILVERADO | 2004 | 2004-08-06 | 2001 CHEVROLET PICKUP INVOLVED IN A CRASH WITH A TREE AND AIR BAG DID NOT DEPLOY. DRIVE SUSTAINED SEVERE INJURY TO MOUTH BY HITTING STEERING WHEEL, DISPLACING FIVE LOWER FRONT TEETH CAUSING EXTENSIVE PAIN HAVING TEETH REPOSITIONED. *JB |
| 10105126 | CHEVROLET | SILVERADO | 2004 | 2004-12-10 | WHILE DRIVING 60 MPH VEHICLE HYDROPLANED, LOST CONTROL, AND CRASHED INTO A BUILDING HEAD ON. UPON IMPACT, DRIVER'S SIDE AIR BAG DID NOT DEPLOY, AND PASSENGER'S SIDE AIR BAG WAS DEACTIVATED. NO INJURIES REPORTED. *AK |
| 10117538 | CHEVROLET | SILVERADO | 2004 | 2005-04-01 | CONSUMER'S VEHICLE WAS INVOLVED IN A FRONTAL COLLISION WITH AN OAK TREE AT 5 MPH. UPON IMPACT, NEITHER FRONTAL AIR BAG DEPLOYED. ALTHOUGH CONSUMER WAS PROPERLY RESTRAINED THE CRASH PUSHED THE ENGINE THROUGH THE FIREWALL AGAINST THE PASSENGER'S SEAT. DRIVER SUSTAINED INJURIES, AND AN AMBULANCE TRANSPORTED THE DRIVER TO THE LOCAL HOSPITAL. *AK* |
| 10134302 | CHEVROLET | SILVERADO | 2004 | 2005-08-23 | DT: 2004 CHEVROLET SILVERADO. THE CONSUMER WAS IN AN ACCIDENT ON AUGUST 23, 2005. WHILE DRIVING 40 MPH. A DEER CAME ONTO THE ROAD, CONSUMER'S VEHICLE SWERVED TO AVOID IT, AND WENT INTO RAVINE. TOOK OUT TWO TREES. THIS DAMAGED THE FRONT END OF THE VEHICLE. UPON IMPACT, THE AIRBAGS DID NOT DEPLOY. THE VEHICLE WAS DRIVEN HOME, AND IS CURRENTLY AT THE AUTO BODY SHOP. THERE HAS BEEN NO DETERMINATION AS TO WHY THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT TAKEN. THE CONSUMER SUSTAINED INJURIES. SHE BRUISED THE CHEST, AND SHE HAD A BULGING DISC I NECK NEAR SPINAL CORD. *AK |
| 10134631 | CHEVROLET | SILVERADO | 2004 | 2005-08-28 | DT: THE CONTAC OWNS A 2004 CHEVROLET SILVERADO. THE CONTACT'S VEHICLE WAS INVOLVED IN A FRONT END COLLISION WHILE TRAVELING 65 MPH ON AUGUST 28, 2005. UPON IMPACT, THE AIR BAGS DID NOT DEPLOY. THERE WERE NO WARNING LIGHTS ON INDICATING THERE WAS A PROBLEM WITH THE AIR BAG SYSTEM. THE CONTACT STATED ANOTHER VEHICLE LOST CONTROL OF AND HIT THE SIDE OF CONTACT'S VEHICLE, CAUSING IT TO HIT THE CENTER MEDIAN. THE CONSUMER CONTACTED THE DEALERSHIP AND THE MANUFACTURER. *AK |
| 10141161 | CHEVROLET | SILVERADO | 2004 | 2005-10-25 | DT: THE CONTACT STATED THE COMPANY TRUCK THAT HE DROVE WAS INVOLVED IN AN ACCIDENT. UPON IMPACT, THE AIRBAGS DID NOT DEPLOY. THE ENTIRE FRONT END OF THE VEHICLE WAS DESTROYED. THE CONTACT SUSTAINED INJURIES. HE BRUISED HIS CHEST, SHIN AND TORE THE TENDON IN HIS ANKLE. THERE HAD BEEN NO ACCIDENTS IN THIS VEHICLE PRIOR TO THIS. A POLICE REPORT WAS TAKEN AT THE SCENE. *AK |
| 10149082 | CHEVROLET | SILVERADO | 2004 | 2006-01-10 | ON JAN. 10 OF 2006 I LOST CONTROL OF MY 2004 CHEVY SILVERADO WHILE I WAS DRIVING ON ICY ROAD. I HIT A CONCRETE DIVIDER HEAD ON. MY CONCERN IS THAT THE AIR BAG NEVER DEPLOYED EVEN THOUGH THE DAMAGE TO THE TRUCK WAS QUITE BIG. I WAS GIVEN A ESTIMATE OF \$9820 OF DAMAGE BECAUSE THEY HAVE TO REPLACE THE BODY FRAME. EVEN WITH ALL THIS DAMAGE MY AIRBAG NEVER DEPLOYED. *NM |
| 10153763 | CHEVROLET | SILVERADO | 2004 | 2006-03-20 | WHILE DRIVING ON SLICK ROADS MY TRUCK WENT OFF THE ROAD, DOWN A HILL AND CRASHED INTO AN EMBANKMENT. THE ENTIRE FRONT END WAS SEVERELY DAMAGED. THE FRAME WAS BENT, THE BUMPER WAS WRAPPED UP UNDER THE FENDER, GRILL GUARD PUSHED INTO THE RADIATOR. UPON IMPACT NEITHER OF THE AIRBAGS DEPLOYED. MY FACE SLAMMED INTO THE STEERING WHEEL BREAKING MY NOSE. TRUCK SALVAGED. *JB |
| 10155380 | CHEVROLET | SILVERADO | 2004 | 2006-02-19 | I HAD AN ACCIDENT IN MY 2004 CHEVY TRUCK AT A SPEED OF APPROX 80 MPH HEAD ON IMPACT. THE TRUCK WAS TOTALED BUT MY AIR BAGS DIDN'T WORK. I MADE A COMPLAINT TO GMAC, THEY HAD AN INVESTIGATION AND ACCORDING TO THEM THERE WAS NOTHING WRONG WITH THE AIR BAGS. I FIND THAT HARD TO BELIEVE WITH THAT KIND OF IMPACT, THIS IS A SAFETY ISSUE AND I HAVE 2001 CHEVY SUBURBAN THAT MY WIFE DRIVES WITH MY CHILDREN. CAN YOU PLEASE LOOK INTO THIS BECAUSE I WOULD LIKE TO KNOW GMAC IS NOT TAKEN RESPONSIBILITY FOR THE AIR BAG FAILURE. THANK GOD I WAS WEARING MY SEAT BELT, BECAUSE IT WAS THE ONLY THING THAT SAVED MY LIFE. *NM |
| 10156562 | CHEVROLET | SILVERADO | 2004 | 2004-09-04 | DT*: THE CONTACT STATED WHILE STOPPED AT A STOP SIGN, THE VEHICLE WAS HIT ON THE DRIVER'S SIDE FRONT END. THE AIR BAGS DID NOT DEPLOY. SEAT BELTS WERE IN USE HOWEVER BACK AND NECK INJURIES WERE SUSTAINED. THE IMPACT WAS SO SEVERE; BOTH PASSENGER TIRES CAME OFF THE RIMS AND DUG INTO THE PAVEMENT. THE POLICE WERE ON SCENE AND A REPORT WAS FILED. THE VEHICLE WAS TOWED TO DEALER. UPON INSPECTION NO DETERMINATION COULD BE MADE WHY THE AIR BAGS DID NOT DEPLOY. THE MANUFACTURER WAS ALERTED. UPDATED 05/16/06. *JB |
| 10202240 | CHEVROLET | SILVERADO | 2004 | 2006-02-08 | I WAS DRIVING UP TP A STOP LIGHT. WHEN THE LIGHT TURNED RED THERE WAS A CAR IN FRONT OF ME THAT HAD STOPPED. I REALIZED I DIDN'T HAVE A LOT OF ROOM BUT THOUGHT IT WOULD BE ENOUGH TO STOP. I PUT THE PEDAL TO THE FLOOR AND STILL HIT THEM TWO PEOPLE WERE INJURED. *TR- THEN ON 9/8/07 A DEER RAN OUT I IN FRONT OF ME, AGAIN MY FOOT TO THE FLOOR I HIT THE DEER. 1ST I WAS SUPRISED THAT MY AIR BAGS DIDN'T DEPLOY (REALLY TORE UP THE FRONT OF THE TRUCK) AND 2ND I SHOULD OF BEEN ABLE TO SLOW DOWN IN TIME. AFTER READING ALL OF THE ISSUES WITH THE BRAKES ON CHEVYS AND NO ONE IS DOING ANYTHING ABOUT IT, I THINK ITS TIME TO LOOK FOR A DIFFERENT CAR COMPANY. |

| | | | | | |
|---|---|---|---|---|---|
| 10238395 | CHEVROLET | SILVERADO | 2004 | 2008-01-22 | TL*THE CONTACT OWNS A 2004 CHEVROLET SILVERADO. WHILE DRIVING APPROXIMATELY 58 MPH, THE CONTACT SLID ON A PATCH OF ICE AND LOST CONTROL OF THE VEHICLE. THE VEHICLE RAN OFF THE ROAD AND CRASHED INTO A TELEPHONE POLL ON THE PASSENGER SIDE. THE VEHICLE STOPPED WHEN IT CRASHED INTO A FROZEN EMBANKMENT. UPON IMPACT, THE FRONT AIR BAGS FAILED TO DEPLOY EVEN THOUGH THE CONTACT MADE IMPACT WITH THE STEERING WHEEL. THE CONTACT WAS INJURED. THE VEHICLE WAS COMPLETELY DESTROYED AND A POLICE REPORT WAS FILED. THE CONTACT FILED A COMPLAINT WITH THE MANUFACTURER, BUT THE COMPLAINT WAS DENIED. THE MANUFACTURER WAS UNABLE TO DIAGNOSE THE VEHICLE; HOWEVER, AFTER INSPECTION OF THE VEHICLE, THE MANUFACTURER CONFIRMED THAT THE AIR BAGS WERE ENABLED AT THE TIME OF IMPACT. THEY DID NOT GIVE AN EXPLANATION FOR THE DEPLOYMENT FAILURE. THE VIN WAS UNKNOWN. THE FAILURE AND CURRENT MILEAGES WERE 180,000.  UPDATED 09/03/08 *BF  UPDATED 09/04/08. *JB |
| 10115547 | CHEVROLET | SUBURBAN | 2004 | 2004-08-03 | THE CONSUMER WAS INVOLVED IN AN ACCIDENT IN HIS 2004 CHEVROLET SUBURBAN IN WHICH THE AIR BAGS DID NOT DEPLOY. AN OCCUPANT IN THE VEHICLE WAS INJURED WHEN THE AIR BAGS DID NOT DEPLOY. *NM  *SC *JB |
| 10125146 | CHEVROLET | SUBURBAN | 2004 | 2005-06-10 | DT: VEHICLE WAS GOING ABOUT 35-40 MPH AND THE SIDE AND FRONT AIR BAGS DID NOT DEPLOY DURING AN ACCIDENT. *AK |
| 10200729 | CHEVROLET | TAHOE | 2004 | 2007-08-09 | I WAS INVOLVED IN A HEAD ON COLLISION WITH 2 OTHER VEHICLES, AT 45 TO 50 MPH, AND MY AIR BAGS FAILED TO DEPLOY. *TR |
| 10409000 | CHEVROLET | TAHOE | 2004 | 2011-06-16 | 2004 CHEVROLET TAHOE, AFTER BEING INVOLVED IN AN ACCIDENT WITH SEVERE IMPACT TO BOTH FRONT CORNERS AND BUMPER, HARD IMPACT COLLISION, AND AFTER FLIPPING THREE TIMES, BOTH FRONT AIR BAGS DID NOT DEPLOY. SEVERE DRIVER INJURY AS A RESULT OF THE AIRBAG FAILURE. *TR |
| 10836861 | CHEVROLET | TAHOE | 2004 | 2015-02-09 | MY HUSBAND AND I WAS INVOLVED IN AN ACCIDENT AND THE AIR BAGS DID NOT DEPLOY. WE WERE HIT AT 55 MPH |
| 10314549 | CHEVROLET | TRACKER | 2004 | 2010-02-04 | MYSELF AND 2 DAUGHTERS WERE IN A HEAD ON WRECK 2/04/2010 WHEN A GUY PULLED OUT IN FRONT OF US, NEITHER OF THE AIRBAGS DEPLOYED. MY DAUGHTER HIT THE WINDSHIELD AND I HIT THE STEERING WHEEL AND DASH. THE PREGNANT ONE WAS THANKFULLY IN THE BACK SEAT. *TR |
| 10567426 | CHEVROLET | TRACKER | 2004 | 2014-02-23 | TL* THE CONTACT OWNS A 2004 CHEVROLET TRACKER. THE CONTACT STATED THAT WHILE DRIVING IN THE SNOW, SHE LOST CONTROL OF THE VEHICLE AND CRASHED THE FRONT OF END INTO AN EMBANKMENT. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUFFERED CONTUSIONS AND BRUISING TO THE TORSO REGION. A POLICE REPORT WAS TAKEN. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED. THE FAILURE MILEAGE WAS APPROXIMATELY 20,000.  UPDATED 04/22/14*LJ  THE CONSUMER STATED SHE HIT A PATCH OF ICE WHILE DRIVING, SHE VEERED OFF THE HIGHWAY LOST CONTROL OF THE VEHICLE, AND FLIPPED OVER 3 TIMES. UPDATE 04/24/14 |
| 10083860 | CHEVROLET | TRAILBLAZER | 2004 | 2004-07-16 | WHILE DRIVING AT 70 MPH DRIVER SWERVED TO LEFT TO AVOID HITTING A MOTORIST. WHEN THE DRIVER ATTEMPTED TO STRAIGHTEN BACK THE STEERING WHEEL BY TURNING IT TO THE RIGHT IT OVERCORRECTED SEVERELY. THIS RESULTED IN THE DRIVER LOSING CONTROL OF THE VEHICLE AND CRASHING INTO A TREE. UPON IMPACT, AIR BAGS DID NOT DEPLOY. DRIVER DIED, AND FRONT PASSENGER SUSTAINED A BROKEN NECK, SEVERE LACERATION TO THEIR SCULL, AND BRUISES. THE PASSENGER IN THE REAR SUSTAINED A BROKEN ANGLE , A DISLOCATED HIP, AND TWO BROKEN RIBS. *AK |
| 10087212 | CHEVROLET | TRAILBLAZER | 2004 | 2004-08-03 | WHILE DRIVING 45 MPH CONSUMER'S VEHICLE COLLIDED INTO ANOTHER VEHICLE. UPON IMPACT, BOTH  FRONTAL AIR BAGS FAILED TO DEPLOY. VEHICLE WAS TOWED TO A GARAGE.  *AK  THE CONSUMER SUSTAINED A HAIR LINE FRACTURE IN THE CHEST AREA. *NM |
| 10094926 | CHEVROLET | TRAILBLAZER | 2004 | 2004-10-03 | AT APPROXIMATELY 45 MPH  CONSUMER'S VEHICLE WAS INVOLVED IN A COLLISION, STRIKING A BARRIER HEAD ON.  UPON IMPACT,  AIR BAGS DID NOT DEPLOY.*AK |
| 10100282 | CHEVROLET | TRAILBLAZER | 2004 | 2004-10-29 | I WAS GOING BETWEEN 25 AND 35 MPH. I SWRIVED TO AVOID A VEHICLE BACKING UP THAT HAD MISSED A TURN. I TRIED TO STREER BACK AND THEN I LOST CONTROL HITTING A TELEPHONE POLE HEAD ON. AIRBAGS DID NOT DEPLOY NEITHER DID ONSTAR. TO THIS POINT NOTHING HAS BEEN DONE TO REPAIR THE FAILURE AS FOR MY DAD'S TRAILBLAZER THATS A WORK IN PROGRESS . *AK |
| 10103148 | CHEVROLET | TRAILBLAZER | 2004 | 2004-11-24 | CONSUMER WAS DRIVING 60 MPH AND LOST CONTROL, HITTING A UTILITY POLE. UPON IMPACT, THE AIRBAGS FAILED TO DEPLOY. VEHICLE WAS TOTALED. *AK |
| 10106552 | CHEVROLET | TRAILBLAZER | 2004 | 2004-12-29 | I WAS DRIVING A CHEVY TRAILBLAZER RENTED FROM HERTZ ON DECEMBER 29, 2004. ON HIGHWAY 285 NEAR MILE MARKER 189.5, I ENCOUNTERED BLACK ICE ON A CURVE. THE VEHICLE STARTED A 4-WHEEL DRIFT INTO THE ONCOMING LANE. I ATTEMPTED TO AVOID COLLIDING WITH ANOTHER VEHICLE THAT HAD SPUN OUT. THE ABS DID NOT WORK. THERE WAS NO STABILITY CONTROL. I STRUCK AN EMBANKMENT AND THE VEHICLE FLIPPED OVER. ALTHOUGH THERE WAS BOTH FRONTAL AND SIDE IMPACT, NO AIRBAGS DEPLOYED. IT IS MY BELIEF THAT THE CHEVY TRAILBLAZER IS INHERENTLY UNSAFE. THERE IS NO WAY THIS VEHICLE SHOULD HAVE ROLLED OVER AT THE SPEED AT WHICH I WAS DRIVING.  *NM |
| 10123920 | CHEVROLET | TRAILBLAZER | 2004 | 2005-05-30 | OTHER VEHICLE FAILED TO YIELD FROM A YIELD SIGN. FRONT OF TRAILBLAZER STRUCK RIGHT SIDE REAR OF OTHER VEHICLE. IMPACT DAMAGED CROSS BAR ON FRAME PUSHING RADIATOR INTO MOTOR. DRIVER AND PASSENGER AIR BAG FAILED TO DEPLOY. ESTIMATED IMPACT SPEED 45-50 |

| | | | | | |
|---|---|---|---|---|---|
| 10135169 | CHEVROLET | TRAILBLAZER | 2004 | 2005-01-19 | MY DAUGHTER WAS DRIVING MY 2004 TRAILBLAZER ON AN ICY, SLIPPERY ROAD AT 25 -30 MILES PER HOUR. (THE SPEED LIMIT IS 30, IT WAS THE STREET WE LIVE ON). WHEN SHE LOST CONTROL, HIT A TREE AND TOTALED ($22,000.00) THE VEHICLE. THE OFFICER AND I WALKED THE PATH IN THE STREET AND COULD NOT FIND ANY SIGNS OF SKIDDING OR BRAKING, THERE FORE LEADING ME TO BELIEVE NOW THAT THERE WAS A BRAKING FAILURE. UP UNTIL NOW, WHEN I HEARD ABOUT THE BRAKES FAILING DO TO CORROSION FROM ROAD SALT, I ALWAYS THOUGHT IT WAS JUST AN ACCIDENT IN POOR ROAD CONDITIONS. WHEN I FIRST READ THE REPORT OF THE INVESTIGATION I COULDN'T BELIVE IT WAS THE SAME SCENARIO AS HER ACCIDENT. POOR ROAD CONDITIONS, THEREFORE POSSIBLE SALT BUILDUP, A SLOW SPEED AND INABILITY TO STOP. I AM SO GRATEFULL THAT SHE WALKED AWAY WITHOUT A SCRATCH, ALSO CONSIDERING THE AIR BAGS DID NOT DEPLOY, EVEN THOUGH THE FRONT END WAS TOTALED. I AM SURE THIS IS A PROBLEM THAT MUST BE IDENTIFIED FOR THOSE LIVING IN COLDER, NORTHERN STATES. |
| 10154051 | CHEVROLET | TRAILBLAZER | 2004 | 2005-10-23 | FOIA REQUEST ALL DOCUMENTS/INFO RELATIVE TO ANY RECALLS OR KNOWN DEFECTS OF THE AIR BAG SYSTEM IN THE 2004 CHEVROLET TRAILBLAZER. *TS ATTORNEY'S CLIENTS WERE SERIOUSLY INJURED WHEN THE VEHICLE THEY WERE OPERATING WAS INVOLVED IN A HIGH SPEED, FRONT END COLLISION. THE AIR BAG SYSTEM DID NOT DEPLOY AT THE TIME OF IMPACT AND AS A RESULT THE THREE OCCUPANTS WERE INJURED. *NM ***NAR*** |
| 10158090 | CHEVROLET | TRAILBLAZER | 2004 | 2006-02-26 | DT*. THE CONTACT STATED WHILE DRIVING 50 MPH THE VEHICLE WAS INVOLVED IN A HEAD ON COLLISION WITH ANOTHER VEHICLE. THE VEHICLE CONTINUED MOVING AND STOPPED BY COLLIDING WITH A STORE SIGN. THE AIR BAGS DID NOT DEPLOY AND SEAT BELTS WERE WORN. THERE WERE NO WARNING LIGHTS TO INDICATE THE AIR BAGS WOULD FAIL. THE CONTACT SUFFERED A KNEE INJURY. A POLICE REPORT WAS FILED AT THE SCENE. THE INSURANCE COMPANY DETERMINED THE VEHICLE WAS TOTALED DUE TO THE ACCIDENT. THE DEALER DOES NOT HAVE THE MEANS TO TEST FOR AIR BAG NON-DEPLOYMENT. UPDATED 1/24/2007 *NM |
| 10177618 | CHEVROLET | TRAILBLAZER | 2004 | 2006-12-01 | TL* - THE CONTACT OWNS A 2005 CHEVROLET TRAIL BLAZER. DURING A SNOW STORM THE CONTACT'S VEHICLE WAS INVOLVED IN A HEAD ON COLLISION. THE CONTACT WAS DRIVING ON THE HIGHWAY AT 55 MPH, AND THE AIR BAGS DID NOT DEPLOY. THERE WERE NO WARNING INDICATOR LIGHTS. THE MANUFACTURER SENT AN INVESTIGATOR TO ACCESS THE DAMAGE, AND STATED THAT THERE WAS $10,000 WORTH OF DAMAGE, AND THAT THE VEHICLE WAS ONLY TRAVELING 8 MPH. *AK |
| 10178863 | CHEVROLET | TRAILBLAZER | 2004 | 2007-01-13 | TL* - THE CONTACT STATED THAT ON 1/13/07, HE CRASHED INTO ANOTHER VEHICLE WITH HIS 2004 CHEVROLET TRAILBLAZER. THE ODOMETER READ 33,000 MILES AT THE TIME OF THE CRASH. HE WAS DRIVING AT 45 MPH AND COLLIDED WITH THE SECOND VEHICLE IN A PERPENDICULAR ANGLE "T-BONE" STRIKING IT ON THE SIDE AS IT CROSSED IN FRONT OF HIM. THE DRIVER WAS THE ONLY OCCUPANT IN THE VEHICLE AND THE DRIVER'S SIDE AIRBAG NEVER DEPLOYED. THERE WERE 5 PEOPLE INJURED IN THE SECOND VEHICLE. *NM |
| 10218896 | CHEVROLET | TRAILBLAZER | 2004 | 2008-02-22 | TL*THE CONTACT OWNS A 2004 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 35 MPH, THE CONTACT REAR ENDED A SCHOOL BUS. THE VEHICLE WAS COMPLETELY DESTROYED AND NONE OF THE AIR BAGS DEPLOYED. TWO PASSENGERS WERE INJURED AND A POLICE REPORT WAS FILED. PRIOR TO THE FAILURE, SHE NEVER EXPERIENCED ANY AIR BAG FAILURE. THE DEALER AND MANUFACTURER HAVE NOT BEEN NOTIFIED. THE CONTACT HAS PICTURES. THE VIN AND ENGINE SIZE WERE UNKNOWN. THE CURRENT AND FAILURE MILEAGES WERE 44,000. |
| 10228023 | CHEVROLET | TRAILBLAZER | 2004 | 2006-11-06 | I WAS SIDE SWIPED BY ANOTHER CAR THAT WENT THROUGH A RED LIGHT. MY TRUCK THEN PROCEEDED TO HIT ANOTHER CAR AND FINALLY THE FRONT END OF THE TRUCK GOT AIRBORNE AND LANDED WITH THE TIRES IN THE FRONT WINDSHIELD OF ANOTHER CAR. THE TRUCK SUSTAINED OVER $6,000 IN DAMAGE AS WELL AS THE FRONT FRAME WHERE THE MOTOR SITS WAS DAMAGED. INSURANCE COMPANY SAID IT COULD BE REPLACED. NOT SURE HOW BECAUSE IT WAS WELDED IN PLACE. AND MY AIRBAGS NEVER DEPLOYED. *TR |
| 10228026 | CHEVROLET | TRAILBLAZER | 2004 | 2007-03-07 | I WAS REAR ENDED BY A GUY DOING 40 MPH. MY TRUCK WAS LIFTED IN THE AIR AND PUSHED INTO THE REAR END OF ANOTHER VEHICLE. MY AIRBAGS NEVER DEPLOYED AND MY SEAT BROKE!! POSSIBLE DEFECT IN THE SEAT? I WAS STOPPED AT A RED LIGHT WHEN THE ACCIDENT HAPPENED. THE SPARE TIRE HOLDER WAS RIPPED OFF MY TRUCK. *TR |
| 10240623 | CHEVROLET | TRAILBLAZER | 2004 | 2008-08-26 | SLIGHTLY TURNED STEERING WHEEL TO LEFT TO AVOID ANOTHER MOTORIST IN FRONT OF ME. ATTEMPTED TO STRAIGHTEN OUT THE VEHICLE; VEHICLE OVER-CORRECTED SEVERELY, UNABLE TO BRAKE, VEHICLE SLAMMED HEAD-ON INTO CONCRETE HIGHWAY BARRIER 45-60MPH, AIR BAGS FAILED TO DEPLOY. DRIVER WAS WEARING SEATBELT, SUBSTANTIAL BRUISING & NECK/BACK INJURY. *TR |
| 10313103 | CHEVROLET | TRAILBLAZER | 2004 | 2009-10-02 | TL*THE CONTACT OWNS A 2004 CHEVROLET TRAILBLAZER. WHILE THE CONTACT WAS DRIVING 35 MPH HE CRASHED INTO ANOTHER VEHICLE AND THEN INTO A LIGHT POLE WHICH DESTROYED THE VEHICLE; HOWEVER, DURING THE CRASH NONE OF THE AIR BAGS DEPLOYED. THE DRIVER AND PASSENGER WERE INJURED. NO ONE WAS INJURED IN THE OTHER VEHICLE. THE VEHICLE WAS DIAGNOSED BY THE DEALERSHIP WHO STATED THAT NO FAILURES COULD BE FOUND. THERE WERE NO PRIOR WARNINGS. THE CURRENT AND FAILURE MILEAGES WERE 95,272 UPDATED 03/30/10. *LJ ACCORDING TO GM, THE NOTICE ON THE DASH READOUT STATED THE AIR BAGS DEPLOYED. UPDATED 06/30/10.*JB |

| | | | | | |
|---|---|---|---|---|---|
| 10327766 | CHEVROLET | TRAILBLAZER | 2004 | 2010-04-21 | TL* THE CONTACT OWNS A 2004 CHEVROLET TRAILBLAZER. WHILE DRIVING 35 MPH, THE CONTACT ATTEMPTED TO MANEUVER THE STEERING WHEEL TO AVOID CRASHING INTO A DEER AND LOST CONTROL OF THE VEHICLE. THE VEHICLE CRASHED INTO A TREE. THE AIR BAGS DID NOT DEPLOY UPON IMPACT. THE CONTACTS FACE HIT THE STEERING WHEEL UPON IMPACT AND SUSTAINED A BROKEN NOSE. THE CONTACT WAS TAKEN TO THE HOSPITAL. THE VEHICLE WAS DESTROYED AND WAS TOWED BY HER INSURANCE COMPANY TO AN UNKNOWN LOCATION. A POLICE REPORT WAS AVAILABLE, IF NEEDED. THE MANUFACTURER WAS NOT CONTACTED. THE FAILURE MILEAGE WAS 80,700. |
| 10356973 | CHEVROLET | TRAILBLAZER | 2004 | 2010-09-19 | TL* THE CONTACT OWNED A 2004 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT THE AIRBAGS DID NOT DEPLOY WHEN HIS WIFE CRASHED INTO A DEER AT APPROXIMATELY 35 MPH. THE DRIVER WAS ALSO INVOLVED IN ANOTHER CRASH WHEN TRAVELING APPROXIMATELY 55 MPH. SHE LOOKED DOWN TO CHECK ON A NOISE SHE HEARD AND WHEN SHE LOOKED UP THE VEHICLE LOST CONTROL AND CRASHED HEAD ON INTO A TREE. THE DRIVER AND THREE OTHER OCCUPANTS WERE INURED. THE GEORGIA HIGHWAY PATROL RESPONDED AND FILED A REPORT. THE PARAMEDICS ALSO RESPONDED AND TRANSPORTED THE FOUR OCCUPANTS TO THE HOSPITAL. THE VEHICLE WAS DESTROYED AND TOWED TO A STORAGE LOT. THE FAILURE MILEAGE WAS APPROXIMATELY 107,000. |
| 10419650 | CHEVROLET | TRAILBLAZER | 2004 | 2011-08-13 | I HIT A DEER AT APPROXIMATELY 65 MPH AND THE AIR BAG DID NOT DEPLOY. MY SON THAT WAS RIDING IN THE PASSENGER SEAT ALSO WAS WEARING HIS SEAT BELT BUT THE SEAT BELT DID NOT CATCH AND HE WAS SLAMMED INTO THE DASH. I REFUSE TO BELIEVE THAT THIS IS NORMAL BEHAVIOR FOR THOSE SAFETY DEVICES. *KB |
| 10551484 | CHEVROLET | TRAILBLAZER | 2004 | 2013-10-29 | TL* THE CONTACT OWNS A 2004 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING 35 MPH, THE DRIVER BECAME DISTRACTED AND CRASHED INTO A TREE. THE AIR BAGS FAILED TO DEPLOY AND THE SEAT BELT FAILED TO RESTRAIN, CAUSING THE DRIVER TO BE THROWN FORWARD. THE DRIVER'S HEAD IMPACTED THE WINDSHIELD AND AS A RESULT, HE SUSTAINED BLEEDING FROM THE BRAIN. A POLICE REPORT WAS FILED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE VEHICLE WAS DESTROYED. THE VIN WAS NOT AVAILABLE. THE FAILURE AND CURRENT MILEAGE WAS UNKNOWN. THE VIN WAS NOT AVAILABLE. |
| 10576838 | CHEVROLET | TRAILBLAZER | 2004 | 2008-06-16 | ON THE AFTERNOON OF 6/16/08, ME IN MY FAMILY WAS TRAVELING NORTH ON I95 IN NORTH CAROLINA GOING TOWARD OUR DESTINATION IN BALTIMORE MD., WHEN ANOTHER VEHICLE CLICK US AND CAUSE OUR SISTER TO LOSE CONTROL OF THE VEHICLE CRASHING INTO THE GUARDRAIL. MY TWO AUNTS AND MYSELF WERE EJECTED FROM THE VEHICLE, BOTH MY AUNTS DIE INSTANTLY. MY MOTHER, SISTERS AND MYSELF SURVIVED BUT HAD SEVERAL INJURIES. THE AIRBAGS DID NOT DEPLOY, AND THE DOORS THAT WERE INITIALLY LOCKED, BUT SOMEHOW THE REAR DOORS (MIDDLE) OPEN DURING IMPACT CAUSING MY AUNTS IN MYSELF TO BE THROWN FROM THE VEHICLE. BE ADVISED THE VEHICLE WAS A GREEN TRAILBLAZER (EXTENDED CAB). *TR |
| 10626582 | CHEVROLET | TRAILBLAZER | 2004 | 2014-08-18 | I WAS ON A 4 LANE HIGHWAY TRAVELING EASTBOUND GOING 50 MPH POSTED SPEED 55 MPH WEARING OUR SEAT BELTS, WHEN ANOTHER VEHICLE WAITING TO U - TURN IN THE CENTER MEDIAN DECIDED TO TURN RIGHT INTO ME-ONCOMING TRAFFIC. THIS PERSON COLLIDED WITH ME, WHICH THAT IMPACT SENT ME INTO A HEAD ON COLLISION WITH THE GUARD RAIL. THE CHEVROLET TRAILBLAZER IS COMPLETELY TOTALED. THERE WERE 2 INCIDENTS IN THAT SEQUENCE OF EVENTS THAT THE AIRBAGS SHOULD HAVE DEPLOYED, BUT DID NOT! THIS ACCIDENT CAUSED SEVERAL INJURIES TO MYSELF AND MY PASSENGER. WE DEFINITELY COULD HAVE BEEN KILLED AND NO AIRBAGS TO HELP SAVE OUR LIVES.....UPDATED 09-03-14 *BF  UPDATED 11/7/2014 *JS *TR |
| 10767586 | CHEVROLET | TRAILBLAZER | 2004 | 2015-08-01 | ON SATURDAY, AUGUST 1, 2015 AT APPROXIMATELY 8:55PM MY MOTHER WAS INVOLVED IN A 1 CAR ACCIDENT ON BAUM RD LOCATED IN TALLAHASSEE, FL. SHE WAS THE ONLY PASSENGER DETERMINED TO BE IN THE VEHICLE AT THE TIME OF THE ACCIDENT. ACCORDING TO THE CRASH REPORT, D1 (DRIVER ONE) WAS TRAVELING WESTBOUND ON BAUM RD GOING THE NORMAL POSTED SPEED OF 55MPH, WHEN SHE VEERED TOWARDS THE CENTER OF THE RD AND SUDDENLY TURNED RIGHT VEERING OF THE RIGHT SHOULDER OF THE RD AND STRIKING SEVERAL TREES ON THE DRIVERS SIDE AND FRONT END. D1 WAS WEARING HER SEATBELT AND MANAGED TO EXIT OUT THE DRIVERS SIDE WINDOW BEFORE COMING TO HER FINAL RESTING PLACE ON THE SHOULDER OF THE RD. WHEN I WENT TO RETRIEVE MY MOTHERS THINGS FROM HER TRAILBLAZER, I NOTICED THAT NO AIR BAGS HAD DEPLOYED. AND AS FAST AS MY MOM WAS GOING AND THE TYPE OF IMPACT & DAMAGE HER SUV SUSTAINED, I WOULD THINK AND HOPE THE AIRBAGS WOULD DEPLOY IN THIS TYPE OF ACCIDENT, THUS PREVENTING SERIOUS INJURY OR DEATH. MY MOM WAS NOT SO LUCKY, AND MYSELF AND MY FAMILY HAVE ENDURED GREAT PAIN FROM LOOSING HER SO SUDDENLY. |
| 10823597 | CHEVROLET | TRAILBLAZER | 2004 | 2016-01-19 | I WAS RECENTLY IN A CAR ACCIDENT DUE TO BAD WEATHER AND ROAD CONDITIONS. LEAVING WORK DRIVING INTERSTATE I89 9STATE NORTHBOUND. CAME UPON BLACK ICE MY CAR FISHTAILED OUT OF CONTROL ; TRYING TO GAIN CONTROL BACK BEFORE I KNEW IT I WAS HEADING TORDS A GUARD RAIL. I WAS ONLY DRIVING 50 TO 55MPH. BEYOND THE GUARD RAIL I DO NOT REMEMBER. I SUFFERED UPPERBODY AND HEAD INJURY AND MY FRONT AIR BAG FAILED TO DEPLOY. OTHERS ARE TELLING ME AND MY HUSBAND TO LOOK INTO THIS AS MY AIRBAG FAILED TO DEPLOY. CAN YOU HELP |
| 11265285 | CHEVROLET | TRAILBLAZER | 2004 | 2019-09-29 | WELL I HIT A TREE AN THE AIRBAGS DIDNT DEPLOYED BUT THE AIRBAG LIGHT IS ON |

| | | | | | |
|---|---|---|---|---|---|
| 10128270 | GMC | ENVOY | 2004 | 2005-07-08 | DT: CONSUMER STATES THAT SHE WAS IN A HEAD ON COLLISION ON JULY 8, 2005 AND THE AIR BAGS DID NOT DEPLOY. SHE WAS GOING 55 MPH WHEN HIT. THERE WAS DAMAGE TO THE VEHICLE AND A POLICE REPORT WAS TAKEN. CONSUMER STATES SHE HAS NECK AND BACK INJURIES, SHE IS GOING TO THE DOCTOR FOR A FOLLOW UP VISIT TODAY. HER DAUGHTER HAS SEAT BELT BURNS ON HER NECK. THE VEHICLE IS CURRENTLY BEING INSPECTED BY THE INSURANCE COMPANY; IT HAD TO BE TOWED TO A BODY SHOP. SHE HAS NOT CONTACTED THE DEALERSHIP OR MANUFACTURER, THE ATTORNEY GENERAL ADVISED HER TO CALL US FIRST. *NM |
| 10152802 | GMC | ENVOY | 2004 | 2006-03-13 | AVOIDING TO HIT AN UPCOMING VEHICLE IN A CURVE, I LOST CONTROL OF MY GMC ENVOY SUV 2004 AND HIT A CONCRETE DRIVEWAY AND STOPPED WITH AN ELECTRICAL UTILITY POST FRONT SIDE. THE AIRBAGS DID NOT DEPLOY CAUSING MYSELF TO HIT THE STEERING WHEEL AND INJURED MY NECK, MY HEAD, LOWER BACK, KNEES AND LEFT ARM. THE INSURANCE COMPANY TOLD ME THAT IF THE AIR BAGS WOULD DEPLOYED THEY WOULD DECLARED MY VEHICLE TOTAL LOSS DUE TO THE EXTENSIVE DAMAGE. I TOLD THEM I DON'T WANT MY VEHICLE REPAIRED IF THE AIR BAGS ARE NOT CHANGED. I INTEND TO GO AGAINST GMC LEGALLY. *JB |
| 10182098 | GMC | ENVOY | 2004 | 2007-01-03 | IN ROUTE TO WORK DRIVING MY 2004 GMC ENVOY I WAS INVOLVED IN WHAT I WOULD CONSIDERED A HEAD ON COLLISION WITH A TELEPHONE POLE. THE IMPACT WAS GREAT ENOUGH TO SPILT THE POLE IN TWO, TOP HALF JUST MISSING THE ROOF OF THE VEHICLE . UPON IMPACT THE AIRBAGS DID NOT DEPLOY NOR DID MY SEAT BELTS LOCK ME IN CAUSING ME TO FLY FORWARD HITTING MY HEAD ON THE STEERING WHEEL, I HAD TO BE EXTRACTED FROM VEHICLE BY FIRE DEPARTMENT AND TRANSPORTED TO ER. I NOW HAVE PERMANENT SCAR APPROXIMATELY 5 INCHES IN LENGTH ACROSS MY FOREHEAD. I FILED A COMPLAINT WITH GMC LATER TO BE INFORMED THAT AFTER THEIR INVESTIGATION THEY CONCLUDED THAT SINCE THE TELEPHONE SIDE TOOK THE GREATER OF THE IMPACT THE IMPACT WAS NOT GREAT ENOUGH TO WARRANT AIRBAG DEPLOYMENT. PLEASE NOTE THAT DRIVERS NOR PASSENGER SIDE AIRBAG DEPLOYED. *JB |
| 10237647 | GMC | ENVOY | 2004 | 2008-08-10 | TL*THE CONTACT OWNS A 2004 GMC ENVOY. WHILE DRIVING APPROXIMATELY 55 MPH, THE VEHICLE STRUCK A GATE, WENT AIRBORNE, DROPPED APPROXIMATELY 35 FEET DOWN AN EMBANKMENT, STRUCK SOME TREES, BOULDERS, AND LANDED IN A SWAMP. THE AIR BAGS FAILED TO DEPLOY AND THE VEHICLE SUSTAINED MAJOR DAMAGE. BOTH THE DRIVER AND PASSENGER SUSTAINED MULTIPLE INJURIES. THE VEHICLE HAD TO BE LIFTED FROM THE EMBANKMENT WITH A CRANE AND WAS TOWED AWAY. A POLICE REPORT WAS FILED. THE CURRENT AND FAILURE MILEAGES WERE 51,000. |
| 10266307 | GMC | ENVOY | 2004 | 2009-04-20 | I WAS TRAVELING NORTHBOUND ON RT 251 FROM PERU TO MENDOTA IL WHEN IT BEGAN RAINING AND HAILING VERY HARD. 251 IS FULL OF POT HOLES. I WAS TRAVELING ABOUT 40 M.P.H. I HIT A POT HOLE AND MY CAR STARTED TO HYDROPLAN. I WENT INTO THE SOUTHBOUND LANE AND THEN INTO DITCH HEAD ON....I HIT THE DITCHES WALL ALMOST HEAD ON AND MY AIRBAGS DID NOT COME OUT. *TR |
| 10272370 | GMC | ENVOY | 2004 | 2009-05-02 | TL*THE CONTACT OWNS A 2004 GMC ENVOY. WHILE DRIVING 60 MPH WITH THE CRUISE CONTROL ACTIVATED, THE CONTACT PASSED OUT DUE TO A SEVERE MEDICAL ISSUE. HE LOST CONTROL OF THE VEHICLE AND CRASHED INTO A TREE. UPON IMPACT, BOTH FRONTAL AIR BAGS FAILED TO DEPLOY. THE CONTACT AND PASSENGER WERE SEVERELY INJURED. THE DRIVER SUSTAINED A BROKEN CLAVICLE AND HIS TEETH WERE KNOCKED OUT OF HIS MOUTH. THE PASSENGER SUSTAINED A LACERATION TO THE HEAD AND ABDOMINAL INJURIES. THE VEHICLE WAS INSPECTED BY AN INSURANCE ADJUSTER, WHO WAS UNABLE TO DETERMINE WHY THE AIR BAGS DID NOT DEPLOY. THE VEHICLE WAS DESTROYED. THE CONTACT CALLED THE MANUFACTURER AND WAS INFORMED THAT AN INVESTIGATION WAS IMPLEMENTED AND A REPRESENTATIVE WILL CALL HIM BACK IN FIVE BUSINESS DAYS. THE FAILURE MILEAGE WAS 42,600. UPDATED 6/5/09 *CN UPDATED 06/09/09. *JB |
| 10275464 | GMC | ENVOY | 2004 | 2009-06-29 | TL*THE CONTACT OWNS A 2004 GMC ENVOY. WHILE DRIVING 35 MPH, THE CONTACT REAR ENDED ANOTHER VEHICLE. HIS VEHICLE WAS DESTROYED. THE AIR BAGS FAILED TO DEPLOY AND THE SEAT BELTS DID NOT RETRACT FOR BOTH OCCUPANTS SEATED IN THE FRONT. THE CONTACT AND THE PASSENGER STRUCK THE STEERING WHEEL WITH THEIR CHESTS AND SHOULDERS. BOTH WERE SEVERELY INJURED. THE CONTACT, PASSENGER, AND OTHER DRIVER WERE TRANSPORTED TO THE HOSPITAL. THE VEHICLE WAS TOWED TO A REPAIR SHOP AND IS AWAITING AN INVESTIGATION. A POLICE REPORT WAS FILED. THE FAILURE MILEAGE WAS 60,000. |
| 10286793 | GMC | ENVOY | 2004 | 2009-10-07 | WHILE TRAVELING DOWN I-95 AT APPX. 60MPH THE CAR IN FRONT OF ME STOPPED SHORT. I SLAMMED INTO THE BACK OF IT. MY AIRBAGS DID NOT DEPLOY, NOR DID ONSTAR CALL TO CHECK ON ME (SO MUCH FOR BELIEVING IN THOSE ADS!) THE ENTIRE FRONT END NEEDS TO BE REPLACED. FLUIDS WERE SPILLING FROM THE VEHICLE. 2 WITNESSES ARE CAPITOL HILL POLICE OFFICERS WHO WERE SHOCKED THAT THE AIRBAGS DID NOT DEPLOY. THE SEATBELT DID RESTRAIN ME CAUSING IRRITATION AT THAT SITE. MY BACK, NECK AND HEAD WERE ACHING. I WAS CHECKED OUT BY THE ER. *TR |
| 10302345 | GMC | ENVOY | 2004 | 2010-01-26 | TL*THE CONTACT OWNS A 2004 GMC ENVOY. WHILE DRIVING 65 MPH IN SNOWY CONDITIONS, HE ATTEMPTED TO PASS A VEHICLE AND WHILE RETURNING BACK INTO THE LANE THE VEHICLE SLID AND HE CRASHED INTO A CONCRETE BARRIER FRONT-END FIRST. THE FRONTAL AIR BAGS DID NOT DEPLOY AT THE TIME OF THE CRASH. THE CONTACT DID NOT SUFFER ANY INJURIES. THE POLICE ARRIVED SHORTLY AFTER AND A POLICE REPORT WAS FILED. THE FAILURE AND CURRENT MILEAGES WERE UNDER 97,000. |

| | | | | | |
|---|---|---|---|---|---|
| 10594270 | GMC | ENVOY | 2004 | 2014-03-12 | CAR SLID INTO RIGHT GUARDRAIL AND THEN SLID TO LEFT IN DITCH ON EXPRESSWAY. THE AIRBAGS DID NOT DEPLOY. IMPACT WAS SIGNIFICANT ENOUGH TO BEND THE FRONT PASSENGER CORNER OF FRAME. THE FRAME IS ALSO CRACKED UNDERNEATH THE MIDDLE OF VEHICLE AS RESULT OF CRASH. CAR IS NO LONGER DRIVEABLE. DRIVER SUFFERED WHIPLASH. *TR |
| 10596479 | GMC | ENVOY | 2004 | 2014-03-31 | I HAD AN ACCIDENT ON A MAJOR HIGHWAY DUE TO WEATHER CONDITIONS. I ENDED UP SPINNING THE VEHICLE AROUND WHILE IN THE TRAVEL LANE AND HIT THE CAR IN THE PASSING LANE. MY AIRBAGS NEVER DEPLOYED. ALTHOUGH NO ONE WAS INJURED THANKFULLY. I WONDERED WHY THE AIRBAGS DIDN'T GO OFF. SHOULD I BE WORRIED? HAS ANYONE MADE THIS SAME COMPLAINT? THANK YOU. *TR |
| 10631914 | GMC | ENVOY | 2004 | 2009-08-25 | MY WIFE WAS IN THE CAR ALONE. VEHICLE RAN OFF ROAD, CRASHED INTO PARKED TRUCK. AIR BAG DID NOT DEPLOY. WIFE DIED OF "CLOSED CHEST TRAUMA". *TR |
| 11378518 | GMC | ENVOY | 2004 | 2020-12-03 | TL-THE CONTACT OWNS A 2004 GMC ENVOY. THE CONTACT STATED THAT WHILE DRIVING AT 50 MPH HE HAD THE SWERVE TO AVOID A HEADON COLLISION FROM A VEHICLE THAT WAS IN HIS LANE. THE VEHICLE WENT OFF THE ROAD AND CRASHED INTO A CONCRETE BARRIER.THE CONTACT HAD A FRACTURED STERNUM AND A BRUISED RIGHT ANKLE, KNEE AND ELBOW. THE CONTACT VISITED THE EMERGENCY ROOM ON HIS OWN WITHOUT BEING TRANSPORTED BY AN AMBULANCE.THE CONTACT STATED THAT NONE OF THE AIR BAGS IN THE FRONT DEPLOYED. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOTALED BY THE INSURANCE COMPANY AND TOWED FROM THE CRASH SITE. THE ENTIRE FRONT OF THE VEHICLE WAS SMASHED IN INCLUDING THE FRAME.  THE BACK AXEL DROPPED AFTER THE COLLISION AND BOTH RIMS ON THE BACK TIRES WERE SHATTERED. THE FRONT RIMS WERE ALSO CRACKED. THE DEALER AND MANUFACTURER HAD NOT BEEN CONTACTED YET. THE FAILURE MILEAGE WAS 180,000. TF |
| 10067417 | GMC | YUKON | 2004 | 2004-04-16 | WHILE DRIVING  CONSUMER APPLIED THE BRAKES AND WITHOUT WARNING  CONSUMER'S VEHICLE COLLIDED WITH THE VEHICLE IN FRONT.  UPON IMPACT, AIR BAGS DID NOT DEPLOY  DRIVER SUSTAINED MINOR INJURIES AND  WAS TRANSPORTED TO THE HOSPITAL FOR EXAMINATION.  VEHICLE WAS TOWED TO THE DEALER FOR INSPECTION, AND DEALER WAS UNABLE TO DUPLICATE OR RESOLVE THE PROBLEM. *AK |
| 10372063 | GMC | YUKON | 2004 | 2010-11-12 | TL* THE CONTACT OWNS A 2004 GMC YUKON. THE CONTACT WAS DRIVING APPROXIMATELY 40 MPH WHEN THE VEHICLE WAS INVOLVED IN A HEAD ON CRASH IN WHICH THE AIR BAGS DID NOT DEPLOY. THE POLICE APPEARED ON THE SCENE AND A REPORT WAS AVAILABLE. THE DRIVER AS WELL AS THE FRONT PASSENGER WAS INJURED AND TRANSPORTED VIA AMBULANCE TO THE HOSPITAL TO TREAT INJURIES. THE VEHICLE WAS TOWED TO AN INSURANCE COMPANY LOT BUT DID NOT HAVE THE FAILURE DIAGNOSED. THE VEHICLE WAS NOT REPAIRED. THE FAILURE AND CURRENT MILEAGE WAS 134,000. |
| 8023949 | CHEVROLET | BLAZER | 2003 | 2002-11-19 | WHILE TRAVELING AT 40 MPH  CONSUMER STATES ANOTHER VEHICLE TRAVELING IN FRONT CAME TO A SUDDEN STOP.  CONSUMER REAR ENDED THAT VEHICLE, AND NONE OF CONSUMER AIRBAGS DEPLOYED.  PLEASE PROVIDE ANY FURTHER INFORMATION.  PH |
| 10023373 | CHEVROLET | BLAZER | 2003 | 2003-06-11 | TWO EMPLOYEES WERE INVOLVED IN A CRASH WHERE THEY WERE THE ONES THAT STRUCK A STOPPED CAR AT 50 MPH. THE AIR BAGS DID NOT DEPLOY....IS THIS A PROBLEM. IS THIS A POSSIBLE RECALL SITUATION. WHO DO I CONTACT ABOUT THIS A CHEVROLET??? DOES YOUR AGENCY GET INVOLVED.  *NLM |
| 10040503 | CHEVROLET | BLAZER | 2003 | | CONSUMER STATED WHILE TRAVELING 45 MPH OR OVER ON WET PAVEMENT VEHICLE LOST CONTROL, AND TRAVELED OFF THE ROAD.  REAR HATCH GLASS EXPLODED , BUT AIR BAGS DID NOT DEPLOY AT ANY TIME. *AK |
| 10044264 | CHEVROLET | BLAZER | 2003 | 2003-08-30 | WHILE TRYING TO AVOID HITTING A PEDESTRIAN VEHICLE WENT OF THE ROAD AND HIT A TREE. UPON IMPACT, FRONT AIR BAGS DID NOT DEPLOY.  VEHICLE COULD NO LONGER BE DRIVEN DUE TO THE EXTENSIVE DAMAGE DONE TO THE FRONT END. *AK |
| 10160753 | CHEVROLET | BLAZER | 2003 | 2006-06-19 | DT*: THE CONTACT STATED THAT BOTH FRONT AIRBAGS OF THE VEHICLE DID NOT DEPLOY DURING A CRASH WHICH OCCURRED WHILE TRAVELING 45 MPH.  THE VEHICLE WAS HEADED EAST ON A NARROW, ROUGH, BUMPY ROAD WHEN IT APPROACHED AN INTERSECTION AND STRUCK ANOTHER VEHICLE HEADING NORTH.  THE OTHER VEHICLE BRIEFLY STOPPED AT THE STOP SIGN AND PULLED OUT INTO THE INTERSECTION 15 FEET BEFORE THE CONTACT'S VEHICLE REACHED THE INTERSECTION. THIS RESULTED IN  THE CONTACT'S VEHICLE CRASHING INTO THE FRONT DRIVER SIDE DOOR OF THE OTHER VEHICLE.  BOTH OCCUPANTS WERE WEARING THEIR SEAT BELTS. THE AIRBAG WARNING LIGHT WAS NOT ON PRIOR TO THE CRASH.  THE POLICE TOOK PICTURES AND A REPORT WAS FILED.  THE VEHICLE WAS TAKEN TO THE DEALER FOR INSPECTION. |

| | | | | | |
|---|---|---|---|---|---|
| 10537593 | CHEVROLET | BLAZER | 2003 | 2013-08-13 | I WAS TRAVELING SOUTHBOUND WHEN I EXPERIENCED A SEIZURE AND LOST CONTROL OF MY VEHICLE. I PROCEEDED TO VEER TO THE LEFT WHERE I CLIPPED SEVERAL CARS THAT WERE HEADED NORTHBOUND AND HAD STOPPED DUE TO THE REALIZATION THAT MY VEHICLE WAS NOT UNDER CONTROL. I THEN PROCEEDED OVER A TREE LAWN AND INTO A PARKING LOT. I HIT A DODGE RAM PICKUP WITH THE RIGHT FRONT CORNER OF MY VEHICLE AND PUSHED THAT VEHICLE INTO ANOTHER PARKED CAR THAT WAS NEXT TO IT. BOTH VEHICLES ENDED UP SIDEWAYS AND MY VEHICLE ENDED UP SPUN AROUND 180 DEGREES. AT THIS TIME MY VEHICLE CAME TO A STOP. POLICE WERE CALLED AN PARAMEDICS ARRIVED. THE JAWS OF LIFE WERE USED TO EXTRACT ME FROM MY VEHICLE. I WAS TAKEN TO A LOCAL HOSPITAL WHERE IT WAS DETERMINED THAT I SUFFERED BURST FRACTURES OF L1, L2, AND L3. I ALSO SUFFERED AN EVULSION FRACTURE OF MY LEFT ANKLE. THE POLICE REPORT STATES THAT I WAS TRAVELLING AT A HIGH RATE OF SPEED AND THAT THE VEHICLES WHICH WERE NORTHBOUND WERE JUST CLIPPED. THE AIRBAGS ARE BOTH STILL WITHIN THEIR CASES AS NEITHER DEPLOYED. I WOULD EXPECT THIS OF THE PASSENGER AIRBAG AS THAT SEAT WAS UNOCCUPIED BUT THE DRIVER BAG SHOULD HAVE DEPLOYED. THE INSURANCE INVESTIGATOR EVEN EXPRESSED TO MY WIFE THAT HE WAS SURPRISED THAT THE AIR BAG DID NOT DEPLOY. I WAS HAVING A SEIZURE AND WAS NOT CONSCIOUS SO I CANNOT PROVIDE ANY INFORMATION OTHER THAN WHAT IS IN THE POLICE REPORT. THE REPORT IS #370763 ISSUED BY THE TOWNSHIP OF CLINTON, MICHIGAN.    THE VEHICLE IS CURRENTLY LOCATED AT COPARD AUTO SALVAGE, 21000 HAYDEN, WOODHAVEN, MI 48183. THE PHONE NUMBER IS 734-365-0070. IT WILL BE HELD THERE FOR BETWEEN 7 AND 10 DAYS FROM 8/26/2013. THANK YOU  *TR |
| 11075512 | CHEVROLET | BLAZER | 2003 | 2016-02-16 | REAR ENDED A STOPPED PICK UP AT 45 MPH AND AIR BAGS DID NOT DEPLOY. IT WAS ON A HIGHWAY WHERE THE SPEED LIMIT IS 55. THE WHOLE FRONT END WAS DAMAGED BUT MOST WAS ON DRIVER SIDE. |
| 8017964 | CHEVROLET | SILVERADO | 2003 | | THE VEHICLE WAS INVOLVED IN A FRONTAL COLLISION AT HIGHWAY SPEED. UPON IMPACT THE PASSENGER SIDE AIR BAG DID NOT DEPLOYED. MANUFACTURER HAS BEEN CONTACTED. PLEASE PROVIDE FURTHER INFORMATION.*JB |
| 10030725 | CHEVROLET | SILVERADO | 2003 | 2003-07-31 | 2003 CHEVROLET SILVERADO EXT. CAB 4X4 WITH ONSTAR, WRECKED, HIT TREES, TRUCK TOTALLED, FRONT-END DAMAGE, SIDE AND REAR END DAMAGE. AIR BAG DID NOT INFLATE. ONSTAR DID NOT WORK. *AK |
| 10032581 | CHEVROLET | SILVERADO | 2003 | 2003-08-01 | AIR BAGS FAILED TO OPEN ON HEAD END COLLISION.  SPEED APPROX. 40 MPH.  2003 CHEVY SILVERADO - NEW CONDITION |
| 10050872 | CHEVROLET | SILVERADO | 2003 | 2003-10-18 | INVOLVED IN A 45 MPH COLLISION WITH ANOTHER VEHICLE. AIRBAGS IN MY 2003 CHEVROLET SILVERADO DID NOT DEPLOY. *AK |
| 10055994 | CHEVROLET | SILVERADO | 2003 | 2004-01-24 | WHILE DRIVING 25 MPH THE VEHICLE WAS INVOLVED IN A FRONTAL COLLISION.  UPON IMPACT, THE FRONT AIR BAGS DID NOT DEPLOY.  THE DRIVER SUSTAINED NECK AND BACK INJURIES.  *AK *SC |
| 10056087 | CHEVROLET | SILVERADO | 2003 | 2004-01-24 | WHILE DRIVING AT 65 MPH ON THE HIGHWAY, THE DRIVER LOST CONTROL OF THE VEHICLE, RESULTING IN A FRONTAL COLLISION. THE VEHICLE WENT INTO AN EMBANKMENT. UPON IMPACT, THE AIR BAGS DID NOT DEPLOY. THE DRIVER SUSTAINED INJURIES. *AK BROKEN STERNUM, SPINE AND RIBS. THE CONSUMER WAS WEARING HIS SEAT BELT. THE SDM CRASH DOWN LOAD FROM THE CRASH WAS SENT TO ODI WITH PICTURES OF THE VEHICLE. CW *MR *JB |
| 10066690 | CHEVROLET | SILVERADO | 2003 | | WHIEL DRIVING AT 40 MPH VEHICLE WAS HIT HEAD ON AND THE AIR BAGS FAILED TO DEPLOY.*MR |

| | | | | | |
|---|---|---|---|---|---|
| 10072429 | CHEVROLET | SILVERADO | 2003 | 2003-05-25 | AIR BAGS NOT DEPLOYING ON A NEW CHEVY SILVERADO PICK-UP/ FOLLOWING A VEHICLE CRASH. DRIVER WAS INJURED, AND SCARRED. WAS HOSPITILIZED AND STILL HAVING PROBLEMS AND WILL HAVE A LIFETIME SCAR ON FACE AREA. ALSO LEGS AND THIGHS ARE SCARRED. OUR SON WAS TRAVELING AT A HIGH RATE OF SPEED, PASSING, LOST CONTROL WENT OFF HIGHWAY HEAD ON INTO DEEP DITCH, FLIPPED OVER, WENT SIDE TO SIDE COMING TO REST SIDEWAYS ON TIRES THAT WERE NOW FLAT AND STILL NO AIRBAG DEPLOYMENT. SENT A COMPLAINT AND PICTURES, POLICE REPORT AND MEDICAL RECORDS TO GM, NO SATISFACTION FROM THERE. WHAT DOES A VEHICLE HAVE TO HAVE DONE TO HAVE AN AIRBAG DEPLOY???? VEHICLE WAS TOTALED. SON IS PERMANTLY SCARRED, AND PARENTS HAVE LOST FAITH IN CHEVY TRUCKS, AND AIRBAGS. HIS OLDER BROTHER CO-SIGNED SO HE WOULD HAVE A "NEW, SAFER" VEHICLE AND AM NOW SO VERY UPSET WITH GM AS TO AN EXPLANATION AS TO WHY THESE AIR BAGS DID NOT DEPLOY TO PROTECT OUR SON. THIS VEHICLE (HE WAS SPEEDING PASSING) WENT OFF THE ROAD HEAD ON INTO A DEEP DITCH, OVERTURNED SEVERAL TIMES, HIT SIDE TO SIDE IN DITCH, FLATTENED TIRES AND CAME TO REST ON SHOULDER OF ROAD. NOW HOW MUCH MORE DOES IT TAKE TO DEPLOY AN AIR BAG???? I THINK IF WE WERE WEALTHY AND COULD AFFORD A LAWYER THEY MAYBE WOULD OF LISTENED AND CHECKED THIS MORE, BUT AS WE ARE JUST "COMMON" HARD WORKING US CITIZENS, WE DON'T REALLY COUNT. ALSO OUR SON WAS DRINKING AT THE TIME OF THE INCIDENT, ( SHOULD NOT MATTER TO SAFETY OF VEHICLE EQUIPMENT) I WAS TOLD IT WAS NOT "CATASTROPIC ENOUGH" OF AN ACCIDENT TO WARRENT ANY DAMAGES. ?? THEN THEY TRIED TO SAY THE "ACCIDENT" (MEANING VEHICLE) WASN'T. I THINK WE ALL KNOW WHAT THEY MEANT. WE WERE NOT LOOKING FOR "MILLIONS" (STRETCHING IT), JUST HIS MEDICAL BILLS AND THE PROBLEM CORRECTED IN OTHER CHEVY'S SO THIS WOULD NOT HAPPEN TO SOMEONE ELSE. AS USUAL THE HONEST PEOPLE, AND HARD WORKING MIDDLE CLASS CAN GET NO HELP. PRAYERS GO OUT TO ANYONE ELSE THIS HAS HAPPENED TO AND THAT IT WON'T HAPPEN TO SOMEONE ELSE'S CHILD. |
| 10089611 | CHEVROLET | SILVERADO | 2003 | 2004-08-14 | WHILE DRIVING 55 MPH CONSUMER'S VEHICLE WAS INVOLVED IN A FRONT COLLISION. UPON IMPACT,  DUAL AIR BAGS DID NOT DEPLOY.  DRIVER SUSTAINED HEAD INJURIES DUE TO HIS HEAD HITTING THE STEERING WHEEL.*AK    THE CHEVROLET TESTERS CAME TO INSPECT THE VEHICLE. THEY CONCLUDED THAT THE IMPACT WAS NOT HARD ENOUGH NOR WAS THE VEHICLE GOING FAST ENOUGH FOR THE AIR BAG TO DEPLOY. *NM |
| 10137033 | CHEVROLET | SILVERADO | 2003 | 2005-08-14 | AIR BAGS DID NOT INFLATE WITH A FRONT END CRASH THAT PUSHED THE MOTOR IN THE DASH. SON RECEIVED HEAD INJURIES WOULD LIKE TO KNOW WHAT YOU ARE GOING TO DO ABOUT THIS. PICKUP WAS A TOTAL LOSS. FRAME WAS BENT. MY ATTORNEY WOULD LIKE TO PUSH THIS BUT I WOULD LIKE TO KNOW WHAT YOU WILL DO FOR US FIRST. I HAVE PICTURES IF YOU WOULD LIKE TO SEE THEM. *JB |
| 10154224 | CHEVROLET | SILVERADO | 2003 | 2006-03-23 | DIRECT FRONTAL IMPACT WITH SIDE OF CAR THAT RAN RED LIGHT. AIR BAG DID NOT DEPLOY. SPEED WAS APPROXIMATELY 40-50 MPH.  *JB |
| 10577089 | CHEVROLET | SILVERADO | 2003 | 2013-11-14 | I HIT A DEER HEAD ON AND TOTALED MY SILVERADO.  I HIT IT AT 55 MPH AND NEITHER OF THE AIRBAGS DEPLOYED.  *TR |
| 10592423 | CHEVROLET | SILVERADO | 2003 | 2014-05-08 | TRUCK COLIDED WITH GUARD RAIL. BOUNCED OFF, HIT VEHICLE 1, THEN INTO VEHICLE 2 THEN STOPPED AFTER HITTING VEHICLE 3 A SEMI TRUCK.  ALL DAMAGE WAS DONE TO FRONT OF THE CHEVY SILVERADO.  AT NO TIME DID THE AIRBAGS DEPLOY.  SILVERADO WAS DETERMINED TO BE TOTALED DUE TO THE EXCESSIVE DAMAGE ON THE FRONT.   AIRBAGS SHOULD HAVE DEPLOYED DURING ONE OF THE IMPACTS.   *JB |
| 10082050 | CHEVROLET | SUBURBAN | 2003 | 2004-07-14 | THE CONSUMER WAS INVOLVED IN AN ACCIDENT WHERE IT WAS HIT FROM THE FRONT DRIVER SIDE, THE IMPACT CAUSED THE VEHICLE TO HIT A TELEPHONE POLE HEAD ON.  THE AIR BAGS DID NOT DEPLOY. *JB |
| 11360703 | CHEVROLET | SUBURBAN | 2003 | 2020-08-07 | TL* THE CONTACT OWNED A 2003 CHEVROLET SUBURBAN. THE CONTACT STATED THAT WHILE TOWING HIS DAUGHTERS VEHICLE AT ABOUT 60 MPH, ANOTHER VEHICLE CRASHED INTO THE VEHICLE BEING TOWED. THE AIR BAGS DID NOT DEPLOY. THE CONTACT SUSTAINED A HEAD AND LOWER BACK INJURY. THE FRONT PASSENGER (HIS DAUGHTER) SUSTAINED A BACK INJURY. THE TWO WENT TO THE DOCTOR THREE DAYS LATER. THERE WAS NO POLICE REPORT. THE VEHICLE BEING TOWED WAS DAMAGED AND WAS DRIVEN TO THE DAUGHTERS DORM WHERE IT WAS TOTALED BY THE INSURANCE COMPANY. THE DEALER AND THE MANUFACTURER WERE NOT CONTACTED. THE CONTACT STATED THAT THE OTHER DRIVERS INSURANCE DENIED ANY COMPENSATION TO THE CONTACT, STATING THAT THE CONTACTS VEHICLE (THE VEHICLE TOWING THE DAMAGED VEHICLE) WAS NOT HIT. THE CONTACT STATED THAT AFTER THE ACCIDENT, A LOUD NOISE WAS HEARD WHENEVER THE VEHICLE WAS TURNED ON. THE CONTACT ALSO STATED THAT THE DASHBOARD WAS CRACKED. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 173,000. |
| 10899484 | CHEVROLET | TAHOE | 2003 | 2016-04-14 | TL* THE CONTACT OWNED A 2003 CHEVROLET TAHOE. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 45 MPH, THE CONTACT LOST CONTROL OF THE VEHICLE AND CRASHED INTO A GUARD RAIL. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED. THE FRONT SEAT PASSENGER SUSTAINED 12 BROKEN RIBS AND 2 COLLAPSED LUNGS THAT REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS TOWED TO AN INDEPENDENT TOWING FACILITY. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS UNKNOWN. THE VIN WAS UNAVAILABLE. |

| | | | | | |
|---|---|---|---|---|---|
| 10008283 | CHEVROLET | TRACKER | 2003 | 2003-02-28 | I RENTED A CHEVROLET TRACKER 2003 AND WAS HIT HEAD ON BY ANOTHER DRIVER AND EVERYONE THERE NOTICE THAT THE AIRBAG DID NOT OPEN. THIS WAS A HEAD ON ACCIDENT. I WILL BE FILING THIS TO A LAWYER SHORT AS I WAS HURT. *JB |
| 10052731 | CHEVROLET | TRACKER | 2003 | 2003-12-19 | I WAS DRIVING ON I-190 IN THE RIGHT HAND LANE ON DEC 19, 2003. A CAR COMING UP AN ENTRANCE RAMP MERGED INTO MY LINE ALMOST HITTING ME. I SWERVED TO AVOID THE CRASH BUT SUBSEQUENTLY HIT SOME BLACK ICE AND WAS UNABLE TO RECOVER CONTROL. I HIT THE CONCRETE BARRIER HEAD ON. THE INSURANCE COMPANY'S (PROGRESSIVE) CLAIMS AGENT FIGURES I WAS GOING ABOUT 50 MPH AT IMPACT. THE IMPACT SO EXTREME THAT MY TRACKER SHIFTED ITSELF INTO 4WD AND TURNED ON THE HIGHBEAMS. BASICALLY ANYTHING THAT COULD GO FORWARD DID. THE WHOLE FRONT OF THE VEHICLE WAS PUSHED BACK 6" AND MY LISCENCE PLATE WAS RIPPED OFF, BUT YET MY AIRBAGS NEVER DEPLOYED. IF IT WEREN'T FOR MY SEATBELT, I MAY NOT BE HERE TO TYPE THIS. I HAD SEVERE WHIPLASH, AS WELL AS, PUTTING MY LEFT KNEE THROUGH MY DASH BOARD. THE IMPACT OF THE CRASH SHOULD HAVE HIT AT LEAST ONE, IF NOT ALL, SENSORS. I FEEL THIS IS A MAJOR PROBLEM. I WILL BE FILING A FORMAL COMPLAINT WITH CHEVY REGARDING THIS ISSUE.*AK |
| 10097100 | CHEVROLET | TRACKER | 2003 | 2004-03-20 | WHILE DRIVING 37 MPH THE VEHICLE WAS INVOLVED IN A HEAD ON COLLISION. THE AIR BAGS DID NOT DEPLOY UPON IMPACT. THE PASSENGER SUSTAINED SEVERE WHIPLASH. PLEASE PROVIDE ADDITIONAL INFORMATION. *JB |
| 10216640 | CHEVROLET | TRACKER | 2003 | 2008-01-27 | I WAS DRIVING HOME FROM WORK WHEN MY CAR SWERVED TO THE RIGHT AND WENT OFF THE ROAD AND HIT A GROVE OF TREES HEAD ON. MY CAR WAS TOTALED AND NONE OF MY AIRBAGS WENT OFF. WHY DOES THIS HAPPEN? I COULD HAVE BEEN KILLED. ALSO I RECEIVED A SAFETY NOTICE ABOUT MY CHEVEROLET TRACKER 4 DAYS BEFORE THIS HAPPENED HAVING A PROBLEM WITH THE FRONT SUSPENSION CROSSMEMBER DOE SOMEONE HAVE TO DIE BEFORE A RECALL IS DONE. AND WHY DIDN'T MY AIR BAGS GO OFF SOMEONE PLEASE LOOK AT THIS CAR BEFORE IT GETS HAULED OFF BY THE ADJUSTER!!!! I WAS AIRLIFTED TO THE HOSPITAL THE FIRE DEPARTMENT CUT THE ROOF OF MY CAR OFF TO GET ME OUT NO AIRBAGS WHAT HAPPENED!!! *TR |
| 8023281 | CHEVROLET | TRAILBLAZER | 2003 | 2002-11-19 | CONSUMER STATES THAT WHILE DRIVING APPROXIMATELY 35-40MPH SLID OFF ROAD AND CRASHED INTO A DITCH HEAD-ON. BOTH DRIVER AND PASSENGER AIR BAGS DID NOT DEPLOY. TS |
| 10040870 | CHEVROLET | TRAILBLAZER | 2003 | 2003-09-25 | TRAVELING 55 MPH WHEN ANOTHER VEHICLE CROSSED THE ROAD CAUSING ME TO HIT THE SIDE OF HIS VEHICLE HEAD ON. NO AIR BAGS DEPLOYED. |
| 10054479 | CHEVROLET | TRAILBLAZER | 2003 | 2004-01-16 | LOSING CONTROL OF MY VEHICLE ON ICY PAVEMENT , VEHICLE SLID OFF OF THE ROAD , HEAD-ON INTO A TREE. DRIVERS SIDE AND PASSENGER SIDE AIR BAGS FAILED TO DEPLOY. SERIOUS INJURIES OCCURED , WHICH MAY HAVE BEEN LESSENED IF THE SAFETY FEATURES WE PAY FOR ACTUALLY WORK.*AK ER DOCTORS AND STATE POLICE WERE TERRIBLY ANNOYED , SINCE THERE HAVE BEEN SEVERAL REPORTS OF SAME FAILURE IN DESIGN. NO RESPONSE FROM DEALER OR MANUFACTURER, AS OF YET !!!*AK |
| 10055534 | CHEVROLET | TRAILBLAZER | 2003 | 2004-01-11 | AFTER HITTING A TREE HEAD ON AIR BAGS DID NOT DEPLOY. *AK |
| 10065438 | CHEVROLET | TRAILBLAZER | 2003 | 2004-03-24 | WHILE DRIVING AT 40 MPH CONSUMER'S VEHICLE WAS INVOLVED IN A FRONTAL COLLISION. CONSUMER WAS WEARING SEAT BELTS, BUT NONE OF THE AIR BAGS DEPLOYED. CONSUMER SUSTAINED A BROKEN NOSE,SCRAPES, AND BRUISES TO CHEST AND WRIST. *AK |
| 10113264 | CHEVROLET | TRAILBLAZER | 2003 | 2004-08-01 | CHEVROLET TRAILBLAZER 2003 UPON IMPACT AIRBAG DID NOT DEPLOY. *BF THE CONSUMER REAR ENDED ANOTHER VEHICLE. *JB |
| 10174616 | CHEVROLET | TRAILBLAZER | 2003 | 2006-11-22 | 2003 CHEVY TRAILBLAZER AIR BAGS NEVER CAME OUT AFTER HAVING IMPACT INTO TWO TREES FORCING THE DRIVER INTO THE STEERING WHEEL. NOTHING AT THIS TIME HAS BEEN CORRECTED TO REPAIR THE SUV. GM NEED TO BE ALERTED OF THIS FAILURE TO CORRECT THE PROBLEM! *NM |
| 10208796 | CHEVROLET | TRAILBLAZER | 2003 | 2007-11-10 | TL*THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING 40 MPH, THE CONTACT SWERVED TO AVOID AN ANIMAL AND CRASHED INTO A TREE. THE FRONT AIR BAGS FAILED TO DEPLOY. THE VEHICLE IS CURRENTLY AT A TOW YARD AND WILL BE TOWED TO THE INSURANCE COMPANY FOR INVESTIGATION. THE MANUFACTURER FILED A REPORT AND THE CONTACT IS AWAITING A CALL BACK. THE CURRENT AND FAILURE MILEAGES WERE 60,000. |
| 10219898 | CHEVROLET | TRAILBLAZER | 2003 | 2008-02-08 | TL*THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING 32 MPH, THE CONTACT CRASHED INTO A BUILDING. THE VEHICLE WAS DESTROYED. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED INJURIES TO HER MOUTH AND EYE. THE AMBULANCE ARRIVED ON THE SCENE AND TRANSPORTED THE CONTACT TO THE HOSPITAL. A POLICE REPORT WAS FILED. CHEVROLET HAS NOT BEEN NOTIFIED. THE VIN, ENGINE SIZE, AND NUMBER OF CYLINDERS WERE UNKNOWN. THE CURRENT AND FAILURE MILEAGES WERE 71,000. |
| 10223723 | CHEVROLET | TRAILBLAZER | 2003 | 2008-03-13 | TL*THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING 45 MPH, THE CONTACT REAR ENDED ANOTHER VEHICLE. THE FRONT AIR BAGS FAILED TO DEPLOY. THERE WERE NO INJURIES AND A POLICE REPORT WAS FILED. THE VIN AND ENGINE SIZE WERE UNKNOWN. THE FAILURE AND CURRENT MILEAGES WERE 77,000. |
| 10229337 | CHEVROLET | TRAILBLAZER | 2003 | 2008-05-28 | THE AIRBAG DID NOT DEPLOY IN A FRONT-END COLLISION THAT WILL MOST LIKELY TOTAL THE VEHICLE. THE OTHER VEHICLE'S DID DEPLOY. *TR |
| 10308388 | CHEVROLET | TRAILBLAZER | 2003 | 2009-12-26 | HAD CAR ACCIDENT WAS HIT BY ANOTHER VEHICLE AND HIT A RETAINING WALL GOING ABOUT 45 MILES AN HOUR AND AIR BAG DID NOT DEPLOY 2003 TRAIL BLAZER. *TR |

| 10313800 | CHEVROLET | TRAILBLAZER | 2003 | 2009-12-26 | TL*THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING 45-50 MPH IN INCLEMENT WEATHER, THE CONTACT CRASHED INTO A RETAINER WALL. SHE STATED THAT OTHER PASSING VEHICLES PUSHED HER VEHICLE INTO THE RETAINER WALL. THE AIR BAG DID NOT DEPLOY. SHE WAS ALSO INJURED WHEN THE CRASH OCCURRED. THE MANUFACTURER STATED THAT THEY WOULD TAKE PICTURES OF THE VEHICLE. THE VEHICLE HAS NOT BEEN REPAIRED. A POLICE REPORT WAS FILED. THE FAILURE AND THE CURRENT MILEAGES WERE 82,000. THE CONSUMER STATED IT WAS A HIT AND RUN ACCIDENT. UPDATED 04/07/10.*JB |
|---|---|---|---|---|---|
| 10315428 | CHEVROLET | TRAILBLAZER | 2003 | 2008-06-03 | 2003 CHEVROLET TRAILBLAZER. S10 COMEBACK FWD LTR TO POTUS RE COMPLAINT AGAINST GM REGARDING DEFECTIVE AIRBAG, INVOLVE IN CAR ACCIDENT AND THE AIRBAG DID NOT DEPLOY. *TGW  THE CONSUMER STATED ANOTHER VEHICLE HIT A DEER, CROSSED THE CENTER LANE AND HIT THEIR VEHICLE HEAD ON. THE CONSUMER STATED THE SEAT BELTS DID NOT RESTRAIN THEM. *JB  UPDATED PHONE NUMBER 05/28/10.*JB |
| 10392644 | CHEVROLET | TRAILBLAZER | 2003 | 2011-01-23 | TL*THE CONTACT OWNS A 2003 CHEVROLET BLAZER. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 45 TO 50 MPH IN THE RAIN HE CRASHED HEAD ON INTO ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. THERE WERE NO AIR BAG WARNING INDICATIONS PRIOR TO THE CRASH. THE DRIVER SUSTAINED A CONCUSSION AND INJURIES TO HIS NECK, KNEE, AND FEET. A POLICE REPORT WAS FILED. THE DRIVER WAS TRANSPORTED TO THE HOSPITAL BY AMBULANCE. THE MANUFACTURER WAS CONTACTED AND OFFERED NO ASSISTANCE. THE FAILURE COULD NOT BE DIAGNOSED SINCE THE INSURANCE COMPANY DEEMED THE VEHICLE AS BEING DESTROYED. THE FAILURE AND CURRENT MILEAGE WAS APPROXIMATELY 130,000. THE VIN WAS UNAVAILABLE. UPDATED 5/2/11 *CN  UPDATED 1/11/11 *CN |
| 10425103 | CHEVROLET | TRAILBLAZER | 2003 | 2011-09-03 | MY WIFE AND I WERE INVOLVED IN A HEAD ON COLLISION (HIT BY A DRUNK DRIVER) OUR AIR BAGS DID NOT DEPLOY., I SUSTAINED A C7 FRACTURE, SCALPED BY THE REAR VIEW MIRROR (22 STITCHES TO HOLD MY SCALP) 6 STITCHES ON MY NOSE AND BRUISED KNEES. MY WIFE HAS A BROKEN NOSE ALL THE BONES IN HER RIGHT FOOT BROKEN AND BRUISED KNEES.  *TR |
| 10468222 | CHEVROLET | TRAILBLAZER | 2003 | 2010-05-07 | TL* THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT HE CRASHED INTO A LIGHT POLE WHILE DRIVING AT UNKNOWN SPEEDS AND THE AIR BAGS DID NOT DEPLOY. THE CONTACT SUSTAINED INJURIES BUT WAS NOT TRANSPORTED TO THE HOSPITAL. THE POLICE WAS NOTIFIED OF THE CRASHED AND A REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT NOTIFIED. THE VIN WAS NOT AVAILABLE. THE FAILURE MILEAGE WAS 170,000. |
| 10523466 | CHEVROLET | TRAILBLAZER | 2003 | 2013-07-04 | WHILE TRAVELING IN SLOW TRAFFIC, THE CAR IN FRONT OF MY WIFE STOPPED.  BY THE TIME SHE NOTICED THEY STOPPED IT WAS TOO LATE AND SHE HIT THE BACK OF THEIR FORD EXPLORER, MOVING AT AROUND 20-30MPH.  THE FRONT END OF OUR TRAILBLAZER WAS CRUSHED.  MY DAUGHTER AND WIFE WERE WEARING THEIR SEAT BELTS.  THE OFFICERS AND PARAMEDICS ON THE SCENE WERE SHOCKED THAT THE AIRBAGS DID NOT COME OUT WITH THE AMOUNT OF FRONT END DAMAGE.  THEY HAD TO CUT THE BATTERY WIRES TO PREVENT THE AIRBAG FROM COMING OUT LATER WHEN SHE CLEANED OUT THE TRAILBLAZER.  AN EXAMPLE OF HOW MUCH DAMAGE WAS TAKEN TO THE FRONT END, THE CORNER FENDERS WERE PUSHED BACK SO FAR THEY COULDN'T OPEN WITHER FRONT DOOR.  THE FENDERS WERE CRUSHED INTO THE DOORS KEEPING THEM SHUT.  I WOULD THINK WITH AN IMPACT LIKE THAT THE AIRBAGS WOULD HAVE CAME OUT, IT WAS A SQUARE HIT MEANING EVEN DAMAGE ACROSS THE FRONT END.  *TR |
| 10551243 | CHEVROLET | TRAILBLAZER | 2003 | 2013-09-26 | DRIVING APPROXIMATELY 40 TO 43 MPH WHEN ANOTHER VEHICLE TURNED DIRECTLY IN FRONT OF ME.  TOTAL FRONTAL DAMAGE BUCKLING UP HOOD ON MY CAR AS I HIT OTHER VEHICLE IN FRONT-END PASSENGER SIDE. THEIR AIRBAG DEPLOYED BUT MINE DIDN'T, EVEN WITH TOTAL FRONT END DAMAGE TO MY CAR.  HAD SEATBELT ON, BUT DUE TO IMPACT STILL PULLED MY WHOLE BODY FORWARD (LIKE CRASH TEST DUMMY).  THIS WAS A VERY HARD CRASH TOTALING MY CAR.  *TR |
| 10568108 | CHEVROLET | TRAILBLAZER | 2003 | 2008-02-14 | TL*. THE CONTACT OWNS A 2003 CHEVROLET TRAIL BLAZER. THE WAS DRIVING 40 MPH, AND CRASHED INTO THE SIDE OF ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED INJURIES TO THE RIGHT SHOULDER, SPINAL STENOSIS AND FRACTURED KNEES. A POLICE REPORT WAS FILED OF THE INCIDENT. THE CONTACT STATED THAT SHE HAD ALSO BEEN INVOLVED IN TWO PRIOR CRASHES IN WHICH THE AIR BAGS FAILED TO DEPLOY. THE PREVIOUS CRASHES DID NOT RESULT IN ANY INJURIES AND A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS INSPECTED BY A REPRESENTATIVE SENT BY THE MANUFACTURER BUT THEY WERE UNABLE TO DETERMINE THE CAUSE OF THE AIR BAG FAILURE. THE FAILURE MILEAGE WAS 80,000. *TR |
| 10596289 | CHEVROLET | TRAILBLAZER | 2003 | 2007-11-11 | TL*  THE CONTACT OWNS A 2003 CHEVROLET TRAIL BLAZER. THE CONTACT STATED THAT WHILE DRIVING AN UNKNOWN SPEED, THE CONTACT ABRUPTLY APPLIED THE BRAKES TO AVOID A CRASH. THE CONTACT LOST CONTROL OF THE VEHICLE AND CRASHED INTO A CEMENT BARRIER. THE VEHICLE THEN ROLLED OVER AND LANDED IN AN EMBANKMENT. THE DRIVER'S SIDE AIR BAG FAILED TO DEPLOY. THE CONTACT SUFFERED INJURIES TO THE NECK AND A BROKEN LEG. THE CONTACT ALSO STATED THAT THE IGNITION SWITCH WAS REPLACED TWICE PRIOR TO THE CRASH. THE VIN WAS NOT AVAILABLE. THE VEHICLE WAS DESTROYED. THE CAUSE OF THE FAILURE WAS UNKNOWN. THE FAILURE AND CURRENT MILEAGE WAS 70,000. |
| 10606954 | CHEVROLET | TRAILBLAZER | 2003 | 2006-08-08 | AIRBAGS DID NOT DEPLOY DURING ACCIDENT - VEHICLE WENT THROUGH A GUARD RAIL, SUSTAINED FRONT END DAMAGE...  *TR |

| 10654364 | CHEVROLET | TRAILBLAZER | 2003 | 2002-10-26 | 2003 CHEVROLET TRAILBLAZER. CONSUMER STATED HER HUSBAND WAS INVOLVED IN AN ACCIDENT, AND THE AIR BAGS DID NOT DEPLOY. CONSEQUENTLY, HE DIED FROM HIS INJURIES. *SS UPDATED 02/09/15. *JB |
| 10660781 | CHEVROLET | TRAILBLAZER | 2003 | 2014-11-23 | TL* THE CONTACT OWNED A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 70 MPH, A DEER JUMPED IN FRONT OF THE VEHICLE CAUSING THE CONTACT TO CRASH. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED A NECK AND BACK INJURY THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 170,000. |
| 10681428 | CHEVROLET | TRAILBLAZER | 2003 | 2015-01-24 | TL* THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 35 MPH, THE VEHICLE SLID ON ICE AND CRASHED INTO A CEMENT WALL. THE AIR BAGS DID NOT DEPLOY AND THE SEAT BELT DID NOT RESTRAIN THE CONTACT. THE CONTACT SUSTAINED CHEST, NECK, AND KNEE INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DRIVEN TO THE CONTACT'S RESIDENCE. THE VEHICLE WAS THEN TAKEN TO AN INDEPENDENT MECHANIC, BUT WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 70,000. |
| 10694201 | CHEVROLET | TRAILBLAZER | 2003 | 2013-05-06 | TL* THE CONTACT OWNED A 2003 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING AT 50 MPH DURING INCLEMENT WEATHER CONDITIONS, THE CONTACT LOST CONTROL OF THE VEHICLE AND CRASHED INTO AN EMBANKMENT. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED SPINE INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 90,000. UPDATED 5/13/15*CN |
| 10721783 | CHEVROLET | TRAILBLAZER | 2003 | 2015-05-12 | TL* THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER EQUIPPED WITH BF GOODRICH RUGGED TRAIL T/A TIRES, SIZE: P245/65R17. WHILE DRIVING AT 65 MPH, THE CONTACT HEARD A VIBRATION COMING FROM THE TIRES. THE CONTACT LOST CONTROL OF THE VEHICLE AND CRASHED INTO A POLE. THE VEHICLE ROLLED OVER MULTIPLE TIMES AND THE AIR BAGS FAILED TO DEPLOY. IN ADDITION, THE CONTACT NOTICED THAT THE THREADS FROM THE REAR DRIVER SIDE TIRE HAD SEPARATED. THE CONTACT SUSTAINED HEAD, SHOULDER, ELBOW, AND HIP INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE VEHICLE AND TIRE MANUFACTURERS WERE NOT NOTIFIED OF THE FAILURE. THE VEHICLE FAILURE MILEAGE WAS 116,000 AND THE TIRE FAILURE MILEAGE WAS 40,000. THE DOT NUMBER WAS UNAVAILABLE. |
| 10787837 | CHEVROLET | TRAILBLAZER | 2003 | 2015-10-29 | TL* THE CONTACT OWNED A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 20 MPH UPHILL, A VEHICLE TRAVELING DOWNHILL CRASHED HEAD ON INTO THE CONTACT'S VEHICLE. THE FRONTAL AIR BAGS DID NOT DEPLOY. THE PASSENGER SUSTAINED WHIPLASH AND BRUISES TO THE ELBOW, CHEST, AND STOMACH THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE PASSENGER WAS ALSO INJURED AND TAKEN TO THE HOSPITAL, BUT WAS RELEASED THE SAME DAY. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE VIN WAS INVALID. THE APPROXIMATE FAILURE MILEAGE WAS 141,000. |
| 10850437 | CHEVROLET | TRAILBLAZER | 2003 | 2016-02-03 | TL* THE CONTACT OWNED A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING 50 MPH, THE VEHICLE SLID ON BLACK ICE AND CRASHED INTO A DITCH. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED A CUT TO THE HEAD AND A SEVERE BACK INJURY THAT REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS DESTROYED AND TOWED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 186,000. |
| 10863408 | CHEVROLET | TRAILBLAZER | 2003 | 2016-05-03 | TL* THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING 25 TO 35 MPH, AN ANIMAL APPEARED IN THE ROAD. THE CONTACT SWERVED AND CRASHED INTO A TELEPHONE POLE. THE AIR BAGS DEPLOYED. THE VEHICLE WAS TOWED TO THE CONTACT'S RESIDENCE. THE MANUFACTURER WAS NOT AWARE OF THE FAILURE. A POLICE REPORT WAS NOT FILED. THE CONTACT SUSTAINED HEAD, NECK, AND CHEST INJURIES THAT REQUIRED MEDICAL ATTENTION. THE FAILURE MILEAGE WAS 135,000......UPDATED 06/15/16 *BF   *CN |
| 10927873 | CHEVROLET | TRAILBLAZER | 2003 | 2016-11-22 | TL* THE CONTACT OWNED A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 78 MPH, A TIRE BLEW OUT. THE CONTACT LOST CONTROL OF THE VEHICLE AND CRASHED. THE VEHICLE WAS DESTROYED AND TOWED. THE AIR BAGS FAILED TO DEPLOY. THE DRIVER SUSTAINED AN INJURED LEFT SHOULDER AND NECK, AND A HEAD ABRASION, WHICH REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 115,000. |
| 10934115 | CHEVROLET | TRAILBLAZER | 2003 | 2016-11-29 | TL* THE CONTACT OWNED A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING 40 MPH IN WET WEATHER, THE VEHICLE HYDROPLANED, DROVE OFF A CLIFF, AND CRASHED INTO A TREE. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED CHEST, KNEE AND ARM INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS TOWED TO A TOWING AGENCY WHERE IT WAS DEEMED DESTROYED. THE FAILURE MILEAGE WAS 160,000. UPDATED 03/01/17*LJ  *JS |

| | | | | | |
|---|---|---|---|---|---|
| 10969901 | CHEVROLET | TRAILBLAZER | 2003 | 2017-03-25 | I WAS INVOLVED IN A HEAD-ON COLLISION, I WAS GOING AROUND 10-15 MPH AND THE VEHICLE THAT CAUSED THE ACCIDENT WAS GOING FASTER THAN I WAS GOING. MY AIRBAGS DID NOT DEPLOY. THEY SHOULD DEPLOY BETWEEN 8-14 MPH. IS ANYONE HOLDING GENERAL MOTORS ACCOUNTABLE FOR THEIR NEGLIGENCE? WE WERE ON A TWO LANE CITY STREET. |
| 10970795 | CHEVROLET | TRAILBLAZER | 2003 | 2017-03-25 | TL* THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING 35 MPH, THE VEHICLE WAS INVOLVED IN A HEAD ON COLLISION. THE CONTACT'S VEHICLE WAS STRUCK FROM THE FRONT END BY ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED INJURIES TO THE LEFT LEG AND LEFT ARM, WHICH REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS TOWED. IT WAS NOT DETERMINED WHETHER OR NOT THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 150,000. |
| 10065821 | GMC | ENVOY | 2003 | 2004-04-05 | MY WIFE WAS IN AN ACCIDENT WITH OUR NEW 2003 GMC ENVOY SLT, PURCHASED IN NOVEMBER OF 2003. TO AVOID REAR ENDING THE CAR IN FRONT OF HER, SHE SWERVED THE ENVOY OFF OF THE ROAD, DOWN A HILL AND AND HIT A TREE IN THE RIGHT FRONT OR PASSENGER SIDE OF THE VEHICLE. SHE HIT THE TREE WITH SUCH FORCE THAT THE DAMAGE TO THE FRONT OF THE VEHICLE RESULTED IN A TOTAL LOSS. MY CONCERN IS THE AIR BAGS NEVER NEVER DEPLOYED IN THIS ACCIDENT. I WOULD LIKE TO KNOW WHY? AND I WOULD LIKE TO KNOW MORE INFORMATION AS TO THE OPERATION OF THE AIR BAG SYSTEM IN A GMC ENVOY.*AK |
| 10076184 | GMC | ENVOY | 2003 | 2004-05-20 | CONSUMER'S VEHICLE REAR ENDED ANOTHER VEHICLE AT 25 MPH. UPON IMPACT, AIR BAGS DID NOT DEPLOY. DEALERSHIP WAS NOTIFIED, BUT DID NOT RESOLVE THE PROBLEM. *AK THE MANUFACTURER DID NOT EXCEPT RESPONSIBILITY. *SC |
| 10101930 | GMC | ENVOY | 2003 | 2004-11-01 | WHILE DRIVING, UPON IMPACT THE AIR BAGS DID NOT DEPLOY AFTER BEING STRUCK IN A SERIOUS FRONT END COLLISION. *BF  *SC |
| 10103710 | GMC | ENVOY | 2003 | 2004-11-22 | CONSUMER'S VEHICLE WAS INVOLVED IN A HEAD ON COLLISION AT 35 MPH. UPON IMPACT, AIR BAGS DID NOT DEPLOY. CONSUMER WILL NOTIFY MANUFACTURER.*AK.   POLICE REPORT INCLUDED |
| 10103904 | GMC | ENVOY | 2003 | 2004-01-18 | VEHICLE  WAS INVOLVED IN A FRONT COLLISION ACCIDENT AT 15 MPH  DUE TO WEATHER. UPON IMPACT, AIR BAGS DID NOT DEPLOY. DEALER WAS INFORMED BY CONSUMER.  *AK  THE CONSUMER STATED THAT THE VEHICLE COULD ONLY BE TURNED OFF BY CUTTING THE BATTERY CABLES.  *TC |
| 10259161 | GMC | ENVOY | 2003 | 2009-02-17 | ACCIDENT ON 2/17/2009 FRONT CRASH TO OTHER VEHICLE AND AIR BAG DID NOT DEPLOY. HOOD DAMAGE, WINDSHIELD DAMAGE, ALL FRONT DAMAGE, DOORS COULD NOT OPEN RADIATOR DAMAGE, ENGINE DAMAGE.*TR |
| 10281810 | GMC | ENVOY | 2003 | 2009-08-25 | MY HUSBAND FELL ASLEEP AT THE WHEEL ON HIS WAY TO WORK AND HIT SEVERAL TREES. THE CAR IS TOTALED BUT THE AIRBAGS DIDN'T GO OFF. I DO UNDERSTAND THAT THE ACCIDENT WAS 100% MY HUSBANDS FAULT BUT I DON'T UNDERSTAND WHY THE AIR BAGS DIDN'T GO OFF.  *TR |
| 10554787 | GMC | ENVOY | 2003 | 2013-11-25 | TL* THE CONTACT OWNS A 2003 GMC ENVOY. THE CONTACT STATED THAT WHILE DRIVING AT AN UNKNOWN SPEED, HE SLIGHTLY CRASHED INTO A CURB AND THE VEHICLE TURNED OVER IN A DITCH. THE AIR BAGS DID NOT DEPLOY AND THE CONTACT SUSTAINED NECK AND LOWER BACK INJURIES. A POLICE REPORT WAS FILED OF THE INCIDENT. THE VEHICLE WAS DEEMED DESTROYED AND TOWED TO A SALVAGE YARD. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS UNAVAILABLE. |
| 10560852 | GMC | ENVOY | 2003 | 2014-01-16 | TL* THE CONTACT OWNS A 2003 GMC ENVOY. THE CONTACT STATED THAT WHILE DRIVING AT VARIOUS SPEEDS, THE CONTACT WAS INVOLVED IN A CRASH. THE VEHICLE TRAVELED DOWN AN EMBANKMENT AND CRASHED INTO A TREE. THE AIR BAGS FAILED TO DEPLOY AND THE CONTACT SUSTAINED INJURIES TO THE ARMS. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE VIN WAS NOT AVAILABLE. THE APPROXIMATE FAILURE AND CURRENT MILEAGE WAS 100,000. *TR |
| 10592465 | GMC | ENVOY | 2003 | 2014-04-14 | MY DAUGHTER WAS DRIVING THE ENVOY AT ABOUT 45 MPH WHEN A DRUNK DRIVER PULLED OUT IN FRONT OF TRAFFIC, CAUSING EVERYONE TO SLAM ON THEIR BRAKES, AND MY DAUGHTER WAS NOT ABLE TO STOP IN TIME BEFORE REAR-ENDING ANOTHER VEHICLE. THE CAR IS TOTALED BUT THE AIRBAGS NEVER DEPLOYED. *JS |
| 10615166 | GMC | ENVOY | 2003 | 2012-06-04 | I WAS DRIVING  ABOUT 40 MPH  WHEN  I  WENT  THREW  A  YELLOW  LIGHT  WHEN A  OLDER LADY TURN IN FRONT OF ME, I HIT HER ON THE PASSENGER  SIDE  BETWEEN  THE FRONT N BACK DR, ,  PUSHING  N  ROLLING  N  TOTALING  HER SMALL SUV.  SHE  WAS  NOT  SERIOUS HURT.  MY AIRBAGS  DID NOT  DEPLOY. MY ENVOY WAS STILL DRIVEABLE . I TOOK  MY ENVOY  TO MY LOCAL GMC DEALER TO HAVE  THEM  FIND PROB WHY THE AIRBAGS DIDN'T GO OFF, THEY  OR  I  CALLED A REP FOR GMC, TO  COME  TO SIOUX FALLS TO INVESTIGATE  AND  HE  TOLD ME  THAT THE REASON  THEY DIDN'T  DEPLOY WAS BECAUSE  I WASN'T GOING  FAST  ENOUGH  FOR IMPACT FOR DEPLOY. I  THINK THAT IS BUNCH OF  BULL. CAN SOMEONE  HELP ME ,IS THERE ANYTHING I CAN DO .I HEAR THAT A PERSON  CAN  RECEIVE CASH  FROM GMC IF  A PERSON S  AIRBAGS  DON'T GO OFF. *TR |

| | | | | | |
|---|---|---|---|---|---|
| 10682693 | GMC | ENVOY | 2003 | 2015-02-10 | TL*THE CONTACT OWNS A 2003 GMC ENVOY. THE CONTACT STATED THAT WHILE DRIVING AT 5 MPH, THE CONTACT DEPRESSED THE ACCELERATOR PEDAL INSTEAD OF THE BRAKE PEDAL WHICH CAUSED THE VEHICLE TO CRASH INTO A TREE. AS A RESULT, THE AIR BAG FAILED TO DEPLOY. THE CONTACT SUSTAINED INJURIES TO THE NECK AND LEFT SHOULDER WHICH REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS NOT REPAIRED. THE VIN WAS NOT AVAILABLE. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 189,325. |
| 10816234 | GMC | ENVOY | 2003 | 2015-12-19 | FRONT AIR BAG DID NOT DEPLOY,DRIVING IN SNOW SLID AN HIT A TREE WAS DRIVING ON A HIGHWAY. |
| 11093358 | GMC | ENVOY | 2003 | 2018-04-20 | TL* THE CONTACT OWNED A 2003 GMC ENVOY. WHILE DRIVING APPROXIMATELY 25 MPH AND ATTEMPTING TO MAKE A LEFT TURN, THE CONTACT CRASHED INTO THE FRONT END OF ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE CONTACT SUSTAINED INJURIES THAT DID NOT REQUIRE MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DECLARED TOTALED BY THE INSURANCE COMPANY AND TOWED FROM THE SCENE. THE DEALER AND MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE VEHICLE WAS NOT DIAGNOSED. THE FAILURE MILEAGE WAS APPROXIMATELY 300,000. |
| 10037631 | GMC | YUKON | 2003 | 2003-08-17 | WHILE DRIVING ON A RESIDENTIAL STREET CONSUMER FELL ASLEEP BEHIND THE WHEEL AND HIT ANOTHER VEHICLE ON THE FRONT DRIVER'S SIDE. SLIGHT INJURIES WERE SUSTAINED BY THE PASSENGERS OF THE OTHER VEHICLE. CONSUMER SUFFERED RIB CONTUSIONS EVEN THOUGH SEAT BELTS WERE WORN. NONE OF THE AIR BAGS DEPLOYED. CONSUMER WAS GIVEN A CITATION BY THE POLICE THAT ARRIVED ON THE SCENE.*AK |
| 10152567 | GMC | YUKON | 2003 | 2006-03-10 | DT*: THE CONTACT STATED THE VEHICLE WAS INVOLVED IN A T-BONE COLLISION AT 10MPH AND THE AIRBAGS DID NOT DEPLOY. THERE WAS NO PRE-BRAKING PRIOR TO IMPACT. ALTHOUGH THE OCCUPANTS WERE WEARING SEATBELTS, MINOR INJURIES WERE SUSTAINED. THE VEHICLE WAS TOTALED BY THE INSURANCE AGENCY. THE POLICE WERE ON THE SCENE AND A REPORT WAS TAKEN. THE VEHICLE WAS NOT SEEN BY A DEALER FOR INSPECTION. |
| 10160618 | GMC | ASCENDER | 2003 | 2006-03-21 | DT: THE CONTACT STATED WHILE DRIVING ON THE INTERSTATE DURING RUSH HOUR AT 55 MPH, A VEHICLE HIT THE WALL AND TAIL SPINNED IN FRONT OF CONTACT'S VEHICLE. THE CONTACT HIT THE VEHICLE WITH A FRONTAL IMPACT CAUSING SEVERE DAMAGE. UPON IMPACT, THE NONE OF THE CONTACT'S AIR BAGS DEPLOYED. THE CONTACT WAS WEARING A SEATBELT HOWEVER INJURIES WERE SUSTAIN TO THE SHOULDERS, BACK AND NECK. WHEN THE VEHICLE WAS TAKEN TO THE DEALERSHIP, THEY DETERMINED THE VEHICLE WAS OPERATING PROPERLY HOWEVER THE AIRBAGS DID NOT DEPLOY. THE MANUFACTURER HAS BEEN ALERTED. A POLICE REPORT WAS FILED AT THE SCENE. |
| 10266207 | ISUZU | AXIOM | 2003 | 2009-04-11 | TL*THE CONTACT OWNS A 2003 ISUZU AXIOM. WHILE DRIVING LESS THAN 20 MPH, THE CONTACT REAR-ENDED THE PRECEDING VEHICLE. THE FRONT END OF HER VEHICLE WAS DAMAGED. THE AIR BAGS FAILED TO DEPLOY. THE DRIVER SUSTAINED MINOR NECK, LEG, AND BACK INJURIES. THE VEHICLE WAS TOWED TO A REPAIR SHOP AND COULD POSSIBLY BE LABELED AS DESTROYED. A POLICE REPORT WAS FILED. THE CURRENT AND FAILURE MILEAGES WERE 135,850. UPDATED 05/08/09 *BF THE CONSUMER STATED THE DRIVER IN FRONT OF HIM/HER PULLED HIS EMERGENCY BRAKE BECAUSE THE DRIVER IN FRONT OF HIM STOPPED SUDDENLY AND THE CONSUMER NEVER SAW THE DRIVERS BRAKE LIGHTS. UPDATED 05/12/09. *JB UPDATED 06/09/09.*JB |
| 11325218 | ISUZU | AXIOM | 2003 | 2020-05-15 | DRIVING IN A LARGE PARKING LOT, HIT A LARGE CEMENT POLE DOING 20 MILES PER HOUR.AIR BAGS DID NOT DEPLOY. HAD NOT PUT MY SEAT BELT ON YET & HIT & SHATTERED THE WINDSHIELD KNOCKING OUT ALL OF MY FRONT UPPER TEETH. FRACTURED MAXILLA .WHY DID AIR BAGS NOT DEPLOY? *TR |
| 8003267 | CADILLAC | ESCALADE | 2002 | 2001-07-19 | WHILE DRIVING 40 MPH VEHICLE VEERED AND HIT A TELEPHONE POLE, AND AIR BAGS DIDNOT DEPLOY. DRIVER AND PASSENGER WERE INJURED. DEALER CONTACTED. HAD FRONTAL IMPACT. *AK |
| 10064975 | CHEVROLET | ASTRO | 2002 | 2004-02-15 | WHILE DRIVING 40 MPH VEHICLE WAS INVOLVED IN A FRONTAL COLLISION. UPON IMPACT, DUAL AIRBAGS DID NOT DEPLOY. NO INJURES WERE REPORTED. *AK |
| 10178492 | CHEVROLET | ASTRO | 2002 | 2007-01-03 | HIGH SPEED CAR ACCIDENT ON 1/3/07 DRIVER SEAT BELT DID NOT WORK CORRECTLY, BELT DID NOT LOCK UPON HARD BRAKING OR UPON CAR CRASH I HIT MY CHEST ON STEERING WHEEL AND MY KNEES ON DASHBOARD, MY AIRBAG DID NOT DEPLOY EITHER. *JB |
| 10026532 | CHEVROLET | BLAZER | 2002 | 2003-06-20 | CONSUMER STATES THAT WHILE DRIVING AT 35MPH. VEHICLE WAS IN A COLLISION. CONSUMER STATES THAT BOTH FRONT AIR BAGS DID NOT DEPLOY.DEALER NOTIFIED.*AK |
| 10031954 | CHEVROLET | BLAZER | 2002 | 2003-06-20 | VEHICLE RAN INTO THE BACK OF A SEMI-TRACTOR TRAILER AND AIR BAGS DID NOT DEPLOY BECAUSE IT DIDN'T.CONSUMER SUSTAINED INJURIES, PAIN AND SUFFERING. DEALER NOTIFIED. *MR *CB |
| 10048587 | CHEVROLET | BLAZER | 2002 | 2003-10-29 | THE VEHICLE WAS INVOLVED IN A FRONTAL COLLISION AND THE FRONT AIR BAGS DID NOT DEPLOY. THE DRIVER SUFFERED NECK AND BACK INJURIES. THE FRONT PASSENGER SUFFERED CHEST INJURIES. PLEASE PROVIDE FURTHER DETAILS. *JB |

| | | | | | |
|---|---|---|---|---|---|
| 10347200 | CHEVROLET | BLAZER | 2002 | 2010-07-30 | TL* THE CONTACT OWNS A 2002 CHEVROLET BLAZER. THE CONTACT WAS DRIVING APPROXIMATELY 35 MPH, AND CRASHED INTO AN UNOCCUPIED PARKED VEHICLE. THE AIR BAGS WOULD NOT DEPLOY WITH THE LEVEL OF IMPACT IN THE CRASH. WHILE THE FRONT DRIVER SIDE SHOULDER SEAT BELT WAS BEING WORN, IT FAILED TO FUNCTION AND CAUSED THE CONTACT TO MOVE IN A FORWARD POSITION AS A RESULT HER FACE STRUCK THE STEERING WHEEL. THE CONTACT SUSTAINED A BROKEN NOSE, BRUISES ON BOTH ARMS AND SHOULDER AREA. THE AMBULANCE, FIRE AND POLICE DEPARTMENT WERE CALLED TO THE SCENE. A POLICE REPORT WAS FILED OF THE INCIDENT. THE VEHICLE WAS TOWED TO A COLISION FACILITY LOT. THE VEHICLE WAS COMPLETELY DESTROYED. THE FAILURE MILEAGE WAS APPROXIMATELY 130,000.   UPDATED 10/13/10*BF  UPDATED 10/14/10*JB |
| 10402643 | CHEVROLET | BLAZER | 2002 | 2011-05-23 | MY 2002 CHEVY BLAZER X-TREME AIR BAGS DIDN'T DEPLOY ON A FRONT END COLLISION AT THE SPEED OF 45 MPH, MY CAR HAS TOTAL DAMAGE.  *TR |
| 567453 | CHEVROLET | SILVERADO | 2002 | 2002-08-18 | CONSUMER WAS INVOLVED IN AN ACCIDENT WHERE SHE WAS HIT HEAD ON THE RIGHT FRONT SIDE.  THE AIRBAGS FAILED TO DEPLOY. CONSUMER WAS TOLD THE AIRBAGS DIDNT HAVE TO DEPLOY BECAUSE THE VEHICLE WAS STATIONARY DURING BOTH HITS, CONSUMER WAS INJURED IN THE ACCIDENT. *JG |
| 767453 | CHEVROLET | SILVERADO | 2002 | 2002-09-01 | IN DIRECT FRONTAL IMPACT AT 45 MPH, AIRBAGS FAILED TO DEPLOY.*AK |
| 767929 | CHEVROLET | SILVERADO | 2002 | 2002-05-08 | THIS TRUCK WAS INVOLVED IN A HEAD ON CRASH.  I WAS RUNNING ABOUT 55 MPH AND THE OTHER VEHICLE WAS RUNNING APPROXIMATELY 35 MPH.  THE TRUCK WAS A TOTAL LOSS WITH MOST OF THE DAMAGE DONE TO THE FRONT END. THE DRIVERS SIDE AIR BAG OR THE PASSENGER AIR BAG DID NOT DEPLOY.  MR |
| 767963 | CHEVROLET | SILVERADO | 2002 | 2002-09-26 | THIS VEHICLE WAS INVOLVED IN A HEAD-ON COLLISION WHILE TRAVELING AT 50 MPH.  BOTH THE DRIVER SIDE AND PASSENGER SIDE AIR BAGS DID NOT DEPLOY.    MR |
| 8000974 | CHEVROLET | SILVERADO | 2002 | 2001-12-10 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION AT 25MPH. UPON IMPACT, AIRBAGS DID NOT DEPLOY. *AK *YH |
| 8003037 | CHEVROLET | SILVERADO | 2002 | | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION AT 40-45MPH. UPON IMPACT AIR BAGS DID NOT DEPLOY.  DEALER HAS BEEN CONTACTED. PLEASE PROVIDE ADDITIONAL INFORMATION.*AK |
| 8010265 | CHEVROLET | SILVERADO | 2002 | 2002-05-21 | WHILE DRIVING AT 35 MPH, THE VEHICLE WAS HIT BY AN AMBALANCE, THE AIR BAGS DIDNT DEPLOY RESULTING IN  MAJOR INJURIES TO DRIVER. *AK  *MU |
| 8011057 | CHEVROLET | SILVERADO | 2002 | 2002-05-19 | VEHICLE WAS INVOLVED IN A FRONTAL IMPACT GOING 35MPH.  AIR BAG DIDN'T DEPLOY, AND LIGHT NEVER ILLUMINATED. CHEVROLET WAS CONTACTED, AND WILL BE SENDING AN INSPECTOR OUT FOR  VEHICLE. PLEASE PROVIDE MORE INFORMATION.*AK |
| 8011088 | CHEVROLET | SILVERADO | 2002 | 2002-05-12 | VEHICLE WAS INVOLVED IN A 30-40 MPH FRONTAL COLLISION IN WHICH  DRIVER'S AND PASSENGER'S AIR BAGS DID NOT DEPLOY, CAUSE UNKNOWN.  PLEASE GIVE ANY FURTHER DETAILS.*AK |
| 8016806 | CHEVROLET | SILVERADO | 2002 | 2002-08-19 | CONSUMER WAS TRAVELING ABOUT 20MPH ON A SIDE STREET AND THERE WAS A CONCRETE PIPE LAYING ON THE ROAD, AND WITHOUT PRIOR WARNING SHE HIT THE PIPE. AIRBAGS DIDN'T GO OFF. AT DEALERSHIP IS AWARE OF PROBLEM.THE PIPE WAS A BROKE OFF LIGHT POLE. THE FRAME ON THE VEHICLE IS BENT.  *JG |
| 8017234 | CHEVROLET | SILVERADO | 2002 | 2002-08-19 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION WITH A TREE TRAVELING APPROXIMATLY 30-40MPH, AND AIR BAGS DID NOT DEPLOY. *AK |
| 8019177 | CHEVROLET | SILVERADO | 2002 | 2002-08-23 | WHILE DRIVING AT 72 MPH CONSUMER HIT ANOTHER VEHICLE HEAD ON AND NONE OF THE AIR BAGS DEPLOYED. CONTACTED DEALER, AND  DEALER STATED THAT THE VEHICLE ACTED LIKE IT SHOULD HAVE.AK |
| 8021266 | CHEVROLET | SILVERADO | 2002 | 2002-07-19 | CONSUMER STATES WHILE DRIVING 45MPH HAD A HEAD ON COLLISION AIR BAG DID NOT DEPLOY. TS |
| 8024161 | CHEVROLET | SILVERADO | 2002 | 2002-11-19 | CONSUMER STATES THAT WHEN HIT AT 55 MPH IN THE FRONT CENTER OF THE VEHICLE THE AIR BAG DID NOT DEPLOY CAUSING MINOR INJURIES TO THE CONSUMER. DEALER NOTIFIED.  MR |
| 10004706 | CHEVROLET | SILVERADO | 2002 | 2002-12-16 | CONSUMER COMPLAINED ABOUT HAVING PROBLEMS WITH THE AIR BAG DEPLOYMENT. ALSO, WHILE DRIVING VEHICLE WAS INVOLVED IN A COLLISION, AND AIR BAGS DID NOT DEPLOY .PASSENGER WAS DRIVING AT 50 MPH WHEN PASSING OVER A BRIDGE ON A RAINY DAY, AND WATER FROM THE RIVER WAS SPLASHED ON THE FRONT WINDSHIELD WHICH CAUSED THE DRIVER TO LOOSE CONTROL OF THE VEHICLE. MANUFACTURE WAS NOT CONTACTED AT THE TIME OF THIS PHONE CALL. *AK |
| 10005976 | CHEVROLET | SILVERADO | 2002 | 2003-01-29 | WHILE DRIVING VEHICLE WAS IN A FRONTAL COLLISION, BUT NONE OF THE AIR BAGS DEPLOYED UPON IMPACT. THE DRIVER WAS NOT INJURED BECAUSE THEY WERE WEARING THERE SEAT BELTS.*AK |
| 10009099 | CHEVROLET | SILVERADO | 2002 | 2003-02-21 | THE VEHICLE HIT A TREE, AND NONE OF THE AIR BAGS DEPLOYED. *JB *TS |
| 10015548 | CHEVROLET | SILVERADO | 2002 | | THE VEHICLE WAS INVOLVED IN A  FRONT END COLLISION YET NEITHER FRONTAL AIR BAGS DEPLOYED.  *NLM |
| 10019853 | CHEVROLET | SILVERADO | 2002 | | THE VEHICLE WAS INVOLVED IN A FRONTAL COLLISION AND NONE OF THE AIR BAGS DEPLOYED. *JB |
| 10042035 | CHEVROLET | SILVERADO | 2002 | | WHILE DRIVING AT 43 MPH VEHICLE WAS INVOLVED IN A LEFT FRONT COLLISION. UPON IMPACT, FRONT AIR BAGS DID NOT DEPLOY, AND  PASSENGER SUSTAINED INJURIES. *AK |

| | | | | | |
|---|---|---|---|---|---|
| 10073268 | CHEVROLET | SILVERADO | 2002 | 2002-08-11 | I WAS AT A COMPLETE STOP AT A RED LIGHT WHEN A YOUNG LADY RAN THE LIGHT FROM THE OPPOSITE DIRECTION. SHE HIT ANOTHER TRUCK THEN CROSSED OVER INTO MY LANE HITTING ME ON MY RIGHT FRONT BUMPER. LESS THAN 3 SECONDS LATER THE OTHER TRUCK HIT ME HEAD ON AT 35-40 MPH HEAD ON. THE IMPACT WAS HARD ENOUGH TO THROW ME BACKWARDS INTO SOME MOTORCYCLES BEHIND ME. MY FRONTAL AIRBAGS DID NOT DEPLOY DURING EITHER HIT. *MR |
| 10080276 | CHEVROLET | SILVERADO | 2002 | 2004-06-27 | WHILE DRIVING 45 MPH THE DRIVER ATTEMPTED TO AVOID A DEER IN THE STREET. AS A RESULT THE DRIVER LOST CONTROL OF THE VEHICLE AND HIT A TREE HEAD ON. THE CONSUMER STATED THAT,"NEITHER FRONTAL AIR BAG DID DEPLOYED ON IMPACT". THE CONSUMER WILL CONTACT THE DEALER. *NM |
| 10115806 | CHEVROLET | SILVERADO | 2002 | 2005-03-24 | A PIECE OF FURNITURE WAS LOCATED IN THE MIDDLE OF THE HIGHWAY WHILE DRIVING, CAUSING THE DRIVER TO HIT THE FURNITURE. DRIVER LOST CONTROL OF A VEHICLE, AND IT CRASHED INTO A CONCRETE WALL. DRIVER'S SIDE SEAT BELT FAILED, AND THE AIRBAGS DID NOT DEPLOY. DRIVER REFUSED MEDICAL ATTENTION AT THAT TIME AND WENT TO THE HOSPITAL ON HIS OWN. VEHICLE WAS TOWED BY THE INSURANCE COMPANY. *AK |
| 10127515 | CHEVROLET | SILVERADO | 2002 | 2005-07-05 | DT: CONTACT STATES WHILE DRIVING APPROXIMATELY 45 MPH THERE WAS A FRONT END COLLISION. UPON IMPACT, NEITHER AIR BAG DEPLOYED. *AK |
| 10246829 | CHEVROLET | SILVERADO | 2002 | 2008-10-13 | TL*THE CONTACT OWNS A 2002 CHEVROLET SILVERADO. WHILE DRIVING 30 MPH, THE CONTACT STRUCK A DEER AND SWERVED INTO A DITCH. HIS CHEST SLAMMED INTO THE STEERING WHEEL AND WAS INJURED. THE AIR BAGS FAILED TO DEPLOY AND THE SEAT BELT DID NOT RETRACT. THE DRIVER'S SIDE BUMPER WAS CRUSHED INTO THE FRONT GRILL ALL THE WAY ACROSS TO THE PASSENGER SIDE OF THE VEHICLE. THE CONTACT CALLED THE INSURANCE AGENT, BUT NO POLICE REPORT WAS FILED. HE WAS THE ONLY OCCUPANT IN THE VEHICLE AND THE SEAT BELT WAS WORN PROPERLY AT THE TIME OF THE CRASH. THERE WAS NO MAINTENANCE PERFORMED ON THE AIR BAGS OR SEAT BELT PRIOR TO THE FAILURES. THE CONTACT FILED A COMPLAINT WITH GM CONCERNING HIS AIR BAGS AND SEAT BELT (COMPLAINT NUMBER 71-670143505). GM IS NOT TAKING RESPONSIBILITY FOR THE AIR BAG FAILURE. IN ADDITION, NO ONE CAME OUT TO INSPECT THE VEHICLE. THE FAILURE MILEAGE WAS 61,752. |
| 10281236 | CHEVROLET | SILVERADO | 2002 | 2007-11-29 | TL*THE CONTACT OWNS A 2002 CHEVROLET SILVERADO. WHILE DRIVING APPROXIMATELY 45 MPH ON NORMAL ROAD CONDITIONS, A VEHICLE CRASHED INTO THE FRONT OF THE DRIVER SIDE. THE CONTACT WAS TRANSPORTED TO THE HOSPITAL AFTER SUSTAINING INJURIES TO THE HEAD, NECK AND UP. THE AMBULANCE AND POLICE ARRIVED AND A POLICE REPORT WAS FILED. THE AIR BAGS FAILED TO DEPLOY WITH THE MASSIVE LEVEL OF IMPACT. THERE WERE NO WARNING LIGHT INDICATORS ILLUMINATED ON THE INSTRUMENT PANEL AFTER THE CRASH. THE FRONT END OF THE VEHICLE SUSTAINED SEVERE DAMAGE. THE VEHICLE WAS TOWED TO A COLLISION CENTER AND THE VEHICLE WAS REPAIRED. THE CONTACT HAD CONCERNS OF THE SAFETY RISK INVOLVED. THE FAILURE MILEAGE WAS 40,000 AND THE CURRENT MILEAGE WAS 55,000. |
| 10679097 | CHEVROLET | SILVERADO | 2002 | 2015-01-16 | I T-BONED A MINI VAN THAT FAILED TO TO YIELD ON A TURN AT 35 MPH. MY AIRBAGS DID NOT DEPLOY. *TR |
| 10039711 | CHEVROLET | SUBURBAN | 2002 | 2003-08-27 | WHILE DRIVING AT 45 MPH VEHICLE WAS FORCED OFF OF THE ROAD INTO ONCOMING TRAFFIC. CONSUMER SWERVED TO AVOID A HEAD ON COLLISION WITH ANOTHER VEHICLE. THIS ACTION CAUSED THE VEHICLE TO CRASH THROUGH A FENCE, RUN INTO A DITCH, AND COLLIDE HEAD ON WITH AN OAK TREE. SEAT BELTS WERE WORN, BUT AT THE TIME OF THE IMPACT, THE LATCH CAME APART. VEHICLE WAS EQUIPPED WITH FRONT AND SIDE AIR BAGS. UPON IMPACT, THEY DID NOT DEPLOY. CONSUMER'S KNEE WAS BROKEN, AND HE SUFFERED A CONCUSSION. POLICE AND MEDICAL HELP DID ARRIVE ON THE SCENE. MANUFACTURER AND THE DEALER HAVE BEEN NOTIFIED OF THE INCIDENT. *AK |
| 10041031 | CHEVROLET | SUBURBAN | 2002 | 2003-01-07 | I WAS HIT ON THE HEAD INSIDE MY 2002 SUBURBAN, WEARING MY SEAT BELT AT 48 MPH BY AN ONCOMING MAZDA MIATA. MY STEERING COLUMN COLLAPSED, I WENT INTO ONCOMING 3 LANES OF TRAFFIC, WENT UP A CURB, WENT THROUGH A BRICK RETAINING WALL, AND HIT A TELEPHONE POLE. MY AIRBAG DID NOT DEPLOY ON ANY OF THE 3 IMPACTS. WHY? ALSO, MY DRIVER?S SEAT CAME OFF THE TRACK. *LA |
| 10108747 | CHEVROLET | SUBURBAN | 2002 | 2004-11-11 | THE CONSUMER WAS INVOLVED IN AN ACCIDENT. THE CONSUMER WAS DRIVING ABOUT 60 MPH AND REAR ENDED ANOTHER VEHICLE AND THE AIR BAGS FAILED TO DEPLOY. ALSO THE SEAT BELTS DID NOT HOLD THE DRIVER AND PASSENGER CAUSING THEM TO GO FORWARD INTO THE WINDSHIELD. PROVIDE FURTHER DETAILS. *JB |
| 10121922 | CHEVROLET | SUBURBAN | 2002 | 2005-05-14 | DT: HUSBAND HAD AN ACCIDENT. CAR PULLED OUT IN FRONT OF HIM AND HIT THEM ON DRIVER AND BACK SEAT PASSENGER SIDE HEAD. UPON IMPACT, AIR BAG DID NOT DEPLOY. *AK |
| 568470 | CHEVROLET | TAHOE | 2002 | 2002-06-05 | ON TWO OCCASIONS THE FRONT AIR BAGS FAILED TO DEPLOY UPON FRONT IMPACT. THE VEHICLE WAS INSPECTED BY A CRASH INVESTIGATOR WHO TOLD THE CONSUMER THAT THE VEHICLE OPERATED AS DESIGNED. *NLM |
| 8022842 | CHEVROLET | TAHOE | 2002 | 2002-10-10 | THE TRUCK HIT A WALL HEAD ON BETWEEN 33-35 MPH. THE AIR BAGS FAILED TO DEPLOY UPON IMPACT ALLOWING THE DRIVER TO HIT THE WINDSHIELD WITH HIS HEAD SHATTERING IT. GENERAL MOTORS SENT SOMEONE TO DIAGNOSE THE TRUCKS' CONDITION WHICH THE CONSUMER WAS TOLD "EXCEPTIBLE STANDARDS". PLEASE DESCRIBE DETAILS. TS |

| | | | | | |
|---|---|---|---|---|---|
| 10050631 | CHEVROLET | TAHOE | 2002 | 2003-12-04 | HAD A FRONT END COLLISION INTO THE SIDE OF ANOTHER VEHICLE WHOM RAN A RED LIGHT. WE ESTIMATED OUR IMPACT SPEED AT 30 MPH UPON COLLIDING TOGETHER. NEITHER FRONT AIRBAGS DEPLOYED. SUFFERED NECK AND BACK BRUISING AND MUSCLE STRAIN.*AK |
| 10057036 | CHEVROLET | TAHOE | 2002 | 2004-01-23 | ON JANURAY 23, 2004, I WAS REAR-ENDED ON THE FREEWAY. I WAS GOING ABOUT 65-70 MPH. A PERSON HIT ME FROM THE REAR. HE WAS TRAVELLING AROUND 100-110 MPH. I LOST CONTROL OF MY TAHOE, I WENT SIDEWAYS, THEN I SHOT FORWARD AND HIT THE CENTER DIVIDER( ON THE CENTER RIGHT SIDE OF MY CAR) AT ABOUT 65 MPH OR FASTER. I WAS SHOT BACKWARDS INTO A GUARD RAIL AND CAME OFF OF THAT AND THEN THE TAHOE ROLLED ON TO ITS SIDE, SKID FOR ABOUT 30 FEET AND THEN IT FINALLY STOPPED. MY AIR BAGS(FRONT NOR SIDE) NEVER DEPLOYED. I FEEL THAT IF THEY HAD MY WIFE NOR I WOULD HAVE BEEN INJURED. I KNOW THAT THEY ARE DESIGNED TO DEPLOY WHEN YOU HIT SOMETHING LIKE A BRICK WALL AT ABOUT 10-15 MPH. WHAT DO YOU CALL HITTING A CEMENT DIVIDER AT OVER 65 MPH.*AK |
| 10080735 | CHEVROLET | TAHOE | 2002 | 2004-01-23 | I WAS TRAVELING DOWN TO FREEWAY, DOING ABOUT 65-70 MPH. I WAS REAR ENDED BY A GUY GOING BETWEEN 100-110 MPH, I WAS THROWN OUT OF CONTROL. I HIT THE CENTER DIVIDER ALMOST HEAD ON AT ABOUT 70 MPH. I THEN BOUNCED OFF THE DIVIDER, CAME CLEAR AGCROSS ALL LANES AND HIT THE REAR GUARD RAIL, I BOUNDED OFF THAT AND ROLLED ON ITS SIDE. IN ALL MY AIR BAGS NEVER DEPLOYED.*AK |
| 10143613 | CHEVROLET | TAHOE | 2002 | 2005-11-15 | I WAS DRIVING MY 2002 TAHOE ABOUT 30-35 MPH WHEN I BLACKED OUT AND LOST CONTROL OF THE VEHICLE. I HIT A COLUMN OUTSIDE A HOTEL WHICH WAS ABOUT 2X2 FEET WITH STEEL WITHIN THE CENTER OF THE COLUMN. MY TRUCK WAS A TOTAL LOST AND THE FRONT AIRBAGS DID NOT DEPLOY AS THEY WERE SUPPOSED TO. *JB |
| 10152394 | CHEVROLET | TAHOE | 2002 | 2006-03-09 | DT*: THE CONTACT STATED WHILE DRIVING 55 MPH, THE FRONT DRIVER SIDE TIRE HAD A BLOW OUT, CAUSING THE VEHICLE TO HIT BOTH GUARD RAILS WITH THE FRONT END. THE AIRBAGS DID NOT DEPLOY. ALTHOUGH THE SEATBELT WAS WORN, THE CONTACT SUSTAINED A CONCUSSION. THERE WAS A POLICE REPORT TAKEN AT THE SCENE. THE VEHICLE WAS TOWED TO AN AUTO BODY SHOP, WHERE IT WAS DEEMED A TOTAL LOSS BY THE INSURANCE COMPANY. |
| 10155306 | CHEVROLET | TAHOE | 2002 | 2006-03-24 | ON MY WIFE'S WAY HOME FORM WORK SHE WAS INVOLVED IN AN ACCIDENT, WERE SHE REAR ENDED ANOTHER VEHICLE, THE CRASH WAS AT ABOUT 35 TO 45 MILES PER HOUR AND IT AFFECTED THE FRONT DRIVER SIDE OF OUR 2002 CHEVY TAHOE. THE IMPACT WAS SO SIGNIFICANT THAT THE FRAME OF THE TAHOE WAS BENT. THE CRASH PRETTY MUCH MIMICKED THE SAME OFF CENTER FRONT CRASH THAT THE INSURANCE INSTITUTE FOR HIGHWAY SAFETY CONDUCTS ON THEIR TESTING. THE PROBLEM WAS THAT THE FRONT AIRBAGS NEVER DEPLOYED ALTHOUGH THE ACCIDENT HAPPENED UNEXPECTEDLY, MY WIFE WAS WEARING HER SEAT BELT AND DIDN'T SUSTAINED SERIOUS INJURIES. OUR CONCERN IS THAT THE BAGS NEVER DEPLOYED AND THAT THEY MIGHT DEPLOY AT ANYTIME. THE AUTO BODY SHOP RECOMMENDED BY OUR INSURANCE COMPANY TOLD US THAT BECAUSE THE CRASH IMPACT WAS OFF CENTERED THE AIRBAG SENSOR WERE NEVER TRIGGERED. AFTER SEEING SO OF THE INSURANCE INSTITUTE FOR HIGHWAY SAFETY TEST THE BAGS SHOULD HAVE DEPLOYED. ALSO IT WAS DETERMINED THAT THE FRAME HAS TO BE REPLACED AND ALL THE BODY PARTS FIXED AND REPLACED. IF THE FRAME HAS TO BE REPLACED HOW SAFE WOULD THAT VEHICLE BE? I AM OPEN FOR ANY FARTHER CONVERSATIONS ABOUT THIS TOPIC. THANK YOU. *JB |
| 10353935 | CHEVROLET | TAHOE | 2002 | 2010-07-28 | I WAS DRIVING MY 2002 CHEVY TAHOE, A GENTLEMAN RAN A STOP SIGN, I HIT HIM AT 39 MPH, HEAD ON IN MY TAHOE, T-BONED HIS TRUCK. NEITHER AIRBAG DEPLOYED, NOR DID MY SEATBELT KEEP ME FROM HITTING THE STEERING WHEEL AND MY HEAD KNOCKING ME OUT. GM SENT SOMEONE TO LOOK AT MY CAR WHICH HAS BEEN DEEMED A TOTAL LOSS. I HAVE YET TO HEAR BACK FROM GM ON THIS INCIDENT. I PURCHASED THIS CAR BRAND NEW THINKING IT WAS SAFE. THE ONE TIME I NEEDED MY SEATBELT TO WORK, IT FAILED. THE COMPUTER IN MY CAR SHOWED BOTH SEATBELTS WERE ON AND IN WORKING ORDER, IT SHOWED THE CRASH WAS AT 39 MPH YET THE AIRBAGS DID NOT DEPLOY AND THEY ALL WERE IN PROPER WORKING ORDER. WHATEVER ANSWER GM GIVES ME WILL NOT BE GOOD ENOUGH UNLESS THEY ADMIT TO FAULTINESS IN THEIR EQUIPMENT. *TR |
| 10458444 | CHEVROLET | TAHOE | 2002 | 2012-04-08 | REAR ENDED A VEHICLE GOING APPROX. 70 MPH AND HAD EXTENSIVE FRONT END DAMAGE HOWEVER THE AIR BAGS FAILED TO DEPLOY. DRIVER HIT HEAD ON STEERING WHEEL AND PASSENGER SUFFERED SEVER HEAD INJURY. *JS |
| 10498415 | CHEVROLET | TAHOE | 2002 | 2013-02-14 | TRAFFIC STOPPED IN FRONT OF ME UNEXPECTEDLY, I SWERVED TO AVOID CAR IN FRONT OF ME AND HIT CONCRETE WALL. AIR BAGS DID NOT WORK. MY FACE HIT STEERING WHEEL, CAUSING INJURY TO NOSE AND MOUTH. *TR |
| 10815602 | CHEVROLET | TAHOE | 2002 | 2014-07-08 | TL*: THE CONTACT OWNS A 2002 CHEVROLET TAHOE. WHILE DRIVING 45 MPH, THE CONTACT'S VEHICLE WAS REAR ENDED BY ANOTHER VEHICLE, AND CRASHED INTO A GUARD RAIL. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED AND THE VEHICLE WAS DESTROYED. THE CONTACT'S HEAD STRUCK THE STEERING WHEEL AND HE WAS TRANSPORTED TO THE HOSPITAL BY AMBULANCE. THE CONTACT SUSTAINED SPINAL CORD AND NECK INJURIES. THE DOCTOR X-RAYED THE CONTACT AND DIAGNOSED HIM WITH BURNING PARESTHEGIC, HYPER-ESTHESIA, AND CENTRAL CORD SYNDROME. THE CONTACT WAS RELEASED FROM THE HOSPITAL TWO DAYS AFTER THE CRASH. THE FAILURE MILEAGE WAS 285,000. |

| | | | | | |
|---|---|---|---|---|---|
| 10641399 | CHEVROLET | TAHOE | 2002 | 2011-06-07 | TL - THE CONTACT OWNS A 2002 CHEVROLET TAHOE. THE CONTACT STATED THAT WHILE THE DRIVER WAS DRIVING AT 45 MPH AND ATTEMPTED TO AVOID A CRASH WITH ANOTHER VEHICLE. AS A RESULT, THE DRIVER CRASHED INTO A GUARDRAIL AND THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED. THE VEHICLE WAS TAKEN TO A HOSPITAL AND SUSTAINED INJURIES TO THE RIBS, THE COLLAR BONES, A BRAIN TRAUMA AND A COLLAPSED LUNG. THE DRIVER SUFFERED FROM FATAL INJURIES. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 73,000. DR |
| 10667110 | CHEVROLET | TAHOE | 2002 | 2011-06-07 | TL* THE CONTACT OWNS A 2002 CHEVROLET TAHOE. THE CONTACT STATED THAT THE DRIVER CRASHED INTO A GUARD RAIL AND THE AIR BAGS FAILED TO DEPLOY. THE DRIVER SUSTAINED MASSIVE HEAD TRAUMA, BROKEN RIBS AND BLEEDING FROM THE BRAIN, RESULTING IN A FATALITY. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE CONTACT WAS UNAWARE IF THE VEHICLE WAS DIAGNOSED OF THE FAILURE. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 72,000. |
| 10668043 | CHEVROLET | TAHOE | 2002 | 2014-11-07 | TL* THE CONTACT OWNS 2002 CHEVROLET TAHOE. THE CONTACT STATED THAT WHILE DRIVING 45 MPH, ANOTHER VEHICLE CRASHED INTO THE CONTACT'S VEHICLE CAUSING THE VEHICLE TO SPIN AND BECOME UNCONTROLLABLE. IN ADDITION, ANOTHER VEHICLE CRASHED INTO THE VEHICLE CAUSING IT TO ROLL OVER SEVERAL TIMES BEFORE CRASHING INTO A GUARD RAIL. THE AIR BAGS FAILED TO DEPLOY. THE DRIVER SUSTAINED CRITICAL INJURIES AND THE FRONT PASSENGER SUSTAINED FATAL INJURIES. THE FRONT AND FRONT PASSENGER REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 130,000. |
| 10746088 | CHEVROLET | TAHOE | 2002 | 2011-06-07 | TL* THE CONTACT OWNED A 2002 CHEVROLET TAHOE. WHILE DRIVING AT APPROXIMATELY 45 MPH, THE CONTACT CRASHED INTO A GUARD RAIL. THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED A FRACTURED COLLAR BONE, SEVERAL BROKEN RIBS, HEAD TRAUMA, BRAIN BLEEDING, AND STROKES. THE CONTACT WAS PLACED INTO A MEDICALLY INDUCED COMA AND ON A RESPIRATORY MACHINE, BUT LATER DIED. THE VEHICLE WAS TOWED TO A SAVAGE YARD. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 73,000. |
| 11382901 | CHEVROLET | TAHOE | 2002 | 2020-11-17 | TL- THE CONTACT OWNS A 2002 CHEVROLET TAHOE. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 25 MPH WHEN THE VEHICLE RAN ACROSS BLACK ICE CAUSING THE CONTACT TO LOSE CONTROL OF THE VEHICLE. THE VEHICLE BEGAN TO SPEND UNCONTROLLABLY EVENTUALLY CRASHING INTO A CONCRETE WALL WITH THE FRONT-END OF THE VEHICLE. NO AIR BAGS DEPLOYED. THE CONTACT RECEIVED INJURIES TO THEIR KNEE, SHOULDER, NECK, BACK, AND EYE. MEDICAL ATTENTION WAS NEEDED. A POLICE REPORT WAS FILED. THE VEHICLE TOWED AND DEEMED TOTALED. THE DEALER WAS NOT CONTACTED. THE MANUFACTURER WAS NOT MADE AWARE OF THE ISSUE. THE APPROXIMATE FAILURE MILEAGE WAS 150,000. GL |
| 8017394 | CHEVROLET | TRACKER | 2002 | 2002-08-09 | WHILE DRIVING AT 45 MPH CONSUMER T-BONED ANOTHER VEHICLE HEAD ON AND NONE OF THE AIR BAGS DEPLOYED. CONTACTED DEALER, AND THE DEALER WAS AWARE OF THE PROBLEM, BUT THEY HAD NO SOLUTION. *AK |
| 10087309 | CHEVROLET | TRACKER | 2002 | 2004-07-20 | WHILE DRIVING AT 40 MPH  CONSUMER'S  VEHICLE COLLIDED WITH THE LEFT SIDE OF ANOTHER VEHICLE RUNNING A STOP SIGN.  CONSUMER WAS WEARING SEAT BELTS,  BUT AIR BAGS DID NOT DEPLOY.  CONSUMER AND A PASSENGER SUSTAINED VARIOUS BONE FRACTURES AND BRUISES. THE POLICE AND AN AMBULANCE DID ARRIVED ON THE SCENE.*AK |
| 10264048 | CHEVROLET | TRACKER | 2002 | 2009-03-29 | TL*THE CONTACT OWNS A 2002 CHEVROLET TRACKER.  WHILE DRIVING AT AN UNKNOWN SPEED, THE VEHICLE LEFT THE ROAD, AND STRUCK A TREE WITH THE FRONT PASSENGER SIDE AND FENDER.  THE FRAME WAS BENT IN TWO PLACES, BUT THE AIR BAGS FAILED TO DEPLOY.  THERE WERE NO INJURIES.  THE SEAT BELT WAS NEVER SERVICED AND WAS WORKING FINE PRIOR TO THE CRASH.  A POLICE REPORT WAS FILED.  THE FAILURE MILEAGE WAS 95,000. |
| 10970730 | CHEVROLET | TRACKER | 2002 | 2017-04-05 | AFTER A COLLISION WHERE MY TRACKER HIT ANOTHER VEHICLE AT AROUND 55 MPH ON A HIGHWAY, MY VEHICLE HIT DEAD ON TO THE SIDE OF ANOTHER (T-BONE) AND MY SENSOR SHOULD HAVE TRIGGERED MY AIRBAGS AND DID NOT. |
| 8002085 | CHEVROLET | TRAILBLAZER | 2002 | 2002-01-03 | WHILE BEING DRIVEN APPROXIMATELY 20 TO 25 MPH VEHICLE WENT OFF THE ROAD AND CRASHED INTO A LARGE OAK TREE.  BOTH FRONTAL AIR BAGS FAILED TO DEPLOY DURING THE CRASH.  BODY SHOP STATED THAT AIR BAGS SHOULD HAVE DEPLOYED DUE TO  DAMAGE VEHICLE RECEIVED.  DEALERSHIP HAS NOT EXAMINED VEHICLE TO DETERMINE IF THERE WAS A PROBLEM WITH THE AIR BAG SYSTEM.  PLEASE PROVIDE ANY ADDITIONAL INFORMATION / DOCUMENTATION.**AK |
| 8010014 | CHEVROLET | TRAILBLAZER | 2002 | 2002-04-08 | CONSUMER STATES THAT DURING A VEHICLE CRASH THE SIDE AIRBAG DID NOT DEPLOY.*JB |
| 8022437 | CHEVROLET | TRAILBLAZER | 2002 | 2002-11-01 | WHILE TRAVELING ABOUT 40MPH THE VEHICLE WAS INVOLVED WITH A FRONTAL COLLISION. NEITHER AIRBAG DEPLOY PLEASE PROVIDE ADDITIONAL INFORMATION.  DEALER IS AWARE OF THE PROBLEM.   TS |
| 10011300 | CHEVROLET | TRAILBLAZER | 2002 | 2003-03-04 | THE VEHICLE WAS INVOLVED IN A COLLISION, AND THE AIR BAGS DID NOT DEPLOY. *JB |
| 10013828 | CHEVROLET | TRAILBLAZER | 2002 | 2003-03-19 | HYDROPLANED HEAD ON INTO A TREE DOING ABOUT 40 MPH.  HIT THE TREE HARD ENOUGH TO BREAK THE ENGINE MOUNTS AND SHIFT THE ENGINE FORWARD INTO THE FAN, PLUS SOME TRANSMISSION DAMAGE. THE AIR BAGS DID NOT DEPLOY.  *NLM |

| 10014453 | CHEVROLET | TRAILBLAZER | 2002 | 2003-02-05 | ON FEB 5TH, 2003 I REAR ENDED A STOPPED VEHICLE WHILE GOING 45 MILES AN HOUR. MY CHIN HIT THE STEERING WHEEL BUT NO AIRBAG DEPLOYED. THE BODY SHOP WAS UNABLE TO DETERMINE WHY THE AIR BAG DID NOT DEPLOY. *NLM |
| 10015367 | CHEVROLET | TRAILBLAZER | 2002 | 2003-04-02 | CONSUMER WAS HIT TWICE IN A SIDE AND FRONTAL COLLISION WHILE TRAVELING APPROXIMATELY 30MPH. NEITHER THE FRONTAL OR SIDE AIR BAGS DEPLOYED. *NLM |
| 10027280 | CHEVROLET | TRAILBLAZER | 2002 | 2003-07-12 | THE VEHICLE WAS INVOLVED  IN A COLLISION, AND THE AIR BAGS FAILED TO DEPLOY. *AK  THE CONSUMER SUFFERED INJURIES. *JB |
| 10044550 | CHEVROLET | TRAILBLAZER | 2002 | | WHILE CONSUMER WAS DRIVING 25-28 MPH VEHICLE WAS T-BONED FROM ANOTHER VEHICLE  AT ESTIMATED SPEED OF 30 MPH. UPON IMPACT,  FRONTAL AIR BAGS FAILED TO DEPLOY. *AK |
| 10113109 | CHEVROLET | TRAILBLAZER | 2002 | 2004-12-12 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION WHILE DRIVING BETWEEN  50-55MPH. UPON IMPACT, THE AIR BAGS FAILED TO DEPLOY. AS A RESULT,  DRIVER SUSTAINED CHEST INJURIES WHEN IT IMPACTED THE STEERING WHEEL.*AK |
| 10114818 | CHEVROLET | TRAILBLAZER | 2002 | 2005-03-24 | CRASH AT 35 MPH (FRONT END SQUARE) DRIVER AND PASSENGER AIR BAGS FAILED TO DEPLOY. |
| 10115232 | CHEVROLET | TRAILBLAZER | 2002 | 2005-02-09 | DURING A 30 MPH VEHICLE FRONTAL COLLISION FRONT AIR BAGS DID NOT DEPLOY. CONSUMER SUSTAINED MINOR INJURIES. THE VEHICLE WAS TOWED. DEALERSHIP WAS NOTIFIED, BUT DID NOT RESOLVE THE PROBLEM. *AK...PROBLEM WA SDISCUSSED WITH THE DEALER IN DETAIL BUT DID NOT KNOW HOW TO RESOLVE PROBLEM. *AK |
| 10118790 | CHEVROLET | TRAILBLAZER | 2002 | 2005-04-12 | WHILE DRIVING 55-60 MPH, VEHICLE HIT AN SUV THAT DROVE INTO LANE.  VEHICLE THEN HIT BY TRACTOR TRAILER.  VEHICLE CRASHED WITH GREAT FORCE INTO HIGHWAY DIVIDER AND LOST FRONT LEFT WHEEL, CAUSING VEHICLE TO CONTINUE TO CRASH ALONG DIVIDER.  BOTH FRONT AIRBAGS AND BOTH SIDE AIRBAGS FAILED TO DEPLOY.  PASSENGER IN VEHICLE SUSTAINED FRACTURES TO ORBITAL BONES AND MAXILLARY BONE IN SKULL.  MAJOR RECONSTRUCTIVE SURGERY WAS REQUIRED.  THE VEHICLE WAS DETERMINED TO BE A TOTAL LOSS. |
| 10122088 | CHEVROLET | TRAILBLAZER | 2002 | 2005-05-24 | DT:  AIR BAG  DID NOT DEPLOY IN A OFF CENTER FRONTAL COLLISION.  WHILE TRAVELING ABOUT 35-40 MPH  CONSUMER'S VEHICLE  HIT THE REAR OF ANOTHER VEHICLE.  IT WAS AT A GARAGE NEAR THE ACCIDENT  SITE.  NO ONE  LOOKED AT THE VEHICLE BUT THE RESCUE SERVICES WERE SURPRISED THAT THE AIRBAGS DID NOT DEPLOY.  INTERMITTENTLY THE SRS LIGHT WOULD COME ON.  TOOK VEHICLE TO DEALER  AND IT WAS REPAIRED IN JULY 2004. *AK *JB |
| 10136929 | CHEVROLET | TRAILBLAZER | 2002 | 2005-09-15 | DT:  CONSUMER'S VEHICLE  WAS INVOLVED IN AN ACCIDENT ON SEPTEMBER 15, 2005.  UPON IMPACT,  NONE OF THE AIR BAGS DEPLOYED. BACK IN SEPTEMBER OF 2002 CONSUMER'S  WAS INVOLVED IN A HEAD ON COLLISION WITH THIS SAME VEHICLE, AND THE AIR BAGS NEVER DEPLOYED AT THAT TIME EITHER. HAD THE VEHICLE REPAIRED AT THE GMC DEALERSHIP. *AK |
| 10144322 | CHEVROLET | TRAILBLAZER | 2002 | 2005-11-08 | DT:  THE CONTACT STATED  VEHICLE WENT OFF  THE ROAD AND HIT TREES AT 50-55 MPH. UPON IMPACT,  THE AIRBAGS DID NOT DEPLOY.  THE VEHICLE WAS TOTALED.  THE FRONT END COLLAPSED, THE ENGINE WAS IN THE FIREWALL, AND THE BODY WAS PUSHED OFF OF THE FRAME.  THE CONTACT  SUSTAINED MINOR BRUISES AND ABRASIONS.  A POLICE REPORT WAS TAKEN AT THE SCENE. THE DEALERSHIP STATED THEY HAVE NEVER HEARD OF THIS HAPPENING. *AK |
| 10157599 | CHEVROLET | TRAILBLAZER | 2002 | 2006-05-15 | DT*:  THE CONTACT STATED WHILE TRAVELING 35 MPH WITH PRIOR BRAKING, THE VEHICLE VEERED OFF THE ROAD AND SLID INTO A DITCH.  THERE WAS FRONT END DAMAGE; THE FRAME RAIL AND HOOD BENT.  THE AIRBAGS DID NOT DEPLOY WHEN THIS OCCURRED.  THE CONTACT WAS NOT IN THE VEHICLE AND THE DRIVER WAS UNAWARE OF WHAT CAUSED THE VEHICLE TO VEER OFF THE ROAD.  THE DRIVER SUSTAINED HEAD TRAUMA AND THE SEAT BELT WAS NOT WORN.  THERE WAS A POLICE REPORT TAKEN AT THE SCENE.  THE VEHICLE WAS TOWED TO AN INDEPENDENT REPAIR SHOP, BUT HAS NOT BEEN INSPECTED BY A MECHANIC.  UPDATED 06/16/06. *JB |
| 10172513 | CHEVROLET | TRAILBLAZER | 2002 | 2006-07-01 | DT*: THE CONTACT STATED WHILE DRIVING 40 MPH ON A GRAVEL ROAD, CONTROL OF THE VEHICLE WAS LOST AND IT CRASHED INTO A TREE HEAD ON.  THE AIR BAGS DID NOT DEPLOY.  THERE WAS NO PRIOR BRAKING AND SEAT BELTS WERE WORN.  THE DRIVER SUSTAINED MINOR INJURIES.  THE VEHICLE WAS LATER TOWED TO AN INDEPENDENT REPAIR SHOP.  THE DEALER WAS ALERTED. |
| 10254230 | CHEVROLET | TRAILBLAZER | 2002 | 2009-01-08 | TL*THE CONTACT OWNS A 2002 CHEVROLET TRAILBLAZER.  WHILE DRIVING APPROXIMATELY 15 MPH, THE CONTACT STRUCK A PATCH OF ICE AND THE VEHICLE CRASHED INTO A LIGHT POLE.  THE VEHICLE WAS COMPLETELY DESTROYED AND NONE OF THE AIR BAGS DEPLOYED.  A POLICE REPORT WAS FILED AND THERE WERE NO INJURIES.  THE FAILURE AND CURRENT MILEAGES WERE 56,000. |

| | | | | | |
|---|---|---|---|---|---|
| 10257808 | CHEVROLET | TRAILBLAZER | 2002 | 2009-01-21 | WELL SERVICED 90K MILES. TRAVELING AT 35MPH  PUSHED BREAKS ALL THE WAY DOWN (FRACTURING RIGHT ANKLE) SLOWED ME DOWN BUT FAILED TO STOP AT UPCOMING RED LIGHT. STRUCK MEDIUM SIZE VEHICLE INJURING OTHER DRIVER AND CAUSING CONSIDERABLE DAMAGE TO BOTH VEHICLES. CHEVY DEALER COLLISION/SERVICE CENTER ESTIMATED $8K IN REPAIRS. IN OTHER WORDS IT COSTS MORE TO REPAIR IT THAN WHAT THE VEHICLE IS WORTH. ALSO:"MASTER CYLINDER IS BAD" AND AIR BAGS DID NOT DEPLOY. CHEVY TECH. SAID "IMPACT WAS NOT BIG ENOUGH" . AFTER READING SOME EIGHT OTHER COMPLAINTS  VERY SIMILAR TO THIS . I AM CONCERNED ABOUT DRIVING THIS OR GETTING INTO ANOTHER ONE.  IS THERE NOT A BREAK LIGHT SERVICE SENSOR THAT I SHOULD HAVE NOTED.?  SERVICE MANUAL FOR SCHEDULED MAINTENANCE SAYS TO CHECK FRONT AND REAR AXLE FLUID AND ADD FLUID AS NEEDED EVERY 5K TO 7K MILES AFTER 67.5K MILES. *TR |
| 10263896 | CHEVROLET | TRAILBLAZER | 2002 | 2009-03-26 | I WAS IN A CAR ACCIDENT, WHERE I WAS TRAVELING AT ABOUT 35 MPH. AN AGGRESSIVE DRIVER SPEED AROUND ME AND CUT ME OFF AND THAN STOMPED ON THIS BRAKES IN FRONT OF ME. DUE TO THAT I SWERVED TO MISS HIM CLIPPING HIS RIGHT BACK LIGHT AD BUMPER WITH MY LEFT HEADLIGHT AND BUMPER. AS I WAS SWERVING I HIT A TREE JUST ABOUT DEAD ON WITH MY AR. THE MAJORITY OF THE IMPACT OCCURRED JUST ABOUT 6 INCHES TO THE LEFT (IF LOOKING AT THE CAR) OF THE CENTER OF THE FRONT OF THE CAR. I HIT THE TREE AT A SPEED OF ABOUT 28-30 MPH. AFTER INITIAL IMPACT I WAS RUSHED TO THE HOSPITAL DUE TO UNCONSCIOUS AND FACIAL CONTUSIONS. DURING THE FIRST MOMENTS AFTER THE ACCIDENT, ONE OF THE FIRST THINGS OFFICERS, EMTS AND WITNESSES SAID WAS "I CAN'T BELIEVE THE AIRBAGS DIDN'T GO OFF". IN THE RECENT DAYS AFTER THE ACCIDENT I HAVE HAD SEVERAL MECHANICS AND SUCH APPRAISE THE CAR. THE ONE COMMON THEME THEY ALL SHARE IS THAT THEY SUSPECT THERE MIGHT NOT BE AN AIRBAG WHERE IT BELONGS. OR THE LACK THERE OF. *TR |
| 10294686 | CHEVROLET | TRAILBLAZER | 2002 | 2009-11-20 | HIT HEAD ON BY ANOTHER CAR TOTALING MY CAR, AIRBAGS DID NOT DEPLOY. *TR |
| 10314643 | CHEVROLET | TRAILBLAZER | 2002 | 2010-01-07 | INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6) . I WAS TRAVELING SOUTHBOUND ON KY HWY 1531 (EASTWOOD FISHERVILLE RD). WHEN I APPROACHED A SHARP CURVE IN THE ROADWAY, I OBSERVED A HONDA ODYSSEY MINIVAN TRAVELING NORTHBOUND TOO FAST FOR THE ICY, SNOWY ROAD CONDITIONS.  THE MINIVAN DRIVER LOST CONTROL OF HER VEHICLE AND STRUCK MY 2002 TRAILBLAZER HEAD-ON IN THE SOUTHBOUND LANE.  AT THE TIME OF IMPACT, MY TRAILBLAZER WAS COMPLETELY STOPPED WITH MY RIGHT FOOT PRESSED FIRMLY ON THE BRAKE PEDAL. THE HONDA ODYSSEY AIRBAGS FULLY DEPLOYED.  MY TRAILBLAZERS AIRBAGS DID NOT DEPLOY.  BOTH VEHICLES WERE TOTAL LOSS.  MY TRAILBLAZER WAS TOWED TO GM REPAIR SHOP BAUCHMAN CHEVROLET IN LOUISVILLE KY.  IT REMAINS STORED IN ITS ORIGINAL POST-ACCIDENT CONDITION.  I HAVE RETAINED OWNERSHIP TITLE OF THIS VEHICLE.  GM REPAIR SHOP NOTED EXTENSIVE FRAME DAMAGE AND BROKEN AIRBAG SENSOR.  THIS IS THE SECOND FRONT END INJURY CRASH INVOLVING THIS TRAILBLAZER WHERE THE AIRBAGS FAILED TO DEPLOY.  SEE ALSO ODI CASE # 10314629.  GM WAS NOTIFIED OF INCIDENT AND AGAIN I OPENED AN INVESTIGATION WITH GM AS TO WHY THE AIRBAGS FAILED TO DEPLOY.  AS OF THIS DATE (2/26/2010) GM INVESTIGATORS HAVE NOT INSPECTED THE VEHICLE.  (GM CASE [XXX] ).  I SUFFERED LOW BACK INJURIES AS A RESULT OF THIS ACCIDENT. THIS INJURY OCCURRED 8 WEEKS AFTER SPINAL FUSION SURGERY. I HAVE BEEN IN PHYSICAL THERAPY SINCE THE ACCIDENT FOR JOINT DAMAGE IN THE SACRAL ILLUUM AREA.  *TR |
| 10343917 | CHEVROLET | TRAILBLAZER | 2002 | 2009-12-04 | TL*THE CONTACT OWNS A 2002 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 70 MPH THE VEHICLE WAS INVOLVED IN A CRASH IN WHICH THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT WAS INJURED. THE VEHICLE WAS DESTROYED AND TOWED TO AN INDEPENDENT REPAIR SHOP.  THE MANUFACTURER EXAMINED THE VEHICLE BUT DID NOT INFORM THE CONTACT OF THE CAUSE OF FAILURE; HOWEVER, THEY DID OFFER HIM A SETTLEMENT. THE FAILURE AND CURRENT MILEAGES WERE 150,000.  THE VIN WAS UNAVAILABLE. |
| 10378297 | CHEVROLET | TRAILBLAZER | 2002 | 2011-01-19 | AIRBAGS DIDN'T DEPOLY AND ROOF CAVED.  *TR |
| 10386658 | CHEVROLET | TRAILBLAZER | 2002 | 2007-03-06 | TL* THE CONTACT OWNS A 2002 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 70 MPH IN RAINY WEATHER, THE CONTACT DROVE OVER A PUDDLE OF WATER AND LOST CONTROL OF THE VEHICLE. SHE THEN ENGAGED THE BRAKES AND THE VEHICLE SWERVED ABNORMALLY. THE VEHICLE SPUN AROUND AND CRASHED INTO THE OUTER MEDIAN. THE AIR BAGS DID NOT DEPLOY AND THE CONTACT SUSTAINED A SHOULDER INJURY. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE APPROXIMATE FAILURE MILEAGE WAS 152,000. |
| 10587773 | CHEVROLET | TRAILBLAZER | 2002 | 2014-05-10 | I WAS DRIVING AND A GUY IN A CAR CAME OVER IN MY LANE AND HIT ME HEAD ON CAUSING ME TO FLIP MY VEHICLE 4 TIMES, MY AIRBAGS DIDN'T COME OUT AND THE GUY THAT HIT ME WAS UNDER THE INFLUENCE, MY VEHICLE WAS TOTALED. *TR |

| | | | | | |
|---|---|---|---|---|---|
| 10626676 | CHEVROLET | TRAILBLAZER | 2002 | 2008-03-10 | I STRUCK A VEHICLE THAT BROADSIDE WHEN HE RAN A STOP SIGN. I WAS GOING APPROXIMATELY 30 TO 35 MPH WHEN I STRUCK HIS VEHICLE. THE AIR BAGS DID NOT DEPLOY. I WAS TAKEN AWAY IN AN AMBULANCE AND HAD DAMAGE TO MY CERVICAL SPINE, STOMACH AND MID SPINE. I DID INQUIRE WHERE I HAD THE VEHICLE REPAIRED, ABOUT $8K IN DAMAGES, ABOUT WHY THE AIRBAGS DIDN'T DEPLOY. THEY SAID THEY DIDN'T KNOW BUT CHECKED AND SAID THE AIRBAG SYSTEM WAS FUNCTIONING? I SEE MANY SUCH "STORIES" ABOUT TRAILBLAZER AIRBAGS NOT DEPLOYING ON THIS SITE. IT REALLY BE NICE TO SEE SOMETHING DONE ABOUT THIS SITUATION. THIS VEHICLE HAS BEEN IN SEVERAL WRECKS AND THE AIRBAGS HAVE NEVER DEPLOYED!!!!! NOTE, I HAVE WRITTEN TO CHEVROLET/GM ABOUT THIS ISSUE BUT DON'T REALLY EXPECT THEM TO RESPOND! SOME SUPPORT FROM THE NHTSA WOULD REALLY BE APPRECIATED AND IS NEEDED BEFORE ANYONE ELSE GET HURT WHEN THE AIRBAGS DON'T DEPLOY! *TR |
| 10758946 | CHEVROLET | TRAILBLAZER | 2002 | 2014-10-15 | TL* THE CONTACT OWNED A 2002 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 15 MPH ON A RAINY ROAD, THE CONTACT CRASHED INTO ANOTHER VEHICLE AND THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED A HEAD INJURY THAT REQUIRED MEDICAL ATTENTION. THE DRIVER AND PASSENGER OF THE OTHER VEHICLE SUSTAINED UNKNOWN INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE AND VIN WERE UNAVAILABLE. |
| 10761168 | CHEVROLET | TRAILBLAZER | 2002 | 2014-10-04 | TL* THE CONTACT OWNS A 2002 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 10 MPH ON AN INCLINE DURING INCLEMENT WEATHER CONDITIONS, THE CONTACT'S VEHICLE VEERED INTO ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE MANUFACTURER WAS NOT MADE AWARE OF THE ISSUE. A POLICE REPORT WAS FILED. THE CONTACT SUFFERED A HEAD CONCUSSION THAT REQUIRED MEDICAL ATTENTION. THE FAILURE MILEAGE WAS NOT PROVIDED. |
| 10825823 | CHEVROLET | TRAILBLAZER | 2002 | 2016-01-09 | THE VEHICLE WAS INVOLVED IN A HEAD ON CRASH INTO A TELEPHONE POLE AND THE AIR BAGS DID NOT DEPLOY. THE FRONT SEAT PASSENGER WAS INJURED AND THE DRIVER STRUCK THE STEERING WHEEL AND DIED AT THE HOSPITAL FROM INTERNAL INJURIES. WE ARE TRYING TO DETERMINE WHY THE AIRBAGS DID NOT DEPLOY. THE PASSENGER WAS NOT WEARING A SEAT BELT AND IT ALSO APPEARS THAT THE DECEASED DRIVER WAS NOT WEARING A SEAT BELT. |
| 10872510 | CHEVROLET | TRAILBLAZER | 2002 | 2016-05-26 | DRIVING APPROXIMATELY 30 MILES PER HOUR, WOMAN PULLED OUT IN FRONT OF ME TO TURN ONTO THE FREEWAY. A VEHICLE NEXT TO ME HONKED THEIR HORN AND MISSED HITTING HER BUT I HIT HER ON THE PASSENGER REAR PANEL OF HER CAR, DAMAGING HER VEHICLE AND BENDING THE REAR TIRE AT AN ANGLE. THE AIRBAG DID NOT DEPLOY AND WAS ON. I WAS TRAVELING ON A CITY STREET, GOING WESTBOUND, THE OTHER DRIVER WAS TURNING TO GO NORTHBOUND. |
| 10899776 | CHEVROLET | TRAILBLAZER | 2002 | 2016-08-29 | TL* THE CONTACT OWNS A 2002 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 25 MPH, THE CONTACT'S VEHICLE CRASHED INTO A BUS AND SUSTAINED SIGNIFICANT DAMAGE TO THE FRONT END. THE AIR BAGS DID NOT DEPLOY. THE VEHICLE WAS TOWED. THE DRIVER SUSTAINED INJURIES TO THE NECK, HEAD, TORSO, AND A DISLOCATED FINGER. MEDICAL ATTENTION WAS REQUIRED. A POLICE REPORT WAS FILED. THE CAUSE OF THE FAILURE WAS NOT DIAGNOSED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 122,000. |
| 10957467 | CHEVROLET | TRAILBLAZER | 2002 | 2017-02-26 | MY WIFE WAS IN A HEAD ON COLLISION WHERE SHE HIT A TREE GOING APPROXIMATELY 45 MILES AN HOUR. SHE WAS ON A COUNTY ROAD AND LOST CONTROL OF THE VEHICLE, HITTING THE TREE ON PRIVATE PROPERTY. THE AIRBAGS DID NOT DEPLOY, WHEN THEY SHOULD HAVE. SHE HIT HER HEAD ON THE STEERING WHEEL AT IMPACT. I HAVE UPLOADED PICTURES OF THE DAMAGE TO THE VEHICLE AND A PICTURE SHOWING THE AIRBAGS DID NOT DEPLOY. |
| 11042967 | CHEVROLET | TRAILBLAZER | 2002 | 2016-11-22 | TL* THE CONTACT OWNED A 2002 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 60 MPH, THE CONTACT SWERVED TO AVOID ANOTHER VEHICLE AND CRASHED INTO A MEDIAN FACING ONCOMING TRAFFIC. THE VEHICLE FLIPPED OVER EIGHT TIMES AND LANDED IN A DITCH ON THE OPPOSITE SIDE OF THE HIGHWAY. THE AIR BAGS DID NOT DEPLOY. THE VEHICLE WAS TOWED AND DEEMED TOTALED. A POLICE REPORT WAS FILED. THE CONTACT PASSED OUT AND RECEIVED INJURIES TO THE HEAD, NECK, BACK, AND SHOULDER. MEDICAL ATTENTION WAS REQUIRED. THE DEALER WAS NOT CONTACTED. THE VEHICLE WAS INCLUDED IN NHTSA CAMPAIGN NUMBER: 04V201000 (SEAT BELTS). THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 100,000. |

| | | | | | |
|---|---|---|---|---|---|
| 11289369 | CHEVROLET | TRAILBLAZER | 2002 | 2019-11-29 | TL* THE CONTACT OWNED A 2002 CHEVROLET TRAILBLAZER. WHILE DRIVING AND TURNING, THE VEHICLE HYDROPLANED AND STRUCK A CONCRETE WALL HEAD ON. THE VEHICLE THEN VEERED TO THE LEFT AND STRUCK THE CENTER DIVIDER TWICE. THE AIR BAGS DID NOT DEPLOY. THE VEHICLE WAS TOTALED AND TOWED. MOST OF THE DAMAGE WAS TO THE FRONT END OF THE VEHICLE AND THE DRIVER'S DOOR COULD NOT BE CLOSED. THE DRIVER SUSTAINED BRUISES WHERE THE SEAT WAS LOCATED. THE DRIVER WAS TRANSPORTED TO THE EMERGENCY ROOM FOR MEDICAL ATTENTION. THE DRIVER'S FACE WAS BRUISED AND A CAT SCAN WAS PERFORMED TO DETERMINE IF THERE WERE ANY BROKEN BONES, BUT THE TESTS WERE NEGATIVE. THE DRIVER ALSO TWISTED HER ANKLE AND THERE WAS A LITTLE BIT OF SWELLING ON HER KNEE. A POLICE REPORT WAS FILED. THE MANUFACTURER WANTED TO VISIT THE CONTACT'S HOME TO EXAMINE THE VEHICLE AND FIND OUT WHY THE AIR BAGS DID NOT DEPLOY. THE DEALER WAS NOT CONTACTED. THE CAUSE OF THE FAILURE WAS NOT DETERMINED. THE FAILURE MILEAGE WAS UNKNOWN. |
| 564451 | GMC | ENVOY | 2002 | 2001-01-13 | WHILE DRIVING IN INCLEMENT WEATHER THE DRIVERS VEHICLE HIT A PATCH OF BLACK ICE SENDING THE VEHICLE OFF THE ROAD HITTING A STONE RETAINING WALL HEAD ON. NEITHER PASSENGER NOR DRIVERS SIDE AIR BAGS DEPLOYED. NLM |
| 566612 | GMC | ENVOY | 2002 | 2002-01-14 | ALL OF THE EIGHT (8) AIR BAG EQUIPPED IN THE VEHICLE FAILED TO DEPLOY DURING FRONTAL IMPACT, ALTHOUGH PROPERLY RESTRAINED THE CONSUMER STILL SUSTAINED SERIOUS INTERNAL INJURIES, INCLUDING A LACERATED LIVER.(ATTORNEY ON BEHALF OF CUENTO) NLM |
| 8016732 | GMC | ENVOY | 2002 | 2002-07-17 | VEHICLE WAS INVOLVED IN FRONTAL COLLISION WITH POINT OF IMPACT JUST A LITTLE LEFT OF THE CENTER BUMPER. FRONT END, INCLUDING FRAME WAS TOTALLED. UPON IMPACT, NEITHER AIR BAGS DEPLOYED. PLEASE DESCRIBE DETAILS. *AK |
| 8023505 | GMC | ENVOY | 2002 | 2002-11-22 | CONSUMER COLLIDED IN THE REAR OF A TRACTOR TRAILER TRAVELING APPROXIMATELY 60-70MPH. BOTH THE DRIVER AND PASSENGER AIR BAGS DID NOT DEPLOY. TS |
| 10002513 | GMC | ENVOY | 2002 | | WHILE TRAVELING AT 70 MPH ANOTHER VEHICLE WAS TRAVELING EAST BOUND CROSSED CONSUMERS PATH UNEXPECTANTLY, CAUSING CONSUMER TO HIT A TREE. CONSUMER STATES NONE OF THE AIRBAGS DEPLOYED. PLEASE PROVIDE ANY FURTHER INFORMATION.*JB |
| 10009390 | GMC | ENVOY | 2002 | 2003-02-21 | CONSUMER LOST CONTROL OF VEHICLE AND HIT A LEDGE, AND NONE OF THE AIR BAGS DEPLOYED. *JB THE DEALER STATED THAT IF THE VEHICLE HIT 6 INCHES TO THE RIGHT, THEN THE AIR BAGS WOULD HAVE DEPLOYED. *SCC |
| 10029726 | GMC | ENVOY | 2002 | 2003-07-03 | WHILE DRIVING 50 MPH VEHICLE WAS INVOLVED IN A FRONTAL COLLISION, BUT AIR BAGS DID NOT DEPLOY. DEALER NOTIFIED. *AK |
| 10029894 | GMC | ENVOY | 2002 | 2003-07-15 | CONSUMER STATED WHILE SHE AND HER HUSBAND WERE TRAVELING ON THE HIGHWAY AT APPROXIMATELY 40-50 MPH, THE VEHICLE IN FRONT OF THEM DECIDED TO MAKE A QUICK TURN, WHICH CAUSED HER HUSBAND TO HIT THE VEHICLE IN THE SIDE. UPON IMPACT, THE AIR BAGS DID NOT DEPLOY. BOTH SHE AND HER HUSBAND SUSTAINED INJURIES. HIS KNEES WENT INTO THE DASH AND HE WAS SORE FROM HEAD TO TOE. THIS IMPACT CAUSED HER HEAD TO SNAP BACK, RESULTING IN A CHEST WALL INJURY/A STIFF NECK , AND BACK. THIS WAS A MALFUNCTION BECAUSE THE AIR BAGS SHOULD HAVE DEPLOYED BECAUSE OF THE RATE OF SPEED. *AK *CB THE CONSUMER ALSO FELT THE SEAT BELT DID NOT REALLY PERFORM AS DESIGNED. *JB |
| 10063773 | GMC | ENVOY | 2002 | 2004-03-21 | 2002 GMC ENVOY SER#[XXX] AIR BAGS DID NOT DEPLOY DRIVER TAKEN BY LIFESTAR TO HARTFORD HOSPITAL THE WHOLE LEFT SIDE OF THE VEHICLE WAS CAVED IN ALL THE WAY TO THE FRONT SEAT. *NM UPDATED 07/30/2012 *JS  INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6) |
| 10075683 | GMC | ENVOY | 2002 | 2004-05-14 | WHILE DRIVING 30 MPH, THE CONSUMER WAS INVOLVED IN AN EIGHT VEHICLE PILE UP. UPON IMPACT, THE AIR BAGS DID NOT DEPLOY. AS A RESULT, THE DRIVER SUSTAINED SEVERE  BACK AND LEG INJURIES. *AK *SC |
| 10079342 | GMC | ENVOY | 2002 | 2004-06-16 | WHILE DRIVING 55 MPH DRIVER APPLIED THE BRAKES  TO SLOW DOWN THE SPEED  AND CONSUMER LOST CONTROL, CAUSING THE VEHICLE TO HIT A GUARD RAIL  AND ROLL OVER THREE TIMES. VEHICLE LANDED UPSIDE DOWN. UPON IMPACT, THE AIRBAG DID NOT DEPLOY, AND  SEAT BELT  DID NOT HOLD  THE PASSENGER. *AK |
| 10099326 | GMC | ENVOY | 2002 | 2004-11-01 | AFTER BEING STRUCK HEAD ON BY A SEMI  TRAILER AT 40 MPH AIR BAGS DID NOT DEPLOY.   THE VEHICLE WAS TOTALED.*AK |
| 10101068 | GMC | ENVOY | 2002 | 2004-11-11 | WHILE DRIVING 20 MPH CONSUMER'S VEHICLE COLLIDED WITH THE VEHICLE IN FRONT. UPON IMPACT, BOTH  FRONTAL AIR BAGS FAILED TO DEPLOY. DRIVER TO SUSTAINED MINOR INJURIES, AND WAS TRANSPORTED TO A HOSPITAL. THE VEHICLE WAS TOWED TO THE DEALER FOR INSPECTION. *AK |
| 10129259 | GMC | ENVOY | 2002 | 2005-07-18 | I WAS TRAVELLING AT APPROXIMATELY 35MPH AND AS I WAS HEADING TOWARD A SIGNAL LIGHT WHEN A VAN TURNED LEFT IN THE OPPOSITE DIRECTION OF TRAVEL. MY VEHICLE'S FRONT END STRUCK THE VAN'S PASSENGER SIDE DOOR. AIR BAGS DID NOT DEPLOY UPON IMPACT ALTHOUGH VAN'S BOTH FRONTAL AIR BAGS DID DEPLOY.MY FACE HIT THE STEERING WHEEL AND KNEES HIT THE BOTTOM OF THE DASHBOARD. PASSENGER WAS ALSO BRUISED ON KNEES |

| | | | | | |
|---|---|---|---|---|---|
| 10211793 | GMC | ENVOY | 2002 | 2007-12-05 | TL*THE CONTACT OWNS A 2002 GMC ENVOY. WHILE DRIVING 20 MPH UPHILL IN ICY WEATHER, THE VEHICLE SLID OFF THE ROAD. NONE OF THE AIR BAGS DEPLOYED AND THE VEHICLE WAS COMPLETELY DESTROYED. THE PASSENGER WAS SEVERELY INJURED. THE CONTACT FILED A FORMAL COMPLAINT WITH THE MANUFACTURER. HE HAS A COPY OF THE POLICE REPORT. THE CURRENT AND FAILURE MILEAGES WERE 115,000. UPDATED 01/07/08 *BF-UPDATED *JB |
| 10246849 | GMC | ENVOY | 2002 | 2008-10-03 | MY WIFE AND I WERE HEADED SOUTHBOUND ON 685 IN ROUND ROCK, TX IN OUR 2002 GMC ENVOY AT APPROX. 9:35 PM WHEN A DRIVER IN A MINI VAN RAN A RED LIGHT AT THE INTERSECTION OF 685 AND GATTIS SCHOOL RD. OUR VEHICLE STRUCK THEM IN THE REAR PASSENGER QUADRANT. THE SPEED LIMIT IS 60 MPH AT THIS INTERSECTION AND WE DID NOT HAVE TIME TO BRAKE. EVEN THOUGH THE FRONT OF OUR VEHICLE WAS CRUSHED INTO THE ENGINE COMPARTMENT, NO AIRBAGS DEPLOYED. MY WIFE, WHO IS IN THE HABIT OF WEARING HER SEATBELT (ALTHOUGH WE STILL CANNOT CONFIRM ONE WAY OR THE OTHER) STRUCK THE REAR VIEW MIRROR WITH HER HEAD WITH ENOUGH FORCE TO BREAK A HOLE IN THE WINDSHIELD WHERE IT WAS ATTACHED AND BREAK THE WINDSHIELD AROUND IT. SHE WAS TRANSPORTED TO THE HOSPITAL WITH A CONCUSSION AND HAD FOR A TIME GONE INCOHERENT AND UNRESPONSIVE WITH SHORT TERM MEMORY LOSS. SHE HAS HAD DAILY HEADACHES SINCE WITH SOME EXTREMELY SEVERE. SHE ALSO HAD MULTIPLE SEVERE CONTUSIONS DOWN HER LEFT SIDE, PARTICULARLY IN HER UPPER LEFT THIGH WITH A LARGE HEMOTOMA THAT IS STILL GIVING HER PROBLEMS. OUR VEHICLE WAS SUBSEQUENTLY TOTALED BY THE INSURANCE COMPANIES. WE HAVE CONTACTED GM ABOUT THE FAILURE OF THE AIRBAGS TO DEPLOY AND THEY ARE CURRENTLY INVESTIGATING AND SENT AN INVESTIGATOR TO DOWNLOAD THE COMPUTER INFORMATION LAST WEEK. THERE IS A POLICE REPORT THAT WAS FILED BY THE TEXAS DPS INVESTIGATING OFFICER. *TR |
| 10437615 | GMC | ENVOY | 2002 | 2011-11-16 | CAR HAD A HEAD ON COLLISION WITH ANOTHER CAR THAT JUMP FROM THE OPPOSITE TRAFFIC. BOTH CARS WERE TOTALED BECAUSE OF THIS ACCIDENT, BUT MY AIRBAGS DID NOT DEPLOY AT THE TIME OF THE ACCIDENT. *KB |
| 10667172 | GMC | ENVOY | 2002 | 2013-07-07 | MY SON (17) WAS COMING HOME AND CRASHED INTO A LIGHT POLE, WE DON'T KNOW WHAT CAUSED HIM TO CRASH NO ALCOHOL OR DRUGS WERE INVOLVED AND THE AIRBAGS DID NOT DEPLOY...HE WAS TRAPPED IN THE CAR AND DIED FROM BLUNT FORCE TRAUMA TO THE HEAD. *TR |
| 10723011 | GMC | ENVOY | 2002 | 2014-06-28 | I AND MY PASSENGER WERE IN AN ACCIDENT ABOUT A YEAR AGO, A VERY HARD FRONT END IMPACT, AND NONE OF THE AIR BAGS DEPLOYED. WE WERE BOTH TRANSPORTED TO THE ER BY AMBULANCE, I HIT THE STEERING WHEEL HARD SO HARD THAT IT BENT INWARDS AND BROKE MY NOSE ALSO HAD A CONCUSSION. HE WAS IN THE FRONT PASSENGER SEAT AND HIT THE FRONT DASH, WHERE THE AIR BAG SHOULD HAVE DEPLOYED, HE BROKE HIS FRONT TEETH AND ALSO HAD A CONCUSSION. I'VE ALSO HAD MANY OF THE SAME ISSUES THAT EVERY OTHER 02 OR 03 ENVOY HAS YET MY VIN PULLS NO RECALLS. THIS NEEDS TO BE INVESTIGATED!!! THANKS |
| 11179980 | GMC | ENVOY | 2002 | 2019-02-12 | I WAS ON MY WAY HOME ON HWY/US 151 GOING APPROX. 55-60 MPH (65 MPH ZONE) WHEN I HIT A DEER WHICH CAUSED MY VEHICLE TO LOSE CONTROL AND SLAMMED INTO THE START OF A GUARDRAIL AT NO LESS THAN 45 MPH BRINGING MY 2002 GMC ENVOY TO A COMPLETE STOP, AT MOST 2-3 FEET FROM INITIAL IMPACT TO BE EXACT. THE AIRBAGS DID NOT DEPLOY. FRONT DASH NOR SIDE IMPACT BAGS, NOTHING. N I HIT HARD. LUCKILY I WASNT SERIOUSLY INJURED ONLY MINOR BRUISING AND QUITE SORE FROM WHIPLASH AND BEING THROWN INTO THE DOOR AN A BIT SHAKEN N LUCKILY HAD NO PASSENGERS. AS FOR MY ENVOY, IT IS A TOTAL LOSS AND UNFORTUNATELY I ONLY HAD LIABILITY INSURANCE SO NOW IM SCREWED WITHOUT A VEHICLE AND AFTER ALL OTHER PROBLEMS IVE FACED WITH MY GMC ENVOY I WILL NEVER OWN A GM AGAIN. TAKE GM PRODUCTS TO THE DUMP. |
| 8021614 | GMC | YUKON | 2002 | 2002-10-13 | CONSUMER STATES THAT AT 50 MPH UNDER RAINY CONDITIONS, CONSUMER LOSS CONTROL OF VEHICLE AND HIT A TREE. VEHICLE WAS TOTALLED. NONE OF THE VEHICLES AIRBAGS DEPLOYED. PLEASE PROVIDE ANY FURTHER INFORMATION. TS |
| 10004394 | GMC | YUKON | 2002 | 2002-12-09 | WHILE DRIVING AT 25 MPH THE VEHICLE WAS INVOLVED IN AN ACCIDENT WHERE AIRBAGS DID NOT DEPLOY. DEALER NOTIFIED. PLEASE PROVIDE ADDITIONAL INFORMATION. TS |
| 10126105 | GMC | YUKON | 2002 | 2005-06-13 | DT: CONSUMER GOT IN AN ACCIDENT AND TOTALED THE VEHICLE, THE FRONT AND SIDE AIR BAGS NEVER DEPLOYED. CONSUMER WAS GOING ABOUT 70 MPH AND HIT HEAD ON AND THE VEHICLE ROLLED 4 TIMES. *AK *SB |
| 10132894 | GMC | YUKON | 2002 | 2005-07-15 | DT: WHILE DRIVING DOWN THE MAIN ROAD AT 45 MPH, THE CONSUMER TOOK HIS EYES OFF THE ROAD AND WENT INTO THE GRAVEL AND THEN INTO A DITCH AND HIT A MAILBOX . THE CONSUMER WENT THROUGH THE PASSENGER SIDE WINDSHIELD. THE RIGHT WHEEL FELL OFF AND THE FRONT BUMPER SMASHED INTO THE ENGINE AND THE FRAME WAS BENT. UPON IMPACT, THE AIR BAGS DID NOT DEPLOY. THE VEHICLE WAS EQUIPPED WITH FRONT AND SIDE AIR BAGS. THE AIR BAG LIGHT WAS NOT ON AND NEVER HAD BEEN ON. THERE WERE NO PROBLEMS WITH VEHICLE BEFORE THIS INCIDENT. THERE WERE NO OTHER VEHICLES INVOLVED. THE VEHICLE HAS NEVER BEEN IN AN ACCIDENT THERE WERE NO RECALLS ON THE AIR BAGS. THE MANUFACTURER HAS NOT BEEN CONTACTED, BUT WILL BE CONTACTED TODAY.THERE WAS A POLICE REPORT WAS TAKEN. *AK |

| | | | | | |
|---|---|---|---|---|---|
| 10261762 | GMC | YUKON | 2002 | 2009-02-23 | TL*THE CONTACT OWNS A 2002 GMC YUKON. WHILE DRIVING APPROXIMATELY 55 MPH, THE CONTACT CRASHED INTO ANOTHER VEHICLE. HIS VEHICLE WAS COMPLETELY DESTROYED AND NONE OF THE AIR BAGS DEPLOYED. THE DRIVER SUSTAINED MODERATE BODILY INJURIES. IT HAS NOT YET BEEN DETERMINED WHY THE AIR BAGS FAILED TO DEPLOY. THE CONTACT HAS PICTURES OF THE FAILED INCIDENT AND A COPY OF THE POLICE REPORT. HE FILED A COMPLAINT WITH THE MANUFACTURER. THE FAILURE AND CURRENT MILEAGES WERE 107,000. |
| 10544196 | GMC | YUKON | 2002 | 2013-09-12 | TL* THE CONTACT OWNS A 2002 GMC YUKON. THE CONTACT STATED THAT WHILE DRIVING 45 MPH, HE CRASHED INTO THE PASSENGER'S SIDE OF ANOTHER VEHICLE AND THE AIR BAGS FILED TO DEPLOY WITH THE IMPACT. IN ADDITION, THE SEAT BELT FAILED TO SECURE AS DESIGNED. THE CONTACT SUSTAINED A BRUISED RIB AND AN INJURY TO THE LEFT LEG. A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS DESTROYED AND TOWED TO A SALVAGE FACILITY. THE MANUFACTURER WAS NOT NOTIFIED OF THE DEFECT. THE APPROXIMATELY FAILURE MILEAGE WAS 142,000. |
| 10690133 | GMC | YUKON | 2002 | 2015-01-06 | TL*THE CONTACT OWNS A 2002 GMC YUKON. THE CONTACT STATED THAT AFTER BEING INVOLVED IN A COLLISION, THE AIR BAGS FAILED TO DEPLOY. THE DETAILS OF THE COLLISION WERE NOT AVAILABLE. THE VEHICLE WAS DESTROYED. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED BACK INJURIES THAT DID NOT REQUIRE MEDICAL ATTENTION. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 225,000. THE VIN WAS UNAVAILABLE. |
| 11298082 | GMC | YUKON XL | 2002 | 2019-02-05 | I SWERVED TO MISS A DEER AND I HIT A TREE RUNNING 47 MPH AND MY AIR BAGS DIDN'T DEPLOY AND NO ONE CAN TELL ME WHY. MY HUSBAND AND I WERE VERY LUCKY BUT WHY DIDN'T THE AIR BAGS DEPLOY? MY HUSBAND WAS OUT OF WORK FOR 5 MONTHS DUE TO TORN LIGAMENTS IN HIS SHOULDERS AND STILL HAS TO HAVE SURGERY. |
| 10048726 | ISUZU | AMIGO | 2002 | | THE TRUCK IMPACTED A TREE WHILE DRIVING 40 MPH AND AS A RESULT THE TRUCK'S FRONT BUMPER WRAPPED AROUND THE TREE. NEITHER THE DRIVER'S SIDE NOR PASSENGER'S SIDE AIR BAG DEPLOYED UPON IMPACT. THE DRIVER SUSTAINED SEVERE INJURIES, BUT NO BROKEN BONES. THE CAUSE OF THE AIR BAG FAILURE IS YET TO BE DETERMINED. PLEASE PROVIDE ANY ADDITIONAL INFORMATION. *NLM |
| 764947 | ISUZU | AXIOM | 2002 | 2002-07-02 | WE WERE INVOLVED IN AN ACCIDENT ON I270 IN ST.LOUIS, MO.  A SEMI- TRUCK DOING APPROXIMATELY 35 MPH STRUCK US IN THE REAR AND FORCED US INTO THE PICK UP TRUCK IN FRONT OF US.  THE AIR BAGS DID NOT DEPLOY, DESPITE THE SQUARE FRONT TO REAR IMPACT. THE FRONT PASSENGER SEAT IN MY VEHICLE BROKE, TWISTING THE PASSENGER TO THE SIDE, FACING THE STEERING WHEEL.*AK |
| 10033920 | ISUZU | AXIOM | 2002 | 2003-08-13 | CONSUMER STATED WHILE DRIVING  AT 50 MPH CONSUMER'S VEHICLE REARENDED ANOTHER VEHICLE. UPON IMPACT, AIR BAGS FAILED TO DEPLOY. *AK |
| 10050524 | ISUZU | AXIOM | 2002 | 2003-12-15 | WHILE DRIVING AT 25 MPH  LEFT FRONT TIRE  BLEW OUT, DRIVER LOST  CONTROL AND HIT A GUARD RAIL. UPON IMPACT,  NONE OF THE AIR BAGS DEPLOYED.  GOODYEAR,  SIZE P235/65R17, DOT# UNKNOWN. CONSUMER STATED THERE WAS NOT AN ISSUE WITH THE TIRE, BUT HIS SON RAN OVER SOMETHING AND BLEW THE TIRE. *AK |
| 10128420 | ISUZU | AXIOM | 2002 | 2005-07-11 | DT:  ON JULY 3RD THE CONSUMER RECEIVED A RECALL LETTER IN REFERENCE TO THE PASSENGER SIDE AIR BAG, RECALL # 03V113000. THE VEHICLE WAS TAKEN TO GALLES MOTOR CO. TO HAVE THE RECALL REPAIRED AT NO COST TO THE CONSUMER.  ON JULY 11, 2005 THE CONSUMER'S WIFE HAD AN ACCIDENT IN WHICH SHE WAS INJURED.  SHE REAR ENDED A CAR SITTING AT A RED LIGHT WHILE SHE WAS GOING 45 MPH.  SHE WAS WEARING A SEAT BELT AT THE TIME BUT THE AIR BAGS DID NOT DEPLOY.  THE WEATHER WAS DRY AND THE ROAD CONDITIONS WERE GOOD. THE VEHICLE HASN'T BEEN TAKEN TOT HE DEALER YET FOR INSPECTION.  THE DEALER WAS CONTACTED AND THEY SAID FOR HIM TO TAKE IT TO A MECHANIC.  HE HASN'T BEEN ABLE TO GET A HOLD OF THE MFR.  AT PRESENT, HIS CAR IS STILL AT THE WRECKING YARD.  *NM |
| 10148582 | ISUZU | AXIOM | 2002 | 2005-12-23 | DT*:  THE CONTACT STATED ON DECEMBER 23, 2005 WHILE DRIVING AT 60 MPH ON A DRY HIGHWAY THE CONTACT WAS RUN OFF THE ROAD BY A TRUCK.  THE VEHICLE THEN COLLIDED WITH THE ROAD PARTITION, AND CRUSHED THE ENTIRE FRONT END OF THE VEHICLE.  THE AIR BAGS DID NOT DEPLOY, AND THE DRIVER SUFFERED BRUISING FROM THE SAFETY BELT.  THERE IS A RECALL, #02V213000 BUT THE CONTACT WAS NOT NOTIFIED OF THE RECALL WHEN THE VEHICLE WAS PURCHASED.  UPDATED 02/28/06. *JB |
| 8023834 | ISUZU | RODEO | 2002 | 2002-10-25 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION WITH A POLE AT 35-40MPH AND NEITHER AIRBAG DEPLOYED.  VEHICLE IS TOTALED DRIVER IN A COMA DEALER IS AWARE OF THE PROBLEM. TS |
| 10049812 | ISUZU | RODEO | 2002 | 2003-11-28 | WHILE MERGING ONTO THE INTERSTATE VEHICLE DROVE OVER SOME BLACK ICE,  VEHICLE THEN SPUN AROUND, HIT A CONCRETE BARRIER, AND A GUARD RAIL.  UPON IMPACT,  FRONT AIR BAGS DID NOT DEPLOY.  THE DRIVER AND PASSENGER SUSTAINED  MINOR INJURIES. *AK |
| 10184163 | ISUZU | RODEO | 2002 | 2006-11-19 | CAR WAS INVOLVED IN AN ACCIDENT WHERE IT STRUCK THE BACK OF ANOTHER VEHICLE. THE COLLISION WAS ENOUGH TO CAUSE OVER $4000.00 IN DAMAGE TO THE ISUZU BUT THE AIR BAGS FAILED TO DEPLOY. *JB |

| | | | | | |
|---|---|---|---|---|---|
| 10443695 | ISUZU | RODEO | 2002 | 2011-05-18 | TL* THE CONTACT OWNS A 2002 ISUZU RODEO. THE CONTACT WAS DRIVING APPROXIMATELY 35 MPH WHEN THE VEHICLE BEGAN TO ERRONEOUSLY DRIFT TO ONE SIDE. THE CONTACT LOST CONTROL OF THE VEHICLE AND THE VEHICLE MOVED INTO THE SHOULDER, CRASHING INTO THE BARRIER WALL ABRUPTLY. THE CONTACT WAS KNOCKED UNCONSCIOUS AND THE CONTACTS FOOT LANDED ON THE ACCELERATOR PEDAL AS HE LOST CONSCIOUSNESS.THE CONTACT WAS NOT AWARE AS THE VEHICLE CONTINUED TO ACCELERATE INTO ONCOMING TRAFFIC. THE VEHICLE THEN CRASHED INTO A TREE BEFORE FLIPPING. THE SEAT BELTS DETACHED FROM ITS HOUSING UNIT AND THE AIR BAGS NEVER DEPLOYED. THE CONTACT SUSTAINED SEVERE INJURIES TO THE HEAD, FACE, PELVIS AND SPINE. A PASSENGER WAS ALSO INJURED AND BOTH THE CONTACT AND THE PASSENGER WERE TRANSPORTED TO THE HOSPITAL. A POLICE REPORT WAS FILED OF THE INCIDENT AND THE VEHICLE WAS DESTROYED. THE FAILURE AND THE CURRENT MILEAGE WAS 150,000. |
| 10553570 | ISUZU | RODEO | 2002 | 2013-11-24 | WHILE TRAVELING ON A ROAD, A HORSE RAN ACROSS AND CAUSED A COLLISION. THE FRONT OF THE VEHICLE IS DAMAGED, AS WELL AS, BOTH SIDE WINDOWS AND THE RADIATOR. NONE OF THE AIRBAGS DEPLOYED CAUSING INJURIES TO TWO PEOPLE IN THE VEHICLE. THE OFFICER AT THE SCENE SAID THE AIRBAGS SHOULD HAVE DEFINITELY DEPLOYED. *TR. |
| 745117 | CHEVROLET | ASTRO | 2001 | 2001-04-19 | VEHICLE WAS IN AN OFFSET FRONTAL CRASH, STRIKING THE REAR OF A FULL SIZE PICKUP TRUCK WITH THE LEFT HALF OF THE FRONT OF THE VAN. UPON IMPACT, FRONTAL AIR BAGS FAILED TO DEPLOY. *AK |
| 8006423 | CHEVROLET | ASTRO | 2001 | 2002-03-06 | WHILE DRIVING 35 MPH THE VEHICLE REAR ENDED A BUS YET THE AIRBAGS DID NOT DEPLOY. THE VEHICLE WAS A TOTAL LOSS. NLM *JG |
| 886165 | CHEVROLET | BLAZER | 2001 | | WHILE TRAVELING 30-35 MPH AND AS A RESULT OF AN ACCIDENT AIR BAGS DID NOT DEPLOY. PLEASE PROVIDE FURTHER INFORMATION.*AK |
| 894582 | CHEVROLET | BLAZER | 2001 | 2001-08-10 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION. SPEED WAS NOT DETERMINED, UPON IMPACT, BOTH AIR BAGS DID NOT DEPLOY. DEALER WAS NOTIFIED. *AK *YH |
| 8015457 | CHEVROLET | BLAZER | 2001 | 2002-07-05 | WHILE IN A FRONTAL IMPACT NONE OF THE AIR BAGS DEPLOYED. DEALER CONTACTED.*AK |
| 8017355 | CHEVROLET | BLAZER | 2001 | 2002-07-07 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION INTO A DIRT WALL. UPON IMPACT, NEITHER AIR BAG DEPLOYED. FEEL FREE TO PROVIDE ANY FURTHER INFROMATION.*AK |
| 8017786 | CHEVROLET | BLAZER | 2001 | 2002-08-16 | WHILE DRIVING AT 35MPH AND WITH NO WARNING WHEN VEHICLE WAS HIT IN FRONT CENTER AIR BAGS DID NOT DEPLOY. DEALER NOTIFIED.*AK |
| 8020006 | CHEVROLET | BLAZER | 2001 | 2002-09-14 | CONSUMER STATES THAT WHEN HIT AT 40MPH IN THE FRONT CENTER OF THE VEHICLE THE AIR BAG DID NOT DEPLOY. DEALER NOTIFIED. NLM |
| 8023471 | CHEVROLET | BLAZER | 2001 | 2002-07-01 | WHILE TRAVELING ABOUT 55MPH ON THE HIGHWAY WITHOUT PRIOR WARNING SHE HIT AN ENBANKMENT. AND THE VEHICLE FLIP AND THE DRIVER SIDE AIRBAG DIDN'T DEPLOY. PLEASE FILL IN ADDITIONAL INFORMATION DEALER IS AWARE OF THE PROBLEM. PH |
| 10002341 | CHEVROLET | BLAZER | 2001 | | CONSUMER STATES WHILE DRIVING 30MPH HAD FRONT END COLLISION AND NEITHER PASSENGER OR DRIVES SIDE AIR BAG DEPLOYED. PLEASE PROVIDE ANY ADDITIONAL INFORMATION. TS |
| 10060150 | CHEVROLET | BLAZER | 2001 | 2004-02-24 | DRIVER SIDE AIR BAG FAILED TO DEPLOY IN A CRASH THROUGH: 1. A SIX FOOT TALL WOODEN FENCE AT ALMOST 30MPH, THEN 2. THE EXTERIOR SIDE OF A 2-STORY HOME THAT CONTAINED THE KITCHEN SINK AND PLUMBING FIXTURES, WHILE SMASHING UP AND OVER THE FIFTEEN-INCH CONCRETE FOUNDATION, FRONT-END FIRST.*AK |
| 10072173 | CHEVROLET | BLAZER | 2001 | 2004-04-30 | WHILE DRIVING AT 53 MPH, THE CONSUMER'S VEHICLE REAR ENDED ANOTHER VEHICLE. UPON IMPACT, THE AIR BAGS DID NOT DEPLOY. THE CONSUMER SUSTAINED MINOR INJURIES. THE DEALERSHIP WAS NOTIFIED, BUT DID NOT RESOLVE THE PROBLEM. *AK *SC |
| 10101364 | CHEVROLET | BLAZER | 2001 | 2004-11-11 | CONSUMER'S VEHICLE WAS AT A COMPLETE STOP AND ANOTHER VEHICLE WAS COMING HEAD ON WHICH RESULTED IN A HEAD ON COLLISION. THERE WAS A VEHICLE BEHIND CONSUMER'S VEHICLE WHICH SHE WAS PUSHED INTO DUE TO THE HEAD ON COLLISION. HOWEVER, UPON IMPACT, AIR BAGS DID NOT DEPLOY. CONSUMER SUSTAINED MAJOR INJURIES. *AK |
| 10105341 | CHEVROLET | BLAZER | 2001 | 2004-12-22 | CONSUMER'S VEHICLE WAS INVOLVED IN A FRONT COLLISION AT 40 MPH DUE TO INCLEMENT WEATHER. UPON IMPACT, AIR BAGS DID NOT DEPLOY. CONSUMER CONTACTED THE MANUFACTURER. *AK |
| 10106657 | CHEVROLET | BLAZER | 2001 | 2004-12-25 | VEHICLE SLIPPED WHILE TRAVELING ON ICE AT 55 MPH, CAUSING THE VEHICLE TO STRIKE A CONCRETE RETAINING WALL, AND IT ROLLED OVER. UPON IMPACT, AIR BAGS DID NOT DEPLOY.*AK |
| 10142568 | CHEVROLET | BLAZER | 2001 | 2005-10-05 | DT: CONTACT STATED THE AIR BAGS DID NOT DEPLOY IN A HEAD ON CRASH. WHILE TRAVELING AT ABOUT 60 MPH THE VEHICLE HYDRO PLANED. THE CONTACT LOST CONTROL OF THE VEHICLE AND CRASHED. THREE PEOPLE SUSTAINED INJURIES. A POLICE REPORT WAS TAKEN. THE DEALER WAS CONTACTED BUT OFFERED NO ASSISTANCE. THE MANUFACTURER INFORMED HER THEY HAVE A BUYER FOR THE VEHICLE, AND THEY OFFERED NO FREE REMEDY. VEHICLE WAS TOTALED.*AK |
| 10174898 | CHEVROLET | BLAZER | 2001 | 2006-11-05 | DT*: THE CONTACT STATED WHILE DRIVING 55 MPH, THERE WAS A MOMENTARY LOSS OF VEHICLE CONTROL, THE VEHICLE STRUCK A NEARBY TREE STUMP, AND THE AIRBAGS DID NOT DEPLOY. THE CONTACT WAS WEARING A SEAT BELT, BUT NO INJURIES WERE SUSTAINED. THERE WAS MODERATE DAMAGE TO THE FRONT OF THE VEHICLE. THE POLICE WERE ALERTED, AND A REPORT WAS TAKEN. THE MANUFACTURER WAS ALERTED. |

| | | | | | |
|---|---|---|---|---|---|
| 10175892 | CHEVROLET | BLAZER | 2001 | 2001-12-04 | MY DAUGHTER WAS IN A CAR CRASH. UNFORTUNATELY MY DAUGHTER WAS AT FAULT. SHE WAS GOING 55 MPH AND HIT A CAR THAT WAS STOPPED AT A LIGHT. HER AIR BAG DID NOT DEPLOY. SHE HAS NECK AND BACK PAINS. *JB |
| 10184395 | CHEVROLET | BLAZER | 2001 | 2005-05-19 | A FRONTAL IMPACT OCCURRED AT 40 MPH AS ANOTHER MOTORIST PULLED OUT IN FRONT OF ME. THE AIR BAGS DID NOT DEPLOY.  THE FRONT DRIVER SEAT BELT DID NOT PROPERLY RESTRAIN ME AND I WAS FORCED INTO THE ROOF AT THE TRIM EDGE OF THE WINDSHIELD, SUSTAINING A MINOR SCALP LACERATION, CERVICAL DISC DAMAGE, AND A CONCUSSION.  THE VEHICLE WAS TOTALED BY NATIONWIDE INSURANCE. *JB |
| 10454988 | CHEVROLET | BLAZER | 2001 | 2012-04-06 | TL* THE CONTACT OWNS A 2001 CHEVROLET BLAZER. THE CONTACT STATED THAT WHILE DRIVING 40 MPH, THE CONTACT CRASHED INTO THE SIDE OF ANOTHER VEHICLE. THE CONTACT STATED THAT THE FORCE OF THE IMPACT CAUSED THE VEHICLE TO BOUNCE OFF THE SECOND VEHICLE. THE AIR BAGS DID NOT DEPLOY. THE PASSENGER SUSTAINED INJURIES TO THE LEFT ANKLE AND KNEES, AS WELL AS A BROKEN THUMB. THE CONTACT WAS TRANSPORTED TO THE HOSPITAL AS A PRECAUTIONARY MEASURE. THE VEHICLE WAS NOT INSPECTED FOR THE CAUSE OF FAILURE NOR REPAIRED. THE FAILURE AND THE CURRENT MILEAGES WERE 122,000. |
| 752662 | CHEVROLET | SILVERADO | 2001 | 2001-09-22 | CRASHED INTO  14FOOT UHAUL  GOING ABOUT 65MPH AIR BAGS NEVER WORKED. PLEASE ADVISE! *AK |
| 754465 | CHEVROLET | SILVERADO | 2001 | 2001-08-04 | A TWO IMPACT WRECK ,WITH THE SECOND AT 55 MPH HIT HEAD ON,NO AIRBAG OR ONSTAR DEPLOYMENT. *AK |
| 757639 | CHEVROLET | SILVERADO | 2001 | 2002-01-16 | DRIVER'S SIDE AIRBAG DID NOT DEPLOY DURING A FRONTAL IMPACT CRASH AT APPROXIMATELY 40 MPH.*AK |
| 765623 | CHEVROLET | SILVERADO | 2001 | 2002-07-24 | NO AIRBAGS DEPLOYED DURING FRONTAL COLLISION AT 40 MPH CRASH. OCCUPANT OF OTHER VEHICLE HAD TO BE EXTRACATED FROM HER VEHICLE AND LIFE FLIGHTED TO MEDICAL FACILITY.*AK |
| 894462 | CHEVROLET | SILVERADO | 2001 | 2001-08-04 | CONSUMER'S VEHICLE REAR ENDED A BIG WEIGHT TRUCK AT  APPORXIMATELY 65 MPH, AND NEITHER DRIVER'S SIDE NOR PASSENGER'S SIDE AIRBAGS DEPLOYED. DEALER  HAS BEEN EXAMINING THE VEHICLE.*AK |
| 896975 | CHEVROLET | SILVERADO | 2001 | 2001-09-22 | WHILE TRAVELING APPROXIMATELY 55 MPH,  VEHICLE REAR ENDED A U-HAUL TRUCK THAT WAS ALSO IN MOTION.  APPROXIMATELY $4600.00 DAMAGE WAS DONE TO THE FRONT END OF VEHICLE, AND AIR BAGS FAILED TO DEPLOY.  DEALERSHIP STATED THAT AIR BAGS FAILED TO DEPLOY BECAUSE BOTH VEHICLES WERE IN MOTION.  PLEASE PROVIDE ANY ADDITIONAL INFORMATION / ATTACHMENTS. *NOTE: DRIVER OF VEHICLE SUFFERED ARM, WRIST, AND LEG INJURIES.*AK |
| 899261 | CHEVROLET | SILVERADO | 2001 | 2001-10-11 | WHILE OPERATING VEHICLE IN WET ROAD CONDITIONS, AND TRAVELING APPROXIMATELY 50 TO 55 MPH VEHICLE HYDROPLANED AND CRASHED INTO A CEMENT BARRIER.  BOTH FRONTAL AIR BAGS FAILED TO DEPLOY.  NO EXAMINATION OF THE VEHICLE HAS TAKEN PLACE TO DETERMINE A CAUSE FOR THIS PROBLEM. *NOTE:  DRIVER RECEIVED SEVERE FACIAL INJURIES.  PLEASE PROVIDE ANY ADDITIONAL INFORMATION / DOCUMENTATION.  *AK |
| 8001948 | CHEVROLET | SILVERADO | 2001 | 2002-01-07 | VEHICLE WAS INVOLVED IN  20-25 MPH FRONTAL COLLISION IN WHICH DRIVERS AND PASSENGERS AIR BAGS DID NOT DEPLOY, CAUSE UNKNOWN, DEALER HAS BEEN NOTIFIED. *AK*SLC |
| 8002768 | CHEVROLET | SILVERADO | 2001 | 2002-01-16 | FRONTAL IMPACT AT 65MPH TOTALLED VEHICLE; UPON IMPACT, AIR BAGS DIDN'T DEPLOY. DELAER WAS NOTIFIED.*AK |
| 8004056 | CHEVROLET | SILVERADO | 2001 | 2002-02-05 | CONSUMER HAD A HEAD-ON COLLISION AT 55 MPH AND NEITHER AIRBAG DEPLOYED. DRIVER AND PASSENGER SUFFERED CHEST/NECK AND LEG INJURIES.  VEHICLE WAS TOTALLED.*AK  CONSUMER STATES THAT A PERSON FROM THE OTHER VEHICLE WAS KILLED IN THE ACCIDENT. *AK |
| 8004268 | CHEVROLET | SILVERADO | 2001 | 2002-02-17 | WHILE DRIVING AT 55 MPH  CONSUMER'S VEHICLE RAN INTO ANOTHER VEHICLE HEAD-ON, BUT NONE OF AIR BAGS DEPLOYED. HAS NOT CONTACTED DEALER.*AK |
| 8005327 | CHEVROLET | SILVERADO | 2001 | 2002-02-27 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION OF APPROXIMATELY  50 MPH, AND NEITHER FRONTAL AIR BAG DEPLOYED. DEALER / MANUFACURER WERE NOTIFIED. FEEL FREE TO PROVIDE ANY FURTHER INFORMATION.*AK |
| 8006559 | CHEVROLET | SILVERADO | 2001 | 2002-03-23 | CONSUMER STATES WHILE DRIVING 30-35 MPH WITHOUT WARNING OCCURRED IN A FRONTAL COLLISION THE AIR BAGS NOT DEPLOY CAUSING MINOR INJURIES.  NLM |
| 8009248 | CHEVROLET | SILVERADO | 2001 | 2002-03-06 | WHILE TRAVELING ON HIGWAY HIT ANOTHER VEHICLE/ VEHICLE IN ANOTHER LANDE TO OVOID CAR HE HIT AND RAN INTO MERIDIAN STRIP. UPON IMPACT, DUAL AIRBAGS DIDN'T DEPLOY. DEALERSHIP  WASAWARE OF PROBLEM.*AK |
| 8012069 | CHEVROLET | SILVERADO | 2001 | 2002-06-08 | WHILE DRIVING TRUCK AT 40 MPH  VEHICLE INVOLVED IN  A FRONTAL COLLISION  WITH ANOTHER SPEEDING VEHICLE.  UPON IMPACT, AIR BAGS FAILED TO DEPLOY.  TRUCK WAS TAKEN TO DEALERSHIP ,AND THEY INFORMED  OWNER THAT "THERE WAS NO REASON FOR AIR BAGS NOT TO DEPLOY".  PLEASE DESCRIBE DETAILS. *AK |
| 8012818 | CHEVROLET | SILVERADO | 2001 | 2002-06-08 | IN A FRONTAL COLLISON WHILE DRIVING AT 60MPH NONE OF THE AIR BAGS DEPLOYED. VEHICLE HAD  MAJOR DAMAGE. *AK |
| 8017140 | CHEVROLET | SILVERADO | 2001 | 2002-06-08 | IN A FRONTAL COLLISION NONE OF THE AIR BAGS DEPLOYED ON IMPACT, CAUSING INJURIES TO DRIVER.*AK. ALSO THE PASSENGER WAS INJURED.*JB |
| 10001355 | CHEVROLET | SILVERADO | 2001 | | CONSUMER STATES  WHILE DRIVING AT THE SPEED OF 45MPH WAS INVOLVED IN A FRONTAL COLLISION NEITHER AIR BAG DEPLOYED. DEALER HAS BEEN NOTIFIED. PLEASE PROVIDED ANY ADDITIONAL IN FORMATION. TS |

| 10001771 | CHEVROLET | SILVERADO | 2001 | | WHILE TRAVELING AT 65 MPH, CONSUMER STATES' ANOTHER DRIVER PULLED INFRONT AND CONSUMER HIT THAT VEHICLE ON ITS SIDE. NONE OF THE VEHICLES ARE BAGS DEPLOYED. CONSUMER FEELS THAT THIS COLLISION WAS A HARD IMPACT AND AIRBAGS SHOULD HAVE DEPLOYED. |
|---|---|---|---|---|---|
| 10006756 | CHEVROLET | SILVERADO | 2001 | 2003-01-30 | CONSUMER WAS  IN A ACCIDENT AND HIT A WALL AND THE AIR BAGS DIDN'T DEPLOY UPON CONTACT. *PH |
| 10020745 | CHEVROLET | SILVERADO | 2001 | 2003-05-23 | FRONTAL IMPACT ON FREEWAY AT 45 MPH CHEVROLET, SILVERADO 4X4 TOTALED.  AIRBAGS DID NOT DEPLOY UPON IMACT.*AK |
| 10024534 | CHEVROLET | SILVERADO | 2001 | 2002-03-12 | PROBLEM WITH AIRBAG SYSTEM ON 2001 CHEVROLET PICK UP TRUCK. *MR  THE VEHICLE COLLIDED WITH A MOVING ANIMAL AND THE AIRBAG(S) DIDN'T DEPLOY. (THE ANIMAL WAS ABOUT SIX HUNDRED POUNDS AND THE CONSUMER HAD DRIVEN THE VEHICLE AT A NORMAL SPEED) *SCC *JB |
| 10041290 | CHEVROLET | SILVERADO | 2001 | 2003-10-17 | A 2001 CHEVY SILVERADO WAS STRUCK ON THE SIDE AND SENT INTO A TREE AT BETWEEN 30-35 MPH.  THERE WAS SIGNIFICANT FRONT END DAMAGE AND THE AIR BAGS DID NOT DEPLOY.  *LA |
| 10042759 | CHEVROLET | SILVERADO | 2001 | 2000-12-31 | WHILE DRIVING AT 55 MPH CONSUMER LOST CONTROL OF VEHICLE WHILE TRAVELING UP A HILL, THEN VEHICLE STRUCK A WOODEN FENCE.  ONE BEAM OF THE FENCE CAME THROUGH THE WINDSHIELD, STRIKING THE CONSUMER IN THE HEAD, EVENTUALLY KILLING HIM.  ALSO, TWO PASSENGERS SUSTAINED INJURIES.  IN THE CONFUSION, CONSUMER DEPRESSED THE GAS PEDAL INSTEAD OF THE BRAKES AND STRUCK A FIRE HYDRANT.  ALL PASSENGERS AND THE CONSUMER, WERE WEARING SEAT BELTS.  HOWEVER, THE AIR BAGS DID NOT DEPLOY.  POLICE ARRIVED ON THE SCENE AND MADE A REPORT.  MANUFACTURER AND DEALER HAD BEEN NOTIFIED OF THE INCIDENT. *AK |
| 10059656 | CHEVROLET | SILVERADO | 2001 | 2001-12-19 | LAWYER REPRESENTING CONSUMER WHO WAS INJURED WHEN THE DRIVER'S SIDE AIRBAG FAILED TO DEPLOY. *LA  (LAWYER CLYDE JACKSON ON BEHALF OF CLIENT)* JB |
| 10072926 | CHEVROLET | SILVERADO | 2001 | 2001-12-19 | I WAS DRIVING EAST ON F.M. 356 AT ABOUT NOON. I WAS TRAVELLING ABOUT 50 MPH. A CAR TURNED IN FRONT OF ME AND I ATTEMPTED TO PASS THE CAR.  I WAS UNABLE TO DUE TO ONCOMING TRAFFIC, SO I QUICKLY RETURNED TO MY LANE.  ONE OF MY TIRES WENT OFF ONTO THE UNPAVED SHOULDER AND I WENT DOWN A SMALL EMBANKMENT.  IT WAS MUDDY SO I COULD NOT STOP.  I HIT A LARGE PINE TREE HEAD ON AND STOPPED.  BOTH OF US WERE WEARING OUR SEATBELTS.  MY AIRBAG FAILED TO DEPLOY CAUSING MY HEAD AND TORSO TO STRIKE THE STEERING WHEEL.  I SUFFERED 6TH NERVE PAULSEY AND AN ANUERISM DEVELOPED ON MY AORTA.  THE AORTA HAD TO BE SURGICALLY REPAIRED.  MY GRANDDAUGHTER'S AIRBAG HAD BEEN TURNED OFF DUE TO HER SMALL SIZE.  SHE SUFFERED A BROKEN LEG AND A SLIGHT CONCUSSION.  THE TRUCK WAS TOTALLED.  *AK |
| 10079979 | CHEVROLET | SILVERADO | 2001 | 2004-06-25 | WHILE DRIVING CONSUMER WAS TOWING A TRAILERTHE DRIVER'S SIDE REAR TIRE TREADS SEPARATED FROM THE TRAILER.  CONSUMER WAS NOT ABLE TO MAINTAIN CONTROL OF THE VEHICLE, AND COLLIDED INTO A CONCRETE BARRIER.  UPON IMPACT, BOTH FRONTAL AIR BAGS DID NOT DEPLOY.  PASSENGER SUSTAINED HEAD INJURIES, AND WAS TRANSPORTED TO A HOSPITAL BY AN AMBULANCE.  VEHICLE AND TRAILER WERE TOTALED. *AK *NM |
| 10103512 | CHEVROLET | SILVERADO | 2001 | 2004-12-05 | CONSUMER'S, VEHICLE WAS REAR ENDED WHILE DRIVING 50 MPH. THE VEHICLE WAS FORCE INTO A SPIN AND THEN, IT HIT A CONCRETE ROAD DIVIDER. UPON IMPACT, NEITHER FRONTAL AIR BAGS DEPLOYED.  DRIVER SUSTAINED INJURIES, AND HAD TO BE TRANSPORTED TO A LOCAL HOSPITAL. DEALER AND.  MANUFACTURER WERE  NOTIFIED.  *AK  THE CONSUMER STATED THAT THE SEAT BELT DID NOT KEEP HER FROM HITTING HER CHEST ON THE STEERING WHEEL. AFTER THE FRONT AND THE BACK OF THE VEHICLE HIT THE CONCRETE DIVIDER THE AIR BAGS DID NOT DEPLOY.  *TC |
| 10107706 | CHEVROLET | SILVERADO | 2001 | 2004-12-29 | AIR BAGS FAILED TO DEPLOY IN A 45 MPH FRONT END COLLISION ON MY 2001 CHEVROLET SILVERADO.  *NM |
| 10109017 | CHEVROLET | SILVERADO | 2001 | 2005-01-04 | WHILE TRAVELING AT 55 MPH  CONSUMER LEFT THE FREEWAY AND STRUCK A LARGE PILE OF DIRT. UPON IMPACT, THE AIR BAGS DID NOT DEPLOY. CONSUMER SUSTAINED HEAD  AND BACK INJURIES.  WAS TAKEN TO THE EMERGENCY ROOM.  THE VEHICLE WAS TOTALED.*AK  *AK |
| 10138394 | CHEVROLET | SILVERADO | 2001 | 2005-06-01 | THERE WAS AN ACCIDENT ON JUNE 1, 2005.  UPON IMPACT, THE DRIVER'S SIDE FRONTAL AIRBAG FAILED TO DEPLOY.  THE PASSENGER SIDE AIRBAG HAD BEEN TURNED OFF.  THE DRIVER SUSTAINED MINOR INJURIES.  THE CONSUMER REAR ENDED A TRAILER.   A POLICE REPORT WAS TAKEN.   NO AIRBAG WARNING LIGHT  CAME ON.*AK UPDATED 11/02/05. *JB |

| | | | | | |
|---|---|---|---|---|---|
| 10553271 | CHEVROLET | SILVERADO | 2001 | 2013-11-14 | MY FIANCE AND I WERE DRIVING HOME AND AS WE ENTERED TOWN GOING APPROXIMATELY 35-45 MPH THE VEHICLE SWERVED OFF THE ROAD AND COLLIDED INTO A TELEPHONE POLE BREAKING IT IN HALF CAUSING THE TOP HALF OF THE TELEPHONE POLE TO SWING DOWN AND SMACK ON THE WINDSHIELD. HE SMACKED HIS FACE OFF OF THE STEERING WHEEL AND I WAS LAYING DOWN ON THE SEAT AND ROLLED OFF AND BROKE THE ASHTRAY HOLDER WITH MY FACE. DURING THE IMPACT NOT A SINGLE AIRBAG DEPLOYED EVEN THOUGH THE AIRBAGS WERE ALL IN WORKING ORDER. THE IMPACT WAS SO SEVERE THAT THE TAILGATE OF THE TRUCK BENT OUTWARD, THE RADIATOR WAS RIPPED OUT FROM BENEATH THE VEHICLE AND THE FRONT PASSENGER SIDE WAS TOTALED. I WAS THEN PUT INTO A NECK BRACE, STRAPPED TO A GURNEY AND RUSHED TO THE HOSPITAL. I WILL REITERATE THE FACT THAT NONE OF THE AIRBAGS DEPLOYED CAUSING THE BOTH OF US TO BE INJURED. WE LUCKILY SURVIVED THE CRASH BUT HAD THE AIRBAGS DEPLOYED THE BOTH OF US WOULD HAVE SUFFERED MINIMAL INJURIES.  *TR |
| 10627738 | CHEVROLET | SILVERADO | 2001 | 2014-01-01 | I REAR ENDED SOMEONE GOING ABOUT 70 MPH AND MY AIR BAGS DID NOT DEPLOY.  *TR |
| 560449 | CHEVROLET | SUBURBAN | 2001 | | NO DEPLOYMENT OF THE AIR BAG DURING ACCIDENT CAUSING THE CONSUMER TO JAM HIS HAND ON THE STEERING WHEEL AND TO INJURE HIS BACK.  NLM |
| 747375 | CHEVROLET | SUBURBAN | 2001 | 2001-05-24 | FRONT AIRBAGS FAILED TO DEPLOY DURING A HEAD ON COLLISION AT 30 MPH.  FINAL DAMAGE ESTIMATE UNKOWN DUE TO PENDING SAFETY INVESTIGATION. *AK |
| 879983 | CHEVROLET | SUBURBAN | 2001 | 2000-12-27 | COSNUMER WAS DRIVING AT APPROXIMATELY 35-40 MPH, WENT OFF ROAD TO AVOID ONCOMING VEHICLE, RAN INTO DITCH HEAD ON, AND HIT A TREE. VEHICLE WAS TOTALED. UPON IMPACT, DUAL AIRBAGS DID NOT DEPLOY, CAUSING MINOR INJURIES. *AK |
| 8004064 | CHEVROLET | SUBURBAN | 2001 | 2002-02-05 | CONSUMER  HAD A FRONT COLLISION AT 35-40 MPH, AND NEITHER AIRBAG DEPLOYED. CONSUMER SUFFERED NECK/ BACK AND KNEE INJURIES. VEHICLE AT DEALERSHIP AT THIS TIME. PLEASE ADD FURTHER DETAILS.*AK |
| 8007135 | CHEVROLET | SUBURBAN | 2001 | 2001-11-26 | WHILE DRIVING AT 45 MPH CONSUMER T BONED ANOTHER VEHICLE, AND THEN SPUN OUT OF CONTROL, AND RAN INTO A DITCH.  UPON IMPACT, NONE OF THE AIR BAG DEPLOYED. CONTACTED DEALER, AND THE DEALER WAS NOT WILLING TO DO ANYTHING.  *AK  *YH |
| 8014347 | CHEVROLET | SUBURBAN | 2001 | 2002-07-10 | AT  45MPH VEHICLE CRASHED.  UPON IMPACT, AIRBAGS DID NOT DEPLOY. CAUSE UNKNOWN. DEALER NOTIFIED.*AK |
| 10017673 | CHEVROLET | SUBURBAN | 2001 | | THE VEHICLE WAS INVOLVED IN A FRONTAL COLLISION, AND THE NONE OF THE AIR BAGS DEPLOYED.    *JB |
| 10042734 | CHEVROLET | SUBURBAN | 2001 | 2003-09-27 | WHILE DRIVING 60 MPH VEHICLE WAS INVOLVED IN A HEAD ON COLLISION AND AIR BAGS DID NOT DEPLOY. *AK |
| 10046437 | CHEVROLET | SUBURBAN | 2001 | 2003-10-08 | WHILE DRIVING, ANOTHER MOTORIST FAILED TO STOP AT A RED LIGHT AND THE CONSUMER HIT HIM ON THE PASSENGER'S SIDE AND THE AIR BAGS DID NOT DEPLOY.  *AK  *SC   *JB |
| 10248294 | CHEVROLET | SUBURBAN | 2001 | 2008-11-06 | TL*THE CONTACT OWNS A 2001 CHEVROLET SUBURBAN.  ON NOVEMBER 6, 2008, THE CONTACT WAS INVOLVED IN A SERIOUS CRASH.  THE AIR BAGS FAILED TO DEPLOY AND THE ENTIRE FRONT END AND PASSENGER SIDE OF THE VEHICLE WERE DAMAGED.  THE VEHICLE WAS DESTROYED.  THE CONTACT HAS PICTURES AND A POLICE REPORT.  THERE WERE NO OTHER PASSENGERS IN THE VEHICLE AND THE CONTACT WAS WEARING HER SEAT BELT AT THE TIME.  THERE WAS NO MAINTENANCE PERFORMED ON THE AIR BAGS PRIOR TO THE CRASH.  THE SPEED WAS UNKNOWN. THE FAILURE MILEAGE WAS 100,000. |
| 10335493 | CHEVROLET | SUBURBAN | 2001 | 2010-05-18 | TL*THE CONTACT OWNS A 2001 CHEVROLET SUBURBAN. THE CONTACT STATED THAT ON MAY 18, 2010, WHILE DRIVING AT 45 MPH, THE VEHICLE COLLIDED WITH AN ONCOMING VEHICLE. THE AIR BAGS DID NOT DEPLOY. THE VEHICLE SUSTAINED EXTENSIVE DAMAGES AND WAS TOWED FROM THE SCENE. THE CONTACT AND PASSENGERS SUSTAINED INJURIES AND WERE TAKEN TO THE HOSPITAL. A POLICE REPORT WAS FILED. THE CONTACT HAD NOT CALLED THE DEALERSHIP OR THE MANUFACTURER AT THE TIME OF THE COMPLAINT. THE FAILURE AND CURRENT MILEAGES WERE APPROXIMATELY 105,000. |
| 10731769 | CHEVROLET | SUBURBAN | 2001 | 2015-06-15 | MY SON WAS DRIVING AND REAR ENDED A MAN GOING APPROXIMATELY 50 MPH.  THE FRONT END SUSTAINED A GREAT DEAL OF DAMAGE, INCLUDING, BUT NOT LIMITED TO, THE ENGINE BEING PUSHED BACK SEVERAL INCHES.  THE AIR BAGS DID NOT DEPLOY.  MY SON SUSTAINED MINOR WHIPLASH TYPE INJURIES TO HIS NECK AND BACK. |
| 10731772 | CHEVROLET | SUBURBAN | 2001 | 2015-06-18 | TL* THE CONTACT OWNED A 2001 CHEVROLET SUBURBAN. WHILE DRIVING AT 55 MPH UPHILL, THE CONTACT DEPRESSED THE BRAKE PEDAL AND THE VEHICLE HYDROPLANED. AS A RESULT, THE CONTACT CRASHED INTO THE REAR OF A PICK-UP TRUCK. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED. THERE WAS ONE INJURY THAT REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS DESTROYED AND TOWED TO AN INDEPENDENT MECHANIC. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 270,000. |
| 764291 | CHEVROLET | TAHOE | 2001 | 2002-07-10 | TAHOE WAS TRAVELING UPHILL ON PRIVATE GRAVEL DRIVE WHEN HIT BY TRUCK TRAVELING DOWNHILL AROUND BLIND CURVE.  TRUCK WAS TRAVELING AT BETWEEN 20 AND 25 MPH WHEN IT HIT TAHOE.  BOTH OF TRUCK'S AIRBAGS INFLATED.  MY AIRBAGS DID NOT INFLATE, AND I HIT THE STEERING WHEEL WITH MY STOMACH AND CHEST.*AK |

| | | | | |
|---|---|---|---|---|
| 766175 | CHEVROLET | TAHOE | 2001 | 2002-07-19 | HIT BY A RED LIGHT RUNNER (45/50MPH) ON DRIVER'S SIDE, HIT A SECOND CAR, THEN A CONCRETE POST HEAD ON. NOT ONE OF THE FOUR AIR BAGS ENGAGED AT ANYTIME. THE CAR WAS TOTALED. I HAVE DOCUMENTATION, PICTURES, POLICE REPORT, AND HAVE CONTACTED CHEVY, THEY HAVE NO CLEAR RESPONSE ON WHY? IF YOU WOULD LIKE MORE DETAIL ON INJURES OR HAVE ANY QUESTION PLEASE FILL FREE TO CONTACT ME. THANK YOU FOR YOUR TIME, DANIELLE HURST-STONE. *AK |
| 884576 | CHEVROLET | TAHOE | 2001 | 2001-03-21 | VEHICLE WAS INVOLVED IN AN ACCIDENT WHILE TRAVELING AT 50 MPH WHEN  VEHICLE T-BONED A VEHICLE CROSSING AN INTERSECTION.  AIRBAGS FAILED TO DEPLOY.  DEALERSHIP COULD NOT PROVIDE A REASON FOR FAILURE OF AIRBAGS TO DEPLOY. *AK  THE  MAUFACTURER INDICATED THAT THE VEHICLE SKIDDED 20 TO 25 FEET AFTER IMPACT AND THE AIR BAG FAILED TO DEPLOY FOR THIS REASON. THE CONSUMER DISAGREES. *YH |
| 899507 | CHEVROLET | TAHOE | 2001 | 2001-11-01 | DRIVER'S SIDE AND PASSENGER'S SIDE AIRBAGS FAILED TO DEPLOY IN A FRONT END COLLISION. DEALER HAS YET TO BE CONTACTED. PLEASE PROVIDE FURTHER DETAILS.*AK |
| 8000772 | CHEVROLET | TAHOE | 2001 | 2001-12-01 | DRIVER AND PASSENGER  FRONTAL AIRBAGS FAILED TO DEPLOY WHEN CONSUMER WAS INVOLVED IN A 40MPH FRONTAL COLLISION. DEALER HAS YET TO BE CONTACTED. PLEASE PROVIDE FURTHER DETAILS.*AK |
| 8017829 | CHEVROLET | TAHOE | 2001 | 2001-09-19 | WHILE TRAVELING ONTO AN INTERSECTION ANOTHER VEHICLE RAN THE RED LIGHT AND HIT CONSUMER'S VEHICLE. UPON IMPACT, DUAL AIRBAGS DIDN'T DEPLOY.DEALERSHIP WAS AWARE OF PROBLEM.*AK  *YH |
| 8018113 | CHEVROLET | TAHOE | 2001 | 2002-04-05 | WHILE TRAVELING AT 35 MPH CONSUMER WAS HIT HEAD-ON, AND VEHICLE ALMOST TIPPED OVER. UPON IMPACT, FRONT AIR BAGS FAILED TO DEPLOY. PLEASE PROVIDE ANY FURTHER INFORMATION.*AK |
| 10018205 | CHEVROLET | TAHOE | 2001 | 2003-05-05 | THE VEHICLE WAS INVOLVED IN A FRONTAL COLLISION, AND NONE OF THE AIR BAGS DEPLOYED. *NLM  *PH *JB |
| 10044753 | CHEVROLET | TAHOE | 2001 | 2003-10-12 | WHILE DRIVING 50 MPH, THE CONSUMER'S VEHICLE WAS INVOLVED IN A HEAD ON COLLISION. UPON IMPACT, THE AIRBAGS DID NOT DEPLOY. THE DRIVER SUSTAINED SEVERE HEAD INJURIES AND  WAS TAKEN TO A HOSPITAL. *AK *JB  *NM |
| 10046166 | CHEVROLET | TAHOE | 2001 | 2003-08-03 | WHILE DRIVING 40 MPH DRIVER HIT THE BRAKES SUDDENLY AND VEHICLE HIT THE CURB AND ROLLED TWICE. UPON IMPACT, AIRBAGS DID NOT DEPLOY. PEOPLE WERE EJECTED FROM THE VEHICLE. AS A RESULT,THEY DIED. *AK |
| 10066520 | CHEVROLET | TAHOE | 2001 | 2004-04-12 | FRONTAL AIRBAGS DID NOT DEPLOY IN COLLISION. *AK |
| 10072577 | CHEVROLET | TAHOE | 2001 | 2004-04-30 | I WAS DRIVING ON THE FREEWAY. THE CRUISE CONTROL WAS SET AT 70 MPH. IT WAS RAINING I WENT THROUGH A PUDDLE AND THE CAR HYDROPLANED AND HEADED TOWRD THE CONCRETE MEDIAN. IT WOULD NOT STRAIGHTEN AND I HIT THE MEDIAN HEAD ON. THE AIRBAGS DID NOT DEPLOY.*AK |
| 10148912 | CHEVROLET | TAHOE | 2001 | 2004-12-06 | HEAD-ON COLLISION AT 50 MPH AND AIRBAGS DID NOT INFLATE.*AK |
| 10197689 | CHEVROLET | TAHOE | 2001 | 2003-11-03 | DRIVING IN LARGE PARKING LOT APPROX 25 MPH, LIGHT POLE WITH CONCRETE BASE WAS IN BLIND SPOT AS I WAS TURNING.  HIT THE CONCRETE HEAD ON, $12,000 WORTH OF DAMAGE TO MY TRUCK, FRAME BENT, FRONT END REPLACED AND THE AIR BAGS FAILED TO DEPLOY. THE DEALER HAD NO EXPLANATION OTHER THAN THE DAMAGE MUST HAVE BEEN IN JUST THE WRONG SPOT.  I WENT TO THE HOSPITAL WITH HEAD AND NECK INJURIES.*JB |
| 10223626 | CHEVROLET | TAHOE | 2001 | 2008-03-28 | AIRBAGS FAILED TO DEPLOY IN HEAD-ON CRASH.  *TR |
| 10365882 | CHEVROLET | TAHOE | 2001 | 2010-11-12 | I WAS INVOLVED IN A COLLISION IN MY 2001 CHEVROLET TAHOE WHERE I REAR ENDED A CAR. MY VEHICLE WAS TRAVELING 54 MPH AND THE OTHER VEHICLE WAS SLOWING TO TURN WITHOUT BLINKERS OR BRAKE LIGHTS. MY AIRBAGS DID NOT DEPLOY. *TR |
| 10607227 | CHEVROLET | TAHOE | 2001 | 2007-07-04 | A VEHICLE PULLED IN FRONT OF US AND OUR VEHICLE T BONED THAT VEHICLE.  NONE OF AIR BAGS DEPLOYED.  WE WERE INJURED.  THAT PERSON'S INSURANCE COMPANY CONTACTED US THE DAY AFTER THE ACCIDENT AND QUESTIONED WHY THE AIR BAGS DID NOT COME OUT?  WE WANTED TO KNOW WHY ALSO.  *TR |
| 10783656 | CHEVROLET | TAHOE | 2001 | 2015-10-16 | THE VEHICLE AIRBAGS FAILED TO DEPLOY IN ACCIDENT WERE IT RECEIVED SEVERE FRONT END DAMAGE. |
| 10820375 | CHEVROLET | TAHOE | 2001 | 2014-01-18 | TL* THE CONTACT OWNS A 2001 CHEVROLET TAHOE. WHILE DRIVING AT 45 MPH, ANOTHER VEHICLE FAILED TO YIELD AND THE CONTACT CRASHED INTO THE DRIVER SIDE OF THAT VEHICLE. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT DID NOT SUSTAIN ANY INJURIES. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO AN AUTO BODY REPAIR CENTER FOR BODY REPAIRS, BUT WAS NOT DIAGNOSED FOR THE AIR BAG FAILURE. THREE YEARS LATER, WHILE DRIVING 25 MPH, THE CONTACT CRASHED INTO AN ANIMAL AND THEN INTO A GUARDRAIL. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED BACK INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO AN AUTO BODY REPAIR CENTER, BUT WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 120,000. THE VIN WAS UNAVAILABLE. |
| 891862 | CHEVROLET | TRACKER | 2001 | 2001-07-02 | WHILE TRAVELING  AT 45 TO 50 MPH ANOTHER  VEHICLE IN FRONT SLAMMED ON  VEHICLE'S BRAKES, AND CONSUMER'S VEHICLE REAR ENDED THE OTHER VEHICLE.  NONE OF AIRBAGS DEPLOYED, AND  DRIVERS SIDE SEATBELT FAILED TO LOCK. CONSUMER WAS INJURED BY STEERING WHEEL.  CONSUMER HAD VEHICLE TOWED TO DEALER. PLEASE PROVIDE ANY FURTHER INFORMATION.*AK |
| 8011220 | CHEVROLET | TRACKER | 2001 | 2002-05-28 | IN AN ACCIDENT, VEHICLE HIT A POLE AND UPON IMPACT AIRBAGS DID NOT DEPLOY, CAUSING MINOR INJURIES TO DRIVER.*AK  *YH |

| | | | | | |
|---|---|---|---|---|---|
| 10033620 | CHEVROLET | TRACKER | 2001 | 2003-08-11 | CONSUMER STATED WHILE DRIVING AT NORMAL SPEED AND WEARING SEAT BELT HAD A FRONT COLLISION ,AND NEITHER OF THE AIR BAGS DEPLOYED. NO WARNING LIGHT APPEARED PRIOR TO THE CRASH. POLICE REPORT AND PICTURES ARE AVAILABLE. *AK |
| 10033912 | CHEVROLET | TRACKER | 2001 | | WHILE DRIVING 50 MPH  DRIVER STRUCK A DEER HEAD ON.  UPON IMPACT,  DRIVER SIDE AIRBAG DIDN'T DEPLOY.  THE DRIVER SUSTAINED SLIGHT INJURIES FROM MAKING CONTACT WITH THE STEERING WHEEL. *AK |
| 10226797 | CHEVROLET | TRACKER | 2001 | 2008-04-17 | TL*THE CONTACT OWNS A 2001 CHEVROLET TRACKER.  WHILE DRIVING 40 MPH ON A MAJOR HIGHWAY, THE CONTACT CRASHED INTO ANOTHER VEHICLE THAT WAS STOPPED IN THE ROAD. THE AIR BAGS FAILED TO DEPLOY.  THE VEHICLE WAS DESTROYED.  THE CONTACT WAS INJURED AND TRANSPORTED TO THE HOSPITAL.  A POLICE REPORT WAS FILED.  THE CURRENT AND FAILURE MILEAGES WERE 130,000. |
| 10263033 | CHEVROLET | TRACKER | 2001 | 2009-02-01 | DRIVER OF VEHICLE WHILE TRAVELING 35 MPH HIT A FORD F150 THAT MADE A U-TURN FROM THE RIGHT SHOULDER OF THE ROAD. DRIVER DID NOT HAVE TIME TO HIT BRAKES. AIRBAG DID NOT DEPLOY. DRIVER WAS INJURED. *TR |
| 10298267 | CHEVROLET | TRACKER | 2001 | 2010-01-03 | AIRBAG DID NOT DEPLOY ON CHEVY TRACKER 2001 AFTER BEING REAR ENDED AT 100 MPH WHILE TRAVELING AT A SPEED OF 69 MPH AND HIT THE CENTER DIVIDER HEAD ON. *TR |
| 8014453 | CHEVROLET | TRAILBLAZER | 2001 | | AT A 25MPH VEHICLE CRASHED AND AIRBAGS DID NOT DEPLOY. CAUSE UNKNOWN DEALER NOTIFIED.*AK |
| 8018335 | CHEVROLET | TRAILBLAZER | 2001 | | WHILE DRIVING APPROXIMATELY 58 MPH IN RAINY WEATHER WITH A TRAILER ATTACHED, TRAILER STARTED TO FISHTAIL WHILE GOING DOWN HILL.  TRAILER HAD SWUNG AROUND AND BROKE FREE OF THE HITCH AND HIT THE SIDE OF TRUCK.  TRUCK GRAZED AN ENBANKMENT, AND WENT INTO THE MEDIUM STRIP, HITTING ANOTHER VEHICLE HEAD ON.  VEHICLE WAS TOTALED, AND DRIVER SUFFERED A HEAD INJURY AND FRACTURED VERTEBRATE.  NEITHER AIR BAG DEPLOYED UPON THE FRONTAL IMPACT.  PLEASE DESCRIBE DETAILS. *AK |
| 566304 | GMC | YUKON | 2001 | | THE VEHICLE HAS BEEN INVOLVED IN TWO ACCIDENTS IN WHICH NEITHER TIME DID THE AIR BAGS DEPLOY,DURING ONE ACCIDENT THE CONSUMER SAYS SHE ALSO DOESNT REMEMBER THE SEAT BELT TIGHTENING CAUSING HER TO STRICK HER HEAD ON THE STEERING WHEEL AND KNEES TO HIT THE DASH. *MJ |
| 878870 | GMC | YUKON | 2001 | 2000-12-23 | VEHICLE INVOLVED IN A FRONTAL COLLISION AT APPROXIMATELY 75 MPH WITH A FORD ESCORT. UPON IMPACT,  BOTH AIR BAGS DID NOT DEPLOY. PASSENGER SUSTAINED A BACK INJURY, AND DRIVER RECEIVED BRUISES  TO  NECK AND HEAD. DEALER NOTIFIED.  FEEL FREE TO PROVIDE ANY FURTHER DETAILS ON THIS MATTER.  *AK |
| 883017 | GMC | YUKON | 2001 | 2000-10-17 | VEHICLE INVOLVED IN A FRONTAL COLLISION WITH A DODGE, NEON , SPEED WAS UNDETERMINED. UPON IMPACT,  BOTH AIR BAGS DID NOT DEPLOY.  DEALER / MANUFACTURER NOTIFIED, AND NO RESPONSE WAS RECEIVED. PLEASE FEEL FREE TO PROVIDE ANY FURTHER DETAILS ON THIS MATTER. *AK |
| 6900594 | GMC | YUKON | 2001 | 2001-09-18 | WHILE DRIVING VEHICLE WAS INVOLVED IN AN ACCIDENT, AIR BAGS DID NOT DEPLOY.  *AK THE CONSUMER STATED THAT THE VEHICLE WAS HIT VERY HARD. THE IMPACT DAMAGED THE INSTRUMENT PANEL, BROKE THE WINDSHIELD, AND THE FRONT AND REAR PASSENGER DOORS NEEDED REPAIR.  *YH |
| 8004110 | GMC | YUKON | 2001 | | CONSUMER WAS INVOLVED IN A FRONT END COLLISION AT 70MPH, AND FRONTAL  AIR BAGS DID NOT TO DEPLOY. PASSENGER SUSTAINED  MAJOR BODY INJURIES.*AK |
| 8004365 | GMC | YUKON | 2001 | 2001-12-04 | WHILE DRIVING 2 MPH VEHICLE WAS STRUCK ON DRIVER'S DOOR,  CAUSING EXTENSIVE DAMAGE TO FRONT END AS WELL. NEITHER AIRBAG DEPLOYED. CONSUMER SUFFERED HEAD INJURIES. DAMAGE TO VEHICLE WAS $ 10000.00. PRIOR TO THIS. CONSUMER OWNED ANOTHER VEHICLE JUST LIKE THIS ONE.  IT ALSO HAD A FRONT CRASH AND AIRBAGS DID NOT DEPLOY. *AK |
| 8006721 | GMC | YUKON | 2001 | 2002-03-30 | WHILE TURNING LEFT AT 15 MPH\  ANOTHER VEHICLE TRAVELING AT 45 HIT CONSUMER'S VEHICLE ON FRONT DRIVER'S SIDE .  UPON IMPACT, AIRBAGS DID NOT  DEPLOY.  PLEASE PROVIDE ANY FURTHER INFORMATION.*AK |
| 10099161 | GMC | YUKON | 2001 | 2004-11-01 | THE CONSUMER WAS APPROACHING AN INTERSECTION AND WITHOUT WARNING,  ANOTHER DRIVER CUT IN FRONT OF THE CONSUMER VEHILCE. THE DRIVER APPLIED THE BRAKES, BUT THE PEDAL WENT TO THE FLOOR.  THIS CAUSED THE OTHER VEHICLE TO COLLIDE INTO ON THE PASSENGER 'S SIDE AND PUSHED THE VEHICLE INTO A TREE.  BOTH FRONTAL AIR BAGS DID NOT DEPLOY.  THE DRIVER SUSTAINED INJURIES AND WAS TRANSPORTED BY AMBULANCE TO THE HOSPITAL. THE VEHICLE WAS TOWED TO THE DEALER.  PLEASE FILL IN ADDITIONAL INFORMATION. *JB |
| 10187683 | GMC | YUKON | 2001 | 2007-03-29 | TL* - THE CONTACT OWNS A 2001 GMC YUKON WITH A CURRENT AND FAILURE MILEAGE OF 110,000 MILES.  THE CONTACT'S VEHICLE WAS INVOLVED IN A CRASH WHILE DRIVING AT 35 MPH, AND THE AIR BAGS DID NOT DEPLOY.  THE CRASH TOOK PLACE ON A DRY DAY.  THE DRIVER BEGAN CHOKING AND PASSED OUT.  THE VEHICLE THEN RAN INTO THE BACK OF A TRUCK SITTING AT A STOP LIGHT.  THE FRONT OF THE CONTACTS VEHICLE WAS DAMAGED.  THE VEHICLE WAS TOWED TO DEALER.  *AK |
| 10587988 | GMC | YUKON | 2001 | 2011-05-04 | LETTER FROM SENATOR SCOTT ON BEHALF OF CONSTITUENT RE GMC YUKON. *SMD  THE CONSUMERS HUSBAND WAS KILLED IN AN ACCIDENT, AND THE AIR BAG DID NOT DEPLOY. *JB |

| | | | | | |
|---|---|---|---|---|---|
| 10706540 | GMC | YUKON XL | 2001 | 2014-10-17 | INITIALLY TRAVELING AT 75 MPH N/B ON HWY 99 IN FRESNO COUNTY, LOST VISION (MEDICAL INCIDENT), WIFE INSISTED I PULL OVER. STRUCK GUARD RAIL ON RIGHT SIDE OF ROAD. SECOND TRY TO PULL OVER CAUSED MY VEHICLE TO IMPACT A VERIZON JUNCTION BOX AND THEN150 FEET OF SIX-FOOT CHAIN-LINK FENCING WITH ANTI-CLIMB GUARDS THAT CAME OFF THE FENCE AND SHATTERED THE WINDSHIELD. THE AIR BAGS DID NOT DEPLOY. MY INSURANCE AGENT TOLD ME HE WAS GOING TO REPORT THIS INCIDENT TO YOU, BUT SINCE I HAVEN'T HEARD ANYTHING FROM YOU FOLK I'VE ASSUMED MY AGENT DID NOT FOLLOW THROUGH.    MY WIFE AND I SUSTAINED ONLY MINOR INJURIES FROM FLYING GLASS.  WE HAVE PHOTO'S OF THE VEHICLE.  *TR |
| 10127108 | ISUZU | RODEO | 2001 | 2005-06-30 | DT: THERE WAS AN ACCIDENT. AND NO AIRBAGS DEPLOYED. THE CAR WAS EQUIPPED WITH FRONT AIR BAGS. THERE WAS NO WARNING LIGHTS ON TO INDICATE A PROBLEM. LAST TIME THE CAR WAS CHECKED THERE WAS NO INDICATION OF A PROBLEM. THE DRIVER WAS THE ONLY PERSON INJURED WITH A TOOTH KNOCKED OUT.*AK |
| 10155648 | ISUZU | RODEO | 2001 | 2006-03-11 | I HAD A BLOW OUT ON MY 2001 ISUZU RODEO, CAUSING MY VEHICLE TO GO OFF THE ROAD TO THE RIGHT RUNNING INTO ANOTHER VEHICLE. THE SEAT BELT CAME OFF, THE AIRBAGS DID NOT WORK. I SUSTAINED HEAD INJURIES CAUSING SEIZURES, A DISPLAYED SHOULDER, AND A FRACTURED JAW. DUE TO THE HEAD INJURIES I WAS UNCONSCIOUS AND UNABLE TO KEEP CONTROL OF THE VEHICLE. *NM |
| 10196817 | ISUZU | RODEO | 2001 | 2007-07-12 | TL*THE CONTACT OWNS A 2001 ISUZU RODEO. WHILE DRIVING 65 MPH WITH THE CRUISE CONTROL ACTIVATED, THE CONTACT WAS INVOLVED IN A HIGH IMPACT VEHICLE CRASH. THE MEDIAN ON THE HIGHWAY SUSTAINED PROPERTY DAMAGE. THE VEHICLE WAS DESTROYED. THE AIR BAGS FAILED TO DEPLOY. THE DEALER HAS NOT BEEN NOTIFIED. THE CONTACT SUSTAINED MODERATE INJURIES TO HIS NECK AND SHOULDERS. A POLICE REPORT WAS FILED. THE CURRENT AND FAILURE MILEAGES WERE 97,000. THE CONSUMER PROVIDED PICTURES OF THE VEHICLE. UPDATED 09/06/07 *TR |
| 10569283 | ISUZU | RODEO | 2001 | 2014-03-13 | I WAS TURNING ONTO A STREET. THE STREET WAS COVERED IN OIL OR SOME TYPE OF SLICK ELEMENT. I SKIDDED AND FELL INTO A DITCH. MY AIRBAG DID NOT DEPLOY. *TR |
| 10001710 | CADILLAC | ESCALADE | 2000 | 2002-12-05 | WHILE DRIVING AT 30 MPH VEHICLE WAS INVOLVED IN A HEAD ON COLLISION AND AIRBAGS DID NOT DEPLOY. DEALER CONTACTED. PLEASE PROVIDE ADDITIONAL INFORMATION. TS |
| 10004423 | CADILLAC | ESCALADE | 2000 | 2002-12-11 | THE CONSUMER HAD AN ACCIDENT THE AIR BAG DIDN'T DEPLOY. *DT |
| 859836 | CHEVROLET | ASTRO | 2000 | 2000-04-04 | CONSUMER WAS TRAVELING 30MPH WHILE IT WAS RAINING THAT EVENING, AND THERE WAS A SCHOOL BUS IN FRONT OF CONSUMER'S VEHICLE. CONSUMER APPLIED  BRAKES AND HIT THE SCHOOL BUS FROM BEHIND. THE COLLISION IMPACT WAS SO HARD THAT VEHICLE MOVED THE SCHOOL BUS.  ALSO, THE DUAL AIRBAGS DIDN'T DEPLOY AT ALL.  *AK |
| 870742 | CHEVROLET | ASTRO | 2000 | 2000-09-01 | WHILE DRIVING 55 MPH AND MAKING A TURN HAD A FRONTAL IMPACT.  FRONT BUMPER WAS SMASHED AND FELL OFF. ALSO,  DRIVER'S AND PASSENGER'S AIRBAGS DID NOT DEPLOY, WHICH DID NOT PROTECT  OCCUPANTS IN THIS CRASH.  DEALER WAS NOT WILLING TO ASSIST CONSUMER.  PLEASE PROVIDE FURTHER INFORMATION.*AK |
| 878344 | CHEVROLET | ASTRO | 2000 | 2001-01-17 | WHILE DRIVING ABOUT 30 MPH CRASHED INTO  ANOTHER VEHICLE THAT CROSSED IN FRONT. UPON IMPACT, BOTH AIR BAGS FAILED TO DEPLOY. CURRENTLY, COMPANY WAS CONCERNED ABOUT  PROBLEM WITH  AIR BAGS.  *AK |
| 879113 | CHEVROLET | ASTRO | 2000 | 2000-12-11 | A FRONTAL COLLISION AT 20 MPH IMPACT WITH A TREE, AND  BOTH AIR BAGS DID NOT DEPLOY. DRIVER  SUSTAINED CHEST INJURY.  VEHICLE AT BODY SHOP.  PLEASE FEEL FREE TO PROVIDE ANY FURTHER DETAILS ON THIS MATTER.  *AK |
| 882467 | CHEVROLET | ASTRO | 2000 | | CONSUMER WAS INVOLVED IN A FRONTAL COLLISION IN WHICH  DRIVER'S AND PASSENGER'S AIR BAGS DID NOT DEPLOY.  PLEASE GIVE ANY FURTHER DETAILS.*AK |
| 8000775 | CHEVROLET | ASTRO | 2000 | 2001-12-12 | WHILE TRAVELING AT 65 MPH, CONSUMER RAN INTO THE SIDE OF ANOTHER VEHICLE, HEAD-ON, UPON IMPACT NEITHER AIR BAG DEPLOYED. CONSUMER CONTACTED DEALER, AND THEY WERE NOT WILLING TO DO ANYTHING. *AK *JG |
| 8001716 | CHEVROLET | ASTRO | 2000 | 2002-01-01 | CONSUMER HAD A HEAD ON COLLISION AND AIR BAGS DID NOT DEPLOY.  CONSUMER WAS INJURED. *AK *JB |
| 8022460 | CHEVROLET | ASTRO | 2000 | 2002-11-07 | CONSUMER STATES THAT WHILE ON AN EXPRESS WAY, CONSUMER REAR ENDED A TANKER TRUCK. CONSUMERS VEHICLE WAS TOTALLED.  CONSUMER  STATES' NONE OF THE VEHICLES AIRBAGS DEPLOYED. PLEASE PROVIDE ANY FURTHER INFORMATION.    TS |
| 10051329 | CHEVROLET | ASTRO | 2000 | 2003-12-16 | CHECY ASTRO CARGO VAN 2000, FRONTAL COLLISION RESULTING IN TOTAL LOSS BY INSURANCE CARRIER. NEITHER FRONT AIR BAG OPERATED. |
| 736342 | CHEVROLET | BLAZER | 2000 | 2000-07-21 | IN A HEAD-ON COLLISION WITH A GUARDRAIL, BOTH FRONT AIR BAGS FAILED TO DEPLOY.*AK |
| 877186 | CHEVROLET | BLAZER | 2000 | | CONSUMER WAS DRIVING AT APPROXIMATELY 30-35 MPH, AND TO AVOID A CRASH CONSUMER RAN INTO A TREE HEAD-ON. UPON IMPACT,  DUAL AIRBAGS DID NOT DEPLOY, CAUSING INJURIES.*AK |
| 8013283 | CHEVROLET | BLAZER | 2000 | 2002-07-02 | CONSUMER STATES AT A 25MPH VEHICLE CRASHED, HOWEVER THE AIRBAGS DID NOT DEPLOY. CAUSE UNKNOWN. DEALER NOTIFIED.*JB  CONSUMER ADDS VEHICLE WAS STRUCK HEAD ON BY AN OUT OF CONTROL VEHICLE TRAVELING 45 MILES.  THE RIGHT FRONT FENDER CONTACTED SQUARELY AGAINST CONSUMERS FRONT BUMPER.  RESULTING IMPACT TOTALLED CONSUMERS BLAZER.  INSPECTORS WERE AMAZED THAT AIR BAGS DID NOT DEPLOY.  *TT |
| 8014195 | CHEVROLET | BLAZER | 2000 | | WHILE DRIVING 25-30 MPH AND WITHOUT WARNING INVOLVED IN A HEAD-ON COLLISION. UPON IMPACT, AIR BAGS DID NOT DEPLOY. DEALER HAS BEEN NOTIFIED.*AK THERE WERE 2 INJURIES. *YH |

| | | | | | |
|---|---|---|---|---|---|
| 8015817 | CHEVROLET | BLAZER | 2000 | | WHILE DRIVING 25 MPH AND WITHOUT WARNING A HEAD ON COLLISION OCCURRED. UPON IMPACT, AIR BAGS DID NOT DEPLOY, AND DRIVER SUSTAINED MINOR INJURIES. *AK |
| 8022825 | CHEVROLET | BLAZER | 2000 | 2002-11-01 | FRONT CRASH AT 40 MPH, VEHICLE HIT A TREE. NEITHER AIRBAG DEPLOYED, DRIVER SUFFERED MINOR INJURIES. AMOUNT OF DAMAGE UNKNOWN AT THIS TIME. TS |
| 10006273 | CHEVROLET | BLAZER | 2000 | 2003-02-01 | VEHICLE WAS IN A FRONTAL COLLISION, BUT NONE OF THE AIRBAG DEPLOYED UPON IMPACT. THE DRIVER SUSTAINED HEAD,NECK AND BACK INJURIES. PLEASE PROVIDE MORE DETAILS. |
| 10014969 | CHEVROLET | BLAZER | 2000 | 2003-03-15 | THE VEHICLE WAS INVOLVED IN A FRONTAL ACCIDENT, AND NONE OF THE AIR BAGS DEPLOYED. *JB |
| 10015762 | CHEVROLET | BLAZER | 2000 | 2003-04-12 | WHILE DRIVING 45 MPH THE VEHICLE WAS INVOLVED IN A COLLISION BUT THE AIR BAGS DID NOT DEPLOY. *NLM |
| 10016961 | CHEVROLET | BLAZER | 2000 | 2003-04-08 | HEAD ON COLLISION WITH SOLID CEMENT BRIDGE AT 40+ MPH. AIRBAGS DID NOT DEPLOY, SEAT BELTS DID NOT LOCK IN PLACE ON IMPACT NOR DURING ROLL-OVER ON MY 2000 CHEVY BLAZER. *JB |
| 10059300 | CHEVROLET | BLAZER | 2000 | 2004-02-07 | WHILE DRIVING 45 MPH THE DRIVER DROVE OVER SOME BLACK ICE AND LOST CONTROL OF THE VEHICLE. THE VEHICLE RAN INTO AN EMBANKMENT HEAD ON. THE CONSUMER STATED THAT NEITHER OF THE FRONTAL AIR BAGS DEPLOYED. THE CONSUMER CONTACTED THE DEALER. *NM |
| 10106730 | CHEVROLET | BLAZER | 2000 | 2004-12-14 | WHILE DRIVING 55 MPH THE CONSUMER WAS INVOLVED IN FRONTAL COLLISION. UPON IMPACT, THE AIR BAGS DID NOT DEPLOY. THE DRIVER SUSTAINED MAJOR NECK, BACK , AND HIP INJURIES. THE VEHICLE WAS TOTALED. *AK. (SEE ALSO ODI REF. NO. 10106755 - SAME VEHICLE) *MJJ . *TC |
| 10108627 | CHEVROLET | BLAZER | 2000 | 2005-01-18 | THE TRUCK SLID ON A PATCH OF ICE 100 YARDS AFTER MERGING ONTO THE INNER STATE. THIS RESULTED IN THE CONSUMER LOSING CONTROL OF THE TRUCK. THE TRUCK FRONT DRIVER SIDE IMPACTED A CONCRETE BRIDGE; THEN SWUNG AROUND;THE REAR DRIVER SIDE HIT THE BRIDGE; THIS THREW THE TRUCK INTO THE RIGHT HAND LANE, INTO THE GUARD RAIL , IMPACTING THE FRONT PASSENGER SIDE; THEN THE TRUCK BOUNCED TO THE LEFT HAND LANE AND IMPACTED THE GUARD RAIL HEAD ON. NONE OF THE AIR BAGS DEPLOYED UPON IMPACT. THE DRIVER SUSTAINED SEVERE INJURIES TO THEIR NECK, BACK, AND LEFT SHOULDER. *NM |
| 10132243 | CHEVROLET | BLAZER | 2000 | 2005-08-06 | T-BONE COLLISION, APPROXIMATELY 45 MPH. FRONT END OF VEHICLE BADLY DAMAGED, NO AIRBAG DEPLOYMENT. *NM |
| 10226626 | CHEVROLET | BLAZER | 2000 | 2008-04-30 | THE CONTACT'S SPOUSE OWNS THE 2000 CHEVROLET BLAZER. THE CONTRACT STATE THAT THIS DAUGHTER WAS DRIVING APPROXIMATELY 30 MPH, THEN SHE HIT A DIVIDER AND THE VEHICLE ROLLED OVER SEVERAL TIMES LANDING ON THE DRIVERS SIDE OF THE VEHICLE. NEITHER AIR BAR DEPLOYED. THE DRIVER WAS INJURIES AND THE VEHICLE WAS TOTALED BY THE INSURANCE COMPANY. THE CURRENT AND FAILURE MILEAGE IS 85210. JP |
| 10609197 | CHEVROLET | BLAZER | 2000 | 2013-07-10 | HAD A FRONT END COLLISION. THE FRONT END WAS DESTROYED. NO AIR BAGS WENT OFF. BOTH VEHICLES CAME OFF A RED LIGHT, ALL VEHICLES STOPPED SUDDENLY AND MY TRUCK REAR ENDED A TOYOTA PICKUP. *TR |
| 10693647 | CHEVROLET | BLAZER | 2000 | 2015-01-31 | TL* THE CONTACT OWNED A 2000 CHEVROLET BLAZER. WHILE DRIVING AT APPROXIMATELY 45 MPH, THE VEHICLE CRASHED HEAD ON INTO ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED AND NO INJURIES WERE REPORTED. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 120,650. |
| 731125 | CHEVROLET | SILVERADO | 2000 | 1999-10-23 | A CAR ATTEMPTED TO TURN IN FRONT OF US, HE DID NOT MAKE IT. WE WERE TRAVELING BETWEEN 38-40 MPH WHEN WE HIT THE OTHER VEHICLE HEAD ON. AIRBAGS DID NOT DEPLOY ON EITHER SIDE OF THE VEHICLE. THE TRUCK WAS TOTAL LOSS. THE OTHER PARTY'S VEHICLE ALSO WAS A. *AK |
| 734605 | CHEVROLET | SILVERADO | 2000 | 2000-09-19 | I CONTACTED SARAH SCHILLE OF GENERAL MOTORS ABOUT THIS FAILURE.SHE SENT AN INVESTIGATOR TO TOM BENSON TO LOOK AT THE TRUCK. HE DID WHATEVER HE DOES TO COLLECT DATA FROM THE VEHICLE AND THEN TAKES PICTURES ETC. AND SENDS ALL OF THE INFORMATION TO GM FOR EVALUATION. I FEEL THIS ACCIDENT WAS SEVERE ENOUGH FOR THE AIRBAGS DEPLOY AND I'M NOT SATISFIED AT ALL WITH GM'S RESPONSE TO THE SITUATION. I REQUESTED THE REPORT AND A COPY OF THE DEPLOYMENT CRITERIA WAS TOLD THAT INFORMATION WILL NOT BE SUPPLIED. HOW AM I TO KNOW IF THIS IS A FAILURE OR NOT. THIS INFORMATION SHOULD NOT BE PRIVATE TO THE MANUFACTURER ONLY. I WANT SOMEONE TO LOOK INTO THIS PROBLEM. |
| 739117 | CHEVROLET | SILVERADO | 2000 | 2001-01-02 | HIT A GUARD RAIL HEAD ON, WENT OVER IT AND NOSE DIVED INTO A 10FT. DEEP DITCH, FLIPPING ONTO THE ROOF. NEITHER AIRBAG DEPLOYED AFTER HITTING THE FRONT END TWICE. *AK |
| 745943 | CHEVROLET | SILVERADO | 2000 | 2001-05-19 | MY 2000 CHEVROLET SILVERADO TRUCK WAS INVOLVED IN A HEAD-ON COLLISION ON MAY 19, 01. VEHICHLE WAS TRAVELING AT APPROXIMATELY 40 MPH. WHEN VEHICHLE WAS STRUCK HEAD-ON AND KNOCKED APPROXIMATELY 23 FT. BACKWARDS ONTO THE SHOULDER OF ROADWAY. UPON IMPACT DRIVER SIDE AIRBAG DID NOT DEPLOY. DRIVER OF TRUCK RECIEVED CONTUSIONS, ABRASIONS, AND BRUISING RESULTING FROM CONTACT WITH STEERING COLUMN AND DASH PANEL. BOTH VEHICHLES INVOLVED IN CRASH WERE DETERMINED TO BE TOTAL LOSSES.*AK |

| | | | | |
|---|---|---|---|---|
| 766686 | CHEVROLET | SILVERADO | 2000 | 2002-08-13 | THE 2000 CHEVROLET SILVERADO CRASHED HEAD ON INTO A TREE, THE AIRBAGS DID NOT DEPLOY. THE DRIVER, DAKOTA KANETZKY, HAD NUMEROUS FACIAL FRACTURES CAUSED WHEN HIS HEAD HIT AND CRACKED THE WINDSHIELD. HE WAS HOSPITALIZED FOR 5 DAYS AND IS STILL UNDER A DOCTOR'S CARE.*AK |
| 767253 | CHEVROLET | SILVERADO | 2000 | | AIR BAGS DID NOT DEPLOY ON RIGHT FRONT COLLISION WITH CONCRETE WALL. *AK |
| 860353 | CHEVROLET | SILVERADO | 2000 | 2000-01-19 | HEADING SOUTH ON HIGHWAY US 1, TRAVELING 55MPH WITH CRUISE CONTROL ON, ANOTHER VEHICLE COMING NORTH TURNED IN FRONT, AND CONSUMER HIT VEHICLE ON THE SIDE, UPON IMPACT, DRIVER'S SIDE AIRBAG DID NOT DEPLOY. CONTACTED DEALER, AND HE WAS NOT ABLE TO HELP. *AK |
| 871368 | CHEVROLET | SILVERADO | 2000 | 2000-09-08 | DRIVER HAD LOST CONTROL OF VEHICLE  HIT A TELEPHONE POLE HEAD-ON WITH A 50-65 MPH IMPACT, AND THEN DROVE INTO A FIELD . UPON IMPACT, DUAL AIRBAGS DID NOT DEPLOY, BUT SEATBELTS  WERE ON AT THE TIME. AS A RESULT, PASSENGER HAD CRACKED STERNUM,AND DRIVER HAD MILD WHIPLASH.PLEASE PROVIDE FURTHER INFORMATION. *AK |
| 872110 | CHEVROLET | SILVERADO | 2000 | | CONSUMER WAS INVOLVED IN 55  MPH FRONTAL COLLISION IN WHICH  DRIVER'S AND PASSENGER'S AIR BAGS DID NOT DEPLOY. ALSO,  FRONT END  WAS HEAVILY DAMAGED. PLEASE GIVE ANY FURTHER DETAILS.*AK |
| 872528 | CHEVROLET | SILVERADO | 2000 | 2000-04-29 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION WITH A TREE AT 20 MPH, AND BOTH AIR BAGS DID NOT DEPLOY. DEALER/MANUFACTURER WERE NOT NOTIFIED AT THIS TIME. PLEASE FEEL FREE TO PROVIDE ANY FURTHER DETAILS. *AK |
| 878288 | CHEVROLET | SILVERADO | 2000 | | WHILE TRAVELING AT, SPEED 45 MPH WHEN REAR ENDED ANOTHER VEHICLE. UPON IMPACT, DRIVER'S  AIR BAG DID NOT DEPLOY. *AK |
| 886000 | CHEVROLET | SILVERADO | 2000 | 2001-04-08 | CONSUMER WAS TRAVELING AT APPROXIMATELY 60 MPH WHEN A TRAFFIC JAM AHEAD OF HIM OCCURRED.  CONSUMER APPLIED BRAKES AND ATTEMPTED TO SLOW DOWN.  BRAKES FAILED TO SLOW VEHICLE DOWN, AND  REAR ENDED A VEHICLE IN FRONT OF HIM ON  FRONT DRIVERS SIDE OF  VEHICLE.  BOTH FRONTAL AIRBAGS FAILED TO DEPLOY.  PLEASE PROVIDE ANY ADDITIONAL INFORMATION/ATTACHMENTS.*AK |
| 887723 | CHEVROLET | SILVERADO | 2000 | 2001-04-23 | WAS TRAVELING 60MPH AND  LOST CONTROL OF VEHICLE DUE TO ITS DRIFTING. IT WENT SIDEWAYS  AND OFF THE ROAD. THEN, VEHICLE WENT AIR BORNE AFTER STRADDLING, DRIVEWAY WAS OF CONCRETE TILE. LANDED ON BUMPER, THEN FLIPPED ON  TOP. AIR BAGS FAILED TO DEPLOY. DRIVER SUFFERED INJURIES AND WAS HOSPITALIZED.*AK |
| 891918 | CHEVROLET | SILVERADO | 2000 | 2001-06-13 | WHILE TRAVELING AT APPROXIMATELY 45 TO 50 MPH VEHICLE IMPACTED ANOTHER VEHICLE, CAUSING $11,000 WORTH OF DAMAGE TO  FRONT OF TRUCK.  UPON IMPACT, DRIVER'S AIR BAG FAILED TO DEPLOY WHILE  PASSENGER'S AIR BAG WAS TURNED OFF.  INSURANCE COMPANY  WAS HAVING VEHICLE REPAIRED.  PLEASE PROVIDE ANY ADDITIONAL INFORMATION/ATTACHMENTS. *DRIVER EXPERIENCED NECK INJURIES  AND STIFF NECK.*AK |
| 892771 | CHEVROLET | SILVERADO | 2000 | 2001-06-28 | HEAD COLLISION AT 60-65MPH, AND  AIR BAGS DID NOT DEPLOY. THERE WAS NO PRIOR WARNING. CONTACTED MANUFACTURER,  AND  MANUFACTURER WAS NOT WILLING TO DO ANYTHING.*AK |
| 893040 | CHEVROLET | SILVERADO | 2000 | 2001-06-25 | WHILE DRIVING 30 TO 35 MPH  HAD A CRASH, AND AIRBAGS DID NOT DEPLOY. DAMAGED FRONT END OF TRUCK. CONTACTED DEALER. *AK |
| 895573 | CHEVROLET | SILVERADO | 2000 | 2001-08-29 | CONSUMER WAS TRAVELING ABOUT 40MPH ON  HIGHWAY AND THERE WAS OIL ON  HIGHWAY. CONSUMER  LOST CONTROL OF THE VEHICLE, AND IT HIT A GUARDRAIL. UPON IMPACT,  DRIVER'S SIDE AIRBAG DIDN'T DEPLOY.  DEALERSHIP  WAS AWARE OF  PROOBLEM. *AK  DRIVER RECEIVED BACK AND NECK INJURIES. *SLC |
| 8001868 | CHEVROLET | SILVERADO | 2000 | 2001-12-18 | CONSUMER STATED VEHICLE WAS INVOLVED IN A FRONTAL CRASH OF 30 MPH, AND THE AIR BAGS DID NOT DEPLOY, DEALER DID NOT CHECK VEHICLE, BECAUSE GM WOULD NOT GIVE THEM PERMISSION. *AK *JG |
| 8001872 | CHEVROLET | SILVERADO | 2000 | 2001-12-11 | WHILE DRIVING, VEHICLE WAS INVOLVED IN AN ACCIDENT. UPON IMPACT, AIR BAG ON DRIVER/PASSENGER SIDE DID NOT DEPLOY, DRIVER WAS INJURED. *AK *YH |
| 8014186 | CHEVROLET | SILVERADO | 2000 | 2002-07-03 | WHILE DRIVING WAS HIT HEAD-ON BY ANOTHER VEHICLE AND BOTH DRIVER AND PASSENGERS AIRBAGS DID NOT DEPLOY. CONSUMER WAS DRIVING APPROXIMATELY 30MPH ,AND THE OTHER VEHICLE WAS DRIVING APPROXIMATELY 40-50MPH.*AK THERE WERE 2 INJURIEES. *YH |
| 8016756 | CHEVROLET | SILVERADO | 2000 | 2002-08-04 | IN A FRONTAL COLLISION, VEHICLE ROLLED  4 TIMES. UPON IMPACT, NONE OF THE AIR BAGS DEPLOYED.*AK |
| 8017393 | CHEVROLET | SILVERADO | 2000 | 2002-08-25 | VEHICLE INVOLVED WAS IN A FRONTAL COLLISION WITH A TREE, UPON IMPACT AIR BAGS DID NOT DEPLOY.  VEHICLE WAS TRAVELING APPROXIMATELY 40MPH.*AK CONSUMER STATED THE ROAD WAS UNEVEN AND THE RIGHT SIDE TIRES WAS CAUGHT IN A WASHOUT, CONSUMER TRIED TO BRING THE TIRES BACK ON THE ROAD BUT OVERCORECTED, THE VEHICLE THEN BEGAN TO FISHTAIL, AFTER COMING BACK ON THE ROAD, SLID ACROSS THE HIGHWAY AND HIT A TREE, THE DRIVER SUFFERED INJURIES.*JB |
| 8017521 | CHEVROLET | SILVERADO | 2000 | 2002-08-01 | WHILE TRAVELING AT 55 MPH LOST CONTROL OF VEHICLE AND HIT A CONCRETE DIVIDER, VEHICLE WAS AIRBORNE AND LANDED ON DRIVER'S SIDE. NONE OF THE AIRBAGS DEPLOYED, AND CONSUMER SUSTAINED LEG INJURY.  PLEASE PROVIDE ANY FURTHER INFORMATION.*AK |
| 8018038 | CHEVROLET | SILVERADO | 2000 | | UPON A FRONTAL IMPACT AT ESTIMATED SPEED OF 55 MPH, NEITHER DUAL AIR BAG DEPLOYED. CHEVROLET TOLD CONSUMER THAT AIR BAGS DEPLOY IN CERTAIN SITUATIONS.  OWNER HAS RECEIVED A RECALL NOTICE FOR  AIR BAGS. PLEASE DESCRIBE DETAILS. *AK |

| | | | | | |
|---|---|---|---|---|---|
| 8022592 | CHEVROLET | SILVERADO | 2000 | 2002-09-28 | CONSUMER WAS TRAVELING AROUND A CURVE, CONSUMER SUDDENLY LOST CONTROL OF VEHICLE. CONSUMER STATES VEHICLE SLAMMED INTO A TREE AND NONE OF THE AIRBAGS DEPLOYED. PLEASE PROVIDE ANY FURTHER INFORMATION.  MR |
| 8023044 | CHEVROLET | SILVERADO | 2000 | 2002-11-06 | VEHICLE WAS IN A FRONT COLLISION AND NONE OF THE AIR BAGS DEPLOYED UPON IMPACT.  NONE OF THE OCCUPANTS IN THE VEHICLE WERE SERIOUSLY INJURED AT TIME OF THE ACCIDENT.  PLEASE PROVIDE MORE DETAILS.    TS |
| 10005962 | CHEVROLET | SILVERADO | 2000 | | AIR BAGS FAILED TO DEPLOY IN A COLLISION, RESULTING IN A FATALITY. *AK  *JB |
| 10008044 | CHEVROLET | SILVERADO | 2000 | 2003-01-26 | AIR BAGS FAILED TO DEPLOY FROM FRONTAL IMPACT DURING MOTOR VEHICLE ACCIDENT |
| 10008151 | CHEVROLET | SILVERADO | 2000 | 2003-02-16 | THE VEHICLE WAS INVOLVED IN AN ACCIDENT, AND THE AIR BAG FAILED TO DEPLOY. *JB |
| 10022039 | CHEVROLET | SILVERADO | 2000 | 2003-04-11 | THE VEHICLE WAS INVOLVED IN FRONTAL COLLISION, AND THE AIR BAGS FAILED TO DEPLOY. THE CONSUMER WAS INJURED. *AK *TS *JB |
| 10027230 | CHEVROLET | SILVERADO | 2000 | 2003-06-16 | THE VEHICLE WAS INVOLVED IN A FRONTAL COLLISION WHILE DRIVING AT 40 MPH AND NONE OF THE AIR BAGS DEPLOYED UPON IMPACT.  DRIVER IMPACTED THE STEERING WHEEL, AND  DRIVER'S SIDE SEAT BELT DIDN'T RETRACT. *AK   *PH  *JB |
| 10029556 | CHEVROLET | SILVERADO | 2000 | 2003-07-17 | WHILE DRIVING  AT 45MPH CONSUMER HAD A FRONT COLLISION ,AND NEITHER OF THE FRONT BAGS DEPLOYED. *AK |
| 10044432 | CHEVROLET | SILVERADO | 2000 | | AIR BAGS DID NOT DEPLOY WHEN VEHICLE STRUCK A TREE HEAD ON. VEHICLE WAS TRAVELING AT 40 MPH. DRIVER WAS INJURED. *AK |
| 10045511 | CHEVROLET | SILVERADO | 2000 | 2003-09-28 | I REARENDED A VEHICLE THAT WAS SITTING STILL IN THE MIDDLE OF THE ROAD, I WAS TRAVELING ABOUT 40-45 MPH, AND NEITHER AIR BAG DEPLOYED.  I WAS SHIFTED IN THE VEHICLE AND HAVE KNEE AND BACK PROBLEMS. *LA |
| 10081392 | CHEVROLET | SILVERADO | 2000 | 2004-06-22 | WHILE DRIVING 45-55 MPH CONSUMER'S VEHICLE WAS REAR-END BY A TRACTOR TRAILER PUSHING CONSUMER'S VEHICLE OFF ROAD AND INTO A DITCH, FRONT END FIRST.  UPON IMPACT, AIR BAGS DID NOT DEPLOY.  *AK  BOTH THE DRIVER AND THE PASSENGER SUSTAINED INJURIES, THE DRIVER INJURED HIS NECK, BACK, HIPS AND PELVIS.  THE PASSENGER INJURED HER RIGHT SHOULDER, CHEST, BACK AND HIPS. |
| 10101301 | CHEVROLET | SILVERADO | 2000 | 2004-11-02 | CONSUMER'S VEHICLE WAS INVOLVED IN A  HEAD ON COLLISION  WHILE DRIVING AT 25-30 MPH. UPON IMPACT,  AIR BAGS DID NOT DEPLOY. RECALL 02V178000 WAS ISSUED.  MANUFACTURER WAS NOT WILLING TO ASSIST THE CONSUMER. *AK |
| 10108404 | CHEVROLET | SILVERADO | 2000 | 2005-01-31 | THE EVENT WAS A CAR PULLED OUT IN FRONT OF ME WHICH STILL HIT THE DRIVER'S SIDE OF MY VEHICLE (2000 CHEVY SILVERADO).  THEN MY TRUCK HAD A FULL FRONTAL IMPACT AT GREATER THAN 30 MPH INTO A DIRT WALL IN WHICH NEITHER THE DRIVER'S NOR PASSENGER'S AIRBAGS DEPLOYED (THE TRUCK IS TOTALLED).  I HIT THE STEERING WHEEL AND GOT A CONCUSSION WITH BLOOD AROUND THE BRAIN, A BROKE CHEEK BONE, AND FRACTURED HIP.  MY WIFE WAS 33 WEEKS PREGANANT AT THE TIME AND HER WATER BROKE AND SHE GOT A COMPOUND FRACTURE IN THE LOWER LEG/ANKLE.  AS A RESULT OF THE WATER BREAKING MY SON WAS BORN 3 DAYS LATER 7 WEEKS PREMATURE.  AS FOR WHAT WAS DONE TO CORRECT THE PROBLEM I'M HOPING IT WILL AT LEAST BE INVESTIGATED TO MAKE SURE THIS IS NOT A SYSTEMIC PROBLEM (I.E. SOFTWARE SCREWUP SOMETHING NOT HOOKED UP RIGHT IN THE AIRBAG SYSTEM ETC)  I HAVE PICS OF THE TRUCK AND THE CRASH SITE I CAN SEND IF NECESSARY.  I CAN ALSO PROVIDE THE LOCATION OF THE TRUCK SO IT CAN BE INSPECTED. *AK |
| 10111181 | CHEVROLET | SILVERADO | 2000 | 2004-12-22 | RECALL CAMPAIGN 02V078 00 CONCERNING AIR BAG SENSING MODULE. CONSUMER'S VEHICLE WAS INVOLVED IN A REAR END COLLISION, IT CRASHED INTO ANOTHER VEHICLE IN FRONT AT 50 MPH. UPON IMPACT,  NEITHER FRONTAL AIR BAG DEPLOYED.  CONSUMER SUSTAINE DINJURIES, AND WAS TRANSPORTED TO THE LOCAL HOSPITAL BY AMBULANCE.  DEALER AND MANUFACTURER WERE NOTIFIED. *AK |
| 10113830 | CHEVROLET | SILVERADO | 2000 | 2005-03-08 | WHILE DRIVING 20 MPH CONSUMER'S VEHICLE WAS INVOLVED IN A FRONTAL COLLISION.  UPON IMPACT, BOTH FRONTAL  AIR BAGS FAILED TO DEPLOY.  VEHICLE WAS TOWED TO A GARAGE FOR INSPECTION.  THE CAUSE HAD NOT BEEN DETERMINED AT THIS TIME.  THIS INFORMATION WAS PROVIDED BY RICKY'S WIFE KAREN FLIMP. *AK |
| 10120946 | CHEVROLET | SILVERADO | 2000 | 2005-05-06 | I WAS IN A HEAD ON COLLISION AND RECEIVED A COMPOUND FRACTURE TO MY RIGHT FEMUR BONE, 2 BLACK EYES AND FRACTURED RIBS DUE TO THE INACTIVATION OF THE DRIVERS AND PASSENGER AIRBAG MODULES, ALSO THE STEERING WHEEL BENT RESEMBLING AN AIRPLANE WHEEL. MY WIFE CHECKED THE INTERNET AFTER THE INCIDENT AND FOUND THERE WAS A RECALL FOR THE AIRBAG MODULE ON THE YEAR OF MY 2000 CHEVROLET SILVERADO TRUCK. WE WERE NEVER NOTIFIED OF THIS BEFORE THE INCIDENT, BUT ARE CURRENTLY RECEIVING UPDATES TODAY. DO NOT UNDERSTAND WHY WE WERE NEVER NOTIFIED OF THIS. THE TRUCK IS NOW IN A STORAGE YARD AND WE ARE AWAITING THE RESPONSE FROM THE INSURANCE ADJUSTOR. |
| 10122067 | CHEVROLET | SILVERADO | 2000 | 2005-03-19 | OFF CENTER HEAD ON CRASH WITH 2 SIMILAR 2000 CHEVY SILVERADO EXTENDED CAB PICK UP TRUCKS. ESTIMATED IMPACT SPEED 90 MPH ( 60 MPH VEHICLE 2, 30 MPH VEHICLE 1 PER CHP REPORT) NO AIRBAG DEPLOYMENT OF EITHER VEHICLE. |
| 10128831 | CHEVROLET | SILVERADO | 2000 | 2005-07-01 | AIR BAGS DID NOT DEPLOY UPON IMPACT |
| 10137048 | CHEVROLET | SILVERADO | 2000 | 2005-09-11 | DT:  CONSUMER'S VEHICLE  WAS INVOLVED IN A CAR ACCIDENT ON SEPTEMBER 11, 2005 WHILE DRIVING 50-55 MPH.  IT WAS A HEAD ON COLLISION.  UPON IMPACT,  DRIVER'S SIDE AIR BAG DID NOT DEPLOY.  THE CONSUMER HAD NOT CONTACTED THE DEALER OR MANUFACTURER. *AK |

| | | | | | |
|---|---|---|---|---|---|
| 10139984 | CHEVROLET | SILVERADO | 2000 | 2005-06-17 | DT: THE CONTACT'S SON WAS INVOLVED IN AN ACCIDENT ON 6-17-05. THE CONTACT RECEIVED A COPY OF THE CRASH REPORT. UPON IMPACT, NEITHER AIR BAG DEPLOYED. THE VEHICLE HIT SEVERAL TREES. THE POLICE REPORT STATED THE SPEED LIMIT WAS 55 MPH. THE PASSENGER'S HEAD WENT THROUGH THE WINDSHIELD, BUT PASSENGER WAS NOT SERIOUSLY HURT. NEITHER THE DRIVER NOR THE PASSENGER HAD TO GO TO THE HOSPITAL. THE CONTACT REPORTED THAT AIR BAG LIGHT ILLUMINATED IN THE CAR PRIOR TO THE INCIDENT. THE INSURANCE COMPANY HAS BEEN NOTIFIED. THE TRUCK WAS TOTALED. THE CONTACT TOOK PICTURES OF THE PINE TREE THAT WAS EMBEDDED IN THE HOOD. UPDATED 11/15/05. *JB |
| 10199593 | CHEVROLET | SILVERADO | 2000 | 2007-08-10 | TL*THE CONTACT OWNS A 2000 CHEVROLET SILVERADO. WHILE DRIVING 30 MPH HE DEPRESSED THE BRAKES AND CRASHED INTO THE VEHICLE IN FRONT OF HIM. THE AIR BAGS DID NOT DEPLOY. THE FRONT SEAT PASSENGER SUSTAINED A LACERATED SPLEEN AND CONTUSION OF THE HEART. A COMPLAINT WAS SUBMITTED TO THE MANUFACTURER (COMPLAINT # 71-546827970). THE CURRENT AND FAILURE MILEAGES WERE 128,000. UPDATED 02-01-08 *BF UPDATED 02/01/08. *TR |
| 10328507 | CHEVROLET | SILVERADO | 2000 | 1901-01-01 | CONSUMER STATES THAT AIRBAGS DID NOT DEPLOY DURING ACCIDENT IN A 2000 CHEVROLET SILVERADO CAUSING SERIOUS INJURY. *GR |
| 878851 | CHEVROLET | SUBURBAN | 2000 | 2000-12-11 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION AT 60MPH. UPON IMPACT, AIRBAGS DID NOT DEPLOY. VEHICLE ROLLED OVER. AND VEHICLE EXPLODED. THERE WERE MINOR INJURIES. *AK |
| 8002321 | CHEVROLET | SUBURBAN | 2000 | | WHILE DRIVING AT 25 MPH AN ACCIDENT OCCURRED, AND SEATBELT DID NOT TIGHTEN/ AIRBAG DID NOT DEPLOY. . PLEASE PROVIDE ANY FURTHER INFORMATION, AND IDENTIFICATION NUMBER. *AK |
| 8017775 | CHEVROLET | SUBURBAN | 2000 | | A TIRE SHEARED OFF, ANOTHER TRUCK CROSSING MEDIAN  BEGAN HEADING STRAIGHT TO CONSUMER'S VEHICLE.  DRIVER ATTEMPTED TO MANUEVER, BUT RAN OFF THE ROAD.  UPON FRONTAL OFF CENTERED IMPACT AT 60 MPH,  AND DUAL AIR BAGS FAILED TO DEPLOY. *AK |
| 557967 | CHEVROLET | TAHOE | 2000 | 2000-09-01 | RIGHT FRONT TIRE (NO MAKE OR MODEL PROVIDED) EXPERIENCED A BLOWOUT, CAUSING THE VEHICLE TO GO OFF THE ROAD, COME BACK ONTO THE ROADWAY, AND CRASH INTO A CEMENT WALL, THE CONSUMER STATED THAT HE BELIEVED THE BACK RIGHT TIRE EXPERIENCED A BLOWOUT AS WELL, DURING THE CRASH THE AIRBAG EXPERIENCED A NO DEPLOYMENT, ONE PERSON WAS INJURED DUE TO THE INCIDENT. (OHIO TRAFFIC CRASH REPORT) *SLC |
| 563859 | CHEVROLET | TAHOE | 2000 | 2001-10-03 | THE CONSUMER WAS INVOLVED IN A MAJOR ACCIDENT BUT THE DRIVER SIDE AIR BAGS FAILED TO DEPLOY. THE CONSUMER SUFFERED INJURIES.  *YH |
| 567545 | CHEVROLET | TAHOE | 2000 | 2000-11-11 | CONSUMER WAS IN TWO ACCIDENTS.  ONE IN NOVEMER OF 2000 AND THE OTHER IN SEPTEMBER OF 2002. THE AIR BAGS DID NOT DEPLOY IN EITHER INCIDENT.  CONSUMER DESCRIBED THE INCIDENTS TO A REPRESENTATIVE OF GENERAL MOTORS. CONSUMER WAS INFORMED THAT THE AIR BAGS SHOULD NOT HAVE DEPLOYED. IN THE FIRST ACCIDENT THERE WAS ONE INJURY, IN THE SECOND ACCIDENT, THERE WERE TWO INJURIES.  *JG |
| 740413 | CHEVROLET | TAHOE | 2000 | 2001-02-01 | HEAD ON COLLISION, IMPACT ON FRONT RIGHT SIDE, HIT AND SHEARED IN HALF A WOODEN UTILITY POLE, NO AIR BAG DEPLOYMENT ON EITHER SIDE, BUMPER IS CURLED UNDER FRONT END OF VEHICLE. *AK |
| 767411 | CHEVROLET | TAHOE | 2000 | 2001-11-11 | ON NOVEMBER 11,2000 I HAD A HEAD ON COLLISION (NOT MY FAULT) AND THE AIRBAGS DIDN'T DEPLOY. THEN ON SEPT 1,02  WE HAD A ACCIDENT ON INTERSTATE 95  THAT WE TOTALED THE TAHOE AND THE BODY SHOP CALLED GM SINCE THE AIRBAGS DIDN'T DEPLOY AGAIN. MR. LATTERMERE FROM GM CALLLED ME AND TOLD ME OVER THE PHONE AFTER I DESCRIBE THE ACCIDENT TO HIM THAT , AS HE DREW A PICTURE ON PAPER, "THAT THE AIR BAGS SHOULDN'T HAVE DEPLOYED". I FIND IT VERY DIFFICULT THAT A PERSON CAN DRAW A PICTURE AND TELL ME THIS. I WOULD LIKE FOR YOUR ORGANIZATION TO INSPECT THIS VECHILE AND RETRIEVE THE COMPUTER INFORMATION AND LET ME KNOW WHAT YOU THINK. GM SENT AN "INDEPEDENT" INSPECTOR OUT TO DO A REPORT BUT I HAVE NOTHING FROM HIM OR GM ON THE FINDING. I HAVE LEFT MESSAGES FOR MR. LATTERMERE TO CALL ME TO NO AVAIL.*AK |
| 8018021 | CHEVROLET | TAHOE | 2000 | 2002-09-01 | CONSUMER STATES WHILE DRIVING 55MPH HIT CONCRETE DIVIDER AND AIR BAGS DID NOT DEPLOY.*JB |
| 10111305 | CHEVROLET | TAHOE | 2000 | 2005-01-02 | WHILE DRIVING CONSUMER HIT A PATCH  OF ICE WHICH SENT THE VEHICLE SLIDING, AND CAUSING AN ACCIDENT. HOWEVER, THE AIR BAGS DID NOT DEPLOY, AND CONSUMER WAS INJURED. CONSUMER  CONTACTED THE DEALER, AND MANUFACTURER.  *AK   CONSUMER FEELS THAT MUCH OF THE PAIN AND SUFFERING MIGHT HAVE BEEN PREVENTED BY THE PROTECTION OF THE 4 AIR BAGS IN THIS VEHICLE-NONE OF WHICH DEPLOYED UPON AN IMPACT THAT CRUSHED THE FRONT OF THE VEHICLE. JAMMED TH EFRONT PASENGER DOOR WHICH CONSUMER COULD NOT OPEN , AND BENT THE CAR'S FRAME BEYOND REPAIR.  *BF |
| 10150002 | CHEVROLET | TAHOE | 2000 | 2006-02-08 | I WAS RECENTLY IN AN ACCIDENT AND MY 2 CHILDREN WERE IN THE VEHICLE WITH ME.  I WAS IN A 5 CAR WRECK IN WHICH MY VEHICLE, AND THE ONE IN FRONT OF ME WERE TOTALED.  UPON IMPACT ON THE FRONT OF MY TRUCK, MY AIR BAGS DIDN'T DEPLOY NOR DID MY SEAT BELTS LOCK.  MY 11 YR OLD HIT HIS HEAD ON THE DASH, REQUIRING IMMEDIATE MEDICAL ATTENTION FOR A SEVERE LACERATION WHICH REQUIRED STITCHES. I LEARNED FROM GMC THERE WAS A RECALL ON MY TRUCK FOR AIR BAG MALFUNCTIONS AND I WAS NEVER NOTIFIED.  *NM |

| | | | | | |
|---|---|---|---|---|---|
| 10249443 | CHEVROLET | TAHOE | 2000 | 2008-11-05 | TL*THE CONTACT OWNS A 2000 CHEVROLET TAHOE. WHILE DRIVING APPROXIMATELY 35 MPH, THE VEHICLE CRASHED INTO A LAMP POST THAT WAS SURROUNDED BY CEMENT. THE FRONT END WAS PUSHED IN, WHICH CAUSED THE ENGINE TO SHIFT. THE AIR BAGS FAILED TO DEPLOY AND THE DRIVER SUSTAINED INJURIES TO HIS BACK AND NECK. THE VEHICLE WAS TOWED TO A LOCAL REPAIR SHOP AND THE MECHANIC STATED THAT THE AIR BAGS SHOULD HAVE DEPLOYED. THE DEALER WAS NOT NOTIFIED. THE MANUFACTURER FILED A CASE AND STATED THAT THEY WOULD BE IN TOUCH WITH THEIR DECISION. THE CURRENT AND FAILURE MILEAGES WERE 144,000. |
| 11190477 | CHEVROLET | TAHOE | 2000 | 2019-03-17 | TL* THE CONTACT OWNS A 2000 CHEVROLET TAHOE. WHILE THE CONTACT'S SON WAS DRIVING 40 MPH, HE CRASHED INTO A VEHICLE THAT RAN A RED LIGHT. THE AIR BAGS DID NOT DEPLOY. THE CONTACT'S SON SUSTAINED CHEST, LOWER BACK, AND NECK PAINS THAT REQUIRED MEDICAL ATTENTION. THE CONTACT'S SON WENT TO THE EMERGENCY ROOM TWO SEPARATE TIMES. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO A TOW YARD. THE CONTACT WAS WAITING FOR FINALIZED INFORMATION FROM THE INSURANCE COMPANY TO DETERMINE IF THE VEHICLE WAS TOTALED. THE DEALER AND MANUFACTURER WERE NOT CONTACTED. THE CAUSE OF THE FAILURE WAS NOT DETERMINED. THE FAILURE MILEAGE WAS UNKNOWN. |
| 864850 | CHEVROLET | TRACKER | 2000 | 2000-06-28 | HAD A DIRECT FRONTAL IMPACT, AND DRIVER AND PASSENGER AIRBAG DID NOT DEPLOY WHICH DID NOT PROTECT THE OCCUPANTS IN THE CRASH.  NO PRIOR PROBLEMS WITH THE AIRBAG SYSTEM. *AK *ML |
| 870591 | CHEVROLET | TRACKER | 2000 | 2000-07-22 | DRIVING AT APPROXIMATELY 50 MPH DRIVER SWERVED TO AVOID HITTING ANOTHER VEHICLE AND LOST CONTROL. VEHICLE WENT ACROSS FREEWAY AND HIT A STEEL BARRIER WITH THE RIGHT FRONT PASSENGER'S SIDE, AND CONTINUED ON FOR A BLOCK. THEN, WENT INTO A DITCH, NOSE FIRST UPON IMPACT, DUAL AIRBAGS DID NOT DEPLOY, CAUSING MINOR INJURIES IN STERIUM AND HEAD. NO INDICTATION OF AIRBAG BEING DEFECTIVE. VEHICLE WAS A TOTAL LOSS.*AK |
| 883185 | CHEVROLET | TRACKER | 2000 | 2001-01-31 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION WITH A 1985 528I, BMW, SPEED WAS NOT DETERMINED,  AND  BOTH AIR BAGS DID NOT DEPLOY. DEALER / MANUFACTURER WERE NOTIFIED, AND UNWILLING TO ASSIST IN THIS MATTER.  FEEL FREE TO PROVIDE ANY FURTHER DETAILS ON THIS MATTER. *AK |
| 891375 | CHEVROLET | TRACKER | 2000 | 2001-06-16 | WHILE DRIVING AT 45 MPH CONSUMER'S VEHICLE WAS INVOLVED IN A DIRECT FRONTAL COLLISION. UPON IMPACT, NEITHER DRIVER'S SIDE NOR PASSENGER'S SIDE AIR BAGS DEPLOYED. DEALER WILL INSPECT VEHICLE.  PLEASE PROVIDE ANY FURTHER DETAILS. *AK |
| 897476 | CHEVROLET | TRACKER | 2000 | 2001-09-29 | FRONTAL AIRBAGS DID NOT DEPLOY WHEN VEHICLE WAS INVOLVED IN A HEAD-ON ACCIDENT AT 30-35 MPH. CONSUMER COLLIDED WITH ANOTHER VEHICLE WHILE MAKING A TURN.  VEHICLE HAD FRONTAL DAMAGE. *AK  8SLC |
| 558644 | GMC | YUKON | 2000 | 2000-12-16 | THE AIRBAG DID NOT DEPLOY IN A HEAD ON COLLISION RESULTING IN INJURIES. NLM |
| 8009240 | GMC | YUKON | 2000 | 2002-05-05 | FRONTAL COLLISION AT 40-45 MPH, NEITHER AIRBAG DEPLOYED. DRIVER SUFFERED HEAD INJURY. *AK   *YD |
| 10141369 | GMC | YUKON | 2000 | 2005-09-23 | DT: THE CONTACT STATED THAT WHILE TRAVELING 31 MPH ON A GRAVEL ROAD IN DRY CONDITIONS THE CONTACT LOST CONTROL OF THE VEHICLE AND  IT STRUCK A TREE.  UPON IMPACT, THE AIRBAGS DID NOT DEPLOY.  THE FRONT PASSENGER HAD TO BE EXTRACTED FROM THE VEHICLE.  THE DASHBOARD COLLAPSED INTO THE FRONT SEAT ALONG WITH THE FIREWALL.  THERE WERE  3 INJURIES, AND A POLICE REPORT WAS TAKEN.  THE VEHICLE WAS TOTALED.  A GM REPRESENTATIVE RETRIEVED THE BLACK DETECTION BOX,  VERIFIED THE SPEED OF 31 MPH, AND DETERMINED THAT THE  AIRBAGS SHOULD HAVE DEPLOYED.  GM PURCHASED THE SALVAGED VEHICLE FROM THE  INSURANCE COMPANY AND DESTROYED IT . *AK |
| 729997 | ISUZU | AMIGO | 2000 | 2000-08-29 | MY WIFE AND DAUGHTER WERE INVOLVED IN A CRASH WITH OUR 2000 ISUZU AMIGO.  MY WIFE IMPACTED A VEHICLE WHICH HAD CRASHED INTO ANOTHER VEHICLE AT APPROXIMATELY 25 MPH. NEITHER AIR BAG DEPLOYED NOR DID THE SEAT BELT TIGHTEN UP TO RESTRAIN MY WIFE, WHICH RESULTED IN HER IMPACTING THE STEERING WHEEL.  AT THE SAME TIME, THE DRIVERS SEAT MOVED FORWARD AND DID NOT REMAIN STATIONARY. |
| 10052346 | ISUZU | RODEO | 2000 | 2004-01-04 | DURING A 40 MPH CRASH INTO A CONCRETE CENTER DIVIDER ON A INTERSTATE IN WHICH THE VEHICLE MADE CONTACT WITH THE FRONT AND DRIVER FRONT AREA, CAUSING EXTENSIVE DAMAGES.  INCLUDING PUSHING BUMPER, GRILLE, HEADLIGHTS AND HOOD UP INTO THE ENGINE COMPARTMENT.  TO MY SHOCK THE AIRBAGS DID NOT DEPLOY.  WHAT IS UP WITH THIS?  DO THEY JUST TELL YOU THEY ARE THERE AND THEY DON'T WORK WHEN YOU NEED THEM???  I WILL NOT PURCHASE ANOTHER ISUZU PRODUCT AND AM SEEKING A CLAIM AGAINST ISUZU TO FIND OUT WHAT THE PROBLEM MIGHT BE.  THANK YOU FOR YOUR TIME!!.  *LA |
| 10083770 | ISUZU | RODEO | 2000 | 2004-02-26 | AIR BAGS ON 2000 ISUZU RODEO ARE DEFECTIVE.*MR  THE CONSUMER WAS INVOLVED IN A FRONT END COLLISION YET NONE OF THE AIR BAGS DEPLOYED.  THE CONSUMER CONTACTED THE MANUFACTURER ABOUT THE AIR BAGS BUT THE REPRESENTATIVE DID NOT SEEM TO BE TOO CONCERNED ABOUT THE SITUATION.  THE CONSUMER BELIEVES THE AIR BAG SHOULD HAVE DEPLOYED AND DOESN'T FEEL SAFE IN THE VEHICLE.  *NM |

| | | | | | |
|---|---|---|---|---|---|
| 10087550 | ISUZU | RODEO | 2000 | 2004-02-26 | VEHICLE WAS INVOLVED IN AN ACCIDENT WHILE TRAVELING AT 25 TO 30 MPH BUT THE AIR BAGS DID NOT DEPLOY. *MR . THE CONSUMER WAS INVOLVED IN A FRONT END COLLISION YET NONE OF THE AIR BAGS DEPLOYED. THE CONSUMER CONTACTED THE MANUFACTURER ABOUT THE AIR BAGS BUT THE REPRESENTATIVE DID NOT SEEM TO BE TOO CONCERNED ABOUT THE SITUATION. THE CONSUMER BELIEVES THE AIR BAG SHOULD HAVE DEPLOYED AND DOESN'T FEEL SAFE IN THE VEHICLE. THE VEHICLE SUSTAINED $6881. WORTH OF FRONT END DAMAGE. *NM |
| 10163811 | ISUZU | RODEO | 2000 | 2006-07-20 | I WAS IN AN ACCIDENT ON JULY 20,2006.  A GIRL RAN A RED LIGHT AND I HIT HER IN THE PASSENGER SIDE OF HER CAR HEAD ON WITH MY 2000 ISUZU RODEO. IT WAS A FULL FRONTAL COLLISION FOR ME AND MY CHILDREN.  LUCKILY , WE ARE ALWAYS BUCKLED UP BECAUSE NONE OF MY AIRBAGS DEPLOYED AT ALL.  THE OTHER CAR WAS GOING ABOUT 60 MPH AND HER AIRBAG DEPLOYED WHEN I  HIT HER BUT MINE DID NOT. LUCKILY, MY CHILDREN  WERE NOT HURT BADLY BUT UNFORTUNATELY, I SUSTAINED NECK, BACK AND KNEE INJURIES. I WAS AND STILL AM VERY UPSET THAT MY AIRBAGS FAILED.  EVEN THE OWNER OF THE BODY SHOP I USE WAS IN SHOCK THAT THEY DID NOT DEPLOY AS THE IMPACT WAS ENOUGH TO SPLIT THE FRAME OF MY RODEO AND TOTAL IT OUT. I WILL NOT BUY ANOTHER ISUZU AND I WILL ALSO NOT RECOMMEND THEM TO MY FAMILY OR FRIENDS IN THE FUTURE.  THANK YOU FOR YOUR TIME, I HOPE I CAN HELP ANOTHER FAMILY FROM GETTING INJURED. |
| 745106 | ISUZU | TROOPER | 2000 | 2001-05-02 | THE ESTIMATES ARE NOT ALL IN YET, SO THE $27,000 IS A GUESS AT THIS STAGE.  MY FRIEND ALSO HAD A TROOPER WHOSE AIRBAGS FAILED AT LEAST ON ONE FRONT END CRASH.*AK |
| 8009110 | ISUZU | TROOPER | 2000 | 2002-04-13 | WHILE DRIVING 45MPH T-BONED ANOTHER VEHICLE AND AIR BAGS DIDNOT DEPLOY. DRIVER AND 3 PASSENGERS  SUSTAINED INJURIES. *AK |
| 10160322 | ISUZU | TROOPER | 2000 | 2006-06-10 | DT*: THE CONTACT STATED WHILE DRIVING 15 - 20 MPH THROUGH AT INTERSECTION ANOTHER VEHICLE RAN A STOP SIGN AND HIT THE CONTACT'S VEHICLE. THE VEHICLE RAN INTO A TREE SMASHING THE FRONT OF THE VEHICLE. THE FRONTAL AIR BAGS DID NOT DEPLOY. THE AIR BAG LIGHT DID NOT ILLUMINATE PRIOR TO THE INCIDENT. THE CONTACT WAS WEARING A SEATBELT, HOWEVER INJURIES WERE INCURRED. THE CONTACT HAD BRUISING TO THE FACE AND A SPRAINED HIP. A POLICE REPORT WAS FILED AT THE SCENE. THE VEHICLE WAS DEEMED TOTALED BY THE INSURANCE COMPANY. |
| 744466 | CHEVROLET | ASTRO | 1999 | 2001-04-23 | MY VEHICLE WAS STRUCK HEAD ON BY AN ONCOMING AUTO TRAVELING AT 45 MPH. MY VEHICLE WAS TRAVELING AT 35 MPH. THE IMPACT WAS AT 12:00. MY AIRBAG DID NOT DEPLOY NOR DID THE PASSENGER SIDE AIR BAG. I WAS 3 POINT BELTED AT THE TIME OF THE COLLISION. THE OTHER VEHICLE WAS A CHEVROLET BERRETA 2 DOOR AUTOMOBILE.*AK |
| 757589 | CHEVROLET | ASTRO | 1999 | 2001-12-12 | WAS IN FRONT IMPACT HEAD-N COLLISION ON 12/12/01.  SPEED BETWEEN 40 AND 65 MPH. AIRBAGS FAILED TO DEPLOY.*AK |
| 759758 | CHEVROLET | ASTRO | 1999 | 2002-02-19 | AIR BAGS DID NOT DEPLOY IN A NEARLY HEAD-ON CRASH AT AN ESTIMATED SPEED OF 60 MPH. RELATIVE SPEED MAY HAVE BEEN LESS, BECAUSE VEHICLE WHICH THIS VAN HIT WAS SLIDING BACKWARDS IN THE SAME DIRECTION OF TRAVEL AS THE VAN.  HOWEVER, CLOSING SPEED HAD TO BE SIGNIFICANT TO CAUSE IT TO BE DAMAGED BEYOND REPAIR WITHIN ITS $13,000 VALUE. VEHICLE WAS A TOTAL LOSS.  WE HAVE OWNED THIS VEHICLE SINCE NEW, NO MODIFICATIONS HAVE BEEN MADE TO IT, AND IT HAD NEVER BEEN IN AN ACCIDENT BEFORE THIS.  DIGITAL PHOTOS OF DAMAGED VEHICLE ARE AVAILABLE IF DESIRED.  *AK |
| 873826, | CHEVROLET | ASTRO | 1999 | 2000-10-22 | CONSUMER WAS TRAVELING ABOUT 35MPH ON A SIDE STREET AND ANOTHER VEHICLE VEERED INTO HIM BY CROSSING OVER INTO THE MERIDIAN STRIP.  UPON IMPACT,  NEITHER AIRBAG DEPLOYED,  AND  MORE THAN ONE PERSON WAS INJURED. *AK |
| 8016641 | CHEVROLET | ASTRO | 1999 | 2002-08-05 | IN A FRONTAL COLLISION NONE OF THE AIR BAGS DEPLOYED ON IMPACT, CAUSING MAJOR INJURIES TO DRIVER.*AK |
| 10081510 | CHEVROLET | ASTRO | 1999 | 2004-06-22 | WHILE DRIVING 40 MPH VEHICLE STALLED.  THEN, VEHICLE SUDDENLY ACCELERATED.  CONSUMER APPLIED THE BRAKES, BUT THEY WERE INOPERATIVE. THIS CAUSED THE VEHICLE TO CRASH INTO A TREE.  UPON IMPACT, BOTH FRONTAL AIR BAGS FAILED TO DEPLOY.  DRIVER AND TWO PASSENGERS SUSTAINED MAJOR INJURIES, AND WERE TRANSPORTED TO THE HOSPITAL BY AMBULANCE.  THE VEHICLE WAS TOWED TO A GARAGE.  *AK |
| 10087718 | CHEVROLET | ASTRO | 1999 | 2004-08-11 | WHILE DRIVING CONSUMER TRIED TO AVOID A  PERSON ON A BICYCLE ON THE ROAD. SWERVED IN ORDER NOT TO HIT THE PERSON, BUT WAS UNABLE TO MAINTAIN CONTROL OF THE VEHICLE, JUMPED A CURB, AND COLLIDED WITH A FIRE HYDRANT, AND STRIKING  A TREE.  UPON IMPACT, BOTH FRONTAL AIR BAGS DID NOT DEPLOY. DRIVER SUSTAINED HEAD AND NECK INJURIES, AND WAS TRANSPORTED BY AMBULANCE TO A HOSPITAL.  VEHICLE WAS TOWED TO THE  DEALER FOR INSPECTION.  CONSUMER CONTACTED THE MANUFACTURER AND A REPRESENTATIVE CAME DOWN TO MEET WITH  THE DEALER AND CONSUMER.  THE REPRESENTATIVE INFORMED CONSUMER THAT THE VEHICLE WAS FUNCTIONING AS DESIGNED,AND THE RATE OF DECELERATION AND IMPACT WAS PRESENT.  *AK |

| | | | | | |
|---|---|---|---|---|---|
| 10205366 | CHEVROLET | ASTRO | 1999 | 2007-01-31 | TL*THE CONTACT OWNS A 2000 CHEVROLET ASTRO. WHILE DRIVING 25 MPH THROUGH SNOW AND ICE, THE CONTACT LOST CONTROL OF THE VEHICLE AND SLID OFF THE ROAD. THE VEHICLE THEN STRUCK A TELEPHONE POLE. THE AIR BAGS FAILED TO DEPLOY. THE SEAT BELT FAILED TO RESTRAIN HIM AND HE STRUCK HIS HEAD ON THE WINDSHIELD. THE WOUND TOOK 24 STITCHES TO CLOSE. MOST OF THE VEHICLE WAS REPAIRED AT THE COST OF $4,500. THE MANUFACTURER'S INVESTIGATOR CONCLUDED THAT THE AIR BAG WOULD NOT DEPLOY AT 25 MPH. THE ARKANSAS POLICE DEPARTMENT FILED REPORT NUMBER 07-00343. THE CURRENT MILEAGE WAS 146,661. AND FAILURE MILEAGE WAS 125,000. |
| 10347238 | CHEVROLET | ASTRO | 1999 | 2010-08-03 | AIRBAGS FAILED TO DEPLOY IN AN APPROX. 50 MPH HEAD-ON CRASH. *TR |
| 716098 | CHEVROLET | BLAZER | 1999 | 1999-12-12 | VEHICLE IMPACTED A HORSE IN ROAD AT A SPEED OF 45 MPH. IMPACT WAS HEAD-ON. LEGS OF THE HORSE CONTACTED THE FRONT BUMPER PROPELLING THE HORSE INTO THE WINDSHIELD AND ONTO THE ROOF.THE CAR SUSTAINED MAJOR DAMAGE TO THE FRONT. ALTHOUGH THERE WAS SIGNIFICANT DENTING OF THE BUMPER THE AIR BAGS FAILED TO DEPLOY. THE ROOF OVER THE FRONT PASSENGER HAD MAJOR CRUSHING INCLUDING THE DRIVER'S FRONT PILLA. *AK |
| 767338 | CHEVROLET | BLAZER | 1999 | 2002-09-15 | FRONT OF CAR BUMPER AND ENGINE PUSHED IN 6-8 INCHES. WENT UP HILL HIT TREE OVER TURNED 2 TIMES. UPON IMPACT, AIR BAGS FAILED TO DEPLOY. *AK |
| 859664 | CHEVROLET | BLAZER | 1999 | 2000-04-04 | CONSUMER WAS TRAVELING ABOUT 42MPH IN GOOD WEATHER CONDITIONS, AND WAS HIT BY ANOTHER VEHICLE ON THE DRIVER'S SIDE DOOR AND THE FRONT HOOD. UPON IMPACT, AIRBAGS DIDN'T DEPLOY. DEALER WILL BE CONTACTED. *AK |
| 874736 | CHEVROLET | BLAZER | 1999 | 2000-10-20 | CONSUMER WAS TRAVELING 32MPH & HAD A HEAD-ON COLLSION. CONSUMER WAS WEARING SEAT BELT RESTRAINT AT THE TIME, BUT FRONTAL AIR BAGS DIDN'T DEPLOY. DEALER CLOSED THE CASE AT ONE POINT & REOPENED IT ONCE. CONSUMER CONTACTED THEM A SECOND TIME.*AK *SLC |
| 8004945 | CHEVROLET | BLAZER | 1999 | 2002-02-28 | WHILE TRAVELING ON INTERSTATE AND WITHOUT PRIOR WARNING A DEER JUMPED IN FRONT OF VEHICLE. DRIVER'S SIDE SEATBELT DIDN'T HOLD, AND AIRBAGS DIDN'T DEPLOY.*AK |
| 8020401 | CHEVROLET | BLAZER | 1999 | | THE TRUCK WENT INTO A SKID ON WET ROAD AFTER ATTEMPTING A REAR END COLLISION THAT OCCURED IN FRONT OF THEM. THE TRUCK DID AVOID COLLIDING WITH THEM BUT SPUN AROUND HITTING CONCRETE WALL. NEITHER AIR BAGS DEPLOYED UP IMPACT WITH ESTIMATED SPEED OF 65 MPH. PLEASE DESCRIBE DETAILS. MR |
| 8021177 | CHEVROLET | BLAZER | 1999 | | WAS DRIVING, WHEN ANOTHER VEHICLE REAR ENDED VEHICLE IN FRONT OF IT. BLAZER AVOID HITTING VEHICLE ON WET ROAD & SPUN AROUND AFTER APPLYING BRAKES. VEHICLE HIT MEDIAN WALL WITH FRONT OF VEHICLE. UPON IMPACT, THE AIR BAGS FAILED TO DEPLOY. MR |
| 10017194 | CHEVROLET | BLAZER | 1999 | 2003-04-18 | THE VEHICLE WAS INVOLVED IN A FRONTAL COLLISION WITH A DEER WHILE DRIVING 60 MPH AND NONE OF THE NEITHER AIR BAGS DEPLOYED. THE DEALER WAS NOTIFIED. *NLM |
| 10021489 | CHEVROLET | BLAZER | 1999 | 2003-06-10 | INVOLVED IN HEAD ON COLLISION, BOTH GOING APPROXIMATELY 30 MPH, NEITHER FRONT AIR BAG DEPLOYED. SEVERE FACIAL INJURIES FOR ONE ONE AND CONCUSSION FOR PASSENGER RESULTED. *JB |
| 10049340 | CHEVROLET | BLAZER | 1999 | 2003-12-06 | THE AIRBAGS DID NOT DEPLOY. THIS CAUSED INJURY TO THE DRIVER CHEST. THIS SHOULD NEED TO BE FIXED ASAP BY GM. I WILL NEVER PURCHASE A CHEVY AGAIN. AIRBAGS THAT DO NOT DEPLOY WHEN YOU HIT HEAD ON AND ROLL SHOULD NOT BE ALLOWED. *LA |
| 10050546 | CHEVROLET | BLAZER | 1999 | 2003-12-15 | WHILE DRIVING ON ICY ROAD AT 50 TO 55 MPH DRIVER LOST CONTROL OF VEHICLE. IT WENT AIRBORNE AND LANDED IN A DITCH. UPON IMPACT,NONE OF THE AIR BAGS DEPLOYED. *AK |
| 10063865 | CHEVROLET | BLAZER | 1999 | 1999-03-23 | THE AIRBAGS NEVER WENT OFF IN A FRONT END COLLISION. *A |
| 10087245 | CHEVROLET | BLAZER | 1999 | 2004-06-09 | WHILE DRIVING 35 MPH, ANOTHER VEHICLE HIT CONSUMER'S VEHICLE ON THE PASSENGER SIDE. THIS CAUSED THE VEHICLE TO SPIN AROUND AND SLAM INTO ANOTHER VEHICLE HEAD ON. UPON IMPACT, BOTH FRONTAL AIR BAGS DID NOT DEPLOY, NOR DID THE DRIVERS SEAT BELT LOCK. CONSUMER HAD THE VEHICLE TOWED TO THE DEALERSHIP FOR INSPECTION. *AK |
| 10099164 | CHEVROLET | BLAZER | 1999 | 2004-10-21 | WHILE DRIVING 45 MPH, THE VEHICLE COLLIDED WITH THE VEHICLE IN FRONT OF HERS. THE AIR BAGS FAILED TO DEPLOY. THIS CAUSED THE DRIVER TO SUSTAINED MAJOR INJURIES AND WAS TRANSPORTED TO THE HOSPITAL. THE VEHICLE WAS TOWED TO A GARAGE FOR INSPECTION. THE CAUSE HAS NOT BEEN DETERMINED AT THIS TIME. PLEASE PROVIDE FURTHER DETAILS. *JB |
| 10161658 | CHEVROLET | BLAZER | 1999 | 2006-06-03 | DT*: THE CONTACT STATED THE VEHICLE IMPACTED A TREE, HEAD ON. THE FRONTAL AIRBAGS FAILED TO DEPLOY, RESULTING IN INJURIES OF THE CONTACT'S LEFT KNEE, ELBOW AND HEAD. A POLICE REPORT WAS FILED AND PICTURES WERE TAKEN AFTER THE VEHICLE WAS MOVED TO THE JUNKYARD. NO REPAIRS WERE MADE BECAUSE THE VEHICLE WAS DETERMINED BY THE INSURER TO BE TOTALED. THE MANUFACTURER WAS CONTACTED. 08/04/06 CHEVY DRIVER HIT A CAR IN HER LANE FIRST, THEN RICOCHETED HEAD ON INTO A TREE. NEITHER TIME DID AIRBAGS DEPLOY. *TT |
| 10223949 | CHEVROLET | BLAZER | 1999 | 2008-02-09 | 1999 CHEVY BLAZER AIRBAGS FAILED TO DEPLOY IN AN ACCIDENT. CONSUMER STATES THAT THE AIRBAGS DID NOT DEPLOY. CONSUMER WAS INJURED AND VEHICLE WAS TOTALED. CONSUMER MIGHT NOT HAVE THOSE INJURIES IF THE AIRBAGS WORKED PROPERLY. *KB |
| 548902 | CHEVROLET | SILVERADO | 1999 | 1999-08-13 | NO DEPLOYMENT OF DRIVER AND PASSENGER SIDE AIR BAGS DURING COLLISION WITH FIXED OBJECT (TREE) CAUSED INJURY TO DRIVE. NLM |

| | | | | | |
|---|---|---|---|---|---|
| 709384 | CHEVROLET | SILVERADO | 1999 | 1999-07-20 | THE 1999 CHEVROLET TRUCK EX SILV ANTILOCK BREAKS HAVE BEEN FAILING AT RANDOM TIMES SINCE APRIL 1 1999. FIRST AT SLOW SPEEDS AND THEN AT HIGH SPEEDS RANDOMLY. ON 720-1999 MY SPEED WAS 60 MI HR AND THE BRAKES FAILED WHEN A DEER CROSSED THE STATE HIGHWAY BETWEEN GRAHAM TX AND BRECKENRIDGE TX. THE BRAKES DELAYED AND I HIT THE DEER DEAD CENTER OF MY BUMPER AND GRILL! THE AIR BAGS DIDNOT INFLATE EVER! |
| 741598 | CHEVROLET | SILVERADO | 1999 | 2000-01-13 | MY AIR BAG DID NOT ACTIVATE AND IN A DIRECT FRONT END COLLISION. THE SUN SETTING BLINDED ME AND I HIT DIRECTLY THE REAR OF THE CAR IN FRONT OF ME AND IT'S AIRBAG DEPLOYED AND THE CHAIN REACTION OF THE TWO CARS IN FRONT OF THE CAR I HIT AIRBAGS DEPLOYED. GM SAID MY AIRBAG WAS NOT DEFECTIVE AND I ASKED TO HAVE IT CHECKED TWO TIMES. IT SHOULD HAVE DEPLOYED AND IT DID NOT. I WAS NOT WEARING A SEAT BELT AND I SUFFERED HEAD INJURIES. I SOLD TRUCK BECAUSE I DID NOT WANT TO DIE NEXT FAILURE. |
| 746679 | CHEVROLET | SILVERADO | 1999 | 2001-04-30 | DRIVER HIT A STOPPED VEHICLE ON THE INTERSTATE AT APPROXIMATELY 60 MPH. OCCUPANT OF STALLED VEHICLE WAS KILLED AND OUR AIRBAGS DID NOT DEPLOY. WE FELT THAT IT SHOULD HAVE DEPLOYED AND GMC IS ARGUING THAT IT SHOULD NOT HAVE. ANY INFORMATION ABOUT AIRBAGS WOULD BE APPRECIATED. *AK |
| 762651 | CHEVROLET | SILVERADO | 1999 | 2002-05-21 | DRIVER & PASSENGER AIR BAGS DIDN'T DEPLOY IN A 65 MPH COMBINED SPEED, HEAD ON CRASH. *AK |
| 842094 | CHEVROLET | SILVERADO | 1999 | | VEHICLE WAS INVOLVED IN A FULL FRONTAL COLLISION AT 40 MPH, AND NEITHER DRIVER'S SIDE NOR PASSENGER'S SIDE AIRBAGS DEPLOYED. CHEVROLET AND DEALER REFUSED TO GIVE ANY EXPLANATION WHY AIR BAGS DID NOT DEPLOY. *AK |
| 844072 | CHEVROLET | SILVERADO | 1999 | 1999-07-21 | WHILE DRIVING 40 MPH, LOST CONTROL, VEHICLE WENT INTO A DITCH. UPON IMPACT, DRIVER'S AND PASSENGER'S AIRBAGS DID NOT DEPLOY WHICH DID NOT PROTECT THE OCCUPANT IN THIS CRASH. PLEASE PROVIDE FURTHER INFORMATION AND VINN. *AK |
| 851420 | CHEVROLET | SILVERADO | 1999 | 1999-08-13 | CONSUMER WAS DRIVING AND A DEER JUMPED IN FRONT OF HIS VEHICLE. CONSUMER SWERVED TO THE RIGHT AND HE WENT INTO A TREE. AIRBAGS DIDN'T DEPLOY AT ALL, CONSUMER SUSTAINED HEAD INJURIES. *AK |
| 854784 | CHEVROLET | SILVERADO | 1999 | 1999-10-08 | WHILE DRIVING 60 MPH HAD A FRONTAL IMPACT, AND DRIVER'S AND PASSENGER'S AIR BAGS DID NOT DEPLOY WHICH DID NOT PROTECT THE OCCUPANT IN THIS CRASH. *AK *ML |
| 858532 | CHEVROLET | SILVERADO | 1999 | 2000-03-01 | CONSUMER'S DAUGHTER WAS IN A CAR CRASH. PASSENGER'S SEAT BELT DIDN'T HOLD. THE PASSENGER AND DRIVER WERE EJECTED FROM THE VEHICLE. ALSO, AIRBAGS DIDN'T DEPLOY. *AK |
| 858811 | CHEVROLET | SILVERADO | 1999 | 2000-02-18 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION AT 35 MPH. VEHICLE WAS TOTALLED, AND THE AIRBAGS DID NOT DEPLOY, RESULTING IN MINOR INJURIES. MANUFACTURER HAS INSPECTED THE VEHICLE, AND CLAIMS THAT THE AIR BAGS WERE NOT SUPPOSED TO DEPLOY IN THIS SORT OF ACCIDENT. *AK |
| 859858 | CHEVROLET | SILVERADO | 1999 | 1999-04-03 | WHILE TRAVELING ON A WET ROAD AT HIGHWAY SPEED OF 60 MPH VEHICLE HYDROPLANED, SPUN INTO A DITCH, AND COLLIDED INTO A TREE WITH BOTH SIDES AND FRONT OF VEHICLE. UPON IMPACT, AIR BAGS FAILED TO DEPLOY. MFR. NOTIFIED. *AK |
| 866622 | CHEVROLET | SILVERADO | 1999 | 2000-07-27 | CONSUMER WAS TRAVELING ABOUT 65 ON THE INTERSTATE AND FELL A SLEEP. HE HIT AN ENBANKMENT, AND AIRBAGS DIDN'T GO OFF, THERE WERE 2 INJURIES. *AK |
| 871182 | CHEVROLET | SILVERADO | 1999 | 2000-04-29 | WHILE DRIVING ABOUT 50 MPH AND WHEN EXITING A FREEWAY RAM STEPPED ON BRAKE PEDAL, BUT VEHICLE DID NOT STOP AND LOST CONTRO/ SPAN AND STRUCK A ROAD SIGN FRONT FIRST. UPON IMPACT, NONE OF THE AIR BAGS DEPLOYED.*AK |
| 875702 | CHEVROLET | SILVERADO | 1999 | 2000-11-08 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION AT 55-60MPH. UPON IMPACT, AIRBAGS DID NOT DEPLOY, RESULTING IN MINOR INJURIES. VEHICLE WAS TOTALLED. *AK |
| 877481 | CHEVROLET | SILVERADO | 1999 | 2000-12-16 | FRONT CRASH AT 50 MPH, VEHICLE TOTALLED, DRIVER INJURED WHEN SHE HIT STEERING WHEEL, AND AIRBAG DID NOT DEPLOY. *AK |
| 886863 | CHEVROLET | SILVERADO | 1999 | 2001-04-21 | WHILE DRIVING 70 MPH CONSUMER HAD A FRONT CRASH. BUMPER BROKE IN TWO, AND FRONT END WAS PUSHED BACK ABOUT 4-6 INCHES. VEHICLE HIT A TREE. UPON IMPACT, AIRBAGS DID NOT DEPLOY. *AK |
| 891163 | CHEVROLET | SILVERADO | 1999 | 2001-06-23 | WHILE TRAVELING 35-40 MPH ON A BRIDGE WITHOUT PRIOR WARNING BACKEND OF VEHICLE BEGAN TO FISHTAIL ,CAUSING VEHICLE TO LOSE CONTROL. CONSUMER RELEASED FOOT FROM GAS TO CORRECT VEHICLE STEERING. VEHICLE WAS UNRESPONSIVE, RESULTING IN A FRONTAL COLLISON WITH A JERSEY WALL. UPON IMPACT, PASSENGER AIRBAGS FAILED TO DEPLOY, ENGINE WAS PUSHED SIX INCHES UNDER THE DASH. CONSUMER HAS YET TO CONTACT DEALER. *AK DRIVER WAS INJURED IN ACCIDENT. *SLC |
| 10026451 | CHEVROLET | SILVERADO | 1999 | 2003-05-06 | 1999 CHEVROLET SILVERADO FAULTY DRIVER RESTRAINT SYSTEM. *MR THE VEHICLE WAS INVOLVED IN AN ACCIDENT. THE SAFETY BELT FAILED TO THE RESTRAIN THE DRIVER, AND THE AIR BAG DID NOT DEPLOY. *TS. THE DRIVER RECEIVED SERIOUS HEAD INJURIES. (LAWYER JOHN KELLY ON BEHALF OF CLIENT, JAMES SCOTT). *JB |
| 10113304 | CHEVROLET | SILVERADO | 1999 | 2005-02-03 | WHILE DRIVING APPROXIMATELY 20 MPH DRIVER LOST CONTROL OF THE VEHICLE AND IT CRASHED INTO A BRICK WALL. UPON IMPACT, BOTH FRONTAL AIR BAGS FAILED TO DEPLOY. DRIVER SUSTAINED MAJOR INJURIES, AND WAS TRANSPORTED TO THE HOSPITAL BY A HELICOPTER. THE VEHICLE WAS TOWED TO A GARAGE FOR INSPECTION. *AK |

| | | | | | |
|---|---|---|---|---|---|
| 10144603 | CHEVROLET | SILVERADO | 1999 | 2005-11-01 | DT: THE CONTACT STATED WHILE TRAVELING AT 65 MPH HE FELL ASLEEP AT THE WHEEL. THE VEHICLE WAS INVOLVED IN A CRASH, IT HIT A GUARD RAIL. THIS WAS A FRONTAL IMPACT, AND THE DRIVER'S SIDE AIR BAG DID NOT DEPLOY. THE VEHICLE WAS TOTALED. |
| 731578 | CHEVROLET | SUBURBAN | 1999 | 2000-01-15 | AIRBAGS FAILED TO DEPLOY ON FRONTAL INTERSTATE SPEED IMPACT. DEALER DISCLAIMED SERIOUSNESS. DOOR LOCKS WOULD LOCK AUTOMATICALLY, WITHOUT ANY ADULT IN THE CAR... HOWEVER, THERE WERE CHILDREN IN CAR SEATS IN BACK. KEEP SPARE SET OF KEYS IN HAND AT ALL TIMES. |
| 753287 | CHEVROLET | SUBURBAN | 1999 | 2001-10-08 | 60 MPH CROSS WIND BLEW THE SUBURBAN HEAD ON INTO THE CONCRETE MEDIAN. THE VEHICLE SPUN 360 DEGREES, WENT INTO THE DITCH, THE FRONT END HIT AGAIN THE VEHICLE WENT UP THE OTHER SIDE OF THE EMBANKMENT AND STOPPED IN A FIELD. ENTIRE FRONT END OF THE FRAME NOT REPAIRABLE. THE REAR PORTION OF THE FRAME BENT INTO A DIAMOND SHAPE. FRONT CROSSMEMBER BENT AND ENGINE MOVED UPWARDS AT A 10 DEGREE ANGLE. AIR BAGS FAILED TO DEPLOY. *AK |
| 829803 | CHEVROLET | SUBURBAN | 1999 | 1998-10-09 | CONSUMER WAS TRAVELING ABOUT 30-35 MPH AND ACCIDENTLY REAR ENDED ANOTHER VEHICLE, AIR BAGS DID NOT DEPLOY, CAUSING NECK INJURY/SHOULDER INIURY AND BACK INJURY. *AK |
| 876094 | CHEVROLET | SUBURBAN | 1999 | 2000-12-01 | CONSUMER WAS TRAVELING ABOUT 45 MPH ON HIGHWAY AND WAS STRUCK HEAD-ON BY ANOTHER VEHICLE WHO ENTERED FREEWAY THROUGH EXIT. UPON IMPACT, FRONT DUAL AIRBAGS DIDN'T DEPLOY. CONSUMER WAS INJURED. *AK |
| 877320 | CHEVROLET | SUBURBAN | 1999 | 2000-12-01 | CONSUMER WAS TRAVELING ABOUT 40MPH ON HIGHWAY AND ANOTHER VEHICLE VEERED INTO HER LANE, HITTING HER HEAD-ON, AND PUSHING VEHICLE INTO ANOTHER LANE. VEHICLE HIT TELEPHONE POLE, AND DUAL AIRBAGS DIDN'T DEPLOY. CONSUMER WAS INJURED. CHEVROLET HAS BEEN NOTIFIED. *AK |
| 896346 | CHEVROLET | SUBURBAN | 1999 | 2001-09-04 | WHILE DRIVING 30-35 MPH VEHICLE HIT A FIRE HYDRANT, THEN A TREE. NEITHER AIRBAG DEPLOYED, NO INJURIES. DAMAGE TO VEHICLE UNKNOWN AT THIS TIME. IMPACT WAS MIDDLE OF FRONT OF VEHICLE. *AK |
| 8001742 | CHEVROLET | SUBURBAN | 1999 | 2001-12-28 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION AT 20MPH. UPON IMPACT, AIR BAGS DID NOT DEPLOY. DEALER HAS BEEN NOTIFIED. PLEASE PROVIDE ADDITIONAL INFORMATION.*AK |
| 10029300 | CHEVROLET | SUBURBAN | 1999 | 2003-05-08 | THIS COMPLAINT IS IN REGARDS TO MY RECENT MOTOR VEHICLE ACCIDENT ON MAY 8, 2003. THE OTHER DRIVER FAILED TO YIELD MY RIGHT AWAY. I WAS DRIVING A 1999 CHEVROLET SRUBURBAN. I SERVED INTO ONCOMING TRAFFIC, INTO A RESIDENCE YARD, STRIKING A TREE HEAD ON AT APPROXIMATELY 35 MILES PER HOUR. I HAVE CORRESPONDED WITH GMC VIA E-MAIL UNTO NOT MY SATISFACTION. I REQUESTED MY VEHICLE HAVE A DIAGNOSTIC EVALUATION CONDUCTED, AS I WANTED TO KNOW WHY THE AIR BAGS DID NOT DEPLOY. I HAVE BASICALLY BEEN TOLD BY GMC THAT IF THE AIRBAG LIGHT IS FUNCTIONING IN THE DASHBOARD OF MY TRUCK THEN THERE IS NOTHING WRONG WITH MY AIR BAGS PER A CUSTOMER RELATIONSHIP MANAGER AND THAT MY ACCIDENT DID NOT MEET THE CRITERIA FOR AIR BAG DEPLOYMENT. I HIGHLY DISAGREE WITH GMCIS EXPLANATION AND CRITICIZE THE LACK OF PROFESSIONAL DIPLOMACY AND CONCERN. I WOULD HAVE EXPECTED MORE FROM ONE OF THE BIG 3 AUTO CORPORATIONS. MY VEHICLE STRUCK A TREE WITH ENOUGH FORCE TO BEND THE FRONT LEFT FRAME RAIL. THE IMPACT ALSO WAS GREAT ENOUGH TO RAISE THE REAR OF THE VEHICLE OF THE GROUND AND SET IT DOWN A FOOT TO THE LEFT OF THE INITIAL IMPACT. THIS HAS ALSO LEFT ME WITH DOCUMENTED INJURIES CAUSING ME TO BE UNABLE TO WORK. MY CONFIDENCE IN THIS VEHICLEIS AIR BAG SYSTEM HAS DIMINISHED TO SAY THE LEAST. THIS MATTER HAS NOT BEEN HANDLED NOR COMPLETED TO MY SATISFACTION. I EXPECTED AT LEAST AN OFFERING TO HAVE THE VEHICLE TAKEN TO A LOCAL DEALERSHIP TO HAVE A DIAGNOSTIC EVALUATION CONDUCTED. THIS WOULD ALLOW ME TO DRIVE THE VEHICLE WITH SOME CONFIDENCE THAT THE SYSTEM WOULD WORK IN THE EVENT I NEED IT AGAIN. I AM AT A STAND STILL AND I AM POSITIVE I AM NOT THE ONLY PERSON WHO HAS HAD THIS PROBLEM IN THE PAST. I WOULD LIKE MORE INFORMATION RELATED TO FAILED AIR BAG DEPLOYMENT AND GMC CHEVY SURBURBAN. I HAVE ALSO SEEN A RECALL ON THE INTERNET WHICH MY VEHICLE FALLS UNDER RELATED TO AIRBAGS. THANK YOU FOR YOUR TIME AND CONSIDERATION. *AK |
| 10194121 | CHEVROLET | SUBURBAN | 1999 | 2007-06-24 | TL*THE CONTACT OWNS A 1999 CHEVROLET SUBURBAN. WHILE DRIVING 55 MPH, THE CONTACT CRASHED INTO THE FRONT END OF ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT WAS SEATED IN THE PASSENGER SEAT AND SUFFERED A CONTUSION ON HER LEFT LEG AND BRUISES ON HER RIGHT LEG. THE DEALER HAS NOT INSPECTED THE VEHICLE TO DETERMINE THE CAUSE OF FAILURE. THE VEHICLE WAS DESTROYED. THE CURRENT AND FAILURE MILEAGES WERE 115,000. |
| 10287421 | CHEVROLET | SUBURBAN | 1999 | 2009-09-25 | DEER ACCIDENT, LOST CONTROL RAN HEAD ON INTO THE CURB, HIT A SIGN, FRAME IS BENT, WINDSHIELD IS SHATTERED AND CAVED IN, FRONT PUSH GUARD IS BENT, AND FRONT PASSENGER FENDER WELL IS CAVED IN. AIRBAGS DID NOT DEPLOY!!! *TR |

| | | | | | |
|---|---|---|---|---|---|
| 10372658 | CHEVROLET | SUBURBAN | 1999 | 2010-12-21 | TL* THE CONTACT OWNS A 1999 CHEVROLET SUBURBAN. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 40 MPH, HE CRASHED INTO THE PASSENGER SIDE OF ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. THE CONTACT AND ANOTHER PASSENGER SUSTAINED MINOR ABRASIONS AND INJURIES TO THE NECK AND BACK. THE DRIVER OF THE SECOND VEHICLE WAS INJURED BUT THE EXTENT OF THE INJURIES WAS UNKNOWN. A POLICE REPORT WAS AVAILABLE. THE VEHICLE WAS TOWED TO AN INDEPENDENT MECHANIC WHERE THE CONTACT WAS INFORMED THAT THE VEHICLE WAS DEEMED AS DESTROYED. THE FAILURE MILEAGE WAS APPROXIMATELY 133,000. UPDATED 03/03/11 |
| 704617 | CHEVROLET | TAHOE | 1999 | 1999-03-04 | THE VEHECLE WAS TRAVELING APPROX 40 MPH WHEN IT HIT BLACK ICE ANDM SLIDE OFF THE ROAD AND HIT A BIG ROCK ON THE PASSENGER SIDE FRONT. THE PASSENGER SIDE FRONT BODY AND AXLE WAS PUSHED BACK APPROX 6 TO 8". NIETHER AIR BAG OPENED PASSENGER OR DRIVER. THE PASSENGER MY WIFE SUFFERED A BROKEN BACK. THE VEHECLE WAS TOTALED BY THE INSURANCE. ONE REASON WE BOUGHT THE CHEVROLET TAHOE WAS BECAUSE OF THE DUEL AIR BAG. I FEEL THAT THE SEVERITY OF THE ACCIDENT THE AIR BAGS SHOULD HAVE OPENED. I HAVE TAKEN PICTURES AND STATE FARM INSURANCE IS ALSO INVESTIGATING THE ACCIDENT FOR THE FAILED AIR BAGS. |
| 757392 | CHEVROLET | TAHOE | 1999 | 2002-01-22 | DRIVERS AIRBAG FAILED TO DEPLOY IN A FRONT END ACCIDENT. *AK |
| 761485 | CHEVROLET | TAHOE | 1999 | 2002-04-19 | THIS WAS A VERY HEAVY FRONT END COLLISION. THE VISUAL DAMMAGE EST. IS 10,000 DOLLARS AND STILL RISING THEY DO NOT HAVE THE INTERNAL DAMAGE EST. I CALLED GM AND FILED A FORMAL COMPLAINT. THEY TOLD ME THAT THEY WERE VERY BUSY AND DID NOT HAVE TIME TO INVESTIGATE THIS FAILURE. THEY ALSO TOLD ME THAT THIS WOULD COST THE TO MUCH MONEY TO DO AN INVESTIGATION. THE REP FROM GM TOLD ME THAT THEY COULD TELL IF THE WRECK WAS BAD ENOUGH BY THE DESCRIPTION OF THE WRECK OVER THE PHONE WITH OUT EVEN SEEING THE WRECK. THE DALLAS FIRE DEPARTMENT, DALLAS POLICE DEPARTMENT, TOW TRUCK DRIVER AND HUFFINES CHEVROLET WHICH IS A CERTIFIED CHEVROLET BODY SHOP SAID THAT THIS WAS WAY TO MUCH DAMAGE TO THE FRONT END AND THEY SHOULD HAVE WENT OFF. BUT COPRORATE GM SAID THAT IT WAS NOT AND THEY COULD TELL THAT WITHOUT SEEING THE VEHICLE. GM ALSO TOLD ME THAT THE OTHER VEHICLE IN THE ACCIDENT TOOK ALL THE IMPACT, WITHOUT EVEN SEEING THE VEHICLES HOW WOULD THEY NOW THIS? I STILL HAVE 10,000 DOLLARS OF FRONT END DAMAGE TO MY VEHICLE AND THAT IS WAY TO MUCH IF THE OTHER VEHICLE TOOK ALL THE IMPACT. THEY REPEATEDLY TOLD ME THAT IT WAS OK THAT THEY DID NOT GO OFF BECAUSE THE REST OF THE SAFTEY EQUIPMENT WORKED I.E. SEATBELTS, CRUMPLE ZONES" BUT THAT DOES NOT CHANGE THE FACT THAT THE AIRBAG SYSTEM DID NOT WORK AND THIS WOULD HAVE KEPT MY 7 MONTH PREGNANT WIFE FROM HITTING THE DASH BOARD! IF YOU HAVE ANY QUESTION I WILL BE MORE THAN HAPPY TO ANSWER THEM LARGE OR SMALL. THANK YOU!*AK |
| 860103 | CHEVROLET | TAHOE | 1999 | 2000-04-08 | WHILE DRIVING DOWN THE ROAD AT 40 MPH ANOTHER VEHICLE RAN A STOP SIGN, CONSUMER HIT OTHER VEHICLE DIRECTLY IN THE SIDE OF CAR. UPON IMPACT, AIR BAGS DID NOT DEPLOY. CONSUMER FELT AIR BAGS SHOULD HAVE DEPLOYED. *AK |
| 863306 | CHEVROLET | TAHOE | 1999 | | WHILE TRAVELING AT 45 MPH ANOTHER VEHICLE PULLED OUT IN FRONT OF CONSUMER'S VEHICLE RESULTING IN AN ACCIDENT. UPON IMPACT, AIR BAGS DID NOT DEPLOY AT ANY TIME. ALSO, ABS LOCKED UP. PLEASE PROVIDE FURTHER INFORMATION. *AK |
| 878233 | CHEVROLET | TAHOE | 1999 | 2000-12-29 | CONSUMER WAS TRAVELING 55MPH ON HIGHWAY AND ANOTHER VEHICLE RAN IN FRONT, AND CONSUMER'S VEHICLE HIT OTHER VEHICLE BROADSIDE. UPON IMPACT, AIRBAGS DIDN'T GO OFF.*AK |
| 887011 | CHEVROLET | TAHOE | 1999 | 2001-04-13 | CONSUMER WAS TRAVELING ABOUT 30MPH ON HIGHWAY AND WITHOUT PRIOR WARNING FRONT WNT INTO SHOULDERS OF A STEEP HILL 45 DEGREE ANGLE, AND VEHICLE HIT A TREE. UPON IMPACT, DUAL BAGS DIDN'T GO OFF. DEALERSHIP WAS AWARE OF PROBLEM.*AK |
| 887171 | CHEVROLET | TAHOE | 1999 | 2000-12-27 | VEHICLE HIT A TREE. UPON IMPACT, SEAT BELT DID NOT RETRACT, AND AIR BAGS DID NOT DEPLOY, RESULTING IN INJURIES.*AK |
| 8006232 | CHEVROLET | TAHOE | 1999 | 2002-03-13 | FRONT COLLISION AT 25-30 MPH, AND NEITHER AIRBAG DEPLOYED, CONSUMER SUFFERED MINOR INJURIES.*AK |
| 10040265 | CHEVROLET | TAHOE | 1999 | 2003-09-09 | WHILE DRIVING 40 MPH VEHICLE WAS HIT IN THE FRONT CENTER. BOTH FRONTAL AIR BAGS DID NOT DEPLOY. *AK |
| 10074130 | CHEVROLET | TAHOE | 1999 | 2004-04-27 | DURING A FRONT END COLLISION WHILE DRIVING AT 55 MPH FRONT AIR BAGS DID NOT DEPLOY. THREE PASSENGERS SUSTAINED MINOR INJURIES. CONSUMER HAD THE VEHICLE TOWED TO DEALERSHIP FOR INSPECTION. *AK |
| 10110864 | CHEVROLET | TAHOE | 1999 | 2004-11-15 | THE VEHICLE'S AIR BAGS DID NOT DEPLOY DURING A FRONTAL COLLISION. *NM COUNCIL FOR THE CONSUMER STATED THAT AIR BAGS NEED TO BE TESTED AT CHEVROLET'S EXPENSE. *TC *JB |
| 10265716 | CHEVROLET | TAHOE | 1999 | 2009-02-15 | WHILE DRIVING MY 99 TAHOE DOWN A 4 LANE ROAD, A DRUNK HAD PULLED OUT INFRONT OF ME. I HAD SLAMMED ON MY BRAKES AND SWERVED TO AVOID HIM BUT STILL HIT HIM PRETTY HARD IN HIS REAR QUARTER PANEL. AS A RESULT OF THE ACCIDENT, I HAD SUFFERED A DOUBLE HEMATOMA TO MY BRAIN AND HAD BRAIN SURGERY TO STAY ALIVE. MY COMPLAINT WITH MY TAHOE IS 1) MY AIRBAG IN MY STEERING WHEEL DID NOT DEPLOY. I THINK IF IT DID, MY INJURY WOULD HAVE BEEN AVOIDED. 2) I QUESTION THE STOPPING ABILITY IF MY ANTI DIVE FRONT BRAKES. I WAS ON THE BRAKES HARD WITH THE VEHICLE NOSING DOWN BUT I THINK MY STOPPING DISTANCE SHOULD HAVE BEEN SHORTER. *TR |

| | | | | | |
|---|---|---|---|---|---|
| 10299900 | CHEVROLET | TAHOE | 1999 | 2010-01-10 | TL*THE CONTACT OWNS A 1999 CHEVROLET TAHOE. THE CONTACT WAS DRIVING APPROXIMATELY 15 TO 20 MPH ON NORMAL ROAD CONDITIONS AND UNEXPECTEDLY, THE OPPOSING VEHICLE CRASHED INTO THE FRONT END OF THE VEHICLE WHICH RESULTED IN A HEAD ON COLLUSION. THE POLICE AND AMBULANCE WERE CALLED TO THE SCENE. THE CONTACT SUSTAINED SEVERE INJURIES. THE AIR BAG FAILED TO DEPLOY WITH THE MASSIVE LEVEL OF IMPACT. THE VEHICLE WAS COMPLETELY DESTROYED. THE VEHICLE WAS TOWED TO A COLLISION CENTER. THE CONTACT HAD CONCERN OF THE SAFETY RISK INVOLVED. THE FAILURE MILEAGE WAS 141,000. |
| 10350098 | CHEVROLET | TAHOE | 1999 | 2009-02-17 | I HAVE A 99 TAHOE THAT I WAS INVOLVED IN AN ACCIDENT. I HIT A CAR WHILE DOING 40MPH THAT HAD PULLED OUT INFRONT OF ME. MY AIR BAGS DIDN'T DEPLOY AND MY SAFETY BELT DIDN'T KEEP ME FROM HITTING THE STEERING WHEEL HARD. UPON REVIEW OF MY SAFETY BELT, I NOTICED THAT IT IS ROUTED INCORRECTLY AT THE TOP HOLDER. IT BINDS ON ITSELF PREVENTING IT FROM RETRACTING. MY PASSENGER SIDE IS ROUTED CORRECTLY AND WORKS PERFECTLY. I SUFFERED A BRAIN INJURY BECAUSE OF THIS AND AM QUITE CONCERNED. *TR |
| 11203728 | CHEVROLET | TAHOE | 1999 | 2019-04-20 | TL* THE CONTACT OWNED A 1999 CHEVROLET TAHOE. WHILE DRIVING 35 MPH, THE CONTACT HAD A HEAD ON COLLISION WITH A LIGHT POLE. THE AIR BAGS DID NOT DEPLOY. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE CONTACT WAS INURED AND RECEIVED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOTALED AND TOWED TO THE CONTACT'S RESIDENCE. AN UNKNOWN DEALER WAS MADE AWARE OF THE FAILURE, BUT DID NOT ASSIST. THE VEHICLE WAS NOT DIAGNOSED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS UNKNOWN. |
| 859422 | CHEVROLET | TRACKER | 1999 | 2000-03-28 | VEHICLE REAR ENDED ANOTHER VEHICLE AT 25 MPH. UPON IMPACT, BOTH AIR BAGS FAILED TO DEPLOY. DEALER / MANUFACTURER WERE NOT CONTACTED AT THIS TIME. *AK |
| 865216 | CHEVROLET | TRACKER | 1999 | 2000-06-27 | CONSUMER'S WIFE WAS TRAVELING ABOUT 35MPH ON THE HIGHWAY AND ANOTHER VEHICLE DIDN'T YIELD INTO HER VEHICLE, AND FORCE HER OFF THE ROAD. THEN SHE WENT INTO A UTILITY POLE. UPON IMPACT, AIR BAGS DID NOT DEPLOY. *AK ALSO HORN IS DIFFICULT TO LOCATE ON THE STEERING WHEEL. *YH |
| 868967 | CHEVROLET | TRACKER | 1999 | 2000-08-25 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION WITH A DODGE RAM PICK UP AT A IMPACT OF 30-35 MPH, AND AIR BAGS DIDNOT DEPOLY. DEALER NOTIFIED. FEEL FREE TO PROVIDE ANY FURTHER DETAILS. *AK |
| 899309 | CHEVROLET | TRACKER | 1999 | 2001-11-10 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION BETWEEN 35-40 MPH, AND BOTH FRONTAL AIR BAGS DID NOT DEPLOY. DEALER / MANUFACTURER WERE NOTIFIED. FEEL FREE TO PROVIDE ANY FURTHER INFORMATION CONCERNING THIS MATTER. *AK |
| 706419 | GMC | YUKON | 1999 | 1999-04-12 | WE CONTACTED GMC CUSTOMER SERVICE (VICTOR JOHNSON) AND REQUESTED AN INVESTIGATION. GMC HAS NOW TOLD US THAT SINCE NO ONE WAS FATALLY INJURED THERE WILL BE NO INVESTIGATION. HOW CAN THEY DO THIS? MY WIFE HAS BEEN INJURED - PROBABLY PERMANENTLY- AND WE WANT TO KNOW WHY THEY DID NOT DEPLOY. AS THIS WAS A DIRECT FRONTAL IMPACT. I BELIEVE THAT THE MANUFACTURER HAS AN OBLIGATION TO US AND IS MERELY PLAYING A GAME AT THIS POINT. IS IT IN OUR BEST INTEREST TO HIRE AN ATTORNEY ON THE MATTER OR WHAT SHOULD WE DO? *AK |
| 853931 | GMC | YUKON | 1999 | | OWNER APPLIED BRAKES AND THE VEHICLE KEPT GOING AND HIT ANOTHER VEHICLE. UPON IMPACT, NEITHER DRIVER'S SIDE NOR PASSENGER'S SIDE AIRBAGS DEPLOYED. DEALER HAS SEEN VEHICLE. *AK |
| 862202 | GMC | YUKON | 1999 | 2000-05-17 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION AT APPROXIMATELY 45 MPH WITH ANOTHER VEHICLE. UPON IMPACT, BOTH AIR BAGS FAILED TO DEPLOY. DEALER NOTIFIED. *AK |
| 880890 | GMC | YUKON | 1999 | 2001-02-01 | CONSUMER INVOLVED IN AN ACCIDENT, REARENDED ANOTHER VEHICLE. VEHICLE TRAVELING AT APPROXIMATELY 50 MPH, AND AIR BAGS DID NOT DEPLOY. PLEASE FILL IN ANY ADDITIONAL INFORMATION. *AK |
| 8007774 | ISUZU | AMIGO | 1999 | 2002-01-25 | IN A CAR CRASH. AIRBAGS DID NOT DEPLOY. *AK |
| 862789 | ISUZU | RODEO | 1999 | 2000-05-19 | CONSUMER WAS GOING AT ABOUT 55 AND ANOTHER VEHICLE HIT CONSUMER'S VEHICLE AT ABOUT 85 MPH . CONSUMER'S VEHICLE, IN TURN, HIT A UTILITY VEHICLE, AND WENT INTO A GAURDRAIL. UPON IMPACT, AIRBAGS DIDN'T DEPLOY. CONSUMER'S VEHICLE WAS TOTALLED. *AK |
| 895855 | ISUZU | RODEO | 1999 | 2001-08-10 | VEHICLE WAS INVOLVED IN A DIRECT FRONTAL IMPACT AT 35MPH. UPON IMPACT, AIR BAGS DID NOT DEPLOY. PLEASE PROVIDE ADDITIONAL INFORMATION. *AK |
| 10009019 | ISUZU | RODEO | 1999 | | THE VEHICLE WENT AIRBORNE AND LANDED ON THE FRONT END AND THE AIR BAGS FAILED TO DEPLOY.*JB |
| 10019881 | ISUZU | RODEO | 1999 | | WHEN THE BRAKES WERE APPLIED, THE REAR OF THE VEHICLE SLID. AS A RESULT, THE CONSUMER REAR ENDED ANOTHER VEHICLE AND NONE OF THE AIR BAGS DEPLOYED. *JB. |
| 10044798 | ISUZU | RODEO | 1999 | 2003-10-27 | WHILE DRIVING AT 60 MPH, HIT A DEER, AND NEITHER OF THE AIR BAGS DEPLOYED. DRIVER WORE THE SEAT BELT. *AK |
| 10186592 | ISUZU | RODEO | 1999 | 2007-03-30 | TL*. THE CONTACT OWNS A 1999 ISUZU RODEO, AND STATED THAT WHILE DRIVING ON THE ROAD AT 30 MPH THE VEHICLE IN FRONT OF THE CONTACT'S VEHICLE SLAMMED THE BRAKES SUDDENLY, CAUSING THE CONTACT TO DO THE SAME. THE CONTACT STATED THAT THE VEHICLE HAD SEVERE DAMAGE IN THE FRONT. UPON IMPACT, THE AIRBAGS DID NOT DEPLOY. THERE WERE NO WARNING LIGHTS CONCERNING THE AIRBAGS BEFORE AND SUBSEQUENT TO THE ACCIDENT. THE CONTACT COULD PROVIDE PICTURE IF NEEDED. THE FAILURE MILEAGE WAS 96,371 MILES. *AK |

# EXHIBIT B







| | |
|---|---|
| Year: 2004 | Engine: ENGINE, VORTEC 4200 MFI L6 includes transmission oil cooler (275 HP [205.1 kW] @ ... |
| Make: Buick | Transmission: TRANSMISSION, 4-SPEED AUTOMATIC, ELECTRONICALLY CONTROLLED WITH ... |
| Model: Rainier 4dr CXL AWD | Exterior: Black |
| VIN: ▓▓▓▓▓▓▓ | Interior: Medium Pewter |

**CITY MPG**
**14**



**HIGHWAY MPG**
**19**

Actual mileage will vary with options, driving conditions, driving habits and vehicle's condition

## MECHANICAL

· Transfer case, AWD electronic automatic system, variable driving torque percentage
· Alternator, 150 amps
· Battery, heavy-duty, includes rundown protection and retained accessory power
· All-wheel drive
· GVWR, 5750 lbs.
· Differential, locking, heavy-duty, rear
· Rear axle, 3.73 ratio
· Suspension Package, Premium Smooth Ride
· Suspension, front, double A arm
· Suspension, rear, load-leveling, 5-link solid axle, electronically controlled air suspension
· Trailering equipment, heavy-duty, includes trailering hitch platform, 7-wire harness plus CHMSL wire and heavy-duty flasher
· Trailering wire harness, connector
· Tires, P255/60R17, all-season, blackwall
· Tire, spare, full-size, includes 17" steel wheel located at rear underbody of vehicle
· Wheels, 4 - 17" x 7" custom aluminum, 8-spoke, includes tri-shield center caps and full-size steel spare
· Steering, power
· Brakes, 4-wheel antilock, 4-wheel disc
· Fuel capacity, approximate, 22 gallons

## EXTERIOR

· Luggage rack, rooftop, includes side rails
· Bumpers, front and rear, color-keyed
· Headlamps, dual halogen composite, includes flash-to-pass feature and automatic lamp control
· Daytime running lamps, includes automatic exterior lamp control
· Lamps, cornering
· Fog lamps, front, halogen
· Mirrors, outside rearview, foldaway, heated, with turn-signal indicators
· Glass, Solar-Ray deep tinted
· License plate bracket, front, includes cover for states where a front license plate is not required
· Body, liftgate with liftglass, includes electric release and rear-window wiper/washer
· Wipers, intermittent, front

## INTERIOR

· Custom Perforated Leather-appointed seats
· Seats, front leather-appointed reclining buckets, with adjustable head restraints, driver and passenger seat includes 8-way power adjustment and 2- way power lumbar; center console and storage pocket on passenger seat only

· Seat adjuster, power passenger 8-way
· Seats, rear, 2nd row, split-folding
· Floormats, color-keyed, carpeted front and rear, removable
· Steering wheel, leather-wrapped rim, includes accessory controls for audio and Driver Information Center
· Steering column, Tilt-Wheel, adjustable, includes brake/transmission shift interlock
· QuietTuning, includes acoustic laminate in windshield, laminated front door glass, 26 strategically-placed elements of sound insulation, specially- selected quiet-riding tires and exhaust modifications
· Windows, power, includes driver and front passenger, express-down feature and lockout features
· Door locks, power programmable
· Keyless entry, remote, programmable, includes 2 transmitters, panic button and content theft alarm
· Driver Information Center, monitors up to 13 different systems; includes trip computer, fluid levels and door ajar
· OnStar, 1-year Safe and Sound service, includes automatic notification of air bag deployment, emergency services, roadside assistance, stolen-vehicle tracking, AccidentAssist, remote door unlock, remote horn and lights. Drivers can also opt for other available OnStar services, including making and receiving voice-activated, hands-free phone calls with Personal Calling and getting location-based traffic and weather reports with Virtual Advisor
· Memory Package, 2-position memory, driver seat and outside rearview mirrors
· Cruise control
· Travel Note digital recorder, located in overhead console
· Universal transmitter, HomeLink, includes garage door opener, 3-channel programmable
· Theft-deterrent system, PASSlock
· Theft-deterrent alarm system, content theft alarm
· Air conditioning, dual-zone, automatic, individual climate settings for driver and right-front passenger
· Defogger, rear-window, electric
· Sound system, ETR AM/FM stereo with CD and cassette player, includes seek-and-scan, digital clock, auto-tone control, speed-compensated volume, TheftLock, random select, auto-reverse cassette and Radio Data System
· Sound system feature, rear audio controls, includes headphone jacks and controls
· Cupholders, front and rear of center console
· Glovebox, passenger side of instrument panel
· Power outlets, auxiliary, covered, 2 in front bottom of instrument panel, 1 in rear of center console, 12-volt
· Lighting, perimeter with theater dimming, cargo compartment, reading lamps in all rows; door- and tailgate-activated switches, illuminated entry, exit feature and rear map lights
· Console, overhead, custom
· Visors, padded, color-keyed, driver and passenger side with cloth trim, extendable feature, illuminated vanity mirrors
· Cargo storage well

## SAFETY

· Brakes, 4-wheel antilock, 4-wheel disc
· Air bags, frontal, driver and right front passenger
· Daytime running lamps, includes automatic exterior lamp control
· Door locks, child security, rear

## New

| | |
|---|---|
| **MSRP** | **$37,595.00** |
| **INSTALLED OPTIONS** | |
| Emissions, Federal Requirements | $0 |
| GVWR, 5750 LBS. (2608 KG) | $0 |
| CXL Preferred Equipment Group | $0 |
| · standard equipment | |
| Convenience Package | $150 |
| · convenience net | |
| · rear reversible cargo mat and cargo shade | |
| · rear | |
| Pedals, Power Adjustable | $150 |
| Seats, Heated, Driver And Front Passenger | $275 |
| · separate control for back and seat cushion | |
| Smokers Package | $30 |
| · muffin ash tray and lighter | |
| Sunroof, Power, Tilt Sliding, Electric With Express Open And Wind Deflector | $885 |
| Original Shipping Charge | $685 |
| **RETAIL PRICE (ORIGINALLY NEW)** | **$39,770.00** |

### Get more information on your smartphone:





**(M) BILL MARSH**

**www.BillMarsh.com**
**800-596-2774**

Year:  2012
Make:  Buick
Model:  Enclave AWD 4dr Premium
VIN:

Engine:  V6 Cylinder Engine
Transmission:  TRANSMISSION, 6-SPEED AUTOMATIC
Exterior:  White Diamond Tricoat
Interior:  Titanium

## MECHANICAL

- Axle, 3.16 ratio
- All-wheel drive
  Alternator, 170 amps
- Trailering provisions, 2000 lbs (907 kg)
- GVWR, 6459 lbs. (2930 kg)
- Suspension, Premium Ride, 4-wheel independent
- Steering, power, variable effort
- Exhaust, dual with bright chromed tips

## EXTERIOR

- Luggage rack side rails, roof-mounted, chromed
- Headlights, articulating
- Fog lamps, front, halogen, with projector technology
- Glass, Solar-Ray deep-tinted, rear-side, quarter panel and liftgate
- Wipers, front intermittent with structureless wiper blades
- Wiper, rear intermittent with washer
- Liftgate, rear power

## ENTERTAINMENT

- SiriusXM Satellite Radio is standard on nearly all 2012 GM models. Enjoy a 3-month trial to the XM Select package, with over 170 channels including commercial-free music, all your favorite sports, exclusive talk and entertainment. And now add premium channels to your trial at no-cost. Welcome to the world of satellite radio. (Requires a subscription sold separately by SiriusXM after the trial period. If you decide to continue your service at the end of your subscription, service will automatically renew and bill, at the rates in effect at the time of renewal, until you call SiriusXM at 1-866-635-2349 to cancel. See our Customer Agreement for complete terms at www.siriusxm.com. Available only to those at least 18 and older in the 48 contiguous USA and D.C. Replaced by (UBS) NavTraffic when (UUM) Audio system with Navigation or (U4H) Audio system with Rear Seat Entertainment are ordered.)
- Bluetooth for phone personal cell phone connectivity to vehicle audio system and HMI (Human Machine Inerface)

- QuietTuning Buick exclusive process to reduce, block and absorb noise and vibration to create a quiet interior cabin

## INTERIOR

- Seat adjuster, 4-way power front passenger (fore-aft and recline), power lumbar
- Floor mats, front and rear auxiliary, covering (Floormats first, second and third row )
- Steering wheel, leather-wrapped with Mahogany wood accents
- Instrumentation includes Driver Information Center, tachometer, speedometer, fuel, coolant temperature, battery, gear selector, outside air temperature and compass display (Digital compass display moves to navigation screen with (UUM) Audio system with Navigation and (U4H) Audio system with Rear Seat Entertainment and Navigation.)
- Instrumentation, engine oil life monitor
- Windows, power with driver Express-Up and -Down features, passenger Express-Down feature
- Universal Home Remote, includes garage door opener, 3-channel programmable
- Theft-deterrent system, vehicle, PASS-Key III, engine immobilizer with content theft alarm
- Air conditioning, tri-zone automatic climate control with individual climate settings for driver and right front passenger and rear seat occupants
- Defogger, rear-window electric
- Glovebox, locking, passenger-side of instrument panel
- Mirror, inside rearview auto-dimming
- Visors, driver and front passenger illuminated vanity mirrors

## SAFETY

- Brakes, 4-wheel antilock, 4-wheel disc
- Air bags, dual-stage frontal and side-impact, driver and front passenger and side curtain for first, second and third row outboard passengers with Passenger Sensing System and roll over protection (Always use safety belts and child restraints. Children are safer when properly secured in a rear seat in the appropriate child restraint. See the Owners Manual for more information.)
- Door locks, rear child security
  Tire Pressure Monitor System



| CITY MPG | | HIGHWAY MPG |
|---|---|---|
| **16** | | **22** |

Actual mileage will vary with options, driving conditions, driving habits and vehicle's condition

## New

| MSRP | $45,765.00 |
|---|---|
| **INSTALLED OPTIONS** | |
| Emissions, Federal Requirements | $0 |
| 1 SN Preferred Equipment Group | $0 |
| Wheels, 20" (50.8 CM) Chrome Clad Aluminum | $300 |
| Tires, P255/55 R20 All Season, Blackwall | $0 |
| Wheel, 17" (43.2 CM) Compact Steel Spare Wheel And Tire | $0 |
| White Diamond Tricoat | $795 |
| Titanium, Perforated Leather Seating Surface | $0 |
| Audio System With Rear Seat Entertainment And Navigation | $3,185 |
| Sunroof, Power | $1,400 |
| License Plate Bracket, Front Mounting Package | $15 |
| Navtraffic | $0 |
| Original Shipping Charge | $825 |
| **RETAIL PRICE (ORIGINALLY NEW)** | **$52,285.00** |

### Get more information on your smartphone:



# Pilson Auto Centers

pilsonauto.com
217-234-6461

MonroneyLabels.com

Year:  2014
Make:  Buick
Model:  Encore AWD 4dr Leather
VIN:  ████████████████

Engine:  4 Cylinder Engine
Transmission:  TRANSMISSION, 6-SPEED AUTOMATIC, ELECTRONICALLY CONTROLLED WITH ...
Exterior:  Quicksilver Metallic
Interior:  Ebony

## MECHANICAL

· Axle, 3.53 final drive ratio
· Drivetrain, all-wheel drive
· Alternator, 130 amps
· Suspension, Ride and Handling
· Steering, power, variable effort, electronic
· Exhaust system, rear exit
· Exhaust tip, styled stainless steel
· Keys, cylinder, foldable
· Mechanical Jack

## EXTERIOR

· Tires, P215/55R18 all-season, blackwall
· Tire, compact spare 16" , located under cargo floor
· Fascias, front and rear accent color includes rocker moldings
· Headlamps, halogen composite projector beam with blue translucent ring and automatic exterior lamp control
· Fog lamps, front
· Lamp, center high-mounted stop/brake
· Glass, acoustic, laminated
· Glass, deep-tinted
· Windshield, solar absorbing
· Mirrors, outside heated power-adjustable, body-color, manual-folding with turn signal indicators
· Door handles, body-color with chrome strips
· Wipers, front intermittent with pulse washers
· Wiper, rear intermittent
· Vehicle protection, corrosion preventative

## ENTERTAINMENT

· Antenna, roof-mounted
· Audio system feature, 6-speaker system
· Audio system feature, color display, 7" diagonal
· QuietTuning Buick exclusive process that consists of acoustically enhanced windshield and side glass, along with numerous noise canceling acoustic treatments to reduce, block and absorb noise and vibration to create a quiet interior cabin
· Noise control system, active noise cancellation

## INTERIOR

· Memory Package driver side "presets" for seat position
· Seats, heated driver and front passenger
· Seat adjuster, driver 6-way power with manual recline and power lumbar adjustment
· Seat adjuster, front passenger 6-way power with manual recline and power lumbar adjustment
· Seatback, passenger flat-folding
· Headrests, 2-way adjustable, up/down
· Door sill plate cover, front
· Steering column, tilt and telescopic, adjustable

· Steering wheel, leather-wrapped 3-spoke, color-keyed with theft-deterrent locking feature
· Steering wheel, heated
· Steering wheel controls, mounted audio and phone interface controls
· Driver Information Center includes tachometer, speedometer, fuel, coolant temperature, battery and compass
· Instrumentation, outside temperature display, located on audio system
· Instrumentation, analog with mpg speedometer and tachometer
· Oil life monitoring system
· Cruise control, electronic with set and resume speed
· Air conditioning, dual-zone automatic climate control with individual climate settings for driver and right front passenger
· Air filter, particle
· Defogger, rear-window electric
· Shift knob, satin silver and chrome
· Glovebox, dual
· Power outlet, 120-volt, located on the rear of center console
· Mirror, inside rearview auto-dimming
· Visors, driver and front passenger illuminated vanity mirrors, covered
· Lighting, interior, dimming instrument panel cluster
· Lighting, interior, Ice Blue ambient, located on instrument panel
· Lighting, interior, overhead courtesy lamp
· Lighting, interior, rear cargo compartment lamp
· Cargo storage, tray under rear floor
· Cargo cover, rear, stowable and removable
· Side Blind Zone Alert

## SAFETY

· Brakes, 4-wheel antilock, 4-wheel disc
· StabiliTrak, stability control system
· Daytime Running Lamps, reduced intensity low beam
· Air bags, frontal and knee for driver and front passenger, side-impact seat-mounted and roof rail for front and rear outboard seating positions
· Air bag, Passenger Sensing System, sensor indicator inflatable restraint, front passenger/child presence detector
· Safety belts, 3-point, driver and front passenger height-adjustable with load limiters
· Safety belts, 3-point rear, all seating positions
· Restraint provisions, child, isofix 2 point only, point/latch includes 3 top tether points
· Rear Cross-Traffic Alert
· Rear Vision Camera
· Door locks, child security, rear, electrical
· Tire Pressure Monitor, manual learn
· Horn, dual note tone



CITY MPG
**23**

HIGHWAY MPG
**30**

Actual mileage will vary with options, driving conditions, driving habits and vehicle's condition

## INSTALLED OPTIONS

| | |
|---|---|
| Emissions, Connecticut, Delaware, Maine, Maryland, Massachusetts, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont And Washington State Requirements | $0 |
| 1SL Preferred Equipment Group | $0 |
| · Standard Equipment | |
| Quicksilver Metallic | $0 |
| · (B13) Dark Argent Metallic lower accent color | |
| Dark Argent Metallic Lower Accent Color | included |
| Ebony, Leather Appointed Seats | $0 |
| Audio System With Navigation, Am/Fm/Siriusxm Stereo, Single CD Player And MP3 Player | $795 |
| · navigation | |
| · IntelliLink 7" diagonal color LCD display | |
| · GPS navigation system | |
| · USB port | |
| · Radio Data System (RDS) and auxiliary input jack | |
| License Plate Bracket, Front Mounting Package | $0 |
| Original Shipping Charge | $925 |



www.creditnow.com
866-864-9899

| | |
|---|---|
| Year:  2012 | Engine:  8 Cylinder Engine |
| Make:  Cadillac | Transmission:  TRANSMISSION, 6-SPEED AUTOMATIC, HEAVY-DUTY, 6L80E, ELECTRONICALLY... |
| Model:  Escalade 2WD 4dr Platinum Edition | Exterior:  White Diamond Tricoat |
| VIN: | Interior:  Cocoa/Light Linen |

## MECHANICAL

· Throttle control, electronic
· Cooling, external engine oil cooler, heavy-duty
· Cooling, external transmission oil cooler, heavy-duty air-to-oil
· Rear wheel drive
· Differential, heavy-duty locking rear
· Rear axle, 3.42 ratio
· Battery, heavy-duty with rundown protection and retained accessory power
· Alternator, 160 amps
· Trailering equipment, heavy-duty includes trailering hitch platform, 7-wire harness with independent fused trailering circuits and 7-way sealed connector
· GVWR, 7100 lbs.
· Suspension, front independent, SLA, coil over shock and stabilizer bar
· Suspension, rear 5-link coil springs
· Automatic level control, heavy-duty, air
· Steering, power, rack-and-pinion
· Exhaust, dual-outlet stainless-steel

## EXTERIOR

· Tires, P285/45R22, all-season, blackwall TL AL2
· Tire inflation kit
· Fascia, front, body-color
· Fascia, rear, body-color
· Moldings, color-keyed bodyside with chrome accents
· Headlamps, LED
· Headlamps, Twilight Sentinel automatic delay
· Headlamps, IntelliBeam
· Fog lamps, front rectangular halogen, integral in front fascia
· Tail lamps, LED illumination
· Mirrors, outside heated power-adjustable, power-folding and driver-side auto-dimming, color-keyed with integrated turn signal indicators, ground illumination and programmable to provide curb view when in reverse
· Wipers, front intermittent

· Wiper, rear intermittent with washer
· Door handles, chrome
· Body, power liftgate

## ENTERTAINMENT

· Bluetooth for phone, personal cell phone connectivity to vehicle audio system and HMI
· NavTraffic is available in over 100 markets and works with your vehicle's navigation system to give you continuously updated traffic data right when you need it most – while you're driving. You'll avoid traffic tie-ups, save time and gas by getting alternate routes, and, in some cases, receive traffic speed and drive-time information. Plus, you can use NavTraffic at the same time you're enjoying SiriusXM Satellite Radio. You'll find that once you start using NavTraffic, you won't want to drive without it.
· Audio system feature, Bose 5.1 Cabin Surround Sound system with 10 speakers

## INTERIOR

· Seat release, second row, power for tumble and fold
· Floor covering, color-keyed carpeting
· Steering wheel, power-tilt, color-keyed with wood and leather-wrapped rim, locking
· Steering wheel controls, mounted audio and Driver Information Center controls
· Instrumentation, analog with speedometer, odometer, fuel level, engine temperature and tachometer
· Windows, power with driver and front passenger Express-Up/Down and lockout features
· Pedals, power-adjustable for accelerator and brake
· Remote vehicle start, adaptive
· Cruise control, electronic with set and resume speed
· Theft-deterrent system, vehicle, PASS-Key III+
· Cup holders, quad front, dual second row and single third row
· Cup holders, heated and cooled
· Mirror, inside rearview auto-dimming, includes OnStar controls
· Visors, driver and front passenger illuminated vanity mirrors with extenders

## SAFETY

· Brakes, 4-wheel antilock, 4-wheel disc, VAC power
· Daytime Running Lamps with automatic exterior lamp control
· Air bags, head curtain side-impact, first, second and third row outboard seating positions with rollover sensor
· Air bags, seat-mounted side-impact, driver and right-front passenger for thorax and pelvic protection
· Rear Park Assist
· Rear Vision Camera
· Safety belts, first and second row belts to body, third row belts to seat, lap and shoulder all seating positions
· Door locks, child rear security

| CITY MPG | | HIGHWAY MPG |
|---|---|---|
| **14** |  | **18** |

Actual mileage will vary with options, driving conditions, driving habits and vehicle's condition.

## *New*

| | |
|---|---|
| **MSRP** | **$79,945.00** |
| **INSTALLED OPTIONS** | |
| Emissions, Federal Requirements | $0 |
| Platinum Edition Preferred Equipment Group | $0 |
| · Standard Equipment | |
| White Diamond Tricoat | $0 |
| Cocoa/Light Linen, Tehama Full Leather Seats With Mini Perforated Inserts | $0 |
| Audio System With Navigation, Compact Flash, Am/Fm/Siriusxm Stereo With MP3/CD/DVD Video/Audio Changer | $0 |
| Lpo, Wheel Locks | $55 |
| Original Shipping Charge | $995 |
| **RETAIL PRICE (ORIGINALLY NEW)** | **$80,995.00** |

## Get more information on your smartphone:





www.AtlantaAutos.com
678-213-4455

| | |
|---|---|
| Year: 2005 | Engine: 8 Cylinder Engine |
| Make: GMC | Transmission: TRANSMISSION, 4-SPEED AUTOMATIC , electronically controlled with overdrive |
| Model: Yukon XL 4dr 1500 4WD SLT | Exterior: Sport Red Metallic |
| VIN: | Interior: Pewter/Dark Pewter |

## MECHANICAL

· Battery, heavy-duty, 600 cold-cranking amps, includes rundown protection and retained accessory power
· Alternator, 160 amps
· Trailering wiring harness, 7-wire
· Recovery hooks, 2 front, frame-mounted
· GVWR, 7200 lbs
· Suspension Package, Premium Smooth Ride, includes 46mm diameter high pressure gas shocks
  Suspension, front, independent torsion bar, and stabilizer bar
· Suspension, rear, multi-link with coil springs
· Tire carrier, lockable, outside spare, winch-type mounted under frame at rear
· Steering, power
· Fuel capacity, approximate, gallon 31
· Exhaust, aluminized stainless-steel muffler and tailpipe
· Tools, mechanical jack and wheel wrench, stored in rear quarter trim

## EXTERIOR

· Luggage rack, roof-mounted, Black
· Bumper, front, chrome
· Bumper, rear, chrome step, includes pad
· Air dam, Gray
· Moldings, bodyside, body-color, with bright insert
· Grille, chrome surround
· Assist steps, Black, mounted between front and rear wheels at bottom of rocker panel
· Headlamps, dual halogen composite, includes flash-to-pass feature and automatic lamp control
· Fog lamps, front, rectangular, halogen
· Glass, Solar-Ray deep tinted
· Body, liftgate with liftglass, rear door system, includes rear-window wiper/washer

## INTERIOR

· SLT decor
· Seats, middle leather appointed 60/40 split-folding bench, 3-passenger with center armrest, storage tray and rear passenger easy entry
· Seats, rear 3rd row vinyl bench, 3-passenger, 1-piece removable

· Cupholders, in front seating area
· Cupholders, in rear of floor console
· Cupholders, driver and passenger side in 3rd row side trim
· Smokers Package, includes ashtray and lighter
· Floor covering, color-keyed carpeting
· Floormats, color-keyed, carpeted front and 2nd row, removable
· Steering column, Tilt-Wheel, adjustable, includes brake/transmission shift interlock
· Steering wheel, leather-wrapped rim, Black
· Steering wheel, mounted controls, includes audio and driver information center controls
· Driver Information Center, full functionality, monitors numerous systems
· Tire pressure monitoring system
· Instrumentation, analog, includes speedometer, odometer with trip odometer, fuel level, voltmeter, engine temperature, oil pressure and tachometer
· Warning tones, headlamp on, key-in-ignition, buckle-up reminder, turn signal on
· Windows, power, includes driver express-down and lockout features
· Cruise control, electronic with set and resume speed, includes telltale in instrument panel cluster
· Heater and defogger, includes front and side window defoggers, rear passenger heating ducts and heater, rear auxiliary
· Defogger, rear-window, electric
· Sound system feature, Bose Premium speaker system, 9 speakers, includes subwoofer in center console
· OnStar, 1-year Safe and Sound Service, includes automatic notification of air bag deployment, stolen vehicle tracking, emergency services, roadside assistance, remote door unlock, remote horn and lights, GM Goodwrench remote diagnostics, AccidentAssist and online concierge. Drivers can also obtain the available voice-activated, hands-free Personal Calling service and Virtual Advisor that provides location-based traffic and weather reports and other personalized information
· Door trim, lights on front doors, side reflectors on rear doors
  Armrests, driver and passenger doors, padded
· Mirror, inside rearview, electrochromic , 8-point compass, outside temperature indicator and right front passenger air bag status
· Visors, padded, Shale-colored, driver and passenger side with cloth trim, extenders, illuminated vanity mirrors and corner storage pockets on back of visors
· Assist handles, front passenger and outboard 2nd row seats
· Coat hooks, driver and passenger side, rear seat and cargo area
· Storage bin, behind rear driver side quarter panel

## SAFETY

· Air bags, frontal, dual-stage, driver and right front passenger, includes Passenger Sensing System
· Brake/transmission shift interlock



| CITY MPG | | HIGHWAY MPG |
|---|---|---|
| **14** | | **18** |

Actual mileage will vary with options, driving conditions, driving habits and vehicle's condition

## *New*

| MSRP | $42,155.00 |
|---|---|
| **INSTALLED OPTIONS** | |
| Suspension Package, Autoride | included |
| Emissions, Federal Requirements | $0 |
| SLT Preferred Equipment Group | $5,080 |
| Tires, P265/70 R17, All Season, White Outlined Letter | $125 |
| Seats, Front Leather Seating Surfaces Power Reclining Full Feature Buckets | included |
| Sound System, Etr Am/Fm Stereo With 6 Disc CD Changer | included |
| Wheels, 4 17" X 7.5" (43.2 CM X 19.1 CM) 6 Spoke Premium Aluminum Ultra Bright Polish | $645 |
| Safe And Secure Package | $1,470 |
| Sun, Sound And Entertainment Package | $2,720 |
| Trailering Equipment, Heavy Duty | $330 |
| Air Cleaner, High Capacity | $0 |
| Cooling, External Transmission Oil Cooler, Heavy Duty Air To Oil | included |
| Cargo Package | included |
| Mirrors, Outside Rearview, Power Folding, Power Adjustable, Heated, Color Keyed, Driver Side Electrochromic | included |
| Air Bags, Side Impact, Driver And Right Front Passenger | included |
| Entertainment System, Rear Seat | included |
| Pedals, Power Adjustable | included |
| Sound System Feature, XM Satellite Radio. | included |
| Sunroof, Power, Tilt Sliding, Electric | included |
| Universal Transmitter, Homelink | included |
| Customer Dialogue Network | $0 |
| Original Shipping Charge | $850 |
| **RETAIL PRICE (ORIGINALLY NEW)** | **$53,375.00** |



## www.BillMarsh.com
## 800-596-2774

MonroneyLabels.com

Year: 2007
Make: GMC
Model: Acadia FWD 4dr SLT
VIN:

Engine: V6 Cylinder Engine
Transmission: Automatic 6-spd
Exterior: Liquid Silver Metallic
Interior: Ebony

## MECHANICAL

· Axle, 3.16 ratio
· Front wheel drive
· Alternator, 170 amps
· GVWR, 6400 lbs. (2903 kg)
· Suspension, Ride and Handling
· Steering, power, variable effort
· Exhaust, double dual with chrome tips

## EXTERIOR

· Spoiler, rear
· Roof rails, brushed aluminum, longitudinal
· Moldings, body-color bodyside
· Headlamps, dual halogen projector lamp
· Headlamp control, automatic on and off
· Fog lamps, front round halogen
· Glass, Solar-Ray deep-tinted (all windows except light-tinted glass on windshield and driver- and front passenger-side glass)
· Door handles, chrome (Bright beltline molding.)
· Wipers, front intermittent with washers
· Wiper, rear intermittent with washer
· Body, manual rear liftgate

## INTERIOR

· Seats, heated driver and front passenger
· Console, front center with 2 cup holders and storage
· Cup holders, 2 front on the floor console
· Cup holders, 2 in the second row
· Floor mats, color-keyed carpeted front, second and third row, removable
· Floor covering, color-keyed carpeting
· Insulation, acoustical package
· Steering wheel, leather-wrapped with redundant audio controls
· Steering wheel, Tilt-Wheel and telescopic with brake/transmission shift interlock
· Instrumentation, 5-gauge with Enhanced Driver Information Center and outside temperature indicator
· Tire Pressure Monitoring System
· Cruise control, electronic with set and resume speed
· OnStar, 1-year of Directions and Connections plan. Includes the innovative easy to use Turn-by-Turn Navigation services which provide voice-guided directions (where available). Also includes Automatic Notification of Air Bag Deployment, Stolen Vehicle Location Assistance, Emergency Services, Roadside Assistance, Remote Door Unlock, OnStar Vehicle Diagnostics, Hands-Free Calling, AccidentAssist, Remote Horn and Lights, Information and Convenience Services, and Driving Directions (OnStar services require vehicle electrical system (including battery), wireless service and GPS satellite signals to be available and operating for features to function properly. OnStar acts as a link to existing emergency service providers, Stolen Vehicle Location Assistance and Remote Door Unlock success varies with conditions. OnStar Vehicle Diagnostic available on most 2004 MY and newer GM vehicles. Diagnostic capability varies by model. Turn-by-Turn Navigation requires ABS and is not available in certain areas. Visit onstar.com or call 1-888-466-7827 for system limitations and details)
· Universal Home Remote, includes garage door opener, 3-channel programmable
· Theft-deterrent system, vehicle, PASS-Key III, engine immobilizer
· Defogger, rear-window, electric
· Audio system controls, rear with 2 headphone jacks (headphones not included) and controls for volume, station selection and media
· Antenna, Quad-Band for AM/FM stereo and OnStar
· Mirror, inside rearview auto-dimming with 8-point compass display
· Visors, driver and front passenger, padded with cloth trim, color-keyed
· Cargo storage, under rear floor

## SAFETY

· Door locks, rear child security
· Horn, dual-note



| CITY MPG | | HIGHWAY MPG |
|---|---|---|
| **16** | | **22** |

Actual mileage will vary with options, driving conditions, driving habits and vehicle condition

## New

| MSRP | $33,225.00 |
|---|---|
| **INSTALLED OPTIONS** | |
| Body, Power Rear Liftgate | included |
| Emissions, Federal Requirements | $0 |
| SLT 2 Preferred Equipment Group | $0 |
| Tires, P255/55 R19 H Rated | $0 |
| Audio System With Navigation, Am/Fm Stereo With MP3 Compatible CD/DVD Player And DVD Based Navigation | $2,145 |
| Wheels, 4 19" X 7.5" (48.3 CM X 19.1 CM) Machined Ultrabright Aluminum | $1,295 |
| Mirrors, Outside Heated Power Adjustable, Power Folding And Driver Side Auto Dimming, Body Color | included |
| Audio System Controls, In The Rear Cargo Area | $150 |
| Cargo Package | included |
| Convenience Package | included |
| Trailering Package | $425 |
| Trailer Hitch, Factory Installed | included |
| Entertainment System, Rear Seat DVD Player | $1,295 |
| Audio System Feature, Bose Advanced 10 Speaker System | $0 |
| XM Satellite Radio. | included |
| Antenna, Quad Band | included |
| Head Up Display | $350 |
| Power Outlet, 3 Prong Household Style, 115 Volt | included |
| Remote Vehicle Start | included |
| Seat, 8 Way Power Driver | included |
| Seat, 4 Way Power Passenger | included |
| Sunroof, Dual Skyscape 2 Panel Power, Tilt Sliding Front And Fixed Rear | $1,300 |
| Washer Nozzles, Heated Windshield | included |
| Original Shipping Charge | $735 |
| **RETAIL PRICE (ORIGINALLY NEW)** | $40,920.00 |



www.BillMarsh.com
800-596-2774

Case 4:21-cv-06338-JST    Document 157-2    Filed 07/21/25    Page 11 of 11

| | |
|---|---|
| **Year:** 2009 | **Engine:** 8 Cylinder Engine |
| **Make:** GMC | **Transmission:** TRANSMISSION, 6-SPEED AUTOMATIC, HEAVY-DUTY, ELECTRONICALLY CONTR. |
| **Model:** Yukon XL Denali AWD 4dr 1500 | **Colors:** Summit White / Ebony |
| **VIN:** | **Mileage:** 200,006  **Stock #:** 2019-321 |

## MECHANICAL

- Rear axle, 3.42 ratio
- Tow/haul mode selector button located at end of shift lever
- Cooling, external engine oil cooler, heavy-duty air-to-oil integral to size of radiator
- Cooling, auxiliary external transmission oil cooler, heavy-duty air-to-oil
- Transfer case, AWD, electronic automatic system
- All-wheel drive
- Alternator, 160 amps
- Recovery hooks, 2 front, frame-mounted
- Differential, heavy-duty locking rear
- GVWR, 7400 lbs.
- Suspension Package, Autoride, bi-state variable shock dampening and rear air-assisted load-leveling Includes automatic air level control
- Suspension, front coil-over-shock with stabilizer bar
- Suspension, rear multi-link with coil springs
- Trailering equipment, heavy-duty includes trailering hitch platform, 7-wire harness with independent fused trailering circuits mated to a 7-way sealed connector and 2" trailering receiver
- Steering, power
- Brakes, 4-wheel antilock, 4-wheel disc
- Exhaust, aluminized stainless-steel muffler and tailpipe
- Tools, mechanical jack and wheel wrench stored in rear quarter trim

## EXTERIOR

- Wheels, 4-20" x 8.5" chrome aluminum
- Wheels, P275/55R20 all-season, blackwall
- Wheel, 17" full-size, steel spare
- Tire, spare P265/70R17
- Tire carrier, lockable outside spare winch-type mounted under frame at rear
- Fascia, front color-keyed
- Fascia, rear color keyed
- Luggage rack, roof mounted, body-color with bright accent
- Luggage rack center rails
- Moldings, body-color bodyside with bright inserts
- Grille, chrome surround
- Assist steps, Black with chrome inset, mounted between the front and rear wheels
- Headlamps, projector beam with automatic exterior lamp control and flash-to-pass feature
- Fog lamps, front round, halogen
- Mirrors, outside heated power adjustable, power folding and driver side auto-dimming, body-color, with integrated turn signal indicators, ground illumination and curb-tilt
- Glass, Solar-Ray deep-tinted
- Wipers, front intermittent, Rainsense
- Wiper, rear intermittent with washer
- Liftgate with liftglass, rear door system with rear-window wiper/washer
- Liftgate rear power-operated controlled from front overhead console, remote key fob or button inside liftgate

## ENTERTAINMENT

- Audio system, AM/FM stereo with MP3 compatible 6-disc in-dash CD changer seek-and-scan, digital clock and auto-tone control
- Audio system feature, Bose Centerpoint Surround Sound 10-speaker system
- XM Radio, XM Radio includes 3 trial months of service. XM turns your world on with commercial-free music channels from Rock to Jazz, Country to Classical, Latin Pop to Hip Hop, and virtually everything in between, all in amazing digital sound. Turn on your favorite Sports with every Major League Baseball game from Opening Day until the World Series, NHL Hockey, the PGA TOUR and college football and basketball. Plus XM brings you the biggest names in news and talk, outrageous comedy, award-winning family programming -- wherever you go from coast to coast. Exclusive live concerts, Oprah and Friends, Radio Disney, and so much more. Find what turns you on
- Audio system controls, rear with 2 headphone jacks
- power outlet and controls for volume, station selection and media
- Bluetooth for phone personal cell phone connectivity to vehicle audio system

## INTERIOR

- Seats, front bucket with leather-appointed seating, 12-way power driver and front passenger seat adjusters, including power lumbar control, power recline, heated seat cushion and seatbacks, 2-position driver memory, adjustable head restraints, storage pockets and floor console
- Seat adjuster, driver power
- Seat adjuster, front passenger power
- Seats, heated second row
- Seat release, second row, power release only
- Seats, third row 50/50 split-bench with vinyl, 3-passenger removable, all-belts-to-seat
- Console, floor with storage area, 4 cup holders and integrated second row audio and HVAC controls
- Cup holders, in front seating area
- Cup holders, in rear of floor console
- Cup holders, driver and passenger-side in third row side trim
- Floor covering, color keyed carpeting
- Floor mats, color-keyed carpeted front and second row removable
- Acoustical Insulation Package, premium
- Steering column, Tilt-Wheel, adjustable with brake/transmission shift interlock
- Steering wheel, Deluxe, leather wrapped with power-tilt
- Steering wheel, heated
- Steering wheel controls, mounted audio and cruise controls includes Driver Information Center controls
- Driver Information Center, full-functionality included with temperature and compass
- Instrumentation, analog with speedometer, odometer with trip odometer, fuel level, voltmeter, engine temperature, oil pressure and tachometer
- Warning tones, headlamp on, key-in-ignition, driver and passenger buckle up reminder and turn signal on
- Windows, power with driver Express-Down and lockout features
- Door locks, power programmable with lockout protection
- Remote vehicle starter system includes Remote Keyless Entry
- Pedals, power-adjustable for accelerator and brake, includes Rear Parking Assist
- Universal Home Remote includes garage door opener, 3-channel programmable
- Cruise control, electronic with set and resume speed
- Air conditioning, tri-zone automatic climate control with individual climate settings for driver and right-front passenger
- Air conditioning, rear auxiliary
- Heater, rear auxiliary with rear passenger heating ducts
- Defogger, rear window electric
- Rear Parking Assist, Ultrasonic with rearview LED display and audible warning
- Theft-deterrent system, vehicle, PASS-Key III
- Door trim, side reflectors on the rear doors
- Armrests, driver and passenger doors, padded
- Mirror, inside rearview auto-dimming
- Console, overhead mini with map lights
- Visors, driver and front passenger illuminated vanity mirrors, padded with cloth trim, extends on rod, Shade-colored
- Assist handles, front passenger and second row outboard
- Coat hooks, driver- and passenger-side rear seat and cargo area
- Lighting, interior with dome light, driver- and passenger side door switch with delayed entry feature, cargo lights, door handle or Remote Keyless Entry activated illuminated entry and map lights in front and second seat positions
- Power outlets, 4 auxiliary with covers, 12-volt, 3 in floor console, 1 in cargo area
- Storage bin, behind driver-side rear quarter panel
- Cargo mat

## SAFETY

- StabiliTrak, stability control system with traction control
- Air bags, dual-stage frontal, driver and right-front passenger with Passenger Sensing System
- Air bags, head curtain side-impact, first and second row outboard seating positions with rollover sensor, includes third row seating positions with 3 passenger third row bench seat
- OnStar, 1 year of Directions and Connections plan includes the innovative easy to use Turn-by-Turn Navigation service which provide voice-guided directions. Also includes Automatic Crash Notification, Automatic Notification of Air Bag Deployment, Stolen Vehicle Location Assistance, a link to all Emergency Services, Roadside Assistance, a Remote Door Unlock, OnStar Vehicle Diagnostics, Hands-Free Calling, AccidentAssist, Remote Horn and Lights, Information and Convenience Services, and Driving Directions
- LATCH system for child safety seats
- Tire Pressure Monitoring System



| CITY MPG | | HIGHWAY MPG |
|---|---|---|
| **12** | | **19** |

Actual mileage will vary with options, driving conditions, driving habits and vehicle's condition.

## New

| MSRP | $55,935.00 |
|---|---|
| **INSTALLED OPTIONS** | |
| Emissions, Federal Requirements | $0 |
| Preferred Equipment Group | $0 |
| • standard equipment | |
| Solid Paint | $0 |
| Summit White | $0 |
| Ebony, Perforated Nuance Leather Appointed Seat Trim | $0 |
| Audio System With Navigation, Am/Fm Stereo With MP3 Compatible CD/DVD Player And DVD Based Navigation | included |
| Sun, Entertainment And Destinations Package | $4,790 |
| • (UVB) AM/FM stereo MP3 compatible CD/DVD player and DVD-based navigation | |
| • (U42) rear seat entertainment system | |
| • (UVC) rearview camera system and (CF5) power sunroof | |
| • (CF5) power sunroof | |
| Sunroof, Power, Tilt Sliding | included |
| • express-open and close and wind deflector | |
| License Plate Bracket, Front | $15 |
| Entertainment System, Rear Seat DVD Player | included |
| • remote control | |
| • overhead display | |
| • 2 sets of 2-channel wireless infrared headphones and auxiliary audio/video input jacks | |
| Seats, Heated And Cooled, Seat Cushion And Seat Back For Driver And Front Passenger | $650 |
| Rearview Camera System | Included |
| XM Navtraffic | $0 |
| Customer Dialogue Network | $0 |
| Original Shipping Charge | $950 |
| **RETAIL PRICE (ORIGINALLY NEW)** | **$62,340.00** |

AUTO & TRUCK

www.redsautoandtruck.com
303-726-5520

# EXHIBIT C

Richard Heimann (CA State Bar # 063607)
Nimish R. Desai (CA State Bar # 244953)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery St., 29th Fl
San Francisco, CA 94111-3339
Telephone: 415-956-1000
Facsimile: 415-956-1008
rheimann@lchb.com
ndesai@lchb.com

David S. Stellings (*pro hac vice*)
Katherine I. McBride (*pro hac vice*)
Jessica A. Moldovan (*pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: 212.355.9500
Facsimile: 212.355.9592
dstellings@lchb.com
kmcbride@lchb.com
jmoldovan@lchb.com

*Attorneys for Plaintiffs*

[*Additional counsel listed on signature page*]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| James Milstead et al,<br><br>Plaintiffs,<br><br>v.<br><br>GENERAL MOTORS LLC, et al.,<br><br>Defendant. | Case No. 4:21-cv-06338-JST<br><br>**CLRA VENUE DECLARATION OF ARTHUR RAY PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1780(d)** |

I, ARTHUR RAY, declare as follows:

1. I have personal knowledge of the facts stated herein and, if called upon to do so, could competently testify thereto.

2. I am a Plaintiff in the above-captioned action.

3. I submit this declaration in support of the Complaint in this case, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code section 1750 *et seq.*

4. I understand that General Motors LLC, General Motors Company, and General Motors Holdings LLC have their principal places of business and generally conduct business in Detroit, Michigan.

5. The Complaint has been filed in the proper place for trial of this action.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on January 26, 2023 in Brentwood, Contra Costa County, California.

By: _____
ARTHUR RAY

# EXHIBIT D

**Forensic Report**
**May 26, 2022**

**File:**      **McCoy vs. GM – 2018 GMC Sierra HD**

**Subject:**   **Vehicle Safety Performance**


**Preliminary:**

      My name is Chris Caruso.  I am an engineer working as a consultant in the area of automotive safety.  I have been asked to provide my analysis and opinions in this case.

      A true and correct copy of my *curriculum vitae* is attached as Exhibit A.  As set forth in my *curriculum vitae*, I graduated in 1986 with a Master of Science in Engineering from Arizona State University.  Before earning my Master's degree in Engineering (MSE) at ASU, I obtained a Bachelor of Science degree in Electrical Engineering (BSEE) and Mechanical Engineering (BSME) from General Motors Institute in 1984.

      I worked as an engineer in training at General Motors Corporation ("GM") in Trenton, New Jersey from 1979 to 1986.  From 1986 to 1987, I was employed as a Systems Engineer in the Advanced Vehicle Systems division of Delco Systems Operations (DSO) in Santa Barbara, California.  During this time in the Advanced Vehicle Systems division, my work involved the engineering design and development of a variety of vehicle safety systems.

      From 1987 to 1989, I served as Delco Electronics Resident Engineer at Breed Automotive Corporation in Boonton, New Jersey.  During this time I was involved in the development and implementation of the second generation of airbag systems on GM vehicles and their subsidiaries in the US and overseas and the first generation of ball/tube sensing systems for GM and their worldwide subsidiaries vehicles.

      From 1989 to 1995, I worked as the Lead Systems Engineer for Automotive Safety Systems at Delco Electronics Corporation in Kokomo, Indiana.  As the Lead Systems Engineer for Automotive Safety Systems at Delco, in addition to other vehicle systems, I supported the development of the techniques and concepts for the first generation Event Data Recorder ("EDR") (which was a part of the electronic module known as Sensing and Diagnostic Module ("SDM")).  I was also responsible for investigating sensor issues in crash tests and field performance, including Crash Data Recording/Event Data Recording (CDR/EDR) downloads and interpretations.

1

During this time I also was a lead engineer in the development of crash sensor specifications and the airbag sensing systems for major OEM's worldwide. This included the development of the "Sensor Mounting Guidelines" specification provided to all OEM's who were implementing Delco Electronics safety systems.

From 1995 to 1999, I worked in the Advanced Algorithm Development Group at Delco Electronics in Kokomo, Indiana. During this time I developed algorithm design and crash sensing techniques for the new Electronic Frontal Sensor ("EFS") for frontal crash detection and also supported the development of the Frontal impact Sensor ("EFS") algorithm and signal processing designs.

I also reviewed and evaluated the methods, procedures and processes for the development of the airbag safety systems. As part of my work I designed the SDM crash sensing algorithms and CDR/EDR crash data recording logic. I also supported the development of the signal processing of input acceleration data for the next generation SDM sensor designs. I also designed a stand-alone CDR for application in field vehicles and fleet vehicles such as taxis and rental cars, as well as conducted detailed analysis of crash test data to determine sensing system design and performance. I investigated and identified sensor issues in crash testing and field performance, including many CDR/EDR downloads and interpretations. My work also included development of systems and sensors and analysis of data relating to vehicle crashworthiness.

In 1999, I also served as Senior Development Engineer for Automotive Safety Systems at Delphi Delco Electronics Systems in the Wuppertal Technical Center in Wuppertal, Germany, where I helped create an automotive safety system development group for our German engineering design center.

From 1999 to 2002, I was the Advanced Product Development Engineer at Delphi Delco Electronics Systems in Kokomo, Indiana. In addition to other projects, during this time I developed the next generation of front and frontal impact airbag sensing systems, as well as other vehicle safety systems and technologies, including crash sensing and system development for rollover roof rail airbag systems. I also obtained patent protection for six (6) crash sensing algorithms in connection with frontal and side airbag systems. I also continued to be involved in field investigations related to problems observed in system performance, including EDR/CDR downloads and interpretations. During this time, I evaluated potential airbag system defects and developed corrective actions and solutions to remedy problems that were found.

From 2002 to 2003, I worked as the Engineering Group Manager at Delphi Delco Electronics' Mexico Technical Center in Juarez, Mexico. During this time, I

managed engineering teams that developed software, systems and test engineering for Passive Occupant Detection System (PODS-B) and SDM and Satellite Sensor projects and continued my work involving vehicle systems product performance anomalies and issues, including substantial work involving downloads and interpretations.

In 2003, I was promoted to Technical Manager for Automotive Safety Systems at Delphi Corporation and continued in this role through 2006. During this time, I served as the Expert Technical Lead of all engineering disciplines (Systems, Mechanical, Electrical, Software, Test) on the development and product engineering of the PODS-B for advanced airbag systems. I also initiated the Advanced Development Project for revisions to the existing PODS-B algorithm and electronic technology. I regularly investigated and analyzed issues with the PODS and SDM systems in vehicles in the field and observed during developmental testing. In addition, a substantial part of my work involved CDR/EDR downloads and interpretations. I also provided regular training and classes in Airbag Systems and Occupant Detection Systems to engineers at Delphi and customer teams. I led the technical design review for Electronic Control Units (ECUs) and supported continuing development of the SDM and other airbag related technologies.

I voluntarily left Delphi in August of 2006. In July of 2007, I founded Automotive Safety Consulting, which provides automotive safety and technology consulting. The focus of my work with Automotive Safety Consulting involves: (1) analysis of passenger vehicle crashes and determination of the performance of the applicable safety systems; (2) identification and analysis of defects or deficiencies in occupant protection systems, if applicable; (3) research and analysis of the feasibilities and capabilities of safety system technologies and measures for preventing injuries and fatalities in a variety of field crash conditions; (4) development of protocols and support for CDR/EDR downloads; and (5) interpretation and analysis of CDR/EDR downloads.

As referenced in my CV, I have obtained six (6) patents in automotive safety technologies, 3 of which directly relate to crush zone crash sensing and all 6 of which are for products that are used in production vehicle safety systems. My work has also included two (2) publications and presentations for the Society of Automotive Engineers (SAE) International Congress involving automotive safety systems.

During the course of my work involving automotive safety systems, including my work involving SDM and Satellite crash sensing systems and analysis, I have received several awards and honors. For example, I am a recipient of the: (a) Delco Electronics Boss Kettering Award for Engineering Excellence; (b) the GM President's Council Honors Award for Engineering Excellence; (c) the Delphi Lead

3

Award for Advanced Engineering; (d) the GM People Make Quality Happen Award for Design Engineering Excellence; and (e) the Delphi Corporation Boron Recovery Award for Problem Solving, as well as numerous other awards and recognitions from GM, Delphi, and other OEMs.

In addition to safety consulting for various organizations needing technical information and guidance, I also provide consulting for parties in products liability cases involving automotive safety systems.  I have served as a consultant for both plaintiffs and defendants in numerous cases involving automotive safety systems, including cases involving EDR/CDR downloads and readouts.

As set forth above, over the course of my years as an engineer and as a result of my background, education, training, and experience, which includes over 36 years of experience working with vehicle safety systems and over 43 years working in the automotive engineering field, I have obtained extensive knowledge regarding airbag safety technologies for frontal impact, frontal impact, rollover, rear impact occupant protection systems and devices, as well as occupant classification systems.

## Background

This report addresses an incident that occurred on October 17, 2019 when Mark McCoy, driving a 2018 GMC Sierra HD ran off the left side of the roadway on an exit remap from Interstate 84, collided with two vehicles and a fence at a construction staging yard, causing significant frontal damage to the truck.  The frontal impact airbag did not deploy. Mr. McCoy was seriously injured in the collision.

The scene photo below shows the truck having gone through the fence and sitting atop the flatbed trailer up against the construction truck.

4



2018 GMC Sierra HD – Scene Photo

The following 2 scene photos shows the vehicle up against the axle of the construction truck.



2018 GMC Sierra HD – Scene Photo



2018 GMC Sierra HD – Scene Photo

This photo is of the post-accident subject 2018 GMC Sierra HD vehicle. Clearly there is a moderate to severe frontal impact to the front of the vehicle, which would warrant the deployment of the driver frontal impact airbag. The failure to deploy the airbag resulted in a vehicle that was defective, unsafe and unreasonably dangerous and led directly to the injuries suffered by Mr. McCoy.



2018 GMC Sierra HD – Inspection Photo

**Material Reviewed:**

- Connecticut Uniform Police Crash Report
- Scene Photos
- Danbury Hospital Records
- CDR Download from the Subject Vehicle
- ESIS Documents
- Inspection photos of the subject vehicle
- 2018 GMC Sierra 2500HD – Mitchell CRS Summary
- 2018 GMC Sierra 2500HD – NHTSA Ratings
- 2018 GMC Sierra 2500HD – NHTSA Recall Database
- 2018 GMC Sierra 1500 – IIHS Ratings

- GM and Aptiv (formerly Delphi) Document Production
- Exemplar Photographs

## **Examination:**

This subject collision was a partial underride impact to the front of the subject 2018 GMC Sierra HD.  Although less common for a heavy duty truck than a car, underride impacts are still foreseeable real world crash events where one vehicle rides underneath the structure of another vehicle, resulting in the primary deformation being above the bumper beam and primary vehicle structures.  This results in a longer, softer crash onset, but once the upper sheet metal (grill, radiator, headlamps, etc.) deform rearward to the engine, the crash pulse can become quite severe.

In our case, the subject collision still had a significant impact into the bumper and rails from the engagement with the construction truck axle, but clearly there was an underride component since the top of the radiator is clearly pushed further rearward than the lower radiator support and bumper structures.



2018 GMC Sierra HD – Inspection Photo

Based on the documents provided by both GM and Aptiv (crash sensing system supplier), GM had a 20mph Bumper Under-ride MUST DEPLOY Barrier test requirement for the subject vehicle, however, that was never directly tested, it appears that was evaluated based on some type of computer simulated crash data:

15-K2HD-FE01.01.

# Frontal Sensing Calibration Thresholds

**Threshold establishment method: Barrier Test and Supplier Scaling predictions**

| Threshold Condition | Speed km/h (mph) | Nominal Deployment Time (ms) | | Test # |
|---|---|---|---|---|
| | | Retractor Pretensioner Driver/Pass | Front Airbag Driver/Pass | |
| 0 Degree Frontal Thresholds | | | | |
| No Deploy | 16 (9) | ND | ND | C18329 |
| All-Deploy | 22 (14) | 32 | 32 | C19078 |
| 10 Degree Angle Frontal Thresholds | | | | |
| All-deploy | 28 (18) | 33 | 33 | 15-K2HD-FE01.04 (Left) |
| | | 33 | 33 | 15-K2HD-FE01.05 (Right) |
| Offset Frontal Sensing Thresholds | | | | |
| Offset Deformable Barrier | 40km/h (25mph) | 27 | 27 | C18437 |
| 0 Deg Center Pole | 35km/h (22mph) | 46 | 46 | 15-K2HD-FE01.02 |
| Bumper Under-ride Barrier | 32km/h (20mph) | 38 | 39 | 15-K2HD-FE01.01 |

2018 GMC Sierra HD – Calibration Thresholds

In this 20mph underride crash, the frontal impact airbags must deploy by 50ms to provide adequate occupant protection, according to the separately supplied calibration summary. In the subject crash, the estimated Delta V is approximately 30-35mph with an initial estimate of between 120-150ms time duration. This clearly is above both the standard airbag deployment threshold of 16mph rigid barrier impact as well as the 20mph underride severity. GM would have expected the frontal impact airbag, possibly a Stage 1 plus Stage 2 inflation level.

The failure to deploy the driver frontal impact in the subject collision left Mr. McCoy without any of the supplemental protection GM included in the vehicle safety system. Again, the failure to deploy this airbag was defective, unsafe and unreasonably dangerous.

The dual front EFS sensors are located on the underside of the lower radiator support of the 2018 GMC Sierra HD.

Mitchell **RepairCenter** TechAdvisor

## 2018 GMC 2500HD Sierra Denali
**Restraint Systems / Air Bag Service & Repair / Airbag / SUPPLEMENTAL INFLATABLE RESTRAINTS**

### Frontal Impact Sensing and Deployment (2500/3500)

Front End Inflatable Restraint Discriminating Sensor Replacement

Fig. 20: Airbag Front End Discriminating Sensor



2018 GMC Sierra HD – Mitchell Repair Center Details

During my inspection, I noted that the EFS sensors and the entire lower radiator support were rotated rearward and upward at some point in the collision sequence.



2018 GMC Sierra HD – Inspection Photo – EFS Rotated Upward

This rotation, if it occurred early in the construction truck crash or during the trailer undercarriage impact, this would have taken the EFS sensor out of the primary frontal impact direction (they have a single axis accelerometer inside that needs to be looking forward) and with them pointed upward in the vertical direction they would no longer be seeing the fore/aft crash severity and would fail to determine that airbag deployment was necessary.

However, subsequent inspection of an exemplar by Nick Earnhart showed that these sensors were well protected by the lower frame cross member and would have been unlikely to have been impacted and rotated during the trailer impact. Thus, although this was an initial concern, the information available would make this a low probability failure mode. It cannot be ruled out, but would likely have happened late enough in the crash that the airbag should have already deployed.



2018 GMC Sierra HD Exemplar – Earnhart Inspection Photo –
EFS and Cross Member

The next key piece of forensic evidence was the fact that the Sensing and Diagnostic Module (SDM) in the subject vehicle failed to record ANY crash event.

There were 3 events in the sequence: A chain link fence, a low boy trailer and the construction truck. According to GMs own specifications, even if no airbag deployment occurs, any event greater than 8km/h (5mph) will be recorded as part of the Crash Data Recording (CDR). From the excerpt below, it is clear than no event was recorded for this subject collision even though the event was clearly above 5mph.

  

IMPORTANT NOTICE: Robert Bosch LLC and the manufacturers whose vehicles are accessible using the CDR System urge end users to use the latest production release of the Crash Data Retrieval system software when viewing, printing or exporting any retrieved data from within the CDR program. Using the latest version of the CDR software is the best way to ensure that retrieved data has been translated using the most current information provided by the manufacturers of the vehicles supported by this product.

**CDR File Information**

| User Entered VIN | |
|---|---|
| User | R. Yeager |
| Case Number | MCCOY |
| EDR Data Imaging Date | 08/13/2020 |
| Crash Date | 10/17/2019 |
| Filename | ESIS AIRBAG DATA (CDR) - MCCOY (        ).CDRX |
| Saved on | Thursday, August 13 2020 at 11:14:12 |
| Imaged with CDR version | Crash Data Retrieval Tool 19.4.2 |
| Imaged with Software Licensed to (Company Name) | ESIS - General Motors |
| Reported with CDR version | Crash Data Retrieval Tool 19.4.2 |
| Reported with Software Licensed to (Company Name) | ESIS - General Motors |
| CDR Device Type | Airbag Control Module |
| Event(s) recovered | NONE |

2018 GMC Sierra HD – Crash Data Recording

The failure to record any data in this collision, also clearly violates GM's own specifications for the safety system. This can generally occur in one of three ways:
1. The event does not exceed 5mph
2. The SDM was without power at the time of the collision
3. The vehicle power system was interrupted during the crash.

In the first case, we know this event was clearly above the CDR recording threshold, therefore, this would not have been a factor.

In the second case, this is more difficult to prove and also the most difficult to eliminate. The fact that we had an above threshold frontal impact but the frontal impact airbag did not deploy and the fact that we had no crash data recorded identifies this as a possible root cause of BOTH failures. The GM Ignition switch defect and subsequent recall had these types of failures, however, it was not clear if this 2018 model vehicle would have had similar issues to the known defective GM ignition switch.

The third item is common in collisions such as this. Late in the crash event, the vehicle battery and fuse block can enter the crush zone and be destroyed. My inspection of the subject vehicle shows that this was likely. However, with the SDM having an energy reserve, this would not have prevented the airbag deployment, even if it failed to complete crash recording.

Thus, if we look at the key factors here, we had a deployment level crash event but no recorded data. With this, both items 2 and 3 are feasible scenarios, but if we focus on the lack of deployment, it leaves us with 2 possibilities to consider. If the failure to deploy was because of item 2, the complete power loss BEFORE the crash, then the root cause was simply this loss of power. But we need to determine the root cause of that catastrophic power loss. If the failure to deploy was part of item 3, then we must look at the crash sensing system to determine the root cause of the failure to recognize this crash as a severe event where airbag deployment was necessary. We will focus on this next.

First let's cover the loss of power. In the SDM, there exist an energy reserve capability. What this means is that since we know loss of vehicle power is common in crash events, particularly moderate to high severity crashes will significant intrusion in the engine bay, we provide internal capacitors within the SDM to provide a limited amount of additional power so that we can continue to process the crash information, deploy airbags and pretensioners, if needed, and then to perform the crash recording function.

From the SDM30 specification (the model that was used in the subject vehicle, it was shown that the energy reserve capability varied by function. The table below shows the energy reserve minimum requirement for the various SDM functions for the reserve power, which includes deployment of airbags, providing power to external satellite sensors, crash notification services and the disposal of any non-deployed stage 2 airbag inflators:



| GM | ENGINEERING STANDARDS | Component Technical Specification | SDM30 / ESS (Global-A) |

**3.4.6  Energy Reserve**

Table 7 provides a summary of energy reserve times for SDM functions.

| Function | Minimum Energy Reserve Time |
|---|---|
| Satellite Sensors (ESS) | 100 ms |
| All Deployment Loops (6 / 12 / 18 / 20 loops) | 100 ms |
| Airbag Disposal function (for 2nd or 3rd stage) | 150 ms |
| Automatic Crash Notification (GMLAN communication) | 200 ms |
| Event Data Recording (EDR) | 300 ms |

## GM Technical Specification Excerpt – SDM30

With the advent of NHTSA regulated Event Data Recording regulations in 2006, a 300ms for energy reserve is a very low number. Particularly with concatenated events and multiple rollover events, the duration of the entire crash sequence can take several seconds, and this low energy reserve value is likely to lead to failed EDR/CDR data under some foreseeable, real world crashes.

Assuming the vehicle power is lost during the 33mph impact into the construction truck, 300ms of Event Data Recording backup power should have been sufficient to complete most, if not all of the CDR data writing. Since we know the SDM30 did not record any event, then we must assume that some other factor played into the loss of power, before the system could complete writing the CDR data.

One such event could have been loss of power during the flatbed trailer impact. Interruption of battery power or an ignition key being jolted from the RUN position into the ACCessory position during this undercarriage strike. Although not common, it cannot be ruled out, as we try to understand the missing data from the SDM in a crash event clearly above the minimum 5mph requirement to dictate the writing of a crash event to memory.

Based on reconstruction estimates, if the battery or ignition feed were lost during the flatbed trailer impact, we have 200ms from onset of this event to the onset of the 120-150ms long construction truck event. Thus, based on the above table, depending on when the loss occurred, we would lose energy reserve to satellite sensors after 100ms as well as the ability to deploy airbags and pretensioners.

Thus, a catastrophic loss of power at least 100ms before the construction truck impact would prevent any deployments. A loss of power 300ms before the end of the construction truck crash would prevent both deployment as well as crash recording. There is no means available that I can envision where we could verify

14

the loss of power prior to or during the impact. But this could certainly be an explanation of the failure in itself.

Next we will focus on the crash sensing aspect of the possible defect. The 2018 GMC Sierra HD crash sensing system consists of the dual FCS sensors discussed above coupled with the SDM's own internal crash sensing capabilities. The crash sensing algorithm takes data from all 3 sensor locations and through a series of calculations and threshold comparisons makes severity level assessments and initiates the deployment of any necessary safety systems.

In this case, APTIV, the SDM and EFS supplier, utilizes a complex set of algorithms and rules. The Algo-Front5 system consists of dual 50G 45 degree oriented accelerometers within the SDM and 500G accelerometers in the EFS crush zone sensors. The EFS sensors send filtered acceleration data to the SDM. The SDM processes all the signals internally. Each of the devices is capable of providing both crash discrimination (Deploy and No Deploy) as well as "Safing" for the system. Safing is a safety check to insure that a deployment command is supported by at least one other sensor in the system, so that a single point sensor failure will not result in an inadvertent deployment.

The system can provide 5 levels of frontal crash severity output. The five levels, in order of crash severity are:

1. Seatbelt Pretensioner ONLY
2. Unbelted Occupant Stage 1 Airbag Deployment
3. Belted Occupant Stage 1 Airbag Deployment
4. Unbelted Occupant Stage 2 Airbag Deployment
5. Belted Occupant Stage 2 Airbag Deployment

Thus far, the SDM and crash sensing conditions are typical of the industry standards for 2018. The system is also capable of rear impact and rollover safety, but this will not be discussed here as these are not relevant to this subject collision.

Each EFS and the SDM are capable of system "Wakeup" when any of these devices experiences an acceleration value above the wakeup or "enable" threshold. However, one concern I identified with the system is that ALL sensors must RESET before the system will reset. Thus, if any of the sensors is still awake, the entire system remains awake. This could lead to a concatenated event issue, depending on how the SDM calculations are being performed.

A concatenated event is one where multiple events happen in series, as with the subject event. Recall in our collision, we have a fence impact, followed by a

15

trailer impact, followed by the construction truck impact. It is imperative that the system properly parse these into 3 discrete events. By requiring all 3 sensors to reach a reset condition could lead to the overall algorithm failing to parse this into 3 separate events, thus, considering this one long event, and possibly making incorrect decisions on event severity.

Reviewing the primary part of the SDM algorithm, it is carry over from the years I was designing these systems at Delphi. Without getting into the complexities the following graph from the algorithm presentation document shows that, depending the calibration, the concatenated even performance should be reasonable for most multiple event scenarios. This chart shows that once the primary event is over, it takes time for the system to reset. During this time, the threshold is still active and if another event should occur (concatenated event) the system can process the new event and still have active thresholds, even if it does not completely reset. EP1 is the crash "clock" and you can see the red curve below increments up to about 58ms and then slowly decrements back to zero. The green deployment threshold also moves back to its original position. If you look close, the tail of the green curve is a mirror image of the beginning of the curve. This is the way the system is supposed to work.



Crash Algorithm Presentation Excerpt – Threshold Performance Over Time

However, Aptiv added a new series of criteria to the algorithm. The first of which are the VSE and CVE modes. The VSE mode uses vehicle speed at time of wakeup to compare to different sets of deployment thresholds. In theory, if we know the vehicle speed at the onset of the collision, we can make an 'educated guess' at the potential severity, and thereby, use lower thresholds for faster deployment times.

Similarly, the CVE mode uses closing velocity at time of wakeup as a means of optimizing threshold crossings. On the surface, I have no issues with these criteria, however, what concerns me is that with these criteria active, other parts of the system calibration may be compromised on the assumption that the overall system is getting its timely deployment from this VSE mode.

But what if the vehicle speed at wakeup does not properly represent the oncoming crash severity (head on collision – subject vehicle at 50mph, opposing vehicle at 50mph; 100mph impact speed vs 50mph vehicle speed)? What if the closing velocity at wakeup does not represent the oncoming crash severity (50mph Deer Impact, with no need for airbag deployment in most cases)? Will the rest of the algorithm be able to properly determine crash severity? Is the entire calibration providing good redundancy, should any of the firing "Modes" fail to detect the appropriate crash severity?



Crash Algorithm Presentation Excerpt – VSE Enhancing



Crash Algorithm Presentation Excerpt – CVE Enhancing

It is not clear without having crash data from the CDR to assess if either of these enhancements could have influenced the overall algorithms ability to discriminate this subject collision scenario, which was never tested in a laboratory. However, using potentially erroneous external values for closing velocity and vehicle speed prior to impact, could adversely impact the normal functionality of the crash sensing algorithm.

However, the most important thing I noted in the calibration and algorithm reviews was that although I had believed GMTG was no longer forcing the use of 45ms shutoff times in 2018 model year with the SDM30, they appeared to be using very similar shutoff times in this calibration. Looking at the production parameter files, we are looking for the calibration name that ends with "ep_end_threshold". My recollection, although I was not able to confirm it, is that the crash sensing algorithm uses a 1.25ms time step. The calibration values are in "counts". Thus, a 45ms STOP time would equate to 45/1.25 = 36 counts in the calibration. Reviewing the detailed calibration file (Bates ASUS 011933- 011963) I found this range of values for this parameter:

$$12 \text{ counts x } 1.25\text{ms/count} = 16\text{ms}$$

18

$$40 \text{ counts} \times 1.25 \text{ms/count} = 50 \text{ms}$$

Thus, it appears that GMTG is still employing very aggressive stop times. Since our subject crash had 2 key consecutive events (impact with the flatbed trailer followed by impact with construction truck) with an estimated total time duration of about 200ms from the initial impact with the trailer to the initial impact with the construction truck, these aggressive calibration "ep_end_threshold" or SHUTOFF times, could have enhanced the algorithms inability to handle the concatenation of these two events, and the deployment threshold were SHUTOFF at the time the 33mph construction truck impact occurred.

| | |
|---|---|
| a5_cal2_.mode0_1_.ep_end_threshold | 16 |
| a5_cal2_.mode0_1_.threshold_stop | 80 |
| a5_cal2_.mode0_1_.threshold | 110 |
| a5_cal2_.mode0_2_.ep_begin_threshold | 11 |
| a5_cal2_.mode0_2_.ep_begin_slope | 14 |
| a5_cal2_.mode0_2_.ep_end_slope | 16 |
| a5_cal2_.mode0_2_.ep_end_threshold | 16 |
| a5_cal2_.mode0_2_.threshold_stop | 80 |
| a5_cal2_.mode0_2_.threshold | 110 |
| a5_cal2_.mode0_3_.ep_begin_threshold | 27 |
| a5_cal2_.mode0_3_.ep_begin_slope | 27 |
| a5_cal2_.mode0_3_.ep_end_slope | 16 |
| a5_cal2_.mode0_3_.ep_end_threshold | 32 |
| a5_cal2_.mode0_3_.threshold_stop | 0 |
| a5_cal2_.mode0_3_.threshold | 99999 |
| a5_cal2_.mode0_4_.ep_begin_threshold | 27 |
| a5_cal2_.mode0_4_.ep_begin_slope | 27 |
| a5_cal2_.mode0_4_.ep_end_slope | 16 |
| a5_cal2_.mode0_4_.ep_end_threshold | 32 |
| a5_cal2_.mode0_4_.threshold_stop | 0 |
| a5_cal2_.mode0_4_.threshold | 99999 |
| a5_cal2_.mode1_0_.ep_begin_threshold | 13 |
| a5_cal2_.mode1_0_.ep_begin_slope | 13 |
| a5_cal2_.mode1_0_.ep_end_slope | 16 |
| a5_cal2_.mode1_0_.ep_end_threshold | 36 |

X2HD Truck Calibration Excerpts – EP_END_THRESHOLD examples

With earlier model GMTG truck and SUV vehicles, I have had numerous failure to deploy cases where the root cause was determined to be the 45ms SHUTOFF criteria. I this case, the shutoff time varies based on the deployment mode of the algorithm but as stated above, they range from 16ms to 50ms. If the crash sensing algorithm is unable to reset during this gap between the onset of the trailer impact and the onset of the construction truck impact, the shutoff times will prevent the algorithm from deploying when the 33mph construction truck impact occurs.

The principles identified in their crash sensing algorithm and calibration strategy, including 'safing' are consistent with other systems that I have designed

19

and evaluated. However, although the design appears logical, the fact that the driver frontal impact airbag fails to deploy in a crash that is well above the airbag deployment threshold established by GMTG, clearly shows the GMTG implementation on the subject 2018 GMC Sierra HD is defective, unsafe and unreasonably dangerous.

The following would be alternative designs that existed in 2018 Model Year that GM could have employed in the 2018 GMC Sierra HD Frontal impact Safety System:

1. Modify the algorithm calibrations with more robust 120-150ms ep_end_threshold values.
2. Provide a larger energy reserve capability than 300ms, to insure that not only can airbags be deployed, but that crash recording can be completed.

Ultimately, the defective design and calibration of the frontal impact crash sensing system resulted in the failure to deploy the impacted driver frontal impact airbag in the subject crash. This condition was defective, unsafe and unreasonably dangerous to the vehicle occupants Mr. McCoy

## Opinions:

Based on the review of all the available information, a detailed review of the photos, available technical information, alternative designs and based on my years of experience designing, developing crash sensors and occupant safety systems, it is possible to formulate the following conclusions and opinions regarding the performance of the frontal impact airbag system in the subject 2018 GMC Sierra HD. I have formed these opinions utilizing the methodology which is accepted in the automotive safety system design and performance evaluation segments of the occupant restraint system industry.

The opinions rendered in this report are based on my knowledge, education, training, and experience, and are stated to a reasonable degree of engineering and scientific certainty. These opinions are based upon my review and analysis of the materials available as of the date of this report. I reserve the right to supplement or change the opinions expressed in this preliminary report based upon review of new materials or additional pertinent information, analyses or documentation received in the future:

- The vehicle crush conditions and severity of the subject collision were such

that the Driver Frontal Impact Airbag in the 2018 GMC Sierra HD should have deployed. This failure to deploy this airbags resulted in a condition that was defective, unsafe and unreasonably dangerous to the driver in this vehicle.

- Safer alternative designs existed, as set forth in the body of this report and they consisted of properly calibrated frontal impact crash sensors for the frontal impact restraint system that could have been employed in the 2018 GMC Sierra HD at the time that the vehicle left the control of General Motors Corporation. The failure to use a robust calibration resulted in system that was defective, unsafe and unreasonably dangerous to the occupant in this vehicle.

- The safer alternative designs would not have impaired the utility of the occupant restraint system in other testing or real world conditions if properly developed and employed in the 2018 GMC Sierra HD.

- The safer designs were both economically and technologically feasible at the time that the occupant restraint system left the control of General Motors Corporation.

- There were no known material alterations to the occupant restraint system and the subject vehicle after it left possession of the manufacturer which would have affected the performance of the system.


These opinions are based on all data which was available at the time of this report. Additional data provided as a result of detailed document discovery and production, at a later date could result in a refinement in the opinions and conclusions generated in this document. I also reserve the right to make additional observations and opinions and/or to modify observations and opinions based upon the review of the opinions of other experts.


*Chris Caruso*

Chris Caruso

(CV Provided Upon Request)

# EXHIBIT E

1   Richard Heimann (CA State Bar # 063607)
    Nimish R. Desai (CA State Bar # 244953)
2   **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
    275 Battery St., 29th Fl
3   San Francisco, CA 94111-3339
    Telephone: 415-956-1000
4   Facsimile: 415-956-1008
    rheimann@lchb.com
5   ndesai@lchb.com

6   David S. Stellings (*pro hac vice*)
    Katherine I. McBride (*pro hac vice*)
7   Jessica A. Moldovan (*pro hac vice*)
    **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
8   250 Hudson Street, 8th Floor
    New York, NY 10013
9   Telephone: 212.355.9500
    Facsimile: 212.355.9592
10  dstellings@lchb.com
    kmcbride@lchb.com
11  jmoldovan@lchb.com

12  *Attorneys for Plaintiffs*

13  *[Additional counsel listed on signature page]*

14              UNITED STATES DISTRICT COURT

15           NORTHERN DISTRICT OF CALIFORNIA

16

17  James Milstead, et al.,                      | Case No. 4:21-cv-06338-JST

18              Plaintiffs,                       | ~~SECOND~~ THIRD AMENDED CLASS
                                                  | ACTION COMPLAINT
19  v.

20  GENERAL MOTORS LLC, et al.,

21              Defendant.                        | **JURY TRIAL DEMANDED**

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | PARTIES | 4 |
|  | A. Plaintiffs | 4 |
|  | B. Defendants | 6 |
| III. | JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT | 7 |
| IV. | GENERAL FACTUAL ALLEGATIONS | ~~7~~8 |
|  | A. SDMs are supposed to detect crashes and control airbags and seatbelts. | ~~7~~8 |
|  | B. GM used a dangerous and defective SDM software calibration in its trucks and SUVs. | ~~10~~11 |
|  | C. GM knew that the SDM Calibration Defect was dangerous and unjustified but has failed to warn or compensate consumers. | ~~13~~14 |
|  |    1. Old GM recklessly downplayed serious risks of injury when it chose to include the SDM Calibration Defect in the Class Vehicles. | ~~15~~16 |
|  |    2. ~~The 45-millisecond~~ GM's aggressive cutoff was not necessary to protect against "late" airbag deployments | ~~18~~20 |
|  |    3. GM knew about a pattern of suspicious accidents involving the SDM Calibration Defect in the Class Vehicles. | ~~21~~22 |
|  |       a. GM has litigated (and settled) many personal injury lawsuits for suspicious airbag failures in the Class Vehicles. | ~~22~~23 |
|  |       b. GM knew or should have known about hundreds of publicly reported airbag failures in the Class Vehicles. | ~~30~~32 |
|  | D. Despite its knowledge, GM misrepresented and concealed important information about the SDM Calibration Defect and Class Vehicle safety. | ~~48~~50 |
|  |    1. Labels and window stickers on the Class Vehicles stated that they were equipped with working airbags and seatbelts and failed to disclose the SDM Calibration Defect. | ~~49~~51 |
|  |    2. GM published owners' manuals for the Class Vehicles that detailed their safety features but did not disclose the SDM Calibration Defect. | ~~52~~54 |
|  |    3. GM marketed the Class Vehicles to be safe and reliable but failed to mention the SDM Calibration Defect. | ~~56~~58 |
|  |    4. GM provided warranties to repair defects in the Class Vehicles and have not done so. | ~~59~~61 |
| V. | CLASS ACTION ALLEGATIONS | ~~60~~62 |
|  | A. The Class Definition | ~~60~~62 |
|  | B. Numerosity: Federal Rule of Civil Procedure 23(a)(1) | ~~61~~63 |
|  | C. Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3) | ~~62~~64 |
|  | D. Typicality: Federal Rule of Civil Procedure 23(a)(3) | ~~63~~65 |
|  | E. Adequacy: Federal Rule of Civil Procedure 23(a)(4) | ~~63~~65 |

**TABLE OF CONTENTS**
(continued)

Page

F.       Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2).. 6465

G.       Superiority: Federal Rule of Civil Procedure 23(b)(3) ..................................... 6466

VI.      ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED........................ 6466

VII.     CAUSES OF ACTION ................................................................................................ 6668

VIII.    PRAYER FOR RELIEF .............................................................................................. 8180

IX.      DEMAND FOR JURY TRIAL.................................................................................... 8281

SECOND THIRD AMENDED CLASS ACTION
COMPLAINT
4:21-CV-06338-JST

1    Plaintiffs, individually and on behalf of all others similarly situated (the "Class"), allege

2    the following against General Motors LLC, General Motors Holdings LLC, and General Motors

3    Company (collectively, "Defendants," "GM," or "New GM") based, where applicable, on

4    personal knowledge, information and belief, and the investigation of counsel and their experts.

5    Plaintiffs file this complaint pursuant to the Court's Order granting leave (Dkt. ~~177 at 25)~~, 196 at

6    19) and attach hereto as Exhibit E a redline comparison between this complaint and the previous

7    pleading for the Court's reference.

8    **I.      INTRODUCTION**

9          1.      This case involves a dangerous defect that compromises critical safety systems in

10   millions of GM trucks and SUVs. When working properly, during a frontal crash of sufficient

11   severity, a vehicle's seatbelts should tighten to hold the vehicle occupants in place, and the

12   airbags should inflate to protect them from hard impacts. A defect in the Class Vehicles, however,

13   can prevent seatbelt tightening and airbag deployment during certain types of crashes, leaving

14   vehicle occupants without protection exactly when they need it most.[1]

15         2.      The defect is contained in the software that governs the Class Vehicles' airbag

16   control unit. This unit, also known as the Sending and Diagnostic Module ("SDM"), is a small

17   computer connected to sensors placed throughout a vehicle. These sensors monitor vehicle

18   performance and tell the SDM when they detect irregular behavior.

19         3.      Based on the signals it receives from these sensors, the SDM *should* fire the

20   airbags and tighten seatbelts when needed in a real-world crash of sufficient severity. But in the

21   Class Vehicles, the software program that controls the SDM is calibrated in such a way that it

22   prematurely prevents airbag and seatbelt deployment ~~just 45 milliseconds after a crash has begun,~~

23   long before any reasonable or acceptable time to do so. This has serious repercussions in

24   foreseeable, real-world accidents that need seatbelt and airbag deployment after ~~45~~

25   ~~milliseconds—such~~ the software cuts off access to those features—such as accidents that involve

26

27   _____

[1] The "Class Vehicles" include all vehicles in the United States that contain the SDM Calibration
Defect that were (1) manufactured, sold, distributed, or leased by Defendants or (2)
28   manufactured, sold, distributed, or leased by General Motors Corporation ("Old GM") and
purchased or leased by Plaintiffs or a Class member after July 10, 2009.

1    multiple impacts, or that start with a soft initial onset and then increase in severity over time. In

2    such accidents, before the SDM has reset—in which the airbags and seatbelts in the Class

3    Vehicles can fail. Put simply, GM decided to install a because of a persistent, dangerous

4    insistence within the company's Trucks Group, GM used a software calibration that can and does

5    prematurely close the time window to engage airbags and seatbelts in a crash, putting occupants

6    of the Class Vehicles in at serious dangerrisk.

7         4.    Old GM knew about the effect of this calibration and related dangers from the very

8    outset, when it originally decided to prematurely close the time window for airbag deployment in

9    the Class Vehicles in the late 1990s.[2] In the process, Old GM overrode serious concerns from a

10   team from Delco Electronics (later called Delphi Electronics, now known as Aptiv), including

11   engineering manager, Chris Caruso. Mr. Caruso and a team of software engineers from Delco—

12   which designed the base SDM software program used in the Class Vehicles and other GM

13   vehicles—expressly warned Old GM in or about 1999 that preventing using its strategy to

14   prematurely cut off the potential for airbag and seatbelt deployment after 45 milliseconds during a

15   crash event was a reckless and dangerous design decision.

16        5.    Old GM's trucks groupTrucks Group, which was in charge of the design and

17   development for all GM trucks and SUVs, ignored this warning and insisted on using its defective

18   SDM calibration strategy to shut off the ability to deploy airbags and seatbelts after 45

19   milliseconds (the "SDM Calibration Defect"). Given their significant concerns, Mr. Caruso and

20   the Delco team insisted that Old GM sign a disclaimer of Delco's liability for the modified

21   algorithm as used in GM trucks and SUVs.

22        6.    Tellingly, a separate team in charge of the design and development for GM cars

23   rejected GM Trucks' approach after hearing (and heeding) the Delco team's concerns about the

24   earlier cutoff. As such, GM cars included a much longer window (at least two to three times

25   longer than fully twice as long as the window used by GM Trucks, approximately 100-150

26   milliseconds at minimum) for the airbags and seatbelts to deploy in a crash for the vehicles they

27

28   _____

[2] As detailed further below, Old GM filed for bankruptcy in 2009, which led to the creation of the
contemporary GM entities named as Defendants herein.

SECOND THIRD AMENDED CLASS ACTION
COMPLAINT
4:21-CV-06338-JST

1    designed. As such, not only did GM Trucks reject the warnings from Mr. Caruso and the Delco

2    team, it also ignored the its own cars group's views, which included a time window that more

3    reasonably and appropriately tracks the duration of crash events in the real world, as opposed to

4    the laboratory crash test environment.

5            7.        On information and belief, starting in or about 1999, GM Trucks Group (and Old

6    GM before it) installed the used its defective approach to SDM software calibration in all of the

7    Class Vehiclestrucks and SUVs (mid and large size vehicles) under its direction, and continued to

8    use its dangerous and defective approach to prematurely cut off airbag and seatbelt deployment

9    during crashes at least through model year 2018. Plaintiffs refer to this defective strategy—to

10   calibrate software to prevent airbag and seatbelt deployment during a "dead zone" that begins too

11   soon after a crash has begun, and well before the safer window used by GM cars (a minimum of

12   approximately 100 milliseconds after a crash has begun)—as the "SDM Calibration Defect."

13           8.        7. When General Motors, LLC ("GM LLC") was formed in 2009, it acquired

14   books, records, and personnel from Old GM that reflected this reckless decision to use the

15   dangerous SDM calibration in GM trucks and SUVs. Despite this acquired knowledge, GM

16   continued to use Delco SDMs in its vehicles and, on information and belief, continued to use the

17   defective software calibration associated with those Delco SDMs as well.

18           9.        8. Since it was formed in 2009, GM has gained still more knowledge of the defect

19   through personal injury lawsuits, consumer complaints, and its own investigations into serious

20   crashes where the airbags and seatbelts failed in the Class Vehicles. As an example, documents in

21   a personal injury lawsuit filed against GM LLC in 2011 describe the SDM Calibration Defect in

22   detail and relate Old GM's reckless decision to use it. *See* § IV.C.3.a, infra.  Chris Caruso, the

23   engineer who originally objected to the defective algorithm deployment strategy in the first

24   instance, has gone on to serve as an expert in a number of these cases.

25           10.       9. While the use of the defective shutoff strategy began some twenty years ago, it

26   remains a real and immediate risk to Plaintiffs and Class members today. Indeed, Indeed—and

27   while personal injury settlements are not uniformly made public (such that the records available

28   to Plaintiffs only reflect those publicly disclosed)—court records show that GM settled yet

1    another personal injury lawsuit about ~~this SDM calibration defect *just last month*,~~ the SDM

2    Calibration Defect in December 2022.

3        11.   Discovery in that case~~,~~ *McCoy v. General Motors*, revealed ~~the defect was~~

4    ~~included~~ that GM persisted in using its dangerous, early cutoff strategy in a model year 2018 GM

5    SUV. ~~This is~~ Mr. Caruso's report in *McCoy* provides direct evidence that ~~GM Trucks continued~~

6    ~~to use the~~, after first insisting on its defective deployment cutoff strategy in ~~its vehicles~~

7    approximately 1999, for many years (decades) ~~after its introduction in approximately~~

8    ~~1999~~thereafter up to 2018, GM Trucks failed to adopt a safer and more rational design that would

9    allow for deployment for at least as long as the window used by GM cars (*i.e.*, approximately 100

10   milliseconds at a minimum). *See* § IV.C.3.a, infra. To the contrary, in both 1999 and 2018, GM's

11   trucks and SUVs dangerously cut off the deployment window far short of that minimum.

12       12.   ~~10.~~Finally, publicly available consumer complaints to the National Highway

13   Traffic and Safety Administration ("NHTSA") detail more than *eight hundred* instances where

14   the airbags and/or seatbelts suspiciously failed in the Class Vehicles during frontal crashes. Many

15   of these reports specifically state that GM knew about and investigated the crash after the

16   reported airbag failures. A separate NHTSA dataset indicates that, from 1999 to 2021, at least

17   1,298 people were killed or injured in a frontal collision in which the airbags did not deploy in

18   one of these vehicles. *See* IV.C.3.b, infra.

19       13.   ~~11.~~Despite its knowledge of the ~~defect~~ SDM Calibration Defect and its impact on

20   safety, GM has concealed the defect and failed to recall or repair the Class Vehicles, and has

21   thereby avoided the significant costs, inconveniences, and reputational harms of recalling millions

22   of trucks and SUVs. GM has hidden the ~~Defect~~ defect despite its obligation to disclose it,

23   misrepresented the Class Vehicles to be safe, and continued to sell them to consumers.

24       14.   ~~12.~~Because of GM's failure to disclose the truth, consumers continue to purchase

25   and drive Class Vehicles with the SDM Calibration Defect every day—on road trips, commutes,

26   and weekend errands alike—unaware that their airbags and seatbelts may not work in certain

27   serious crashes when they need them. This lawsuit seeks redress from GM for the damages

28

1   incurred when Plaintiffs and proposed Class members paid for vehicles with a safety system that

2   may fail them in life-threatening collisions.

3   **II.      PARTIES**

4       **A.      Plaintiffs**

5       15.    Plaintiff James Milstead ("Plaintiff" for the purposes of this paragraph) is an

6   individual residing in Oxnard, CA. On September 11, 2021, Plaintiff purchased a 2012 Avalanche

7   (for purposes of Plaintiff's allegations, the "Class Vehicle") from Escondido Auto Super Center

8   in Escondido, CA. On information and belief for the reasons set forth herein, GM installed the

9   SDM ~~calibration defect—which~~ Calibration Defect—which shut off the vehicle's ability to

10  deploy airbags in a crash ~~after 45 milliseconds—in~~ prematurely—in Mr. Milstead's truck during

11  the manufacturing process, and Mr. Milstead's truck contained the SDM ~~calibration defect~~

12  Calibration Defect at the time he purchased the vehicle. At the time of purchase, Plaintiff

13  reasonably expected that the airbags and seatbelts would function in the event of a crash and had

14  no way of knowing that it contained a dangerous and defective SDM calibration that could cause

15  the airbags and seatbelts to fail when needed during a crash. To the contrary, before acquiring the

16  vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the

17  internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM

18  concealed the existence of the defective SDM calibration from consumers including Plaintiff.

19  Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if

20  Defendants did not conceal material information about the defective SDM calibration.

21      16.    Plaintiff Arthur Ray ("Plaintiff" for the purposes of this paragraph) is an individual

22  residing in Brentwood, California. In or around January 22, 2010, Plaintiff purchased a new 2010

23  GMC Sierra 2500 (for purposes of Plaintiff's allegations, the "Class Vehicle") from Concord

24  GMC, an authorized dealership located in Concord, California. On information and belief for the

25  reasons set forth herein, GM installed the SDM Calibration Defect—which shut off the vehicle's

26  ability to deploy airbags in a crash ~~after 45 milliseconds—in~~ prematurely—in Mr. Ray's truck

27  during the manufacturing process, and Mr. Ray's truck contained the SDM Calibration Defect at

28  the time he purchased the vehicle. At the time of purchase, Plaintiff reasonably expected that the

1    vehicle's airbags and seatbelts would function in the event of a crash and had no way of knowing

2    that it contained a dangerous and defective SDM calibration that could cause the airbags and

3    seatbelts to fail when needed during a crash. To the contrary, before acquiring the Vehicle,

4    Plaintiff viewed or heard commercials and reviews through television and the internet that touted

5    the safety and reliability of Plaintiff's vehicle, including its "Five Star" safety rating, and GM

6    vehicles generally. GM concealed the existence of the defective SDM calibration from consumers

7    including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less

8    for it, if Defendants did not conceal material information about the defective SDM calibration.

9        17.    Plaintiff Richard Vargas ("Plaintiff" for the purposes of this paragraph) is an

10    individual residing in Menifee, California. In or around December 2012, Plaintiff purchased a

11    new 2012 Chevrolet Suburban (for purposes of Plaintiff's allegations, the "Class Vehicle") from

12    El Camino Real Chevrolet dealership located in Monterey Park, California. On information and

13    belief for the reasons set forth herein, GM installed the SDM Calibration Defect—which shut off

14    the vehicle's ability to deploy airbags in a crash after 45 milliseconds  in prematurely—in Mr.

15    Vargas' SUV during the manufacturing process, and Mr. Vargas' SUV contained the SDM

16    Calibration Defect at the time he purchased the vehicle. At the time of purchase, Plaintiff

17    reasonably expected that the Vehicles' airbags and seatbelts would function in the event of a

18    crash and had no way of knowing that it contained a dangerous and defective SDM calibration

19    that could cause the airbags and seatbelts to fail when needed during a crash. To the contrary,

20    before acquiring the Vehicle, Plaintiff viewed or heard commercials and reviews through

21    television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle,

22    including its "Five Star" safety rating, and GM vehicles generally. Additionally, when at the

23    dealership before making his purchase, Plaintiff inquired about the airbags in the Class Vehicle.

24    GM concealed the existence of the defective SDM calibration from consumers including Plaintiff.

25    Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if

26    Defendants did not conceal material information about the defective SDM calibration.

27

28

1     **B.**    <u>**Defendants**</u>

2         18.    General Motors LLC ("GM LLC") is a Delaware limited liability company with its

3     principal place of business located at 300 Renaissance Center, Detroit, Michigan, and is a citizen

4     of the States of Delaware and Michigan. The sole member and owner of GM LLC is General

5     Motors Holdings LLC.

6         19.    General Motors Holdings LLC ("GM Holdings") is a Delaware limited liability

7     company with its principal place of business in Detroit, Michigan, and is a citizen of the States of

8     Delaware and Michigan. The sole member and owner of GM Holdings is General Motors

9     Company.

10        20.    General Motors Company ("GM Parent") is a Delaware corporation with its

11    principal place of business in Detroit, Michigan, and is a citizen of the States of Delaware and

12    Michigan. GM Parent's only asset is its 100% ownership interest in GM Holdings. In public SEC

13    filings, GM Parent states: "We design, build and sell cars, trucks, crossovers and automobile parts

14    worldwide." GM Parent sells vehicles throughout the United States "through [its] dealer network

15    to retail customers." As further noted in SEC filings, GM Parent is also responsible for making

16    reports to NHTSA related to vehicle safety and making determinations as to vehicle recalls.[3]

17        21.    Each of GM LLC, GM Holdings, and GM Parent operates out of GM's Global

18    Headquarters in Detroit, Michigan.

19        22.    In June 2009, Old GM filed for bankruptcy. Defendants were then created on or

20    about July 10, 2009, in connection with the sale of substantially all of Old GM's assets pursuant

21    to a Master Sale and Purchase Agreement. As a result of the sale, GM LLC acquired substantially

22    all of Old GM's books, records, and personnel. GM LLC then transferred some of these assets to

23    GM Holdings (formed shortly after the bankruptcy sale). Defendants thereby acquired from Old

24    GM the knowledge about the SDM Calibration Defect (defined below) that those books, records,

25    and personnel held. GM Parent and GM LLC also took responsibility for any necessary recalls of

26    Old GM vehicles going forward.

27

28

---

[3] *See* General Motors Company's Form 10-K for fiscal year 2019.

1       23.    The causes of action in this Complaint are directed to GM Parent, GM Holdings,

2  and GM LLC and are based on their misconduct.

3  **III.**    **JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT**

4       24.    This Court has original jurisdiction over this action pursuant to the Class Action

5  Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse

6  citizenship from one Defendant, there are more than 100 Class members, and the aggregate

7  amount in controversy exceeds $5 million, exclusive of interest and costs.

8       25.    This Court has personal jurisdiction over Defendants under California Code of

9  Civil Procedure section 410.10.

10       26.    Venue is proper in this District under 28 U.S.C. § 1391, and assignment is proper

11  to this division under N.D. Cal. L.R. 3-2, because a substantial part of the events or omissions

12  which give rise to the claims occurred in this District, and because Defendants have caused harm

13  to Class members residing in this District, including Plaintiff Ray. GM conducts substantial

14  business, including through numerous dealerships, and marketed, advertised, sold, and leased

15  Class Vehicle in this District.

16  **IV.**    **GENERAL FACTUAL ALLEGATIONS**

17      **A.**    **SDMs are supposed to detect crashes and control airbags and seatbelts.**

18       27.    Car crashes kill or seriously injure hundreds of thousands of people every year.

19  Because of this risk, the federal government requires automobile manufacturers to include critical

20  safety features—seatbelts and airbags—in all vehicles sold in the United States. This life-saving

21  equipment has been mandatory in passenger vehicles since 1997. *See* 49 U.S.C. § 30127.

22       28.    These features include seatbelt pretensioners, which tighten seatbelts to secure the

23  occupants, and airbags, which are cushions that rapidly inflate from the steering wheel and other

24  areas of the vehicle. During an accident, seatbelt pretensioners hold vehicle occupants in place,

25  and airbags buffer or prevent impact between occupants and hard structures in the vehicle.

26  Without the airbags, slamming into the hard structures (such as the steering wheel) during a crash

27  can and has caused serious injuries and death.

28

29.     When functioning properly, the combination of seatbelts and airbags is highly effective in reducing the safety risk in automobile collisions. NHTSA reports that the use of seatbelts and airbags reduces fatality risk by *61 percent* compared to an unbelted occupant in a vehicle without airbags.[4] From 1987 to 2017, an estimated 50,457 lives were saved because frontal airbags deployed during a crash.[5]

30.     Although airbags work effectively to protect occupants when necessary, they are not meant to deploy with every impact. A crash may be of lower intensity (e.g., a low-speed fender bender in a parking lot) such that the seatbelt alone will be sufficient protection for the occupant.[6] Airbags are designed to deploy in "moderate to severe" frontal or near-frontal crashes. A "moderate to severe" frontal crash is the equivalent of hitting a solid, fixed barrier at 8-14 miles per hour or higher.[7]

31.     Seatbelt and airbag systems are known as "passive" safety systems because, when they are needed, they are supposed to operate automatically (meaning, the driver does not need to hit a button to deploy the airbag). They use sophisticated hardware components and software to activate and deploy the seatbelts and airbags systems automatically.

32.     The "brain" behind this operation is the airbag control unit or "ACU" (also known as an Electronic Control Unit or "ECU"). GM refers to this component as the "Sensing and Diagnostic Module" or "SDM," and that term is used throughout this Complaint. SDMs are effectively computers that control the car's safety systems. They are intended, where appropriate, to issue a "command" to deploy airbags and tighten seatbelts to prevent or mitigate injury to vehicle occupants in a crash.

33.     The SDM operates in three basic phases:

a.     *First*, during regular vehicle operation, the SDM sits in a resting or "normal" mode. In this mode, the SDM constantly receives signals from sensors placed

---

[4] U.S. Department of Transportation, NHTSA, *Fatalities in Frontal Crashes Despite Seat Belts and Airbags*, NHTSA Technical Report No. DOT HS 811 202 (September 2009).
[5] NHTSA, Air Bags Overview. *Available at:* https://www.nhtsa.gov/equipment/air-bags (last visited ~~January 26~~July 27, 2023).
[6] Dr. Ching-Yao Chan, *Fundamentals of Crash Sensing in Automotive Airbag Systems*. Copyright Society of Automotive Engineers, (2000), at p. 50.
[7] Air Bags Overview, *supra* note 5.

~~SECOND~~ THIRD AMENDED CLASS ACTION
COMPLAINT
4:21-CV-06338-JST

1    throughout the vehicle, which collect and report information on inputs such as acceleration, wheel

2    speed, brake pressure, and impacts.[8] The SDM monitors and interprets these signals to determine

3    whether the vehicle is involved (or about to be involved) in a crash.

4              b.      *Second*, while monitoring these signals in "normal" mode, if and when the

5    SDM detects an irregular input that suggests a potential crash, it "wakes up" to search for further

6    confirmation of a crash (as opposed to, for example, an irregular input from slamming on the

7    brakes and then avoiding a collision). In this second stage—known as "wake up" or "standby"

8    mode—the SDM's crash-sensing software algorithm is engaged to quickly decipher crash status

9    and respond.[9] After "wake up" mode is triggered by an irregular input, if additional inputs

10   confirm a moderate to severe frontal crash, the SDM *should* issue a command to "fire" the airbag

11   and/or tighten the seatbelts as needed.[10]

12             c.      *Third*, the final phase in this sequence is the "reset" phase. From "wake up"

13   mode, after it detects that a crash or a potential crash has fully completed, (i.e., that the vehicle

14   has returned to normal operation after an irregular input) the SDM ultimately returns to its normal

15   operating state through "resetting."

16   34.      A vehicle striking a pothole illustrates this three-phase sequence. The vehicle first

17   operates with the SDM in "normal" mode as it drives down the road. Then, suddenly, the driver

18   hits an unseen pothole. This jolt from hitting the pothole (and/or related inputs like deceleration)

19   will trigger the SDM to enter "wake up" mode where it searches for more inputs. Awake, the

20   SDM quickly asks: "How fast is the vehicle slowing down? Is the front bumper crushed? Is the

21   vehicle speeding back up normally?" and reacting in turn.[11]

---

24   [8] Clemson University Vehicular Electronics Laboratory, "Airbag Deployment Systems."
25   Available at: https://cecas.clemson.edu/cvel/auto/systems/airbag_deployment.html (last visited
     ~~January 26~~July 27, 2023).
     [9] John Pearley Huffman, "The Physics of Airbags," *Car & Driver*, June 14, 2011. Available at:
26   https://www.caranddriver.com/features/a15121591/the-physics-of-airbags-feature (last visited
     ~~January 26~~July 27, 2023).
27   [10] Jesse Kendall, P.E., and Kenneth Solomon, Ph.D., "Airbag Deployment Criteria" at p. 11.
     Available at: https://www.experts.com/content/articles/Kenneth-Solomon-Airbag-Paper.pdf (last
28   visited ~~January 26~~July 27, 2023).
     [11] Solomon, *supra* note 10, at p. 11.

35.    If the SDM senses that the vehicle returns to normal operation and continues down the road, it will stop looking for confirmation of a crash and reset to normal operation. On the other hand, if, after it hits the pothole, the vehicle veers out of its lane and crashes into another vehicle head on, the SDM should detect this second input and fire the airbag.[12]

36.    This entire sequence—from sensing an irregular signal (the pothole), to waking up and searching for confirmation of a crash, to firing the airbag where needed—might take only fractions of a second. ~~Indeed, a typical "crash duration" in a frontal, vehicle-to-barrier collision lasts for approximately 80-150 milliseconds (0.08-0.15 seconds).[13]~~ For that reason, timing this sequence properly is critically important to ensure that the seatbelts are tightened, and the airbags deploy, to protect the occupants when they need to.

**B.    <u>GM used a dangerous and defective SDM software calibration in its trucks and SUVs.</u>**

37.    Throughout the three-phase sequence described above, SDMs rely on software algorithms to interpret signals, estimate crash dynamics, and issue a "deploy" or "do not deploy" command to the safety systems.

38.    For the SDM to function as intended, the software that controls it must be designed to recognize and respond to real-world crashes so that the airbags inflate and seatbelts tighten when they are needed.

39.    ~~2.~~ Crash sensing occurs in "real-time." This means that the sensing algorithm can only examine a limited window of data to predict and judge the severity of crash events before conclusion, so that the airbags can deploy and protect the occupant on impact.[~~14~~13] A decision to "deploy" the airbags should occur when certain pre-set thresholds that tell the SDM a crash is severe enough (i.e., a moderate to severe frontal collision) are met or exceeded. These deployment thresholds are programmed into the SDM software through a process in which engineers "calibrate" the software algorithm in the vehicle.

---

[12] *Id.* at p. 8.
[~~13~~] ~~Chan, *supra* note 6, at p. 169.~~
[~~14~~13] Chan, *supra* note 6, at p. 95.

40.   3. In the Class Vehicles, the software calibration that controls how and when the SDM detects accidents and deploys the safety systems contains a serious defect (the "SDM Calibration Defect"). Specifically, for frontal crashes, GM calibrated the SDM to prevent deployment of airbags and pretensioners more than 45 milliseconds after it enters "wake up" mode. [15] GM did this by increasing the deployment thresholds to unattainable values 45 milliseconds into the crash sequence. With this calibration in place, no matter how severe the inputs the SDM received immediately after 45 milliseconds, the airbags and pretensioners will not deploy until a reset has occurred. during a dead zone. The dead zone starts with a cutoff time imposed by GM after the SDM "wakes up." At this early stage, Plaintiffs note that time used and recorded by the SDM software (i.e. 45ms, 50ms, 100ms, etc.), including the time elapsed for purposes of triggering the cutoff and resulting dead zone, is complex. As a general matter, it refers to time as calculated in the software, as opposed to traditional, linear time.

41.   Putting aside whether any cutoff is necessary in light of advancements in modern airbag technology, GM Trucks selected cutoff times that are reached too soon by any measure, i.e., cutoff times of less than approximately 100 milliseconds, which is a more realistic time period for crash sequences to progress, and the safer window used by GM cars. [14] At the premature cutoff time used by GM Trucks, the algorithm increases the deployment thresholds to unattainable values, meaning that no matter how severe the inputs the SDM receives, the airbags and pretensioners will not deploy. Further, when the SDM clock is above the cutoff time, this dead zone does not end until SDM reset, and thus persists through foreseeable real world collisions. In sum, this defective design and premature cutoff—the SDM Calibration Defect—introduces a dead zone to a window where airbag deployment is often necessary in real-world crashes, but by design cannot happen.

42.   Cutting off airbag deployment in the short duration GM Trucks used was callous and dangerous, particularly when compared to the time for a typical "crash duration" in a

[15] At this early stage, Plaintiffs note that the interpretation of time recorded by the SDM software and in related Crash Data Reports is complex. The 45-millisecond timing described in this complaint refers to the value as calculated in the software, as opposed to 45 milliseconds in linear time.

[14] See ¶¶ 109-110 and Mr. Caruso's *McCoy* report, *infra*.

1    straightforward frontal, vehicle-to-barrier collision, which lasts for approximately 80-150

2    milliseconds (0.08-0.15 seconds), much longer than the cutoff imposed by GM Trucks

3    (approximately 50 milliseconds or less).[15] And of course, more complex, multi-impact crashes

4    may take even longer.

5         43.     This defective calibration was no accident; rather, as detailed below, GM included

6    it by design when it modified the SDM software program (originally known as ALGO-S) in the

7    Class Vehicles to include it.  In affirmatively and prematurely blocking these critical safety

8    features after 45 millisecondswhile a crash is foreseeably still underway, GM greatly and

9    needlessly increased the risk of injury and death in a variety of frontal crashes. Specifically, the

10   SDM Calibration Defect manifests in frontal crashes that require airbag deployment or seatbelt

11   tightening after 45 milliseconds into the crash, and before the SDM resets. during the "dead

12   zone."

13        44.     6.For example, this includes frontal crashes with multiple, distinct points of impact

14   known as "concatenated" events. A vehicle that first hits a curb and then veers and hits a tree, or

15   first hits a speed bump and then crashes into the vehicle in front of it, are examples of

16   concatenated crashes. By their nature, concatenated accidents involve multiple discrete inputs for

17   the SDM to detect during a crash sequence.

18        45.     7.In concatenated crashes, the first part of the incident (hitting a curb) sends the

19   SDM into its "wake up" or "stand by" mode. The initial curb hit does not trigger the airbag or

20   tighten the seatbelt, but the SDM "wakes up" to confirm whether further irregular signals will

21   follow and indicate a need for the seatbelts or airbags. In the Class Vehicles—because of the

22   software calibration that controls the SDM—the "wake up" mode lasts for just 45approximately

23   50 milliseconds or less after the first irregular signal. After that time, and by GM's design, the

24   deployment thresholds in the software drastically increase, such that point on the clock, no further

25   input, no matter how severe, could exceed the thresholds and trigger the airbags to deploy and/or

26   seatbelts to tighten. As detailed in this section, the triggering thresholds are pre-set inputs in the

27   software that tell the SDM that a crash is severe enough to deploy an airbag.

28

---

[15] Chan, *supra* note 6, at p. 169.

- 13 -          SECOND THIRD AMENDED CLASS ACTION
                                                              COMPLAINT
                                                              4:21-CV-06338-JST

1      46.    8. In addition to concatenated crashes, the SDM Calibration Defect is also

2    implicated in frontal crashes that increase in severity and require airbag deployment or seatbelt

3    tightening after an initial, "soft" impact.  These types of crashes are referred to herein as

4    "prolonged" or "long-soft" crash onsets. This would include, for example, a crash into another

5    vehicle's bumper which—because the bumper is comparatively "soft"—may take time before the

6    "soft" bumper collapses, and a "hard" impact into the engine compartment begins.[16] "Soft"

7    crashes involve a "relatively long crash duration" that may last 20-50 percent longer than a head-

8    on crash into a rigid barrier, like a cement wall.[17]

9      47.    9. In a prolonged onset crash, the initial impact into a "soft" surface, such as a

10    bumper, starts the SDM clock ticking. Depending on the crash conditions-, such as speed, road

11    incline, angle of impact, weather, ice on the road, etc., this "soft" impact may not require airbag

12    deployment before 45 milliseconds has elapsed right away. Throughout the initial "soft" impact,

13    the SDM will be in wake-up mode to search for a confirmatory signal. But it will not find another

14    input sufficient to trigger the airbags from the "soft" impact. As explained above, in In the Class

15    Vehicles, the SDM clock will then effectively times out when the 45-millisecond mark hits time

16    out at the cutoff imposed by GM Trucks. So, if the crash proceeds through the "soft" layers and

17    into the engine compartment of another vehicle during the "dead zone" after the cutoff—such that

18    airbag deployment is needed to protect the occupants at say, 75 milliseconds, no on the SDM

19    clock—no airbag or seatbelt deployment is possible no matter how severe the later, "hard" impact

20    gets is.

21      48.    10. In practice, this means that the airbags and seatbelt pretensioners in the Class

22    Vehicles can only fire within 45 milliseconds of a first, irregular signal cannot fire during a time

23    period in crashes when they are necessary. If a second, irregular signal occurs after 45

24    milliseconds, but before the SDM has reset the cutoff GM imposed due to its defective strategy,

25    the SDM purposefully, by design, disregards the second signal, even if it would otherwise trigger

26

_____

27    [16] An example of a "soft" crash is where a vehicle crashes into a deformable barrier, or crashes at
     an angle, which will result in a "softer" impact than a head-on crash into a rigid barrier (which is
28    a "hard" crash). Chan, *supra* note 6, at p. 40.
     [17] Chan, *supra* note 6, at p. 40.

SECOND THIRD AMENDED CLASS ACTION
COMPLAINT
4:21-CV-06338-JST

1    airbag deployment and/or seatbelts to tighten. The net result is a "dead zone" ~~starting just 45~~

2    ~~milliseconds into a crash, after,~~" during which vehicle occupants are completely vulnerable

3    ~~before the SDM software resets. 11.  The~~ during a complex or long-duration crash. When the

4    SDM clock is above the cutoff time, the dead zone lasts until the SDM detects that the crash has

5    ended completely (meaning that the irregular signals have concluded, and the vehicle has

6    resumed normal operation), and then resets back to normal mode.  After the SDM has reset,

7    additional impacts or irregular inputs register as new events, triggering the process to begin anew.

8    49.   ~~12.~~This significant gap in protection ~~after 45 milliseconds~~due to the cutoff is

9    unreasonably dangerous because accidents—particularly complicated, real-world accidents—are

10    not necessarily completed at ~~that point~~the aggressive cutoff points GM used. In many cases, a

11    crash continues in the "dead zone," and ~~airbags and~~the thresholds ~~for airbag and seatbelt~~ severe

12    enough to trigger deployment are technically met during that time, but rendered inert. ~~Yet~~GM

13    cars recognized this when it used a materially longer and safer cutoff for its vehicles. In contrast,

14    GM's SDM software calibration in the Class Vehicles ~~prevents deployment of the airbags and~~

15    ~~seatbelt pretensioners in the~~ with its early "dead zone" ~~while a crash is still underway—which~~ is a

16    serious, unjustified, and dangerous safety defect. ~~Indeed, even GM's own cars division includes a~~

17    ~~significantly longer window for potential deployment.~~

18    **C.**    **GM knew that the SDM Calibration Defect was dangerous and unjustified**

19             **but has failed to warn or compensate consumers.**

20    50.    GM knew or had reason to know of the SDM Calibration Defect and the risks it

21    entails from at least July 10, 2009, when GM acquired substantially all of Old GM's books,

22    records, and personnel, and the knowledge about the defective SDM software calibration those

23    books, records, and personnel held. GM has continued to acquire knowledge—based on lawsuits

24    implicating the SDM Calibration Defect and hundreds of publicly reported accidents with airbag

25    and seatbelt failures—from 2009 to the present.

26    51.    Nonetheless, GM has continued to conceal this problem and the pattern of

27    accidents, injuries, and deaths that have resulted from it. GM has failed to share this information

28    with the consumers who paid for and drive these Class Vehicles every day.

1    52.    It should come as no surprise that GM has unreasonably and unsafely delayed

2    disclosure of the SDM Calibration Defect. Indeed, GM has a recent history of attempts to avoid

3    the costs, potential liabilities, and reputational harms from a safety recall for Takata airbags and

4    seems to have repeated that same tactic here.

5    53.    As is now public knowledge, millions of GM vehicles contain the dangerous and

6    defective Takata airbag inflators that can explode with too much force and spray metal shrapnel

7    into vehicle passenger compartments. While the dangers of these Takata airbags were widely

8    known for years, GM lobbied regulators to delay a recall for its affected vehicles to avoid a

9    resulting hit to its profits.[18] In 2016, GM reported that recalling its vehicles with Takata inflators

10   would cost hundreds of millions of dollars.[19]

11   54.    Consumers brought a putative class action seeking redress. *See In re Takata*

12   *Airbag Product Liability Litigation*, Case No. 14-cv-240009, Dkt. 2750, (S.D. Fl.). While other

13   vehicle manufacturers had earlier and voluntarily recalled their vehicles with Takata airbags, it

14   was only years later, with that consumer litigation pending, that GM finally issued a belated

15   recall. And importantly, it did so only after regulators from NHTSA denied GM's petition for

16   inconsequentiality, in which it attempted to argue that a recall was not necessary.[20]

17   55.    Here, as in *Takata*, GM knew or should have known that the SDM software

18   calibration strategy in the Class Vehicles—which includes a dead zone that prematurely prevents

19   the airbag and seatbelts from ~~deploying after 45 milliseconds until the SDM resets—was~~

20   deploying—was dangerous. Nonetheless, GM kept using it anyway, did not recall or repair the

21   Class Vehicles to correct it, and still has not told consumers about it.

22

23

24

25   [18] "GM seeks to delay recall of 1 million vehicles with Takata air bag inflators." *Reuters*,
     September 16, 2016. Available at: https://www.reuters.com/article/us-gm-recall/gm-seeks-to-
26   delay-recall-of-1-million-vehicles-with-takata-air-bag-inflators-idUSKCN11M27N (last visited
     ~~January 26~~July 27, 2023).
27   [19] *Id.*
     [20] "GM will recall 7 million vehicles for air bag issue worldwide." *Reuters*, November 23, 2020.
28   Available at: https://www.reuters.com/article/us-gm-recall/gm-will-recall-7-million-vehicles-for-
     air-bag-issue-worldwide-idUSKBN2831TH (last visited ~~January 26~~July 27, 2023).

1          **1.**     **Old GM recklessly downplayed serious risks of injury when it chose to include the SDM Calibration Defect in the Class Vehicles.**

56.     In general, the vehicle manufacturer provides the requirements to set the deployment thresholds in the SDM software calibration that will trigger a command to fire the airbags and/or tighten the seatbelts. The vehicle manufacturer uses results from laboratory crash testing to inform these parameters.[21]

57.     But laboratory results are not sufficient in themselves, because real-world accidents—which can occur from multiple angles and involve inputs from myriad variables like weather, temperature, or incline—will differ from the testing environment.[22] For that reason, manufacturers must exercise appropriate care to design crash sensing frameworks that function to keep people safe in the real world.

58.     As relevant to the defect here, Old GM worked with Delco Electronics (later called Delphi Electronics, now known as Aptiv) to select and install SDM models and develop the SDM software program used in the Class Vehicles, starting with Model Year 1999. As to the physical component, Old GM installed Delco SDMs in many of its vehicles, including all the Class Vehicles. The model names for Delco SDMs have changed over time, and have included, from earliest to latest, models known as the SDM-GS,[23] SDM-11, SDM30, and others. GM continued to use Delco SDMs and the defective calibration in its vehicles after it was formed in 2009, including in all the Class Vehicles.

59.     In addition to the Delco hardware, GM also worked with Delco to develop and implement the software that controls the SDMs. To that end, Delco developed a proposed software program, known originally as ALGO-S, and presented it to Old GM for review.

60.     During this time, Old GM divided the design and development of its vehicles into a "cars" group and a "trucks" group, with the ~~trucks group~~ Trucks Group responsible for design, development, and production of larger model trucks and SUVs. After it reviewed the Delco

---

[21] Huffman, *supra* note 9.
[22] Solomon, *supra* note 10, at 13.
[23] The SDM-GS is the SDM model included in Mr. Nossar's 2005 Trailblazer, which would have been in development during Mr. Caruso's tenure with Delco, which ended in 2006.

       - 17 -       ~~SECOND~~ THIRD AMENDED CLASS ACTION
COMPLAINT
4:21-CV-06338-JST

1    team's proposed SDM software algorithm, ALGO-S, the ~~trucks group~~ Trucks Group insisted on

2    adding the ~~45-millisecond~~ aggressive and premature cut off ~~described above~~ when it calibrated

3    that program for use in its trucks and SUVs. Specifically, the Trucks Group insisted on a limit at

4    approximately 45 milliseconds, well before a real-world accident could foreseeably require airbag

5    deployment.

6        61.    The ~~45-millisecond~~ premature cut off was dictated by GM ~~trucks~~ Trucks as part of

7    its calibration strategy for all vehicles within the fleet. This means that regardless of any

8    differences across makes and model years, all vehicles ~~within the group~~ under the direction of the

9    Trucks Group include SDM software that was calibrated to meet GM ~~trucks~~ Trucks' guiding

10   philosophy for when and how the safety systems will deploy, which included the SDM

11   Calibration Defect.

12       62.    On information and belief, the ~~trucks group~~ Trucks Group insisted on this cutoff

13   based on test results which indicated that frontal-barrier accidents (i.e., a simulated, single-impact

14   crash into a hard barrier) in its trucks and SUVs would not require ~~airbags~~ airbag deployment

15   after approximately 45 milliseconds or less in laboratory conditions.

16       63.    In response, the Delco team expressly warned the ~~trucks group~~ Trucks Group that

17   such an aggressive cutoff could fail to capture additional signals in complex crashes outside of the

18   laboratory, leaving occupants completely unprotected during prolonged onset crashes or crashes

19   with multiple impact points. Put another way, using a limit derived from laboratory testing results

20   was not reasonable or safe, because it fails to account for the complexities and durations of real

21   world crash events, which can reasonably and foreseeably take twice as long as the laboratory

22   tests to require airbag deployment. On information and belief, documents, records, and personnel

23   reflecting GM ~~trucks~~ Trucks' insistence—over Delco's objection—to include this cutoff were

24   passed on from Old GM to New GM in 2009.

25       64.    GM's own cars group, and on information and belief, other major vehicle

26   manufacturers throughout the industry, include a significantly longer window for the SDM to

27   detect a potential accident and deploy the airbags and seatbelts. Indeed, in the ALGO-S program

28   as it was originally designed by Delco, the window in which the airbags and seatbelts can deploy

1    in a crash is ~~*multiple*~~ ~~times the level set by GM Trucks (up to 150 milliseconds). Tellingly, after~~

2    ~~the Delco team repeated the same warnings about the truck group's proposed 45-millisecond~~

3    ~~cutoff to GM's cars group, the cars group rejected the shorter cutoff. Instead, the cars group used~~

4    ~~the ALGO-S software with the Delco-recommended period that was two or even three times~~

5    ~~longer than the GM Trucks group's proposal. GM ignored this decision by the cars group in~~

6    ~~insisting on the dangerous calibration~~at a minimum *twice to three times* that used by GM Trucks.

7    Delco's original ~~150-millisecond window~~ design reasonably allows for airbag and seatbelt

8    deployment in real-world frontal crashes, which themselves can endure for ~~up to~~ 100 or even 150

9    millisecond[24]s.[24] ~~When~~ As such, when GM trucks added the defective ~~45-millisecond~~ premature

10   cutoff to the software calibration in the Class Vehicles, it ~~prematurely, and~~ dangerously~~,~~

11   prevented the airbags and seatbelts from functioning when a frontal crash may still be well

12   underway.

13        65.   ~~11.~~ Tellingly, after the Delco team repeated the same warnings about the Truck

14   Group's proposed cutoff strategy to GM's cars group, the cars group rejected the shorter cutoff.

15   Instead, the cars group used the ALGO-S software with a materially longer deployment window

16   than GM Trucks group's proposal (a *minimum* of approximately 100 milliseconds for

17   deployment). GM thus also ignored the cars group's decision in insisting on the dangerous

18   calibration for trucks and SUVs.

19        66.   Given their serious concerns about GM Trucks' deployment strategy, Mr. Caruso

20   and his Delco team refused to release the defective software calibration for use in GM trucks and

21   SUVs until Old GM signed a disclaimer of Delco's liability for the modified calibration. The

22   ~~trucks group~~ Trucks Group still insisted on the defective calibration, signed the disclaimer, and

23   the ~~45-millisecond cutoff~~ dangerous dead zone was added in the SDM software calibration ~~as~~

24   used in GM trucks and SUVs.[25]

25

26   _____

27   ~~[24] Chan, *supra* note 6, at p. 169.~~
     [24] Chan, *supra* note 6, at p. 169.

28   [25] *See* Objection to Defendants' Motion for Partial Summary Judgment, *McCoy v. General Motors LLC*, Case No. X03- HHD-CV-20-6142910-S (Conn. Sup. Ct), available at: https://civilinquiry.jud.ct.gov/DocumentInquiry/DocumentInquiry.aspx?DocumentNo=23354481.

1     67.    This defective calibration was included in all of the trucks and SUVs under the

2    direction of GM's ~~trucks group~~Trucks Group, including all the Class Vehicles. This is so because,

3    as explained above, the abrupt cutoff was part of a calibration philosophy that is not vehicle

4    dependent, i.e., it was a decision on the overall strategy for safety system deployment that applied

5    to all vehicles within the group, including all the Class Vehicles.

6     68.    In practice, this meant that GM Trucks leadership set the calibration strategy for

7    all vehicles within the Trucks group (including all the Class Vehicles), and the software engineers

8    tasked with implementing that strategy for individual vehicle platforms were obligated to follow

9    that strategy for all vehicles within the group—the strategy was not set, or adapted, at the

10    individual vehicle level.

11     69.    This group-level approach to vehicle software is logical from a cost and resources

12    standpoint; developing software algorithms is time intensive and expensive, making it effective

13    and ordinary practice to develop one algorithm for use across multiple vehicle makes and models.

14     70.    This typical practice of using the same SDM software strategy for groups of

15    vehicles is evidenced by a prior recall conducted by GM in September 2016. Specifically, GM

16    previously recalled some 3,640,000 vehicles three different model years (from 2014 to

17    2017) due to a "software defect" present in the SDM software in all of those vehicles. As GM

18    described it, the SDM software in *all of these* vehicles included the same "oscillation test" in the

19    software that could "interfere with the SDM's proper deployment of frontal airbags or

20    pretensioners as required."[26]

21     71.    This oscillation-test issue is distinct from the ~~45-millisecond cutoff~~ defect

22    described in this case, but GM's use of the same software with the identical defective oscillation

23    test in more than three and a half million vehicles is evidence that GM developed and applied the

24    same SDM software across a very large range of makes and model years.

25     72.    The widespread use of this same oscillation test in the SDM software used for a

26    wide variety of makes and models, including both GM cars and trucks, also supports Plaintiffs'

27

28    ―――――――――――――
[26] *See* General Motors LLC Part 573 Vehicle Safety Recall Report, 16-V-651 (September 2016) available at: https://static.nhtsa.gov/odi/rcl/2016/RCLRPT-16V651-2475.PDF.

1    allegations in this case that both GM trucks and GM cars used the same SDM software algorithm

2    (which started as ALGO-S) to control the SDMs in the vehicles under their direction, but that GM

3    ~~trucks~~ Trucks modified the algorithm as designed to include the SDM Calibration Defect.

4         73.    Finally, the use of the same software calibration strategy across many different

5    vehicles is further supported by Mr. Caruso's description of his work with Old GM in setting and

6    implementing the software calibration strategy for vehicles at the group level, for the ~~trucks group~~

7    Trucks Group and cars group. *See, e.g.*, Nossar Report, *supra*, at p. 5 (Mr. Caruso recounting the

8    "GM Truck Groups' edict to set certain crash sensor calibration parameters outside the

9    recommended minimum guidelines set by the crash sensing algorithm designers").

10              **2.    ~~The 45-millisecond~~ GM's aggressive cutoff was not necessary to
                        protect against "late" airbag deployments.**

11

12        74.    GM ~~trucks group's~~ Trucks Group's insistence on the ~~45-millisecond window~~ early

13    cutoff after which the airbags and seatbelts cannot deploy was unjustified and unsafe.

14        75.    On information and belief, the ~~trucks group~~ Trucks Group chose to set this

15    aggressive cutoff due to concerns about the potential for airbags to deploy "too late" during an

16    accident. But as the ~~trucks group~~ Trucks Group also knew, these concerns were unwarranted

17    given technology that mitigated the risks of "late" airbag deployments.

18        76.    A brief history of airbags in motor vehicles puts this dangerous decision in

19    context. Before 1998, airbag systems were effectively one-size-fits-all. Designed to protect

20    against only frontal crashes, these "first-generation" airbags were built to meet a standardized

21    government test that required they protect an unbelted, midsize adult male dummy (175 pounds)

22    in a 30-MPH crash into a rigid barrier.[27] To do so, an airbag had to fill up quickly with gas,

23    resulting in a deployment speed of up to 200 MPH.[28]

24

25
_____

26  [27] Jack Keebler, *Airbags Safe Insane? – Special Report*, Motortrend (Sept. 1, 2000),
    https://www.motortrend.com/news/airbags-safe-insane-special-report/ (last visited ~~January 26~~July
    27, 2023).

27  [28] *Id.*; *see also* David B. Ottaway & Warren Brown, *From Life Saver to Fatal Threat*, The Wash.
    Post (June 1, 1997), https://www.washingtonpost.com/archive/politics/1997/06/01/from-life-

28  saver-to-fatal-threat/56d05b9e-a1bc-49b7-beb4-43480762b25e/ (last visited ~~January 26~~July 27,
    2023).

1        77.     Not all vehicle occupants fit this description, however, and the intensity of first-

2   generation airbag deployment could prove dangerous for children and those who were positioned

3   too close to the bag when it inflated (for example, because they had already been thrown forward

4   toward the steering wheel during an under-way accident).[29]

5        78.     Public perception about airbag safety in motor vehicles, and in turn, the vehicle

6   manufacturers that sold them, turned increasingly unfavorable following reports of late and

7   aggressive deployments in first-generation airbags. Both regulators and vehicle manufacturers

8   recognized the need to address these issues.[30] Beginning in October 1995, NHTSA initiated a

9   series of actions to minimize and eventually eliminate the adverse effects of late and aggressive

10   airbag deployments while preserving their life-saving benefits.[31]

11       79.     In 1997, NHTSA issued modified federal rules to allow automakers to reduce the

12   energy in frontal airbags. This led to "an industry-wide changeover" to "redesigned" airbags in

13   the very next model years (1998-1999).[32] The "redesign" consisted of several new technological

14   innovations. The first and immediate solution was "depowered" airbags: automobile

15   manufacturers removed some of the gas-generating propellant or stored gas from the inflators to

16   reduce the pressure and velocity of deployments. This change alone was highly effective in

17   reducing low-to-moderate speed fatalities.[33]

18       80.     Other innovations to reduce the risk of aggressive deployments included reducing

19   the volume or rearward extent of airbags, positioning them further from occupants, revised

20   folding techniques, and tethering and shifting from pyrotechnic inflators to hybrids including

21   stored gas.[34]

22

23   [29] Susan A. Ferguson & Lawrence W. Schneider, *An Overview of Frontal Airbag Performance with Changes in Frontal Crash-Test Requirements: Findings of the Blue Ribbon Panel for the Evaluation of Advanced Technology Airbags*, Traffic Injury Prevention 3 (Nov. 2008).

24   [30] U.S. Department of Transportation, NHTSA, *An Evaluation of the 1998–1999 Redesign of Frontal Air Bags,* NHTSA Technical Report No. DOT HS 810 685, p.11, (August 2006)

25   [hereinafter "NHTSA Redesign Report"]; *see also* Ferguson & Schneider, *supra* note ~~29~~30.

26   [31] NHTSA Redesign Report, *supra* note ~~30~~31, at vii.

27   [32] *Id.*; *see also* Micah Wright, *The Hidden Dangers of Older Airbags*, MotorBiscuit (May 8, 2015), https://web.archive.org/web/20220630111938/https://www.motorbiscuit.com/the-hidden-dangers-of-older-airbags (last visited ~~January 26~~July 27, 2023).

28   [33] *See* NHTSA Redesign Report, *supra* note ~~30~~31 at 25.
   [34] *Id.* at vii.

1      81.    Old GM knew about and employed these new technologies in its vehicles. Indeed,

2  as the director of Old GM's Safety Center Terry Connolly said in 2000, there were no significant

3  downsides to using this new "depowered" airbag technology, even for unbelted passengers.[35]

4      82.    Further innovations referred to as "advanced" or "smart" airbags followed soon

5  thereafter.[36] "Advanced" airbags alter deployment patterns according to feedback from several

6  sensors. These sensors tailor how the airbag deploys based on the severity of the crash, the size

7  and posture of the vehicle occupant, whether the occupant is wearing a seatbelt, and how close

8  the occupant is to the airbag.[37]

9      83.    Many "advanced" systems use dual-stage or multi-stage inflators. This means that

10  they have two inflation stages that can be ignited sequentially or simultaneously depending on

11  crash severity.

12      84.    "Advanced" airbags phased into production beginning September 1, 2003 and

13  were required in all new vehicles by September 1, 2006.[38]

14      85.    Thus, based on the depowered and advanced airbag technology starting in 1998

15  and 1999, the risks posed by "late" deployments in early generation airbags had greatly

16  diminished. Indeed, while NHTSA estimates that more than 290 deaths were caused by frontal

17  airbag inflation between 1990 and 2008, nearly 90 percent of those deaths occurred in vehicles

18  manufactured before 1998 (i.e., with first-generation airbag technology).[39] Today, with this new

19  technology, serious injuries from properly functioning airbags are rare.[40]

20      86.    Despite knowledge and use of the new technology mitigating the risks of late

21  deployments, the ~~trucks group~~ Trucks Group still insisted on prematurely shutting off the airbags

22  and seatbelts in the Class Vehicles ~~after 45 milliseconds~~ long before the 100 millisecond minimum

23  window reasonably required by real-world crashes, and used by GM's own cars group. On

24  information and belief, despite these well-established advancements in airbag technology outlined

25  _____

26  [35] Keebler, *supra* note 27.
   [36] *See* NHTSA Redesign Report, *supra* note ~~30~~ 31 at p. 3.

27  [37] Wright, *supra* note ~~32~~ 33.
   [38] NHTSA Redesign Report, supra note ~~30~~ 31, at vii.

28  [39] Insurance Institute for Highway Safety. "Airbags" (2021), available at:
   https://www.iihs.org/topics/airbags (last visited ~~January 26~~ July 27, 2023).
   [40] *Id.*

1    above, GM continued to use this same defective software calibration strategy in its vehicles in

2    2009 and beyond.

3            **3.    GM knew about a pattern of suspicious accidents involving the SDM**
             **Calibration Defect in the Class Vehicles.**
4

5    87.    GM's reckless decision and continued disregard for clear warnings about the risks

6    in shutting off the SDM too soon during an accident has had real and tragic consequences.

7    88.    As outlined above, GM has known about the SDM Calibration Defect since it took

8    over Old GM's books, records, and personnel in 2009. GM has continued to accrue knowledge of

     the defect, and its serious consequences, in the years since. Indeed, GM has known about,
9
     investigated, and even litigated numerous crashes in which airbags suspiciously failed to deploy
10
     in multi-impact or prolonged-onset frontal crashes in the Class Vehicles—a clear indication of the
11
     SDM Calibration Defect.
12
     89.    Despite obvious signs of a known and dangerous risk, GM concealed these
13
     accidents and the SDM Calibration Defect from consumers and regulators to avoid or at least
14
     delay a recall and the attendant costs and reputational damage therefrom. To date, GM has taken
15
     no corrective action to repair or recall the Class Vehicles to address this defect.
16

17          **a.    GM has litigated (and settled) many personal injury lawsuits**
                   **for suspicious airbag failures in the Class Vehicles.**
18

19   90.    In addition to its institutional records and knowledge, GM was on notice of the

20   SDM Calibration Defect through litigating and settling personal injury lawsuits involving airbag

     and seatbelt failures consistent with the SDM Calibration Defect.
21
     91.    As noted above, Chris Caruso has served as an expert witness in many of these
22
     lawsuits. Mr. Caruso has "over 43 years working in the automotive engineering field." Exhibit D
23
     at 4. This includes work as an engineer for Old GM from 1979 to 1986. Thereafter, from 1986 to
24
     2006, Mr. Caruso worked for Delco Electronics, where he was "involved in the development and
25
     implementation of the second generation of airbag system on GM vehicles and their subsidiaries
26
     in the US." *Id.* at 1. Mr. Caruso also worked as a "lead engineer in the development of crash
27
     sensor specifications and the airbag sensing systems for major OEM's worldwide," including Old
28

1   GM, and himself "designed the SDM crash sensing algorithms." *Id.* at 1-2. Mr. Caruso worked

2   for Delco through August of 2006. Thereafter, he began work in his current role as a consultant

3   with Automotive Safety Consulting, where he has "served as a consultant for both plaintiffs and

4   defendants in numerous cases involving automotive safety systems, including cases involving

5   EDR/CDR downloads and readouts." *Id.* at 4.

6          92.    Mr. Caruso recounts much of this work experience and the history of the SDM

7   Calibration Defect in public documents in a case filed in 2011, just two years after GM was

8   formed.

9          93.    In that case, Plaintiff James Nossar sued GM LLC following a crash in his 2005

10  Chevrolet Trailblazer (a Class Vehicle here). As detailed in that complaint, on or about February

11  25, 2010, Mr. Nossar drove his Trailblazer into the back of a 1999 Suburban "and sustained a

12  moderate to severe frontal impact . . . at a rate of speed that exceeded the airbag system's

13  predetermined deployment threshold." *See Nossar v. General Motors LLC*, Dkt. 4, Case No. 1:11-

14  cv-02129 (N.D. Ga.). Despite this "significant frontal collision," the airbag failed to deploy and

15  seatbelt pretensioners failed to trigger. Without the airbag or seatbelt to protect him, Mr. Nossar's

16  head slammed into the steering wheel, which caused "fracturing practically every bone in his face

17  and brain injuries." *Id.*

18         94.    In support of his claims, in April 2012, Mr. Nossar filed an expert report from

19  Chris Caruso who, as explained above, is an expert in automotive crash sensing systems who

20  worked for Delco engineering during the development of the defective SDM software calibration

21  in the Class Vehicles. *See id.* at Dkt. 40-1.

22         95.    In that report, Caruso detailed the same flaws in the SDM software calibration

23  described herein. He explained that the airbag sensing system in the Trailblazer was "defective by

24  design and has the potential to not deploy frontal impact airbags in high speed frontal impacts

25  where conditions vary slightly from the perfect laboratory conditions where the system was

26  designed and tested." Based on Caruso's experience working in the development of the SDM

27  software, he related that there were concerns, due to the calibration, "that in longer duration, but

28  high severity events and in concatenated events (such as a curb impact followed by a utility pole

1   impact), the airbags would fail to deploy because the algorithm deployment thresholds were no

2   longer active." *Id.*

3       96.     Caruso further explained that as that litigation proceeded into discovery, he would

4   "expect to identify emails and other correspondence between GM Truck Engineers and Delphi

5   Crash Sensor engineers discussing the concerns over GM Truck Groups' edict to set certain crash

6   sensor calibration parameters outside the recommended minimum guidelines set by the crash

7   sensing algorithm designers [the Delphi/Delco engineers]." Caruso expected to obtain this

8   corroborating evidence because he "ha[d] seen these documents before and kn[e]w the content,"

9   and summarized that "**the calibration values result in premature turning off of algorithm**

10  **thresholds which effectively disables the front airbags after 45 to 50ms.**" *Id.* (emphasis

11  added).

12      97.     Mr. Caruso's expectations as to what discovery would reveal are plausible because

13  of his contemporaneous experience with Delco and Old GM in the time period in which Mr.

14  Nossar's vehicle was developed. Mr. Caruso left Delco in 2006, long after the development

15  concluded for Mr. Nossar's model year 2005 vehicle. (Because vehicles are actually sold in their

16  model year, *i.e.*, 2008 vehicles are sold in 2008, their ~~design and~~ development~~-~~, including for the

17  SDM software, predates the actual model year by, one, two, or more years).

18      98.     As to Mr. Nossar's 2005 Trailblazer specifically, Caruso observed that the vehicle

19  included a version of the SDM hardware known as the SDM-DS, and concluded:

20       • The airbags and seatbelts failed because, at the time the airbags should have
            deployed, and consistent with the SDM Calibration Defect here, "**the SDM**
21          **calibration had already timed out after 45-50ms** after the crash started."

22       • "In reviewing the crash performance of the sensing system for the subject vehicle,
            with respect to the conditions of the subject crash, **it is clear that the calibration**
23          **values result in premature turning off of algorithm thresholds which**
            **effectively disables the front airbags after 45 to 50ms.**"
24

25      99.     "The failure by GM to understand the **risks of certain dictated calibration**

26  **values** [in the SDM software calibration] led directly to the design defect that rendered the frontal

27

28

1  impact airbag system in the 2005 Chevrolet Trailblazer defective and unreasonably dangerous in

2  certain field relevant, real-world crashes." *Id.*

3       100.    GM LLC, a named defendant in the *Nossar* case, clearly knew about and received

4  Mr. Caruso's report outlining the history of these issues in the SDM software calibration.

5       101.    The *Nossar* case and Mr. Caruso's report support that Old GM continued to install

6  SDMs with the Calibration Defect in its vehicles at least through model year 2005.

7       102.    More recently, Mark McCoy filed a lawsuit against GM LLC in 2020 after a

8  serious accident in his 2018 Sierra Denali 2500. *See McCoy v. General Motors LLC*, Case No.

9  X03- HHD-CV-20-6142910-S (Conn. Sup. Ct).

10      103.    While on a freeway exit ramp, at a sharp turn, Mr. McCoy veered off the road,

11  crashed into a fence, and then crashed into a trailer, before finally crashing into a construction

12  vehicle parked near the ramp. None of the airbags in his vehicle deployed. As a result, Mr.

13  McCoy sustained "catastrophic, painful and severely debilitating injuries," including traumatic

14  spinal injuries, total paralysis from the chest down, a traumatic brain injury, and a broken nose,

15  among other injuries.[41] Below is a picture of Mr. McCoy's Denali after the crash:

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[41] *See* June 19, 2020 Amended Complaint, ¶ 8, *McCoy v. General Motors LLC*, Case No. X03-HHD-CV-20-6142910-S (Conn. Sup. Ct) ("McCoy"). *Available at*:
https://civilinquiry.jud.ct.gov/DocumentInquiry/DocumentInquiry.aspx?DocumentNo=19161992

- 27 -               ~~SECOND~~ THIRD AMENDED CLASS ACTION
COMPLAINT
4:21-CV-06338-JST



104.    Mr. Caruso also served as an expert for plaintiff in the *McCoy* case and submitted a detailed report in connection with summary judgment briefing in that matter.[42] Therein, Mr. Caruso described his history with the company, including warning Old GM against using the defective software calibration in trucks and SUVs, and his insistence on a disclaimer of liability before releasing the calibrations for use in the Class Vehicles.

105.    Further, Mr. Caruso described his work after he left Delco in 2006 in failure-to-deploy lawsuits "where the root cause was determined to be the 45ms SHUTOFF criteria" [i.e., the SDM Calibration Defect]" in "numerous" GM trucks and SUVs in "earlier model[s]" than model year 2018.[43]

---

[42] Mr. Caruso's opinions in the McCoy case became publicly available only after the April 2022 hearing on the Defendants' motion to dismiss in this matter, and were also not available at the time Plaintiffs filed their amended complaint in October 2021.

[43] Mr. Caruso's report in the McCoy matter is attached hereto as Exhibit D. *See id.* at 19.

1    106.    Through discovery in the *McCoy* matter, Mr. Caruso analyzed the actual software

2    calibration file for the SDM software in Mr. McCoy's model year 2018 vehicle. Based on his

3    review of the file, Mr. Caruso concluded that the algorithm in the 2018 vehicle remained a "carry

4    over" from the SDM software algorithm, ALGO-S, he himself designed years prior. Exhibit D at

5    16. Moreover, Caruso concluded that GM's dangerous and defective philosophy about airbag

6    deployment timing persisted in the 2018 Sierra. Put another way, GM "appeared to be using **very**

7    **similar shutoff times in this calibration**" to those he had previously objected to in earlier model

8    years in which GM "forc[ed] the use of 45ms shutoff times." *Id.* at 18.

9    107.    Specifically, in the *McCoy* software, Caruso observed shutoff times at 50

10    milliseconds, consistent with his earlier testimony in *Nossar* that the cutoff occurred at

11    approximately 45-50 milliseconds, and others that were even shorter, at 16 milliseconds.

12    108.    Whether 45, 50, or even 16 milliseconds, each of these cutoff calibrations is

13    defective in the same way, because none are sufficient to account for real world crash events, or

14    come even close to the minimum used by GM cars. Put another way, each creates a "dead zone"

15    far short of the time window needed for deployment in real world crashes, which is the defect that

16    underlies Plaintiffs' claims.

17    109.    ~~18.~~The ~~presence of the~~ persistence of this defective calibration cutoff strategy in a

18    GM truck sold at least 12 years after he stopped working for Delco came as some surprise to

19    Caruso. Indeed, he "had believed" GM would have discontinued the use of the dangerous

20    calibration prior to model year 2018. But the software itself told a different story. In summary,

21    based on the actual software, discovery produced in that case, as well as the crash conditions from

22    the McCoy accident, Caruso opined:

23    • "The failure to deploy [the] airbags resulted in a condition that was defective, unsafe
         and unreasonably dangerous" to the driver in this vehicle;

24    • "[I]t appears that [GM trucks Group] is **still employing very aggressive stop times**"
25        in its software calibrations as of model year 2018; and

26    • GM should have implemented an "alternative design" to "[m]odify the algorithm
27        calibrations with more robust 120-150ms" cutoff thresholds.

28    *See* Exhibit D.

1    110. 19.Caruso's report in the *McCoy* case—notably based on his review of the actual

2    software calibration—demonstrates that at least through model year 2018, GM continued to

3    install Delco SDMs governed by dangerous cutoff thresholds in calibrations based on the original

4    ALGO-S software algorithm. Although it had years to do so, even by 2018, GM had still failed to

5    adopt a safer and more rational design that would allow for deployment for at least as long as the

6    strategy used by GM cars (*i.e.*, approximately 100 milliseconds at a minimum for deployment).

7    111. 20.Mr. Caruso also was able to identify the SDM hardware used in the McCoy

8    vehicle as the Delco SDM30, which is evidence that GM continued to use the defective software

9    calibration for all vehicles that contain that Delco SDM model. Publicly available crash data

10    reports from NHTSA show the same Delco SDM30 was installed by GM in GM trucks in at least

11    model years 2015 and 2016, including in the model year 2015 Chevrolet Trax, 2015 Chevrolet

12    Tahoe, and 2016 Yukon Denali.

13    112. 21.Likewise, on information and belief, Plaintiffs Vargas, Ray, and Milstead's

14    Class Vehicles contain SDM-11 model Delco SDMs. Given their model years and the Delco

15    SDM, the plausible, and most reasonable, inference is that they also included the associated

16    defective calibration strategy GM used with Delco SDMs.

17    113. 22.Based on: (1) Mr. Caruso's early knowledge of the SDM Calibration Defect

18    when it was first used; (2) his subsequent tenure with Delco through 2006, during which model

19    year vehicles for subsequent years were already in development; (3) his expert opinion on the

20    presence of the SDM Calibration Defect in a model year 2005 vehicle (*Nossar*) after his

21    assessment of the vehicle performance and crash dynamics; and (4) his opinion about defect's

22    persistence in a model year 2018 vehicle with the Delco SDM30 (*McCoy*)—the plausible, and

23    most reasonable, inference is that the defect persisted in the years between 1999, 2005 and 2018.

24    114. 23.Following service of Mr. Caruso's expert report and deposition in the *McCoy*

25    case, GM agreed to settle the case in December 2022.[44]

26    ─────────────────────────

27    [44] Plaintiffs' allegation of a settlement is supported by plaintiff's request in *McCoy* in October
2022 for additional time to withdraw the case because "additional time is necessary to exchange
the necessary settlement documents." *See McCoy*, October 19, 2022 CaseFlow Request. Plaintiff

28    then withdrew the matter last month, in December 2022. *See* December 19, 2022 Withdrawal of
Action, *McCoy v. General Motors LLC*, Case No. X03- HHD-CV-20-6142910-S (Conn. Sup. Ct).

1      115. 24. In addition, Chad Vaith filed a lawsuit against GM LLC in 2017 after an

2    accident in his MY 2014 Silverado. As that complaint relates, in December 2015, Mr. Vaith was

3    involved in an accident in which he drove his Silverado "off the road into a ditch," after which he

4    "continued through the ditch for approximately forty yards before launching over the

5    driveway/culvert. . . before coming to a final rest approximately twenty yards south." *See Vaith v.*

6    *General Motors LLC*, Dkt. 1, Case No. 18-cv-00031 (D. Minn.). Despite multiple impacts in that

7    prolonged accident, the airbags and seatbelts did not deploy, causing Mr. Vaith to "suffer severe

8    personal injuries." Mr. Caruso was a disclosed expert for plaintiff in that case, although his

9    opinions about the 2014 Silverado were not publicly filed. *See, e.g., id.* at Dkt. 64.

10     116. 25. Mr. Vaith's case proceeded into fact discovery and ultimately resulted in a

11    "negotiated settlement" between Mr. Vaith and GM. *Id.* at Dkt. 82.

12     117. 26. In addition to these previous lawsuits against GM with Mr. Caruso as an expert,

13    another automotive crash expert, Sal Fariello, wrote directly to GM's CEO Mary Barra twice in

14    December 2016 to raise similar concerns about issues he had observed in the airbag sensing

15    system in model year 2006 GM SUVs. Mr. Fariello's letters are available in NHTSA's public

16    records.[45]

17     118. 27. Mr. Fariello's letters to GM's CEO focused on an accident in a 2006

18    Trailblazer (a Class Vehicle here) for which he served as a litigation consultant in a lawsuit filed

19    in or around 2014. Therein, he lists multiple technical issues with the airbag sensing system that

20    he wanted to bring to GM's attention and urge them to address. For example, he cautions that, in

21    his view:

22          a.     "The deployment thresholds [i.e., the inputs that will trigger deployment]

23    for the airbag were set too high and compromised driver and passenger safety as a result of GM's

24    improper effort to mitigate lawsuits related to relatively low speed deployments of the airbag.";

25

26

27    ───────────────
[45] Mr. Fariello is a forensic crash investigator. *See* Bill Saporito, "Air Bag Blow Out," *Time*

28    *Magazine*, (December 4, 2014). Available at: https://time.com/3617681/the-air-bag-blowout (last
      visited January 26 July 27, 2023).

1       b. "The deployment threshold did not meet GM's and generally accepted

2    standards for when an airbag should deploy in order to prevent occupant death based on written

3    technical papers and educational videos produced by GM or its employees."; and

4       c. "Failure of the SDM to independently process a crash pulse and deploy the

5    airbag implicates a defective software algorithm; specifically 'Algo S-H' [the software algorithm

6    in the Class Vehicles]."

7      119.  28. At the time, in 2016, Mr. Fariello proposed that the SDM could be re-

8    programed "with a more responsive algorithm" to resolve these issues, and that GM's "only

9    apparent motive for not doing this related to the cost of implementing a recall."

10     120.  29. Frustrated by the response he received from GM's counsel in response to these

11   letters, Mr. Fariello then wrote to Senator Bill Nelson of Florida enclosing his correspondence to

12   GM and escalating his concerns. Senator Nelson then forwarded that correspondence to

13   NHTSA.[46]

14     121.  30. As Mr. Fariello concluded, in his view, GM was stalling on this issue "just as

15   they did with the Takata airbag matter."

16     122.  31. Finally, in In April 2016, plaintiff Kayla Greenwood filed suit against GM on

17   behalf of her deceased parent, Galen Greenwood. *See Greenwood v. General Motors LLC and*

18   *General Motors Company*, Dkt. 1, Case No. 16-cv-00149 (M.D. GA). Galen Greenwood was

19   fatally injured when his "airbag failed to deploy and his seat belt failed to properly restrain him"

20   during a multi-impact crash in his 2006 GM SUV, a Chevrolet Equinox—hallmarks of the SDM

21   Calibration Defect. *Id.* Specifically, "Mr. Greenwood lost control of the subject vehicle, traveled

22   over the northbound lane and onto the west shoulder in a gradual manner, and impacted two trees

23   with the front of the subject vehicle. During the incident sequence, the driver's side airbag failed

24   to deploy and the seat belt failed to properly restrain Plaintiff's decedent. During the impact,

25

26

27

---

28   [46] Mr. Fariello's letters to GM and further documentation are available at:
     https://static.nhtsa.gov/odi/cmpl/2017/CL-10955948-3381.pdf (last visited January 26July 27, 2023).

1    Galen Greenwood suffered severe injuries which resulted in his death." *Id.* GM settled with Ms.

2    Greenwood in May 2017. *See id.* Dkt. 20-1.[47]

3        123.    Finally, in 2022, Jerome and Cedric Woods filed suit against MFA Oil Company

4    in Missouri state court as survivors of Richard Stinson. Mr. Stinson was killed when his 2009

5    Chevrolet Silverado truck crashed into an MFA Oil Company truck in November 2021. Mr.

6    Stinson's Silverado was traveling at approximately 46 miles per hour at the time of the collision,

7    and despite the serious "extent of the damage," the speed of the accident, and the change in

8    velocity from the impact, his airbags did not deploy.

9        124.    In or about March 2023, defendant MFA Oil Company filed a third party petition

10    against General Motors LLC in the *Woods* case. As MFA contends in that third party petition:

11        •  "Upon information and belief, the airbag system on the Silverado was designed to not
        deploy under circumstances when the change in velocity of the vehicle [i.e., a
12        deployment threshold input] **in the initial 45 milliseconds after the initiation of a**
        **collision event was under a set rate regardless of the change in velocity of the**
13        **vehicle after the initial 45 milliseconds,** including a situation such as the collision in
        this case in which a change in velocity was recorded to exceed 37 miles per hour
14        during the sequence of the collision."

15
        •  **The design settings for deployment of the driver's side airbag on the Silverado**
16        **were defective and unreasonably dangerous because the settings prevented**
        **deployment of the driver's side airbag** under circumstances such as the collision at
17        issue in this case in which the change in velocity of the vehicle exceeded 37 miles per
        hour and in which the deployment of the airbag could or would have reduced or
18        entirely avoided serious or fatal injuries such as the injuries Stinson sustained.[48]

19

20        125.    The *Woods* litigation on Mr. Stinson's behalf continues.

21        126.    ~~32.~~Taken together, these and other allegations support the existence of the SDM

22    Calibration Defect and the reasonable inference that Plaintiffs' model years 2010 and 2012 GM

23    trucks and SUVs included it. Specifically, given that: (1) the model years of Plaintiffs' Class

24

25    _____

    [47] In the *McCoy* matter, GM's designated corporate witness testified that he had previously
26    offered testimony in a personal injury lawsuit about a crash where a vehicle "went off the
    roadway and struck a tree," where the plaintiff's name was Greenwood. On information and
27    belief, GM's corporate designee in the *McCoy* matter was thus also a deponent in this settled
    Greenwood lawsuit, demonstrating further corporate knowledge of persistent injuries from the
    SDM Calibration Defect in the field.
28    [48] *See* Third-Party Plaintiffs' Petition, *Woods v. MFA Oil Company v. General Motors LLC,* Case
    No. 22-NM-CV00032 (New Madrid Circuit Court, Missouri).

1    Vehicles were developed *after* Old GM first used the defective Software Calibration in or about

2    1999, and not long after Mr. Caruso left his role with Delco in 2006 (during which subsequent

3    model years were already in development); (2) Plaintiffs' Class Vehicles predate the 2018 vehicle

4    in which Mr. Caruso reviewed the software calibration, and concluded that the algorithm still

5    included reflects GM's flawed strategy to cutoff deployment too early, including "very similar

6    shutoff times" to those he had originally raised concerns about twenty years earlier; (3)

7    corroborating instances between those two bookends (1999 and 2018) support the persistence of

8    the defective calibration in the intervening model years (i.e., *Nossar*, *Vaith*, *Greenwood*, *Woods*,

9    and Fariello's letters, discussed *supra*); and (4) the broad, cross-model way that SDM software

10    calibration strategy is set and implemented across GM's fleet within a given model year, the

11    plausible, and most reasonable inference is that GM installed the same defective calibration in all

12    its trucks and SUVs at least through model year 2018.

13            **b.    GM knew or should have known about hundreds of publicly
                       reported airbag failures in the Class Vehicles.**

14

15        127.    GM was also on notice of the SDM Calibration Defect and its attendant safety

16    risks from consumer complaints. These complaints are publicly available online through

17    NHTSA's website. Between 1999 and the present, hundreds of consumers reported to NHTSA

18    that airbags and/or seatbelts had suspiciously failed during frontal crashes involving concatenated

19    (multiple) impacts or potentially prolonged crash onsets. New allegations—including Mr.

20    Caruso's report showing the defect defective cutoff strategy continued in a model year 2018

21    vehicle—make the below crashes even more suspicious as relevant incidents with the hallmarks

22    of the SDM Calibration Defect (airbag and seatbelt failures in concatenated and prolonged frontal

23    impacts) in the very vehicles alleged to be impacted by that Defect (GM trucks and SUVs).

24        128.    On information and belief, vehicle manufacturers such as GM monitor these public

25    databases for complaints about their vehicles, considering their statutory obligations to report

26    known safety defects in their vehicles to NHTSA and to consumers. Moreover, in many of these

27    reports, it is expressly clear that GM was directly informed of, and even investigated, the accident

28    in question. While GM has access to the full body of these complaints from 1999 and onward in

1   the public database, it bears mention that over three hundred of them were filed after the new GM

2   entities were created in 2009.[4849]

3        129.    One such complaint details an accident in a 2004 Chevrolet Trailblazer in August

4   2014. The driver states that they were traveling 50 MPH on a four-lane highway where another

5   vehicle, waiting to U-turn, "decided to turn right into me—oncoming traffic." The vehicles

6   crashed, which then "sent [the driver] into a head on collision with the guard rail." The driver

7   questions that "there were 2 incidents in that sequence of events that the airbags should have

8   deployed, but did not! This accident caused several injuries to myself and my passenger. We

9   definitely could have been killed and no airbags to help save our lives…" Photos of the damage to

10  the vehicle from that accident follow. (NHTSA Complaint #1100694).



000-13679321  08/25/2014  CCPYRIGHT 2014 - INSURANCE AUTO AUCTIONS

---

[4849] Many publicly reported accidents occurred prior to 2009, which information would likewise have been available to Old GM. GM would have acquired Old GM's knowledge of these accidents, reflected in its books, records, and personnel, when it was formed in 2009.

130.    Another report describes a September 2012 accident in a 2005 Chevrolet Trailblazer. It states that the driver, at 30 MPH, swerved to avoid a deer in the road, which caused the vehicle to lose control, exit the road, and ultimately "crash[] off a 9 foot embankment." From there, the vehicle continued to crash through a field, into a dirt levy, and finally into a drainage ditch. None of the airbags deployed. The driver "became unconscious after his head crashed into the steering wheel" and "suffered severe neck injuries." The dealer later inspected the vehicle but responded that the results were "inconclusive" and that the manufacturer "was notified but offered no assistance." Photos of the damage to the vehicle from that accident follow. (NHTSA Complaint #942950).[50]

---

[50] Accident documentation and photos are available at: https://static.nhtsa.gov/odi/cmpl/2012/EQ-10477257-8767.pdf (last visited July 27, 2023).

1
2
3
4
5
6
7
8
9
10
11
12



13
14
15
16
17
18
19
20
21
22
23
24
25



26
27
28

131.    In another example, the complaint describes a serious accident in March 2019 involving a 2005 Chevrolet Equinox. The vehicle crashed into the front of another vehicle at 35

1    MPH. The airbags did not deploy. The driver sustained injuries to the head and ankle and

2    required medical attention. Photos of the damage to the vehicle from that accident follow.



14    132.    (NHTSA Complaint #1550406).⁵⁰⁵¹



133.    Another account of a July 2007 accident in a model year 2001 Isuzu Rodeo

describes a crash at 65 MPH so severe that "the median on the highway sustained property

---

⁵⁰⁵¹ Photos and accident information are available at: https://static.nhtsa.gov/odi/cmpl/2019/EQ-11191960-7090.pdf (last visited ~~January 26~~July 27, 2023).

damage" and "the vehicle was destroyed," but the airbags did not deploy. This is how the vehicle looked after that accident:



134.    Additional examples of similarly suspicious frontal accidents—i.e., frontal accidents with multiple discrete impacts, or potentially prolonged onset frontal crashes involving "soft" impacts—in which the airbags and/or seatbelts failed include:

a.      NHTSA complaint #753287 dated Tuesday, October 16, 2001, reported an accident on Monday, October 8, 2001 involving a 1999 CHEVROLET SUBURBAN in Andover, KS. The complaint states: "60 MPH CROSS WIND BLEW THE SUBURBAN HEAD ON INTO THE CONCRETE MEDIAN. THE VEHICLE SPUN 360 DEGREES, WENT INTO THE DITCH, THE FRONT END HIT AGAIN THE VEHICLE WENT UP THE OTHER SIDE OF THE EMBANKMENT AND STOPPED IN A FIELD. ENTIRE FRONT END OF THE FRAME NOT REPAIRABLE . . . FRONT CROSSMEMBER BENT AND ENGINE MOVED UPWARDS AT A 10 DEGREE ANGLE. **AIR BAGS FAILED TO DEPLOY**. *AK"[~~51~~52]

b.      NHTSA complaint #859858 dated Friday, April 7, 2000, reported an accident on Saturday, April 3, 1999 involving a 1999 CHEVROLET SILVERADO. The complaint states: "WHILE TRAVELING ON A WET ROAD AT HIGHWAY SPEED OF 60 MPH VEHICLE HYDROPLANED, SPUN INTO A DITCH, AND COLLIDED INTO A TREE

---

[~~51~~52] Emphasis is supplied here and in the paragraphs that follow.

1    WITH BOTH SIDES AND FRONT OF VEHICLE. **UPON IMPACT, AIR BAGS FAILED TO**

2    **DEPLOY**. MFR. NOTIFIED. *AK"

3          c.    NHTSA complaint #877320 dated Wednesday, January 3, 2001, reported

4    an accident on Friday, December 1, 2000 involving a 1999 CHEVROLET SUBURBAN in

5    Amarillo, TX. The complaint states: "CONSUMER WAS TRAVELING ABOUT 40MPH ON

6    HIGHWAY AND ANOTHER VEHICLE VEERED INTO HER LANE, HITTING HER HEAD-

7    ON, AND PUSHING VEHICLE INTO ANOTHER LANE. **VEHICLE HIT TELEPHONE**

8    **POLE, AND DUAL AIRBAGS DIDN'T DEPLOY**. CONSUMER WAS INJURED.

9    CHEVROLET HAS BEEN NOTIFIED. *AK"

10         d.    NHTSA complaint #10060150 dated Tuesday, March 2, 2004, reported an

11   accident on Tuesday, February 24, 2004 involving a 2001 CHEVROLET BLAZER in Austin,

12   TX. The complaint states: "**DRIVER SIDE AIR BAG FAILED TO DEPLOY IN A CRASH**

13   THROUGH: 1. A SIX FOOT TALL WOODEN FENCE AT ALMOST 30MPH, THEN 2. THE

14   EXTERIOR SIDE OF A 2-STORY HOME THAT CONTAINED THE KITCHEN SINK AND

15   PLUMBING FIXTURES, WHILE SMASHING UP AND OVER THE FIFTEEN-INCH

16   CONCRETE FOUNDATION, FRONT-END FIRST.*AK"

17         e.    NHTSA complaint #10082050 dated Thursday, July 15, 2004, reported an

18   accident on Wednesday, July 14, 2004 involving a 2003 CHEVROLET SUBURBAN in Fresno,

19   CA. The complaint states: "THE CONSUMER WAS INVOLVED IN AN ACCIDENT WHERE

20   IT WAS HIT FROM THE FRONT DRIVER SIDE, THE IMPACT CAUSED THE VEHICLE

21   TO HIT A TELEPHONE POLE HEAD ON. **THE AIR BAGS DID NOT DEPLOY**. *JB"

22         f.    NHTSA complaint #10103512 dated Friday, December 10, 2004, reported

23   an accident on Sunday, December 5, 2004 involving a 2001 CHEVROLET SILVERADO in

24   Rialto, CA. The complaint states: "CONSUMER'S VEHICLE WAS REAR ENDED WHILE

25   DRIVING 50 MPH. THE VEHICLE WAS FORCE[D] INTO A SPIN AND THEN, IT HIT A

26   CONCRETE ROAD DIVIDER. UPON IMPACT, **NEITHER FRONTAL AIR BAGS**

27   **DEPLOYED**. DRIVER SUSTAINED INJURIES, AND HAD TO BE TRANSPORTED TO A

28   LOCAL HOSPITAL. DEALER AND MANUFACTURER WERE NOTIFIED. THE

1   CONSUMER STATED THAT THE SEAT BELT DID NOT KEEP HER FROM HITTING HER

2   CHEST ON THE STEERING WHEEL."

3          g.    NHTSA complaint #10108404 dated Tuesday, February 1, 2005, reported

4   an accident on Tuesday, January 11, 2005 involving a 2000 CHEVROLET SILVERADO in

5   Toney, AL. The complaint states: "A CAR PULLED OUT IN FRONT OF ME WHICH STILL

6   HIT THE DRIVER'S SIDE OF MY VEHICLE (2000 CHEVY SILVERADO). **THEN MY**

7   **TRUCK HAD A FULL FRONTAL IMPACT AT GREATER THAN 30 MPH INTO A**

8   **DIRT WALL IN WHICH NEITHER THE DRIVER'S NOR PASSENGER'S AIRBAGS**

9   **DEPLOYED (THE TRUCK IS TOTALLED).** I HIT THE STEERING WHEEL AND GOT A

10  CONCUSSION WITH BLOOD AROUND THE BRAIN, A BROKE CHEEK BONE, AND

11  FRACTURED HIP. MY WIFE WAS 33 WEEKS PREGNANT AT THE TIME AND HER

12  WATER BROKE AND SHE GOT A COMPOUND FRACTURE IN THE LOWER

13  LEG/ANKLE. AS A RESULT OF THE WATER BREAKING MY SON WAS BORN 3 DAYS

14  LATER 7 WEEKS PREMATURE. AS FOR WHAT WAS DONE TO CORRECT THE

15  PROBLEM I'M HOPING IT WILL AT LEAST BE INVESTIGATED TO MAKE SURE THIS

16  IS NOT A SYSTEMIC PROBLEM (I.E., SOFTWARE SCREWUP SOMETHING NOT

17  HOOKED UP RIGHT IN THE AIRBAG SYSTEM ETC)."

18          h.    NHTSA complaint #10115806 dated Thursday, March 24, 2005, reported

19  an accident on Thursday, March 24, 2005 involving a 2002 CHEVROLET SILVERADO in

20  Claremore, OK. The complaint states: "A PIECE OF FURNITURE WAS LOCATED IN THE

21  MIDDLE OF THE HIGHWAY WHILE DRIVING, CAUSING THE DRIVER TO HIT THE

22  FURNITURE. DRIVER LOST CONTROL OF A VEHICLE, AND IT CRASHED INTO A

23  CONCRETE WALL. DRIVER'S SIDE SEAT BELT FAILED, AND **THE AIRBAGS DID**

24  **NOT DEPLOY**."

25          i.    NHTSA complaint #10158090 dated Tuesday, May 23, 2006, reported an

26  accident on Sunday, February 26, 2006 involving a 2004 CHEVROLET TRAILBLAZER in

27  Fayetteville, NC. The complaint states: "DT*: THE CONTACT STATED WHILE DRIVING 50

28  MPH THE VEHICLE WAS INVOLVED IN A HEAD ON COLLISION WITH ANOTHER

1    VEHICLE. THE VEHICLE CONTINUED MOVING AND STOPPED BY COLLIDING WITH

2    A STORE SIGN. **THE AIR BAGS DID NOT DEPLOY** AND SEAT BELTS WERE WORN . .

3    . THE INSURANCE COMPANY DETERMINED THE VEHICLE WAS TOTALED DUE TO

4    THE ACCIDENT. THE DEALER DOES NOT HAVE THE MEANS TO TEST FOR AIR BAG

5    NON-DEPLOYMENT. UPDATED 1/24/2007 - *NM"

6           j.      NHTSA complaint #10161658 dated Thursday, July 6, 2006, reported an

7    accident on Saturday, June 3, 2006 involving a 1999 CHEVROLET BLAZER in Ludlow, MA.

8    The complaint states in part: "CHEVY DRIVER HIT A CAR IN HER LANE FIRST, THEN

9    RICOCHETED HEAD ON INTO A TREE. **NEITHER TIME DID AIRBAGS DEPLOY**.

10   *TT"

11          k.      NHTSA complaint #10163811 dated Friday, July 28, 2006, reported an

12   accident on Thursday, July 20, 2006 involving a 2000 ISUZU RODEO in Nederland, TX. The

13   complaint states: "A GIRL RAN A RED LIGHT AND I HIT HER IN THE PASSENGER SIDE

14   OF HER CAR HEAD ON WITH MY 2000 ISUZU RODEO. IT WAS A FULL FRONTAL

15   COLLISION FOR ME AND MY CHILDREN. LUCKILY, WE ARE ALWAYS BUCKLED UP

16   BECAUSE **NONE OF MY AIRBAGS DEPLOYED AT ALL**. THE OTHER CAR WAS

17   GOING ABOUT 60 MPH AND HER AIRBAG DEPLOYED WHEN I HIT HER BUT MINE

18   DID NOT. LUCKILY, MY CHILDREN WERE NOT HURT BADLY BUT

19   UNFORTUNATELY, I SUSTAINED NECK, BACK AND KNEE INJURIES. I WAS AND

20   STILL AM VERY UPSET THAT MY AIRBAGS FAILED. EVEN THE OWNER OF THE

21   BODY SHOP I USE WAS IN SHOCK THAT THEY DID NOT DEPLOY AS THE IMPACT

22   WAS ENOUGH TO SPLIT THE FRAME OF MY RODEO AND TOTAL IT OUT . . . THANK

23   YOU FOR YOUR TIME, I HOPE I CAN HELP ANOTHER FAMILY FROM GETTING

24   INJURED."

25          l.      NHTSA complaint #10217793 dated Tuesday, February 12, 2008, reported

26   an accident on Thursday, February 7, 2008 involving a 2006 CHEVROLET TRAILBLAZER in

27   Lakewood, OH. The complaint states: "A 2006 CHEVY TRAILBLAZER TRAVELING OVER

28   THE SPEED LIMIT ON MY STREET CRASHED INTO A TREE, A PARKED CAR, AND

1    THEN CONTINUED TO ROLL OVER ACROSS MY FRONT LAWN, LANDING

2    SIDEWAYS AFTER FLIPPING SEVERAL TIMES. THE OCCUPANTS WERE SEVERELY

3    INJURED. **NO AIRBAGS DEPLOYED DURING THE CRASH**. THE DRIVER OF THE

4    VEHICLE IS IN ICU NEEDING FACIAL RECONSTRUCTIVE SURGERY. *TR"

5              m.       NHTSA complaint #10221319 dated Saturday, March 15, 2008, reported

6    an accident on Thursday, February 21, 2008 involving a 2005 CHEVROLET TRAILBLAZER in

7    Clay, NY. The complaint states: "I WAS DRIVING ON A 2 LANE ROAD GOING 45MPH. A

8    CAR WAS FOLLOWING CLOSE BEHIND ME SO I WENT TO GET INTO RIGHT LANE

9    AND MY TRUCK DID 5 360 AND HIT 3 TREES HEAD ON AND **AIR BAG NEVER**

10   **DEPLOYED**. *TR"

11             n.       NHTSA complaint #10263896 dated Wednesday, April 1, 2009, reported

12   an accident on Thursday, March 26, 2009 involving a 2002 CHEVROLET TRAILBLAZER in

13   Elizabeth, NJ. The complaint states: "I WAS IN A CAR ACCIDENT, WHERE I WAS

14   TRAVELING AT ABOUT 35 MPH. AN AGGRESSIVE DRIVER SPEED AROUND ME AND

15   CUT ME OFF AND THAN STOMPED ON THIS BRAKES IN FRONT OF ME. DUE TO

16   THAT I SWERVED TO MISS HIM CLIPPING HIS RIGHT BACK LIGHT AD BUMPER

17   WITH MY LEFT HEADLIGHT AND BUMPER. AS I WAS SWERVING I HIT A TREE JUST

18   ABOUT DEAD ON WITH MY CAR . . . I HIT THE TREE AT A SPEED OF ABOUT 28-30

19   MPH. AFTER INITIAL IMPACT I WAS RUSHED TO THE HOSPITAL DUE TO

20   UNCONSCIOUS AND FACIAL CONTUSIONS. DURING THE FIRST MOMENTS AFTER

21   THE ACCIDENT, ONE OF THE FIRST THINGS OFFICERS, EMTS AND WITNESSES SAID

22   WAS "**I CAN'T BELIEVE THE AIRBAGS DIDN'T GO OFF**." IN THE RECENT DAYS

23   AFTER THE ACCIDENT I HAVE HAD SEVERAL MECHANICS AND SUCH APPRAISE

24   THE CAR, THE ONE COMMON THEME THEY ALL SHARE IS THAT THEY SUSPECT

25   THERE MIGHT NOT BE AN AIRBAG WHERE IT BELONGS. OR THE LACK THERE OF.

26   *TR"

27             o.       NHTSA complaint #10463248 dated Wednesday, June 27, 2012, reported

28   an accident on Friday, July 15, 2011 involving a 2005 GMC in Richmond, VA. The complaint

1    states: "THE CONTACT STATED WHILE DRIVING 55 MPH, HE CRASHED INTO A TREE.

2    **THE AIR BAGS FAILED TO DEPLOY** . . . A POLICE REPORT WAS FILED. THE

3    MANUFACTURER WAS MADE AWARE OF THE FAILURE; HOWEVER, THEY

4    PROVIDED NO ASSISTANCE . . . THE CONSUMER'S VEHICLE WAS DAMAGED WHEN

5    HE TRIED TO AVOID HITTING THE VEHICLE BY SWERVING SIDEWAYS AND

6    SLIDING INTO THE GRASS. HE TRIED STOPPING THE VEHICLE WHILE IT WAS STILL

7    ON THE PAVEMENT BUT HE INEVITABLY RAN INTO THE DITCH AND FLEW

8    AIRBORNE INTO A TREE, AND THE TRUCK OVERTURNED."

9          p.    NHTSA complaint #10524151 dated Wednesday, July 10, 2013, reported

10    an accident on Thursday, May 30, 2013 involving a 2006 CHEVROLET TRAILBLAZER in

11    Mansfield, OH. The complaint states: "THIS COMPLAINT IS BEING FILED ON BEHALF OF

12    THE VEHICLE OWNER AND DRIVER. THIS CHEVY TRAILBLAZER WAS INVOLVED

13    IN A TWO VEHICLE, DOUBLE FATAL CRASH. THE FRONT OF THE TRAILBLAZER

14    STRUCK THE DRIVER'S SIDE DOOR OF A CAVALIER THAT FAILED TO YIELD FROM

15    A STOP SIGN. THE TRAILBLAZER STAYED CONNECTED WITH THE CAVALIER,

16    FORCING IT OFF THE LEFT SIDE OF THE ROADWAY AND INTO A LARGE TREE.

17    BOTH OCCUPANTS IN THE CAVALIER WERE FATALLY INJURED. **THE FRONT**

18    **AIRBAGS DID NOT DEPLOY ON THE TRAILBLAZER** AND NO EVENT WAS

19    RECORDED ON THE AIRBAG CONTROL MODULE. *TR"

20          q.    NHTSA complaint #10537593 dated Tuesday, August 27, 2013, reported

21    an accident on Tuesday, August 13, 2013 involving a 2003 CHEVROLET BLAZER in Harrison

22    Township, MI. The complaint states: "I WAS TRAVELING SOUTHBOUND WHEN I

23    EXPERIENCED A SEIZURE AND LOST CONTROL OF MY VEHICLE. I PROCEEDED TO

24    VEER TO THE LEFT WHERE I CLIPPED SEVERAL CARS THAT WERE HEADED

25    NORTHBOUND . . . I THEN PROCEEDED OVER A TREE LAWN AND INTO A PARKING

26    LOT. I HIT A DODGE RAM PICKUP WITH THE RIGHT FRONT CORNER OF MY

27    VEHICLE AND PUSHED THAT VEHICLE INTO ANOTHER PARKED CAR THAT WAS

28    NEXT TO IT. BOTH VEHICLES ENDED UP SIDEWAYS AND MY VEHICLE ENDED UP

1   SPUN AROUND 180 DEGREES . . . THE JAWS OF LIFE WERE USED TO EXTRACT ME

2   FROM MY VEHICLE. I WAS TAKEN TO A LOCAL HOSPITAL WHERE IT WAS

3   DETERMINED THAT I SUFFERED BURST FRACTURES OF L1, L2, AND L3. I ALSO

4   SUFFERED AN EVULSION FRACTURE OF MY LEFT ANKLE. THE POLICE REPORT

5   STATES THAT I WAS TRAVELLING AT A HIGH RATE OF SPEED AND THAT THE

6   VEHICLES WHICH WERE NORTHBOUND WERE JUST CLIPPED. **THE AIRBAGS ARE**

7   **BOTH STILL WITHIN THEIR CASES AS NEITHER DEPLOYED** . . . THE INSURANCE

8   INVESTIGATOR EVEN EXPRESSED TO MY WIFE THAT HE WAS SURPRISED THAT

9   THE AIR BAG DID NOT DEPLOY."

10          r.     NHTSA complaint #10550276 dated Wednesday, October 30, 2013,

11   reported an accident on Monday, October 28, 2013 involving a 2006 CHEVROLET

12   TRAILBLAZER in Neihart, MT. The complaint states: "TL* THE CONTACT OWNS A 2006

13   CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING

14   APPROXIMATELY 35 MPH, SHE LOST CONTROL OF THE VEHICLE WHILE DRIVING

15   IN SNOWY WEATHER. THE VEHICLE NOSE DIVED INTO AN EMBANKMENT AND

16   THEN CRASHED INTO A BOULDER. **THE AIR BAGS FAILED TO DEPLOY**. THE

17   CONTACT WAS TRANSPORTED TO THE HOSPITAL VIA AMBULANCE FOR

18   TREATMENT OF A CONCUSSION AND BRUISING. THE FRONT PASSENGER WAS

19   ALSO INJURED AND SUSTAINED BRUISING. THE VEHICLE WAS DESTROYED. THE

20   MANUFACTURER WAS MADE AWARE OF THE FAILURE."

21          s.     NHTSA complaint #10574295 dated Sunday, March 23, 2014, reported an

22   accident on Friday, February 21, 2014 involving a 2010 GMC TERRAIN in Saint Joe, IN. The

23   complaint states: "INVOLVED IN A 21 CAR PILE UP IN THE UPPER PENINSULA DURING

24   A COMPLETE WHITE OUT. WE WERE ONLY TRAVELING APPROXIMATELY 25

25   MILES PER HOUR BUT, WE DID HAVE SERIOUS IMPACT IN THE FRONT, AFTER

26   HITTING A TRAILER AND ALSO SERIOUS IMPACT FROM BEHIND WHEN HIT BY A

27   TRUCK AND TRAILER. **NO AIRBAGS DEPLOYED**. THE TRUCK TRAVELING AHEAD

28   OF US, THAT WE HIT, THE AIRBAGS DID DEPLOY. MY FATHER AND BROTHER,

1  WHO WERE ALSO BOTH DRIVING CHEVY TRUCKS, AND ALSO HAD SERIOUS

2  FRONT END DAMAGE DURING THE SAME ACCIDENT, THEIR AIRBAGS DID NOT

3  DEPLOY EITHER. *TR"

4          t.      NHTSA complaint #10576031 dated Monday, March 31, 2014, reported an

5  accident on Sunday, March 23, 2014 involving a 2012 CADILLAC SRX in Kaplan, LA. The

6  complaint states: "I FELL ASLEEP WHILE DRIVING, JUMPED A LEVEE, RAN THROUGH

7  A FENCE, AND WRECKED IN A GRASSY WATERY AREA. MY ENGINE WAS

8  SMASHED, THE MOTOR MOUNT BROKE, AND MY TIRES ARE PUSHED BACK. MY

9  **AIR BAGS DID NOT DEPLOY**. MY FACE HIT THE STEERING WHEEL AND MY NOSE

10  IS BROKEN. I WOULD LIKE TO FIND OUT IF THERE IS ANY RECALLS ON THIS CAR.

11  *TR"

12          u.      NHTSA complaint #10583703 dated Saturday, April 19, 2014, reported an

13  accident on Thursday, March 13, 2014 involving a 2012 GMC TERRAIN in Moneta, VA. The

14  complaint states: "I INADVERTENTLY VEERED OFF SIDE ROADWAY, (VA HIGHWAY

15  220) COLLIDING WITH A TREE/ROADSIDE SHRUBS, ETC (WAS KNOCKED

16  UNCONSCIOUS AS FOREHEAD HIT STEERING WHEEL ON INITIAL IMPACT).

17  **AIRBAGS DID NOT DEPLOY** ALLOWING ME TO SUSTAIN A HEAD INJURY THAT

18  KNOCKED ME UNCONSCIOUS... FOREHEAD WAS GASHED WITH SIGNIFICANT

19  BLEEDING. I WAS TRANSPORTED BY AMBULANCE IN UNCONSCIOUS STATE.

20  DAMAGE TO VEHICLE IS IN EXCESS OF $8,000 SO FAR AS VEHICLE STILL IN

21  REPAIR SHOP WITH MASSIVE FRONT END DAMAGE THAT AFFECTS STEERING

22  LINKAGE, ETC. THE IMPACT OF VEHICLE AGAINST FOLIAGE, TREES SHRUBS,

23  SHOULD HAVE FORCED AIR BAGS TO DEPLOY AND I BELIEVE THAT I WOULD NOT

24  HAVE SUSTAINED A HEAD INJURY THAT RENDERED ME UNCONSCIOUS WITH

25  MILD CONCUSSION AND COULD NOT CONTROL VEHICLE LEAVING ROADWAY.

26  *TR"

27          v.      NHTSA complaint #10592423 dated Monday, May 19, 2014, reported an

28  accident on Thursday, May 8, 2014 involving a 2003 CHEVROLET SILVERADO in

1    Burtonsville, MD. The complaint states: "TRUCK COLIDED WITH GUARD RAIL.

2    BOUNCED OFF, HIT VEHICLE 1, THEN INTO VEHICLE 2 THEN STOPPED AFTER

3    HITTING VEHICLE 3 A SEMI TRUCK. ALL DAMAGE WAS DONE TO FRONT OF THE

4    CHEVY SILVERADO. **AT NO TIME DID THE AIRBAGS DEPLOY**."

5         w.    NHTSA complaint #10622016 dated Wednesday, August 13, 2014,

6    reported an accident on Saturday, August 9, 2014 involving a 2012 CHEVROLET TAHOE in

7    The Colony, TX. The complaint states: "WHILE TURNING LEFT (TAHOE) WITH A

8    PROTECTED GREEN ARROW AT AN X-SHAPED INTERSECTION, VEHICLE (KIA

9    SEDAN) AT FAULT FAILED TO YIELD AND ENTERED THE INTERSECTION AT

10   SPEEDS UPWARDS OF 40 MPH FROM THE LEFT OF THE TAHOE. FRONT-IMPACT

11   COLLISION OCCURRED . . . TAHOE STRUCK PASSENGER SIDE OF KIA SEDAN.

12   TRAJECTORY OF IMPACT CAUSED DIRECTIONAL CHANGES IN UPWARDS OF 90*

13   FOR BOTH VEHICLES; THE FORCE OF THE PRIMARY ACCIDENT DESCRIBED ABOVE

14   ALSO CAUSED MENTIONED VEHICLES TO COLLIDE WITH LEFT REAR OF ANOTHER

15   VEHICLE (HONDA SEDAN) . . . DUE TO THE FORCE OF IMPACT, FRONT & SIDE

16   AIRBAGS DEPLOYED ON BOTH THE KIA SEDAN AND THE HONDA SEDAN, BUT

17   **FAILED TO DEPLOY ON THE TAHOE** . . . FORCE WAS SUCH THAT AFTER THE

18   COLLISION, TAHOE TRANSMISSION WAS IN DRIVE, BUT REMAINED AT A

19   COMPLETE STOP. DAMAGE SUSTAINED ON THE TAHOE INCLUDE FRONT-END

20   BODY DAMAGE, ENGINE DAMAGE (VEHICLE REQUIRED TOWING AND WAS

21   INOPERABLE), AND FRAME DAMAGE, AT A MINIMUM . . . MULTIPLE FIRST-

22   RESPONDERS COMMENTED ON THE ODDITY THAT, GIVEN THE DAMAGE

23   SUSTAINED BY THE TAHOE AND THE VELOCITY AT IMPACT, THE AIRBAGS

24   DEPLOYED ON ALL VEHICLES BUT THE TAHOE. *TR"

25         x.    NHTSA complaint #10641399 dated Saturday, October 4, 2014, reported

26   an accident on Tuesday, June 7, 2011 involving a 2002 CHEVROLET TAHOE in Cheney, WA.

27   The complaint states: "THE CONTACT STATED THAT WHILE THE DRIVER WAS

28   DRIVING AT 45 MPH AND ATTEMPTED TO AVOID A CRASH WITH ANOTHER

1  VEHICLE. AS A RESULT, THE DRIVER CRASHED INTO A GUARDRAIL AND **THE AIR**
2  **BAGS FAILED TO DEPLOY.** A POLICE REPORT WAS FILED. THE CONTACT WAS
3  TAKEN TO A HOSPITAL AND SUSTAINED INJURIES TO THE RIBS, THE COLLAR
4  BONES, A BRAIN TRAUMA AND A COLLAPSED LUNG. THE DRIVER SUFFERED
5  FROM FATAL INJURIES."

6         y.     NHTSA complaint #10767586 dated Tuesday, September 22, 2015,
7  reported an accident on Saturday, August 1, 2015 involving a 2004 CHEVROLET
8  TRAILBLAZER in Tallahassee, FL. The complaint states: "MY MOTHER WAS INVOLVED
9  IN A 1 CAR ACCIDENT ON BAUM RD LOCATED IN TALLAHASSEE, FL. SHE WAS THE
10  ONLY PASSENGER DETERMINED TO BE IN THE VEHICLE AT THE TIME OF THE
11  ACCIDENT. ACCORDING TO THE CRASH REPORT, D1 (DRIVER ONE) WAS
12  TRAVELING WESTBOUND ON BAUM RD GOING THE NORMAL POSTED SPEED OF
13  55MPH, WHEN SHE VEERED TOWARDS THE CENTER OF THE RD AND SUDDENLY
14  TURNED RIGHT VEERING OF THE RIGHT SHOULDER OF THE RD AND STRIKING
15  SEVERAL TREES ON THE DRIVERS SIDE AND FRONT END . . . WHEN I WENT TO
16  RETRIEVE MY MOTHERS THINGS FROM HER TRAILBLAZER, I NOTICED THAT **NO**
17  **AIR BAGS HAD DEPLOYED**. AND AS FAST AS MY MOM WAS GOING AND THE
18  TYPE OF IMPACT & DAMAGE HER SUV SUSTAINED, I WOULD THINK AND HOPE
19  THE AIRBAGS WOULD DEPLOY IN THIS TYPE OF ACCIDENT, THUS PREVENTING
20  SERIOUS INJURY OR DEATH. MY MOM WAS NOT SO LUCKY, AND MYSELF AND MY
21  FAMILY HAVE ENDURED GREAT PAIN FROM LOOSING HER SO SUDDENLY."

22         z.     NHTSA complaint #10907149 dated Friday, September 16, 2016, reported
23  an accident on Thursday, September 1, 2016 involving a 2006 CADILLAC SRX in Happy
24  Valley, OR. The complaint states: "THE VEHICLE HIT A CURB AND DROVE INTO A
25  BUILDING. **THE AIR BAGS FAILED TO DEPLOY**. THE CONTACT SUSTAINED
26  INJURIES THAT REQUIRED MEDICAL ATTENTION . . . THE MANUFACTURER WAS
27  NOTIFIED OF THE FAILURE."

28

1        135.    GM knew or had reason to know about these complaints, which are publicly

2    available on NHTSA's website. Indeed, many complaints explicitly state that GM was directly

3    informed of and/or investigated these suspicious accidents. For example:

4            a.    A complaint about an August 2018 accident in a 2008 GMC Acadia details

5    that the airbags and seatbelt pretensioners did not deploy after the complainant's wife fell asleep

6    at the wheel and struck a utility pole and then a large dirt embankment—which caused her to "hit

7    the steering column so hard . . . it broke the column and broke her sternum," and caused the

8    granddaughter in the passenger seat to break her back in two places. It continues that "GENERAL

9    MOTORS . . . SENT A MAN TO DOWNLOAD THE COMPUTER INFORMATION THEY

10   SENT ME A COPY OF THE INFO AND LATER CONTACTED ME SAYING THE INFO

11   SHOWED EVERYTHING WAS WORKING PROPERLY." NHTSA complaint #11066850.

12           b.    After a July 2014 head on collision at 50 MPH where the airbags did not

13   deploy in a 2007 Silverado, totaling the vehicle, another driver was "TOLD BY GM THAT

14   CRASH DID NOT MEET CRITERIA FOR DEPLOYMENT." The driver expressed skepticism

15   about this response, and in the complaint, stated "A HEAD ON COLLISION AT 50 MPH THAT

16   TOTALED 2500 SERIES CHEVY TRUCK. HARD FOR ME TO BELIEVE . . . DO I NEED

17   TO [BE] CONCERNED?" NHTSA complaint #10608220.

18           c.    Another driver reported on a May 2014 accident in a 2012 GMC Terrain in

19   Moneta, VA. The driver struck "something" head on after veering off the highway and proceeded

20   through trees and brush. They were knocked unconscious after hitting their head on the steering

21   wheel upon the first impact, as the airbags had failed to deploy. They were transported to a

22   hospital by ambulance and spent two days in inpatient care. The driver later "CONTACTED

23   GMC CORPORATE . . . TO ADVISE MY CONCERNS FOR SAFETY . . . RECEIVED A

24   FOLLOW UP TELEPHONE CALL FROM GMC REPRESENTATIVE . . . HE EXPRESSED

25   NO INTEREST IN MY COMPLAINT . . . REFUSED TO COMMENT ON MY STATEMENT

26   THAT AIR BAG FAILED TO DEPLOY RESULTING IN EXTENSIVE DAMAGE TO FRONT

27   OF VEHICLE AND SUSTAINING A HEAD INJURY AS NO BAG DEPLOYED . . . I WAS

28

1   ADVISED THAT GMC HAD NO FURTHER INTEREST IN THIS MATTER AND WOULD

2   NOT EVALUATE MY SAFETY CONCERNS." NHTSA complaint #10588334.

3           d.     After a July 2012 accident involving a 2012 GMC Terrain in San

4   Clemente, CA, in which the Terrain was hit multiple times in an intersection in the driver's front

5   end, but no airbags deployed, resulting in whiplash and contusions to the driver, a GM

6   representative responded to a complaint lodged by the driver's parents and stated that there was

7   "NO NEED FOR DEPLOYMENT" because it was a "LOW THRESHOLD EVENT." NHTSA

8   complaint #10466384.

9           e.     After hitting a patch of black ice at 58 MPH in a Chevrolet Silverado in

10  January 2008, another complainant described that they lost control of the vehicle, ran off the road,

11  crashed into a telephone pole and ultimately into a frozen embankment. The airbags did not

12  deploy, causing the driver to hit the steering wheel. As the complainant relates, they "FILED A

13  COMPLAINT WITH THE MANUFACTURER, BUT THE COMPLAINT WAS DENIED. THE

14  MANUFACTURER WAS UNABLE TO DIAGNOSE THE VEHICLE; HOWEVER, AFTER

15  INSPECTION OF THE VEHICLE, THE MANUFACTURER CONFIRMED THAT THE AIR

16  BAGS WERE ENABLED AT THE TIME OF IMPACT. THEY DID NOT GIVE AN

17  EXPLANATION FOR THE DEPLOYMENT FAILURE." NHTSA complaint #10238395.

18          f.     In a report about a March 2006 accident involving a 2005 Cadillac

19  Escalade in Louisville, KY, the complainant describes that after none of the airbags deployed in a

20  front end collision in their 4-week old vehicle, they "CALLED CADILLAC CUSTOMER

21  SERVICE AND WAS GIVEN AN AIRBAG HISTORY LESSON VIA TELEPHONE FROM

22  SOMEONE THAT HAD NEVER SEEN MY VEHICLE OR INSPECTED IT FOR DAMAGE

23  AFTER THE ACCIDENT. AT THE END OF OUR CONVERSATION I WAS TOLD ALL

24  WAS OK, NONE OF MY AIRBAGS SHOULD HAVE DEPLOYED AND NOT TO WORRY

25  ABOUT IT. THE ENTIRE FRONT END OF MY VEHICLE WAS KNOCKED OFF, THE

26  FRAME HAS MULTIPLE CRACKS AND IS BENT AS A RESULT OF THE COLLISION

27  AND THE COLLISION CENTER IS 90% CERTAIN THE VEHICLE IS NOT REPAIRABLE.

28  *JB" NHTSA complaint #10152376.

         - 50 -        SECOND THIRD AMENDED CLASS ACTION
                                                      COMPLAINT
                                                     4:21-CV-06338-JST

g.      After an August 2004 accident involving a 1999 Chevrolet Astro in Norfolk, VA in which the vehicle jumped a curb, struck a fire hydrant, and then struck a tree without the airbags deploying, the driver was taken by ambulance to the hospital for head and neck injuries. After the accident, the "CONSUMER CONTACTED THE MANUFACTURER AND A REPRESENTATIVE CAME DOWN TO MEET WITH THE DEALER AND CONSUMER. THE REPRESENTATIVE INFORMED CONSUMER THAT THE VEHICLE WAS FUNCTIONING AS DESIGNED." NHTSA complaint # 10087718.

h.      Another driver contacted GM after the airbags did not deploy in a February 2004 front end collision at 25-30 MPH in their 2000 Isuzu Rodeo in Westwood, NJ. "THE CONSUMER CONTACTED THE MANUFACTURER ABOUT THE AIR BAGS BUT THE REPRESENTATIVE DID NOT SEEM TO BE TOO CONCERNED ABOUT THE SITUATION." NHTSA complaint #10087550.

i.      Another driver described a head on collision at 39 MPH in their 2002 Chevrolet Tahoe in which the airbags did not deploy and the seatbelts did not tighten. The driver hit their head on the steering wheel, knocking them unconscious. A readout from the vehicle's computer showed the seatbelts were in working order, and GM responded by sending a representative to inspect the vehicle in person. The complainant was awaiting a response from GM at the time of the report. NHTSA complaint #10353935.

136.    More than eight hundred similar complaints—i.e., frontal crashes in the Class Vehicles with airbag and seatbelt failures following multiple impacts, or, potentially long-soft frontal impacts—are attached hereto as Exhibit A.[~~52~~53] These accidents are relevant, and suspicious, because they include hallmarks of the SDM Calibration Defect (airbag and seatbelt

---

[~~52~~53] The accidents in the preceding paragraph and Exhibit A include data for Class Vehicles in model years 1999-2014. In the interest of efficiency, Plaintiffs have not supplemented the accidents included in Exhibit A from the previously filed ~~version~~ versions with ~~the first amended complaint~~ their prior pleadings, but note that significant numbers of similar consumer reports of multi-impact and front-end impact accidents with airbag and seatbelt failures have continued to accrue in the NHTSA database in model years 1999-2014, as well as later model years, in the time since Exhibit A was originally prepared in 2021. Plaintiffs are prepared to submit supplemental examples of such incidents at the Court's request.

1    failures), under the very crash conditions where it arises, and in the specific population of

2    vehicles Plaintiffs allege to be impacted.

3         137.    In addition to these consumer complaints, a separate, public dataset from NHTSA,

4    the Fatality Analysis Reporting System ("FARS") provides a nationwide census of crashes that

5    resulted in fatal injuries. While the complaints outlined above are reported to NHTSA by

6    consumers and can include any type of complaint or incident, FARS data is reported by state

7    agencies responsible for monitoring all qualifying fatal crashes in their states. To be included in

8    FARS data, a crash must involve a motor vehicle traveling on a public road and result in the death

9    of a person in one or more of the vehicles involved in the crash within 30 days of the crash. The

10   dataset collects information on over 100 different data elements that characterize the crash, the

11   vehicles, and the people involved—including whether or not the airbags deployed.

12        138.    NHTSA's FARS dataset also reveals a recurring pattern of suspicious

13   nondeployments during frontal crashes (i.e., the crash dynamics that can implicate the SDM

14   Calibration Defect) and reinforces the extremely high stakes of such incidents. From 1999 to

15   present, FARS data reflects at least 1,946 frontal crashes where the airbags did not deploy in a

16   Class Vehicle—1,167 of which occurred in 2009 or later, after New GM was formed. This same

17   data reflects that at least 1,298 individual occupants (drivers or passengers) in a Class Vehicle

18   were injured or killed in these crashes.

19        **D.    Despite its knowledge, GM misrepresented and concealed important
             information about the SDM Calibration Defect and Class Vehicle safety.**
20

21        139.    For many consumers, including Plaintiffs, safety is one of the most important

22   factors when buying or leasing a vehicle. GM capitalized on this fact in advertising and other

23   consumer-facing representations about the Class Vehicles and touted the safety of the Class

24   Vehicles in national marketing campaigns.

25        140.    In nationwide advertisement campaigns and promotional materials, GM

26   maintained that the Class Vehicles were safe and reliable, and it did not correct representations

27   about the Class Vehicles' safety and reliability made by Old GM in the past. Instead, GM has

28   repeatedly touted the Class Vehicles' passenger safety systems and assured consumers they could

1    be relied upon to activate the airbags and seatbelts during a crash. These representations are false

2    and misleading because of what they fail to say; GM uniformly failed to disclose that the SDM

3    Calibration Defect could—at the worst possible moment—prevent the airbags and seatbelts from

4    activating.

5          141.    Plaintiffs and Class members, directly or indirectly, were exposed to these

6    advertisements and promotional materials prior to purchasing or leasing their Class Vehicles. The

7    misleading statements about Class Vehicles' safety in GM's advertisements and promotional

8    materials, as well as GM's omission of the truth about the SDM Calibration Defect, influenced

9    Plaintiffs and Class members' decisions to purchase or lease Class Vehicles. If GM had instead

10   chosen to disclose the truth about the SDM Calibration Defect, Plaintiffs and Class members

11   would have seen those disclosures. Indeed, Plaintiffs would have had multiple opportunities to

12   receive information about the SDM Calibration Defect if GM chose to disclose it, including at

13   dealerships, on GM's website, in radio or television advertisements, brochures, press releases or

14   in other promotional materials, as well as in news media reports that would likely follow from the

15   revelation of a serious safety defect in millions of GM vehicles.

16                        1.    **Labels and window stickers on the Class Vehicles stated that they were
                               equipped with working airbags and seatbelts and failed to disclose the**
17                             **SDM Calibration Defect.**

18         142.    To sell vehicles in the United States, GM was required to "certify to the distributor

19   or dealer at delivery that the vehicle or equipment complies with applicable motor vehicle safety

20   standards prescribed" by NHTSA under Chapter 301 of Title 49 of the U.S. Code. GM "may not

21   issue the certificate if, in exercising reasonable care," they have "reason to know the certificate is

22   false or misleading in a material respect." 49 U.S.C. § 30115; *see also* 49 U.S.C. § 30112.

23         143.    Because "[c]ertification of a vehicle must be shown by a label permanently fixed

24   to the vehicle," all Class Vehicles have a permanent label certifying compliance with the safety

25   regulations prescribed by NHTSA. Since all the Class Vehicles are passenger vehicles, the

26   permanent label must state: "This vehicle conforms to all applicable Federal motor vehicle safety,

27   bumper, and theft prevention standards in effect on the date of manufacture shown above." 49

28   C.F.R. § 567.4(g)(5).

2730953.6 2820476.3                                    - 53 -                    SECOND THIRD AMENDED CLASS ACTION
                                                                                                   COMPLAINT
                                                                                              4:21-CV-06338-JST

144.    These labels were false and misleading because they failed to warn consumers about the risk that the SDM would fail during a frontal crash, and instead indicated that the passenger safety system would function properly. *See* 49 C.F.R. § 571.208 (S4.1.5.4, S4.1.5.5) (Federal motor vehicle safety standards requiring Occupant Restraint Systems with airbags and seatbelts).

145.    Vehicle manufacturers have a duty to disclose known safety defects to the public and to NHTSA. When a vehicle manufacturer learns of a safety defect, federal law requires it to disclose the defect to NHTSA and to the owners, purchasers, and dealers of the vehicle. 49 U.S.C. § 30118(c). Indeed, GM Parent acknowledges these obligations in its public SEC filings. In its Form 10-K for fiscal year 2019, GM Parent states: "If we or NHTSA determine that either a vehicle or vehicle equipment does not comply with a safety standard or if a vehicle defect creates an unreasonable safety risk, the manufacturer is required to notify owners and provide a remedy."

146.    The interiors of the Class Vehicles also contain prominent labels that alert the driver and passengers to the vehicle's airbag system. For example, steering wheels and passenger dashboards typically have labels identifying the airbag and safety restraint system (or "SRS").

147.    GM was also specifically required by law to include in their vehicles warning labels that alerted consumers of the need to perform airbag maintenance. For example, S4.5.1 of 49 C.F.R. § 571.208 states:

> Air bag maintenance or replacement information. If the vehicle manufacturer recommends periodic maintenance or replacement of an inflatable restraint system, as that term is defined in S4.1.5.1(b) of this standard, installed in a vehicle, that vehicle shall be labeled with the recommended schedule for maintenance or replacement. The schedule shall be specified by month and year, or in terms of vehicle mileage, or by intervals measured from the date appearing on the vehicle certification label provided pursuant to 49 CFR Part 567. The label shall be permanently affixed to the vehicle within the passenger compartment and lettered in English in block capital and numerals not less than three thirty-seconds of an inch high. This label may be combined with the label required by S4.5.1(b) of this standard to appear on the sun visor.

148.    Plaintiffs are unaware of any label in any Class Vehicle that alerted consumers to the SDM Calibration Defect or the need to perform maintenance to protect the SDM from preventing airbag deployment or seatbelt tightening when they are needed.

149.    GM also distributed the Class Vehicles with so-called "Monroney" labels (also known as "window stickers") that described the equipment and safety features of the vehicles, including airbags. Dealers sell Class Vehicles to consumers with these labels visible. An image of a Monroney label for the 2012 Silverado is included below as a representative example. In the center of the image, it features a "Five Star" frontal crash rating for drivers. Under "Safety & Security" features, it touts the "dual stage" airbags.



150.    Monroney labels for many of the Class Vehicles are available at: https://monroneylabels.com. Additional exemplars of Monroney labels from some of the Class Vehicles are attached as Exhibit B. On information and belief, the original printed Monroney labels for the Class Vehicles included the same content as pertains to safety and airbags as the exemplar Monroney labels from monroneylabels.com.

151.    As demonstrated by these examples, Monroney labels uniformly assured consumers that the Class Vehicles had working and safe airbags and seatbelts. This information would have suggested to any reasonable consumer that the passenger safety system did not suffer from a defect and would perform its intended function of activating the seatbelts and airbags when needed during a frontal collision.

### 2.    GM published owners' manuals for the Class Vehicles that detailed their safety features but did not disclose the SDM Calibration Defect.

152.    GM (and Old GM before it) published owners' manuals for each of the Class Vehicles, and distributed and made them available throughout the United States. These manuals were directed at consumers and included misleading statements regarding seatbelts, airbags, and passenger safety systems. These statements uniformly omitted any warning to consumers that the SDM could ~~effectively~~ shut off too early during a crash ~~after just 45 milliseconds~~, or that the airbags and seatbelt pretensioners may not deploy when expected.

153.    Representative examples of statements from owners' manuals with materially misleading omissions concerning the effectiveness of their airbags follow in the paragraphs below.

154.    The manual for the 2002 Cadillac Escalade provides extensive detail about the vehicle's airbags, including the below details and images. In addition to explaining the types of airbags and where they are located, the manual specifically alerts consumers that the airbags "are designed to inflate in moderate to severe frontal or near-frontal crashes" where "the impact speed is above the system's designed 'threshold level.'" As to frontal airbags, it explains that they have been "designed to help reduce the risk of injury from the force of an inflating airbag."

2730953.6 2820476.3

## Supplemental Restraint Systems (SRS)

This part explains the frontal and side impact Supplemental Restraint Systems (SRS) or air bag systems.

Your vehicle has four air bags -- a frontal air bag for the driver, another frontal air bag for the right front passenger, a side impact air bag for the driver, and another side impact air bag for the right front passenger.

Frontal air bags are designed to help reduce the risk of injury from the force of an inflating frontal air bag. But these air bags must inflate very quickly to do their job and comply with federal regulations.

### When should an air bag inflate?

The driver's and right front passenger's frontal air bags are designed to inflate in moderate to severe frontal or near-frontal crashes. But they are designed to inflate only if the impact speed is above the system's designed "threshold level."

If your vehicle goes straight into a wall that doesn't move or deform, the threshold level is about 9 to 16 mph (14 to 26 km/h). The threshold level can vary, however, with specific vehicle design, so that it can be somewhat above or below this range.

If your vehicle strikes something that will move or deform, such as a parked car, the threshold level will be higher. The driver's and right front passenger's frontal air bags are not designed to inflate in rollovers, side impacts, or rear impacts, because inflation would not help the occupant.

## How the Air Bag Systems Work

### Where are the air bags?



The driver's frontal air bag is in the middle of the steering wheel.



The right front passenger's frontal air bag is in the instrument panel on the passenger's side.

The driver's side impact air bag is in the side of the driver's seatback closest to the door.

SECOND THIRD AMENDED CLASS ACTION
COMPLAINT
4:21-CV-06338-JST



How the Air Bag Systems Work

Where are the air bags?

The driver's frontal air bag is in the middle of the steering wheel.



The right front passenger's frontal air bag is in the instrument panel on the passenger's side.

The driver's side impact air bag is in the side of the driver's seatback closest to the door.

## When Should an Airbag Inflate?

Frontal airbags are designed to inflate in moderate to severe frontal or near-frontal crashes to help reduce the potential for severe injuries mainly to the driver's or right front passenger's head and chest. However, they are only designed to inflate if the impact exceeds a predetermined deployment threshold. Deployment thresholds are used to predict how severe a crash is likely to be in time for the airbags to inflate and help restrain the occupants.

Whether the frontal airbags will or should deploy is not based on how fast your vehicle is traveling. It depends largely on what you hit, the direction of the impact, and how quickly your vehicle slows down.

All of the airbags in the vehicle will have the word AIRBAG embossed in the trim or on an attached label near the deployment opening.

For frontal airbags, the word AIRBAG will appear on the middle part of the steering wheel for the driver and on the instrument panel for the right front passenger.

With seat-mounted side impact airbags, the word AIRBAG will appear on the side of the seatback closest to the door.

With roof-rail airbags, the word AIRBAG will appear along the headliner or trim.

Airbags are designed to supplement the protection provided by safety belts. Even though today's airbags are also designed to help reduce the risk of injury from the force of an inflating bag, all airbags must inflate very quickly to do their job.

## Airbag System

The vehicle has the following airbags:

* A frontal airbag for the driver.
* A frontal airbag for the right front passenger.
* A seat-mounted side impact airbag for the driver.
* A seat-mounted side impact airbag for the right front passenger.
* A roof-rail airbag for the driver, passenger seated directly behind the driver, and the third row outboard passenger position.
* A roof-rail airbag for the right front passenger, passenger seated directly behind the right front passenger, and the third row outboard passenger position.

155.    The manuals for the 2009 Chevy Traverse and 2010 Buick Enclave include similar details and images. Like the manual for the 2002 Cadillac Escalade, they also assure consumers that the vehicle's airbags are "designed to help reduce the risk of injury from the force of an inflating bag" and, thus, that the aggressive deployment problems that plagued first-generation airbags had been alleviated.  It also assures that the frontal airbags have been "designed to inflate

1   in moderate to severe frontal crashes to help reduce the potential for severe injuries...." It

2   continues that airbag "deployment thresholds are used to predict how severe a crash is likely to be

3   in time for the airbags to inflate and help restrain the occupants." While it provides very specific

4   detail about the way the passenger safety systems should function, the manual notably fails to say

5   that the deployment thresholds are wholly and intentionally ignored ~~just 45 milliseconds~~ early on

6   into a crash sequence, preventing the airbags and seatbelts from functioning when they need to.

7       156.    The manual for the 2014 GMC Acadia provides additional detail about how the

8   passenger safety system functions. It explains that "Airbags are designed to inflate if the impact

9   exceeds the specific airbag system's deployment thresholds." Yet again, however, the manual

10  does not indicate that the SDM and its sensors are rendered useless in multi-impact crashes that

11  endure for longer than a specific, ~~45-millisecond time frame~~aggressive cutoff imposed by GM.

### Where Are the Airbags?



The driver frontal airbag is in the center of the steering wheel.



The front outboard passenger frontal airbag is in the passenger side instrument panel.



If the vehicle has a front center airbag, it is in the inboard side of the driver seatback.

### When Should an Airbag Inflate?

This vehicle is equipped with airbags. See *Airbag System on page 3-23*. Airbags are designed to inflate if the impact exceeds the specific airbag system's deployment threshold. Deployment thresholds are used to predict how severe a crash is likely to be in time for the airbags to inflate and help restrain the occupants. The vehicle has electronic sensors that help the airbag system determine the severity of the impact. Deployment thresholds can vary with specific vehicle design.

Frontal airbags are designed to inflate in moderate to severe frontal or near frontal crashes to help reduce the potential for severe injuries, mainly to the driver's or front outboard passenger's head and chest.

Whether the frontal airbags will or should inflate is not based primarily on how fast the vehicle is traveling.

It depends on what is hit, the direction of the impact, and how quickly the vehicle slows down.

Frontal airbags may inflate at different crash speeds depending on whether the vehicle hits an object straight on or at an angle, and whether the object is fixed or moving, rigid or deformable, narrow or wide.

Frontal airbags are not intended to inflate during vehicle rollovers, rear impacts, or many side impacts.

In addition, the vehicle has advanced technology frontal airbags. Advanced technology frontal airbags adjust the restraint according to crash severity.

The front center airbag, if equipped, is designed to inflate in moderate to severe side crashes depending upon the location of the impact, when either side of the vehicle is struck. In addition, the front center airbag is designed to inflate when the sensing system predicts that the vehicle is about to roll over on its

side. The front center airbag is not designed to inflate in frontal impacts, near frontal impacts, or rear impacts.

Seat-mounted side impact airbags are designed to inflate in moderate to severe side crashes depending on the location of the impact.

Seat-mounted side impact airbags are not designed to inflate in frontal impacts, rollovers, or rear impacts.

A seat-mounted side impact airbag is designed to inflate on the side of the vehicle that is struck.

Roof-rail airbags are designed to inflate in moderate to severe side crashes depending on the location of the impact. In addition, these roof-rail airbags are designed to inflate during a rollover or in a severe frontal impact. Roof-rail airbags are not designed to inflate in rear impacts. Both roof-rail airbags will inflate when either side of the vehicle is struck, if the sensing

### 3.   GM marketed the Class Vehicles to be safe and reliable but failed to mention the SDM Calibration Defect.

157.   Like its other consumer-facing representations, GM's advertisements for the Class Vehicles left out a crucial part of the story. By uniformly omitting any information about the SDM Calibration Defect, GM misled consumers into believing that their airbags and seatbelts would function properly in a crash, despite its knowledge to the contrary.

158.   A 2013 press release about the 2014 Chevy Silverado 1500, GMC Sierra, and Sierra Denali 1500 is further illustrative of GM's misleading statements about the Class Vehicles. Acknowledging that safety is "as important to truck buyers as it is to car buyers," Gay Kent, GM general director of Vehicle Safety and Crashworthiness, stated that the "Silverado and Sierra set a benchmark for pickup truck safety by offering a full array of advanced features designed to protect occupants before, during and after a collision." The press release noted the vehicle's "[s]ix standard air bags and 360-degree sensor system, including dual-stage frontal air bags, head-curtain side-impact air bags with rollover protect, and front outboard seat-mounted side-impact air bags."

159.   Brochures and press releases for other Class Vehicles use similar language to send a misleading message of safety. Illustrative examples are listed below.

a.   Beginning with the 1999 Chevy Blazer, GM promised to go "to the ends of the earth to bring you driving security," assuring "peace of mind" with its "mainstay features such as Next Generation driver and right-front-passenger airbags."

b.   "Because safety and security are so important to your family," the brochure for the 2002 Chevy Astro reads, "Astro features a comprehensive system to help you feel secure while you're driving." Among other safety features, "[s]tandard driver and front-passenger air bags . . . [are] designed to give you peace of mind. Chevy Astro. It's the midsize van that's serious about safety and security."

c.   The brochure for the 2006 GMC Yukon promises, "should the worst happen, your Yukon will protect you and your passengers with front and rear crush zones, a sturdy steel safety cage, up to four air bags and a host of other important safety features."

1          d.      The brochure for the 2008 Buick Enclave explains that "[s]afety and

2    protection were top priorities in the design of the Enclave" and touts the vehicle's "360°

3    perimeter safety system [that] will deploy the appropriate airbags."

4          e.      Promising "[f]eelings of security and confidence," the brochure for the

5    2009 Chevy Equinox states the vehicle's "dual-stage frontal and head-curtain side-impact air

6    bags" helped earn it "the highest possible government rating for frontal crash tests – five stars."

7          f.      Declaring that "[s]afety never goes out of style," the brochure for the 2009

8    Chevy Traverse highlights the vehicle's "five-star frontal and side-impact crash test ratings" and

9    its "six air bags that help protect all three rows of seating."

10          g.      A press release for the 2009 Cadillac Escalade ESV goes further,

11    proclaiming that the "Escalade is designed to be among the industry's safest and most secure

12    vehicles, with numerous safety systems and crash-avoidance technologies."

13          h.      "Speaking of safety," the brochure for the 2010 Buick Enclave reads,

14    "Enclave has earned an impressive five-star crash rating for both front and side impacts . . . .

15    Five-star rating is for the driver and front passenger seating positions in the frontal crash test and

16    for the front and rear seating positions in the side-impact crash test."

17          i.      The brochure for the 2010 GMC Terrain describes the vehicle as "the state

18    of the art in air bags" and contends that "[s]egment-best safety is anticipated, with features that

19    include . . . six standard air bags: dual frontal airbags; head curtain side air bags and pelvic/thorax

20    seat-mounted side airbags."

21          j.      The brochure for the 2010 Silverado assures that the "head of security

22    never goes off the clock," boasting of a "five-star frontal crash test rating," including through its

23    "driver and right-front passenger dual-stage airbags."

24          k.      A press release for the 2011 Cadillac Escalade Hybrid explains, "[f]ront-

25    image airbags for the driver and passenger have been designed to protect the head during a frontal

26    crash."

27          l.      According to the brochure for the 2011 Cadillac SRX, "[p]assenger safety

28    is a primary consideration throughout the engineering process." If an incident occurs, "the SRX

1    looks out for you and yours," with its "six standard airbags, including advanced, frontal dual-

2    stage and seat mounted side-impact airbags for the driver and front-seat passenger, as well as

3    first- and second- row outboard head-curtain airbags."

4              m.     Describing Buick's "holistic[]" approach to safety, the brochure for the

5    2012 Enclave proclaims, "Enclave's approach to safety helps you and your companions feel safe

6    and secure before, during and after your travels." Inside the vehicle, "all rows have curtain side-

7    impact air bags with rollover protection, along with driver and front-passenger side-impact and

8    dual-stage airbags."

9              n.     In a 2013 press release announcing that NHTSA gave "its highest possible

10   5-star Overall Score" to a number of Chevrolet vehicles, including the Traverse and the

11   Silverado, Kent said "We design safety and crashworthiness into our vehicles very early in

12   development." He continued, "We are committed to offering advanced safety technologies on a

13   broad range of models . . . . All of our vehicles are designed to provide continuous protection for

14   customers before, during and after a crash."

15             o.     A press release for the 2013 Buick Enclave likewise publicized Buick's

16   safety record: "In 2012, every Buick model was named a Top Safety Pick by the Insurance

17   Institute for Highway Safety, underscoring the brand's commitment to safety leadership. The

18   2013 builds on that distinction with the industry's first front center side air bag – a standard

19   feature."

20             p.     "With head curtain side-impact air bags reaching from the front to the third

21   row of seating for outboard passengers," the 2014 brochure for the GMC Yukon XL reads,

22   "Yukon is engineered to help protect passengers regardless of where they're seated."

23             q.     Claiming to "set[] the standard . . . in everything from safety to

24   performance," the brochure for the 2014 Cadillac Escalade touts the vehicle's "eight standard

25   airbags," including "[d]ual-stage driver and front passenger, front-impact, Automatic Occupant

26   Sensing System, driver and front passenger seat-mounted side-impact airbags for thorax and

27   pelvic protection and head-curtain side-impact airbags with rollover protection for all outboard

28   passenger rows."

1       r.      The brochure for the 2014 Buick Enclave promises that the vehicle has

2   "your back, front and sides, proclaiming that "in an industry first, the standard driver's seat side-

3   mounted front center air bag adds another layer of protection by providing cushioning between

4   you and your front passenger to help reduce injuries in side impacts." The brochure includes the

5   below picture, indicating that the airbags will function as expected.



14      160.    Based on information and belief, every single Class Vehicle advertisement omitted

15  any mention that the vehicles' airbags and seatbelts could fail in a serious frontal collision due to

16  the SDM Calibration Defect.

17          **4.      GM provided warranties to repair defects in the Class Vehicles and
                       have not done so.**

18      1.      GM also provided Plaintiffs and Class members with an express warranty "to

19  correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the

20  vehicle related to materials or workmanship" in the Class Vehicles.

21      2.      The warranty terms became part of the basis of the bargain when Plaintiffs and

22  Class members purchased or leased their Class Vehicles.

23      1.      3.Plaintiffs and each Class member have had sufficient direct dealings with either

24  Defendants or their agents (including dealerships) to establish privity of contract between

25  Defendants, on the one hand, and Plaintiffs and each Class member, on the other hand, as to the

26  express and-implied warranties described in the Claims for Relief below.

27      2.      4.Nonetheless, privity is not required here because Plaintiffs and each Class

28  member are intended third-party beneficiaries of contracts between Defendants and their dealers,

1    and of their implied warranties. The dealers were not intended to be the ultimate consumers of the

2    Class Vehicles and have no rights under the warranty agreements provided with the Class

3    Vehicles; the warranty agreements were designed for and intended to benefit consumers only.

4    Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities

5    due to the safety defect in the SDM Calibration.

6                                                              * * *

7          <u>3.</u>      5. GM's deceptive actions harmed Plaintiffs and the Class. As a result of GM's

8    unfair, deceptive, and/or fraudulent business practices, and failure to disclose that the Class

9    Vehicles carried a dangerous safety defect that would cause the passenger safety systems to shut

10   off during certain types of accidents, owners and lessees of the Class Vehicles have lost money

11   and/or property.

12   **V.    CLASS ACTION ALLEGATIONS**

13         4.      This case is about GM's legal responsibility for its knowledge, conduct, and

14   products. The proposed Class members' claims all derive directly from a single course of conduct

15   by GM. The objective facts are the same for all Class members. Within each Count asserted by

16   Plaintiffs on behalf of themselves and the proposed Class, the same legal standards govern.

17         5.      Accordingly, Plaintiffs bring this lawsuit as a class action on their own behalf, and

18   on behalf of all other persons similarly situated, as members of the proposed Class pursuant to

19   Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3), and/or (c)(4). This action satisfies

20   the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements

21   of those provisions. Certification of Plaintiffs' claims for class-wide treatment is appropriate

22   because Plaintiffs can prove the elements of the claims on a class-wide basis using the same

23   evidence as would be used in individual actions alleging the same claims.

24         **A.    The Class Definition**

25         6.      The "Class Vehicles" herein include all vehicles in the United States that contain

26   the SDM Calibration Defect that were (1) manufactured, sold, distributed, or leased by

27   Defendants or (2) manufactured, sold, distributed, or leased by Old GM and purchased or leased

28   by Plaintiffs or a Class member after July 10, 2009.

1    7.    The SDM Calibration Defect exists in all GM trucks and SUVs starting with

2    model year 1999. This would include, for example, trucks and SUVs such as the Silverado,

3    Tahoe, Astro, and Trailblazer. The information presently available to Plaintiffs shows that, after it

4    was introduced in or about 1999, ~~the calibration defect persisted~~ GM continued to implement its

5    defective cutoff strategy in software used in GM SUVs through model year 2018. Discovery will

6    reveal when, if ever, GM discontinued use of the SDM Calibration Defect in its trucks and SUVs.

7    This information is uniquely in the Defendants' hands, as only GM (and Delco, n/k/a Aptiv)

8    possess the software calibration files for GM vehicles that will demonstrate the presence of the

9    defect in the software; these files are not downloadable or otherwise accessible from the vehicles

10   themselves, meaning Plaintiffs are unable to obtain those files on their own.

11    8.    The proposed Class includes all persons and entities that purchased or leased a

12   Class Vehicle in the state of California.

13    9.    Excluded from the Class are:

14    a.    Defendants' officers, directors and employees; Defendants' affiliates and

15   affiliates' officers, directors, and employees; Defendants' distributors and distributors' officers,

16   directors, and employees; and

17    b.    Judicial officers and their immediate family members and associated court

18   staff assigned to this case.

19    10.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because

20   Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as

21   would be used in individual actions alleging the same claims.

22    11.    Plaintiffs reserve the right to amend the Class definitions if discovery and further

23   investigation reveal that any Class should be expanded, reduced, divided into additional

24   subclasses under Rule 23(c)(5), or otherwise modified.

25    **B.    Numerosity: Federal Rule of Civil Procedure 23(a)(1)**

26    12.    The members of the Class are so numerous and geographically dispersed that

27   individual joinder of all Class members is impracticable. There are millions of Class Vehicles

28   nationwide, a significant number of which are in the state of California. The precise number and

1    identities of the California Class members may be ascertained from Defendants' records and

2    motor vehicle regulatory data. Class members may be notified of the pendency of this action by

3    recognized, Court-approved notice dissemination methods.

4        **C.**    <u>**Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2)**</u>
<u>**and 23(b)(3)**</u>

5

6        13.    This action involves common questions of law and fact, which predominate over

7    any questions affecting individual Class members. These include, without limitation, the

8    following:

9        a.    Whether the Class Vehicles' SDM software calibration is defective, as

10   described herein;

11       b.    Whether Defendants knew, or should have known, about the SDM

12   Calibration Defect, and, if so, how long they have or should have known about it;

13       c.    Whether Defendants had a duty to disclose the defective nature of the Class

14   Vehicles to Plaintiffs and Class members;

15       d.    Whether Defendants' concealment of the SDM Calibration Defect caused

16   Plaintiffs and Class members to act to their detriment by purchasing or leasing the Class Vehicles;

17       e.    Whether Defendants' certifications concerning vehicle safety were

18   misleading considering the risk that the SDMs will not trigger airbags and seatbelts during certain

19   types of collisions;

20       f.    Whether Defendants' conduct tolls any or all applicable limitations periods

21   by acts of fraudulent concealment, application of the discovery rule, or equitable estoppel;

22       g.    Whether Defendants misrepresented that the Class Vehicles were safe;

23       h.    Whether Defendants concealed the SDM Calibration Defect;

24       i.    Whether Defendants' statements, concealments, and omissions regarding

25   the Class Vehicles were material, in that a reasonable consumer could consider them important in

26   purchasing, leasing, selling, maintaining, or operating such vehicles;

27

28

1          j.      Whether Defendants engaged in unfair, deceptive, unlawful, and/or

2    fraudulent acts or practices, in trade or commerce, by failing to disclose that the Class Vehicles

3    were designed, manufactured, sold, and leased with defective airbag components;

4          k.      Whether the Class Vehicles were unfit for the ordinary purposes for which

5    they were used, in violation of the implied warranty of merchantability;

6          l.      Whether Defendants' concealment of the true defective nature of the Class

7    Vehicles caused their market price to incorporate a premium reflecting the assumption by

8    consumers that the Class Vehicles were equipped with fully functional passenger safety systems

9    and, if so, the market value of that premium; and

10         m.      Whether Plaintiffs and the other Class members are entitled to damages

11   and other monetary relief and, if so, in what amount.

12   **D.      Typicality: Federal Rule of Civil Procedure 23(a)(3)**

13         14.     Plaintiffs' claims are typical of the claims of Class members whom they seek to

14   represent under Fed. R. Civ. P. 23(a)(3), because Plaintiffs and each Class member purchased or

15   leased a Class Vehicle and were comparably injured through Defendants' wrongful conduct as

16   described above. Plaintiffs and the other Class members suffered damages as a direct proximate

17   result of the same wrongful practices by Defendants. Plaintiffs' claims arise from the same

18   practices and courses of conduct that give rise to the claims of the other Class members.

19   Plaintiffs' claims are based upon the same legal theories as the claims of the other Class

20   members.

21   **E.      Adequacy: Federal Rule of Civil Procedure 23(a)(4)**

22         15.     Plaintiffs will fairly and adequately represent and protect the interests of the Class

23   members as required by Fed. R. Civ. P. 23(a)(4). Plaintiffs' interests do not conflict with the

24   interests of the Class members. Plaintiffs have retained counsel competent and experienced in

25   complex class action litigation, including automobile defect litigation and other consumer

26   protection litigation. Plaintiffs intend to prosecute this action vigorously. Neither Plaintiffs nor

27   their counsel have interests that conflict with the interests of the other Class members. Therefore,

28   the interests of the Class members will be fairly and adequately protected.

1    **F.    Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2)**

2        16.    Defendants have acted or refused to act on grounds generally applicable to

3    Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief

4    and declaratory relief, as described below, with respect to the Class as a whole.

5    **G.    Superiority: Federal Rule of Civil Procedure 23(b)(3)**

6        17.    A class action is superior to any other available means for the fair and efficient

7    adjudication of this controversy, and no unusual difficulties are likely to be encountered in its

8    management. The damages or other financial detriment suffered by Plaintiffs and the other Class

9    members are relatively small compared to the burden and expense that would be required to

10    individually litigate their claims against Defendants such that it would be impracticable for

11    members of the Class to individually seek redress for Defendants' wrongful conduct.

12        18.    Even if Class members could afford individual litigation, the court system could

13    not. Individualized litigation creates a potential for inconsistent or contradictory judgments and

14    increases the delay and expense to all parties and the court system. By contrast, the class action

15    device presents far fewer management difficulties and provides the benefits of single

16    adjudication, economy of scale, and comprehensive supervision by a single court.

17    **VI.    ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED**

18        19.    Defendants have known of the SDM Calibration Defect since at least 2009, when

19    GM learned, through books, records, and personnel, that Old GM had launched the defective

20    calibration strategy despite clear warnings of the risk of doing so, and then continued to use that

21    defective software strategy thereafter. They obtained further knowledge of the risks of the SDM

22    Calibration Defect from lawsuits and multiple suspicious accidents (involving airbag and seatbelt

23    failures in frontal accidents) occurring in practically every year since, which provided additional

24    and confirmatory notice of the continued risks of the SDM Calibration Defect.

25        20.    GM had a duty to disclose the SDM Calibration Defect to consumers and NHTSA.

26    Instead, GM knowingly, affirmatively, and actively concealed the defect from regulators and

27    consumers by continuing to distribute, sell, and/or lease the Class Vehicles to Plaintiffs and the

28

1  Class members; to advertise the safety of the Class Vehicles; and to fail to notify regulators or

2  Plaintiffs and the Class members about the true nature of the Class Vehicles.

3       21.     As of the date of this Complaint, GM still has not disclosed, and continues to

4  conceal, that the Class Vehicles are defective, that the SDM Calibration Defect could prevent the

5  airbags and seatbelts from activating during certain kinds of frontal collisions, and that these

6  Class Vehicles' safety systems may fail them in life-threatening collisions. Despite its knowledge

7  of the SDM Calibration Defect and its attendant safety risks, GM continues to market the Class

8  Vehicles based on superior safety and reliability while omitting the disclosure safety and

9  reliability risks associated with the SDM Calibration Defect.

10      22.     Plaintiffs and members of the proposed Class could not have discovered through

11 the exercise of reasonable diligence that GM was concealing the SDM Calibration Defect in their

12 vehicles and misrepresenting the defective nature of the Class Vehicles.

13      23.     With respect to Class Vehicles that have not experienced airbags or seatbelt

14 failure, Plaintiffs and other Class members did not discover, could not reasonably have

15 discovered, and had no reason to suspect that their Class Vehicles are defective, that GM

16 calibrated the software program that controls the SDM to prevent prematurely cutoff airbag and

17 seatbelt deployment just 45 milliseconds after a crash has begun, that—in affirmatively blocking

18 these critical safety features after 45 milliseconds  GM too early  GM significantly and

19 unnecessarily increased the risk of injury and death in frontal crashes, that the safety of their

20 Class Vehicles is impaired by this defect such that the Class Vehicles' safety system may fail

21 them in potentially deadly collisions, or that, as a result of the foregoing, they overpaid for their

22 vehicles, and/or the value of their vehicles is diminished.

23      24.     With respect to Class Vehicles that have experienced airbag and/or seatbelt failure

24 prior to the filing of this Complaint, Class members did not discover and could not reasonably

25 have discovered that such failure was due to a defect known to GM through a dangerous and

26 defective approach to SDM software calibration.

27      25.     Plaintiffs and other Class members did not discover, and did not know of, facts

28 that would have caused a reasonable person to suspect that GM did not report this material

1   information within their knowledge to consumers, dealerships, or relevant authorities; nor would

2   a reasonable and diligent investigation have disclosed that GM was aware of the defective nature

3   of the SDM software calibration and the Class Vehicles in which it was incorporated.

4       26.    Due to the highly technical nature of the SDM Calibration Defect, Plaintiffs and

5   Class members were unable to independently discover it using reasonable diligence. Absent

6   counsel and third-party consultants with relevant expertise, Plaintiffs and Class members lack the

7   necessary expertise to analyze the software algorithm for the SDMs, or vehicle safety system

8   performance in ~~and~~ an accident, and to understand its defective nature. GM has not issued a recall

9   or issued other similar public statements about the SDM Calibration Defect, and Plaintiffs first

10  learned of the defective nature of the SDM software calibration in their vehicles, and of GM's

11  scheme to design and sell vehicles with defective SDM software calibrations, only in connection

12  with retaining counsel and filing this lawsuit in 2021 (for Plaintiff Vargas and Milstead). Plaintiff

13  Ray learned of the SDM Calibration Defect in connection with retention of counsel in late 2020,

14  and was also aware of the pendency of this putative class action before filing his claims ~~in this~~

15  ~~pleading~~.

16      27.    For the foregoing reasons, GM is estopped from relying on any statutes of

17  limitation or repose as a defense in this action. All applicable statutes of limitation and repose

18  have been tolled by operation of the discovery rule and by GM's fraudulent concealment with

19  respect to all claims against GM.

## VII.    <u>CAUSES OF ACTION</u>

**COUNT I:**
**FRAUD BY CONCEALMENT**
**(Common Law)**

28.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set

forth herein.

29.    Plaintiffs bring this claim against all Defendants on behalf of themselves and the

California State Class under the common law of fraudulent concealment.

30.     Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

31.     Defendants intentionally and knowingly concealed and suppressed material facts from regulators and consumers regarding the SDM Calibration Defect that causes the airbags and seatbelts to fail in prolonged onset, complex, or otherwise multi-impact accidents, causing a serious risk of injury or death.

32.     A reasonable consumer would not have expected that the Class Vehicles contained a software program that was calibrated to prevent seatbelt tightening and airbag deployment during certain types of frontal crashes that are otherwise severe enough to require them. Defendants knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

33.     Defendants ensured that Plaintiffs and the Class did not discover this information by actively concealing and misrepresenting the true nature of the Class Vehicles' safety systems. Defendants intended for Plaintiffs and the Class to rely on their omissions—which they did by purchasing and leasing the Class Vehicles at the prices they paid.

34.     Defendants had a duty to disclose the SDM Calibration Defect because:

a.      GM had exclusive and/or far superior knowledge and access to the facts about this hidden and complex safety defect. Defendants also knew that these technical facts were not known to or reasonably discoverable by Plaintiffs and the Class; GM knew the SDM Calibration Defect (and its safety risks) was a material fact that would affect Plaintiffs' or Class members' decisions to buy or lease Class Vehicles; GM is subject to statutory duties to disclose known safety defects to consumers and to NHTSA; GM's actions to avoid investigations and a recall due to the defect deprived consumers of an opportunity in which they could have learned about it; and GM made incomplete representations about the safety and reliability of the Class Vehicles and their passenger safety systems, while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle,

1    Defendants intentionally concealed, suppressed, and failed to disclose to Plaintiffs and the Class

2    that the Class Vehicles contained the dangerous SDM Calibration Defect. Because they

3    volunteered to provide information about the Class Vehicles that they offered for sale to Plaintiffs

4    and the Class, Defendants had the duty to disclose the whole truth. They did not.

5        35.    To this day, Defendants have not made full and adequate disclosure and continue

6    to conceal material information regarding the SDM Calibration Defect. The omitted and

7    concealed facts were material because a reasonable person would find them important in

8    purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact

9    the value of the Class Vehicles purchased or leased by Plaintiffs and the Class.

10       36.    Defendants actively concealed or suppressed these material facts, in whole or in

11   part, to maintain a market for their vehicles, to protect profits, and to avoid costly recalls that

12   would hurt the GM brand's image. They did so at the expense of Plaintiffs and the Class. Had

13   they been aware of the SDM Calibration Defect in the Class Vehicles, and Defendants' callous

14   disregard for safety, Plaintiffs and the Class either would not have paid as much as they did for

15   their Class Vehicles, or they would not have purchased or leased them.

16       37.    Accordingly, Defendants are liable to Plaintiffs and the Class for their damages in

17   an amount to be proven at trial, including, but not limited to, their lost overpayment for the Class

18   Vehicles at the time of purchase or lease.

19       38.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to

20   defraud; in reckless disregard of Plaintiffs' and the Class' rights and well-being; and to enrich

21   themselves. Their misconduct warrants an assessment of punitive damages in an amount

22   sufficient to deter such conduct in the future, which amount shall be determined according to

23   proof at trial.

**COUNT II:**
**UNJUST ENRICHMENT**
**(Common Law)**

26       39.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set

27   forth herein.

28

1    40.    Plaintiffs Richard Vargas and Arthur Ray assert this Unjust Enrichment count on

2  behalf of themselves and the California State Class.

3    41.    By reason of their conduct, Defendants caused damages to Plaintiffs and Class

4  members. Plaintiffs and Class members conferred a benefit on the Defendants by overpaying for

5  Class Vehicles at prices that were artificially inflated by Defendants' concealment of the SDM

6  Calibration Defect and misrepresentations regarding the Class Vehicles' safety.

7    42.    As a result of Defendants' fraud and deception, Plaintiffs and Class members were

8  not aware of the true facts concerning the Class Vehicles and did not benefit from the

9  Defendants' misconduct.

10    43.    Defendants knowingly benefitted from their unjust conduct. They sold and leased

11  Class Vehicles equipped with the SDM Calibration Defect for more than what the vehicles were

12  worth, at the expense of Plaintiffs and Class members.

13    44.    Defendants readily accepted and retained these benefits from Plaintiffs and Class

14  members.

15    45.    It is inequitable and unconscionable for Defendants to retain these benefits because

16  they misrepresented that the Class Vehicles were safe, and intentionally concealed, suppressed,

17  and failed to disclose the SDM Calibration Defect to consumers. Plaintiffs and Class members

18  would not have purchased or leased the Class Vehicles or would have paid less for them, had

19  Defendants not concealed the SDM Calibration Defect.

20    46.    Plaintiffs and Class members do not have an adequate remedy at law.

21    47.    Equity cannot in good conscience permit the Defendants to retain the benefits that

22  they derived from Plaintiffs and Class members through unjust and unlawful acts, and therefore

23  restitution or disgorgement of the amount of the Defendants' unjust enrichment is necessary.

24
                              **COUNT III:**
25            **Violation of California Consumers Legal Remedies Act**
                      **Cal. Civ. Code § 1750, *et seq.***
26

27    48.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though

    fully set forth herein.
28

1    49.    Plaintiffs bring this claim on behalf of themselves and the California State Class

2    against the Defendants.

3    50.    Plaintiffs and California State Class members are "consumers" within the meaning

4    of Cal. Civ. Code § 1761(d).

5    51.    Defendants, the California Plaintiffs, and California State Class members are

6    "persons" within the meaning of Cal. Civ. Code § 1761(c).

7    52.    The Class Vehicles are "goods" within the meaning of Cal. Civ. Code § 1761(a).

8    53.    The California Legal Remedies Act ("CLRA") prohibits "unfair methods of

9    competition and unfair or deceptive acts or practices undertaken by any person in a transaction

10    intended to result or that results in the sale or lease of goods or services to any consumer[.]" Cal.

11    Civ. Code § 1770.

12    54.    Defendants engaged in unfair or deceptive acts or practices when, in the course of

13    their business they, among other acts and practices, intentionally and knowingly made materially

14    false representations regarding the reliability, safety, and performance of the Class Vehicles

15    and/or the defective SDM software calibration, as detailed above.

16    55.    Specifically, by misrepresenting the Class Vehicles as safe and/or free from

17    defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class

18    Vehicles, Defendants engaged in one or more of the following unfair or deceptive business

19    practices as defined in Cal. Civ. Code § 1770(a):

20        a.  Representing that the Class Vehicles have characteristics, uses, benefits, and qualities

21            which they do not have.

22        b.  Representing that the Class Vehicles are of a particular standard, quality, and grade

23            when they are not.

24        c.  Advertising the Class Vehicles and/or with the intent not to sell or lease them as

25            advertised.

26        d.  Representing that the subject of a transaction has been supplied in accordance with a

27            previous representation when it has not.

28    Cal. Civ. Code §§ 1770(a)(5), (7), (9), and (16).

SECOND THIRD AMENDED CLASS ACTION
COMPLAINT
4:21-CV-06338-JST

1          56.      Additionally, in the various channels of information through which Defendants

2    sold and marketed Class Vehicles, Defendants failed to disclose material information concerning

3    the Class Vehicles, which they had a duty to disclose. Defendants had a duty to disclose the

4    defect because, as detailed above: (a) Defendants knew about the defect in the SDM software

5    calibration in the Class Vehicles; (b) Defendants had exclusive knowledge of material facts not

6    known to the general public or the other California State Class members; (c) Defendants actively

7    concealed material facts concerning the software calibration from the general public and Plaintiffs

8    and California State Class members; and (d) Defendants made partial representations about the

9    Class Vehicles that were misleading because they did not disclose the full truth.

10         57.      Defendants' unfair or deceptive acts or practices, including their

11   misrepresentations, concealments, omissions, and/or suppressions of material facts, had a

12   tendency or capacity to mislead and create a false impression in consumers, and were likely to

13   and did in fact deceive reasonable consumers, including Plaintiffs and California State Class

14   members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles,

15   and the true value of the Class Vehicles.

16         58.      Plaintiffs and the other California State Class members have suffered injury in fact

17   and actual damages resulting from Defendants' material omissions.

18         59.      Defendants' violations present a continuing risk to Plaintiffs and California State

19   Class members, as well as to the general public, and therefore affect the public interest.

20         60.      Defendants are on notice of the issues raised in this count and this Complaint by

21   way of, among other things, the individual personal injury litigation and hundreds of public

22   consumer complaints detailed above, as well as their own intrinsic knowledge of defect they have

23   included in the Class Vehicles by design. Plaintiffs also sent a notice letter to Defendants in

24   accordance with Cal. Civ. Code § 1782(a) of the CLRA, notifying Defendants of their alleged

25   violations of Cal. Civ. Code § 1770(a) and demanding that Defendants correct or agree to correct

26   the actions described therein within thirty (30) days of the notice letter. Defendants did not

27   correct or agree to correct their actions within thirty days, and Plaintiffs therefore seek

28

1  compensatory and monetary damages to which Plaintiffs and California Class Members are

2  entitled under the CLRA.

3      61.    Attached hereto as Exhibit C is the venue affidavit required by CLRA, Cal. Civ.

4  Code § 1780(d).

5                          **COUNT IV:**
                **Violations of the California Unfair Competition Law**
6                **Cal. Bus. & Prof. Code § 17200, *et seq.***

7      62.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though

8  fully set forth herein.

9      63.    Plaintiffs bring this claim on behalf of themselves and the California State Class

10 against the Defendants.

11     64.    The California Unfair Competition Law ("UCL"), Cal. Bus. and Prof. Code

12 § 17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."

13     65.    Defendants' knowing and intentional conduct described in this Complaint

14 constitutes unlawful, fraudulent, and unfair business acts and practices in violation of the UCL.

15 Specifically, Defendants' conduct is unlawful, fraudulent, and unfair in at least the following

16 ways:

17          a.    by knowingly and intentionally concealing from Plaintiffs and California

18 State Class members that the Class Vehicles suffer from the SDM Calibration Defect while

19 *obtaining money from the California State Class members;*

20          b.    by marketing Class Vehicles as possessing a functional, safe, and defect-

21 free passenger safety system;

22          c.    by purposefully designing and manufacturing the Class Vehicles to contain

23 a defective SDM software calibration that causes airbags and seatbelts to fail in certain accidents

24 contrary to what was disclosed to regulators and represented to consumers who purchased or

25 leased Class Vehicles, and failing to fix the SDM Calibration Defect free of charge; and

26

27

28

1          d.     by violating the other California laws alleged herein, including the False

2 Advertising Law, Consumers Legal Remedies Act, California Commercial Code, and Song-

3 Beverly Consumer Warranty Act.

4       66.     Defendants' misrepresentations, omissions, and concealment were material to the

5 California Plaintiffs and California State Class members, and Defendants misrepresented,

6 concealed, or failed to disclose the truth with the intention that consumers would rely on the

7 misrepresentations, concealment, and omissions.

8       67.     Defendants' material misrepresentations and omissions alleged herein caused

9 Plaintiffs and the California State Class members to make their purchases or leases of their Class

10 Vehicles. Absent those misrepresentations and omissions, Plaintiffs and California State Class

11 members would not have purchased or leased these vehicles or would not have purchased or

12 leased these Class Vehicles at the prices they paid.

13      68.     Accordingly, Plaintiffs and California State Class members have suffered

14 ascertainable loss and actual damages as a direct and proximate result of Defendants'

15 misrepresentations and their concealment of and failure to disclose material information.

16      69.     Defendants' violations present a continuing risk to Plaintiffs and California State

17 Class members, as well as to the general public. Defendants' unlawful acts and practices

18 complained of herein affect the public interest.

19      70.     Plaintiffs request that this Court enter an order enjoining Defendants from

20 continuing their unfair, unlawful, and/or deceptive practices and restoring to members of the

21 California State Class any money Defendants acquired by unfair competition, including

22 restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and

23 Cal. Bus. & Prof. Code § 3345, and for such other relief set forth below.

**COUNT V:**
**Violations of the California False Advertising Law**
**Cal. Bus. & Prof. Code § 17500, *et seq.***

24

25

26      71.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though

27 fully set forth herein.

28

1    72.    Plaintiffs bring this claim on behalf of themselves and the California State Class

2    against the Defendants.

3    73.    The California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500,

4    prohibits false advertising.

5    74.    Defendants, Plaintiffs, and California State Class members are "persons" within

6    the meaning of Cal. Bus. & Prof. Code § 17506.

7    75.    Defendants violated the FAL by causing to be made or disseminated through

8    California and the United States, through advertising, marketing and other publications,

9    statements regarding the safety of the Class Vehicles that were untrue or misleading, and which

10    were known, or which by the exercise of reasonable care should have been known to Defendants,

11    to be untrue and misleading to consumers, including California State Class members. Numerous

12    examples of these statements and advertisements appear in the preceding paragraphs throughout

13    this Complaint and in Exhibit B.

14    76.    The misrepresentations and omissions regarding the reliability and safety of Class

15    Vehicles as set forth in this Complaint were material and had a tendency or capacity to mislead

16    and create a false impression in consumers, and were likely to and did in fact deceive reasonable

17    consumers, including Plaintiffs and California State Class members, about the true safety and

18    reliability of Class Vehicles, the quality of the Defendants' brands, and the true value of the Class

19    Vehicles.

20    77.    In purchasing or leasing their Class Vehicles, the California State Class members

21    relied on the misrepresentations and/or omissions of Defendants with respect to the safety and

22    reliability of the Class Vehicles. Defendants' representations turned out not to be true because the

23    Class Vehicles are distributed with a dangerous safety defect, rendering the vehicles' airbags and

24    seatbelts inoperative in certain types of accidents.

25    78.    Plaintiffs and the other California State Class members have suffered an injury in

26    fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or

27    deceptive practices. Had they known the truth, Plaintiffs and California State Class members

28

1    would not have purchased or leased the Class Vehicles or would have paid significantly less for

2    them.

3          79.     Plaintiffs and California State Class members had no way of discerning that

4    Defendants' representations were false and misleading, or otherwise learning the facts that

5    Defendants had concealed or failed to disclose. Plaintiffs and California State Class members did

6    not, and could not, unravel Defendants' deception on their own.

7          80.     Defendants had an ongoing duty to Plaintiffs and California State Class members

8    to refrain from unfair or deceptive practices under the California False Advertising Law in the

9    course of their business. Specifically, the Defendants owed Plaintiffs and California State Class

10   members a duty to disclose all the material facts concerning the SDM Calibration Defect in the

11   Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the

12   defect from Plaintiffs and California State Class members, and/or they made misrepresentations

13   that were misleading because they were contradicted by withheld facts.

14         81.     All of the wrongful conduct alleged herein occurred, and continues to occur, in the

15   conduct of Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized

16   course of conduct that is still perpetuated and repeated, both in the State of California and

17   nationwide.

18         82.     Defendants' violations present a continuing risk to Plaintiffs and California State

19   Class members, as well as to the general public. Defendants' unlawful acts and practices

20   complained of herein affect the public interest.

21         83.     Plaintiffs request that this Court enter an order enjoining Defendants from

22   continuing their unfair, unlawful, and/or deceptive practices and restoring to the California State

23   Class any money Defendants acquired by unfair competition, including restitution and/or

24   restitutionary disgorgement, and for such other relief set forth below.

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

~~COUNT VI:~~
~~Breach of Express Warranty~~
~~Cal. Com. Code §§ 2313 and 10210~~

~~57.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.~~

~~58.    Plaintiff Richard Vargas brings this claim on behalf of himself and the California State Class against the Defendants.~~

~~59.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and "sellers" of motor vehicles under § 2103(1)(d).~~

~~60.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Cal. Com. Code § 10103(a)(16).~~

~~61.    All California State Class members who purchased Class Vehicles in California are "buyers" within the meaning of Cal. Com. Code § 2103(1)(a).~~

~~62.    All California State Class members who leased Class Vehicles in the California are "lessees" within the meaning of Cal. Com. Code § 10103(a)(14).~~

~~63.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).~~

~~64.    In connection with the purchase or lease of Class Vehicles, Defendants provided Plaintiffs and California State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.~~

~~65.    Defendants' warranties formed the basis of the bargain that was reached when Plaintiffs and California State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.~~

~~66.    However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and California State Class members.~~

1    ~~67.    Plaintiff and California State Class members reasonably relied on Defendants'~~
2    ~~express warranties when purchasing or leasing their Class Vehicles.~~
3    ~~68.    Defendants knowingly breached their express warranties to repair defects in~~
4    ~~materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles.~~
5    ~~Defendants also breached their express warranties by providing a product containing defects that~~
6    ~~were never disclosed to Plaintiff and California State Class members.~~
7    ~~69.    On January 27, 2023, Plaintiff Vargas presented his Class Vehicle and requested a~~
8    ~~repair for the SDM Calibration Defect under the vehicle's warranty at Anderson Chevrolet, an~~
9    ~~authorized GM dealership in Lake Elsinore, California. In response, dealership personnel~~
10   ~~informed Mr. Vargas that there were no open recalls for the SDM software in his vehicle, and~~
11   ~~thus they would not provide a repair for the SDM Calibration Defect. Based on this refusal, Mr.~~
12   ~~Vargas left the dealership without obtaining a repair for the SDM Calibration Defect under his~~
13   ~~warranty.~~
14   ~~70.    Defendants were on reasonable notice of these issues and an opportunity to cure~~
15   ~~the breaches due to Mr. Vargas' request for a repair at the dealership, as well as their extensive~~
16   ~~knowledge of the SDM Calibration Defect, as detailed herein. Defendants have not cured the~~
17   ~~breaches of their warranties despite years of knowledge of those breaches.~~
18   ~~71.    As a direct and proximate result of Defendants' breach of express warranties,~~
19   ~~Plaintiff and California State Class members have been damaged in an amount to be proven at~~
20   ~~trial.~~

21                       **COUNT VII:COUNT VI:**
                  **Breach of Implied Warranty of Merchantability**
22                     **Cal. Com. Code §§ 2314 and 10212**

23       84.    ~~72.~~Plaintiffs re-allege and incorporate by reference all preceding allegations as
24   though fully set forth herein.

25       85.    ~~73.~~Plaintiffs bring this claim on behalf of themselves and the California State
26   Class against the Defendants.

27

28

1          86.    74.Defendants are and were at all relevant times "merchant[s]" with respect to

2     motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and "sellers" of motor vehicles

3     under § 2103(1)(d).

4          87.    75.With respect to leases, Defendants are and were at all relevant times "lessors"

5     of motor vehicles under Cal. Com. Code § 10103(a)(16).

6          88.    76.All California State Class members who purchased Class Vehicles in California

7     are "buyers" within the meaning of Cal. Com. Code § 2103(1)(a).

8          89.    77.All California State Class members who leased Class Vehicles in the California

9     are "lessees" within the meaning of Cal. Com. Code § 10103(a)(14).

10         90.    78.The Class Vehicles are and were at all relevant times "goods" within the

11    meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

12         91.    79.A warranty that the Class Vehicles were in merchantable condition and fit for

13    the ordinary purpose for which vehicles are used is implied by law pursuant to Cal. Com. Code

14    §§ 2314 and 10212.

15         92.    80.The Class Vehicles did not comply with the implied warranty of

16    merchantability because, at the time of sale and at all times thereafter, they were defective and not

17    in merchantable condition, would not pass without objection in the trade, and were not fit for the

18    ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the

19    SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an

20    accident, rendering the Class Vehicles inherently defective and dangerous.

21         93.    81.Defendants were on reasonable notice of these issues and an opportunity to cure

22    the breaches due to their extensive knowledge of the SDM Calibration Defect, as detailed herein.

23    Defendants have not cured the breaches of their warranties despite years of knowledge of those

24    breaches.

25         94.    82.As a direct and proximate result of Defendants' breach of the implied warranty

26    of merchantability, Plaintiffs and California State Class members have been damaged in an

27    amount to be proven at trial.

28

**COUNT ~~VIII~~VII:**
**Violation of Song-Beverly Consumer Warranty Act,**
**Breach of Implied Warranty**
**Cal Civ. Code § 1790, *et seq.***

95.     ~~83.~~Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

96.     ~~84.~~Plaintiffs bring this claim on behalf of themselves and the California State Class against the Defendants.

97.     ~~85.~~All California State Class members who purchased Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

98.     ~~86.~~All California State Class members who leased Class Vehicles in California are "lessors" within the meaning of Cal. Civ. Code § 1791(h).

99.     ~~87.~~The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

100.     ~~88.~~Defendants are the "manufacturer[s]" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

101.     ~~89.~~Defendants impliedly warranted to Plaintiffs and the other members of the California State Class that the Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792; however, the Class Vehicles do not have the quality that a buyer would reasonably expect.

102.     ~~90.~~The Class Vehicles would not pass without objection in the automotive trade due to the SDM Calibration Defect. Because the Class Vehicles contain defective SDMs, the Class Vehicles are not in merchantable condition and thus not fit for ordinary purposes.

103.     ~~91.~~The Class Vehicles are not adequately labeled because the labeling fails to disclose the SDM Calibration Defect. The Class Vehicles do not conform to the promises and affirmations made by the Defendants regarding safety.

104.     ~~92.~~The Defendants' breach of the implied warranty of merchantability caused damage to Plaintiff Vargas and California State Class members who purchased or leased the defective Class Vehicles. The amount of damages due will be proven at trial.

1    105. 93. Pursuant to Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiffs and California

2    State Class members seek an order enjoining Defendants' unfair and/or deceptive acts or

3    practices, damages, punitive damages, and any other just and proper relief available under the

4    Song-Beverly Consumer Warranty Act.

5                                   COUNT IX:
                       Violation of the Song-Beverly Consumer Protection Act,
6                                Breach of Express Warranty
                                 Cal Civ. Code § 1790, *et seq.*
7

8        94.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though

9    fully set forth herein.

10       95.    Plaintiff Vargas brings this claim on behalf of himself and the California State

11   Class against the Defendants.

12       96.    All California State Class members who purchased Class Vehicles in California

13   are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

14       97.    All California State Class members who leased Class Vehicles in California are

15   "lessors" within the meaning of Cal. Civ. Code § 1791(h).

16       98.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code

17   § 1791(a).

18       99.    Defendants are "manufacturer[s]" of the Class Vehicles within the meaning of

19   California Civil Code § 1791(j).

20       100.   Defendants are and were at all relevant times "sellers" of motor vehicles under

21   Cal. Civ. Code § 1791(l).

22       101.   With respect to leases, Defendants are and were at all relevant times "lessors" of

23   motor vehicles under Cal. Civ. Code § 1791(i).

24       102.   Defendants made express warranties to members of the California State Class

25   within the meaning of California Civil Code §§ 1791.2 and 1793.2.

26       103.   In connection with the purchase or lease of Class Vehicles, Defendants provided

27   Plaintiff and California State Class members with written express warranties covering the repair

28   or replacement of components that are defective in materials or workmanship.

2730953.6 2820476.3                         - 84 -              SECOND THIRD AMENDED CLASS ACTION
                                                                            COMPLAINT
                                                                        4:21-CV-06338-JST

1    ~~104.    Defendants' warranties formed the basis of the bargain that was reached when~~

2    ~~Plaintiff and California State Class members unknowingly purchased or leased their Class~~

3    ~~Vehicles equipped with the SDM Calibration Defect.~~

4    ~~105.    However, Defendants knew or should have known that their warranties were false~~

5    ~~and misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class~~

6    ~~Vehicles which made the vehicles inherently defective and dangerous at the time that they were~~

7    ~~sold and leased to Plaintiff and California State Class members.~~

8    ~~106.    Plaintiff and California State Class members reasonably relied on Defendants'~~

9    ~~express warranties when purchasing or leasing the California Class Vehicles.~~

10    ~~107.    Defendants knowingly breached their express warranties to repair defects in~~

11    ~~materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles.~~

12    ~~Defendants also breached their express warranties by providing a product containing defects that~~

13    ~~were never disclosed to Plaintiff and California State Class members.~~

14    ~~108.    Defendants were on reasonable notice of these issues and an opportunity to cure~~

15    ~~the breaches due to their extensive knowledge of the SDM Defect, as detailed herein. Defendants~~

16    ~~have not cured the breaches of their warranties despite years of knowledge of those breaches, as~~

17    ~~detailed herein.~~

18    ~~109.    As a result of Defendants' breach of their express warranties, members of the~~

19    ~~California State Class received goods whose defect substantially impairs their value to Plaintiffs~~

20    ~~and the other members of the California State Class. Plaintiffs and members of the California~~

21    ~~State Class have been damaged as a result of, inter alia, the diminished value of Defendants'~~

22    ~~products.~~

23    ~~110.    Pursuant to California Civil Code §§ 1793.2 & 1794, Plaintiffs and members of~~

24    ~~the California State Class are entitled to damages and other legal and equitable relief including, at~~

25    ~~their election, the purchase price of their Class Vehicles, or the overpayment or diminution in~~

26    ~~value of their Class Vehicles.~~

27    ~~111.    Pursuant to California Civil Code § 1794, the Class is entitled to costs and~~

28    ~~attorneys' fees.~~

1

## VIII.   **PRAYER FOR RELIEF**

2        Plaintiffs, on behalf of themselves and all others similarly situated, request for the Court

3   to enter judgment against the Defendants, as follows:

4        a.      An order certifying the proposed Class, designating Plaintiffs as the named

5   representatives of the Class, designating the undersigned as Class Counsel, and making such

6   further orders for the protection of Class members as the Court deems appropriate, under Fed. R.

7   Civ. P. 23;

8        b.      An order enjoining the Defendants to desist from further deceptive

9   distribution, sales, and lease practices with respect to the Class Vehicles and such other injunctive

10   relief that the Court deems just and proper;

11        c.      An award to Plaintiffs and Class Members of compensatory, exemplary,

12   and punitive remedies and damages and statutory penalties, including interest, in an amount to be

13   proven at trial;

14        d.      A declaration that Defendants are financially responsible for all Class

15   notice and the administration of Class relief;

16        e.      Costs, restitution, and compensatory damages for economic loss and out-

17   of-pocket costs, multiple damages under applicable states' laws; punitive and exemplary damages

18   under applicable law; and disgorgement, in an amount to be determined at trial;

19        f.      Any applicable statutory and civil penalties;

20        g.      An award of costs and attorneys' fees, as allowed by law;

21        h.      An order requiring Defendants to pay both pre- and post-judgment interest

22   on any amounts awarded.

23        i.      Leave to amend this Complaint to conform to the evidence produced at

24   trial; and

25        j.      Such other or further relief as the Court may deem appropriate, just, and

26   equitable under the circumstances.

27

28

IX.    **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action triable by a jury.

| 1 | Dated: ~~January~~ July 27, 2023 | Respectfully Submitted, |
|---|---|---|

2

3   By: /s/ David S. Stellings
    David S. Stellings (*pro hac vice*)
    Katherine I. McBride (*pro hac vice*)

4   Jessica A. Moldovan (*pro hac vice*)
    **LIEFF CABRASER HEIMANN**

5   **& BERNSTEIN, LLP**
    250 Hudson Street, 8th Floor

6   New York, NY 10013
    Telephone: 212.355.9500

7   Facsimile: 212.355.9592
    dstellings@lchb.com

8   kmcbride@lchb.com
    jmoldovan@lchb.com

9

10  Richard Heimann (CA Bar # 063607)
    Nimish R. Desai  (CA Bar # 244953)

11  **LIEFF CABRASER HEIMANN**

12  **& BERNSTEIN, LLP**
    275 Battery St., 29th Fl.

13  San Francisco, CA 94111-3339
    Telephone: 415-956-1000

14  Facsimile: 415-956-1008
    rheimann@lchb.com

15  ndesai@lchb.com

16

17  Roland Tellis (CA Bar #186269)
    David Fernandes (CA Bar #280944)

18  Adam Tamburelli (CA Bar #301902)
    **BARON & BUDD, P.C.**

19  15910 Ventura Boulevard, Suite 1600
    Encino, California 91436

20  Telephone: (818) 839-2333
    Facsimile: (818)-986-9698

21  rtellis@baronbudd.com
    dfernandes@baronbudd.com

22  atamburelli@baronbudd.com

23

24  Christopher A. Seeger (*pro hac vice*)
    Christopher L. Ayers (*pro hac vice*)

25  **SEEGER WEISS LLP**
    55 Challenger Road, 6th Floor

26  Ridgefield Park, NJ 07660
    Telephone: (973) 639-9100

27  Facsimile: (973) 639-9393
    cseeger@seegerweiss.com

28  cayers@seegerweiss.com

1

2     Shauna Itri (*pro hac vice*)
      **SEEGER WEISS LLP**
3     1515 Market Street, Suite 1380
      Philadelphia, PA 19102
4     Telephone: (215) 564-2300
      Facsimile: (215) 851-8029
5     sitri@seegerweiss.com

6
      W. Daniel "Dee" Miles, III (*pro hac vice*)
7     H. Clay Barnett, III (*pro hac vice*)
      J. Mitch Williams (*pro hac vice*)
8     Rebecca D. Gilliland (*pro hac vice*)
      Dylan T. Martin (*pro hac vice*)
9     **BEASLEY, ALLEN, CROW,**
      **METHVIN, PORTIS & MILES, P.C.**
10    272 Commerce Street
      Montgomery, AL 36104
11    Telephone: (334) 269-2343
      Dee.Miles@beasleyallen.com
12    Clay.Barnett@beasleyallen.com
      Mitch.Williams@beasleyallen.com
13    Rebecca.Gilliland@beasleyallen.com
      Dylan.Martin@beasleyallen.com
14
15
      David M. Birka-White  (CA Bar # 85721)
16    **BIRKA-WHITE LAW OFFICES**
      178 E. Prospect Avenue
17    Danville, CA 94526
      Telephone: (925) 362-9999
18    dbw@birka-white.com
19
      James E. Cecchi (*pro hac vice*)
20    Caroline F. Bartlett (*pro hac vice*)
      **CARELLA, BYRNE, CECCHI,**
21    **OLSTEIN, BRODY & AGNELLO, P.C.**
      5 Becker Farm Road
22    Roseland, New Jersey 07068
      Telephone: (973) 994-1700
23    Facsimile:  (973) 994-1744
      jcecchi@carellabyrne.com
24    cbartlett@carellabyrne.com
25
26    Joseph H. Meltzer (*pro hac vice*)
      Melissa L. ~~Troutner~~ Yeates (*pro hac vice*)
27    **KESSLER TOPAZ**
      **MELTZER & CHECK, LLP**
28

280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
jmeltzer@ktmc.com
~~mtroutner@ktmc.com~~

myeates@ktmc.com

Charles E. Schaffer (*pro hac vice*)
David C. Magagna Jr. (*pro hac vice*)
**LEVIN, SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
cschaffer@lfsblaw.com
dmagagna@lfsblaw.com

E. Powell Miller (*pro hac vice forthcoming*)
**THE MILLER LAW FIRM, P.C.**
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com

Jason P. Sultzer, Esq. (*pro hac vice*)
**THE SULTZER LAW GROUP P.C.**
270 Madison Avenue, Suite 1800
New York, NY 10016
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com



**CT Corporation**
**Service of Process Notification**
01/22/2025
CT Log Number 548231421

## Service of Process Transmittal Summary

**TO:**   BARBARA K. FRANTANGELO
Aptiv Services US, LLC
5725 INNOVATION DR
TROY, MI 48098-2852

**RE:**   **Process Served in Michigan**

**FOR:**   Aptiv Services US, LLC  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | James Milstead, et al. vs. GENERAL MOTORS LLC |
| **CASE #:** | 421CV06338JST |
| **NATURE OF ACTION:** | Subpoena - Business records |
| **PROCESS SERVED ON:** | The Corporation Company, Plymouth, MI |
| **DATE/METHOD OF SERVICE:** | By Process Server on 01/22/2025 at 15:02 |
| **JURISDICTION SERVED:** | Michigan |
| **ACTION ITEMS:** | CT will retain the current log |
| | Image SOP |
| | Email Notification, Ellen Weir  ellen.weir@aptiv.com |
| | Email Notification, Marinica Mecca  marinica.mecca@aptiv.com |
| | Email Notification, BARBARA K. FRANTANGELO  barbara.k.frantangelo@aptiv.com |
| **REGISTERED AGENT CONTACT:** | The Corporation Company |
| | 40600 Ann Arbor Road E |
| | Suite 201 |
| | Plymouth, MI 48170 |
| | 866-401-8252 |
| | LargeCorporationTeam@wolterskluwer.com |

**DOCKET HISTORY:**

| DOCUMENT(S) SERVED | DATE/METHOD OF SERVICE | TO | LOG NUMBER |
|---|---|---|---|
| -- | By Process Server on 05/20/2024 at 12:09 | BARBARA K. FRANTANGELO Aptiv | 546467361 |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

**EXHIBIT**

**1 - B**

Page 1 of 1



# PROCESS SERVER DELIVERY DETAILS

**Date:**                             Wed, Jan 22, 2025
**Server Name:**                      Drop Service

| Entity Served | APTIV SERVICES, LLC |
|---|---|
| Case Number | 4:21-cv-06338-JST |
| Jurisdiction | MI |

| Inserts | | |
|---|---|---|
|  |  |  |



AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Northern District of California ▾

| | | |
|---|---|---|
| James Milstead, et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 4:21-cv-06338-JST |
| General Motors LLC et al. | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Aptiv Services, LLC - Records Custodian, The Corporation Company, 40600 Ann Arbor Rd E, #201, Plymouth, MI 48170

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Please see Exhibits A and B.

| Place: Bush Seyferth PLLC<br>100 W. Big Beaver Road, Suite 400<br>Troy, MI 48083 | Date and Time:<br><br>01/31/2025 12:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 01/17/2025

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | Justin B. Weiner |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____ , who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 4:21-cv-06338-JST

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____        _____
                                                             *Server's signature*

                                     _____
                                                             *Printed name and title*

                                     _____
                                                             *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A

### I.    DEFINITIONS

In addition to the definitions set forth in the Federal Rules of Civil Procedure, the following definitions apply to each request contained herein, and are deemed incorporated in each request:

1.    "Communication" shall be construed in its broadest sense to encompass any transmission or exchange of information, ideas, facts, data, proposals, or other matter, between or among Persons, by any means.

2.    "Complaint" means the July 27, 2023 Third Amended Consolidated Class Action Complaint filed against GM in *James Milstead et al. v. General Motors LLC et al.*, 4:21-CV-06338, ECF No. 197 (N.D. Cal.). The Complaint is attached hereto as Exhibit B.

3.    "Delco Electronics" means and includes the entities Delco Electronics, Delphi Automotive, Aptiv and any of their corporations, businesses, subsidiaries, divisions, subdivisions, affiliated entities, predecessors, successors, and parents; and any current or former directors, officers, employees, agents, representatives or other persons acting, or purporting to act, on behalf of the preceding entities.

4.    "Document" means any record or communication that would be a document within the meaning of Federal Rule of Civil Procedure 34, including but not limited to any kind of handwritten, typewritten, computerized, printed, or recorded material whatsoever, including but not limited to notes, memoranda, diaries, calendars, letters, e-mails, instant messages, text messages, websites, invoices, receipts, reports, spreadsheets, charts, checklists, studies, statements, tabulations, surveys, analyses, graphs, presentations, telegrams, photographs, slides, negatives, films, pictorial representations, publications, contracts, tape or voice recordings, transcriptions, business records, and disks or any other form of computer data storage or electronically stored information, including but not limited to originals, duplicates, all file copies,

all other copies (with or without notes or changes thereon) no matter how prepared, drafts, working papers, computer, media, magnetic media, or similar materials.

5.    "GM" means General Motors LLC, which was created on July 10, 2009 after the United States Bankruptcy Court for the Southern District of New York issued the Sale Order and Injunction approving the sale of substantially all of Motor Liquidation Company f/k/a Old GM's assets to NGMCo, Inc., as successor in interest to Vehicle Acquisition Holdings LLC (defined in the Sale Order as the "Purchaser").

6.    "Old GM" means General Motors Corporation, which filed for bankruptcy protection on June 1, 2009 in the United States Bankruptcy Court for the Southern District of New York.

7.    "Litigation" means *James Milstead, et al. v. General Motors LLC, et al.*, 4:21-CV-6338 (N.D. Cal.), *Jamar Chism et al. v. General Motors LLC, et al.*, 3:21-cv-11802 (E.D. Mich.); *William J. Endress et al. v. General Motors LLC et al.*, 3:21-cv-15508 (D. N.J.); and *Jorge Orihuela v. General Motors LLC et al*, 3:21-cv-16336 (D. N.J.).

8.    "NHTSA" means the National Highway Traffic Safety Administration and any of its divisions, subdivisions, employees, representatives, or agents.

9.    "Plaintiffs" means the plaintiffs that filed the Litigation.

10.    "Plaintiffs' Counsel" means the law firms and attorneys listed on pages 81-83 of the Complaint, including the law firms Lieff Cabraser Heimann & Bernstein, LLP; Barron & Budd, P.C.; Seeger Weiss LLP; Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.; Birka-White Law Offices; Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C.; Kessler Topaz Meltzer & Schack, LLP; Levin, Sedrean & Berman, LLP; The Miller Law Firm, P.C.; and The Sultzer Law Group P.C.

11. "Subject Vehicles" means Model Year 1999-2018 GM trucks and SUVs.

12. "SDM" means "Sensing Diagnostic Module" and should be construed to include any type of airbag control unit for the Subject Vehicles.

13. "EFSs" means "Electronic Front Sensors" and should be construed to include any type of sensing hardware components for the Subject Vehicles.

14. "ADS" means "Auxiliary Discriminating Sensor(s)."

15. "You" and "Your" refers to you, and any agents, representatives or others acting on your behalf.

## II.    INSTRUCTIONS

In addition to the instructions set forth in the Federal Rules of Civil Procedure, the following instructions apply to each request contained herein, and are deemed incorporated in each request:

1. Whenever used herein, the singular includes the plural and vice versa.

2. Whenever used herein, "and" may be understood to mean "or" and vice versa whenever such construction results in a broader request for information.

## III.    REQUESTS FOR PRODUCTION OF DOCUMENTS

1. Documents sufficient to describe the frontal sensing system hardware applicable to the Subject vehicles including but not limited to the (a) SDM, (b) EFS, and (c) ADS.

2. Documents describing or explaining the frontal sensing system requirements in the Subject Vehicles.

3. PDD (product definition documentation) applicable to the frontal sensing system in the Subject Vehicles.

4. SDD (software definition documents) applicable to the software in the Subject Vehicles.

5.      ADD (algorithm definition documents) applicable to the frontal sensing algorithm in the Subject Vehicles.

6.      Calibration/parameter files for the frontal sensing system in the Subject Vehicles.

7.      Sensing algorithm simulation plots for the Subject Vehicles.

8.      The production-released configuration workbooks or the frontal sensing system performance summaries applicable to the frontal sensing system calibrations for the Subject Vehicles.

9.      End of line test procedures for the following frontal sensing system components in the Subject Vehicles: (a) SDM, (b) EFS, and (c) ADS.

10.     Failure Mode Effects Analysis (FMEA) documentation for the following frontal sensing system components in the Subject Vehicles: (a) SDM, (b) EFS, and (c) ADS.

11.     Pre-Production Approval Process (PPAP) documentation for the following frontal sensing system components in the Subject Vehicles: (a) SDM, (b) EFS, and (c) ADS.

12.     Peer and/or Design Solutions Peer Review documentation regarding the SDM hardware, SDM software, and the frontal sensing algorithm for the Subject Vehicles.

13.     Frontal Algorithm Design Review documentation presented to GM for the SDMs in the Subject Vehicles.

14.     Any Delco Electronics frontal sensing algorithm and frontal calibration best practices in existence at the time of the development of the SDM frontal sensing algorithms and frontal calibrations for the Subject Vehicles.

15.     All documents and communications with Chris Caruso related to the frontal sensing algorithm including deployment thresholds, cut-offs, or timers in the Subject Vehicles.

16.    All documents and communications with Chris Caruso related to the frontal sensing algorithm including deployment thresholds, cut-offs, or timers in any GM vehicles other than the Subject Vehicles.

17.    All documents and communications with Chris Caruso related to the frontal sensing algorithm including deployment thresholds, cut-offs, or timers in any vehicles manufactured by an OEM other than GM.

18.    All documents and communications with Chris Caruso related to the design of deployment thresholds, cut-offs, or timers to account for concatenated events.

19.    All documents and communications relating to the allegations in Plaintiffs' Complaint that "Old GM overrode serious concerns from a team from Delco Electronics (later called Delphi Electronics, now known as Aptiv), including engineering manager, Chris Caruso" regarding the Subject Vehicles, including but not limited to allegations that "Mr. Caruso and a team of software engineers from Delco . . . expressly warned Old GM in or about 1999 that using its strategy to prematurely cut off the potential for airbag and seatbelt deployment during a crash event was a reckless and dangerous design decision."

20.    All documents and communications relating to the allegations in Plaintiffs' Complaint that "a separate team in charge of the design and development for GM cars rejected GM Trucks' approach [to SDM calibrations] after hearing (and heeding) the Delco team's concerns about the earlier [SDM calibration] cut off."

21.    All documents and communications relating to or describing the event progression timer ("EP-1 timer") utilized in the Subject Vehicles and the rationale for selecting a given EP-1 timer value for those vehicles.

*I*

22.    All documents and communications relating to any concerns or warnings expressed by You to Old GM or GM regarding the SDM frontal calibrations in the Subject Vehicles.

23.    All documents and communications exchanged between You or Your attorneys and Plaintiffs or Plaintiffs' Counsel, including any tolling agreements, regarding the Litigation.

# Exhibit B

1   Richard Heimann (CA State Bar # 063607)
    Nimish R. Desai (CA State Bar # 244953)
2   **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
    275 Battery St., 29th Fl
3   San Francisco, CA 94111-3339
    Telephone: 415-956-1000
4   Facsimile: 415-956-1008
    rheimann@lchb.com
5   ndesai@lchb.com

6   David S. Stellings (*pro hac vice*)
    Katherine I. McBride (*pro hac vice*)
7   Jessica A. Moldovan (*pro hac vice*)
    **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
8   250 Hudson Street, 8th Floor
    New York, NY 10013
9   Telephone: 212.355.9500
    Facsimile: 212.355.9592
10  dstellings@lchb.com
    kmcbride@lchb.com
11  jmoldovan@lchb.com

12  *Attorneys for Plaintiffs*

13  *[Additional counsel listed on signature page]*

14              UNITED STATES DISTRICT COURT

15             NORTHERN DISTRICT OF CALIFORNIA

16

17  James Milstead, et al.,                    Case No. 4:21-cv-06338-JST

18                    Plaintiffs,              **THIRD AMENDED CLASS ACTION COMPLAINT**

19  v.

20  GENERAL MOTORS LLC, et al.,                **JURY TRIAL DEMANDED**

21                    Defendant.

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................ 1

II.   PARTIES ........................................................................................................... 4

      A.    Plaintiffs ............................................................................................... 4

      B.    Defendants ........................................................................................... 6

III.  JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT ............................ 7

IV.   GENERAL FACTUAL ALLEGATIONS ................................................................ 8

      A.    SDMs are supposed to detect crashes and control airbags and seatbelts. .............. 8

      B.    GM used a dangerous and defective SDM software calibration in its trucks
            and SUVs. ........................................................................................... 11

      C.    GM knew that the SDM Calibration Defect was dangerous and unjustified
            but has failed to warn or compensate consumers. ................................................ 14

            1.    Old GM recklessly downplayed serious risks of injury when it
                  chose to include the SDM Calibration Defect in the Class Vehicles. ........ 16

            2.    GM's aggressive cutoff was not necessary to protect against "late"
                  airbag deployments. .................................................................... 20

            3.    GM knew about a pattern of suspicious accidents involving the
                  SDM Calibration Defect in the Class Vehicles. ....................................... 22

                  a.    GM has litigated (and settled) many personal injury lawsuits
                        for suspicious airbag failures in the Class Vehicles. ...................... 23

                  b.    GM knew or should have known about hundreds of publicly
                        reported airbag failures in the Class Vehicles. ............................. 32

      D.    Despite its knowledge, GM misrepresented and concealed important
            information about the SDM Calibration Defect and Class Vehicle safety. .......... 50

            1.    Labels and window stickers on the Class Vehicles stated that they
                  were equipped with working airbags and seatbelts and failed to
                  disclose the SDM Calibration Defect. ............................................... 51

            2.    GM published owners' manuals for the Class Vehicles that detailed
                  their safety features but did not disclose the SDM Calibration
                  Defect. ............................................................................... 54

            3.    GM marketed the Class Vehicles to be safe and reliable but failed
                  to mention the SDM Calibration Defect. ............................................ 58

            4.    GM provided warranties to repair defects in the Class Vehicles and
                  have not done so. ................................................................... 61

V.    CLASS ACTION ALLEGATIONS ....................................................................... 62

      A.    The Class Definition ............................................................................. 62

      B.    Numerosity: Federal Rule of Civil Procedure 23(a)(1).......................................... 63

      C.    Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2)
            and 23(b)(3)......................................................................................... 64

      D.    Typicality: Federal Rule of Civil Procedure 23(a)(3) ........................................... 65

      E.    Adequacy: Federal Rule of Civil Procedure 23(a)(4) ........................................... 65

**TABLE OF CONTENTS**
(continued)

Page

F.    Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2)...... 65

G.    Superiority: Federal Rule of Civil Procedure 23(b)(3) ......................................... 66

VI.    ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED............................ 66

VII.    CAUSES OF ACTION ................................................................................................. 68

VIII.    PRAYER FOR RELIEF................................................................................................. 79

IX.    DEMAND FOR JURY TRIAL...................................................................................... 80

1    Plaintiffs, individually and on behalf of all others similarly situated (the "Class"), allege

2    the following against General Motors LLC, General Motors Holdings LLC, and General Motors

3    Company (collectively, "Defendants," "GM," or "New GM") based, where applicable, on

4    personal knowledge, information and belief, and the investigation of counsel and their experts.

5    Plaintiffs file this complaint pursuant to the Court's Order granting leave (Dkt. 196 at 19) and

6    attach hereto as Exhibit E a redline comparison between this complaint and the previous pleading

7    for the Court's reference.

8    **I.    INTRODUCTION**

9        1.    This case involves a dangerous defect that compromises critical safety systems in

10   millions of GM trucks and SUVs. When working properly, during a frontal crash of sufficient

11   severity, a vehicle's seatbelts should tighten to hold the vehicle occupants in place, and the

12   airbags should inflate to protect them from hard impacts. A defect in the Class Vehicles, however,

13   can prevent seatbelt tightening and airbag deployment during certain types of crashes, leaving

14   vehicle occupants without protection exactly when they need it most.[1]

15       2.    The defect is contained in the software that governs the Class Vehicles' airbag

16   control unit. This unit, also known as the Sending and Diagnostic Module ("SDM"), is a small

17   computer connected to sensors placed throughout a vehicle. These sensors monitor vehicle

18   performance and tell the SDM when they detect irregular behavior.

19       3.    Based on the signals it receives from these sensors, the SDM *should* fire the

20   airbags and tighten seatbelts when needed in a real-world crash of sufficient severity. But in the

21   Class Vehicles, the software program that controls the SDM is calibrated in such a way that it

22   prematurely prevents airbag and seatbelt deployment, long before any reasonable or acceptable

23   time to do so. This has serious repercussions in foreseeable, real-world accidents that need

24   seatbelt and airbag deployment after the software cuts off access to those features—such as

25   accidents that involve multiple impacts, or that start with a soft initial onset and then increase in

26

27   ───────────────────
     [1] The "Class Vehicles" include all vehicles in the United States that contain the SDM Calibration
     Defect that were (1) manufactured, sold, distributed, or leased by Defendants or (2)

28   manufactured, sold, distributed, or leased by General Motors Corporation ("Old GM") and
     purchased or leased by Plaintiffs or a Class member after July 10, 2009.

1   severity over time. In such accidents, the airbags and seatbelts in the Class Vehicles can fail. Put

2   simply, because of a persistent, dangerous insistence within the company's Trucks Group, GM

3   used a software calibration that can and does prematurely close the time window to engage

4   airbags and seatbelts in a crash, putting occupants of the Class Vehicles at serious risk.

5          4.      Old GM knew about the effect of this calibration and related dangers from the very

6   outset, when it originally decided to prematurely close the time window for airbag deployment in

7   the Class Vehicles in the late 1990s.[2] In the process, Old GM overrode serious concerns from a

8   team from Delco Electronics (later called Delphi Electronics, now known as Aptiv), including

9   engineering manager, Chris Caruso. Mr. Caruso and a team of software engineers from Delco—

10  which designed the base SDM software program used in the Class Vehicles and other GM

11  vehicles—expressly warned Old GM in or about 1999 that using its strategy to prematurely cut

12  off the potential for airbag and seatbelt deployment during a crash event was a reckless and

13  dangerous design decision.

14         5.      Old GM's Trucks Group, which was in charge of the design and development for

15  all GM trucks and SUVs, ignored this warning and insisted on using its defective SDM

16  calibration strategy. Given their significant concerns, Mr. Caruso and the Delco team insisted that

17  Old GM sign a disclaimer of Delco's liability for the modified algorithm as used in GM trucks

18  and SUVs.

19         6.      Tellingly, a separate team in charge of the design and development for GM cars

20  rejected GM Trucks' approach after hearing (and heeding) the Delco team's concerns about the

21  earlier cutoff. As such, GM cars included a much longer window (fully twice as long as the

22  window used by GM Trucks, approximately 100 milliseconds at minimum) for the airbags and

23  seatbelts to deploy in a crash for the vehicles they designed. As such, not only did GM Trucks

24  reject the warnings from Mr. Caruso and the Delco team, it also ignored its own cars group's

25  views, which included a time window that more reasonably and appropriately tracks the duration

26  of crash events in the real world, as opposed to the laboratory crash test environment.

27

28  _____
    [2] As detailed further below, Old GM filed for bankruptcy in 2009, which led to the creation of the
    contemporary GM entities named as Defendants herein.

1   7.  On information and belief, starting in or about 1999, GM Trucks Group (and Old

2 GM before it) used its defective approach to SDM software calibration in all of the trucks and

3 SUVs (mid and large size vehicles) under its direction, and continued to use its dangerous and

4 defective approach to prematurely cut off airbag and seatbelt deployment during crashes at least

5 through model year 2018. Plaintiffs refer to this defective strategy—to calibrate software to

6 prevent airbag and seatbelt deployment during a "dead zone" that begins too soon after a crash

7 has begun, and well before the safer window used by GM cars (a minimum of approximately 100

8 milliseconds after a crash has begun)—as the "SDM Calibration Defect."

9   8.  When General Motors, LLC ("GM LLC") was formed in 2009, it acquired books,

10 records, and personnel from Old GM that reflected this reckless decision to use the dangerous

11 SDM calibration in GM trucks and SUVs. Despite this acquired knowledge, GM continued to use

12 Delco SDMs in its vehicles and, on information and belief, continued to use the defective

13 software calibration associated with those Delco SDMs as well.

14   9.  Since it was formed in 2009, GM has gained still more knowledge of the defect

15 through personal injury lawsuits, consumer complaints, and its own investigations into serious

16 crashes where the airbags and seatbelts failed in the Class Vehicles. As an example, documents in

17 a personal injury lawsuit filed against GM LLC in 2011 describe the SDM Calibration Defect in

18 detail and relate Old GM's reckless decision to use it. *See* § IV.C.3.a, infra.  Chris Caruso, the

19 engineer who originally objected to the defective deployment strategy in the first instance, has

20 gone on to serve as an expert in a number of these cases.

21   10.  While the use of the defective shutoff strategy began some twenty years ago, it

22 remains a real and immediate risk to Plaintiffs and Class members today. Indeed—and while

23 personal injury settlements are not uniformly made public (such that the records available to

24 Plaintiffs only reflect those publicly disclosed)—court records show that GM settled yet another

25 personal injury lawsuit about the SDM Calibration Defect in December 2022.

26   11.  Discovery in that case, *McCoy v. General Motors*, revealed that GM persisted in

27 using its dangerous, early cutoff strategy in a model year 2018 GM SUV.  Mr. Caruso's report in

28 *McCoy* provides direct evidence that, after first insisting on its defective deployment cutoff

1    strategy in approximately 1999, for many years (decades) thereafter up to 2018, GM Trucks

2    failed to adopt a safer and more rational design that would allow for deployment for at least as

3    long as the window used by GM cars (*i.e.*, approximately 100 milliseconds at a minimum). *See*

4    § IV.C.3.a, infra. To the contrary, in both 1999 and 2018, GM's trucks and SUVs dangerously cut

5    off the deployment window far short of that minimum.

6          12.    Finally, publicly available consumer complaints to the National Highway Traffic

7    and Safety Administration ("NHTSA") detail more than *eight hundred* instances where the

8    airbags and/or seatbelts suspiciously failed in the Class Vehicles during frontal crashes. Many of

9    these reports specifically state that GM knew about and investigated the crash after the reported

10   airbag failures. A separate NHTSA dataset indicates that, from 1999 to 2021, at least 1,298

11   people were killed or injured in a frontal collision in which the airbags did not deploy in one of

12   these vehicles. *See* IV.C.3.b, infra.

13         13.    Despite its knowledge of the SDM Calibration Defect and its impact on safety,

14   GM has concealed the defect and failed to recall or repair the Class Vehicles, and has thereby

15   avoided the significant costs, inconveniences, and reputational harms of recalling millions of

16   trucks and SUVs. GM has hidden the defect despite its obligation to disclose it, misrepresented

17   the Class Vehicles to be safe, and continued to sell them to consumers.

18         14.    Because of GM's failure to disclose the truth, consumers continue to purchase and

19   drive Class Vehicles with the SDM Calibration Defect every day—on road trips, commutes, and

20   weekend errands alike—unaware that their airbags and seatbelts may not work in certain serious

21   crashes when they need them. This lawsuit seeks redress from GM for the damages incurred

22   when Plaintiffs and proposed Class members paid for vehicles with a safety system that may fail

23   them in life-threatening collisions.

24   **II.    PARTIES**

25         **A.    Plaintiffs**

26         15.    Plaintiff James Milstead ("Plaintiff" for the purposes of this paragraph) is an

27   individual residing in Oxnard, CA. On September 11, 2021, Plaintiff purchased a 2012 Avalanche

28   (for purposes of Plaintiff's allegations, the "Class Vehicle") from Escondido Auto Super Center

1    in Escondido, CA. On information and belief for the reasons set forth herein, GM installed the

2    SDM Calibration Defect—which shut off the vehicle's ability to deploy airbags in a crash

3    prematurely—in Mr. Milstead's truck during the manufacturing process, and Mr. Milstead's truck

4    contained the SDM Calibration Defect at the time he purchased the vehicle. At the time of

5    purchase, Plaintiff reasonably expected that the airbags and seatbelts would function in the event

6    of a crash and had no way of knowing that it contained a dangerous and defective SDM

7    calibration that could cause the airbags and seatbelts to fail when needed during a crash. To the

8    contrary, before acquiring the vehicle, Plaintiff viewed or heard commercials and reviews through

9    television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle and

10   GM vehicles generally. GM concealed the existence of the defective SDM calibration from

11   consumers including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would

12   have paid less for it, if Defendants did not conceal material information about the defective SDM

13   calibration.

14          16.     Plaintiff Arthur Ray ("Plaintiff" for the purposes of this paragraph) is an individual

15   residing in Brentwood, California. In or around January 22, 2010, Plaintiff purchased a new 2010

16   GMC Sierra 2500 (for purposes of Plaintiff's allegations, the "Class Vehicle") from Concord

17   GMC, an authorized dealership located in Concord, California. On information and belief for the

18   reasons set forth herein, GM installed the SDM Calibration Defect—which shut off the vehicle's

19   ability to deploy airbags in a crash prematurely—in Mr. Ray's truck during the manufacturing

20   process, and Mr. Ray's truck contained the SDM Calibration Defect at the time he purchased the

21   vehicle. At the time of purchase, Plaintiff reasonably expected that the vehicle's airbags and

22   seatbelts would function in the event of a crash and had no way of knowing that it contained a

23   dangerous and defective SDM calibration that could cause the airbags and seatbelts to fail when

24   needed during a crash. To the contrary, before acquiring the Vehicle, Plaintiff viewed or heard

25   commercials and reviews through television and the internet that touted the safety and reliability

26   of Plaintiff's vehicle, including its "Five Star" safety rating, and GM vehicles generally. GM

27   concealed the existence of the defective SDM calibration from consumers including Plaintiff.

28

1    Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if

2    Defendants did not conceal material information about the defective SDM calibration.

3        17.    Plaintiff Richard Vargas ("Plaintiff" for the purposes of this paragraph) is an

4    individual residing in Menifee, California. In or around December 2012, Plaintiff purchased a

5    new 2012 Chevrolet Suburban (for purposes of Plaintiff's allegations, the "Class Vehicle") from

6    El Camino Real Chevrolet dealership located in Monterey Park, California. On information and

7    belief for the reasons set forth herein, GM installed the SDM Calibration Defect—which shut off

8    the vehicle's ability to deploy airbags in a crash prematurely—in Mr. Vargas' SUV during the

9    manufacturing process, and Mr. Vargas' SUV contained the SDM Calibration Defect at the time

10   he purchased the vehicle. At the time of purchase, Plaintiff reasonably expected that the Vehicles'

11   airbags and seatbelts would function in the event of a crash and had no way of knowing that it

12   contained a dangerous and defective SDM calibration that could cause the airbags and seatbelts to

13   fail when needed during a crash. To the contrary, before acquiring the Vehicle, Plaintiff viewed

14   or heard commercials and reviews through television, radio, and the internet that touted the safety

15   and reliability of Plaintiff's vehicle, including its "Five Star" safety rating, and GM vehicles

16   generally. Additionally, when at the dealership before making his purchase, Plaintiff inquired

17   about the airbags in the Class Vehicle. GM concealed the existence of the defective SDM

18   calibration from consumers including Plaintiff. Plaintiff would not have purchased the Class

19   Vehicle, or would have paid less for it, if Defendants did not conceal material information about

20   the defective SDM calibration.

21       **B.    <u>Defendants</u>**

22       18.    General Motors LLC ("GM LLC") is a Delaware limited liability company with its

23   principal place of business located at 300 Renaissance Center, Detroit, Michigan, and is a citizen

24   of the States of Delaware and Michigan. The sole member and owner of GM LLC is General

25   Motors Holdings LLC.

26       19.    General Motors Holdings LLC ("GM Holdings") is a Delaware limited liability

27   company with its principal place of business in Detroit, Michigan, and is a citizen of the States of

28

1  Delaware and Michigan. The sole member and owner of GM Holdings is General Motors

2  Company.

3       20.     General Motors Company ("GM Parent") is a Delaware corporation with its

4  principal place of business in Detroit, Michigan, and is a citizen of the States of Delaware and

5  Michigan. GM Parent's only asset is its 100% ownership interest in GM Holdings. In public SEC

6  filings, GM Parent states: "We design, build and sell cars, trucks, crossovers and automobile parts

7  worldwide." GM Parent sells vehicles throughout the United States "through [its] dealer network

8  to retail customers." As further noted in SEC filings, GM Parent is also responsible for making

9  reports to NHTSA related to vehicle safety and making determinations as to vehicle recalls.[3]

10      21.     Each of GM LLC, GM Holdings, and GM Parent operates out of GM's Global

11  Headquarters in Detroit, Michigan.

12      22.     In June 2009, Old GM filed for bankruptcy. Defendants were then created on or

13  about July 10, 2009, in connection with the sale of substantially all of Old GM's assets pursuant

14  to a Master Sale and Purchase Agreement. As a result of the sale, GM LLC acquired substantially

15  all of Old GM's books, records, and personnel. GM LLC then transferred some of these assets to

16  GM Holdings (formed shortly after the bankruptcy sale). Defendants thereby acquired from Old

17  GM the knowledge about the SDM Calibration Defect (defined below) that those books, records,

18  and personnel held. GM Parent and GM LLC also took responsibility for any necessary recalls of

19  Old GM vehicles going forward.

20      23.     The causes of action in this Complaint are directed to GM Parent, GM Holdings,

21  and GM LLC and are based on their misconduct.

22  **III.    JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT**

23      24.     This Court has original jurisdiction over this action pursuant to the Class Action

24  Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse

25  citizenship from one Defendant, there are more than 100 Class members, and the aggregate

26  amount in controversy exceeds $5 million, exclusive of interest and costs.

27

28

---

[3] *See* General Motors Company's Form 10-K for fiscal year 2019.

1       25.     This Court has personal jurisdiction over Defendants under California Code of

2  Civil Procedure section 410.10.

3       26.     Venue is proper in this District under 28 U.S.C. § 1391, and assignment is proper

4  to this division under N.D. Cal. L.R. 3-2, because a substantial part of the events or omissions

5  which give rise to the claims occurred in this District, and because Defendants have caused harm

6  to Class members residing in this District, including Plaintiff Ray. GM conducts substantial

7  business, including through numerous dealerships, and marketed, advertised, sold, and leased

8  Class Vehicle in this District.

9  **IV.**    **GENERAL FACTUAL ALLEGATIONS**

10      **A.**    **SDMs are supposed to detect crashes and control airbags and seatbelts.**

11       27.     Car crashes kill or seriously injure hundreds of thousands of people every year.

12  Because of this risk, the federal government requires automobile manufacturers to include critical

13  safety features—seatbelts and airbags—in all vehicles sold in the United States. This life-saving

14  equipment has been mandatory in passenger vehicles since 1997. *See* 49 U.S.C. § 30127.

15       28.     These features include seatbelt pretensioners, which tighten seatbelts to secure the

16  occupants, and airbags, which are cushions that rapidly inflate from the steering wheel and other

17  areas of the vehicle. During an accident, seatbelt pretensioners hold vehicle occupants in place,

18  and airbags buffer or prevent impact between occupants and hard structures in the vehicle.

19  Without the airbags, slamming into the hard structures (such as the steering wheel) during a crash

20  can and has caused serious injuries and death.

21       29.     When functioning properly, the combination of seatbelts and airbags is highly

22  effective in reducing the safety risk in automobile collisions. NHTSA reports that the use of

23  seatbelts and airbags reduces fatality risk by *61 percent* compared to an unbelted occupant in a

24  vehicle without airbags.[4] From 1987 to 2017, an estimated 50,457 lives were saved because

25  frontal airbags deployed during a crash.[5]

26

---

27  [4] U.S. Department of Transportation, NHTSA, *Fatalities in Frontal Crashes Despite Seat Belts and Airbags*, NHTSA Technical Report No. DOT HS 811 202 (September 2009).

28  [5] NHTSA, Air Bags Overview. *Available at*: https://www.nhtsa.gov/equipment/air-bags (last visited July 27, 2023).

30.     Although airbags work effectively to protect occupants when necessary, they are not meant to deploy with every impact. A crash may be of lower intensity (e.g., a low-speed fender bender in a parking lot) such that the seatbelt alone will be sufficient protection for the occupant.[6] Airbags are designed to deploy in "moderate to severe" frontal or near-frontal crashes. A "moderate to severe" frontal crash is the equivalent of hitting a solid, fixed barrier at 8-14 miles per hour or higher.[7]

31.     Seatbelt and airbag systems are known as "passive" safety systems because, when they are needed, they are supposed to operate automatically (meaning, the driver does not need to hit a button to deploy the airbag). They use sophisticated hardware components and software to activate and deploy the seatbelts and airbags systems automatically.

32.     The "brain" behind this operation is the airbag control unit or "ACU" (also known as an Electronic Control Unit or "ECU"). GM refers to this component as the "Sensing and Diagnostic Module" or "SDM," and that term is used throughout this Complaint. SDMs are effectively computers that control the car's safety systems. They are intended, where appropriate, to issue a "command" to deploy airbags and tighten seatbelts to prevent or mitigate injury to vehicle occupants in a crash.

33.     The SDM operates in three basic phases:

a.     *First*, during regular vehicle operation, the SDM sits in a resting or "normal" mode. In this mode, the SDM constantly receives signals from sensors placed throughout the vehicle, which collect and report information on inputs such as acceleration, wheel speed, brake pressure, and impacts.[8] The SDM monitors and interprets these signals to determine whether the vehicle is involved (or about to be involved) in a crash.

b.     *Second*, while monitoring these signals in "normal" mode, if and when the SDM detects an irregular input that suggests a potential crash, it "wakes up" to search for further

---

[6] Dr. Ching-Yao Chan, *Fundamentals of Crash Sensing in Automotive Airbag Systems*. Copyright Society of Automotive Engineers, (2000), at p. 50.
[7] Air Bags Overview, *supra* note 5.
[8] Clemson University Vehicular Electronics Laboratory, "Airbag Deployment Systems." Available at: https://cecas.clemson.edu/cvel/auto/systems/airbag_deployment.html (last visited July 27, 2023).

1  confirmation of a crash (as opposed to, for example, an irregular input from slamming on the

2  brakes and then avoiding a collision). In this second stage—known as "wake up" or "standby"

3  mode—the SDM's crash-sensing software algorithm is engaged to quickly decipher crash status

4  and respond.[9] After "wake up" mode is triggered by an irregular input, if additional inputs

5  confirm a moderate to severe frontal crash, the SDM *should* issue a command to "fire" the airbag

6  and/or tighten the seatbelts as needed.[10]

7      c.    *Third*, the final phase in this sequence is the "reset" phase. From "wake up"

8  mode, after it detects that a crash or a potential crash has fully completed, (i.e., that the vehicle

9  has returned to normal operation after an irregular input) the SDM ultimately returns to its normal

10  operating state through "resetting."

11      34.    A vehicle striking a pothole illustrates this three-phase sequence. The vehicle first

12  operates with the SDM in "normal" mode as it drives down the road. Then, suddenly, the driver

13  hits an unseen pothole. This jolt from hitting the pothole (and/or related inputs like deceleration)

14  will trigger the SDM to enter "wake up" mode where it searches for more inputs. Awake, the

15  SDM quickly asks: "How fast is the vehicle slowing down? Is the front bumper crushed? Is the

16  vehicle speeding back up normally?" and reacting in turn.[11]

17      35.    If the SDM senses that the vehicle returns to normal operation and continues down

18  the road, it will stop looking for confirmation of a crash and reset to normal operation. On the

19  other hand, if, after it hits the pothole, the vehicle veers out of its lane and crashes into another

20  vehicle head on, the SDM should detect this second input and fire the airbag.[12]

21      36.    This entire sequence—from sensing an irregular signal (the pothole), to waking up

22  and searching for confirmation of a crash, to firing the airbag where needed—might take only

23  fractions of a second. For that reason, timing this sequence properly is critically important to

24

---

25  [9] John Pearley Huffman, "The Physics of Airbags," *Car & Driver*, June 14, 2011. Available at:
    https://www.caranddriver.com/features/a15121591/the-physics-of-airbags-feature (last visited
26  July 27, 2023).
    [10] Jesse Kendall, P.E., and Kenneth Solomon, Ph.D., "Airbag Deployment Criteria" at p. 11.
27  Available at: https://www.experts.com/content/articles/Kenneth-Solomon-Airbag-Paper.pdf (last
    visited July 27, 2023).
28  [11] Solomon, *supra* note 10, at p. 11.
    [12] *Id.* at p. 8.

2820476.3                                 - 10 -                THIRD AMENDED CLASS ACTION COMPLAINT
                                                                          4:21-CV-06338-JST

1    ensure that the seatbelts are tightened, and the airbags deploy, to protect the occupants when they

2    need to.

3        **B.**    **GM used a dangerous and defective SDM software calibration in its trucks**
         **and SUVs.**
4

5        37.    Throughout the three-phase sequence described above, SDMs rely on software

6    algorithms to interpret signals, estimate crash dynamics, and issue a "deploy" or "do not deploy"

7    command to the safety systems.

8        38.    For the SDM to function as intended, the software that controls it must be designed

9    to recognize and respond to real-world crashes so that the airbags inflate and seatbelts tighten

10    when they are needed.

11        39.    Crash sensing occurs in "real-time." This means that the sensing algorithm can

12    only examine a limited window of data to predict and judge the severity of crash events before

13    conclusion, so that the airbags can deploy and protect the occupant on impact.[13] A decision to

14    "deploy" the airbags should occur when certain pre-set thresholds that tell the SDM a crash is

15    severe enough (i.e., a moderate to severe frontal collision) are met or exceeded. These

16    deployment thresholds are programmed into the SDM software through a process in which

17    engineers "calibrate" the software algorithm in the vehicle.

18        40.    In the Class Vehicles, the software calibration that controls how and when the

19    SDM detects accidents and deploys the safety systems contains a serious defect. Specifically, for

20    frontal crashes, GM calibrated the SDM to prevent deployment during a dead zone. The dead

21    zone starts with a cutoff time imposed by GM after the SDM "wakes up." At this early stage,

22    Plaintiffs note that time used and recorded by the SDM software (i.e. 45ms, 50ms, 100ms, etc.),

23    including the time elapsed for purposes of triggering the cutoff and resulting dead zone, is

24    complex. As a general matter, it refers to time as calculated in the software, as opposed to

25    traditional, linear time.

26        41.    Putting aside whether any cutoff is necessary in light of advancements in modern

27    airbag technology, GM Trucks selected cutoff times that are reached too soon by any measure,

28
─────────────────────────────
[13] Chan, *supra* note 6, at p. 95.

2820476.3                                    - 11 -                THIRD AMENDED CLASS ACTION COMPLAINT
                                                                          4:21-CV-06338-JST

1    i.e., cutoff times of less than approximately 100 milliseconds, which is a more realistic time

2    period for crash sequences to progress, and the safer window used by GM cars.[14] At the

3    premature cutoff time used by GM Trucks, the algorithm increases the deployment thresholds to

4    unattainable values, meaning that no matter how severe the inputs the SDM receives, the airbags

5    and pretensioners will not deploy. Further, when the SDM clock is above the cutoff time, this

6    dead zone does not end until SDM reset, and thus persists through foreseeable real world

7    collisions. In sum, this defective design and premature cutoff—the SDM Calibration Defect—

8    introduces a dead zone to a window where airbag deployment is often necessary in real-world

9    crashes, but by design cannot happen.

10        42.    Cutting off airbag deployment in the short duration GM Trucks used was callous

11   and dangerous, particularly when compared to the time for a typical "crash duration" in a

12   straightforward frontal, vehicle-to-barrier collision, which lasts for approximately 80-150

13   milliseconds (0.08-0.15 seconds), much longer than the cutoff imposed by GM Trucks

14   (approximately 50 milliseconds or less).[15] And of course, more complex, multi-impact crashes

15   may take even longer.

16        43.    This defective calibration was no accident; rather, as detailed below, GM included

17   it by design when it modified the SDM software program (originally known as ALGO-S) in the

18   Class Vehicles to include it.  In affirmatively and prematurely blocking these critical safety

19   features while a crash is foreseeably still underway, GM greatly and needlessly increased the risk

20   of injury and death in a variety of frontal crashes that require airbag deployment during the "dead

21   zone."

22        44.    For example, this includes frontal crashes with multiple, distinct points of impact

23   known as "concatenated" events. A vehicle that first hits a curb and then veers and hits a tree, or

24   first hits a speed bump and then crashes into the vehicle in front of it, are examples of

25   concatenated crashes. By their nature, concatenated accidents involve multiple discrete inputs for

26   the SDM to detect during a crash sequence.

27

28   [14] See ¶¶ 109-110 and Mr. Caruso's *McCoy* report, *infra*.
     [15] Chan, *supra* note 6, at p. 169.

2820476.3                                    - 12 -              THIRD AMENDED CLASS ACTION COMPLAINT
                                                                            4:21-CV-06338-JST

1      45.    In concatenated crashes, the first part of the incident (hitting a curb) sends the

2    SDM into its "wake up" or "stand by" mode. The initial curb hit does not trigger the airbag or

3    tighten the seatbelt, but the SDM "wakes up" to confirm whether further irregular signals will

4    follow and indicate a need for the seatbelts or airbags. In the Class Vehicles—because of the

5    software calibration that controls the SDM—the "wake up" mode lasts for approximately 50

6    milliseconds or less after the first irregular signal. After that point on the clock, no further input,

7    no matter how severe, could exceed the thresholds and trigger the airbags to deploy and/or

8    seatbelts to tighten. As detailed in this section, the triggering thresholds are pre-set inputs in the

9    software that tell the SDM that a crash is severe enough to deploy an airbag.

10      46.    In addition to concatenated crashes, the SDM Calibration Defect is also implicated

11    in frontal crashes that increase in severity and require airbag deployment or seatbelt tightening

12    after an initial, "soft" impact.  These types of crashes are referred to herein as "prolonged" or

13    "long-soft" crash onsets. This would include, for example, a crash into another vehicle's bumper

14    which—because the bumper is comparatively "soft"—may take time before the "soft" bumper

15    collapses, and a "hard" impact into the engine compartment begins.[16] "Soft" crashes involve a

16    "relatively long crash duration" that may last 20-50 percent longer than a head-on crash into a

17    rigid barrier, like a cement wall.[17]

18      47.    In a prolonged onset crash, the initial impact into a "soft" surface, such as a

19    bumper, starts the SDM clock ticking. Depending on the crash conditions, such as speed, road

20    incline, angle of impact, weather, ice on the road, etc., this "soft" impact may not require airbag

21    deployment right away. Throughout the initial "soft" impact, the SDM will be in wake-up mode

22    to search for a confirmatory signal. But it will not find another input sufficient to trigger the

23    airbags from the "soft" impact. In the Class Vehicles, the SDM will then effectively time out at

24    the cutoff imposed by GM Trucks. So, if the crash proceeds through the "soft" layers and into the

25    engine compartment of another vehicle during the "dead zone" after the cutoff—such that airbag

26

27    ————————————
[16] An example of a "soft" crash is where a vehicle crashes into a deformable barrier, or crashes at
28    an angle, which will result in a "softer" impact than a head-on crash into a rigid barrier (which is
a "hard" crash). Chan, *supra* note 6, at p. 40.
[17] Chan, *supra* note 6, at p. 40.

1    deployment is needed to protect the occupants at say, 75 milliseconds on the SDM clock—no

2    airbag or seatbelt deployment is possible no matter how severe the "hard" impact is.

3         48.    In practice, this means that the airbags and seatbelt pretensioners in the Class

4    Vehicles cannot fire during a time period in crashes when they are necessary. If a second,

5    irregular signal occurs after the cutoff GM imposed due to its defective strategy, the SDM

6    purposefully, by design, disregards the second signal, even if it would otherwise trigger airbag

7    deployment and/or seatbelts to tighten. The net result is a "dead zone," during which vehicle

8    occupants are completely vulnerable during a complex or long-duration crash. When the SDM

9    clock is above the cutoff time, the dead zone lasts until the SDM detects that the crash has ended

10   completely (meaning that the irregular signals have concluded, and the vehicle has resumed

11   normal operation), and then resets back to normal mode. After the SDM has reset, additional

12   impacts or irregular inputs register as new events, triggering the process to begin anew.

13        49.    This significant gap in protection due to the cutoff is unreasonably dangerous

14   because accidents—particularly complicated, real-world accidents—are not necessarily

15   completed at the aggressive cutoff points GM used. In many cases, a crash continues in the "dead

16   zone," and the thresholds severe enough to trigger deployment are technically met during that

17   time, but rendered inert. GM cars recognized this when it used a materially longer and safer

18   cutoff for its vehicles. In contrast, GM's SDM software calibration in the Class Vehicles with its

19   early "dead zone" is a serious, unjustified, and dangerous safety defect.

        **C.    GM knew that the SDM Calibration Defect was dangerous and unjustified
                but has failed to warn or compensate consumers.**

22        50.    GM knew or had reason to know of the SDM Calibration Defect and the risks it

23   entails from at least July 10, 2009, when GM acquired substantially all of Old GM's books,

24   records, and personnel, and the knowledge about the defective SDM software calibration those

25   books, records, and personnel held. GM has continued to acquire knowledge—based on lawsuits

26   implicating the SDM Calibration Defect and hundreds of publicly reported accidents with airbag

27   and seatbelt failures—from 2009 to the present.

28

1      51.     Nonetheless, GM has continued to conceal this problem and the pattern of

2    accidents, injuries, and deaths that have resulted from it. GM has failed to share this information

3    with the consumers who paid for and drive these Class Vehicles every day.

4      52.     It should come as no surprise that GM has unreasonably and unsafely delayed

5    disclosure of the SDM Calibration Defect. Indeed, GM has a recent history of attempts to avoid

6    the costs, potential liabilities, and reputational harms from a safety recall for Takata airbags and

7    seems to have repeated that same tactic here.

8      53.     As is now public knowledge, millions of GM vehicles contain the dangerous and

9    defective Takata airbag inflators that can explode with too much force and spray metal shrapnel

10   into vehicle passenger compartments. While the dangers of these Takata airbags were widely

11   known for years, GM lobbied regulators to delay a recall for its affected vehicles to avoid a

12   resulting hit to its profits.[18] In 2016, GM reported that recalling its vehicles with Takata inflators

13   would cost hundreds of millions of dollars.[19]

14     54.     Consumers brought a putative class action seeking redress. *See In re Takata

15   Airbag Product Liability Litigation*, Case No. 14-cv-240009, Dkt. 2750, (S.D. Fl.). While other

16   vehicle manufacturers had earlier and voluntarily recalled their vehicles with Takata airbags, it

17   was only years later, with that consumer litigation pending, that GM finally issued a belated

18   recall. And importantly, it did so only after regulators from NHTSA denied GM's petition for

19   inconsequentiality, in which it attempted to argue that a recall was not necessary.[20]

20     55.     Here, as in *Takata*, GM knew or should have known that the SDM software

21   calibration strategy in the Class Vehicles—which includes a dead zone that prematurely prevents

22   the airbag and seatbelts from deploying—was dangerous. Nonetheless, GM kept using it anyway,

23   did not recall or repair the Class Vehicles to correct it, and still has not told consumers about it.

24

---

25   [18] "GM seeks to delay recall of 1 million vehicles with Takata air bag inflators." *Reuters*,
     September 16, 2016. Available at: https://www.reuters.com/article/us-gm-recall/gm-seeks-to-
26   delay-recall-of-1-million-vehicles-with-takata-air-bag-inflators-idUSKCN11M27N (last visited
     July 27, 2023).
27   [19] *Id.*
     [20] "GM will recall 7 million vehicles for air bag issue worldwide." *Reuters*, November 23, 2020.
28   Available at: https://www.reuters.com/article/us-gm-recall/gm-will-recall-7-million-vehicles-for-
     air-bag-issue-worldwide-idUSKBN2831TH (last visited July 27, 2023).

1. **1.    Old GM recklessly downplayed serious risks of injury when it chose to include the SDM Calibration Defect in the Class Vehicles.**

56.    In general, the vehicle manufacturer provides the requirements to set the deployment thresholds in the SDM software calibration that will trigger a command to fire the airbags and/or tighten the seatbelts. The vehicle manufacturer uses results from laboratory crash testing to inform these parameters.[21]

57.    But laboratory results are not sufficient in themselves, because real-world accidents—which can occur from multiple angles and involve inputs from myriad variables like weather, temperature, or incline—will differ from the testing environment.[22] For that reason, manufacturers must exercise appropriate care to design crash sensing frameworks that function to keep people safe in the real world.

58.    As relevant to the defect here, Old GM worked with Delco Electronics (later called Delphi Electronics, now known as Aptiv) to select and install SDM models and develop the SDM software program used in the Class Vehicles, starting with Model Year 1999. As to the physical component, Old GM installed Delco SDMs in many of its vehicles, including all the Class Vehicles. The model names for Delco SDMs have changed over time, and have included, from earliest to latest, models known as the SDM-GS,[23] SDM-11, SDM30, and others. GM continued to use Delco SDMs and the defective calibration in its vehicles after it was formed in 2009, including in all the Class Vehicles.

59.    In addition to the Delco hardware, GM also worked with Delco to develop and implement the software that controls the SDMs. To that end, Delco developed a proposed software program, known originally as ALGO-S, and presented it to Old GM for review.

60.    During this time, Old GM divided the design and development of its vehicles into a "cars" group and a "trucks" group, with the Trucks Group responsible for design, development, and production of larger model trucks and SUVs. After it reviewed the Delco team's proposed

---

[21] Huffman, *supra* note 9.
[22] Solomon, *supra* note 10, at 13.
[23] The SDM-GS is the SDM model included in Mr. Nossar's 2005 Trailblazer, which would have been in development during Mr. Caruso's tenure with Delco, which ended in 2006.

1  SDM software algorithm, ALGO-S, the Trucks Group insisted on adding the aggressive and

2  premature cut off when it calibrated that program for use in its trucks and SUVs. Specifically, the

3  Trucks Group insisted on a limit at approximately 45 milliseconds, well before a real-world

4  accident could foreseeably require airbag deployment.

5      61.    The premature cut off was dictated by GM Trucks as part of its calibration strategy

6  for all vehicles within the fleet. This means that regardless of any differences across makes and

7  model years, all vehicles under the direction of the Trucks Group include SDM software that was

8  calibrated to meet GM Trucks' guiding philosophy for when and how the safety systems will

9  deploy, which included the SDM Calibration Defect.

10     62.    On information and belief, the Trucks Group insisted on this cutoff based on test

11 results which indicated that frontal-barrier accidents (i.e., a simulated, single-impact crash into a

12 hard barrier) in its trucks and SUVs would not require airbag deployment after approximately 45

13 milliseconds or less in laboratory conditions.

14     63.    In response, the Delco team expressly warned the Trucks Group that such an

15 aggressive cutoff could fail to capture additional signals in complex crashes outside of the

16 laboratory, leaving occupants completely unprotected during prolonged onset crashes or crashes

17 with multiple impact points. Put another way, using a limit derived from laboratory testing results

18 was not reasonable or safe, because it fails to account for the complexities and durations of real

19 world crash events, which can reasonably and foreseeably take twice as long as the laboratory

20 tests to require airbag deployment. On information and belief, documents, records, and personnel

21 reflecting GM Trucks' insistence—over Delco's objection—to include this cutoff were passed on

22 from Old GM to New GM in 2009.

23     64.    GM's own cars group, and on information and belief, other major vehicle

24 manufacturers throughout the industry, include a significantly longer window for the SDM to

25 detect a potential accident and deploy the airbags and seatbelts. Indeed, in the ALGO-S program

26 as it was originally designed by Delco, the window in which the airbags and seatbelts can deploy

27 in a crash is at a minimum *twice to three times* that used by GM Trucks. Delco's original design

28 reasonably allows for airbag and seatbelt deployment in real-world frontal crashes, which

1    themselves can endure for 100 or even 150 milliseconds.[24] As such, when GM trucks added the

2    defective premature cutoff to the software calibration in the Class Vehicles, it dangerously

3    prevented the airbags and seatbelts from functioning when a frontal crash may still be well

4    underway.

5        65.    Tellingly, after the Delco team repeated the same warnings about the Truck

6    Group's proposed cutoff strategy to GM's cars group, the cars group rejected the shorter cutoff.

7    Instead, the cars group used the ALGO-S software with a materially longer deployment window

8    than GM Trucks group's proposal (a *minimum* of approximately 100 milliseconds for

9    deployment). GM thus also ignored the cars group's decision in insisting on the dangerous

10   calibration for trucks and SUVs.

11       66.    Given their serious concerns about GM Trucks' deployment strategy, Mr. Caruso

12   and his Delco team refused to release the defective software calibration for use in GM trucks and

13   SUVs until Old GM signed a disclaimer of Delco's liability for the modified calibration. The

14   Trucks Group still insisted on the defective calibration, signed the disclaimer, and the dangerous

15   dead zone was added in the SDM software calibration used in GM trucks and SUVs.[25]

16       67.    This defective calibration was included in all of the trucks and SUVs under the

17   direction of GM's Trucks Group, including all the Class Vehicles. This is so because, as

18   explained above, the abrupt cutoff was part of a calibration philosophy that is not vehicle

19   dependent, i.e., it was a decision on the overall strategy for safety system deployment that applied

20   to all vehicles within the group, including all the Class Vehicles.

21       68.    In practice, this meant that GM Trucks leadership set the calibration strategy for

22   all vehicles within the Trucks group (including all the Class Vehicles), and the software engineers

23   tasked with implementing that strategy for individual vehicle platforms were obligated to follow

24   that strategy for all vehicles within the group—the strategy was not set, or adapted, at the

25   individual vehicle level.

26

27   _____

     [24] Chan, *supra* note 6, at p. 169.

28   [25] *See* Objection to Defendants' Motion for Partial Summary Judgment, *McCoy v. General Motors LLC*, Case No. X03- HHD-CV-20-6142910-S (Conn. Sup. Ct), available at: https://civilinquiry.jud.ct.gov/DocumentInquiry/DocumentInquiry.aspx?DocumentNo=23354481.

- 18 -                    THIRD AMENDED CLASS ACTION COMPLAINT
                                                                                    4:21-CV-06338-JST

1      69.    This group-level approach to vehicle software is logical from a cost and resources

2    standpoint; developing software algorithms is time intensive and expensive, making it effective

3    and ordinary practice to develop one algorithm for use across multiple vehicle makes and models.

4      70.    This typical practice of using the same SDM software strategy for groups of

5    vehicles is evidenced by a prior recall conducted by GM in September 2016. Specifically, GM

6    previously recalled some 3,640,000 vehicles across three different model years (from 2014 to

7    2017) due to a "software defect" present in the SDM software in all of those vehicles. As GM

8    described it, the SDM software in *all of these* vehicles included the same "oscillation test" in the

9    software that could "interfere with the SDM's proper deployment of frontal airbags or

10   pretensioners as required."[26]

11     71.    This oscillation-test issue is distinct from the defect described in this case, but

12   GM's use of the same software with the identical defective oscillation test in more than three and

13   a half million vehicles is evidence that GM developed and applied the same SDM software across

14   a very large range of makes and model years.

15     72.    The widespread use of this same oscillation test in the SDM software used for a

16   wide variety of makes and models, including both GM cars and trucks, also supports Plaintiffs'

17   allegations in this case that both GM trucks and GM cars used the same SDM software algorithm

18   (which started as ALGO-S) to control the SDMs in the vehicles under their direction, but that GM

19   Trucks modified the algorithm as designed to include the SDM Calibration Defect.

20     73.    Finally, the use of the same software calibration strategy across many different

21   vehicles is further supported by Mr. Caruso's description of his work with Old GM in setting and

22   implementing the software calibration strategy for vehicles at the group level, for the Trucks

23   Group and cars group. *See, e.g.*, Nossar Report, *supra*, at p. 5 (Mr. Caruso recounting the "GM

24   Truck Groups' edict to set certain crash sensor calibration parameters outside the recommended

25   minimum guidelines set by the crash sensing algorithm designers").

26

27

28   _____

[26] *See* General Motors LLC Part 573 Vehicle Safety Recall Report, 16-V-651 (September 2016)
available at: https://static.nhtsa.gov/odi/rcl/2016/RCLRPT-16V651-2475.PDF.

      2.    **GM's aggressive cutoff was not necessary to protect against "late" airbag deployments.**

74.    GM Trucks Group's insistence on the early cutoff after which the airbags and seatbelts cannot deploy was unjustified and unsafe.

75.    On information and belief, the Trucks Group chose to set this aggressive cutoff due to concerns about the potential for airbags to deploy "too late" during an accident. But as the Trucks Group also knew, these concerns were unwarranted given technology that mitigated the risks of "late" airbag deployments.

76.    A brief history of airbags in motor vehicles puts this dangerous decision in context. Before 1998, airbag systems were effectively one-size-fits-all. Designed to protect against only frontal crashes, these "first-generation" airbags were built to meet a standardized government test that required they protect an unbelted, midsize adult male dummy (175 pounds) in a 30-MPH crash into a rigid barrier.[27] To do so, an airbag had to fill up quickly with gas, resulting in a deployment speed of up to 200 MPH.[28]

77.    Not all vehicle occupants fit this description, however, and the intensity of first-generation airbag deployment could prove dangerous for children and those who were positioned too close to the bag when it inflated (for example, because they had already been thrown forward toward the steering wheel during an under-way accident).[29]

78.    Public perception about airbag safety in motor vehicles, and in turn, the vehicle manufacturers that sold them, turned increasingly unfavorable following reports of late and aggressive deployments in first-generation airbags. Both regulators and vehicle manufacturers recognized the need to address these issues.[30] Beginning in October 1995, NHTSA initiated a

---

[27] Jack Keebler, *Airbags Safe Insane? – Special Report*, Motortrend (Sept. 1, 2000), https://www.motortrend.com/news/airbags-safe-insane-special-report/ (last visited July 27, 2023).
[28] *Id.*; *see also* David B. Ottaway & Warren Brown, *From Life Saver to Fatal Threat*, The Wash. Post (June 1, 1997), https://www.washingtonpost.com/archive/politics/1997/06/01/from-life-saver-to-fatal-threat/56d05b9e-a1bc-49b7-beb4-43480762b25e/ (last visited July 27, 2023).
[29] Susan A. Ferguson & Lawrence W. Schneider, *An Overview of Frontal Airbag Performance with Changes in Frontal Crash-Test Requirements: Findings of the Blue Ribbon Panel for the Evaluation of Advanced Technology Airbags*, Traffic Injury Prevention 3 (Nov. 2008).
[30] U.S. Department of Transportation, NHTSA, *An Evaluation of the 1998–1999 Redesign of Frontal Air Bags,* NHTSA Technical Report No. DOT HS 810 685, p.11, (August 2006) [hereinafter "NHTSA Redesign Report"]; *see also* Ferguson & Schneider, *supra* note

1    series of actions to minimize and eventually eliminate the adverse effects of late and aggressive

2    airbag deployments while preserving their life-saving benefits.[31]

3        79.    In 1997, NHTSA issued modified federal rules to allow automakers to reduce the

4    energy in frontal airbags. This led to "an industry-wide changeover" to "redesigned" airbags in

5    the very next model years (1998-1999).[32] The "redesign" consisted of several new technological

6    innovations. The first and immediate solution was "depowered" airbags: automobile

7    manufacturers removed some of the gas-generating propellant or stored gas from the inflators to

8    reduce the pressure and velocity of deployments. This change alone was highly effective in

9    reducing low-to-moderate speed fatalities.[33]

10       80.    Other innovations to reduce the risk of aggressive deployments included reducing

11   the volume or rearward extent of airbags, positioning them further from occupants, revised

12   folding techniques, and tethering and shifting from pyrotechnic inflators to hybrids including

13   stored gas.[34]

14       81.    Old GM knew about and employed these new technologies in its vehicles. Indeed,

15   as the director of Old GM's Safety Center Terry Connolly said in 2000, there were no significant

16   downsides to using this new "depowered" airbag technology, even for unbelted passengers.[35]

17       82.    Further innovations referred to as "advanced" or "smart" airbags followed soon

18   thereafter.[36] "Advanced" airbags alter deployment patterns according to feedback from several

19   sensors. These sensors tailor how the airbag deploys based on the severity of the crash, the size

20   and posture of the vehicle occupant, whether the occupant is wearing a seatbelt, and how close

21   the occupant is to the airbag. [37]

22

23

_____

24   30.
     [31] NHTSA Redesign Report, *supra* note 31, at vii.
25   [32] *Id.*; *see also* Micah Wright, *The Hidden Dangers of Older Airbags*, MotorBiscuit (May 8,
     2015), https://web.archive.org/web/20220630111938/https://www.motorbiscuit.com/the-hidden-
26   dangers-of-older-airbags (last visited July 27, 2023).
     [33] *See* NHTSA Redesign Report, *supra* note 31 at 25.
27   [34] *Id.* at vii.
     [35] Keebler, *supra* note 27.
28   [36] *See* NHTSA Redesign Report, *supra* note 31 at p. 3.
     [37] Wright, *supra* note 33.

83.    Many "advanced" systems use dual-stage or multi-stage inflators. This means that they have two inflation stages that can be ignited sequentially or simultaneously depending on crash severity.

84.    "Advanced" airbags phased into production beginning September 1, 2003 and were required in all new vehicles by September 1, 2006.[38]

85.    Thus, based on the depowered and advanced airbag technology starting in 1998 and 1999, the risks posed by "late" deployments in early generation airbags had greatly diminished. Indeed, while NHTSA estimates that more than 290 deaths were caused by frontal airbag inflation between 1990 and 2008, nearly 90 percent of those deaths occurred in vehicles manufactured before 1998 (i.e., with first-generation airbag technology).[39] Today, with this new technology, serious injuries from properly functioning airbags are rare.[40]

86.    Despite knowledge and use of the new technology mitigating the risks of late deployments, the Trucks Group still insisted on prematurely shutting off the airbags and seatbelts in the Class Vehicles long before the 100 millisecond minimum window reasonably required by real-world crashes, and used by GM's own cars group. On information and belief, despite these well-established advancements in airbag technology outlined above, GM continued to use this same defective software calibration strategy in its vehicles in 2009 and beyond.

### 3.    GM knew about a pattern of suspicious accidents involving the SDM Calibration Defect in the Class Vehicles.

87.    GM's reckless decision and continued disregard for clear warnings about the risks in shutting off the SDM too soon during an accident has had real and tragic consequences.

88.    As outlined above, GM has known about the SDM Calibration Defect since it took over Old GM's books, records, and personnel in 2009. GM has continued to accrue knowledge of the defect, and its serious consequences, in the years since. Indeed, GM has known about, investigated, and even litigated numerous crashes in which airbags suspiciously failed to deploy

---

[38] NHTSA Redesign Report, supra note 31, at vii.
[39] Insurance Institute for Highway Safety. "Airbags" (2021), available at: https://www.iihs.org/topics/airbags (last visited July 27, 2023).
[40] *Id.*

1    in multi-impact or prolonged-onset frontal crashes in the Class Vehicles—a clear indication of the

2    SDM Calibration Defect.

3       89.    Despite obvious signs of a known and dangerous risk, GM concealed these

4    accidents and the SDM Calibration Defect from consumers and regulators to avoid or at least

5    delay a recall and the attendant costs and reputational damage therefrom. To date, GM has taken

6    no corrective action to repair or recall the Class Vehicles to address this defect.

7              **a.    GM has litigated (and settled) many personal injury lawsuits
                     for suspicious airbag failures in the Class Vehicles.**
8

9       90.    In addition to its institutional records and knowledge, GM was on notice of the

10   SDM Calibration Defect through litigating and settling personal injury lawsuits involving airbag

11   and seatbelt failures consistent with the SDM Calibration Defect.

12      91.    As noted above, Chris Caruso has served as an expert witness in many of these

13   lawsuits. Mr. Caruso has "over 43 years working in the automotive engineering field." Exhibit D

14   at 4. This includes work as an engineer for Old GM from 1979 to 1986. Thereafter, from 1986 to

15   2006, Mr. Caruso worked for Delco Electronics, where he was "involved in the development and

16   implementation of the second generation of airbag system on GM vehicles and their subsidiaries

17   in the US." *Id.* at 1. Mr. Caruso also worked as a "lead engineer in the development of crash

18   sensor specifications and the airbag sensing systems for major OEM's worldwide," including Old

19   GM, and himself "designed the SDM crash sensing algorithms." *Id.* at 1-2. Mr. Caruso worked

20   for Delco through August of 2006. Thereafter, he began work in his current role as a consultant

21   with Automotive Safety Consulting, where he has "served as a consultant for both plaintiffs and

22   defendants in numerous cases involving automotive safety systems, including cases involving

23   EDR/CDR downloads and readouts." *Id.* at 4.

24      92.    Mr. Caruso recounts much of this work experience and the history of the SDM

25   Calibration Defect in public documents in a case filed in 2011, just two years after GM was

26   formed.

27      93.    In that case, Plaintiff James Nossar sued GM LLC following a crash in his 2005

28   Chevrolet Trailblazer (a Class Vehicle here). As detailed in that complaint, on or about February

1    25, 2010, Mr. Nossar drove his Trailblazer into the back of a 1999 Suburban "and sustained a

2    moderate to severe frontal impact . . . at a rate of speed that exceeded the airbag system's

3    predetermined deployment threshold." *See Nossar v. General Motors LLC*, Dkt. 4, Case No. 1:11-

4    cv-02129 (N.D. Ga.). Despite this "significant frontal collision," the airbag failed to deploy and

5    seatbelt pretensioners failed to trigger. Without the airbag or seatbelt to protect him, Mr. Nossar's

6    head slammed into the steering wheel, which caused "fracturing practically every bone in his face

7    and brain injuries." *Id.*

8         94.    In support of his claims, in April 2012, Mr. Nossar filed an expert report from

9    Chris Caruso who, as explained above, is an expert in automotive crash sensing systems who

10   worked for Delco engineering during the development of the defective SDM software calibration

11   in the Class Vehicles. *See id.* at Dkt. 40-1.

12        95.    In that report, Caruso detailed the same flaws in the SDM software calibration

13   described herein. He explained that the airbag sensing system in the Trailblazer was "defective by

14   design and has the potential to not deploy frontal impact airbags in high speed frontal impacts

15   where conditions vary slightly from the perfect laboratory conditions where the system was

16   designed and tested." Based on Caruso's experience working in the development of the SDM

17   software, he related that there were concerns, due to the calibration, "that in longer duration, but

18   high severity events and in concatenated events (such as a curb impact followed by a utility pole

19   impact), the airbags would fail to deploy because the algorithm deployment thresholds were no

20   longer active." *Id.*

21        96.    Caruso further explained that as that litigation proceeded into discovery, he would

22   "expect to identify emails and other correspondence between GM Truck Engineers and Delphi

23   Crash Sensor engineers discussing the concerns over GM Truck Groups' edict to set certain crash

24   sensor calibration parameters outside the recommended minimum guidelines set by the crash

25   sensing algorithm designers [the Delphi/Delco engineers]." Caruso expected to obtain this

26   corroborating evidence because he "ha[d] seen these documents before and kn[e]w the content,"

27   and summarized that "**the calibration values result in premature turning off of algorithm**

28

1  **thresholds which effectively disables the front airbags after 45 to 50ms.**" *Id.* (emphasis

2  added).

3    97.    Mr. Caruso's expectations as to what discovery would reveal are plausible because

4  of his contemporaneous experience with Delco and Old GM in the time period in which Mr.

5  Nossar's vehicle was developed. Mr. Caruso left Delco in 2006, long after the development

6  concluded for Mr. Nossar's model year 2005 vehicle. (Because vehicles are actually sold in their

7  model year, *i.e.*, 2008 vehicles are sold in 2008, their design and development, including for the

8  SDM software, predates the actual model year by, one, two, or more years).

9    98.    As to Mr. Nossar's 2005 Trailblazer specifically, Caruso observed that the vehicle

10  included a version of the SDM hardware known as the SDM-DS, and concluded:

11      • The airbags and seatbelts failed because, at the time the airbags should have
12        deployed, and consistent with the SDM Calibration Defect here, "**the SDM
          calibration had already timed out after 45-50ms** after the crash started."

13
14      • "In reviewing the crash performance of the sensing system for the subject vehicle,
        with respect to the conditions of the subject crash, **it is clear that the calibration
15        values result in premature turning off of algorithm thresholds which
          effectively disables the front airbags after 45 to 50ms.**"
16

17    99.    "The failure by GM to understand the **risks of certain dictated calibration

18  values** [in the SDM software calibration] led directly to the design defect that rendered the frontal

19  impact airbag system in the 2005 Chevrolet Trailblazer defective and unreasonably dangerous in

20  certain field relevant, real-world crashes." *Id.*

21    100.    GM LLC, a named defendant in the *Nossar* case, clearly knew about and received

22  Mr. Caruso's report outlining the history of these issues in the SDM software calibration.

23    101.    The *Nossar* case and Mr. Caruso's report support that Old GM continued to install

24  SDMs with the Calibration Defect in its vehicles at least through model year 2005.

25    102.    More recently, Mark McCoy filed a lawsuit against GM LLC in 2020 after a

26  serious accident in his 2018 Sierra Denali 2500. *See McCoy v. General Motors LLC*, Case No.

27  X03- HHD-CV-20-6142910-S (Conn. Sup. Ct).

28

103.    While on a freeway exit ramp, at a sharp turn, Mr. McCoy veered off the road, crashed into a fence, and then crashed into a trailer, before finally crashing into a construction vehicle parked near the ramp. None of the airbags in his vehicle deployed. As a result, Mr. McCoy sustained "catastrophic, painful and severely debilitating injuries," including traumatic spinal injuries, total paralysis from the chest down, a traumatic brain injury, and a broken nose, among other injuries.[41] Below is a picture of Mr. McCoy's Denali after the crash:



104.    Mr. Caruso also served as an expert for plaintiff in the *McCoy* case and submitted a detailed report in connection with summary judgment briefing in that matter.[42] Therein, Mr.

---

[41] *See* June 19, 2020 Amended Complaint, ¶ 8, *McCoy v. General Motors LLC*, Case No. X03-HHD-CV-20-6142910-S (Conn. Sup. Ct) ("McCoy"). *Available at*: https://civilinquiry.jud.ct.gov/DocumentInquiry/DocumentInquiry.aspx?DocumentNo=19161992
[42] Mr. Caruso's opinions in the McCoy case became publicly available only after the April 2022 hearing on the Defendants' motion to dismiss in this matter, and were also not available at the time Plaintiffs filed their amended complaint in October 2021.

1   Caruso described his history with the company, including warning Old GM against using the

2   defective software calibration in trucks and SUVs, and his insistence on a disclaimer of liability

3   before releasing the calibrations for use in the Class Vehicles.

4       105.    Further, Mr. Caruso described his work after he left Delco in 2006 in failure-to-

5   deploy lawsuits "where the root cause was determined to be the 45ms SHUTOFF criteria" [i.e.,

6   the SDM Calibration Defect]" in "numerous" GM trucks and SUVs in "earlier model[s]" than

7   model year 2018.[43]

8       106.    Through discovery in the *McCoy* matter, Mr. Caruso analyzed the actual software

9   calibration file for the SDM software in Mr. McCoy's model year 2018 vehicle. Based on his

10  review of the file, Mr. Caruso concluded that the algorithm in the 2018 vehicle remained a "carry

11  over" from the SDM software algorithm, ALGO-S, he himself designed years prior. Exhibit D at

12  16. Moreover, Caruso concluded that GM's dangerous and defective philosophy about airbag

13  deployment timing persisted in the 2018 Sierra. Put another way, GM "appeared to be using **very**

14  **similar shutoff times in this calibration**" to those he had previously objected to in earlier model

15  years in which GM "forc[ed] the use of 45ms shutoff times." *Id.* at 18.

16      107.    Specifically, in the *McCoy* software, Caruso observed shutoff times at 50

17  milliseconds, consistent with his earlier testimony in *Nossar* that the cutoff occurred at

18  approximately 45-50 milliseconds, and others that were even shorter, at 16 milliseconds.

19      108.    Whether 45, 50, or even 16 milliseconds, each of these cutoff calibrations is

20  defective in the same way, because none are sufficient to account for real world crash events, or

21  come even close to the minimum used by GM cars. Put another way, each creates a "dead zone"

22  far short of the time window needed for deployment in real world crashes, which is the defect that

23  underlies Plaintiffs' claims.

24      109.    The persistence of this defective calibration cutoff strategy in a GM truck sold at

25  least 12 years after he stopped working for Delco came as some surprise to Caruso. Indeed, he

26  "had believed" GM would have discontinued the use of the dangerous calibration prior to model

27  year 2018. But the software itself told a different story. In summary, based on the actual software,

28  _____

[43] Mr. Caruso's report in the McCoy matter is attached hereto as Exhibit D. *See id.* at 19.

1    discovery produced in that case, as well as the crash conditions from the McCoy accident, Caruso

2    opined:

3        • "The failure to deploy [the] airbags resulted in a condition that was defective, unsafe
          and unreasonably dangerous" to the driver in this vehicle;

4
         • "[I]t appears that [GM trucks Group] is **still employing very aggressive stop times**"
5          in its software calibrations as of model year 2018; and

6        • GM should have implemented an "alternative design" to "[m]odify the algorithm
          calibrations with more robust 120-150ms" cutoff thresholds.
7

8        *See* Exhibit D.

9        110.    Caruso's report in the *McCoy* case—notably based on his review of the actual

10   software calibration—demonstrates that at least through model year 2018, GM continued to

11   install Delco SDMs governed by dangerous cutoff thresholds in calibrations based on the original

12   ALGO-S software algorithm.  Although it had years to do so, even by 2018, GM had still failed to

13   adopt a safer and more rational design that would allow for deployment for at least as long as the

14   strategy used by GM cars (*i.e.*, approximately 100 milliseconds at a minimum for deployment).

15       111.    Mr. Caruso also was able to identify the SDM hardware used in the McCoy

16   vehicle as the Delco SDM30, which is evidence that GM continued to use the defective software

17   calibration for all vehicles that contain that Delco SDM model. Publicly available crash data

18   reports from NHTSA show the same Delco SDM30 was installed by GM in GM trucks in at least

19   model years 2015 and 2016, including in the model year 2015 Chevrolet Trax, 2015 Chevrolet

20   Tahoe, and 2016 Yukon Denali.

21       112.    Likewise, on information and belief, Plaintiffs Vargas, Ray, and Milstead's Class

22   Vehicles contain SDM-11 model Delco SDMs. Given their model years and the Delco SDM, the

23   plausible, and most reasonable, inference is that they also included the associated defective

24   calibration strategy GM used with Delco SDMs.

25       113.    Based on: (1) Mr. Caruso's early knowledge of the SDM Calibration Defect when

26   it was first used; (2) his subsequent tenure with Delco through 2006, during which model year

27   vehicles for subsequent years were already in development; (3) his expert opinion on the presence

28   of the SDM Calibration Defect in a model year 2005 vehicle (*Nossar*) after his assessment of the

1  vehicle performance and crash dynamics; and (4) his opinion about defect's persistence in a

2  model year 2018 vehicle with the Delco SDM30 (*McCoy*)—the plausible, and most reasonable,

3  inference is that the defect persisted in the years between 1999, 2005 and 2018.

4          114.    Following service of Mr. Caruso's expert report and deposition in the *McCoy* case,

5  GM agreed to settle the case in December 2022.[44]

6          115.    In addition, Chad Vaith filed a lawsuit against GM LLC in 2017 after an accident

7  in his MY 2014 Silverado. As that complaint relates, in December 2015, Mr. Vaith was involved

8  in an accident in which he drove his Silverado "off the road into a ditch," after which he

9  "continued through the ditch for approximately forty yards before launching over the

10 driveway/culvert. . . before coming to a final rest approximately twenty yards south." *See Vaith v.*

11 *General Motors LLC*, Dkt. 1, Case No. 18-cv-00031 (D. Minn.). Despite multiple impacts in that

12 prolonged accident, the airbags and seatbelts did not deploy, causing Mr. Vaith to "suffer severe

13 personal injuries." Mr. Caruso was a disclosed expert for plaintiff in that case, although his

14 opinions about the 2014 Silverado were not publicly filed. *See, e.g., id.* at Dkt. 64.

15         116.    Mr. Vaith's case proceeded into fact discovery and ultimately resulted in a

16 "negotiated settlement" between Mr. Vaith and GM. *Id.* at Dkt. 82.

17         117.    In addition to these previous lawsuits against GM with Mr. Caruso as an expert,

18 another automotive crash expert, Sal Fariello, wrote directly to GM's CEO Mary Barra twice in

19 December 2016 to raise similar concerns about issues he had observed in the airbag sensing

20 system in model year 2006 GM SUVs. Mr. Fariello's letters are available in NHTSA's public

21 records.[45]

22         118.    Mr. Fariello's letters to GM's CEO focused on an accident in a 2006 Trailblazer (a

23 Class Vehicle here) for which he served as a litigation consultant in a lawsuit filed in or around

24

_____

25 [44] Plaintiffs' allegation of a settlement is supported by plaintiff's request in *McCoy* in October
   2022 for additional time to withdraw the case because "additional time is necessary to exchange
26 the necessary settlement documents." *See McCoy*, October 19, 2022 CaseFlow Request. Plaintiff
   then withdrew the matter last month, in December 2022. *See* December 19, 2022 Withdrawal of
27 Action, *McCoy v. General Motors LLC*, Case No. X03- HHD-CV-20-6142910-S (Conn. Sup. Ct.).
   [45] Mr. Fariello is a forensic crash investigator. *See* Bill Saporito, "Air Bag Blow Out," *Time*
28 *Magazine*, (December 4, 2014). Available at: https://time.com/3617681/the-air-bag-blowout (last
   visited July 27, 2023).

2820476.3                              - 29 -                THIRD AMENDED CLASS ACTION COMPLAINT
                                                                          4:21-CV-06338-JST

1    2014. Therein, he lists multiple technical issues with the airbag sensing system that he wanted to

2    bring to GM's attention and urge them to address. For example, he cautions that, in his view:

3            a.    "The deployment thresholds [i.e., the inputs that will trigger deployment]

4    for the airbag were set too high and compromised driver and passenger safety as a result of GM's

5    improper effort to mitigate lawsuits related to relatively low speed deployments of the airbag.";

6            b.    "The deployment threshold did not meet GM's and generally accepted

7    standards for when an airbag should deploy in order to prevent occupant death based on written

8    technical papers and educational videos produced by GM or its employees."; and

9            c.    "Failure of the SDM to independently process a crash pulse and deploy the

10   airbag implicates a defective software algorithm; specifically 'Algo S-H' [the software algorithm

11   in the Class Vehicles]."

12       119.   At the time, in 2016, Mr. Fariello proposed that the SDM could be re-programed

13   "with a more responsive algorithm" to resolve these issues, and that GM's "only apparent motive

14   for not doing this related to the cost of implementing a recall."

15       120.   Frustrated by the response he received from GM's counsel in response to these

16   letters, Mr. Fariello then wrote to Senator Bill Nelson of Florida enclosing his correspondence to

17   GM and escalating his concerns. Senator Nelson then forwarded that correspondence to

18   NHTSA.[46]

19       121.   As Mr. Fariello concluded, in his view, GM was stalling on this issue "just as they

20   did with the Takata airbag matter."

21       122.   In April 2016, plaintiff Kayla Greenwood filed suit against GM on behalf of her

22   deceased parent, Galen Greenwood. *See Greenwood v. General Motors LLC and General Motors*

23   *Company*, Dkt. 1, Case No. 16-cv-00149 (M.D. GA). Galen Greenwood was fatally injured when

24   his "airbag failed to deploy and his seat belt failed to properly restrain him" during a multi-impact

25   crash in his 2006 GM SUV, a Chevrolet Equinox—hallmarks of the SDM Calibration Defect. *Id.*

26   Specifically, "Mr. Greenwood lost control of the subject vehicle, traveled over the northbound

27

28   [46] Mr. Fariello's letters to GM and further documentation are available at:
     https://static.nhtsa.gov/odi/cmpl/2017/CL-10955948-3381.pdf (last visited July 27, 2023).

1  lane and onto the west shoulder in a gradual manner, and impacted two trees with the front of the

2  subject vehicle. During the incident sequence, the driver's side airbag failed to deploy and the

3  seat belt failed to properly restrain Plaintiff's decedent. During the impact, Galen Greenwood

4  suffered severe injuries which resulted in his death." *Id.* GM settled with Ms. Greenwood in May

5  2017. *See id.* Dkt. 20-1.[47]

6      123.    Finally, in 2022, Jerome and Cedric Woods filed suit against MFA Oil Company

7  in Missouri state court as survivors of Richard Stinson. Mr. Stinson was killed when his 2009

8  Chevrolet Silverado truck crashed into an MFA Oil Company truck in November 2021. Mr.

9  Stinson's Silverado was traveling at approximately 46 miles per hour at the time of the collision,

10  and despite the serious "extent of the damage," the speed of the accident, and the change in

11  velocity from the impact, his airbags did not deploy.

12      124.    In or about March 2023, defendant MFA Oil Company filed a third party petition

13  against General Motors LLC in the *Woods* case. As MFA contends in that third party petition:

- "Upon information and belief, the airbag system on the Silverado was designed to not deploy under circumstances when the change in velocity of the vehicle [i.e., a deployment threshold input] **in the initial 45 milliseconds after the initiation of a collision event was under a set rate regardless of the change in velocity of the vehicle after the initial 45 milliseconds,** including a situation such as the collision in this case in which a change in velocity was recorded to exceed 37 miles per hour during the sequence of the collision."

- **The design settings for deployment of the driver's side airbag on the Silverado were defective and unreasonably dangerous because the settings prevented deployment of the driver's side airbag** under circumstances such as the collision at issue in this case in which the change in velocity of the vehicle exceeded 37 miles per hour and in which the deployment of the airbag could or would have reduced or entirely avoided serious or fatal injuries such as the injuries Stinson sustained.[48]

23      125.    The *Woods* litigation on Mr. Stinson's behalf continues.

---

[47] In the *McCoy* matter, GM's designated corporate witness testified that he had previously offered testimony in a personal injury lawsuit about a crash where a vehicle "went off the roadway and struck a tree," where the plaintiff's name was Greenwood. On information and belief, GM's corporate designee in the *McCoy* matter was thus also a deponent in this settled Greenwood lawsuit, demonstrating further corporate knowledge of persistent injuries from the SDM Calibration Defect in the field.

[48] *See* Third-Party Plaintiffs' Petition, *Woods v. MFA Oil Company v. General Motors LLC*, Case No. 22-NM-CV00032 (New Madrid Circuit Court, Missouri).

          - 31 -          THIRD AMENDED CLASS ACTION COMPLAINT
4:21-CV-06338-JST

126.    Taken together, these and other allegations support the existence of the SDM Calibration Defect and the reasonable inference that Plaintiffs' model years 2010 and 2012 GM trucks and SUVs included it. Specifically, given that: (1) the model years of Plaintiffs' Class Vehicles were developed *after* Old GM first used the defective Software Calibration in or about 1999, and not long after Mr. Caruso left his role with Delco in 2006 (during which subsequent model years were already in development); (2) Plaintiffs' Class Vehicles predate the 2018 vehicle in which Mr. Caruso reviewed the software calibration, and concluded that the algorithm still reflects GM's flawed strategy to cutoff deployment too early, including "very similar shutoff times" to those he had originally raised concerns about twenty years earlier; (3) corroborating instances between those two bookends (1999 and 2018) support the persistence of the defective calibration in the intervening model years (i.e., *Nossar, Vaith, Greenwood, Woods,* and Fariello's letters, discussed *supra*); and (4) the broad, cross-model way that SDM software calibration strategy is set and implemented across GM's fleet within a given model year, the plausible, and most reasonable inference is that GM installed the same defective calibration in all its trucks and SUVs at least through model year 2018.

**b.    GM knew or should have known about hundreds of publicly reported airbag failures in the Class Vehicles.**

127.    GM was also on notice of the SDM Calibration Defect and its attendant safety risks from consumer complaints. These complaints are publicly available online through NHTSA's website. Between 1999 and the present, hundreds of consumers reported to NHTSA that airbags and/or seatbelts had suspiciously failed during frontal crashes involving concatenated (multiple) impacts or potentially prolonged crash onsets. New allegations—including Mr. Caruso's report showing the defective cutoff strategy continued in a model year 2018 vehicle— make the below crashes even more suspicious as relevant incidents with the hallmarks of the SDM Calibration Defect (airbag and seatbelt failures in concatenated and prolonged frontal impacts) in the very vehicles alleged to be impacted by that Defect (GM trucks and SUVs).

128.    On information and belief, vehicle manufacturers such as GM monitor these public databases for complaints about their vehicles, considering their statutory obligations to report

1    known safety defects in their vehicles to NHTSA and to consumers. Moreover, in many of these

2    reports, it is expressly clear that GM was directly informed of, and even investigated, the accident

3    in question. While GM has access to the full body of these complaints from 1999 and onward in

4    the public database, it bears mention that over three hundred of them were filed after the new GM

5    entities were created in 2009.[49]

6              129.    One such complaint details an accident in a 2004 Chevrolet Trailblazer in August

7    2014. The driver states that they were traveling 50 MPH on a four-lane highway where another

8    vehicle, waiting to U-turn, "decided to turn right into me—oncoming traffic." The vehicles

9    crashed, which then "sent [the driver] into a head on collision with the guard rail." The driver

10   questions that "there were 2 incidents in that sequence of events that the airbags should have

11   deployed, but did not! This accident caused several injuries to myself and my passenger. We

12   definitely could have been killed and no airbags to help save our lives..." Photos of the damage to

13   the vehicle from that accident follow. (NHTSA Complaint #1100694).



14

15

16

17

18

19

20

21

22

23

24

25

26

27   _____

28   [49] Many publicly reported accidents occurred prior to 2009, which information would likewise have been available to Old GM. GM would have acquired Old GM's knowledge of these accidents, reflected in its books, records, and personnel, when it was formed in 2009.



130.    Another report describes a September 2012 accident in a 2005 Chevrolet Trailblazer. It states that the driver, at 30 MPH, swerved to avoid a deer in the road, which caused the vehicle to lose control, exit the road, and ultimately "crash[] off a 9 foot embankment." From there, the vehicle continued to crash through a field, into a dirt levy, and finally into a drainage ditch. None of the airbags deployed. The driver "became unconscious after his head crashed into the steering wheel" and "suffered severe neck injuries." The dealer later inspected the vehicle but responded that the results were "inconclusive" and that the manufacturer "was notified but offered no assistance." Photos of the damage to the vehicle from that accident follow. (NHTSA Complaint #942950).[50]

---

[50] Accident documentation and photos are available at: https://static.nhtsa.gov/odi/cmpl/2012/EQ-10477257-8767.pdf (last visited July 27, 2023).





131.    In another example, the complaint describes a serious accident in March 2019 involving a 2005 Chevrolet Equinox. The vehicle crashed into the front of another vehicle at 35

MPH. The airbags did not deploy. The driver sustained injuries to the head and ankle and required medical attention. Photos of the damage to the vehicle from that accident follow.



132.    (NHTSA Complaint #1550406).[51]



133.    Another account of a July 2007 accident in a model year 2001 Isuzu Rodeo describes a crash at 65 MPH so severe that "the median on the highway sustained property

---

[51] Photos and accident information are available at: https://static.nhtsa.gov/odi/cmpl/2019/EQ-11191960-7090.pdf (last visited July 27, 2023).

THIRD AMENDED CLASS ACTION COMPLAINT
                                                                          4:21-CV-06338-JST

1  damage" and "the vehicle was destroyed," but the airbags did not deploy. This is how the vehicle

2  looked after that accident:



3
4
5
6
7
8
9
10
11
12

13     134.    Additional examples of similarly suspicious frontal accidents—i.e., frontal

accidents with multiple discrete impacts, or potentially prolonged onset frontal crashes involving

14  "soft" impacts—in which the airbags and/or seatbelts failed include:

15     a.    NHTSA complaint #753287 dated Tuesday, October 16, 2001, reported an

16  accident on Monday, October 8, 2001 involving a 1999 CHEVROLET SUBURBAN in Andover,

17  KS. The complaint states: "60 MPH CROSS WIND BLEW THE SUBURBAN HEAD ON INTO

18  THE CONCRETE MEDIAN. THE VEHICLE SPUN 360 DEGREES, WENT INTO THE

19  DITCH, THE FRONT END HIT AGAIN THE VEHICLE WENT UP THE OTHER SIDE OF

20  THE EMBANKMENT AND STOPPED IN A FIELD. ENTIRE FRONT END OF THE FRAME

21  NOT REPAIRABLE . . . FRONT CROSSMEMBER BENT AND ENGINE MOVED

22  UPWARDS AT A 10 DEGREE ANGLE. **AIR BAGS FAILED TO DEPLOY**. *AK"[52]

23     b.    NHTSA complaint #859858 dated Friday, April 7, 2000, reported an

24  accident on Saturday, April 3, 1999 involving a 1999 CHEVROLET SILVERADO. The

25  complaint states: "WHILE TRAVELING ON A WET ROAD AT HIGHWAY SPEED OF 60

26  MPH VEHICLE HYDROPLANED, SPUN INTO A DITCH, AND COLLIDED INTO A TREE

27

28
_____
[52] Emphasis is supplied here and in the paragraphs that follow.

1  WITH BOTH SIDES AND FRONT OF VEHICLE. **UPON IMPACT, AIR BAGS FAILED TO**

2  **DEPLOY**. MFR. NOTIFIED. *AK"

3           c.      NHTSA complaint #877320 dated Wednesday, January 3, 2001, reported

4  an accident on Friday, December 1, 2000 involving a 1999 CHEVROLET SUBURBAN in

5  Amarillo, TX. The complaint states: "CONSUMER WAS TRAVELING ABOUT 40MPH ON

6  HIGHWAY AND ANOTHER VEHICLE VEERED INTO HER LANE, HITTING HER HEAD-

7  ON, AND PUSHING VEHICLE INTO ANOTHER LANE. **VEHICLE HIT TELEPHONE**

8  **POLE, AND DUAL AIRBAGS DIDN'T DEPLOY**. CONSUMER WAS INJURED.

9  CHEVROLET HAS BEEN NOTIFIED. *AK"

10          d.      NHTSA complaint #10060150 dated Tuesday, March 2, 2004, reported an

11  accident on Tuesday, February 24, 2004 involving a 2001 CHEVROLET BLAZER in Austin,

12  TX. The complaint states: "**DRIVER SIDE AIR BAG FAILED TO DEPLOY IN A CRASH**

13  THROUGH: 1. A SIX FOOT TALL WOODEN FENCE AT ALMOST 30MPH, THEN 2. THE

14  EXTERIOR SIDE OF A 2-STORY HOME THAT CONTAINED THE KITCHEN SINK AND

15  PLUMBING FIXTURES, WHILE SMASHING UP AND OVER THE FIFTEEN-INCH

16  CONCRETE FOUNDATION, FRONT-END FIRST.*AK"

17          e.      NHTSA complaint #10082050 dated Thursday, July 15, 2004, reported an

18  accident on Wednesday, July 14, 2004 involving a 2003 CHEVROLET SUBURBAN in Fresno,

19  CA. The complaint states: "THE CONSUMER WAS INVOLVED IN AN ACCIDENT WHERE

20  IT WAS HIT FROM THE FRONT DRIVER SIDE, THE IMPACT CAUSED THE VEHICLE

21  TO HIT A TELEPHONE POLE HEAD ON. **THE AIR BAGS DID NOT DEPLOY**. *JB"

22          f.      NHTSA complaint #10103512 dated Friday, December 10, 2004, reported

23  an accident on Sunday, December 5, 2004 involving a 2001 CHEVROLET SILVERADO in

24  Rialto, CA. The complaint states: "CONSUMER'S VEHICLE WAS REAR ENDED WHILE

25  DRIVING 50 MPH. THE VEHICLE WAS FORCE[D] INTO A SPIN AND THEN, IT HIT A

26  CONCRETE ROAD DIVIDER. UPON IMPACT, **NEITHER FRONTAL AIR BAGS**

27  **DEPLOYED**. DRIVER SUSTAINED INJURIES, AND HAD TO BE TRANSPORTED TO A

28  LOCAL HOSPITAL. DEALER AND MANUFACTURER WERE NOTIFIED. THE

1    CONSUMER STATED THAT THE SEAT BELT DID NOT KEEP HER FROM HITTING HER

2    CHEST ON THE STEERING WHEEL."

3        g.    NHTSA complaint #10108404 dated Tuesday, February 1, 2005, reported

4    an accident on Tuesday, January 11, 2005 involving a 2000 CHEVROLET SILVERADO in

5    Toney, AL. The complaint states: "A CAR PULLED OUT IN FRONT OF ME WHICH STILL

6    HIT THE DRIVER'S SIDE OF MY VEHICLE (2000 CHEVY SILVERADO). **THEN MY**

7    **TRUCK HAD A FULL FRONTAL IMPACT AT GREATER THAN 30 MPH INTO A**

8    **DIRT WALL IN WHICH NEITHER THE DRIVER'S NOR PASSENGER'S AIRBAGS**

9    **DEPLOYED (THE TRUCK IS TOTALLED).** I HIT THE STEERING WHEEL AND GOT A

10    CONCUSSION WITH BLOOD AROUND THE BRAIN, A BROKE CHEEK BONE, AND

11    FRACTURED HIP. MY WIFE WAS 33 WEEKS PREGNANT AT THE TIME AND HER

12    WATER BROKE AND SHE GOT A COMPOUND FRACTURE IN THE LOWER

13    LEG/ANKLE. AS A RESULT OF THE WATER BREAKING MY SON WAS BORN 3 DAYS

14    LATER 7 WEEKS PREMATURE. AS FOR WHAT WAS DONE TO CORRECT THE

15    PROBLEM I'M HOPING IT WILL AT LEAST BE INVESTIGATED TO MAKE SURE THIS

16    IS NOT A SYSTEMIC PROBLEM (I.E., SOFTWARE SCREWUP SOMETHING NOT

17    HOOKED UP RIGHT IN THE AIRBAG SYSTEM ETC)."

18        h.    NHTSA complaint #10115806 dated Thursday, March 24, 2005, reported

19    an accident on Thursday, March 24, 2005 involving a 2002 CHEVROLET SILVERADO in

20    Claremore, OK. The complaint states: "A PIECE OF FURNITURE WAS LOCATED IN THE

21    MIDDLE OF THE HIGHWAY WHILE DRIVING, CAUSING THE DRIVER TO HIT THE

22    FURNITURE. DRIVER LOST CONTROL OF A VEHICLE, AND IT CRASHED INTO A

23    CONCRETE WALL. DRIVER'S SIDE SEAT BELT FAILED, AND **THE AIRBAGS DID**

24    **NOT DEPLOY**."

25        i.    NHTSA complaint #10158090 dated Tuesday, May 23, 2006, reported an

26    accident on Sunday, February 26, 2006 involving a 2004 CHEVROLET TRAILBLAZER in

27    Fayetteville, NC. The complaint states: "DT*: THE CONTACT STATED WHILE DRIVING 50

28    MPH THE VEHICLE WAS INVOLVED IN A HEAD ON COLLISION WITH ANOTHER

1  VEHICLE. THE VEHICLE CONTINUED MOVING AND STOPPED BY COLLIDING WITH

2  A STORE SIGN. **THE AIR BAGS DID NOT DEPLOY** AND SEAT BELTS WERE WORN . .

3  . THE INSURANCE COMPANY DETERMINED THE VEHICLE WAS TOTALED DUE TO

4  THE ACCIDENT. THE DEALER DOES NOT HAVE THE MEANS TO TEST FOR AIR BAG

5  NON-DEPLOYMENT. UPDATED 1/24/2007 - *NM"

6          j.      NHTSA complaint #10161658 dated Thursday, July 6, 2006, reported an

7  accident on Saturday, June 3, 2006 involving a 1999 CHEVROLET BLAZER in Ludlow, MA.

8  The complaint states in part: "CHEVY DRIVER HIT A CAR IN HER LANE FIRST, THEN

9  RICOCHETED HEAD ON INTO A TREE. **NEITHER TIME DID AIRBAGS DEPLOY**.

10  *TT"

11          k.      NHTSA complaint #10163811 dated Friday, July 28, 2006, reported an

12  accident on Thursday, July 20, 2006 involving a 2000 ISUZU RODEO in Nederland, TX. The

13  complaint states: "A GIRL RAN A RED LIGHT AND I HIT HER IN THE PASSENGER SIDE

14  OF HER CAR HEAD ON WITH MY 2000 ISUZU RODEO. IT WAS A FULL FRONTAL

15  COLLISION FOR ME AND MY CHILDREN. LUCKILY, WE ARE ALWAYS BUCKLED UP

16  BECAUSE **NONE OF MY AIRBAGS DEPLOYED AT ALL**. THE OTHER CAR WAS

17  GOING ABOUT 60 MPH AND HER AIRBAG DEPLOYED WHEN I HIT HER BUT MINE

18  DID NOT. LUCKILY, MY CHILDREN WERE NOT HURT BADLY BUT

19  UNFORTUNATELY, I SUSTAINED NECK, BACK AND KNEE INJURIES. I WAS AND

20  STILL AM VERY UPSET THAT MY AIRBAGS FAILED. EVEN THE OWNER OF THE

21  BODY SHOP I USE WAS IN SHOCK THAT THEY DID NOT DEPLOY AS THE IMPACT

22  WAS ENOUGH TO SPLIT THE FRAME OF MY RODEO AND TOTAL IT OUT . . . THANK

23  YOU FOR YOUR TIME, I HOPE I CAN HELP ANOTHER FAMILY FROM GETTING

24  INJURED."

25          l.      NHTSA complaint #10217793 dated Tuesday, February 12, 2008, reported

26  an accident on Thursday, February 7, 2008 involving a 2006 CHEVROLET TRAILBLAZER in

27  Lakewood, OH. The complaint states: "A 2006 CHEVY TRAILBLAZER TRAVELING OVER

28  THE SPEED LIMIT ON MY STREET CRASHED INTO A TREE, A PARKED CAR, AND

1  THEN CONTINUED TO ROLL OVER ACROSS MY FRONT LAWN, LANDING

2  SIDEWAYS AFTER FLIPPING SEVERAL TIMES. THE OCCUPANTS WERE SEVERELY

3  INJURED. **NO AIRBAGS DEPLOYED DURING THE CRASH**. THE DRIVER OF THE

4  VEHICLE IS IN ICU NEEDING FACIAL RECONSTRUCTIVE SURGERY. *TR"

5           m.       NHTSA complaint #10221319 dated Saturday, March 15, 2008, reported

6  an accident on Thursday, February 21, 2008 involving a 2005 CHEVROLET TRAILBLAZER in

7  Clay, NY. The complaint states: "I WAS DRIVING ON A 2 LANE ROAD GOING 45MPH. A

8  CAR WAS FOLLOWING CLOSE BEHIND ME SO I WENT TO GET INTO RIGHT LANE

9  AND MY TRUCK DID 5 360 AND HIT 3 TREES HEAD ON AND **AIR BAG NEVER**

10  **DEPLOYED**. *TR"

11           n.       NHTSA complaint #10263896 dated Wednesday, April 1, 2009, reported

12  an accident on Thursday, March 26, 2009 involving a 2002 CHEVROLET TRAILBLAZER in

13  Elizabeth, NJ. The complaint states: "I WAS IN A CAR ACCIDENT, WHERE I WAS

14  TRAVELING AT ABOUT 35 MPH. AN AGGRESSIVE DRIVER SPEED AROUND ME AND

15  CUT ME OFF AND THAN STOMPED ON THIS BRAKES IN FRONT OF ME. DUE TO

16  THAT I SWERVED TO MISS HIM CLIPPING HIS RIGHT BACK LIGHT AD BUMPER

17  WITH MY LEFT HEADLIGHT AND BUMPER. AS I WAS SWERVING I HIT A TREE JUST

18  ABOUT DEAD ON WITH MY CAR . . . I HIT THE TREE AT A SPEED OF ABOUT 28-30

19  MPH. AFTER INITIAL IMPACT I WAS RUSHED TO THE HOSPITAL DUE TO

20  UNCONSCIOUS AND FACIAL CONTUSIONS. DURING THE FIRST MOMENTS AFTER

21  THE ACCIDENT, ONE OF THE FIRST THINGS OFFICERS, EMTS AND WITNESSES SAID

22  WAS "**I CAN'T BELIEVE THE AIRBAGS DIDN'T GO OFF**." IN THE RECENT DAYS

23  AFTER THE ACCIDENT I HAVE HAD SEVERAL MECHANICS AND SUCH APPRAISE

24  THE CAR, THE ONE COMMON THEME THEY ALL SHARE IS THAT THEY SUSPECT

25  THERE MIGHT NOT BE AN AIRBAG WHERE IT BELONGS. OR THE LACK THERE OF.

26  *TR"

27           o.       NHTSA complaint #10463248 dated Wednesday, June 27, 2012, reported

28  an accident on Friday, July 15, 2011 involving a 2005 GMC in Richmond, VA. The complaint

2820476.3                                    - 41 -                    THIRD AMENDED CLASS ACTION COMPLAINT
                                                                                    4:21-CV-06338-JST

1   states: "THE CONTACT STATED WHILE DRIVING 55 MPH, HE CRASHED INTO A TREE.

2   **THE AIR BAGS FAILED TO DEPLOY** . . . A POLICE REPORT WAS FILED. THE

3   MANUFACTURER WAS MADE AWARE OF THE FAILURE; HOWEVER, THEY

4   PROVIDED NO ASSISTANCE . . . THE CONSUMER'S VEHICLE WAS DAMAGED WHEN

5   HE TRIED TO AVOID HITTING THE VEHICLE BY SWERVING SIDEWAYS AND

6   SLIDING INTO THE GRASS. HE TRIED STOPPING THE VEHICLE WHILE IT WAS STILL

7   ON THE PAVEMENT BUT HE INEVITABLY RAN INTO THE DITCH AND FLEW

8   AIRBORNE INTO A TREE, AND THE TRUCK OVERTURNED."

9         p.      NHTSA complaint #10524151 dated Wednesday, July 10, 2013, reported

10   an accident on Thursday, May 30, 2013 involving a 2006 CHEVROLET TRAILBLAZER in

11   Mansfield, OH. The complaint states: "THIS COMPLAINT IS BEING FILED ON BEHALF OF

12   THE VEHICLE OWNER AND DRIVER. THIS CHEVY TRAILBLAZER WAS INVOLVED

13   IN A TWO VEHICLE, DOUBLE FATAL CRASH. THE FRONT OF THE TRAILBLAZER

14   STRUCK THE DRIVER'S SIDE DOOR OF A CAVALIER THAT FAILED TO YIELD FROM

15   A STOP SIGN. THE TRAILBLAZER STAYED CONNECTED WITH THE CAVALIER,

16   FORCING IT OFF THE LEFT SIDE OF THE ROADWAY AND INTO A LARGE TREE.

17   BOTH OCCUPANTS IN THE CAVALIER WERE FATALLY INJURED. **THE FRONT**

18   **AIRBAGS DID NOT DEPLOY ON THE TRAILBLAZER** AND NO EVENT WAS

19   RECORDED ON THE AIRBAG CONTROL MODULE. *TR"

20         q.      NHTSA complaint #10537593 dated Tuesday, August 27, 2013, reported

21   an accident on Tuesday, August 13, 2013 involving a 2003 CHEVROLET BLAZER in Harrison

22   Township, MI. The complaint states: "I WAS TRAVELING SOUTHBOUND WHEN I

23   EXPERIENCED A SEIZURE AND LOST CONTROL OF MY VEHICLE. I PROCEEDED TO

24   VEER TO THE LEFT WHERE I CLIPPED SEVERAL CARS THAT WERE HEADED

25   NORTHBOUND . . . I THEN PROCEEDED OVER A TREE LAWN AND INTO A PARKING

26   LOT. I HIT A DODGE RAM PICKUP WITH THE RIGHT FRONT CORNER OF MY

27   VEHICLE AND PUSHED THAT VEHICLE INTO ANOTHER PARKED CAR THAT WAS

28   NEXT TO IT. BOTH VEHICLES ENDED UP SIDEWAYS AND MY VEHICLE ENDED UP

1   SPUN AROUND 180 DEGREES . . . THE JAWS OF LIFE WERE USED TO EXTRACT ME

2   FROM MY VEHICLE. I WAS TAKEN TO A LOCAL HOSPITAL WHERE IT WAS

3   DETERMINED THAT I SUFFERED BURST FRACTURES OF L1, L2, AND L3. I ALSO

4   SUFFERED AN EVULSION FRACTURE OF MY LEFT ANKLE. THE POLICE REPORT

5   STATES THAT I WAS TRAVELLING AT A HIGH RATE OF SPEED AND THAT THE

6   VEHICLES WHICH WERE NORTHBOUND WERE JUST CLIPPED. **THE AIRBAGS ARE**

7   ***BOTH STILL WITHIN THEIR CASES AS NEITHER DEPLOYED*** . . . THE INSURANCE

8   INVESTIGATOR EVEN EXPRESSED TO MY WIFE THAT HE WAS SURPRISED THAT

9   THE AIR BAG DID NOT DEPLOY."

10           r.       NHTSA complaint #10550276 dated Wednesday, October 30, 2013,

11   reported an accident on Monday, October 28, 2013 involving a 2006 CHEVROLET

12   TRAILBLAZER in Neihart, MT. The complaint states: "TL* THE CONTACT OWNS A 2006

13   CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING

14   APPROXIMATELY 35 MPH, SHE LOST CONTROL OF THE VEHICLE WHILE DRIVING

15   IN SNOWY WEATHER. THE VEHICLE NOSE DIVED INTO AN EMBANKMENT AND

16   THEN CRASHED INTO A BOULDER. **THE AIR BAGS FAILED TO DEPLOY**. THE

17   CONTACT WAS TRANSPORTED TO THE HOSPITAL VIA AMBULANCE FOR

18   TREATMENT OF A CONCUSSION AND BRUISING. THE FRONT PASSENGER WAS

19   ALSO INJURED AND SUSTAINED BRUISING. THE VEHICLE WAS DESTROYED. THE

20   MANUFACTURER WAS MADE AWARE OF THE FAILURE."

21           s.       NHTSA complaint #10574295 dated Sunday, March 23, 2014, reported an

22   accident on Friday, February 21, 2014 involving a 2010 GMC TERRAIN in Saint Joe, IN. The

23   complaint states: "INVOLVED IN A 21 CAR PILE UP IN THE UPPER PENINSULA DURING

24   A COMPLETE WHITE OUT. WE WERE ONLY TRAVELING APPROXIMATELY 25

25   MILES PER HOUR BUT, WE DID HAVE SERIOUS IMPACT IN THE FRONT, AFTER

26   HITTING A TRAILER AND ALSO SERIOUS IMPACT FROM BEHIND WHEN HIT BY A

27   TRUCK AND TRAILER. **NO AIRBAGS DEPLOYED**. THE TRUCK TRAVELING AHEAD

28   OF US, THAT WE HIT, THE AIRBAGS DID DEPLOY. MY FATHER AND BROTHER,

1  WHO WERE ALSO BOTH DRIVING CHEVY TRUCKS, AND ALSO HAD SERIOUS

2  FRONT END DAMAGE DURING THE SAME ACCIDENT, THEIR AIRBAGS DID NOT

3  DEPLOY EITHER. *TR"

4  　　　　　t.　　　NHTSA complaint #10576031 dated Monday, March 31, 2014, reported an

5  accident on Sunday, March 23, 2014 involving a 2012 CADILLAC SRX in Kaplan, LA. The

6  complaint states: "I FELL ASLEEP WHILE DRIVING, JUMPED A LEVEE, RAN THROUGH

7  A FENCE, AND WRECKED IN A GRASSY WATERY AREA. MY ENGINE WAS

8  SMASHED, THE MOTOR MOUNT BROKE, AND MY TIRES ARE PUSHED BACK. MY

9  **AIR BAGS DID NOT DEPLOY**. MY FACE HIT THE STEERING WHEEL AND MY NOSE

10  IS BROKEN. I WOULD LIKE TO FIND OUT IF THERE IS ANY RECALLS ON THIS CAR.

11  *TR"

12  　　　　　u.　　　NHTSA complaint #10583703 dated Saturday, April 19, 2014, reported an

13  accident on Thursday, March 13, 2014 involving a 2012 GMC TERRAIN in Moneta, VA. The

14  complaint states: "I INADVERTENTLY VEERED OFF SIDE ROADWAY, (VA HIGHWAY

15  220) COLLIDING WITH A TREE/ROADSIDE SHRUBS, ETC (WAS KNOCKED

16  UNCONSCIOUS AS FOREHEAD HIT STEERING WHEEL ON INITIAL IMPACT).

17  **AIRBAGS DID NOT DEPLOY** ALLOWING ME TO SUSTAIN A HEAD INJURY THAT

18  KNOCKED ME UNCONSCIOUS... FOREHEAD WAS GASHED WITH SIGNIFICANT

19  BLEEDING. I WAS TRANSPORTED BY AMBULANCE IN UNCONSCIOUS STATE.

20  DAMAGE TO VEHICLE IS IN EXCESS OF $8,000 SO FAR AS VEHICLE STILL IN

21  REPAIR SHOP WITH MASSIVE FRONT END DAMAGE THAT AFFECTS STEERING

22  LINKAGE, ETC. THE IMPACT OF VEHICLE AGAINST FOLIAGE, TREES SHRUBS,

23  SHOULD HAVE FORCED AIR BAGS TO DEPLOY AND I BELIEVE THAT I WOULD NOT

24  HAVE SUSTAINED A HEAD INJURY THAT RENDERED ME UNCONSCIOUS WITH

25  MILD CONCUSSION AND COULD NOT CONTROL VEHICLE LEAVING ROADWAY.

26  *TR"

27  　　　　　v.　　　NHTSA complaint #10592423 dated Monday, May 19, 2014, reported an

28  accident on Thursday, May 8, 2014 involving a 2003 CHEVROLET SILVERADO in

1   Burtonsville, MD. The complaint states: "TRUCK COLIDED WITH GUARD RAIL.

2   BOUNCED OFF, HIT VEHICLE 1, THEN INTO VEHICLE 2 THEN STOPPED AFTER

3   HITTING VEHICLE 3 A SEMI TRUCK. ALL DAMAGE WAS DONE TO FRONT OF THE

4   CHEVY SILVERADO. **AT NO TIME DID THE AIRBAGS DEPLOY**."

5         w.    NHTSA complaint #10622016 dated Wednesday, August 13, 2014,

6   reported an accident on Saturday, August 9, 2014 involving a 2012 CHEVROLET TAHOE in

7   The Colony, TX. The complaint states: "WHILE TURNING LEFT (TAHOE) WITH A

8   PROTECTED GREEN ARROW AT AN X-SHAPED INTERSECTION, VEHICLE (KIA

9   SEDAN) AT FAULT FAILED TO YIELD AND ENTERED THE INTERSECTION AT

10  SPEEDS UPWARDS OF 40 MPH FROM THE LEFT OF THE TAHOE. FRONT-IMPACT

11  COLLISION OCCURRED . . . TAHOE STRUCK PASSENGER SIDE OF KIA SEDAN.

12  TRAJECTORY OF IMPACT CAUSED DIRECTIONAL CHANGES IN UPWARDS OF 90*

13  FOR BOTH VEHICLES; THE FORCE OF THE PRIMARY ACCIDENT DESCRIBED ABOVE

14  ALSO CAUSED MENTIONED VEHICLES TO COLLIDE WITH LEFT REAR OF ANOTHER

15  VEHICLE (HONDA SEDAN) . . . DUE TO THE FORCE OF IMPACT, FRONT & SIDE

16  AIRBAGS DEPLOYED ON BOTH THE KIA SEDAN AND THE HONDA SEDAN, BUT

17  **FAILED TO DEPLOY ON THE TAHOE** . . . FORCE WAS SUCH THAT AFTER THE

18  COLLISION, TAHOE TRANSMISSION WAS IN DRIVE, BUT REMAINED AT A

19  COMPLETE STOP. DAMAGE SUSTAINED ON THE TAHOE INCLUDE FRONT-END

20  BODY DAMAGE, ENGINE DAMAGE (VEHICLE REQUIRED TOWING AND WAS

21  INOPERABLE), AND FRAME DAMAGE, AT A MINIMUM . . . MULTIPLE FIRST-

22  RESPONDERS COMMENTED ON THE ODDITY THAT, GIVEN THE DAMAGE

23  SUSTAINED BY THE TAHOE AND THE VELOCITY AT IMPACT, THE AIRBAGS

24  DEPLOYED ON ALL VEHICLES BUT THE TAHOE. *TR"

25        x.    NHTSA complaint #10641399 dated Saturday, October 4, 2014, reported

26  an accident on Tuesday, June 7, 2011 involving a 2002 CHEVROLET TAHOE in Cheney, WA.

27  The complaint states: "THE CONTACT STATED THAT WHILE THE DRIVER WAS

28  DRIVING AT 45 MPH AND ATTEMPTED TO AVOID A CRASH WITH ANOTHER

1   VEHICLE. AS A RESULT, THE DRIVER CRASHED INTO A GUARDRAIL AND **THE AIR**

2   **BAGS FAILED TO DEPLOY.** A POLICE REPORT WAS FILED. THE CONTACT WAS

3   TAKEN TO A HOSPITAL AND SUSTAINED INJURIES TO THE RIBS, THE COLLAR

4   BONES, A BRAIN TRAUMA AND A COLLAPSED LUNG. THE DRIVER SUFFERED

5   FROM FATAL INJURIES."

6           y.     NHTSA complaint #10767586 dated Tuesday, September 22, 2015,

7   reported an accident on Saturday, August 1, 2015 involving a 2004 CHEVROLET

8   TRAILBLAZER in Tallahassee, FL. The complaint states: "MY MOTHER WAS INVOLVED

9   IN A 1 CAR ACCIDENT ON BAUM RD LOCATED IN TALLAHASSEE, FL. SHE WAS THE

10  ONLY PASSENGER DETERMINED TO BE IN THE VEHICLE AT THE TIME OF THE

11  ACCIDENT. ACCORDING TO THE CRASH REPORT, D1 (DRIVER ONE) WAS

12  TRAVELING WESTBOUND ON BAUM RD GOING THE NORMAL POSTED SPEED OF

13  55MPH, WHEN SHE VEERED TOWARDS THE CENTER OF THE RD AND SUDDENLY

14  TURNED RIGHT VEERING OF THE RIGHT SHOULDER OF THE RD AND STRIKING

15  SEVERAL TREES ON THE DRIVERS SIDE AND FRONT END . . . WHEN I WENT TO

16  RETRIEVE MY MOTHERS THINGS FROM HER TRAILBLAZER, I NOTICED THAT **NO**

17  **AIR BAGS HAD DEPLOYED**. AND AS FAST AS MY MOM WAS GOING AND THE

18  TYPE OF IMPACT & DAMAGE HER SUV SUSTAINED, I WOULD THINK AND HOPE

19  THE AIRBAGS WOULD DEPLOY IN THIS TYPE OF ACCIDENT, THUS PREVENTING

20  SERIOUS INJURY OR DEATH. MY MOM WAS NOT SO LUCKY, AND MYSELF AND MY

21  FAMILY HAVE ENDURED GREAT PAIN FROM LOOSING HER SO SUDDENLY."

22          z.     NHTSA complaint #10907149 dated Friday, September 16, 2016, reported

23  an accident on Thursday, September 1, 2016 involving a 2006 CADILLAC SRX in Happy

24  Valley, OR. The complaint states: "THE VEHICLE HIT A CURB AND DROVE INTO A

25  BUILDING. **THE AIR BAGS FAILED TO DEPLOY**. THE CONTACT SUSTAINED

26  INJURIES THAT REQUIRED MEDICAL ATTENTION . . . THE MANUFACTURER WAS

27  NOTIFIED OF THE FAILURE."

28

1      135.   GM knew or had reason to know about these complaints, which are publicly

2   available on NHTSA's website. Indeed, many complaints explicitly state that GM was directly

3   informed of and/or investigated these suspicious accidents. For example:

4       a.   A complaint about an August 2018 accident in a 2008 GMC Acadia details

5   that the airbags and seatbelt pretensioners did not deploy after the complainant's wife fell asleep

6   at the wheel and struck a utility pole and then a large dirt embankment—which caused her to "hit

7   the steering column so hard . . . it broke the column and broke her sternum," and caused the

8   granddaughter in the passenger seat to break her back in two places. It continues that "GENERAL

9   MOTORS . . . SENT A MAN TO DOWNLOAD THE COMPUTER INFORMATION THEY

10   SENT ME A COPY OF THE INFO AND LATER CONTACTED ME SAYING THE INFO

11   SHOWED EVERYTHING WAS WORKING PROPERLY." NHTSA complaint #11066850.

12       b.   After a July 2014 head on collision at 50 MPH where the airbags did not

13   deploy in a 2007 Silverado, totaling the vehicle, another driver was "TOLD BY GM THAT

14   CRASH DID NOT MEET CRITERIA FOR DEPLOYMENT." The driver expressed skepticism

15   about this response, and in the complaint, stated "A HEAD ON COLLISION AT 50 MPH THAT

16   TOTALED 2500 SERIES CHEVY TRUCK. HARD FOR ME TO BELIEVE . . . DO I NEED

17   TO [BE] CONCERNED?" NHTSA complaint #10608220.

18       c.   Another driver reported on a May 2014 accident in a 2012 GMC Terrain in

19   Moneta, VA. The driver struck "something" head on after veering off the highway and proceeded

20   through trees and brush. They were knocked unconscious after hitting their head on the steering

21   wheel upon the first impact, as the airbags had failed to deploy. They were transported to a

22   hospital by ambulance and spent two days in inpatient care. The driver later "CONTACTED

23   GMC CORPORATE . . . TO ADVISE MY CONCERNS FOR SAFETY . . . RECEIVED A

24   FOLLOW UP TELEPHONE CALL FROM GMC REPRESENTATIVE . . . HE EXPRESSED

25   NO INTEREST IN MY COMPLAINT . . . REFUSED TO COMMENT ON MY STATEMENT

26   THAT AIR BAG FAILED TO DEPLOY RESULTING IN EXTENSIVE DAMAGE TO FRONT

27   OF VEHICLE AND SUSTAINING A HEAD INJURY AS NO BAG DEPLOYED . . . I WAS

28

1    ADVISED THAT GMC HAD NO FURTHER INTEREST IN THIS MATTER AND WOULD

2    NOT EVALUATE MY SAFETY CONCERNS." NHTSA complaint #10588334.

3              d.       After a July 2012 accident involving a 2012 GMC Terrain in San

4    Clemente, CA, in which the Terrain was hit multiple times in an intersection in the driver's front

5    end, but no airbags deployed, resulting in whiplash and contusions to the driver, a GM

6    representative responded to a complaint lodged by the driver's parents and stated that there was

7    "NO NEED FOR DEPLOYMENT" because it was a "LOW THRESHOLD EVENT." NHTSA

8    complaint #10466384.

9              e.       After hitting a patch of black ice at 58 MPH in a Chevrolet Silverado in

10   January 2008, another complainant described that they lost control of the vehicle, ran off the road,

11   crashed into a telephone pole and ultimately into a frozen embankment. The airbags did not

12   deploy, causing the driver to hit the steering wheel. As the complainant relates, they "FILED A

13   COMPLAINT WITH THE MANUFACTURER, BUT THE COMPLAINT WAS DENIED. THE

14   MANUFACTURER WAS UNABLE TO DIAGNOSE THE VEHICLE; HOWEVER, AFTER

15   INSPECTION OF THE VEHICLE, THE MANUFACTURER CONFIRMED THAT THE AIR

16   BAGS WERE ENABLED AT THE TIME OF IMPACT. THEY DID NOT GIVE AN

17   EXPLANATION FOR THE DEPLOYMENT FAILURE." NHTSA complaint #10238395.

18             f.       In a report about a March 2006 accident involving a 2005 Cadillac

19   Escalade in Louisville, KY, the complainant describes that after none of the airbags deployed in a

20   front end collision in their 4-week old vehicle, they "CALLED CADILLAC CUSTOMER

21   SERVICE AND WAS GIVEN AN AIRBAG HISTORY LESSON VIA TELEPHONE FROM

22   SOMEONE THAT HAD NEVER SEEN MY VEHICLE OR INSPECTED IT FOR DAMAGE

23   AFTER THE ACCIDENT. AT THE END OF OUR CONVERSATION I WAS TOLD ALL

24   WAS OK, NONE OF MY AIRBAGS SHOULD HAVE DEPLOYED AND NOT TO WORRY

25   ABOUT IT. THE ENTIRE FRONT END OF MY VEHICLE WAS KNOCKED OFF, THE

26   FRAME HAS MULTIPLE CRACKS AND IS BENT AS A RESULT OF THE COLLISION

27   AND THE COLLISION CENTER IS 90% CERTAIN THE VEHICLE IS NOT REPAIRABLE.

28   *JB" NHTSA complaint #10152376.

1          g.    After an August 2004 accident involving a 1999 Chevrolet Astro in

2   Norfolk, VA in which the vehicle jumped a curb, struck a fire hydrant, and then struck a tree

3   without the airbags deploying, the driver was taken by ambulance to the hospital for head and

4   neck injuries. After the accident, the "CONSUMER CONTACTED THE MANUFACTURER

5   AND A REPRESENTATIVE CAME DOWN TO MEET WITH THE DEALER AND

6   CONSUMER. THE REPRESENTATIVE INFORMED CONSUMER THAT THE VEHICLE

7   WAS FUNCTIONING AS DESIGNED." NHTSA complaint # 10087718.

8          h.    Another driver contacted GM after the airbags did not deploy in a February

9   2004 front end collision at 25-30 MPH in their 2000 Isuzu Rodeo in Westwood, NJ. "THE

10  CONSUMER CONTACTED THE MANUFACTURER ABOUT THE AIR BAGS BUT THE

11  REPRESENTATIVE DID NOT SEEM TO BE TOO CONCERNED ABOUT THE

12  SITUATION." NHTSA complaint #10087550.

13         i.    Another driver described a head on collision at 39 MPH in their 2002

14  Chevrolet Tahoe in which the airbags did not deploy and the seatbelts did not tighten. The driver

15  hit their head on the steering wheel, knocking them unconscious. A readout from the vehicle's

16  computer showed the seatbelts were in working order, and GM responded by sending a

17  representative to inspect the vehicle in person. The complainant was awaiting a response from

18  GM at the time of the report. NHTSA complaint #10353935.

19    136.   More than eight hundred similar complaints—i.e., frontal crashes in the Class

20  Vehicles with airbag and seatbelt failures following multiple impacts, or, potentially long-soft

21  frontal impacts—are attached hereto as Exhibit A.[53] These accidents are relevant, and suspicious,

22  because they include hallmarks of the SDM Calibration Defect (airbag and seatbelt failures),

23

24

_____

25  [53] The accidents in the preceding paragraph and Exhibit A include data for Class Vehicles in
    model years 1999-2014. In the interest of efficiency, Plaintiffs have not supplemented the
26  accidents included in Exhibit A from the previously filed versions with their prior pleadings, but
    note that significant numbers of similar consumer reports of multi-impact and front-end impact
27  accidents with airbag and seatbelt failures have continued to accrue in the NHTSA database in
    model years 1999-2014, as well as later model years, in the time since Exhibit A was originally
28  prepared in 2021. Plaintiffs are prepared to submit supplemental examples of such incidents at the
    Court's request.

2820476.3                              - 49 -        THIRD AMENDED CLASS ACTION COMPLAINT
                                                                      4:21-CV-06338-JST

1   under the very crash conditions where it arises, and in the specific population of vehicles

2   Plaintiffs allege to be impacted.

3       137.    In addition to these consumer complaints, a separate, public dataset from NHTSA,

4   the Fatality Analysis Reporting System ("FARS") provides a nationwide census of crashes that

5   resulted in fatal injuries. While the complaints outlined above are reported to NHTSA by

6   consumers and can include any type of complaint or incident, FARS data is reported by state

7   agencies responsible for monitoring all qualifying fatal crashes in their states. To be included in

8   FARS data, a crash must involve a motor vehicle traveling on a public road and result in the death

9   of a person in one or more of the vehicles involved in the crash within 30 days of the crash. The

10  dataset collects information on over 100 different data elements that characterize the crash, the

11  vehicles, and the people involved—including whether or not the airbags deployed.

12      138.    NHTSA's FARS dataset also reveals a recurring pattern of suspicious

13  nondeployments during frontal crashes (i.e., the crash dynamics that can implicate the SDM

14  Calibration Defect) and reinforces the extremely high stakes of such incidents. From 1999 to

15  present, FARS data reflects at least 1,946 frontal crashes where the airbags did not deploy in a

16  Class Vehicle—1,167 of which occurred in 2009 or later, after New GM was formed. This same

17  data reflects that at least 1,298 individual occupants (drivers or passengers) in a Class Vehicle

18  were injured or killed in these crashes.

19      **D.    Despite its knowledge, GM misrepresented and concealed important
            information about the SDM Calibration Defect and Class Vehicle safety.**

20

21      139.    For many consumers, including Plaintiffs, safety is one of the most important

22  factors when buying or leasing a vehicle. GM capitalized on this fact in advertising and other

23  consumer-facing representations about the Class Vehicles and touted the safety of the Class

24  Vehicles in national marketing campaigns.

25      140.    In nationwide advertisement campaigns and promotional materials, GM

26  maintained that the Class Vehicles were safe and reliable, and it did not correct representations

27  about the Class Vehicles' safety and reliability made by Old GM in the past. Instead, GM has

28  repeatedly touted the Class Vehicles' passenger safety systems and assured consumers they could

1  be relied upon to activate the airbags and seatbelts during a crash. These representations are false

2  and misleading because of what they fail to say; GM uniformly failed to disclose that the SDM

3  Calibration Defect could—at the worst possible moment—prevent the airbags and seatbelts from

4  activating.

5      141.    Plaintiffs and Class members, directly or indirectly, were exposed to these

6  advertisements and promotional materials prior to purchasing or leasing their Class Vehicles. The

7  misleading statements about Class Vehicles' safety in GM's advertisements and promotional

8  materials, as well as GM's omission of the truth about the SDM Calibration Defect, influenced

9  Plaintiffs and Class members' decisions to purchase or lease Class Vehicles. If GM had instead

10 chosen to disclose the truth about the SDM Calibration Defect, Plaintiffs and Class members

11 would have seen those disclosures. Indeed, Plaintiffs would have had multiple opportunities to

12 receive information about the SDM Calibration Defect if GM chose to disclose it, including at

13 dealerships, on GM's website, in radio or television advertisements, brochures, press releases or

14 in other promotional materials, as well as in news media reports that would likely follow from the

15 revelation of a serious safety defect in millions of GM vehicles.

16          **1.    Labels and window stickers on the Class Vehicles stated that they were
            equipped with working airbags and seatbelts and failed to disclose the
17          SDM Calibration Defect.**

18     142.    To sell vehicles in the United States, GM was required to "certify to the distributor

19 or dealer at delivery that the vehicle or equipment complies with applicable motor vehicle safety

20 standards prescribed" by NHTSA under Chapter 301 of Title 49 of the U.S. Code. GM "may not

21 issue the certificate if, in exercising reasonable care," they have "reason to know the certificate is

22 false or misleading in a material respect." 49 U.S.C. § 30115; *see also* 49 U.S.C. § 30112.

23     143.    Because "[c]ertification of a vehicle must be shown by a label permanently fixed

24 to the vehicle," all Class Vehicles have a permanent label certifying compliance with the safety

25 regulations prescribed by NHTSA. Since all the Class Vehicles are passenger vehicles, the

26 permanent label must state: "This vehicle conforms to all applicable Federal motor vehicle safety,

27 bumper, and theft prevention standards in effect on the date of manufacture shown above." 49

28 C.F.R. § 567.4(g)(5).

144.    These labels were false and misleading because they failed to warn consumers about the risk that the SDM would fail during a frontal crash, and instead indicated that the passenger safety system would function properly. *See* 49 C.F.R. § 571.208 (S4.1.5.4, S4.1.5.5) (Federal motor vehicle safety standards requiring Occupant Restraint Systems with airbags and seatbelts).

145.    Vehicle manufacturers have a duty to disclose known safety defects to the public and to NHTSA. When a vehicle manufacturer learns of a safety defect, federal law requires it to disclose the defect to NHTSA and to the owners, purchasers, and dealers of the vehicle. 49 U.S.C. § 30118(c). Indeed, GM Parent acknowledges these obligations in its public SEC filings. In its Form 10-K for fiscal year 2019, GM Parent states: "If we or NHTSA determine that either a vehicle or vehicle equipment does not comply with a safety standard or if a vehicle defect creates an unreasonable safety risk, the manufacturer is required to notify owners and provide a remedy."

146.    The interiors of the Class Vehicles also contain prominent labels that alert the driver and passengers to the vehicle's airbag system. For example, steering wheels and passenger dashboards typically have labels identifying the airbag and safety restraint system (or "SRS").

147.    GM was also specifically required by law to include in their vehicles warning labels that alerted consumers of the need to perform airbag maintenance. For example, S4.5.1 of 49 C.F.R. § 571.208 states:

> Air bag maintenance or replacement information. If the vehicle manufacturer recommends periodic maintenance or replacement of an inflatable restraint system, as that term is defined in S4.1.5.1(b) of this standard, installed in a vehicle, that vehicle shall be labeled with the recommended schedule for maintenance or replacement. The schedule shall be specified by month and year, or in terms of vehicle mileage, or by intervals measured from the date appearing on the vehicle certification label provided pursuant to 49 CFR Part 567. The label shall be permanently affixed to the vehicle within the passenger compartment and lettered in English in block capital and numerals not less than three thirty-seconds of an inch high. This label may be combined with the label required by S4.5.1(b) of this standard to appear on the sun visor.

148.    Plaintiffs are unaware of any label in any Class Vehicle that alerted consumers to the SDM Calibration Defect or the need to perform maintenance to protect the SDM from preventing airbag deployment or seatbelt tightening when they are needed.

149.    GM also distributed the Class Vehicles with so-called "Monroney" labels (also known as "window stickers") that described the equipment and safety features of the vehicles, including airbags. Dealers sell Class Vehicles to consumers with these labels visible. An image of a Monroney label for the 2012 Silverado is included below as a representative example. In the center of the image, it features a "Five Star" frontal crash rating for drivers. Under "Safety & Security" features, it touts the "dual stage" airbags.



150.    Monroney labels for many of the Class Vehicles are available at: https://monroneylabels.com. Additional exemplars of Monroney labels from some of the Class Vehicles are attached as Exhibit B. On information and belief, the original printed Monroney labels for the Class Vehicles included the same content as pertains to safety and airbags as the exemplar Monroney labels from monroneylabels.com.

1      151.    As demonstrated by these examples, Monroney labels uniformly assured

2      consumers that the Class Vehicles had working and safe airbags and seatbelts. This information

3      would have suggested to any reasonable consumer that the passenger safety system did not suffer

4      from a defect and would perform its intended function of activating the seatbelts and airbags

5      when needed during a frontal collision.

6                    **2.    GM published owners' manuals for the Class Vehicles that detailed
              their safety features but did not disclose the SDM Calibration Defect.**

7

8      152.    GM (and Old GM before it) published owners' manuals for each of the Class

9      Vehicles, and distributed and made them available throughout the United States. These manuals

10     were directed at consumers and included misleading statements regarding seatbelts, airbags, and

11     passenger safety systems. These statements uniformly omitted any warning to consumers that the

12     SDM could shut off too early during a crash, or that the airbags and seatbelt pretensioners may

13     not deploy when expected.

14     153.    Representative examples of statements from owners' manuals with materially

15     misleading omissions concerning the effectiveness of their airbags follow in the paragraphs

16     below.

17     154.    The manual for the 2002 Cadillac Escalade provides extensive detail about the

18     vehicle's airbags, including the below details and images. In addition to explaining the types of

19     airbags and where they are located, the manual specifically alerts consumers that the airbags "are

20     designed to inflate in moderate to severe frontal or near-frontal crashes" where "the impact speed

21     is above the system's designed 'threshold level.'" As to frontal airbags, it explains that they have

22     been "designed to help reduce the risk of injury from the force of an inflating airbag."

23

24

25

26

27

28

## Supplemental Restraint Systems (SRS)

This part explains the frontal and side impact Supplemental Restraint Systems (SRS) or air bag systems.

Your vehicle has four air bags — a frontal air bag for the driver, another frontal air bag for the right front passenger, a side impact air bag for the driver, and another side impact air bag for the right front passenger.

Frontal air bags are designed to help reduce the risk of injury from the force of an inflating frontal air bag. But these air bags must inflate very quickly to do their job and comply with federal regulations.

### When should an air bag inflate?

The driver's and right front passenger's frontal air bags are designed to inflate in moderate to severe frontal or near-frontal crashes. But they are designed to inflate only if the impact speed is above the system's designed "threshold level."

If your vehicle goes straight into a wall that doesn't move or deform, the threshold level is about 9 to 16 mph (14 to 26 km/h). The threshold level can vary, however, with specific vehicle design, so that it can be somewhat above or below this range.

If your vehicle strikes something that will move or deform, such as a parked car, the threshold level will be higher. The driver's and right front passenger's frontal air bags are not designed to inflate in rollovers, side impacts, or rear impacts, because inflation would not help the occupant.

## How the Air Bag Systems Work

### Where are the air bags?



The driver's frontal air bag is in the middle of the steering wheel.



The right front passenger's frontal air bag is in the instrument panel on the passenger's side.

The driver's side impact air bag is in the side of the driver's seatback closest to the door.





The right front passenger's frontal air bag is in the instrument panel on the passenger's side.

The driver's side impact air bag is in the side of the driver's seatback closest to the door.

The driver's frontal air bag is in the middle of the steering wheel.

**How the Air Bag Systems Work**

Where are the air bags?

### When Should an Airbag Inflate?

Frontal airbags are designed to inflate in moderate to severe frontal or near-frontal crashes to help reduce the potential for severe injuries mainly to the driver's or right front passenger's head and chest. However, they are only designed to inflate if the impact exceeds a predetermined deployment threshold. Deployment thresholds are used to predict how severe a crash is likely to be in time for the airbags to inflate and help restrain the occupants.

Whether the frontal airbags will or should deploy is not based on how fast your vehicle is traveling. It depends largely on what you hit, the direction of the impact, and how quickly your vehicle slows down.

All of the airbags in the vehicle will have the word AIRBAG embossed in the trim or on an attached label near the deployment opening.

For frontal airbags, the word AIRBAG will appear on the middle part of the steering wheel for the driver and on the instrument panel for the right front passenger.

With seat-mounted side impact airbags, the word AIRBAG will appear on the side of the seatback closest to the door.

With roof-rail airbags, the word AIRBAG will appear along the headliner or trim.

Airbags are designed to supplement the protection provided by safety belts. Even though today's airbags are also designed to help reduce the risk of injury from the force of an inflating bag, all airbags must inflate very quickly to do their job.

### Airbag System

The vehicle has the following airbags:

- A frontal airbag for the driver.
- A frontal airbag for the right front passenger.
- A seat-mounted side impact airbag for the driver.
- A seat-mounted side impact airbag for the right front passenger.
- A roof-rail airbag for the driver, passenger seated directly behind the driver, and the third row outboard passenger position.
- A roof-rail airbag for the right front passenger, passenger seated directly behind the right front passenger, and the third row outboard passenger position.

155.    The manuals for the 2009 Chevy Traverse and 2010 Buick Enclave include similar details and images. Like the manual for the 2002 Cadillac Escalade, they also assure consumers that the vehicle's airbags are "designed to help reduce the risk of injury from the force of an inflating bag" and, thus, that the aggressive deployment problems that plagued first-generation airbags had been alleviated. It also assures that the frontal airbags have been "designed to inflate

in moderate to severe frontal crashes to help reduce the potential for severe injuries…." It continues that airbag "deployment thresholds are used to predict how severe a crash is likely to be in time for the airbags to inflate and help restrain the occupants." While it provides very specific detail about the way the passenger safety systems should function, the manual notably fails to say that the deployment thresholds are wholly and intentionally ignored early on into a crash sequence, preventing the airbags and seatbelts from functioning when they need to.

156.    The manual for the 2014 GMC Acadia provides additional detail about how the passenger safety system functions. It explains that "Airbags are designed to inflate if the impact exceeds the specific airbag system's deployment thresholds." Yet again, however, the manual does not indicate that the SDM and its sensors are rendered useless in multi-impact crashes that endure for longer than a specific, aggressive cutoff imposed by GM.





**Where Are the Airbags?**

The driver frontal airbag is in the center of the steering wheel.

The front outboard passenger frontal airbag is in the passenger side instrument panel.

If the vehicle has a front center airbag, it is in the inboard side of the driver seatback.

**When Should an Airbag Inflate?**

This vehicle is equipped with airbags. See *Airbag System* on page 3-23. Airbags are designed to inflate if the impact exceeds the specific airbag system's deployment threshold. Deployment thresholds are used to predict how severe a crash is likely to be in time for the airbags to inflate and help restrain the occupants. The electronic sensors that help the airbag system determine the severity of the impact. Deployment thresholds can vary with specific vehicle design.

Frontal airbags are designed to inflate in moderate to severe frontal crashes to help reduce the potential for severe injuries, mainly to the driver's or front outboard passenger's head and chest.

Whether the frontal airbags will or should inflate is not based primarily on how fast the vehicle is traveling.

It depends on what is hit, the direction of the impact, and how quickly the vehicle slows down.

Frontal airbags may inflate at different crash speeds depending on whether the vehicle hits an object, straight on or at an angle, and whether the object is fixed or moving, rigid or deformable, narrow or wide.

Frontal airbags are not intended to inflate during vehicle rollovers, rear impacts, or many side impacts.

In addition, the vehicle has advanced technology frontal airbags. Advanced technology frontal airbags adjust the restraint according to crash severity.

The front center airbag, if equipped, is designed to inflate in moderate to severe side crashes depending upon the location of the impact, when either side of the vehicle is struck. In addition, the front center airbag is designed to inflate when the sensing system predicts that the vehicle is about to roll over on its

side. The front center airbag is not designed to inflate in frontal impacts, near frontal impacts, or rear impacts.

Seat-mounted side impact airbags are designed to inflate in moderate to severe side crashes depending on the location of the impact.

Seat-mounted side impact airbags are not designed to inflate in frontal impacts, near frontal impacts, rollovers, or rear impacts.

A seat-mounted side impact airbag is designed to inflate on the side of the vehicle that is struck.

Roof-rail airbags are designed to inflate in moderate to severe side crashes depending on the location of the impact. In addition, these roof-rail airbags are designed to inflate during a rollover or in a severe frontal impact. Roof-rail airbags are not designed to inflate in rear impacts. Both roof-rail airbags will inflate when either side of the vehicle is struck, if the sensing

3. **GM marketed the Class Vehicles to be safe and reliable but failed to mention the SDM Calibration Defect.**

157.    Like its other consumer-facing representations, GM's advertisements for the Class Vehicles left out a crucial part of the story. By uniformly omitting any information about the SDM Calibration Defect, GM misled consumers into believing that their airbags and seatbelts would function properly in a crash, despite its knowledge to the contrary.

158.    A 2013 press release about the 2014 Chevy Silverado 1500, GMC Sierra, and Sierra Denali 1500 is further illustrative of GM's misleading statements about the Class Vehicles. Acknowledging that safety is "as important to truck buyers as it is to car buyers," Gay Kent, GM general director of Vehicle Safety and Crashworthiness, stated that the "Silverado and Sierra set a benchmark for pickup truck safety by offering a full array of advanced features designed to protect occupants before, during and after a collision." The press release noted the vehicle's "[s]ix standard air bags and 360-degree sensor system, including dual-stage frontal air bags, head-curtain side-impact air bags with rollover protect, and front outboard seat-mounted side-impact air bags."

159.    Brochures and press releases for other Class Vehicles use similar language to send a misleading message of safety. Illustrative examples are listed below.

a.    Beginning with the 1999 Chevy Blazer, GM promised to go "to the ends of the earth to bring you driving security," assuring "peace of mind" with its "mainstay features such as Next Generation driver and right-front-passenger airbags."

b.    "Because safety and security are so important to your family," the brochure for the 2002 Chevy Astro reads, "Astro features a comprehensive system to help you feel secure while you're driving." Among other safety features, "[s]tandard driver and front-passenger air bags . . . [are] designed to give you peace of mind. Chevy Astro. It's the midsize van that's serious about safety and security."

c.    The brochure for the 2006 GMC Yukon promises, "should the worst happen, your Yukon will protect you and your passengers with front and rear crush zones, a sturdy steel safety cage, up to four air bags and a host of other important safety features."

1          d.      The brochure for the 2008 Buick Enclave explains that "[s]afety and

2   protection were top priorities in the design of the Enclave" and touts the vehicle's "360°

3   perimeter safety system [that] will deploy the appropriate airbags."

4          e.      Promising "[f]eelings of security and confidence," the brochure for the

5   2009 Chevy Equinox states the vehicle's "dual-stage frontal and head-curtain side-impact air

6   bags" helped earn it "the highest possible government rating for frontal crash tests – five stars."

7          f.      Declaring that "[s]afety never goes out of style," the brochure for the 2009

8   Chevy Traverse highlights the vehicle's "five-star frontal and side-impact crash test ratings" and

9   its "six air bags that help protect all three rows of seating."

10          g.      A press release for the 2009 Cadillac Escalade ESV goes further,

11   proclaiming that the "Escalade is designed to be among the industry's safest and most secure

12   vehicles, with numerous safety systems and crash-avoidance technologies."

13          h.      "Speaking of safety," the brochure for the 2010 Buick Enclave reads,

14   "Enclave has earned an impressive five-star crash rating for both front and side impacts . . . .

15   Five-star rating is for the driver and front passenger seating positions in the frontal crash test and

16   for the front and rear seating positions in the side-impact crash test."

17          i.      The brochure for the 2010 GMC Terrain describes the vehicle as "the state

18   of the art in air bags" and contends that "[s]egment-best safety is anticipated, with features that

19   include . . . six standard air bags: dual frontal airbags; head curtain side air bags and pelvic/thorax

20   seat-mounted side airbags."

21          j.      The brochure for the 2010 Silverado assures that the "head of security

22   never goes off the clock," boasting of a "five-star frontal crash test rating," including through its

23   "driver and right-front passenger dual-stage airbags."

24          k.      A press release for the 2011 Cadillac Escalade Hybrid explains, "[f]ront-

25   image airbags for the driver and passenger have been designed to protect the head during a frontal

26   crash."

27          l.      According to the brochure for the 2011 Cadillac SRX, "[p]assenger safety

28   is a primary consideration throughout the engineering process." If an incident occurs, "the SRX

1    looks out for you and yours," with its "six standard airbags, including advanced, frontal dual-

2    stage and seat mounted side-impact airbags for the driver and front-seat passenger, as well as

3    first- and second- row outboard head-curtain airbags."

4              m.    Describing Buick's "holistic[]" approach to safety, the brochure for the

5    2012 Enclave proclaims, "Enclave's approach to safety helps you and your companions feel safe

6    and secure before, during and after your travels." Inside the vehicle, "all rows have curtain side-

7    impact air bags with rollover protection, along with driver and front-passenger side-impact and

8    dual-stage airbags."

9              n.    In a 2013 press release announcing that NHTSA gave "its highest possible

10   5-star Overall Score" to a number of Chevrolet vehicles, including the Traverse and the

11   Silverado, Kent said "We design safety and crashworthiness into our vehicles very early in

12   development." He continued, "We are committed to offering advanced safety technologies on a

13   broad range of models . . . . All of our vehicles are designed to provide continuous protection for

14   customers before, during and after a crash."

15             o.    A press release for the 2013 Buick Enclave likewise publicized Buick's

16   safety record: "In 2012, every Buick model was named a Top Safety Pick by the Insurance

17   Institute for Highway Safety, underscoring the brand's commitment to safety leadership. The

18   2013 builds on that distinction with the industry's first front center side air bag – a standard

19   feature."

20             p.    "With head curtain side-impact air bags reaching from the front to the third

21   row of seating for outboard passengers," the 2014 brochure for the GMC Yukon XL reads,

22   "Yukon is engineered to help protect passengers regardless of where they're seated."

23             q.    Claiming to "set[] the standard . . . in everything from safety to

24   performance," the brochure for the 2014 Cadillac Escalade touts the vehicle's "eight standard

25   airbags," including "[d]ual-stage driver and front passenger, front-impact, Automatic Occupant

26   Sensing System, driver and front passenger seat-mounted side-impact airbags for thorax and

27   pelvic protection and head-curtain side-impact airbags with rollover protection for all outboard

28   passenger rows."

r.    The brochure for the 2014 Buick Enclave promises that the vehicle has "your back, front and sides, proclaiming that "in an industry first, the standard driver's seat side-mounted front center air bag adds another layer of protection by providing cushioning between you and your front passenger to help reduce injuries in side impacts." The brochure includes the below picture, indicating that the airbags will function as expected.



160.    Based on information and belief, every single Class Vehicle advertisement omitted any mention that the vehicles' airbags and seatbelts could fail in a serious frontal collision due to the SDM Calibration Defect.

### 4.    GM provided warranties to repair defects in the Class Vehicles and have not done so.

161.    Plaintiffs and each Class member have had sufficient direct dealings with either Defendants or their agents (including dealerships) to establish privity of contract between Defendants, on the one hand, and Plaintiffs and each Class member, on the other hand, as to the implied warranties described in the Claims for Relief below.

162.    Nonetheless, privity is not required here because Plaintiffs and each Class member are intended third-party beneficiaries of contracts between Defendants and their dealers, and of their implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit consumers only. Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities due to the safety defect in the SDM Calibration.

1                                                * * *

2          163.    GM's deceptive actions harmed Plaintiffs and the Class. As a result of GM's

3    unfair, deceptive, and/or fraudulent business practices, and failure to disclose that the Class

4    Vehicles carried a dangerous safety defect that would cause the passenger safety systems to shut

5    off during certain types of accidents, owners and lessees of the Class Vehicles have lost money

6    and/or property.

7    V.      **CLASS ACTION ALLEGATIONS**

8          164.    This case is about GM's legal responsibility for its knowledge, conduct, and

9    products. The proposed Class members' claims all derive directly from a single course of conduct

10   by GM. The objective facts are the same for all Class members. Within each Count asserted by

11   Plaintiffs on behalf of themselves and the proposed Class, the same legal standards govern.

12         165.    Accordingly, Plaintiffs bring this lawsuit as a class action on their own behalf, and

13   on behalf of all other persons similarly situated, as members of the proposed Class pursuant to

14   Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3), and/or (c)(4). This action satisfies

15   the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements

16   of those provisions. Certification of Plaintiffs' claims for class-wide treatment is appropriate

17   because Plaintiffs can prove the elements of the claims on a class-wide basis using the same

18   evidence as would be used in individual actions alleging the same claims.

19         A.      **The Class Definition**

20         166.    The "Class Vehicles" herein include all vehicles in the United States that contain

21   the SDM Calibration Defect that were (1) manufactured, sold, distributed, or leased by

22   Defendants or (2) manufactured, sold, distributed, or leased by Old GM and purchased or leased

23   by Plaintiffs or a Class member after July 10, 2009.

24         167.    The SDM Calibration Defect exists in all GM trucks and SUVs starting with

25   model year 1999. This would include, for example, trucks and SUVs such as the Silverado,

26   Tahoe, Astro, and Trailblazer. The information presently available to Plaintiffs shows that, after it

27   was introduced in or about 1999, GM continued to implement its defective cutoff strategy in

28   software used in GM SUVs through model year 2018. Discovery will reveal when, if ever, GM

1   discontinued use of the SDM Calibration Defect in its trucks and SUVs. This information is

2   uniquely in the Defendants' hands, as only GM (and Delco, n/k/a Aptiv) possess the software

3   calibration files for GM vehicles that will demonstrate the presence of the defect in the software;

4   these files are not downloadable or otherwise accessible from the vehicles themselves, meaning

5   Plaintiffs are unable to obtain those files on their own.

6           168.    The proposed Class includes all persons and entities that purchased or leased a

7   Class Vehicle in the state of California.

8           169.    Excluded from the Class are:

9                   a.      Defendants' officers, directors and employees; Defendants' affiliates and

10  affiliates' officers, directors, and employees; Defendants' distributors and distributors' officers,

11  directors, and employees; and

12                  b.      Judicial officers and their immediate family members and associated court

13  staff assigned to this case.

14          170.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because

15  Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as

16  would be used in individual actions alleging the same claims.

17          171.    Plaintiffs reserve the right to amend the Class definitions if discovery and further

18  investigation reveal that any Class should be expanded, reduced, divided into additional

19  subclasses under Rule 23(c)(5), or otherwise modified.

20      **B.    Numerosity: Federal Rule of Civil Procedure 23(a)(1)**

21          172.    The members of the Class are so numerous and geographically dispersed that

22  individual joinder of all Class members is impracticable. There are millions of Class Vehicles

23  nationwide, a significant number of which are in the state of California. The precise number and

24  identities of the California Class members may be ascertained from Defendants' records and

25  motor vehicle regulatory data. Class members may be notified of the pendency of this action by

26  recognized, Court-approved notice dissemination methods.

27

28

**C.**   **Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**

173.   This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These include, without limitation, the following:

a.   Whether the Class Vehicles' SDM software calibration is defective, as described herein;

b.   Whether Defendants knew, or should have known, about the SDM Calibration Defect, and, if so, how long they have or should have known about it;

c.   Whether Defendants had a duty to disclose the defective nature of the Class Vehicles to Plaintiffs and Class members;

d.   Whether Defendants' concealment of the SDM Calibration Defect caused Plaintiffs and Class members to act to their detriment by purchasing or leasing the Class Vehicles;

e.   Whether Defendants' certifications concerning vehicle safety were misleading considering the risk that the SDMs will not trigger airbags and seatbelts during certain types of collisions;

f.   Whether Defendants' conduct tolls any or all applicable limitations periods by acts of fraudulent concealment, application of the discovery rule, or equitable estoppel;

g.   Whether Defendants misrepresented that the Class Vehicles were safe;

h.   Whether Defendants concealed the SDM Calibration Defect;

i.   Whether Defendants' statements, concealments, and omissions regarding the Class Vehicles were material, in that a reasonable consumer could consider them important in purchasing, leasing, selling, maintaining, or operating such vehicles;

j.   Whether Defendants engaged in unfair, deceptive, unlawful, and/or fraudulent acts or practices, in trade or commerce, by failing to disclose that the Class Vehicles were designed, manufactured, sold, and leased with defective airbag components;

k.   Whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

- 64 -

1            l.     Whether Defendants' concealment of the true defective nature of the Class

2 Vehicles caused their market price to incorporate a premium reflecting the assumption by

3 consumers that the Class Vehicles were equipped with fully functional passenger safety systems

4 and, if so, the market value of that premium; and

5            m.     Whether Plaintiffs and the other Class members are entitled to damages

6 and other monetary relief and, if so, in what amount.

7       **D.**     **Typicality: Federal Rule of Civil Procedure 23(a)(3)**

8       174.     Plaintiffs' claims are typical of the claims of Class members whom they seek to

9 represent under Fed. R. Civ. P. 23(a)(3), because Plaintiffs and each Class member purchased or

10 leased a Class Vehicle and were comparably injured through Defendants' wrongful conduct as

11 described above. Plaintiffs and the other Class members suffered damages as a direct proximate

12 result of the same wrongful practices by Defendants. Plaintiffs' claims arise from the same

13 practices and courses of conduct that give rise to the claims of the other Class members.

14 Plaintiffs' claims are based upon the same legal theories as the claims of the other Class

15 members.

16       **E.**     **Adequacy: Federal Rule of Civil Procedure 23(a)(4)**

17       175.     Plaintiffs will fairly and adequately represent and protect the interests of the Class

18 members as required by Fed. R. Civ. P. 23(a)(4). Plaintiffs' interests do not conflict with the

19 interests of the Class members. Plaintiffs have retained counsel competent and experienced in

20 complex class action litigation, including automobile defect litigation and other consumer

21 protection litigation. Plaintiffs intend to prosecute this action vigorously. Neither Plaintiffs nor

22 their counsel have interests that conflict with the interests of the other Class members. Therefore,

23 the interests of the Class members will be fairly and adequately protected.

24       **F.**     **Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2)**

25       176.     Defendants have acted or refused to act on grounds generally applicable to

26 Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief

27 and declaratory relief, as described below, with respect to the Class as a whole.

28

### G.   Superiority: Federal Rule of Civil Procedure 23(b)(3)

177.   A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in its management. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants such that it would be impracticable for members of the Class to individually seek redress for Defendants' wrongful conduct.

178.   Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.   ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED

179.   Defendants have known of the SDM Calibration Defect since at least 2009, when GM learned, through books, records, and personnel, that Old GM had launched the defective calibration strategy despite clear warnings of the risk of doing so, and then continued to use that defective software strategy thereafter. They obtained further knowledge of the risks of the SDM Calibration Defect from lawsuits and multiple suspicious accidents (involving airbag and seatbelt failures in frontal accidents) occurring in practically every year since, which provided additional and confirmatory notice of the continued risks of the SDM Calibration Defect.

180.   GM had a duty to disclose the SDM Calibration Defect to consumers and NHTSA. Instead, GM knowingly, affirmatively, and actively concealed the defect from regulators and consumers by continuing to distribute, sell, and/or lease the Class Vehicles to Plaintiffs and the Class members; to advertise the safety of the Class Vehicles; and to fail to notify regulators or Plaintiffs and the Class members about the true nature of the Class Vehicles.

181.   As of the date of this Complaint, GM still has not disclosed, and continues to conceal, that the Class Vehicles are defective, that the SDM Calibration Defect could prevent the airbags and seatbelts from activating during certain kinds of frontal collisions, and that these

1    Class Vehicles' safety systems may fail them in life-threatening collisions. Despite its knowledge

2    of the SDM Calibration Defect and its attendant safety risks, GM continues to market the Class

3    Vehicles based on superior safety and reliability while omitting the disclosure safety and

4    reliability risks associated with the SDM Calibration Defect.

5        182.    Plaintiffs and members of the proposed Class could not have discovered through

6    the exercise of reasonable diligence that GM was concealing the SDM Calibration Defect in their

7    vehicles and misrepresenting the defective nature of the Class Vehicles.

8        183.    With respect to Class Vehicles that have not experienced airbags or seatbelt

9    failure, Plaintiffs and other Class members did not discover, could not reasonably have

10   discovered, and had no reason to suspect that their Class Vehicles are defective, that GM

11   calibrated the software program that controls the SDM to prematurely cutoff airbag and seatbelt

12   deployment after a crash has begun, that—in affirmatively blocking these critical safety features

13   too early—GM significantly and unnecessarily increased the risk of injury and death in frontal

14   crashes, that the safety of their Class Vehicles is impaired by this defect such that the Class

15   Vehicles' safety system may fail them in potentially deadly collisions, or that, as a result of the

16   foregoing, they overpaid for their vehicles, and/or the value of their vehicles is diminished.

17       184.    With respect to Class Vehicles that have experienced airbag and/or seatbelt failure

18   prior to the filing of this Complaint, Class members did not discover and could not reasonably

19   have discovered that such failure was due to a defect known to GM through a dangerous and

20   defective approach to SDM software calibration.

21       185.    Plaintiffs and other Class members did not discover, and did not know of, facts

22   that would have caused a reasonable person to suspect that GM did not report this material

23   information within their knowledge to consumers, dealerships, or relevant authorities; nor would

24   a reasonable and diligent investigation have disclosed that GM was aware of the defective nature

25   of the SDM software calibration and the Class Vehicles in which it was incorporated.

26       186.    Due to the highly technical nature of the SDM Calibration Defect, Plaintiffs and

27   Class members were unable to independently discover it using reasonable diligence. Absent

28   counsel and third-party consultants with relevant expertise, Plaintiffs and Class members lack the

1   necessary expertise to analyze the software algorithm for the SDMs, or vehicle safety system

2   performance in an accident, and to understand its defective nature. GM has not issued a recall or

3   issued other similar public statements about the SDM Calibration Defect, and Plaintiffs first

4   learned of the defective nature of the SDM software calibration in their vehicles, and of GM's

5   scheme to design and sell vehicles with defective SDM software calibrations, only in connection

6   with retaining counsel and filing this lawsuit in 2021 (for Plaintiff Vargas and Milstead). Plaintiff

7   Ray learned of the SDM Calibration Defect in connection with retention of counsel in late 2020,

8   and was also aware of the pendency of this putative class action before filing his claims.

9        187.   For the foregoing reasons, GM is estopped from relying on any statutes of

10   limitation or repose as a defense in this action. All applicable statutes of limitation and repose

11   have been tolled by operation of the discovery rule and by GM's fraudulent concealment with

12   respect to all claims against GM.

## VII.   <u>CAUSES OF ACTION</u>

**COUNT I:**
**FRAUD BY CONCEALMENT**
**(Common Law)**

17        188.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set

18   forth herein.

19        189.   Plaintiffs bring this claim against all Defendants on behalf of themselves and the

20   California State Class under the common law of fraudulent concealment.

21        190.   Defendants are liable for both fraudulent concealment and non-disclosure. *See,*

22   *e.g.,* Restatement (Second) of Torts §§ 550-51 (1977).

23        191.   Defendants intentionally and knowingly concealed and suppressed material facts

24   from regulators and consumers regarding the SDM Calibration Defect that causes the airbags and

25   seatbelts to fail in prolonged onset, complex, or otherwise multi-impact accidents, causing a

26   serious risk of injury or death.

27        192.   A reasonable consumer would not have expected that the Class Vehicles contained

28   a software program that was calibrated to prevent seatbelt tightening and airbag deployment

1  during certain types of frontal crashes that are otherwise severe enough to require them.

2  Defendants knew that reasonable consumers expect that their vehicle has working airbags and

3  seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or

4  retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and

5  whether that manufacturer stands behind its products, are material concerns to a consumer.

6      193.    Defendants ensured that Plaintiffs and the Class did not discover this information

7  by actively concealing and misrepresenting the true nature of the Class Vehicles' safety systems.

8  Defendants intended for Plaintiffs and the Class to rely on their omissions—which they did by

9  purchasing and leasing the Class Vehicles at the prices they paid.

10     194.    Defendants had a duty to disclose the SDM Calibration Defect because:

11         a.    GM had exclusive and/or far superior knowledge and access to the facts

12  about this hidden and complex safety defect. Defendants also knew that these technical facts were

13  not known to or reasonably discoverable by Plaintiffs and the Class; GM knew the SDM

14  Calibration Defect (and its safety risks) was a material fact that would affect Plaintiffs' or Class

15  members' decisions to buy or lease Class Vehicles; GM is subject to statutory duties to disclose

16  known safety defects to consumers and to NHTSA; GM's actions to avoid investigations and a

17  recall due to the defect deprived consumers of an opportunity in which they could have learned

18  about it; and GM made incomplete representations about the safety and reliability of the Class

19  Vehicles and their passenger safety systems, while purposefully withholding material facts about

20  a known safety defect. In uniform advertising and materials provided with each Class Vehicle,

21  Defendants intentionally concealed, suppressed, and failed to disclose to Plaintiffs and the Class

22  that the Class Vehicles contained the dangerous SDM Calibration Defect. Because they

23  volunteered to provide information about the Class Vehicles that they offered for sale to Plaintiffs

24  and the Class, Defendants had the duty to disclose the whole truth. They did not.

25     195.    To this day, Defendants have not made full and adequate disclosure and continue

26  to conceal material information regarding the SDM Calibration Defect. The omitted and

27  concealed facts were material because a reasonable person would find them important in

28

1    purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact

2    the value of the Class Vehicles purchased or leased by Plaintiffs and the Class.

3        196.    Defendants actively concealed or suppressed these material facts, in whole or in

4    part, to maintain a market for their vehicles, to protect profits, and to avoid costly recalls that

5    would hurt the GM brand's image. They did so at the expense of Plaintiffs and the Class. Had

6    they been aware of the SDM Calibration Defect in the Class Vehicles, and Defendants' callous

7    disregard for safety, Plaintiffs and the Class either would not have paid as much as they did for

8    their Class Vehicles, or they would not have purchased or leased them.

9        197.    Accordingly, Defendants are liable to Plaintiffs and the Class for their damages in

10   an amount to be proven at trial, including, but not limited to, their lost overpayment for the Class

11   Vehicles at the time of purchase or lease.

12       198.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to

13   defraud; in reckless disregard of Plaintiffs' and the Class' rights and well-being; and to enrich

14   themselves. Their misconduct warrants an assessment of punitive damages in an amount

15   sufficient to deter such conduct in the future, which amount shall be determined according to

16   proof at trial.

17                          **COUNT II:**
                       **UNJUST ENRICHMENT**
18                         **(Common Law)**

19       199.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set

20   forth herein.

21       200.    Plaintiffs Richard Vargas and Arthur Ray assert this Unjust Enrichment count on

22   behalf of themselves and the California State Class.

23       201.    By reason of their conduct, Defendants caused damages to Plaintiffs and Class

24   members. Plaintiffs and Class members conferred a benefit on the Defendants by overpaying for

25   Class Vehicles at prices that were artificially inflated by Defendants' concealment of the SDM

26   Calibration Defect and misrepresentations regarding the Class Vehicles' safety.

27

28

1    202.    As a result of Defendants' fraud and deception, Plaintiffs and Class members were

2    not aware of the true facts concerning the Class Vehicles and did not benefit from the

3    Defendants' misconduct.

4    203.    Defendants knowingly benefitted from their unjust conduct. They sold and leased

5    Class Vehicles equipped with the SDM Calibration Defect for more than what the vehicles were

6    worth, at the expense of Plaintiffs and Class members.

7    204.    Defendants readily accepted and retained these benefits from Plaintiffs and Class

8    members.

9    205.    It is inequitable and unconscionable for Defendants to retain these benefits because

10   they misrepresented that the Class Vehicles were safe, and intentionally concealed, suppressed,

11   and failed to disclose the SDM Calibration Defect to consumers. Plaintiffs and Class members

12   would not have purchased or leased the Class Vehicles or would have paid less for them, had

13   Defendants not concealed the SDM Calibration Defect.

14   206.    Plaintiffs and Class members do not have an adequate remedy at law.

15   207.    Equity cannot in good conscience permit the Defendants to retain the benefits that

16   they derived from Plaintiffs and Class members through unjust and unlawful acts, and therefore

17   restitution or disgorgement of the amount of the Defendants' unjust enrichment is necessary.

18
                                **COUNT III:**
19              **Violation of California Consumers Legal Remedies Act**
                          **Cal. Civ. Code § 1750, *et seq.***
20

21   208.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though

22   fully set forth herein.

23   209.    Plaintiffs bring this claim on behalf of themselves and the California State Class

24   against the Defendants.

25   210.    Plaintiffs and California State Class members are "consumers" within the meaning

26   of Cal. Civ. Code § 1761(d).

27   211.    Defendants, the California Plaintiffs, and California State Class members are

28   "persons" within the meaning of Cal. Civ. Code § 1761(c).

2820476.3                          - 71 -              THIRD AMENDED CLASS ACTION COMPLAINT
                                                              4:21-CV-06338-JST

1        212.    The Class Vehicles are "goods" within the meaning of Cal. Civ. Code § 1761(a).

2        213.    The California Legal Remedies Act ("CLRA") prohibits "unfair methods of

3 competition and unfair or deceptive acts or practices undertaken by any person in a transaction

4 intended to result or that results in the sale or lease of goods or services to any consumer[.]" Cal.

5 Civ. Code § 1770.

6        214.    Defendants engaged in unfair or deceptive acts or practices when, in the course of

7 their business they, among other acts and practices, intentionally and knowingly made materially

8 false representations regarding the reliability, safety, and performance of the Class Vehicles

9 and/or the defective SDM software calibration, as detailed above.

10       215.    Specifically, by misrepresenting the Class Vehicles as safe and/or free from

11 defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class

12 Vehicles, Defendants engaged in one or more of the following unfair or deceptive business

13 practices as defined in Cal. Civ. Code § 1770(a):

14        a.   Representing that the Class Vehicles have characteristics, uses, benefits, and qualities

15            which they do not have.

16        b.   Representing that the Class Vehicles are of a particular standard, quality, and grade

17            when they are not.

18        c.   Advertising the Class Vehicles and/or with the intent not to sell or lease them as

19            advertised.

20        d.   Representing that the subject of a transaction has been supplied in accordance with a

21            previous representation when it has not.

22       Cal. Civ. Code §§ 1770(a)(5), (7), (9), and (16).

23       216.    Additionally, in the various channels of information through which Defendants

24 sold and marketed Class Vehicles, Defendants failed to disclose material information concerning

25 the Class Vehicles, which they had a duty to disclose. Defendants had a duty to disclose the

26 defect because, as detailed above: (a) Defendants knew about the defect in the SDM software

27 calibration in the Class Vehicles; (b) Defendants had exclusive knowledge of material facts not

28 known to the general public or the other California State Class members; (c) Defendants actively

1   concealed material facts concerning the software calibration from the general public and Plaintiffs

2   and California State Class members; and (d) Defendants made partial representations about the

3   Class Vehicles that were misleading because they did not disclose the full truth.

4        217.   Defendants' unfair or deceptive acts or practices, including their

5   misrepresentations, concealments, omissions, and/or suppressions of material facts, had a

6   tendency or capacity to mislead and create a false impression in consumers, and were likely to

7   and did in fact deceive reasonable consumers, including Plaintiffs and California State Class

8   members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles,

9   and the true value of the Class Vehicles.

10        218.   Plaintiffs and the other California State Class members have suffered injury in fact

11   and actual damages resulting from Defendants' material omissions.

12        219.   Defendants' violations present a continuing risk to Plaintiffs and California State

13   Class members, as well as to the general public, and therefore affect the public interest.

14        220.   Defendants are on notice of the issues raised in this count and this Complaint by

15   way of, among other things, the individual personal injury litigation and hundreds of public

16   consumer complaints detailed above, as well as their own intrinsic knowledge of defect they have

17   included in the Class Vehicles by design. Plaintiffs also sent a notice letter to Defendants in

18   accordance with Cal. Civ. Code § 1782(a) of the CLRA, notifying Defendants of their alleged

19   violations of Cal. Civ. Code § 1770(a) and demanding that Defendants correct or agree to correct

20   the actions described therein within thirty (30) days of the notice letter. Defendants did not

21   correct or agree to correct their actions within thirty days, and Plaintiffs therefore seek

22   compensatory and monetary damages to which Plaintiffs and California Class Members are

23   entitled under the CLRA.

24        221.   Attached hereto as Exhibit C is the venue affidavit required by CLRA, Cal. Civ.

25   Code § 1780(d).

26

27

28

                                                 THIRD AMENDED CLASS ACTION COMPLAINT
4:21-CV-06338-JST

**COUNT IV:**
**Violations of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq.***

222.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

223.    Plaintiffs bring this claim on behalf of themselves and the California State Class against the Defendants.

224.    The California Unfair Competition Law ("UCL"), Cal. Bus. and Prof. Code § 17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."

225.    Defendants' knowing and intentional conduct described in this Complaint constitutes unlawful, fraudulent, and unfair business acts and practices in violation of the UCL. Specifically, Defendants' conduct is unlawful, fraudulent, and unfair in at least the following ways:

a.    by knowingly and intentionally concealing from Plaintiffs and California State Class members that the Class Vehicles suffer from the SDM Calibration Defect while obtaining money from the California State Class members;

b.    by marketing Class Vehicles as possessing a functional, safe, and defect-free passenger safety system;

c.    by purposefully designing and manufacturing the Class Vehicles to contain a defective SDM software calibration that causes airbags and seatbelts to fail in certain accidents contrary to what was disclosed to regulators and represented to consumers who purchased or leased Class Vehicles, and failing to fix the SDM Calibration Defect free of charge; and

d.    by violating the other California laws alleged herein, including the False Advertising Law, Consumers Legal Remedies Act, California Commercial Code, and Song-Beverly Consumer Warranty Act.

226.    Defendants' misrepresentations, omissions, and concealment were material to the California Plaintiffs and California State Class members, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that consumers would rely on the misrepresentations, concealment, and omissions.

1   227.  Defendants' material misrepresentations and omissions alleged herein caused

2 Plaintiffs and the California State Class members to make their purchases or leases of their Class

3 Vehicles. Absent those misrepresentations and omissions, Plaintiffs and California State Class

4 members would not have purchased or leased these vehicles or would not have purchased or

5 leased these Class Vehicles at the prices they paid.

6   228.  Accordingly, Plaintiffs and California State Class members have suffered

7 ascertainable loss and actual damages as a direct and proximate result of Defendants'

8 misrepresentations and their concealment of and failure to disclose material information.

9   229.  Defendants' violations present a continuing risk to Plaintiffs and California State

10 Class members, as well as to the general public. Defendants' unlawful acts and practices

11 complained of herein affect the public interest.

12   230.  Plaintiffs request that this Court enter an order enjoining Defendants from

13 continuing their unfair, unlawful, and/or deceptive practices and restoring to members of the

14 California State Class any money Defendants acquired by unfair competition, including

15 restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and

16 Cal. Bus. & Prof. Code § 3345, and for such other relief set forth below.

17<br>18

**COUNT V:**
**Violations of the California False Advertising Law**
**Cal. Bus. & Prof. Code § 17500, *et seq.***

19   231.  Plaintiffs re-allege and incorporate by reference all preceding allegations as though

20 fully set forth herein.

21   232.  Plaintiffs bring this claim on behalf of themselves and the California State Class

22 against the Defendants.

23   233.  The California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500,

24 prohibits false advertising.

25   234.  Defendants, Plaintiffs, and California State Class members are "persons" within

26 the meaning of Cal. Bus. & Prof. Code § 17506.

27   235.  Defendants violated the FAL by causing to be made or disseminated through

28 California and the United States, through advertising, marketing and other publications,

1    statements regarding the safety of the Class Vehicles that were untrue or misleading, and which

2    were known, or which by the exercise of reasonable care should have been known to Defendants,

3    to be untrue and misleading to consumers, including California State Class members. Numerous

4    examples of these statements and advertisements appear in the preceding paragraphs throughout

5    this Complaint and in Exhibit B.

6        236.    The misrepresentations and omissions regarding the reliability and safety of Class

7    Vehicles as set forth in this Complaint were material and had a tendency or capacity to mislead

8    and create a false impression in consumers, and were likely to and did in fact deceive reasonable

9    consumers, including Plaintiffs and California State Class members, about the true safety and

10   reliability of Class Vehicles, the quality of the Defendants' brands, and the true value of the Class

11   Vehicles.

12       237.    In purchasing or leasing their Class Vehicles, the California State Class members

13   relied on the misrepresentations and/or omissions of Defendants with respect to the safety and

14   reliability of the Class Vehicles. Defendants' representations turned out not to be true because the

15   Class Vehicles are distributed with a dangerous safety defect, rendering the vehicles' airbags and

16   seatbelts inoperative in certain types of accidents.

17       238.    Plaintiffs and the other California State Class members have suffered an injury in

18   fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or

19   deceptive practices. Had they known the truth, Plaintiffs and California State Class members

20   would not have purchased or leased the Class Vehicles or would have paid significantly less for

21   them.

22       239.    Plaintiffs and California State Class members had no way of discerning that

23   Defendants' representations were false and misleading, or otherwise learning the facts that

24   Defendants had concealed or failed to disclose. Plaintiffs and California State Class members did

25   not, and could not, unravel Defendants' deception on their own.

26       240.    Defendants had an ongoing duty to Plaintiffs and California State Class members

27   to refrain from unfair or deceptive practices under the California False Advertising Law in the

28   course of their business. Specifically, the Defendants owed Plaintiffs and California State Class

1    members a duty to disclose all the material facts concerning the SDM Calibration Defect in the

2    Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the

3    defect from Plaintiffs and California State Class members, and/or they made misrepresentations

4    that were misleading because they were contradicted by withheld facts.

5        241.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the

6    conduct of Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized

7    course of conduct that is still perpetuated and repeated, both in the State of California and

8    nationwide.

9        242.    Defendants' violations present a continuing risk to Plaintiffs and California State

10   Class members, as well as to the general public. Defendants' unlawful acts and practices

11   complained of herein affect the public interest.

12       243.    Plaintiffs request that this Court enter an order enjoining Defendants from

13   continuing their unfair, unlawful, and/or deceptive practices and restoring to the California State

14   Class any money Defendants acquired by unfair competition, including restitution and/or

15   restitutionary disgorgement, and for such other relief set forth below.

**COUNT VI:**
**Breach of Implied Warranty of Merchantability**
**Cal. Com. Code §§ 2314 and 10212**

18       244.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though

19   fully set forth herein.

20       245.    Plaintiffs bring this claim on behalf of themselves and the California State Class

21   against the Defendants.

22       246.    Defendants are and were at all relevant times "merchant[s]" with respect to motor

23   vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and "sellers" of motor vehicles under

24   § 2103(1)(d).

25       247.    With respect to leases, Defendants are and were at all relevant times "lessors" of

26   motor vehicles under Cal. Com. Code § 10103(a)(16).

27       248.    All California State Class members who purchased Class Vehicles in California

28   are "buyers" within the meaning of Cal. Com. Code § 2103(1)(a).

2820476.3                          - 77 -              THIRD AMENDED CLASS ACTION COMPLAINT
                                                                  4:21-CV-06338-JST

1    249.    All California State Class members who leased Class Vehicles in the California

2    are "lessees" within the meaning of Cal. Com. Code § 10103(a)(14).

3    250.    The Class Vehicles are and were at all relevant times "goods" within the meaning

4    of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

5    251.    A warranty that the Class Vehicles were in merchantable condition and fit for the

6    ordinary purpose for which vehicles are used is implied by law pursuant to Cal. Com. Code

7    §§ 2314 and 10212.

8    252.    The Class Vehicles did not comply with the implied warranty of merchantability

9    because, at the time of sale and at all times thereafter, they were defective and not in

10    merchantable condition, would not pass without objection in the trade, and were not fit for the

11    ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the

12    SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an

13    accident, rendering the Class Vehicles inherently defective and dangerous.

14    253.    Defendants were on reasonable notice of these issues and an opportunity to cure

15    the breaches due to their extensive knowledge of the SDM Calibration Defect, as detailed herein.

16    Defendants have not cured the breaches of their warranties despite years of knowledge of those

17    breaches.

18    254.    As a direct and proximate result of Defendants' breach of the implied warranty of

19    merchantability, Plaintiffs and California State Class members have been damaged in an amount

20    to be proven at trial.

21                                              **COUNT VII:**
                            **Violation of Song-Beverly Consumer Warranty Act,**
22                                      **Breach of Implied Warranty**
                                      **Cal Civ. Code § 1790,** *et seq.*
23

24    255.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though

25    fully set forth herein.

26    256.    Plaintiffs bring this claim on behalf of themselves and the California State Class

27    against the Defendants.

28

2820476.3                                          - 78 -                    THIRD AMENDED CLASS ACTION COMPLAINT
                                                                                    4:21-CV-06338-JST

1    257.    All California State Class members who purchased Class Vehicles in California

2    are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

3    258.    All California State Class members who leased Class Vehicles in California are

4    "lessors" within the meaning of Cal. Civ. Code § 1791(h).

5    259.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code

6    § 1791(a).

7    260.    Defendants are the "manufacturer[s]" of the Class Vehicles within the meaning of

8    Cal. Civ. Code § 1791(j).

9    261.    Defendants impliedly warranted to Plaintiffs and the other members of the

10    California State Class that the Class Vehicles were "merchantable" within the meaning of Cal.

11    Civ. Code §§ 1791.1(a) & 1792; however, the Class Vehicles do not have the quality that a buyer

12    would reasonably expect.

13    262.    The Class Vehicles would not pass without objection in the automotive trade due

14    to the SDM Calibration Defect. Because the Class Vehicles contain defective SDMs, the Class

15    Vehicles are not in merchantable condition and thus not fit for ordinary purposes.

16    263.    The Class Vehicles are not adequately labeled because the labeling fails to disclose

17    the SDM Calibration Defect. The Class Vehicles do not conform to the promises and affirmations

18    made by the Defendants regarding safety.

19    264.    The Defendants' breach of the implied warranty of merchantability caused damage

20    to Plaintiff Vargas and California State Class members who purchased or leased the defective

21    Class Vehicles. The amount of damages due will be proven at trial.

22    265.    Pursuant to Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiffs and California State

23    Class members seek an order enjoining Defendants' unfair and/or deceptive acts or practices,

24    damages, punitive damages, and any other just and proper relief available under the Song-Beverly

25    Consumer Warranty Act.

26    **VIII.    PRAYER FOR RELIEF**

27    Plaintiffs, on behalf of themselves and all others similarly situated, request for the Court

28    to enter judgment against the Defendants, as follows:

1          a.        An order certifying the proposed Class, designating Plaintiffs as the named

2   representatives of the Class, designating the undersigned as Class Counsel, and making such

3   further orders for the protection of Class members as the Court deems appropriate, under Fed. R.

4   Civ. P. 23;

5          b.        An order enjoining the Defendants to desist from further deceptive

6   distribution, sales, and lease practices with respect to the Class Vehicles and such other injunctive

7   relief that the Court deems just and proper;

8          c.        An award to Plaintiffs and Class Members of compensatory, exemplary,

9   and punitive remedies and damages and statutory penalties, including interest, in an amount to be

10  proven at trial;

11         d.        A declaration that Defendants are financially responsible for all Class

12  notice and the administration of Class relief;

13         e.        Costs, restitution, and compensatory damages for economic loss and out-

14  of-pocket costs, multiple damages under applicable states' laws; punitive and exemplary damages

15  under applicable law; and disgorgement, in an amount to be determined at trial;

16         f.        Any applicable statutory and civil penalties;

17         g.        An award of costs and attorneys' fees, as allowed by law;

18         h.        An order requiring Defendants to pay both pre- and post-judgment interest

19  on any amounts awarded.

20         i.        Leave to amend this Complaint to conform to the evidence produced at

21  trial; and

22         j.        Such other or further relief as the Court may deem appropriate, just, and

23  equitable under the circumstances.

24  **IX.    DEMAND FOR JURY TRIAL**

25         Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any

26  and all issues in this action triable by a jury.

27

28

Dated: July 27, 2023

Respectfully Submitted,

By: /s/ David S. Stellings

David S. Stellings (*pro hac vice*)
Katherine I. McBride (*pro hac vice*)
Jessica A. Moldovan (*pro hac vice*)
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: 212.355.9500
Facsimile: 212.355.9592
dstellings@lchb.com
kmcbride@lchb.com
jmoldovan@lchb.com

Richard Heimann (CA Bar # 063607)
Nimish R. Desai (CA Bar # 244953)
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
275 Battery St., 29th Fl.
San Francisco, CA 94111-3339
Telephone: 415-956-1000
Facsimile: 415-956-1008
rheimann@lchb.com
ndesai@lchb.com

Roland Tellis (CA Bar #186269)
David Fernandes (CA Bar #280944)
Adam Tamburelli (CA Bar #301902)
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-2333
Facsimile: (818)-986-9698
rtellis@baronbudd.com
dfernandes@baronbudd.com
atamburelli@baronbudd.com

Christopher A. Seeger (*pro hac vice*)
Christopher L. Ayers (*pro hac vice*)
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
Facsimile: (973) 639-9393
cseeger@seegerweiss.com
cayers@seegerweiss.com

1

2    Shauna Itri (*pro hac vice*)
     **SEEGER WEISS LLP**
3    1515 Market Street, Suite 1380
     Philadelphia, PA 19102
4    Telephone: (215) 564-2300
     Facsimile: (215) 851-8029
5    sitri@seegerweiss.com

6
     W. Daniel "Dee" Miles, III (*pro hac vice*)
7    H. Clay Barnett, III (*pro hac vice*)
     J. Mitch Williams (*pro hac vice*)
8    Rebecca D. Gilliland (*pro hac vice*)
     Dylan T. Martin (*pro hac vice*)
9    **BEASLEY, ALLEN, CROW,**
     **METHVIN, PORTIS & MILES, P.C.**
10   272 Commerce Street
11   Montgomery, AL 36104
     Telephone: (334) 269-2343
12   Dee.Miles@beasleyallen.com
     Clay.Barnett@beasleyallen.com
13   Mitch.Williams@beasleyallen.com
     Rebecca.Gilliland@beasleyallen.com
14   Dylan.Martin@beasleyallen.com

15
     David M. Birka-White  (CA Bar # 85721)
16   **BIRKA-WHITE LAW OFFICES**
17   178 E. Prospect Avenue
     Danville, CA 94526
18   Telephone: (925) 362-9999
     dbw@birka-white.com
19
20   James E. Cecchi (*pro hac vice*)
     Caroline F. Bartlett (*pro hac vice*)
21   **CARELLA, BYRNE, CECCHI,**
     **OLSTEIN, BRODY & AGNELLO, P.C.**
22   5 Becker Farm Road
     Roseland, New Jersey 07068
23   Telephone: (973) 994-1700
24   Facsimile:  (973) 994-1744
     jcecchi@carellabyrne.com
25   cbartlett@carellabyrne.com

26
     Joseph H. Meltzer (*pro hac vice*)
27   Melissa L. Yeates (*pro hac vice*)
     **KESSLER TOPAZ**
28   **MELTZER & CHECK, LLP**

280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
jmeltzer@ktmc.com
myeates@ktmc.com

Charles E. Schaffer (*pro hac vice*)
David C. Magagna Jr. (*pro hac vice*)
**LEVIN, SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
cschaffer@lfsblaw.com
dmagagna@lfsblaw.com

E. Powell Miller (*pro hac vice forthcoming*)
**THE MILLER LAW FIRM, P.C.**
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com

Jason P. Sultzer, Esq. (*pro hac vice*)
**THE SULTZER LAW GROUP P.C.**
270 Madison Avenue, Suite 1800
New York, NY 10016
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com

# EXHIBIT A

| NHTSA ID No. | make | model | year | failure_date | full_text |
|---|---|---|---|---|---|
| 10915473 | BUICK | ENCLAVE | 2014 | 2016-06-25 | TL* THE CONTACT OWNED A 2014 BUICK ENCLAVE. WHILE DRIVING INTO AN INTERSECTION, THE DRIVER'S SIDE OF THE CONTACT'S VEHICLE WAS STRUCK BY AN ONCOMING VEHICLE. THE CONTACT'S VEHICLE SPUN OFF THE ROAD AND LANDED IN A DITCH. THE FRONT END AND DRIVER'S SIDE OF THE VEHICLE WERE SEVERELY DAMAGED. THE CONTACT WAS UNABLE TO RECALL THE DETAILS OF THE CRASH. THE AIR BAGS DID NOT DEPLOY. THE CONTACT WAS INFORMED THAT THE SEAT BELT FAILED TO LOCK AND PROPERLY RESTRAIN HIM. THE VEHICLE WAS TOWED AND TOTALED. A POLICE REPORT WAS FILED. THE CONTACT RECEIVED INJURIES TO THE RIBS, CLAVICLE, AND SHOULDER, WHICH REQUIRED MEDICAL ATTENTION. THE APPROXIMATE FAILURE MILEAGE WAS 40,000. |
| 10995504 | BUICK | ENCORE | 2014 | 2017-06-15 | I TOOK MY VEHICLE INTO THE SERRA DEALERSHIP IN WASHINGTON, MI ON 3/20/17 TO HAVE THE FRONTAL AIRBAG AND PRETENSIONER NON DEPOY SAFETY RECALL (16007) REPAIRED.  ON, 6/15/17, I WAS IN A CAR ACCIDENT TRAVELING AT ROUGHLY 50 MPH AND MY AIRBAGS DID NOT DEPLOY.  A FORD F-150 TURNED INTO ONCOMING TRAFFIC WITHOUT LOOKING CAUSING THE FRONT OF MY VEHICLE TO CRASH INTO THE SIDE OF HER TRUCK.  THE OTHER DRIVER WAS ISSUED THE CITATION FROM THE POLICE.  MY BUICK ENCORE IS MOST LIKELY TOTALED (AWAITING CONFIRMATION ON THAT). |
| 10726387 | CADILLAC | SRX | 2014 | 2015-06-17 | I WAS IN A SEVERE CRASH AND SUFFERED A SEVERE CONCUSSION. MY RIBBON FLEW OFF MY HEAD WHEN I CAME TO, I DID LOSE CONSCIOUSNESS AND WOKE UP TO ON STAR TELLING ME MY VEHICLE WAS IN A CRASH. I HAVE SEVERE PAIN IN MY NECK SHOULDER, ABRASIONS TO THE LEFT SIDE OF MY BODY AND BRUISING. THE VEHICLE IS TOTALED BUT THE AIRBAG NEVER DEPLOYED AND IT SHOULD HAVE WITHOUT A DOUBT. THERE WAS SEVERE DAMAGE TO THE ENTIRE VEHICLE. |
| 10871604 | CADILLAC | SRX | 2014 | 2016-05-27 | TL* THE CONTACT OWNS A 2014 CADILLAC SRX. WHILE DRIVING 65 MPH, THE CONTACT LOST CONTROL OF THE VEHICLE AND IT VEERED OFF THE ROAD IN BOTH DIRECTIONS AND CRASHED. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT DID NOT SUSTAIN INJURIES. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO A DEALER WHERE IT WAS DIAGNOSED THAT THE REAR DRIVER SIDE CONTROL ARM NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED. THE VEHICLE WAS PREVIOUSLY REPAIRED UNDER NHTSA CAMPAIGN NUMBER: 14V571000 (SUSPENSION). THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 32,000. |
| 10615335 | CHEVROLET | EQUINOX | 2014 | 2014-05-24 | TL* THE CONTACT OWNS A 2014 CHEVROLET EQUINOX. THE CONTACT STATED THAT WHILE DRIVING 16 MPH, THE CONTACT CRASHED INTO THE DRIVER'S SIDE DOOR OF ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. THE CONTACT SUSTAINED CHEST, RIGHT KNEE, SHOULDER AND SPINE INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS UNKNOWN. |
| 10864509 | CHEVROLET | EQUINOX | 2014 | 2016-05-05 | I BOUGHT MY  2014 CHEVY EQUINOX NEW. I WAS IN CRASH WHICH I HIT A FULL SIZE CHEVY TRUCK IN THE DRIVER DOOR AND IT TOTALED MY CAR AND NOT ONE AIR BAG CAME. I WAS CROSSING EAST AND WEST THE TRUCK WAS GOING NORTH TO SOUTH |
| 10915132 | CHEVROLET | EQUINOX | 2014 | 2016-09-08 | WAS INVOLVED IN ACCIDENT 9/8/2016. IT WAS A TOTAL LOSS. FRONT END HEAVILY DAMAGED. AIRBAGS DID NOT WORK OR THE PASSENGER SIDE SEATBELT. DRIVING STRAIGHT AT INTERSECTION AND OTHER PARTY RAN RED LIGHT STRIKING THE LEFT FRONT AND CAUSING FRAME TO CRACK. |
| 11124021 | CHEVROLET | EQUINOX | 2014 | 2018-09-01 | I HIT A DEER ON SEPT. 1, 2018 AND MY AIRBAGS DIDN'T DEPLOY. |
| 11186171 | CHEVROLET | EQUINOX | 2014 | 2019-03-05 | VEHICLE WAS IN MOTION TRAVELING STRAIGHT GOING APPROXIMATELY 50MPH WHEN IT STRUCK ANOTHER VEHICLE THAT FAILED TO YIELD THE RIGHT OF WAY.  THE EQUINOX SUFFERED EXTENSIVE FRONT END DAMAGE ON THE DRIVERS SIDE BUT NO AIRBAGS DEPLOYED. |
| 11376003 | CHEVROLET | EQUINOX | 2014 | 2020-11-16 | I WAS INVOLVED IN A CAR ACCIDENT ON NOVEMBER 16, 2020 AND NEITHER OF MY AIRBAGS DEPLOYED. |
| 10599029 | CHEVROLET | SILVERADO | 2014 | 2014-06-10 | MY WIFE & SISTER WERE RUN OFF THE ROAD . THEY WENT UP A DITCH & HIT A COLVURT . THE SEATBELTS DID NOT LOCK IN PLACE & AIR BAGS DID NOT INFLATE . THIS WAS A LOANER TRUCK FROM DEALER . IT WAS A 2014 4 DOOR CHEVY SILVERADO FROM LUCAS CHEVY IN COLUMBIA TN. 38401 . I THINK THE WAS SOME SORT OF TROUBLE WITH THIS HAPPENING . PLEAS CALL FOR COMPLETE INFO ON THIS . *TR |
| 10695408 | CHEVROLET | SILVERADO | 2014 | 2015-02-18 | TL* THE CONTACT OWNED A 2014 CHEVROLET SILVERADO. WHILE DRIVING APPROXIMATELY 60 MPH, THE CONTACT REACHED OVER TO TURN THE HEAT OFF AND THE VEHICLE WENT OFF THE ROAD, DOWN A HILL, AND INTO A DITCH. THE VEHICLE CONTINUED ON UNTIL IT CRASHED INTO A CABLE THAT WAS CONNECTED TO A TELEPHONE POLE. THE TELEPHONE POLE SPLIT IN HALF. THE SEAT BELT FAILED TO RESTRAIN THE CONTACT AND THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED INJURIES TO HIS BACK, KNEE, AND HIP THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED AND TOWED TO A LOT. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 7,956. |

| | | | | | |
|---|---|---|---|---|---|
| 10712235 | CHEVROLET | SILVERADO | 2014 | 2015-03-21 | TL* THE CONTACT OWNS A 2014 CHEVROLET SILVERADO. WHILE DRIVING AT APPROXIMATELY 70 MPH, THE VEHICLE STRUCK A DEER ON THE HIGHWAY. THE FRONT AND REAR AIR BAGS FAILED TO DEPLOY. THERE WERE NO INJURIES AND A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS TAKEN TO A DEALER, BUT WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 8,000. |
| 11129851 | CHEVROLET | TRAVERSE | 2014 | 2018-09-15 | TL* THE CONTACT OWNS A 2014 CHEVROLET TRAVERSE. WHILE DRIVING 45 MPH, THE CONTACT CRASHED INTO THE REAR PASSENGER QUARTER PANEL OF A HONDA ACCORD. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE AIR BAG DID NOT DEPLOY. THE CONTACT SUSTAINED NECK AND BACK INJURIES, WHICH DID NOT REQUIRE MEDICAL ATTENTION. THE TWO OCCUPANTS OF THE HONDA SUSTAINED UNKNOWN INJURIES, WHICH REQUIRED MEDICAL ATTENTION AT THE SCENE. A POLICE REPORT WAS FILED. THE VEHICLE WAS TAKEN TO AN INDEPENDENT MECHANIC, BUT WAS NOT DIAGNOSED OR REPAIRED. THE LOCAL DEALER AND MANUFACTURER WERE NOT CONTACTED. THE FAILURE MILEAGE WAS APPROXIMATELY 62,000. THE VIN WAS NOT AVAILABLE. |
| 10909600 | GMC | TERRAIN | 2014 | 2016-09-18 | TL* THE CONTACT OWNED A 2014 GMC TERRAIN. THE CONTACT STATED THAT WHILE DRIVING AT APPROXIMATELY 10 MPH AND MAKING A LEFT TURN, ANOTHER VEHICLE CRASHED INTO THE VEHICLE HEAD ON. THE FRONTAL AIR BAGS DID NOT DEPLOY. THE POLICE AND FIRE DEPARTMENT WERE PRESENT. NO INJURIES WERE REPORTED. THE VEHICLE WAS DESTROYED AND TOWED TO A COLLISION LOT. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 27,448. |
| 10608599 | GMC | YUKON | 2014 | 2014-07-04 | I HAD A FRONT END COLLISION AT 25 MPH WITH A PARKED CAR.  MY AIRBAG(S) DID NOT DEPLOY.  THE ENTIRE FRONT END OF MY CAR WAS DESTROYED.  THE HOOD WAS CRUMPLED AND BOTH FRONT QUARTER PANELS DAMAGED.  THE FRONT DOORS ARE NOT EASILY OPENED DUE TO THE QUARTER PANEL DAMAGE.  IT IS HARD FOR ME TO UNDERSTAND HOW AN IMPACT AT THE SPEED I WAS TRAVELING AND THE LOCATION OF IMPACT DID NOT CAUSE THE AIRBAG(S) TO DEPLOY.  I HAD TO BE TRANSPORTED VIA AMBULANCE FROM THE SCENE AND SUFFERED A CONCUSSION FROM MY HEAD SLAMMING DOWN ON THE STEERING WHEEL. *JS |
| 10595132 | BUICK | ENCLAVE | 2013 | 2014-05-29 | TL* THE CONTACT OWNS A 2013 BUICK ENCLAVE.  THE CONTACT STATED THAT WHILE TRAVELING 5 MPH, THE VEHICLE CRASHED HEAD-ON INTO ANOTHER VEHICLE AND THE AIR BAGS DID NOT DEPLOY. THE CONTACT WAS INJURED AND REQUIRED IMMEDIATE MEDICAL ATTENTION. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE.  THE FAILURE AND CURRENT MILEAGE WAS 11,500. |
| 11352287 | CADILLAC | SRX | 2013 | 2020-08-27 | HEAD ON COLLISION AT 40 MPH ON A CITY STREET. AIR BAGS DID NOT DEPLOY AND SEAT MOVED FORWARD. RESULTING IN ER VISIT AND HEAD LACERATION AND LOSS OF CONSCIOUSNESS. |
| 10575764 | CHEVROLET | EQUINOX | 2013 | 2013-11-11 | HIT A DEER WITH FRONT END OF VEHICLE CAUSING APPROXIMATELY $6,000 IN DAMAGES. AIRBAGS DID NOT DEPLOY CAUSING CONCUSSION RECEIVED BY DRIVER.  DRIVER IS STILL EXPERIENCING MEDICAL PROBLEMS DUE TO THIS ACCIDENT.  *TR |
| 10667442 | CHEVROLET | EQUINOX | 2013 | 2014-12-14 | I WAS INVOLVED IN AN ACCIDENT THAT RESULTED IN DAMAGES OVER $14,000 TO THE FRONT END OF THE VEHICLE. THE AIR BAGS DID NOT DEPLOY. I HAVE CONTACTED GM TWICE THIS WEEK AND HAVE NOT YET SPOKEN TO ANYONE IN THEIR PRODUCT ASSISTANCE DEPARTMENT.  *DT |
| 10958946 | CHEVROLET | EQUINOX | 2013 | 2016-11-23 | TL* THE CONTACT OWNED A 2013 CHEVROLET EQUINOX. WHILE DRIVING APPROXIMATELY 60 MPH, THE CONTACT'S VEHICLE CRASHED INTO A SECOND VEHICLE. THE FRONT END OF THE VEHICLE SUSTAINED SIGNIFICANT DAMAGE. THE AIR BAGS DID NOT DEPLOY. THE REAR PASSENGER SEAT OCCUPANT SUSTAINED A HEAD INJURY, WHICH REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS DESTROYED. A POLICE REPORT WAS FILED. THE FAILURE MILEAGE WAS 50,000. |
| 10993565 | CHEVROLET | EQUINOX | 2013 | 2017-05-09 | "TAMARA RECALL"  I'M WRITING REGUARDING AN ACCIDENT THAT TOTALED OUT MY VEHICLE BUT NONE OF MY AIR BAGS DEPLOYED ? I HIT A DEER AT 75-80 MPH ON A HWY IT HIT MY DRIVERS SIDE HEADLIGHT AND CONTINUED UP OVER MY HOOD AND ACTUALLY DENTED PART OF MY PASSENGER SIDE FENDER I COULDN'T EVEN OPEN THE DOOR ALL THE WAY! NONE OF MY AIR BAGS WENT OFF. LUCKILY I HAD MY SEAT BELT ON WHICH SOMETHING IN THE SEAT BELT BLEW WHEN IT LOCKED ME IN PLACE DUE TO THE IMPACT OF THE DEER HITTING JUMPING OUT AT ME A WARNING POPPED UP ON MY DASH BELIEVE SAID "LOCKED" BUT ALL HAPPENED SO FAST , IT PUSHED & CRACKED JUST ABOUT EVERYTHING UNDER MY HOOD. I HAD SMOKE COMING FROM MY VEHICLE, FLUIDS ON THE GROUND NO FIRE THANKFULLY ! MY SUV WAS TOTALED AND MANY HAVE QUESTIONED ME ABOUT THE AIR BAGS. I'M NOW WONDERING THE SAME THING. WHY IN THE WORLD DID NONE OF THESE GO OFF ? IF I WOULDN'T HAVE HAD MY SEAT BELT ON WHO KNOWS WHAT WOULD HAVE HAPPENED WITH THE AIR BAGS NOT GOING OFF I I'VE DONE RESEARCH I HAVEN'T SEEN ANY RECALLS, BUT I AM A LITTLE CONFUSED BY THIS! |

| | | | | | |
|---|---|---|---|---|---|
| 10576260 | CHEVROLET | SILVERADO | 2013 | 2014-03-18 | ON TUESDAY MARCH 18, 2014 I WAS DRIVING A 2013 CHEVY SILVERADO AND REAR ENDED A CHEVY TAHAO AT APPROXIMATELY 20 MPH WITHOUT HITTING MY BRAKES. CONDITIONS AT THE TIME WERE CLEAR AND DRY ALTHOUGH VERY WINDY. I WAS THE ONLY PASSENGER IN MY TRUCK. I WAS WEARING MY SEATBELT. I HIT THE STEERING WHEEL WITH MY CHEST. THE ONSTAR SYSTEM CALLED TO SAY THEY COULD SEE I WAS IN AN ACCIDENT AND HELP WAS ON THE WAY. I EXCHANGED INFO WITH THE OTHER DRIVER AND RETURNED TO MY VEHICLE. THE SEATBELT WAS IN THE EXTENDED POSITION AND WOULD NOT EXTEND FURTHER OR RETRACT. ON THE DISPLAY PANEL IT HAD AN 'AIRBAG DEPLOYED' ICON AND MESSAGE 'SERVICE AIRBAG'. MY INSURANCE COMPANY GAVE ME A AUTO REPAIR SHOP TO GO TO FOR AN ESTIMATE, HOWEVER, THE SHOP TOLD ME THEY WOULD NOT TOUCH THE VEHICLE UNTIL A GM REPRESENTATIVE INVESTIGATED THE SYSTEM FIRST AS THEY FELT THE SEATBELT SHOULD HAVE PREVENTED ME FROM HITTING THE STEERING WHEEL. I CALLED GM AND SPOKE WITH WALTER IN CUSTOMER SERVICE. HE ARRANGED TO HAVE A 'THIRD PARTY' INVESTIGATOR COME AND DO A INTERROGATION OF THE SYSTEM AND ARRANGED FOR A LOANER VEHICLE. RAYTHEON REPRESENTATIVE 'JEFF' CALLED ME SUNDAY MARCH 20 AND STATED HE WAS TO INTERROGATE THE SYSTEM AND WOULD CONTACT ME FROM THE AIRPORT WHEN HE GOT TO TOWN ON WEDNESDAY MARCH 23. ON WEDNESDAY MARCH 23 I CALLED JEFF TO SEE IF HE WAS IN TOWN AND HE STATED HE WAS AT THE AIRPORT 'LEAVING' TOWN, HE HAD DONE HIS INVESTIGATION AND DETERMINED EVERYTHING WORKED LIKE IT SHOULD. I ASKED HIM IF I WAS SUPPOSED TO HIT THE STEERING WHEEL AND HE STATED HE DID NOT AGREE OR DISAGREE.  *TR |
| 10598445 | CHEVROLET | SILVERADO | 2013 | 2014-06-08 | TL* THE CONTACT OWNS A 2013 CHEVROLET SILVERADO. THE CONTACT STATED WHILE DRIVING APPROXIMATELY 35 MPH A DRUNK DRIVER CRASHED INTO THE CONTACTS VEHICLE. THE AIR BAGS DID NOT DEPLOY. THE PASSENGER SUSTAINED A BROKEN FOOT AND WAS TAKEN TO THE HOSPITAL. THE APPROXIMATE FAILURE MILEAGE WAS 22,000. |
| 11055507 | CHEVROLET | TRAVERSE | 2013 | 2016-10-25 | ON OCT 25 OF LAST YEAR WE WERE INVOLVED IN A ACCIDENT WHERE WE HIT A CAR BROADSIDED DOING ABOUT 30 MPH CAUSING CONSIDERABLE DAMAGE TO OUR CAR, BOTH MY WIFE AND MYSELF HAD TERRIBLE WHIPLASHES. AND I BELIEVE THAT SOME OF OUR PAIN COULD HAVE BEEN PREVENTED IF THE AIR BAGS WOULD HAVE DEPLOYED WHICH THEY DID NOT DO. WE WERE ON 4 LANE DIVIDED ROAD GOING THROUGH THE TOWN OF CHIEFLAND FL. WE WERE PASSING A SEMI TRUCK WHICH WAS SLOWING DOWN TO MAKE A TURN WHEN A VEHICLE CAME ACROSS THE FRONT OF THE TRUCK AND CONTINUED TO COME INTO OUR LANE WITH NO REGARDS TO STOPPING AND WE HAD NO CHOICE OR TIME TO STOP. |
| 11093533 | CHEVROLET | TRAVERSE | 2013 | 2017-09-18 | HAVE HAD MY VEHICLE IN DEALER TO FIX AIR BAG LIGHT SEVERAL TIMES AND IT IS STILL ON. MY WIFE WAS INVOLVED IN AN ACCIDENT WHERE AIRBAGS SHOULD OF DEPLOYED AND DIDN'T. LUCKILY SHE WAS NOT INJURED. |
| 10556077 | GMC | TERRAIN | 2013 | 2013-12-13 | VEHICLE WAS INVOLVED IN A SEVERE ACCIDENT WHERE THE OTHER DRIVER RAN A STOP SIGN AND HIT TERRAIN CAUSING SEVERE FRONT END AND ENGINE DAMAGE. AIR BAGS FAILED TO DEPLOY. INJURIES INCLUDED WERE NECK AND BACK. DAMAGE WAS SEVERE ENOUGH TO CAUSE AIRBAGS TO DEPLOY BUT NEVER DID. HAVING AN INDEPT INSPECTION CONDUCTED AS TO WHY THEY NEVER DEPLOYED.  *TR |
| 10895896 | GMC | TERRAIN | 2013 | 2016-08-15 | WAS DRIVING DOWN HIGHWAY US19 AND COLLIDED WITH ANOTHER VEHICLE AT AT LEAST 40MPH AND AIRBAGS DID NOT DEPLOY |
| 11222110 | BUICK | ENCLAVE | 2012 | 2019-06-21 | I WAS IN A COLLISION ON 6/21/2019 THAT HAD SEVERE FRONT END OBSTRUCTIONS AND WITH A STRONG TOTAL LOSS AS A RESULT. MY AIRBAGS NEVER DEPLOYED. THE VEHICLE WAS IN MOTION ON ASSEMBLY STREET, COLUMBIA SC. |
| 10576031 | CADILLAC | SRX | 2012 | 2014-03-23 | I FELL ASLEEP WHILE DRIVING, JUMPED A LEVEE, RAN THROUGH A FENCE, AND WRECKED IN A GRASSY WATERY AREA.  MY ENGINE WAS SMASHED, THE MOTOR MOUNT BROKE, AND MY TIRES ARE PUSHED BACK.  MY AIR BAGS DID NOT DEPLOY.  MY FACE HIT THE STEERING WHEEL AND MY NOSE IS BROKEN.  I WOULD LIKE TO FIND OUT IF THERE IS ANY RECALLS ON THIS CAR.  *TR |
| 10576905 | CADILLAC | SRX | 2012 | 2014-03-27 | VEHICLE DRIVER AIR BAG DID NOT DEPLOY, NOR ANY OTHER AIR BAG, UPON COLLISION TO REAR OF A STOPPED PICK UP TRUCK. SPEED OF OFFENDING VEHICLE WAS APPROXIMATELY 45 MPH. DRIVER SUFFERED CHEST INJURY FROM SEAT BELT. DAMAGE ESTIMATED TO FRONT END EXCEEDS $10,000.  *TR |
| 10682471 | CADILLAC | SRX | 2012 | 2014-12-14 | MVA WITH TWO IMPACTS; FRONT DRIVER SIDE (SIGNIFICANT IMPACT) AND FRONT OF VEHICLE  NO AIRBAGS DEPLOYED.  *TR |
| 10993443 | CADILLAC | SRX | 2012 | 2017-05-31 | TWO CARS AHEAD OF ME WAS GOING STRAIGHT AND ALL OF A SUDDEN TURNED INTO A STRIP MALL WITHOUT INDICATOR. THE CAR IN FRONT OF ME SLAMMED ON THEIR BRAKES AND SO DID I , BUT I STILL ENDED UP REAR ENDING THE VEHICLE IN FRONT. I THINK MY SPEED WAS AROUND 30 AT THE TIME OF IMPACT. I HIT MY CHIN TO THE STEERING WHEEL. GOT MULTIPLE CUTS INSIDE OF MY MOUTH. AND COUPLE OF THEM ON MY FACE WHICH REQUIRED STITCHES. MY AIR BAG DID NOT DEPLOY AND NEITHER THE SEATBELT PREVENTED IT, WHICH I THOUGHT WAS ODD. CHECKED WITH CADILLAC IF HEY WERE AWARE OF ANY PROBLEM WITH THE CAR. THEY DENIED THE EXISTENCE OF SUCH AN ISSUE. SO I WANT TO GET THE VEHICLE INVESTIGATED, SO THAT NOBODY ELSE SHOULD GET HURT THE WAY I DID; ALSO I HAVE ANOTHER CADILLAC AND NEED TO KNOW. WILL REALLY APPRECIATE IT. THANKS |

| | | | | | |
|---|---|---|---|---|---|
| 11138938 | CADILLAC | SRX | 2012 | 2018-06-25 | ON 6/25/18, MY WIFE WAS TRAVELING 45 MPH., IN OUR 2012 CADILLAC SRX. THE VEHICLE IN FRONT OF HER WENT TO MAKE A LEFT TURN INTO A SUBDIVISION. BUT, THEN DECIDED NOT TO DO THAT AND PULLED BACK INTO THE LANE OF MY WIFE. SHE SLAMMED ON HER BRAKES, TO AVOID HITTING THE VEHICLE. HOWEVER, SHE COULDN?T ANTICIPATE THEIR MOVE. SHE HIT THEM FROM BEHIND, GOING 45MPH. SHE HIT HER FOREHEAD ON THE VISOR BAR TWICE, CAUSING A SKULL FRACTURE, BRAIN BLEED, SEVER CONCUSSION, DEEP LACERATIONS, A BURST ARTERY IN HER FOREHEAD TO WHERE SHE WAS BLEEDING HEAVILY AND UNCONSCIOUS. HER CHEST HIT THE STEERING WHEEL, WHICH BADLY BRUISED HER RIBS, CAUSING A HIATAL HERNIA, DUE TO THE IMPACT. SHE SUFFERED LACERATIONS TO HER LEFT ARM, KNEE AND HAS RUPTURED DISCS IN HER CERVICAL SPINE. SHE WAS ICU FOR SEVERAL DAYS DUE TO THE BRAIN BLEED AND HEAD INJURIES SHE SUSTAINED. OUR AIR BAG NEVER DEPLOYED AND THE DRIVER SEAT BELT DIDN?T LOCK ON IMPACT, ALLOWING HER TO BOUNCE UPWARD TWICE AND SUSTAINED THE HEAD INJURIES. THE CADILLAC AIR BAGS AND SEAT LOCKING MECHANISMS FAILED TO PROTECT HER FROM INJURIES SHE SHOULD HAD NEVER HAD. SOMEONE NEEDS TO RESEARCH FURTHER THESE ISSUES FOR THE 2012 SRX SO OTHER CONSUMERS DON?T FEEL SAFE IN A VEHICLE, WHERE THE  SAFETY MECHANISMS FAIL. CADILLAC SHOULD NOT BE ABLE TO GET AWAY WITH THIS. SHOULD THE 2012 SRX HAVE A RECALL ON AIR BAGS AND SEAT BELT LOCKING MECHANISMS FAILING? MORE THAN ONE COMPLAINT HAS BEEN POSTED, SO I HOPE THE NHTSA INVESTIGATES THIS FOR US ALL. PLEASE CONSIDER THIS A FORMAL COMPLAINT!  THANK YOU,  AND PLEASE FOLLOW UP!  *TR |
| 10546238 | CHEVROLET | EQUINOX | 2012 | 2013-09-20 | I WAS TRAVELING SOUTH AS ANOTHER CAR WAS TRAVELING NORTH. THE CAR TRAVELING NORTH MADE A RAPID LEFT TURN DIRECTLY IN MY TRAVELING PATH.  WE COLLIDED AND MY CAR WAS TOTALED. I HIT THE STEERING WHEEL PRETTY HARD BECAUSE THE AIRBAG DID NOT DEPLOY.  HOW, SHOULD I PROCEED?. *TR |
| 10979985 | CHEVROLET | EQUINOX | 2012 | 2017-03-31 | I WAS INVOLVED IN AN ACCIDENT WHERE I REAR ENDED A STOPPED VEHICLE. MY CRUISE WAS SET AT 57 MPH AND I DID NOT APPLY BRAKES. BECAUSE CRUISE WAS SET, I HIT ONCE, BOUNCED BACK AND HIT AGAIN. MY AIRBAGS DID NOT DEPLOY AT ALL. THE VEHICLE HAS EXTENSIVE DAMAGE TO THE FRAME BUT NO AIRBAG DEPLOYMENT. |
| 11329614 | CHEVROLET | EQUINOX | 2012 | 2020-05-31 | TL* THE CONTACT OWNED A 2012 CHEVROLET EQUINOX. THE CONTACT STATED THAT WHILE HER HUSBAND WAS DRIVING ABOUT 25 MPH, HE SUFFERED A MEDICAL CONDITION AND LOST CONTROL OF THE VEHICLE, CRASHING INTO A THREE FEET HIGH CEMENT BOULDER. THE AIR BAGS DID NOT DEPLOY. BOTH THE DRIVER AND THE FRONT PASSENGER SUSTAINED INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE DRIVER AND THE PASSENGER HAD THEIR SEAT BELTS LATCHED AT THE TIME OF THE CRASH. THE VEHICLE WAS TOTALED AND WAS TOWED TO A TOW YARD. THE DEALER AND THE MANUFACTURER WERE NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 133,000. |
| 10790202 | CHEVROLET | SILVERADO | 2012 | 2015-09-30 | RECENTLY I WAS INVOLVED IN AN ACCIDENT THAT WAS A DIRECT IMPACT. AT THE TIME OF THIS ACCIDENT THE SEAT BELT DID NOT LOCK NOR DID THE AIR BAGS DEPLOY.  THE SPEED FROM THIS ACCIDENT WAS BETWEEN 50-55 MPH ON THE HIGHWAY. AT THE RATE OF SPEED I WAS GOING BEFORE THE ACCIDENT AND THE FACT THAT I HAD TO  SLAM ON THE BREAKS TO BEGIN SLOWING DOWN ONE WOULD HAVE THOUGHT THE SEAT BELT WOULD HAVE LOCKED BUT IT DID NOT AND AT THE POINT OF IMPACT I WAS VERY SURPRISED THAT THE AIRBAGS DID NOT DEPLOY BUT YET THE SYSTEM INDICATED THAT IT DID AND NEEDED TO BE RESET.  HOWEVER NOW THAT THE VEHICLE IS IN PROCESS OF BEING REPAIRED I AM BEING TOLD THAT THE ENTIRE AIRBAG SYSTEM HAS TO BE REPLACED ALONG WITH THE DRIVER SEAT BELT. |
| 10622016 | CHEVROLET | TAHOE | 2012 | 2014-08-09 | WHILE TURNING LEFT (TAHOE) WITH A PROTECTED GREEN ARROW AT AN X-SHAPED INTERSECTION, VEHICLE (KIA SEDAN) AT FAULT FAILED TO YIELD AND ENTERED THE INTERSECTION AT SPEEDS UPWARDS OF 40 MPH FROM THE LEFT OF THE TAHOE.  FRONT-IMPACT COLLISION OCCURRED; DUE TO THE SHAPE OF THE INTERSECTION AND THE VELOCITY OF THE IMPACT, TAHOE STRUCK PASSENGER SIDE OF KIA SEDAN. TRAJECTORY OF IMPACT CAUSED DIRECTIONAL CHANGES IN UPWARDS OF 90° FOR BOTH VEHICLES; THE FORCE OF THE PRIMARY ACCIDENT DESCRIBED ABOVE ALSO CAUSED MENTIONED VEHICLES TO COLLIDE WITH LEFT-REAR OF ANOTHER VEHICLE (HONDA SEDAN), CAUSING NEAR 360° ROTATION OF THE HONDA SEDAN.  DUE TO THE FORCE OF IMPACT, FRONT & SIDE AIRBAGS DEPLOYED ON BOTH THE KIA SEDAN AND THE HONDA SEDAN, BUT FAILED TO DEPLOY ON THE TAHOE.  SCENE INDICATED THAT THE KIA SEDAN MADE NO ATTEMPT TO BRAKE OR DECREASE SPEED PRIOR TO COLLISION; POSTED SPEED LIMIT AT INTERSECTION IS 40 MPH.  FORCE WAS SUCH THAT AFTER THE COLLISION, TAHOE TRANSMISSION WAS IN DRIVE, BUT REMAINED AT A COMPLETE STOP.  DAMAGE SUSTAINED ON THE TAHOE INCLUDE FRONT-END BODY DAMAGE, ENGINE DAMAGE (VEHICLE REQUIRED TOWING AND WAS INOPERABLE), AND FRAME DAMAGE, AT A MINIMUM.  IN ADDITION, ENGINE SERVICE LIGHTS AS WELL AS ONSTAR VEHICLE DIAGNOSTIC REPORTS INDICATE THAT THE AIRBAG SYSTEM, ANTILOCK BRAKING SYSTEM, AND THE STABILITRAK STABILITY CONTROL SYSTEM ALSO SUSTAINED DAMAGE AND REQUIRE ATTENTION.  MULTIPLE FIRST-RESPONDERS COMMENTED ON THE ODDITY THAT, GIVEN THE DAMAGE SUSTAINED BY THE TAHOE AND THE VELOCITY AT IMPACT, THE AIRBAGS DEPLOYED ON ALL VEHICLES BUT THE TAHOE.  *TR |

| 11194940 | CHEVROLET | TAHOE | 2012 | 2018-03-19 | I WAS DRIVING WEST BOUND ON 176TH ST AND AS I APPROACHED THE LIGHT I COULD NOT BRAKE OR TURN MY CAR TO THE RIGHT IN WHICH I HAD A HEAD ON COLLISION WITH ANOTHER VEHICLE. ON IN PACKED MY AIRBAGS DID NOT DEPLOY! THE DRIVER OF THE OTHER VEHICLE EVEN TOLD THE OFFICER HE WAS TRYING TO TURN , HIS EYES WERE AS BIG AS A COWS CLEARLY HE WAS IN DISTRESS.  LUCKILY NEITHER OF US WERE INJURED. |
|---|---|---|---|---|---|
| 11278797 | CHEVROLET | TAHOE | 2012 | 2018-08-24 | AS I WAS DRIVING ON 176TH GETTING READY TO TURN ON SPANAWAY LOOP MY WOULDN'T COMPLETE THE RIGHT TURN OR STOP SO I HAD A HEAD ON COLLISION WITH ANOTHER TRUCK AND MY AIR BAGS DIDN'T DEPLOY. |
| 10885565 | CHEVROLET | TRAVERSE | 2012 | 2016-06-30 | THE DRIVER STEERING WHEEL FRONT AIRBAG DID NOT DEPLOY WHEN I HIT ANOTHER VEHICLE FROM BEHIND. WHEN WE RECEIVED THE LETTER ABOUT RECALL WE BROUGHT THE VEHICLE INTO SERVICE CHEVROLET IN LAFAYETTE, LA. |
| 10882239 | GMC | ACADIA | 2012 | 2016-06-14 | MY WIFE AND THREE DAUGHTERS, AGES 11, 9, AND 6, WERE INVOLVED IN A MAJOR CRASH.  AN ELDERLY MALE TRAVELED THRU A STEADY RED TRAFFIC SIGNAL AND STRUCK THE PASSENGER SIDE OF MY WIFE'S VEHICLE AS SHE WAS CROSSING THE INTERSECTION WITH A GREEN TRAFFIC SIGNAL.  AFTER IMPACT, THEY WERE PUSHED HEAD ON INTO A TRAFFIC STANDARD (WHICH WAS TAKEN OUT COMPLETELY) AND THEN INTO A TELEPHONE POLE, ALSO HEAD ON.  NOT ONE AIRBAG DEPLOYED.  THE VEHICLE IS SUPPOSEDLY EQUIPPED WITH FRONT AND SIDE AIRBAGS.  IN MARCH OF 2014 THERE WAS A RECALL CONCERNING THE AIRBAGS NOT DEPLOYING IN THESE VEHICLES (# 14V118000).  I HAVE OWNED THIS VEHICLE SINCE NEW AND DID RETURN IT TO THE DEALERSHIP. IN MAY OF 2014 FOR THE RECALL SHORTLY AFTER RECEIVING NOTIFICATION.  I WAS ADVISED THAT IT WAS TAKEN CARE OF. |
| 10925628 | GMC | ACADIA | 2012 | 2016-09-27 | THE VEHICLE WAS IN MOTION  NEAR AN INTERSECTION AND  APPROACHING THE LIGHT TO TURN. ( NEAR AIRPORT IN RALEIGH NC)  THE FRONT AND SIDE AIRBAGS FAILED TO DEPLOY DURING THE CRASH. THE OTHER VEHICLE HAS BEEN DECLARED TOTAL LOSS AND MINE HAS SIGNIFICANT DAMAGE AND COULD BE CLASSIFIED AS TOTAL LOSS. THERE ARE PERSONAL INJURIES. I AM ATTACHING PICTURES OF THE VEHICLE AND ACCIDENT REPORT. |
| 10466384 | GMC | TERRAIN | 2012 | 2012-04-16 | ?ON APRIL 16TH OUR SON WAS DRIVING ON FAIRVIEW RD. AND TRAVELING THROUGH A GREEN LIGHT WHEN A CAR THAT RAN A RED LIGHT HIT HIM.  ?HIS CAR ? A GMC 2012 TERRAIN WAS HIT MULTIPLE TIMES ? DRIVER'S FRONT END, FRONT END AND SPUN AROUND FROM THE FORCE AND HIT ON THE PASSENGER SIDE. NO AIRBAGS DEPLOYED  ?[XXX] WAS IMMEDIATELY CONTACTED BY ON STAR, THEY CALLED POLICE, HIS CAR WAS TOTALED.  ?ON 4/21 I EMAILED GMC AND ASKED WHAT DEPARTMENT I WOULD CONTACT TO FILE A COMPLAINT ABOUT THE FRONT AND SIDE AIRBAGS NOT DEPLOYING  CALL FROM GMC 866-790-5700  EXT. 22745 SAID ON VOICE MAIL ? THE AIRBAG DID NOT DEPLOY AS IT SHOULD HAVE?  HE MADE A CASE NUMBER [XXX]. GMC HAS SINCE DECLARED THIS WAS A LOW THRESHOLD EVENT - NO NEED FOR AIRBAG DEPLOYMENT- YET THE CAR WAS TOTALED AND OUR SON HAS WHIPLASH AND CONTUSIONS.  INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6).  *TR |
| 10477166 | GMC | TERRAIN | 2012 | 2012-09-04 | TL* THE CONTACT OWNS A 2012 GMC TERRAIN. THE CONTACT STATED THAT HE FELL ASLEEP WHILE DRIVING AN UNKNOWN SPEED. THE VEHICLE TRAVELED TO THE RIGHT SIDE OF THE ROAD AND WENT AIRBORNE APPROXIMATELY 20 FEET, LANDING ON ALL FOUR TIRES. THE VEHICLE THEN TRAVELED APPROXIMATELY 200 FEET AND CRASHED INTO AN EMBANKMENT. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED A FRACTURED BACK AS A RESULT. A POLICE OFFICER WITNESSED THE INCIDENT AND FILED A REPORT. THE VEHICLE WAS DESTROYED AND TOWED TO A COLLISION CENTER. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAULTY AIR BAGS. THE APPROXIMATE FAILURE MILEAGE WAS 7,000.  UPDATED 10/16/12*LJ |
| 10516265 | GMC | TERRAIN | 2012 | 2013-06-08 | VEHICLE WAS INVOLVED IN A CAR ACCIDENT AND CRASHED INTO A BRIDGE IRON BEAM HEAD-ON. VEHICLE'S AIR BAGS FAILED TO DEPLOY. HOOD AND FRONT OF CAR SMASHED AS VEHICLE WAS WRAPPED AROUND BEAM.  ONLY MINOR INJURIES TO DRIVER, AS DRIVER WAS WEARING A SEATBELT.  *TR |
| 10583703 | GMC | TERRAIN | 2012 | 2014-03-13 | I INADVERTENTLY VEERED OFF SIDE ROADWAY, (VA HIGHWAY 220) COLLIDING WITH A TREE/ROADSIDE SHRUBS, ETC (WAS KNOCKED UNCONSCIOUS AS FOREHEAD HIT STEERING WHEEL ON INITIAL IMPACT). AIRBAGS DID NOT DEPLOY ALLOWING ME TO SUSTAIN A HEAD INJURY THAT KNOCKED ME UNCONSCIOUS... FOREHEAD WAS GASHED WITH SIGNIFICANT BLEEDING. I WAS TRANSPORTED BY AMBULANCE IN UNCONSCIOUS STATE.  DAMAGE TO VEHICLE IS IN EXCESS OF $8,000 SO FAR AS VEHICLE STILL IN REPAIR SHOP WITH MASSIVE FRONT END DAMAGE THAT AFFECTS STEERING LINKAGE, ETC.  THE IMPACT OF VEHICLE AGAINST FOUAGE, TREES SHRUBS, SHOULD HAVE FORCED AIR BAGS TO DEPLOY AND I BELIEVE THAT I WOULD NOT HAVE SUSTAINED A HEAD INJURY THAT RENDERED ME UNCONSCIOUS WITH MILD CONCUSSION AND COULD NOT CONTROL VEHICLE LEAVING ROADWAY.  *TR |

| | | | | | |
|---|---|---|---|---|---|
| 10588334 | GMC | TERRAIN | 2012 | 2014-03-13 | VEERED OFF SIDE OF HIGHWAY, STRUCK SOMETHING HEAD-ON AND WAS RENDERED UNCONSCIOUS AS HEAD HIT STEERING WHEEL. I WAS TRANSPORTED UNCONSCIOUS IN AMBULANCE FROM CRASH SCENE TO LOCAL HOSPITAL, WHERE I WAS AN INPATIENT FOR TWO DAYS. EXTENSIVE DAMAGE TO FRONT OF VEHICLE INDICATED THE SEVERITY OF IMPACT... YET AIR BAGS DID NOT DEPLOY. I BELIEVE AIR BAGS SHOULD HAVE DEPLOYED ON IMPACT AND I WOULD NOT HAVE BEEN RENDERED UNCONSCIOUS, AND COULD HAVE CONTROLLED VEHICLE TO AVOID STRIKING TREE, BRUSH, ETC. I CONTACTED GMC CORPORATE... TO ADVISE MY CONCERNS FOR SAFETY... RECEIVED A FOLLOW UP TELEPHONE CALL FROM GMC REPRESENTATIVE... (HE) EXPRESSED NO INTEREST IN MY COMPLAINT... REFUSED TO COMMENT ON MY STATEMENT THAT AIR BAG FAILED TO DEPLOY RESULTING IN EXTENSIVE DAMAGE TO FRONT OF VEHICLE AND SUSTAINING A HEAD INJURY AS NO BAG DEPLOYED . NO MATTER THAT I AM LEASING THE VEHICLE AND FEAR FOR MY SAFETY... I WAS ADVISED THAT GMC HAD NO FURTHER INTEREST IN THIS MATTER AND WOULD NOT EVALUATE MY SAFETY CONCERNS. *TR |
| 10722057 | GMC | TERRAIN | 2012 | 2015-05-19 | CAR CRASH AT 45 MPH. FRONT IN DAMAGE AND AIR BAG DID NOT DEPLOY. SEATBELTS DID NOT LOCK UP. |
| 10924918 | GMC | TERRAIN | 2012 | 2016-11-06 | I WAS TRAVELING ABOUT 75MPH WHEN A DEER RAN INFRONT OF ME. I WASN'T ABLE TO STOP COMPLETELY AND HIT THE DEER ON MY RIGHT FRONT SIDE OF MY VEHICLE.. THE SMELL OF SMOKE CAME FROM MY VEHICLE AND MY "SERVICE AIRBAGS" INDICATOR CAME ON.. NO AIRBAGS DEPLOYED.. I HAD MY 6 YEAR OLD SON IN THE CAR WITH ME!! MY CAR ISN'T DRIVABLE DUE TO THE SIGNAL BEING ON EVEN THOUGH THE AIRBAGS DIDN'T DEPLOY. |
| 11088412 | GMC | TERRAIN | 2012 | 2016-04-21 | TL* THE CONTACT OWNED A 2012 GMC TERRAIN. WHILE DRIVING AT AN UNKNOWN SPEED, THE DRIVER CRASHED INTO A LANDSCAPING TRUCK. THE AIR BAGS FAILED TO DEPLOY. THERE WERE NO INJURIES. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO A TOW LOT AND DEEMED DESTROYED. THE DEALER WAS NOT CONTACTED TO DETERMINE THE CAUSE OF THE AIR BAG FAILURE. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS UNKNOWN. |
| 11219747 | GMC | TERRAIN | 2012 | 2019-06-12 | TL* THE CONTACT OWNS A 2012 GMC TERRAIN. THE CONTACT STATED THAT WHILE HER GRANDSON WAS DRIVING APPROXIMATELY 40-45 MPH, A DEER JUMPED INTO THE FRONT OF THE VEHICLE CAUSING SEVERE DAMAGE TO THE FRONT END OF THE VEHICLE BUT THE AIR BAGS DID NOT DEPLOY. THE CONTACT MENTIONED THAT THE RADIATOR WAS PUSHED INTO THE ENGINE. THE CONTACT SUSTAINED WHIPLASH INJURIES THAT DID NOT REQUIRE MEDICAL ATTENTION. A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS TOWED. THE CAUSE OF THE FAILURE WAS NOT DETERMINED BY THE INDEPENDENT MECHANIC. THE LOCAL DEALER WAS NOT NOTIFIED OF THE FAILURE. THE MANUFACTURER WAS CONTACTED AND A CASE WAS OPENED BUT NO ASSISTANCE WAS OFFERED. THE FAILURE MILEAGE WAS 103,000. *AS *AS |
| 10573780 | BUICK | ENCLAVE | 2011 | 2012-10-10 | TURNED CORNER ON IRONWOOD46615 AND REAR ENDED CAR THAT STOPPED SUDDENLY. CRUSHED MY FRONT END BACK TO PUNCTURING THE RADIATOR. NO AIR BAG DEPLOYED AND NO SEAT BELT ON IMPACT. MY KNEES HIT THE DASH UNDER THE STEERING WHEEL. NO ONSTAR AS NO AIRBAG DEPLOYED. HOLDING STEERING WHEEL WAS MY ONLY DETERRENT TO HITTING FORWARD. REPAIRS COST $5000.+ AND GM DEALER INSISTED AIRBAG AND SEAT BELT WERE FUNCTIONING. KNEES STILL HURT. AND SEEN DOCTOR ABOUT KNEES AND GOING AGAIN SOON. I AM REPORTING THIS AFTER HEARING THAT THERE ARE RECALLED ON SEAT BELTS AND AIRBAGS ON DRIVER SIDE. *TR |
| 10608978 | BUICK | ENCLAVE | 2011 | 2014-06-30 | TL* THE CONTACT OWNS A 2011 BUICK ENCLAVE. THE CONTACT STATED WHILE DRIVING AT UNKNOWN SPEED, THE VEHICLE CRASHED INTO A DEER CAUSING THE VEHICLE TO CATCH ON FIRE AND THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE AND CURRENT MILEAGE WAS 56,000. PAM. UPDATED 11/24/14*LJ. UPDATED 8/17/2015*JS |
| 10732977 | BUICK | ENCLAVE | 2011 | 2015-07-04 | DRIVING DOWN THE ROAD ON A 50MPH ZONE AND A VEHICLE PULLED OUT IN FRONT OF US. OUR CAR T-BONED THE CAR THAT PULLED IN FRONT OF US. EVERYONE HAD THERE SEATBELTS ON BUT THE FRONT AIRBAGS NEVER DEPLOYED. I DONT UNDERSTAND WHY THEY WOULDNT HAVE DEPLOYED WHEN WE HIT THE OTHER CAR AT AT LEAST 40MPH AFTER SLAMMING ON THE BREAKS. |
| 10654934 | CADILLAC | SRX | 2011 | 2014-10-23 | I WAS TURNING SOUTH WITH A GREEN ARROW WHEN THE SECOND DRIVER RAN A RED LIGHT TRAVELING EAST AND WE COLLIDED. HE WAS TRAVELING AT APPROXIMATELY 40-45 MILES PER HOUR AND I WAS TRAVELING AT APPROXIMATELY 30 MILES AN HOUR. OUR IMPACT WAS SOMEWHAT OF A T-INCIDENT WITH THE FRONT END OF MY CAR DAMAGED AND HIS CAR ON THE DRIVER'S SIDE DAMAGED. MY AIR BAGS DID NOT INFLATE, EVEN THOUGH WE BELIEVE THE IMPACT WAS AT THE ANGLE AND THE REQUIRED SPEED OF VEHICLES TO INFLATE THEM. THE AIR BAGS IN THE SECOND DRIVER'S CAR (FORD FOCUS) DID INFLATE.. *TR |
| 10679589 | CADILLAC | SRX | 2011 | 2015-01-08 | TL* THE CONTACT OWNED A 2011 CADILLAC SRX. WHILE DRIVING 35 MPH, THE CONTACT CRASHED INTO ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY AND THE FRONT PASSENGERS SIDE SEAT BELT WAS LOOSE. A POLICE REPORT WAS FILED AND THREE UNKNOWN INJURIES WERE REPORTED. THE CONTACT DID NOT DISCLOSE IF MEDICAL ATTENTION WAS REQUIRED OR NOT. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 60,000. |

| | | | | | |
|---|---|---|---|---|---|
| 11192908 | CADILLAC | SRX | 2011 | 2018-12-19 | I WAS INVOLVED IN AN ACCIDENT, I RAN INTO A VEHICLE THE DAMAGE WAS TO THE FRONT OF THE CAR. THE AIRBAGS DIDNT DEPLOY OR THE SENSORS OF THE FRONT OF MY CAR DID NOT GO OFF EITHER. |
| 10391449 | CHEVROLET | EQUINOX | 2011 | 2011-03-10 | I WAS RECENTLY IN A PRETTY BAD FRONT END VEHICLE ACCIDENT GOING ABOUT 45 MPH WHEN I REAR ENDED SOMEONE. MY CAR HAS BEEN TOTALED DO TO THE DAMAGE TO THE FRONT END OF THE VEHICLE. MY AIR BAGS DID NOT DEPLOY IN THIS ACCIDENT, EVERYONE ONE I HAVE TALKED TO FROM THE TOWING COMPANY TO THE PARAMEDIC ON SEEN SAID THAT IT SHOULD HAVE DEPLOYED. |
| 10449809 | CHEVROLET | EQUINOX | 2011 | 2012-01-23 | 2011 CHEVROLET EQUINOX. CONSUMER STATES AIRBAGS DID NOT DEPLOY DURING CRASH. *TGW THE CONSUMER STATED ANOTHER VEHICLE PULLED OUT IN FRONT OF HIM FROM A SIDE STREET, ON HIS RIGHT SIDE, WHICH RESULTED IN THE CONSUMER HITTING THE OTHER VEHICLE, WHEN THAT VEHICLE FAILED TO STOP AT A STOP SIGN. THE CONSUMER STATED THE ENTIRE FRONT END OF THE VEHICLE WAS DESTROYED. *JB |
| 10552442 | CHEVROLET | EQUINOX | 2011 | 2013-07-31 | AIR BAGS DID NOT DEPLOY AT OR ABOVE THE MFG. THRESHOLDS,WHICH CAUSED FOR NO AIR BAG DEPLOYMENT AND SIGNIFICANT FACIAL TRAUMA ON THE STEERING WHEEL. SEAT BELT PRETENSIONERS ALSO DID PRETENSION CAUSING THE UPPER TORSO TO GO FORWARD AND CAUSE THE FACIAL TRAUMA ON THE STEERING WHEEL.  *TR |
| 10682338 | CHEVROLET | EQUINOX | 2011 | 2015-01-29 | WHILE CHANGING LANES DURING AN ICE STORM, THE VEHICLE'S BACK END LET LOSE AND THE DRIVER LOST CONTROL AND SLIDE INTO THE MEDIA AT WHICH TIME THE VEHICLE WAS PROJECTED INTO THE GUARDRAIL HEAD ON. NEITHER FRONT AIRBAGS DEPLOYED NOR DID ANY OF THE AIRBAGS DEPLOY. *TR |
| 10721958 | CHEVROLET | EQUINOX | 2011 | 2015-05-09 | TL* THE CONTACT OWNS A 2011 CHEVROLET EQUINOX. THE CONTACT WAS INVOLVED IN A FRONTAL CRASH. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS NOT FILED AND NO INJURIES WERE SUSTAINED. THE VEHICLE WAS DECLARED DESTROYED BY THE INSURANCE COMPANY. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 58,000. |
| 10949808 | CHEVROLET | EQUINOX | 2011 | 2017-01-31 | INVOLVED IN AN ACCIDENT WHERE I COLLIDED WITH ANOTHER CAR.  THE FRONT END OF MY CAR WAS COMPLETED DAMAGED TO THE POINT WHERE THE CAR WAS TOTALED.  THE PROBLEM WITH THIS ACCIDENT WAS THE AIR BAGS DID NOT GO OFF CAUSING INJURY TO MYSELF AND MY WIFE.  I ESTIMATE THE SPEED AT COLLISION TO BE AROUND 30MPH.  I WAS TRAVELING WEST BOUND AT ABOUT 630PM IN THE EVENING, ON A FOUR LANE CITY ROAD WITH A CENTER TURN LANE.  I WAS IN MY LANE AND FAILED TO STOP BEFORE HITTING THE CAR IN FRONT OF ME.  MY WIFE SPOKE WITH THE REPAIR SHOP CLERK WHO INFORMED THAT THIS WAS A COMMON ISSUE WITH MANY EQUINOX'S UNDER THE SAME CONDITIONS.  I BELIEVE THE AIR BAGS SHOULD HAVE GONE OFF AND THEREFORE I |
| 11010876 | CHEVROLET | EQUINOX | 2011 | 2017-06-09 | JUNE 9, 2017 AT 10:00 PM I HIT A DEER ON SOUTH DAKOTA HWY 11 IN LINCOLN COUNTY.  THE SPEED LIMIT WAS 65 MPH AND I WAS GOING 68 MPH WHEN I HIT THE DEER HEAD ON.  I DROVE OVER TO THE SIDE OF THE ROAD AND THE VEHICLE STOPPED.  AFTER A FEW MINUTES MY WIFE AND I SMELLED BURNING ELECTRICAL WIRE.  WE GOT OUT OF THE CAR AND STARTED TO WALK AWAY AND WITHIN 10 MINUTES THE WHOLE THING WENT UP IN FLAMES.  THE CAR WAS TOTALED AND THE AIRBAGS DID NOT GO OFF.  IF WE WOULD HAVE WENT IN THE DITCH AND BEEN UNCONSCIOUS WE WOULD HAVE BURNT UP WITH THE VEHICLE.  THERE IS NO REASON THAT VEHICLE SHOULD HAVE STARTED ON FIRE.  GMC WILL NOT ACKNOWLEDGE THAT THERE WAS ANYTHING WRONG WITH THE VEHICLE. |
| 11189908 | CHEVROLET | EQUINOX | 2011 | 2019-03-08 | VECHICAL WAS INVOLVED IN A CRASH; REAR ENDED ANOTHER VEHICLE.  VECHICAL WAS TOTALED.  AIRBAGS NEVER WENT OFF. ON A HIGHWAY ABOUT 50-60 MPH. |
| 10607261 | CHEVROLET | SILVERADO | 2011 | 2014-02-14 | MY VEHICLE WAS FORCED OFF THE ROAD BY ANOTHER VEHICLE CAUSING MY VEHICLE TO HIT A LIGHT POLE HEAD ON. NO AIR BAGS DEPLOYED. DRIVER AND PASSENGER SUFFERED INJURY. *TR |

| | | | | | |
|---|---|---|---|---|---|
| 10487443 | CHEVROLET | TAHOE | 2011 | 2012-12-02 | I WAS DRIVING WEST ON RIO RD. IN CHARLOTTESVILLE, VA, AT ROUGHLY 35 MPH. AT APPROXIMATELY 6:00 PM, A DEER EMERGED FROM THE PASSENGER SIDE OF THE VEHICLE. IT HAPPENED INSTANTANEOUSLY AND AVOIDING THE DEER WAS NOT AN OPTION. IMMEDIATELY AFTER STRIKING THE DEER AT THE FRONT RIGHT BUMPER (UNDERNEATH HEADLIGHT), THE SIDE AIRBAGS DEPLOYED IN MY 2011 CHEVY TAHOE. HOWEVER, THE AIRBAG THAT WAS SUPPOSE TO DEPLOY FROM THE DRIVERS SEAT (ON THE SIDE NEAR SEATBELT) DID NOT DEPLOY. ADDITIONALLY, THE FRONT TWO AIRBAGS (FROM STEERING WHEEL AND DASHBOARD) DID NOT DEPLOY AS WELL. MOREOVER, APPROXIMATELY THREE MONTHS BACK, ANOTHER FAMILY MEMBER ALSO HIT A DEER WITH THE SAME VEHICLE (2011 CHEVY TAHOE) AND AT THAT TIME NO AIRBAGS DEPLOYED. IN THIS INCIDENT THE VEHICLE WAS TRAVELING 70 MPH AND THE DEER STRUCK THE LEFT SIDE OF THE FRONT BUMPER AND NO AIRBAGS DEPLOYED. AT THE TIME, WE DIDN'T EVEN THINK ABOUT DEFECTIVE AIRBAGS, BUT NOW, WE ARE VERY, VERY CONCERNED THAT THERE'S A DEFECT. WE SIMPLY DO NOT KNOW WHAT TO DO. I HAVE CONTACTED CHEVROLET DIRECTLY AND THEY ASSURE ME SOMEONE WILL COME OUT AND LOOK AT THE VEHICLE THIS WEEK SOMETIME. I WOULD BE RELIEVED IF SOMEONE FROM THE NHTSA ALSO INVESTIGATES THESE TWO SCENARIOS. WHAT IS CHEVROLET'S RESPONSIBILITY TO ME AND MY FAMILY IN THESE TWO CASES? AND WHAT IS THE BEST COURSE OF ACTION? . FURTHERMORE, I CAN ARRANGE FOR MY INSURANCE ADJUSTOR TO GATHER ANY DOCUMENTATION FROM THE FIRST INCIDENT (WHERE AIRBAGS DID NOT DEPLOY) SUCH AS PHOTOS, REPORTS AND PROVIDE THEM TO YOU. THE VEHICLE IS SITTING IN MY DRIVEWAY BECAUSE I AM WAITING FOR A CHEVROLET REPRESENTATIVE TO COME AND INSPECT IT. I WOULD APPRECIATE YOUR PROMPT ACTION IN THIS MATTER. THANK YOU! *TR |
| 10586298 | CHEVROLET | TRAVERSE | 2011 | 2011-05-31 | I WAS GOING STRAIGHT AT 40 MPH (CONFIRMED BY GM ENGINEER). ANOTHER VEHICLE TURNED IN FRONT OF ME AND THERE WAS A T-BONE STYLE OF ACCIDENT. THE OTHER CAR WAS TOTALED AND MINE TOOK ABOUT $18000 OF DAMAGE. NONE OF MY AIRBAGS DEPLOYED. I COMPLAINED TO GM, THEY SENT AN ENGINEER OUT TO LOOK AT THE VEHICLE BEFORE IT WAS REPAIRED TO ASSESS AND THEY SAID THAT THE AIRBAGS NOT DEPLOYING MEANT THAT THEY FUNCTIONED CORRECTLY. THE ENGINEERS REPORT SAID AT THE MOMENT OF IMPACT, MY CAR WAS TRAVELING 40MPH, AND I HAVE A HARD TIME BELIEVING THAT THE AIRBAGS WOULDN'T DEPLOY UNDER ANY CIRCUMSTANCES WHILE THE VEHICLE IS TRAVELING 40MPH. *TR |
| 11113909 | CHEVROLET | TRAVERSE | 2011 | 2018-07-16 | AIR BAGS DO NOT COME OUT IN HIGHWAY IMPACT OF 70 MILES PER HOUR. |
| 10794590 | GMC | TERRAIN | 2011 | 2015-11-12 | TL* THE CONTACT OWNS A 2011 GMC TERRAIN. WHILE DRIVING APPROXIMATELY 55 MPH, THE CONTACT CRASHED INTO THE SIDE OF ANOTHER VEHICLE THAT VEERED INTO THE CONTACT'S LANE. THE AIR BAGS FAILED TO DEPLOY. THERE WERE MINOR INJURIES THAT DID NOT REQUIRE MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO A TOW YARD. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 70,000. ......UPDATED 04/01/16 *BF *CN |
| 10851422 | GMC | TERRAIN | 2011 | 2016-01-15 | TL* THE CONTACT OWNS A 2011 GMC TERRAIN. WHILE DRIVING 55 MPH, THE CONTACT FELL ASLEEP CRASHED INTO THE REAR OF ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED INJURIES TO THE SPINE, WHICH REQUIRED MEDICAL ATTENTION. THERE WERE NO INJURIES SUSTAINED TO THE DRIVER OF THE OTHER VEHICLE. THE VEHICLE WAS TOWED TO AN INDEPENDENT MECHANIC. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 62,000. |
| 11166326 | GMC | TERRAIN | 2011 | 2019-01-04 | MY 2011 GMC TERRAIN HIT A VEHICLE IN FRONT, CAUSING MAJOR DAMAGE (THE VEHICLE IS TOTALED OUT) AND NO AIR BAGS DEPLOYED. MY VEHICLE WAS TRAVELING AT APPROXIMATELY 55 MPH NORTHBOUND IN THE #3 LANE OF THE 41 FREEWAY, SOUTH OF THE SHAW EXIT. IMPACT WAS ESTIMATED TO BE BETWEEN 20 TO 30 MPH. THE DRIVER, MY 18 YEAR GRAND-DAUGHTER HIT HER HEAD ON THE STEERING WHEEL AND HER LEFT WRIST WAS INJURED HOLDING ON TO THE STEERING WHEEL. THE 18 YEAR OLD FEMALE RIGHT FRONT SEAT PASSENGER SUFFERED AN ANKLE INJURY. WHY DID THE AIR BAGS FAIL TO DEPLOY, WITH A STRAIGHT ON FRONT END COLLISION WITH THE VEHICLE IN FRONT?! UNACCEPTABLE!!! |
| 10732291 | CADILLAC | SRX | 2010 | 2015-06-22 | HIT HEAD ON BY TRUCK GOING APPROX. 45 MPH THAT SWERVED INTO MY CENTER TURN LANE - FRONT END DEMOLISHED - CAR WAS TOTALED - BUT AIR BAGS DID NOT DEPLOY - SEAT BELT DID NOT LOCK ON IMPACT. SIDE OF MY HEAD HIT DRIVER'S WINDOW OR FRAME - WAS CATAPULTED FORWARD AND CAUGHT IN SEAT BELT WHEN IT PULLED OUT ALL THE WAY. RESULTING IN HORRIFIC AND PAINFUL CHEST, ABDOMEN AND LEFT LEG INJURIES (SOFT TISSUE). |
| 10927215 | CADILLAC | SRX | 2010 | 2016-11-16 | I WAS IN A MINOR COLLISION. RAN INTO THE BACK OF SOMEONE. MY AIRBAGS DIDN'T DEPLOY AND MY ENGINE IMMEDIATELY CAUGHT ON FIRE AND IN A FEW MINUTES MY WHOLE CARE WAS ON FIRE AND DESTROYED. THERE WAS NO KNOWN REASON HOW OR WHY THE FIRE STARTED. |
| 11053454 | CADILLAC | SRX | 2010 | 2017-12-02 | I WAS IN A CAR ACCIDENT ALONG WITH TWO OTHER PASSENGERS AND NONE OF THE AIR BAGS DEPLOYED. |

| | | | | | |
|---|---|---|---|---|---|
| 10383428 | CHEVROLET | EQUINOX | 2010 | 2011-01-17 | ON JAN 17TH,2011 MY VEHICLE WAS WRECKED BY THE DEALER ON SITE OF DEALERSHIP. THE WHOLE FRONT END WAS CAVED IN ON CENTER. THE DRIVER A MECHANIC AT DON WOODS CHEVROLET WAS DRIVING AT A HIGHER THEN NORMAL SPEED. HE HIT A POLE DEAD CENTER AND THE AIR BAG DID NOT DEPLOY. THE DRIVER WAS INJURED TO WHAT EXTENT I AM NOT SURE, BUT I AM NOT WANTING THIS CAR BACK FEELING THE AIRBAG MAY DEPLOY AT ANYTIME DUE TO THE HIT IT TOOK OR IT ISN'T SAFE AND WILL NOT DEPLOY UPON AN ACCIDENT. *TR |
| 10460416 | CHEVROLET | EQUINOX | 2010 | 2012-05-18 | AS I APPROACHED AN INTERSECTION, I HIT THE REAR END OF A FORD 150 PICK UP TRUCK THAT WAS IN THE INTERSECTION WAITING TO MAKE A LEFT TURN. MY APPROX SPEED WAS 15 MILES PER HOUR. I HAD MY SEATBELT ON, I WAS TAKEN BY AMBULANCE TO THE HOSPITAL - MY EVALUATION REVEALED  SPRAIN/STRAIN TO MY NECK, FRACTURED RIGHT ANKLE, AND CHEST WALL DISCOMFORT RELATED TO THE SEAT BELT . THE CAR WAS TOTALED --- THE AIRBAG DID NOT DEPLOY. *TR |
| 10508670 | CHEVROLET | EQUINOX | 2010 | 2013-03-25 | TL* THE CONTACT OWNS A 2010 CHEVROLET EQUINOX.  THE CONTACT STATED THAT WHILE TRAVELING 15 MPH, ANOTHER DRIVER CRASHED INTO THE FRONT DRIVER'S SIDE CORNER OF THE VEHICLE. THE COLLISION CAUSED THE CONTACT TO THEN CRASH INTO A UTILITY POLE. THE AIR BAGS FAILED TO DEPLOY. THE POLICE ARRIVED AND A REPORT WAS FILED. THE CONTACTS INSURANCE COMPANY INSPECTED THE VEHICLE AND ADVISED THE CONTACT THAT THE AIR BAGS SHOULD HAVE DEPLOYED UPON IMPACT. THE CONTACT SUSTAINED A FRACTURED RIB AND INJURY TO THE HEAD. THE VEHICLE WAS DESTROYED.  THE FAILURE AND THE CURRENT MILEAGE WAS 42,000.  *TR |
| 10746722 | CHEVROLET | EQUINOX | 2010 | 2015-07-08 | I WAS DRIVING IN TRAFFIC WHEN THE CAR IN FRONT OF ME STOPPED ABRUPTLY IN FRONT OF ME. I REAR ENDED HIM GOING ABOUT 40 MILES PER HOUR . MY AIR BAGS DID NOT INFLATE . I EXITED THE CAR AND BEGAN SPEAKING WITH THE OTHER DRIVER WHEN WE HEARD A POP IN MY CAR. SMOKE STARTING COMING OUT OF THE ENGINE COMPARTMENT AND THEN ALMOST IMMEDIATELY MY CAR ENGINE CAUGHT ON FIRE.  THE CAR WAS NOT RUNNING.  I INJURED MY KNEE AND SHOULDER IN THE INCIDENT. |
| 10809547 | CHEVROLET | EQUINOX | 2010 | 2015-12-08 | TL* THE CONTACT OWNED A 2010 CHEVROLET EQUINOX. WHILE DRIVING 35 MPH, THE CONTACT ATTEMPTED TO AVOID HITTING A DEER AND STRUCK THE GUARDRAIL. THE AIR BAGS FAILED TO DEPLOY. THE EMERGENCY ONSTAR SYSTEM RESPONDED AND CALLED THE POLICE AND AMBULANCE. THE VEHICLE WAS TOWED TO A COLLISON CENTER WHERE THE VEHICLE WAS DIAGNOSED AS DESTROYED. THE CONTACT SUSTAINED INJURIES TO THE HEAD, NECK, BACK, AND HANDS. A POLICE REPORT WAS FILED. THE MANUFACTURER WAS NOTIFIED. THE APPROXIMATE FAILURE MILEAGE WAS 57,000. |
| 10928817 | CHEVROLET | EQUINOX | 2010 | 2016-11-25 | AIRBAGS DID NOT DEPLOY WHEN INVOLVED IN CAR ACCIDENT ON 11/25/2016 |
| 10649152 | CHEVROLET | SILVERADO | 2010 | 2013-11-14 | LETTER FROM CONGRESSMAN WITTMAN ON BEHALF OF CONSTITUENT RE AIRBAGS THAT DID NOT DEPLOY. *SMD  2010 CHEVROLET SILVERADO. THE CONSUMER WAS INVOLVED IN AN ACCIDENT. AS A RESULT,  SHE SUSTAINED A BRAIN INJURY.*JB |
| 10315713 | CHEVROLET | TRAVERSE | 2010 | 2010-02-25 | 1. STOPPED AT RED LIGHT IN 2010 CHEVROLET TRAVERSE SUV AND REAR ENDED BY A NISSAN FRONTIER PICK UP TRUCK TRAVELING AT A HIGH RATE OF SPEED. DRIVER'S SEAT BELT ON BUT, DRIVER'S HEAD THROWN AGAINST WINDSHIELD AND THEN, DRIVER'S BODY SLAMMED AGAINST THE BACK OF THE DRIVER'S SEAT WHICH WAS FORCED BACK TO A RECLINING POSITION. AIRBAG DID NOT DEPLOY.  2. SEAT BELT FAILED TO PREVENT DRIVER'S HEAD FROM HITTING WINDSHIELD IF IT IS SUPPOSED TO IN THIS TYPE OF COLLISION. DID THE SEAT BACK ACT PROPERLY IN SUCH A COLLISION? WAS THE AIRBAG SUPPOSED TO DEPLOY IN THIS TYPE OF COLLISION.  3.  IN BODY SHOP TO REPAIR TO PRE-ACCIDENT CONDITION . *TR |
| 10637484 | CHEVROLET | TRAVERSE | 2010 | 2010-07-19 | WAS GETTING READY TO PARK ON THE STREET WHEN A CAR HIT ME,I HIT A CAR IN FRONT OF ME,MY CAR WAS THROWN ON THE SIDE WALK,I WAS PASS OUT FOR A FEW SECONDS,BUMP MY HEAD,MY CAR WAS TOTAL, FRONT AND REAR,SURPRISINGLY MY AIR BAG DID NOT DEPLOY TO HELP PROTECT ME FROM MY INJURIES I GOT.  *TR |
| 10749869 | CHEVROLET | TRAVERSE | 2010 | 2015-08-06 | TL* THE CONTACT OWNS A 2010 CHEVROLET TRAVERSE. WHILE DRIVING AT AN UNKNOWN SPEED ATTEMPTING TO MAKE A LEFT TURN, ANOTHER VEHICLE CRASHED INTO THE CONTACTS VEHICLE. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED UNKNOWN INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO A SALVAGE YARD. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE APPROXIMATE FAILURE MILEAGE WAS 75,000. |
| 11210243 | CHEVROLET | TRAVERSE | 2010 | 2018-12-01 | TL* THE CONTACT OWNS A 2010 CHEVROLET TRAVERSE. WHILE DRIVING 30 MPH, THE VEHICLE WAS HIT BY ANOTHER VEHICLE COMING FROM THE OPPOSITE DIRECTION AS IT WAS MAKING A TURN INTO A PARKING LOT. THE CONTACT WAS INJURED BUT NOT TRANSPORTED BY AMBULANCE TO A HOSPITAL SHE WENT TO THE DOCTOR THE SAME DAY DAY. A POLICE REPORT WAS FILED  THE VEHICLE WAS TOTALED AND TOWED AWAY TO A SALVAGE LOT. THE FRONTAL AIR BAGS DID NOT DEPLOY DURING THE CRASH.THE FAILURE MILEAGE WAS 103,000. TF |
| 10574295 | GMC | TERRAIN | 2010 | 2014-02-21 | INVOLVED IN A 21 CAR PILE UP IN THE UPPER PENINSULA DURING A COMPLETE WHITE OUT. WE WERE ONLY TRAVELING APPROXIMATELY 25 MILES PER HOUR BUT, WE DID HAVE SERIOUS IMPACT IN THE FRONT, AFTER HITTING A TRAILER AND ALSO SERIOUS IMPACT FROM BEHIND WHEN HIT BY A TRUCK AND TRAILER. NO AIRBAGS DEPLOYED. THE TRUCK TRAVELING AHEAD OF US, THAT WE HIT, THE AIRBAGS DID DEPLOY. MY FATHER AND BROTHER, WHO WERE ALSO BOTH DRIVING CHEVY TRUCKS, AND ALSO HAD SERIOUS FRONT END DAMAGE DURING THE SAME ACCIDENT, THEIR AIRBAGS DID NOT DEPLOY EITHER. *TR |

| 10810541 | GMC | TERRAIN | 2010 | 2015-12-05 | TL* THE CONTACT OWNED A 2010 GMC TERRAIN. WHILE DRIVING 45 MPH, THE CONTACT CRASHED INTO THE REAR OF ANOTHER VEHICLE AND THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED FACIAL INJURIES THAT REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE VIN WAS INVALID. THE APPROXIMATE FAILURE MILEAGE WAS 51,000. |
| 10547172 | BUICK | ENCLAVE | 2009 | 2009-08-16 | GOT INTO A MAJOR ACCIDENT TWO CARS RAN INTO MY VEHICLE AND EVERYONE WAS INJURED AND THE AIR BAGS DID NOT COME ON TO PREVENT THAT. I HAVE INSURANCE AND POLICE REPORT THAT STATES THIS. *TA |
| 10572633 | CHEVROLET | EQUINOX | 2009 | 2014-03-11 | I HAD PASSED OUT WHILE DRIVING TO WORK DUE TO LOW BLOOD SUGAR. THE FRONT OF MY VEHICLE CRASHED INTO A STRUCTURE AT APPROXIMATELY 55/60 MPH. NONE OF MY AIRBAGS EVER DEPLOYED. I WAS TRANSPORTED TO THE HOSPITAL. *TR |
| 10331539 | CHEVROLET | SILVERADO | 2009 | 2010-04-19 | TL* THE CONTACT OWNS A 2009 CHEVROLET SILVERADO. THE CONTACT STATED THAT WHILE TRAVELING APPROXIMATELY 35 MPH AND APPROACHING AN INTERSECTION, THE VEHICLE ABNORMALLY VEERED OFF THE ROAD. THE VEHICLE PROCEED TO TRAVEL OFF THE ROADWAY AND WENT AIRBORNE OVER AN EMBANKMENT BEFORE CRASHING INTO A DITCH. THE AIR BAGS DID NOT DEPLOY UPON IMPACT AND THE CONTACT SUSTAINED MODERATE TO SEVER INJURIES. THE CONTACT WAS TRANSPORTED TO THE HOSPITAL VIA AMBULANCE AND A POLICE REPORT WAS FILED ACCORDINGLY. THE VEHICLE WAS TOWED TO A CHEVROLET DEALER FOR REPAIRS. THE FAILURE WAS 13,800.  UPDATED 7/16/10 *CN. UPDATED 08/18/10 |
| 10447821 | CHEVROLET | SILVERADO | 2009 | 2011-10-13 | TL* THE CONTACT OWNS A 2009 CHEVROLET SILVERADO. THE CONTACT STATED THAT WHILE DRIVING 55 MPH, HE FELL ASLEEP AND LOST CONTROL OF THE VEHICLE. THE VEHICLE CRASHED INTO A CEMENT WALL AND THE FRONT DRIVERS AIR BAG DID NOT DEPLOY. THE CONTACT SUFFERED HEAD INJURIES DURING THE CRASH. THE VEHICLE WAS REPAIRED. THE MANUFACTURER INVESTIGATED THE FAILURE AND CONCLUDED THAT THE AIR BAG PERFORMED AS DESIGNED. THE FAILURE MILEAGE WAS 46,000 AND THE CURRENT MILEAGE WAS 55,000. |
| 10496236 | CHEVROLET | SILVERADO | 2009 | 2013-02-01 | 2009 CHEVY SILVERADO LOST TRACTION ON HIGHWAY DURING SLIPPERY ROAD CONDITIONS, VEHICLE SPUN OUT AND HIT A METAL ROPED FENCE HEAD ON AND ALSO WENT ACROSS THE MEDIAN AND SLAMMED THE FRONT END OF VEHICLE INTO A GUARD RAIL STOPPING IT INSTANTLY FROM GOING INTO ON COMING TRAFFIC. THE VEHICLES DAMAGE WAS ON THE FRONT END DIRECTLY IN THE CENTER CAUSING A WEDGE INTO THE RADIATOR, ENGINE AND BENT THE FRONT OF THE FRAME. THE IMPACT WAS VERY LOUD AND SOLID. THE IMPACT CAUSED THE TRUCK TO, STAND ON THE FRONT OF VEHICLE, SLAMMING THE BACK END OF THE VEHICLE ON THE GROUND WITH GREAT FORCE. THE AIRBAG DIDN'T DEPLOY WHICH AT THE SPEED OF AROUND 60 MPH AND THE PLACE THE VEHICLE WAS HIT IN, MAKES ME VERY CONCERNED ON THE SAFETY OF THIS VEHICLE. MY 5 YEAR OLD SON SAID HIS RIGHT ARM WAS HURTING AFTER THE ACCIDENT AND WITH IN THE HOUR OF HAVING THE ACCIDENT MYSELF ENDED UP IN THE HOSPITAL WITH A STIFF NECK AND A VERY SOAR AND BRUISED BACK, I WAS RELEASED WITH MINOR INJURIES AND I CONSIDER MYSELF LUCKY. PLEASE LET ME KNOW IF ANYTHING CAN BE DONE ABOUT THIS SITUATION AND THE SAFETY OF MYSELF AND MY SON. *TR |
| 11340458 | CHEVROLET | SUBURBAN | 2009 | 2020-02-17 | TL* THE CONTACT OWNS A 2009 CHEVROLET SUBURBAN. THE CONTACT STATED THAT WHILE HIS WIFE WAS DRIVING AT A LOW RATE OF SPEED, SHE ATTEMPTED TO MAKE A LEFT TURN AND WAS HIT BY A CAR COMING FROM THE OPPOSITE SIDE. THE AIR BAGS DID NOT DEPLOY UPON IMPACT. THE DRIVER WAS TREATED FOR WHIPLASH AND MULTIPLE BULGED DISKS IN HER BACK WHICH WOULD REQUIRE SURGERY. A POLICE REPORT WAS NOT FILED. THE DRIVER WAS ABLE TO DRIVE THE VEHICLE HOME AFTER THE ACCIDENT. THE CONTACT STATED THAT THE VEHICLE HAD BEEN INCLUDED IN NHTSA CAMPAIGN NUMBER: 16V381000 (AIR BAGS); HOWEVER, THE PARTS TO DO THE REPAIR WERE UNAVAILABLE. THE DEALER NOR THE MANUFACTURER HAD BEEN NOTIFIED OF THE FAILURE. THE VEHICLE HAD YET TO BE REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 167,000. |
| 10944639 | CHEVROLET | TRAILBLAZER | 2009 | 2017-01-06 | TL* THE CONTACT OWNED A 2009 CHEVROLET TRAILBLAZER. WHILE DRIVING 70 MPH, THE CONTACT'S VEHICLE REAR ENDED ANOTHER VEHICLE. IN TURN, THE CONTACT'S VEHICLE WAS STRUCK BY A SEMI-TRUCK. THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED INJURIES TO THE HEAD, KNEES, AND ARMS, WHICH REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS DESTROYED AND TOWED. THE MANUFACTURER WAS NOT MADE AWARE OF THE CRASH. THE FAILURE MILEAGE WAS 135,000. |
| 11184731 | CHEVROLET | TRAILBLAZER | 2009 | 2019-02-22 | TRAVELING ON HIGHWAY APPLIED BRAKES AND HIT CAR IN REAR. AIR BAGS NOT DEPLOYED. |
| 10375125 | CHEVROLET | TRAVERSE | 2009 | 2010-12-17 | TL* THE CONTACT OWNS A 2009 CHEVROLET TRAVERSE. THE CONTACT APPLIED THE BRAKES WHILE DRIVING 35 MPH AND THE VEHICLE CRASH INTO THE REAR END OF THE VEHICLE IN FRONT. THE AIR BAG DID NOT DEPLOY. THE CONTACT SUFFERED A FRACTURED STERNUM BY HITTING THE STEERING WHEEL. THE CONTACT STATED THAT THE SEAT BELT DID NOT LOCK DURING THE CRASH. THE CONTACT WAS TAKEN TO THE HOSPITAL. THE MANUFACTURER STATED THAT THEY WILL PERFORM AN INVESTIGATION REGARDING THE SEAT BELT. THE FAILURE MILEAGE WAS 30,000. |

| | | | | | |
|---|---|---|---|---|---|
| 10501339 | CHEVROLET | TRAVERSE | 2009 | 2013-02-22 | TL* THE CONTACT OWNS A 2009 CHEVROLET TRAVERSE. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 55 MPH, CRASHED INTO A HIGHWAY BARRIER WHILE ATTEMPTING TO AVOID CRASHING INTO ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. THE VEHICLE WAS TOWED TO A SALVAGE YARD. THE POLICE REPORTED TO THE SCENE AND A REPORT WAS FILED. THE CONTACT WAS TRANSPORTED TO THE HOSPITAL VIA AMBULANCE FOR TREATMENT OF INJURIES TO THE BACK. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE VIN WAS NOT AVAILABLE. THE APPROXIMATE FAILURE MILEAGE WAS 48,000. |
| 10620828 | GMC | ACADIA | 2009 | 2014-07-12 | TL* THE CONTACT OWNS A 2009 GMC ACADIA. THE CONTACT STATED WHILE DRIVING 20 MPH THE FRONT PASSENGER SIDE TIRE BLEW AND THE CONTACT LOST CONTROL OF THE VEHICLE, CRASHING INTO A TWO FOOT DITCH. THE VEHICLE THEN WENT THROUGH A ROW OF HEDGES AND CRASHED INTO A TREE ON THE DRIVER'S SIDE. THE SEAT BELT DID NOT RESTRAIN THE CONTACT AND THE AIR BAGS DID NOT DEPLOY. THE REAR SEATS COLLAPSED AS WELL. THE CONTACT SUSTAINED A SEVERE CONCUSSION FROM HITTING HER HEAD ON THE WINDSHIELD, BRUISED LEGS, ARM, FRACTURED NOSE, AND BRUISING TO THE FACE. THE CONTACT WAS FOUND LYING OVER THE CONSOLE AND WAS TAKEN TO THE EMERGENCY ROOM. A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS TOWED TO A COLLISION SHOP. THE CONTACT LATER RECEIVED NOTIFICATION OF NHTSA RECALL CAMPAIGN NUMBER 14V266000 (SEAT BELT) HOWEVER, THE PART NEEDED FOR THE REPAIR WAS NOT AVAILABLE. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 120,000. |
| 11308898 | GMC | ACADIA | 2009 | 2020-02-07 | I WAS DRIVING ON THE MAIN HIGHWAY GOING 35MPH AND ANOTHER VEHICLE PULLED OUT I FRONT OF ME CAUSING ME TO HIT HER WITH MY FRONT END. MY AIRBAGS NEVER DEPLOYED BUT MY SERVICE AIRBAGS LIGHT IS ON AS WELL AS THE MESSAGE ON MY BOARD. |
| 10986352 | GMC | YUKON | 2009 | 2017-03-13 | TL* THE CONTACT OWNS A 2009 GMC YUKON. WHILE DRIVING 35 MPH, THE CONTACT CRASHED INTO THE DRIVER'S SIDE DOOR OF ANOTHER VEHICLE, WHICH THEN ROLLED OVER. THE AIR BAGS FAILED TO DEPLOY. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE CONTACT SUSTAINED INJURIES TO THE LEFT FOOT, LEFT KNEE, A CONCUSSION, CHEST PAINS, AND A BLACK EYE. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO A DEALER WHERE THE FAILURE WAS DIAGNOSED. THE DRIVER OF THE OTHER VEHICLE ALSO SUSTAINED MINOR INJURIES. THE CONTACT HAD NOT RECEIVED NOTIFICATION OF NHTSA CAMPAIGN NUMBER: 16V381000 (AIR BAGS), WHICH WAS ASSOCIATED WITH THE VIN. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 69,000. |
| 11055457 | BUICK | ENCLAVE | 2008 | 2017-12-14 | TL* THE CONTACT OWNS A 2008 BUICK ENCLAVE. WHILE DRIVING APPROXIMATELY 20 MPH, THE CONTACT LOST CONTROL AND CRASHED HEAD ON INTO ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED INJURIES TO THE HEAD, WHICH REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS TOWED TO THE CONTACT'S RESIDENCE. THE CONTACT WAS NOT SURE IF THE VEHICLE WAS DESTROYED. A LOCAL DEALER AND MANUFACTURER WERE NOT CONTACTED. THE VIN AND FAILURE MILEAGE WERE NOT AVAILABLE. |
| 10632511 | CHEVROLET | EQUINOX | 2008 | 2014-05-14 | TL* THE CONTACT OWNS A 2008 CHEVROLET EQUINOX. THE CONTACT STATED THAT WHILE DRIVING AT AN UNKNOWN SPEED, THE VEHICLE HYDRO-PLANED AND CRASHED. THE CONTACT MENTIONED THAT NONE OF THE AIR BAGS DEPLOYED. A POLICE REPORT WAS FILED AND INJURIES WERE SUSTAINED. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE VEHICLE WAS INSPECTED AND THE TECHNICIAN STATED THAT THE AIR BAGS WERE NOT EXPECTED TO DEPLOY. THE FAILURE MILEAGE WAS 91,000. PAM: UPDATED 09/25/14 *BF  UPDATED 10/23/2014*LJ  THE CONSUMER STATED THE KEY WAS STUCK IN THE IGNITION. UPDATED 12/08/14.*JB. UPDATED 12/28/15.*JB  THE CONSUMER STATED GM CLAIMED TO HAVE INVESTIGATED THE CRASH AND STATED THE AIR BAG WAS NOT DESIGNED TO DEPLOY IN THE TYPE OF CRASH THE CONSUMER WAS INVOLVED IN. UPDATED 01/05/16.*JB  UPDATED 06/02/16.*JB *JS |
| 10442223 | CHEVROLET | SILVERADO | 2008 | 2011-12-30 | TL* THE CONTACT OWNS A 2008 CHEVROLET SILVERADO. THE CONTACT LOST CONTROL OF THE VEHICLE AND CRASHED INTO A TREE.  NEITHER THE DRIVER NOR THE PASSENGER SIDE AIR BAGS DEPLOYED.  THE VEHICLE WAS DESTROYED AND THE CONTACT SUSTAINED HEAD AND BACK INJURIES.  THE CONTACT DID CALL THE MANUFACTURER.  THE FAILURE MILEAGE WAS 66,000. UPDATED 02/15/12*LJ  UPDATED 02/24/12 |
| 10565014 | CHEVROLET | SILVERADO | 2008 | 2014-02-18 | 7:10 A.M. TUESDAY MORNING, I HIT BLACK ICE AND LOST CONTROL OF MY VEHICLE. I PROCEEDED TO SLIDE UNCONTROLLABLY ACROSS THE ROAD. I THEN HIT A CLIFF WITH THE FRONT END OF MY VEHICLE; ONCE I HIT THE THE CLIFF MY VEHICLE THEN FLIPPED IN THE AIR AND LANDED ON THE DRIVER SIDE OF THE VEHICLE. ONCE I HAD LANDED ON THE PAVEMENT, ANOTHER VEHICLE CAME ALONG PROCEEDING AT AROUND 45 MPH. THE VEHICLE PROCEEDED TO HIT THE HOOD OF MY VEHICLE. THE DRIVER HIT MY HOOD DIRECTLY WITH THE FRONT END OF HIS VEHICLE. DURING THE WHOLE INCIDENT, I HAD MY SEATBELT ON, ALSO IT WAS INDICATED THAT MY AIR BAGS WERE ON AND FUNCTIONING CORRECTLY. THE VEHICLE ITSELF WAS TOTALED AND I SUSTAINED WHIPLASH, A SLIGHT CONCUSSION, SEVERE BRUISES AND CUTS, AND ALSO RECEIVED A CHIPPED TOOTH FROM HITTING THE STEERING WHEEL WITH MY FACE.  *TR |

| | | | | | |
|---|---|---|---|---|---|
| 10672875 | CHEVROLET | SILVERADO | 2008 | 2015-01-07 | I WAS ON MY WAY HOME FROM WORK AFTER WORKING A VERY LONG DAY AND I FELL ASLEEP AT THE WHEEL AND WENT OFF THE SIDE OF 225. ALL I REMEMBER WAS WAKING UP IN BETWEEN TREES ABOUT TWO FEET AWAY FROM SIMS BAYOU. MY VEHICLE WAS TOTALED. NO AIR BAGS DEPLOYED. *TR |
| 10678613 | CHEVROLET | SILVERADO | 2008 | 2015-01-16 | 2008 CHEVY SILVERADO 4X4 WT. DRIVER SIDE AIRBAG DID NOT DEPLOY DURING CRASH. VEHICLE IMPACT WAS ON THE FRONT. A FATALITY OCCURRED DURING THIS CRASH. (PASSENGER IN OTHER VEHICLE) POINT OF IMPACT WAS FRONT OF SILVERADO INTO PASSENGER SIDE OF OTHER VEHICLE. *TR |
| 10681040 | CHEVROLET | SILVERADO | 2008 | 2015-01-21 | TL* THE CONTACT OWNS A 2008 CHEVROLET SILVERADO. THE CONTACT STATED THAT THE AIR BAGS FAILED TO DEPLOY AFTER BEING INVOLVED IN A CRASH. THE SPECIFICS OF THE CRASH WERE NOT AVAILABLE. A POLICE REPORT WAS FILED AND THE DRIVER SUSTAINED INJURIES TO THE HEAD, THE NECK, AND THE BACK THAT DID NOT REQUIRE MEDICAL ATTENTION. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 111,687. |
| 10761080 | CHEVROLET | SILVERADO | 2008 | 2015-08-25 | TL*THE CONTACT OWNED A 2008 CHEVROLET SILVERADO. WHILE DRIVING 65 MPH, THE CONTACT FELL ASLEEP BEHIND THE WHEEL AND THE VEHICLE DROVE OFF THE ROAD. THE CONTACT CRASHED INTO THE SUPPORT CABLES ON THE SIDE OF THE ROAD. THE CONTACT STATED THAT THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS FILED. THERE WERE NO INJURIES. THE VEHICLE WAS TOWED TO AN INDEPENDENT MECHANIC WHERE IT WAS DEEMED DESTROYED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 127,000. |
| 10261711 | CHEVROLET | TRAILBLAZER | 2008 | 2009-03-07 | TL*THE CONTACT OWNS A 2008 CHEVROLET TRAILBLAZER. WHILE DRIVING 35 MPH, THE CONTACT WAS INVOLVED IN A HEAD-ON CRASH. THE ENTIRE FRONT END OF HIS VEHICLE WAS CRUSHED AND THE INSURANCE COMPANY DECLARED THE VEHICLE AS DESTROYED. THE SEAT BELTS PROPERLY RESTRAINED THE CONTACT, BUT THE AIR BAGS FAILED TO DEPLOY. THERE WERE NO INJURIES, BUT A POLICE REPORT WAS FILED. THE FAILURE MILEAGE WAS 6,500. |
| 10679071 | CHEVROLET | TRAILBLAZER | 2008 | 2015-01-18 | THE VEHICLE LOST CONTROL ON BLACK ICE. THE STEERING WHEEL AND BRAKES LOCKED UP AND THE TRAILBLAZER HIT A TREE. THE AIRBAG NEVER DEPLOYED. THE VEHICLE'S FRAME WAS BENT. THE SUV WAS CONSIDERED A TOTAL LOSS. THE VEHICLE PICKED UP A LITTLE MORE SPEED WHILE ON THE ICE, BUT NO MORE THAN 30 MPH. *TR |
| 11143666 | CHEVROLET | TRAILBLAZER | 2008 | 2018-10-19 | WAS TRAVELING 40 MPH AND WAS HIT HEAD ON BY ANOTHER VEHICLE. NONE OF THE AIR BAGS DEPLOYED. WAS ON A CITY STREET WITH A 40 MPH SPEED LIMIT. GOING STRAIGHT. |
| 11324166 | CHEVROLET | TRAILBLAZER | 2008 | 2020-05-05 | TL* THE CONTACT OWNED A 2008 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT HE CRASHED AND REAR ENDED INTO ANOTHER VEHICLE STOPPED AT A STOP LIGHT AT 53 MPH. THE CONTACT STATED THAT THE AIR BAGS FAILED TO DEPLOY AS WELL AS THE SEAT BELT PRETENSIONER FAILED TO ENGAGE. THE CONTACT SUSTAINED A SEVERE CONCUSSION & ALMOST BIT HIS TONGUE OFF WITH HIS HEAD SMASHING INTO THE WINDSHIELD. HE ALSO SUSTAINED CUTS AND BRUISES ON HIS LOWER BODY AND LEGS AND A BRUISED NECK. THERE WAS A PASSENGER IN THE OTHER VEHICLE THAT HAD TO BE TRANSPORTED TO THE HOSPITAL WITH INJURIES AS WELL. THE VEHICLE WAS TOTALED WITH THE WHOLE FRONT SMASHED IN UP TO THE WINDSHIELD. THE DEALER AND MANUFACTURER HAD NOT BEEN CONTACTED YET. THE FAILURE MILEAGE WAS 220,000. THE VIN WAS NOT AVAILABLE. *LN*JB |
| 10615043 | GMC | ACADIA | 2008 | 2013-04-30 | TL* THE CONTACT OWNS A 2008 GMC ACADIA. THE CONTACT STATED THAT WHILE DRIVING 50 MPH, THE VEHICLE WAS INVOLVED IN A FRONT END CRASH IN WHICH NO AIR BAGS DEPLOYED. A POLICE REPORT WAS FILED AND NO INJURIES WERE SUSTAINED. THE VEHICLE WAS TAKEN TO A DEALER. THE FAILURE MILEAGE WAS 113,000 AND THE CURRENT MILEAGE WAS 132,653. |
| 11066850 | GMC | ACADIA | 2008 | 2015-08-21 | MY WIFE FELL ASLEEP RAN OFF THE ROAD STRUCK A UTILITY POLE AND A LARGE DIRT EMBANKMENT. THE AIR BAGS DID NOT DEPLOY NOR DID THE BELT TENSIONERS SHE HIT THE STEERING COLUMN SO HARD SHE IT BROKE THE COLUMN. AND BROKE HER STERNUM. OUR GRANDDAUGHTER WAS IN THE FRONT PASSENGER SEAT. THE AIR BAG NOR THE TENNSIONERS DEPLOYED RESULTING HER BACK BEING BROKEN IN TWO PLACES AND ALSO HER FOOT WAS BROKEN. I CONTACTED GENERAL MOTORS AND THEY SENT A MAN TO DOWNLOAD THE COMPUTER INFORMATION THEY SENT ME A COPY OF THE INFO AND LATER CONTACTED ME SAYING THE INFO SHOWED EVERYTHING WAS WORKING PROPERLY. PRYOR TO THE ACCIDENT I HAD THE AUTO IN FOR THE RECALL ON THIS PROBLEM. I ALSO HAD IT IN FOR ANOTHER RECALL FOR THE HEADLIGHTS AND THEY HAD TO REMOVE A LARGE PART OF THE FRONT TO DO THE REPAIR. AND DONE A POOR JOB OF PUTTING IT BACK TOGETHER I RETURNED IT AND THEY FINALLY GOT IT RIGHT, IN THE MEAN TIME THE SERVICE AIR BAG LIGHT CAME ON AND THEY REPAIRED THAT LATER AFTER THE ACCIDENT I WENT BACK TO THE DEALER AND QUESTIONED THE BODY SHOP MANAGER ABOUT PUTTING IT BACK TOGETHER PROPERLY AND THEN TOLD HIM ABOUT THE ACCIDENT THEN HE HAD NOTHING ELSE TO SAY. THE AUTO WAS A TOTAL LOSS AFTER A LENGTH OF TIME WIFE AND GRANDDAUGHTER GOT OUT OF HOSPITAL. THIS CAR WAS RECALLED FOR THIS VERY REASON. MY INSURANCE COMPANY PAID MY GRANDDAUGHTER $95,000 FOR HER INJURIES AND COMMENTED THAT THEY WOULD PROBABLY SUE GM TO GET THAT BACK. |

| | | | | | |
|---|---|---|---|---|---|
| 11310375 | GMC | ACADIA | 2008 | 2015-11-26 | VEHICLE WAS SOUTHBOUND ON COUNTY ROAD AND ATTEMPTED TO MAKE A RIGHT TURN AT THE INTERSECTION, WHEN THE CAR STRUCK THE SOUTH EMBANKMENT OF THE T INTERSECTION, AS DRIVER WAS UNABLE TO NAVIGATE THE TURN. NONE OF THE SIDE OR FRONT AIRBAGS IN THE CAR DEPLOYED AS A RESULT OF THE CRASH. I AM ALSO UNSURE IF THE SEAT BELT HAD OPERATED CORRECTLY (SEAT BELT WAS BEING WORN AT THE TIME OF THE CRASH). THE DRIVER'S HEAD HIT THE SIDE WINDOW AND AS A RESULT HE SUSTAINED A HEAD INJURY AND AN EYE INJURY RESULTING IN OPTIC NERVE DAMAGE AND COMPLETE LOSS OF VISION IN THE EYE. I UNDERSTAND THERE WERE PROBLEMS WITH THE AIRBAGS ON THESE VEHICLES WITH A POSSIBLE RECALL ISSUED. I DO HAVE ALL THE CORRESPONDING ACCIDENT REPORTS, MEDICAL REPORTS, ETC. |
| 10667413 | GMC | ENVOY | 2008 | 2014-12-19 | I WAS IN AN AUTO ACCIDENT ON A MAJOR HIGHWAY AND UPON CRASHING MY AIRBAG DIDN'T DEPLOY AND MY FACE SMASHED INTO THE STEERING WHEEL. |
| 11143613 | GMC | ENVOY | 2008 | 2018-10-24 | ON 10/24/2018 WHILE DRIVING MY 2008 GMC ENVOY SLT, I WAS INVOLVED IN A HEAD-ON COLLISION WHICH RESULTED IN MY CAR BEING TOTALED. NONE OF MY AIR BAGS DEPLOYED. |
| 11080754 | GMC | YUKON XL | 2008 | 2017-01-08 | TL* THE CONTACT OWNS A 2008 GMC YUKON XL. WHILE DRIVING 65 MPH, THE CONTACT NOTICED THAT ANOTHER VEHICLE WAS SWERVING TOWARDS HER VEHICLE. THE CONTACT HAD TO DEPRESS THE ACCELERATOR PEDAL TO INCREASE SPEED AND AVOID A COLLISION; HOWEVER, THE OTHER VEHICLE LOST CONTROL AND CRASHED INTO THE CONTACT'S VEHICLE. THE FRONT FRAME, FRONT PASSENGER SIDE, AND REAR FRAME OF THE CONTACT'S VEHICLE WERE DAMAGED. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT WAS KNOCKED UNCONSCIOUS AND REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED FROM THE SCENE. THE CONTACT STATED THAT THE VEHICLE WAS INSPECTED BY A MECHANIC FRIEND WHO CONFIRMED THE AIR BAGS FAILED TO DEPLOY. THE VEHICLE WAS NOT REPAIRED. THE DEALER WAS NOT CONTACTED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE AND A CASE WAS OPENED. THE CONTACT STATED THAT THE CASE HAD CLOSED. THE APPROXIMATE FAILURE MILEAGE WAS 150,000. |
| 10207326 | CADILLAC | ESCALADE | 2007 | 2007-10-06 | TL* THE CONTACT OWNED A 2007 CADILLAC ESCALADE. THE CONTACT FELL ASLEEP WHILE DRIVING AT AN UNKNOWN SPEED. THE VEHICLE STRUCK A DITCH, WENT AIRBORNE, AND ROLLED OVER SEVERAL TIMES. A POLICE REPORT WAS FILED. ALL FOUR WHEELS AND TIRES CAME OFF THE VEHICLE AND EACH WINDOW WAS BROKEN AND SMASHED. NONE OF THE EIGHT AIR BAGS DEPLOYED. THE CONTACT SUSTAINED A BROKEN COLLAR BONE, SHOULDER BONE, ROTARY CUP, AND A BROKEN HAND IN TWO PLACES. THE INSURANCE COMPANY STATED THAT THE VEHICLE WAS DESTROYED. CADILLAC HAS BEEN NOTIFIED AND WILL INSPECT THE VEHICLE. THE CURRENT AND FAILURE MILEAGES WERE 28,000. |
| 10226642 | CADILLAC | ESCALADE | 2007 | 2008-04-26 | TL* THE CONTACT OWNS A 2007 CADILLAC ESCALADE. WHILE DRIVING 35 MPH IN THE RAIN, THE VEHICLE HYDROPLANED AND CRASHED INTO SEVERAL TREES. THE VEHICLE SPUN AROUND AND ENDED UP FACING THE OPPOSITE DIRECTION. THE AIR BAGS FAILED TO DEPLOY AND THE CONTACT WAS INJURED. A POLICE REPORT WAS FILED. THE FAILURE MILEAGE WAS UNKNOWN. |
| 10292325 | CADILLAC | ESCALADE | 2007 | 2009-11-14 | TL* THE CONTACT OWNS A 2007 CADILLAC ESCALADE. WHILE DRIVING SHE CRASHED INTO A TREE. THE ENTIRE FRONT-END OF THE VEHICLE WAS DAMAGED, AND NONE OF THE AIR BAGS DEPLOYED. CONSEQUENTLY SHE RECEIVED INJURIES TO HER NECK. A POLICE REPORT WAS FILED. ALSO THE FRONT BRAKE PADS FRACTURED WITHIN THE FIRST TWO MONTHS OF PURCHASING THE VEHICLE. THE BRAKE PADS WERE REPLACED UNDER THE SERVICE WARRANTY. THE FAILURE AND CURRENT MILEAGES WERE 58,000. |
| 10317216 | CHEVROLET | EQUINOX | 2007 | 2010-03-03 | I WAS IN AN ACCIDENT, WERE I STRUCK TWO HORSES THAT RUN OUT INTO THE HIGHWAY IN FRONT OF ME IN MY 2007 CHEVROLET EQUINOX LS1. THE FIRST HORSE STRUCK MY PASSENGER SIDE FRONT QUARTER PANEL AND THIS CAUSED ME TO SWERVE INTO ANOTHER HORSE ON THE DRIVER SIDE. I WAS TRAVELING AT APPROXIMATELY 50 MPH AND THE DAMAGE TO THE FRONT OF MY CAR WAS VERY SERIOUS AND MY COMPLAINT IS THAT THE AIRBAGS NEVER DEPLOYED DURING THE CRASH. I KNOW THAT THE AIRBAGS ARE SET OF BY SPECIFIC SPEEDS AND DAMAGE BUT MY WHOLE FRONT OF MY 2007 CHEVROLET EQUINOX LS WAS NEARLY REMOVED. I WAS WEARING MY SAFETY BELT AND IT OFFERED LITTLE HELP SINCE I WAS HIT TWICE FROM OPPOSITE SIDES. I WAS TOLD BY RESPONDING EMERGENCY CREW THAT THE AIRBAG MUST HAVE BEEN FAULTY SINCE IT DID NOT DEPLOY. *TR |
| 10370521 | CHEVROLET | EQUINOX | 2007 | 2010-12-13 | AUTOMOBILE ACCIDENT AT ROUGHLY 20 MILES AN HOUR IN A 2007 CHEVY EQUINOX MOSTLY FRONT END AND DRIVER SIDE DAMAGE. THE AIR BAGS DID NOT DEPLOY. MAJOR FRONT END DAMAGE SUSTAINED. *TR |
| 11128142 | CHEVROLET | EQUINOX | 2007 | 2018-05-28 | TL* THE CONTACT OWNED A 2007 CHEVROLET EQUINOX. WHILE DRIVING 20 MPH, THE CONTACT CRASHED INTO A CONCRETE EMBANKMENT TO AVOID COLLIDING WITH ANOTHER VEHICLE. THE AIR-BAG FAILED TO DEPLOY. THE CONTACT SUSTAINED INJURIES TO THE RIGHT SHOULDER AND LEFT ARM THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS DESTROYED AND TOWED TO A TOW LOT. THE CONTACT CALLED ALLEN TILLERY AUTO (LOCATED AT 4573 CENTRAL AVE, HOT SPRING, AR 71913, (501) 881-4160) AND WAS INFORMED THAT THE AIR BAG SHOULD HAVE DEPLOYED SINCE IT WAS JUST INSTALLED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE AND DID NOT ASSIST. THE APPROXIMATE FAILURE MILEAGE WAS 135,000. |

| | | | | | |
|---|---|---|---|---|---|
| 10331536 | CHEVROLET | SILVERADO | 2007 | 2007-09-07 | TL* THE CONTACT OWNS A 2007 CHEVROLET SILVERADO. THE CONTACT STATED THAT WHILE TRAVELING APPROXIMATELY 35 MPH, A VEHICLE AHEAD OF HIM MADE AN UNEXPECTED LEFT TURN. THE CONTACT CRASHED INTO THE THE PRECEDING VEHICLE AND THE AIR BAGS DID NOT DEPLOY UPON IMPACT. THE CONTACT WAS INJURED AND A POLICE REPORT WAS FILED ACCORDINGLY. THE VEHICLE WAS TOWED TO A LOCAL DEALER WHERE UNKNOWN REPAIRS WERE MADE THE VEHICLE WAS TRADED IN. THE VIN WAS NOT AVAILABLE AND THE FAILURE MILEAGE WAS APPROXIMATELY 28,000.    UPDATED 07/19/10  *BF   UPDATED 07/21/10 |
| 10585572 | CHEVROLET | SILVERADO | 2007 | 2014-04-22 | TL* THE CONTACT OWNS A 2007 CHEVROLET SILVERADO. THE CONTACT STATED THAT WHILE DRIVING 45 MPH, THE VEHICLE HYDRO PLANED AND THE CONTACT CRASHED INTO THE ROAD BARRIER. NO AIR BAGS DEPLOYED UPON IMPACT. THERE WERE FOUR INJURIES AND A POLICE REPORT WAS FILED. INJURY DETAILS WERE NOT AVAILABLE. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE AND CURRENT MILEAGE WAS 102,000. |
| 10606814 | CHEVROLET | SILVERADO | 2007 | 2014-06-12 | ON IMPACT TO FRONT END OF MY VEHICLE THE AIR BAGS DID NOT DEPLOY. THE AIR BAGS ON THE OTHER VEHICLE DID DEPLOY. HOW CAN I BE SURE MY AIRBAGS ARE FUNCTIONING PROPERLY. THERE IS ABOUT $9,000 DAMAGE TO MY VEHICLE. I AM SENDINGAGAIN BECAUSE I AM NOT CERTAIN THE FIRST ONE WENT THROUGH. *TR |
| 10608220 | CHEVROLET | SILVERADO | 2007 | 2012-08-17 | VEHICLE WAS INVOLVED IN HEAD ON COLLISION THAT TOTALED IT. OTHER VEHICLE WAS AN OLDER MODEL VAN, DO NOT KNOW EXTENT OF DAMAGES TO IT . MY CONCERN IS THE AIR BAGS DID NOT DEPLOY .WAS TOLD BY GM THAT CRASH DID NOT MEET CRITERIA FOR DEPLOYMENT!!!!! A HEAD ON COLLISION AT 50 MPH THAT TOTALED 2500 SERIES CHEVY TRUCK .    HARD FOR ME TO BELIEVE I NOW OWN A 2008 CHEVY 1500 SERIES . DO I NEED TO CONCERNED?. *TR |
| 10649638 | CHEVROLET | SILVERADO | 2007 | 2014-09-29 | TL* THE CONTACT OWNS A 2007 CHEVROLET SILVERADO 1500. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 15 MPH, THE VEHICLE CRASHED INTO A TREE CAUSING EXTENSIVE DAMAGE TO THE FRONT END. THE CONTACT INDICATED THAT DURING THE CRASH THE FRONT AIR BAGS DID NOT DEPLOY AND THE DRIVER SUFFERED INJURIES TO THE RIGHT KNEE, WHILE THE FRONT PASSENGER SUFFERED INJURIES TO BOTH KNEES AND HEAD. A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 95,000. |
| 10512756 | CHEVROLET | SUBURBAN | 2007 | 2013-05-19 | WE WERE DRIVING HOME WHEN A PERSON RAN A RED LIGHT AND HIT US. WE WERE CROSSING AN INTERSECTION ABOUT 15 MILES AN HOUR AND THEY HIT THE FRONT PART OF OUR SUBURBAN. EVERYTHING WAS DAMAGED THE HOOD , AND EVERYTHING INSIDE THE HOOD SUSTAINED DAMAGE. THERE WAS A LIQUID THAT WAS LEAKING BUT I AM UNAWARE OF THE SUBSTANCE. THE PERSON THAT HIT US MUST HAVE BEEN GOING ABOUT 40-60 MILES AN HOUR. AFTER THEY FILED THE SEEN POLICE MENTIONED THAT THEIR AIR BAGS WERE DEPLOYED. MY CONCERN WAS WHY OUR AIR BAGS DID NOT DEPLOY AS WELL. MY DAUGHTER AND I BOTH HIT OUR HEADS ON OUR SIDE WINDOWS. MY SON HAD SLIGHT INJURY MOSTLY FROM THE SEATBELT. MY SONS DOOR HAD TO BE OPENED FROM THE POLICE OFFICER ON THE SCREEN. MY BIGGEST CONCERN WAS ABOUT THE AIRBAGS AND ALSO THE ONSTAR DID NOT WORK AS WELL. *TR |
| 10400538 | CHEVROLET | TAHOE | 2007 | 2010-03-19 | TL* THE CONTACT OWNS A 2007 CHEVROLET TAHOE. THE CONTACT STATED THAT THE VEHICLE WAS INVOLVED IN A FRONTAL CRASH WITH ANOTHER VEHICLE AT APPROXIMATELY 30 MPH BUT THE AIR BAGS DID NOT DEPLOY. THE DRIVER OF THE CONTACT'S VEHICLE AND A PASSENGER SUFFERED MINOR INJURIES. THE VEHICLE WAS DESTROYED AND A POLICE REPORT WAS FILED. THE CONTACT CALLED THE MANUFACTURER WHO TOOK A COMPLAINT BUT PROVIDED NO FURTHER ASSISTANCE. THE CURRENT AND FAILURE MILEAGES WERE UNKNOWN. THE VIN WAS UNAVAILABLE. |
| 10659540 | CHEVROLET | TAHOE | 2007 | 2014-03-16 | 2007 CHEVROLET TAHOE. AIRBAG DEPLOYMENT FAILURE DURING AN ACCIDENT. *TA |
| 10811111 | CHEVROLET | TAHOE | 2007 | 2014-04-17 | TL* THE CONTACT OWNS A 2007 CHEVROLET TAHOE. THE CONTACT STATED THAT WHILE DRIVING 50 MPH, THE CONTACT BLACKED OUT AND CRASHED INTO THE GUARDRAIL. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED HEAD INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. ON ANOTHER OCCASIONS, WHILE MAKING A LEFT TURN AT 15 MPH, THE CONTACT CRASHED INTO ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED AND THERE WERE NO INJURIES REPORTED. THE CONTACT ALSO STATED THAT THERE WERE TWO LARGE CRACKS IN THE DASHBOARD AND A THIRD CRACK DEVELOPED AS A RESULT OF THE FIRST CRASH. THE VEHICLE WAS TAKEN TO A DEALER HOWEVER, THE DIAGNOSIS WAS UNKNOWN. THE VEHICLE WAS REPAIRED AFTER BOTH FAILURES. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 120,000. |
| 10821342 | CHEVROLET | TAHOE | 2007 | 2015-11-16 | CRACKED DASH, POTENT HAZARD OF PLASTIC DASH PIECES BECOMING AIRBORNE SHRAPNEL IN THE EVENT OF CRASH WITH AIR BAGS DEPLOY. 2007 TAHOE DASH HAD SMALL 6 INCH CRACK AT THE 2 O CLOCK POSITION ON DRIVERS SIDE INSTRUMENT CLUSTER AND SMALL 1 INCH CRACK ON RIGHT SIDE OF PASSENGER SIDE AIRBAG. AFTER 25 MPH HEAD ON CRASH AIR BAGS DIDN'T DEPLOY BUT ADDITIONAL CRACKS HAVE APPEARED. NOW 10 X WORST. PICS WILL SHOW. DEALER DOESN'T WANT TO REPLACE NOR INSURANCE COMPANY. |
| 10854032 | CHEVROLET | TAHOE | 2007 | 2016-03-31 | TAHOE WAS INVOLVED IN FRONT COLISION WITH ANOTHER VEHICLE AND BAGS DID NOT DEPLOY. BUMPER, HOOD DAMAGED. BUMPER METAL BRACKET PUSHED IN. TAHOE WAS TURNING LEFT ON LIGHT WHEN STRUCK BE ANOTHER VEHICLE LIKE HEAD ON. |

| | | | | | |
|---|---|---|---|---|---|
| 10959039 | CHEVROLET | TAHOE | 2007 | 2017-02-01 | TL* THE CONTACT OWNS A 2007 CHEVROLET TAHOE. WHILE DRIVING APPROXIMATELY 60 MPH, THE CONTACT'S VEHICLE CRASHED INTO THE REAR OF A SECOND VEHICLE. DURING THE CRASH, THE FRONT END OF THE VEHICLE SUSTAINED SIGNIFICANT DAMAGE. THE AIR BAGS DID NOT DEPLOY. THE DRIVER SUSTAINED INJURIES TO THE BACK, SHOULDERS, ARMS, LEFT LEG, AND KNEE. THE PASSENGER SUFFERED INJURIES TO BOTH KNEES. MEDICAL ATTENTION WAS RECEIVED. A POLICE REPORT WAS FILED. THE CAUSE OF THE FAILURE WAS NOT DIAGNOSED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE VIN WAS NOT AVAILABLE. THE FAILURE MILEAGE WAS 100,000. |
| 11265920 | CHEVROLET | TAHOE | 2007 | 2019-07-16 | TL* THE CONTACT OWNED A 2007 CHEVROLET TAHOE. WHILE DRIVING 35 MPH, A 2012 NISSAN FRONTIER SIDESWIPED THE CONTACT'S VEHICLE. THE CONTACT VEERED OFF THE ROAD AND CRASHED INTO A LIGHT POLE. THE AIR BAGS DID NOT DEPLOY. THE CONTACT SUSTAINED HEAD, BACK, NECK, HAND, AND KNEE INJURIES. MEDICAL ATTENTION WAS RECEIVED. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO AN INDEPENDENT LOT.  THE CONTACT CALLED PATTERSON HYUNDAI TYLER (3120 S SW LP, TYLER, TX 75701, (903) 561-2404) AND INFORMED THEM OF THE FAILURE. THE VEHICLE WAS NOT DIAGNOSED. THE MANUFACTURER WAS NOT CONTACTED. THE VEHICLE WAS DEEMED A TOTAL LOSS BY THE INSURANCE COMPANY. THE FAILURE MILEAGE WAS 128,122. |
| 10252163 | CHEVROLET | TRAILBLAZER | 2007 | 2008-09-24 | ON 9/24/08 I WAS INVOLVED IN AN AUTO ACCIDENT WHERE MY 2007 CHEVROLET TRAILBLAZER'S AIRBAGS FAILED TO DEPLOY.  MY VEHICLE IMPACTED ANOTHER WITH MY ENTIRE FRONT END AT APPROXIMATELY 45 MPH.  MY TRAILBLAZER WAS TOTALED.  NOT ONLY DID MY AIRBAGS FAIL TO DEPLOY, THE ONSTAR SYSTEM DID NOT AUTOMATICALLY GO OFF.  I HAD TO HIT THE BUTTON TO SUMMON ASSISTANCE.   WHEN WE ASKED THE DEALER ABOUT IT, THEIR RESPONSE WAS "SOMETIMES THEY GO OFF, SOMETIMES THEY DON'T"  I SUSTAINED A BROKEN LEFT ARM, NUMEROUS BRUISES, A CUT ON MY ANKLE AND AN ANKLE SPRAIN. I ALSO INJURED MY BACK AND NECK WHICH IS REQUIRING ONGOING CARE. *TR |
| 10289962 | CHEVROLET | TRAILBLAZER | 2007 | 2009-10-18 | AIRBAGS DID NOT DEPLOY IN CRASH IMPACT ESTIMATED AT APROX 60 MPH.  VEHICLES AIRBAG THAT DID NOT DEPLOY WAS A FRONTAL CRASH.  T-BONED ANOTHER VEHICLE THAT PULLED OUT IN FRONT OF MENTIONED VEHICLE. *TR |
| 10478475 | CHEVROLET | TRAILBLAZER | 2007 | 2012-05-14 | TL* THE CONTACT OWNS A 2007 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING 40 MPH, THE CONTACT CRASHED HEAD ON INTO ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT WAS TAKEN TO THE HOSPITAL FOR TREATMENT OF WHIPLASH AND EYE INJURIES.  THE ENTIRE FRONT END OF THE VEHICLE WAS SEVERELY DAMAGED. THE POLICE WERE NOTIFIED AND A REPORT WAS FILED. THE MANUFACTURER WAS NOTIFIED AND A REPRESENTATIVE WAS SENT TO INSPECT THE VEHICLE, STATING THAT THE VEHICLE PERFORMED AS DESIGNED. THE VIN WAS UNKNOWN. THE FAILURE MILEAGE WAS 64,056. |
| 10482863 | CHEVROLET | TRAILBLAZER | 2007 | 2012-05-13 | TL* THE CONTACT OWNED A 2007 CHEVROLET TRAILBLAZER. THE CONTACT STATED HE WAS GETTING SICK WHILE DRIVING AND CRASH INTO ANOTHER VEHICLE. THE CONTACT STATED THAT THE AIR BAGS DID NOT DEPLOY. THE VEHICLE WAS NOT DESTROYED AND THERE WAS A POLICE REPORT FILED. THE CONTACT SUSTAINED A WHIPLASH INJURY AND SEVERE HEADACHE. THE MANUFACTURER WAS NOTIFIED WHO SENT A TECHNICIAN TO LOOK AT THE VEHICLE AND THEY STATED THAT THE AIR BAGS FUNCTIONED PROPERLY. THE FAILURE MILEAGE WAS 65,000. UPDATED 01/10/13*LJ UPDATED 1/11/13 *JS |
| 10661436 | CHEVROLET | TRAILBLAZER | 2007 | 2014-12-01 | TL* THE CONTACT OWNS A 2007 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 20 MPH, ANOTHER VEHICLE CRASHED INTO THE CONTACTS VEHICLE WHILE CROSSING AN INTERSECTION. THE AIR BAGS FAILED TO DEPLOY. THE VEHICLE WAS DESTROYED. IT WAS UNKNOWN IF ANY INJURIES WERE SUSTAINED OR IF A POLICE REPORT WAS FILED.  THE MANUFACTURER WAS NOT NOTIFIED. THE FAILURE MILEAGE WAS 140,000. THE VIN WAS UNAVAILABLE. |
| 10661920 | CHEVROLET | TRAILBLAZER | 2007 | 2014-11-12 | TL* THE CONTACT OWNS A 2007 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING AT APPROXIMATELY 20 MPH CROSSING AN INTERSECTION, ANOTHER VEHICLE CRASHED INTO THE CONTACTS VEHICLE AND THE AIR BAGS FAILED TO DEPLOY. THE VEHICLE WAS DESTROYED. NO INJURIES WERE REPORTED. THE MANUFACTURER WAS NOT NOTIFIED OF THE ISSUE. THE FAILURE MILEAGE WAS 140,000. THE VIN WAS UNAVAILABLE. |
| 10664216 | CHEVROLET | TRAILBLAZER | 2007 | 2014-05-17 | IT WAS RAINING AND WE WERE ON OUR WAY HOME DRIVING DOWN THE HIGHWAY AND HIT A WATER PUDDLE AND HYDROPLANED OFF THE SIDE OF THE ROAD THE TRUCK CUT OFF AND SPENT AROUND HIT A TREE HEAD ON AND THE AIRBAGS DIDN'T DEPLOY. I WAS HOSPITALIZED WITH MULTIPLE INJURIES AND IM STILL SUFFERING. *TR |
| 10715742 | CHEVROLET | TRAILBLAZER | 2007 | 2015-04-27 | A VEHICLE WAS STOPPED IN FRONT OF ME AND I REAR ENDED THEM. I WAS GOING AROUND 44-55 MPH. AFTER I HIT THE OTHER CAR FROM BEHIND I CROSSED 2 LANES OF TRAFFIC AND WENT THRU A PRETTY DEEP DITCH.  THE AIR BAGS DID NOT DEPLOY AT ALL. I SUSTAINED A CONCUSSION., SEVERAL HEAD LACERATIONS AND A FRACTURED LUMBAR SPINE. |
| 10733714 | CHEVROLET | TRAILBLAZER | 2007 | 2015-07-04 | SWERVED TO AVOID HITTING A DEER ALMOST HIT MAILBOXES SO SWERVED. TO AVOID THEM. I SWERVED TO MUCH THAN IN MY CORRECTION HIT THE GAS INSTEAD OF THE BRAKE.  I THAN HIT A TREE BETWEEN 45 - 50 MPH. MY AIRBAGS NEVER DEPLOYED. |

| | | | | | |
|---|---|---|---|---|---|
| 10934884 | CHEVROLET | TRAILBLAZER | 2007 | 2016-12-07 | I HAD MY CRUISE SET ON 55 MPH AND WAS HIT HEAD ON BY VW JETTA PULLING OUT TOWARD MY VEHICLE, THEN FORCED TO LEFT INTO A TELEPHONE POLE. AIRBAGS DIDN'T DEPLOY, AND RECEIVED BROKEN STERNUM. DON'T KNOW IF SEATBELT INJURED ME, OR IF THE SEATBELT DIDN'T LOCK ON 2ND IMPACT AND POSSIBLY HIT THE STEERING WHEEL. |
| 10208661 | GMC | ACADIA | 2007 | 2007-10-12 | INVOLVED IN FRONTAL COLLISION WITH CONSIDERABLE DAMAGE, BUT AIR BAG DID NOT DEPLOY. *TR |
| 10498046 | GMC | ACADIA | 2007 | 2013-02-09 | TL* THE CONTACT OWNS A 2007 GMC ACADIA. THE CONTACT STATED THAT WHILE DRIVING 20 MPH, ANOTHER VEHICLE CRASHED INTO HIS VEHICLE IN THE MIDDLE OF THE INTERSECTION. UPON IMPACT, THE AIR BAGS FAILED TO DEPLOY. THE CONTACT STATED THAT HE WAS PINNED IN THE VEHICLE AND COULD NOT GET OUT. THE VEHICLE HAD SEVERE DAMAGES TO THE DRIVER SIDE AND WAS COMPLETELY DESTROYED. THE CONTACT SUSTAINED INJURIES TO HIS HEAD AND CHEST. THE CONTACT WAS TAKEN TO THE EMERGENCY ROOM BY FAMILY. THE POLICE WERE NOTIFIED AND A REPORT WAS AVAILABLE IF NEEDED. THE MANUFACTURER WAS NOTIFIED WHO STATED THAT A REPRESENTATIVE WILL GIVE HIM A RETURN CALL. THE FAILURE MILEAGE WAS 91,000.   UPDATED 3/10/13 *CN |
| 10959190 | GMC | ACADIA | 2007 | 2017-03-02 | TL* THE CONTACT OWNED A 2007 GMC ACADIA. WHILE MAKING A LEFT TURN AT APPROXIMATELY 5 MPH FROM A STOP SIGN, A SPEEDING VEHICLE CRASHED HEAD-ON INTO THE FRONT CENTER OF THE CONTACT'S VEHICLE. THE AIR BAGS DID NOT DEPLOY. BOTH THE CONTACT AND A MINOR PASSENGER, SEATED IN THE REAR BEHIND THE DRIVER, SUSTAINED INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE CONTACT'S VEHICLE WAS TOTALED AND WAS TOWED TO A TOW YARD. THE FAILURE MILEAGE WAS APPROXIMATELY 140,000. |
| 10604975 | GMC | ENVOY | 2007 | 2014-06-20 | MY WIFE WAS DRIVING HOME FROM THE DOCTOR AND A FULL SIZE CHEVY CAME ACROSS ON HER SIDE AND HIT HER HEAD ON NEITHER AIR BAG DEPLOYED ON THE ENVOY BOTH VEHICLES WAS TOTALED WHAT SHOULD WE DO THANKS. *TR |
| 10639641 | GMC | ENVOY | 2007 | 2014-04-27 | A GUY HIT ME ON THE DRIVERS SIDE THEN IT PUSHED ME INTO A DRIVEWAY OF A BUSINESS WHICH HAD A BRICK WALL WHICH I HIT &BOUNCED OFF IT .POPPED BOTH TIRES ON THE DRIVERS SIDE. THEN I HIT A TELEPHONE POLE STRAIGHT ON &SMASHED IN MY FRONT ON MY CAR. I MOVED THE TELEPHONE POLE IN THE CONCRETE ABOUT 2 IN. I WAS THE SECOND OWNER. THE OTHER OWNER WAS THE DEALERSHIP &THY HAD IT JUST FOR THERE CAR TO RUN FROM 1 DEALERSHIP TO THE OTHER. I HAD TO GO TO THE HOSPITAL &I AM STILL HAVING TREATMENT ON MY NECK BACK &SHOULDER. NOT 1 OF THE AIR BAGS WENT OFF. IT WAS TOWED AWAY &THEN WAS TOTALED. I HAVE HIRED AN ATTORNEY. *TR |
| 10915508 | GMC | ENVOY | 2007 | 2016-08-10 | I HIT A GUARD RAIL AT 67 MPH...SPIKE WITH GMC AND SHE NOTIFY ME THAT MY THRESHOLD (SPEED AND IMPACT) WERE NOT ENOUGH TO SET AIRBAGS OFF...REALLY. .67 MPH..I WAS ON A HIGHWAY SWEATED TO MISS SEMI ..KICKED IT AND IT FLEW ME IN A CIRCLE AND HIT GAURDRAIL. .IMPACT HIT HARD THAT THEY HAD TO PRY BUMPER OFF RAIL AND CAR..FRAME WENT THROUGH RADIATOR BUT NO AIRBAGS DEPLOYED??? TRYING TO FIND LAWYER NO ONE WILL TAKE XASE???? |
| 10290508 | GMC | YUKON | 2007 | 2009-09-14 | TRAVELING AT NIGHT, AT 65 MILES AN HOUR IN A 2007 YUKON SLE2 4 DR WAGON, I HIT A  STEER (APPROXIMATELY 880LBS). UPON IMPACT, THE BOTTOM OF MY POWER DRIVER'S SEAT MOVED FORWARD AND THE BACK OF THE SEAT TILTED FORWARD, CAUSING ME TO HIT THE STEERING WHEEL. I HAD TO MOVE THE SEAT BACK TO GET OUT OF THE VEHICLE. THE AIRBAGS DID NOT DEPLOY. I REPORTED THE INCIDENT TO THE DEALER, AND MY INSURANCE AGENT BOTH VERBALLY AND IN WRITING. THE VEHICLE HAD OVER $11,000.00 WORTH OF DAMAGE, BUT THE REPAIR CENTER STATED THEY WERE UNABLE TO FIND ANY DAMAGE TO THE SEAT. I TRADED THE VEHICLE IN, AS I DID NOT FEEL SAFE DRIVING IT WITH THE SEAT NOT BEING REPLACED OR REPAIRED. THE VEHICLE IS NOW FOR SALE AGAIN, AND I AM FEARFUL THAT SOMEONE ELSE WILL BE IN A WRECK AND THE SEAT WILL MALFUNCTION AGAIN. *TR |
| 10701604 | GMC | YUKON | 2007 | 2015-03-06 | TL* THE CONTACT OWNS A 2007 GMC YUKON. WHILE DRIVING APPROXIMATELY 60 MPH, THE CONTACT CRASHED INTO ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. THERE WERE NO INJURIES AND A POLICE REPORT WAS FILED. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 180,000. THE VIN WAS NOT AVAILABLE. |
| 11034703 | GMC | YUKON | 2007 | 2014-10-09 | I HAVE TRIED TO SUBMIT MY YUKON FOR TANAKA RECALL REMEDY SEVERAL TIMES BY CONTACTING MY LOCAL GMC DEALERSHIP. THEIR SERVICE DEPT CONTINUES TO TELL ME THAT THEY DO NOT HAVE PARTS AVAILABLE TO MODIFY MY VEHICLE. A FEW YEARS AGO I BROADSIDED A LEXUS SUV WHICH 'RAN A TRAFFIC LIGHT'. MY AIRBAGS DID NOT DEPLOY, WHILE SEVERAL OF THE AIRBAGS DEPLOYED IN THE LEXUS. I FELT THAT MY LIFE MIGHT HAVE BEEN AT RISK SINCE THE AIRBAGS DID NOT DEPLOY, OR ALTERNATELY, AT EVEN WORST RISK IF THEY DID EXPLODE UPON DEPLOYMENT. WHO IS RESPONSIBLE FOR ADDRESSING THIS ISSUE? THE GMC DEALER SAYS THEY ARE NOT! I HAVE PHOTOS OF THE ACCIDENT AND A POLICE REPORT STATING THAT THE LADY WAS RESPONSIBLE FOR |
| 10907149 | CADILLAC | SRX | 2006 | 2016-09-01 | TL* THE CONTACT OWNED A 2006 CADILLAC SRX. WHILE DRIVING VARIOUS SPEEDS, THE VEHICLE HIT A CURB AND DROVE INTO A BUILDING. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO AN INDEPENDENT MECHANIC WHERE IT WAS DEEMED DESTROYED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 77,814. UPDATED 10/26/16*LJ *TR |

| | | | | | |
|---|---|---|---|---|---|
| 10223015 | CHEVROLET | EQUINOX | 2006 | 2008-02-28 | FOUR CAR-PILEUP ON HWY 41 NB. WE WERE VEH #3 AND HIT FORWARD AND WERE HIT FROM BEHIND. OUR SEAT BELTS DID NOT RESTRAIN US AND THE AIR BAGS DID NOT DEPLOY. MY HUSBAND , ERNST, FLEW INTO THE DASHBOARD AND I SLAMMED INTO THE STEERING WHEEL.  *TR |
| 10241948 | CHEVROLET | EQUINOX | 2006 | 2008-09-10 | THE VEHICLE WAS INVOLVED IN A FRONTAL CRASH.  THE DRIVER NOR THE PASSENGER AIRBAG DEPLOYED.  THE WHOLE FRONT END OF THE VEHICLE WAS PUSHED IN. *TR |
| 10279951 | CHEVROLET | EQUINOX | 2006 | 2009-08-04 | VEHICLE INVOLVED IN A ONE-AUTO ACCIDENT - 2006 CHEVROLET EQUINOX - HYDROPLANED AND HIT AN EMBANKMENT WITH THE FRONT END AND FLIPPED OVER.  THE AIR BAG DID NOT DEPLOY. THIS IS NOT THE FIRST TIME THIS VEHICLE HAS HAD AN IMPACT TO THE FRONT BUMPER AND THE AIR BAG HAS NEVER DEPLOYED.  EACH TIME THE FRONT BUMPER HAD DAMAGE SUSTAINED WHICH SHOULD HAVE CAUSED THE IMPACT THE SET THE AIR BAG OFF .  *TR |
| 10342436 | CHEVROLET | EQUINOX | 2006 | 2010-07-07 | 2006 CHEVY EQUINOX AIR BAGS DID NOT DEPLOY IN MY DAUGHTER'S FRONT CRASH ACCIDENT. HER CAR WAS TOTALED. SHE HIT A MAILBOX AND IN A SPIN ON THE DRIVER'S FRONT SIDE HIT A TELEPHONE POLE.  SHE HIT HER HEAD ON THE STEERING WHEEL AND HURT HER BACK.  THE REAR WINDSHIELD WAS ALSO SHATTERED AND ALSO HAD A BACK FLAT TIRE.  I CALLED OUR LOCAL GM DEALER AND THEY TOLD ME TO CALL GM. SHE CALLED GM BUT THEY GOT HER UPSET AND SHE IN OTHER WORDS SAID THERE WAS NOTHING THEY COULD DO ABOUT THE AIR BAGS NOT DEPLOYING. IN OTHER WORDS THIS IS A DEFECT OF THIS MODEL AND THEY AREN'T GOING TO DO ANYTHING ABOUT IT. *TR |
| 10503970 | CHEVROLET | EQUINOX | 2006 | 2013-03-19 | I RAN OFF THE SIDE OF THE ROAD INTO A GUARDRAIL AND COULD NOT STOP UNTIL I WAS ON TOP OF THE GUARDRAIL INTO AN EMBANKMENT. MY ENTIRE FRONT END WAS DESTROYED AS WELL AS MOST OF THE UNDERNEATH OF THE CAR. MY FACE HIT THE STEERING WHEEL CAUSING ME TO LOSE CONSCIOUSNESS AS WELL AS GIVING ME A BLACK EYE, CROOKED TEETH, CUTS, BROKEN DENTAL APPLIANCES, AND MY TEETH WENT THROUGH MY LIP. I STRONGLY BELIEVE MY AIRBAGS SHOULD HAVE DEPLOYED AND PREVENTED THE IMPACT OF MY FACE TO THE STEERING WHEEL SINCE I THOUGHT THAT IS WHAT AIRBAGS ARE FOR. MY CAR WAS TOTALED.  *TR |
| 10560310 | CHEVROLET | EQUINOX | 2006 | 2013-11-14 | HIT A ONE TON LOW BED DUMP TRUCK, THE WHOLE FRONT END OF MY SUV WAS DEMOLISHED, MY AIRBAGS DIDN'T DEPLOY AND I ENDED UP WITH REALLY BAD WHIPLASH FROM THE ACCIDENT, TO WHERE I'M STILL IN MAJOR PAIN! WONDERING IF THERE WAS A LAWSUIT AGAINST THIS? NEVER DEALT WITH A WRECK THIS BAD, I WAS JUST CURIOUS!  *TR |
| 10586081 | CHEVROLET | EQUINOX | 2006 | 2014-05-01 | MY AIRBAG DID NOT DEPLOY WHEN THE CAR HIT THE TREE. IT HIT SO HARD THE BACK TIRES CAME COMPLETELY OFF THE GROUND.  *TR |
| 10939297 | CHEVROLET | EQUINOX | 2006 | 2016-12-30 | MY GRANDDAUGHTER WAS INVOLVED IN AN ACCIDENT WHERE AS ANOTHER VEHICLE FAILED TO STOP AT A STOP SIGN AND PULLED INTO HER PATH. SHE AND THE OTHER VEHICLE WERE BOTH AT A SPEED OF 25 MPH. THE FRONT CLIP WAS TORN FROM HER CAR AND NO DRIVERS AIRBAG DEPLOYED. SHE DID HAVE HER SEATBELT ON WHICH DID PREVENT SERIOUS INJURY. THE ACCIDENT OCCURRED 30 DEC 2016. THIS HAPPENED ON CITY STREETS. |
| 10343112 | CHEVROLET | SILVERADO | 2006 | 2010-03-22 | TL* THE CONTACT OWNS A 2006 CHEVROLET SILVERADO. THE CONTACT STATED WHILE TRAVELING AT 40 MPH WHEN AN 18-WHEELER DROVE IN FRONT OF THE CONTACT SUDDENLY. THE CONTACT DID NOT HAVE ENOUGH TIME TO STOP THE VEHICLE BEFORE CRASHING INTO THE TRUCK. THE AIR BAGS DID NOT DEPLOY. THE CONTACT SUSTAINED MINOR BRUISING. THE VEHICLE WAS TOWED TO A LOCAL REPAIR FACILITY WHERE THE CONTACT WAS AWAITING REPAIRS. THE POLICE ADVISED THAT THE AIR BAGS SHOULD HAVE DEPLOYED UPON IMPACT. THE FAILURE MILEAGE AND CURRENT MILEAGES WERE 88,508. |
| 10411579 | CHEVROLET | SILVERADO | 2006 | 2010-07-28 | MY 2006 SILVERADO 2500 HD AIR BAG DID NOT DEPLOY DURING MY ACCIDENT ON JULY 28, 2010. I TRIED SENDING ALL INFORMATION IN THE MAIL BUT, YOU JUST SENT IT BACK TO ME. COPING THAT WAS SENT TO ME FROM GENERAL MOTORS OF THEIR EXPLANATION OF THEY ARE NOT THE ONES RESPONSIBLE FOR THIS BECAUSE THEY DIDN'T MAKE THIS PRODUCT. NOT TO MENTION THAT ONSTAR DIDN'T COME ON AS THEY SHOW ON THEIR TV ADS'.  IF I HAD NOT REGAIN CONSCIENCE. DON'T KNOW WHEN THEY WOULD HAVE FOUND ME THERE WHERE I WENT OFF THE ROAD JUST 4 MILES FROM MY HOME.   DON'T KNOW IF ANYONE WOULD HAVE THOUGHT OF CALLING ONSTAR ABOUT LOOKING FOR MY TRUCK.  IF GM VEHICLES ARE SO SAFE AND LEAD US TO BELIEVE HOW? SAFE AND RELIABLE THEIR VEHICLES ARE.  THEN WHY? THEY ARE NOT STANDING BEHIND THEIR PARTS NOW.  THE VEHICLE WAS TOTAL AND THE ONLY THING THAT SAVED ME WAS MY SEAT BELT. EVEN DOE I WAS STILL BADLY INJURED FROM MY NECK TO MY TAIL BONE.  GM DOESN'T CARE TO OWN UP TO NO KIND OF RESPONSIBILITY FOR ANYTHING.  I'M STILL AFRAID TO DRIVE MY 2010 CAMARO BECAUSE IT HAS THE SAME EQUIPMENT  AS THE 2006 PICKUP THAT I TOTALED.  I DRIVE IT WHENEVER I HAVE NO CHOICE.  WHEN THE DODGE TRUCK ISN'T HERE.  EVERY OTHER WEEK WHEN MY HUSBAND NEEDS IT. I'VE SENT YOU ALL THE PICTURES AND SOME OF THE LETTERS THAT GM'S [XXX] HAS SENT TO ME BUT, YOU DIDN'T EVEN OPEN IT AT LEAST YOU DID WAS SEND IT BACK UNOPENED.   WHAT'S UP WITH THIS?????????????  MY NAME IS: [XXX] , MY ADDRESS IS:[XXX]; [XXX]   INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6).  *TR |

| | | | | | |
|---|---|---|---|---|---|
| 10775393 | CHEVROLET | SILVERADO | 2006 | 2010-03-22 | TL* THE CONTACT OWNS A 2006 CHEVROLET SILVERADO. WHILE DRIVING AT 25 MPH, ANOTHER VEHICLE FAILED TO YIELD. AS A RESULT, THE CONTACT CRASHED INTO THE PASSENGER SIDE OF ANOTHER VEHICLE AND THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED HIP AND PELVIC INJURIES ON THE RIGHT SIDE THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 70,000. |
| 10717429 | CHEVROLET | TAHOE | 2006 | 2015-05-09 | DRIVER FELL ASLEEP RAN INTO THE BACK OF A SEMI TRUCK, AIRBAG DID NOT DEPLOY.  VEHICLE WAS A TOTAL LOSS. |
| 10217793 | CHEVROLET | TRAILBLAZER | 2006 | 2008-02-07 | AROUND 11:45PM A 2006 CHEVY TRAILBLAZER TRAVELING OVER THE SPEED LIMIT ON MY STREET, CRASHED INTO A TREE, A PARKED CAR, AND THEN CONTINUED TO ROLL OVER ACROSS MY FRONT LAWN, LANDING SIDEWAYS AFTER FLIPPING SEVERAL TIMES.  THE OCCUPANTS WERE SEVERELY INJURED.  NO AIRBAGS DEPLOYED DURING THE CRASH. THE DRIVER OF THE VEHICLE IS IN ICU NEEDING FACIAL RECONSTRUCTIVE SURGERY. *TR |
| 10227418 | CHEVROLET | TRAILBLAZER | 2006 | 2008-05-09 | WHILE DRIVING ON A DIRT ROAD THAT ONLY FITS ON CAR, I WAS INVOLVED IN A HEAD ON COLLISION INVOLVING A JEEP CHEROKEE.  THERE WAS EXTENSIVE FRONT DAMAGE HOWEVER, THE AIRBAG DID NOT DEPLOY NOR DID ONSTAR CONTACT ME.  I HAVE VERY PAINFUL NECK, HEAD, SHOULDER, AND RIGHT ARM PAIN.  *TR |
| 10244652 | CHEVROLET | TRAILBLAZER | 2006 | 2008-08-28 | WE WERE INVOLVED IN A HEAD ON COLLISION WITH ANOTHER VEHICLE.  BOTH WERE TRAVELING AT APPROXIMATELY 45 MPH.  THE AIR BAGS DID NOT DEPLOY.  I WAS DRIVING THE VEHICLE AND HAVE A BROKEN RIGHT LEG, BROKEN LEFT HEEL AND ANKLE.  I WAS TEMPORARILY KNOCKED UNCONSCIOUS FROM HITTING THE STEERING WHEEL.  MY WIFE SUFFERED A BROKEN WRIST, FRACTURED PELVIS, AND FRACTURED TIBULA. *TR |
| 10364174 | CHEVROLET | TRAILBLAZER | 2006 | 2010-10-01 | IN APPROXIMATELY APRIL OF 2010 MY GAS GAGE ON MY 06 TRAILBLAZER QUIT WORKING. THE PART WAS NO LONGER UNDER WARRANTY AT 84K MILES. VERY DANGEROUS WHEN TRAVELING 400 MILES WITH ELDERLY AUNT AND SMALL CHILD 2X A WEEK. ON OCTOBER 1, 2010 I WAS INVOLVED IN A HIGH SPEED COLLISION WHEN A CAR PULLED IN FRONT OF ME, WHILE I WAS GOING 70MPH. THE AIRBAGS DID NOT DEPLOY, I SUFFERED MAJOR TRAUMA TO MY KNEES AND AM UNABLE TO WALK WELL OR DRIVE. I HIT MY HEAD ON THE STEERING WHEEL AND CONTINUE TO HAVE PAIN. MY ELDERLY AUNT BROKE 3 CERVICAL VERTEBRAE AND STILL HAS A TRACHIOTOMY OVER A MONTH LATER. SHE IS STILL IN THE HOSPITAL, AND IT IS UNKNOWN IF SHE WILL COME HOME. *TR |
| 10389988 | CHEVROLET | TRAILBLAZER | 2006 | 2011-02-24 | INERTIA REEL ON SEATBELT FAILED.  NO AIR BAG DEPLOYMENT.  2006 TRAILBLAZER, FULL STRAIGHT HEAD ON CRASH. *TR |
| 10524151 | CHEVROLET | TRAILBLAZER | 2006 | 2013-05-30 | THIS COMPLAINT IS BEING FILED ON BEHALF OF THE VEHICLE OWNER AND DRIVER.  THIS CHEVY TRAILBLAZER WAS  INVOLVED IN A TWO VEHICLE, DOUBLE FATAL CRASH.  THE FRONT OF THE TRAILBLAZER STRUCK THE DRIVER'S SIDE DOOR OF A CAVALIER THAT FAILED TO YIELD FROM A STOP SIGN.  THE TRAILBLAZER STAYED CONNECTED WITH THE CAVALIER, FORCING IT OFF THE LEFT SIDE OF THE ROADWAY AND INTO A LARGE TREE.  BOTH OCCUPANTS IN THE CAVALIER WERE FATALLY INJURED.  THE FRONT AIRBAGS DID NOT DEPLOY ON THE TRAILBLAZER AND NO EVENT WAS RECORDED ON THE AIRBAG CONTROL MODULE. *TR |
| 10548331 | CHEVROLET | TRAILBLAZER | 2006 | 2013-10-10 | I WAS DRIVING DOWN THE HIGHWAY AND HAD GOT CUT OFF BY A CAR. I SWERVED AND AVOIDED HITTING THE CAR BUT ENDED UP HITTING THE MEDIAN ALMOST DIRECTLY HEAD ON. THE WHOLE FRONT OF THE VEHICLE WAS SMASHED IN AND THE VEHICLE WAS TOTALED. THE AIRBAGS NEVER WENT OFF, ME AND MY PASSENGER WERE BOTH WEARING OUR SEAT BELT AND I ENDED UP HITTING MY HEAD ON THE STEERING WHEEL LEAVING ME UNCONSCIOUS. AN AMBULANCE RUSHED ME TO THE HOSPITAL AND I RECEIVED 10 STITCHES ABOVE MY LEFT EYE.  *TR |
| 10550276 | CHEVROLET | TRAILBLAZER | 2006 | 2013-10-28 | TL* THE CONTACT OWNS A 2006 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 35 MPH, SHE LOST CONTROL OF THE VEHICLE WHILE DRIVING IN SNOWY WEATHER. THE VEHICLE NOSE DIVED INTO AN EMBANKMENT AND THEN CRASHED INTO A BOULDER. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT WAS TRANSPORTED TO THE HOSPITAL VIA AMBULANCE FOR TREATMENT OF A CONCUSSION AND BRUISING. THE FRONT PASSENGER WAS ALSO INJURED AND SUSTAINED BRUISING. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 102,000. |
| 10679561 | CHEVROLET | TRAILBLAZER | 2006 | 2014-10-06 | TL* THE CONTACT OWNED A 2006 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING AT 35 MPH, THE DRIVER DRIFTED OFF THE ROAD AND CRASHED THE VEHICLE INTO A TREE. THE AIR BAGS DID NOT DEPLOY. THE CONTACT SUSTAINED A FRACTURED NOSE AND LEFT CHEEKBONE THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED AND TOWED BACK TO THE CONTACTS RESIDENCE. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 199,000. |
| 10888990 | CHEVROLET | TRAILBLAZER | 2006 | 2016-07-21 | VEHICLE WAS TRAVELING ON CITY STREET AT 30MPH WHEN IT STRUCK A UTILITY POLE,  SHEARING IT OFF AT THE BASE. VEHICLE THEN TRAVELED STRAIGHT UP A HILL AND STRUCK A HOUSE, COMING TO REST THERE. NONE OF THE AIR BAGS DEPLOYED. NEWS STORY AT HTTP://WWW.WGEM.COM/CATEGORY/133158/VIDEO-LANDING-PAGE?&CLIPID=12610200&AUTOSTART=TRUE |

| | | | | | |
|---|---|---|---|---|---|
| 10955948 | CHEVROLET | TRAILBLAZER | 2006 | 2016-09-08 | LETTER FROM SENATOR NELSON ON BEHALF OF CONSTITUENT REGARDING GENERAL MOTOR SAFETY DEFECTS. *LD  THE CONSUMER SUGGESTED THERE WAS A DEFECT WITH THE GM AIR BAGS IN 2006 CHEVROLET TRAILBLAZER, IN WHICH THE DRIVER SUSTAINED A BRAIN INJURY AND HIS WIFE WAS INJURED, WHEN IT WAS IMPACTED ON THE DRIVER'S SIDE, RESULTING IN LEFT A-PILLAR CONTACT WHEN THE AIR BAG FAILED TO DEPLOY AND HIS SEAT BELT RESTRAINTS FAILED.  THE CRASH WAS OF ENORMOUS SEVERITY, WITH A SPEED CHANGE OF 38 MPH WITH A LINE FORCE IN THE DIRECTION OF THE A PILLAR. *JB |
| 10966507 | CHEVROLET | TRAILBLAZER | 2006 | 2017-02-27 | I WAS IN A CRASH AND NEITHER FRONT AIRBAG DEPLOYED, MY INSURANCE ADJUSTER QUESTIONED IF THE AIR BAG SYSTEM EVEN WORKS. I HAVE COPY OF THE ESTIMATE TO REPAIR AS WELL. DUE TO THE FORCE OF IMPACT EVEN LOCAL REPAIR SHOP STATED THAT MY AIR BAGS SHOULD HAVE GONE OFF AS WELL. IS THERE A RECALL ON THIS MODEL FOR AIR BAGS NOT DEPLOYING? I WAS IN A SECOND WRECK ON 3/7/17 AND NEITHER AIR BAG DEPLOYED AT THAT TIME EITHER AND THERE WAS NO BUMPER SO AIR BAGS SHOULD HAVE DEFINITELY GONE OFF. |
| 10403445 | GMC | ENVOY | 2006 | 2011-05-20 | I HAD A CRASH AT 45 MPH INTO A LARGE TREE $9000+ DAMAGE TO THE FRONT END OF MY CAR AND THE AIRBAG NEVER WENT OFF. ONSTAR WAS CALLED AND HELPED ME. |
| 10704170 | GMC | ENVOY | 2006 | 2015-03-22 | I WAS INVOLVED IN A HEAD ON COLLISION, WHERE A CAR CAME AROUND A BUS INTO MY LANE . IT WAS A CLEAR CUT CASE OF WHO WAS AT FAULT.  MY CONCERN IS THAT MY AIR BAG NEVER DEPLOYED. THERE IS A DRIVER AND PASSENGER AIRBAG  IN THAT MODEL. IF NOT FOR MY SEAT BELT , I WOULD HAVE GONE THROUGH THE WINDSHIELD AND THE  VEHICLE WAS TOTALED FROM THE FORCE.  THERE ARE PICTURES I COULD FORWARD OF THE ACCIDENT.  I WANTED TO KNOW IF THERE WAS ANY THING ELSE I COULD DO TO ADDRESS THIS ISSUE.  THANK YOU  *TR |
| 10780171 | GMC | YUKON | 2006 | 2015-08-21 | MY FATHER  WAS DRIVING FROM DIALYSIS ON THE DECLINE OF A BRIDGE WHEN HE PASSED OUT BEHIND THE WHEEL. HE WAS WEARING HIS SEATBELT, AND THE VEHICLE RESTED AFTER HITING A TREE. THE AIRBAGS DID NOT DEPLOY. I HAVE CONTACTED GMC AND THERE IS AN INVESTIGATION PENDING, THEY HAVE SENT A REPRESENTATIVE TO INSPECT THE VEHICLE AND I AM AWAITING THE OUTCOME. I HAVE CONTACTED COPART AND HAD THE VEHICLE PLACED ON HOLD TO ALLOW NHTSA THE OPPORTUNITY TO DO THE SAME, IF YOU CHOOSE. 5017 DUNCAN ROAD, PUNTA GORDA, FL (941) 505-9700. PLEASE FEEL FREE TO CONTACT ME WITH ANY QUESTIONS. |
| 11377560 | GMC | YUKON | 2006 | 2011-06-07 | AIRBAG FAILED FUNCTION DUE TO LACK OF  INFLATOR PERFORMANCE DURING MY HUSBANDS HEAD-ON CRASH AND HE SUFFERED COLLAR BONE AND RIB FRACTURES,MASSIVE HEAD TRAUMA RESULTING IN A CRAINIOTOMY,BRAIN DAMAGE AND DEATH ONE MONTH LATER. THE VEHICLE WAS TRAVELLING AT 45MPH ON A PAVED TWO LANE STREET. |
| 10275950 | BUICK | RAINIER | 2005 | 2009-06-30 | 2005 BUICK RAINIER WAS IN A HEAD ON  COLLISION WITH A CHRYSLER TOWN & COUNTRY VAN IN COMING TRAFFIC.  MY WIFE DRIVING THE RAINIER HIT HER HEAD ON THE STEERING WHEEL AND BENT IT. SHE RECEIVE A LARGE LACERATION REQUIRING ABOUT 30 STITCHES, CLAVICLE STRAIN, BROKEN COLLAR BONE AND MULTIPLE BRUISES. SHE WAS WEARING THE SEAT BELT.  COLLISION WAS STRONG ENOUGH TO LIFT THE REAR OF THE CAR OFF THE GROUND AND TURN IT FACING THE SAME DIRECTION AS THE VAN SHE HIT.  THE AIRBAGS DID NOT DEPLOY! *TR |
| 10152376 | CADILLAC | ESCALADE | 2005 | 2006-03-01 | HAD A FRONT END COLLISION WITH ANOTHER VEHICLE AND NONE OF MY AIRBAGS DEPLOYED. THE VEHICLE WAS 4 WEEKS OLD AND HAD 1850 MILES AT THE TIME OF THE ACCIDENT.   CALLED CADILLAC CUSTOMER SERVICE AND WAS GIVEN AN AIRBAG HISTORY LESSON VIA TELEPHONE FROM SOMEONE THAT HAD NEVER SEEN MY VEHICLE OR INSPECTED IT FOR DAMAGE AFTER THE ACCIDENT.  AT THE END OF OUR CONVERSATION I WAS TOLD ALL WAS OK, NONE OF MY AIRBAGS SHOULD HAVE DEPLOYED AND NOT TO WORRY ABOUT IT.  THE ENTIRE FRONT END OF MY VEHICLE WAS KNOCKED OFF, THE FRAME HAS MULTIPLE CRACKS AND IS BENT AS A RESULT OF THE COLLISION AND THE COLLISION CENTER IS 90% CERTAIN THE VEHICLE IS NOT REPAIRABLE. *JB |
| 10895442 | CADILLAC | SRX | 2005 | 2016-08-11 | AIRBAG DIDN'T DEPLOY IN AN ACCIDENT ON AUGUST 11 2016. AIRBAG IS FAULTY AND CONCERN ABOUT THE SAFETY OF THE 2005 SRC |
| 10968319 | CADILLAC | SRX | 2005 | 2017-03-14 | TL* THE CONTACT'S DAUGHTER OWNED A 2005 CADILLAC SRX. WHILE DRIVING APPROXIMATELY 40 MPH ON AN ICY, SNOWY ROAD, THE VEHICLE STARTED TO SKID AND THE DRIVER LOST CONTROL OF THE VEHICLE. THE DRIVER CRASHED INTO A CEMENT WALL. ALL THE AIR BAGS FAILED TO DEPLOY. THE DRIVER SUSTAINED HEAD INJURIES THAT REQUIRED MEDICAL ATTENTION ALONG WITH BRUISES TO THE CHEST, RIGHT ARM, AND LEG. A POLICE REPORT WAS FAILED. THE VEHICLE WAS TOWED AND DEEMED DESTROYED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 110,000. THE VIN WAS UNAVAILABLE. |
| 10120423 | CHEVROLET | EQUINOX | 2005 | 2005-05-01 | 2005 CHEVROLET EQUINOX REAR ENDED ANOTHER VEHICLE AFTER BEING HIT IN THE REAR WHILE STOPPED.  THE AIR BAGS DID NOT DEPLOY AND THE SEAT BELTS DID NOT ENGAGE. *MR  THE DRIVER SUSTAINED SOME INJURIES WHEN HE WAS PUSHED FORWARD INTO THE STEERING WHEEL AND DASH. *NM |
| 10221708 | CHEVROLET | EQUINOX | 2005 | 1901-01-01 | 2005 CHEVY EQUINOX AIR BAGS DID NOT DEPLOY. CONSUMER STATES THAT HE WAS INVOLVED IN A FRONTAL CRASH AND AIR BAGS FAILED TO DEPLOY. HE STATES THAT THE CRASH SPEED WAS ABOUT 35 MPH. *KB |

| | | | | | |
|---|---|---|---|---|---|
| 10221964 | CHEVROLET | EQUINOX | 2005 | 2007-12-15 | I HAD A HEAD ON COLLISION WITH A CONCRETE WALL IN MY 2005 CHEVROLET EQUINOX ON DECEMBER 15, 2007. I WAS TRAVELING ABOUT 55-60 MPH WHEN THE HEAD ON COLLISION OCCURRED. MY AIRBAGS DID NOT DEPLOY. HOWEVER THE TALC POWER AND THE SMELL CAME OUT. I HAD AN INVESTIGATION DONE ON THE AIRBAGS. I WAS TOLD BY A GM INVESTIGATION REP THAT THE VEHICLE HAS TO SLOW DOWN 10-15 MPH FOR THE AIRBAGS TO DEPLOY. THE INVESTIGATION SHOWED THAT THE VEHICLE SLOWED DOWN 11.85 MPH WHICH FALLS WITHIN THE RANGE FOR THE AIRBAGS TO DEPLOY. I NEED A SECOND OPINION BECAUSE GM STATED THAT DESPITE WHAT THE REPORT SAYS, THEY ARE NOT AT FAULT FOR THE AIRBAGS.  *TR |
| 10266217 | CHEVROLET | EQUINOX | 2005 | 2009-04-14 | TL*THE CONTACT OWNS A 2005 CHEVROLET EQUINOX. WHILE DRIVING 40 MPH, ANOTHER DRIVER PULLED OUT IN FRONT OF THE CONTACT'S VEHICLE.  AS A RESULT, THE CONTACT CRASHED INTO THE OTHER VEHICLE.  THE FRONT DRIVER'S SIDE AIR BAG FAILED TO DEPLOY AND THE CONTACT SUSTAINED MINOR NECK INJURIES.  A POLICE REPORT WAS FILED.  THE VEHICLE WAS INSPECTED BY HER INSURANCE AGENCY AND THEY STATED THAT IT WAS DESTROYED.  THE ADJUSTER WAS UNABLE TO DETERMINE WHY THE AIR BAGS DID NOT DEPLOY.  THE CONTACT CALLED THE MANUFACTURER AND WAS INFORMED THAT SHE WOULD RECEIVE A CALL BACK REGARDING THE CRASH.  THE FAILURE MILEAGE WAS 30,000. |
| 10440022 | CHEVROLET | EQUINOX | 2005 | 2011-12-13 | TL* THE CONTACT OWNS A 2005 CHEVROLET EQUINOX. THE CONTACT WAS DRIVING 30 MPH WHEN A DEER JUMPED A FENCE AND LANDED ON THE HOOD OF THE VEHICLE WITH EXTREME FORCE. THE CONTACT STATED THE ENGINE CONTINUED TO RUN BUT THE INTERIOR AND EXTERIOR LIGHTNING FAILED. THE AIR BAGS ALSO FAILED TO DEPLOY. THE POLICE WERE NOT CONTACTED AND THERE WERE NO INJURIES. THE VEHICLE WAS TAKEN TO A LOCAL REPAIR SHOP AND THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE VIN WAS UNAVAILABLE. THE FAILURE AND THE CURRENT MILEAGES WERE 73,000.  UPDATED 01/10/12*LJ |
| 10489315 | CHEVROLET | EQUINOX | 2005 | 2012-12-15 | I WAS DRIVING, HIT ICE, FISH TAILED, STARTED TO SPIN, WENT HEAD FIRST INTO THE MEDIAN, PROBABLY GOING 30-45 MPH.  AFTER THAT WE CAME TO A STOP, AND WERE HIT BY A SEMI TRAILER TRAVELING AT APPROXIMATELY 45-60 MPH.  NEITHER IMPACT SET THE AIR BAGS OFF AND WE BELIEVE THAT IT SHOULD HAVE.  *TR |
| 10597676 | CHEVROLET | EQUINOX | 2005 | 2004-10-31 | TL* THE CONTACT OWNS A 2005 CHEVROLET EQUINOX. WHILE DRIVING APPROXIMATELY 70 MPH ON THE HIGHWAY, THE CONTACT NOTICED THE KEY WAS DETACHING FROM THE IGNITION. THE DEALER STATED THAT THE VIN WAS NOT INCLUDED IN NHTSA CAMPAIGN NUMBER: 04V302000 (POWER TRAIN). WHILE DRIVING 35 MPH, THE CONTACT WAS INVOLVED IN A CRASH AND THE AIR BAGS FAILED TO DEPLOY. THE CONTACT WAS INJURED AND RECEIVED MEDICAL ATTENTION. THE VEHICLE WAS REPAIRED BY THE DEALER. THE MANUFACTURER WAS NOT NOTIFIED. THE APPROXIMATE FAILURE MILEAGE WAS 70. |
| 10597688 | CHEVROLET | EQUINOX | 2005 | 2005-10-31 | DRIVING DOWN STREET CUT OFF BY SEMI RAN INTO FLASHING SIGN WITH NOWHERE ELSE TO GO. OVER HALF PASSENGER FRONT BUMPER WAS CRUSHED RADIATOR  SMASHED, WHOLE FRONT PASSENGER QUARTER SMASHED. CAR WAS UNDRIVEABLE BUT AIR BAGS DID NOT GO OFF. *TR |
| 10716175 | CHEVROLET | EQUINOX | 2005 | 2013-12-13 | HEAD ON ACCIDENT INTO DITCH, AIRBAGS DID NOT GO OFF |
| 10936302 | CHEVROLET | EQUINOX | 2005 | 2016-12-15 | I WAS IN AN ACCIDENT ON 12/15/2016 WHERE I HIT SOMEONE FROM BEHIND.  I WAS DRIVING STRAIGHT DOWN THE HIGHWAY AND DIDN'T NOTICE THE PEOPLE IN FRONT OF ME STOPPING. WHEN I HIT THE BRAKES, IT WAS TOO LATE AND MY CHEST WENT FLYING AGAINST THE STEERING WHEEL.   WHEN MY EQUINOX HIT THEM, MY SEAT BELT DID NOT LOCK AND MY CHEST HIT THE STEERING WHEEL. I HAD TO GO TO THE HOSPITAL BECAUSE OF THE FORCE OF THE IMPACT.  THE FORCE WAS SO HARD THAT THE AIR BAG DID NOT COME OUT.  I DON'T KNOW IF THERE IS AN AIR BAG INSIDE THE VEHICLE. I COULD NOT CATCH MY BREATH AND I TESTED OUT MY SEAT BELT AND REALIZED IT DOES NOT LOCK WHEN BREAKING. IT IS ACTUALLY LOSE THE WHOLE TIME I AM DRIVING.  THIS IS NOT SAFE FOR ME OR A PASSAGE THAT I HAVE IN THE CAR.  TESTED OUT THE PASSAGE SIDE AS WELL AND IT IS THE SAME THING.  *TR |
| 11023592 | CHEVROLET | EQUINOX | 2005 | 2017-09-06 | TL* THE CONTACT OWNS A 2005 CHEVROLET EQUINOX. WHILE DRIVING 45 MPH, THE CONTACT CRASHED INTO ANOTHER VEHICLE. ALL THE AIR BAGS FAILED TO DEPLOY. THE CONTACT NOTICED SMOKE COMING FROM THE RADIATOR. THE VEHICLE WAS TOWED TO XTREME COLOR INC. IN KANSAS CITY, KS 66102; 913-281-0830. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED A NECK AND BACK INJURY THAT REQUIRED MEDICAL ATTENTION. THE MANUFACTURER WAS NOT CONTACTED. THE APPROXIMATE FAILURE MILEAGE WAS 146,500. |
| 11127938 | CHEVROLET | EQUINOX | 2005 | 2018-07-20 | TL* THE CONTACT OWNS A 2005 CHEVROLET EQUINOX. WHILE DRIVING 24 MPH ON AN EXIT RAMP, THE VEHICLE INADVERTENTLY DROVE OFF THE SIDE OF THE RAMP AND CRASHED. THE AIR BAGS FAILED TO DEPLOY AND THE SEAT BELT FAILED TO RESTRAIN THE CONTACT. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE CONTACT SUSTAINED MINOR INJURIES TO THE HEAD AND HIPS THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO A TOW LOT. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND A FIELD INSPECTOR WAS SENT TO INSPECT THE VEHICLE. THE CONTACT WAS AWAITING THE INSPECTION RESULTS. THE VEHICLE WAS NOT TAKEN TO A DEALER FOR DIAGNOSTIC TESTING. THE FAILURE MILEAGE WAS 140,000. |

| | | | | | |
|---|---|---|---|---|---|
| 11191960 | CHEVROLET | EQUINOX | 2005 | 2019-03-27 | TL* THE CONTACT OWNS A 2005 CHEVROLET EQUINOX. WHILE DRIVING 35 MPH AND DRIVING STRAIGHT PREPARING TO MAKE A RIGHT TURN, THE CONTACT CRASHED INTO THE FRONT QUARTER PANEL OF ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. THE CONTACT SUSTAINED INJURIES TO THE HEAD AND ANKLE, WHICH REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO AN INDEPENDENT LOT. THE DEALER AND MANUFACTURER WERE NOT CONTACTED. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE FAILURE MILEAGE WAS 65,000. *DT  *TR |
| 11297402 | CHEVROLET | EQUINOX | 2005 | 2020-01-05 | TL* THE CONTACT OWNED A 2005 CHEVROLET EQUINOX. THE CONTACT STATED THAT WHILE DRIVING 55 MPH AND TURNING ON CURVE TOO FAST, CONTROL OF THE VEHICLE WAS LOST. THE VEHICLE SWERVED LEFT AND RIGHT ULTIMATELY COMING TO A STOP AFTER CRASHING INTO A TREE. THE AIR BAGS FAILED TO DEPLOY. DURING THE IMPACT THE CONTACT HEAD WAS HIT ON THE WINDSHIELD AND ABRASION TO THE KNEE WERE SUSTAINED. MEDICAL ATTENTION WAS NOT SOUGHT. A POLICE REPORT WAS FILED.  THE VEHICLE WAS TOWED TO A TOW YARD. THE VEHICLE WAS DESTROYED. THE DEALER AND MANUFACTURER WERE NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 165,000. |
| 10117624 | CHEVROLET | SILVERADO | 2005 | 2005-03-29 | WHILE DRIVING 40 MPH VEHICLE CRASHED INTO A STORE FRONT. UPON IMPACT, DUAL AIRBAGS DID NOT DEPLOY. NO INJURIES REPORTED. *AK |
| 10137371 | CHEVROLET | SILVERADO | 2005 | 2005-09-20 | I HAD AN ACCIDENT ON TUESDAY SEPT. 20, 2005 DRIVING MY 2005 CHEVY PICKUP K2500 HD 4 WHEEL DRIVE. I LOST CONTROL AND WENT OFF HIGHWAY STRIKING A CITY DUMPSTER HEADON AND MOVING THE DUMPSTER APPROXIMATELY 50-60 FT. BY POLICE REPORT AND THAN GOING BACK ON HIGHWAY AND CROSSING ALL 4 LANES BEFORE THE TRUCK STOPPED. MY TRUCK WAS TOTALED BUT MY AIRBAG NEVER DEPLOYED. I WAS UNCONSCIOUS AND WAS AIRLIFTED TO VANDERBILT HOSPITAL IN NASHVILLE TN. WHY DIDN'T MY AIRBAG DEPLOY WITH A HEADON CRASH OF THIS FORCE? THIS SEEMS TO BE A DEFECT IN THE PRODUCT. I RECEIVED A 4 INCH CUT ACROSS THE BOTTOM OF MY CHIN THAT REQUIRED SEVERAL STITCHES AND VERY SORE FROM MY HEAD DOWN MY RIGHT LEG. STILL FOLLOWING UP WITH DOCTORS....  *NM |
| 10153906 | CHEVROLET | SILVERADO | 2005 | 2006-03-27 | DT*:  THE CONTACT STATED THE VEHICLE WAS INVOLVED IN AN ACCIDENT ON DRY ROADS.  TWO VEHICLES COLLIDED IN FRONT OF THE CONTACT, CAUSING AN EMERGENCY BRAKING SITUATION. THE CONTACT COLLIDED WITH THE REAR OF THE SECOND VEHICLE, AND THE AIR BAGS DID NOT DEPLOY.  THE CONTACT WAS INJURED IN THE ACCIDENT.  AN INDEPENDENT REPAIR SHOP WAS CONSULTED AND THEY WERE UNABLE TO DUPLICATE THE PROBLEM. |
| 10201747 | CHEVROLET | SILVERADO | 2005 | 2007-08-27 | AIRBAG FAILURE IN HEAD-ON COLLISION, TOTALING 2 TRUCKS. *JB |
| 10455110 | CHEVROLET | SUBURBAN | 2005 | 2011-12-06 | TL* THE CONTACT OWNS A 2005 CHEVROLET SUBURBAN. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 30 MPH, SHE CRASHED INTO THE REAR OF A TRASH TRUCK. UPON IMPACT, THE AIR BAGS DID NOT DEPLOY. THE DRIVER SUSTAINED INJURIES TO THE LEFT ARM AND LEFT LEG. THE POLICE WERE CONTACTED AND A REPORT WAS FILED. THE VEHICLE WAS TOWED TO AN INDEPENDENT MECHANIC WHERE THEY DEEMED THE VEHICLE AS BEING DESTROYED. THE MANUFACTURER WAS CONTACTED AND AFTER DIAGNOSING THE VEHICLE, THEY ADVISED HER THAT THE VEHICLE WAS NOT TRAVELING FAST ENOUGH AT THE TIME OF IMPACT FOR THE AIRBAGS TO DEPLOY. THE FAILURE MILEAGE WAS APPROXIMATELY 80,000. |
| 10130316 | CHEVROLET | TAHOE | 2005 | 2005-07-16 | DT: ON JULY 16, 2005  WHILE TRAVELING AT 55 MPH CONSUMER'S VEHICLE  WAS INVOLVED IN A HEAD ON COLLISION WITH ANOTHER VEHICLE.  TOTALED THE OTHER VEHICLE.  UPON IMPACT, THE AIR BAGS DID NOT DEPLOY. VEHICLE HAS NOT  BEEN INSPECTED TO SEE WHY THEAIR BAGS  DID NOT DEPLOY.  AIR BAG LIGHT CAME ON.  CONSUMER CALLED THE DEALERSHIP, AND THEY ADVISED CONSUMER NOT DRIVE THE VEHICLE TO THE DEALERSHIP  BECAUSE THE AIRBAGS MIGHT DEPLOY. THE VEHICLE WAS TAKEN TO THE BODY SHOP YESTERDAY TO BE FIXED.  THE CONSUMER  SPRAINED BACK AND NECK.  A POLICE REPORT WAS  ISSUED.*AK |
| 10200191 | CHEVROLET | TAHOE | 2005 | 2007-06-18 | AIR BAGS FAILED TO DEPLOY IN A CRASH. THE FRAME OF OUR 2005 CHEVROLET TAHOE WAS BUCKLED IN THE CRASH.  CRASH TEST DATA WAS RETRIEVED FROM THE VEHICLE. ALTHOUGH GENERAL MOTORS DOES NOT FEEL THAT THEY ARE IN A POSITION TO HONOR OUR REQUEST FOR DAMAGES AGAINST THEM. MY HUSBAND  AND  I  BOTH RECEIVED BACK AND NECK INJURIES DURING THE ACCIDENT.  *TR |
| 10335468 | CHEVROLET | TAHOE | 2005 | 2009-06-12 | TL*THE CONTACT OWNS A 2005 CHEVROLET TAHOE. THE CONTACT STATED THAT WHILE DRIVING AT APPROXIMATELY 55 MPH, THE VEHICLE CRASHED INTO A DEER BUT THE AIR BAGS DID NOT DEPLOY. THERE WAS EXTENSIVE DAMAGE TO THE VEHICLE. A POLICE REPORT WAS FILED. THE DEALER STATED THAT THE VEHICLE COULD BE INSPECTED AT THE CONTACT'S EXPENSE. THE BODY DAMAGE HAD BEEN REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 75,000. THE CURRENT MILEAGE WAS APPROXIMATELY 100,000. |
| 10494771 | CHEVROLET | TAHOE | 2005 | 2013-01-24 | 2005 CHEVY TAHOE WAS IN AN ACCIDENT AND HIT FRONT DRIVERS SIDE INTO DIRT EMBANKMENT AT 35-40 MPH PUSH DRIVERS SIDE TIRE BACK ABOUT 3" AND BUCKLED HOOD AND FENDER AND THE AIRBAGS DIDN'T GO OFF. *TR |

| | | | | | |
|---|---|---|---|---|---|
| 10748242 | CHEVROLET | TAHOE | 2005 | 2015-08-11 | TL* THE CONTACT OWNED A 2005 CHEVROLET TAHOE. WHILE DRIVING APPROXIMATELY 50 MPH, THE REAR DRIVER SIDE WHEEL BECAME DETACHED FROM THE VEHICLE AND CAUSED THE CONTACT TO LOSE CONTROL OF THE VEHICLE. THE CONTACT CRASHED INTO A WOODEN POLE, WHICH CRASHED THROUGH THE FRONT WINDOW. THE VEHICLE FLIPPED OVER THREE TIMES AND LANDED UPSIDE DOWN. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED BROKEN BONES AND INJURIES THAT REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS TOWED TO THE TOWING COMPANY. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 131,000. |
| 10134099 | CHEVROLET | TRAILBLAZER | 2005 | 2005-05-12 | I WAS INVOLVE IN AN ACCIDENT WHERE I HAVE LOST CONTROL OF A CHEVROLET TRAILBLAZER AND HIT A CENTER DIVIDER ON THE FREEWAY. WITH THE FRONT BUMPER SMASHED ONTO THE CENTER DIVIDER, THE AIR BAG FAILED TO DELPLOY. |
| 10141221 | CHEVROLET | TRAILBLAZER | 2005 | 2005-10-19 | CHEVY TRAILBLAZER ('05 OR '06) REAR ENDED ANOTHER VEHICLE AT A SPEED FAST ENOUGH TO TOTAL THE TRAILBLAZER. THE AIRBAG DID NOT DEPLOY AND THE DRIVER SUSTAINED CHEST AND HEART INJURIES. *NM |
| 10143976 | CHEVROLET | TRAILBLAZER | 2005 | 2005-11-20 | DT: THE CONTACT'S BOY FRIEND WAS TRAVELING AT 78 MPH WHEN HE LOST CONTROL OF THE VEHICLE, AND IT WAS INVOLVED IN A FRONTAL IMPACT. THE VEHICLE ROLLED OVER SIX TIMES. UPON IMPACT, THE AIR BAGS DID NOT DEPLOY. THE CONTACT AND PASSENGER SUSTAINED INJURIES. MANUFACTURER WAS NOT CONTACTED. *AK |
| 10161963 | CHEVROLET | TRAILBLAZER | 2005 | 2006-07-08 | 7/8/06, WHILE TRAVELING HIGHWAY 31 IN NILES, MICHIGAN, SPEED LIMIT OF 70 MPH, WE HIT A DEER HEAD ON WITH OUR 2005 CHEVY TRAILBLAZER LS, S/N.  WE HAD NO TIME TO EVEN BRAKE PRIOR TO THE IMPACT.  THE IMPACT TOOK OUT THE FRONT END OF THE CAR, PUSHING THE RADIATOR BACK INTO THE ENGINE COMPARTMENT.  NEITHER AIR BAG DEPLOYED.  THERE WERE 4 PASSENGERS IN THE VEHICLE, INCLUDING AN 11-YEAR OLD BOY, AND A 14-YEAR OLD BOY.  *JB |
| 10173065 | CHEVROLET | TRAILBLAZER | 2005 | 2006-11-08 | DT*: THE CONTACT STATED WHILE DRIVING 40 MPH ENTERING THE FREEWAY, THE VEHICLE REAR ENDED ANOTHER VEHICLE. AND NONE OF THE AIR BAGS DEPLOYED. THE AIRBAG WARNING LIGHT DID NOT ILLUMINATE PRIOR TO THE CRASH. A POLICE REPORT WAS FILED IN THE STATE OF CALIFORNIA. THERE WERE TWO PEOPLE INJURED, THE NOSE OF THE CHILD WAS BLEEDING AND THE CONTACT SUFFERED A NECK INJURY.  THE CHILD WAS 6 YEARS OLD AND THE CONTACT WAS 22 YEARS OLD. BOTH OF THE PASSENGERS WERE WEARING SEAT BELT.  THE WEATHER WAS CLOUDY. A POLICE REPORT WAS PROCESS.  THE SERVICE DEALER AND THE MANUFACTURER WERE NOT NOTIFIED. |
| 10178482 | CHEVROLET | TRAILBLAZER | 2005 | 2007-01-08 | TL* - THE CONTACT'S 2005 CHEVY TRAILBLAZER WAS PURCHASED USED ON AUGUST 13, 2005 FROM BERGLUND CHEVROLET OF VIRGINIA, WITH 13000 MILES.  THE VEHICLE WAS INVOLVED IN AN ACCIDENT ON JANUARY 8TH, 2007 WERE THERE WAS ONE FATALITY AND FIVE PEOPLE WERE INJURED.  A SECOND VEHICLE, A BUICK LASABRE, FAILED TO STOP AT STOP SIGN WHILE MAKING A LEFT HAND TURN.  THE CONTACTS VEHICLE STRUCK THE SECOND VEHICLE DIRECTLY ON THE DRIVERS SIDE.  THE CONTACTS VEHICLE WAS TRAVELING AT 50 MPH.  THE DRIVER OF THE SECOND VEHICLE WAS PRONOUNCED DEAD AT THE SCENE.  THE CONTACTS VEHICLE PASSENGER AND DRIVER SIDE AIR BAGS NEVER DEPLOYED, EVEN THOUGH THERE WERE PASSENGERS IN ALL SEATS. SIX STATE TROOPERS WERE ON THE SCENE AND NO ONE WAS SITED. |
| 10205154 | CHEVROLET | TRAILBLAZER | 2005 | 2007-10-06 | I WAS DRIVING ON AN ELEVATED INTERSTATE AND LOST CONTROL OF THE VEHICLE. I HIT THE GUARDRAIL IN A DIRECT FRONTAL IMPACT. THE ENTIRE FRONT OF THE CAR WAS CRUSHED ABOUT 40 INCHES. THE CAR IS TOTALED BUT THE AIRBAGS DID NOT DEPLOY. I SUFFERED SOME INJURIES ON MY HEAD EVEN THOUGH I HAD MY SEATBELT ON.  *JB |
| 10221319 | CHEVROLET | TRAILBLAZER | 2005 | 2008-02-21 | I WAS DRIVING ON A 2 LANE ROAD GOING 45MPH.  A CAR WAS FOLLOWING CLOSE BEHIND ME SO I WENT TO GET INTO RIGHT LANE AND MY TRUCK DID 5 360 AND HIT 3 TREES HEAD ON AND AIR BAG NEVER DEPLOYED. *TR |
| 10239994 | CHEVROLET | TRAILBLAZER | 2005 | 2008-08-25 | TL*THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER.  WHILE DRIVING 60 MPH, THE CONTACT STRUCK THE GUARDRAIL. THE VEHICLE WAS DESTROYED AND THE AIR BAGS FAILED TO DEPLOY. THE CONTACT HAS PICTURES OF THE VEHICLE.  SHE WAS TRANSPORTED TO THE HOSPITAL AND IS CURRENTLY IN PAIN.  A POLICE REPORT WAS FILED.  THE AIR BAGS WERE NOT SERVICED PRIOR TO THE CRASH.  THE VIN WAS UNKNOWN.  THE FAILURE MILEAGE WAS 44,000. |
| 10241433 | CHEVROLET | TRAILBLAZER | 2005 | 2005-09-07 | TL*THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER.  WHILE DRIVING APPROXIMATELY 45 MPH, THE CONTACT CRASHED INTO ANOTHER VEHICLE, WHICH RESULTED IN A THREE CAR PILE UP. THE FRONT END OF HER VEHICLE WENT UNDERNEATH THE PRECEDING VEHICLE.  THE AIR BAGS FAILED TO DEPLOY.  SHE WAS UNABLE TO RECEIVE ASSISTANCE FROM ON STAR DUE TO THE AIR BAG FAILURE.  THERE WERE NO PRIOR FAILURES WITH HER VEHICLE.  THE CONTACT AND THREE CHILDREN IN SAFETY SEATS SUSTAINED MINOR INJURIES.  A POLICE REPORT WAS FILED.  THE CURRENT AND FAILURE MILEAGES WERE 76,000. |

| | | | | | |
|---|---|---|---|---|---|
| 10254382 | CHEVROLET | TRAILBLAZER | 2005 | 2008-12-16 | MY DAUGHTER HAD AN ACCIDENT ON 12/16/2008. SHE HAS(HAD) A 2005 CHEVROLET TRAILBLAZER LS, 2 WHEEL DRIVE SUV. WHILE DRIVING ON THE OHIO TURNPIKE DURING A SNOW STORM SHE LOST CONTROL AND HAD A HEAD ON CRASH WITH A CEMENT RETAINING WALL WHILE TRAVELING BETWEEN 25 TO 35 MILES PER HOUR. THE AIR BAG DID NOT DEPLOY DURING THE ACCIDENT AND SHE SLAMMED HARD INTO THE STEERING WHEEL RESULTING IN A CONCUSSION, CHEST INJURIES, SORE WRIST, DIZZINESS, AND STILL HAS RINGING IN ONE EAR. SHE DID HAVE HER SAFETY BELT ON AT THE TIME OF THE ACCIDENT AND ALWAYS WEARS IT. WE ARE BAFFLED AS TO WHY THE AIR BAG DID NOT COME OUT AS IT WOULD HAVE SAVE HER MUCH PAIN. THE CAR IS A TOTAL WRECK AS DESCRIBED BY THE PONTIAC DEALER THAT HER INSURANCE COMPANY TOWED THE SUV TO FOR REPAIRS. THE TRAILBLAZER SUSTAINED MUCH DAMAGE SUCH AS A BENT FRAME, BROKEN TRANSMISSION, ALL OF THE MOTOR MOUNTS AND THE TRANSMISSION MOUNTS BROKE LOOSE FROM THE FRAME, BENT STEERING WHEEL, AND ALL PARTS FROM THE ENGINE FORWARD ARE EITHER GONE OR BENT BEYOND REPAIR. WITH THIS VIOLENT OF A CRASH NO ONE HAS BEEN ABLE TO TELL US WHY THE AIR BAGS DID NOT DEPLOY. WE BOUGHT THIS SUV USED FROM A CHEVY DEALER IN JULY OF 2005 AND IT HAD AROUND 8000 MILES ON IT AT THAT TIME. I WOULD LIKE TO KNOW IF THERE IS SOME WAY OF CHECKING THE FUNCTIONALLY OF THIS AIR BAG TO SEE IF THERE MAY BE A POSSIBLE PROBLEM WITH IT. HER CRASH WAS HEAD ON AND IN MY OPINION VIOLENT ENOUGH TO ACTIVATE THE DRIVER SIDE AIR BAG. ANY SUGGESTIONS AS TO WHAT WE SHOULD DO? *TR |
| 10256371 | CHEVROLET | TRAILBLAZER | 2005 | 2009-01-12 | TL* THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. THE CONTACT WAS THE PASSENGER IN A VEHICLE TRAVELING 35 MPH ON ICY ROAD CONDITIONS. ANOTHER VEHICLE PULLED OUT IN FRONT OF THEM AND CRASHED INTO THE VEHICLE. THE VEHICLE WAS DESTROYED AND THE AIR BAGS FAILED TO DEPLOY. THE CONTACT WAS TRANSPORTED TO THE HOSPITAL BY AMBULANCE. HER NECK WAS SNAPPED BACKWARDS. THE SEAT BELT PROPERLY RESTRAINED HER AT THE TIME OF THE CRASH. A POLICE REPORT WAS FILED AND THE OTHER DRIVER RECEIVED A CITATION. THE DEALER WAS UNABLE TO DETERMINE WHY THE AIR BAGS FAILED. THE FAILURE MILEAGE WAS 80,000. |
| 10266680 | CHEVROLET | TRAILBLAZER | 2005 | 2009-04-20 | AIRBAGS DID NOT DEPLOY. A DRIVER PULLED OUT IN FRONT OF MY WIFE. SHE WAS TRAVELING AT NEARLY 40MPH. SHE STRUCK ANOTHER VEHICLE BROAD SIDE. THE AIRBAGS DID NOT DEPLOY. THE FRONT BUMPER FROM OUR TRAILBLAZER WAS ABOUT 30 YARDS BEHIND OUR VEHICLE. MY WIFE EXPERIENCED SEVERE BRUISING TO ABD AND CHEST. HER SEATBELT WAS IN USE. *TR |
| 10269109 | CHEVROLET | TRAILBLAZER | 2005 | 2009-04-13 | LOST CONTROL OF CAR ON NARROW ROAD UNDER NORMAL DRIVING CONDITIONS. COLLISION INTO TWO TREES HEAD ON. DRIVER SIDE AIRBAG NEVER DEPLOYED. *TR |
| 10328284 | CHEVROLET | TRAILBLAZER | 2005 | 2010-04-29 | I WAS IN AN ACCIDENT WHERE ANOTHER DRIVER PULLED OUT IN FRONT OF ME CROSSING ONCOMING TRAFFIC. I HIT HIM BROADSIDE DOING APPROXIMATELY 30-35 MILES PER HOUR. MY FRONT END WAS NEARLY SHOVED ALL THE WAY UP TO THE WINDSHIELD. MY 2005 TRAILBLAZER WAS TOTALED. MY AIRBAG DID NOT DEPLOY AND IF IT WASN'T FOR MY SEATBELT I WOULD HAVE WENT THROUGH THE WINDSHIELD THE IMPACT WAS SO HARD. I SUSTAINED A HURT SHOULDER AND ARM AND PROBABLY WOULDN'T HAD SUCH A PAINFUL INJURY IF THE AIRBAG HAD OF DEPLOYED. *TR |
| 10357310 | CHEVROLET | TRAILBLAZER | 2005 | 2010-07-09 | TL* THE CONTACT OWNS A 2005 CHEVROLET TRAIL BLAZER. THE CONTACT WAS DRIVING 50 MPH ON A SLICK MOUNTAIN ROAD WHEN THE VEHICLE HYDROPLANED AND CRASHED INTO THE SIDE OF A MOUNTAIN BEFORE FALLING INTO A DITCH. THE AIR BAGS DID NOT DEPLOY AND THE CONTACT AND TWO PASSENGERS SUSTAINED INJURIES. THE VEHICLE WAS DESTROYED. THE VEHICLE WAS NOT INSPECTED FOR THE FAILURE OF THE AIR BAGS. THE CONTACT WAS ADVISED BY HIS INSURANCE ADJUSTER THAT THE AIR BAGS SHOULD HAVE DEPLOYED. A POLICE REPORT WAS AVAILABLE. THE VIN WAS NOT AVAILABLE. THE FAILURE AND CURRENT MILEAGE WAS APPROXIMATELY 100,000. |
| 10398899 | CHEVROLET | TRAILBLAZER | 2005 | 2011-04-28 | AIR BAG DID NOT DEPLOY IN HEAD-ON COLLISION. *TR |
| 10470760 | CHEVROLET | TRAILBLAZER | 2005 | 2012-07-27 | TL* THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT THE DRIVER WAS TRAVELING BETWEEN 30 AND 40 MPH WHEN THE VEHICLE CRASHED INTO ANOTHER VEHICLE HEAD ON AND THE AIR BAGS FAILED TO DEPLOY. THE DRIVER SUSTAINED INJURIES TO THE HEAD, MOUTH, CHEST, LEG, AND WRIST. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE VEHICLE WAS NOT TAKEN TO THE DEALER. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE AND CURRENT MILEAGE WAS 40,000. |
| 10475331 | CHEVROLET | TRAILBLAZER | 2005 | 2012-06-27 | TL* THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. THE CONTACT WAS TRAVELING 45 MPH WHEN HE CRASHED AGAINST THE STREET MEDIAN, A UTILITY POLE AND THEN INTO A BUILDING. THE CONTACT STATED THAT NONE OF THE AIR BAGS IN THE VEHICLE DEPLOYED. THE CONTACT SUSTAINED LESIONS TO THE FACE, A CONTUSION TO THE RIGHT EYE AND CONTUSIONS TO THE CHEST AND LOWER ABDOMEN AREA. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. VEHICLE WAS INSPECTED HOWEVER, THE FINDINGS WERE NOT DISCLOSED TO CONTACT. THE FAILURE AND CURRENT MILEAGE WAS 118,000. |

| | | | | | |
|---|---|---|---|---|---|
| 10477042 | CHEVROLET | TRAILBLAZER | 2005 | 2012-09-17 | TL* THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. THE CONTACT WAS DRIVING IN RAINY WEATHER AT VARIOUS SPEEDS WHEN HE UNEXPECTEDLY CRASHED INTO ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED FOR THE INCIDENT. THE CONTACT SUSTAINED SEVERE HEAD TRAUMA AND WAS TRANSPORTED BY AN AMBULANCE TO THE HOSPITAL. THE VEHICLE WAS DESTROYED AND TOWED TO A SAVAGE FACILITY. THE MANUFACTURER WAS NOT NOTIFIED OF THE PROBLEM. THE APPROXIMATE FAILURE MILEAGE WAS 122,000. UPDATED 10/31/12 *BF  UPDATED 11/02/12 |
| 10477257 | CHEVROLET | TRAILBLAZER | 2005 | 2012-05-20 | TL* THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING 30 MPH ATTEMPTING TO AVOID IMPACTING A DEER ON THE ROAD, HE CRASHED OFF A 9 FOOT EMBANKMENT AND NONE OF THE AIR BAGS DEPLOYED. THE CONTACT BECAME UNCONSCIOUS AFTER HIS HEAD CRASHED INTO THE STEERING WHEEL. ALSO, THE CONTACT SUFFERED SEVERE NECK INJURIES. THE VEHICLE WAS INSPECTED BY THE DEALER BUT THE RESULTS WERE INCONCLUSIVE. THE MANUFACTURER WAS NOTIFIED BUT OFFERED NO ASSISTANCE. THE FAILURE AND CURRENT MILEAGE WAS 108,429. THE VIN WAS UNAVAILABLE.  UPDATED 10/31/12 *CN UPDATED 11/9/2012 *JS |
| 10669444 | CHEVROLET | TRAILBLAZER | 2005 | 2014-11-18 | HIT BLACK ICE. TRUCK SLID OFF THE ROAD AND  FRONT END IMPACTED THE DITCH CAUSING HEAVY DAMAGE TO THE FRONT END. AIR BAG FAILED TO DEPLOY CAUSING INJURY.  *JS |
| 10678235 | CHEVROLET | TRAILBLAZER | 2005 | 2015-01-21 | TL* THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING AT 25 MPH, ANOTHER VEHICLE CRASHED INTO THE FRONT PASSENGER SIDE OF THE CONTACT'S VEHICLE. AS A RESULT, THE CONTACT CRASHED INTO A SIGN AND THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED BACK INJURIES AND THE PASSENGER SUSTAINED NECK AND BACK INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE CONTACT WAS UNABLE TO CONFIRM IF THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 122,000. THE VIN WAS UNAVAILABLE. |
| 10689540 | CHEVROLET | TRAILBLAZER | 2005 | 2015-02-16 | TL* THE CONTACT OWNED A 2005 CHEVROLET TRAILBLAZER. WHILE DRIVING VARIOUS SPEEDS, THE VEHICLE SLID AND CRASHED. THE DRIVER SIDE AIR BAG FAILED TO DEPLOY. THE VEHICLE WAS NOT INCLUDED IN NHTSA CAMPAIGN NUMBER: 06V417000 (AIR BAGS). THE CONTACT SUSTAINED LACERATIONS TO THE FACE, STITCHES UNDER THE EYEBROWS ON BOTH EYES, AND AN INJURED NECK THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE VIN WAS NOT AVAILABLE. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS NOT AVAILABLE. |
| 10721128 | CHEVROLET | TRAILBLAZER | 2005 | 2015-04-27 | 2005 CHEVY TRAILBLAZER WAS DRIVEN BY MY GRANDDAUGHTER. SHE WAS TRYING TO ENTER ONTO I-10 INTERSTATE AND WAS GOING TOO FAST ON THE ENTRANCE RAMP. ROAD CONDITIONS WERE HAZARDOUS AS IT WAS A SEVERE RAIN STORM. SHE HYDROPLANED AND HIT A VEHICLE IN FRONT OF HER WHICH CAUSED HER TO SPIN INTO ONCOMING TRAFFIC. SHE WAS HIT ON THE DRIVER'S SIDE AND THE TRUCK SPUN AROUND SEVERAL TIMES BEFORE IT STOPPPED. THE AIRBAG DID NOT DEPLOY!!! THE POLICE OFFICER AND THE TOW COMPANY DRIVER SAID SHE WAS LUCKY TO BE ALIVE.  MY CONCERN IS THIS COULD HAVE BEEN A FATAL ACCIDENT AND THE AIRBAG FAILED TO DEPLOY. THE TRAILBLAZER WAS TOTALED AS THE AXLE AND THE ENGINE WERE ON THE GROUND. THE DRIVER'S SIDE FRONT WHEEL CAME OFF. I HAVE ALWAYS LIKE CHEVY VEHICLES BUT AM NOW HESITANT TO PURCHASE ANOTHER ONE B/C OF THIS ISSUE WITH THE AIR BAG. |
| 10885198 | CHEVROLET | TRAILBLAZER | 2005 | 2016-06-20 | HEAD ON COLLISION BOTH VEHICLES TRAVELING ABOUT 30MPH ON IMPACT AND TRAILBLAZER AIR BAGS DID NOT DEPLOY. I HAD MY SEATBELT ON AND WAS NOT INJURED. |
| 10983668 | CHEVROLET | TRAILBLAZER | 2005 | 2017-05-02 | TL* THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. WHILE DRIVING 35 MPH, THE CONTACT CRASHED INTO THE REAR OF ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS FILED. THE DRIVER SUSTAINED VARIOUS INJURIES TO THE FACE, WHICH REQUIRED MEDICAL ATTENTION. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE VEHICLE WAS TOWED TO A TOW YARD AND WAS NOT DIAGNOSED FOR THE AIR BAG FAILURE. THE FAILURE MILEAGE WAS 140,000. |
| 11011530 | CHEVROLET | TRAILBLAZER | 2005 | 2017-07-27 | AIRBAG DID NOT WORK |
| 10111298 | GMC | ENVOY | 2005 | 2005-01-25 | COMPLAINT RECEIVED VIA E-MAIL.  MY WIFE WAS IN HER 2005 GMC ENVOY WHEN IT WAS HIT ON THE DRIVER'S TIRE, AND WAS DRIVEN INTO A CONCRETE POWER POLE AT 40 MPH HEAD ON.  THE POWER LINES WERE KNOCKED DOWN. DRIVER'S SIDE AIR BAG NEVER DEPLOYED, AND HER HEAD HIT THE STEERING, CAUSING A BUMP ON THE HEAD, A BLACK EYE AND A CUT LIP. *AK |
| 10119967 | GMC | ENVOY | 2005 | 2005-04-22 | SEVERE CAR CRASH WITH MY LEASED 2005 GMC ENVOY. MUCH SIDE AND FRONT DAMAGE OCCURED, BUT AIR BAGS DID NOT DEPLOY. GMC WILL BE SENDING SOMEONE FROM THE PROTECTION ALLEGATION DEPARTMENT TO PERFORM A DIAGNOSTIC TEST ON THE AIR BAGS WITHIN THE NEXT 14 DAYS. THE ACCIDENT OCCURED ON 4/22/05.   I DO NOT WANT THE VEHICLE REPAIRED AND GIVEN BACK TO ME FOR THE FOLLOWING 2 REASONS: THE VEHICLE INCURRED (IN MY OPINION, POLICE REPORT, ALLSTATE INSURANCE CO., STERLING AUTO BODY REPAI SHOP) ETC ... EXTENSIVE DAMAGE. THE 2ND REASON IS THE AIRBAGS, AS STATED, DID NOT DEPLOY. IF ANYONE WERE TO BE SEATED IN THE PASSENGER SEAT, THEY WOULD HAVE BEEN SERIOUSLY HURT.  I HAVE READILY AT MY DISPOSAL ANY AND ALL ADDITIONAL INFO. WHICH I WILL GLADLY SUBMIT  WHEN NECESSARY. |

| 10183935 | GMC | ENVOY | 2005 | 2007-02-13 | TL*. THE CONTACT OWNS A 2005 GMS ENVOY.  IN MID-FEBRUARY 2007 THE CONTACT'S VEHICLE WAS INVOLVED IN A HEAD ON COLLISION WHILE DRIVING AT 35 MPH.  THE CONTACT DROVE INTO A TREE DUE TO ICY ROAD CONDITIONS.  NONE OF THE AIR BAGS DEPLOYED. THERE WERE NO PASSENGERS IN THE VEHICLE. THE CONTACT WAS WEARING A SEAT BELT. THERE WERE NO WARNING INDICATOR LIGHTS ON THE DASHBOARD BEFORE OR AFTER THE CRASH. THE VEHICLE WAS TOWED TO A THE DEALER, AND THE INSURANCE COMPANY ADVISED THE CONTACT THAT THE VEHICLE WAS TOTALED.  THE CONTACT HAD REQUESTED THAT THE MANUFACTURER ISSUE A COMPUTER READ OUT INDICATING WHY THE AIR BAGS DIDN'T DEPLOY. THE DEALER SENT THE CONTACT PRIOR TO THE COLLISION A DIAGNOSTIC EMAIL STATING THE VEHICLE WAS OPERATING NORMALLY.  A POLICE REPORT WAS TAKEN.   THE CURRENT AND FAILURE MILEAGE WERE BOTH 25000.*AK |
| 10257735 | GMC | ENVOY | 2005 | 2009-01-28 | TL*THE CONTACT OWNS A 2005 GMC ENVOY.  THE CONTACT WAS INVOLVED IN A HEAD-ON CRASH.  THE CONTACT WAS SEVERELY INJURED AND THE ENTIRE FRONT END OF THE VEHICLE WAS CRUSHED.  ALL FOUR TIRES BLEW OUT AND THE FRONTAL AIR BAGS FAILED TO DEPLOY.  THERE WERE NO OTHER PASSENGERS IN THE VEHICLE AND NO MAINTENANCE WAS PERFORMED ON THE VEHICLE PRIOR TO THE CRASH.  THE VEHICLE WAS DESTROYED AND TOWED FROM THE SCENE.  A POLICE REPORT WAS FILED.  THE MILEAGES, SPEED, AND VIN WERE UNKNOWN. |
| 10463248 | GMC | ENVOY | 2005 | 2011-07-15 | TL* THE CONTACT OWNED A 2005 GMC ENVOY. THE CONTACT STATED WHILE DRIVING 55 MPH, HE CRASHED INTO A TREE. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED MINOR TISSUE DAMAGE ON THE UPPER BODY FROM THE IMPACT. THE VEHICLE WAS TOWED TO A REPAIR SHOP, WHERE IT WAS DECLARED DESTROYED. A POLICE REPORT WAS FILED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE; HOWEVER, THEY PROVIDED NO ASSISTANCE. THE CURRENT AND FAILURE MILEAGE WERE UNAVAILABLE. UPDATED 09/24/2012 *JS  THE CONSUMER STATED THE ACCIDENT WAS INITIATED BY A VEHICLE GOING WEST BOUND THAT CROSSED THE SOLID DOUBLE LINES, ULTIMATELY CAUSING A DOMINO EFFECT. THE CONSUMER'S VEHICLE WAS DAMAGED WHEN HE TRIED TO AVOID HITTING THE VEHICLE BY SWERVING SIDEWAYS AND SLIDING INTO THE GRASS. HE TRIED STOPPING THE VEHICLE WHILE IT WAS STILL ON THE PAVEMENT BUT HE INEVITABLY RAN INTO THE DITCH AND FLEW AIRBORNE INTO A TREE, AND THE TRUCK OVERTURNED. UPDATED 03/25/14  UPDATED 01//22/15. *JB......UPDATED 03/17/16 *BF UPDATED 09/06/16.*JB  UPDATED 09/18/2017*JS *JS |
| 10503799 | GMC | ENVOY | 2005 | 2013-03-15 | THE ACCIDENT HAPPENED ON 2-15-2013 ON PENNSYLVANIA AVENUE SE DURING RUSH HOUR THE OTHER CAR DID NOT YIELD TO ONGOING TRAFFIC ON PENNSYLVANIA AVENUE AND DODGED OUT FROM A SIDE STREET AND HIT MY VEHICLE ON THE FRONT SIDE AND MY SON WHO IS 13 HEAD HIT THE DASHBOARD AND MY DAUGHTERS DOG FLEW FROM THE BACK SEAT UP TO THE FRONT. THE OTHER VEHICLE AIRBAG DID DEPLOY BUT MINES DID NOT.  *TR |
| 10607728 | GMC | ENVOY | 2005 | 2008-03-16 | SINGLE CAR ACCIDENT WITH CAR RUNNING OFF ROAD RAN INTO DITCH, OVERTURNED AND HITTING PHONE POLE.  AIRBAG DID NOT DEPLOY. QUESTIONABLE SEAT BELT ISSUES. *TR |
| 10632374 | GMC | ENVOY | 2005 | 2011-09-16 | ON SEPTEMBER 16TH, 2011, I WAS INVOLVED IN AN AUTO ACCIDENT THAT WAS A HEAD ON CRASH. THE AIR BAGS NEVER DEPLOYED AND I SUSTAINED BACK INJURIES. ON SITE OF THE ACCIDENT MY BACK WAS HURTING SOME BUT DID NOT GO TO HOSPITAL UNTIL LATER THAT EVENING, AFTER THE ADRENALIN AND THE SHOCK WORE OFF. I NOW HAVE SEVER BACK PROBLEMS WITH A LOT OF PAIN AND WAS DECLARED DISABLED IN 2012. AT THE TIME OF DOING RESEARCH I WAS TOLD BY ON-STAR, WHICH NEVER CAME ON, THAT IF MY AIR BAGS DIDN'T DEPLOY THEY WOULDN'T COME ON.. BUT, THE FRAME WAS BENT SO BAD THAT THEY TOTALED THE VEHICLE, WITH A LOT OF OTHER DAMAGE. THE WHOLE FRONT WAS DAMAGED, THE BUMPER WAS DESTROYED ALONG WITH DAMAGE TO THE MOTOR. AND WE COULD NOT UNDERSTAND WHY THE AIR BAGS DID NOT DEPLOY.  *TR |
| 10908300 | GMC | ENVOY | 2005 | 2016-08-22 | I HAD THREE CARS IN FRONT OF ME STOPPED. I DID NOT SEE ANY BREAKL LIGHTS AND I HIT THE CAR IN FRONT OF ME PUSHING THE OTHER CARS TO HIT EACH OTHER.  MY FRONT END OF MY CAR WAS SEVERALLY DAMAGED BAD ENOUGH TO DAMAGE THE RADIATOR AND DESTROY MY AC UNIT. I'M NOT SURE WHAT ELSE WAS DAMAGED. IT SENT THE PERSON IN FRONT OF ME AND MYSELF TO THE EMERGENCY ROOM. " MY AIR BAGS DID NOT DEPLOY.  MY VEHICLE WAS MOVING ON A CITY STREET. |

| 10370915 | ISUZU | ASCENDER | 2005 | 2010-12-10 | I WAS DRIVING EAST ON INTERSTATE 10 IN PENSACOLA, FLORIDA. A VEHICLE TRAVELING WEST LOST CONTROL AND CAME ACROSS THE SLOPED GRASSY MEDIAN, OVERTURNED AN SLID ACROSS MY TRAFFIC LANE, CAUSING ME TO CRASH INTO THEIR ROOF. MY ODOMETER SAYS AT THE POINT OF IMPACT I WAS ONLY TRAVELING 48 MPH. ONCE I REALIZED I WAS ALIVE, I WAS IN AWE THAT THE AIRBAG DID NOT DEPLOY. I SPOKE TO A MANAGER AT ISUZU IN CALIFORNIA. HE REQUESTED THE VIN NUMBER AND SOME OTHER PERSONAL INFORMATION AND SAID IF THE INSURANCE COMPANY ADJUSTER SAW ANY MANUFACTURER DEFECTS, THEN THE INSURANCE COMPANY WOULD CONTACT ISUZU. I ALSO CONTACTED MY INSURANCE PROVIDER, THEY SAID SINCE I WAS NOT KILLED IN THE ACCIDENT, THEY WOULD NOT PURSUE ANYTHING WITH ISUZU. I THOUGHT SOMEONE SHOULD KNOW BECAUSE I WAS PINNED IN THE VEHICLE AND HAD TO BE CUT OUT. THE TOW TRUCK DRIVER ALSO MENTIONED SOMETHING ABOUT THE STEERING COLUMN HAD MALFUNCTIONED, NOT SURE WHAT THE MALFUNCTION WAS, BUT IT DID NOT DO WHAT IT WAS DESIGNED TO DO FOR SAFETY PURPOSES. I SUSTAINED A FRACTURED RIGHT FOOT, BRUISED LUNGS/RIBS, NUMEROUS LACERATIONS, BRUISED LEFT KNEE AND LEFT ELBOW. *TR |
| 10449350 | ISUZU | ASCENDER | 2005 | 2012-02-20 | WE HAD A CAR ACCIDENT AND THE AIRBAGS DIDN'T ACTIVATE. THE IMPACT WAS VERY HARD THAT THE INSURANCE COMPANY DECIDED TO TOTAL THE CAR BECAUSE THE DAMAGE WAS TO BIG. I AM PREGNANT AND I HAVE 2 MORE KIDS, AND I'M SO DISAPPOINTED WITH THIS EXPERIENCE THAT SOMETHING COULD HAPPENED TO ME OR MY KIDS IF WE WERE IN THE ACCIDENT. *TR |
| 10228093 | BUICK | RAINIER | 2004 | 2008-03-20 | MY FIANCE WAS IN ACCIDENT WITH MY SUV AND THE AIR BAG DIDN'T DEPLOY CAN I SUE THE COMPANY WHO SOLD ME THE VEHICLE? *TR |
| 10266690 | BUICK | RAINIER | 2004 | 2009-04-05 | WHILE TRAVELING AT A SPEED OF APPROX 50-55 ON A INTERSTATE, I WAS REARED ENDED BY A AUTO, MY AUTO WAS STRUCK THEN SHOVELED INTO A CEMENT WALL BLOCK AND THEN BOUNCED INTO ON COMING TRAFFIC TO THE OTHER CEMENT WALL BLOCK ON THE OPPOSITE SITE WHILE TRYING TO STOP, I WAS WEARING A SEAT BELT. THE VEHICLE'S AIR BAGS DIDN'T GO OFF AT ALL IN THE VEHICLE. A HEAD INJURY OCCURRED, NECK AND SHOULDER INJURIES OCCURRED. THE AUTO WAS A TOTAL LOSS! *TR |
| 10638828 | BUICK | RAINIER | 2004 | 2012-11-17 | A PERSON RAN TWO STOP SIGNS AND ENTERED VEHICLE PATH. THE TWO VEHICLES HIT HEAD ON AND THIS VEHICLE MADE IMPACT AT 40 MPH AFTER IT DECELERATED FROM 43 MPH. THE TWO VEHICLE HIT HEAD ON WITH NEAR PERFECT EVEN IMPACT, BASED UPON THIRD PARTY VISUAL DESCRIPTION OF THE FRONT END OF THE VEHICLES DAMAGE. THE VEHICLE DECELERATED AT A MAX SDM RECORDED VELOCITY CHANGE RATE OF -14.07 (MPH) AND A ALGORITHM ENABLED TO MAXIMUM SDM RECORDED VELOCITY CHANGE OF 127.5 MSEC. DRIVER OF THE VEHICLE HIT THE STEERING WHEEL WITH HEAD KNOCKING THE PERSON OUT. AIRBAGS DID NOT DEPLOY. ONSTAR WAS NOT NOTIFIED THAT THERE WAS AN ACCIDENT. COMPUTER SHOWS THE SEATBELT WAS WORN BY DRIVER. WHEN THE ONSTAR WAS MANUALLY ACTIVATED BY THE DRIVER WHEN HE CAME TOO, THE GPS SHOWED THE VEHICLE FURTHER NORTH UP THE ROAD CAUSING INCORRECT POLICE DIVISION BEING CALLED. VEHICLE WAS GOING UP HILL WHEN THE ACCIDENT OCCURRED. OTHER VEHICLE WAS GOING DOWNHILL. THE OTHER VEHICLE WAS A SUBARU. VEHICLE COMPUTER DATA WAS RETRIEVED BY A BOSCH CRASH DATA RETRIEVAL TOOL USING VERSION 8.0 SOFTWARE. I HAVE A COPY OF THIS DATA. GM REPORTS THAT THE COMPUTER WAS CORRECT NOT TO DEPLOY AIRBAGS AND NOT CALL FOR HELP USING ONSTAR. THE VEHICLE HAD A SOFTWARE MODIFICATION DUE TO A FAULT WITH THE FAN SPEED CALIBRATION SETTING OFF A WARNING LIGHT. WE HAD COMPLAINED THAT THINGS WERE NEVER CORRECT AFTER THIS MODIFICATION OF THE SOFTWARE AND TOOK THE VEHICLE TO TWO DIFFERENT DEALERSHIPS COMPLAINING THAT COMPUTERS WERE DOING STRANGE THINGS AFTER THIS FIRMWARE MODIFICATION. VEHICLE VIN: [XXX] INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6). *TR |

| | | | | | |
|---|---|---|---|---|---|
| 10638830 | BUICK | RAINIER | 2004 | 2012-11-17 | A PERSON RAN TWO STOP SIGNS AND ENTERED VEHICLE PATH. THE TWO VEHICLES HIT HEAD ON AND THIS VEHICLE MADE IMPACT AT 40 MPH AFTER IT DECELERATED FROM 43 MPH. THE TWO VEHICLE HIT HEAD ON WITH NEAR PERFECT EVEN IMPACT, BASED UPON THIRD PARTY VISUAL DESCRIPTION OF THE FRONT END OF THE VEHICLES DAMAGE. THE VEHICLE DECELERATED AT A MAX SDM RECORDED VELOCITY CHANGE RATE OF -14.07 (MPH) AND A ALGORITHM ENABLED TO MAXIMUM SDM RECORDED VELOCITY CHANGE OF 127.5 MSEC. DRIVER OF THE VEHICLE HIT THE STEERING WHEEL WITH HEAD KNOCKING THE PERSON OUT. AIRBAGS DID NOT DEPLOY. ONSTAR WAS NOT NOTIFIED THAT THERE WAS AN ACCIDENT. COMPUTER SHOWS THE SEATBELT WAS WORN BY DRIVER. WHEN THE ONSTAR WAS MANUALLY ACTIVATED BY THE DRIVER WHEN HE CAME TOO, THE GPS SHOWED THE VEHICLE FURTHER NORTH UP THE ROAD CAUSING INCORRECT POLICE DIVISION BEING CALLED. VEHICLE WAS GOING UP HILL WHEN THE ACCIDENT OCCURRED. OTHER VEHICLE WAS GOING DOWNHILL. THE OTHER VEHICLE WAS A SUBARU. VEHICLE COMPUTER DATA WAS RETRIEVED BY A BOSCH CRASH DATA RETRIEVAL TOOL USING VERSION 8.0 SOFTWARE. I HAVE A COPY OF THIS DATA. GM REPORTS THAT THE COMPUTER WAS CORRECT NOT TO DEPLOY AIRBAGS AND NOT CALL FOR HELP USING ONSTAR. THE VEHICLE HAD A SOFTWARE MODIFICATION DUE TO A FAULT WITH THE FAN SPEED CALIBRATION SETTING OFF A WARNING LIGHT. WE HAD COMPLAINED THAT THINGS WERE NEVER CORRECT AFTER THIS MODIFICATION OF THE SOFTWARE AND TOOK THE VEHICLE TO TWO DIFFERENT DEALERSHIPS COMPLAINING THAT COMPUTERS WERE DOING STRANGE THINGS AFTER THIS FIRMWARE MODIFICATION. VEHICLE VIN: [XXX] INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6). *TR |
| 11099015 | BUICK | RAINIER | 2004 | 2016-04-29 | TL* THE CONTACT OWNED A 2004 BUICK RAINIER. WHILE DRIVING APPROXIMATELY 30 MPH IN THE RAIN, THE VEHICLE HYDROPLANED. THE CONTACT LOST CONTROL OF THE VEHICLE AND CRASHED INTO A WALL. AS A RESULT, THE CONTACT WAS RENDERED UNCONSCIOUS AND TRANSPORTED TO THE HOSPITAL VIA AMBULANCE. THE CONTACTS HEAD STRUCK THE DRIVER'S SIDE WINDOW AND THE CONTACT REMAINED IN A COMA FOR SEVERAL MONTHS. THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED INJURIES TO THE RIGHT SIDE OF THE HEAD, WHICH CAUSED WALKING COMPLICATIONS AND A LOSS OF FEELING IN THE RIGHT SIDE OF THE BODY. IN ADDITION, THE CONTACT SUFFERED A LOSS OF SIGHT IN THE RIGHT EYE DUE TO A CRUSHED SKULL. THE VEHICLE WAS TOWED TO A TOW LOT AND DEEMED DESTROYED. A DEALER WAS NOT MADE AWARE OF THE AIR BAG FAILURE. THE VEHICLE WAS NOT DIAGNOSED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS UNKNOWN. |
| 10125145 | CADILLAC | ESCALADE | 2004 | 2005-05-11 | INVOLVED IN A HORRIFIC AUTO ACCIDENT WITH OTHER VEHICLE. HIT IN FRONT PASSENGER & FRONT PART OF VEHICLE (BY RADIATOR AREA) AT HIGH SPEED. EST SPEED APPROX. 45-55 MPH WITH NO SKID MARKS, OTHER VEHICLE STOPPED WHEN IT HIT US. NEW GM/ESCALADE-SUV/'04-WITH 11,000 MILES, BOUGHT NEW DECLARED TOTAL LOSS, WITH APPARENT SERIOUS FRAME DAMAGE/BENT 12 IN. AND FOUND STRESS CRK. SHOULD GIVE AN IDEA HIGH SPEED OTHER VEHICLE TRAVELING. 8-10 SECONDS FROM IMPACT, ONSTAR CAME ON AUTOMATICALLY, THEY RECD. EMERGENCY MESSAGE VIA SATELLITE. VEHICLE HAD BEEN IN A SERIOUS MVA AND AIR BAGS DEPLOYED. WE DIDN'T CALL ONSTAR THEY CALLED US. NEXT DAY WE CALLED ASKED HOW THEY KNEW WE WERE ACCIDENT. TOLD US DEPENDING ON THE SEVERITY, THEY GET CERTAIN SIGNALS, WHICH OURS HAD ADVISED OF SERIOUSNESS & AIRBAG DEPLOYMENT. UNBELIEVABLY, NONE OF OUR 4 AIRBAGS DEPLOYED. WE & HUNDREDS OF OUR FRIENDS ARE IN TOTAL DISBELIEF WHEN YOU SEE THE CONDITION VEHICLE WAS LEFT IN & THAT 4 AIR BAGS DIDN'T DEPLOY. WE WERE INJURED BUT BY GRACE OF GOD INJURIES WERE NOT LIFE THREATENING. HEAD,UPPER AND LOWER BACK,NECK,LEGS,SHOULDER,HIPS AND ARMS EXTREMLEY SORE. HAS BEEN 33 DAYS SINCE THE ACCIDENT AND AM STILL FEELING PAINS & SERIOUS HEADACHES BUT ALIVE. HAVE DECIDED TO BECOME ADVOCATES AND REPORT ACCIDENT/INCIDENT TO POSSIBLY SAFE A PERSON(S) LIFE AND MAKE GENERAL MOTORS AWARE THAT THEY HAVE A POSSIBLE DEFECT IN THEIR AIR BAGS, LEADING TO MASSIVE RECALL AND POSSIBLY A CLASS ACTION LAW SUIT IF NOT FIXED. THIS IS A VERY SERIOUS MATTER. ANYTIME ANYONE IS HIT AT RATE OF SPEED THAT WE WERE, TO LEAVE BRAND NEW SUV ESCALADE A TOTAL LOSS/ 12 IN. BENT FRAME & STRESS CRACK & 4 AIR BAGS NOT DEPLOY - LEADS US TO BELIEVE OF A SERIOUS PROBLEM AND A SERIOUS ONE FOR GM/CADILLAC. CALL FOR FURTHER DETAILS (956) 533-0811 (956)358-5272. THANK YOU & GOD BLESS. |
| 10127916 | CADILLAC | ESCALADE | 2004 | 2005-05-11 | THE CONSUMER WAS INVOLVED IN AN A SERIOUS ACCIDENT AND THE AIR BAGS DID NOT DEPLOY. THERE WERE 2 INJURIES. *JB  *SC |

| | | | | | |
|---|---|---|---|---|---|
| 10152700 | CADILLAC | ESCALADE | 2004 | 2005-07-16 | ON JULY 16TH, 2005, I WAS INVOLVED IN A LIFE CHANGING, SINGLE VEHICLE AUTO ACCIDENT. I STRUCK A HILL WITH THE FRONT RIGHT SIDE OF THE VEHICLE WITH ENOUGH EXCESSIVE FORCE TO FLIP THIS CADILLAC ESCALADE HEAD FIRST. THE ESCALADE FLIPPED TWICE, IMPACTING THE FRONT OF THE VEHICLE AND LANDING UP SIDE DOWN. ASTONISHINGLY, OUT OF THE FOUR AIR BAGS IN THIS VEHICLE, NOT ONE OF THEM DEPLOYED. I PURCHASED THIS 2004 ESCALADE BRAND NEW AND AT THE TIME OF THE ACCIDENT IT ONLY HAD 15,000 MILES. THE VEHICLE IS A TOTAL LOSS AND IT IS UTTERLY UNBELIEVABLE THAT THE AIR BAGS DID NOT DEPLOY. I WAS SO IMPRESSED WITH THE RAVED REVIEWS, CONSUMER REPORTS INCLUDING SAFETY FEATURES, AND STYLISH BODY THAT THIS CADILLAC ESCALADE BECAME THE VEHICLE OF MY DREAMS. NEEDLESS TO SAY, I AM VERY DISAPPOINTED WITH MY CADILLAC EXPERIENCE. I DO NOT TRUST THIS VEHICLE ENOUGH TO GET INTO ANOTHER ONE. I KNOW THAT I AM ONLY HERE BECAUSE GOD DECIDED TO SPARE MY LIFE. AS A DIRECT RESULT OF THIS ACCIDENT I FREQUENTLY SUFFER SEVERE MIGRAINES, DIZZY SPELLS, BLURRED VISION, MEMORY LOSS, AND ANXIETY/PANIC ATTACKS ALL WHICH KEEP ME FROM SLEEPING. IT IS EXTREMELY DIFFICULT TO COMMUTE FROM DOCTORS APPOINTMENTS AND WORK FOR FEAR OF ANOTHER ACCIDENT. THE NEXT WEEK I HAD SEVERE CHEST, SHOULDER AND LOWER BACK PAINS, ALL OF WHICH I AM BEING TREATED FOR ON A REGULAR BASIS. I ALSO SEEK TREATMENT FROM A NEUROLOGIST FOR THE HEAD INJURY. I BELIEVE THAT THIS VEHICLE HAS A SERIOUS PROBLEM WITH THE AIR BAGS AND GM SHOULD STRONGLY CONSIDER INVESTIGATING THIS MATTER. *NM |
| 10386829 | CADILLAC | ESCALADE | 2004 | 2010-02-10 | TL* THE CONTACT OWNS A 2004 CADILLAC ESCALADE. WHILE DRIVING APPROXIMATELY 65-75 MPH, THE CONTACT FELL ASLEEP. THE VEHICLE DRIFTED OFF THE ROAD AND CRASHED INTO A BRIDGE BARRIER. THE CONTACT SUSTAINED A BROKEN WRIST AND FACIAL LACERATIONS. THE FRONT SEAT PASSENGER WAS AIR-LIFTED TO THE HOSPITAL AND SUSTAINED A BROKEN RIGHT LEG AND SEVERE FACIAL INJURIES. THE REAR SEAT PASSENGER SUSTAINED INJURIES TO THE SPINE. THE AIRBAGS FAILED TO DEPLOY WITH THE MASSIVE IMPACT. A POLICE REPORT WAS FILED AND THE VEHICLE WAS TOWED TO A COLLISION CENTER. UPDATED 10/14/11 |
| 10436436 | CADILLAC | ESCALADE | 2004 | 2011-11-01 | I WAS IN AN MVA ON NOV. 1, 2011 THAT TOTALED MY 2004 ESCALADE. NONE OF THE AIRBAGS DEPLOYED, DESPITE DAMAGE TO ALL SIDES OF THE AUTOMOBILE, INCLUDING FRONT END IMPACT. THE CAR ACTUALLY ROLLED. THE FRAME WAS BENT AND THE FRONT HIT AN EMBANKMENT NOSE FIRST WITH GREAT IMPACT. I SUFFERED SEVERAL INJURIES, INCLUDING HEAD TRAUMA. *TR |
| 10324984 | CADILLAC | SRX | 2004 | 2010-01-19 | 2004 CADILLAC SRX INVOLVED IN A FRONT END RASH ON JAN 19, 2010. SEVERE FRONT END CRASH HOWEVER AIRBAGS DID NOT DEPLOY. *TR |
| 10638570 | CADILLAC | SRX | 2004 | 2014-09-17 | TL* THE CONTACT OWNS A 2004 CADILLAC SRX. THE CONTACT STATED THAT A TIRE BLEW OUT CAUSING THE VEHICLE TO SPIN OUT OF CONTROL AND CRASH. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED AND ONE INJURY WAS REPORTED THAT DID NOT REQUIRE MEDICAL ATTENTION. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 120,000. |
| 10245434 | CHEVROLET | ASTRO | 2004 | 2008-10-10 | MY WIFE WAS DRIVING A 2004 CHEVY ASTRO VAN APPROX. 35-40 MPH ON A TWO-WAY STREET. ANOTHER DRIVER FROM THE OPPOSITE DIRECTION CUT ACROSS INTO HER LANE AND HAD A HEAD-ON COLLISION. SHE SUFFERED A BROKEN WRIST & BRUISED RIBS. SHE HAD THREE OF OUR CHILDREN IN THEIR SEATS. THEY WERE SHAKEN AND HAD SEATBELT BRUISES. THE VAN WAS NOT DRIVABLE AND WAS TOWED AWAY.   THE POLICE & THE TOW DRIVER REPORTED THAT THE AIRBAGS DID NOT DEPLOY. WE HAVE SOME EXPECTATION THAT THE AIRBAGS WOULD HAVE SECONDARY ROLE TO MINIMIZE INJURIES. MY COMPLIANT THAT THE HARD COLLISION WAS SUFFICIENT TO DEPLOY SAFETY EQUIPMENT BUT DID NOT WORK AS DESIGNED. WAS THERE A RECALL FOR AIRBAG FAILURES FOR THIS MODEL OF VEHICLE?  *TR |
| 10057529 | CHEVROLET | SILVERADO | 2004 | 2004-01-27 | WHILE DRIVING 40 MPH, VEHICLE WAS INVOLVED IN A HEAD ON COLLISION. UPON IMPACT, DUAL AIR BAGS DID NOT DEPLOY.  PASSENGER SUSTAINED INJURIES TO NECK, JAW,  AND A BROKEN ARM. *AK *JB |
| 10065268 | CHEVROLET | SILVERADO | 2004 | 2004-03-30 | WHILE DRIVING 60 MPH DRIVER APPLIED THE BRAKES AND  PEDAL WENT TO THE FLOOR.  THIS CAUSED THE DRIVER TO LOSE CONTROL OF THE VEHICLE, AND  HIT ANOTHER VEHICLE ON THE PASSENGER SIDE. UPON IMPACT,  BOTH AIR  BAGS DID NOT DEPLOY. THERE WERE NO INJURIES. *AK |
| 10073357 | CHEVROLET | SILVERADO | 2004 | 2004-05-10 | THE CONSUMER STATED THE FRONTAL AIR BAGS DID NOT DEPLOY DURING AN ACCIDENT. THERE WERE NO INJURIES.  THE DRIVER HAD THE VEHICLE TOWED TO A BODY SHOP.  *JB   WHILE TRAVELING AT 30 MPH AND  APPROACHING AN INTERSECTION, A SECOND VEHICLE ENTERED ON THE CONSUMER'S LEFT HAND SIDE, THERE WAS NO TIME TO REACT.  THE CONSUMER STRUCK THE SECOND VEHICLE ON IT'S RIGHT SIDE . THE DRIVERS SIDE AIR BAG DID NOT DEPLOY.  *SC  *JB |
| 10083968 | CHEVROLET | SILVERADO | 2004 | 2004-06-19 | WHILE DRIVING AT 35 MPH CONSUMER'S VEHICLE WAS INVOLVED IN A FRONTAL COLLISION. UPON IMPACT, NONE OF THE FRONTAL AIRBAGS DEPLOYED. DRIVER SUSTAINED MINOR BRUISES TO THEIR CHEST FROM THE SEAT BELT, AND THE FRONT PASSENGER SUSTAINED A BRUISED KNEE. THIS COLLISION RESULTED IN $800.00 FRONTAL DAMAGE.  *AK |

| | | | | |
|---|---|---|---|---|
| 10086614 | CHEVROLET | SILVERADO | 2004 | 2004-08-06 | 2001 CHEVROLET PICKUP INVOLVED IN A CRASH WITH A TREE AND AIR BAG DID NOT DEPLOY. DRIVE SUSTAINED SEVERE INJURY TO MOUTH BY HITTING STEERING WHEEL, DISPLACING FIVE LOWER FRONT TEETH CAUSING EXTENSIVE PAIN HAVING TEETH REPOSITIONED. *JB |
| 10105126 | CHEVROLET | SILVERADO | 2004 | 2004-12-10 | WHILE DRIVING 60 MPH VEHICLE HYDROPLANED, LOST CONTROL, AND CRASHED INTO A BUILDING HEAD ON . UPON IMPACT, DRIVER'S SIDE AIR BAG DID NOT DEPLOY, AND PASSENGER'S SIDE AIR BAG WAS DEACTIVATED. NO INJURIES REPORTED. *AK |
| 10117538 | CHEVROLET | SILVERADO | 2004 | 2005-04-01 | CONSUMER'S VEHICLE WAS INVOLVED IN A FRONTAL COLLISION WITH AN OAK TREE AT 5 MPH. UPON IMPACT, NEITHER FRONTAL AIR BAG DEPLOYED. ALTHOUGH CONSUMER WAS PROPERLY RESTRAINED THE CRASH PUSHED THE ENGINE THROUGH THE FIREWALL AGAINST THE PASSENGER'S SEAT. DRIVER SUSTAINED INJURIES, AND AN AMBULANCE TRANSPORTED THE DRIVER TO THE LOCAL HOSPITAL. *AK |
| 10134302 | CHEVROLET | SILVERADO | 2004 | 2005-08-23 | DT: 2004 CHEVROLET SILVERADO. THE CONSUMER WAS IN AN ACCIDENT ON AUGUST 23, 2005. WHILE DRIVING 40 MPH. A DEER CAME ONTO THE ROAD, CONSUMER'S VEHICLE SWERVED TO AVOID IT, AND WENT INTO RAVINE. TOOK OUT TWO TREES. THIS DAMAGED THE FRONT END OF THE VEHICLE. UPON IMPACT, THE AIRBAGS DID NOT DEPLOY. THE VEHICLE WAS DRIVEN HOME, AND IS CURRENTLY AT THE AUTO BODY SHOP. THERE HAS BEEN NO DETERMINATION AS TO WHY THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT TAKEN. THE CONSUMER SUSTAINED INJURIES. SHE BRUISED THE CHEST, AND SHE HAD A BULGING DISC I NECK NEAR SPINAL CORD. *AK |
| 10134631 | CHEVROLET | SILVERADO | 2004 | 2005-08-28 | DT: THE CONTAC OWNS A 2004 CHEVROLET SILVERADO. THE CONTACT'S VEHICLE WAS INVOLVED IN A FRONT END COLLISION WHILE TRAVELING 65 MPH ON AUGUST 28, 2005. UPON IMPACT, THE AIR BAGS DID NOT DEPLOY. THERE WERE NO WARNING LIGHTS ON INDICATING THERE WAS A PROBLEM WITH THE AIR BAG SYSTEM. THE CONTACT STATED ANOTHER VEHICLE LOST CONTROL OF AND HIT THE SIDE OF CONTACT'S VEHICLE, CAUSING IT TO HIT THE CENTER MEDIAN. THE CONSUMER CONTACTED THE DEALERSHIP AND THE MANUFACTURER. *AK |
| 10141161 | CHEVROLET | SILVERADO | 2004 | 2005-10-25 | DT: THE CONTACT STATED THE COMPANY TRUCK THAT HE DROVE WAS INVOLVED IN AN ACCIDENT. UPON IMPACT, THE AIRBAGS DID NOT DEPLOY. THE ENTIRE FRONT END OF THE VEHICLE WAS DESTROYED. THE CONTACT SUSTAINED INJURIES. HE BRUISED HIS CHEST, SHIN AND TORE THE TENDON IN HIS ANKLE. THERE HAD BEEN NO ACCIDENTS IN THIS VEHICLE PRIOR TO THIS. A POLICE REPORT WAS TAKEN AT THE SCENE. *AK |
| 10149082 | CHEVROLET | SILVERADO | 2004 | 2006-01-10 | ON JAN. 10 OF 2006 I LOST CONTROL OF MY 2004 CHEVY SILVERADO WHILE I WAS DRIVING ON ICY ROAD. I HIT A CONCRETE DIVIDER HEAD ON. MY CONCERN IS THAT THE AIR BAG NEVER DEPLOYED EVEN THOUGH THE DAMAGE TO THE TRUCK WAS QUITE BIG. I WAS GIVEN A ESTIMATE OF $9820 OF DAMAGE BECAUSE THEY HAVE TO REPLACE THE BODY FRAME. EVEN WITH ALL THIS DAMAGE MY AIRBAG NEVER DEPLOYED. *NM |
| 10153763 | CHEVROLET | SILVERADO | 2004 | 2006-03-20 | WHILE DRIVING ON SLICK ROADS MY TRUCK WENT OFF THE ROAD, DOWN A HILL AND CRASHED INTO AN EMBANKMENT. THE ENTIRE FRONT END WAS SEVERELY DAMAGED. THE FRAME WAS BENT, THE BUMPER WAS WRAPPED UP UNDER THE FENDER, GRILL GUARD PUSHED INTO THE RADIATOR. UPON IMPACT NEITHER OF THE AIRBAGS DEPLOYED. MY FACE SLAMMED INTO THE STEERING WHEEL BREAKING MY NOSE. TRUCK SALVAGED. *JB |
| 10155380 | CHEVROLET | SILVERADO | 2004 | 2006-02-19 | I HAD AN ACCIDENT IN MY 2004 CHEVY TRUCK AT A SPEED OF APPROX 80 MPH HEAD ON IMPACT. THE TRUCK WAS TOTALED BUT MY AIR BAGS DIDN'T WORK. I MADE A COMPLAINT TO GMAC. THEY HAD AN INVESTIGATION AND ACCORDING TO THEM THERE WAS NOTHING WRONG WITH THE AIR BAGS. I FIND THAT HARD TO BELIEVE WITH THAT KIND OF IMPACT. THIS IS A SAFETY ISSUE AND I HAVE 2001 CHEVY SUBURBAN THAT MY WIFE DRIVES WITH MY CHILDREN. CAN YOU PLEASE LOOK INTO THIS BECAUSE I WOULD LIKE TO KNOW GMAC IS NOT TAKEN RESPONSIBILITY FOR THE AIR BAG FAILURE. THANK GOD I WAS WEARING MY SEAT BELT ; BECAUSE IT WAS THE ONLY THING THAT SAVED MY LIFE. *NM |
| 10156562 | CHEVROLET | SILVERADO | 2004 | 2004-09-04 | DT*: THE CONTACT STATED WHILE STOPPED AT A STOP SIGN, THE VEHICLE WAS HIT ON THE DRIVER'S SIDE FRONT END. THE AIR BAGS DID NOT DEPLOY. SEAT BELTS WERE IN USE HOWEVER BACK AND NECK INJURIES WERE SUSTAINED. THE IMPACT WAS SO SEVERE; BOTH PASSENGER TIRES CAME OFF THE RIMS AND DUG INTO THE PAVEMENT. THE POLICE WERE ON SCENE AND A REPORT WAS FILED. THE VEHICLE WAS TOWED TO DEALER, UPON INSPECTION NO DETERMINATION COULD BE MADE WHY THE AIR BAGS DID NOT DEPLOY. THE MANUFACTURER WAS ALERTED. UPDATED 05/16/06. *JB |
| 10202240 | CHEVROLET | SILVERADO | 2004 | 2006-02-08 | I WAS DRIVING UP TP A STOP LIGHT. WHEN THE LIGHT TURNED RED THERE WAS A CAR IN FRONT OF ME THAT HAD STOPPED. I REALIZED I DIDN'T HAVE A LOT OF ROOM BUT THOUGHT IT WOULD BE ENOUGH TO STOP. I PUT THE PEDAL TO THE FLOOR AND STILL HIT THEM TWO PEOPLE WERE INJURED. *TR- THEN ON 9/8/07 A DEER RAN OUT I IN FRONT OF ME, AGAIN MY FOOT TO THE FLOOR I HIT THE DEER. 1ST I WAS SUPRISED THAT MY AIR BAGS DIDN'T DEPLOY (REALLY TORE UP THE FRONT OF THE TRUCK) AND 2ND I SHOULD OF BEEN ABLE TO SLOW DOWN IN TIME. AFTER READING ALL OF THE ISSUES WITH THE BRAKES ON CHEVYS AND NO ONE IS DOING ANYTHING ABOUT IT, I THINK ITS TIME TO LOOK FOR A DIFFERENT CAR COMPANY. |

| | | | | | |
|---|---|---|---|---|---|
| 10238395 | CHEVROLET | SILVERADO | 2004 | 2008-01-22 | TL*THE CONTACT OWNS A 2004 CHEVROLET SILVERADO. WHILE DRIVING APPROXIMATELY 58 MPH, THE CONTACT SLID ON A PATCH OF ICE AND LOST CONTROL OF THE VEHICLE. THE VEHICLE RAN OFF THE ROAD AND CRASHED INTO A TELEPHONE POLL ON THE PASSENGER SIDE. THE VEHICLE STOPPED WHEN IT CRASHED INTO A FROZEN EMBANKMENT. UPON IMPACT, THE FRONT AIR BAGS FAILED TO DEPLOY EVEN THOUGH THE CONTACT MADE IMPACT WITH THE STEERING WHEEL. THE CONTACT WAS INJURED. THE VEHICLE WAS COMPLETELY DESTROYED AND A POLICE REPORT WAS FILED. THE CONTACT FILED A COMPLAINT WITH THE MANUFACTURER, BUT THE COMPLAINT WAS DENIED. THE MANUFACTURER WAS UNABLE TO DIAGNOSE THE VEHICLE; HOWEVER, AFTER INSPECTION OF THE VEHICLE, THE MANUFACTURER CONFIRMED THAT THE AIR BAGS WERE ENABLED AT THE TIME OF IMPACT. THEY DID NOT GIVE AN EXPLANATION FOR THE DEPLOYMENT FAILURE. THE VIN WAS UNKNOWN. THE FAILURE AND CURRENT MILEAGES WERE 180,000.  UPDATED 09/03/08 *BF  UPDATED 09/04/08. *JB |
| 10115547 | CHEVROLET | SUBURBAN | 2004 | 2004-08-03 | THE CONSUMER WAS INVOLVED IN AN ACCIDENT IN HIS 2004 CHEVROLET SUBURBAN IN WHICH THE AIR BAGS DID NOT DEPLOY.  AN OCCUPANT IN THE VEHICLE WAS INJURED WHEN THE AIR BAGS DID NOT DEPLOY. *NM  *SC *JB |
| 10125146 | CHEVROLET | SUBURBAN | 2004 | 2005-06-10 | DT: VEHICLE WAS GOING ABOUT 35-40 MPH AND THE SIDE AND FRONT AIR BAGS DID NOT DEPLOY DURING AN ACCIDENT. *AK |
| 10200729 | CHEVROLET | TAHOE | 2004 | 2007-08-09 | I WAS INVOLVED IN A HEAD ON COLLISION WITH 2 OTHER VEHICLES, AT 45 TO 50 MPH, AND MY AIR BAGS FAILED TO DEPLOY. *TR |
| 10409000 | CHEVROLET | TAHOE | 2004 | 2011-06-16 | 2004 CHEVROLET TAHOE, AFTER BEING INVOLVED IN AN ACCIDENT WITH SEVERE IMPACT TO BOTH FRONT CORNERS AND BUMPER, HARD IMPACT COLLISION, AND AFTER FLIPPING THREE TIMES, BOTH FRONT AIR BAGS DID NOT DEPLOY. SEVERE DRIVER INJURY AS A RESULT OF THE AIRBAG FAILURE. *TR |
| 10836861 | CHEVROLET | TAHOE | 2004 | 2015-02-09 | MY HUSBAND AND I WAS INVOLVED IN AN ACCIDENT AND THE AIR BAGS DID NOT DEPLOY. WE WERE HIT AT 55 MPH |
| 10314549 | CHEVROLET | TRACKER | 2004 | 2010-02-04 | MYSELF AND 2 DAUGHTERS WERE IN A HEAD ON WRECK 2/04/2010 WHEN A GUY PULLED OUT IN FRONT OF US, NEITHER OF THE AIRBAGS DEPLOYED. MY DAUGHTER HIT THE WINDSHIELD AND I HIT THE STEERING WHEEL AND DASH. THE PREGNANT ONE WAS THANKFULLY IN THE BACK SEAT. *TR |
| 10567426 | CHEVROLET | TRACKER | 2004 | 2014-02-23 | TL* THE CONTACT OWNS A 2004 CHEVROLET TRACKER. THE CONTACT STATED THAT WHILE DRIVING IN THE SNOW, SHE LOST CONTROL OF THE VEHICLE AND CRASHED THE FRONT OF END INTO AN EMBANKMENT. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUFFERED CONTUSIONS AND BRUISING TO THE TORSO REGION. A POLICE REPORT WAS TAKEN. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED. THE FAILURE MILEAGE WAS APPROXIMATELY 20,000.  UPDATED 04/22/14*LJ  THE CONSUMER STATED SHE HIT A PATCH OF ICE WHILE DRIVING, SHE VEERED OFF THE HIGHWAY LOST CONTROL OF THE VEHICLE, AND FLIPPED OVER 3 TIMES. UPDATE 04/24/14 |
| 10083860 | CHEVROLET | TRAILBLAZER | 2004 | 2004-07-16 | WHILE DRIVING AT 70 MPH DRIVER SWERVED TO LEFT TO AVOID HITTING A MOTORIST. WHEN THE DRIVER ATTEMPTED TO STRAIGHTEN BACK THE STEERING WHEEL BY TURNING IT TO THE RIGHT IT OVERCORRECTED SEVERELY. THIS RESULTED IN THE DRIVER LOSING CONTROL OF THE VEHICLE AND CRASHING INTO A TREE. UPON IMPACT, AIR BAGS DID NOT DEPLOY.  DRIVER DIED, AND FRONT PASSENGER SUSTAINED A BROKEN NECK, SEVERE LACERATION TO THEIR SCULL, AND BRUISES. THE PASSENGER IN THE REAR SUSTAINED A BROKEN ANGLE , A DISLOCATED HIP, AND TWO BROKEN RIBS. *AK |
| 10087212 | CHEVROLET | TRAILBLAZER | 2004 | 2004-08-03 | WHILE DRIVING 45 MPH CONSUMER'S VEHICLE COLLIDED INTO ANOTHER VEHICLE. UPON IMPACT, BOTH  FRONTAL AIR BAGS FAILED TO DEPLOY. VEHICLE WAS TOWED TO A GARAGE.  *AK  THE CONSUMER SUSTAINED A HAIR LINE FRACTURE IN THE CHEST AREA. *NM |
| 10094926 | CHEVROLET | TRAILBLAZER | 2004 | 2004-10-03 | AT APPROXIMATELY 45 MPH  CONSUMER'S VEHICLE WAS INVOLVED IN A COLLISION, STRIKING A BARRIER HEAD ON.  UPON IMPACT,  AIR BAGS DID NOT DEPLOY.*AK |
| 10100282 | CHEVROLET | TRAILBLAZER | 2004 | 2004-10-29 | I WAS GOING BETWEEN 25 AND 35 MPH. I SWRIVED TO AVOID A VEHICLE BACKING UP THAT HAD MISSED A TURN. I TRIED TO STREER BACK AND LOST CONTROL HITTING A TELEPHONE POLE HEAD ON. AIRBAGS DID NOT DEPLOY NEITHER DID ONSTAR. TO THIS POINT NOTHING HAS BEEN DONE TO REPAIR THE FAILURE AS FOR MY DAD'S TRAILBLAZER THATS A WORK IN PROGRESS . *AK |
| 10103148 | CHEVROLET | TRAILBLAZER | 2004 | 2004-11-24 | CONSUMER WAS DRIVING 60 MPH AND LOST CONTROL, HITTING A UTILITY POLE. UPON IMPACT, THE AIRBAGS FAILED TO DEPLOY. VEHICLE WAS TOTALED. *AK |
| 10106552 | CHEVROLET | TRAILBLAZER | 2004 | 2004-12-29 | I WAS DRIVING A CHEVY TRAILBLAZER RENTED FROM HERTZ ON DECEMBER 29, 2004.  ON HIGHWAY 285 NEAR MILE MARKER 189.5, I ENCOUNTERED BLACK ICE ON A CURVE.  THE VEHICLE STARTED A 4-WHEEL DRIFT INTO THE ONCOMING LANE. I ATTEMPTED TO AVOID COLLIDING WITH ANOTHER VEHICLE THAT HAD SPUN OUT.  THE ABS DID NOT WORK.  THERE WAS NO STABILITY CONTROL.  I STRUCK AN EMBANKMENT AND THE VEHICLE FLIPPED OVER.  ALTHOUGH THERE WAS BOTH FRONTAL AND SIDE IMPACT, NO AIRBAGS DEPLOYED.  IT IS MY BELIEF THAT THE CHEVY TRAILBLAZER IS INHERENTLY UNSAFE.  THERE IS NO WAY THIS VEHICLE SHOULD HAVE ROLLED OVER AT THE SPEED AT WHICH I WAS DRIVING.  *NM |
| 10123920 | CHEVROLET | TRAILBLAZER | 2004 | 2005-05-30 | OTHER VEHICLE FAILED TO YIELD FROM A YIELD SIGN. FRONT OF TRAILBLAZER STRUCK RIGHT SIDE REAR OF OTHER VEHICLE. IMPACT DAMAGED CROSS BAR ON FRAME PUSHING RADIATOR INTO MOTOR. DRIVER AND PASSENGER AIR BAG FAILED TO DEPLOY. ESTIMATED IMPACT SPEED 45-50 |

| | | | | | |
|---|---|---|---|---|---|
| 10135169 | CHEVROLET | TRAILBLAZER | 2004 | 2005-01-19 | MY DAUGHTER WAS DRIVING MY 2004 TRAILBLAZER ON AN ICY, SLIPPERY ROAD AT 25 -30 MILES PER HOUR. (THE SPEED LIMIT IS 30, IT WAS THE STREET WE LIVE ON). WHEN SHE LOST CONTROL, HIT A TREE AND TOTALED ($22,000.00) THE VEHICLE. THE OFFICER AND I WALKED THE PATH IN THE STREET AND COULD NOT FIND ANY SIGNS OF SKIDDING OR BRAKING, THERE FORE LEADING ME TO BELIEVE NOW THAT THERE WAS A BRAKING FAILURE. UP UNTIL NOW, WHEN I HEARD ABOUT THE BRAKES FAILING DO TO CORROSION FROM ROAD SALT, I ALWAYS THOUGHT IT WAS JUST AN ACCIDENT IN POOR ROAD CONDITIONS. WHEN I FIRST READ THE REPORT OF THE INVESTIGATION I COULDN'T BELIVE IT WAS THE SAME SCENARIO AS HER ACCIDENT. POOR ROAD CONDITIONS, THEREFORE POSSIBLE SALT BUILDUP, A SLOW SPEED AND INABILITY TO STOP. I AM SO GRATEFULL THAT SHE WALKED AWAY WITHOUT A SCRATCH, ALSO CONSIDERING THE AIR BAGS DID NOT DEPLOY, EVEN THOUGH THE FRONT END WAS TOTALED. I AM SURE THIS IS A PROBLEM THAT MUST BE IDENTIFIED FOR THOSE LIVING IN COLDER, NORTHERN STATES. |
| 10154051 | CHEVROLET | TRAILBLAZER | 2004 | 2005-10-23 | FOIA REQUEST ALL DOCUMENTS/INFO RELATIVE TO ANY RECALLS OR KNOWN DEFECTS OF THE AIR BAG SYSTEM IN THE 2004 CHEVROLET TRAILBLAZER. *TS ATTORNEY'S CLIENTS WERE SERIOUSLY INJURED WHEN THE VEHICLE THEY WERE OPERATING WAS INVOLVED IN A HIGH SPEED, FRONT END COLLISION. THE AIR BAG SYSTEM DID NOT DEPLOY AT THE TIME OF IMPACT AND AS A RESULT THE THREE OCCUPANTS WERE INJURED. *NM ***NAR*** |
| 10158090 | CHEVROLET | TRAILBLAZER | 2004 | 2006-02-26 | DT*. THE CONTACT STATED WHILE DRIVING 50 MPH THE VEHICLE WAS INVOLVED IN A HEAD ON COLLISION WITH ANOTHER VEHICLE. THE VEHICLE CONTINUED MOVING AND STOPPED BY COLLIDING WITH A STORE SIGN. THE AIR BAGS DID NOT DEPLOY AND SEAT BELTS WERE WORN. THERE WERE NO WARNING LIGHTS TO INDICATE THE AIR BAGS WOULD FAIL. THE CONTACT SUFFERED A KNEE INJURY. A POLICE REPORT WAS FILED AT THE SCENE. THE INSURANCE COMPANY DETERMINED THE VEHICLE WAS TOTALED DUE TO THE ACCIDENT. THE DEALER DOES NOT HAVE THE MEANS TO TEST FOR AIR BAG NON-DEPLOYMENT. UPDATED 1/24/2007 *NM |
| 10177618 | CHEVROLET | TRAILBLAZER | 2004 | 2006-12-01 | TL* - THE CONTACT OWNS A 2005 CHEVROLET TRAIL BLAZER. DURING A SNOW STORM THE CONTACT'S VEHICLE WAS INVOLVED IN A HEAD ON COLLISION. THE CONTACT WAS DRIVING ON THE HIGHWAY AT 55 MPH, AND THE AIR BAGS DID NOT DEPLOY. THERE WERE NO WARNING INDICATOR LIGHTS. THE MANUFACTURER SENT AN INVESTIGATOR TO ACCESS THE DAMAGE, AND STATED THAT THERE WAS $10,000 WORTH OF DAMAGE, AND THAT THE VEHICLE WAS ONLY TRAVELING 8 MPH. *AK |
| 10178863 | CHEVROLET | TRAILBLAZER | 2004 | 2007-01-13 | TL* - THE CONTACT STATED THAT ON 1/13/07, HE CRASHED INTO ANOTHER VEHICLE WITH HIS , 2004 CHEVROLET TRAILBLAZER. THE ODOMETER READ 33,000 MILES AT THE TIME OF THE CRASH. HE WAS DRIVING AT 45 MPH AND COLLIDED WITH THE SECOND VEHICLE IN A PERPENDICULAR ANGLE "T-BONE" STRIKING IT ON THE SIDE AS IT CROSSED IN FRONT OF HIM. THE DRIVER WAS THE ONLY OCCUPANT IN THE VEHICLE AND THE DRIVER'S SIDE AIRBAG NEVER DEPLOYED. THERE WERE 5 PEOPLE INJURED IN THE SECOND VEHICLE. *NM |
| 10218896 | CHEVROLET | TRAILBLAZER | 2004 | 2008-02-22 | TL*THE CONTACT OWNS A 2004 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 35 MPH, THE CONTACT REAR ENDED A SCHOOL BUS. THE VEHICLE WAS COMPLETELY DESTROYED AND NONE OF THE AIR BAGS DEPLOYED. TWO PASSENGERS WERE INJURED AND A POLICE REPORT WAS FILED. PRIOR TO THE FAILURE, SHE NEVER EXPERIENCED ANY AIR BAG FAILURE. THE DEALER AND MANUFACTURER HAVE NOT BEEN NOTIFIED. THE CONTACT HAS PICTURES. THE VIN AND ENGINE SIZE WERE UNKNOWN. THE CURRENT AND FAILURE MILEAGES WERE 44,000. |
| 10228023 | CHEVROLET | TRAILBLAZER | 2004 | 2006-11-06 | I WAS SIDE SWIPED BY ANOTHER CAR THAT WENT THROUGH A RED LIGHT. MY TRUCK THEN PROCEEDED TO HIT ANOTHER CAR AND FINALLY THE FRONT END OF THE TRUCK GOT AIRBORNE AND LANDED WITH THE TIRES IN THE FRONT WINDSHIELD OF ANOTHER CAR. THE TRUCK SUSTAINED OVER $6,000 IN DAMAGE AS WELL AS THE FRONT FRAME WHERE THE MOTOR SITS WAS DAMAGED. INSURANCE COMPANY SAID IT COULD BE REPLACED. NOT SURE HOW BECAUSE IT WAS WELDED IN PLACE. AND MY AIRBAGS NEVER DEPLOYED. *TR |
| 10228026 | CHEVROLET | TRAILBLAZER | 2004 | 2007-03-07 | I WAS REAR ENDED BY A GUY DOING 40 MPH. MY TRUCK WAS LIFTED IN THE AIR AND PUSHED INTO THE REAR END OF ANOTHER VEHICLE. MY AIRBAGS NEVER DEPLOYED AND MY SEAT BROKE!! POSSIBLE DEFECT IN THE SEAT? I WAS STOPPED AT A RED LIGHT WHEN THE ACCIDENT HAPPENED. THE SPARE TIRE HOLDER WAS RIPPED OFF MY TRUCK. *TR |
| 10240623 | CHEVROLET | TRAILBLAZER | 2004 | 2008-08-26 | SLIGHTLY TURNED STEERING WHEEL TO LEFT TO AVOID ANOTHER MOTORIST IN FRONT OF ME. ATTEMPTED TO STRAIGHTEN OUT THE VEHICLE, VEHICLE OVER-CORRECTED SEVERELY, UNABLE TO BRAKE, VEHICLE SLAMMED HEAD-ON INTO CONCRETE HIGHWAY BARRIER 45-60MPH, AIR BAGS FAILED TO DEPLOY. DRIVER WAS WEARING SEATBELT, SUBSTANTIAL BRUISING & NECK/BACK INJURY. *TR |
| 10313103 | CHEVROLET | TRAILBLAZER | 2004 | 2009-10-02 | TL*THE CONTACT OWNS A 2004 CHEVROLET TRAILBLAZER. WHILE THE CONTACT WAS DRIVING 35 MPH HE CRASHED INTO ANOTHER VEHICLE AND THEN INTO A LIGHT POLE WHICH DESTROYED THE VEHICLE; HOWEVER, DURING THE CRASH NONE OF THE AIR BAGS DEPLOYED. THE DRIVER AND PASSENGER WERE INJURED. NO ONE WAS INJURED IN THE OTHER VEHICLE. THE VEHICLE WAS DIAGNOSED BY THE DEALERSHIP WHO STATED THAT NO FAILURES COULD BE FOUND. THERE WERE NO PRIOR WARNINGS. THE CURRENT AND FAILURE MILEAGES WERE 95,272 UPDATED 03/30/10. *LJ ACCORDING TO GM, THE NOTICE ON THE DASH READOUT STATED THE AIR BAGS DEPLOYED. UPDATED 06/30/10.*JB |

| | | | | |
|---|---|---|---|---|
| 10327766 | CHEVROLET | TRAILBLAZER | 2004 | 2010-04-21 | TL* THE CONTACT OWNS A 2004 CHEVROLET TRAILBLAZER. WHILE DRIVING 35 MPH, THE CONTACT ATTEMPTED TO MANEUVER THE STEERING WHEEL TO AVOID CRASHING INTO A DEER AND LOST CONTROL OF THE VEHICLE. THE VEHICLE CRASHED INTO A TREE. THE AIR BAGS DID NOT DEPLOY UPON IMPACT. THE CONTACTS FACE HIT THE STEERING WHEEL UPON IMPACT AND SUSTAINED A BROKEN NOSE. THE CONTACT WAS TAKEN TO THE HOSPITAL. THE VEHICLE WAS DESTROYED AND WAS TOWED BY HER INSURANCE COMPANY TO AN UNKNOWN LOCATION. A POLICE REPORT WAS AVAILABLE, IF NEEDED. THE MANUFACTURER WAS NOT CONTACTED. THE FAILURE MILEAGE WAS 80,700. |
| 10356973 | CHEVROLET | TRAILBLAZER | 2004 | 2010-09-19 | TL* THE CONTACT OWNED A 2004 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT THE AIRBAGS DID NOT DEPLOY WHEN HIS WIFE CRASHED INTO A DEER AT APPROXIMATELY 35 MPH. THE DRIVER WAS ALSO INVOLVED IN ANOTHER CRASH WHEN TRAVELING APPROXIMATELY 55 MPH. SHE LOOKED DOWN TO CHECK ON A NOISE SHE HEARD AND WHEN SHE LOOKED UP THE VEHICLE LOST CONTROL AND CRASHED HEAD ON INTO A TREE. THE DRIVER AND THREE OTHER OCCUPANTS WERE INURED. THE GEORGIA HIGHWAY PATROL RESPONDED AND FILED A REPORT. THE PARAMEDICS ALSO RESPONDED AND TRANSPORTED THE FOUR OCCUPANTS TO THE HOSPITAL. THE VEHICLE WAS DESTROYED AND TOWED TO A STORAGE LOT. THE FAILURE MILEAGE WAS APPROXIMATELY 107,000. |
| 10419650 | CHEVROLET | TRAILBLAZER | 2004 | 2011-08-13 | I HIT A DEER AT APPROXIMATELY 65 MPH AND THE AIR BAG DID NOT DEPLOY. MY SON THAT WAS RIDING IN THE PASSENGER SEAT ALSO WAS WEARING HIS SEAT BELT BUT THE SEAT BELT DID NOT CATCH AND HE WAS SLAMMED INTO THE DASH. I REFUSE TO BELIEVE THAT THIS IS NORMAL BEHAVIOR FOR THOSE SAFETY DEVICES.  *KB |
| 10551484 | CHEVROLET | TRAILBLAZER | 2004 | 2013-10-29 | TL* THE CONTACT OWNS A 2004 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING 35 MPH, THE DRIVER BECAME DISTRACTED AND CRASHED INTO A TREE. THE AIR BAGS FAILED TO DEPLOY AND THE SEAT BELT FAILED TO RESTRAIN, CAUSING THE DRIVER TO BE THROWN FORWARD. THE DRIVER'S HEAD IMPACTED THE WINDSHIELD AND AS A RESULT, HE SUSTAINED BLEEDING FROM THE BRAIN. A POLICE REPORT WAS FILED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE VEHICLE WAS DESTROYED. THE VIN WAS NOT AVAILABLE. THE FAILURE AND CURRENT MILEAGE WAS UNKNOWN. THE VIN WAS NOT AVAILABLE. |
| 10576838 | CHEVROLET | TRAILBLAZER | 2004 | 2008-06-16 | ON THE AFTERNOON OF 6/16/08, ME IN MY FAMILY WAS TRAVELING NORTH ON I95 IN NORTH CAROLINA GOING TOWARD OUR DESTINATION IN BALTIMORE MD., WHEN ANOTHER VEHICLE CLICK US AND CAUSE MY SISTER TO LOSE CONTROL OF THE VEHICLE CRASHING INTO THE GUARDRAIL. MY TWO AUNTS AND MYSELF WERE EJECTED FROM THE VEHICLE, BOTH MY AUNTS DIE INSTANTLY. MY MOTHER, SISTERS AND MYSELF SURVIVED BUT HAD SEVERAL INJURIES. THE AIRBAGS DID NOT DEPLOY, AND THE DOORS THAT WERE INITIALLY LOCKED, BUT SOMEHOW THE REAR DOORS (MIDDLE) OPEN DURING IMPACT CAUSING MY AUNTS IN MYSELF TO BE THROWN FROM THE VEHICLE. BE ADVISED THE VEHICLE WAS A GREEN TRAILBLAZER (EXTENDED CAB). *TR |
| 10626582 | CHEVROLET | TRAILBLAZER | 2004 | 2014-08-18 | I WAS ON A 4 LANE HIGHWAY TRAVELING EASTBOUND GOING 50 MPH POSTED SPEED 55 MPH WEARING OUR SEAT BELTS,  WHEN ANOTHER VEHICLE WAITING TO U - TURN IN THE CENTER MEDIAN DECIDED TO TURN RIGHT INTO ME-ONCOMING TRAFFIC. THIS PERSON COLLIDED WITH ME, WHICH THAT IMPACT SENT ME INTO A HEAD ON COLLISION WITH THE GUARD RAIL. THE CHEVROLET TRAILBLAZER IS COMPLETELY TOTALED. THERE WERE 2 INCIDENTS IN THAT SEQUENCE OF EVENTS THAT THE AIRBAGS SHOULD HAVE DEPLOYED,  BUT DID NOT! THIS ACCIDENT CAUSED SEVERAL INJURIES TO MYSELF AND MY PASSENGER. WE DEFINITELY COULD HAVE BEEN KILLED AND NO AIRBAGS TO HELP SAVE OUR LIVES.....UPDATED 09-03-14 *BF  UPDATED 11/7/2014 *JS *TR |
| 10767586 | CHEVROLET | TRAILBLAZER | 2004 | 2015-08-01 | ON SATURDAY, AUGUST 1, 2015 AT APPROXIMATELY 8:55PM MY MOTHER WAS INVOLVED IN A 1 CAR ACCIDENT ON BAUM RD LOCATED IN TALLAHASSEE, FL. SHE WAS THE ONLY PASSENGER DETERMINED TO BE IN THE VEHICLE AT THE TIME OF THE ACCIDENT. ACCORDING TO THE CRASH REPORT, D1 (DRIVER ONE) WAS TRAVELING WESTBOUND ON BAUM RD  GOING THE NORMAL POSTED SPEED OF 55MPH, WHEN SHE VEERED TOWARDS THE CENTER OF THE RD AND SUDDENLY TURNED RIGHT VEERING OF THE RIGHT SHOULDER OF THE RD AND STRIKING SEVERAL TREES ON THE DRIVERS SIDE AND FRONT END. D1 WAS WEARING HER SEATBELT AND MANAGED TO EXIT OUT THE DRIVERS SIDE WINDOW BEFORE COMING TO HER FINAL RESTING PLACE ON THE SHOULDER OF THE RD. WHEN I WENT TO RETRIEVE MY MOTHERS THINGS FROM HER TRAILBLAZER, I NOTICED THAT NO AIR BAGS HAD DEPLOYED. AND AS FAST AS MY MOM WAS GOING AND THE TYPE OF IMPACT & DAMAGE HER SUV SUSTAINED, I WOULD THINK AND HOPE THE AIRBAGS WOULD DEPLOY IN THIS TYPE OF ACCIDENT, THUS PREVENTING SERIOUS INJURY OR DEATH. MY MOM WAS NOT SO LUCKY, AND MYSELF AND MY FAMILY HAVE ENDURED GREAT PAIN FROM LOOSING HER SO SUDDENLY.. |
| 10823597 | CHEVROLET | TRAILBLAZER | 2004 | 2016-01-19 | I WAS RECENTLY IN A CAR ACCIDENT DUE TO BAD WEATHER AND ROAD CONDITIONS. LEAVING WORK DRIVING INTERSTATE I89 9STATE NORTHBOUND.  CAME UPON BLACK ICE MY CAR FISHTAILED OUT OF CONTROL ; TRYING TO GAIN CONTROL BACK BEFORE I KNEW IT I WAS HEADING TORDS A GUARD RAIL. I WAS ONLY DRIVING 50 TO 55MPH. BEYOND THE GUARD RAIL I DO NOT REMEMBER. I SUFFERED UPPERBODY AND HEAD INJURY AND MY FRONT AIR BAG FAILED TO DEPLOY.  OTHERS ARE TELLING ME AND MY HUSBAND TO LOOK INTO THIS AS MY AIRBAG FAILED TO DEPLOY.  CAN YOU HELP |
| 11265285 | CHEVROLET | TRAILBLAZER | 2004 | 2019-09-29 | WELL I HIT A TREE AN THE AIRBAGS DIDNT DEPLOYED BUT THE AIRBAG LIGHT IS ON |

| | | | | | |
|---|---|---|---|---|---|
| 10128270 | GMC | ENVOY | 2004 | 2005-07-08 | DT: CONSUMER STATES THAT SHE WAS IN A HEAD ON COLLISION ON JULY 8, 2005 AND THE AIR BAGS DID NOT DEPLOY. SHE WAS GOING 55 MPH WHEN HIT. THERE WAS DAMAGE TO THE VEHICLE AND A POLICE REPORT WAS TAKEN. CONSUMER STATES SHE HAS NECK AND BACK INJURIES, SHE IS GOING TO THE DOCTOR FOR A FOLLOW UP VISIT TODAY. HER DAUGHTER HAS SEAT BELT BURNS ON HER NECK. THE VEHICLE IS CURRENTLY BEING INSPECTED BY THE INSURANCE COMPANY; IT HAD TO BE TOWED TO A BODY SHOP. SHE HAS NOT CONTACTED THE DEALERSHIP OR MANUFACTURER, THE ATTORNEY GENERAL ADVISED HER TO CALL US FIRST. *NM |
| 10152802 | GMC | ENVOY | 2004 | 2006-03-13 | AVOIDING TO HIT AN UPCOMING VEHICLE IN A CURVE, I LOST CONTROL OF MY GMC ENVOY SUV 2004 AND HIT A CONCRETE DRIVEWAY AND STOPPED WITH AN ELECTRICAL UTILITY POST FRONT SIDE. THE AIRBAGS DID NOT DEPLOY CAUSING MYSELF TO HIT THE STEERING WHEEL AND INJURED MY NECK, MY HEAD, LOWER BACK, KNEES AND LEFT ARM. THE INSURANCE COMPANY TOLD ME THAT IF THE AIR BAGS WOULD DEPLOYED THEY WOULD DECLARED MY VEHICLE TOTAL LOSS DUE TO THE EXTENSIVE DAMAGE. I TOLD THEM I DON'T WANT MY VEHICLE REPAIRED IF THE AIR BAGS ARE NOT CHANGED. I INTEND TO GO AGAINST GMC LEGALLY. *JB |
| 10182098 | GMC | ENVOY | 2004 | 2007-01-03 | IN ROUTE TO WORK DRIVING MY 2004 GMC ENVOY I WAS INVOLVED IN WHAT I WOULD CONSIDERED A HEAD ON COLLISION WITH A TELEPHONE POLE. THE IMPACT WAS GREAT ENOUGH TO SPILT THE POLE IN TWO, TOP HALF JUST MISSING THE ROOF OF THE VEHICLE. UPON IMPACT THE AIRBAGS DID NOT DEPLOY NOR DID MY SEAT BELTS LOCK ME IN CAUSING ME TO FLY FORWARD HITTING MY HEAD ON THE STEERING WHEEL, I HAD TO BE EXTRACTED FROM VEHICLE BY FIRE DEPARTMENT AND TRANSPORTED TO ER. I NOW HAVE PERMANENT SCAR APPROXIMATELY 5 INCHES IN LENGTH ACROSS MY FOREHEAD. I FILED A COMPLAINT WITH GMC LATER TO BE INFORMED THAT AFTER THEIR INVESTIGATION THEY CONCLUDED THAT SINCE THE TELEPHONE SIDE TOOK THE GREATER OF THE IMPACT THE IMPACT WAS NOT GREAT ENOUGH TO WARRANT AIRBAG DEPLOYMENT. PLEASE NOTE THAT DRIVERS NOR PASSENGER SIDE AIRBAG DEPLOYED. *JB |
| 10237647 | GMC | ENVOY | 2004 | 2008-08-10 | TL*THE CONTACT OWNS A 2004 GMC ENVOY. WHILE DRIVING APPROXIMATELY 55 MPH, THE VEHICLE STRUCK A GATE, WENT AIRBORNE, DROPPED APPROXIMATELY 35 FEET DOWN AN EMBANKMENT, STRUCK SOME TREES, BOULDERS, AND LANDED IN A SWAMP. THE AIR BAGS FAILED TO DEPLOY AND THE VEHICLE SUSTAINED MAJOR DAMAGE. BOTH THE DRIVER AND PASSENGER SUSTAINED MULTIPLE INJURIES. THE VEHICLE HAD TO BE LIFTED FROM THE EMBANKMENT WITH A CRANE AND WAS TOWED AWAY. A POLICE REPORT WAS FILED. THE CURRENT AND FAILURE MILEAGES WERE 51,000. |
| 10266307 | GMC | ENVOY | 2004 | 2009-04-20 | I WAS TRAVELING NORTHBOUND ON RT 251 FROM PERU TO MENDOTA IL WHEN IT BEGAN RAINING AND HAILING VERY HARD. 251 IS FULL OF POT HOLES. I WAS TRAVELING ABOUT 40 M.P.H. I HIT A POT HOLE AND MY CAR STARTED TO HYDROPLAN. I WENT INTO THE SOUTHBOUND LANE AND THEN INTO DITCH HEAD ON....I HIT THE DITCHES WALL ALMOST HEAD ON AND MY AIRBAGS DID NOT COME OUT. *TR |
| 10272370 | GMC | ENVOY | 2004 | 2009-05-02 | TL*THE CONTACT OWNS A 2004 GMC ENVOY. WHILE DRIVING 60 MPH WITH THE CRUISE CONTROL ACTIVATED, THE CONTACT PASSED OUT DUE TO A SEVERE MEDICAL ISSUE. HE LOST CONTROL OF THE VEHICLE AND CRASHED INTO A TREE. UPON IMPACT, BOTH FRONTAL AIR BAGS FAILED TO DEPLOY. THE CONTACT AND PASSENGER WERE SEVERELY INJURED. THE DRIVER SUSTAINED A BROKEN CLAVICLE AND HIS TEETH WERE KNOCKED OUT OF HIS MOUTH. THE PASSENGER SUSTAINED A LACERATION TO THE HEAD AND ABDOMINAL INJURIES. THE VEHICLE WAS INSPECTED BY AN INSURANCE ADJUSTER, WHO WAS UNABLE TO DETERMINE WHY THE AIR BAGS DID NOT DEPLOY. THE VEHICLE WAS DESTROYED. THE CONTACT CALLED THE MANUFACTURER AND WAS INFORMED THAT AN INVESTIGATION WAS IMPLEMENTED AND A REPRESENTATIVE WILL CALL HIM BACK IN FIVE BUSINESS DAYS. THE FAILURE MILEAGE WAS 42,600. UPDATED 6/5/09 *CN UPDATED 06/09/09. *JB |
| 10275464 | GMC | ENVOY | 2004 | 2009-06-29 | TL*THE CONTACT OWNS A 2004 GMC ENVOY. WHILE DRIVING 35 MPH, THE CONTACT REAR ENDED ANOTHER VEHICLE. HIS VEHICLE WAS DESTROYED. THE AIR BAGS FAILED TO DEPLOY AND THE SEAT BELTS DID NOT RETRACT FOR BOTH OCCUPANTS SEATED IN THE FRONT. THE CONTACT AND THE PASSENGER STRUCK THE STEERING WHEEL WITH THEIR CHESTS AND SHOULDERS. BOTH WERE SEVERELY INJURED. THE CONTACT, PASSENGER, AND OTHER DRIVER WERE TRANSPORTED TO THE HOSPITAL. THE VEHICLE WAS TOWED TO A REPAIR SHOP AND IS AWAITING AN INVESTIGATION. A POLICE REPORT WAS FILED. THE FAILURE MILEAGE WAS 60,000. |
| 10286793 | GMC | ENVOY | 2004 | 2009-10-07 | WHILE TRAVELING DOWN I-95 AT APPX. 60MPH THE CAR IN FRONT OF ME STOPPED SHORT. I SLAMMED INTO THE BACK OF IT. MY AIRBAGS DID NOT DEPLOY, NOR DID ONSTAR CALL TO CHECK ON ME (SO MUCH FOR BELIEVING IN THOSE ADS!) THE ENTIRE FRONT END NEEDS TO BE REPLACED. FLUIDS WERE SPILLING FROM THE VEHICLE. 2 WITNESSES ARE CAPITOL HILL POLICE OFFICERS WHO WERE SHOCKED THAT THE AIRBAGS DID NOT DEPLOY. THE SEATBELT DID RESTRAIN ME CAUSING IRRITATION AT THAT SITE. MY BACK, NECK AND HEAD WERE ACHING. I WAS CHECKED OUT BY THE ER. *TR |
| 10302345 | GMC | ENVOY | 2004 | 2010-01-26 | TL*THE CONTACT OWNS A 2004 GMC ENVOY. WHILE DRIVING 65 MPH IN SNOWY CONDITIONS, HE ATTEMPTED TO PASS A VEHICLE AND WHILE RETURNING BACK INTO THE LANE THE VEHICLE SLID AND HE CRASHED INTO A CONCRETE BARRIER FRONT-END FIRST. THE FRONTAL AIR BAGS DID NOT DEPLOY AT THE TIME OF THE CRASH. THE CONTACT DID NOT SUFFER ANY INJURIES. THE POLICE ARRIVED SHORTLY AFTER AND A POLICE REPORT WAS FILED. THE FAILURE AND CURRENT MILEAGES WERE UNDER 97,000. |

| | | | | | |
|---|---|---|---|---|---|
| 10594270 | GMC | ENVOY | 2004 | 2014-03-12 | CAR SLID INTO RIGHT GUARDRAIL AND THEN SLID TO LEFT IN DITCH ON EXPRESSWAY. THE AIRBAGS DID NOT DEPLOY. IMPACT WAS SIGNIFICANT ENOUGH TO BEND THE FRONT PASSENGER CORNER OF FRAME. THE FRAME IS ALSO CRACKED UNDERNEATH THE MIDDLE OF VEHICLE AS RESULT OF CRASH. CAR IS NO LONGER DRIVEABLE. DRIVER SUFFERED WHIPLASH. *TR |
| 10596479 | GMC | ENVOY | 2004 | 2014-03-31 | I HAD AN ACCIDENT ON A MAJOR HIGHWAY DUE TO WEATHER CONDITIONS. I ENDED UP SPINNING THE VEHICLE AROUND WHILE IN THE TRAVEL LANE AND HIT THE CAR IN THE PASSING LANE. MY AIRBAGS NEVER DEPLOYED. ALTHOUGH NO ONE WAS INJURED THANKFULLY. I WONDERED WHY THE AIRBAGS DIDN'T GO OFF. SHOULD I BE WORRIED? HAS ANYONE MADE THIS SAME COMPLAINT? THANK YOU. *TR |
| 10631914 | GMC | ENVOY | 2004 | 2009-08-25 | MY WIFE WAS IN THE CAR ALONE. VEHICLE RAN OFF ROAD, CRASHED INTO PARKED TRUCK, AIR BAG DID NOT DEPLOY. WIFE DIED OF "CLOSED CHEST TRAUMA". *TR |
| 11378518 | GMC | ENVOY | 2004 | 2020-12-03 | TL-THE CONTACT OWNS A 2004 GMC ENVOY. THE CONTACT STATED THAT WHILE DRIVING AT 50 MPH HE HAD THE SWERVE TO AVOID A HEADON COLLISION FROM A VEHICLE THAT WAS IN HIS LANE. THE VEHICLE WENT OFF THE ROAD AND CRASHED INTO A CONCRETE BARRIER.THE CONTACT HAD A FRACTURED STERNUM AND A BRUISED RIGHT ANKLE, KNEE AND ELBOW. THE CONTACT VISITED THE EMERGENCY ROOM ON HIS OWN WITHOUT BEING TRANSPORTED BY AN AMBULANCE.THE CONTACT STATED THAT NONE OF THE AIR BAGS IN THE FRONT DEPLOYED. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOTALED BY THE INSURANCE COMPANY AND TOWED FROM THE CRASH SITE. THE ENTIRE FRONT OF THE VEHICLE WAS SMASHED IN INCLUDING THE FRAME.  THE BACK AXEL DROPPED AFTER THE COLLISION AND BOTH RIMS ON THE BACK TIRES WERE SHATTERED. THE FRONT RIMS WERE ALSO CRACKED. THE DEALER AND MANUFACTURER HAD NOT BEEN CONTACTED YET. THE FAILURE MILEAGE WAS 180,000. TF |
| 10067417 | GMC | YUKON | 2004 | 2004-04-16 | WHILE DRIVING, CONSUMER APPLIED THE BRAKES AND WITHOUT WARNING, CONSUMER'S VEHICLE COLLIDED WITH THE VEHICLE IN FRONT. UPON IMPACT, AIR BAGS DID NOT DEPLOY. DRIVER SUSTAINED MINOR INJURIES AND  WAS TRANSPORTED TO THE HOSPITAL FOR EXAMINATION.  VEHICLE WAS TOWED TO THE DEALER FOR INSPECTION. AND DEALER WAS UNABLE TO DUPLICATE OR RESOLVE THE PROBLEM. *AK |
| 10372063 | GMC | YUKON | 2004 | 2010-11-12 | TL* THE CONTACT OWNS A 2004 GMC YUKON. THE CONTACT WAS DRIVING APPROXIMATELY 40 MPH WHEN THE VEHICLE WAS INVOLVED IN A HEAD ON CRASH IN WHICH THE AIR BAGS DID NOT DEPLOY. THE POLICE APPEARED ON THE SCENE AND A REPORT WAS AVAILABLE. THE DRIVER AS WELL AS THE FRONT PASSENGER WAS INJURED AND TRANSPORTED VIA AMBULANCE TO THE HOSPITAL TO TREAT INJURIES. THE VEHICLE WAS TOWED TO AN INSURANCE COMPANY LOT BUT DID NOT HAVE THE FAILURE DIAGNOSED. THE VEHICLE WAS NOT REPAIRED. THE FAILURE AND CURRENT MILEAGE WAS 134,000. |
| 8023949 | CHEVROLET | BLAZER | 2003 | 2002-11-19 | WHILE TRAVELING AT 40 MPH, CONSUMER STATES ANOTHER VEHICLE TRAVELING IN FRONT CAME TO A SUDDEN STOP.  CONSUMER REAR ENDED THAT VEHICLE, AND NONE OF CONSUMER AIRBAGS DEPLOYED.  PLEASE PROVIDE ANY FURTHER INFORMATION.  PH |
| 10023373 | CHEVROLET | BLAZER | 2003 | 2003-06-11 | TWO EMPLOYEES WERE INVOLVED IN A CRASH WHERE THEY WERE THE ONES THAT STRUCK A STOPPED CAR AT 50 MPH. THE AIR BAGS DID NOT DEPLOY....IS THIS A PROBLEM. IS THIS A POSSIBLE RECALL SITUATION. WHO DO I CONTACT ABOUT THIS A CHEVROLET??? DOES YOUR AGENCY GET INVOLVED.  *NLM |
| 10040503 | CHEVROLET | BLAZER | 2003 | | CONSUMER STATED WHILE TRAVELING 45 MPH OR OVER ON WET PAVEMENT VEHICLE LOST CONTROL, AND TRAVELED OFF THE ROAD.  REAR HATCH GLASS EXPLODED , BUT AIR BAGS DID NOT DEPLOY AT ANY TIME. *AK |
| 10044264 | CHEVROLET | BLAZER | 2003 | 2003-08-30 | WHILE TRYING TO AVOID HITTING A PEDESTRIAN VEHICLE WENT OF THE ROAD AND HIT A TREE. UPON IMPACT, FRONT AIR BAGS DID NOT DEPLOY.  VEHICLE COULD NO LONGER BE DRIVEN DUE TO THE EXTENSIVE DAMAGE DONE TO THE FRONT END.  *AK |
| 10160753 | CHEVROLET | BLAZER | 2003 | 2006-06-19 | DT*: THE CONTACT STATED THAT BOTH FRONT AIRBAGS OF THE VEHICLE DID NOT DEPLOY DURING A CRASH WHICH OCCURRED WHILE TRAVELING 45 MPH.  THE VEHICLE WAS HEADED EAST ON A NARROW, ROUGH, BUMPY ROAD WHEN IT APPROACHED AN INTERSECTION AND STRUCK ANOTHER VEHICLE HEADING NORTH.  THE OTHER VEHICLE BRIEFLY STOPPED AT THE STOP SIGN AND PULLED OUT INTO THE INTERSECTION 15 FEET BEFORE THE CONTACT'S VEHICLE REACHED THE INTERSECTION. THIS RESULTED IN  THE CONTACT'S VEHICLE CRASHING INTO THE FRONT DRIVER SIDE DOOR OF THE OTHER VEHICLE.  BOTH OCCUPANTS WERE WEARING THEIR SEAT BELTS. THE AIRBAG WARNING LIGHT WAS NOT ON PRIOR TO THE CRASH.  THE POLICE TOOK PICTURES AND A REPORT WAS FILED.  THE VEHICLE WAS TAKEN TO THE DEALER FOR INSPECTION. |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | I WAS TRAVELING SOUTHBOUND WHEN I EXPERIENCED A SEIZURE AND LOST CONTROL OF MY VEHICLE. I PROCEEDED TO VEER TO THE LEFT WHERE I CLIPPED SEVERAL CARS THAT WERE HEADED NORTHBOUND AND HAD STOPPED DUE TO THE REALIZATION THAT MY VEHICLE WAS NOT UNDER CONTROL. I THEN PROCEEDED OVER A TREE LAWN AND INTO A PARKING LOT. I HIT A DODGE RAM PICKUP WITH THE RIGHT FRONT CORNER OF MY VEHICLE AND PUSHED THAT VEHICLE INTO ANOTHER PARKED CAR THAT WAS NEXT TO IT. BOTH VEHICLES ENDED UP SIDEWAYS AND MY VEHICLE ENDED UP SPUN AROUND 180 DEGREES. AT THIS TIME MY VEHICLE CAME TO A STOP. POLICE WERE CALLED AN PARAMEDICS ARRIVED. THE JAWS OF LIFE WERE USED TO EXTRACT ME FROM MY VEHICLE. I WAS TAKEN TO A LOCAL HOSPITAL WHERE IT WAS DETERMINED THAT I SUFFERED BURST FRACTURES OF L1, L2, AND L3. I ALSO SUFFERED AN EVULSION FRACTURE OF MY LEFT ANKLE. THE POLICE REPORT STATES THAT I WAS TRAVELLING AT A HIGH RATE OF SPEED AND THAT THE VEHICLES WHICH WERE NORTHBOUND WERE JUST CLIPPED. THE AIRBAGS ARE BOTH STILL WITHIN THEIR CASES AS NEITHER DEPLOYED. I WOULD EXPECT THIS OF THE PASSENGER AIRBAG AS THAT SEAT WAS UNOCCUPIED BUT THE DRIVER BAG SHOULD HAVE DEPLOYED. THE INSURANCE INVESTIGATOR EVEN EXPRESSED TO MY WIFE THAT HE WAS SURPRISED THAT THE AIR BAG DID NOT DEPLOY. I WAS HAVING A SEIZURE AND WAS NOT CONSCIOUS SO I CANNOT PROVIDE ANY INFORMATION OTHER THAN WHAT IS IN THE POLICE REPORT. THE REPORT IS #370763 ISSUED BY THE TOWNSHIP OF CLINTON, MICHIGAN.    THE VEHICLE IS CURRENTLY LOCATED AT COPARD AUTO SALVAGE, 21000 HAYDEN, WOODHAVEN, MI 48183. THE PHONE NUMBER IS 734-365-0070. |
| 10537593 | CHEVROLET | BLAZER | 2003 | 2013-08-13 | IT WILL BE HELD THERE FOR BETWEEN 7 AND 10 DAYS FROM 8/26/2013. THANK YOU  *TR |
| 11075512 | CHEVROLET | BLAZER | 2003 | 2016-02-16 | REAR ENDED A STOPPED PICK UP AT 45 MPH AND AIR BAGS DID NOT DEPLOY. IT WAS ON A HIGHWAY WHERE THE SPEED LIMIT IS 55. THE WHOLE FRONT END WAS DAMAGED BUT MOST WAS ON DRIVER SIDE. |
| 8017964 | CHEVROLET | SILVERADO | 2003 | | THE VEHICLE WAS INVOLVED IN A FRONTAL COLLISION AT HIGHWAY SPEED. UPON IMPACT THE PASSENGER SIDE AIR BAG DID NOT DEPLOYED. MANUFACTURER HAS BEEN CONTACTED. PLEASE PROVIDE FURTHER INFORMATION.*JB |
| 10030725 | CHEVROLET | SILVERADO | 2003 | 2003-07-31 | 2003 CHEVROLET SILVERADO EXT. CAB 4X4 WITH ONSTAR, WRECKED. HIT TREES. TRUCK TOTALLED. FRONT-END DAMAGE, SIDE AND REAR END DAMAGE. AIR BAG DID NOT INFLATE. ONSTAR DID NOT WORK. *AK |
| 10032581 | CHEVROLET | SILVERADO | 2003 | 2003-08-01 | AIR BAGS FAILED TO OPEN ON HEAD END COLLISION.  SPEED APPROX. 40 MPH.  2003 CHEVY SILVERADO - NEW CONDITION |
| 10050872 | CHEVROLET | SILVERADO | 2003 | 2003-10-18 | INVOLVED IN A 45 MPH COLLISION WITH ANOTHER VEHICLE. AIRBAGS IN MY 2003 CHEVROLET, SILVERADO DID NOT DEPLOY. *AK |
| 10055994 | CHEVROLET | SILVERADO | 2003 | 2004-01-24 | WHILE DRIVING 25 MPH THE VEHICLE WAS INVOLVED IN A FRONTAL COLLISION.  UPON IMPACT, THE FRONT AIR BAGS DID NOT DEPLOY.  THE DRIVER SUSTAINED NECK AND BACK INJURIES.  *AK *SC |
| 10056087 | CHEVROLET | SILVERADO | 2003 | 2004-01-24 | WHILE DRIVING  AT 65 MPH ON THE HIGHWAY, THE DRIVER LOST CONTROL OF THE VEHICLE, RESULTING IN A FRONTAL COLLISION. THE VEHICLE WENT  INTO AN EMBANKMENT. UPON  IMPACT, THE AIR BAGS DID NOT DEPLOY.  THE DRIVER SUSTAINED INJURIES. *AK BROKEN STERNUM, SPINE AND RIBS. THE CONSUMER WAS WEARING HIS SEAT BELT.  THE SDM CRASH DOWN LOAD FROM THE CRASH WAS SENT TO ODI WITH PICTURES OF THE VEHICLE. CW *MR *JB |
| 10066690 | CHEVROLET | SILVERADO | 2003 | | WHIEL DRIVING AT 40 MPH VEHICLE WAS HIT HEAD ON AND THE AIR BAGS FAILED TO DEPLOY.*MR |

| | | | | | |
|---|---|---|---|---|---|
| 10072429 | CHEVROLET | SILVERADO | 2003 | 2003-05-25 | AIR BAGS NOT DEPLOYING ON A NEW CHEVY SILVERADO PICK-UP/ FOLLOWING A VEHICLE CRASH. DRIVER WAS INJURED, AND SCARRED. WAS HOSPITILIZED AND STILL HAVING PROBLEMS AND WILL HAVE A LIFETIME SCAR ON FACE AREA. ALSO LEGS AND THIGHS ARE SCARRED. OUR SON WAS TRAVELING AT A HIGH RATE OF SPEED, PASSING, LOST CONTROL WENT OFF HIGHWAY HEAD ON INTO DEEP DITCH, FLIPPED OVER, WENT SIDE TO SIDE COMING TO REST SIDEWAYS ON TIRES THAT WERE NOW FLAT AND STILL NO AIRBAG DEPLOYMENT. SENT A COMPLAINT AND PICTURES, POLICE REPORT AND MEDICAL RECORDS TO GM, NO SATISFACTION FROM THERE. WHAT DOES A VEHICLE HAVE TO HAVE DONE TO HAVE AN AIRBAG DEPLOY???? VEHICLE WAS TOTALED. SON IS PERMANTLY SCARRED, AND PARENTS HAVE LOST FAITH IN CHEVY TRUCKS, AND AIRBAGS. HIS OLDER BROTHER CO-SIGNED SO HE WOULD HAVE A "NEW, SAFER" VEHICLE AND AM NOW SO VERY UPSET WITH GM AS TO AN EXPLANATION AS TO WHY THESE AIR BAGS DID NOT DEPLOY TO PROTECT OUR SON. THIS VEHICLE (HE WAS SPEEDING PASSING) WENT OFF THE ROAD HEAD ON INTO A DEEP DITCH, OVERTURNED SEVERAL TIMES, HIT SIDE TO SIDE IN DITCH, FLATTENED TIRES AND CAME TO REST ON SHOULDER OF ROAD. NOW HOW MUCH MORE DOES IT TAKE TO DEPLOY AN AIR BAG???? I THINK IF WE WERE WEALTHY AND COULD AFFORD A LAWYER THEY MAYBE WOULD OF LISTENED AND CHECKED THIS MORE, BUT AS WE ARE JUST "COMMON" HARD WORKING US CITIZENS, WE DON'T REALLY COUNT. ALSO OUR SON WAS DRINKING AT THE TIME OF THE INCIDENT, ( SHOULD NOT MATTER TO SAFETY OF VEHICLE EQUIPMENT) I WAS TOLD IT WAS NOT "CATASTROPIC ENOUGH" OF AN ACCIDENT TO WARRENT ANY DAMAGES. ?? THEN THEY TRIED TO SAY THE "ACCIDENT" (MEANING VEHICLE) WASN'T. I THINK WE ALL KNOW WHAT THEY MEANT. WE WEREN'T LOOKING FOR "MILLIONS" (STRETCHING IT), JUST HIS MEDICAL BILLS AND THE PROBLEM CORRECTED IN OTHER CHEVY'S SO THIS WOULD NOT HAPPEN TO SOMEONE ELSE. AS USUAL THE HONEST PEOPLE, AND HARD WORKING MIDDLE CLASS CAN GET NO HELP. PRAYERS GO OUT TO ANYONE ELSE THIS HAS HAPPENED TO AND THAT IT WON'T HAPPEN TO SOMEONE ELSE'S CHILD. |
| 10089611 | CHEVROLET | SILVERADO | 2003 | 2004-08-14 | WHILE DRIVING 55 MPH CONSUMER'S VEHICLE WAS INVOLVED IN A FRONT COLLISION. UPON IMPACT,  DUAL AIR BAGS DID NOT DEPLOY.  DRIVER SUSTAINED HEAD INJURIES DUE TO HIS HEAD HITTING THE STEERING WHEEL.*AK    THE CHEVROLET TESTERS CAME TO INSPECT THE VEHICLE. THEY CONCLUDED THAT THE IMPACT WAS NOT HARD ENOUGH NOR WAS THE VEHICLE GOING FAST ENOUGH FOR THE AIR BAG TO DEPLOY.  *NM |
| 10137033 | CHEVROLET | SILVERADO | 2003 | 2005-08-14 | AIR BAGS DID NOT INFLATE WITH A FRONT END CRASH THAT PUSHED THE MOTOR IN THE DASH. SON RECEIVED HEAD INJURIES WOULD LIKE TO KNOW WHAT YOU ARE GOING TO DO ABOUT THIS. PICKUP WAS A TOTAL LOSS. FRAME WAS BENT. MY ATTORNEY WOULD LIKE TO PUSH THIS BUT I WOULD LIKE TO KNOW WHAT YOU WILL DO FOR US FIRST. I HAVE PICTURES IF YOU WOULD LIKE TO SEE THEM. *JB |
| 10154224 | CHEVROLET | SILVERADO | 2003 | 2006-03-23 | DIRECT FRONTAL IMPACT WITH SIDE OF CAR THAT RAN RED LIGHT. AIR BAG DID NOT DEPLOY. SPEED WAS APPROXIMATELY 40-50 MPH.  *JB |
| 10577089 | CHEVROLET | SILVERADO | 2003 | 2013-11-14 | I HIT A DEER HEAD ON AND TOTALED MY SILVERADO.  I HIT IT AT 55 MPH AND NEITHER OF THE AIRBAGS DEPLOYED.  *TR |
| 10592423 | CHEVROLET | SILVERADO | 2003 | 2014-05-08 | TRUCK COLIDED WITH GUARD RAIL. BOUNCED OFF, HIT VEHICLE 1, THEN INTO VEHICLE 2 THEN STOPPED AFTER HITTING VEHICLE 3 A SEMI TRUCK.  ALL DAMAGE WAS DONE TO FRONT OF THE CHEVY SILVERADO.  AT NO TIME DID THE AIRBAGS DEPLOY.  SILVERADO WAS DETERMINED TO BE TOTALED DUE TO THE EXCESSIVE DAMAGE ON THE FRONT.  AIRBAGS SHOULD HAVE DEPLOYED DURING ONE OF THE IMPACTS.   *JS |
| 10082050 | CHEVROLET | SUBURBAN | 2003 | 2004-07-14 | THE CONSUMER WAS INVOLVED IN AN ACCIDENT WHERE IT WAS HIT FROM THE FRONT DRIVER SIDE, THE IMPACT CAUSED THE VEHICLE TO HIT A TELEPHONE POLE HEAD ON. THE AIR BAGS DID NOT DEPLOY. *JB |
| 11360703 | CHEVROLET | SUBURBAN | 2003 | 2020-08-07 | TL* THE CONTACT OWNED A 2003 CHEVROLET SUBURBAN. THE CONTACT STATED THAT WHILE TOWING HIS DAUGHTERS VEHICLE AT ABOUT 60 MPH, ANOTHER VEHICLE CRASHED INTO THE VEHICLE BEING TOWED. THE AIR BAGS DID NOT DEPLOY. THE CONTACT SUSTAINED A HEAD AND LOWER BACK INJURY. THE FRONT PASSENGER (HIS DAUGHTER) SUSTAINED A BACK INJURY. THE TWO WENT TO THE DOCTOR THREE DAYS LATER. THERE WAS NO POLICE REPORT. THE VEHICLE BEING TOWED WAS DAMAGED AND WAS DRIVEN TO THE DAUGHTERS DORM WHERE IT WAS TOTALED BY THE INSURANCE COMPANY. THE DEALER AND THE MANUFACTURER WERE NOT CONTACTED. THE CONTACT STATED THAT THE OTHER DRIVERS INSURANCE DENIED ANY COMPENSATION TO THE CONTACT, STATING THAT THE CONTACTS VEHICLE (THE VEHICLE TOWING THE DAMAGED VEHICLE) WAS NOT HIT. THE CONTACT STATED THAT AFTER THE ACCIDENT, A LOUD NOISE WAS HEARD WHENEVER THE VEHICLE WAS TURNED ON. THE CONTACT ALSO STATED THAT THE DASHBOARD WAS CRACKED. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 173,000. |
| 10899484 | CHEVROLET | TAHOE | 2003 | 2016-04-14 | TL* THE CONTACT OWNED A 2003 CHEVROLET TAHOE. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 45 MPH, THE CONTACT LOST CONTROL OF THE VEHICLE AND CRASHED INTO A GUARD RAIL. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED. THE FRONT SEAT PASSENGER SUSTAINED 12 BROKEN RIBS AND 2 COLLAPSED LUNGS THAT REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS TOWED TO AN INDEPENDENT TOWING FACILITY. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS UNKNOWN. THE VIN WAS UNAVAILABLE. |

| | | | | | |
|---|---|---|---|---|---|
| 10008283 | CHEVROLET | TRACKER | 2003 | 2003-02-28 | I RENTED A CHEVROLET TRACKER 2003 AND WAS HIT HEAD ON BY ANOTHER DRIVER AND EVERYONE THERE NOTICE THAT THE AIRBAG DID NOT OPEN. THIS WAS A HEAD ON ACCIDENT. I WILL BE FILING THIS TO A LAWYER SHORT AS I WAS HURT. *JB |
| 10052731 | CHEVROLET | TRACKER | 2003 | 2003-12-19 | I WAS DRIVING ON I-190 IN THE RIGHT HAND LANE ON DEC 19, 2003. A CAR COMING UP AN ENTRANCE RAMP MERGED INTO MY LINE ALMOST HITTING ME. I SWERVED TO AVOID THE CRASH BUT SUBSEQUENTLY HIT SOME BLACK ICE AND WAS UNABLE TO RECOVER CONTROL. I HIT THE CONCRETE BARRIER HEAD ON. THE INSURANCE COMPANY'S (PROGRESSIVE) CLAIMS AGENT FIGURES I WAS GOING ABOUT 50 MPH AT IMPACT. THE IMPACT SO EXTREME THAT MY TRACKER SHIFTED ITSELF INTO 4WD AND TURNED ON THE HIGHBEAMS. BASICALLY ANYTHING THAT COULD GO FORWARD DID. THE WHOLE FRONT OF THE VEHICLE WAS PUSHED BACK 6" AND MY LISCENCE PLATE WAS RIPPED OFF, BUT YET MY AIRBAGS NEVER DEPLOYED. IF IT WEREN'T FOR MY SEATBELT, I MAY NOT BE HERE TO TYPE THIS. I HAD SEVERE WHIPLASH, AS WELL AS, PUTTING MY LEFT KNEE THROUGH MY DASH BOARD. THE IMPACT OF THE CRASH SHOULD HAVE HIT AT LEAST ONE, IF NOT ALL, SENSORS. I FEEL THIS IS A MAJOR PROBLEM. I WILL BE FILING A FORMAL COMPLAINT WITH CHEVY REGARDING THIS ISSUE.*AK |
| 10097100 | CHEVROLET | TRACKER | 2003 | 2004-03-20 | WHILE DRIVING 37 MPH THE VEHICLE WAS INVOLVED IN A HEAD ON COLLISION. THE AIR BAGS DID NOT DEPLOY UPON IMPACT. THE PASSENGER SUSTAINED SEVERE WHIPLASH. PLEASE PROVIDE ADDITIONAL INFORMATION. *JB |
| 10216640 | CHEVROLET | TRACKER | 2003 | 2008-01-27 | I WAS DRIVING HOME FROM WORK WHEN MY CAR SWERVED TO THE RIGHT AND WENT OFF THE ROAD AND HIT A GROVE OF TREES HEAD ON. MY CAR WAS TOTALED AND NONE OF MY AIRBAGS WENT OFF. WHY DOES THIS HAPPEN I COULD HAVE BEEN KILLED. ALSO I RECEIVED A SAFETY NOTICE ABOUT MY CHEVEROLET TRACKER 4 DAYS BEFORE THIS HAPPENED HAVING A PROBLEM WITH THE FRONT SUSPENSION CROSSMEMBER DOE SOMEONE HAVE TO DIE BEFORE A RECALL IS DONE. AND WHY DIDN'T MY AIR BAGS GO OFF SOMEONE PLEASE LOOK AT THIS CAR BEFORE IT GETS HAULED OFF BY THE ADJUSTER!!!!! I WAS AIRLIFTED TO THE HOSPITAL THE FIRE DEPARTMENT CUT THE ROOF OF MY CAR OFF TO GET ME OUT NO AIRBAGS WHAT HAPPENED!!!. *TR |
| 8023281 | CHEVROLET | TRAILBLAZER | 2003 | 2002-11-19 | CONSUMER STATES THAT WHILE DRIVING APPROXIMATELY 35-40MPH SLID OFF ROAD AND CRASHED INTO A DITCH HEAD-ON. BOTH DRIVER AND PASSENGER AIR BAGS DID NOT DEPLOY. TS |
| 10040870 | CHEVROLET | TRAILBLAZER | 2003 | 2003-09-25 | TRAVELING 55 MPH WHEN ANOTHER VEHICLE CROSSED THE ROAD CAUSING ME TO HIT THE SIDE OF HIS VEHICLE HEAD ON. NO AIR BAGS DEPLOYED. |
| 10054479 | CHEVROLET | TRAILBLAZER | 2003 | 2004-01-16 | LOSING CONTROL OF MY VEHICLE ON ICY PAVEMENT , VEHICLE SLID OFF OF THE ROAD , HEAD-ON INTO A TREE. DRIVERS SIDE AND PASSENGER SIDE AIR BAGS FAILED TO DEPLOY. SERIOUS INJURIES OCCURED , WHICH MAY HAVE BEEN LESSENED IF THE SAFETY FEATURES WE PAY FOR ACTUALLY WORK.*AK ER DOCTORS AND STATE POLICE WERE TERRIBLY ANNOYED , SINCE THERE HAVE BEEN SEVERAL REPORTS OF SAME FAILURE IN DESIGN. NO RESPONSE FROM DEALER OR MANUFACTURER, AS OF YET !!!*AK |
| 10055534 | CHEVROLET | TRAILBLAZER | 2003 | 2004-01-11 | AFTER HITTING A TREE HEAD ON AIR BAGS DID NOT DEPLOY.*AK |
| 10065438 | CHEVROLET | TRAILBLAZER | 2003 | 2004-03-24 | WHILE DRIVING AT 40 MPH CONSUMER'S VEHICLE WAS INVOLVED IN A FRONTAL COLLISION. CONSUMER WAS WEARING SEAT BELTS, BUT NONE OF THE AIR BAGS DEPLOYED. CONSUMER SUSTAINED A BROKEN NOSE, SCRAPES, AND BRUISES TO CHEST AND WRIST. *AK |
| 10113264 | CHEVROLET | TRAILBLAZER | 2003 | 2004-08-01 | CHEVROLET TRAILBLAZER 2003 UPON IMPACT AIRBAG DID NOT DEPLOY. *BF THE CONSUMER REAR ENDED ANOTHER VEHICLE. *JB |
| 10174616 | CHEVROLET | TRAILBLAZER | 2003 | 2006-11-22 | 2003 CHEVY TRAILBLAZER AIR BAGS NEVER CAME OUT AFTER HAVING IMPACT INTO TWO TREES FORCING THE DRIVER INTO THE STEERING WHEEL. NOTHING AT THIS TIME HAS BEEN CORRECTED TO REPAIR THE SUV. GM NEED TO BE ALERTED OF THIS FAILURE TO CORRECT THE PROBLEM! *NM |
| 10208796 | CHEVROLET | TRAILBLAZER | 2003 | 2007-11-10 | TL*THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING 40 MPH, THE CONTACT SWERVED TO AVOID AN ANIMAL AND CRASHED INTO A TREE. THE FRONT AIR BAGS FAILED TO DEPLOY. THE VEHICLE IS CURRENTLY AT A TOW YARD AND WILL BE TOWED TO THE INSURANCE COMPANY FOR INVESTIGATION. THE MANUFACTURER FILED A REPORT AND THE CONTACT IS AWAITING A CALL BACK. THE CURRENT AND FAILURE MILEAGES WERE 60,000. |
| 10219898 | CHEVROLET | TRAILBLAZER | 2003 | 2008-02-08 | TL*THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING 32 MPH, THE CONTACT CRASHED INTO A BUILDING. THE VEHICLE WAS DESTROYED. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED INJURIES TO HER MOUTH AND EYE. THE AMBULANCE ARRIVED ON THE SCENE AND TRANSPORTED THE CONTACT TO THE HOSPITAL. A POLICE REPORT WAS FILED. CHEVROLET HAS NOT BEEN NOTIFIED. THE VIN, ENGINE SIZE, AND NUMBER OF CYLINDERS WERE UNKNOWN. THE CURRENT AND FAILURE MILEAGES WERE 71,000. |
| 10223723 | CHEVROLET | TRAILBLAZER | 2003 | 2008-03-13 | TL*THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING 45 MPH, THE CONTACT REAR ENDED ANOTHER VEHICLE. THE FRONT AIR BAGS FAILED TO DEPLOY. THERE WERE NO INJURIES AND A POLICE REPORT WAS FILED. THE VIN AND ENGINE SIZE WERE UNKNOWN. THE FAILURE AND CURRENT MILEAGES WERE 77,000. |
| 10229337 | CHEVROLET | TRAILBLAZER | 2003 | 2008-05-28 | THE AIRBAG DID NOT DEPLOY IN A FRONT-END COLLISION THAT WILL MOST LIKELY TOTAL THE VEHICLE. THE OTHER VEHICLE'S DID DEPLOY. *TR |
| 10308388 | CHEVROLET | TRAILBLAZER | 2003 | 2009-12-26 | HAD CAR ACCIDENT WAS HIT BY ANOTHER VEHICLE AND HIT A RETAINING WALL GOING ABOUT 45 MILES AN HOUR AND AIR BAG DID NOT DEPLOY. 2003 TRAIL BLAZER. *TR |

| | | | | | |
|---|---|---|---|---|---|
| 10313800 | CHEVROLET | TRAILBLAZER | 2003 | 2009-12-26 | TL*THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING 45-50 MPH IN INCLEMENT WEATHER, THE CONTACT CRASHED INTO A RETAINER WALL. SHE STATED THAT OTHER PASSING VEHICLES PUSHED HER VEHICLE INTO THE RETAINER WALL. THE AIR BAG DID NOT DEPLOY. SHE WAS ALSO INJURED WHEN THE CRASH OCCURRED. THE MANUFACTURER STATED THAT THEY WOULD TAKE PICTURES OF THE VEHICLE. THE VEHICLE HAS NOT BEEN REPAIRED. A POLICE REPORT WAS FILED. THE FAILURE AND CURRENT MILEAGES WERE 82,000. THE CONSUMER STATED IT WAS A HIT AND RUN ACCIDENT. UPDATED 04/07/10.*JB |
| 10315428 | CHEVROLET | TRAILBLAZER | 2003 | 2008-06-03 | 2003 CHEVROLET TRAILBLAZER. S10 COMEBACK FWD LTR TO POTUS RE COMPLAINT AGAINST GM REGARDING DEFECTIVE AIRBAG, INVOLVE IN CAR ACCIDENT AND THE AIRBAG DID NOT DEPLOY. *TGW. THE CONSUMER STATED ANOTHER VEHICLE HIT A DEER, CROSSED THE CENTER LANE AND HIT THEIR VEHICLE HEAD ON. THE CONSUMER STATED THE SEAT BELTS DID NOT RESTRAIN THEM. *JB. UPDATED PHONE NUMBER 05/28/10.*JB |
| 10392644 | CHEVROLET | TRAILBLAZER | 2003 | 2011-01-23 | TL*THE CONTACT OWNS A 2003 CHEVROLET BLAZER. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 45 TO 50 MPH IN THE RAIN HE CRASHED HEAD ON INTO ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. THERE WERE NO AIR BAG WARNING INDICATIONS PRIOR TO THE CRASH. THE DRIVER SUSTAINED A CONCUSSION AND INJURIES TO HIS NECK, KNEE, AND FEET. A POLICE REPORT WAS FILED. THE DRIVER WAS TRANSPORTED TO THE HOSPITAL BY AMBULANCE. THE MANUFACTURER WAS CONTACTED AND OFFERED NO ASSISTANCE. THE FAILURE COULD NOT BE DIAGNOSED SINCE THE INSURANCE COMPANY DEEMED THE VEHICLE AS BEING DESTROYED. THE FAILURE AND CURRENT MILEAGE WAS APPROXIMATELY 130,000. THE VIN WAS UNAVAILABLE. UPDATED 5/2/11 *CN  UPDATED 1/11/11 *CN |
| 10425103 | CHEVROLET | TRAILBLAZER | 2003 | 2011-09-03 | MY WIFE AND I WERE INVOLVED IN A HEAD ON COLLISION (HIT BY A DRUNK DRIVER) OUR AIR BAGS DID NOT DEPLOY, I SUSTAINED A C7 FRACTURE, SCALPED BY THE REAR VIEW MIRROR (22 STITCHES TO HOLD MY SCALP) 6 STITCHES ON MY NOSE AND BRUISED KNEES. MY WIFE HAS A BROKEN NOSE ALL THE BONES IN HER RIGHT FOOT BROKEN AND BRUISED KNEES. *TR |
| 10468222 | CHEVROLET | TRAILBLAZER | 2003 | 2010-05-07 | TL* THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT HE CRASHED INTO A LIGHT POLE WHILE DRIVING AT UNKNOWN SPEEDS AND THE AIR BAGS DID NOT DEPLOY. THE CONTACT SUSTAINED INJURIES BUT WAS NOT TRANSPORTED TO THE HOSPITAL. THE POLICE WAS NOTIFIED OF THE CRASHED AND A REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT NOTIFIED. THE VIN WAS NOT AVAILABLE. THE FAILURE MILEAGE WAS 170,000. |
| 10523466 | CHEVROLET | TRAILBLAZER | 2003 | 2013-07-04 | WHILE TRAVELING IN SLOW TRAFFIC, THE CAR IN FRONT OF MY WIFE STOPPED. BY THE TIME SHE NOTICED THEY STOPPED IT WAS TOO LATE AND SHE HIT THE BACK OF THEIR FORD EXPLORER MOVING AT AROUND 20-30MPH. THE FRONT END OF OUR TRAILBLAZER WAS CRUSHED. MY DAUGHTER AND WIFE WERE WEARING THEIR SEAT BELTS. THE OFFICERS AND PARAMEDICS ON THE SCENE WERE SHOCKED THAT THE AIRBAGS DID NOT COME OUT WITH THE AMOUNT OF FRONT END DAMAGE. THEY HAD TO CUT THE BATTERY WIRES TO PREVENT THE AIRBAG FROM COMING OUT LATER WHEN SHE CLEANED OUT THE TRAILBLAZER. AN EXAMPLE OF HOW MUCH DAMAGE WAS TAKEN TO THE FRONT END, THE CORNER FENDERS WERE PUSHED BACK SO FAR THEY COULDN'T OPEN WITHER FRONT DOOR. THE FENDERS WERE CRUSHED INTO THE DOORS KEEPING THEM SHUT. I WOULD THINK WITH AN IMPACT LIKE THAT THE AIRBAGS WOULD HAVE CAME OUT, IT WAS A SQUARE HIT MEANING EVEN DAMAGE ACROSS THE FRONT END. *TR |
| 10551243 | CHEVROLET | TRAILBLAZER | 2003 | 2013-09-26 | DRIVING APPROXIMATELY 40 TO 43 MPH WHEN ANOTHER VEHICLE TURNED DIRECTLY IN FRONT OF ME. TOTAL FRONTAL DAMAGE BUCKLING UP HOOD ON MY CAR AS I HIT OTHER VEHICLE IN FRONT-END PASSENGER SIDE. THEIR AIRBAG DEPLOYED BUT MINE DIDN'T, EVEN WITH TOTAL FRONT END DAMAGE TO MY CAR. HAD SEATBELT ON, BUT DUE TO IMPACT STILL PULLED MY WHOLE BODY FORWARD (LIKE CRASH TEST DUMMY). THIS WAS A VERY HARD CRASH TOTALING MY CAR. *TR |
| 10568108 | CHEVROLET | TRAILBLAZER | 2003 | 2008-02-14 | TL*. THE CONTACT OWNS A 2003 CHEVROLET TRAIL BLAZER. THE WAS DRIVING 40 MPH, AND CRASHED INTO THE SIDE OF ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED INJURIES TO THE RIGHT SHOULDER, SPINAL STENOSIS AND FRACTURED KNEES. A POLICE REPORT WAS FILED OF THE INCIDENT. THE CONTACT STATED THAT SHE HAD ALSO BEEN INVOLVED IN TWO PRIOR CRASHES IN WHICH THE AIR BAGS FAILED TO DEPLOY. THE PREVIOUS CRASHES DID NOT RESULT IN ANY INJURIES AND A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS INSPECTED BY A REPRESENTATIVE SENT BY THE MANUFACTURER BUT THEY WERE UNABLE TO DETERMINE THE CAUSE OF THE AIR BAG FAILURE. THE FAILURE MILEAGE WAS 80,000. |
| 10596289 | CHEVROLET | TRAILBLAZER | 2003 | 2007-11-11 | TL* THE CONTACT OWNS A 2003 CHEVROLET TRAIL BLAZER. THE CONTACT STATED THAT WHILE DRIVING AN UNKNOWN SPEED, THE CONTACT ABRUPTLY APPLIED THE BRAKES TO AVOID A CRASH. THE CONTACT LOST CONTROL OF THE VEHICLE AND CRASHED INTO A CEMENT BARRIER. THE VEHICLE THEN ROLLED OVER AND LANDED IN AN EMBANKMENT. THE DRIVER'S SIDE AIR BAG FAILED TO DEPLOY. THE CONTACT SUFFERED INJURIES TO THE NECK AND A BROKEN LEG. THE CONTACT ALSO STATED THAT THE IGNITION SWITCH WAS REPLACED TWICE PRIOR TO THE CRASH. THE VIN WAS NOT AVAILABLE. THE VEHICLE WAS DESTROYED. THE CAUSE OF THE FAILURE WAS UNKNOWN. THE FAILURE AND CURRENT MILEAGE WAS 70,000. |
| 10606954 | CHEVROLET | TRAILBLAZER | 2003 | 2006-08-08 | AIRBAGS DID NOT DEPLOY DURING ACCIDENT - VEHICLE WENT THROUGH A GUARD RAIL, SUSTAINED FRONT END DAMAGE. *TR |

| 10654364 | CHEVROLET | TRAILBLAZER | 2003 | 2002-10-26 | 2003 CHEVROLET TRAILBLAZER. CONSUMER STATED HER HUSBAND WAS INVOLVED IN AN ACCIDENT, AND THE AIR BAGS DID NOT DEPLOY. CONSEQUENTLY, HE DIED FROM HIS INJURIES. *SS UPDATED 02/09/15. *JB |
| 10660781 | CHEVROLET | TRAILBLAZER | 2003 | 2014-11-23 | TL* THE CONTACT OWNED A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 70 MPH, A DEER JUMPED IN FRONT OF THE VEHICLE CAUSING THE CONTACT TO CRASH. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED A NECK AND BACK INJURY THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 170,000. |
| 10681428 | CHEVROLET | TRAILBLAZER | 2003 | 2015-01-24 | TL* THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 35 MPH, THE VEHICLE SLID ON ICE AND CRASHED INTO A CEMENT WALL. THE AIR BAGS DID NOT DEPLOY AND THE SEAT BELT DID NOT RESTRAIN THE CONTACT. THE CONTACT SUSTAINED CHEST, NECK, AND KNEE INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DRIVEN TO THE CONTACT'S RESIDENCE. THE VEHICLE WAS THEN TAKEN TO AN INDEPENDENT MECHANIC, BUT WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 70,000. |
| 10694201 | CHEVROLET | TRAILBLAZER | 2003 | 2013-05-06 | TL* THE CONTACT OWNED A 2003 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING AT 50 MPH DURING INCLEMENT WEATHER CONDITIONS, THE CONTACT LOST CONTROL OF THE VEHICLE AND CRASHED INTO AN EMBANKMENT. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED SPINE INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 90,000. UPDATED 5/13/15*CN |
| 10721783 | CHEVROLET | TRAILBLAZER | 2003 | 2015-05-12 | TL* THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER EQUIPPED WITH BF GOODRICH RUGGED TRAIL T/A TIRES, SIZE: P245/65R17. WHILE DRIVING AT 65 MPH, THE CONTACT HEARD A VIBRATION COMING FROM THE TIRES. THE CONTACT LOST CONTROL OF THE VEHICLE AND CRASHED INTO A POLE. THE VEHICLE ROLLED OVER MULTIPLE TIMES AND THE AIR BAGS FAILED TO DEPLOY. IN ADDITION, THE CONTACT NOTICED THAT THE THREADS FROM THE REAR DRIVER SIDE TIRE HAD SEPARATED. THE CONTACT SUSTAINED HEAD, SHOULDER, ELBOW, AND HIP INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE VEHICLE AND TIRE MANUFACTURERS WERE NOT NOTIFIED OF THE FAILURE. THE VEHICLE FAILURE MILEAGE WAS 116,000 AND THE TIRE FAILURE MILEAGE WAS 40,000. THE DOT NUMBER WAS UNAVAILABLE. |
| 10787837 | CHEVROLET | TRAILBLAZER | 2003 | 2015-10-29 | TL* THE CONTACT OWNED A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 20 MPH UPHILL, A VEHICLE TRAVELING DOWNHILL CRASHED HEAD ON INTO THE CONTACT'S VEHICLE. THE FRONTAL AIR BAGS DID NOT DEPLOY. THE PASSENGER SUSTAINED WHIPLASH AND BRUISES TO THE ELBOW, CHEST, AND STOMACH THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE PASSENGER WAS ALSO INJURED AND TAKEN TO THE HOSPITAL, BUT WAS RELEASED THE SAME DAY. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE VIN WAS INVALID. THE APPROXIMATE FAILURE MILEAGE WAS 141,000. |
| 10850437 | CHEVROLET | TRAILBLAZER | 2003 | 2016-02-03 | TL* THE CONTACT OWNED A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING 50 MPH, THE VEHICLE SLID ON BLACK ICE AND CRASHED INTO A DITCH. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED A CUT TO THE HEAD AND A SEVERE BACK INJURY THAT REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS DESTROYED AND TOWED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 186,000. |
| 10863408 | CHEVROLET | TRAILBLAZER | 2003 | 2016-05-03 | TL* THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING 25 TO 35 MPH, AN ANIMAL APPEARED IN THE ROAD. THE CONTACT SWERVED AND CRASHED INTO A TELEPHONE POLE. THE AIR BAGS DEPLOYED. THE VEHICLE WAS TOWED TO THE CONTACT'S RESIDENCE. THE MANUFACTURER WAS NOT AWARE OF THE FAILURE. A POLICE REPORT WAS NOT FILED. THE CONTACT SUSTAINED HEAD, NECK, AND CHEST INJURIES THAT REQUIRED MEDICAL ATTENTION. THE FAILURE MILEAGE WAS 135,000. UPDATED 06/15/16 *BF *CN |
| 10927873 | CHEVROLET | TRAILBLAZER | 2003 | 2016-11-22 | TL* THE CONTACT OWNED A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 78 MPH, A TIRE BLEW OUT. THE CONTACT LOST CONTROL OF THE VEHICLE AND CRASHED. THE VEHICLE WAS DESTROYED AND TOWED. THE AIR BAGS FAILED TO DEPLOY. THE DRIVER SUSTAINED AN INJURED LEFT SHOULDER AND NECK, AND A HEAD ABRASION, WHICH REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 115,000. |
| 10934115 | CHEVROLET | TRAILBLAZER | 2003 | 2016-11-29 | TL* THE CONTACT OWNED A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING 40 MPH IN WET WEATHER, THE VEHICLE HYDROPLANED, DROVE OFF A CLIFF, AND CRASHED INTO A TREE. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED CHEST, KNEE AND ARM INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS TOWED TO A TOWING AGENCY WHERE IT WAS DEEMED DESTROYED. THE FAILURE MILEAGE WAS 160,000. UPDATED 03/01/17*LJ *JS |

| | | | | | |
|---|---|---|---|---|---|
| 10969901 | CHEVROLET | TRAILBLAZER | 2003 | 2017-03-25 | I WAS INVOLVED IN A HEAD-ON COLLISION, I WAS GOING AROUND 10-15 MPH AND THE VEHICLE THAT CAUSED THE ACCIDENT WAS GOING FASTER THAN I WAS GOING. MY AIRBAGS DID NOT DEPLOY. THEY SHOULD DEPLOY BETWEEN 8-14 MPH. IS ANYONE HOLDING GENERAL MOTORS ACCOUNTABLE FOR THEIR NEGLIGENCE? WE WERE ON A TWO LANE CITY STREET. |
| 10970795 | CHEVROLET | TRAILBLAZER | 2003 | 2017-03-25 | TL* THE CONTACT OWNS A 2003 CHEVROLET TRAILBLAZER. WHILE DRIVING 35 MPH, THE VEHICLE WAS INVOLVED IN A HEAD ON COLLISION. THE CONTACT'S VEHICLE WAS STRUCK FROM THE FRONT END BY ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED INJURIES TO THE LEFT LEG AND LEFT ARM, WHICH REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS TOWED. IT WAS NOT DETERMINED WHETHER OR NOT THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 150,000. |
| 10065821 | GMC | ENVOY | 2003 | 2004-04-05 | MY WIFE WAS IN AN ACCIDENT WITH OUR NEW 2003 GMC ENVOY SLT, PURCHASED IN NOVEMBER OF 2003. TO AVOID REAR ENDING THE CAR IN FRONT OF HER, SHE SWERVED THE ENVOY OFF OF THE ROAD, DOWN A HILL AND AND HIT A TREE IN THE RIGHT FRONT OR PASSENGER SIDE OF THE VEHICLE. SHE HIT THE TREE WITH SUCH FORCE THAT THE DAMAGE TO THE FRONT OF THE VEHICLE RESULTED IN A TOTAL LOSS. MY CONCERN IS THE AIR BAGS NEVER NEVER DEPLOYED IN THIS ACCIDENT. I WOULD LIKE TO KNOW WHY? AND I WOULD LIKE TO KNOW MORE INFORMATION AS TO THE OPERATION OF THE AIR BAG SYSTEM IN A GMC ENVOY.*AK |
| 10076184 | GMC | ENVOY | 2003 | 2004-05-20 | CONSUMER'S VEHICLE REAR ENDED ANOTHER VEHICLE AT 25 MPH. UPON IMPACT, AIR BAGS DID NOT DEPLOY. DEALERSHIP WAS NOTIFIED, BUT DID NOT RESOLVE THE PROBLEM. *AK  THE MANUFACTURER DID NOT EXCEPT RESPONSIBILITY. *SC |
| 10101930 | GMC | ENVOY | 2003 | 2004-11-01 | WHILE DRIVING, UPON IMPACT THE  AIR BAGS DID NOT DEPLOY AFTER BEING STRUCK IN A SERIOUS FRONT END COLLISION. *BF  *SC |
| 10103710 | GMC | ENVOY | 2003 | 2004-11-22 | CONSUMER'S VEHICLE WAS INVOLVED IN A HEAD ON COLLISION AT 35 MPH. UPON IMPACT,  AIR BAGS DID NOT DEPLOY. CONSUMER WILL NOTIFY MANUFACTURER.*AK.  POLICE REPORT INCLUDED |
| 10103904 | GMC | ENVOY | 2003 | 2004-01-18 | VEHICLE  WAS INVOLVED IN A FRONT COLLISION ACCIDENT AT 15 MPH  DUE TO WEATHER. UPON IMPACT, AIR BAGS DID NOT DEPLOY. DEALER WAS INFORMED BY CONSUMER.  *AK  THE CONSUMER STATED THAT THE VEHICLE COULD ONLY BE TURNED OFF BY CUTTING THE BATTERY CABLES.  *TC |
| 10259161 | GMC | ENVOY | 2003 | 2009-02-17 | ACCIDENT ON 2/17/2009 FRONT CRASH TO OTHER VEHICLE AND AIR BAG DID NOT DEPLOY. HOOD DAMAGE, WINDSHIELD DAMAGE, ALL FRONT DAMAGE, DOORS COULD NOT OPEN RADIATOR DAMAGE, ENGINE DAMAGE. *TR |
| 10281810 | GMC | ENVOY | 2003 | 2009-08-25 | MY HUSBAND FELL ASLEEP AT THE WHEEL ON HIS WAY TO WORK AND HIT SEVERAL TREES. THE CAR IS TOTALED BUT THE AIRBAGS DIDN'T GO OFF. I DO UNDERSTAND THAT THE ACCIDENT WAS 100% MY HUSBANDS FAULT BUT I DON'T UNDERSTAND WHY THE AIR BAGS DIDN'T GO OFF.  *TR |
| 10554787 | GMC | ENVOY | 2003 | 2013-11-25 | TL* THE CONTACT OWNS A 2003 GMC ENVOY. THE CONTACT STATED THAT WHILE DRIVING AT AN UNKNOWN SPEED, HE SLIGHTLY CRASHED INTO A CURB AND THE VEHICLE TURNED OVER IN A DITCH. THE AIR BAGS DID NOT DEPLOY AND THE CONTACT SUSTAINED NECK AND LOWER BACK INJURIES. A POLICE REPORT WAS FILED OF THE INCIDENT. THE VEHICLE WAS DEEMED DESTROYED AND TOWED TO A SALVAGE YARD. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS UNAVAILABLE. |
| 10560852 | GMC | ENVOY | 2003 | 2014-01-16 | TL* THE CONTACT OWNS A 2003 GMC ENVOY. THE CONTACT STATED THAT WHILE DRIVING AT VARIOUS SPEEDS, THE CONTACT WAS INVOLVED IN A CRASH. THE VEHICLE TRAVELED DOWN AN EMBANKMENT AND CRASHED INTO A TREE. THE AIR BAGS FAILED TO DEPLOY AND THE CONTACT SUSTAINED INJURIES TO THE ARMS. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE VIN WAS NOT AVAILABLE. THE APPROXIMATE FAILURE AND CURRENT MILEAGE WAS 100,000. *TR |
| 10592465 | GMC | ENVOY | 2003 | 2014-04-14 | MY DAUGHTER WAS DRIVING THE ENVOY AT ABOUT 45 MPH WHEN A DRUNK DRIVER PULLED OUT IN FRONT OF TRAFFIC, CAUSING EVERYONE TO SLAM ON THEIR BRAKES, AND MY DAUGHTER WAS NOT ABLE TO STOP IN TIME BEFORE REAR-ENDING ANOTHER VEHICLE. THE CAR IS TOTALED BUT THE AIRBAGS NEVER DEPLOYED.  *JS |
| 10615166 | GMC | ENVOY | 2003 | 2012-06-04 | I WAS DRIVING  ABOUT 40 MPH  WHEN  I  WENT  THREW  A  YELLOW  LIGHT  WHEN A  OLDER LADY TURN IN FRONT OF ME, I HIT HER ON THE PASSENGER  SIDE  BETWEEN  THE FRONT N BACK DR,  , PUSHING  N  ROLLING  N  TOTALING  HER  SMALL SUV.  SHE WAS NOT  SERIOUS HURT.  MY AIRBAGS  DID  NOT  DEPLOY. MY ENVOY WAS  STILL  DRIVEABLE . I  TOOK  MY ENVOY TO MY LOCAL GMC DEALER TO HAVE  THEM FIND PROB WHY THE AIRBAGS DIDN'T GO OFF, THEY  OR  I  CALLED A REP FOR GMC, TO  COME  TO SIOUX FALLS TO INVESTIGATE  AND  HE  TOLD ME  THAT THE REASON  THEY DIDN'T  DEPLOY WAS BECAUSE  I WASN'T GOING  FAST  ENOUGH  FOR IMPACT FOR DEPLOY.  I THINK THAT IS BUNCH OF  BULL. CAN SOMEONE  HELP ME  ,IS THERE ANYTHING I CAN DO .I HEAR THAT A PERSON  CAN  RECEIVE CASH  FROM GMC IF  A PERSON S  AIRBAGS  DON'T GO OFF. *TR |

| | | | | | |
|---|---|---|---|---|---|
| 10682693 | GMC | ENVOY | 2003 | 2015-02-10 | TL*THE CONTACT OWNS A 2003 GMC ENVOY. THE CONTACT STATED THAT WHILE DRIVING AT 5 MPH, THE CONTACT DEPRESSED THE ACCELERATOR PEDAL INSTEAD OF THE BRAKE PEDAL WHICH CAUSED THE VEHICLE TO CRASH INTO A TREE. AS A RESULT, THE AIR BAG FAILED TO DEPLOY. THE CONTACT SUSTAINED INJURIES TO THE NECK AND LEFT SHOULDER WHICH REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS NOT REPAIRED. THE VIN WAS NOT AVAILABLE. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 189,325. |
| 10816234 | GMC | ENVOY | 2003 | 2015-12-19 | FRONT AIR BAG DID NOT DEPLOY,DRIVING IN SNOW SLID AN HIT A TREE WAS DRIVING ON A HIGHWAY. |
| 11093358 | GMC | ENVOY | 2003 | 2018-04-20 | TL* THE CONTACT OWNED A 2003 GMC ENVOY. WHILE DRIVING APPROXIMATELY 25 MPH AND ATTEMPTING TO MAKE A LEFT TURN, THE CONTACT CRASHED INTO THE FRONT END OF ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE CONTACT SUSTAINED INJURIES THAT DID NOT REQUIRE MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DECLARED TOTALED BY THE INSURANCE COMPANY AND TOWED FROM THE SCENE. THE DEALER AND MANUFACTURER WERE NOT MADE AWARE OF THE FAILURE. THE VEHICLE WAS NOT DIAGNOSED. THE FAILURE MILEAGE WAS APPROXIMATELY 300,000. |
| 10037631 | GMC | YUKON | 2003 | 2003-08-17 | WHILE DRIVING ON A RESIDENTIAL STREET CONSUMER FELL ASLEEP BEHIND THE WHEEL AND HIT ANOTHER VEHICLE ON THE FRONT DRIVER'S SIDE.  SLIGHT INJURIES WERE SUSTAINED BY THE PASSENGERS OF THE OTHER VEHICLE.  CONSUMER SUFFERED RIB CONTUSIONS EVEN THOUGH SEAT BELTS WERE WORN.  NONE OF THE AIR BAGS DEPLOYED.    CONSUMER WAS GIVEN A CITATION BY THE POLICE THAT ARRIVED ON THE SCENE.*AK |
| 10152567 | GMC | YUKON | 2003 | 2006-03-10 | DT*:  THE CONTACT STATED THE VEHICLE WAS INVOLVED IN A T-BONE COLLISION AT 10MPH AND THE AIRBAGS DID NOT DEPLOY.  THERE WAS NO PRE-BRAKING PRIOR TO IMPACT.  ALTHOUGH THE OCCUPANTS WERE WEARING SEATBELTS, MINOR INJURIES WERE SUSTAINED.  THE VEHICLE WAS TOTALED BY THE INSURANCE AGENCY.  THE POLICE WERE ON THE SCENE AND A REPORT WAS TAKEN.  THE VEHICLE WAS NOT SEEN BY A DEALER FOR INSPECTION. |
| 10160618 | ISUZU | ASCENDER | 2003 | 2006-03-21 | DT: THE CONTACT STATED WHILE DRIVING ON THE INTERSTATE DURING RUSH HOUR AT 55 MPH, A VEHICLE HIT THE WALL AND TAIL SPINNED IN FRONT OF CONTACT'S VEHICLE. THE CONTACT HIT THE VEHICLE WITH A FRONTAL IMPACT CAUSING SEVERE DAMAGE. UPON IMPACT, THE NONE OF THE CONTACT'S AIR BAGS DEPLOYED. THE CONTACT WAS WEARING A SEATBELT HOWEVER INIJURIES WERE SUSTAIN TO THE SHOULDERS, BACK AND NECK. WHEN THE VEHICLE WAS TAKEN TO THE DEALERSHIP, THEY DETERMINED THE VEHICLE WAS OPERATING PROPERLY HOWEVER THE AIRBAGS DID NOT DEPLOY.  THE MANUFACTURER HAS BEEN ALERTED. A POLICE REPORT WAS FILED AT THE SCENE. |
| 10266207 | ISUZU | AXIOM | 2003 | 2009-04-11 | TL*THE CONTACT OWNS A 2003 ISUZU AXIOM.  WHILE DRIVING LESS THAN 20 MPH, THE CONTACT REAR-ENDED THE PRECEDING VEHICLE.  THE FRONT END OF HER VEHICLE WAS DAMAGED.  THE AIR BAGS FAILED TO DEPLOY.  THE DRIVER SUSTAINED MINOR NECK, LEG, AND BACK INJURIES.  THE VEHICLE WAS TOWED TO A REPAIR SHOP AND COULD POSSIBLY BE LABELED AS DESTROYED.  A POLICE REPORT WAS FILED.  THE CURRENT AND FAILURE MILEAGES WERE 135,850. UPDATED 05/08/09 *BF  THE CONSUMER STATED THE DRIVER IN FRONT OF HIM/HER PULLED HIS EMERGENCY BRAKE BECAUSE THE DRIVER IN FRONT OF HIM STOPPED SUDDENLY AND THE CONSUMER NEVER SAW THE DRIVERS BRAKE LIGHTS.  UPDATED 05/12/09. *JB UPDATED 06/09/09 *JB |
| 11325218 | ISUZU | AXIOM | 2003 | 2020-05-15 | DRIVING IN A LARGE PARKING LOT, HIT A LARGE CEMENT POLE DOING 20 MILES PER HOUR.AIR BAGS DID NOT DEPLOY. HAD NOT PUT MY SEAT BELT ON YET & HIT & SHATTERED THE WINDSHIELD KNOCKING OUT ALL OF MY FRONT UPPER TEETH. FRACTURED MAXILLA .WHY DID AIR BAGS NOT DEPLOY? *TR |
| 8003267 | CADILLAC | ESCALADE | 2002 | 2001-07-19 | WHILE DRIVING 40 MPH VEHICLE VEERED AND HIT A TELEPHONE POLE, AND AIR BAGS DIDNOT DEPLOY.  DRIVER AND PASSENGER WERE INJURED.  DEALER CONTACTED.  HAD FRONTAL IMPACT. *AK |
| 10064975 | CHEVROLET | ASTRO | 2002 | 2004-02-15 | WHILE DRIVING 40 MPH VEHICLE WAS INVOLVED IN A FRONTAL COLLISION. UPON IMPACT,  DUAL AIRBAGS DID NOT DEPLOY. NO INJURES  WERE REPORTED. *AK |
| 10178492 | CHEVROLET | ASTRO | 2002 | 2007-01-03 | HIGH SPEED CAR ACCIDENT ON 1/3/07 DRIVER SEAT BELT DID NOT WORK CORRECTLY, BELT DID NOT LOCK UPON HARD BRAKING OR UPON CAR CRASH I HIT MY CHEST ON STEERING WHEEL AND MY KNEES ON DASHBOARD, MY AIRBAG DID NOT DEPLOY EITHER.  *JB |
| 10026532 | CHEVROLET | BLAZER | 2002 | 2003-06-20 | CONSUMER STATES THAT WHILE DRIVING  AT 35MPH. VEHICLE WAS IN A COLLISION. CONSUMER STATES THAT BOTH FRONT AIRBAGS DID NOT DEPLOY.DEALER NOTIFIED.*AK |
| 10031954 | CHEVROLET | BLAZER | 2002 | 2003-06-20 | VEHICLE RAN INTO THE BACK OF A SEMI-TRACTOR TRAILER AND AIR BAGS DID NOT DEPLOY BECAUSE IT DIDN'T.CONSUMER SUSTAINED INJURIES, PAIN AND SUFFERING. DEALER NOTIFIED. *MR  *CB |
| 10048587 | CHEVROLET | BLAZER | 2002 | 2003-10-29 | THE VEHICLE WAS INVOLVED IN A FRONTAL COLLISION AND THE FRONT AIR BAGS DID NOT DEPLOY. THE DRIVER SUFFERED NECK AND BACK INJURIES.  THE FRONT PASSENGER SUFFERED CHEST INJURIES.  PLEASE PROVIDE FURTHER DETAILS.  *JB |

| | | | | | |
|---|---|---|---|---|---|
| 10347200 | CHEVROLET | BLAZER | 2002 | 2010-07-30 | TL* THE CONTACT OWNS A 2002 CHEVROLET BLAZER. THE CONTACT WAS DRIVING APPROXIMATELY 35 MPH, AND CRASHED INTO AN UNOCCUPIED PARKED VEHICLE. THE AIR BAGS WOULD NOT DEPLOY WITH THE LEVEL OF IMPACT IN THE CRASH. WHILE THE FRONT DRIVER SIDE SHOULDER SEAT BELT WAS BEING WORN, IT FAILED TO FUNCTION AND CAUSED THE CONTACT TO MOVE IN A FORWARD POSITION AS A RESULT HER FACE STRUCK THE STEERING WHEEL. THE CONTACT SUSTAINED A BROKEN NOSE, BRUISES ON BOTH ARMS AND SHOULDER AREA. THE AMBULANCE, FIRE AND POLICE DEPARTMENT WERE CALLED TO THE SCENE. A POLICE REPORT WAS FILED OF THE INCIDENT. THE VEHICLE WAS TOWED TO A COLISION FACILITY LOT. THE VEHICLE WAS COMPLETELY DESTROYED. THE FAILURE MILEAGE WAS APPROXIMATELY 130,000.    UPDATED 10/13/10*BF UPDATED 10/14/10*JB |
| 10402643 | CHEVROLET | BLAZER | 2002 | 2011-05-23 | MY 2002 CHEVY BLAZER X-TREME AIR BAGS DIDN'T DEPLOY ON A FRONT END COLLISION AT THE SPEED OF 45 MPH, MY CAR HAS TOTAL DAMAGE.  *TR |
| 567453 | CHEVROLET | SILVERADO | 2002 | 2002-08-18 | CONSUMER WAS INVOLVED IN AN ACCIDENT WHERE SHE WAS HIT HEAD ON THE RIGHT FRONT SIDE.  THE AIRBAGS FAILED TO DEPLOY.  CONSUMER WAS TOLD THE AIRBAGS DIDNT HAVE TO DEPLOY BECAUSE THE VEHICLE WAS STATIONARY DURING BOTH HITS, CONSUMER WAS INJURED IN THE ACCIDENT.  *JG |
| 767453 | CHEVROLET | SILVERADO | 2002 | 2002-09-01 | IN DIRECT FRONTAL IMPACT AT 45 MPH, AIRBAGS FAILED TO DEPLOY.*AK |
| 767929 | CHEVROLET | SILVERADO | 2002 | 2002-05-08 | THIS TRUCK WAS INVOLVED IN A HEAD ON CRASH.  I WAS RUNNING ABOUT 55 MPH AND THE OTHER VEHICLE WAS RUNNING APPROXIMATELY 35 MPH.  THE TRUCK WAS A TOTAL LOSS WITH MOST OF THE DAMAGE DONE TO THE FRONT END. THE DRIVERS SIDE AIR BAG OR THE PASSENGER AIR BAG DID NOT DEPLOY.   MR |
| 767963 | CHEVROLET | SILVERADO | 2002 | 2002-09-26 | THIS VEHICLE WAS INVOLVED IN A HEAD-ON COLLISION WHILE TRAVELING AT 50 MPH.   BOTH THE DRIVER SIDE AND PASSENGER SIDE AIR BAGS DID NOT DEPLOY.    MR |
| 8000974 | CHEVROLET | SILVERADO | 2002 | 2001-12-10 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION AT 25MPH. UPON IMPACT, AIRBAGS DID NOT DEPLOY. *AK *YH |
| 8003037 | CHEVROLET | SILVERADO | 2002 | | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION AT 40-45MPH. UPON IMPACT  AIR BAGS DID NOT DEPLOY.  DEALER HAS BEEN CONTACTED. PLEASE PROVIDE ADDITIONAL INFORMATION.*AK |
| 8010265 | CHEVROLET | SILVERADO | 2002 | 2002-05-21 | WHILE DRIVING AT 35 MPH, THE VEHICLE WAS HIT BY AN AMBALANCE, THE AIR BAGS DIDNT DEPLOY RESULTING IN  MAJOR INJURIES TO DRIVER. *AK  *MU |
| 8011057 | CHEVROLET | SILVERADO | 2002 | 2002-05-19 | VEHICLE WAS INVOLVED IN A FRONTAL IMPACT GOING 35MPH.  AIR BAG DIDN'T DEPLOY, AND LIGHT NEVER ILLUMINATED. CHEVROLET WAS CONTACTED, AND WILL BE SENDING AN INSPECTOR OUT FOR  VEHICLE. PLEASE PROVIDE MORE INFORMATION.*AK |
| 8011088 | CHEVROLET | SILVERADO | 2002 | 2002-05-12 | VEHICLE WAS INVOLVED IN A 30-40 MPH FRONTAL COLLISION IN WHICH  DRIVER'S AND PASSENGER'S AIR BAGS DID NOT DEPLOY, CAUSE UNKNOWN.  PLEASE GIVE ANY FURTHER DETAILS.*AK |
| 8016806 | CHEVROLET | SILVERADO | 2002 | 2002-08-19 | CONSUMER WAS TRAVELING ABOUT 20MPH ON A SIDE STREET AND THERE WAS A CONCRETE PIPE LAYING ON THE ROAD, AND WITHOUT PRIOR WARNING SHE HIT THE PIPE. AIRBAGS DIDN'T GO OFF. AT DEALERSHIP IS AWARE OF PROBLEM.THE PIPE WAS A BROKE OFF LIGHT POLE. THE FRAME ON THE VEHICLE IS BENT.  *JG |
| 8017234 | CHEVROLET | SILVERADO | 2002 | 2002-08-19 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION WITH A TREE TRAVELING APPROXIMATLY 30-40MPH, AND AIR BAGS DID NOT DEPLOY. *AK |
| 8019177 | CHEVROLET | SILVERADO | 2002 | 2002-08-23 | WHILE DRIVING AT 72 MPH CONSUMER HIT ANOTHER VEHICLE HEAD ON AND NONE OF THE AIR BAGS DEPLOYED. CONTACTED DEALER,  AND  DEALER STATED THAT THE VEHICLE ACTED LIKE IT SHOULD HAVE.AK |
| 8021266 | CHEVROLET | SILVERADO | 2002 | 2002-07-19 | CONSUMER STATES WHILE DRIVING 45MPH HAD A HEAD ON COLLISION AIR BAG DID NOT DEPLOY. TS |
| 8024161 | CHEVROLET | SILVERADO | 2002 | 2002-11-19 | CONSUMER STATES THAT WHEN HIT AT 55 MPH IN THE FRONT CENTER OF THE VEHICLE THE AIR BAG DID NOT DEPLOY CAUSING MINOR INJURIES TO THE CONSUMER. DEALER NOTIFIED.  MR |
| 10004706 | CHEVROLET | SILVERADO | 2002 | 2002-12-16 | CONSUMER COMPLAINED ABOUT HAVING PROBLEMS WITH THE AIR BAG DEPLOYMENT. ALSO, WHILE DRIVING VEHICLE WAS INVOLVED IN A COLLISION, AND AIR BAGS DID NOT DEPLOY . PASSENGER WAS DRIVING AT 50 MPH WHEN PASSING OVER A BRIDGE ON A RAINY DAY, AND WATER FROM THE RIVER WAS SPLASHED ON THE FRONT WINDSHIELD WHICH CAUSED THE DRIVER TO LOOSE CONTROL OF THE VEHICLE. MANUFACTURE WAS NOT CONTACTED AT THE TIME OF THIS PHONE CALL. *AK |
| 10005976 | CHEVROLET | SILVERADO | 2002 | 2003-01-29 | WHILE DRIVING VEHICLE WAS IN A FRONTAL COLLISION, BUT NONE OF THE AIR BAGS DEPLOYED UPON IMPACT. THE DRIVER WAS NOT INJURED BECAUSE THEY WERE WEARING THERE SEAT BELTS.*AK |
| 10009099 | CHEVROLET | SILVERADO | 2002 | 2003-02-21 | THE VEHICLE HIT A TREE, AND NONE OF THE AIR BAGS DEPLOYED. *JB *TS |
| 10015548 | CHEVROLET | SILVERADO | 2002 | | THE VEHICLE WAS INVOLVED IN A  FRONT END COLLISION YET NEITHER FRONTAL AIR BAGS DEPLOYED.   *NLM |
| 10019853 | CHEVROLET | SILVERADO | 2002 | | THE VEHICLE WAS INVOLVED IN A FRONTAL COLLISION AND NONE OF THE AIR BAGS DEPLOYED. *JB |
| 10042035 | CHEVROLET | SILVERADO | 2002 | | WHILE DRIVING AT 43 MPH VEHICLE WAS INVOLVED IN A LEFT FRONT COLLISION. UPON IMPACT, FRONT AIR BAGS DID NOT DEPLOY, AND  PASSENGER SUSTAINED INJURIES.  *AK |

| | | | | | |
|---|---|---|---|---|---|
| 10073268 | CHEVROLET | SILVERADO | 2002 | 2002-08-11 | I WAS AT A COMPLETE STOP AT A RED LIGHT WHEN A YOUNG LADY RAN THE LIGHT FROM THE OPPOSITE DIRECTION. SHE HIT ANOTHER TRUCK THEN CROSSED OVER INTO MY LANE HITTING ME ON MY RIGHT FRONT BUMPER. LESS THAN 3 SECONDS LATER THE OTHER TRUCK HIT ME HEAD ON AT 35-40 MPH HEAD ON. THE IMPACT WAS HARD ENOUGH TO THROW ME BACKWARDS INTO SOME MOTORCYCLES BEHIND ME. MY FRONTAL AIRBAGS DID NOT DEPLOY DURING EITHER HIT. *MR |
| 10080276 | CHEVROLET | SILVERADO | 2002 | 2004-06-27 | WHILE DRIVING 45 MPH THE DRIVER ATTEMPTED TO AVOID A DEER IN THE STREET. AS A RESULT THE DRIVER LOST CONTROL OF THE VEHICLE AND HIT A TREE HEAD ON. THE CONSUMER STATED THAT,"NEITHER FRONTAL AIR BAG DID DEPLOYED ON IMPACT". THE CONSUMER WILL CONTACT THE DEALER. *NM |
| 10115806 | CHEVROLET | SILVERADO | 2002 | 2005-03-24 | A PIECE OF FURNITURE WAS LOCATED IN THE MIDDLE OF THE HIGHWAY WHILE DRIVING, CAUSING THE DRIVER TO HIT THE FURNITURE. DRIVER LOST CONTROL OF A VEHICLE, AND IT CRASHED INTO A CONCRETE WALL. DRIVER'S SIDE SEAT BELT FAILED, AND THE AIRBAGS DID NOT DEPLOY. DRIVER REFUSED MEDICAL ATTENTION AT THAT TIME AND WENT TO THE HOSPITAL ON HIS OWN. VEHICLE WAS TOWED BY THE INSURANCE COMPANY. *AK |
| 10127515 | CHEVROLET | SILVERADO | 2002 | 2005-07-05 | DT: CONTACT STATES WHILE DRIVING APPROXIMATELY 45 MPH THERE WAS A FRONT END COLLISION. UPON IMPACT, NEITHER AIR BAG DEPLOYED. *AK |
| 10246829 | CHEVROLET | SILVERADO | 2002 | 2008-10-13 | TL*THE CONTACT OWNS A 2002 CHEVROLET SILVERADO. WHILE DRIVING 30 MPH, THE CONTACT STRUCK A DEER AND SWERVED INTO A DITCH. HIS CHEST SLAMMED INTO THE STEERING WHEEL AND WAS INJURED. THE AIR BAGS FAILED TO DEPLOY AND THE SEAT BELT DID NOT RETRACT. THE DRIVER'S SIDE BUMPER WAS CRUSHED INTO THE FRONT GRILL ALL THE WAY ACROSS TO THE PASSENGER SIDE OF THE VEHICLE. THE CONTACT CALLED THE INSURANCE AGENT, BUT NO POLICE REPORT WAS FILED. HE WAS THE ONLY OCCUPANT IN THE VEHICLE AND THE SEAT BELT WAS WORN PROPERLY AT THE TIME OF THE CRASH. THERE WAS NO MAINTENANCE PERFORMED ON THE AIR BAGS OR SEAT BELT PRIOR TO THE FAILURES. THE CONTACT FILED A COMPLAINT WITH GM CONCERNING HIS AIR BAGS AND SEAT BELT (COMPLAINT NUMBER 71-670143505). GM IS NOT TAKING RESPONSIBILITY FOR THE AIR BAG FAILURE. IN ADDITION, NO ONE CAME OUT TO INSPECT THE VEHICLE. THE FAILURE MILEAGE WAS 61,752. |
| 10281236 | CHEVROLET | SILVERADO | 2002 | 2007-11-29 | TL*THE CONTACT OWNS A 2002 CHEVROLET SILVERADO. WHILE DRIVING APPROXIMATELY 45 MPH ON NORMAL ROAD CONDITIONS, A VEHICLE CRASHED INTO THE FRONT OF THE DRIVER SIDE. THE CONTACT WAS TRANSPORTED TO THE HOSPITAL AFTER SUSTAINING INJURIES TO THE HEAD, NECK AND UP. THE AMBULANCE AND POLICE ARRIVED AND A POLICE REPORT WAS FILED. THE AIR BAGS FAILED TO DEPLOY WITH THE MASSIVE LEVEL OF IMPACT. THERE WERE NO WARNING LIGHT INDICATORS ILLUMINATED ON THE INSTRUMENT PANEL AFTER THE CRASH. THE FRONT END OF THE VEHICLE SUSTAINED SEVERE DAMAGE. THE VEHICLE WAS TOWED TO A COLLISION CENTER AND THE VEHICLE WAS REPAIRED. THE CONTACT HAD CONCERNS OF THE SAFETY RISK INVOLVED. THE FAILURE MILEAGE WAS 40,000 AND THE CURRENT MILEAGE WAS 55,000. |
| 10679097 | CHEVROLET | SILVERADO | 2002 | 2015-01-16 | I T-BONED A MINI VAN THAT FAILED TO TO YIELD ON A TURN AT 35 MPH. MY AIRBAGS DID NOT DEPLOY. *TR |
| 10039711 | CHEVROLET | SUBURBAN | 2002 | 2003-08-27 | WHILE DRIVING AT 45 MPH VEHICLE WAS FORCED OFF OF THE ROAD INTO ONCOMING TRAFFIC. CONSUMER SWERVED TO AVOID A HEAD ON COLLISION WITH ANOTHER VEHICLE. THIS ACTION CAUSED THE VEHICLE TO CRASH THROUGH A FENCE, RUN INTO A DITCH, AND COLLIDE HEAD ON WITH AN OAK TREE. SEAT BELTS WERE WORN, BUT AT THE TIME OF THE IMPACT, THE LATCH CAME APART. VEHICLE WAS EQUIPPED WITH FRONT AND SIDE AIR BAGS. UPON IMPACT, THEY DID NOT DEPLOY. CONSUMER'S KNEE WAS BROKEN, AND HE SUFFERED A CONCUSSION. POLICE AND MEDICAL HELP DID ARRIVE ON THE SCENE. MANUFACTURER AND THE DEALER HAVE BEEN NOTIFIED OF THE INCIDENT. *AK |
| 10041031 | CHEVROLET | SUBURBAN | 2002 | 2003-01-07 | I WAS HIT ON THE HEAD INSIDE MY 2002 SUBURBAN, WEARING MY SEAT BELT AT 48 MPH BY AN ONCOMING MAZDA MIATA. MY STEERING COLUMN COLLAPSED, I WENT INTO ONCOMING 3 LANES OF TRAFFIC, WENT UP A CURB, WENT THROUGH A BRICK RETAINING WALL, AND HIT A TELEPHONE POLE. MY AIRBAG DID NOT DEPLOY ON ANY OF THE 3 IMPACTS. WHY? ALSO, MY DRIVER?S SEAT CAME OFF THE TRACK. *LA |
| 10108747 | CHEVROLET | SUBURBAN | 2002 | 2004-11-11 | THE CONSUMER WAS INVOLVED IN AN ACCIDENT. THE CONSUMER WAS DRIVING ABOUT 60 MPH AND REAR ENDED ANOTHER VEHICLE AND THE AIR BAGS FAILED TO DEPLOY. ALSO THE SEAT BELTS DID NOT HOLD THE DRIVER AND PASSENGER CAUSING THEM TO GO FORWARD INTO THE WINDSHIELD. PROVIDE FURTHER DETAILS. *JB |
| 10121922 | CHEVROLET | SUBURBAN | 2002 | 2005-05-14 | DT: HUSBAND HAD AN ACCIDENT, CAR PULLED OUT IN FRONT OF HIM AND HIT THEM ON DRIVER AND BACK SEAT PASSENGER SIDE HEAD. UPON IMPACT, AIR BAG DID NOT DEPLOY.*AK |
| 568470 | CHEVROLET | TAHOE | 2002 | 2002-06-05 | ON TWO OCCASIONS THE FRONT AIR BAGS FAILED TO DEPLOY UPON FRONT IMPACT. THE VEHICLE WAS INSPECTED BY A CRASH INVESTIGATOR WHO TOLD THE CONSUMER THAT THE VEHICLE OPERATED AS DESIGNED. *NLM |
| 8022842 | CHEVROLET | TAHOE | 2002 | 2002-10-10 | THE TRUCK HIT A WALL HEAD ON BETWEEN 33-35 MPH. THE AIR BAGS FAILED TO DEPLOY UPON IMPACT ALLOWING THE DRIVER TO HIT THE WINDSHIELD WITH HIS HEAD SHATTERING IT. GENERAL MOTORS SENT SOMEONE TO DIAGNOSE THE TRUCKS' CONDITION WHICH THE CONSUMER WAS TOLD "EXCEPTIBLE STANDARDS". PLEASE DESCRIBE DETAILS. TS |

| 10050631 | CHEVROLET | TAHOE | 2002 | 2003-12-04 | HAD A FRONT END COLLISION INTO THE SIDE OF ANOTHER VEHICLE WHOM RAN A RED LIGHT. WE ESTIMATED OUR IMPACT SPEED AT 30 MPH UPON COLLIDING TOGETHER. NEITHER FRONT AIRBAGS DEPLOYED. SUFFERED NECK AND BACK BRUISING AND MUSCLE STRAIN.*AK |
|---|---|---|---|---|---|
| 10057036 | CHEVROLET | TAHOE | 2002 | 2004-01-23 | ON JANURAY 23, 2004, I WAS REAR-ENDED ON THE FREEWAY. I WAS GOING ABOUT 65-70 MPH. A PERSON HIT ME FROM THE REAR, HE WAS TRAVELLING AROUND 100-110 MPH. I LOST CONTROL OF MY TAHOE, I WENT SIDEWAYS, THEN I SHOT FORWARD AND HIT THE CENTER DIVIDER( ON THE CENTER RIGHT SIDE OF MY CAR) AT ABOUT 65 MPH OR FASTER. I WAS SHOT BACKWARDS INTO A GUARD RAIL AND CAME OFF OF THAT AND THEN THE TAHOE ROLLED ON TO ITS SIDE, SKID FOR ABOUT 30 FEET AND THEN IT FINALLY STOPPED. MY AIR BAGS(FRONT NOR SIDE) NEVER DEPLOYED. I FEEL THAT IF THEY HAD MY WIFE NOR I WOULD HAVE BEEN INJURED. I KNOW THAT THEY ARE DESIGNED TO DEPLOY WHEN YOU HIT SOMETIME LIKE A BRICK WALL AT ABOUT 10-15 MPH. WHAT DO YOU CALL HITTING A CEMENT DIVIDER AT OVER 65 MPH.*AK |
| 10080735 | CHEVROLET | TAHOE | 2002 | 2004-01-23 | I WAS TRAVELING DOWN TO FREEWAY, DOING ABOUT 65-70 MPH. I WAS REAR ENDED BY A GUY GOING BETWEEN 100-110 MPH, I WAS THROWN OUT OF CONTROL. I HIT THE CENTER DIVIDER ALMOST HEAD ON AT ABOUT 70 MPH. I THEN BOUNCED OFF THE DIVIDER, CAME CLEAR AGCROSS ALL LANES AND HIT THE REAR GUARD RAIL, I BOUNDED OFF THAT AND ROLLED ON ITS SIDE. IN ALL MY AIR BAGS NEVER DEPLOYED.*AK |
| 10143613 | CHEVROLET | TAHOE | 2002 | 2005-11-15 | I WAS DRIVING MY 2002 TAHOE ABOUT 30-35 MPH WHEN I BLACKED OUT AND LOST CONTROL OF THE VEHICLE. I HIT A COLUMN OUTSIDE A HOTEL WHICH WAS ABOUT 2X2 FEET WITH STEEL WITHIN THE CENTER OF THE COLUMN. MY TRUCK WAS A TOTAL LOST AND THE FRONT AIRBAGS DID NOT DEPLOY AS THEY WERE SUPPOSED TO. *JB |
| 10152394 | CHEVROLET | TAHOE | 2002 | 2006-03-09 | DT*: THE CONTACT STATED WHILE DRIVING 55 MPH, THE FRONT DRIVER SIDE TIRE HAD A BLOW OUT, CAUSING THE VEHICLE TO HIT BOTH GUARD RAILS WITH THE FRONT END. THE AIRBAGS DID NOT DEPLOY. ALTHOUGH THE SEATBELT WAS WORN, THE CONTACT SUSTAINED A CONCUSSION. THERE WAS A POLICE REPORT TAKEN AT THE SCENE. THE VEHICLE WAS TOWED TO AN AUTO BODY SHOP, WHERE IT WAS DEEMED A TOTAL LOSS BY THE INSURANCE COMPANY. |
| 10155306 | CHEVROLET | TAHOE | 2002 | 2006-03-24 | ON MY WIFE'S WAY HOME FORM WORK SHE WAS INVOLVED IN AN ACCIDENT, WERE SHE REAR ENDED ANOTHER VEHICLE, THE CRASH WAS AT ABOUT 35 TO 45 MILES PER HOUR AND IT AFFECTED THE FRONT DRIVER SIDE OF OUR 2002 CHEVY TAHOE. THE IMPACT WAS SO SIGNIFICANT THAT THE FRAME OF THE TAHOE WAS BENT. THE CRASH PRETTY MUCH MIMICKED THE SAME OFF CENTER FRONT CRASH THAT THE INSURANCE INSTITUTE FOR HIGHWAY SAFETY CONDUCTS ON THEIR TESTING. THE PROBLEM WAS THAT THE FRONT AIRBAGS NEVER DEPLOYED ALTHOUGH THE ACCIDENT HAPPENED UNEXPECTEDLY, MY WIFE WAS WEARING HER SEAT BELT AND DIDN'T SUSTAINED SERIOUS INJURIES. OUR CONCERN IS THAT THE BAGS NEVER DEPLOYED AND THAT THEY MIGHT DEPLOY AT ANYTIME. THE AUTO BODY SHOP RECOMMENDED BY OUR INSURANCE COMPANY TOLD US THAT BECAUSE THE CRASH IMPACT WAS OFF CENTERED THE AIRBAG SENSOR WERE NEVER TRIGGERED. AFTER SEEING SO OF THE INSURANCE INSTITUTE FOR HIGHWAY SAFETY TEST THE BAGS SHOULD HAVE DEPLOYED. ALSO IT WAS DETERMINED THAT THE FRAME HAS TO BE REPLACED AND ALL THE BODY PARTS FIXED AND REPLACED. IF THE FRAME HAS TO BE REPLACED HOW SAFE WOULD THAT VEHICLE BE? I AM OPEN FOR ANY FARTHER CONVERSATIONS ABOUT THIS TOPIC. THANK YOU. *JB |
| 10353935 | CHEVROLET | TAHOE | 2002 | 2010-07-28 | I WAS DRIVING MY 2002 CHEVY TAHOE, A GENTLEMAN RAN A STOP SIGN, I HIT HIM AT 39 MPH, HEAD ON IN MY TAHOE, T-BONED HIS TRUCK. NEITHER AIRBAG DEPLOYED, NOR DID MY SEATBELT KEEP ME FROM HITTING THE STEERING WHEEL AND MY HEAD KNOCKING ME OUT. GM SENT SOMEONE TO LOOK AT MY CAR WHICH HAS BEEN DEEMED A TOTAL LOSS. I HAVE YET TO HEAR BACK FROM GM ON THIS INCIDENT. I PURCHASED THIS CAR BRAND NEW THINKING IT WAS SAFE. THE ONE TIME I NEEDED MY SEATBELT TO WORK, IT FAILED. THE COMPUTER IN MY CAR SHOWED BOTH SEATBELTS WERE ON AND IN WORKING ORDER, IT SHOWED THE CRASH WAS AT 39 MPH YET THE AIRBAGS DID NOT DEPLOY AND THEY WERE IN PROPER WORKING ORDER. WHATEVER ANSWER GM GIVES ME WILL NOT BE GOOD ENOUGH UNLESS THEY ADMIT TO FAULTINESS IN THEIR EQUIPMENT. *TR |
| 10458444 | CHEVROLET | TAHOE | 2002 | 2012-04-08 | REAR ENDED A VEHICLE GOING APPROX. 70 MPH AND HAD EXTENSIVE FRONT END DAMAGE HOWEVER THE AIR BAGS FAILED TO DEPLOY. DRIVER HIT HEAD ON STEERING WHEEL AND PASSENGER SUFFERED SEVER HEAD INJURY. *JS |
| 10498415 | CHEVROLET | TAHOE | 2002 | 2013-02-14 | TRAFFIC STOPPED IN FRONT OF ME UNEXPECTEDLY, I SWERVED TO AVOID CAR IN FRONT OF ME AND HIT CONCRETE WALL. AIR BAGS DID NOT WORK. MY FACE HIT STEERING WHEEL, CAUSING INJURY TO NOSE AND MOUTH. *TR |
| 10815602 | CHEVROLET | TAHOE | 2002 | 2014-07-08 | TL*: THE CONTACT OWNS A 2002 CHEVROLET TAHOE. WHILE DRIVING 45 MPH, THE CONTACT'S VEHICLE WAS REAR ENDED BY ANOTHER VEHICLE, AND CRASHED INTO A GUARD RAIL. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED AND THE VEHICLE WAS DESTROYED. THE CONTACT'S HEAD STRUCK THE STEERING WHEEL AND HE WAS TRANSPORTED TO THE HOSPITAL BY AMBULANCE. THE CONTACT SUSTAINED SPINAL CORD AND NECK INJURIES. THE DOCTOR X-RAYED THE CONTACT AND DIAGNOSED HIM WITH BURNING PARESTHEGIC, HYPER-ESTHESIA, AND CENTRAL CORD SYNDROME. THE CONTACT WAS RELEASED FROM THE HOSPITAL TWO DAYS AFTER THE CRASH. THE FAILURE MILEAGE WAS 285,000. |

| | | | | | |
|---|---|---|---|---|---|
| 10641399 | CHEVROLET | TAHOE | 2002 | 2011-06-07 | TL - THE CONTACT OWNS A 2002 CHEVROLET TAHOE. THE CONTACT STATED THAT WHILE THE DRIVER WAS DRIVING AT 45 MPH AND ATTEMPTED TO AVOID A CRASH WITH ANOTHER VEHICLE. AS A RESULT, THE DRIVER CRASHED INTO A GUARDRAIL AND THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED. THE VEHICLE WAS TAKEN TO A HOSPITAL AND SUSTAINED INJURIES TO THE RIBS, THE COLLAR BONES, A BRAIN TRAUMA AND A COLLAPSED LUNG. THE DRIVER SUFFERED FROM FATAL INJURIES. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 73,000. DR |
| 10667110 | CHEVROLET | TAHOE | 2002 | 2011-06-07 | TL* THE CONTACT OWNS A 2002 CHEVROLET TAHOE. THE CONTACT STATED THAT THE DRIVER CRASHED INTO A GUARD RAIL AND THE AIR BAGS FAILED TO DEPLOY. THE DRIVER SUSTAINED MASSIVE HEAD TRAUMA, BROKEN RIBS AND BLEEDING FROM THE BRAIN, RESULTING IN A FATALITY. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE CONTACT WAS UNAWARE IF THE VEHICLE WAS DIAGNOSED OF THE FAILURE. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 72,000. |
| 10668043 | CHEVROLET | TAHOE | 2002 | 2014-11-07 | TL* THE CONTACT OWNS 2002 CHEVROLET TAHOE. THE CONTACT STATED THAT WHILE DRIVING 45 MPH, ANOTHER VEHICLE CRASHED INTO THE CONTACT'S VEHICLE CAUSING THE VEHCLE TO SPIN AND BECOME UNCONTROLLABLE. IN ADDITION, ANOTHER VEHICLE CRASHED INTO THE VEHICLE CAUSING IT TO ROLL OVER SEVERAL TIMES BEFORE CRASHING INTO A GUARD RAIL. THE AIR BAGS FAILED TO DEPLOY. THE DRIVER SUSTAINED CRITICAL INJURIES AND THE FRONT PASSENGER SUSTAINED FATAL INJURIES. BOTH THE CONTACT AND FRONT PASSENGER REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 130,000. |
| 10746088 | CHEVROLET | TAHOE | 2002 | 2011-06-07 | TL* THE CONTACT OWNED A 2002 CHEVROLET TAHOE. WHILE DRIVING AT APPROXIMATELY 45 MPH, THE CONTACT CRASHED INTO A GUARD RAIL. THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED A FRACTURED COLLAR BONE, SEVERAL BROKEN RIBS, HEAD TRAUMA, BRAIN BLEEDING, AND STROKES. THE CONTACT WAS PLACED INTO A MEDICALLY INDUCED COMA AND ON A RESPIRATORY MACHINE, BUT LATER DIED. THE VEHICLE WAS TOWED TO A SAVAGE YARD. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 73,000. |
| 11382901 | CHEVROLET | TAHOE | 2002 | 2020-11-17 | TL- THE CONTACT OWNS A 2002 CHEVROLET TAHOE. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 25 MPH WHEN THE VEHICLE RAN ACROSS BLACK ICE CAUSING THE CONTACT TO LOSE CONTROL OF THE VEHICLE. THE VEHICLE BEGAN TO SPEND UNCONTROLLABLY EVENTUALLY CRASHING INTO A CONCRETE WALL WITH THE FRONT-END OF THE VEHICLE. NO AIR BAGS DEPLOYED. THE CONTACT RECEIVED INJURIES TO THEIR KNEE, SHOULDER, NECK, BACK, AND EYE. MEDICAL ATTENTION WAS NEEDED. A POLICE REPORT WAS FILED. THE VEHICLE TOWED AND DEEMED TOTALED. THE DEALER WAS NOT CONTACTED. THE MANUFACTURER WAS NOT MADE AWARE OF THE ISSUE. THE APPROXIMATE FAILURE MILEAGE WAS 150,000. GL |
| 8017394 | CHEVROLET | TRACKER | 2002 | 2002-08-09 | WHILE DRIVING AT 45 MPH CONSUMER T-BONED ANOTHER VEHICLE HEAD ON AND NONE OF THE AIR BAGS DEPLOYED. CONTACTED DEALER, AND THE DEALER WAS AWARE OF THE PROBLEM, BUT THEY HAD NO SOLUTION. *AK |
| 10087309 | CHEVROLET | TRACKER | 2002 | 2004-07-20 | WHILE DRIVING AT 40 MPH  CONSUMER'S VEHICLE COLLIDED WITH THE LEFT SIDE OF ANOTHER VEHICLE RUNNING A STOP SIGN.  CONSUMER WAS WEARING SEAT BELTS,  BUT AIR BAGS DID NOT DEPLOY.  CONSUMER AND A PASSENGER SUSTAINED VARIOUS BONE FRACTURES AND BRUISES. THE POLICE AND AN AMBULANCE DID ARRIVED ON THE SCENE.*AK |
| 10264048 | CHEVROLET | TRACKER | 2002 | 2009-03-29 | TL*THE CONTACT OWNS A 2002 CHEVROLET TRACKER.  WHILE DRIVING AT AN UNKNOWN SPEED, THE VEHICLE LEFT THE ROAD, AND STRUCK A TREE WITH THE FRONT PASSENGER SIDE AND FENDER. THE FRAME WAS BENT IN TWO PLACES, BUT THE AIR BAGS FAILED TO DEPLOY. THERE WERE NO INJURIES. THE SEAT BELT WAS NEVER SERVICED AND WAS WORKING FINE PRIOR TO THE CRASH. A POLICE REPORT WAS FILED. THE FAILURE MILEAGE WAS 95,000. |
| 10970730 | CHEVROLET | TRACKER | 2002 | 2017-04-05 | AFTER A COLLISION WHERE MY TRACKER HIT ANOTHER VEHICLE AT AROUND 55 MPH ON A HIGHWAY, MY VEHICLE HIT DEAD ON TO THE SIDE OF ANOTHER (T-BONE) AND MY SENSOR SHOULD HAVE TRIGGERED MY AIRBAGS AND DID NOT. |
| 8002085 | CHEVROLET | TRAILBLAZER | 2002 | 2002-01-03 | WHILE BEING DRIVEN APPROXIMATELY 20 TO 25 MPH VEHICLE WENT OFF THE ROAD AND CRASHED INTO A LARGE OAK TREE.  BOTH FRONTAL AIR BAGS FAILED TO DEPLOY DURING THE CRASH.  BODY SHOP STATED THAT AIR BAGS SHOULD HAVE DEPLOYED DUE TO  DAMAGE VEHICLE RECEIVED.  DEALERSHIP HAS NOT EXAMINED VEHICLE TO DETERMINE IF THERE WAS A PROBLEM WITH THE AIR BAG SYSTEM.  PLEASE PROVIDE ANY ADDITIONAL INFORMATION / DOCUMENTATION.**AK |
| 8010014 | CHEVROLET | TRAILBLAZER | 2002 | 2002-04-08 | CONSUMER STATES THAT DURING A VEHICLE CRASH THE SIDE AIRBAG DID NOT DEPLOY.*JB |
| 8022437 | CHEVROLET | TRAILBLAZER | 2002 | 2002-11-01 | WHILE TRAVELING ABOUT 40MPH THE VEHICLE WAS INVOLVED WITH A FRONTAL COLLISION.  NEITHER AIRBAG DEPLOY. PLEASE PROVIDE ADDITIONAL INFORMATION.  DEALER IS AWARE OF THE PROBLEM.  TS |
| 10011300 | CHEVROLET | TRAILBLAZER | 2002 | 2003-03-04 | THE VEHICLE WAS INVOLVED IN A COLLISION, AND THE AIR BAGS DID NOT DEPLOY.*JB |
| 10013828 | CHEVROLET | TRAILBLAZER | 2002 | 2003-03-19 | HYDROPLANED HEAD ON INTO A TREE DOING ABOUT 40 MPH.  HIT THE TREE HARD ENOUGH TO BREAK THE ENGINE MOUNTS AND SHIFT THE ENGINE FORWARD INTO THE FAN, PLUS SOME TRANSMISSION DAMAGE. THE AIR BAGS DID NOT DEPLOY.  *NLM |

| 10014453 | CHEVROLET | TRAILBLAZER | 2002 | 2003-02-05 | ON FEB 5TH, 2003 I REAR ENDED A STOPPED VEHICLE WHILE GOING 45 MILES AN HOUR. MY CHIN HIT THE STEERING WHEEL BUT NO AIRBAG DEPLOYED. THE BODY SHOP WAS UNABLE TO DETERMINE WHY THE AIR BAG DID NOT DEPLOY. *NLM |
| 10015367 | CHEVROLET | TRAILBLAZER | 2002 | 2003-04-02 | CONSUMER WAS HIT TWICE IN A SIDE AND FRONTAL COLLISION WHILE TRAVELING APPROXIMATELY 30MPH. NEITHER THE FRONTAL OR SIDE AIR BAGS DEPLOYED.  *NLM |
| 10027280 | CHEVROLET | TRAILBLAZER | 2002 | 2003-07-12 | THE VEHICLE WAS INVOLVED  IN A COLLISION, AND THE AIR BAGS FAILED TO DEPLOY.  *AK  THE CONSUMER SUFFERED INJURIES. *JB |
| 10044550 | CHEVROLET | TRAILBLAZER | 2002 | | WHILE CONSUMER WAS DRIVING 25-28 MPH VEHICLE WAS T-BONED FROM ANOTHER VEHICLE  AT ESTIMATED SPEED OF 30 MPH. UPON IMPACT,  FRONTAL AIR BAGS FAILED TO DEPLOY.  *AK |
| 10113109 | CHEVROLET | TRAILBLAZER | 2002 | 2004-12-12 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION WHILE DRIVING BETWEEN  50-55MPH. UPON IMPACT, THE AIR BAGS FAILED TO DEPLOY. AS A RESULT,  DRIVER SUSTAINED CHEST INJURIES WHEN IT IMPACTED THE STEERING WHEEL.*AK |
| 10114818 | CHEVROLET | TRAILBLAZER | 2002 | 2005-03-24 | CRASH AT 35 MPH (FRONT END SQUARE) DRIVER AND PASSENGER AIR BAGS FAILED TO DEPLOY. |
| 10115232 | CHEVROLET | TRAILBLAZER | 2002 | 2005-02-09 | DURING A 30 MPH VEHICLE FRONTAL COLLISION FRONT AIR BAGS DID NOT DEPLOY. CONSUMER SUSTAINED MINOR INJURIES. THE VEHICLE WAS TOWED. DEALERSHIP WAS NOTIFIED, BUT DID NOT RESOLVE THE PROBLEM. *AK...PROBLEM WA SDISCUSSED WITH THE DEALER IN DETAIL BUT DID NOT KNOW HOW TO RESOLVE PROBLEM. *AK |
| 10118790 | CHEVROLET | TRAILBLAZER | 2002 | 2005-04-21 | WHILE DRIVING 55-60 MPH, VEHICLE HIT AN SUV THAT DROVE INTO LANE.  VEHICLE THEN HIT BY TRACTOR TRAILER.  VEHICLE CRASHED WITH GREAT FORCE INTO HIGHWAY DIVIDER AND LOST FRONT LEFT WHEEL, CAUSING VEHICLE TO CONTINUE TO CRASH ALONG DIVIDER.  BOTH FRONT AIRBAGS AND BOTH SIDE AIRBAGS FAILED TO DEPLOY.  PASSENGER IN VEHICLE SUSTAINED FRACTURES TO ORBITAL BONES AND MAXILLARY BONE IN SKULL. MAJOR RECONSTRUCTIVE SURGERY WAS REQUIRED.  THE VEHICLE WAS DETERMINED TO BE A TOTAL LOSS. |
| 10122088 | CHEVROLET | TRAILBLAZER | 2002 | 2005-05-24 | DT:  AIR BAG  DID NOT DEPLOY IN A OFF CENTER FRONTAL COLLISION.  WHILE TRAVELING ABOUT 35-40 MPH  CONSUMER'S VEHICLE  HIT THE REAR OF ANOTHER VEHICLE.  IT WAS AT A GARAGE NEAR THE ACCIDENT  SITE.  NO ONE  LOOKED AT THE VEHICLE BUT THE RESCUE SERVICES WERE SURPRISED THAT THE AIRBAGS DID NOT DEPLOY.  INTERMITTENTLY THE SRS LIGHT WOULD COME ON.  TOOK VEHICLE TO DEALER  AND IT WAS REPAIRED IN JULY 2004. *AK *JB |
| 10136929 | CHEVROLET | TRAILBLAZER | 2002 | 2005-09-15 | DT:  CONSUMER'S VEHICLE  WAS INVOLVED IN AN ACCIDENT ON SEPTEMBER 15, 2005.  UPON IMPACT,  NONE OF THE AIR BAGS DEPLOYED. BACK IN SEPTEMBER OF 2002 CONSUMER'S  WAS INVOLVED IN A HEAD ON COLLISION WITH THIS SAME VEHICLE, AND THE AIR BAGS NEVER DEPLOYED AT THAT TIME EITHER. HAD THE VEHICLE REPAIRED AT THE GMC DEALERSHIP. *AK |
| 10144322 | CHEVROLET | TRAILBLAZER | 2002 | 2005-11-08 | DT:  THE CONTACT STATED  VEHICLE WENT OFF  THE  ROAD AND HIT TREES AT 50-55 MPH. UPON IMPACT,  THE AIRBAGS DID NOT DEPLOY.  THE VEHICLE WAS TOTALED.  THE FRONT END COLLAPSED, THE ENGINE WAS IN THE FIREWALL, AND THE BODY WAS PUSHED OFF OF THE FRAME. THE CONTACT  SUSTAINED MINOR BRUISES AND ABRASIONS.  A POLICE REPORT WAS TAKEN AT THE SCENE. THE DEALERSHIP STATED THEY HAVE NEVER HEARD OF THIS HAPPENING.  *AK |
| 10157599 | CHEVROLET | TRAILBLAZER | 2002 | 2006-05-15 | DT*:  THE CONTACT STATED WHILE TRAVELING 35 MPH WITH PRIOR BRAKING, THE VEHICLE VEERED OFF THE ROAD AND SLID INTO A DITCH.  THERE WAS FRONT END DAMAGE, THE FRAME RAIL AND HOOD BENT.  THE AIRBAGS DID NOT DEPLOY WHEN THIS OCCURRED.  THE CONTACT WAS NOT IN THE VEHICLE AND THE DRIVER WAS UNAWARE OF WHAT CAUSED THE VEHICLE TO VEER OFF THE ROAD.  THE DRIVER SUSTAINED HEAD TRAUMA AND THE SEAT BELT WAS NOT WORN. THERE WAS A POLICE REPORT TAKEN AT THE SCENE.  THE VEHICLE WAS TOWED TO AN INDEPENDENT REPAIR SHOP, BUT HAS NOT BEEN INSPECTED BY A MECHANIC.  UPDATED 06/16/06. *JB |
| 10172513 | CHEVROLET | TRAILBLAZER | 2002 | 2006-07-01 | DT*: THE CONTACT STATED WHILE DRIVING 40 MPH ON A GRAVEL ROAD, CONTROL OF THE VEHICLE WAS LOST AND IT CRASHED INTO A TREE HEAD ON.  THE AIR BAGS DID NOT DEPLOY. THERE WAS NO PRIOR BRAKING AND SEAT BELTS WERE WORN.  THE DRIVER SUSTAINED MINOR INJURIES.  THE VEHICLE WAS LATER TOWED TO AN INDEPENDENT REPAIR SHOP.  THE DEALER WAS ALERTED. |
| 10254230 | CHEVROLET | TRAILBLAZER | 2002 | 2009-01-08 | TL*THE CONTACT OWNS A 2002 CHEVROLET TRAILBLAZER.  WHILE DRIVING APPROXIMATELY 15 MPH, THE CONTACT STRUCK A PATCH OF ICE AND THE VEHICLE CRASHED INTO A LIGHT POLE.  THE VEHICLE WAS COMPLETELY DESTROYED AND NONE OF THE AIR BAGS DEPLOYED.  A POLICE REPORT WAS FILED AND THERE WERE NO INJURIES.  THE FAILURE AND CURRENT MILEAGES WERE 56,000. |

| | | | | | |
|---|---|---|---|---|---|
| 10257808 | CHEVROLET | TRAILBLAZER | 2002 | 2009-01-21 | WELL SERVICED 90K MILES. TRAVELING AT 35MPH  PUSHED BREAKS ALL THE WAY DOWN (FRACTURING RIGHT ANKLE) SLOWED ME DOWN BUT FAILED TO STOP AT UPCOMING RED LIGHT. STRUCK MEDIUM SIZE VEHICLE INJURING OTHER DRIVER AND CAUSING CONSIDERABLE DAMAGE TO BOTH VEHICLES. CHEVY DEALER COLLISION/SERVICE CENTER ESTIMATED $8K IN REPAIRS. IN OTHER WORDS IT COSTS MORE TO REPAIR IT THAN WHAT THE VEHICLE IS WORTH. ALSO:"MASTER CYLINDER IS BAD" AND AIR BAGS DID NOT DEPLOY. CHEVY TECH. SAID "IMPACT WAS NOT BIG ENOUGH" . AFTER READING SOME EIGHT OTHER COMPLAINTS  VERY SIMILAR TO THIS . I AM CONCERNED ABOUT DRIVING THIS OR GETTING INTO ANOTHER ONE.  IS THERE NOT A BREAK LIGHT SERVICE SENSOR THAT I SHOULD HAVE NOTED.? SERVICE MANUAL FOR SCHEDULED MAINTENANCE SAYS TO CHECK FRONT AND REAR AXLE FLUID AND ADD FLUID AS NEEDED EVERY 5K TO 7K MILES AFTER 67.5K MILES. *TR |
| 10263896 | CHEVROLET | TRAILBLAZER | 2002 | 2009-03-26 | I WAS IN A CAR ACCIDENT, WHERE I WAS TRAVELING AT ABOUT 35 MPH. AN AGGRESSIVE DRIVER SPEED AROUND ME AND CUT ME OFF AND THAN STOMPED ON THIS BRAKES IN FRONT OF ME. DUE TO THAT I SWERVED TO MISS HIM CLIPPING HIS RIGHT BACK LIGHT AD BUMPER WITH MY LEFT HEADLIGHT AND BUMPER. AS I WAS SWERVING I HIT A TREE JUST ABOUT DEAD ON WITH MY AR. THE MAJORITY OF THE IMPACT OCCURRED JUST ABOUT 6 INCHES TO THE LEFT (IF LOOKING AT THE CAR) OF THE CENTER OF THE FRONT OF THE CAR. I HIT THE TREE AT A SPEED OF ABOUT 28-30 MPH. AFTER INITIAL IMPACT I WAS RUSHED TO THE HOSPITAL DUE TO UNCONSCIOUS AND FACIAL CONTUSIONS. DURING THE FIRST MOMENTS AFTER THE ACCIDENT, ONE OF THE FIRST THINGS OFFICERS, EMTS AND WITNESSES SAID WAS "I CAN'T BELIEVE THE AIRBAGS DIDN'T GO OFF". IN THE RECENT DAYS AFTER THE ACCIDENT I HAVE HAD SEVERAL MECHANICS AND SUCH APPRAISE THE CAR, THE ONE COMMON THEME THEY ALL SHARE IS THAT THEY SUSPECT THERE MIGHT NOT BE AN AIRBAG WHERE IT BELONGS, OR THE LACK THERE OF. *TR |
| 10294686 | CHEVROLET | TRAILBLAZER | 2002 | 2009-11-20 | HIT HEAD ON BY ANOTHER CAR TOTALING MY CAR, AIRBAGS DID NOT DEPLOY. *TR |
| 10314643 | CHEVROLET | TRAILBLAZER | 2002 | 2010-01-07 | INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6) . I WAS TRAVELING SOUTHBOUND ON KY HWY 1531 (EASTWOOD FISHERVILLE RD). WHEN I APPROACHED A SHARP CURVE IN THE ROADWAY, I OBSERVED A HONDA ODYSSEY MINIVAN TRAVELING NORTHBOUND TOO FAST FOR THE ICY, SNOWY ROAD CONDITIONS.  THE MINIVAN DRIVER LOST CONTROL OF HER VEHICLE AND STRUCK MY 2002 TRAILBLAZER HEAD-ON IN THE SOUTHBOUND LANE.  AT THE TIME OF IMPACT, MY TRAILBLAZER WAS COMPLETELY STOPPED WITH MY RIGHT FOOT PRESSED FIRMLY ON THE BRAKE PEDAL. THE HONDA ODYSSEY AIRBAGS FULLY DEPLOYED.  MY TRAILBLAZERS AIRBAGS DID NOT DEPLOY.  BOTH VEHICLES WERE TOTAL LOSS.  MY TRAILBLAZER WAS TOWED TO GM REPAIR SHOP BAUCHMAN CHEVROLET IN LOUISVILLE KY.  IT REMAINS STORED IN ITS ORIGINAL POST-ACCIDENT CONDITION.  I HAVE RETAINED OWNERSHIP TITLE OF THIS VEHICLE.  GM REPAIR SHOP NOTED EXTENSIVE FRAME DAMAGE AND BROKEN AIRBAG SENSOR.  THIS IS THE SECOND FRONT END INJURY CRASH INVOLVING THIS TRAILBLAZER WHERE THE AIRBAGS FAILED TO DEPLOY.  SEE ALSO ODI CASE # 10314629.  GM WAS NOTIFIED OF INCIDENT AND AGAIN I OPENED AN INVESTIGATION WITH GM AS TO WHY THE AIRBAGS FAILED TO DEPLOY.  AS OF THIS DATE (2/26/2010) GM INVESTIGATORS HAVE NOT INSPECTED THE VEHICLE.  (GM CASE [XXX] ).  I SUFFERED LOW BACK INJURIES AS A RESULT OF THIS ACCIDENT. THIS INJURY OCCURRED 8 WEEKS AFTER FAILURE NECK FUSION SURGERY. I HAVE BEEN IN PHYSICAL THERAPY SINCE THE ACCIDENT FOR JOINT DAMAGE IN THE SACRAL ILLUM AREA.  *TR |
| 10343917 | CHEVROLET | TRAILBLAZER | 2002 | 2009-12-04 | TL*THE CONTACT OWNS A 2002 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 70 MPH THE VEHICLE WAS INVOLVED IN A CRASH IN WHICH THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT WAS INJURED. THE VEHICLE WAS DESTROYED AND TOWED TO AN INDEPENDENT REPAIR SHOP.  THE MANUFACTURER EXAMINED THE VEHICLE BUT DID NOT INFORM THE CONTACT OF THE CAUSE OF FAILURE; HOWEVER, THEY DID OFFER HIM A SETTLEMENT. THE FAILURE AND CURRENT MILEAGES WERE 150,000.  THE VIN WAS UNAVAILABLE. |
| 10378297 | CHEVROLET | TRAILBLAZER | 2002 | 2011-01-19 | AIRBAGS DIDN'T DEPOLY AND ROOF CAVED. *TR |
| 10386658 | CHEVROLET | TRAILBLAZER | 2002 | 2007-03-06 | TL* THE CONTACT OWNS A 2002 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 70 MPH IN RAINY WEATHER, THE CONTACT DROVE OVER A PUDDLE OF WATER AND LOST CONTROL OF THE VEHICLE. SHE THEN ENGAGED THE BRAKES AND THE VEHICLE SWERVED ABNORMALLY. THE VEHICLE SPUN AROUND AND CRASHED INTO THE OUTER MEDIAN. THE AIR BAGS DID NOT DEPLOY AND THE CONTACT SUSTAINED A SHOULDER INJURY. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE APPROXIMATE FAILURE MILEAGE WAS 152,000. |
| 10587773 | CHEVROLET | TRAILBLAZER | 2002 | 2014-05-10 | I WAS DRIVING AND A GUY IN A CAR CAME OVER IN MY LANE AND HIT ME HEAD ON CAUSING ME TO FLIP MY VEHICLE 4 TIMES, MY AIRBAGS DIDN'T COME OUT AND THE GUY THAT HIT ME WAS UNDER THE INFLUENCE, MY VEHICLE WAS TOTALED. *TR |

| | | | | | |
|---|---|---|---|---|---|
| 10626676 | CHEVROLET | TRAILBLAZER | 2002 | 2008-03-10 | I STRUCK A VEHICLE THAT BROADSIDE WHEN HE RAN A STOP SIGN. I WAS GOING APPROXIMATELY 30 TO 35 MPH WHEN I STRUCK HIS VEHICLE. THE AIR BAGS DID NOT DEPLOY. I WAS TAKEN AWAY IN AN AMBULANCE AND HAD DAMAGE TO MY CERVICAL SPINE, STOMACH AND MID SPINE. I DID INQUIRE WHERE I HAD THE VEHICLE REPAIRED, ABOUT $8K IN DAMAGES, ABOUT WHY THE AIRBAGS DIDN'T DEPLOY. THEY SAID THEY DIDN'T KNOW BUT CHECKED AND SAID THE AIRBAG SYSTEM WAS FUNCTIONING? I SEE MANY SUCH "STORIES" ABOUT TRAILBLAZER AIRBAGS NOT DEPLOYING ON THIS SITE. IT REALLY BE NICE TO SEE SOMETHING DONE ABOUT THIS SITUATION. THIS VEHICLE HAS BEEN IN SEVERAL WRECKS AND THE AIRBAGS HAVE NEVER DEPLOYED!!!!! NOTE, I HAVE WRITTEN TO CHEVROLET/GM ABOUT THIS ISSUE BUT DON'T REALLY EXPECT THEM TO RESPOND! SOME SUPPORT FROM THE NHTSA WOULD REALLY BE APPRECIATED AND IS NEEDED BEFORE ANYONE ELSE GET HURT WHEN THE AIRBAGS DON'T DEPLOY! *TR |
| 10758946 | CHEVROLET | TRAILBLAZER | 2002 | 2014-10-15 | TL* THE CONTACT OWNED A 2002 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 15 MPH ON A RAINY ROAD, THE CONTACT CRASHED INTO ANOTHER VEHICLE AND THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED A HEAD INJURY THAT REQUIRED MEDICAL ATTENTION. THE DRIVER AND PASSENGER OF THE OTHER VEHICLE SUSTAINED UNKNOWN INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE AND VIN WERE UNAVAILABLE. |
| 10761168 | CHEVROLET | TRAILBLAZER | 2002 | 2014-10-04 | TL* THE CONTACT OWNS A 2002 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 10 MPH ON AN INCLINE DURING INCLEMENT WEATHER CONDITIONS, THE CONTACT'S VEHICLE VEERED INTO ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE MANUFACTURER WAS NOT MADE AWARE OF THE ISSUE. A POLICE REPORT WAS FILED. THE CONTACT SUFFERED A HEAD CONCUSSION THAT REQUIRED MEDICAL ATTENTION. THE FAILURE MILEAGE WAS NOT PROVIDED. |
| 10825823 | CHEVROLET | TRAILBLAZER | 2002 | 2016-01-09 | THE VEHICLE WAS INVOLVED IN A HEAD ON CRASH INTO A TELEPHONE POLE AND THE AIR BAGS DID NOT DEPLOY. THE FRONT SEAT PASSENGER WAS INJURED AND THE DRIVER STRUCK THE STEERING WHEEL AND DIED AT THE HOSPITAL FROM INTERNAL INJURIES. WE ARE TRYING TO DETERMINE WHY THE AIRBAGS DID NOT DEPLOY. THE PASSENGER WAS NOT WEARING A SEAT BELT AND IT ALSO APPEARS THAT THE DECEASED DRIVER WAS NOT WEARING A SEAT BELT. |
| 10872510 | CHEVROLET | TRAILBLAZER | 2002 | 2016-05-26 | DRIVING APPROXIMATELY 30 MILES PER HOUR, WOMAN PULLED OUT IN FRONT OF ME TO TURN ONTO THE FREEWAY. A VEHICLE NEXT TO ME HONKED THEIR HORN AND MISSED HITTING HER BUT I HIT HER ON THE PASSENGER REAR PANEL OF HER CAR, DAMAGING HER VEHICLE AND BENDING THE REAR TIRE AT AN ANGLE. THE AIRBAG DID NOT DEPLOY AND WAS ON. I WAS TRAVELING ON A CITY STREET, GOING WESTBOUND, THE OTHER DRIVER WAS TURNING TO GO NORTHBOUND. |
| 10899776 | CHEVROLET | TRAILBLAZER | 2002 | 2016-08-29 | TL* THE CONTACT OWNS A 2002 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 25 MPH, THE CONTACT'S VEHICLE CRASHED INTO A BUS AND SUSTAINED SIGNIFICANT DAMAGE TO THE FRONT END. THE AIR BAGS DID NOT DEPLOY. THE VEHICLE WAS TOWED. THE DRIVER SUSTAINED INJURIES TO THE NECK, HEAD, TORSO, AND A DISLOCATED FINGER. MEDICAL ATTENTION WAS REQUIRED. A POLICE REPORT WAS FILED. THE CAUSE OF THE FAILURE WAS NOT DIAGNOSED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 122,000. |
| 10957467 | CHEVROLET | TRAILBLAZER | 2002 | 2017-02-26 | MY WIFE WAS IN A HEAD ON COLLISION WHERE SHE HIT A TREE GOING APPROXIMATELY 45 MILES AN HOUR. SHE WAS ON A COUNTY ROAD AND LOST CONTROL OF THE VEHICLE, HITTING THE TREE ON PRIVATE PROPERTY. THE AIRBAGS DID NOT DEPLOY, WHEN THEY SHOULD HAVE. SHE HIT HER HEAD ON THE STEERING WHEEL AT IMPACT. I HAVE UPLOADED PICTURES OF THE DAMAGE TO THE VEHICLE AND A PICTURE SHOWING THE AIRBAGS DID NOT DEPLOY. |
| 11042967 | CHEVROLET | TRAILBLAZER | 2002 | 2016-11-22 | TL* THE CONTACT OWNED A 2002 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 60 MPH, THE CONTACT SWERVED TO AVOID ANOTHER VEHICLE AND CRASHED INTO A MEDIAN FACING ONCOMING TRAFFIC. THE VEHICLE FLIPPED OVER EIGHT TIMES AND LANDED IN A DITCH ON THE OPPOSITE SIDE OF THE HIGHWAY. THE AIR BAGS DID NOT DEPLOY. THE VEHICLE WAS TOWED AND DEEMED TOTALED. A POLICE REPORT WAS FILED. THE CONTACT PASSED OUT AND RECEIVED INJURIES TO THE HEAD, NECK, BACK, AND SHOULDER. MEDICAL ATTENTION WAS REQUIRED. THE DEALER WAS NOT CONTACTED. THE VEHICLE WAS INCLUDED IN NHTSA CAMPAIGN NUMBER: 04V201000 (SEAT BELTS). THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 100,000. |

| | | | | | |
|---|---|---|---|---|---|
| 11289369 | CHEVROLET | TRAILBLAZER | 2002 | 2019-11-29 | TL* THE CONTACT OWNED A 2002 CHEVROLET TRAILBLAZER. WHILE DRIVING AND TURNING, THE VEHICLE HYDROPLANED AND STRUCK A CONCRETE WALL HEAD ON. THE VEHICLE THEN VEERED TO THE LEFT AND STRUCK THE CENTER DIVIDER TWICE. THE AIR BAGS DID NOT DEPLOY. THE VEHICLE WAS TOTALED AND TOWED. MOST OF THE DAMAGE WAS TO THE FRONT END OF THE VEHICLE AND THE DRIVER'S DOOR COULD NOT BE CLOSED. THE DRIVER SUSTAINED BRUISES WHERE THE SEAT WAS LOCATED. THE DRIVER WAS TRANSPORTED TO THE EMERGENCY ROOM FOR MEDICAL ATTENTION. THE DRIVER'S FACE WAS BRUISED AND A CAT SCAN WAS PERFORMED TO DETERMINE IF THERE WERE ANY BROKEN BONES, BUT THE TESTS WERE NEGATIVE. THE DRIVER ALSO TWISTED HER ANKLE AND THERE WAS A LITTLE BIT OF SWELLING ON HER KNEE. A POLICE REPORT WAS FILED. THE MANUFACTURER WANTED TO VISIT THE CONTACT'S HOME TO EXAMINE THE VEHICLE AND FIND OUT WHY THE AIR BAGS DID NOT DEPLOY. THE DEALER WAS NOT CONTACTED. THE CAUSE OF THE FAILURE WAS NOT DETERMINED. THE FAILURE MILEAGE WAS UNKNOWN. |
| 564451 | GMC | ENVOY | 2002 | 2001-01-13 | WHILE DRIVING IN INCLEMENT WEATHER THE DRIVERS VEHICLE HIT A PATCH OF BLACK ICE- SENDING THE VEHICLE OFF THE ROAD HITTING A STONE RETAINING WALL HEAD ON, NEITHER PASSENGER NOR DRIVERS SIDE AIR BAGS DEPLOYED. NLM |
| 566612 | GMC | ENVOY | 2002 | 2002-01-14 | ALL OF THE EIGHT (8) AIR BAG EQUIPPED IN THE VEHICLE FAILED TO DEPLOY DURING FRONTAL IMPACT, ALTHOUGH PROPERLY RESTRAINED THE CONSUMER STILL SUSTAINED SERIOUS INTERNAL INJURIES, INCLUDING A LACERATED LIVER.(ATTORNEY ON BEHALF OF CUENTO NLM |
| 8016732 | GMC | ENVOY | 2002 | 2002-07-17 | VEHICLE WAS INVOLVED IN FRONTAL COLLISION WITH POINT OF IMPACT JUST A LITTLE LEFT OF THE CENTER BUMPER. FRONT END, INCLUDING FRAME WAS TOTALLED. UPON IMPACT, NEITHER AIR BAGS DEPLOYED. PLEASE DESCRIBE DETAILS. *AK |
| 8023505 | GMC | ENVOY | 2002 | 2002-11-22 | CONSUMER COLLIDED IN THE REAR OF A TRACTOR TRAILER TRAVELING APPROXIMATELY 60-70MPH. BOTH THE DRIVER AND PASSENGER AIR BAGS DID NOT DEPLOY. TS |
| 10002513 | GMC | ENVOY | 2002 | | WHILE TRAVELING AT 70 MPH ANOTHER VEHICLE WAS TRAVELING EAST BOUND CROSSED CONSUMERS PATH UNEXPECTANTLY, CAUSING CONSUMER TO HIT A TREE. CONSUMER STATES NONE OF THE AIRBAGS DEPLOYED. PLEASE PROVIDE ANY FURTHER INFORMATION.*JB |
| 10009390 | GMC | ENVOY | 2002 | 2003-02-21 | CONSUMER LOST CONTROL OF VEHICLE AND HIT A LEDGE, AND NONE OF THE AIR BAGS DEPLOYED. *JB THE DEALER STATED THAT IF THE VEHICLE HIT 6 INCHES TO THE RIGHT, THEN THE AIR BAGS WOULD HAVE DEPLOYED. *SCC |
| 10029726 | GMC | ENVOY | 2002 | 2003-07-03 | WHILE DRIVING 50 MPH VEHICLE WAS INVOLVED IN A FRONTAL COLLISION, BUT AIR BAGS DID NOT DEPLOY. DEALER NOTIFIED.*AK |
| 10029894 | GMC | ENVOY | 2002 | 2003-07-15 | CONSUMER STATED WHILE SHE AND HER HUSBAND WERE TRAVELING ON THE HIGHWAY AT APPROXIMATELY 40-50 MPH, THE VEHICLE IN FRONT OF THEM DECIDED TO MAKE A QUICK TURN, WHICH CAUSED HER HUSBAND TO HIT THE VEHICLE IN THE SIDE. UPON IMPACT, THE AIR BAGS DID NOT DEPLOY. BOTH SHE AND HER HUSBAND SUSTAINED INJURIES. HIS KNEES WENT INTO THE DASH AND HE WAS SORE FROM HEAD TO TOE. THIS IMPACT CAUSED HER HEAD TO SNAP BACK, RESULTING IN A CHEST WALL INJURY/A STIFF NECK, AND BACK. THIS WAS A MALFUNCTION BECAUSE THE AIR BAGS SHOULD HAVE DEPLOYED BECAUSE OF THE RATE OF SPEED. *AK *CB THE CONSUMER ALSO FELT THE SEAT BELT DID NOT REALLY PERFORM AS DESIGNED. *JB |
| 10063773 | GMC | ENVOY | 2002 | 2004-03-21 | 2002 GMC ENVOY SERI#[XXX] AIR BAGS DID NOT DEPLOY DRIVER TAKEN BY LIFESTAR TO HARTFORD HOSPITAL THE WHOLE LEFT SIDE OF THE VEHICLE WAS CAVED IN ALL THE WAY TO THE FRONT SEAT. *NM UPDATED 07/30/2012 *JS  INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6) |
| 10075683 | GMC | ENVOY | 2002 | 2004-05-14 | WHILE DRIVING 30 MPH, THE CONSUMER WAS INVOLVED IN AN EIGHT VEHICLE PILE UP. UPON IMPACT, THE AIR BAGS DID NOT DEPLOY. AS A RESULT, THE DRIVER SUSTAINED SEVERE BACK AND LEG INJURIES. *AK *SC |
| 10079342 | GMC | ENVOY | 2002 | 2004-06-16 | WHILE DRIVING 55 MPH DRIVER APPLIED THE BRAKES TO SLOW DOWN THE SPEED AND CONSUMER LOST CONTROL CAUSING THE VEHICLE TO HIT A GUARD RAIL AND ROLL OVER THREE TIMES. VEHICLE LANDED UPSIDE DOWN. UPON IMPACT, THE AIRBAG DID NOT DEPLOY, AND SEAT BELT DID NOT HOLD THE PASSENGER. *AK |
| 10099326 | GMC | ENVOY | 2002 | 2004-11-01 | AFTER BEING STRUCK HEAD ON BY A SEMI TRAILER AT 40 MPH AIR BAGS DID NOT DEPLOY. THE VEHICLE WAS TOTALED.*AK |
| 10101068 | GMC | ENVOY | 2002 | 2004-11-11 | WHILE DRIVING 20 MPH CONSUMER'S VEHICLE COLLIDED WITH THE VEHICLE IN FRONT. UPON IMPACT, BOTH FRONTAL AIR BAGS FAILED TO DEPLOY. DRIVER TO SUSTAINED MINOR INJURIES, AND WAS TRANSPORTED TO A HOSPITAL. THE VEHICLE WAS TOWED TO THE DEALER FOR INSPECTION. *AK |
| 10129259 | GMC | ENVOY | 2002 | 2005-07-18 | I WAS TRAVELLING AT APPROXIMATELY 35MPH AND AS I WAS HEADING TOWARD A SIGNAL LIGHT WHEN A VAN TURNED LEFT IN THE OPPOSITE DIRECTION OF TRAVEL. MY VEHICLE'S FRONT END STRUCK THE VAN'S PASSENGER SIDE DOOR. AIR BAGS DID NOT DEPLOY UPON IMPACT ALTHOUGH VAN'S BOTH FRONTAL AIR BAGS DID DEPLOY.MY FACE HIT THE STEERING WHEEL AND KNEES HIT THE BOTTOM OF THE DASHBOARD. PASSENGER WAS ALSO BRUISED ON KNEES |

| | | | | | |
|---|---|---|---|---|---|
| 10211793 | GMC | ENVOY | 2002 | 2007-12-05 | TL*THE CONTACT OWNS A 2002 GMC ENVOY. WHILE DRIVING 20 MPH UPHILL IN ICY WEATHER, THE VEHICLE SLID OFF THE ROAD. NONE OF THE AIR BAGS DEPLOYED AND THE VEHICLE WAS COMPLETELY DESTROYED. THE PASSENGER WAS SEVERELY INJURED. THE CONTACT FILED A FORMAL COMPLAINT WITH THE MANUFACTURER. HE HAS A COPY OF THE POLICE REPORT. THE CURRENT AND FAILURE MILEAGES WERE 115,000. UPDATED 01/07/08 *BF UPDATED *JB |
| 10246849 | GMC | ENVOY | 2002 | 2008-10-03 | MY WIFE AND I WERE HEADED SOUTHBOUND ON 685 IN ROUND ROCK, TX IN OUR 2002 GMC ENVOY AT APPROX. 9:35 PM WHEN A DRIVER IN A MINI VAN RAN A RED LIGHT AT THE INTERSECTION OF 685 AND GATTIS SCHOOL RD. OUR VEHICLE STRUCK THEM IN THE REAR PASSENGER QUADRANT. THE SPEED LIMIT IS 60 MPH AT THIS INTERSECTION AND WE DID NOT HAVE TIME TO BRAKE. EVEN THOUGH THE FRONT OF OUR VEHICLE WAS CRUSHED INTO THE ENGINE COMPARTMENT, NO AIRBAGS DEPLOYED. MY WIFE, WHO IS IN THE HABIT OF WEARING HER SEATBELT (ALTHOUGH WE STILL CANNOT CONFIRM ONE WAY OR THE OTHER) STRUCK THE REAR VIEW MIRROR WITH HER HEAD WITH ENOUGH FORCE TO BREAK A HOLE IN THE WINDSHIELD WHERE IT WAS ATTACHED AND BREAK THE WINDSHIELD AROUND IT. SHE WAS TRANSPORTED TO THE HOSPITAL WITH A CONCUSSION AND HAD FOR A TIME GONE INCOHERENT AND UNRESPONSIVE WITH SHORT TERM MEMORY LOSS. SHE HAS HAD DAILY HEADACHES SINCE WITH SOME EXTREMELY SEVERE. SHE ALSO HAD MULTIPLE SEVERE CONTUSIONS DOWN HER LEFT SIDE, PARTICULARLY IN HER UPPER LEFT THIGH WITH A LARGE HEMOTOMA THAT IS STILL GIVING HER PROBLEMS. OUR VEHICLE WAS SUBSEQUENTLY TOTALED BY THE INSURANCE COMPANIES. WE HAVE CONTACTED GM ABOUT THE FAILURE OF THE AIRBAGS TO DEPLOY AND THEY ARE CURRENTLY INVESTIGATING AND SENT AN INVESTIGATOR TO DOWNLOAD THE COMPUTER INFORMATION LAST WEEK. THERE IS A POLICE REPORT THAT WAS FILED BY THE TEXAS DPS INVESTIGATING OFFICER. *TR |
| 10437615 | GMC | ENVOY | 2002 | 2011-11-16 | CAR HAD A HEAD ON COLLISION WITH ANOTHER CAR THAT JUMP FROM THE OPPOSITE TRAFFIC. BOTH CARS WERE TOTALED BECAUSE OF THIS ACCIDENT, BUT MY AIRBAGS DID NOT DEPLOY AT THE TIME OF THE ACCIDENT. *KB |
| 10667172 | GMC | ENVOY | 2002 | 2013-07-07 | MY SON (17) WAS COMING HOME AND CRASHED INTO A LIGHT POLE, WE DON'T KNOW WHAT CAUSED HIM TO CRASH NO ALCOHOL OR DRUGS WERE INVOLVED AND THE AIRBAGS DID NOT DEPLOY...HE WAS TRAPPED IN THE CAR AND DIED FROM BLUNT FORCE TRAUMA TO THE HEAD. *TR |
| 10723011 | GMC | ENVOY | 2002 | 2014-06-28 | I AND MY PASSENGER WERE IN AN ACCIDENT ABOUT A YEAR AGO, A VERY HARD FRONT END IMPACT, AND NONE OF THE AIR BAGS DEPLOYED. WE WERE BOTH TRANSPORTED TO THE ER BY AMBULANCE, I HIT THE STEERING WHEEL HARD SO HARD THAT IT BENT INWARDS AND BROKE MY NOSE ALSO HAD A CONCUSSION. HE WAS IN THE FRONT PASSENGER SEAT AND HIT THE FRONT DASH, WHERE THE AIR BAG SHOULD HAVE DEPLOYED, HE BROKE HIS FRONT TEETH AND ALSO HAD A CONCUSSION. I'VE ALSO HAD MANY OF THE SAME ISSUES THAT EVERY OTHER 02 OR 03 ENVOY HAS YET MY VIN PULLS NO RECALLS. THIS NEEDS TO BE INVESTIGATED!!! THANKS |
| 11179980 | GMC | ENVOY | 2002 | 2019-02-12 | I WAS ON MY WAY HOME ON HWY/US 151 GOING APPROX. 55-60 MPH (65 MPH ZONE) WHEN I HIT A DEER WHICH CAUSED MY VEHICLE TO LOSE CONTROL AND SLAMMED INTO THE START OF A GUARDRAIL AT NO LESS THAN 45 MPH BRINGING MY 2002 GMC ENVOY TO A COMPLETE STOP, AT MOST 2-3 FEET FROM INITIAL IMPACT TO BE EXACT. THE AIRBAGS DID NOT DEPLOY. FRONT DASH NOR SIDE IMPACT BAGS, NOTHING. N I HIT HARD. LUCKILY I WASNT SERIOUSLY INJURED ONLY MINOR BRUISING AND QUITE SORE FROM WHIPLASH AND BEING THROWN INTO THE DOOR AN A BIT SHAKEN N LUCKILY HAD NO PASSENGERS. AS FOR MY ENVOY, IT IS A TOTAL LOSS AND UNFORTUNATELY I ONLY HAD LIABILITY INSURANCE SO NOW IM SCREWED WITHOUT A VEHICLE AND AFTER ALL OTHER PROBLEMS IVE FACED WITH MY GMC ENVOY I WILL NEVER OWN A GM AGAIN. TAKE GM PRODUCTS TO THE DUMP. |
| 8021614 | GMC | YUKON | 2002 | 2002-10-13 | CONSUMER STATES THAT AT 50 MPH UNDER RAINY CONDITIONS, CONSUMER LOSS CONTROL OF VEHICLE AND HIT A TREE. VEHICLE WAS TOTALLED. NONE OF THE VEHICLES AIRBAGS DEPLOYED. PLEASE PROVIDE ANY FURTHER INFORMATION. TS |
| 10004394 | GMC | YUKON | 2002 | 2002-12-09 | WHILE DRIVING AT 25 MPH THE VEHICLE WAS INVOLVED IN AN ACCIDENT WHERE AIRBAGS DID NOT DEPLOY. DEALER NOTIFIED. PLEASE PROVIDE ADDITIONAL INFORMATION. TS |
| 10126105 | GMC | YUKON | 2002 | 2005-06-13 | DT: CONSUMER GOT IN AN ACCIDENT AND TOTALED THE VEHICLE. THE FRONT AND SIDE AIR BAGS NEVER DEPLOYED. CONSUMER WAS GOING ABOUT 70 MPH AND HIT HEAD ON AND THE VEHICLE ROLLED 4 TIMES. *AK *SB |
| 10132894 | GMC | YUKON | 2002 | 2005-07-15 | DT: WHILE DRIVING DOWN THE MAIN ROAD AT 45 MPH, THE CONSUMER TOOK HIS EYES OFF THE ROAD AND WENT INTO THE GRAVEL AND THEN INTO A DITCH AND HIT A MAILBOX . THE CONSUMER WENT THROUGH THE PASSENGER SIDE WINDSHIELD. THE RIGHT WHEEL FELL OFF AND THE FRONT BUMPER SMASHED INTO THE ENGINE AND THE FRAME WAS BENT. UPON IMPACT, THE AIR BAGS DID NOT DEPLOY. THE VEHICLE WAS EQUIPPED WITH FRONT AND SIDE AIR BAGS. THE AIR BAG LIGHT WAS NOT ON AND NEVER HAD BEEN ON. THERE WERE NO PROBLEMS WITH VEHICLE BEFORE THIS INCIDENT. THERE WERE NO OTHER VEHICLES INVOLVED. THE VEHICLE HAS NEVER BEEN IN AN ACCIDENT THERE WERE NO RECALLS ON THE AIR BAGS. THE MANUFACTURER HAS NOT BEEN CONTACTED, BUT WILL BE CONTACTED TODAY.THERE WAS A POLICE REPORT WAS TAKEN. *AK |

| | | | | | |
|---|---|---|---|---|---|
| 10261762 | GMC | YUKON | 2002 | 2009-02-23 | TL*THE CONTACT OWNS A 2002 GMC YUKON. WHILE DRIVING APPROXIMATELY 55 MPH, THE CONTACT CRASHED INTO ANOTHER VEHICLE. HIS VEHICLE WAS COMPLETELY DESTROYED AND NONE OF THE AIR BAGS DEPLOYED. THE DRIVER SUSTAINED MODERATE BODILY INJURIES. IT HAS NOT YET BEEN DETERMINED WHY THE AIR BAGS FAILED TO DEPLOY. THE CONTACT HAS PICTURES OF THE FAILED INCIDENT AND A COPY OF THE POLICE REPORT. HE FILED A COMPLAINT WITH THE MANUFACTURER. THE FAILURE AND CURRENT MILEAGES WERE 107,000. |
| 10544196 | GMC | YUKON | 2002 | 2013-09-12 | TL* THE CONTACT OWNS A 2002 GMC YUKON. THE CONTACT STATED THAT WHILE DRIVING 45 MPH, HE CRASHED INTO THE PASSENGER'S SIDE OF ANOTHER VEHICLE AND THE AIR BAGS FILED TO DEPLOY WITH THE IMPACT. IN ADDITION, THE SEAT BELT FAILED TO SECURE AS DESIGNED. THE CONTACT SUSTAINED A BRUISED RIB AND AN INJURY TO THE LEFT LEG. A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS DESTROYED AND TOWED TO A SALVAGE FACILITY. THE MANUFACTURER WAS NOT NOTIFIED OF THE DEFECT. THE APPROXIMATELY FAILURE MILEAGE WAS 142,000. |
| 10690133 | GMC | YUKON | 2002 | 2015-01-06 | TL*THE CONTACT OWNS A 2002 GMC YUKON. THE CONTACT STATED THAT AFTER BEING INVOLVED IN A COLLISION, THE AIR BAGS FAILED TO DEPLOY. THE DETAILS OF THE COLLISION WERE NOT AVAILABLE. THE VEHICLE WAS DESTROYED. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED BACK INJURIES THAT DID NOT REQUIRE MEDICAL ATTENTION. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 225,000. THE VIN WAS UNAVAILABLE. |
| 11298082 | GMC | YUKON XL | 2002 | 2019-02-05 | I SWERVED TO MISS A DEER AND I HIT A TREE RUNNING 47 MPH AND MY AIR BAGS DIDN'T DEPLOY AND NO ONE CAN TELL ME WHY. MY HUSBAND AND I WERE VERY LUCKY BUT WHY DIDN'T THE AIR BAGS DEPLOY? MY HUSBAND WAS OUT OF WORK FOR 5 MONTHS DUE TO TORN LIGAMENTS IN HIS SHOULDERS AND STILL HAS TO HAVE SURGERY. |
| 10048726 | ISUZU | AMIGO | 2002 | | THE TRUCK IMPACTED A TREE WHILE DRIVING 40 MPH AND AS A RESULT THE TRUCK'S FRONT BUMPER WRAPPED AROUND THE TREE. NEITHER THE DRIVER'S SIDE NOR PASSENGER'S SIDE AIR BAG DEPLOYED UPON IMPACT. THE DRIVER SUSTAINED SEVERE INJURIES, BUT NO BROKEN BONES. THE CAUSE OF THE AIR BAG FAILURE IS YET TO BE DETERMINED. PLEASE PROVIDE ANY ADDITIONAL INFORMATION. *NLM |
| 764947 | ISUZU | AXIOM | 2002 | 2002-07-02 | WE WERE INVOLVED IN AN ACCIDENT ON I270 IN ST.LOUIS, MO.  A SEMI- TRUCK DOING APPROXIMATELY 35 MPH STRUCK US IN THE REAR AND FORCED US INTO THE PICK UP TRUCK IN FRONT OF US.  THE AIR BAGS DID NOT DEPLOY, DESPITE THE SQUARE FRONT TO REAR IMPACT. THE FRONT PASSENGER SEAT IN MY VEHICLE BROKE, TWISTING THE PASSENGER TO THE SIDE, FACING THE STEERING WHEEL.*AK |
| 10033920 | ISUZU | AXIOM | 2002 | 2003-08-13 | CONSUMER STATED WHILE DRIVING  AT 50 MPH CONSUMER'S VEHICLE REARENDED ANOTHER VEHICLE. UPON IMPACT, AIR BAGS FAILED TO DEPLOY.  *AK |
| 10050524 | ISUZU | AXIOM | 2002 | 2003-12-15 | WHILE DRIVING AT 25 MPH  LEFT FRONT TIRE  BLEW OUT, DRIVER LOST  CONTROL AND HIT A GUARD RAIL. UPON IMPACT,  NONE OF THE AIR BAGS DEPLOYED.  GOODYEAR,  SIZE P235/65R17, DOT# UNKNOWN. CONSUMER STATED THERE WAS NOT AN ISSUE WITH THE TIRE, BUT HIS SON RAN OVER SOMETHING AND BLEW THE TIRE. *AK |
| 10128420 | ISUZU | AXIOM | 2002 | 2005-07-11 | DT:  ON JULY 3RD THE CONSUMER RECEIVED A RECALL LETTER IN REFERENCE TO THE PASSENGER SIDE AIR BAG, RECALL # 03V113000. THE VEHICLE WAS TAKEN TO GALLES MOTOR CO. TO HAVE THE RECALL REPAIRED AT NO COST TO THE CONSUMER.  ON JULY 11, 2005 THE CONSUMER'S WIFE HAD AN ACCIDENT IN WHICH SHE WAS INJURED. SHE REAR ENDED A CAR SITTING AT A RED LIGHT WHILE SHE WAS GOING 45 MPH. SHE WAS WEARING A SEAT BELT AT THE TIME BUT THE AIR BAGS DID NOT DEPLOY. THE WEATHER WAS DRY AND THE ROAD CONDITIONS WERE GOOD. THE VEHICLE HASN'T BEEN TAKEN TOT HE DEALER YET FOR INSPECTION.  THE DEALER WAS CONTACTED AND THEY SAID FOR HIM TO TAKE IT TO A MECHANIC. HE HASN'T BEEN ABLE TO GET A HOLD OF THE MFR.  AT PRESENT, HIS CAR IS STILL AT THE WRECKING YARD. *NM |
| 10148582 | ISUZU | AXIOM | 2002 | 2005-12-23 | DT*:  THE CONTACT STATED ON DECEMBER 23, 2005 WHILE DRIVING AT 60 MPH ON A DRY HIGHWAY THE CONTACT WAS RUN OFF THE ROAD BY A TRUCK.  THE VEHICLE THEN COLLIDED WITH THE ROAD PARTITION, AND CRUSHED THE ENTIRE FRONT END OF THE VEHICLE.  THE AIR BAGS DID NOT DEPLOY, AND THE DRIVER SUFFERED BRUISING FROM THE SAFETY BELT.  THERE IS A RECALL, #02V213000 BUT THE CONTACT WAS NOT NOTIFIED OF THE RECALL WHEN THE VEHICLE WAS PURCHASED.  UPDATED 02/28/06. *JB |
| 8023834 | ISUZU | RODEO | 2002 | 2002-10-25 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION WITH A POLE AT 35-40MPH AND NEITHER AIRBAG DEPLOYED.  VEHICLE IS TOTALED DRIVER IN A COMA DEALER IS AWARE OF THE PROBLEM. TS |
| 10049812 | ISUZU | RODEO | 2002 | 2003-11-28 | WHILE MERGING ONTO THE INTERSTATE VEHICLE DROVE OVER SOME BLACK ICE,  VEHICLE THEN SPUN AROUND, HIT A CONCRETE BARRIER, AND A GUARD RAIL.  UPON IMPACT,  FRONT AIR BAGS DID NOT DEPLOY. THE DRIVER AND PASSENGER SUSTAINED  MINOR INJURIES. *AK |
| 10184163 | ISUZU | RODEO | 2002 | 2006-11-19 | CAR WAS INVOLVED IN AN ACCIDENT WHERE IT STRUCK THE BACK OF ANOTHER VEHICLE. THE COLLISION WAS ENOUGH TO CAUSE OVER $4000.00 IN DAMAGE TO THE ISUZU BUT THE AIR BAGS FAILED TO DEPLOY. *JB |

| | | | | | |
|---|---|---|---|---|---|
| 10443695 | ISUZU | RODEO | 2002 | 2011-05-18 | TL* THE CONTACT OWNS A 2002 ISUZU RODEO.  THE CONTACT WAS DRIVING APPROXIMATELY 35 MPH WHEN THE VEHICLE BEGAN TO ERRONEOUSLY DRIFT TO ONE SIDE. THE CONTACT LOST CONTROL OF THE VEHICLE AND THE VEHICLE MOVED INTO THE SHOULDER, CRASHING INTO THE BARRIER WALL ABRUPTLY. THE CONTACT WAS KNOCKED UNCONSCIOUS AND THE CONTACTS FOOT LANDED ON THE ACCELERATOR PEDAL AS HE LOST CONSCIOUSNESS.THE CONTACT WAS NOT AWARE AS THE VEHICLE CONTINUED TO ACCELERATE INTO ONCOMING TRAFFIC. THE VEHICLE THEN CRASHED INTO A TREE BEFORE FLIPPING. THE SEAT BELTS DETACHED FROM ITS HOUSING UNIT AND THE AIR BAGS NEVER DEPLOYED. THE CONTACT SUSTAINED SEVERE INJURIES TO THE HEAD, FACE, PELVIS AND SPINE. A PASSENGER WAS ALSO INJURED AND BOTH THE CONTACT AND THE PASSENGER WERE TRANSPORTED TO THE HOSPITAL. A POLICE REPORT WAS FILED OF THE INCIDENT AND THE VEHICLE WAS DESTROYED.  THE FAILURE AND THE CURRENT MILEAGE WAS 150,000. |
| 10553570 | ISUZU | RODEO | 2002 | 2013-11-24 | WHILE TRAVELING ON A ROAD, A HORSE RAN ACROSS AND CAUSED A COLLISION. THE FRONT OF THE VEHICLE IS DAMAGED, AS WELL AS, BOTH SIDE WINDOWS AND THE RADIATOR. NONE OF THE AIRBAGS DEPLOYED CAUSING INJURIES TO TWO PEOPLE IN THE VEHICLE. THE OFFICER AT THE SCENE SAID THE AIRBAGS SHOULD HAVE DEFINITELY DEPLOYED. *TR |
| 745117 | CHEVROLET | ASTRO | 2001 | 2001-04-19 | VEHICLE WAS IN AN OFFSET FRONTAL CRASH, STRIKING THE REAR OF A FULL SIZE PICKUP TRUCK WITH THE LEFT HALF OF THE FRONT OF THE VAN.  UPON IMPACT, FRONTAL AIR BAGS FAILED TO DEPLOY. *AK |
| 8006423 | CHEVROLET | ASTRO | 2001 | 2002-03-06 | WHILE DRIVING 35 MPH THE VEHICLE REAR ENDED A BUS YET THE AIRBAGS DID NOT DEPLOY, THE VEHICLE WAS A TOTAL LOSS.  NLM *JG |
| 886165 | CHEVROLET | BLAZER | 2001 | | WHILE TRAVELING 30-35 MPH AND AS A  RESULT OF AN ACCIDENT  AIR BAGS DID NOT DEPLOY . PLEASE PROVIDE FURTHER INFORMATION.*AK |
| 894582 | CHEVROLET | BLAZER | 2001 | 2001-08-10 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION. SPEED WAS NOT DETERMINED, UPON IMPACT, BOTH AIR BAGS DID NOT DEPLOY, DEALER WAS NOTIFIED. *AK *YH |
| 8015457 | CHEVROLET | BLAZER | 2001 | 2002-07-05 | WHILE IN A FRONTAL IMPACT  NONE OF THE AIR BAGS DEPLOYED. DEALER CONTACTED.*AK |
| 8017355 | CHEVROLET | BLAZER | 2001 | 2002-07-07 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION INTO A  DIRT WALL. UPON IMPACT,  NEITHER AIR BAG DEPLOYED. FEEL FREE TO PROVIDE ANY FURTHER INFROMATION.*AK |
| 8017786 | CHEVROLET | BLAZER | 2001 | 2002-08-16 | WHILE DRIVING AT 35MPH AND WITH NO WARNING WHEN VEHICLE WAS HIT IN  FRONT CENTER AIR BAGS DID NOT DEPLOY. DEALER NOTIFIED.*AK |
| 8020006 | CHEVROLET | BLAZER | 2001 | 2002-09-14 | CONSUMER STATES THAT WHEN HIT AT 40MPH IN THE FRONT CENTER OF THE VEHICLE THE AIR BAG DID NOT DEPLOY. DEALER NOTIFIED.  NLM |
| 8023471 | CHEVROLET | BLAZER | 2001 | 2002-07-01 | WHILE TRAVELING ABOUT 55MPH ON THE HIGHWAY WITHOUT PRIOR WARNING SHE HIT AN ENBANKMENT. AND THE VEHICLE FLIP AND THE DRIVER SIDE AIRBAG DIDN'T DEPLOY.  PLEASE FILL IN ADDITIONAL INFORMATION DEALER IS AWARE OF THE PROBLEM. PH |
| 10002341 | CHEVROLET | BLAZER | 2001 | | CONSUMER STATES WHILE DRIVING 30MPH HAD FRONT END COLLISION AND NEITHER PASSENGER OR DRIVES AIR BAG DEPLOY. PLEASE PROVIDE ANY ADDITIONAL INFORMATION. TS |
| 10060150 | CHEVROLET | BLAZER | 2001 | 2004-02-24 | DRIVER SIDE AIR BAG FAILED TO DEPLOY IN A CRASH THROUGH: 1. A SIX FOOT TALL WOODEN FENCE AT ALMOST 30MPH, THEN 2.  THE EXTERIOR SIDE OF A 2-STORY HOME THAT CONTAINED THE KITCHEN SINK AND PLUMBING FIXTURES, WHILE SMASHING UP AND OVER THE FIFTEEN-INCH CONCRETE FOUNDATION, FRONT-END FIRST.*AK |
| 10072173 | CHEVROLET | BLAZER | 2001 | 2004-04-30 | WHILE DRIVING AT 53 MPH, THE CONSUMER'S VEHICLE REAR ENDED ANOTHER VEHICLE.  UPON IMPACT, THE AIR BAGS DID NOT DEPLOY.  THE CONSUMER SUSTAINED MINOR INJURIES.  THE DEALERSHIP WAS NOTIFIED, BUT DID NOT RESOLVE THE PROBLEM.  *AK  *SC |
| 10101364 | CHEVROLET | BLAZER | 2001 | 2004-11-11 | CONSUMER'S VEHICLE WAS AT A COMPLETE STOP AND  ANOTHER VEHICLE WAS COMING HEAD ON WHICH RESULTED IN A HEAD ON COLLISION. THERE WAS A VEHICLE BEHIND  CONSUMER'S VEHICLE WHICH SHE WAS PUSHED INTO DUE TO THE HEAD ON COLLISION. HOWEVER,  UPON IMPACT,  AIR BAGS DID NOT DEPLOY. CONSUMER  SUSTAINED MAJOR INJURIES. *AK |
| 10105341 | CHEVROLET | BLAZER | 2001 | 2004-12-22 | CONSUMER'S VEHICLE WAS INVOLVED IN A FRONT COLLISION AT 40 MPH DUE TO INCLEMENT WEATHER.  UPON IMPACT, AIR BAGS DID NOT DEPLOY. CONSUMER CONTACTED THE MANUFACTURER. *AK |
| 10106657 | CHEVROLET | BLAZER | 2001 | 2004-12-25 | VEHICLE SLIPPED WHILE TRAVELING ON ICE AT 55 MPH, CAUSING THE VEHICLE TO STRIKE A CONCRETE RETAINING WALL, AND  IT  ROLLED OVER.  UPON IMPACT,  AIR BAGS DID NOT DEPLOY.*AK |
| 10142568 | CHEVROLET | BLAZER | 2001 | 2005-10-05 | DT  CONTACT STATED THE AIR BAGS DID NOT DEPLOY IN A HEAD ON CRASH. WHILE TRAVELING AT ABOUT 60 MPH THE VEHICLE HYDRO PLANED. THE CONTACT  LOST CONTROL OF THE VEHICLE AND CRASHED. THREE PEOPLE SUSTAINED  INJURIES.  A POLICE REPORT WAS TAKEN.  THE DEALER WAS CONTACTED BUT OFFERED NO ASSISTANCE. THE MANUFACTURER INFORMED HER THEY HAVE A BUYER FOR THE VEHICLE, AND THEY OFFERED NO FREE REMEDY. VEHICLE WAS TOTALED.*AK |
| 10174898 | CHEVROLET | BLAZER | 2001 | 2006-11-05 | DT*: THE CONTACT STATED WHILE DRIVING 55 MPH, THERE WAS A MOMENTARY LOSS OF VEHICLE CONTROL, THE VEHICLE STRUCK A NEARBY TREE STUMP, AND THE AIRBAGS DID NOT DEPLOY.  THE CONTACT WAS WEARING A SEAT BELT, BUT NO INJURIES WERE SUSTAINED.  THERE WAS MODERATE DAMAGE TO THE FRONT OF THE VEHICLE.  THE POLICE WERE ALERTED, AND A REPORT WAS TAKEN.  THE MANUFACTURER WAS ALERTED. |

| | | | | | |
|---|---|---|---|---|---|
| 10175892 | CHEVROLET | BLAZER | 2001 | 2001-12-04 | MY DAUGHTER WAS IN A CAR CRASH. UNFORTUNATELY MY DAUGHTER WAS AT FAULT. SHE WAS GOING 55 MPH AND HIT A CAR THAT WAS STOPPED AT A LIGHT. HER AIR BAG DID NOT DEPLOY. SHE HAS NECK AND BACK PAINS. *JB |
| 10184395 | CHEVROLET | BLAZER | 2001 | 2005-05-19 | A FRONTAL IMPACT OCCURRED AT 40 MPH AS ANOTHER MOTORIST PULLED OUT IN FRONT OF ME. THE AIR BAGS DID NOT DEPLOY.  THE FRONT DRIVER SEAT BELT DID NOT PROPERLY RESTRAIN ME AND I WAS FORCED INTO THE ROOF AT THE TRIM EDGE OF THE WINDSHIELD, SUSTAINING A MINOR SCALP LACERATION, CERVICAL DISC DAMAGE, AND A CONCUSSION.  THE VEHICLE WAS TOTALED BY NATIONWIDE INSURANCE. *JB |
| 10454988 | CHEVROLET | BLAZER | 2001 | 2012-04-06 | TL* THE CONTACT OWNS A 2001 CHEVROLET BLAZER. THE CONTACT STATED THAT WHILE DRIVING 40 MPH, THE CONTACT CRASHED INTO THE SIDE OF ANOTHER VEHICLE. THE CONTACT STATED THAT THE FORCE OF THE IMPACT CAUSED THE VEHICLE TO BOUNCE OFF THE SECOND VEHICLE. THE AIR BAGS DID NOT DEPLOY. THE PASSENGER SUSTAINED INJURIES TO THE LEFT ANKLE AND KNEES, AS WELL AS A BROKEN THUMB. THE CONTACT WAS TRANSPORTED TO THE HOSPITAL AS A PRECAUTIONARY MEASURE. THE FAILURE AND THE CURRENT MILEAGES WERE 122,000. |
| 752662 | CHEVROLET | SILVERADO | 2001 | 2001-09-22 | CRASHED INTO 14FOOT UHAUL  GOING ABOUT 65MPH AIR BAGS NEVER WORKED. PLEASE ADVISE! *AK |
| 754465 | CHEVROLET | SILVERADO | 2001 | 2001-08-04 | A TWO IMPACT WRECK, WITH THE SECOND AT 55 MPH HIT HEAD ON, NO AIRBAG OR ONSTAR DEPLOYMENT. *AK |
| 757639 | CHEVROLET | SILVERADO | 2001 | 2002-01-16 | DRIVER'S SIDE AIRBAG DID NOT DEPLOY DURING A FRONTAL IMPACT CRASH AT APPROXIMATELY 40 MPH.*AK |
| 765623 | CHEVROLET | SILVERADO | 2001 | 2002-07-24 | NO AIRBAGS DEPLOYED DURING FRONTAL COLLISION AT 40 MPH CRASH. OCCUPANT OF OTHER VEHICLE HAD TO BE EXTRACATED FROM HER VEHICLE AND LIFE FLIGHTED TO MEDICAL FACILITY.*AK |
| 894462 | CHEVROLET | SILVERADO | 2001 | 2001-08-04 | CONSUMER'S VEHICLE REAR ENDED A BIG WEIGHT TRUCK AT  APPORXIMATELY 65 MPH, AND NEITHER DRIVER'S SIDE NOR PASSENGER'S SIDE AIRBAGS DEPLOYED. DEALER  HAS BEEN EXAMINING THE VEHICLE.*AK |
| 896975 | CHEVROLET | SILVERADO | 2001 | 2001-09-22 | WHILE TRAVELING APPROXIMATELY 55 MPH,  VEHICLE REAR ENDED A U-HAUL TRUCK THAT WAS ALSO IN MOTION.  APPROXIMATELY $4600.00 DAMAGE WAS DONE TO THE FRONT END OF VEHICLE, AND AIR BAGS FAILED TO DEPLOY.  DEALERSHIP STATED THAT AIR BAGS FAILED TO DEPLOY BECAUSE BOTH VEHICLES WERE IN MOTION.  PLEASE PROVIDE ANY ADDITIONAL INFORMATION / ATTACHMENTS. *NOTE: DRIVER OF VEHICLE SUFFERED ARM, WRIST, AND LEG INJURIES.*AK |
| 899261 | CHEVROLET | SILVERADO | 2001 | 2001-10-11 | WHILE OPERATING VEHICLE IN WET ROAD CONDITIONS, AND TRAVELING APPROXIMATELY 50 TO 55 MPH VEHICLE HYDROPLANED AND CRASHED INTO A CEMENT BARRIER.  BOTH FRONTAL AIR BAGS FAILED TO DEPLOY.  NO EXAMINATION OF THE VEHICLE HAS TAKEN PLACE TO DETERMINE A CAUSE FOR THIS PROBLEM. *NOTE:  DRIVER RECEIVED SEVERE FACIAL INJURIES.  PLEASE PROVIDE ANY ADDITIONAL INFORMATION / DOCUMENTATION.  *AK |
| 8001948 | CHEVROLET | SILVERADO | 2001 | 2002-01-07 | VEHICLE WAS INVOLVED IN  20-25 MPH FRONTAL COLLISION IN WHICH DRIVERS AND PASSENGERS AIR BAGS DID NOT DEPLOY, CAUSE UNKNOWN, DEALER HAS BEEN NOTIFIED. *AK*SLC |
| 8002768 | CHEVROLET | SILVERADO | 2001 | 2002-01-16 | FRONTAL IMPACT AT 65MPH TOTALLED VEHICLE; UPON IMPACT, AIR BAGS DIDN'T DEPLOY. DELAER WAS NOTIFIED.*AK |
| 8004056 | CHEVROLET | SILVERADO | 2001 | 2002-02-05 | CONSUMER HAD A HEAD-ON COLLISION AT 55 MPH AND NEITHER AIRBAG DEPLOYED. DRIVER AND PASSENGER SUFFERED CHEST/NECK AND LEG INJURIES.  VEHICLE WAS TOTALLED.*AK  CONSUMER STATES THAT A PERSON FROM THE OTHER VEHICLE WAS KILLED IN THE ACCIDENT.*SLC |
| 8004268 | CHEVROLET | SILVERADO | 2001 | 2002-02-17 | WHILE DRIVING AT 55 MPH  CONSUMER'S VEHICLE RAN INTO ANOTHER VEHICLE HEAD-ON, BUT NONE OF AIR BAGS DEPLOYED. HAS NOT CONTACTED DEALER.*AK |
| 8005327 | CHEVROLET | SILVERADO | 2001 | 2002-02-27 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION OF APPROXIMATELY  50 MPH, AND NEITHER FRONTAL AIR BAG DEPLOYED. DEALER / MANUFACURER WERE NOTIFIED. FEEL FREE TO PROVIDE ANY FURTHER INFORMATION.*AK |
| 8006559 | CHEVROLET | SILVERADO | 2001 | 2002-03-23 | CONSUMER STATES WHILE DRIVING 30-35 MPH WITHOUT WARNING OCCURRED IN A FRONTAL COLLISION THE AIR BAGS NOT DEPLOY CAUSING MINOR INJURIES.  NLM |
| 8009248 | CHEVROLET | SILVERADO | 2001 | 2002-03-06 | WHILE TRAVELING ON HIGWAY HIT ANOTHER VEHICLE/ VEHICLE IN ANOTHER LANDE TO OVOID CAR HE HIT AND RAN INTO MERIDIAN STRIP. UPON IMPACT, DUAL AIRBAGS DIDN'T DEPLOY. DEALERSHIP  WASAWARE OF PROBLEM.*AK |
| 8012069 | CHEVROLET | SILVERADO | 2001 | 2002-06-08 | WHILE DRIVING TRUCK AT 40 MPH  VEHICLE INVOLVED IN A FRONTAL COLLISION  WITH ANOTHER SPEEDING VEHICLE.  UPON IMPACT, AIR BAGS FAILED TO DEPLOY.  TRUCK WAS TAKEN TO DEALERSHIP ,AND THEY INFORMED  OWNER THAT "THERE WAS NO REASON FOR AIR BAGS NOT TO DEPLOY".  PLEASE DESCRIBE DETAILS. *AK |
| 8012818 | CHEVROLET | SILVERADO | 2001 | 2002-06-08 | IN A FRONTAL COLLISON WHILE DRIVING AT 60MPH NONE OF THE AIR BAGS DEPLOYED. VEHICLE HAD  MAJOR DAMAGE. *AK |
| 8017140 | CHEVROLET | SILVERADO | 2001 | 2002-06-08 | IN A FRONTAL COLLISION NONE OF THE AIR BAGS DEPLOYED ON IMPACT, CAUSING INJURIES TO DRIVER.*AK. ALSO THE PASSENGER WAS INJURED.*JB |
| 10001355 | CHEVROLET | SILVERADO | 2001 | | CONSUMER STATES  WHILE DRIVING AT THE SPEED OF 45MPH WAS INVOLVED IN A FRONTAL COLLISION NEITHER AIR BAG DEPLOYED. DEALER HAS BEEN NOTIFIED. PLEASE PROVIDED ANY ADDITIONAL IN FORMATION. TS |

| | | | | | |
|---|---|---|---|---|---|
| 10001771 | CHEVROLET | SILVERADO | 2001 | | WHILE TRAVELING AT 65 MPH, CONSUMER STATES' ANOTHER DRIVER PULLED INFRONT AND CONSUMER HIT THAT VEHICLE ON ITS SIDE.  NONE OF THE VEHICLES ARE BAGS DEPLOYED.  CONSUMER FEELS THAT THIS COLLISION WAS A HARD IMPACT AND AIRBAGS SHOULD HAVE DEPLOYED. |
| 10006756 | CHEVROLET | SILVERADO | 2001 | 2003-01-30 | CONSUMER WAS  IN A ACCIDENT AND HIT A WALL AND THE AIR BAGS DIDN'T DEPLOY UPON CONTACT.  *FH |
| 10020745 | CHEVROLET | SILVERADO | 2001 | 2003-05-23 | FRONTAL IMPACT ON FREEWAY AT 45 MPH CHEVROLET, SILVERADO 4X4 TOTALED.  AIRBAGS DID NOT DEPLOY UPON IMACT.*AK |
| 10024534 | CHEVROLET | SILVERADO | 2001 | 2002-03-12 | PROBLEM WITH AIRBAG SYSTEM ON 2001 CHEVROLET PICK UP TRUCK.  *MR  THE VEHICLE COLLIDED WITH A MOVING ANIMAL AND THE AIRBAG(S) DIDN'T DEPLOY.  (THE ANIMAL WAS ABOUT SIX HUNDRED POUNDS AND THE CONSUMER HAD DRIVEN THE VEHICLE AT A NORMAL SPEED)  *SCC  *JB |
| 10041290 | CHEVROLET | SILVERADO | 2001 | 2003-10-17 | A 2001 CHEVY SILVERADO WAS STRUCK ON THE SIDE AND SENT INTO A TREE AT BETWEEN 30-35 MPH.  THERE WAS SIGNIFICANT FRONT END DAMAGE AND THE AIR BAGS DID NOT DEPLOY.  *LA |
| 10042759 | CHEVROLET | SILVERADO | 2001 | 2000-12-31 | WHILE DRIVING AT 55 MPH CONSUMER LOST CONTROL OF VEHICLE WHILE TRAVELING UP A HILL, THEN VEHICLE STRUCK A WOODEN FENCE.  ONE BEAM OF THE FENCE CAME THROUGH THE WINDSHIELD, STRIKING THE CONSUMER IN THE HEAD, EVENTUALLY KILLING HIM.  ALSO, TWO PASSENGERS SUSTAINED INJURIES.   IN THE CONFUSION, CONSUMER DEPRESSED THE GAS PEDAL INSTEAD OF THE BRAKES AND STRUCK A FIRE HYDRANT.  ALL PASSENGERS AND THE CONSUMER WERE WEARING SEAT BELTS.  HOWEVER, THE AIR BAGS DID NOT DEPLOY.  POLICE ARRIVED ON THE SCENE AND MADE A REPORT.  MANUFACTURER AND DEALER HAD BEEN NOTIFIED OF THE INCIDENT.  *AK |
| 10059656 | CHEVROLET | SILVERADO | 2001 | 2001-12-19 | LAWYER REPRESENTING CONSUMER WHO WAS INJURED WHEN THE DRIVER'S SIDE AIRBAG FAILED TO DEPLOY.  *LA  (LAWYER CLYDE JACKSON ON BEHALF OF CLIENT)* JB |
| 10072926 | CHEVROLET | SILVERADO | 2001 | 2001-12-19 | I WAS DRIVING EAST ON F.M. 356 AT ABOUT NOON. I WAS TRAVELLING ABOUT 50 MPH. A CAR TURNED IN FRONT OF ME AND I ATTEMPTED TO PASS THE CAR.  I WAS UNABLE TO DUE TO ONCOMING TRAFFIC, SO I QUICKLY RETURNED TO MY LANE.  ONE OF MY TIRES WENT OFF ONTO THE UNPAVED SHOULDER AND I WENT DOWN A SMALL EMBANKMENT.  IT WAS MUDDY SO I COULD NOT STOP.  I HIT A LARGE PINE TREE HEAD ON AND STOPPED.  BOTH OF US WERE WEARING OUR SEATBELTS.  MY AIRBAG FAILED TO DEPLOY CAUSING MY HEAD AND TORSO TO STRIKE THE STEERING WHEEL.  I SUFFERED 6TH NERVE PAULSEY AND AN ANUERISM DEVELOPED ON MY AORTA.  THE AORTA HAD TO BE SURGICALLY REPAIRED.  MY GRANDDAUGHTER'S AIRBAG HAD BEEN TURNED OFF DUE TO HER SMALL SIZE.  SHE SUFFERED A BROKEN LEG AND A SLIGHT CONCUSSION.  THE TRUCK WAS TOTALLED.  *AK |
| 10079979 | CHEVROLET | SILVERADO | 2001 | 2004-06-25 | WHILE DRIVING CONSUMER WAS TOWING A TRAILERTHE DRIVER'S SIDE REAR TIRE TREADS SEPARATED FROM THE TRAILER.  CONSUMER WAS NOT ABLE TO MAINTAIN CONTROL OF THE VEHICLE, AND COLLIDED INTO A CONCRETE BARRIER.  UPON IMPACT, BOTH FRONTAL AIR BAGS DID NOT DEPLOY.  PASSENGER SUSTAINED HEAD INJURIES, AND WAS TRANSPORTED TO A HOSPITAL BY AN AMBULANCE.  VEHICLE AND TRAILER WERE TOTALED.  *AK  *NM |
| 10103512 | CHEVROLET | SILVERADO | 2001 | 2004-12-05 | CONSUMER'S, VEHICLE WAS REAR ENDED WHILE DRIVING 50 MPH.  THE VEHICLE WAS FORCE INTO A SPIN AND THEN, IT HIT A CONCRETE ROAD DIVIDER.  UPON IMPACT, NEITHER FRONTAL AIR BAGS DEPLOYED.  DRIVER SUSTAINED INJURIES, AND HAD TO BE TRANSPORTED TO A LOCAL HOSPITAL.  DEALER AND.  MANUFACTURER WERE  NOTIFIED.  *AK  THE CONSUMER STATED THAT THE SEAT BELT DID NOT KEEP HER FROM HITTING HER CHEST ON THE STEERING WHEEL.  AFTER THE FRONT AND THE BACK OF THE VEHICLE HIT THE CONCRETE DIVIDER THE AIR BAGS DID NOT DEPLOY.  *TC |
| 10107706 | CHEVROLET | SILVERADO | 2001 | 2004-12-29 | AIR BAGS FAILED TO DEPLOY IN A 45 MPH FRONT END COLLISION ON MY 2001 CHEVROLET SILVERADO.  *NM |
| 10109017 | CHEVROLET | SILVERADO | 2001 | 2005-01-04 | WHILE TRAVELING AT 55 MPH  CONSUMER LEFT THE FREEWAY AND STRUCK A LARGE PILE OF DIRT.  UPON IMPACT,  THE AIR BAGS DID NOT DEPLOY.  CONSUMER SUSTAINED HEAD  AND BACK INJURIES.  WAS TAKEN TO THE EMERGENCY ROOM.  THE VEHICLE WAS TOTALED.*AK   *AK |
| 10138394 | CHEVROLET | SILVERADO | 2001 | 2005-06-01 | THERE WAS AN ACCIDENT ON JUNE 1, 2005.  UPON IMPACT, THE DRIVER'S SIDE FRONTAL AIRBAG FAILED TO DEPLOY.  THE PASSENGER SIDE AIRBAG HAD BEEN TURNED OFF.  THE DRIVER SUSTAINED MINOR INJURIES.  THE CONSUMER REAR ENDED A TRAILER.   A POLICE REPORT WAS TAKEN.   NO AIRBAG WARNING LIGHT  CAME ON.*AK UPDATED 11/02/05. *JB |

| | | | | | |
|---|---|---|---|---|---|
| 10553271 | CHEVROLET | SILVERADO | 2001 | 2013-11-14 | MY FIANCE AND I WERE DRIVING HOME AND AS WE ENTERED TOWN GOING APPROXIMATELY 35-45 MPH THE VEHICLE SWERVED OFF THE ROAD AND COLLIDED INTO A TELEPHONE POLE BREAKING IT IN HALF CAUSING THE TOP HALF OF THE TELEPHONE POLE TO SWING DOWN AND SMACK INTO THE WINDSHIELD. HE SMACKED HIS FACE OFF OF THE STEERING WHEEL AND I WAS LAYING DOWN ON THE SEAT AND ROLLED OFF AND BROKE THE ASHTRAY HOLDER WITH MY FACE. DURING THE IMPACT NOT A SINGLE AIRBAG DEPLOYED EVEN THOUGH THE AIRBAGS WERE ALL IN WORKING ORDER. THE IMPACT WAS SO SEVERE THAT THE TAILGATE OF THE TRUCK BENT OUTWARD, THE RADIATOR WAS RIPPED OUT FROM BENEATH THE VEHICLE AND THE FRONT PASSENGER SIDE WAS TOTALED. I WAS THEN PUT INTO A NECK BRACE, STRAPPED TO A GURNEY AND RUSHED TO THE HOSPITAL. I WILL REITERATE THE FACT THAT NONE OF THE AIRBAGS DEPLOYED CAUSING THE BOTH OF US TO BE INJURED. WE LUCKILY SURVIVED THE CRASH BUT HAD THE AIRBAGS DEPLOYED THE BOTH OF US WOULD HAVE SUFFERED MINIMAL INJURIES.  *TR |
| 10627738 | CHEVROLET | SILVERADO | 2001 | 2014-01-01 | I REAR ENDED SOMEONE GOING ABOUT 70 MPH AND MY AIR BAGS DID NOT DEPLOY.  *TR |
| 560449 | CHEVROLET | SUBURBAN | 2001 | | NO DEPLOYMENT OF THE AIR BAG DURING ACCIDENT CAUSING THE CONSUMER TO JAM HIS HAND ON THE STEERING WHEEL AND TO INJURE HIS BACK.  NLM |
| 747375 | CHEVROLET | SUBURBAN | 2001 | 2001-05-24 | FRONT AIRBAGS FAILED TO DEPLOY DURING A HEAD ON COLLISION AT 30 MPH.  FINAL DAMAGE ESTIMATE UNKOWN DUE TO PENDING SAFETY INVESTIGATION. *AK |
| 879983 | CHEVROLET | SUBURBAN | 2001 | 2000-12-27 | COSNUMER WAS DRIVING AT APPROXIMATELY 35-40 MPH, WENT OFF ROAD TO AVOID ONCOMING VEHICLE, RAN INTO DITCH HEAD ON, AND HIT A TREE. VEHICLE WAS TOTALED. UPON IMPACT, DUAL AIRBAGS DID NOT DEPLOY, CAUSING MINOR INJURIES.*AK |
| 8004064 | CHEVROLET | SUBURBAN | 2001 | 2002-02-05 | CONSUMER  HAD A FRONT COLLISION AT 35-40 MPH, AND NEITHER AIRBAG DEPLOYED. CONSUMER SUFFERED NECK/ BACK AND KNEE INJURIES. VEHICLE AT DEALERSHIP AT THIS TIME. PLEASE ADD FURTHER DETAILS.*AK |
| 8007135 | CHEVROLET | SUBURBAN | 2001 | 2001-11-26 | WHILE DRIVING AT 45 MPH CONSUMER T BONED ANOTHER VEHICLE, AND THEN SPUN OUT OF CONTROL, AND RAN INTO A DITCH.  UPON IMPACT, NONE OF THE AIR BAGS DEPLOYED. CONTACTED DEALER, AND THE DEALER WAS NOT WILLING TO DO ANYTHING. *AK  *YH |
| 8014347 | CHEVROLET | SUBURBAN | 2001 | 2002-07-10 | AT  45MPH VEHICLE CRASHED.  UPON IMPACT, AIRBAGS DID NOT DEPLOY. CAUSE UNKNOWN. DEALER NOTIFIED.*AK |
| 10017673 | CHEVROLET | SUBURBAN | 2001 | | THE VEHICLE WAS INVOLVED IN A FRONTAL COLLISION, AND THE NONE OF THE AIR BAGS DEPLOYED.   *JB |
| 10042734 | CHEVROLET | SUBURBAN | 2001 | 2003-09-27 | WHILE DRIVING 60 MPH VEHICLE WAS INVOLVED IN A HEAD ON COLLISION AND AIR BAGS DID NOT DEPLOY. *AK |
| 10046437 | CHEVROLET | SUBURBAN | 2001 | 2003-10-08 | WHILE DRIVING, ANOTHER MOTORIST FAILED TO STOP AT A RED LIGHT AND THE CONSUMER HIT HIM ON THE PASSENGER'S SIDE AND THE AIR BAGS DID NOT DEPLOY.  *AK  *SC   *JB |
| 10248294 | CHEVROLET | SUBURBAN | 2001 | 2008-11-06 | TL*THE CONTACT OWNS A 2001 CHEVROLET SUBURBAN.  ON NOVEMBER 6, 2008, THE CONTACT WAS INVOLVED IN A SERIOUS CRASH.  THE AIR BAGS FAILED TO DEPLOY AND THE ENTIRE FRONT END AND PASSENGER SIDE OF THE VEHICLE WERE DAMAGED.  THE VEHICLE WAS DESTROYED.  THE CONTACT HAS PICTURES AND A POLICE REPORT.  THERE WERE NO OTHER PASSENGERS IN THE VEHICLE AND THE CONTACT WAS WEARING HER SEAT BELT AT THE TIME.  THERE WAS NO MAINTENANCE PERFORMED ON THE AIR BAGS PRIOR TO THE CRASH.  THE SPEED WAS UNKNOWN. THE FAILURE MILEAGE WAS 100,000. |
| 10335493 | CHEVROLET | SUBURBAN | 2001 | 2010-05-18 | TL*THE CONTACT OWNS A 2001 CHEVROLET SUBURBAN. THE CONTACT STATED THAT ON MAY 18, 2010, WHILE DRIVING AT 45 MPH, THE VEHICLE COLLIDED WITH AN ONCOMING VEHICLE. THE AIR BAGS DID NOT DEPLOY. THE VEHICLE SUSTAINED EXTENSIVE DAMAGES AND WAS TOWED FROM THE SCENE. THE CONTACT AND PASSENGERS SUSTAINED INJURIES AND WERE TAKEN TO THE HOSPITAL. A POLICE REPORT WAS FILED. THE CONTACT HAD NOT CALLED THE DEALERSHIP OR THE MANUFACTURER AT THE TIME OF THE COMPLAINT. THE FAILURE AND CURRENT MILEAGES WERE APPROXIMATELY 105,000. |
| 10731769 | CHEVROLET | SUBURBAN | 2001 | 2015-06-15 | MY SON WAS DRIVING AND REAR ENDED A MAN GOING APPROXIMATELY 50 MPH.  THE FRONT END SUSTAINED A GREAT DEAL OF DAMAGE, INCLUDING, BUT NOT LIMITED TO, THE ENGINE BEING PUSHED BACK SEVERAL INCHES.  THE AIR BAGS DID NOT DEPLOY.  MY SON SUSTAINED MINOR WHIPLASH TYPE INJURIES TO HIS NECK AND BACK. |
| 10731772 | CHEVROLET | SUBURBAN | 2001 | 2015-06-18 | TL* THE CONTACT OWNED A 2001 CHEVROLET SUBURBAN. WHILE DRIVING AT 55 MPH UPHILL, THE CONTACT DEPRESSED THE BRAKE PEDAL AND THE VEHICLE HYDROPLANED. AS A RESULT, THE CONTACT CRASHED INTO THE REAR OF A PICK-UP TRUCK. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED. THERE WAS ONE INJURY THAT REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS DESTROYED AND TOWED TO AN INDEPENDENT MECHANIC. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 270,000. |
| 764291 | CHEVROLET | TAHOE | 2001 | 2002-07-10 | TAHOE WAS TRAVELING UPHILL ON PRIVATE GRAVEL DRIVE WHEN HIT BY TRUCK TRAVELING DOWNHILL AROUND BLIND CURVE.  TRUCK WAS TRAVELING AT BETWEEN 20 AND 25 MPH WHEN IT HIT TAHOE.  BOTH OF TRUCK'S AIRBAGS INFLATED.  MY AIRBAGS DID NOT INFLATE, AND I HIT THE STEERING WHEEL WITH MY STOMACH AND CHEST.*AK |

| | | | | | |
|---|---|---|---|---|---|
| 766175 | CHEVROLET | TAHOE | 2001 | 2002-07-19 | HIT BY A RED LIGHT RUNNER (45/50MPH) ON DRIVER'S SIDE, HIT A SECOND CAR, THEN A CONCRETE POST HEAD ON. NOT ONE OF THE FOUR AIR BAGS ENGAGED AT ANYTIME. THE CAR WAS TOTALED. I HAVE DOCUMENTATION, PICTURES, POLICE REPORT, AND HAVE CONTACTED CHEVY, THEY HAVE NO CLEAR RESPONSE ON WHY? IF YOU WOULD LIKE MORE DETAIL ON INJURES OR HAVE ANY QUESTION PLEASE FILL FREE TO CONTACT ME. THANK YOU FOR YOUR TIME, DANIELLE HURST-STONE. *AK |
| 884576 | CHEVROLET | TAHOE | 2001 | 2001-03-21 | VEHICLE WAS INVOLVED IN AN ACCIDENT WHILE TRAVELING AT 50 MPH WHEN VEHICLE T-BONED A VEHICLE CROSSING AN INTERSECTION. AIRBAGS FAILED TO DEPLOY. DEALERSHIP COULD NOT PROVIDE A REASON FOR FAILURE OF AIRBAGS TO DEPLOY. *AK THE MAUFACTURER INDICATED THAT THE VEHICLE SKIDDED 20 TO 25 FEET AFTER IMPACT AND THE AIR BAG FAILED TO DEPLOY FOR THIS REASON. THE CONSUMER DISAGREES. *YH |
| 899507 | CHEVROLET | TAHOE | 2001 | 2001-11-01 | DRIVER'S SIDE AND PASSENGER'S SIDE AIRBAGS FAILED TO DEPLOY IN A FRONT END COLLISION. DEALER HAS YET TO BE CONTACTED. PLEASE PROVIDE FURTHER DETAILS.*AK |
| 8000772 | CHEVROLET | TAHOE | 2001 | 2001-12-01 | DRIVER AND PASSENGER FRONTAL AIRBAGS FAILED TO DEPLOY WHEN CONSUMER WAS INVOLVED IN A 40MPH FRONTAL COLLISION. DEALER HAS YET TO BE CONTACTED. PLEASE PROVIDE FURTHER DETAILS.*AK |
| 8017829 | CHEVROLET | TAHOE | 2001 | 2001-09-19 | WHILE TRAVELING ONTO AN INTERSECTION ANOTHER VEHICLE RAN THE RED LIGHT AND HIT CONSUMER'S VEHICLE. UPON IMPACT, DUAL AIRBAGS DIDN'T DEPLOY.DEALERSHIP WAS AWARE OF PROBLEM.*AK *YH |
| 8018113 | CHEVROLET | TAHOE | 2001 | 2002-04-05 | WHILE TRAVELING AT 35 MPH CONSUMER WAS HIT HEAD-ON, AND VEHICLE ALMOST TIPPED OVER. UPON IMPACT, FRONT AIR BAGS FAILED TO DEPLOY. PLEASE PROVIDE ANY FURTHER INFORMATION.*AK |
| 10018205 | CHEVROLET | TAHOE | 2001 | 2003-05-05 | THE VEHICLE WAS INVOLVED IN A FRONTAL COLLISION, AND NONE OF THE AIR BAGS DEPLOYED. *NLM* *PH *JB |
| 10044753 | CHEVROLET | TAHOE | 2001 | 2003-10-12 | WHILE DRIVING 50 MPH, THE CONSUMER'S VEHICLE WAS INVOLVED IN A HEAD ON COLLISION. UPON IMPACT, THE AIRBAGS DID NOT DEPLOY. THE DRIVER SUSTAINED SEVERE HEAD INJURIES AND WAS TAKEN TO A HOSPITAL. *AK *JB *NM |
| 10046166 | CHEVROLET | TAHOE | 2001 | 2003-08-03 | WHILE DRIVING 40 MPH DRIVER HIT THE BRAKES SUDDENLY AND VEHICLE HIT THE CURB AND ROLLED TWICE. UPON IMPACT, AIRBAGS DID NOT DEPLOY. PEOPLE WERE EJECTED FROM THE VEHICLE. AS A RESULT,THEY DIED. *AK |
| 10066520 | CHEVROLET | TAHOE | 2001 | 2004-04-12 | FRONTAL AIRBAGS DID NOT DEPLOY IN COLLISION. *AK |
| 10072577 | CHEVROLET | TAHOE | 2001 | 2004-04-30 | I WAS DRIVING ON THE FREEWAY. THE CRUISE CONTROL WAS SET AT 70 MPH. IT WAS RAINING I WENT THROUGH A PUDDLE AND THE CAR HYDROPLANED AND HEADED TOWRD THE CONCRETE MEDIAN, IT WOULD NOT STRAIGHTEN AND I HIT THE MEDIAN HEAD ON. THE AIRBAGS DID NOT DEPLOY.*AK |
| 10148912 | CHEVROLET | TAHOE | 2001 | 2004-12-06 | HEAD-ON COLLISION AT 50 MPH AND AIRBAGS DID NOT INFLATE.*AK |
| 10197689 | CHEVROLET | TAHOE | 2001 | 2003-11-03 | DRIVING IN LARGE PARKING LOT APPROX 25 MPH, LIGHT POLE WITH CONCRETE BASE WAS IN BLIND SPOT AS I WAS TURNING. HIT THE CONCRETE HEAD ON, $12,000 WORTH OF DAMAGE TO MY TRUCK, FRAME BENT, FRONT END REPLACED AND THE AIR BAGS FAILED TO DEPLOY. THE DEALER HAD NO EXPLANATION OTHER THAN THE DAMAGE MUST HAVE BEEN IN JUST THE WRONG SPOT. I WENT TO THE HOSPITAL WITH HEAD AND NECK INJURIES.*JB |
| 10223626 | CHEVROLET | TAHOE | 2001 | 2008-03-28 | AIRBAGS FAILED TO DEPLOY IN HEAD-ON CRASH. *TR |
| 10365882 | CHEVROLET | TAHOE | 2001 | 2010-11-12 | I WAS INVOLVED IN A COLLISION IN MY 2001 CHEVROLET TAHOE WHERE I REAR ENDED A CAR. MY VEHICLE WAS TRAVELING 54 MPH AND THE OTHER VEHICLE WAS SLOWING TO TURN WITHOUT BLINKERS OR BRAKE LIGHTS. MY AIRBAGS DID NOT DEPLOY. *TR |
| 10607227 | CHEVROLET | TAHOE | 2001 | 2007-07-04 | A VEHICLE PULLED IN FRONT OF US AND OUR VEHICLE T BONED THAT VEHICLE. NONE OF AIR BAGS DEPLOYED. WE WERE INJURED. THAT PERSON'S INSURANCE COMPANY CONTACTED US THE DAY AFTER THE ACCIDENT AND QUESTIONED WHY THE AIR BAGS DID NOT COME OUT? WE WANTED TO KNOW WHY ALSO. *TR |
| 10783656 | CHEVROLET | TAHOE | 2001 | 2015-10-16 | THE VEHICLE AIRBAGS FAILED TO DEPLOY IN ACCIDENT WERE IT RECEIVED SEVERE FRONT END DAMAGE. |
| 10820375 | CHEVROLET | TAHOE | 2001 | 2014-01-18 | TL* THE CONTACT OWNS A 2001 CHEVROLET TAHOE. WHILE DRIVING AT 45 MPH, ANOTHER VEHICLE FAILED TO YIELD AND THE CONTACT CRASHED INTO THE DRIVER SIDE OF THAT VEHICLE. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT DID NOT SUSTAIN ANY INJURIES. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO AN AUTO BODY REPAIR CENTER FOR BODY REPAIRS, BUT WAS NOT DIAGNOSED FOR THE AIR BAG FAILURE. THREE YEARS LATER, WHILE DRIVING 25 MPH, THE CONTACT CRASHED INTO AN ANIMAL AND THEN INTO A GUARDRAIL. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED BACK INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO AN AUTO BODY REPAIR CENTER, BUT WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 120,000. THE VIN WAS UNAVAILABLE. |
| 891862 | CHEVROLET | TRACKER | 2001 | 2001-07-02 | WHILE TRAVELING AT 45 TO 50 MPH ANOTHER VEHICLE IN FRONT SLAMMED ON VEHICLE'S BRAKES, AND CONSUMER'S VEHICLE REAR ENDED THE OTHER VEHICLE. NONE OF AIRBAGS DEPLOYED, AND DRIVERS SIDE SEATBELT FAILED TO LOCK. CONSUMER WAS INJURED BY STEERING WHEEL. CONSUMER HAD VEHICLE TOWED TO DEALER. PLEASE PROVIDE ANY FURTHER INFORMATION.*AK |
| 8011220 | CHEVROLET | TRACKER | 2001 | 2002-05-28 | IN AN ACCIDENT, VEHICLE HIT A POLE AND UPON IMPACT AIRBAGS DID NOT DEPLOY, CAUSING MINOR INJURIES TO DRIVER.*AK *YH |

| | | | | | |
|---|---|---|---|---|---|
| 10033620 | CHEVROLET | TRACKER | 2001 | 2003-08-11 | CONSUMER STATED WHILE DRIVING  AT NORMAL SPEED AND WEARING  SEAT BELT HAD A FRONT COLLISION ,AND NEITHER OF THE AIR BAGS DEPLOYED. NO WARNING LIGHT APPEARED  PRIOR TO THE CRASH. POLICE REPORT AND PICTURES ARE AVAILABLE. *AK |
| 10033912 | CHEVROLET | TRACKER | 2001 | | WHILE DRIVING 50 MPH  DRIVER STRUCK A DEER HEAD ON.  UPON IMPACT,  DRIVER SIDE AIRBAG DIDN'T DEPLOY.  THE DRIVER SUSTAINED SLIGHT INJURIES FROM MAKING CONTACT WITH THE STEERING WHEEL. *AK |
| 10226797 | CHEVROLET | TRACKER | 2001 | 2008-04-17 | TL*THE CONTACT OWNS A 2001 CHEVROLET TRACKER.  WHILE DRIVING 40 MPH ON A MAJOR HIGHWAY, THE CONTACT CRASHED INTO ANOTHER VEHICLE THAT WAS STOPPED IN THE ROAD. THE AIR BAGS FAILED TO DEPLOY.  THE VEHICLE WAS DESTROYED.  THE CONTACT WAS INJURED AND TRANSPORTED TO THE HOSPITAL.  A POLICE REPORT WAS FILED.  THE CURRENT AND FAILURE MILEAGES WERE 130,000. |
| 10263033 | CHEVROLET | TRACKER | 2001 | 2009-02-01 | DRIVER OF VEHICLE WHILE TRAVELING 35 MPH HIT A FORD F150 THAT MADE A U-TURN FROM THE RIGHT SHOULDER OF THE ROAD. DRIVER DID NOT HAVE TIME TO HIT BRAKES. AIRBAG DID NOT DEPLOY. DRIVER WAS INJURED. *TR |
| 10298267 | CHEVROLET | TRACKER | 2001 | 2010-01-03 | AIRBAG DID NOT DEPLOY ON CHEVY TRACKER 2001 AFTER BEING REAR ENDED AT 100 MPH WHILE TRAVELING AT A SPEED OF 69 MPH AND HIT THE CENTER DIVIDER HEAD ON. *TR |
| 8014453 | CHEVROLET | TRAILBLAZER | 2001 | | AT A 25MPH VEHICLE CRASHED AND AIRBAGS DID NOT DEPLOY. CAUSE UNKNOWN DEALER NOTIFIED.*AK |
| 8018335 | CHEVROLET | TRAILBLAZER | 2001 | | WHILE DRIVING APPROXIMATELY 58 MPH IN RAINY WEATHER WITH A TRAILER ATTACHED, TRAILER STARTED TO FISHTAIL WHILE GOING DOWN HILL.   TRAILER HAD SWUNG AROUND AND BROKE FREE OF THE HITCH AND HIT THE SIDE OF  TRUCK.  TRUCK GRAZED AN ENBANKMENT, AND WENT INTO THE MEDIUM STRIP, HITTING ANOTHER VEHICLE HEAD ON.  VEHICLE WAS TOTALED, AND DRIVER SUFFERED A HEAD INJURY AND FRACTURED VERTEBRATE.  NEITHER AIR BAG DEPLOYED UPON THE FRONTAL IMPACT.  PLEASE DESCRIBE DETAILS. *AK |
| 566304 | GMC | YUKON | 2001 | | THE VEHICLE HAS BEEN INVOLVED IN TWO ACCIDENTS IN WHICH NEITHER TIME DID THE AIR BAGS DEPLOY,DURING ONE ACCIDENT THE CONSUMER SAYS SHE ALSO DOESNT REMEMBER THE SEAT BELT TIGHTENING CAUSING HER TO STRICK HER HEAD ON THE STEERING WHEEL AND KNEES TO HIT THE DASH. *MJ |
| 878870 | GMC | YUKON | 2001 | 2000-12-23 | VEHICLE INVOLVED IN A FRONTAL COLLISION AT APPROXIMATELY 75 MPH WITH A FORD ESCORT. UPON IMPACT,  BOTH AIR BAGS DID NOT DEPLOY. PASSENGER SUSTAINED A BACK INJURY, AND DRIVER RECEIVED BRUISES  TO  NECK AND HEAD. DEALER NOTIFIED.  FEEL FREE TO PROVIDE ANY FURTHER DETAILS ON THIS MATTER.  *AK |
| 883017 | GMC | YUKON | 2001 | 2000-10-17 | VEHICLE INVOLVED IN A FRONTAL COLLISION WITH A DODGE, NEON , SPEED WAS UNDETERMINED. UPON IMPACT,  BOTH AIR BAGS DID NOT DEPLOY.  DEALER / MANUFACTURER NOTIFIED, AND NO RESPONSE WAS RECEIVED. PLEASE FEEL FREE TO PROVIDE ANY FURTHER DETAILS ON THIS MATTER. *AK |
| 6900594 | GMC | YUKON | 2001 | 2001-09-18 | WHILE DRIVING VEHICLE WAS INVOLVED IN AN ACCIDENT, AIR BAGS DID NOT DEPLOY.  *AK THE CONSUMER STATED THAT THE VEHICLE WAS HIT VERY HARD. THE IMPACT DAMAGED THE INSTRUMENT PANEL, BROKE THE WINDSHIELD, AND THE FRONT AND REAR PASSENGER DOORS NEEDED REPAIR.  *YH |
| 8004110 | GMC | YUKON | 2001 | | CONSUMER WAS INVOLVED IN A FRONT END COLLISION AT 70MPH, AND FRONTAL  AIR BAGS DID NOT TO DEPLOY. PASSENGER SUSTAINED  MAJOR BODY INJURIES.*AK |
| 8004365 | GMC | YUKON | 2001 | 2001-12-04 | WHILE DRIVING 2 MPH VEHICLE WAS STRUCK ON DRIVER'S DOOR,  CAUSING EXTENSIVE DAMAGE TO FRONT END AS WELL. NEITHER AIRBAG DEPLOYED. CONSUMER SUFFERED HEAD INJURIES. DAMAGE TO VEHICLE WAS $ 10000.00. PRIOR TO THIS. CONSUMER OWNED ANOTHER VEHICLE JUST LIKE THIS ONE.  IT ALSO HAD A FRONT CRASH AND AIRBAGS DID NOT DEPLOY. *AK |
| 8006721 | GMC | YUKON | 2001 | 2002-03-30 | WHILE TURNING LEFT AT 15 MPH\  ANOTHER VEHICLE TRAVELING AT 45 HIT CONSUMER'S VEHICLE ON FRONT DRIVER'S SIDE .  UPON IMPACT,  AIRBAGS DID NOT  DEPLOY.  PLEASE PROVIDE ANY FURTHER INFORMATION.*AK |
| 10099161 | GMC | YUKON | 2001 | 2004-11-01 | THE CONSUMER WAS APPROACHING AN INTERSECTION AND WITHOUT WARNING,  ANOTHER DRIVER CUT IN FRONT OF THE CONSUMER VEHILCE. THE DRIVER APPLIED THE BRAKES, BUT THE PEDAL WENT TO THE FLOOR.  THIS CAUSED THE OTHER VEHICLE TO COLLIDE INTO ON THE PASSENGER 'S SIDE AND PUSHED THE VEHICLE INTO A TREE.  BOTH FRONTAL AIR BAGS DID NOT DEPLOY.  THE DRIVER SUSTAINED INJURIES AND WAS TRANSPORTED BY AMBULANCE TO THE HOSPITAL. THE VEHICLE WAS TOWED TO THE DEALER.  PLEASE FILL IN ADDITIONAL INFORMATION. *JB |
| 10187683 | GMC | YUKON | 2001 | 2007-03-29 | TL* - THE CONTACT OWNS A 2001 GMC YUKON WITH A CURRENT AND FAILURE MILEAGE OF 110,000 MILES.  THE CONTACT'S VEHICLE WAS INVOLVED IN A CRASH WHILE DRIVING AT 35 MPH, AND THE AIR BAGS DID NOT DEPLOY.  THE CRASH TOOK PLACE ON A DRY DAY.  THE DRIVER BEGAN CHOKING AND PASSED OUT.  THE VEHICLE THEN RAN INTO THE BACK OF A TRUCK SITTING AT A STOP LIGHT.  THE FRONT OF THE CONTACTS VEHICLE WAS DAMAGED.  THE VEHICLE WAS TOWED TO DEALER.  *AK |
| 10587988 | GMC | YUKON | 2001 | 2011-05-04 | LETTER FROM SENATOR SCOTT ON BEHALF OF CONSTITUENT RE GMC YUKON. *SMD  THE CONSUMERS HUSBAND WAS KILLED IN AN ACCIDENT, AND THE AIR BAG DID NOT DEPLOY. *JB |

| | | | | | |
|---|---|---|---|---|---|
| 10706540 | GMC | YUKON XL | 2001 | 2014-10-17 | INITIALLY TRAVELING AT 75 MPH N/B ON HWY 99 IN FRESNO COUNTY, LOST VISION (MEDICAL INCIDENT), WIFE INSISTED I PULL OVER. STRUCK GUARD RAIL ON RIGHT SIDE OF ROAD. SECOND TRY TO PULL OVER CAUSED MY VEHICLE TO IMPACT A VERIZON JUNCTION BOX AND THEN150 FEET OF SIX-FOOT CHAIN-LINK FENCING WITH ANTI-CLIMB GUARDS THAT CAME OFF THE FENCE AND SHATTERED THE WINDSHIELD. THE AIR BAGS DID NOT DEPLOY. MY INSURANCE AGENT TOLD ME HE WAS GOING TO REPORT THIS INCIDENT TO YOU, BUT SINCE I HAVEN'T HEARD ANYTHING FROM YOU FOLK I'VE ASSUMED MY AGENT DID NOT FOLLOW THROUGH.    MY WIFE AND I SUSTAINED ONLY MINOR INJURIES FROM FLYING GLASS.  WE HAVE PHOTO'S OF THE VEHICLE. *TR |
| 10127108 | ISUZU | RODEO | 2001 | 2005-06-30 | DT: THERE WAS AN ACCIDENT. AND NO AIRBAGS DEPLOYED. THE CAR WAS EQUIPPED WITH FRONT AIR BAGS. THERE WAS NO WARNING LIGHTS ON TO INDICATE A PROBLEM. LAST TIME THE CAR WAS CHECKED THERE WAS NO INDICATION OF A PROBLEM. THE DRIVER WAS THE ONLY PERSON INJURED WITH A TOOTH KNOCKED OUT.*AK |
| 10155648 | ISUZU | RODEO | 2001 | 2006-03-11 | I HAD A BLOW OUT ON MY 2001 ISUZU RODEO, CAUSING MY VEHICLE TO GO OFF THE ROAD TO THE RIGHT RUNNING INTO ANOTHER VEHICLE. THE SEAT BELT CAME OFF, THE AIRBAGS DID NOT WORK. I SUSTAINED HEAD INJURIES CAUSING SEIZURES, A DISPLAYED SHOULDER, AND A FRACTURED JAW. DUE TO THE HEAD INJURIES I WAS UNCONSCIOUS AND UNABLE TO KEEP CONTROL OF THE VEHICLE. *NM |
| 10196817 | ISUZU | RODEO | 2001 | 2007-07-12 | TL*THE CONTACT OWNS A 2001 ISUZU RODEO. WHILE DRIVING 65 MPH WITH THE CRUISE CONTROL ACTIVATED, THE CONTACT WAS INVOLVED IN A HIGH IMPACT VEHICLE CRASH. THE MEDIAN ON THE HIGHWAY SUSTAINED PROPERTY DAMAGE. THE VEHICLE WAS DESTROYED. THE AIR BAGS FAILED TO DEPLOY. THE DEALER HAS NOT BEEN NOTIFIED. THE CONTACT SUSTAINED MODERATE INJURIES TO HIS NECK AND SHOULDERS. A POLICE REPORT WAS FILED. THE CURRENT AND FAILURE MILEAGES WERE 97,000. THE CONSUMER PROVIDED PICTURES OF THE VEHICLE. UPDATED 09/06/07 *TR |
| 10569283 | ISUZU | RODEO | 2001 | 2014-03-13 | I WAS TURNING ONTO A STREET. THE STREET WAS COVERED IN OIL OR SOME TYPE OF SLICK ELEMENT. I SKIDDED AND FELL INTO A DITCH. MY AIRBAG DID NOT DEPLOY. *TR |
| 10001710 | CADILLAC | ESCALADE | 2000 | 2002-12-05 | WHILE DRIVING AT 30 MPH VEHICLE WAS INVOLVED IN A HEAD ON COLLISION AND AIRBAGS DID NOT DEPLOY. DEALER CONTACTED. PLEASE PROVIDE ADDITIONAL INFORMATION. TS |
| 10004423 | CADILLAC | ESCALADE | 2000 | 2002-12-11 | THE CONSUMER HAD AN ACCIDENT THE AIR BAG DIDN'T DEPLOY. *DT |
| 859836 | CHEVROLET | ASTRO | 2000 | 2000-04-04 | CONSUMER WAS TRAVELING 30MPH WHILE IT WAS RAINING THAT EVENING, AND THERE WAS A SCHOOL BUS IN FRONT OF CONSUMER'S VEHICLE. CONSUMER APPLIED BRAKES AND HIT THE SCHOOL BUS FROM BEHIND. THE COLLISION IMPACT WAS SO HARD THAT VEHICLE MOVED THE SCHOOL BUS. ALSO, THE DUAL AIRBAGS DIDN'T DEPLOY AT ALL. *AK |
| 870742 | CHEVROLET | ASTRO | 2000 | 2000-09-01 | WHILE DRIVING 55 MPH AND MAKING A TURN HAD A FRONTAL IMPACT. FRONT BUMPER WAS SMASHED AND FELL OFF. ALSO, DRIVER'S AND PASSENGER'S AIRBAGS DID NOT DEPLOY, WHICH DID NOT PROTECT OCCUPANTS IN THIS CRASH. DEALER WAS NOT WILLING TO ASSIST CONSUMER. PLEASE PROVIDE FURTHER INFORMATION.*AK |
| 878344 | CHEVROLET | ASTRO | 2000 | 2001-01-17 | WHILE DRIVING ABOUT 30 MPH CRASHED INTO ANOTHER VEHICLE THAT CROSSED IN FRONT. UPON IMPACT, BOTH AIR BAGS FAILED TO DEPLOY. CURRENTLY, COMPANY WAS CONCERNED ABOUT PROBLEM WITH AIR BAGS. *AK |
| 879113 | CHEVROLET | ASTRO | 2000 | 2000-12-11 | A FRONTAL COLLISION AT 20 MPH IMPACT WITH A TREE, AND  BOTH AIR BAGS DID NOT DEPLOY. DRIVER SUSTAINED CHEST INJURY. VEHICLE AT BODY SHOP. PLEASE FEEL FREE TO PROVIDE ANY FURTHER DETAILS ON THIS MATTER. *AK |
| 882467 | CHEVROLET | ASTRO | 2000 | | CONSUMER WAS INVOLVED IN A FRONTAL COLLISION IN WHICH  DRIVER'S AND PASSENGER'S AIR BAGS DID NOT DEPLOY.  PLEASE GIVE ANY FURTHER DETAILS.*AK |
| 8000775 | CHEVROLET | ASTRO | 2000 | 2001-12-12 | WHILE TRAVELING AT 65 MPH, CONSUMER RAN INTO THE SIDE OF ANOTHER VEHICLE, HEAD-ON, UPON IMPACT NEITHER AIR BAG DEPLOYED. CONSUMER CONTACTED DEALER, AND THEY WERE NOT WILLING TO DO ANYTHING. *AK *JG |
| 8001716 | CHEVROLET | ASTRO | 2000 | 2002-01-01 | CONSUMER HAD A HEAD ON COLLISION AND AIR BAGS DID NOT DEPLOY.  CONSUMER WAS INJURED. *AK *JB |
| 8022460 | CHEVROLET | ASTRO | 2000 | 2002-11-07 | CONSUMER STATES THAT WHILE ON AN EXPRESS WAY, CONSUMER REAR ENDED A TANKER TRUCK. CONSUMERS VEHICLE WAS TOTALLED. CONSUMER  STATES' NONE OF THE VEHICLES AIRBAGS DEPLOYED. PLEASE PROVIDE ANY FURTHER INFORMATION.    TS |
| 10051329 | CHEVROLET | ASTRO | 2000 | 2003-12-16 | CHECY ASTRO CARGO VAN 2000; FRONTAL COLLISION RESULTING IN TOTAL LOSS BY INSURANCE CARRIER. NEITHER FRONT AIR BAG OPERATED. |
| 736342 | CHEVROLET | BLAZER | 2000 | 2000-07-21 | IN A HEAD-ON COLLISION WITH A GUARDRAIL, BOTH FRONT AIR BAGS FAILED TO DEPLOY.*AK |
| 877186 | CHEVROLET | BLAZER | 2000 | | CONSUMER WAS DRIVING AT APPROXIMATELY 30-35 MPH ,AND TO AVOID A CRASH CONSUMER RAN INTO A TREE HEAD-ON. UPON IMPACT.  DUAL AIRBAGS DID NOT DEPLOY, CAUSING INJURIES.*AK |
| 8013283 | CHEVROLET | BLAZER | 2000 | 2002-07-02 | CONSUMER STATES AT A 25MPH VEHICLE CRASHED, HOWEVER THE AIRBAGS DID NOT DEPLOY. CAUSE UNKNOWN. DEALER NOTIFIED.*JB  CONSUMER ADDS VEHICLE WAS STRUCK HEAD ON BY AN OUT OF CONTROL VEHICLE TRAVELING 45 MILES.  THE RIGHT FRONT FENDER CONTACTED SQUARELY AGAINST CONSUMERS FRONT BUMPER.  RESULTING IMPACT TOTALLED CONSUMERS BLAZER.  INSPECTORS WERE AMAZED THAT AIR BAGS DID NOT DEPLOY.   *TT |
| 8014195 | CHEVROLET | BLAZER | 2000 | | WHILE DRIVING 25-30 MPH AND WITHOUT WARNING INVOLVED IN A HEAD-ON COLLISION. UPON IMPACT, AIR BAGS DID NOT DEPLOY. DEALER HAS BEEN NOTIFIED.*AK THERE WERE 2 INJURIES. *YH |

| 8015817 | CHEVROLET | BLAZER | 2000 | | WHILE DRIVING 25 MPH  AND WITHOUT WARNING A HEAD ON COLLISION OCCURRED. UPON IMPACT,  AIR BAGS DID NOT DEPLOY, AND DRIVER SUSTAINED  MINOR INJURIES. *AK |
| 8022825 | CHEVROLET | BLAZER | 2000 | 2002-11-01 | FRONT CRASH AT 40 MPH, VEHICLE HIT A TREE. NEITHER AIRBAG DEPLOYED, DRIVER SUFFERED MINOR INJURIES. AMOUNT OF DAMAGE UNKNOWN AT THIS TIME.   TS |
| 10006273 | CHEVROLET | BLAZER | 2000 | 2003-02-01 | VEHICLE WAS IN A FRONTAL COLLISION, BUT NONE OF THE AIRBAG DEPLOYED UPON IMPACT.  THE DRIVER SUSTAINED HEAD,NECK AND BACK INJURIES. PLEASE PROVIDE MORE DETAILS. |
| 10014969 | CHEVROLET | BLAZER | 2000 | 2003-03-15 | THE VEHICLE WAS INVOLVED IN A FRONTAL ACCIDENT, AND NONE OF THE AIR BAGS DEPLOYED. *JB |
| 10015762 | CHEVROLET | BLAZER | 2000 | 2003-04-12 | WHILE DRIVING 45 MPH THE VEHICLE WAS INVOLVED IN A COLLISION BUT THE AIR BAGS DID NOT DEPLOY.  *NLM |
| 10016961 | CHEVROLET | BLAZER | 2000 | 2003-04-08 | HEAD ON COLLISION WITH SOLID CEMENT BRIDGE AT 40+ MPH.  AIR BAGS DID NOT DEPLOY, SEAT BELTS DID NOT LOCK IN PLACE ON IMPACT NOR DURING ROLL OVER ON MY 2000 CHEVY BLAZER. *JB |
| 10059300 | CHEVROLET | BLAZER | 2000 | 2004-02-07 | WHILE DRIVING 45 MPH THE DRIVER DROVE OVER SOME BLACK ICE AND LOST CONTROL OF THE VEHICLE.  THE VEHICLE RAN INTO AN EMBANKMENT HEAD ON. THE CONSUMER STATED THAT NEITHER OF THE FRONTAL AIR BAGS DEPLOYED.  THE CONSUMER CONTACTED THE DEALER.  *NM |
| 10106730 | CHEVROLET | BLAZER | 2000 | 2004-12-14 | WHILE DRIVING 55 MPH THE CONSUMER WAS INVOLVED IN  FRONTAL COLLISION. UPON IMPACT, THE AIR BAGS DID NOT DEPLOY.  THE DRIVER SUSTAINED MAJOR  NECK,BACK , AND HIP INJURIES. THE VEHICLE WAS TOTALED.  *AK. (SEE ALSO ODI REF. NO. 10106755 - SAME VEHICLE) *MJ . *TC |
| 10108627 | CHEVROLET | BLAZER | 2000 | 2005-01-18 | THE TRUCK SLID ON A PATCH OF ICE 100 YARDS AFTER MERGING ONTO THE INNER STATE. THIS RESULTED IN THE CONSUMER LOSING CONTROL OF THE TRUCK. THE TRUCK FRONT DRIVER SIDE IMPACTED A CONCRETE BRIDGE; THEN SWUNG AROUND;THE REAR DRIVER SIDE HIT THE BRIDGE; THIS THREW THE TRUCK INTO THE RIGHT HAND LANE, INTO THE GUARD RAIL , IMPACTING THE FRONT PASSENGER SIDE; THEN THE TRUCK BOUNCED TO THE LEFT HAND LANE AND IMPACTED THE GUARD RAIL HEAD ON. NONE OF THE AIR BAGS DEPLOYED UPON IMPACT. THE DRIVER SUSTAINED SEVERE INJURIES TO THEIR NECK, BACK, AND LEFT SHOULDER.  *NM |
| 10132243 | CHEVROLET | BLAZER | 2000 | 2005-08-06 | T-BONE COLLISION, APPROXIMATELY 45 MPH. FRONT END OF VEHICLE BADLY DAMAGED, NO AIRBAG DEPLOYMENT.  *NM |
| 10226626 | CHEVROLET | BLAZER | 2000 | 2008-04-30 | THE CONTACT'S SPOUSE OWNS THE 2000 CHEVROLET BLAZER.  THE CONTRACT STATE THAT THIS DAUGHTER WAS DRIVING APPROXIMATELY 30 MPH, THEN SHE HIT A DIVIDER AND THE VEHICLE ROLLED OVER SEVERAL TIMES LANDING ON THE DRIVERS SIDE OF THE VEHICLE.  NEITHER AIR BAR DEPLOYED.  THE DRIVER WAS INJURIES AND THE VEHICLE WAS TOTALED BY THE INSURANCE COMPANY.  THE CURRENT AND FAILURE MILEAGE IS 85210.  JP |
| 10609197 | CHEVROLET | BLAZER | 2000 | 2013-07-10 | HAD A FRONT END COLLISION. THE FRONT END WAS DESTROYED. NO AIR BAGS WENT OFF. BOTH VEHICLES CAME OFF A RED LIGHT, ALL VEHICLES STOPPED SUDDENLY AND MY TRUCK REAR ENDED A TOYOTA PICKUP. *TR |
| 10693647 | CHEVROLET | BLAZER | 2000 | 2015-01-31 | TL* THE CONTACT OWNED A 2000 CHEVROLET BLAZER. WHILE DRIVING AT APPROXIMATELY 45 MPH, THE VEHICLE CRASHED HEAD ON INTO ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED AND NO INJURIES WERE REPORTED. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 120,650. |
| 731125 | CHEVROLET | SILVERADO | 2000 | 1999-10-23 | A CAR ATTEMPTED TO TURN IN FRONT OF US, HE DID NOT MAKE IT. WE WERE TRAVELING BETWEEN 38-40 MPH WHEN WE HIT THE OTHER VEHICLE HEAD ON.  AIRBAGS DID NOT DEPLOY ON EITHER SIDE OF THE VEHICLE.  THE TRUCK WAS TOTAL LOSS.  THE OTHER PARTY'S VEHICLE ALSO WAS A. *AK |
| 734605 | CHEVROLET | SILVERADO | 2000 | 2000-09-19 | I CONTACTED SARAH SCHILLE OF GENERAL MOTORS ABOUT THIS FAILURE.SHE SENT AN INVESTIGATOR TO TOM BENSON TO LOOK AT THE TRUCK. HE DID WHATEVER HE DOES TO COLLECT DATA FROM THE VEHICLE AND THEN TAKES PICTURES ETC. AND SENDS ALL OF THE INFORMATION TO GM FOR EVALUATION. I FEEL THIS ACCIDENT WAS SEVERE ENOUGH FOR THE AIRBAGS DEPLOY AND I'M NOT SATISFIED AT ALL WITH GM'S RESPONSE TO THE SITUATION. I REQUESTED THE REPORT AND A COPY OF THE DEPLOYMENT CRITERIA AND I WAS TOLD THAT INFORMATION WILL NOT BE SUPPLIED. HOW AM I TO KNOW IF THIS IS A FAILURE OR NOT. THIS INFORMATION SHOULD NOT BE PRIVATE TO THE MANUFACTURER ONLY. I WANT SOMEONE TO LOOK INTO THIS PROBLEM. |
| 739117 | CHEVROLET | SILVERADO | 2000 | 2001-01-02 | HIT A GUARD RAIL HEAD ON, WENT OVER IT AND NOSE DIVED INTO A 10FT. DEEP DITCH, FLIPPING ONTO THE ROOF.  NEITHER AIRBAG DEPLOYED AFTER HITTING THE FRONT END TWICE. *AK |
| 745943 | CHEVROLET | SILVERADO | 2000 | 2001-05-19 | MY 2000 CHEVROLET SILVERADO TRUCK WAS INVOLVED IN A HEAD-ON COLLISION ON MAY 19, 01. VEHICHLE WAS TRAVELING AT APPROXIMATELY 40 MPH. WHEN VEHICHLE WAS STRUCK HEAD-ON AND KNOCKED APPROXIMATELY 23 FT. BACKWARDS ONTO THE SHOULDER OF ROADWAY.  UPON IMPACT DRIVER SIDE AIRBAG DID NOT DEPLOY.  DRIVER OF TRUCK RECIEVED CONTUSIONS, ABRASIONS, AND BRUISING RESULTING FROM CONTACT WITH STEERING COLUMN AND DASH PANEL.  BOTH VEHICHLES INVOLVED IN CRASH WERE DETERMINED TO BE TOTAL LOSSES.*AK |

| | | | | |
|---|---|---|---|---|
| | | | | THE 2000 CHEVROLET SILVERADO CRASHED HEAD ON INTO A TREE, THE AIRBAGS DID NOT DEPLOY. THE DRIVER, DAKOTA KANETZKY, HAD NUMEROUS FACIAL FRACTURES CAUSED WHEN HIS HEAD HIT AND CRACKED THE WINDSHIELD. HE WAS HOSPITALIZED FOR 5 DAYS AND IS STILL UNDER A |
| 766686 | CHEVROLET | SILVERADO | 2000 | 2002-08-22 | DOCTOR'S CARE.*AK |
| 767253 | CHEVROLET | SILVERADO | 2000 | | AIR BAGS DID NOT DEPLOY ON RIGHT FRONT COLLISION WITH CONCRETE WALL. *AK |
| | | | | | HEADING SOUTH ON HIGHWAY US 1, TRAVELING 55MPH WITH CRUISE CONTROL ON, ANOTHER VEHICLE COMING NORTH TURNED IN FRONT, AND CONSUMER HIT. VEHICLE ON THE SIDE, UPON IMPACT, DRIVER'S SIDE AIRBAG DID NOT DEPLOY. CONTACTED DEALER, AND HE WAS NOT ABLE |
| 860353 | CHEVROLET | SILVERADO | 2000 | 2000-01-19 | TO HELP. *AK |
| | | | | | DRIVER HAD LOST CONTROL OF VEHICLE  HIT A TELEPHONE POLE HEAD-ON WITH A 50-65 MPH IMPACT, AND THEN DROVE INTO A FIELD . UPON IMPACT, DUAL AIRBAGS DID NOT DEPLOY, BUT SEATBELTS  WERE ON AT THE TIME. AS A RESULT, PASSENGER HAD CRACKED STERNUM,AND |
| 871368 | CHEVROLET | SILVERADO | 2000 | 2000-09-08 | DRIVER HAD MILD WHIPLASH.PLEASE PROVIDE FURTHER INFORMATION. *AK |
| | | | | | CONSUMER WAS INVOLVED IN 55 MPH FRONTAL COLLISION IN WHICH DRIVER'S AND PASSENGER'S AIR BAGS DID NOT DEPLOY. ALSO, FRONT END  WAS HEAVILY DAMAGED. PLEASE |
| 872110 | CHEVROLET | SILVERADO | 2000 | | GIVE ANY FURTHER DETAILS.*AK |
| | | | | | VEHICLE WAS INVOLVED IN A FRONTAL  COLLISION WITH A TREE AT 20 MPH, AND BOTH AIR BAGS DID NOT DEPLOY. DEALER/MANUFACTURER WERE NOT NOTIFIED AT THIS TIME. PLEASE FEEL FREE |
| 872528 | CHEVROLET | SILVERADO | 2000 | 2000-04-29 | TO PROVIDE ANY FURTHER DETAILS. *AK |
| | | | | | WHILE TRAVELING AT, SPEED 45 MPH WHEN REAR ENDED ANOTHER VEHICLE. UPON IMPACT, |
| 878288 | CHEVROLET | SILVERADO | 2000 | | DRIVER'S  AIR BAG DID NOT DEPLOY. *AK |
| | | | | | CONSUMER WAS TRAVELING AT APPROXIMATELY 60 MPH WHEN A TRAFFIC JAM AHEAD OF HIM OCCURRED. CONSUMER APPLIED BRAKES AND ATTEMPTED TO SLOW DOWN. BRAKES FAILED TO SLOW VEHICLE DOWN, AND  REAR ENDED A VEHICLE IN FRONT OF HIM ON  FRONT DRIVERS SIDE OF VEHICLE. BOTH FRONTAL AIRBAGS FAILED TO DEPLOY. PLEASE PROVIDE ANY ADDITIONAL |
| 886000 | CHEVROLET | SILVERADO | 2000 | 2001-04-08 | INFORMATION/ATTACHMENTS.*AK |
| | | | | | WAS TRAVELING 60MPH AND  LOST CONTROL OF VEHICLE DUE TO ITS DRIFTING. IT WENT SIDEWAYS  AND OFF THE ROAD. THEN, VEHICLE WENT AIR BORNE AFTER STRADDLING  DRIVEWAY WAS OF CONCRETE TILE. LANDED ON  BUMPER, THEN FLIPPED ON  TOP. AIR BAGS FAILED TO |
| 887723 | CHEVROLET | SILVERADO | 2000 | 2001-04-23 | DEPLOY. DRIVER SUFFERED INJURIES AND WAS HOSPITALIZED.*AK |
| | | | | | WHILE TRAVELING AT APPROXIMATELY 45 TO 50 MPH VEHICLE IMPACTED ANOTHER VEHICLE, CAUSING $11,000 WORTH OF DAMAGE TO  FRONT OF  TRUCK. UPON IMPACT, DRIVER'S AIR BAG FAILED TO DEPLOY WHILE  PASSENGER'S AIR BAG WAS TURNED OFF.  INSURANCE COMPANY  WAS HAVING VEHICLE REPAIRED.  PLEASE PROVIDE ANY ADDITIONAL INFORMATION/ATTACHMENTS. |
| 891918 | CHEVROLET | SILVERADO | 2000 | 2001-06-13 | *DRIVER EXPERIENCED NECK INJURIES  AND STIFF NECK .*AK |
| | | | | | HEAD COLLISION AT 60-65MPH, AND  AIR BAGS DID NOT DEPLOY. THERE WAS NO PRIOR WARNING. |
| 892771 | CHEVROLET | SILVERADO | 2000 | 2001-06-28 | CONTACTED MANUFACTURER,  AND  MANUFACTURER WAS NOT WILLING TO DO ANYTHING.*AK |
| | | | | | WHILE DRIVING 30 TO 35 MPH  HAD A CRASH, AND AIRBAGS DID NOT DEPLOY. DAMAGED FRONT |
| 893040 | CHEVROLET | SILVERADO | 2000 | 2001-06-25 | END OF TRUCK. CONTACTED DEALER. *AK |
| | | | | | CONSUMER WAS TRAVELING ABOUT 40MPH ON  HIGHWAY AND THERE WAS OIL ON  HIGHWAY. CONSUMER  LOST CONTROL OF THE VEHICLE, AND IT HIT A GUARDRAIL. UPON IMPACT,  DRIVER'S SIDE AIRBAG DIDN'T DEPLOY.  DEALERSHIP  WAS AWARE OF  PROOBLEM. *AK  DRIVER RECEIVED |
| 895573 | CHEVROLET | SILVERADO | 2000 | 2001-08-29 | BACK AND NECK INJURIES.  *SLC |
| | | | | | CONSUMER STATED VEHICLE WAS INVOLVED IN A FRONTAL CRASH OF 30 MPH, AND THE AIR BAGS DID NOT DEPLOY, DEALER DID NOT CHECK VEHICLE, BECAUSE GM WOULD NOT GIVE THEM |
| 8001868 | CHEVROLET | SILVERADO | 2000 | 2001-12-18 | PERMISSION. *AK *JG |
| | | | | | WHILE DRIVING, VEHICLE WAS INVOLVED IN AN ACCIDENT. UPON IMPACT, AIR BAG ON |
| 8001872 | CHEVROLET | SILVERADO | 2000 | 2001-12-11 | DRIVER/PASSENGER SIDE DID NOT DEPLOY, DRIVER WAS INJURED. *AK *YH |
| | | | | | WHILE DRIVING WAS HIT HEAD-ON BY ANOTHER VEHICLE AND BOTH DRIVER AND PASSENGERS AIRBAGS DID NOT DEPLOY. CONSUMER WAS DRIVING APPROXIMATELY 30MPH ,AND THE OTHER |
| 8014186 | CHEVROLET | SILVERADO | 2000 | 2002-07-03 | VEHICLE WAS DRIVING APPROXIMATELY 40-50MPH.*AK THERE WERE 2 INJURIEES. *YH |
| | | | | | IN A FRONTAL COLLISION, VEHICLE ROLLED  4 TIMES. UPON IMPACT, NONE OF THE AIR BAGS |
| 8016756 | CHEVROLET | SILVERADO | 2000 | 2002-08-04 | DEPLOYED.*AK |
| | | | | | VEHICLE INVOLVED WAS IN A FRONTAL COLLISION WITH A TREE, UPON IMPACT AIR BAGS DID NOT DEPLOY.  VEHICLE WAS TRAVELING APPROXIMATELY 40MPH.*AK CONSUMER STATED THE ROAD WAS UNEVEN AND THE RIGHT SIDE TIRES WAS CAUGHT IN A WASHOUT, CONSUMER TRIED TO BRING THE TIRES BACK ON THE ROAD BUT OVERCORECTED, THE VEHICLE THEN BEGAN TO FISHTAIL, AFTER COMING BACK ON THE ROAD, SLID ACROSS THE HIGHWAY AND HIT A TREE, THE DRIVER |
| 8017393 | CHEVROLET | SILVERADO | 2000 | 2002-08-25 | SUFFERED INJURIES.*JB |
| | | | | | WHILE TRAVELING AT 55 MPH LOST CONTROL OF VEHICLE AND HIT A CONCRETE DIVIDER, VEHICLE WAS AIRBORNE AND LANDED ON DRIVER'S SIDE.  NONE OF THE AIRBAGS DEPLOYED, AND |
| 8017521 | CHEVROLET | SILVERADO | 2000 | 2002-08-01 | CONSUMER SUSTAINED LEG INJURY.  PLEASE PROVIDE ANY FURTHER INFORMATION.*AK |
| | | | | | UPON A FRONTAL IMPACT AT ESTIMATED SPEED OF 55 MPH, NEITHER DUAL AIR BAG DEPLOYED. CHEVROLET TOLD CONSUMER THAT AIR BAGS DEPLOY IN CERTAIN SITUATIONS.  OWNER HAS |
| 8018038 | CHEVROLET | SILVERADO | 2000 | | RECEIVED A RECALL NOTICE FOR  AIR BAGS. PLEASE DESCRIBE DETAILS.  *AK |

| | | | | | |
|---|---|---|---|---|---|
| 8022592 | CHEVROLET | SILVERADO | 2000 | 2002-09-28 | CONSUMER WAS TRAVELING AROUND A CURVE, CONSUMER SUDDENLY LOST CONTROL OF VEHICLE. CONSUMER STATES VEHICLE SLAMMED INTO A TREE AND NONE OF THE AIRBAGS DEPLOYED. PLEASE PROVIDE ANY FURTHER INFORMATION. MR |
| 8023044 | CHEVROLET | SILVERADO | 2000 | 2002-11-06 | VEHICLE WAS IN A FRONT COLLISON AND NONE OF THE AIR BAGS DEPLOYED UPON IMPACT. NONE OF THE OCCUPANTS IN THE VEHICLE WERE SERIOUSLY INJURED AT TIME OF THE ACCIDENT. PLEASE PROVIDE MORE DETAILS. TS |
| 10005962 | CHEVROLET | SILVERADO | 2000 | | AIR BAGS FAILED TO DEPLOY IN A COLLISION, RESULTING IN A FATALITY. *AK *JB |
| 10008044 | CHEVROLET | SILVERADO | 2000 | 2003-01-26 | AIR BAGS FAILED TO DEPLOY FROM FRONTAL IMPACT DURING MOTOR VEHICLE ACCIDENT |
| 10008151 | CHEVROLET | SILVERADO | 2000 | 2003-02-16 | THE VEHICLE WAS INVOLVED IN AN ACCIDENT, AND THE AIR BAG FAILED TO DEPLOY. *JB |
| 10022039 | CHEVROLET | SILVERADO | 2000 | 2003-04-11 | THE VEHICLE WAS INVOLVED IN FRONTAL COLLISION, AND THE AIR BAGS FAILED TO DEPLOY. THE CONSUMER WAS INJURED. *AK *TS *JB |
| 10027230 | CHEVROLET | SILVERADO | 2000 | 2003-06-16 | THE VEHICLE WAS INVOLVED IN A FRONTAL COLLISION WHILE DRIVING AT 40 MPH AND NONE OF THE AIR BAGS DEPLOYED UPON IMPACT. DRIVER IMPACTED THE STEERING WHEEL, AND DRIVER'S SIDE SEAT BELT DIDN'T RETRACT. *AK *PH *JB |
| 10029556 | CHEVROLET | SILVERADO | 2000 | 2003-07-17 | WHILE DRIVING AT 45MPH CONSUMER HAD A FRONT COLLISION ,AND NEITHER OF THE FRONT BAGS DEPLOYED. *AK |
| 10044432 | CHEVROLET | SILVERADO | 2000 | | AIR BAGS DID NOT DEPLOY WHEN VEHICLE STRUCK A TREE HEAD ON. VEHICLE WAS TRAVELING AT 40 MPH. DRIVER WAS INJURED. *AK |
| 10045511 | CHEVROLET | SILVERADO | 2000 | 2003-09-28 | I REARENDED A VEHICLE THAT WAS SITTING STILL IN THE MIDDLE OF THE ROAD, I WAS TRAVELING ABOUT 40-45 MPH, AND NEITHER AIR BAG DEPLOYED. I WAS SHIFTED IN THE VEHICLE AND HAVE KNEE AND BACK PROBLEMS. *LA |
| 10081392 | CHEVROLET | SILVERADO | 2000 | 2004-06-22 | WHILE DRIVING 45-55 MPH CONSUMER'S VEHICLE WAS REAR-END BY A TRACTOR TRAILER PUSHING CONSUMER'S VEHICLE OFF ROAD AND INTO A DITCH, FRONT END FIRST. UPON IMPACT, AIR BAGS DID NOT DEPLOY. *AK BOTH THE DRIVER AND THE PASSENGER SUSTAINED INJURIES. THE DRIVER INJURED HIS NECK, BACK, HIPS AND PELVIS. THE PASSENGER INJURED HER RIGHT SHOULDER, CHEST, BACK AND HIPS. |
| 10101301 | CHEVROLET | SILVERADO | 2000 | 2004-11-02 | CONSUMER'S VEHICLE WAS INVOLVED IN A HEAD ON COLLISION WHILE DRIVING AT 25-30 MPH. UPON IMPACT, AIR BAGS DID NOT DEPLOY. RECALL 02V178000 WAS ISSUED. MANUFACTURER WAS NOT WILLING TO ASSIST THE CONSUMER. *AK |
| 10108404 | CHEVROLET | SILVERADO | 2000 | 2005-01-31 | THE EVENT WAS A CAR PULLED OUT IN FRONT OF ME WHICH STILL HIT THE DRIVER'S SIDE OF MY VEHICLE (2000 CHEVY SILVERADO). THEN MY TRUCK HAD A FULL FRONTAL IMPACT AT GREATER THAN 30 MPH INTO A DIRT WALL IN WHICH NEITHER THE DRIVER'S NOR PASSENGER'S AIRBAGS DEPLOYED (THE TRUCK IS TOTALLED). I HIT THE STEERING WHEEL AND GOT A CONCUSSION WITH BLOOD AROUND THE BRAIN, A BROKE CHEEK BONE, AND FRACTURED HIP. MY WIFE WAS 33 WEEKS PREGANANT AT THE TIME AND HER WATER BROKE AND SHE GOT A COMPOUND FRACTURE IN THE LOWER LEG/ANKLE. AS A RESULT OF THE WATER BREAKING MY SON WAS BORN 3 DAYS LATER 7 WEEKS PREMATURE. AS FOR WHAT WAS DONE TO CORRECT THE PROBLEM I'M HOPING IT WILL AT LEAST BE INVESTIGATED TO MAKE SURE THIS IS NOT A SYSTEMIC PROBLEM (I.E. SOFTWARE SCREWUP SOMETHING NOT HOOKED UP RIGHT IN THE AIRBAG SYSTEM ETC). I HAVE PICS OF THE TRUCK AND THE CRASH SITE I CAN SEND IF NECESSARY. I CAN ALSO PROVIDE THE LOCATION OF THE TRUCK SO IT CAN BE INSPECTED. *AK |
| 10111181 | CHEVROLET | SILVERADO | 2000 | 2004-12-22 | RECALL CAMPAIGN 02V078 00 CONCERNING AIR BAG SENSING MODULE. CONSUMER'S VEHICLE WAS INVOLVED IN A REAR END COLLISION, IT CRASHED INTO ANOTHER VEHICLE IN FRONT AT 50 MPH. UPON IMPACT, NEITHER FRONTAL AIR BAG DEPLOYED. CONSUMER SUSTAINE DINJURIES, AND WAS TRANSPORTED TO THE LOCAL HOSPITAL BY AMBULANCE. DEALER AND MANUFACTURER WERE NOTIFIED. *AK |
| 10113830 | CHEVROLET | SILVERADO | 2000 | 2005-03-08 | WHILE DRIVING 20 MPH CONSUMER'S VEHICLE WAS INVOLVED IN A FRONTAL COLLISION. UPON IMPACT, BOTH FRONTAL AIR BAGS FAILED TO DEPLOY. VEHICLE WAS TOWED TO A GARAGE FOR INSPECTION. THE CAUSE HAD NOT BEEN DETERMINED AT THIS TIME. THIS INFORMATION WAS PROVIDED BY RICKY'S WIFE KAREN FLIMP. *AK |
| 10120946 | CHEVROLET | SILVERADO | 2000 | 2005-05-06 | I WAS IN A HEAD ON COLLISION AND RECEIVED A COMPOUND FRACTURE TO MY RIGHT FEMUR BONE, 2 BLACK EYES AND FRACTURED RIBS DUE TO THE INACTIVATION OF THE DRIVERS AND PASSENGER AIRBAG MODULES, ALSO THE STEERING WHEEL BENT RESEMBLING AN AIRPLANE WHEEL. MY WIFE CHECKED THE INTERNET AFTER THE INCIDENT AND FOUND THERE WAS A RECALL FOR THE AIRBAG MODULE ON THE YEAR OF MY 2000 CHEVROLET SILVERADO TRUCK. WE WERE NEVER NOTIFIED OF THIS BEFORE THE INCIDENT, BUT ARE CURRENTLY RECEIVING UPDATES TODAY. DO NOT UNDERSTAND WHY WE WERE NEVER NOTIFIED OF THIS. THE TRUCK IS NOW IN A STORAGE YARD AND WE ARE AWAITING THE RESPONSE FROM THE INSURANCE ADJUSTOR. |
| 10122067 | CHEVROLET | SILVERADO | 2000 | 2005-03-19 | OFF CENTER HEAD ON CRASH WITH 2 SIMILAR 2000 CHEVY SILVERADO EXTENDED CAB PICK UP TRUCKS. ESTIMATED IMPACT SPEED 90 MPH ( 60 MPH VEHICLE 2, 30 MPH VEHICLE 1 PER CHP REPORT) NO AIRBAG DEPLOYMENT OF EITHER VEHICLE. |
| 10128831 | CHEVROLET | SILVERADO | 2000 | 2005-07-01 | AIR BAGS DID NOT DEPLOY UPON IMPACT |
| 10137048 | CHEVROLET | SILVERADO | 2000 | 2005-09-11 | DT: CONSUMER'S VEHICLE WAS INVOLVED IN A CAR ACCIDENT ON SEPTEMBER 11, 2005 WHILE DRIVING 50-55 MPH. IT WAS A HEAD ON COLLISION. UPON IMPACT, DRIVER'S SIDE AIR BAG DID NOT DEPLOY. THE CONSUMER HAD NOT CONTACTED THE DEALER OR MANUFACTURER. *AK |

| | | | | | |
|---|---|---|---|---|---|
| 10139984 | CHEVROLET | SILVERADO | 2000 | 2005-06-17 | DT:  THE CONTACT'S SON  WAS INVOLVED IN  AN ACCIDENT ON 6-17-05. THE CONTACT RECEIVED A COPY OF THE CRASH REPORT.  UPON IMPACT,  NEITHER AIR BAG DEPLOYED. THE VEHICLE  HIT SEVERAL TREES. THE POLICE REPORT STATED THE SPEED LIMIT WAS 55 MPH. THE PASSENGER'S HEAD WENT THROUGH THE WINDSHIELD, BUT PASSENGER WAS NOT SERIOUSLY HURT. NEITHER THE DRIVER NOR THE PASSENGER HAD TO GO TO THE HOSPITAL. THE CONTACT REPORTED THAT AIR BAG LIGHT ILLUMINATED IN THE CAR PRIOR TO THE INCIDENT. THE INSURANCE COMPANY HAS BEEN NOTIFIED. THE TRUCK WAS TOTALED. THE CONTACT TOOK PICTURES OF THE PINE TREE THAT WAS EMBEDDED IN THE HOOD.  UPDATED 11/15/05. *JB |
| 10199593 | CHEVROLET | SILVERADO | 2000 | 2007-08-10 | TL*THE CONTACT OWNS A 2000 CHEVROLET SILVERADO.  WHILE DRIVING 30 MPH HE DEPRESSED THE BRAKES AND CRASHED INTO THE VEHICLE IN FRONT OF HIM.  THE AIR BAGS DID NOT DEPLOY. THE FRONT SEAT PASSENGER SUSTAINED A LACERATED SPLEEN AND CONTUSION OF THE HEART.  A COMPLAINT WAS SUBMITTED TO THE MANUFACTURER (COMPLAINT # 71-546827970).  THE CURRENT AND FAILURE MILEAGES WERE 128,000.  UPDATED 02-01-08 *BF  UPDATED 02/01/08. *TR |
| 10328507 | CHEVROLET | SILVERADO | 2000 | 1901-01-01 | CONSUMER STATES THAT AIRBAGS DID NOT DEPLOY DURING ACCIDENT IN A 2000 CHEVROLET SILVERADO CAUSING SERIOUS INJURY. *GR |
| 878851 | CHEVROLET | SUBURBAN | 2000 | 2000-12-11 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION AT 60MPH. UPON IMPACT, AIRBAGS DID NOT DEPLOY.  VEHICLE ROLLED OVER,  AND VEHICLE EXPLODED. THERE WERE MINOR INJURIES. *AK |
| 8002321 | CHEVROLET | SUBURBAN | 2000 | | WHILE DRIVING  AT 25 MPH AN ACCIDENT OCCURRED, AND SEATBELT DID NOT TIGHTEN/ AIRBAG DID NOT DEPLOY. . PLEASE PROVIDE ANY FURTHER INFORMATION, AND IDENTIFICATION NUMBER. *AK |
| 8017775 | CHEVROLET | SUBURBAN | 2000 | | A TIRE SHEARED OFF, ANOTHER TRUCK CROSSING MEDIAN  BEGAN HEADING STRAIGHT TO CONSUMER'S VEHICLE.  DRIVER ATTEMPTED TO MANUEVER, BUT RAN OFF THE ROAD.  UPON FRONTAL OFF CENTERED IMPACT AT 60 MPH,  AND DUAL AIR BAGS FAILED TO DEPLOY. *AK |
| 557967 | CHEVROLET | TAHOE | 2000 | 2000-09-01 | RIGHT FRONT TIRE (NO MAKE OR MODEL PROVIDED) EXPERIENCED A BLOWOUT, CAUSING THE VEHICLE TO GO OFF THE ROAD, COME BACK ONTO THE ROADWAY, AND CRASH INTO A CEMENT WALL, THE CONSUMER STATED THAT HE BELIEVED THE BACK RIGHT TIRE EXPERIENCED A BLOWOUT AS WELL, DURING THE CRASH THE AIRBAG EXPERIENCED A NO DEPLOYMENT, ONE PERSON WAS INJURED DUE TO THE INCIDENT. (OHIO TRAFFIC CRASH REPORT) *SLC |
| 563859 | CHEVROLET | TAHOE | 2000 | 2001-10-03 | THE CONSUMER WAS INVOLVED IN A MAJOR ACCIDENT BUT THE DRIVER SIDE AIR BAGS FAILED TO DEPLOY. THE CONSUMER SUFFERED INJURIES.  *YH |
| 567545 | CHEVROLET | TAHOE | 2000 | 2000-11-11 | CONSUMER WAS IN TWO ACCIDENTS.  ONE IN NOVEMER OF 2000 AND THE OTHER IN SEPTEMBER OF 2002. THE AIR BAGS DID NOT DEPLOY IN EITHER INCIDENT.  CONSUMER DESCRIBED THE INCIDENTS TO A REPRESENTATIVE OF GENERAL MOTORS.  CONSUMER WAS INFORMED THAT THE AIR BAGS SHOULD NOT HAVE DEPLOYED, IN THE FIRST ACCIDENT THERE WAS ONE INJURY, IN THE SECOND ACCIDENT,  THERE WERE TWO INJURIES.  *JG |
| 740413 | CHEVROLET | TAHOE | 2000 | 2001-02-01 | HEAD ON COLLISION, IMPACT ON FRONT RIGHT SIDE, HIT AND SHEARED IN HALF A WOODEN UTILITY POLE, NO AIR BAG DEPLOYMENT ON EITHER SIDE, BUMPER IS CURLED UNDER FRONT END OF VEHICLE. *AK |
| 767411 | CHEVROLET | TAHOE | 2000 | 2001-11-11 | ON NOVEMBER 11,2000 I HAD A HEAD ON COLLISION (NOT MY FAULT) AND THE AIRBAGS DIDN'T DEPLOY. THEN ON SEPT 1,02  WE HAD A ACCIDENT ON INTERSTATE 95  THAT WE TOTALED THE TAHOE AND THE BODY SHOP CALLED GM SINCE THE AIRBAGS DIDN'T DEPLOY AGAIN. MR. LATTERMERE FROM GM CALLLED ME AND TOLD ME OVER THE PHONE AFTER I DESCRIBE THE ACCIDENT TO HIM THAT , AS HE DREW A PICTURE ON PAPER, "THAT THE AIR BAGS SHOULDN'T HAVE DEPLOYED". I FIND IT VERY DIFFICULT THAT A PERSON CAN DRAW A PICTURE AND TELL ME THIS. I WOULD LIKE FOR YOUR ORGANIZATION TO INSPECT THIS VECHILE AND RETRIEVE THE COMPUTER INFORMATION AND LET ME KNOW WHAT YOU THINK. GM SENT AN "INDEPEDENT" INSPECTOR OUT TO DO A REPORT BUT I HAVE NOTHING FROM HIM OR GM ON THE FINDING. I HAVE LEFT MESSAGES FOR MR. LATTERMERE TO CALL ME TO NO AVAIL. *AK |
| 8018021 | CHEVROLET | TAHOE | 2000 | 2002-09-01 | CONSUMER STATES WHILE DRIVING 55MPH HIT CONCRETE DIVIDER AND AIR BAGS DID NOT DEPLOY. *JB |
| 10111305 | CHEVROLET | TAHOE | 2000 | 2005-01-02 | WHILE DRIVING CONSUMER HIT A PATCH  OF ICE WHICH SENT THE VEHICLE SLIDING, AND CAUSING AN ACCIDENT. HOWEVER, THE AIR BAGS DID NOT DEPLOY, AND CONSUMER WAS INJURED. CONSUMER  CONTACTED THE DEALER, AND MANUFACTURER.  *AK   CONSUMER FEELS THAT MUCH OF THE PAIN AND SUFFERING MIGHT HAVE BEEN PREVENTED BY THE PROTECTION OF THE 4 AIR BAGS IN THIS VEHICLE-NONE OF WHICH DEPLOYED UPON AN IMPACT THAT CRUSHED THE FRONT OF THE VEHICLE. JAMMED TH EFRONT PASENGER DOOR WHICH CONSUMER COULD NOT OPEN , AND BENT THE CAR'S FRAME BEYOND REPAIR.  *BF |
| 10150002 | CHEVROLET | TAHOE | 2000 | 2006-02-08 | I WAS RECENTLY IN AN ACCIDENT AND MY 2 CHILDREN WERE IN THE VEHICLE WITH ME.  I WAS IN A 5 CAR WRECK IN WHICH MY VEHICLE, AND THE ONE IN FRONT OF ME WERE TOTALED.  UPON IMPACT ON THE FRONT OF MY TRUCK, MY AIR BAGS DIDN'T DEPLOY NOR DID MY SEAT BELTS LOCK.  MY 11 YR OLD HIT HIS HEAD ON THE DASH, REQUIRING IMMEDIATE MEDICAL ATTENTION FOR A SEVERE LACERATION WHICH REQUIRED STITCHES. I LEARNED FROM GMC THERE WAS A RECALL ON MY TRUCK FOR AIR BAG MALFUNCTIONS AND I WAS NEVER NOTIFIED.  *NM |

| | | | | | |
|---|---|---|---|---|---|
| 10249443 | CHEVROLET | TAHOE | 2000 | 2008-11-05 | TL*THE CONTACT OWNS A 2000 CHEVROLET TAHOE. WHILE DRIVING APPROXIMATELY 35 MPH, THE VEHICLE CRASHED INTO A LAMP POST THAT WAS SURROUNDED BY CEMENT. THE FRONT END WAS PUSHED IN, WHICH CAUSED THE ENGINE TO SHIFT. THE AIR BAGS FAILED TO DEPLOY AND THE DRIVER SUSTAINED INJURIES TO HIS BACK AND NECK. THE VEHICLE WAS TOWED TO A LOCAL REPAIR SHOP AND THE MECHANIC STATED THAT THE AIR BAGS SHOULD HAVE DEPLOYED. THE DEALER WAS NOT NOTIFIED. THE MANUFACTURER FILED A CASE AND STATED THAT THEY WOULD BE IN TOUCH WITH THEIR DECISION. THE CURRENT AND FAILURE MILEAGES WERE 144,000. |
| 11190477 | CHEVROLET | TAHOE | 2000 | 2019-03-17 | TL* THE CONTACT OWNS A 2000 CHEVROLET TAHOE. WHILE THE CONTACT'S SON WAS DRIVING 40 MPH, HE CRASHED INTO A VEHICLE THAT RAN A RED LIGHT. THE AIR BAGS DID NOT DEPLOY. THE CONTACT'S SON SUSTAINED CHEST, LOWER BACK, AND NECK PAINS THAT REQUIRED MEDICAL ATTENTION. THE CONTACT'S SON WENT TO THE EMERGENCY ROOM TWO SEPARATE TIMES. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO A TOW YARD. THE CONTACT WAS WAITING FOR FINALIZED INFORMATION FROM THE INSURANCE COMPANY TO DETERMINE IF THE VEHICLE WAS TOTALED. THE DEALER AND MANUFACTURER WERE NOT CONTACTED. THE CAUSE OF THE FAILURE WAS NOT DETERMINED. THE FAILURE MILEAGE WAS UNKNOWN. |
| 864850 | CHEVROLET | TRACKER | 2000 | 2000-06-28 | HAD A DIRECT FRONTAL IMPACT, AND DRIVER AND PASSENGER AIRBAG DID NOT DEPLOY WHICH DID NOT PROTECT THE OCCUPANTS IN THE CRASH. NO PRIOR PROBLEMS WITH THE AIRBAG SYSTEM. *AK *ML |
| 870591 | CHEVROLET | TRACKER | 2000 | 2000-07-22 | DRIVING AT APPROXIMATELY 50 MPH DRIVER SWERVED TO AVOID HITTING ANOTHER VEHICLE AND LOST CONTROL. VEHICLE WENT ACROSS FREEWAY AND HIT A STEEL BARRIER WITH THE RIGHT FRONT PASSENGER'S SIDE, AND CONTINUED ON FOR A BLOCK. THEN, WENT INTO A DITCH, NOSE FIRST UPON IMPACT, DUAL AIRBAGS DID NOT DEPLOY, CAUSING MINOR INJURIES IN STERIUM AND HEAD. NO INDICTATION OF AIRBAG BEING DEFECTIVE. VEHICLE WAS A TOTAL LOSS. *AK |
| 883185 | CHEVROLET | TRACKER | 2000 | 2001-01-31 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION WITH A 1985 528I, BMW, SPEED WAS NOT DETERMINED,  AND  BOTH AIR BAGS DID NOT DEPLOY. DEALER / MANUFACTURER WERE NOTIFIED, AND UNWILLING TO ASSIST IN THIS MATTER.  FEEL FREE TO PROVIDE ANY FURTHER DETAILS ON THIS MATTER. *AK |
| 891375 | CHEVROLET | TRACKER | 2000 | 2001-06-16 | WHILE DRIVING AT 45 MPH CONSUMER'S VEHICLE WAS INVOLVED IN A DIRECT FRONTAL COLLISION. UPON IMPACT, NEITHER DRIVER'S SIDE NOR PASSENGER'S SIDE AIR BAGS DEPLOYED. DEALER WILL INSPECT VEHICLE.  PLEASE PROVIDE ANY FURTHER DETAILS. *AK |
| 897476 | CHEVROLET | TRACKER | 2000 | 2001-09-29 | FRONTAL AIRBAGS DID NOT DEPLOY WHEN VEHICLE WAS INVOLVED IN A HEAD-ON ACCIDENT AT 30-35 MPH. CONSUMER COLLIDED WITH ANOTHER VEHICLE WHILE MAKING A TURN.  VEHICLE HAD FRONTAL DAMAGE. *AK  8SLC |
| 558644 | GMC | YUKON | 2000 | 2000-12-16 | THE AIRBAG DID NOT DEPLOY IN A HEAD ON COLLISION RESULTING IN INJURIES. NLM |
| 8009240 | GMC | YUKON | 2000 | 2002-05-05 | FRONTAL COLLISION AT 40-45 MPH, NEITHER AIRBAG DEPLOYED. DRIVER SUFFERED HEAD INJURY. *AK   *YD |
| 10141369 | GMC | YUKON | 2000 | 2005-09-23 | DT: THE CONTACT STATED THAT WHILE TRAVELING 31 MPH ON A GRAVEL ROAD IN DRY CONDITIONS THE CONTACT LOST CONTROL OF THE VEHICLE AND  IT STRUCK A TREE.  UPON IMPACT, THE AIRBAGS DID NOT DEPLOY.  THE FRONT PASSENGER HAD TO BE EXTRACTED FROM THE VEHICLE.  THE DASHBOARD COLLAPSED INTO THE FRONT SEAT ALONG WITH THE FIREWALL.  THERE WERE  3 INJURIES, AND A POLICE REPORT WAS TAKEN.  THE VEHICLE WAS TOTALED.  A GM REPRESENTATIVE RETRIEVED THE BLACK DETECTION BOX,  VERIFIED THE SPEED OF 31 MPH, AND DETERMINED THAT THE  AIRBAGS SHOULD HAVE DEPLOYED.  GM PURCHASED THE SALVAGED VEHICLE FROM THE  INSURANCE COMPANY AND DESTROYED IT. *AK |
| 729997 | ISUZU | AMIGO | 2000 | 2000-08-29 | MY WIFE AND DAUGHTER WERE INVOLVED IN A CRASH WITH OUR 2000 ISUZU AMIGO.  MY WIFE IMPACTED A VEHICLE WHICH HAD CRASHED INTO ANOTHER VEHICLE AT APPROXIMATELY 25 MPH. NEITHER AIR BAG DEPLOYED NOR DID THE SEAT BELT TIGHTEN UP TO RESTRAIN MY WIFE, WHICH RESULTED IN HER IMPACTING THE STEERING WHEEL.  AT THE SAME TIME, THE DRIVERS SEAT MOVED FORWARD AND DID NOT REMAIN STATIONARY. |
| 10052346 | ISUZU | RODEO | 2000 | 2004-01-04 | DURING A 40 MPH CRASH INTO A CONCRETE CENTER DIVIDER ON A INTERSTATE IN WHICH THE VEHICLE MADE CONTACT WITH THE FRONT AND DRIVER FRONT AREA, CAUSING EXTENSIVE DAMAGES.  INCLUDING PUSHING BUMPER,GRILLE,HEADLIGHTS AND HOOD UP INTO THE ENGINE COMPARTMENT.  TO MY SHOCK THE AIRBAGS DID NOT DEPLOY.  WHAT IS UP WITH THIS?  DO THEY JUST TELL YOU THEY ARE THERE AND THEY DON'T WORK WHEN YOU NEED THEM???  I WILL NOT PURCHASE ANOTHER ISUZU PRODUCT AND AM SEEKING A CLAIM AGAINST ISUZU TO FIND OUT WHAT THE PROBLEM MIGHT BE.  THANK YOU FOR YOUR TIME!!  *LA |
| 10083770 | ISUZU | RODEO | 2000 | 2004-02-26 | AIR BAGS ON 2000 ISUZU RODEO ARE DEFECTIVE.*MR  THE CONSUMER WAS INVOLVED IN A FRONT END COLLISION YET NONE OF THE AIR BAGS DEPLOYED.  THE CONSUMER CONTACTED THE MANUFACTURER ABOUT THE AIR BAGS BUT THE REPRESENTATIVE DID NOT SEEM TO BE TOO CONCERNED ABOUT THE SITUATION.  THE CONSUMER BELIEVES THE AIR BAG SHOULD HAVE DEPLOYED AND DOESN'T FEEL SAFE IN THE VEHICLE.  *NM |

| | | | | | |
|---|---|---|---|---|---|
| 10087550 | ISUZU | RODEO | 2000 | 2004-02-26 | VEHICLE WAS INVOLVED IN AN ACCIDENT WHILE TRAVELING AT 25 TO 30 MPH BUT THE AIR BAGS DID NOT DEPLOY. *MR . THE CONSUMER WAS INVOLVED IN A FRONT END COLLISION YET NONE OF THE AIR BAGS DEPLOYED. THE CONSUMER CONTACTED THE MANUFACTURER ABOUT THE AIR BAGS BUT THE REPRESENTATIVE DID NOT SEEM TO BE TOO CONCERNED ABOUT THE SITUATION. THE CONSUMER BELIEVES THE AIR BAG SHOULD HAVE DEPLOYED AND DOESN'T FEEL SAFE IN THE VEHICLE. THE VEHICLE SUSTAINED $6881. WORTH OF FRONT END DAMAGE. *NM |
| 10163811 | ISUZU | RODEO | 2000 | 2006-07-20 | I WAS IN AN ACCIDENT ON JULY 20,2006.  A GIRL RAN A RED LIGHT AND I HIT HER IN THE PASSENGER SIDE OF HER CAR HEAD ON WITH MY 2000 ISUZU RODEO. IT WAS A FULL FRONTAL COLLUSION FOR ME AND MY CHILDREN.  LUCKILY , WE ARE ALWAYS BUCKLED UP BECAUSE NONE OF MY AIRBAGS DEPLOYED AT ALL.  THE OTHER CAR WAS GOING ABOUT 60 MPH AND HER AIRBAG DEPLOYED WHEN I  HIT HER BUT MINE DID NOT. LUCKILY, MY CHILDREN  WERE NOT HURT BADLY BUT UNFORTUNATELY, I SUSTAINED NECK, BACK AND KNEE INJURIES. I WAS AND STILL AM VERY UPSET THAT MY AIRBAGS FAILED.  EVEN THE OWNER OF THE BODY SHOP I USE WAS IN SHOCK THAT THEY DID NOT DEPLOY AS THE IMPACT WAS ENOUGH TO SPLIT THE FRAME OF MY RODEO AND TOTAL IT OUT. I WILL NOT BUY ANOTHER ISUZU AND I WILL ALSO NOT RECOMMEND THEM TO MY FAMILY OR FRIENDS IN THE FUTURE.  THANK YOU FOR YOUR TIME, I HOPE I CAN HELP ANOTHER FAMILY FROM GETTING INJURED. |
| 745106 | ISUZU | TROOPER | 2000 | 2001-05-02 | THE ESTIMATES ARE NOT ALL IN YET, SO THE $27,000 IS A GUESS AT THIS STAGE . MY FRIEND ALSO HAD A TROOPER WHOSE AIRBAGS FAILED AT LEAST ON ONE FRONT END CRASH.*AK |
| 8009110 | ISUZU | TROOPER | 2000 | 2002-04-13 | WHILE DRIVING 45MPH T-BONED ANOTHER VEHICLE AND AIR BAGS DIDNOT DEPLOY. DRIVER AND 3 PASSENGERS  SUSTAINED INJURIES. *AK |
| 10160322 | ISUZU | TROOPER | 2000 | 2006-06-10 | DT*: THE CONTACT STATED WHILE DRIVING 15 - 20 MPH THROUGH AT INTERSECTION ANOTHER VEHICLE RAN A STOP SIGN AND HIT THE CONTACT'S VEHICLE. THE VEHICLE RAN INTO A TREE SMASHING THE FRONT OF THE VEHICLE. THE FRONTAL AIR BAGS DID NOT DEPLOY. THE AIR BAG LIGHT DID NOT ILLUMINATE PRIOR TO THE INCIDENT. THE CONTACT WAS WEARING A SEATBELT, HOWEVER INJURIES WERE INCURRED. THE CONTACT HAD BRUISING TO THE FACE AND A SPRAINED HIP. A POLICE REPORT WAS FILED AT THE SCENE. THE VEHICLE WAS DEEMED TOTALED BY THE INSURANCE COMPANY. |
| 744466 | CHEVROLET | ASTRO | 1999 | 2001-04-23 | MY VEHICLE WAS STRUCK HEAD ON BY AN ONCOMING AUTO TRAVELING AT 45 MPH. MY VEHICLE WAS TRAVELING AT 35 MPH. THE IMPACT WAS AT 12:00. MY AIRBAG DID NOT DEPLOY NOR DID THE PASSENGER SIDE AIR BAG. I WAS 3 POINT BELTED AT THE TIME OF THE COLLISION. THE OTHER VEHICLE WAS A CHEVROLET BERRETA 2 DOOR AUTOMOBILE.*AK |
| 757589 | CHEVROLET | ASTRO | 1999 | 2001-12-12 | WAS IN FRONT IMPACT HEAD-N COLLISION ON 12/12/01.  SPEED BETWEEN 40 AND 65 MPH. AIRBAGS FAILED TO DEPLOY.*AK |
| 759758 | CHEVROLET | ASTRO | 1999 | 2002-02-19 | AIR BAGS DID NOT DEPLOY IN A NEARLY HEAD-ON CRASH AT AN ESTIMATED SPEED OF 60 MPH. RELATIVE SPEED MAY HAVE BEEN LESS, BECAUSE VEHICLE WHICH THIS VAN HIT WAS SLIDING BACKWARDS IN THE SAME DIRECTION OF TRAVEL AS THE VAN.  HOWEVER, CLOSING SPEED HAD TO BE SIGNIFICANT TO CAUSE IT TO BE DAMAGED BEYOND REPAIR WITHIN ITS $13,000 VALUE. VEHICLE WAS A TOTAL LOSS.  WE HAVE OWNED THIS VEHICLE SINCE NEW, NO MODIFICATIONS HAVE BEEN MADE TO IT, AND IT HAD NEVER BEEN IN AN ACCIDENT BEFORE THIS.  DIGITAL PHOTOS OF DAMAGED VEHICLE ARE AVAILABLE IF DESIRED.  *AK |
| 873826 | CHEVROLET | ASTRO | 1999 | 2000-10-22 | CONSUMER WAS TRAVELING ABOUT 35MPH ON A SIDE STREET AND ANOTHER VEHICLE VEERED INTO HIM BY CROSSING OVER INTO THE MERIDIAN STRIP.  UPON IMPACT, NEITHER AIRBAG DEPLOYED, AND  MORE THAN ONE PERSON WAS INJURED. *AK |
| 8016641 | CHEVROLET | ASTRO | 1999 | 2002-08-05 | IN A FRONTAL COLLISION NONE OF THE AIR BAGS DEPLOYED ON IMPACT, CAUSING MAJOR INJURIES TO DRIVER.*AK |
| 10081510 | CHEVROLET | ASTRO | 1999 | 2004-06-22 | WHILE DRIVING 40 MPH VEHICLE STALLED. THEN, VEHICLE SUDDENLY ACCELERATED.  CONSUMER APPLIED THE BRAKES, BUT THEY WERE INOPERATIVE. THIS CAUSED THE VEHICLE TO CRASH INTO A TREE.  UPON IMPACT, BOTH FRONTAL AIR BAGS FAILED TO DEPLOY.  DRIVER AND TWO PASSENGERS SUSTAINED MAJOR INJURIES, AND WERE TRANSPORTED TO THE HOSPITAL BY AMBULANCE.  THE VEHICLE WAS TOWED TO A GARAGE.  *AK |
| 10087718 | CHEVROLET | ASTRO | 1999 | 2004-08-11 | WHILE DRIVING CONSUMER TRIED TO AVOID A  PERSON ON A BICYCLE ON THE ROAD. SWERVED IN ORDER NOT TO HIT THE PERSON, BUT WAS UNABLE TO MAINTAIN CONTROL OF THE VEHICLE, JUMPED A CURB, AND COLLIDED WITH A FIRE HYDRANT, AND STRIKING  A TREE.  UPON IMPACT, BOTH FRONTAL AIR BAGS DID NOT DEPLOY  DRIVER SUSTAINED HEAD AND NECK INJURIES, AND WAS TRANSPORTED BY AMBULANCE TO A HOSPITAL.  VEHICLE WAS TOWED TO THE  DEALER FOR INSPECTION.  CONSUMER CONTACTED THE MANUFACTURER AND A REPRESENTATIVE CAME DOWN TO MEET WITH  THE DEALER AND CONSUMER.  THE REPRESENTATIVE INFORMED CONSUMER THAT THE VEHICLE WAS FUNCTIONING AS DESIGNED, AND THE RATE OF DECELERATION AND IMPACT WAS PRESENT. *AK |

| | | | | | |
|---|---|---|---|---|---|
| 10205366 | CHEVROLET | ASTRO | 1999 | 2007-01-31 | TL*THE CONTACT OWNS A 2000 CHEVROLET ASTRO. WHILE DRIVING 25 MPH THROUGH SNOW AND ICE, THE CONTACT LOST CONTROL OF THE VEHICLE AND SLID OFF THE ROAD. THE VEHICLE THEN STRUCK A TELEPHONE POLE. THE AIR BAGS FAILED TO DEPLOY. THE SEAT BELT FAILED TO RESTRAIN HIM AND HE STRUCK HIS HEAD ON THE WINDSHIELD. THE WOUND TOOK 24 STITCHES TO CLOSE. MOST OF THE VEHICLE WAS REPAIRED AT THE COST OF $4,500. THE MANUFACTURER'S INVESTIGATOR CONCLUDED THAT THE AIR BAG WOULD NOT DEPLOY AT 25 MPH. THE ARKANSAS POLICE DEPARTMENT FILED REPORT NUMBER 07-00343. THE CURRENT MILEAGE WAS 146,661. AND FAILURE MILEAGE WAS 125,000. |
| 10347238 | CHEVROLET | ASTRO | 1999 | 2010-08-03 | AIRBAGS FAILED TO DEPLOY IN AN APPROX. 50 MPH HEAD-ON CRASH. *TR |
| 716098 | CHEVROLET | BLAZER | 1999 | 1999-12-12 | VEHICLE IMPACTED A HORSE IN ROAD AT A SPEED OF 45 MPH. IMPACT WAS HEAD-ON. LEGS OF THE HORSE CONTACTED THE FRONT BUMPER PROPELLING THE HORSE INTO THE WINDSHIELD AND ONTO THE ROOF THE CAR SUSTAINED MAJOR DAMAGE TO THE FRONT. ALTHOUGH THERE WAS SIGNIFICANT DENTING OF THE BUMPER THE AIR BAGS FAILED TO DEPLOY. THE ROOF OVER THE FRONT PASSENGER HAD MAJOR CRUSHING INCLUDING THE DRIVER'S FRONT PILLA. *AK |
| 767338 | CHEVROLET | BLAZER | 1999 | 2002-09-15 | FRONT OF CAR BUMPER AND ENGINE PUSHED IN 6-8 INCHES. WENT UP HILL HIT TREE OVER TURNED 2 TIMES. UPON IMPACT, AIR BAGS FAILED TO DEPLOY. *AK |
| 859664 | CHEVROLET | BLAZER | 1999 | 2000-04-04 | CONSUMER WAS TRAVELING ABOUT 42MPH IN GOOD WEATHER CONDITIONS, AND WAS HIT BY ANOTHER VEHICLE ON THE DRIVER'S SIDE DOOR AND THE FRONT HOOD. UPON IMPACT, AIRBAGS DIDN'T DEPLOY. DEALER WILL BE CONTACTED. *AK |
| 874736 | CHEVROLET | BLAZER | 1999 | 2000-10-20 | CONSUMER WAS TRAVELING 32MPH & HAD A HEAD-ON COLLSION. CONSUMER WAS WEARING SEAT BELT RESTRAINT AT THE TIME, BUT FRONTAL AIR BAGS DIDN'T DEPLOY. DEALER CLOSED THE CASE AT ONE POINT & REOPENED IT ONCE. CONSUMER CONTACTED THEM A SECOND TIME.*AK *SLC |
| 8004945 | CHEVROLET | BLAZER | 1999 | 2002-02-28 | WHILE TRAVELING ON INTERSTATE AND WITHOUT PRIOR WARNING A DEER JUMPED IN FRONT OF VEHICLE. DRIVER'S SIDE SEATBELT DIDN'T HOLD, AND  AIRBAGS DIDN'T DEPLOY.*AK |
| 8020401 | CHEVROLET | BLAZER | 1999 | | THE TRUCK WENT INTO A SKID ON WET ROAD AFTER ATTEMPTING A REAR END COLLISION THAT OCCURED IN FRONT OF THEM. THE TRUCK DID AVOID COLLIDING WITH THEM BUT SPUN AROUND HITTING CONCRETE WALL. NEITHER AIR BAGS DEPLOYED UP IMPACT WITH ESTIMATED SPEED OF 65 MPH. PLEASE DESCRIBE DETAILS. MR |
| 8021177 | CHEVROLET | BLAZER | 1999 | | WAS DRIVING, WHEN ANOTHER VEHICLE REAR ENDED VEHICLE IN FRONT OF IT. BLAZER AVOID HITTING VEHICLE ON WET ROAD & SPUN AROUND AFTER APPLYING BRAKES. VEHICLE HIT MEDIAN WALL WITH FRONT OF VEHICLE. UPON IMPACT, THE AIR BAGS FAILED TO DEPLOY. MR |
| 10017194 | CHEVROLET | BLAZER | 1999 | 2003-04-18 | THE VEHICLE WAS INVOLVED IN A FRONTAL COLLISION WITH A DEER  WHILE DRIVING 60 MPH AND NONE OF THE NEITHER AIR BAGS DEPLOYED. THE DEALER WAS NOTIFIED. *NLM |
| 10021489 | CHEVROLET | BLAZER | 1999 | 2003-06-10 | INVOLVED IN HEAD ON COLLISION, BOTH GOING APPROXIMATELY 30 MPH, NEITHER FRONT AIR BAG DEPLOYED. SEVERE FACIAL INJURIES FOR ONE AND CONCUSSION FOR PASSENGER RESULTED. *JB |
| 10049340 | CHEVROLET | BLAZER | 1999 | 2003-12-06 | THE AIRBAGS DID NOT DEPLOY. THIS CAUSED INJURY TO THE DRIVER CHEST. THIS SHOULD NEED TO BE FIXED ASAP BY GM. I WILL NEVER PURCHASE A CHEVY AGAIN. AIRBAGS THAT DO NOT DEPLOY WHEN YOU HIT HEAD ON AND ROLL SHOULD NOT BE ALLOWED. *LA |
| 10050546 | CHEVROLET | BLAZER | 1999 | 2003-12-15 | WHILE DRIVING ON ICY ROAD AT 50 TO 55 MPH DRIVER  LOST CONTROL OF VEHICLE.  IT WENT AIRBORNE AND  LANDED IN A  DITCH . UPON IMPACT, NONE OF THE AIR BAGS DEPLOYED. *AK |
| 10063865 | CHEVROLET | BLAZER | 1999 | 1999-03-23 | THE AIRBAGS NEVER WENT OFF IN A FRONT END COLLISION. |
| 10087245 | CHEVROLET | BLAZER | 1999 | 2004-06-09 | WHILE DRIVING 35 MPH ANOTHER VEHICLE HIT  CONSUMER'S VEHICLE ON THE PASSENGER SIDE. THIS CAUSED THE VEHICLE TO SPIN AROUND AND SLAM INTO ANOTHER VEHICLE HEAD ON. UPON IMPACT, BOTH FRONTAL AIR BAGS DID NOT DEPLOY, NOR DID THE DRIVERS SEAT BELT LOCK. CONSUMER HAD THE VEHICLE TOWED TO THE DEALERSHIP FOR INSPECTION. *AK |
| 10099164 | CHEVROLET | BLAZER | 1999 | 2004-10-21 | WHILE DRIVING 45 MPH, THE VEHICLE COLLIDED WITH THE VEHICLE IN FRONT OF HERS. THE AIR BAGS FAILED TO DEPLOY.  THIS CAUSED THE DRIVER TO SUSTAINED MAJOR INJURIES AND WAS TRANSPORTED TO THE HOSPITAL.  THE VEHICLE WAS TOWED TO A GARAGE FOR INSPECTION.  THE CAUSE HAS NOT BEEN DETERMINED AT THIS TIME.  PLEASE PROVIDE FURTHER DETAILS. *JB |
| 10161658 | CHEVROLET | BLAZER | 1999 | 2006-06-03 | DT*: THE CONTACT STATED THE VEHICLE IMPACTED A TREE, HEAD ON. THE FRONTAL AIRBAGS FAILED TO DEPLOY, RESULTING IN INJURIES OF THE CONTACT'S LEFT KNEE, ELBOW AND HEAD. A POLICE REPORT WAS FILED AND PICTURES WERE TAKEN AFTER THE VEHICLE WAS MOVED TO THE JUNKYARD. NO REPAIRS WERE MADE BECAUSE THE VEHICLE WAS DETERMINED BY THE INSURER TO BE TOTALED. THE MANUFACTURER WAS CONTACTED. 08/04/06 CHEVY DRIVER HIT A CAR IN HER LANE FIRST, THEN RICOCHETED HEAD ON INTO A TREE. NEITHER TIME DID AIRBAGS DEPLOY. *TT |
| 10223949 | CHEVROLET | BLAZER | 1999 | 2008-02-09 | 1999 CHEVY BLAZER AIRBAGS FAILED TO DEPLOY IN AN ACCIDENT. CONSUMER STATES THAT THE AIRBAGS DID NOT DEPLOY. CONSUMER WAS INJURED AND VEHICLE WAS TOTALED. CONSUMER MIGHT NOT HAVE THOSE INJURIES IF THE AIRBAGS WORKED PROPERLY. *KB |
| 548902 | CHEVROLET | SILVERADO | 1999 | 1999-08-13 | NO DEPLOYMENT OF DRIVER AND PASSENGER SIDE AIR BAGS DURING COLLISION WITH FIXED OBJECT (TREE) CAUSED INJURY TO DRIVE. NLM |

| | | | | | |
|---|---|---|---|---|---|
| 709384 | CHEVROLET | SILVERADO | 1999 | 1999-07-20 | THE 1999 CHEVROLET TRUCK EX SILV ANTILOCK BREAKS HAVE BEEN FAILING AT RANDOM TIMES SINCE APRIL 1 1999. FIRST AT SLOW SPEEDS AND THEN AT HIGH SPEEDS RANDOMLY. ON 720-1999 MY SPEED WAS 60 MI HR AND THE BRAKES FAILED WHEN A DEER CROSSED THE STATE HIGHWAY BETWEEN GRAHAM TX AND BRECKENRIDGE TX. THE BRAKES DELAYED AND I HIT THE DEER DEAD CENTER OF MY BUMPER AND GRILL! THE AIR BAGS DIDNOT INFLATE EVER! |
| 741598 | CHEVROLET | SILVERADO | 1999 | 2000-01-13 | MY AIR BAG DID NOT ACTIVATE AND IN A DIRECT FRONT END COLLISION. THE SUN SETTING BLINDED ME AND I HIT DIRECTLY THE REAR OF THE CAR IN FRONT OF ME AND IT'S AIRBAG DEPLOYED AND THE CHAIN REACTION OF THE TWO CARS IN FRONT OF THE CAR I HIT AIRBAGS DEPLOYED. GM SAID MY AIRBAG WAS NOT DEFECTIVE AND I ASKED TO HAVE IT CHECKED TWO TIMES. IT SHOULD HAVE DEPLOYED AND IT DID NOT. I WAS NOT WEARING A SEAT BELT AND I SUFFERED HEAD INJURIES. I SOLD TRUCK BECAUSE I DID NOT WANT TO DIE NEXT FAILURE. |
| 746679 | CHEVROLET | SILVERADO | 1999 | 2001-04-30 | DRIVER HIT A STOPPED VEHICLE ON THE INTERSTATE AT APPROXIMATELY 60 MPH. OCCUPANT OF STALLED VEHICLE WAS KILLED AND OUR AIRBAGS DID NOT DEPLOY. WE FELT THAT IT SHOULD HAVE DEPLOYED AND GMC IS ARGUING THAT IT SHOULD NOT HAVE. ANY INFORMATION ABOUT AIRBAGS WOULD BE APPRECIATED. *AK |
| 762651 | CHEVROLET | SILVERADO | 1999 | 2002-05-21 | DRIVER & PASSENGER AIR BAGS DIDN'T DEPLOY IN A 65 MPH COMBINED SPEED, HEAD ON CRASH. *AK |
| 842094 | CHEVROLET | SILVERADO | 1999 | | VEHICLE WAS INVOLVED IN A FULL FRONTAL COLLISION AT 40 MPH, AND NEITHER DRIVER'S SIDE NOR PASSENGER'S SIDE AIRBAGS DEPLOYED. CHEVROLET AND DEALER REFUSED TO GIVE ANY EXPLANATION WHY AIR BAGS DID NOT DEPLOY. *AK |
| 844072 | CHEVROLET | SILVERADO | 1999 | 1999-07-21 | WHILE DRIVING 40 MPH, LOST CONTROL. VEHICLE WENT INTO A DITCH. UPON IMPACT, DRIVER'S AND PASSENGER'S AIRBAGS DID NOT DEPLOY WHICH DID NOT PROTECT THE OCCUPANT IN THIS CRASH. PLEASE PROVIDE FURTHER INFORMATION AND VIN#. *AK |
| 851420 | CHEVROLET | SILVERADO | 1999 | 1999-08-13 | CONSUMER WAS DRIVING AND A DEER JUMPED IN FRONT OF HIS VEHICLE. CONSUMER SWERVED TO THE RIGHT AND HE WENT INTO A TREE. AIRBAGS DIDN'T DEPLOY AT ALL, CONSUMER SUSTAINED HEAD INJURIES. *AK |
| 854784 | CHEVROLET | SILVERADO | 1999 | 1999-10-08 | WHILE DRIVING 60 MPH HAD A FRONTAL IMPACT, AND DRIVER'S AND PASSENGER'S AIR BAGS DID NOT DEPLOY WHICH DID NOT PROTECT THE OCCUPANT IN THIS CRASH. *AK *ML |
| 858532 | CHEVROLET | SILVERADO | 1999 | 2000-03-01 | CONSUMER'S DAUGHTER WAS IN A CAR CRASH. PASSENGER'S SEAT BELT DIDN'T HOLD. THE PASSENGER AND DRIVER WERE EJECTED FROM THE VEHICLE. ALSO, AIRBAGS DIDN'T DEPLOY. *AK |
| 858811 | CHEVROLET | SILVERADO | 1999 | 2000-02-18 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION AT 35 MPH. VEHICLE WAS TOTALLED, AND THE AIRBAGS DID NOT DEPLOY, RESULTING IN MINOR INJURIES. MANUFACTURER HAS INSPECTED THE VEHICLE, AND CLAIMS THAT THE AIR BAGS WERE NOT SUPPOSED TO DEPLOY IN THIS SORT OF ACCIDENT. *AK |
| 859858 | CHEVROLET | SILVERADO | 1999 | 1999-04-03 | WHILE TRAVELING ON A WET ROAD AT HIGHWAY SPEED OF 60 MPH VEHICLE HYDROPLANED, SPUN INTO A DITCH, AND COLLIDED INTO A TREE WITH BOTH SIDES AND FRONT OF VEHICLE. UPON IMPACT, AIR BAGS FAILED TO DEPLOY. MFR. NOTIFIED. *AK |
| 866622 | CHEVROLET | SILVERADO | 1999 | 2000-07-27 | CONSUMER WAS TRAVELING ABOUT 65 ON THE INTERSTATE AND FELL A SLEEP. HE HIT AN ENBANKMENT, AND AIRBAGS DIDN'T GO OFF, THERE WERE 2 INJURIES. *AK |
| 871182 | CHEVROLET | SILVERADO | 1999 | 2000-04-29 | WHILE DRIVING ABOUT 50 MPH AND WHEN EXITING A FREEWAY RAM STEPPED ON BRAKE PEDAL, BUT VEHICLE DID NOT STOP AND LOST CONTRO/ SPAN AND STRUCK A ROAD SIGN FRONT FIRST. UPON IMPACT, NONE OF THE AIR BAGS DEPLOYED.*AK |
| 875702 | CHEVROLET | SILVERADO | 1999 | 2000-11-08 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION AT 55-60MPH. UPON IMPACT, AIRBAGS DID NOT DEPLOY, RESULTING IN MINOR INJURIES. VEHICLE WAS TOTALLED. *AK |
| 877481 | CHEVROLET | SILVERADO | 1999 | 2000-12-16 | FRONT CRASH AT 50 MPH, VEHICLE TOTALLED, DRIVER INJURED WHEN SHE HIT STEERING WHEEL, AND AIRBAG DID NOT DEPLOY. *AK |
| 886863 | CHEVROLET | SILVERADO | 1999 | 2001-04-21 | WHILE DRIVING 70 MPH CONSUMER HAD A FRONT CRASH. BUMPER BROKE IN TWO, AND FRONT END WAS PUSHED BACK ABOUT 4-6 INCHES. VEHICLE HIT A TREE. UPON IMPACT, AIRBAGS DID NOT DEPLOY. *AK |
| 891163 | CHEVROLET | SILVERADO | 1999 | 2001-06-23 | WHILE TRAVELING 35-40 MPH ON A BRIDGE WITHOUT PRIOR WARNING BACKEND OF VEHICLE BEGAN TO FISHTAIL ,CAUSING VEHICLE TO LOSE CONTROL. CONSUMER RELEASED FOOT FROM GAS TO CORRECT VEHICLE STEERING. VEHICLE WAS UNRESPONSIVE, RESULTING IN A FRONTAL COLLISON WITH A JERSEY WALL. UPON IMPACT, PASSENGER AIRBAGS FAILED TO DEPLOY, ENGINE WAS PUSHED SIX INCHES UNDER THE DASH. CONSUMER HAS YET TO CONTACT DEALER. *AK DRIVER WAS INJURED IN ACCIDENT. *SLC |
| 10026451 | CHEVROLET | SILVERADO | 1999 | 2003-05-06 | 1999 CHEVROLET SILVERADO FAULTY DRIVER RESTRAINT SYSTEM. *MR THE VEHICLE WAS INVOLVED IN AN ACCIDENT. THE SAFETY BELT FAILED TO THE RESTRAIN THE DRIVER, AND THE AIR BAG DID NOT DEPLOY. *TS, THE DRIVER RECEIVED SERIOUS HEAD INJURIES. (LAWYER JOHN KELLY ON BEHALF OF CLIENT, JAMES SCOTT). *JB |
| 10113304 | CHEVROLET | SILVERADO | 1999 | 2005-02-03 | WHILE DRIVING APPROXIMATELY 20 MPH DRIVER LOST CONTROL OF THE VEHICLE AND IT CRASHED INTO A BRICK WALL. UPON IMPACT, BOTH FRONTAL AIR BAGS FAILED TO DEPLOY. DRIVER SUSTAINED MAJOR INJURIES, AND WAS TRANSPORTED TO THE HOSPITAL BY A HELICOPTER. THE VEHICLE WAS TOWED TO A GARAGE FOR INSPECTION. *AK |

| | | | | | |
|---|---|---|---|---|---|
| 10144603 | CHEVROLET | SILVERADO | 1999 | 2005-11-01 | DT: THE CONTACT STATED, WHILE TRAVELING AT 65 MPH HE FELL ASLEEP AT THE WHEEL. THE VEHICLE WAS INVOLVED IN A CRASH. IT HIT A GUARD RAIL. THIS WAS A FRONTAL IMPACT. AND THE DRIVER'S SIDE AIR BAG DID NOT DEPLOY. THE VEHICLE WAS TOTALED. |
| 731578 | CHEVROLET | SUBURBAN | 1999 | 2000-01-15 | AIRBAGS FAILED TO DEPLOY ON FRONTAL INTERSTATE SPEED IMPACT. DEALER DISCLAIMED SERIOUSNESS. DOOR LOCKS WOULD LOCK AUTOMATICALLY, WITHOUT ANY ADULT IN THE CAR... HOWEVER, THERE WERE CHILDREN IN CAR SEATS IN BACK. KEEP SPARE SET OF KEYS IN HAND AT ALL TIMES. |
| 753287 | CHEVROLET | SUBURBAN | 1999 | 2001-10-08 | 60 MPH CROSS WIND BLEW THE SUBURBAN HEAD ON INTO THE CONCRETE MEDIAN. THE VEHICLE SPUN 360 DEGREES, WENT INTO THE DITCH, THE FRONT END HIT. AGAIN THE VEHICLE WENT UP THE OTHER SIDE OF THE EMBANKMENT AND STOPPED IN A FIELD. ENTIRE FRONT END OF THE FRAME NOT REPAIRABLE. THE REAR PORTION OF THE FRAME BENT INTO A DIAMOND SHAPE, FRONT CROSSMEMBER BENT AND ENGINE MOVED UPWARDS AT A 10 DEGREE ANGLE. AIR BAGS FAILED TO DEPLOY. *AK |
| 829803 | CHEVROLET | SUBURBAN | 1999 | 1998-10-09 | CONSUMER WAS TRAVELING ABOUT 30-35 MPH AND ACCIDENTLY REAR ENDED ANOTHER VEHICLE, AIR BAGS DID NOT DEPLOY, CAUSING NECK INJURY/SHOULDER INJURY AND BACK INJURY. *AK |
| 876094 | CHEVROLET | SUBURBAN | 1999 | 2000-12-01 | CONSUMER WAS TRAVELING ABOUT 45 MPH ON. HIGHWAY AND. WAS STRUCK HEAD-ON BY ANOTHER VEHICLE WHO ENTERED. FREEWAY THROUGH. EXIT. UPON IMPACT, FRONT DUAL AIRBAGS DIDN'T DEPLOY. CONSUMER WAS INJURED. *AK |
| 877320 | CHEVROLET | SUBURBAN | 1999 | 2000-12-01 | CONSUMER WAS TRAVELING ABOUT 40MPH ON HIGHWAY AND ANOTHER VEHICLE VEERED INTO HER LANE, HITTING HER HEAD-ON, AND PUSHING VEHICLE INTO ANOTHER LANE. VEHICLE HIT TELEPHONE POLE, AND DUAL AIRBAGS DIDN'T DEPLOY. CONSUMER WAS INJURED. CHEVROLET HAS BEEN NOTIFIED. *AK |
| 896346 | CHEVROLET | SUBURBAN | 1999 | 2001-09-04 | WHILE DRIVING 30-35 MPH. VEHICLE HIT A FIRE HYDRANT, THEN A TREE. NEITHER AIRBAG DEPLOYED, NO INJURIES. DAMAGE TO VEHICLE UNKNOWN AT THIS TIME. IMPACT WAS MIDDLE OF FRONT OF VEHICLE. |
| 8001742 | CHEVROLET | SUBURBAN | 1999 | 2001-12-28 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION AT 20MPH. UPON IMPACT, AIR BAGS DID NOT DEPLOY. DEALER HAS BEEN NOTIFIED. PLEASE PROVIDE ADDITIONAL INFORMATION.*AK |
| 10029300 | CHEVROLET | SUBURBAN | 1999 | 2003-05-08 | THIS COMPLAINT IS IN REGARDS TO MY RECENT MOTOR VEHICLE ACCIDENT ON MAY 8, 2003. THE OTHER DRIVER FAILED TO YIELD MY RIGHT AWAY. I WAS DRIVING A 1999 CHEVROLET SRUBURBAN. I SERVED INTO ONCOMING TRAFFIC, INTO A RESIDENCE YARD, STRIKING A TREE HEAD ON AT APPROXIMATELY 35 MILES PER HOUR. I HAVE CORRESPONDED WITH GMC VIA E-MAIL UNTO NOT MY SATISFACTION. I REQUESTED MY VEHICLE HAVE A DIAGNOSTIC EVALUATION CONDUCTED, AS I WANTED TO KNOW WHY THE AIR BAGS DID NOT DEPLOY. I HAVE BASICALLY BEEN TOLD BY GMC THAT IF THE AIRBAG LIGHT IS FUNCTIONING IN THE DASHBOARD OF MY TRUCK THEN THERE IS NOTHING WRONG WITH MY AIR BAGS PER A CUSTOMER RELATIONSHIP MANAGER AND THAT MY ACCIDENT DID NOT, MEET THE CRITERIA FOR AIR BAG DEPLOYMENT. I HIGHLY DISAGREE WITH GMCIS EXPLANATION AND CRITICIZE THE LACK OF PROFESSIONAL DIPLOMACY AND CONCERN. I WOULD HAVE EXPECTED MORE FROM ONE OF THE BIG 3 AUTO CORPORATIONS. MY VEHICLE STRUCK A TREE WITH ENOUGH FORCE TO BEND THE FRONT LEFT FRAME RAIL. THE IMPACT ALSO WAS GREAT ENOUGH TO RAISE THE REAR OF THE VEHICLE OF THE GROUND AND SET IT DOWN A FOOT TO THE LEFT OF THE INITIAL IMPACT. THIS HAS ALSO LEFT ME WITH DOCUMENTED INJURIES CAUSING ME TO BE UNABLE TO WORK. MY CONFIDENCE IN THIS VEHICLEIS AIR BAG SYSTEM HAS DIMINISHED TO SAY THE LEAST. THIS MATTER HAS NOT BEEN HANDLED NOR COMPLETED TO MY SATISFACTION. I EXPECTED AT LEAST AN OFFERING TO HAVE THE VEHICLE TAKEN TO A LOCAL DEALERSHIP TO HAVE A DIAGNOSTIC EVALUATION CONDUCTED. THIS WOULD ALLOW ME TO DRIVE THE VEHICLE WITH SOME CONFIDENCE THAT THE SYSTEM WOULD WORK IN THE EVENT I NEED IT AGAIN. I AM AT A STAND STILL AND I AM POSITIVE I AM NOT THE ONLY PERSON WHO HAS HAD THIS PROBLEM IN THE PAST. I WOULD LIKE MORE INFORMATION RELATED TO FAILED AIR BAG DEPLOYMENT AND GMC CHEVY SURBURBAN. I HAVE ALSO SEEN A RECALL ON THE INTERNET WHICH MY VEHICLE FALLS UNDER RELATED TO AIRBAGS. THANK YOU FOR YOUR TIME AND CONSIDERATION.*AK |
| 10194121 | CHEVROLET | SUBURBAN | 1999 | 2007-06-24 | TL*THE CONTACT OWNS A 1999 CHEVROLET SUBURBAN. WHILE DRIVING 55 MPH, THE CONTACT CRASHED INTO THE FRONT END OF ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT WAS SEATED IN THE PASSENGER SEAT AND SUFFERED A CONTUSION ON HER LEFT LEG AND BRUISES ON HER RIGHT LEG. THE DEALER HAS NOT INSPECTED THE VEHICLE TO DETERMINE THE CAUSE OF FAILURE. THE VEHICLE WAS DESTROYED. THE CURRENT AND FAILURE MILEAGES WERE 115,000. |
| 10287421 | CHEVROLET | SUBURBAN | 1999 | 2009-09-25 | DEER ACCIDENT, LOST CONTROL RAN HEAD ON INTO THE CURB, HIT A SIGN. FRAME IS BENT, WINDSHIELD IS SHATTERED AND CAVED IN, FRONT PUSH GUARD IS BENT, AND FRONT PASSENGER FENDER WELL IS CAVED IN. AIRBAGS DID NOT DEPLOY!!! *TR |

| | | | | | |
|---|---|---|---|---|---|
| 10372658 | CHEVROLET | SUBURBAN | 1999 | 2010-12-21 | TL* THE CONTACT OWNS A 1999 CHEVROLET SUBURBAN. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 40 MPH, HE CRASHED INTO THE PASSENGER SIDE OF ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. THE CONTACT AND ANOTHER PASSENGER SUSTAINED MINOR ABRASIONS AND INJURIES TO THE NECK AND BACK. THE DRIVER OF THE SECOND VEHICLE WAS INJURED BUT THE EXTENT OF THE INJURIES WAS UNKNOWN. A POLICE REPORT WAS AVAILABLE. THE VEHICLE WAS TOWED TO AN INDEPENDENT MECHANIC WHERE THE CONTACT WAS INFORMED THAT THE VEHICLE WAS DEEMED AS DESTROYED. THE FAILURE MILEAGE WAS APPROXIMATELY 133,000. UPDATED 03/03/11 |
| 704617 | CHEVROLET | TAHOE | 1999 | 1999-03-04 | THE VEHECLE WAS TRAVELING APPROX 40 MPH WHEN IT HIT BLACK ICE ANDM SLIDE OFF THE ROAD AND HIT A BIG ROCK ON THE PASSENGER SIDE FRONT. THE PASSENGER SIDE FRONT BODY AND AXLE WAS PUSHED BACK APPROX 6 TO 8". NIETHER AIR BAG OPENED PASSENGER OR DRIVER. THE PASSENGER MY WIFE SUFFERED A BROKEN BACK. THE VEHECLE WAS TOTALED BY THE INSURANCE. ONE REASON WE BOUGHT THE CHEVROLET TAHOE WAS BECAUSE OF THE DUEL AIR BAG. I FEEL THAT THE SEVERITY OF THE ACCIDENT THE AIR BAGS SHOULD HAVE OPENED. I HAVE TAKEN PICTURES AND STATE FARM INSURANCE IS ALSO INVESTIGATING THE ACCIDENT FOR THE FAILED AIR BAGS. |
| 757392 | CHEVROLET | TAHOE | 1999 | 2002-01-22 | DRIVERS AIRBAG FAILED TO DEPLOY IN A FRONT END ACCIDENT. *AK |
| 761485 | CHEVROLET | TAHOE | 1999 | 2002-04-19 | THIS WAS A VERY HEAVY FRONT END COLLISION. THE VISUAL DAMMAGE EST. IS 10,000 DOLLARS AND STILL RISING THEY DO NOT HAVE THE INTERNAL DAMAGE EST. I CALLED GM AND FILED A FORMAL COMPLAINT. THEY TOLD ME THAT THEY WERE VERY BUSY AND DID NOT HAVE TIME TO INVESTIGATE THIS FAILURE. THEY ALSO TOLD ME THAT THIS WOULD COST THE TO MUCH MONEY TO DO AN INVESTIGATION. THE REP FROM GM TOLD ME THAT THEY COULD TELL IF THE WRECK WAS BAD ENOUGH BY THE DESCRIPTION OF THE WRECK OVER THE PHONE WITH OUT EVEN SEEING THE WRECK. THE DALLAS FIRE DEPARTMENT, DALLAS POLICE DEPARTMENT, TOW TRUCK DRIVER AND HUFFINES CHEVROLET WHICH IS A CERTIFIED CHEVROLET BODY SHOP SAID THAT THIS WAS WAY TO MUCH DAMAGE TO THE FRONT END AND THEY SHOULD HAVE WENT OFF. BUT COPRORATE GM SAID THAT IT WAS NOT AND THEY COULD TELL THAT WITHOUT SEEING THE VEHICLE. GM ALSO TOLD ME THAT THE OTHER VEHICLE IN THE ACCIDENT TOOK ALL THE IMPACT. WITHOUT EVEN SEEING THE VEHICLES HOW WOULD THEY NOW THIS? I STILL HAVE 10,000 DOLLARS OF FRONT END DAMAGE TO MY VEHICLE AND THAT IS WAY TO MUCH IF THE OTHER VEHICLE TOOK ALL THE IMPACT. THEY REPEATEDLY TOLD ME THAT IT WAS OK THAT THEY DID NOT GO OFF BECAUSE THE REST OF THE SAFTEY EQUIPMENT WORKED I.E. SEATBELTS, CRUMPLE ZONES" BUT THAT DOES NOT CHANGE THE FACT THAT THE AIRBAG SYSTEM DID NOT WORK AND THIS WOULD HAVE KEPT MY 7 MONTH PREGNANT WIFE FROM HITTING THE DASH BOARD! IF YOU HAVE ANY QUESTION I WILL BE MORE THAN HAPPY TO ANSWER THEM LARGE OR SMALL. THANK YOU!*AK |
| 860103 | CHEVROLET | TAHOE | 1999 | 2000-04-08 | WHILE DRIVING DOWN THE ROAD AT 40 MPH ANOTHER VEHICLE RAN A STOP SIGN, CONSUMER HIT OTHER VEHICLE DIRECTLY IN THE SIDE OF CAR. UPON IMPACT, AIR BAGS DID NOT DEPLOY. CONSUMER FELT AIR BAGS SHOULD HAVE DEPLOYED. *AK |
| 863306 | CHEVROLET | TAHOE | 1999 | | WHILE TRAVELING AT 45 MPH ANOTHER VEHICLE PULLED OUT IN FRONT OF CONSUMER'S VEHICLE RESULTING IN AN ACCIDENT. UPON IMPACT, AIR BAGS DID NOT DEPLOY AT ANY TIME. ALSO, ABS LOCKED UP. PLEASE PROVIDE FURTHER INFORMATION. *AK |
| 878233 | CHEVROLET | TAHOE | 1999 | 2000-12-29 | CONSUMER WAS TRAVELING 55MPH ON HIGHWAY AND ANOTHER VEHICLE RAN IN FRONT, AND CONSUMER'S VEHICLE HIT OTHER VEHICLE BROADSIDE. UPON IMPACT, AIRBAGS DIDN'T GO OFF.*AK |
| 887011 | CHEVROLET | TAHOE | 1999 | 2001-04-13 | CONSUMER WAS TRAVELING ABOUT 30MPH ON HIGHWAY AND WITHOUT PRIOR WARNING FRONT WNT INTO SHOULDERS OF A STEEP HILL. 45 DEGREE ANGLE, AND VEHICLE HIT A TREE. UPON IMPACT, DUAL BAGS DIDN'T GO OFF. DEALERSHIP WAS AWARE OF PROBLEM.*AK |
| 887171 | CHEVROLET | TAHOE | 1999 | 2000-12-27 | VEHICLE HIT A TREE. UPON IMPACT, SEAT BELT DID NOT RETRACT, AND AIR BAGS DID NOT DEPLOY, RESULTING IN INJURIES. *AK |
| 8006232 | CHEVROLET | TAHOE | 1999 | 2002-03-13 | FRONT COLUSION AT 25-30 MPH, AND NEITHER AIRBAG DEPLOYED, CONSUMER SUFFERED MINOR INJURIES.*AK |
| 10040265 | CHEVROLET | TAHOE | 1999 | 2003-09-09 | WHILE DRIVING 40 MPH VEHICLE WAS HIT IN THE FRONT CENTER. BOTH FRONTAL AIR BAGS DID NOT DEPLOY. *AK |
| 10074130 | CHEVROLET | TAHOE | 1999 | 2004-04-27 | DURING A FRONT END COLLISION WHILE DRIVING AT 55 MPH FRONT AIR BAGS DID NOT DEPLOY. THREE PASSENGERS SUSTAINED MINOR INJURIES. CONSUMER HAD THE VEHICLE TOWED TO DEALERSHIP FOR INSPECTION. *AK |
| 10110864 | CHEVROLET | TAHOE | 1999 | 2004-11-15 | THE VEHICLE'S AIR BAGS DID NOT DEPLOY DURING A FRONTAL COLLISION. *NM COUNCIL FOR THE CONSUMER STATED THAT AIR BAGS NEED TO BE TESTED AT CHEVROLET'S EXPENSE. *TC *JB |
| 10265716 | CHEVROLET | TAHOE | 1999 | 2009-02-15 | WHILE DRIVING MY 99 TAHOE DOWN A 4 LANE ROAD, A DRUNK HAD PULLED OUT INFRONT OF ME. I HAD SLAMMED ON MY BRAKES AND SWERVED TO AVOID HIM BUT STILL HIT HIM PRETTY HARD IN HIS REAR QUARTER PANEL. AS A RESULT OF THE ACCIDENT, I HAD SUFFERED A DOUBLE HEMATOMA TO MY BRAIN AND HAD BRAIN SURGERY TO STAY ALIVE. MY COMPLAINT WITH MY TAHOE IS 1) MY AIRBAG IN MY STEERING WHEEL DID NOT DEPLOY. I THINK IF IT DID, MY INJURY WOULD HAVE BEEN AVOIDED. 2) I QUESTION THE STOPPING ABILITY IF MY ANTI DIVE FRONT BRAKES. I WAS ON THE BRAKES HARD WITH THE VEHICLE NOSING DOWN BUT I THINK MY STOPPING DISTANCE SHOULD HAVE BEEN SHORTER. *TR |

| | | | | | |
|---|---|---|---|---|---|
| 10299900 | CHEVROLET | TAHOE | 1999 | 2010-01-10 | TL*THE CONTACT OWNS A 1999 CHEVROLET TAHOE. THE CONTACT WAS DRIVING APPROXIMATELY 15 TO 20 MPH ON NORMAL ROAD CONDITIONS AND UNEXPECTEDLY, THE OPPOSING VEHICLE CRASHED INTO THE FRONT END OF THE VEHICLE WHICH RESULTED IN A HEAD ON COLLISION. THE POLICE AND AMBULANCE WERE CALLED TO THE SCENE. THE CONTACT SUSTAINED SEVERE INJURIES. THE AIR BAG FAILED TO DEPLOY WITH THE MASSIVE LEVEL OF IMPACT. THE VEHICLE WAS COMPLETELY DESTROYED. THE VEHICLE WAS TOWED TO A COLLISION CENTER. THE CONTACT HAD CONCERN OF THE SAFETY RISK INVOLVED. THE FAILURE MILEAGE WAS 141,000. |
| 10350098 | CHEVROLET | TAHOE | 1999 | 2009-02-17 | I HAVE A 99 TAHOE THAT I WAS INVOLVED IN AN ACCIDENT. I HIT A CAR WHILE DOING 40MPH THAT HAD PULLED OUT INFRONT OF ME. MY AIR BAGS DIDN'T DEPLOY AND MY SAFETY BELT DIDN'T KEEP ME FROM HITTING THE STEERING WHEEL HARD. UPON REVIEW OF MY SAFETY BELT, I NOTICED THAT IT IS ROUTED INCORRECTLY AT THE TOP HOLDER. IT BINDS ON ITSELF PREVENTING IT FROM RETRACTING. MY PASSENGER SIDE IS ROUTED CORRECTLY AND WORKS PERFECTLY. I SUFFERED A BRAIN INJURY BECAUSE OF THIS AND AM QUITE CONCERNED. *TR |
| 11203728 | CHEVROLET | TAHOE | 1999 | 2019-04-20 | TL* THE CONTACT OWNED A 1999 CHEVROLET TAHOE. WHILE DRIVING 35 MPH, THE CONTACT HAD A HEAD ON COLLISION WITH A LIGHT POLE. THE AIR BAGS DID NOT DEPLOY. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE CONTACT WAS INURED AND RECEIVED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOTALED AND TOWED TO THE CONTACT'S RESIDENCE. AN UNKNOWN DEALER WAS MADE AWARE OF THE FAILURE, BUT DID NOT ASSIST. THE VEHICLE WAS NOT DIAGNOSED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS UNKNOWN. |
| 859422 | CHEVROLET | TRACKER | 1999 | 2000-03-28 | VEHICLE REAR ENDED ANOTHER VEHICLE AT 25 MPH. UPON IMPACT, BOTH AIR BAGS FAILED TO DEPLOY. DEALER /MANUFACTURER WERE NOT CONTACTED AT THIS TIME. *AK |
| 865216 | CHEVROLET | TRACKER | 1999 | 2000-06-27 | CONSUMER'S WIFE WAS TRAVELING ABOUT 35MPH ON THE HIGHWAY AND ANOTHER VEHICLE DIDN'T YIELD INTO HER VEHICLE, AND FORCE HER OFF THE ROAD. THEN SHE WENT INTO A UTILITY POLE. UPON IMPACT, AIR BAGS DID NOT DEPLOY. *AK ALSO HORN IS DIFFICULT TO LOCATE ON THE STEERING WHEEL. *YH |
| 868967 | CHEVROLET | TRACKER | 1999 | 2000-08-25 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION WITH A DOGE RAM PICK UP AT A IMPACT OF 30-35 MPH, AND AIR BAGS DIDNOT DEPOLY. DEALER NOTIFIED. FEEL FREE TO PROVIDE ANY FURTHER DETAILS. *AK |
| 899309 | CHEVROLET | TRACKER | 1999 | 2001-11-10 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION AT 35-40 MPH, AND BOTH FRONTAL AIR BAGS DID NOT DEPLOY. DEALER / MANUFACTURER WERE NOTIFIED. FEEL FREE TO PROVIDE ANY FURTHER INFORMATION CONCERNING THIS MATTER. *AK |
| 706419 | GMC | YUKON | 1999 | 1999-04-12 | WE CONTACTED GMC CUSTOMER SERVICE (VICTOR JOHNSON) AND REQUESTED AN INVESTIGATION. GMC HAS NOW TOLD US THAT SINCE NO ONE WAS FATALLY INJURED THERE WILL BE NO INVESTIGATION. HOW CAN THEY DO THIS? MY WIFE HAS BEEN INJURED - PROBABLY PERMANENTLY- AND WE WANT TO KNOW WHY THEY DID NOT DEPLOY. AS THIS WAS A DIRECT FRONTAL IMPACT. I BELIEVE THAT THE MANUFACTURER HAS AN OBLIGATION TO US AND IS MERELY PLAYING A GAME AT THIS POINT. IS IT IN OUR BEST INTEREST TO HIRE AN ATTORNEY ON THE MATTER OR WHAT SHOULD WE DO? *AK |
| 853931 | GMC | YUKON | 1999 | | OWNER APPLIED BRAKES AND THE VEHICLE KEPT GOING AND HIT ANOTHER VEHICLE. UPON IMPACT, NEITHER DRIVER'S SIDE NOR PASSENGER'S SIDE AIRBAGS DEPLOYED. DEALER HAS SEEN VEHICLE. *AK |
| 862202 | GMC | YUKON | 1999 | 2000-05-17 | VEHICLE WAS INVOLVED IN A FRONTAL COLLISION AT APPROXIMATELY 45 MPH WITH ANOTHER VEHICLE. UPON IMPACT, BOTH AIR BAGS FAILED TO DEPLOY. DEALER NOTIFIED. *AK |
| 880890 | GMC | YUKON | 1999 | 2001-02-01 | CONSUMER INVOLVED IN AN ACCIDENT, REARENDED ANOTHER VEHICLE. VEHICLE TRAVELING AT APPROXIMATELY 50 MPH, AND AIR BAGS DID NOT DEPLOY. PLEASE FILL IN ANY ADDITIONAL INFORMATION. *AK |
| 8007774 | ISUZU | AMIGO | 1999 | 2002-01-25 | IN A CAR CRASH. AIRBAGS DID NOT DEPLOY. *AK |
| 862789 | ISUZU | RODEO | 1999 | 2000-05-19 | CONSUMER WAS GOING AT ABOUT 55 AND ANOTHER VEHICLE HIT CONSUMER'S VEHICLE AT ABOUT 85 MPH . CONSUMER'S VEHICLE, IN TURN, HIT A UTILITY VEHICLE, AND WENT INTO A GAURDRAIL. UPON IMPACT, AIRBAGS DIDN'T DEPLOY. CONSUMER'S VEHICLE WAS TOTALLED. *AK |
| 895855 | ISUZU | RODEO | 1999 | 2001-08-10 | VEHICLE WAS INVOLVED IN A DIRECT FRONTAL IMPACT AT 35MPH. UPON IMPACT, AIR BAGS DID NOT DEPLOY. PLEASE PROVIDE ADDITIONAL INFORMATION. *AK |
| 10009019 | ISUZU | RODEO | 1999 | | THE VEHICLE WENT AIRBORNE AND LANDED ON THE FRONT END AND THE AIR BAGS FAILED TO DEPLOY.*JB |
| 10019881 | ISUZU | RODEO | 1999 | | WHEN THE BRAKES WERE APPLIED, THE REAR OF THE VEHICLE SLID. AS A RESULT, THE CONSUMER REAR ENDED ANOTHER VEHICLE AND NONE OF THE AIR BAGS DEPLOYED. *JB. |
| 10044798 | ISUZU | RODEO | 1999 | 2003-10-27 | WHILE DRIVING AT 60 MPH, HIT A DEER, AND NEITHER OF THE AIR BAGS DEPLOYED. DRIVER WORE THE SEAT BELT. *AK |
| 10186592 | ISUZU | RODEO | 1999 | 2007-03-30 | TL*. THE CONTACT OWNS A 1999 ISUZU RODEO, AND STATED THAT WHILE DRIVING ON THE ROAD AT 30 MPH THE VEHICLE IN FRONT OF THE CONTACT'S VEHICLE SLAMMED THE BRAKES SUDDENLY, CAUSING THE CONTACT TO DO THE SAME. THE CONTACT STATED THAT THE VEHICLE HAD SEVERE DAMAGE IN THE FRONT. UPON IMPACT, THE AIRBAGS DID NOT DEPLOY. THERE WERE NO WARNING LIGHTS CONCERNING THE AIRBAGS BEFORE AND SUBSEQUENT TO THE ACCIDENT. THE CONTACT COULD PROVIDE PICTURE IF NEEDED. THE FAILURE MILEAGE WAS 96,371 MILES. *AK |

# EXHIBIT B







| | |
|---|---|
| Year: 2004 | Engine: ENGINE, VORTEC 4200 MFI L6 includes transmission oil cooler (275 HP [205.1 kW] @ .. |
| Make: Buick | Transmission: TRANSMISSION, 4-SPEED AUTOMATIC, ELECTRONICALLY CONTROLLED WITH .. |
| Model: Rainier 4dr CXL AWD | Exterior: Black |
| VIN: | Interior: Medium Pewter |

## MECHANICAL

- Transfer case, AWD electronic automatic system, variable driving torque percentage
- Alternator, 150 amps
- Battery, heavy-duty, includes rundown protection and retained accessory power
- All-wheel drive
- GVWR, 5750 lbs.
- Differential, locking, heavy-duty, rear
- Rear axle, 3.73 ratio
- Suspension Package, Premium Smooth Ride
- Suspension, front, double A arm
- Suspension, rear, load-leveling, 5-link solid axle, electronically controlled air suspension
- Trailering equipment, heavy-duty, includes trailering hitch platform, 7-wire harness plus CHMSL wire and heavy-duty flasher
- Trailering wire harness, connector
- Tires, P255/60R17, all-season, blackwall
- Tire, spare, full-size, includes 17" steel wheel located at rear underbody of vehicle
- Wheels, 4 - 17" x 7" custom aluminum, 8-spoke, includes tri-shield center caps and full-size steel spare
- Steering, power
- Brakes, 4-wheel antilock, 4-wheel disc
- Fuel capacity, approximate, 22 gallons

## EXTERIOR

- Luggage rack, rooftop, includes side rails
- Bumpers, front and rear, color-keyed
- Headlamps, dual halogen composite, includes flash-to-pass feature and automatic lamp control
- Daytime running lamps, includes automatic exterior lamp control
- Lamps, cornering
- Fog lamps, front, halogen
- Glass, Solar-Ray deep tinted
- License plate bracket, front, includes cover for states where a front license plate is not required
- Body, liftgate with liftglass, includes electric release and rear-window wiper/washer
- Wipers, intermittent, front

## INTERIOR

- Custom Perforated Leather-appointed seats
- Seats, front leather-appointed reclining buckets, with adjustable head restraints, driver and passenger seat includes 8-way power adjustment and 2- way power lumbar; center console and storage pocket on passenger seat only

- Seat adjuster, power passenger 8-way
- Seats, rear, 2nd row, split folding
- Floormats, color-keyed, carpeted front and rear, removable
- Steering wheel, leather-wrapped rim, includes accessory controls for audio and Driver Information Center
- Steering column, Tilt-Wheel, adjustable, includes brake/transmission shift interlock
- QuietTuning, includes acoustic laminate in windshield, laminated front door glass, 26 strategically-placed elements of sound insulation, specially-selected quiet-riding tires and exhaust modifications
- Windows, power, includes driver and front passenger, express-down feature and lockout features
- Door locks, power programmable
- Keyless entry, remote, programmable, includes 2 transmitters, panic button and content theft alarm
- Driver Information Center, monitors up to 13 different systems; includes trip computer, fluid levels and door ajar
- OnStar, 3-year Safe and Sound service, includes automatic notification of air bag deployment, emergency services, roadside assistance, stolen-vehicle tracking, AccidentAssist, remote door unlock, remote horn and lights. Drivers can also call for other available OnStar services, including making and receiving voice-activated, hands-free phone calls with Personal Calling and getting location-based traffic and weather reports with Virtual Advisor
- Memory Package, 2-position memory, driver seat and outside rearview mirrors
- Cruise control
- Travel Note digital recorder, located in overhead console
- Universal transmitter, HomeLink, includes garage door opener, 3-channel programmable
- Theft-deterrent system, PASSlock
- Theft-deterrent alarm system, content theft alarm
- Air conditioning, dual-zone, automatic, individual climate settings for driver and right front passenger
- Defogger, rear-window, electric
- Sound system, ETR AM/FM stereo with CD and cassette player, includes seek-and- scan, digital clock, auto-tone control, speed-compensated volume, TheftLock, random select, auto-reverse cassette and Radio Data System
- Sound system feature, rear audio controls, includes headphone jacks and controls
- Cupholders, front and rear of center console
- Glovebox, passenger side of instrument panel
- Power outlets, auxiliary, covered, 2 in front bottom of instrument panel, 1 in rear of center console, 12-volt
- Lighting, perimeter with theater dimming; cargo compartment, reading lamps in all rows; door- and tailgate-activated switches, illuminated entry, exit feature and rear map lights
- Console, overhead, custom
- Visors, padded, color-keyed, driver and passenger side with cloth trim, extendable feature, illuminated vanity mirrors
- Cargo storage well

## SAFETY

- Brakes, 4-wheel antilock, 4-wheel disc
- Air bags, frontal, driver and right front passenger
- Daytime running lamps, includes automatic exterior lamp control
- Door locks, child security, rear

| CITY MPG | | HIGHWAY MPG |
|---|---|---|
| **14** |  | **19** |

Actual mileage will vary with options, driving conditions, driving habits and vehicle's condition.

## New

| | |
|---|---|
| **MSRP** | **$37,595.00** |
| **INSTALLED OPTIONS** | |
| Emissions, Federal Requirements | $0 |
| GVWR, 5750 LBS. (2608 KG) | $0 |
| CXL Preferred Equipment Group | $0 |
| • standard equipment | |
| Convenience Package | $150 |
| • convenience net | |
| • rear reversible cargo mat and cargo shade | |
| • rear | |
| Pedals, Power Adjustable | $150 |
| Seats, Heated, Driver And Front Passenger | $275 |
| • separate control for back and seat cushion | |
| Smokers Package | $30 |
| • muffin ashtray and lighter | |
| Sunroof, Power, Tilt Sliding, Electric With Express Open And Wind Deflector | $885 |
| Original Shipping Charge | $685 |
| **RETAIL PRICE (ORIGINALLY NEW)** | **$39,770.00** |

### Get more information on your smartphone:





www.BillMarsh.com
800-596-2774

Year: 2012
Make: Buick
Model: Enclave AWD 4dr Premium
VIN:

Engine: V6 Cylinder Engine
Transmission: TRANSMISSION, 6-SPEED AUTOMATIC
Exterior: White Diamond Tricoat
Interior: Titanium

## MECHANICAL

- Axle, 3.16 ratio
- All-wheel drive
- Alternator, 170 amps
- Trailering provisions, 2000 lbs (907 kg)
- GVWR, 6459 lbs. (2930 kg)
- Suspension, Premium Ride, 4-wheel independent
- Steering, power, variable effort
- Exhaust, dual with bright chromed tips

## EXTERIOR

- Luggage rack side rails, roof-mounted, chromed
- Headlights, articulating
- Fog lamps, front, halogen, with projector technology
- Glass, Solar-Ray deep-tinted, rear-side, quarter panel and liftgate
- Wipers, front intermittent with structureless wiper blades
- Wiper, rear intermittent with washer
- Liftgate, rear power

## ENTERTAINMENT

- SiriusXM Satellite Radio is standard on nearly all 2012 GM models. Enjoy a 3-month trial to the XM Select package, with over 170 channels including commercial-free music, all your favorite sports, exclusive talk and entertainment. And now add premium channels to your trial at no cost. Welcome to the world of satellite radio. (Requires a subscription sold separately by SiriusXM after the trial period. If you decide to continue your service at the end of your subscription service will automatically renew and bill, at the rates in effect at the time of renewal, until you call SiriusXM at 1-866-635-2349 to cancel. See our Customer Agreement for complete terms at www.siriusxm.com. Available only to those at least 18 and older in the 48 contiguous USA and D.C. Replaced by (UBS) NavTraffic when (UUM) Audio system with Navigation or (U4H) Audio system with Rear Seat Entertainment are ordered.)
- Bluetooth for phone personal cell phone connectivity to vehicle audio system and HMI (Human Machine Inerface)

- QuietTuning Buick exclusive process to reduce, block and absorb noise and vibration to create a quiet interior cabin

## INTERIOR

- Seat adjuster, 4-way power front passenger (fore-aft and recline), power lumbar
- Floor mats, front and rear auxiliary, covering (floormats first, second and third row.)
- Steering wheel, leather-wrapped with Mahogany wood accents
- Instrumentation includes Driver Information Center, tachometer, speedometer, fuel, coolant temperature, battery, gear selector, outside air temperature and compass display (Digital compass display moves to navigation screen with (UUM) Audio system with Navigation and (U4H) Audio system with Rear Seat Entertainment and Navigation.)
- Instrumentation, engine oil life monitor
- Windows, power with driver Express-Up and -Down features, passenger Express-Down feature
- Universal Home Remote, includes garage door opener, 3-channel programmable
- Theft-deterrent system, vehicle, PASS-Key III, engine immobilizer with content theft alarm
- Air conditioning, tri-zone automatic climate control with individual climate settings for driver and right front passenger and rear seat occupants
- Defogger, rear-window electric
- Glovebox, locking, passenger-side of instrument panel
- Mirror, inside rearview auto-dimming
- Visors, driver and front passenger illuminated vanity mirrors

## SAFETY

- Brakes, 4-wheel antilock, 4-wheel disc
- Air bags, dual-stage frontal and side-impact, driver and front passenger and side curtain for first, second and third row outboard passengers with Passenger Sensing System and roll over protection (Always use safety belts and child restraints. Children are safer when properly secured in a rear seat in the appropriate child restraint. See the Owners Manual for more information.)
- Door locks, rear child security
- Tire Pressure Monitor System



| CITY MPG | | HIGHWAY MPG |
|---|---|---|
| **16** | | **22** |

Actual mileage will vary with options, driving conditions, driving habits and vehicle's condition

## New

| MSRP | $45,765.00 |
|---|---|
| **INSTALLED OPTIONS** | |
| Emissions, Federal Requirements | $0 |
| 1 SN Preferred Equipment Group | $0 |
| Wheels, 20" (50.8 CM) Chrome Clad Aluminum | $300 |
| Tires, P255/55 R20 All Season, Blackwall | $0 |
| Wheel, 17" (43.2 CM) Compact Steel Spare Wheel And Tire | $0 |
| White Diamond Tricoat | $795 |
| Titanium, Perforated Leather Seating Surface | $0 |
| Audio System With Rear Seat Entertainment And Navigation | $3,185 |
| Sunroof, Power | $1,400 |
| License Plate Bracket, Front Mounting Package | $15 |
| Navtraffic | $0 |
| Original Shipping Charge | $825 |
| **RETAIL PRICE (ORIGINALLY NEW)** | **$52,285.00** |

### Get more information on your smartphone:



# Pilson Auto Centers

pilsonauto.com
217-234-6461

MonroneyLabels.com

| Year: | 2014 | Engine: | 4 Cylinder Engine |
| Make: | Buick | Transmission: | TRANSMISSION, 6-SPEED AUTOMATIC, ELECTRONICALLY CONTROLLED WITH ... |
| Model: | Encore AWD 4dr Leather | Exterior: | Quicksilver Metallic |
| VIN: | | Interior: | Ebony |

## MECHANICAL

· Axle, 3.53 final drive ratio
· Drivetrain, all-wheel drive
· Alternator, 130 amps
· Suspension, Ride and Handling
· Steering, power, variable effort, electronic
· Exhaust system, rear exit
· Exhaust tip, styled stainless-steel
· Keys, cylinder, foldable
· Mechanical Jack

## EXTERIOR

· Tires, P215/55R18 all-season, blackwall
· Tire, compact spare 16", located under cargo floor
· Fascias, front and rear accent color includes rocker moldings
· Headlamps, halogen composite projector beam with blue translucent ring and automatic exterior lamp control
· Fog lamps, front
· Lamp, center high-mounted stop/brake
· Glass, acoustic, laminated
· Glass, deep-tinted
· Windshield, solar absorbing
· Mirrors, outside heated power-adjustable, body-color, manual-folding with turn signal indicators
· Door handles, body-color with chrome strips
· Wipers, front intermittent with pulse washers
· Wiper, rear intermittent
· Vehicle protection, corrosion preventative

## ENTERTAINMENT

· Antenna, roof-mounted
· Audio system feature, 6-speaker system
· Audio system feature, color display, 7" diagonal
· QuietTuning Buick exclusive process that consists of acoustically enhanced windshield and side glass, along with numerous noise canceling acoustic treatments to reduce, block and absorb noise and vibration to create a quiet interior cabin
· Noise control system, active noise cancellation

## INTERIOR

· Memory Package driver side "presets" for seat position
· Seats, heated driver and front passenger
· Seat adjuster, driver 6-way power with manual recline and power lumbar adjustment
· Seat adjuster, front passenger 6-way power with manual recline and power lumbar adjustment
· Seatback, passenger flat-folding
· Headrests, 2-way adjustable, up/down
· Door sill plate cover, front
· Steering column, tilt and telescopic, adjustable

· Steering wheel, leather-wrapped 3-spoke, color-keyed with theft-deterrent locking feature
· Steering wheel, heated
· Steering wheel controls, mounted audio and phone interface controls
· Driver Information Center includes tachometer, speedometer, fuel, coolant temperature, battery and compass
· Instrumentation, outside temperature display, located on audio system
· Instrumentation, analog with mpg speedometer and tachometer
· Oil life monitoring system
· Cruise control, electronic with set and resume speed
· Air conditioning, dual-zone automatic climate control with individual climate settings for driver and right front passenger
· Air filter, particle
· Defogger, rear-window electric
· Shift knob, satin silver and chrome
· Glovebox, dual
· Power outlet, 120-volt, located on the rear of center console
· Mirror, inside rearview auto-dimming
· Visors, driver and front passenger illuminated vanity mirrors, covered
· Lighting, interior, dimming instrument panel cluster
· Lighting, interior, Ice Blue ambient, located on instrument panel
· Lighting, interior, overhead courtesy lamp
· Lighting, interior, rear cargo compartment lamp
· Cargo storage, tray under rear floor
· Cargo cover, rear, stowable and removable
· Side Blind Zone Alert

## SAFETY

· Brakes, 4-wheel antilock, 4-wheel disc
· StabiliTrak, stability control system
· Daytime Running Lamps, reduced intensity low beam
· Air bags, frontal and knee for driver and front passenger, side-impact seat-mounted and roof rail for front and rear outboard seating positions
· Air bag, Passenger Sensing System, sensor indicator inflatable restraint, front passenger/child presence detector
· Safety belts, 3-point, driver and front passenger height-adjustable with load limiters
· Safety belts, 3-point rear, all seating positions
· Restraint provisions, child, Isofix 2 point only, point/latch includes 3 top tether points
· Rear Cross-Traffic Alert
· Rear Vision Camera
· Door locks, child security, rear, electrical
· Tire Pressure Monitor, manual learn
· Horn, dual note tone



| CITY MPG | | HIGHWAY MPG |
| 23 | | 30 |

Actual mileage will vary with options, driving conditions, driving habits and vehicle's condition

## INSTALLED OPTIONS

| Emissions, Connecticut, Delaware, Maine, Maryland, Massachusetts, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont And Washington State Requirements | $0 |
| 1SL Preferred Equipment Group | $0 |
| • Standard Equipment | |
| Quicksilver Metallic | $0 |
| • (B13) Dark Argent Metallic lower accent color | |
| Dark Argent Metallic Lower Accent Color | Included |
| Ebony, Leather Appointed Seats | $0 |
| Audio System With Navigation, Am/Fm/Siriusxm Stereo, Single CD Player And MP3 Player | $795 |
| • navigation | |
| • IntelliLink 7" diagonal color LCD display | |
| • GPS navigation system | |
| • USB port | |
| • Radio Data System (RDS) and auxiliary input jack | |
| License Plate Bracket, Front Mounting Package | $0 |
| Original Shipping Charge | $925 |

**LEE** **Credit Now**
History of Used Vehicle Dealer

www.creditnow.com
866-864-9899

| | |
|---|---|
| Year: 2012 | Engine: 8 Cylinder Engine |
| Make: Cadillac | Transmission: TRANSMISSION, 6-SPEED AUTOMATIC, HEAVY-DUTY, 6L80E, ELECTRONICALLY... |
| Model: Escalade 2WD 4dr Platinum Edition | Exterior: White Diamond Tricoat |
| VIN: | Interior: Cocoa/Light Linen |

## MECHANICAL

· Throttle control, electronic
· Cooling, external engine oil cooler, heavy-duty
· Cooling, external transmission oil cooler, heavy-duty air-to-oil
· Rear wheel drive
· Differential, heavy-duty locking rear
· Rear axle, 3.42 ratio
· Battery, heavy-duty with rundown protection and retained accessory power
· Alternator, 160 amps
· Trailering equipment, heavy-duty includes trailering hitch platform, 7-wire harness with independent fused trailering circuits and 7-way sealed connector
· GVWR, 7100 lbs.
· Suspension, front independent, SLA, coil over shock and stabilizer bar
· Suspension, rear 5-link coil springs
· Automatic level control, heavy-duty, air
· Steering, power, rack-and-pinion
· Exhaust, dual-outlet stainless-steel

## EXTERIOR

· Tires, P285/45R22, all-season, blackwall TL AL2
· Tire inflation kit
· Fascia, front, body-color
· Fascia, rear, body-color
· Moldings, color-keyed bodyside with chrome accents
· Headlamps, LED
· Headlamps, Twilight Sentinel automatic delay
· Headlamps, IntelliBeam
· Fog lamps, front rectangular halogen, integral in front fascia
· Tail lamps, LED illumination
· Mirrors, outside heated power-adjustable, power-folding and driver-side auto-dimming, color-keyed with integrated turn signal indicators, ground illumination and programmable to provide curb view when in reverse
· Wipers, front intermittent

· Wiper, rear intermittent with washer
· Door handles, chrome
· Body, power liftgate

## ENTERTAINMENT

· Bluetooth for phone, personal cell phone connectivity to vehicle audio system and HMI
· NavTraffic is available in over 100 markets and works with your vehicle's navigation system to give you continuously updated traffic data right when you need it most – while you're driving. You'll avoid traffic tie-ups, save time and gas by getting alternate routes, and, in some cases, receive traffic speed and drive-time information. Plus, you can use NavTraffic at the same time you're enjoying SiriusXM Satellite Radio. You'll find that once you start using NavTraffic, you won't want to drive without it.
· Audio system feature, Bose 5.1 Cabin Surround Sound system with 10 speakers

## INTERIOR

· Seat release, second row, power for tumble and fold
· Floor covering, color-keyed carpeting
· Steering wheel, power-tilt, color-keyed with wood and leather-wrapped rim, locking
· Steering wheel controls, mounted audio and Driver Information Center controls
· Instrumentation, analog with speedometer, odometer, fuel level, engine temperature and tachometer
· Windows, power with driver and front passenger Express-Up/Down and lockout features
· Pedals, power-adjustable for accelerator and brake
· Remote vehicle start, adaptive
· Cruise control, electronic with set and resume speed
· Theft-deterrent system, vehicle, PASS-Key III+
· Cup holders, quad front, dual second row and single third row
· Cup holders, heated and cooled
· Mirror, inside rearview auto-dimming, includes OnStar controls
· Visors, driver and front passenger illuminated vanity mirrors with extenders

## SAFETY

· Brakes, 4-wheel antilock, 4-wheel disc, VAC power
· Daytime Running Lamps with automatic exterior lamp control
· Air bags, head curtain side-impact, first, second and third row outboard seating positions with rollover sensor
· Air bags, seat-mounted side-impact, driver and right-front passenger for thorax and pelvic protection
· Rear Park Assist
· Rear Vision Camera
· Safety belts, first and second row belts to body, third row belts to seat, lap and shoulder all seating positions
· Door locks, child rear security



| CITY MPG | | HIGHWAY MPG |
|---|---|---|
| **14** | | **18** |

Actual mileage will vary with options, driving conditions, driving habits and vehicle's condition.

## New

| | |
|---|---|
| **MSRP** | **$79,945.00** |
| **INSTALLED OPTIONS** | |
| Emissions, Federal Requirements | $0 |
| Platinum Edition Preferred Equipment Group | $0 |
| · Standard Equipment | |
| White Diamond Tricoat | $0 |
| Cocoa/Light Linen, Tehama Full Leather Seats With Mini Perforated Inserts | $0 |
| Audio System With Navigation, Compact Flash, Am/Fm/Siriusxm Stereo With MP3/CD/DVD Video/Audio Changer | $0 |
| Lpo, Wheel Locks | $55 |
| Original Shipping Charge | $995 |
| **RETAIL PRICE (ORIGINALLY NEW)** | **$80,995.00** |

## Get more information on your smartphone:





## www.AtlantaAutos.com
## 678-213-4455

| | |
|---|---|
| Year:  2005 | Engine:  8 Cylinder Engine |
| Make:  GMC | Transmission:  TRANSMISSION, 4-SPEED AUTOMATIC , electronically controlled with overdrive |
| Model:  Yukon XL 4dr 1500 4WD SLT | Exterior:  Sport Red Metallic |
| VIN: | Interior:  Pewter/Dark Pewter |

## MECHANICAL

· Battery, heavy-duty, 600 cold-cranking amps, includes rundown protection and retained accessory power
· Alternator, 160 amps
· Trailering wiring harness, 7-wire
· Recovery hooks, 2 front, frame-mounted
· GVWR, 7200 lbs
· Suspension Package, Premium Smooth Ride, includes 46mm diameter high pressure gas shocks
  Suspension, front, independent torsion bar, and stabilizer bar
· Suspension, rear, multi-link with coil springs
· Tire carrier, lockable, outside spare, winch-type mounted under frame at rear
· Steering, power
· Fuel capacity, approximate, gallon 31
· Exhaust, aluminized stainless-steel muffler and tailpipe
· Tools, mechanical jack and wheel wrench, stored in rear quarter trim

## EXTERIOR

· Luggage rack, roof-mounted, Black
· Bumper, front, chrome
· Bumper, rear, chrome step, includes pad
· Air dam, Gray
· Moldings, bodyside, body-color, with bright insert
· Grille, chrome surround
· Assist steps, Black, mounted between front and rear wheels at bottom of rocker panel
· Headlamps, dual halogen composite, includes flash-to-pass feature and automatic lamp control
· Fog lamps, front, rectangular, halogen
· Glass, Solar-Ray deep tinted
· Body, liftgate with liftglass, rear door system, includes rear-window wiper/washer

## INTERIOR

· SLT decor
· Seats, middle leather appointed 60/40 split-folding bench, 3-passenger with center armrest, storage tray and rear passenger easy entry
· Seats, rear 3rd row vinyl bench, 3-passenger, 1-piece removable

· Cupholders, in front seating area
· Cupholders, in rear of floor console
· Cupholders, driver and passenger side in 3rd row side trim
· Smokers Package, includes ashtray and lighter
· Floor covering, color-keyed carpeting
· Floormats, color-keyed, carpeted front and 2nd row, removable
· Steering column, Tilt-Wheel, adjustable, includes brake/transmission shift interlock
· Steering wheel, leather-wrapped rim, Black
· Steering wheel, mounted controls, includes audio and driver information center controls
· Driver Information Center, full functionality, monitors numerous systems
· Tire pressure monitoring system
· Instrumentation, analog, includes speedometer, odometer with trip odometer, fuel level, voltmeter, engine temperature, oil pressure and tachometer
· Warning tones, headlamp on, key-in-ignition, buckle-up reminder, turn signal on
· Windows, power, includes driver express-down and lockout features
· Cruise control, electronic with set and resume speed, includes telltale in instrument panel cluster
· Heater and defogger, includes front and side window defoggers, rear passenger heating ducts and heater, rear auxiliary
· Defogger, rear-window, electric
· Sound system feature, Bose Premium speaker system, 9 speakers, includes subwoofer in center console
· OnStar, 1-year Safe and Sound Service, includes automatic notification of air bag deployment, stolen vehicle tracking, emergency services, roadside assistance, remote door unlock, remote horn and lights, GM Goodwrench remote diagnostics, AccidentAssist and online concierge. Drivers can also obtain the available voice-activated, hands-free Personal Calling service and Virtual Advisor that provides location-based traffic and weather reports and other personalized information
· Door trim, lights on front doors, side reflectors on rear doors
  Armrests, driver and passenger doors, padded
· Mirror, inside rearview, electrochromic , 8-point compass, outside temperature indicator and right front passenger air bag status
· Visors, padded, Shale-colored, driver and passenger side with cloth trim, extenders, illuminated vanity mirrors and corner storage pockets on back of visors
· Assist handles, front passenger and outboard 2nd row seats
· Coat hooks, driver and passenger side, rear seat and cargo area
· Storage bin, behind rear driver side quarter panel

## SAFETY

· Air bags, frontal, dual-stage, driver and right front passenger, includes Passenger Sensing System
· Brake/transmission shift interlock



| CITY MPG | | HIGHWAY MPG |
|---|---|---|
| **14** | | **18** |

Actual mileage will vary with options, driving conditions, driving habits and vehicle's condition

## *New*

| | |
|---|---|
| **MSRP** | **$42,155.00** |
| **INSTALLED OPTIONS** | |
| Suspension Package, Autoride | included |
| Emissions, Federal Requirements | $0 |
| SLT Preferred Equipment Group | $5,080 |
| Tires, P265/70 R17, All Season, White Outlined Letter | $125 |
| Seats, Front Leather Seating Surfaces Power Reclining Full Feature Buckets | included |
| Sound System, Etr Am/Fm Stereo With 6 Disc CD Changer | included |
| Wheels, 4 17" X 7.5" (43.2 CM X 19.1 CM) 6 Spoke Premium Aluminum Ultra Bright Polish | $645 |
| Safe And Secure Package | $1,470 |
| Sun, Sound And Entertainment Package | $2,720 |
| Trailering Equipment, Heavy Duty | $330 |
| Air Cleaner, High Capacity | $0 |
| Cooling, External Transmission Oil Cooler, Heavy Duty Air To Oil | included |
| Cargo Package | included |
| Mirrors, Outside Rearview, Power Folding, Power Adjustable, Heated, Color Keyed, Driver Side Electrochromic | included |
| Air Bags, Side Impact, Driver And Right Front Passenger | included |
| Entertainment System, Rear Seat | included |
| Pedals, Power Adjustable | included |
| Sound System Feature, XM Satellite Radio. | included |
| Sunroof, Power, Tilt Sliding, Electric | included |
| Universal Transmitter, Homelink | included |
| Customer Dialogue Network | $0 |
| Original Shipping Charge | $850 |
| **RETAIL PRICE (ORIGINALLY NEW)** | **$53,375.00** |



www.BillMarsh.com
800-596-2774

MonroneyLabels.com

| | |
|---|---|
| Year: 2007 | Engine: V6 Cylinder Engine |
| Make: GMC | Transmission: Automatic 6-spd |
| Model: Acadia FWD 4dr SLT | Exterior: Liquid Silver Metallic |
| VIN: | Interior: Ebony |

## MECHANICAL

· Axle, 3.16 ratio
· Front wheel drive
· Alternator, 170 amps
· GVWR, 6400 lbs. (2903 kg)
· Suspension, Ride and Handling
· Steering, power, variable effort
· Exhaust, double dual with chrome tips

## EXTERIOR

· Spoiler, rear
· Roof rails, brushed aluminum, longitudinal
· Moldings, body-color bodyside
· Headlamps, dual halogen projector lamp
· Headlamp control, automatic on and off
· Fog lamps, front round halogen
· Glass, Solar-Ray deep-tinted (all windows except light-tinted glass on windshield and driver- and front passenger-side glass)
· Door handles, chrome (Bright beltline molding.)
· Wipers, front intermittent with washers
· Wiper, rear intermittent with washer
· Body, manual rear liftgate

## INTERIOR

· Seats, heated driver and front passenger
· Console, front center with 2 cup holders and storage

· Cup holders, 2 front on the floor console
· Cup holders, 2 in the second row
· Floor mats, color-keyed carpeted front, second and third row, removable
· Floor covering, color-keyed carpeting
· Insulation, acoustical package
· Steering wheel, leather-wrapped with redundant audio controls
· Steering wheel, Tilt-Wheel and telescopic with brake/transmission shift interlock
· Instrumentation, 5-gauge with Enhanced Driver Information Center and outside temperature indicator
· Tire Pressure Monitoring System
· Cruise control, electronic with set and resume speed
· OnStar, 1-year of Directions and Connections plan. Includes the innovative easy to use Turn-by-Turn Navigation services which provide voice-guided directions (where available). Also includes Automatic Notification of Air Bag Deployment, Stolen Vehicle Location Assistance, Emergency Services, Roadside Assistance, Remote Door Unlock, OnStar Vehicle Diagnostics, Hands-Free Calling, AccidentAssist, Remote Horn and Lights, Information and Convenience Services, and Driving Directions (OnStar services require vehicle electrical system (including battery), wireless service and GPS satellite signals to be available and operating for features to function properly. OnStar acts as a link to existing emergency service providers, Stolen Vehicle Location Assistance and Remote Door Unlock success varies with conditions. OnStar Vehicle Diagnostic available on most 2004 MY and newer GM vehicles. Diagnostic capability varies by model. Turn-by-Turn Navigation requires ABS and is not available in certain areas. Visit onstar.com or call 1-888-466-7827 for system limitations and details)
· Universal Home Remote, includes garage door opener, 3-channel programmable
· Theft-deterrent system, vehicle, PASS-Key III, engine immobilizer
· Defogger, rear-window, electric
· Audio system controls, rear with 2 headphone jacks (headphones not included) and controls for volume, station selection and media
· Antenna, Quad-Band for AM/FM stereo and OnStar
· Mirror, inside rearview auto-dimming with 8-point compass display
· Visors, driver and front passenger, padded with cloth trim, color-keyed
· Cargo storage, under rear floor

## SAFETY

· Door locks, rear child security
· Horn, dual-note



| CITY MPG | | HIGHWAY MPG |
|---|---|---|
| **16** | | **22** |

Actual mileage will vary with options, driving conditions, driving habits and vehicle's condition

# New

| | |
|---|---|
| **MSRP** | **$33,225.00** |
| **INSTALLED OPTIONS** | |
| Body, Power Rear Liftgate | included |
| Emissions, Federal Requirements | $0 |
| SLT 2 Preferred Equipment Group | $0 |
| Tires, P255/55 R19 H Rated | $0 |
| Audio System With Navigation, Am/Fm Stereo With MP3 Compatible CD/DVD Player And DVD Based Navigation | $2,145 |
| Wheels, 4 19" X 7.5" (48.3 CM X 19.1 CM) Machined Ultrabright Aluminum | $1,295 |
| Mirrors, Outside Heated Power Adjustable, Power Folding And Driver Side Auto Dimming, Body Color | included |
| Audio System Controls, In The Rear Cargo Area | $150 |
| Cargo Package | included |
| Convenience Package | included |
| Trailering Package | $425 |
| Trailer Hitch, Factory Installed | included |
| Entertainment System, Rear Seat DVD Player | $1,295 |
| Audio System Feature, Bose Advanced 10 Speaker System | $0 |
| XM Satellite Radio. | included |
| Antenna, Quad Band | included |
| Head Up Display | $350 |
| Power Outlet, 3 Prong Household Style, 115 Volt | included |
| Remote Vehicle Start | included |
| Seat, 8 Way Power Driver | included |
| Seat, 4 Way Power Passenger | included |
| Sunroof, Dual Skyscape 2 Panel Power, Tilt Sliding Front And Fixed Rear | $1,300 |
| Washer Nozzles, Heated Windshield | included |
| Original Shipping Charge | $735 |
| **RETAIL PRICE (ORIGINALLY NEW)** | **$40,920.00** |



www.BillMarsh.com
800-596-2774

MonroneyLabels.com

| | |
|---|---|
| Year: 2009 | Engine: 8 Cylinder Engine |
| Make: GMC | Transmission: TRANSMISSION, 6-SPEED AUTOMATIC, HEAVY-DUTY, ELECTRONICALLY CONTR. |
| Model: Yukon XL Denali AWD 4dr 1500 | Colors: Summit White / Ebony |
| VIN: | Mileage: 200,006    Stock #: 2019-321 |

**MECHANICAL**

- Rear axle, 3.42 ratio
- Tow/haul mode selector button located at end of shift lever
- Cooling, external engine oil cooler, heavy-duty air-to-oil integral to oil cooler of radiator
- Cooling, auxiliary external transmission oil cooler, heavy-duty air-to-oil
- Transfer case, AWD, electronic automatic system
- All-wheel drive
- Alternator, 160 amps
- Recovery hooks, 2 front, frame-mounted
- Differential, heavy-duty locking rear
- GVWR, 7400 lbs.
- Suspension Package, Autoride, bi-state variable shock dampening and rear air-assisted load-leveling includes automatic air level control
- Suspension, front coil-over-shock with stabilizer bar
- Suspension, rear multi-link with coil springs
- Trailering equipment, heavy-duty includes trailering hitch platform, 7-wire harness with independent fused trailering circuits mated to a 7-way sealed connector and 2" trailering receiver
- Steering, power
  Brakes, 4-wheel antilock, 4-wheel disc
  Exhaust, aluminized stainless-steel muffler and tailpipe
- Tools, mechanical jack and wheel wrench stored in rear quarter trim

**EXTERIOR**

- Wheels, 4-20" x 8.5" chrome aluminum
- Tires, P275/55R20 all-season, blackwall
- Wheel, 17" full-size, steel spare
  Tire, spare P265/70R17
- Tire carrier, lockable outside spare winch-type mounted under frame at rear
- Fascia, front color-keyed
- Fascia, rear color keyed
- Luggage rack, roof-mounted, body-color with bright accent
- Luggage rack center rails
- Moldings, body-color bodyside with bright inserts
- Grille, chrome surround
- Assist steps, Black with chrome insert, mounted between the front and rear wheels
- Headlamps, projector beam with automatic exterior lamp control and flash-to-pass feature
- Fog lamps, front round, halogen
- Mirrors, outside heated power adjustable, power folding and driver-side auto-dimming, body-color, with integrated turn signal indicators, ground illumination and curb-tilt
- Glass, Solar-Ray deep-tinted
- Wipers, front intermittent, Rainsense
  Wiper, rear intermittent with washer
- Liftgate with liftglass, rear door system with rear-window wiper/washer
- Liftgate, rear power-operated controlled from front overhead console, remote key fob or button inside liftgate

**ENTERTAINMENT**

- Audio system, AM/FM stereo with MP3 compatible 6-disc in-dash CD changer seek-and-scan, digital clock and auto-tone control
- Audio system feature, Bose Centerpoint Surround Sound 10-speaker system
- XM Radio, XM Radio includes 3 trial months of service. XM turns your world on with commercial-free music channels from Rock to Jazz, Country to Classical, Latin Pop to Hip Hop, and virtually everything in between, all in amazing digital sound. Turn on your favorite Sports with every Major League Baseball game from Opening Day until the World Series, NHL Hockey, the PGA TOUR and college football and basketball. Plus XM brings you the biggest names in news and talk, outrageous comedy, award-winning family programming -- wherever you go from coast to coast. Exclusive live concerts, Oprah and Friends, Radio Disney, and so much more. Find what turns you on
  Audio system controls, rear with 2 headphone jacks
- power outlet and controls for volume, station selection and media
- Bluetooth for phone personal cell phone connectivity to vehicle audio system

**INTERIOR**

- Seats, front bucket with leather-appointed seating, 12-way power driver and front passenger seat adjusters, including power lumbar control, power recline, heated seat cushion and seatbacks, 2-position driver memory, adjustable head restraints, storage pockets and floor console
- Seat adjuster, driver power
- Seat adjuster, front passenger power

- Seats, heated second row
- Seat release, second row, power release only
- Seats, third row 50/50 split-bench with vinyl, 3-passenger removable, all- bench-to-seat
- Console, floor with storage area, 4 cup holders and integrated second row audio and HVAC controls
- Cup holders, in front seating area
- Cup holders, in rear of floor console
- Cup holders, driver and passenger-side in third row side trim
- Floor covering, color keyed carpeting
- Floor mats, color-keyed carpeted front and second row removable
- Acoustical Insulation Package, premium
- Steering column, Tilt-Wheel, adjustable with brake/transmission shift interlock
- Steering wheel, Deluxe, leather wrapped with power-tilt
- Steering wheel, heated
- Steering wheel controls, mounted audio and cruise controls includes Driver Information Center controls
- Driver Information Center, full-functionality includes with temperature and compass
  Instrumentation, analog with speedometer, odometer with trip odometer, fuel level, voltmeter, engine temperature, oil pressure and tachometer
- Warning tones, headlamp on, key-in-ignition, driver and passenger buckle up reminder and turn signal on
- Windows, power with driver Express-Down and lockout protection
- Door locks, power programmable with lockout protection
- Remote vehicle starter system includes Remote Keyless Entry
- Pedals, power-adjustable for accelerator and brake, includes Rear Parking Assist
- Universal Home Remote includes garage door opener, 3-channel programmable
- Cruise control, electronic with set and resume speed
- Air conditioning, tri-zone automatic climate control with individual climate settings for driver and right-front passenger
- Air conditioning, rear auxiliary
- Heater, rear auxiliary with rear passenger heating ducts
- Defogger, rear window electric
- Rear Parking Assist, Ultrasonic with rearview LED display and audible warning
- Theft-deterrent system, vehicle, PASS-Key III
- Door trim, side reflectors on the rear doors
- Armrests, driver and passenger doors, padded
- Mirror, inside rearview auto-dimming
  Console, overhead mini with map lights
- Visor, driver and front passenger illuminated vanity mirrors, padded with cloth trim, extended on roof, Shale-colored
- Assist handles, front passenger and second row outboard
- Coat hooks, driver- and passenger-side rear seat and cargo area
- Lighting, interior with dome light, driver- and passenger-side door switch with delayed entry feature, cargo lights, door handle or Remote Keyless Entry activated illuminated entry and map lights in front and second seat positions
- Power outlets, 4 auxiliary with covers, 12-volt; 3 in floor console, 1 in cargo area
  Storage bin, behind driver-side rear quarter panel
- Cargo mat

**SAFETY**

- StabiliTrak, stability control system with traction control
- Air bags, dual-stage frontal, driver and right-front passenger with Passenger Sensing System
- Air bags, head curtain side-impact, first and second row outboard seating positions with rollover sensor; includes third row seating positions with 3-passenger third row bench seat
- OnStar, 1-year of Directions and Connections plan includes the innovative easy to use Turn-by-Turn Navigation service which provide voice-guided directions. Also includes Automatic Crash Notification, Automatic Notification of Air Bag Deployment, Stolen Vehicle Location Assistance, a link to all Emergency Services, Roadside Assistance, Remote Door Unlock, OnStar Vehicle Diagnostics, Hands-Free Calling, AccidentAssist, Remote Horn and Lights, Information and Convenience Services, and Driving Directions
- LATCH system for child safety seats
- Tire Pressure Monitoring System



| CITY MPG | | HIGHWAY MPG |
|---|---|---|
| **12** | | **19** |

Actual mileage will vary with options, driving conditions, driving habits and vehicle's condition.

## *New*

| MSRP | $55,935.00 |
|---|---|
| **INSTALLED OPTIONS** | |
| Emissions, Federal Requirements | $0 |
| Preferred Equipment Group | $0 |
| • standard equipment | |
| Solid Paint | $0 |
| Summit White | $0 |
| Ebony, Perforated Nuance Leather Appointed Seat Trim | $0 |
| Audio System With Navigation, Am/Fm Stereo With MP3 Compatible CD/DVD Player And DVD Based Navigation | included |
| Sun, Entertainment And Destinations Package | $4,790 |
| • [UVB] AM/FM stereo MP3 compatible CD/DVD player and DVD-based navigation | |
| • [U42] rear seat entertainment system | |
| • [UVC] rearview camera system and [CF5] power sunroof | |
| • [CF5] power sunroof | |
| Sunroof, Power, Tilt Sliding | Included |
| • express-open and close and wind deflector | |
| License Plate Bracket, Front | $15 |
| Entertainment System, Rear Seat DVD Player | Included |
| • remote control | |
| • overhead display | |
| • 2 sets of 2-channel wireless infrared headphones and auxiliary audio/video input jacks | |
| Seats, Heated And Cooled, Seat Cushion And Seat Back For Driver And Front Passenger | $650 |
| Rearview Camera System | Included |
| XM Navtraffic | $0 |
| Customer Dialogue Network | $0 |
| Original Shipping Charge | $950 |
| **RETAIL PRICE (ORIGINALLY NEW)** | **$62,340.00** |

**AUTO & TRUCK**

## www.redsautoandtruck.com
## 303-726-5520

# EXHIBIT C

Richard Heimann (CA State Bar # 063607)
Nimish R. Desai (CA State Bar # 244953)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery St., 29th Fl
San Francisco, CA 94111-3339
Telephone: 415-956-1000
Facsimile: 415-956-1008
rheimann@lchb.com
ndesai@lchb.com

David S. Stellings (*pro hac vice*)
Katherine I. McBride (*pro hac vice*)
Jessica A. Moldovan (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: 212.355.9500
Facsimile: 212.355.9592
dstellings@lchb.com
kmcbride@lchb.com
jmoldovan@lchb.com

*Attorneys for Plaintiffs*

*[Additional counsel listed on signature page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| James Milstead et al, | Case No. 4:21-cv-06338-JST |
| Plaintiffs, | **CLRA VENUE DECLARATION OF ARTHUR RAY PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1780(d)** |
| v. | |
| GENERAL MOTORS LLC, et al., | |
| Defendant. | |

I, ARTHUR RAY, declare as follows:

1. I have personal knowledge of the facts stated herein and, if called upon to do so, could competently testify thereto.

2. I am a Plaintiff in the above-captioned action.

3. I submit this declaration in support of the Complaint in this case, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code section 1750 *et seq.*

4. I understand that General Motors LLC, General Motors Company, and General Motors Holdings LLC have their principal places of business and generally conduct business in Detroit, Michigan.

5. The Complaint has been filed in the proper place for trial of this action.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on January 26, 2023 in Brentwood, Contra Costa County, California.

By: _____
ARTHUR RAY

# EXHIBIT D

## Forensic Report
## May 26, 2022

**File:**      **McCoy vs. GM – 2018 GMC Sierra HD**

**Subject:**   **Vehicle Safety Performance**


## Preliminary:

My name is Chris Caruso. I am an engineer working as a consultant in the area of automotive safety. I have been asked to provide my analysis and opinions in this case.

A true and correct copy of my *curriculum vitae* is attached as Exhibit A. As set forth in my *curriculum vitae*, I graduated in 1986 with a Master of Science in Engineering from Arizona State University. Before earning my Master's degree in Engineering (MSE) at ASU, I obtained a Bachelor of Science degree in Electrical Engineering (BSEE) and Mechanical Engineering (BSME) from General Motors Institute in 1984.

I worked as an engineer in training at General Motors Corporation ("GM") in Trenton, New Jersey from 1979 to 1986. From 1986 to 1987, I was employed as a Systems Engineer in the Advanced Vehicle Systems division of Delco Systems Operations (DSO) in Santa Barbara, California. During this time in the Advanced Vehicle Systems division, my work involved the engineering design and development of a variety of vehicle safety systems.

From 1987 to 1989, I served as Delco Electronics Resident Engineer at Breed Automotive Corporation in Boonton, New Jersey. During this time I was involved in the development and implementation of the second generation of airbag systems on GM vehicles and their subsidiaries in the US and overseas and the first generation of ball/tube sensing systems for GM and their worldwide subsidiaries vehicles.

From 1989 to 1995, I worked as the Lead Systems Engineer for Automotive Safety Systems at Delco Electronics Corporation in Kokomo, Indiana. As the Lead Systems Engineer for Automotive Safety Systems at Delco, in addition to other vehicle systems, I supported the development of the techniques and concepts for the first generation Event Data Recorder ("EDR") (which was a part of the electronic module known as Sensing and Diagnostic Module ("SDM")). I was also responsible for investigating sensor issues in crash tests and field performance, including Crash Data Recording/Event Data Recording (CDR/EDR) downloads and interpretations.

1

During this time I also was a lead engineer in the development of crash sensor specifications and the airbag sensing systems for major OEM's worldwide. This included the development of the "Sensor Mounting Guidelines" specification provided to all OEM's who were implementing Delco Electronics safety systems.

From 1995 to 1999, I worked in the Advanced Algorithm Development Group at Delco Electronics in Kokomo, Indiana. During this time I developed algorithm design and crash sensing techniques for the new Electronic Frontal Sensor ("EFS") for frontal crash detection and also supported the development of the Frontal impact Sensor ("EFS") algorithm and signal processing designs.

I also reviewed and evaluated the methods, procedures and processes for the development of the airbag safety systems. As part of my work I designed the SDM crash sensing algorithms and CDR/EDR crash data recording logic. I also supported the development of the signal processing of input acceleration data for the next generation SDM sensor designs. I also designed a stand-alone CDR for application in field vehicles and fleet vehicles such as taxis and rental cars, as well as conducted detailed analysis of crash test data to determine sensing system design and performance. I investigated and identified sensor issues in crash testing and field performance, including many CDR/EDR downloads and interpretations. My work also included development of systems and sensors and analysis of data relating to vehicle crashworthiness.

In 1999, I also served as Senior Development Engineer for Automotive Safety Systems at Delphi Delco Electronics Systems in the Wuppertal Technical Center in Wuppertal, Germany, where I helped create an automotive safety system development group for our German engineering design center.

From 1999 to 2002, I was the Advanced Product Development Engineer at Delphi Delco Electronics Systems in Kokomo, Indiana. In addition to other projects, during this time I developed the next generation of front and frontal impact airbag sensing systems, as well as other vehicle safety systems and technologies, including crash sensing and system development for rollover roof rail airbag systems. I also obtained patent protection for six (6) crash sensing algorithms in connection with frontal and side airbag systems. I also continued to be involved in field investigations related to problems observed in system performance, including EDR/CDR downloads and interpretations. During this time, I evaluated potential airbag system defects and developed corrective actions and solutions to remedy problems that were found.

From 2002 to 2003, I worked as the Engineering Group Manager at Delphi Delco Electronics' Mexico Technical Center in Juarez, Mexico. During this time, I

2

managed engineering teams that developed software, systems and test engineering for Passive Occupant Detection System (PODS-B) and SDM and Satellite Sensor projects and continued my work involving vehicle systems product performance anomalies and issues, including substantial work involving downloads and interpretations.

In 2003, I was promoted to Technical Manager for Automotive Safety Systems at Delphi Corporation and continued in this role through 2006. During this time, I served as the Expert Technical Lead of all engineering disciplines (Systems, Mechanical, Electrical, Software, Test) on the development and product engineering of the PODS-B for advanced airbag systems. I also initiated the Advanced Development Project for revisions to the existing PODS-B algorithm and electronic technology. I regularly investigated and analyzed issues with the PODS and SDM systems in vehicles in the field and observed during developmental testing. In addition, a substantial part of my work involved CDR/EDR downloads and interpretations. I also provided regular training and classes in Airbag Systems and Occupant Detection Systems to engineers at Delphi and customer teams. I led the technical design review for Electronic Control Units (ECUs) and supported continuing development of the SDM and other airbag related technologies.

I voluntarily left Delphi in August of 2006. In July of 2007, I founded Automotive Safety Consulting, which provides automotive safety and technology consulting. The focus of my work with Automotive Safety Consulting involves: (1) analysis of passenger vehicle crashes and determination of the performance of the applicable safety systems; (2) identification and analysis of defects or deficiencies in occupant protection systems, if applicable; (3) research and analysis of the feasibilities and capabilities of safety system technologies and measures for preventing injuries and fatalities in a variety of field crash conditions; (4) development of protocols and support for CDR/EDR downloads; and (5) interpretation and analysis of CDR/EDR downloads.

As referenced in my CV, I have obtained six (6) patents in automotive safety technologies, 3 of which directly relate to crush zone crash sensing and all 6 of which are for products that are used in production vehicle safety systems. My work has also included two (2) publications and presentations for the Society of Automotive Engineers (SAE) International Congress involving automotive safety systems.

During the course of my work involving automotive safety systems, including my work involving SDM and Satellite crash sensing systems and analysis, I have received several awards and honors. For example, I am a recipient of the: (a) Delco Electronics Boss Kettering Award for Engineering Excellence; (b) the GM President's Council Honors Award for Engineering Excellence; (c) the Delphi Lead

3

Award for Advanced Engineering; (d) the GM People Make Quality Happen Award for Design Engineering Excellence; and (e) the Delphi Corporation Boron Recovery Award for Problem Solving, as well as numerous other awards and recognitions from GM, Delphi, and other OEMs.

In addition to safety consulting for various organizations needing technical information and guidance, I also provide consulting for parties in products liability cases involving automotive safety systems. I have served as a consultant for both plaintiffs and defendants in numerous cases involving automotive safety systems, including cases involving EDR/CDR downloads and readouts.

As set forth above, over the course of my years as an engineer and as a result of my background, education, training, and experience, which includes over 36 years of experience working with vehicle safety systems and over 43 years working in the automotive engineering field, I have obtained extensive knowledge regarding airbag safety technologies for frontal impact, frontal impact, rollover, rear impact occupant protection systems and devices, as well as occupant classification systems.

## Background

This report addresses an incident that occurred on October 17, 2019 when Mark McCoy, driving a 2018 GMC Sierra HD ran off the left side of the roadway on an exit remap from Interstate 84, collided with two vehicles and a fence at a construction staging yard, causing significant frontal damage to the truck. The frontal impact airbag did not deploy. Mr. McCoy was seriously injured in the collision.

The scene photo below shows the truck having gone through the fence and sitting atop the flatbed trailer up against the construction truck.



2018 GMC Sierra HD – Scene Photo

The following 2 scene photos shows the vehicle up against the axle of the construction truck.



2018 GMC Sierra HD – Scene Photo



2018 GMC Sierra HD – Scene Photo

This photo is of the post-accident subject 2018 GMC Sierra HD vehicle. Clearly there is a moderate to severe frontal impact to the front of the vehicle, which would warrant the deployment of the driver frontal impact airbag. The failure to deploy the airbag resulted in a vehicle that was defective, unsafe and unreasonably dangerous and led directly to the injuries suffered by Mr. McCoy.



2018 GMC Sierra HD – Inspection Photo

**Material Reviewed:**

- Connecticut Uniform Police Crash Report
- Scene Photos
- Danbury Hospital Records
- CDR Download from the Subject Vehicle
- ESIS Documents
- Inspection photos of the subject vehicle
- 2018 GMC Sierra 2500HD – Mitchell CRS Summary
- 2018 GMC Sierra 2500HD – NHTSA Ratings
- 2018 GMC Sierra 2500HD – NHTSA Recall Database
- 2018 GMC Sierra 1500 – IIHS Ratings

- GM and Aptiv (formerly Delphi) Document Production
- Exemplar Photographs

**Examination:**

This subject collision was a partial underride impact to the front of the subject 2018 GMC Sierra HD. Although less common for a heavy duty truck than a car, underride impacts are still foreseeable real world crash events where one vehicle rides underneath the structure of another vehicle, resulting in the primary deformation being above the bumper beam and primary vehicle structures. This results in a longer, softer crash onset, but once the upper sheet metal (grill, radiator, headlamps, etc.) deform rearward to the engine, the crash pulse can become quite severe.

In our case, the subject collision still had a significant impact into the bumper and rails from the engagement with the construction truck axle, but clearly there was an underride component since the top of the radiator is clearly pushed further rearward than the lower radiator support and bumper structures.



2018 GMC Sierra HD – Inspection Photo

Based on the documents provided by both GM and Aptiv (crash sensing system supplier), GM had a 20mph Bumper Under-ride MUST DEPLOY Barrier test requirement for the subject vehicle, however, that was never directly tested, it appears that was evaluated based on some type of computer simulated crash data:

15-K2HD-FE01.01.

# Frontal Sensing Calibration Thresholds

**Threshold establishment method: Barrier Test and Supplier Scaling predictions**

| Threshold Condition | Speed km/h (mph) | Nominal Deployment Time (ms) | | Test # |
|---|---|---|---|---|
| | | Retractor Pretensioner Driver/Pass | Front Airbag Driver/Pass | |
| **0 Degree Frontal Thresholds** | | | | |
| No Deploy | 16 (9) | ND | ND | C18329 |
| All-Deploy | 22 (14) | 32 | 32 | C19008 |
| **30 Degree Angle Frontal Thresholds** | | | | |
| All-deploy | 28 (18) | 33 | 33 | 15-K2HD-FE01.04 (Left) |
| | | 33 | 33 | 15-K2HD-FE01.05 (Right) |
| **Offset Frontal Sensing Thresholds** | | | | |
| Offset Deformable Barrier | 40km/h (25mph) | 27 | 27 | C18437 |
| 0 Deg Center Pole | 35km/h (22mph) | 46 | 46 | 15-K2HD-FE01.02 |
| Bumper Under-ride Barrier | 32km/h (20mph) | 38 | 39 | 15-K2HD-FE01.01 |

2018 GMC Sierra HD – Calibration Thresholds


In this 20mph underride crash, the frontal impact airbags must deploy by 50ms to provide adequate occupant protection, according to the separately supplied calibration summary. In the subject crash, the estimated Delta V is approximately 30-35mph with an initial estimate of between 120-150ms time duration. This clearly is above both the standard airbag deployment threshold of 16mph rigid barrier impact as well as the 20mph underride severity. GM would have expected the frontal impact airbag, possibly a Stage 1 plus Stage 2 inflation level.

The failure to deploy the driver frontal impact in the subject collision left Mr. McCoy without any of the supplemental protection GM included in the vehicle safety system. Again, the failure to deploy this airbag was defective, unsafe and unreasonably dangerous.

The dual front EFS sensors are located on the underside of the lower radiator support of the 2018 GMC Sierra HD.

Mitchell **RepairCenter˜ TechAdvisor**

---

## 2018 GMC 2500HD Sierra Denali
Restraint Systems / Air Bag Service & Repair / Airbag / SUPPLEMENTAL INFLATABLE RESTRAINTS

---

### Frontal Impact Sensing and Deployment (2500/3500)

Front End Inflatable Restraint Discriminating Sensor Replacement

Fig. 20: Airbag Front End Discriminating Sensor



2018 GMC Sierra HD – Mitchell Repair Center Details

During my inspection, I noted that the EFS sensors and the entire lower radiator support were rotated rearward and upward at some point in the collision sequence.



2018 GMC Sierra HD – Inspection Photo – EFS Rotated Upward

This rotation, if it occurred early in the construction truck crash or during the trailer undercarriage impact, this would have taken the EFS sensor out of the primary frontal impact direction (they have a single axis accelerometer inside that needs to be looking forward) and with them pointed upward in the vertical direction they would no longer be seeing the fore/aft crash severity and would fail to determine that airbag deployment was necessary.

However, subsequent inspection of an exemplar by Nick Earnhart showed that these sensors were well protected by the lower frame cross member and would have been unlikely to have been impacted and rotated during the trailer impact. Thus, although this was an initial concern, the information available would make this a low probability failure mode. It cannot be ruled out, but would likely have happened late enough in the crash that the airbag should have already deployed.



2018 GMC Sierra HD Exemplar – Earnhart Inspection Photo –
EFS and Cross Member

The next key piece of forensic evidence was the fact that the Sensing and Diagnostic Module (SDM) in the subject vehicle failed to record ANY crash event.

11

There were 3 events in the sequence: A chain link fence, a low boy trailer and the construction truck. According to GMs own specifications, even if no airbag deployment occurs, any event greater than 8km/h (5mph) will be recorded as part of the Crash Data Recording (CDR). From the excerpt below, it is clear than no event was recorded for this subject collision even though the event was clearly above 5mph.

   

IMPORTANT NOTICE: Robert Bosch LLC and the manufacturers whose vehicles are accessible using the CDR System urge end users to use the latest production release of the Crash Data Retrieval system software when viewing, printing or exporting any retrieved data from within the CDR program. Using the latest version of the CDR software is the best way to ensure that retrieved data has been translated using the most current information provided by the manufacturers of the vehicles supported by this product.

## CDR File Information

| | |
|---|---|
| User Entered VIN | |
| User | R. Yeager |
| Case Number | MCCOY |
| EDR Data Imaging Date | 08/13/2020 |
| Crash Date | 10/17/2019 |
| Filename | ESIS AIRBAG DATA (CDR) - MCCOY (          ).CDRX |
| Saved on | Thursday, August 13 2020 at 11:14:12 |
| Imaged with CDR version | Crash Data Retrieval Tool 19.4.2 |
| Imaged with Software Licensed to (Company Name) | ESIS - General Motors |
| Reported with CDR version | Crash Data Retrieval Tool 19.4.2 |
| Reported with Software Licensed to (Company Name) | ESIS - General Motors |
| CDR Device Type | Airbag Control Module |
| Event(s) recovered | NONE |

2018 GMC Sierra HD – Crash Data Recording

The failure to record any data in this collision, also clearly violates GM's own specifications for the safety system. This can generally occur in one of three ways:
1. The event does not exceed 5mph
2. The SDM was without power at the time of the collision
3. The vehicle power system was interrupted during the crash.

In the first case, we know this event was clearly above the CDR recording threshold, therefore, this would not have been a factor.

In the second case, this is more difficult to prove and also the most difficult to eliminate. The fact that we had an above threshold frontal impact but the frontal impact airbag did not deploy and the fact that we had no crash data recorded identifies this as a possible root cause of BOTH failures. The GM Ignition switch defect and subsequent recall had these types of failures, however, it was not clear if this 2018 model vehicle would have had similar issues to the known defective GM ignition switch.

The third item is common in collisions such as this. Late in the crash event, the vehicle battery and fuse block can enter the crush zone and be destroyed. My inspection of the subject vehicle shows that this was likely. However, with the SDM having an energy reserve, this would not have prevented the airbag deployment, even if it failed to complete crash recording.

Thus, if we look at the key factors here, we had a deployment level crash event but no recorded data. With this, both items 2 and 3 are feasible scenarios, but if we focus on the lack of deployment, it leaves us with 2 possibilities to consider. If the failure to deploy was because of item 2, the complete power loss BEFORE the crash, then the root cause was simply this loss of power. But we need to determine the root cause of that catastrophic power loss. If the failure to deploy was part of item 3, then we must look at the crash sensing system to determine the root cause of the failure to recognize this crash as a severe event where airbag deployment was necessary. We will focus on this next.

First let's cover the loss of power. In the SDM, there exist an energy reserve capability. What this means is that since we know loss of vehicle power is common in crash events, particularly moderate to high severity crashes will significant intrusion into the engine bay, we provide internal capacitors within the SDM to provide a limited amount of additional power so that we can continue to process the crash information, deploy airbags and pretensioners, if needed, and then to perform the crash recording function.

From the SDM30 specification (the model that was used in the subject vehicle, it was shown that the energy reserve capability varied by function. The table below shows the energy reserve minimum requirement for the various SDM functions for the reserve power, which includes deployment of airbags, providing power to external satellite sensors, crash notification services and the disposal of any non-deployed stage 2 airbag inflators:



| **GM** | **ENGINEERING STANDARDS** | **Component Technical Specification** | **SDM30 / ESS (Global-A)** |
|---|---|---|---|

**3.4.6  Energy Reserve**

Table 7 provides a summary of energy reserve times for SDM functions.

| Function | Minimum Energy Reserve Time |
|---|---|
| Satellite Sensors (ESS) | 100 ms |
| All Deployment Loops (6 / 12 / 18 / 20 loops) | 100 ms |
| Airbag Disposal function (for 2nd or 3rd stage) | 150 ms |
| Automatic Crash Notification (GMLAN communication) | 200 ms |
| Event Data Recording (EDR) | 300 ms |

## GM Technical Specification Excerpt – SDM30

With the advent of NHTSA regulated Event Data Recording regulations in 2006, a 300ms for energy reserve is a very low number. Particularly with concatenated events and multiple rollover events, the duration of the entire crash sequence can take several seconds, and this low energy reserve value is likely to lead to failed EDR/CDR data under some foreseeable, real world crashes.

Assuming the vehicle power is lost during the 33mph impact into the construction truck, 300ms of Event Data Recording backup power should have been sufficient to complete most, if not all of the CDR data writing. Since we know the SDM30 did not record any event, then we must assume that some other factor played into the loss of power, before the system could complete writing the CDR data.

One such event could have been loss of power during the flatbed trailer impact. Interruption of battery power or an ignition key being jolted from the RUN position into the ACCessory position during this undercarriage strike. Although not common, it cannot be ruled out, as we try to understand the missing data from the SDM in a crash event clearly above the minimum 5mph requirement to dictate the writing of a crash event to memory.

Based on reconstruction estimates, if the battery or ignition feed were lost during the flatbed trailer impact, we have 200ms from onset of this event to the onset of the 120-150ms long construction truck event. Thus, based on the above table, depending on when the loss occurred, we would lose energy reserve to satellite sensors after 100ms as well as the ability to deploy airbags and pretensioners.

Thus, a catastrophic loss of power at least 100ms before the construction truck impact would prevent any deployments. A loss of power 300ms before the end of the construction truck crash would prevent both deployment as well as crash recording. There is no means available that I can envision where we could verify

the loss of power prior to or during the impact. But this could certainly be an explanation of the failure in itself.

Next we will focus on the crash sensing aspect of the possible defect. The 2018 GMC Sierra HD crash sensing system consists of the dual FCS sensors discussed above coupled with the SDM's own internal crash sensing capabilities. The crash sensing algorithm takes data from all 3 sensor locations and through a series of calculations and threshold comparisons makes severity level assessments and initiates the deployment of any necessary safety systems.

In this case, APTIV, the SDM and EFS supplier, utilizes a complex set of algorithms and rules. The Algo-Front5 system consists of dual 50G 45 degree oriented accelerometers within the SDM and 500G accelerometers in the EFS crush zone sensors. The EFS sensors send filtered acceleration data to the SDM. The SDM processes all the signals internally. Each of the devices is capable of providing both crash discrimination (Deploy and No Deploy) as well as "Safing" for the system. Safing is a safety check to insure that a deployment command is supported by at least one other sensor in the system, so that a single point sensor failure will not result in an inadvertent deployment.

The system can provide 5 levels of frontal crash severity output. The five levels, in order of crash severity are:

1. Seatbelt Pretensioner ONLY
2. Unbelted Occupant Stage 1 Airbag Deployment
3. Belted Occupant Stage 1 Airbag Deployment
4. Unbelted Occupant Stage 2 Airbag Deployment
5. Belted Occupant Stage 2 Airbag Deployment

Thus far, the SDM and crash sensing conditions are typical of the industry standards for 2018. The system is also capable of rear impact and rollover safety, but this will not be discussed here as these are not relevant to this subject collision.

Each EFS and the SDM are capable of system "Wakeup" when any of these devices experiences an acceleration value above the wakeup or "enable" threshold. However, one concern I identified with the system is that ALL sensors must RESET before the system will reset. Thus, if any of the sensors is still awake, the entire system remains awake. This could lead to a concatenated event issue, depending on how the SDM calculations are being performed.

A concatenated event is one where multiple events happen in series, as with the subject event. Recall in our collision, we have a fence impact, followed by a

trailer impact, followed by the construction truck impact. It is imperative that the system properly parse these into 3 discrete events. By requiring all 3 sensors to reach a reset condition could lead to the overall algorithm failing to parse this into 3 separate events, thus, considering this one long event, and possibly making incorrect decisions on event severity.

Reviewing the primary part of the SDM algorithm, it is carry over from the years I was designing these systems at Delphi. Without getting into the complexities the following graph from the algorithm presentation document shows that, depending the calibration, the concatenated even performance should be reasonable for most multiple event scenarios. This chart shows that once the primary event is over, it takes time for the system to reset. During this time, the threshold is still active and if another event should occur (concatenated event) the system can process the new event and still have active thresholds, even if it does not completely reset. EP1 is the crash "clock" and you can see the red curve below increments up to about 58ms and then slowly decrements back to zero. The green deployment threshold also moves back to its original position. If you look close, the tail of the green curve is a mirror image of the beginning of the curve. This is the way the system is supposed to work.



16

Crash Algorithm Presentation Excerpt – Threshold Performance Over Time

However, Aptiv added a new series of criteria to the algorithm.  The first of which are the VSE and CVE modes.  The VSE mode uses vehicle speed at time of wakeup to compare to different sets of deployment thresholds. In theory, if we know the vehicle speed at the onset of the collision, we can make an 'educated guess' at the potential severity, and thereby, use lower thresholds for faster deployment times.

Similarly, the CVE mode uses closing velocity at time of wakeup as a means of optimizing threshold crossings. On the surface, I have no issues with these criteria, however, what concerns me is that with these criteria active, other parts of the system calibration may be compromised on the assumption that the overall system is getting its timely deployment from this VSE mode.

But what if the vehicle speed at wakeup does not properly represent the oncoming crash severity (head on collision – subject vehicle at 50mph, opposing vehicle at 50mph; 100mph impact speed vs 50mph vehicle speed)?  What if the closing velocity at wakeup does not represent the oncoming crash severity (50mph Deer Impact, with no need for airbag deployment in most cases)? Will the rest of the algorithm be able to properly determine crash severity? Is the entire calibration providing good redundancy, should any of the firing "Modes" fail to detect the appropriate crash severity?



Crash Algorithm Presentation Excerpt – VSE Enhancing

## Frontal Closing Velocity Enhancement (CVE)



Crash Algorithm Presentation Excerpt – CVE Enhancing

It is not clear without having crash data from the CDR to assess if either of these enhancements could have influenced the overall algorithms ability to discriminate this subject collision scenario, which was never tested in a laboratory. However, using potentially erroneous external values for closing velocity and vehicle speed prior to impact, could adversely impact the normal functionality of the crash sensing algorithm.

However, the most important thing I noted in the calibration and algorithm reviews was that although I had believed GMTG was no longer forcing the use of 45ms shutoff times in 2018 model year with the SDM30, they appeared to be using very similar shutoff times in this calibration. Looking at the production parameter files, we are looking for the calibration name that ends with "ep_end_threshold". My recollection, although I was not able to confirm it, is that the crash sensing algorithm uses a 1.25ms time step. The calibration values are in "counts". Thus, a 45ms STOP time would equate to 45/1.25 = 36 counts in the calibration. Reviewing the detailed calibration file (Bates ASUS 011933- 011963) I found this range of values for this parameter:

$$12 \text{ counts} \times 1.25 \text{ms/count} = 16 \text{ms}$$

$$40 \text{ counts} \times 1.25\text{ms/count} = 50\text{ms}$$

Thus, it appears that GMTG is still employing very aggressive stop times. Since our subject crash had 2 key consecutive events (impact with the flatbed trailer followed by impact with construction truck) with an estimated total time duration of about 200ms from the initial impact with the trailer to the initial impact with the construction truck, these aggressive calibration "ep_end_threshold" or SHUTOFF times, could have enhanced the algorithms inability to handle the concatenation of these two events, and the deployment threshold were SHUTOFF at the time the 33mph construction truck impact occurred.

| | |
|---|---|
| a5_cal2_.mode0_1_.ep_end_threshold | 16 |
| a5_cal2_.mode0_1_.threshold_stop | 80 |
| a5_cal2_.mode0_1_.threshold | 110 |
| a5_cal2_.mode0_2_.ep_begin_threshold | 11 |
| a5_cal2_.mode0_2_.ep_begin_slope | 14 |
| a5_cal2_.mode0_2_.ep_end_slope | 16 |
| a5_cal2_.mode0_2_.ep_end_threshold | 16 |
| a5_cal2_.mode0_2_.threshold_stop | 80 |
| a5_cal2_.mode0_2_.threshold | 110 |
| a5_cal2_.mode0_3_.ep_begin_threshold | 27 |
| a5_cal2_.mode0_3_.ep_begin_slope | 27 |
| a5_cal2_.mode0_3_.ep_end_slope | 32 |
| a5_cal2_.mode0_3_.ep_end_threshold | 32 |
| a5_cal2_.mode0_3_.threshold_stop | 0 |
| a5_cal2_.mode0_3_.threshold | 99999 |
| a5_cal2_.mode0_4_.ep_begin_threshold | 27 |
| a5_cal2_.mode0_4_.ep_begin_slope | 27 |
| a5_cal2_.mode0_4_.ep_end_slope | 32 |
| a5_cal2_.mode0_4_.ep_end_threshold | 32 |
| a5_cal2_.mode0_4_.threshold_stop | 0 |
| a5_cal2_.mode0_4_.threshold | 99999 |
| a5_cal2_.mode1_0_.ep_begin_threshold | 13 |
| a5_cal2_.mode1_0_.ep_begin_slope | 13 |
| a5_cal2_.mode1_0_.ep_end_slope | 36 |
| a5_cal2_.mode1_0_.ep_end_threshold | 36 |

X2HD Truck Calibration Excerpts – EP_END_THRESHOLD examples

With earlier model GMTG truck and SUV vehicles, I have had numerous failure to deploy cases where the root cause was determined to be the 45ms SHUTOFF criteria. I this case, the shutoff time varies based on the deployment mode of the algorithm but as stated above, they range from 16ms to 50ms. If the crash sensing algorithm is unable to reset during this gap between the onset of the trailer impact and the onset of the construction truck impact, the shutoff times will prevent the algorithm from deploying when the 33mph construction truck impact occurs.

The principles identified in their crash sensing algorithm and calibration strategy, including 'safing' are consistent with other systems that I have designed

19

and evaluated. However, although the design appears logical, the fact that the driver frontal impact airbag fails to deploy in a crash that is well above the airbag deployment threshold established by GMTG, clearly shows the GMTG implementation on the subject 2018 GMC Sierra HD is defective, unsafe and unreasonably dangerous.

The following would be alternative designs that existed in 2018 Model Year that GM could have employed in the 2018 GMC Sierra HD Frontal impact Safety System:

1. Modify the algorithm calibrations with more robust 120-150ms ep_end_threshold values.
2. Provide a larger energy reserve capability than 300ms, to insure that not only can airbags be deployed, but that crash recording can be completed.

Ultimately, the defective design and calibration of the frontal impact crash sensing system resulted in the failure to deploy the impacted driver frontal impact airbag in the subject crash. This condition was defective, unsafe and unreasonably dangerous to the vehicle occupants Mr. McCoy

**Opinions:**

Based on the review of all the available information, a detailed review of the photos, available technical information, alternative designs and based on my years of experience designing, developing crash sensors and occupant safety systems, it is possible to formulate the following conclusions and opinions regarding the performance of the frontal impact airbag system in the subject 2018 GMC Sierra HD. I have formed these opinions utilizing the methodology which is accepted in the automotive safety system design and performance evaluation segments of the occupant restraint system industry.

The opinions rendered in this report are based on my knowledge, education, training, and experience, and are stated to a reasonable degree of engineering and scientific certainty. These opinions are based upon my review and analysis of the materials available as of the date of this report. I reserve the right to supplement or change the opinions expressed in this preliminary report based upon review of new materials or additional pertinent information, analyses or documentation received in the future:

- The vehicle crush conditions and severity of the subject collision were such

that the Driver Frontal Impact Airbag in the 2018 GMC Sierra HD should have deployed. This failure to deploy this airbags resulted in a condition that was defective, unsafe and unreasonably dangerous to the driver in this vehicle.

- Safer alternative designs existed, as set forth in the body of this report and they consisted of properly calibrated frontal impact crash sensors for the frontal impact restraint system that could have been employed in the 2018 GMC Sierra HD at the time that the vehicle left the control of General Motors Corporation. The failure to use a robust calibration resulted in system that was defective, unsafe and unreasonably dangerous to the occupant in this vehicle.

- The safer alternative designs would not have impaired the utility of the occupant restraint system in other testing or real world conditions if properly developed and employed in the 2018 GMC Sierra HD.

- The safer designs were both economically and technologically feasible at the time that the occupant restraint system left the control of General Motors Corporation.

- There were no known material alterations to the occupant restraint system and the subject vehicle after it left possession of the manufacturer which would have affected the performance of the system.

These opinions are based on all data which was available at the time of this report. Additional data provided as a result of detailed document discovery and production, at a later date could result in a refinement in the opinions and conclusions generated in this document. I also reserve the right to make additional observations and opinions and/or to modify observations and opinions based upon the review of the opinions of other experts.

*Chris Caruso*
Chris Caruso

(CV Provided Upon Request)

# EXHIBIT E

Richard Heimann (CA State Bar # 063607)
Nimish R. Desai (CA State Bar # 244953)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery St., 29th Fl
San Francisco, CA 94111-3339
Telephone: 415-956-1000
Facsimile: 415-956-1008
rheimann@lchb.com
ndesai@lchb.com

David S. Stellings (*pro hac vice*)
Katherine I. McBride (*pro hac vice*)
Jessica A. Moldovan (*pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: 212.355.9500
Facsimile: 212.355.9592
dstellings@lchb.com
kmcbride@lchb.com
jmoldovan@lchb.com

*Attorneys for Plaintiffs*

*[Additional counsel listed on signature page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| James Milstead, et al., | Case No. 4:21-cv-06338-JST |
| Plaintiffs, | ~~SECOND~~ THIRD AMENDED CLASS ACTION COMPLAINT |
| v. | |
| GENERAL MOTORS LLC, et al., | |
| Defendant. | **JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................... 1

II. PARTIES ................................................................................................. 4

    A. Plaintiffs .......................................................................................... 4

    B. Defendants ........................................................................................ 6

III. JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT .............. 7

IV. GENERAL FACTUAL ALLEGATIONS............................................... 7̶8

    A. SDMs are supposed to detect crashes and control airbags and seatbelts. ............ 7̶8

    B. GM used a dangerous and defective SDM software calibration in its trucks and SUVs. ........................................................................................ 1̶011

    C. GM knew that the SDM Calibration Defect was dangerous and unjustified but has failed to warn or compensate consumers.................................... 1̶314

        1. Old GM recklessly downplayed serious risks of injury when it chose to include the SDM Calibration Defect in the Class Vehicles.... 1̶516

        2. The 45-millisecond GM's aggressive cutoff was not necessary to protect against "late" airbag deployments.............................................. 1̶820

        3. GM knew about a pattern of suspicious accidents involving the SDM Calibration Defect in the Class Vehicles.................................... 2̶122

            a. GM has litigated (and settled) many personal injury lawsuits for suspicious airbag failures in the Class Vehicles................. 2̶223

            b. GM knew or should have known about hundreds of publicly reported airbag failures in the Class Vehicles.......................... 3̶032

    D. Despite its knowledge, GM misrepresented and concealed important information about the SDM Calibration Defect and Class Vehicle safety. ...... 4̶850

        1. Labels and window stickers on the Class Vehicles stated that they were equipped with working airbags and seatbelts and failed to disclose the SDM Calibration Defect................................................. 4̶951

        2. GM published owners' manuals for the Class Vehicles that detailed their safety features but did not disclose the SDM Calibration Defect. .......................................................................................... 5̶254

        3. GM marketed the Class Vehicles to be safe and reliable but failed to mention the SDM Calibration Defect. ............................................... 5̶658

        4. GM provided warranties to repair defects in the Class Vehicles and have not done so................................................................................. 5̶961

V. CLASS ACTION ALLEGATIONS ............................................................ 6̶062

    A. The Class Definition ........................................................................ 6̶062

    B. Numerosity: Federal Rule of Civil Procedure 23(a)(1)..................... 6̶163

    C. Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)................................................................................... 6̶264

    D. Typicality: Federal Rule of Civil Procedure 23(a)(3) ...................... 6̶365

    E. Adequacy: Federal Rule of Civil Procedure 23(a)(4) ...................... 6̶365

- i -

1

**TABLE OF CONTENTS**
**(continued)**

2

Page

3    F.    Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2).. 64̶65

4    G.    Superiority: Federal Rule of Civil Procedure 23(b)(3) .................................... 64̶66

VI.    ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED........................ 64̶66

5    VII.    CAUSES OF ACTION ................................................................................................... 66̶68

6    VIII.    PRAYER FOR RELIEF.................................................................................................. 81̶80

7    IX.    DEMAND FOR JURY TRIAL...................................................................................... 82̶81

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND THIRD AMENDED CLASS ACTION
COMPLAINT
4:21-CV-06338-JST

1    Plaintiffs, individually and on behalf of all others similarly situated (the "Class"), allege

2  the following against General Motors LLC, General Motors Holdings LLC, and General Motors

3  Company (collectively, "Defendants," "GM," or "New GM") based, where applicable, on

4  personal knowledge, information and belief, and the investigation of counsel and their experts.

5  Plaintiffs file this complaint pursuant to the Court's Order granting leave (Dkt. ~~177 at 25),~~ 196 at

6  19) and attach hereto as Exhibit E a redline comparison between this complaint and the previous

7  pleading for the Court's reference.

8  **I.    INTRODUCTION**

9    1.    This case involves a dangerous defect that compromises critical safety systems in

10  millions of GM trucks and SUVs. When working properly, during a frontal crash of sufficient

11  severity, a vehicle's seatbelts should tighten to hold the vehicle occupants in place, and the

12  airbags should inflate to protect them from hard impacts. A defect in the Class Vehicles, however,

13  can prevent seatbelt tightening and airbag deployment during certain types of crashes, leaving

14  vehicle occupants without protection exactly when they need it most.[1]

15    2.    The defect is contained in the software that governs the Class Vehicles' airbag

16  control unit. This unit, also known as the Sending and Diagnostic Module ("SDM"), is a small

17  computer connected to sensors placed throughout a vehicle. These sensors monitor vehicle

18  performance and tell the SDM when they detect irregular behavior.

19    3.    Based on the signals it receives from these sensors, the SDM *should* fire the

20  airbags and tighten seatbelts when needed in a real-world crash of sufficient severity. But in the

21  Class Vehicles, the software program that controls the SDM is calibrated in such a way that it

22  prematurely prevents airbag and seatbelt deployment ~~just 45 milliseconds after a crash has begun,~~

23  long before any reasonable or acceptable time to do so. This has serious repercussions in

24  foreseeable, real-world accidents that need seatbelt and airbag deployment after ~~45~~

25  ~~milliseconds—such~~ the software cuts off access to those features—such as accidents that involve

26

27  _____

[1] The "Class Vehicles" include all vehicles in the United States that contain the SDM Calibration
Defect that were (1) manufactured, sold, distributed, or leased by Defendants or (2)

28  manufactured, sold, distributed, or leased by General Motors Corporation ("Old GM") and
purchased or leased by Plaintiffs or a Class member after July 10, 2009.

1  multiple impacts, or that start with a soft initial onset and then increase in severity over time. In

2  such accidents, before the SDM has reset — in which the airbags and seatbelts in the Class

3  Vehicles can fail. Put simply, GM decided to install a because of a persistent, dangerous

4  insistence within the company's Trucks Group, GM used a software calibration that can and does

5  prematurely close the time window to engage airbags and seatbelts in a crash, putting occupants

6  of the Class Vehicles in at serious dangerrisk.

7       4.    Old GM knew about the effect of this calibration and related dangers from the very

8  outset, when it originally decided to prematurely close the time window for airbag deployment in

9  the Class Vehicles in the late 1990s.[2] In the process, Old GM overrode serious concerns from a

10  team from Delco Electronics (later called Delphi Electronics, now known as Aptiv), including

11  engineering manager, Chris Caruso. Mr. Caruso and a team of software engineers from Delco—

12  which designed the base SDM software program used in the Class Vehicles and other GM

13  vehicles—expressly warned Old GM in or about 1999 that preventing using its strategy to

14  prematurely cut off the potential for airbag and seatbelt deployment after 45 milliseconds during a

15  crash event was a reckless and dangerous design decision.

16       5.    Old GM's trucks groupTrucks Group, which was in charge of the design and

17  development for all GM trucks and SUVs, ignored this warning and insisted on using its defective

18  SDM calibration strategy to shut off the ability to deploy airbags and seatbelts after 45

19  milliseconds (the "SDM Calibration Defect"). Given their significant concerns, Mr. Caruso and

20  the Delco team insisted that Old GM sign a disclaimer of Delco's liability for the modified

21  algorithm as used in GM trucks and SUVs.

22       6.    Tellingly, a separate team in charge of the design and development for GM cars

23  rejected GM Trucks' approach after hearing (and heeding) the Delco team's concerns about the

24  earlier cutoff. As such, GM cars included a much longer window (at least two to three times

25  longer than fully twice as long as the window used by GM Trucks, approximately 100-150

26  milliseconds at minimum) for the airbags and seatbelts to deploy in a crash for the vehicles they

27

_____

28  [2] As detailed further below, Old GM filed for bankruptcy in 2009, which led to the creation of the
    contemporary GM entities named as Defendants herein.

1  designed. As such, not only did GM Trucks reject the warnings from Mr. Caruso and the Delco

2  team, it also ignored the its own cars group's views, which included a time window that more

3  reasonably and appropriately tracks the duration of crash events in the real world, as opposed to

4  the laboratory crash test environment.

5       7.   On information and belief, starting in or about 1999, GM Trucks Group (and Old

6  GM before it) installed the used its defective approach to SDM software calibration in all of the

7  Class Vehiclestrucks and SUVs (mid and large size vehicles) under its direction, and continued to

8  use its dangerous and defective approach to prematurely cut off airbag and seatbelt deployment

9  during crashes at least through model year 2018. Plaintiffs refer to this defective strategy—to

10 calibrate software to prevent airbag and seatbelt deployment during a "dead zone" that begins too

11 soon after a crash has begun, and well before the safer window used by GM cars (a minimum of

12 approximately 100 milliseconds after a crash has begun)—as the "SDM Calibration Defect."

13      8.   7.When General Motors, LLC ("GM LLC") was formed in 2009, it acquired

14 books, records, and personnel from Old GM that reflected this reckless decision to use the

15 dangerous SDM calibration in GM trucks and SUVs. Despite this acquired knowledge, GM

16 continued to use Delco SDMs in its vehicles and, on information and belief, continued to use the

17 defective software calibration associated with those Delco SDMs as well.

18      9.   8.Since it was formed in 2009, GM has gained still more knowledge of the defect

19 through personal injury lawsuits, consumer complaints, and its own investigations into serious

20 crashes where the airbags and seatbelts failed in the Class Vehicles. As an example, documents in

21 a personal injury lawsuit filed against GM LLC in 2011 describe the SDM Calibration Defect in

22 detail and relate Old GM's reckless decision to use it. *See* § IV.C.3.a, infra.  Chris Caruso, the

23 engineer who originally objected to the defective algorithm deployment strategy in the first

24 instance, has gone on to serve as an expert in a number of these cases.

25      10.  9.While the use of the defective shutoff strategy began some twenty years ago, it

26 remains a real and immediate risk to Plaintiffs and Class members today. Indeed, Indeed—and

27 while personal injury settlements are not uniformly made public (such that the records available

28 to Plaintiffs only reflect those publicly disclosed)—court records show that GM settled yet

1  another personal injury lawsuit about ~~this SDM calibration defect *just last month*,~~ the SDM

2  Calibration Defect in December 2022.

3      11.    Discovery in that case~~,~~ *McCoy v. General Motors,* revealed ~~the defect was~~

4  ~~included~~ that GM persisted in using its dangerous, early cutoff strategy in a model year 2018 GM

5  SUV. ~~This is~~ Mr. Caruso's report in *McCoy* provides direct evidence that ~~GM Trucks continued~~

6  ~~to use the~~, after first insisting on its defective deployment cutoff strategy in ~~its vehicles~~

7  approximately 1999, for many years (decades) ~~after its introduction in approximately~~

8  ~~1999~~thereafter up to 2018, GM Trucks failed to adopt a safer and more rational design that would

9  allow for deployment for at least as long as the window used by GM cars (*i.e.*, approximately 100

10  milliseconds at a minimum). *See* § IV.C.3.a, infra. To the contrary, in both 1999 and 2018, GM's

11  trucks and SUVs dangerously cut off the deployment window far short of that minimum.

12      12.    ~~10.~~Finally, publicly available consumer complaints to the National Highway

13  Traffic and Safety Administration ("NHTSA") detail more than *eight hundred* instances where

14  the airbags and/or seatbelts suspiciously failed in the Class Vehicles during frontal crashes. Many

15  of these reports specifically state that GM knew about and investigated the crash after the

16  reported airbag failures. A separate NHTSA dataset indicates that, from 1999 to 2021, at least

17  1,298 people were killed or injured in a frontal collision in which the airbags did not deploy in

18  one of these vehicles. *See* IV.C.3.b, infra.

19      13.    ~~11.~~Despite its knowledge of the ~~defect~~ SDM Calibration Defect and its impact on

20  safety, GM has concealed the defect and failed to recall or repair the Class Vehicles, and has

21  thereby avoided the significant costs, inconveniences, and reputational harms of recalling millions

22  of trucks and SUVs. GM has hidden the ~~Defect~~ defect despite its obligation to disclose it,

23  misrepresented the Class Vehicles to be safe, and continued to sell them to consumers.

24      14.    ~~12.~~Because of GM's failure to disclose the truth, consumers continue to purchase

25  and drive Class Vehicles with the SDM Calibration Defect every day—on road trips, commutes,

26  and weekend errands alike—unaware that their airbags and seatbelts may not work in certain

27  serious crashes when they need them. This lawsuit seeks redress from GM for the damages

28

1  incurred when Plaintiffs and proposed Class members paid for vehicles with a safety system that

2  may fail them in life-threatening collisions.

3  **II.      PARTIES**

4        **A.      Plaintiffs**

5        15.      Plaintiff James Milstead ("Plaintiff" for the purposes of this paragraph) is an

6  individual residing in Oxnard, CA. On September 11, 2021, Plaintiff purchased a 2012 Avalanche

7  (for purposes of Plaintiff's allegations, the "Class Vehicle") from Escondido Auto Super Center

8  in Escondido, CA. On information and belief for the reasons set forth herein, GM installed the

9  SDM ~~calibration defect—which~~ Calibration Defect—which shut off the vehicle's ability to

10  deploy airbags in a crash ~~after 45 milliseconds—in~~ prematurely—in Mr. Milstead's truck during

11  the manufacturing process, and Mr. Milstead's truck contained the SDM ~~calibration defect~~

12  Calibration Defect at the time he purchased the vehicle. At the time of purchase, Plaintiff

13  reasonably expected that the airbags and seatbelts would function in the event of a crash and had

14  no way of knowing that it contained a dangerous and defective SDM calibration that could cause

15  the airbags and seatbelts to fail when needed during a crash. To the contrary, before acquiring the

16  vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and the

17  internet that touted the safety and reliability of Plaintiff's vehicle and GM vehicles generally. GM

18  concealed the existence of the defective SDM calibration from consumers including Plaintiff.

19  Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if

20  Defendants did not conceal material information about the defective SDM calibration.

21        16.      Plaintiff Arthur Ray ("Plaintiff" for the purposes of this paragraph) is an individual

22  residing in Brentwood, California. In or around January 22, 2010, Plaintiff purchased a new 2010

23  GMC Sierra 2500 (for purposes of Plaintiff's allegations, the "Class Vehicle") from Concord

24  GMC, an authorized dealership located in Concord, California. On information and belief for the

25  reasons set forth herein, GM installed the SDM Calibration Defect—which shut off the vehicle's

26  ability to deploy airbags in a crash ~~after 45 milliseconds—in~~ prematurely—in Mr. Ray's truck

27  during the manufacturing process, and Mr. Ray's truck contained the SDM Calibration Defect at

28  the time he purchased the vehicle. At the time of purchase, Plaintiff reasonably expected that the

1  vehicle's airbags and seatbelts would function in the event of a crash and had no way of knowing

2  that it contained a dangerous and defective SDM calibration that could cause the airbags and

3  seatbelts to fail when needed during a crash. To the contrary, before acquiring the Vehicle,

4  Plaintiff viewed or heard commercials and reviews through television and the internet that touted

5  the safety and reliability of Plaintiff's vehicle, including its "Five Star" safety rating, and GM

6  vehicles generally. GM concealed the existence of the defective SDM calibration from consumers

7  including Plaintiff. Plaintiff would not have purchased the Class Vehicle, or would have paid less

8  for it, if Defendants did not conceal material information about the defective SDM calibration.

9       17.     Plaintiff Richard Vargas ("Plaintiff" for the purposes of this paragraph) is an

10  individual residing in Menifee, California. In or around December 2012, Plaintiff purchased a

11  new 2012 Chevrolet Suburban (for purposes of Plaintiff's allegations, the "Class Vehicle") from

12  El Camino Real Chevrolet dealership located in Monterey Park, California. On information and

13  belief for the reasons set forth herein, GM installed the SDM Calibration Defect—which shut off

14  the vehicle's ability to deploy airbags in a crash after 45 milliseconds—in prematurely—in Mr.

15  Vargas' SUV during the manufacturing process, and Mr. Vargas' SUV contained the SDM

16  Calibration Defect at the time he purchased the vehicle. At the time of purchase, Plaintiff

17  reasonably expected that the Vehicles' airbags and seatbelts would function in the event of a

18  crash and had no way of knowing that it contained a dangerous and defective SDM calibration

19  that could cause the airbags and seatbelts to fail when needed during a crash. To the contrary,

20  before acquiring the Vehicle, Plaintiff viewed or heard commercials and reviews through

21  television, radio, and the internet that touted the safety and reliability of Plaintiff's vehicle,

22  including its "Five Star" safety rating, and GM vehicles generally. Additionally, when at the

23  dealership before making his purchase, Plaintiff inquired about the airbags in the Class Vehicle.

24  GM concealed the existence of the defective SDM calibration from consumers including Plaintiff.

25  Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if

26  Defendants did not conceal material information about the defective SDM calibration.

27

28

         - 6 -         SECOND THIRD AMENDED CLASS ACTION
                                           COMPLAINT
                                          4:21-CV-06338-JST

**B.    Defendants**

18.    General Motors LLC ("GM LLC") is a Delaware limited liability company with its principal place of business located at 300 Renaissance Center, Detroit, Michigan, and is a citizen of the States of Delaware and Michigan. The sole member and owner of GM LLC is General Motors Holdings LLC.

19.    General Motors Holdings LLC ("GM Holdings") is a Delaware limited liability company with its principal place of business in Detroit, Michigan, and is a citizen of the States of Delaware and Michigan. The sole member and owner of GM Holdings is General Motors Company.

20.    General Motors Company ("GM Parent") is a Delaware corporation with its principal place of business in Detroit, Michigan, and is a citizen of the States of Delaware and Michigan. GM Parent's only asset is its 100% ownership interest in GM Holdings. In public SEC filings, GM Parent states: "We design, build and sell cars, trucks, crossovers and automobile parts worldwide." GM Parent sells vehicles throughout the United States "through [its] dealer network to retail customers." As further noted in SEC filings, GM Parent is also responsible for making reports to NHTSA related to vehicle safety and making determinations as to vehicle recalls.[3]

21.    Each of GM LLC, GM Holdings, and GM Parent operates out of GM's Global Headquarters in Detroit, Michigan.

22.    In June 2009, Old GM filed for bankruptcy. Defendants were then created on or about July 10, 2009, in connection with the sale of substantially all of Old GM's assets pursuant to a Master Sale and Purchase Agreement. As a result of the sale, GM LLC acquired substantially all of Old GM's books, records, and personnel. GM LLC then transferred some of these assets to GM Holdings (formed shortly after the bankruptcy sale). Defendants thereby acquired from Old GM the knowledge about the SDM Calibration Defect (defined below) that those books, records, and personnel held. GM Parent and GM LLC also took responsibility for any necessary recalls of Old GM vehicles going forward.

---

[3] *See* General Motors Company's Form 10-K for fiscal year 2019.

1    23.    The causes of action in this Complaint are directed to GM Parent, GM Holdings,

2    and GM LLC and are based on their misconduct.

3    **III.    JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT**

4    24.    This Court has original jurisdiction over this action pursuant to the Class Action

5    Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse

6    citizenship from one Defendant, there are more than 100 Class members, and the aggregate

7    amount in controversy exceeds $5 million, exclusive of interest and costs.

8    25.    This Court has personal jurisdiction over Defendants under California Code of

9    Civil Procedure section 410.10.

10    26.    Venue is proper in this District under 28 U.S.C. § 1391, and assignment is proper

11    to this division under N.D. Cal. L.R. 3-2, because a substantial part of the events or omissions

12    which give rise to the claims occurred in this District, and because Defendants have caused harm

13    to Class members residing in this District, including Plaintiff Ray. GM conducts substantial

14    business, including through numerous dealerships, and marketed, advertised, sold, and leased

15    Class Vehicle in this District.

16    **IV.    GENERAL FACTUAL ALLEGATIONS**

17    **A.    SDMs are supposed to detect crashes and control airbags and seatbelts.**

18    27.    Car crashes kill or seriously injure hundreds of thousands of people every year.

19    Because of this risk, the federal government requires automobile manufacturers to include critical

20    safety features—seatbelts and airbags—in all vehicles sold in the United States. This life-saving

21    equipment has been mandatory in passenger vehicles since 1997. *See* 49 U.S.C. § 30127.

22    28.    These features include seatbelt pretensioners, which tighten seatbelts to secure the

23    occupants, and airbags, which are cushions that rapidly inflate from the steering wheel and other

24    areas of the vehicle. During an accident, seatbelt pretensioners hold vehicle occupants in place,

25    and airbags buffer or prevent impact between occupants and hard structures in the vehicle.

26    Without the airbags, slamming into the hard structures (such as the steering wheel) during a crash

27    can and has caused serious injuries and death.

28

1    29.    When functioning properly, the combination of seatbelts and airbags is highly

2    effective in reducing the safety risk in automobile collisions. NHTSA reports that the use of

3    seatbelts and airbags reduces fatality risk by *61 percent* compared to an unbelted occupant in a

4    vehicle without airbags.[4] From 1987 to 2017, an estimated 50,457 lives were saved because

5    frontal airbags deployed during a crash.[5]

6    30.    Although airbags work effectively to protect occupants when necessary, they are

7    not meant to deploy with every impact. A crash may be of lower intensity (e.g., a low-speed

8    fender bender in a parking lot) such that the seatbelt alone will be sufficient protection for the

9    occupant.[6] Airbags are designed to deploy in "moderate to severe" frontal or near-frontal crashes.

10    A "moderate to severe" frontal crash is the equivalent of hitting a solid, fixed barrier at 8-14 miles

11    per hour or higher.[7]

12    31.    Seatbelt and airbag systems are known as "passive" safety systems because, when

13    they are needed, they are supposed to operate automatically (meaning, the driver does not need to

14    hit a button to deploy the airbag). They use sophisticated hardware components and software to

15    activate and deploy the seatbelts and airbags systems automatically.

16    32.    The "brain" behind this operation is the airbag control unit or "ACU" (also known

17    as an Electronic Control Unit or "ECU"). GM refers to this component as the "Sensing and

18    Diagnostic Module" or "SDM," and that term is used throughout this Complaint. SDMs are

19    effectively computers that control the car's safety systems. They are intended, where appropriate,

20    to issue a "command" to deploy airbags and tighten seatbelts to prevent or mitigate injury to

21    vehicle occupants in a crash.

22    33.    The SDM operates in three basic phases:

23          a.    *First*, during regular vehicle operation, the SDM sits in a resting or

24    "normal" mode. In this mode, the SDM constantly receives signals from sensors placed

25    _____

26    [4] U.S. Department of Transportation, NHTSA, *Fatalities in Frontal Crashes Despite Seat Belts and Airbags*, NHTSA Technical Report No. DOT HS 811 202 (September 2009).

27    [5] NHTSA, Air Bags Overview. *Available at*: https://www.nhtsa.gov/equipment/air-bags (last visited ~~January 26~~July 27, 2023).

28    [6] Dr. Ching-Yao Chan, *Fundamentals of Crash Sensing in Automotive Airbag Systems*. Copyright Society of Automotive Engineers, (2000), at p. 50.
[7] Air Bags Overview, *supra* note 5.

~~SECOND~~ THIRD AMENDED CLASS ACTION
COMPLAINT
4:21-CV-06338-JST

1  throughout the vehicle, which collect and report information on inputs such as acceleration, wheel

2  speed, brake pressure, and impacts.[8] The SDM monitors and interprets these signals to determine

3  whether the vehicle is involved (or about to be involved) in a crash.

4          b.    *Second*, while monitoring these signals in "normal" mode, if and when the

5  SDM detects an irregular input that suggests a potential crash, it "wakes up" to search for further

6  confirmation of a crash (as opposed to, for example, an irregular input from slamming on the

7  brakes and then avoiding a collision). In this second stage—known as "wake up" or "standby"

8  mode—the SDM's crash-sensing software algorithm is engaged to quickly decipher crash status

9  and respond.[9] After "wake up" mode is triggered by an irregular input, if additional inputs

10  confirm a moderate to severe frontal crash, the SDM *should* issue a command to "fire" the airbag

11  and/or tighten the seatbelts as needed.[10]

12          c.    *Third*, the final phase in this sequence is the "reset" phase. From "wake up"

13  mode, after it detects that a crash or a potential crash has fully completed, (i.e., that the vehicle

14  has returned to normal operation after an irregular input) the SDM ultimately returns to its normal

15  operating state through "resetting."

16      34.    A vehicle striking a pothole illustrates this three-phase sequence. The vehicle first

17  operates with the SDM in "normal" mode as it drives down the road. Then, suddenly, the driver

18  hits an unseen pothole. This jolt from hitting the pothole (and/or related inputs like deceleration)

19  will trigger the SDM to enter "wake up" mode where it searches for more inputs. Awake, the

20  SDM quickly asks: "How fast is the vehicle slowing down? Is the front bumper crushed? Is the

21  vehicle speeding back up normally?" and reacting in turn.[11]

22

23

---

24  [8] Clemson University Vehicular Electronics Laboratory, "Airbag Deployment Systems."

25  Available at: https://cecas.clemson.edu/cvel/auto/systems/airbag_deployment.html (last visited ~~January 26~~July 27, 2023).

26  [9] John Pearley Huffman, "The Physics of Airbags," *Car & Driver*, June 14, 2011. Available at: https://www.caranddriver.com/features/a15121591/the-physics-of-airbags-feature (last visited ~~January 26~~July 27, 2023).

27  [10] Jesse Kendall, P.E., and Kenneth Solomon, Ph.D., "Airbag Deployment Criteria" at p. 11.

28  Available at: https://www.experts.com/content/articles/Kenneth-Solomon-Airbag-Paper.pdf (last visited ~~January 26~~July 27, 2023).

[11] Solomon, *supra* note 10, at p. 11.

~~SECOND~~ THIRD AMENDED CLASS ACTION
COMPLAINT
4:21-CV-06338-JST

35.    If the SDM senses that the vehicle returns to normal operation and continues down the road, it will stop looking for confirmation of a crash and reset to normal operation. On the other hand, if, after it hits the pothole, the vehicle veers out of its lane and crashes into another vehicle head on, the SDM should detect this second input and fire the airbag.[12]

36.    This entire sequence—from sensing an irregular signal (the pothole), to waking up and searching for confirmation of a crash, to firing the airbag where needed—might take only fractions of a second. ~~Indeed, a typical "crash duration" in a frontal, vehicle-to-barrier collision lasts for approximately 80-150 milliseconds (0.08-0.15 seconds).[13]~~ For that reason, timing this sequence properly is critically important to ensure that the seatbelts are tightened, and the airbags deploy, to protect the occupants when they need to.

**B.    GM used a dangerous and defective SDM software calibration in its trucks and SUVs.**

37.    Throughout the three-phase sequence described above, SDMs rely on software algorithms to interpret signals, estimate crash dynamics, and issue a "deploy" or "do not deploy" command to the safety systems.

38.    For the SDM to function as intended, the software that controls it must be designed to recognize and respond to real-world crashes so that the airbags inflate and seatbelts tighten when they are needed.

39.    ~~2.~~Crash sensing occurs in "real-time." This means that the sensing algorithm can only examine a limited window of data to predict and judge the severity of crash events before conclusion, so that the airbags can deploy and protect the occupant on impact.[~~14~~13] A decision to "deploy" the airbags should occur when certain pre-set thresholds that tell the SDM a crash is severe enough (i.e., a moderate to severe frontal collision) are met or exceeded. These deployment thresholds are programmed into the SDM software through a process in which engineers "calibrate" the software algorithm in the vehicle.

---

[12] *Id.* at p. 8.
[13] ~~Chan, *supra* note 6, at p. 169.~~
[~~14~~13] Chan, *supra* note 6, at p. 95.

~~SECOND~~ THIRD AMENDED CLASS ACTION
COMPLAINT
4:21-CV-06338-JST

1    40.   3.In the Class Vehicles, the software calibration that controls how and when the

2    SDM detects accidents and deploys the safety systems contains a serious defect (the "SDM

3    Calibration Defect"). Specifically, for frontal crashes, GM calibrated the SDM to prevent

4    deployment of airbags and pretensioners more than 45 milliseconds after it enters "wake up"

5    mode. [15] GM did this by increasing the deployment thresholds to unattainable values 45

6    milliseconds into the crash sequence. With this calibration in place, no matter how severe the

7    inputs the SDM received immediately after 45 milliseconds, the airbags and pretensioners will

8    not deploy until a reset has occurred. during a dead zone. The dead zone starts with a cutoff time

9    imposed by GM after the SDM "wakes up." At this early stage, Plaintiffs note that time used and

10   recorded by the SDM software (i.e. 45ms, 50ms, 100ms, etc.), including the time elapsed for

11   purposes of triggering the cutoff and resulting dead zone, is complex. As a general matter, it

12   refers to time as calculated in the software, as opposed to traditional, linear time.

13   41.   Putting aside whether any cutoff is necessary in light of advancements in modern

14   airbag technology, GM Trucks selected cutoff times that are reached too soon by any measure,

15   i.e., cutoff times of less than approximately 100 milliseconds, which is a more realistic time

16   period for crash sequences to progress, and the safer window used by GM cars. [14] At the

17   premature cutoff time used by GM Trucks, the algorithm increases the deployment thresholds to

18   unattainable values, meaning that no matter how severe the inputs the SDM receives, the airbags

19   and pretensioners will not deploy. Further, when the SDM clock is above the cutoff time, this

20   dead zone does not end until SDM reset, and thus persists through foreseeable real world

21   collisions. In sum, this defective design and premature cutoff—the SDM Calibration Defect—

22   introduces a dead zone to a window where airbag deployment is often necessary in real-world

23   crashes, but by design cannot happen.

24   42.   Cutting off airbag deployment in the short duration GM Trucks used was callous

25   and dangerous, particularly when compared to the time for a typical "crash duration" in a

26

27   [15] At this early stage, Plaintiffs note that the interpretation of time recorded by the SDM software
     and in related Crash Data Reports is complex. The 45-millisecond timing described in this
28   complaint refers to the value as calculated in the software, as opposed to 45 milliseconds in linear
     time.
     [14] See ¶¶ 109-110 and Mr. Caruso's *McCoy* report, *infra*.

1    straightforward frontal, vehicle-to-barrier collision, which lasts for approximately 80-150

2    milliseconds (0.08-0.15 seconds), much longer than the cutoff imposed by GM Trucks

3    (approximately 50 milliseconds or less).[15] And of course, more complex, multi-impact crashes

4    may take even longer.

5        43.    This defective calibration was no accident; rather, as detailed below, GM included

6    it by design when it modified the SDM software program (originally known as ALGO-S) in the

7    Class Vehicles to include it.  In affirmatively and prematurely blocking these critical safety

8    features after 45 millisecondswhile a crash is foreseeably still underway, GM greatly and

9    needlessly increased the risk of injury and death in a variety of frontal crashes. Specifically, the

10   SDM Calibration Defect manifests in frontal crashes that require airbag deployment or seatbelt

11   tightening after 45 milliseconds into the crash, and before the SDM resets. during the "dead

12   zone."

13       44.    6.For example, this includes frontal crashes with multiple, distinct points of impact

14   known as "concatenated" events. A vehicle that first hits a curb and then veers and hits a tree, or

15   first hits a speed bump and then crashes into the vehicle in front of it, are examples of

16   concatenated crashes. By their nature, concatenated accidents involve multiple discrete inputs for

17   the SDM to detect during a crash sequence.

18       45.    7.In concatenated crashes, the first part of the incident (hitting a curb) sends the

19   SDM into its "wake up" or "stand by" mode. The initial curb hit does not trigger the airbag or

20   tighten the seatbelt, but the SDM "wakes up" to confirm whether further irregular signals will

21   follow and indicate a need for the seatbelts or airbags. In the Class Vehicles—because of the

22   software calibration that controls the SDM—the "wake up" mode lasts for just 45approximately

23   50 milliseconds or less after the first irregular signal. After that time, and by GM's design, the

24   deployment thresholds in the software drastically increase, such that point on the clock, no further

25   input, no matter how severe, could exceed the thresholds and trigger the airbags to deploy and/or

26   seatbelts to tighten. As detailed in this section, the triggering thresholds are pre-set inputs in the

27   software that tell the SDM that a crash is severe enough to deploy an airbag.

28

---

[15] Chan, *supra* note 6, at p. 169.

2730953.6 2820476.3                                  - 13 -                    SECOND THIRD AMENDED CLASS ACTION
                                                                              COMPLAINT
                                                                              4:21-CV-06338-JST

1        46.    8. In addition to concatenated crashes, the SDM Calibration Defect is also

2    implicated in frontal crashes that increase in severity and require airbag deployment or seatbelt

3    tightening after an initial, "soft" impact.  These types of crashes are referred to herein as

4    "prolonged" or "long-soft" crash onsets. This would include, for example, a crash into another

5    vehicle's bumper which—because the bumper is comparatively "soft"—may take time before the

6    "soft" bumper collapses, and a "hard" impact into the engine compartment begins.[16] "Soft"

7    crashes involve a "relatively long crash duration" that may last 20-50 percent longer than a head-

8    on crash into a rigid barrier, like a cement wall.[17]

9        47.    9. In a prolonged onset crash, the initial impact into a "soft" surface, such as a

10   bumper, starts the SDM clock ticking. Depending on the crash conditions , such as speed, road

11   incline, angle of impact, weather, ice on the road, etc., this "soft" impact may not require airbag

12   deployment before 45 milliseconds has elapsedright away. Throughout the initial "soft" impact,

13   the SDM will be in wake-up mode to search for a confirmatory signal. But it will not find another

14   input sufficient to trigger the airbags from the "soft" impact. As explained above, in In the Class

15   Vehicles, the SDM clock will then effectively times out when the 45-millisecond mark hitstime

16   out at the cutoff imposed by GM Trucks. So, if the crash proceeds through the "soft" layers and

17   into the engine compartment of another vehicle during the "dead zone" after the cutoff—such that

18   airbag deployment is needed to protect the occupants at say, 75 milliseconds, no on the SDM

19   clock—no airbag or seatbelt deployment is possible no matter how severe the later, "hard" impact

20   getsis.

21       48.    10. In practice, this means that the airbags and seatbelt pretensioners in the Class

22   Vehicles can only fire within 45 milliseconds of a first, irregular signalcannot fire during a time

23   period in crashes when they are necessary. If a second, irregular signal occurs after 45

24   milliseconds, but before the SDM has resetthe cutoff GM imposed due to its defective strategy,

25   the SDM purposefully, by design, disregards the second signal, even if it would otherwise trigger

26

_____

[16] An example of a "soft" crash is where a vehicle crashes into a deformable barrier, or crashes at
an angle, which will result in a "softer" impact than a head-on crash into a rigid barrier (which is
a "hard" crash). Chan, *supra* note 6, at p. 40.

[17] Chan, *supra* note 6, at p. 40.

1    airbag deployment and/or seatbelts to tighten. The net result is a "dead zone" starting just 45

2    milliseconds into a crash, after," during which vehicle occupants are completely vulnerable

3    before the SDM software resets. 11.  The during a complex or long-duration crash. When the

4    SDM clock is above the cutoff time, the dead zone lasts until the SDM detects that the crash has

5    ended completely (meaning that the irregular signals have concluded, and the vehicle has

6    resumed normal operation), and then resets back to normal mode.  After the SDM has reset,

7    additional impacts or irregular inputs register as new events, triggering the process to begin anew.

8        49.    12. This significant gap in protection after 45 milliseconds due to the cutoff is

9    unreasonably dangerous because accidents—particularly complicated, real-world accidents—are

10    not necessarily completed at that point the aggressive cutoff points GM used. In many cases, a

11    crash continues in the "dead zone," and airbags and the thresholds for airbag and seatbelt severe

12    enough to trigger deployment are technically met during that time, but rendered inert. Yet GM

13    cars recognized this when it used a materially longer and safer cutoff for its vehicles. In contrast,

14    GM's SDM software calibration in the Class Vehicles prevents deployment of the airbags and

15    seatbelt pretensioners in the with its early "dead zone" while a crash is still underway—which is a

16    serious, unjustified, and dangerous safety defect. Indeed, even GM's own cars division includes a

17    significantly longer window for potential deployment.

18        **C.    GM knew that the SDM Calibration Defect was dangerous and unjustified**
         **but has failed to warn or compensate consumers.**
19

20        50.    GM knew or had reason to know of the SDM Calibration Defect and the risks it

21    entails from at least July 10, 2009, when GM acquired substantially all of Old GM's books,

22    records, and personnel, and the knowledge about the defective SDM software calibration those

23    books, records, and personnel held. GM has continued to acquire knowledge—based on lawsuits

24    implicating the SDM Calibration Defect and hundreds of publicly reported accidents with airbag

25    and seatbelt failures—from 2009 to the present.

26        51.    Nonetheless, GM has continued to conceal this problem and the pattern of

27    accidents, injuries, and deaths that have resulted from it. GM has failed to share this information

28    with the consumers who paid for and drive these Class Vehicles every day.

1       52.    It should come as no surprise that GM has unreasonably and unsafely delayed

2  disclosure of the SDM Calibration Defect. Indeed, GM has a recent history of attempts to avoid

3  the costs, potential liabilities, and reputational harms from a safety recall for Takata airbags and

4  seems to have repeated that same tactic here.

5       53.    As is now public knowledge, millions of GM vehicles contain the dangerous and

6  defective Takata airbag inflators that can explode with too much force and spray metal shrapnel

7  into vehicle passenger compartments. While the dangers of these Takata airbags were widely

8  known for years, GM lobbied regulators to delay a recall for its affected vehicles to avoid a

9  resulting hit to its profits.[18] In 2016, GM reported that recalling its vehicles with Takata inflators

10  would cost hundreds of millions of dollars.[19]

11       54.    Consumers brought a putative class action seeking redress. *See In re Takata*

12  *Airbag Product Liability Litigation*, Case No. 14-cv-240009, Dkt. 2750, (S.D. Fl.). While other

13  vehicle manufacturers had earlier and voluntarily recalled their vehicles with Takata airbags, it

14  was only years later, with that consumer litigation pending, that GM finally issued a belated

15  recall. And importantly, it did so only after regulators from NHTSA denied GM's petition for

16  inconsequentiality, in which it attempted to argue that a recall was not necessary.[20]

17       55.    Here, as in *Takata*, GM knew or should have known that the SDM software

18  calibration strategy in the Class Vehicles—which includes a dead zone that ~~prematurely~~ prevents

19  the airbag and seatbelts from ~~deploying after 45 milliseconds until the SDM resets—was~~

20  ~~deploying—was~~ dangerous. Nonetheless, GM kept using it anyway, did not recall or repair the

21  Class Vehicles to correct it, and still has not told consumers about it.

22

23

24

---

25  [18] "GM seeks to delay recall of 1 million vehicles with Takata air bag inflators." *Reuters*,
    September 16, 2016. Available at: https://www.reuters.com/article/us-gm-recall/gm-seeks-to-
26  delay-recall-of-1-million-vehicles-with-takata-air-bag-inflators-idUSKCN11M27N (last visited
    ~~January 26~~July 27, 2023).
27  [19] *Id.*
    [20] "GM will recall 7 million vehicles for air bag issue worldwide." *Reuters*, November 23, 2020.
28  Available at: https://www.reuters.com/article/us-gm-recall/gm-will-recall-7-million-vehicles-for-
    air-bag-issue-worldwide-idUSKBN2831TH (last visited ~~January 26~~July 27, 2023).

1.    **Old GM recklessly downplayed serious risks of injury when it chose to include the SDM Calibration Defect in the Class Vehicles.**

56.    In general, the vehicle manufacturer provides the requirements to set the deployment thresholds in the SDM software calibration that will trigger a command to fire the airbags and/or tighten the seatbelts. The vehicle manufacturer uses results from laboratory crash testing to inform these parameters.[21]

57.    But laboratory results are not sufficient in themselves, because real-world accidents—which can occur from multiple angles and involve inputs from myriad variables like weather, temperature, or incline—will differ from the testing environment.[22] For that reason, manufacturers must exercise appropriate care to design crash sensing frameworks that function to keep people safe in the real world.

58.    As relevant to the defect here, Old GM worked with Delco Electronics (later called Delphi Electronics, now known as Aptiv) to select and install SDM models and develop the SDM software program used in the Class Vehicles, starting with Model Year 1999. As to the physical component, Old GM installed Delco SDMs in many of its vehicles, including all the Class Vehicles. The model names for Delco SDMs have changed over time, and have included, from earliest to latest, models known as the SDM-GS,[23] SDM-11, SDM30, and others. GM continued to use Delco SDMs and the defective calibration in its vehicles after it was formed in 2009, including in all the Class Vehicles.

59.    In addition to the Delco hardware, GM also worked with Delco to develop and implement the software that controls the SDMs. To that end, Delco developed a proposed software program, known originally as ALGO-S, and presented it to Old GM for review.

60.    During this time, Old GM divided the design and development of its vehicles into a "cars" group and a "trucks" group, with the ~~trucks group~~ Trucks Group responsible for design, development, and production of larger model trucks and SUVs. After it reviewed the Delco

---

[21] Huffman, *supra* note 9.
[22] Solomon, *supra* note 10, at 13.
[23] The SDM-GS is the SDM model included in Mr. Nossar's 2005 Trailblazer, which would have been in development during Mr. Caruso's tenure with Delco, which ended in 2006.

1    team's proposed SDM software algorithm, ALGO-S, the ~~trucks group~~ Trucks Group insisted on

2    adding the ~~45-millisecond~~ aggressive and premature cut off ~~described above~~ when it calibrated

3    that program for use in its trucks and SUVs. Specifically, the Trucks Group insisted on a limit at

4    approximately 45 milliseconds, well before a real-world accident could foreseeably require airbag

5    deployment.

6        61.    The ~~45-millisecond~~ premature cut off was dictated by GM ~~trucks~~ Trucks as part of

7    its calibration strategy for all vehicles within the fleet. This means that regardless of any

8    differences across makes and model years, all vehicles ~~within the group~~ under the direction of the

9    Trucks Group include SDM software that was calibrated to meet GM ~~trucks~~ Trucks' guiding

10   philosophy for when and how the safety systems will deploy, which included the SDM

11   Calibration Defect.

12       62.    On information and belief, the ~~trucks group~~ Trucks Group insisted on this cutoff

13   based on test results which indicated that frontal-barrier accidents (i.e., a simulated, single-impact

14   crash into a hard barrier) in its trucks and SUVs would not require ~~airbags~~ airbag deployment

15   after approximately 45 milliseconds or less in laboratory conditions.

16       63.    In response, the Delco team expressly warned the ~~trucks group~~ Trucks Group that

17   such an aggressive cutoff could fail to capture additional signals in complex crashes outside of the

18   laboratory, leaving occupants completely unprotected during prolonged onset crashes or crashes

19   with multiple impact points. Put another way, using a limit derived from laboratory testing results

20   was not reasonable or safe, because it fails to account for the complexities and durations of real

21   world crash events, which can reasonably and foreseeably take twice as long as the laboratory

22   tests to require airbag deployment. On information and belief, documents, records, and personnel

23   reflecting GM ~~trucks~~ Trucks' insistence—over Delco's objection—to include this cutoff were

24   passed on from Old GM to New GM in 2009.

25       64.    GM's own cars group, and on information and belief, other major vehicle

26   manufacturers throughout the industry, include a significantly longer window for the SDM to

27   detect a potential accident and deploy the airbags and seatbelts. Indeed, in the ALGO-S program

28   as it was originally designed by Delco, the window in which the airbags and seatbelts can deploy

1    in a crash is ~~*multiple* times the level set by GM Trucks (up to 150 milliseconds). Tellingly, after~~

2    ~~the Delco team repeated the same warnings about the truck group's proposed 45-millisecond~~

3    ~~cutoff to GM's cars group, the cars group rejected the shorter cutoff. Instead, the cars group used~~

4    ~~the ALGO-S software with the Delco-recommended period that was two or even three times~~

5    ~~longer than the GM Trucks group's proposal. GM ignored this decision by the cars group in~~

6    ~~insisting on the dangerous calibration~~<u>at a minimum *twice to three times* that used by GM Trucks</u>.

7    Delco's original ~~150-millisecond window~~ <u>design reasonably</u> allows for airbag and seatbelt

8    deployment in real-world frontal crashes, which themselves can endure for ~~up to~~<u>100 or even</u> 150

9    millisecond[24]s.[24] ~~When~~ <u>As such, when</u> GM trucks added the defective ~~45-millisecond~~ <u>premature</u>

10   cutoff to the software calibration in the Class Vehicles, it ~~prematurely, and~~ dangerously~~,~~

11   prevented the airbags and seatbelts from functioning when a frontal crash may still be well

12   underway.

13        <u>65.</u>    ~~11.~~ <u>Tellingly, after the Delco team repeated the same warnings about the Truck</u>

14   <u>Group's proposed cutoff strategy to GM's cars group, the cars group rejected the shorter cutoff.</u>

15   <u>Instead, the cars group used the ALGO-S software with a materially longer deployment window</u>

16   <u>than GM Trucks group's proposal (a *minimum* of approximately 100 milliseconds for</u>

17   <u>deployment). GM thus also ignored the cars group's decision in insisting on the dangerous</u>

18   <u>calibration for trucks and SUVs.</u>

19        66.    Given their serious concerns <u>about GM Trucks' deployment strategy</u>, Mr. Caruso

20   and his Delco team refused to release the defective software calibration for use in GM trucks and

21   SUVs until Old GM signed a disclaimer of Delco's liability for the modified calibration. The

22   ~~trucks group~~ <u>Trucks Group</u> still insisted on the defective calibration, signed the disclaimer, and

23   the ~~45-millisecond cutoff~~ <u>dangerous dead zone</u> was added in the SDM software calibration ~~as~~

24   used in GM trucks and SUVs.[25]

25

26   _____

27   ~~[24] Chan, *supra* note 6, at p. 169.~~
     [24] <u>Chan, *supra* note 6, at p. 169.</u>

28   [25] *See* Objection to Defendants' Motion for Partial Summary Judgment, *McCoy v. General Motors LLC*, Case No. X03- HHD-CV-20-6142910-S (Conn. Sup. Ct), available at: https://civilinquiry.jud.ct.gov/DocumentInquiry/DocumentInquiry.aspx?DocumentNo=23354481.

- 19 -    ~~SECOND~~ <u>THIRD</u> AMENDED CLASS ACTION
                                                COMPLAINT
                                                4:21-CV-06338-JST

1    67.    This defective calibration was included in all of the trucks and SUVs under the

2    direction of GM's ~~trucks group~~Trucks Group, including all the Class Vehicles. This is so because,

3    as explained above, the abrupt cutoff was part of a calibration philosophy that is not vehicle

4    dependent, i.e., it was a decision on the overall strategy for safety system deployment that applied

5    to all vehicles within the group, including all the Class Vehicles.

6    68.    In practice, this meant that GM Trucks leadership set the calibration strategy for

7    all vehicles within the Trucks group (including all the Class Vehicles), and the software engineers

8    tasked with implementing that strategy for individual vehicle platforms were obligated to follow

9    that strategy for all vehicles within the group—the strategy was not set, or adapted, at the

10   individual vehicle level.

11   69.    This group-level approach to vehicle software is logical from a cost and resources

12   standpoint; developing software algorithms is time intensive and expensive, making it effective

13   and ordinary practice to develop one algorithm for use across multiple vehicle makes and models.

14   70.    This typical practice of using the same SDM software strategy for groups of

15   vehicles is evidenced by a prior recall conducted by GM in September 2016. Specifically, GM

16   previously recalled some 3,640,000 vehicles across three different model years (from 2014 to

17   2017) due to a "software defect" present in the SDM software in all of those vehicles. As GM

18   described it, the SDM software in *all of these* vehicles included the same "oscillation test" in the

19   software that could "interfere with the SDM's proper deployment of frontal airbags or

20   pretensioners as required."[26]

21   71.    This oscillation-test issue is distinct from the ~~45-millisecond cutoff~~defect

22   described in this case, but GM's use of the same software with the identical defective oscillation

23   test in more than three and a half million vehicles is evidence that GM developed and applied the

24   same SDM software across a very large range of makes and model years.

25   72.    The widespread use of this same oscillation test in the SDM software used for a

26   wide variety of makes and models, including both GM cars and trucks, also supports Plaintiffs'

27

28   ───────────────
     [26] *See* General Motors LLC Part 573 Vehicle Safety Recall Report, 16-V-651 (September 2016) available at: https://static.nhtsa.gov/odi/rcl/2016/RCLRPT-16V651-2475.PDF.

1   allegations in this case that both GM trucks and GM cars used the same SDM software algorithm

2   (which started as ALGO-S) to control the SDMs in the vehicles under their direction, but that GM

3   ~~trucks~~ Trucks modified the algorithm as designed to include the SDM Calibration Defect.

4       73.     Finally, the use of the same software calibration strategy across many different

5   vehicles is further supported by Mr. Caruso's description of his work with Old GM in setting and

6   implementing the software calibration strategy for vehicles at the group level, for the ~~trucks group~~

7   Trucks Group and cars group. *See, e.g.*, Nossar Report, *supra*, at p. 5 (Mr. Caruso recounting the

8   "GM Truck Groups' edict to set certain crash sensor calibration parameters outside the

9   recommended minimum guidelines set by the crash sensing algorithm designers").

10              **2.    ~~The 45-millisecond~~ GM's aggressive cutoff was not necessary to
                        protect against "late" airbag deployments.**

11

12      74.     GM ~~trucks group's~~ Trucks Group's insistence on the ~~45-millisecond window~~ early

13  cutoff after which the airbags and seatbelts cannot deploy was unjustified and unsafe.

14      75.     On information and belief, the ~~trucks group~~ Trucks Group chose to set this

15  aggressive cutoff due to concerns about the potential for airbags to deploy "too late" during an

16  accident. But as the ~~trucks group~~ Trucks Group also knew, these concerns were unwarranted

17  given technology that mitigated the risks of "late" airbag deployments.

18      76.     A brief history of airbags in motor vehicles puts this dangerous decision in

19  context. Before 1998, airbag systems were effectively one-size-fits-all. Designed to protect

20  against only frontal crashes, these "first-generation" airbags were built to meet a standardized

21  government test that required they protect an unbelted, midsize adult male dummy (175 pounds)

22  in a 30-MPH crash into a rigid barrier.[27] To do so, an airbag had to fill up quickly with gas,

23  resulting in a deployment speed of up to 200 MPH.[28]

24

25

[27] Jack Keebler, *Airbags Safe Insane? – Special Report*, Motortrend (Sept. 1, 2000),
26  https://www.motortrend.com/news/airbags-safe-insane-special-report/ (last visited ~~January 26~~ July
    27, 2023).
27  [28] *Id.*; *see also* David B. Ottaway & Warren Brown, *From Life Saver to Fatal Threat*, The Wash.
    Post (June 1, 1997), https://www.washingtonpost.com/archive/politics/1997/06/01/from-life-
28  saver-to-fatal-threat/56d05b9e-a1bc-49b7-beb4-43480762b25e/ (last visited ~~January 26~~ July 27,
    2023).

1        77.    Not all vehicle occupants fit this description, however, and the intensity of first-

2    generation airbag deployment could prove dangerous for children and those who were positioned

3    too close to the bag when it inflated (for example, because they had already been thrown forward

4    toward the steering wheel during an under-way accident).[29]

5        78.    Public perception about airbag safety in motor vehicles, and in turn, the vehicle

6    manufacturers that sold them, turned increasingly unfavorable following reports of late and

7    aggressive deployments in first-generation airbags. Both regulators and vehicle manufacturers

8    recognized the need to address these issues.[30] Beginning in October 1995, NHTSA initiated a

9    series of actions to minimize and eventually eliminate the adverse effects of late and aggressive

10   airbag deployments while preserving their life-saving benefits.[31]

11       79.    In 1997, NHTSA issued modified federal rules to allow automakers to reduce the

12   energy in frontal airbags. This led to "an industry-wide changeover" to "redesigned" airbags in

13   the very next model years (1998-1999).[32] The "redesign" consisted of several new technological

14   innovations. The first and immediate solution was "depowered" airbags: automobile

15   manufacturers removed some of the gas-generating propellant or stored gas from the inflators to

16   reduce the pressure and velocity of deployments. This change alone was highly effective in

17   reducing low-to-moderate speed fatalities.[33]

18       80.    Other innovations to reduce the risk of aggressive deployments included reducing

19   the volume or rearward extent of airbags, positioning them further from occupants, revised

20   folding techniques, and tethering and shifting from pyrotechnic inflators to hybrids including

21   stored gas.[34]

---

22     [29] Susan A. Ferguson & Lawrence W. Schneider, *An Overview of Frontal Airbag Performance*

23   *with Changes in Frontal Crash-Test Requirements: Findings of the Blue Ribbon Panel for the*
     *Evaluation of Advanced Technology Airbags*, Traffic Injury Prevention 3 (Nov. 2008).

24   [30] U.S. Department of Transportation, NHTSA, *An Evaluation of the 1998–1999 Redesign of*
     *Frontal Air Bags,* NHTSA Technical Report No. DOT HS 810 685, p.11, (August 2006)

25   [hereinafter "NHTSA Redesign Report"]; *see also* Ferguson & Schneider, *supra* note
     ~~29~~30.

26   [31] NHTSA Redesign Report, *supra* note ~~30~~31, at vii.

     [32] *Id.*; *see also* Micah Wright, *The Hidden Dangers of Older Airbags*, MotorBiscuit (May 8,

27   2015), https://web.archive.org/web/20220630111938/https://www.motorbiscuit.com/the-hidden-
     dangers-of-older-airbags (last visited ~~January 26~~July 27, 2023).

28   [33] *See* NHTSA Redesign Report, *supra* note ~~30~~31 at 25.
     [34] *Id.* at vii.

1    81.    Old GM knew about and employed these new technologies in its vehicles. Indeed,

2    as the director of Old GM's Safety Center Terry Connolly said in 2000, there were no significant

3    downsides to using this new "depowered" airbag technology, even for unbelted passengers.[35]

4    82.    Further innovations referred to as "advanced" or "smart" airbags followed soon

5    thereafter.[36] "Advanced" airbags alter deployment patterns according to feedback from several

6    sensors. These sensors tailor how the airbag deploys based on the severity of the crash, the size

7    and posture of the vehicle occupant, whether the occupant is wearing a seatbelt, and how close

8    the occupant is to the airbag. [37]

9    83.    Many "advanced" systems use dual-stage or multi-stage inflators. This means that

10    they have two inflation stages that can be ignited sequentially or simultaneously depending on

11    crash severity.

12    84.    "Advanced" airbags phased into production beginning September 1, 2003 and

13    were required in all new vehicles by September 1, 2006.[38]

14    85.    Thus, based on the depowered and advanced airbag technology starting in 1998

15    and 1999, the risks posed by "late" deployments in early generation airbags had greatly

16    diminished. Indeed, while NHTSA estimates that more than 290 deaths were caused by frontal

17    airbag inflation between 1990 and 2008, nearly 90 percent of those deaths occurred in vehicles

18    manufactured before 1998 (i.e., with first-generation airbag technology).[39] Today, with this new

19    technology, serious injuries from properly functioning airbags are rare.[40]

20    86.    Despite knowledge and use of the new technology mitigating the risks of late

21    deployments, the ~~trucks group~~ Trucks Group still insisted on premecturely shutting off the airbags

22    and seatbelts in the Class Vehicles ~~after 45 milliseconds~~ long before the 100 millisecond minimum

23    window reasonably required by real-world crashes, and used by GM's own cars group. On

24    information and belief, despite these well-established advancements in airbag technology outlined

25

26    [35] Keebler, *supra* note 27.
[36] *See* NHTSA Redesign Report, *supra* note ~~30~~ 31 at p. 3.

27    [37] Wright, *supra* note ~~32~~ 33.
[38] NHTSA Redesign Report, supra note ~~30~~ 31, at vii.

28    [39] Insurance Institute for Highway Safety. "Airbags" (2021), available at:
https://www.iihs.org/topics/airbags (last visited ~~January 26~~ July 27, 2023).
[40] *Id.*

2730953.6 2820476.3                    - 23 -                    ~~SECOND~~ THIRD AMENDED CLASS ACTION
COMPLAINT
4:21-CV-06338-JST

1    above, GM continued to use this same defective software calibration strategy in its vehicles in

2    2009 and beyond.

3              3.    **GM knew about a pattern of suspicious accidents involving the SDM
                      Calibration Defect in the Class Vehicles.**

4

5         87.    GM's reckless decision and continued disregard for clear warnings about the risks

6    in shutting off the SDM too soon during an accident has had real and tragic consequences.

7         88.    As outlined above, GM has known about the SDM Calibration Defect since it took

8    over Old GM's books, records, and personnel in 2009. GM has continued to accrue knowledge of

9    the defect, and its serious consequences, in the years since. Indeed, GM has known about,

10   investigated, and even litigated numerous crashes in which airbags suspiciously failed to deploy

11   in multi-impact or prolonged-onset frontal crashes in the Class Vehicles—a clear indication of the

12   SDM Calibration Defect.

13        89.    Despite obvious signs of a known and dangerous risk, GM concealed these

14   accidents and the SDM Calibration Defect from consumers and regulators to avoid or at least

15   delay a recall and the attendant costs and reputational damage therefrom. To date, GM has taken

16   no corrective action to repair or recall the Class Vehicles to address this defect.

17            a.    **GM has litigated (and settled) many personal injury lawsuits
                     for suspicious airbag failures in the Class Vehicles.**

18

19        90.    In addition to its institutional records and knowledge, GM was on notice of the

20   SDM Calibration Defect through litigating and settling personal injury lawsuits involving airbag

21   and seatbelt failures consistent with the SDM Calibration Defect.

22        91.    As noted above, Chris Caruso has served as an expert witness in many of these

23   lawsuits. Mr. Caruso has "over 43 years working in the automotive engineering field." Exhibit D

24   at 4. This includes work as an engineer for Old GM from 1979 to 1986. Thereafter, from 1986 to

25   2006, Mr. Caruso worked for Delco Electronics, where he was "involved in the development and

26   implementation of the second generation of airbag system on GM vehicles and their subsidiaries

27   in the US." *Id.* at 1. Mr. Caruso also worked as a "lead engineer in the development of crash

28   sensor specifications and the airbag sensing systems for major OEM's worldwide," including Old

1    GM, and himself "designed the SDM crash sensing algorithms." *Id.* at 1-2. Mr. Caruso worked

2    for Delco through August of 2006. Thereafter, he began work in his current role as a consultant

3    with Automotive Safety Consulting, where he has "served as a consultant for both plaintiffs and

4    defendants in numerous cases involving automotive safety systems, including cases involving

5    EDR/CDR downloads and readouts." *Id.* at 4.

6         92.    Mr. Caruso recounts much of this work experience and the history of the SDM

7    Calibration Defect in public documents in a case filed in 2011, just two years after GM was

8    formed.

9         93.    In that case, Plaintiff James Nossar sued GM LLC following a crash in his 2005

10   Chevrolet Trailblazer (a Class Vehicle here). As detailed in that complaint, on or about February

11   25, 2010, Mr. Nossar drove his Trailblazer into the back of a 1999 Suburban "and sustained a

12   moderate to severe frontal impact . . . at a rate of speed that exceeded the airbag system's

13   predetermined deployment threshold." *See Nossar v. General Motors LLC*, Dkt. 4, Case No. 1:11-

14   cv-02129 (N.D. Ga.). Despite this "significant frontal collision," the airbag failed to deploy and

15   seatbelt pretensioners failed to trigger. Without the airbag or seatbelt to protect him, Mr. Nossar's

16   head slammed into the steering wheel, which caused "fracturing practically every bone in his face

17   and brain injuries." *Id.*

18        94.    In support of his claims, in April 2012, Mr. Nossar filed an expert report from

19   Chris Caruso who, as explained above, is an expert in automotive crash sensing systems who

20   worked for Delco engineering during the development of the defective SDM software calibration

21   in the Class Vehicles. *See id.* at Dkt. 40-1.

22        95.    In that report, Caruso detailed the same flaws in the SDM software calibration

23   described herein. He explained that the airbag sensing system in the Trailblazer was "defective by

24   design and has the potential to not deploy frontal impact airbags in high speed frontal impacts

25   where conditions vary slightly from the perfect laboratory conditions where the system was

26   designed and tested." Based on Caruso's experience working in the development of the SDM

27   software, he related that there were concerns, due to the calibration, "that in longer duration, but

28   high severity events and in concatenated events (such as a curb impact followed by a utility pole

1    impact), the airbags would fail to deploy because the algorithm deployment thresholds were no

2    longer active." *Id.*

3        96.    Caruso further explained that as that litigation proceeded into discovery, he would

4    "expect to identify emails and other correspondence between GM Truck Engineers and Delphi

5    Crash Sensor engineers discussing the concerns over GM Truck Groups' edict to set certain crash

6    sensor calibration parameters outside the recommended minimum guidelines set by the crash

7    sensing algorithm designers [the Delphi/Delco engineers]." Caruso expected to obtain this

8    corroborating evidence because he "ha[d] seen these documents before and kn[e]w the content,"

9    and summarized that "**the calibration values result in premature turning off of algorithm**

10    **thresholds which effectively disables the front airbags after 45 to 50ms.**" *Id.* (emphasis

11    added).

12        97.    Mr. Caruso's expectations as to what discovery would reveal are plausible because

13    of his contemporaneous experience with Delco and Old GM in the time period in which Mr.

14    Nossar's vehicle was developed. Mr. Caruso left Delco in 2006, long after the development

15    concluded for Mr. Nossar's model year 2005 vehicle. (Because vehicles are actually sold in their

16    model year, *i.e.*, 2008 vehicles are sold in 2008, their design and development-, including for the

17    SDM software, predates the actual model year by, one, two, or more years).

18        98.    As to Mr. Nossar's 2005 Trailblazer specifically, Caruso observed that the vehicle

19    included a version of the SDM hardware known as the SDM-DS, and concluded:

20        • The airbags and seatbelts failed because, at the time the airbags should have

21          deployed, and consistent with the SDM Calibration Defect here, "**the SDM**
      **calibration had already timed out after 45-50ms** after the crash started."

22
    • "In reviewing the crash performance of the sensing system for the subject vehicle,

23          with respect to the conditions of the subject crash, **it is clear that the calibration**
      **values result in premature turning off of algorithm thresholds which**

24          **effectively disables the front airbags after 45 to 50ms.**"

25
    99.    "The failure by GM to understand the **risks of certain dictated calibration**

26
**values** [in the SDM software calibration] led directly to the design defect that rendered the frontal

27

28

1    impact airbag system in the 2005 Chevrolet Trailblazer defective and unreasonably dangerous in

2    certain field relevant, real-world crashes." *Id.*

3           100.    GM LLC, a named defendant in the *Nossar* case, clearly knew about and received

4    Mr. Caruso's report outlining the history of these issues in the SDM software calibration.

5           101.    The *Nossar* case and Mr. Caruso's report support that Old GM continued to install

6    SDMs with the Calibration Defect in its vehicles at least through model year 2005.

7           102.    More recently, Mark McCoy filed a lawsuit against GM LLC in 2020 after a

8    serious accident in his 2018 Sierra Denali 2500. *See McCoy v. General Motors LLC*, Case No.

9    X03- HHD-CV-20-6142910-S (Conn. Sup. Ct).

10          103.    While on a freeway exit ramp, at a sharp turn, Mr. McCoy veered off the road,

11   crashed into a fence, and then crashed into a trailer, before finally crashing into a construction

12   vehicle parked near the ramp. None of the airbags in his vehicle deployed. As a result, Mr.

13   McCoy sustained "catastrophic, painful and severely debilitating injuries," including traumatic

14   spinal injuries, total paralysis from the chest down, a traumatic brain injury, and a broken nose,

15   among other injuries.[41] Below is a picture of Mr. McCoy's Denali after the crash:

16

17

18

19

20

21

22

23

24

25

26

27   _____

28   [41] *See* June 19, 2020 Amended Complaint, ¶ 8, *McCoy v. General Motors LLC*, Case No. X03-
     HHD-CV-20-6142910-S (Conn. Sup. Ct) ("McCoy"). *Available at*:
     https://civilinquiry.jud.ct.gov/DocumentInquiry/DocumentInquiry.aspx?DocumentNo=19161992



104.    Mr. Caruso also served as an expert for plaintiff in the *McCoy* case and submitted a detailed report in connection with summary judgment briefing in that matter.[42] Therein, Mr. Caruso described his history with the company, including warning Old GM against using the defective software calibration in trucks and SUVs, and his insistence on a disclaimer of liability before releasing the calibrations for use in the Class Vehicles.

105.    Further, Mr. Caruso described his work after he left Delco in 2006 in failure-to-deploy lawsuits "where the root cause was determined to be the 45ms SHUTOFF criteria" [i.e., the SDM Calibration Defect]" in "numerous" GM trucks and SUVs in "earlier model[s]" than model year 2018.[43]

---

[42] Mr. Caruso's opinions in the McCoy case became publicly available only after the April 2022 hearing on the Defendants' motion to dismiss in this matter, and were also not available at the time Plaintiffs filed their amended complaint in October 2021.

[43] Mr. Caruso's report in the McCoy matter is attached hereto as Exhibit D. *See id.* at 19.

1    106.    Through discovery in the *McCoy* matter, Mr. Caruso analyzed the actual software

2  calibration file for the SDM software in Mr. McCoy's model year 2018 vehicle. Based on his

3  review of the file, Mr. Caruso concluded that the algorithm in the 2018 vehicle remained a "carry

4  over" from the SDM software algorithm, ALGO-S, he himself designed years prior. Exhibit D at

5  16. Moreover, Caruso concluded that GM's dangerous and defective philosophy about airbag

6  deployment timing persisted in the 2018 Sierra. Put another way, GM "appeared to be using **very**

7  **similar shutoff times in this calibration**" to those he had previously objected to in earlier model

8  years in which GM "forc[ed] the use of 45ms shutoff times." *Id.* at 18.

9    107.    Specifically, in the *McCoy* software, Caruso observed shutoff times at 50

10  milliseconds, consistent with his earlier testimony in *Nossar* that the cutoff occurred at

11  approximately 45-50 milliseconds, and others that were even shorter, at 16 milliseconds.

12    108.    Whether 45, 50, or even 16 milliseconds, each of these cutoff calibrations is

13  defective in the same way, because none are sufficient to account for real world crash events, or

14  come even close to the minimum used by GM cars. Put another way, each creates a "dead zone"

15  far short of the time window needed for deployment in real world crashes, which is the defect that

16  underlies Plaintiffs' claims.

17    109.    ~~18.The~~ ~~presence of the~~ persistence of this defective calibration cutoff strategy in a

18  GM truck sold at least 12 years after he stopped working for Delco came as some surprise to

19  Caruso. Indeed, he "had believed" GM would have discontinued the use of the dangerous

20  calibration prior to model year 2018. But the software itself told a different story. In summary,

21  based on the actual software, discovery produced in that case, as well as the crash conditions from

22  the McCoy accident, Caruso opined:

23    • "The failure to deploy [the] airbags resulted in a condition that was defective, unsafe
       and unreasonably dangerous" to the driver in this vehicle;

24
25    • "[I]t appears that [GM trucks Group] is **still employing very aggressive stop times**"
       in its software calibrations as of model year 2018; and

26    • GM should have implemented an "alternative design" to "[m]odify the algorithm
27     calibrations with more robust 120-150ms" cutoff thresholds.

28    *See* Exhibit D.

1    110. 19.Caruso's report in the *McCoy* case—notably based on his review of the actual

2    software calibration—demonstrates that at least through model year 2018, GM continued to

3    install Delco SDMs governed by dangerous cutoff thresholds in calibrations based on the original

4    ALGO-S software algorithm. Although it had years to do so, even by 2018, GM had still failed to

5    adopt a safer and more rational design that would allow for deployment for at least as long as the

6    strategy used by GM cars (*i.e.*, approximately 100 milliseconds at a minimum for deployment).

7    111. 20.Mr. Caruso also was able to identify the SDM hardware used in the McCoy

8    vehicle as the Delco SDM30, which is evidence that GM continued to use the defective software

9    calibration for all vehicles that contain that Delco SDM model. Publicly available crash data

10    reports from NHTSA show the same Delco SDM30 was installed by GM in GM trucks in at least

11    model years 2015 and 2016, including in the model year 2015 Chevrolet Trax, 2015 Chevrolet

12    Tahoe, and 2016 Yukon Denali.

13    112. 21.Likewise, on information and belief, Plaintiffs Vargas, Ray, and Milstead's

14    Class Vehicles contain SDM-11 model Delco SDMs. Given their model years and the Delco

15    SDM, the plausible, and most reasonable, inference is that they also included the associated

16    defective calibration strategy GM used with Delco SDMs.

17    113. 22.Based on: (1) Mr. Caruso's early knowledge of the SDM Calibration Defect

18    when it was first used; (2) his subsequent tenure with Delco through 2006, during which model

19    year vehicles for subsequent years were already in development; (3) his expert opinion on the

20    presence of the SDM Calibration Defect in a model year 2005 vehicle (*Nossar*) after his

21    assessment of the vehicle performance and crash dynamics; and (4) his opinion about defect's

22    persistence in a model year 2018 vehicle with the Delco SDM30 (*McCoy*)—the plausible, and

23    most reasonable, inference is that the defect persisted in the years between 1999, 2005 and 2018.

24    114. 23.Following service of Mr. Caruso's expert report and deposition in the *McCoy*

25    case, GM agreed to settle the case in December 2022.[44]

26    _____

27    [44] Plaintiffs' allegation of a settlement is supported by plaintiff's request in *McCoy* in October
     2022 for additional time to withdraw the case because "additional time is necessary to exchange
     the necessary settlement documents." *See McCoy*, October 19, 2022 CaseFlow Request. Plaintiff

28    then withdrew the matter last month, in December 2022. *See* December 19, 2022 Withdrawal of
     Action, *McCoy v. General Motors LLC*, Case No. X03- HHD-CV-20-6142910-S (Conn. Sup. Ct).

1    115.    24. In addition, Chad Vaith filed a lawsuit against GM LLC in 2017 after an

2    accident in his MY 2014 Silverado. As that complaint relates, in December 2015, Mr. Vaith was

3    involved in an accident in which he drove his Silverado "off the road into a ditch," after which he

4    "continued through the ditch for approximately forty yards before launching over the

5    driveway/culvert. . . before coming to a final rest approximately twenty yards south." *See Vaith v.*

6    *General Motors LLC*, Dkt. 1, Case No. 18-cv-00031 (D. Minn.). Despite multiple impacts in that

7    prolonged accident, the airbags and seatbelts did not deploy, causing Mr. Vaith to "suffer severe

8    personal injuries." Mr. Caruso was a disclosed expert for plaintiff in that case, although his

9    opinions about the 2014 Silverado were not publicly filed. *See, e.g., id.* at Dkt. 64.

10    116.    25. Mr. Vaith's case proceeded into fact discovery and ultimately resulted in a

11    "negotiated settlement" between Mr. Vaith and GM. *Id.* at Dkt. 82.

12    117.    26. In addition to these previous lawsuits against GM with Mr. Caruso as an expert,

13    another automotive crash expert, Sal Fariello, wrote directly to GM's CEO Mary Barra twice in

14    December 2016 to raise similar concerns about issues he had observed in the airbag sensing

15    system in model year 2006 GM SUVs. Mr. Fariello's letters are available in NHTSA's public

16    records.[45]

17    118.    27. Mr. Fariello's letters to GM's CEO focused on an accident in a 2006

18    Trailblazer (a Class Vehicle here) for which he served as a litigation consultant in a lawsuit filed

19    in or around 2014. Therein, he lists multiple technical issues with the airbag sensing system that

20    he wanted to bring to GM's attention and urge them to address. For example, he cautions that, in

21    his view:

22        a.    "The deployment thresholds [i.e., the inputs that will trigger deployment]

23    for the airbag were set too high and compromised driver and passenger safety as a result of GM's

24    improper effort to mitigate lawsuits related to relatively low speed deployments of the airbag.";

25

26

27    _____

[45] Mr. Fariello is a forensic crash investigator. *See* Bill Saporito, "Air Bag Blow Out," *Time*

28    *Magazine*, (December 4, 2014). Available at: https://time.com/3617681/the-air-bag-blowout (last
visited ~~January 26~~July 27, 2023).

1    b.   "The deployment threshold did not meet GM's and generally accepted

2    standards for when an airbag should deploy in order to prevent occupant death based on written

3    technical papers and educational videos produced by GM or its employees."; and

4    c.   "Failure of the SDM to independently process a crash pulse and deploy the

5    airbag implicates a defective software algorithm; specifically 'Algo S-H' [the software algorithm

6    in the Class Vehicles]."

7    119. 28.At the time, in 2016, Mr. Fariello proposed that the SDM could be re-

8    programed "with a more responsive algorithm" to resolve these issues, and that GM's "only

9    apparent motive for not doing this related to the cost of implementing a recall."

10    120. 29.Frustrated by the response he received from GM's counsel in response to these

11    letters, Mr. Fariello then wrote to Senator Bill Nelson of Florida enclosing his correspondence to

12    GM and escalating his concerns. Senator Nelson then forwarded that correspondence to

13    NHTSA.[46]

14    121. 30.As Mr. Fariello concluded, in his view, GM was stalling on this issue "just as

15    they did with the Takata airbag matter."

16    122. 31.Finally, in In April 2016, plaintiff Kayla Greenwood filed suit against GM on

17    behalf of her deceased parent, Galen Greenwood. *See Greenwood v. General Motors LLC and*

18    *General Motors Company*, Dkt. 1, Case No. 16-cv-00149 (M.D. GA). Galen Greenwood was

19    fatally injured when his "airbag failed to deploy and his seat belt failed to properly restrain him"

20    during a multi-impact crash in his 2006 GM SUV, a Chevrolet Equinox—hallmarks of the SDM

21    Calibration Defect. *Id.* Specifically, "Mr. Greenwood lost control of the subject vehicle, traveled

22    over the northbound lane and onto the west shoulder in a gradual manner, and impacted two trees

23    with the front of the subject vehicle. During the incident sequence, the driver's side airbag failed

24    to deploy and the seat belt failed to properly restrain Plaintiff's decedent. During the impact,

25

26

27

28

---

[46] Mr. Fariello's letters to GM and further documentation are available at:
https://static.nhtsa.gov/odi/cmpl/2017/CL-10955948-3381.pdf (last visited January 26July 27, 2023).

2730953.6 2820476.3                                - 32 -                    SECOND THIRD AMENDED CLASS ACTION
                                                                                                COMPLAINT
                                                                                           4:21-CV-06338-JST

1   Galen Greenwood suffered severe injuries which resulted in his death." *Id.* GM settled with Ms.

2   Greenwood in May 2017. *See id.* Dkt. 20-1.[47]

3        123.   Finally, in 2022, Jerome and Cedric Woods filed suit against MFA Oil Company

4   in Missouri state court as survivors of Richard Stinson. Mr. Stinson was killed when his 2009

5   Chevrolet Silverado truck crashed into an MFA Oil Company truck in November 2021. Mr.

6   Stinson's Silverado was traveling at approximately 46 miles per hour at the time of the collision,

7   and despite the serious "extent of the damage," the speed of the accident, and the change in

8   velocity from the impact, his airbags did not deploy.

9        124.   In or about March 2023, defendant MFA Oil Company filed a third party petition

10   against General Motors LLC in the *Woods* case. As MFA contends in that third party petition:

11        • "Upon information and belief, the airbag system on the Silverado was designed to not
           deploy under circumstances when the change in velocity of the vehicle [i.e., a
12         deployment threshold input] **in the initial 45 milliseconds after the initiation of a**
           **collision event was under a set rate regardless of the change in velocity of the**
13         **vehicle after the initial 45 milliseconds**, including a situation such as the collision in
           this case in which a change in velocity was recorded to exceed 37 miles per hour
14         during the sequence of the collision."

15

16        • **The design settings for deployment of the driver's side airbag on the Silverado**
           **were defective and unreasonably dangerous because the settings prevented**
17         **deployment of the driver's side airbag** under circumstances such as the collision at
           issue in this case in which the change in velocity of the vehicle exceeded 37 miles per
18         hour and in which the deployment of the airbag could or would have reduced or
           entirely avoided serious or fatal injuries such as the injuries Stinson sustained.[48]
19

20        125.   The *Woods* litigation on Mr. Stinson's behalf continues.

21        126.   ~~32.~~Taken together, these and other allegations support the existence of the SDM

22   Calibration Defect and the reasonable inference that Plaintiffs' model years 2010 and 2012 GM

23   trucks and SUVs included it. Specifically, given that: (1) the model years of Plaintiffs' Class

24

25   [47] In the *McCoy* matter, GM's designated corporate witness testified that he had previously
     offered testimony in a personal injury lawsuit about a crash where a vehicle "went off the
26   roadway and struck a tree," where the plaintiff's name was Greenwood. On information and
     belief, GM's corporate designee in the *McCoy* matter was thus also a deponent in this settled
27   Greenwood lawsuit, demonstrating further corporate knowledge of persistent injuries from the
     SDM Calibration Defect in the field.
28   [48] *See Third-Party Plaintiffs' Petition, Woods v. MFA Oil Company v. General Motors LLC,* Case
     No. 22-NM-CV00032 (New Madrid Circuit Court, Missouri).

2730953.6 2820476.3                          - 33 -                       ~~SECOND~~ THIRD AMENDED CLASS ACTION
                                                                          COMPLAINT
                                                                          4:21-CV-06338-JST

1    Vehicles were developed *after* Old GM first used the defective Software Calibration in or about

2    1999, and not long after Mr. Caruso left his role with Delco in 2006 (during which subsequent

3    model years were already in development); (2) Plaintiffs' Class Vehicles predate the 2018 vehicle

4    in which Mr. Caruso reviewed the software calibration, and concluded that the algorithm still

5    ~~included~~ reflects GM's flawed strategy to cutoff deployment too early, including "very similar

6    shutoff times" to those he had originally raised concerns about twenty years earlier; (3)

7    corroborating instances between those two bookends (1999 and 2018) support the persistence of

8    the defective calibration in the intervening model years (i.e., *Nossar, Vaith, Greenwood, Woods,*

9    and *Fariello's* letters, discussed *supra*); and (4) the broad, cross-model way that SDM software

10   calibration strategy is set and implemented across GM's fleet within a given model year, the

11   plausible, and most reasonable inference is that GM installed the same defective calibration in all

12   its trucks and SUVs at least through model year 2018.

13              **b.    GM knew or should have known about hundreds of publicly**
                       **reported airbag failures in the Class Vehicles.**
14

15        127.    GM was also on notice of the SDM Calibration Defect and its attendant safety

16   risks from consumer complaints. These complaints are publicly available online through

17   NHTSA's website. Between 1999 and the present, hundreds of consumers reported to NHTSA

18   that airbags and/or seatbelts had suspiciously failed during frontal crashes involving concatenated

19   (multiple) impacts or potentially prolonged crash onsets.  New allegations—including Mr.

20   Caruso's report showing the ~~defect~~ defective cutoff strategy continued in a model year 2018

21   vehicle—make the below crashes even more suspicious as relevant incidents with the hallmarks

22   of the SDM Calibration Defect (airbag and seatbelt failures in concatenated and prolonged frontal

23   impacts) in the very vehicles alleged to be impacted by that Defect (GM trucks and SUVs).

24        128.    On information and belief, vehicle manufacturers such as GM monitor these public

25   databases for complaints about their vehicles, considering their statutory obligations to report

26   known safety defects in their vehicles to NHTSA and to consumers. Moreover, in many of these

27   reports, it is expressly clear that GM was directly informed of, and even investigated, the accident

28   in question. While GM has access to the full body of these complaints from 1999 and onward in

1    the public database, it bears mention that over three hundred of them were filed after the new GM

2    entities were created in 2009.[4849]

3        129.    One such complaint details an accident in a 2004 Chevrolet Trailblazer in August

4    2014. The driver states that they were traveling 50 MPH on a four-lane highway where another

5    vehicle, waiting to U-turn, "decided to turn right into me—oncoming traffic." The vehicles

6    crashed, which then "sent [the driver] into a head on collision with the guard rail." The driver

7    questions that "there were 2 incidents in that sequence of events that the airbags should have

8    deployed, but did not! This accident caused several injuries to myself and my passenger. We

9    definitely could have been killed and no airbags to help save our lives…" Photos of the damage to

10   the vehicle from that accident follow. (NHTSA Complaint #1100694).



11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   _____

28   [4849] Many publicly reported accidents occurred prior to 2009, which information would likewise
     have been available to Old GM. GM would have acquired Old GM's knowledge of these
     accidents, reflected in its books, records, and personnel, when it was formed in 2009.

000-136/9321  0.x2.52014 COPYRIGHT .2014   INSURANCE AUTO AUCTIONS

130.    Another report describes a September 2012 accident in a 2005 Chevrolet Trailblazer. It states that the driver, at 30 MPH, swerved to avoid a deer in the road, which caused the vehicle to lose control, exit the road, and ultimately "crash[] off a 9 foot embankment." From there, the vehicle continued to crash through a field, into a dirt levy, and finally into a drainage ditch. None of the airbags deployed. The driver "became unconscious after his head crashed into the steering wheel" and "suffered severe neck injuries." The dealer later inspected the vehicle but responded that the results were "inconclusive" and that the manufacturer "was notified but offered no assistance." Photos of the damage to the vehicle from that accident follow. (NHTSA Complaint #942950).[50]

---

[50] Accident documentation and photos are available at: https://static.nhtsa.gov/odi/cmpl/2012/EQ-10477257-8767.pdf (last visited July 27, 2023).

- 36 -





131.    In another example, the complaint describes a serious accident in March 2019 involving a 2005 Chevrolet Equinox. The vehicle crashed into the front of another vehicle at 35

1   MPH. The airbags did not deploy. The driver sustained injuries to the head and ankle and

2   required medical attention. Photos of the damage to the vehicle from that accident follow.



14   132.    (NHTSA Complaint #1550406).⁵⁰⁵¹



133.    Another account of a July 2007 accident in a model year 2001 Isuzu Rodeo

describes a crash at 65 MPH so severe that "the median on the highway sustained property

---

⁵⁰⁵¹ Photos and accident information are available at: https://static.nhtsa.gov/odi/cmpl/2019/EQ-11191960-7090.pdf (last visited ~~January 26~~July 27, 2023).

damage" and "the vehicle was destroyed," but the airbags did not deploy. This is how the vehicle looked after that accident:



134.    Additional examples of similarly suspicious frontal accidents—i.e., frontal accidents with multiple discrete impacts, or potentially prolonged onset frontal crashes involving "soft" impacts—in which the airbags and/or seatbelts failed include:

a.    NHTSA complaint #753287 dated Tuesday, October 16, 2001, reported an accident on Monday, October 8, 2001 involving a 1999 CHEVROLET SUBURBAN in Andover, KS. The complaint states: "60 MPH CROSS WIND BLEW THE SUBURBAN HEAD ON INTO THE CONCRETE MEDIAN. THE VEHICLE SPUN 360 DEGREES, WENT INTO THE DITCH, THE FRONT END HIT AGAIN THE VEHICLE WENT UP THE OTHER SIDE OF THE EMBANKMENT AND STOPPED IN A FIELD. ENTIRE FRONT END OF THE FRAME NOT REPAIRABLE . . . FRONT CROSSMEMBER BENT AND ENGINE MOVED UPWARDS AT A 10 DEGREE ANGLE. **AIR BAGS FAILED TO DEPLOY**. *AK"[5][52]

b.    NHTSA complaint #859858 dated Friday, April 7, 2000, reported an accident on Saturday, April 3, 1999 involving a 1999 CHEVROLET SILVERADO. The complaint states: "WHILE TRAVELING ON A WET ROAD AT HIGHWAY SPEED OF 60 MPH VEHICLE HYDROPLANED, SPUN INTO A DITCH, AND COLLIDED INTO A TREE

_____

[5][52] Emphasis is supplied here and in the paragraphs that follow.

1   WITH BOTH SIDES AND FRONT OF VEHICLE. **UPON IMPACT, AIR BAGS FAILED TO**

2   **DEPLOY**. MFR. NOTIFIED. *AK"

3        c.    NHTSA complaint #877320 dated Wednesday, January 3, 2001, reported

4   an accident on Friday, December 1, 2000 involving a 1999 CHEVROLET SUBURBAN in

5   Amarillo, TX. The complaint states: "CONSUMER WAS TRAVELING ABOUT 40MPH ON

6   HIGHWAY AND ANOTHER VEHICLE VEERED INTO HER LANE, HITTING HER HEAD-

7   ON, AND PUSHING VEHICLE INTO ANOTHER LANE. **VEHICLE HIT TELEPHONE**

8   **POLE, AND DUAL AIRBAGS DIDN'T DEPLOY**. CONSUMER WAS INJURED.

9   CHEVROLET HAS BEEN NOTIFIED. *AK"

10       d.    NHTSA complaint #10060150 dated Tuesday, March 2, 2004, reported an

11  accident on Tuesday, February 24, 2004 involving a 2001 CHEVROLET BLAZER in Austin,

12  TX. The complaint states: "**DRIVER SIDE AIR BAG FAILED TO DEPLOY IN A CRASH**

13  THROUGH: 1. A SIX FOOT TALL WOODEN FENCE AT ALMOST 30MPH, THEN 2. THE

14  EXTERIOR SIDE OF A 2-STORY HOME THAT CONTAINED THE KITCHEN SINK AND

15  PLUMBING FIXTURES, WHILE SMASHING UP AND OVER THE FIFTEEN-INCH

16  CONCRETE FOUNDATION, FRONT-END FIRST.*AK"

17       e.    NHTSA complaint #10082050 dated Thursday, July 15, 2004, reported an

18  accident on Wednesday, July 14, 2004 involving a 2003 CHEVROLET SUBURBAN in Fresno,

19  CA. The complaint states: "THE CONSUMER WAS INVOLVED IN AN ACCIDENT WHERE

20  IT WAS HIT FROM THE FRONT DRIVER SIDE, THE IMPACT CAUSED THE VEHICLE

21  TO HIT A TELEPHONE POLE HEAD ON. **THE AIR BAGS DID NOT DEPLOY**. *JB"

22       f.    NHTSA complaint #10103512 dated Friday, December 10, 2004, reported

23  an accident on Sunday, December 5, 2004 involving a 2001 CHEVROLET SILVERADO in

24  Rialto, CA. The complaint states: "CONSUMER'S VEHICLE WAS REAR ENDED WHILE

25  DRIVING 50 MPH. THE VEHICLE WAS FORCE[D] INTO A SPIN AND THEN, IT HIT A

26  CONCRETE ROAD DIVIDER. UPON IMPACT, **NEITHER FRONTAL AIR BAGS**

27  **DEPLOYED**. DRIVER SUSTAINED INJURIES, AND HAD TO BE TRANSPORTED TO A

28  LOCAL HOSPITAL. DEALER AND MANUFACTURER WERE NOTIFIED. THE

1   CONSUMER STATED THAT THE SEAT BELT DID NOT KEEP HER FROM HITTING HER

2   CHEST ON THE STEERING WHEEL."

3   g.      NHTSA complaint #10108404 dated Tuesday, February 1, 2005, reported

4   an accident on Tuesday, January 11, 2005 involving a 2000 CHEVROLET SILVERADO in

5   Toney, AL. The complaint states: "A CAR PULLED OUT IN FRONT OF ME WHICH STILL

6   HIT THE DRIVER'S SIDE OF MY VEHICLE (2000 CHEVY SILVERADO). **THEN MY**

7   **TRUCK HAD A FULL FRONTAL IMPACT AT GREATER THAN 30 MPH INTO A**

8   **DIRT WALL IN WHICH NEITHER THE DRIVER'S NOR PASSENGER'S AIRBAGS**

9   **DEPLOYED (THE TRUCK IS TOTALLED).** I HIT THE STEERING WHEEL AND GOT A

10  CONCUSSION WITH BLOOD AROUND THE BRAIN, A BROKE CHEEK BONE, AND

11  FRACTURED HIP. MY WIFE WAS 33 WEEKS PREGNANT AT THE TIME AND HER

12  WATER BROKE AND SHE GOT A COMPOUND FRACTURE IN THE LOWER

13  LEG/ANKLE. AS A RESULT OF THE WATER BREAKING MY SON WAS BORN 3 DAYS

14  LATER 7 WEEKS PREMATURE. AS FOR WHAT WAS DONE TO CORRECT THE

15  PROBLEM I'M HOPING IT WILL AT LEAST BE INVESTIGATED TO MAKE SURE THIS

16  IS NOT A SYSTEMIC PROBLEM (I.E., SOFTWARE SCREWUP SOMETHING NOT

17  HOOKED UP RIGHT IN THE AIRBAG SYSTEM ETC)."

18  h.      NHTSA complaint #10115806 dated Thursday, March 24, 2005, reported

19  an accident on Thursday, March 24, 2005 involving a 2002 CHEVROLET SILVERADO in

20  Claremore, OK. The complaint states: "A PIECE OF FURNITURE WAS LOCATED IN THE

21  MIDDLE OF THE HIGHWAY WHILE DRIVING, CAUSING THE DRIVER TO HIT THE

22  FURNITURE. DRIVER LOST CONTROL OF A VEHICLE, AND IT CRASHED INTO A

23  CONCRETE WALL. DRIVER'S SIDE SEAT BELT FAILED, AND **THE AIRBAGS DID**

24  **NOT DEPLOY**."

25  i.      NHTSA complaint #10158090 dated Tuesday, May 23, 2006, reported an

26  accident on Sunday, February 26, 2006 involving a 2004 CHEVROLET TRAILBLAZER in

27  Fayetteville, NC. The complaint states: "DT*: THE CONTACT STATED WHILE DRIVING 50

28  MPH THE VEHICLE WAS INVOLVED IN A HEAD ON COLLISION WITH ANOTHER

1   VEHICLE. THE VEHICLE CONTINUED MOVING AND STOPPED BY COLLIDING WITH

2   A STORE SIGN. **THE AIR BAGS DID NOT DEPLOY** AND SEAT BELTS WERE WORN . .

3   . THE INSURANCE COMPANY DETERMINED THE VEHICLE WAS TOTALED DUE TO

4   THE ACCIDENT. THE DEALER DOES NOT HAVE THE MEANS TO TEST FOR AIR BAG

5   NON-DEPLOYMENT. UPDATED 1/24/2007 - *NM"

6              j.       NHTSA complaint #10161658 dated Thursday, July 6, 2006, reported an

7   accident on Saturday, June 3, 2006 involving a 1999 CHEVROLET BLAZER in Ludlow, MA.

8   The complaint states in part: "CHEVY DRIVER HIT A CAR IN HER LANE FIRST, THEN

9   RICOCHETED HEAD ON INTO A TREE. **NEITHER TIME DID AIRBAGS DEPLOY**.

10  *TT"

11             k.       NHTSA complaint #10163811 dated Friday, July 28, 2006, reported an

12  accident on Thursday, July 20, 2006 involving a 2000 ISUZU RODEO in Nederland, TX. The

13  complaint states: "A GIRL RAN A RED LIGHT AND I HIT HER IN THE PASSENGER SIDE

14  OF HER CAR HEAD ON WITH MY 2000 ISUZU RODEO. IT WAS A FULL FRONTAL

15  COLLISION FOR ME AND MY CHILDREN. LUCKILY, WE ARE ALWAYS BUCKLED UP

16  BECAUSE **NONE OF MY AIRBAGS DEPLOYED AT ALL**. THE OTHER CAR WAS

17  GOING ABOUT 60 MPH AND HER AIRBAG DEPLOYED WHEN I HIT HER BUT MINE

18  DID NOT. LUCKILY, MY CHILDREN WERE NOT HURT BADLY BUT

19  UNFORTUNATELY, I SUSTAINED NECK, BACK AND KNEE INJURIES. I WAS AND

20  STILL AM VERY UPSET THAT MY AIRBAGS FAILED. EVEN THE OWNER OF THE

21  BODY SHOP I USE WAS IN SHOCK THAT THEY DID NOT DEPLOY AS THE IMPACT

22  WAS ENOUGH TO SPLIT THE FRAME OF MY RODEO AND TOTAL IT OUT . . . THANK

23  YOU FOR YOUR TIME, I HOPE I CAN HELP ANOTHER FAMILY FROM GETTING

24  INJURED."

25             l.       NHTSA complaint #10217793 dated Tuesday, February 12, 2008, reported

26  an accident on Thursday, February 7, 2008 involving a 2006 CHEVROLET TRAILBLAZER in

27  Lakewood, OH. The complaint states: "A 2006 CHEVY TRAILBLAZER TRAVELING OVER

28  THE SPEED LIMIT ON MY STREET CRASHED INTO A TREE, A PARKED CAR, AND

1  THEN CONTINUED TO ROLL OVER ACROSS MY FRONT LAWN, LANDING

2  SIDEWAYS AFTER FLIPPING SEVERAL TIMES. THE OCCUPANTS WERE SEVERELY

3  INJURED. **NO AIRBAGS DEPLOYED DURING THE CRASH**. THE DRIVER OF THE

4  VEHICLE IS IN ICU NEEDING FACIAL RECONSTRUCTIVE SURGERY. *TR"

5      m.    NHTSA complaint #10221319 dated Saturday, March 15, 2008, reported

6  an accident on Thursday, February 21, 2008 involving a 2005 CHEVROLET TRAILBLAZER in

7  Clay, NY. The complaint states: "I WAS DRIVING ON A 2 LANE ROAD GOING 45MPH. A

8  CAR WAS FOLLOWING CLOSE BEHIND ME SO I WENT TO GET INTO RIGHT LANE

9  AND MY TRUCK DID 5 360 AND HIT 3 TREES HEAD ON AND **AIR BAG NEVER**

10  **DEPLOYED**. *TR"

11      n.    NHTSA complaint #10263896 dated Wednesday, April 1, 2009, reported

12  an accident on Thursday, March 26, 2009 involving a 2002 CHEVROLET TRAILBLAZER in

13  Elizabeth, NJ. The complaint states: "I WAS IN A CAR ACCIDENT, WHERE I WAS

14  TRAVELING AT ABOUT 35 MPH. AN AGGRESSIVE DRIVER SPEED AROUND ME AND

15  CUT ME OFF AND THAN STOMPED ON THIS BRAKES IN FRONT OF ME. DUE TO

16  THAT I SWERVED TO MISS HIM CLIPPING HIS RIGHT BACK LIGHT AD BUMPER

17  WITH MY LEFT HEADLIGHT AND BUMPER. AS I WAS SWERVING I HIT A TREE JUST

18  ABOUT DEAD ON WITH MY CAR . . . I HIT THE TREE AT A SPEED OF ABOUT 28-30

19  MPH. AFTER INITIAL IMPACT I WAS RUSHED TO THE HOSPITAL DUE TO

20  UNCONSCIOUS AND FACIAL CONTUSIONS. DURING THE FIRST MOMENTS AFTER

21  THE ACCIDENT, ONE OF THE FIRST THINGS OFFICERS, EMTS AND WITNESSES SAID

22  WAS "**I CAN'T BELIEVE THE AIRBAGS DIDN'T GO OFF**." IN THE RECENT DAYS

23  AFTER THE ACCIDENT I HAVE HAD SEVERAL MECHANICS AND SUCH APPRAISE

24  THE CAR, THE ONE COMMON THEME THEY ALL SHARE IS THAT THEY SUSPECT

25  THERE MIGHT NOT BE AN AIRBAG WHERE IT BELONGS. OR THE LACK THERE OF.

26  *TR"

27      o.    NHTSA complaint #10463248 dated Wednesday, June 27, 2012, reported

28  an accident on Friday, July 15, 2011 involving a 2005 GMC in Richmond, VA. The complaint

1   states: "THE CONTACT STATED WHILE DRIVING 55 MPH, HE CRASHED INTO A TREE.

2   **THE AIR BAGS FAILED TO DEPLOY** . . . A POLICE REPORT WAS FILED. THE

3   MANUFACTURER WAS MADE AWARE OF THE FAILURE; HOWEVER, THEY

4   PROVIDED NO ASSISTANCE . . . THE CONSUMER'S VEHICLE WAS DAMAGED WHEN

5   HE TRIED TO AVOID HITTING THE VEHICLE BY SWERVING SIDEWAYS AND

6   SLIDING INTO THE GRASS. HE TRIED STOPPING THE VEHICLE WHILE IT WAS STILL

7   ON THE PAVEMENT BUT HE INEVITABLY RAN INTO THE DITCH AND FLEW

8   AIRBORNE INTO A TREE, AND THE TRUCK OVERTURNED."

9           p.        NHTSA complaint #10524151 dated Wednesday, July 10, 2013, reported

10   an accident on Thursday, May 30, 2013 involving a 2006 CHEVROLET TRAILBLAZER in

11   Mansfield, OH. The complaint states: "THIS COMPLAINT IS BEING FILED ON BEHALF OF

12   THE VEHICLE OWNER AND DRIVER. THIS CHEVY TRAILBLAZER WAS INVOLVED

13   IN A TWO VEHICLE, DOUBLE FATAL CRASH. THE FRONT OF THE TRAILBLAZER

14   STRUCK THE DRIVER'S SIDE DOOR OF A CAVALIER THAT FAILED TO YIELD FROM

15   A STOP SIGN. THE TRAILBLAZER STAYED CONNECTED WITH THE CAVALIER,

16   FORCING IT OFF THE LEFT SIDE OF THE ROADWAY AND INTO A LARGE TREE.

17   BOTH OCCUPANTS IN THE CAVALIER WERE FATALLY INJURED. **THE FRONT**

18   **AIRBAGS DID NOT DEPLOY ON THE TRAILBLAZER** AND NO EVENT WAS

19   RECORDED ON THE AIRBAG CONTROL MODULE. *TR"

20           q.        NHTSA complaint #10537593 dated Tuesday, August 27, 2013, reported

21   an accident on Tuesday, August 13, 2013 involving a 2003 CHEVROLET BLAZER in Harrison

22   Township, MI. The complaint states: "I WAS TRAVELING SOUTHBOUND WHEN I

23   EXPERIENCED A SEIZURE AND LOST CONTROL OF MY VEHICLE. I PROCEEDED TO

24   VEER TO THE LEFT WHERE I CLIPPED SEVERAL CARS THAT WERE HEADED

25   NORTHBOUND . . . I THEN PROCEEDED OVER A TREE LAWN AND INTO A PARKING

26   LOT. I HIT A DODGE RAM PICKUP WITH THE RIGHT FRONT CORNER OF MY

27   VEHICLE AND PUSHED THAT VEHICLE INTO ANOTHER PARKED CAR THAT WAS

28   NEXT TO IT. BOTH VEHICLES ENDED UP SIDEWAYS AND MY VEHICLE ENDED UP

1   SPUN AROUND 180 DEGREES . . . THE JAWS OF LIFE WERE USED TO EXTRACT ME

2   FROM MY VEHICLE. I WAS TAKEN TO A LOCAL HOSPITAL WHERE IT WAS

3   DETERMINED THAT I SUFFERED BURST FRACTURES OF L1, L2, AND L3. I ALSO

4   SUFFERED AN EVULSION FRACTURE OF MY LEFT ANKLE. THE POLICE REPORT

5   STATES THAT I WAS TRAVELLING AT A HIGH RATE OF SPEED AND THAT THE

6   VEHICLES WHICH WERE NORTHBOUND WERE JUST CLIPPED. **THE AIRBAGS ARE**

7   **BOTH STILL WITHIN THEIR CASES AS NEITHER DEPLOYED** . . . THE INSURANCE

8   INVESTIGATOR EVEN EXPRESSED TO MY WIFE THAT HE WAS SURPRISED THAT

9   THE AIR BAG DID NOT DEPLOY."

10          r.        NHTSA complaint #10550276 dated Wednesday, October 30, 2013,

11   reported an accident on Monday, October 28, 2013 involving a 2006 CHEVROLET

12   TRAILBLAZER in Neihart, MT. The complaint states: "TL* THE CONTACT OWNS A 2006

13   CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING

14   APPROXIMATELY 35 MPH, SHE LOST CONTROL OF THE VEHICLE WHILE DRIVING

15   IN SNOWY WEATHER. THE VEHICLE NOSE DIVED INTO AN EMBANKMENT AND

16   THEN CRASHED INTO A BOULDER. **THE AIR BAGS FAILED TO DEPLOY**. THE

17   CONTACT WAS TRANSPORTED TO THE HOSPITAL VIA AMBULANCE FOR

18   TREATMENT OF A CONCUSSION AND BRUISING. THE FRONT PASSENGER WAS

19   ALSO INJURED AND SUSTAINED BRUISING. THE VEHICLE WAS DESTROYED. THE

20   MANUFACTURER WAS MADE AWARE OF THE FAILURE."

21          s.        NHTSA complaint #10574295 dated Sunday, March 23, 2014, reported an

22   accident on Friday, February 21, 2014 involving a 2010 GMC TERRAIN in Saint Joe, IN. The

23   complaint states: "INVOLVED IN A 21 CAR PILE UP IN THE UPPER PENINSULA DURING

24   A COMPLETE WHITE OUT. WE WERE ONLY TRAVELING APPROXIMATELY 25

25   MILES PER HOUR BUT, WE DID HAVE SERIOUS IMPACT IN THE FRONT, AFTER

26   HITTING A TRAILER AND ALSO SERIOUS IMPACT FROM BEHIND WHEN HIT BY A

27   TRUCK AND TRAILER. **NO AIRBAGS DEPLOYED**. THE TRUCK TRAVELING AHEAD

28   OF US, THAT WE HIT, THE AIRBAGS DID DEPLOY. MY FATHER AND BROTHER,

1 | WHO WERE ALSO BOTH DRIVING CHEVY TRUCKS, AND ALSO HAD SERIOUS

2 | FRONT END DAMAGE DURING THE SAME ACCIDENT, THEIR AIRBAGS DID NOT

3 | DEPLOY EITHER. *TR"

4 |        t.      NHTSA complaint #10576031 dated Monday, March 31, 2014, reported an

5 | accident on Sunday, March 23, 2014 involving a 2012 CADILLAC SRX in Kaplan, LA. The

6 | complaint states: "I FELL ASLEEP WHILE DRIVING, JUMPED A LEVEE, RAN THROUGH

7 | A FENCE, AND WRECKED IN A GRASSY WATERY AREA. MY ENGINE WAS

8 | SMASHED, THE MOTOR MOUNT BROKE, AND MY TIRES ARE PUSHED BACK. MY

9 | **AIR BAGS DID NOT DEPLOY**. MY FACE HIT THE STEERING WHEEL AND MY NOSE

10 | IS BROKEN. I WOULD LIKE TO FIND OUT IF THERE IS ANY RECALLS ON THIS CAR.

11 | *TR"

12 |        u.      NHTSA complaint #10583703 dated Saturday, April 19, 2014, reported an

13 | accident on Thursday, March 13, 2014 involving a 2012 GMC TERRAIN in Moneta, VA. The

14 | complaint states: "I INADVERTENTLY VEERED OFF SIDE ROADWAY, (VA HIGHWAY

15 | 220) COLLIDING WITH A TREE/ROADSIDE SHRUBS, ETC (WAS KNOCKED

16 | UNCONSCIOUS AS FOREHEAD HIT STEERING WHEEL ON INITIAL IMPACT).

17 | **AIRBAGS DID NOT DEPLOY** ALLOWING ME TO SUSTAIN A HEAD INJURY THAT

18 | KNOCKED ME UNCONSCIOUS... FOREHEAD WAS GASHED WITH SIGNIFICANT

19 | BLEEDING. I WAS TRANSPORTED BY AMBULANCE IN UNCONSCIOUS STATE.

20 | DAMAGE TO VEHICLE IS IN EXCESS OF $8,000 SO FAR AS VEHICLE STILL IN

21 | REPAIR SHOP WITH MASSIVE FRONT END DAMAGE THAT AFFECTS STEERING

22 | LINKAGE, ETC. THE IMPACT OF VEHICLE AGAINST FOLIAGE, TREES SHRUBS,

23 | SHOULD HAVE FORCED AIR BAGS TO DEPLOY AND I BELIEVE THAT I WOULD NOT

24 | HAVE SUSTAINED A HEAD INJURY THAT RENDERED ME UNCONSCIOUS WITH

25 | MILD CONCUSSION AND COULD NOT CONTROL VEHICLE LEAVING ROADWAY.

26 | *TR"

27 |        v.      NHTSA complaint #10592423 dated Monday, May 19, 2014, reported an

28 | accident on Thursday, May 8, 2014 involving a 2003 CHEVROLET SILVERADO in

1   Burtonsville, MD. The complaint states: "TRUCK COLIDED WITH GUARD RAIL.

2   BOUNCED OFF, HIT VEHICLE 1, THEN INTO VEHICLE 2 THEN STOPPED AFTER

3   HITTING VEHICLE 3 A SEMI TRUCK. ALL DAMAGE WAS DONE TO FRONT OF THE

4   CHEVY SILVERADO. **AT NO TIME DID THE AIRBAGS DEPLOY**."

5         w.     NHTSA complaint #10622016 dated Wednesday, August 13, 2014,

6   reported an accident on Saturday, August 9, 2014 involving a 2012 CHEVROLET TAHOE in

7   The Colony, TX. The complaint states: "WHILE TURNING LEFT (TAHOE) WITH A

8   PROTECTED GREEN ARROW AT AN X-SHAPED INTERSECTION, VEHICLE (KIA

9   SEDAN) AT FAULT FAILED TO YIELD AND ENTERED THE INTERSECTION AT

10   SPEEDS UPWARDS OF 40 MPH FROM THE LEFT OF THE TAHOE. FRONT-IMPACT

11   COLLISION OCCURRED . . . TAHOE STRUCK PASSENGER SIDE OF KIA SEDAN.

12   TRAJECTORY OF IMPACT CAUSED DIRECTIONAL CHANGES IN UPWARDS OF 90*

13   FOR BOTH VEHICLES; THE FORCE OF THE PRIMARY ACCIDENT DESCRIBED ABOVE

14   ALSO CAUSED MENTIONED VEHICLES TO COLLIDE WITH LEFT REAR OF ANOTHER

15   VEHICLE (HONDA SEDAN) . . . DUE TO THE FORCE OF IMPACT, FRONT & SIDE

16   AIRBAGS DEPLOYED ON BOTH THE KIA SEDAN AND THE HONDA SEDAN, BUT

17   **FAILED TO DEPLOY ON THE TAHOE** . . . FORCE WAS SUCH THAT AFTER THE

18   COLLISION, TAHOE TRANSMISSION WAS IN DRIVE, BUT REMAINED AT A

19   COMPLETE STOP. DAMAGE SUSTAINED ON THE TAHOE INCLUDE FRONT-END

20   BODY DAMAGE, ENGINE DAMAGE (VEHICLE REQUIRED TOWING AND WAS

21   INOPERABLE), AND FRAME DAMAGE, AT A MINIMUM . . . MULTIPLE FIRST-

22   RESPONDERS COMMENTED ON THE ODDITY THAT, GIVEN THE DAMAGE

23   SUSTAINED BY THE TAHOE AND THE VELOCITY AT IMPACT, THE AIRBAGS

24   DEPLOYED ON ALL VEHICLES BUT THE TAHOE. *TR"

25         x.     NHTSA complaint #10641399 dated Saturday, October 4, 2014, reported

26   an accident on Tuesday, June 7, 2011 involving a 2002 CHEVROLET TAHOE in Cheney, WA.

27   The complaint states: "THE CONTACT STATED THAT WHILE THE DRIVER WAS

28   DRIVING AT 45 MPH AND ATTEMPTED TO AVOID A CRASH WITH ANOTHER

1    VEHICLE. AS A RESULT, THE DRIVER CRASHED INTO A GUARDRAIL AND **THE AIR**

2    **BAGS FAILED TO DEPLOY.** A POLICE REPORT WAS FILED. THE CONTACT WAS

3    TAKEN TO A HOSPITAL AND SUSTAINED INJURIES TO THE RIBS, THE COLLAR

4    BONES, A BRAIN TRAUMA AND A COLLAPSED LUNG. THE DRIVER SUFFERED

5    FROM FATAL INJURIES."

6            y.    NHTSA complaint #10767586 dated Tuesday, September 22, 2015,

7    reported an accident on Saturday, August 1, 2015 involving a 2004 CHEVROLET

8    TRAILBLAZER in Tallahassee, FL. The complaint states: "MY MOTHER WAS INVOLVED

9    IN A 1 CAR ACCIDENT ON BAUM RD LOCATED IN TALLAHASSEE, FL. SHE WAS THE

10   ONLY PASSENGER DETERMINED TO BE IN THE VEHICLE AT THE TIME OF THE

11   ACCIDENT. ACCORDING TO THE CRASH REPORT, D1 (DRIVER ONE) WAS

12   TRAVELING WESTBOUND ON BAUM RD GOING THE NORMAL POSTED SPEED OF

13   55MPH, WHEN SHE VEERED TOWARDS THE CENTER OF THE RD AND SUDDENLY

14   TURNED RIGHT VEERING OF THE RIGHT SHOULDER OF THE RD AND STRIKING

15   SEVERAL TREES ON THE DRIVERS SIDE AND FRONT END . . . WHEN I WENT TO

16   RETRIEVE MY MOTHERS THINGS FROM HER TRAILBLAZER, I NOTICED THAT **NO**

17   **AIR BAGS HAD DEPLOYED.** AND AS FAST AS MY MOM WAS GOING AND THE

18   TYPE OF IMPACT & DAMAGE HER SUV SUSTAINED, I WOULD THINK AND HOPE

19   THE AIRBAGS WOULD DEPLOY IN THIS TYPE OF ACCIDENT, THUS PREVENTING

20   SERIOUS INJURY OR DEATH. MY MOM WAS NOT SO LUCKY, AND MYSELF AND MY

21   FAMILY HAVE ENDURED GREAT PAIN FROM LOOSING HER SO SUDDENLY."

22           z.    NHTSA complaint #10907149 dated Friday, September 16, 2016, reported

23   an accident on Thursday, September 1, 2016 involving a 2006 CADILLAC SRX in Happy

24   Valley, OR. The complaint states: "THE VEHICLE HIT A CURB AND DROVE INTO A

25   BUILDING. **THE AIR BAGS FAILED TO DEPLOY**. THE CONTACT SUSTAINED

26   INJURIES THAT REQUIRED MEDICAL ATTENTION . . . THE MANUFACTURER WAS

27   NOTIFIED OF THE FAILURE."

28

1    135.   GM knew or had reason to know about these complaints, which are publicly

2    available on NHTSA's website. Indeed, many complaints explicitly state that GM was directly

3    informed of and/or investigated these suspicious accidents. For example:

4         a.   A complaint about an August 2018 accident in a 2008 GMC Acadia details

5    that the airbags and seatbelt pretensioners did not deploy after the complainant's wife fell asleep

6    at the wheel and struck a utility pole and then a large dirt embankment—which caused her to "hit

7    the steering column so hard . . . it broke the column and broke her sternum," and caused the

8    granddaughter in the passenger seat to break her back in two places. It continues that "GENERAL

9    MOTORS . . . SENT A MAN TO DOWNLOAD THE COMPUTER INFORMATION THEY

10   SENT ME A COPY OF THE INFO AND LATER CONTACTED ME SAYING THE INFO

11   SHOWED EVERYTHING WAS WORKING PROPERLY." NHTSA complaint #11066850.

12        b.   After a July 2014 head on collision at 50 MPH where the airbags did not

13   deploy in a 2007 Silverado, totaling the vehicle, another driver was "TOLD BY GM THAT

14   CRASH DID NOT MEET CRITERIA FOR DEPLOYMENT." The driver expressed skepticism

15   about this response, and in the complaint, stated "A HEAD ON COLLISION AT 50 MPH THAT

16   TOTALED 2500 SERIES CHEVY TRUCK. HARD FOR ME TO BELIEVE . . . DO I NEED

17   TO [BE] CONCERNED?" NHTSA complaint #10608220.

18        c.   Another driver reported on a May 2014 accident in a 2012 GMC Terrain in

19   Moneta, VA. The driver struck "something" head on after veering off the highway and proceeded

20   through trees and brush. They were knocked unconscious after hitting their head on the steering

21   wheel upon the first impact, as the airbags had failed to deploy. They were transported to a

22   hospital by ambulance and spent two days in inpatient care. The driver later "CONTACTED

23   GMC CORPORATE . . . TO ADVISE MY CONCERNS FOR SAFETY . . . RECEIVED A

24   FOLLOW UP TELEPHONE CALL FROM GMC REPRESENTATIVE . . . HE EXPRESSED

25   NO INTEREST IN MY COMPLAINT . . . REFUSED TO COMMENT ON MY STATEMENT

26   THAT AIR BAG FAILED TO DEPLOY RESULTING IN EXTENSIVE DAMAGE TO FRONT

27   OF VEHICLE AND SUSTAINING A HEAD INJURY AS NO BAG DEPLOYED . . . I WAS

28

1  ADVISED THAT GMC HAD NO FURTHER INTEREST IN THIS MATTER AND WOULD

2  NOT EVALUATE MY SAFETY CONCERNS." NHTSA complaint #10588334.

3          d.     After a July 2012 accident involving a 2012 GMC Terrain in San

4  Clemente, CA, in which the Terrain was hit multiple times in an intersection in the driver's front

5  end, but no airbags deployed, resulting in whiplash and contusions to the driver, a GM

6  representative responded to a complaint lodged by the driver's parents and stated that there was

7  "NO NEED FOR DEPLOYMENT" because it was a "LOW THRESHOLD EVENT." NHTSA

8  complaint #10466384.

9          e.     After hitting a patch of black ice at 58 MPH in a Chevrolet Silverado in

10  January 2008, another complainant described that they lost control of the vehicle, ran off the road,

11  crashed into a telephone pole and ultimately into a frozen embankment. The airbags did not

12  deploy, causing the driver to hit the steering wheel. As the complainant relates, they "FILED A

13  COMPLAINT WITH THE MANUFACTURER, BUT THE COMPLAINT WAS DENIED. THE

14  MANUFACTURER WAS UNABLE TO DIAGNOSE THE VEHICLE; HOWEVER, AFTER

15  INSPECTION OF THE VEHICLE, THE MANUFACTURER CONFIRMED THAT THE AIR

16  BAGS WERE ENABLED AT THE TIME OF IMPACT. THEY DID NOT GIVE AN

17  EXPLANATION FOR THE DEPLOYMENT FAILURE." NHTSA complaint #10238395.

18          f.     In a report about a March 2006 accident involving a 2005 Cadillac

19  Escalade in Louisville, KY, the complainant describes that after none of the airbags deployed in a

20  front end collision in their 4-week old vehicle, they "CALLED CADILLAC CUSTOMER

21  SERVICE AND WAS GIVEN AN AIRBAG HISTORY LESSON VIA TELEPHONE FROM

22  SOMEONE THAT HAD NEVER SEEN MY VEHICLE OR INSPECTED IT FOR DAMAGE

23  AFTER THE ACCIDENT. AT THE END OF OUR CONVERSATION I WAS TOLD ALL

24  WAS OK, NONE OF MY AIRBAGS SHOULD HAVE DEPLOYED AND NOT TO WORRY

25  ABOUT IT. THE ENTIRE FRONT END OF MY VEHICLE WAS KNOCKED OFF, THE

26  FRAME HAS MULTIPLE CRACKS AND IS BENT AS A RESULT OF THE COLLISION

27  AND THE COLLISION CENTER IS 90% CERTAIN THE VEHICLE IS NOT REPAIRABLE.

28  *JB" NHTSA complaint #10152376.

1         g.     After an August 2004 accident involving a 1999 Chevrolet Astro in

2 Norfolk, VA in which the vehicle jumped a curb, struck a fire hydrant, and then struck a tree

3 without the airbags deploying, the driver was taken by ambulance to the hospital for head and

4 neck injuries. After the accident, the "CONSUMER CONTACTED THE MANUFACTURER

5 AND A REPRESENTATIVE CAME DOWN TO MEET WITH THE DEALER AND

6 CONSUMER. THE REPRESENTATIVE INFORMED CONSUMER THAT THE VEHICLE

7 WAS FUNCTIONING AS DESIGNED." NHTSA complaint # 10087718.

8         h.     Another driver contacted GM after the airbags did not deploy in a February

9 2004 front end collision at 25-30 MPH in their 2000 Isuzu Rodeo in Westwood, NJ. "THE

10 CONSUMER CONTACTED THE MANUFACTURER ABOUT THE AIR BAGS BUT THE

11 REPRESENTATIVE DID NOT SEEM TO BE TOO CONCERNED ABOUT THE

12 SITUATION." NHTSA complaint #10087550.

13         i.     Another driver described a head on collision at 39 MPH in their 2002

14 Chevrolet Tahoe in which the airbags did not deploy and the seatbelts did not tighten. The driver

15 hit their head on the steering wheel, knocking them unconscious. A readout from the vehicle's

16 computer showed the seatbelts were in working order, and GM responded by sending a

17 representative to inspect the vehicle in person. The complainant was awaiting a response from

18 GM at the time of the report. NHTSA complaint #10353935.

19        136.     More than eight hundred similar complaints—i.e., frontal crashes in the Class

20 Vehicles with airbag and seatbelt failures following multiple impacts, or, potentially long-soft

21 frontal impacts—are attached hereto as Exhibit A.⁵²⁵³ These accidents are relevant, and

22 suspicious, because they include hallmarks of the SDM Calibration Defect (airbag and seatbelt

23

24

---

25   ⁵²⁵³ The accidents in the preceding paragraph and Exhibit A include data for Class Vehicles in
model years 1999-2014.  In the interest of efficiency, Plaintiffs have not supplemented the
26 accidents included in Exhibit A from the previously filed ~~version~~ versions with ~~the first amended~~
~~complaint~~their prior pleadings, but note that significant numbers of similar consumer reports of
27 multi-impact and front-end impact accidents with airbag and seatbelt failures have continued to
accrue in the NHTSA database in model years 1999-2014, as well as later model years, in the
28 time since Exhibit A was originally prepared in 2021. Plaintiffs are prepared to submit
supplemental examples of such incidents at the Court's request.

1    failures), under the very crash conditions where it arises, and in the specific population of

2    vehicles Plaintiffs allege to be impacted.

3         137.    In addition to these consumer complaints, a separate, public dataset from NHTSA,

4    the Fatality Analysis Reporting System ("FARS") provides a nationwide census of crashes that

5    resulted in fatal injuries. While the complaints outlined above are reported to NHTSA by

6    consumers and can include any type of complaint or incident, FARS data is reported by state

7    agencies responsible for monitoring all qualifying fatal crashes in their states. To be included in

8    FARS data, a crash must involve a motor vehicle traveling on a public road and result in the death

9    of a person in one or more of the vehicles involved in the crash within 30 days of the crash. The

10   dataset collects information on over 100 different data elements that characterize the crash, the

11   vehicles, and the people involved—including whether or not the airbags deployed.

12        138.    NHTSA's FARS dataset also reveals a recurring pattern of suspicious

13   nondeployments during frontal crashes (i.e., the crash dynamics that can implicate the SDM

14   Calibration Defect) and reinforces the extremely high stakes of such incidents. From 1999 to

15   present, FARS data reflects at least 1,946 frontal crashes where the airbags did not deploy in a

16   Class Vehicle—1,167 of which occurred in 2009 or later, after New GM was formed. This same

17   data reflects that at least 1,298 individual occupants (drivers or passengers) in a Class Vehicle

18   were injured or killed in these crashes.

19        **D.    Despite its knowledge, GM misrepresented and concealed important
20              information about the SDM Calibration Defect and Class Vehicle safety.**

21        139.    For many consumers, including Plaintiffs, safety is one of the most important

22   factors when buying or leasing a vehicle. GM capitalized on this fact in advertising and other

23   consumer-facing representations about the Class Vehicles and touted the safety of the Class

24   Vehicles in national marketing campaigns.

25        140.    In nationwide advertisement campaigns and promotional materials, GM

26   maintained that the Class Vehicles were safe and reliable, and it did not correct representations

27   about the Class Vehicles' safety and reliability made by Old GM in the past. Instead, GM has

28   repeatedly touted the Class Vehicles' passenger safety systems and assured consumers they could

1   be relied upon to activate the airbags and seatbelts during a crash. These representations are false

2   and misleading because of what they fail to say; GM uniformly failed to disclose that the SDM

3   Calibration Defect could—at the worst possible moment—prevent the airbags and seatbelts from

4   activating.

5       141.    Plaintiffs and Class members, directly or indirectly, were exposed to these

6   advertisements and promotional materials prior to purchasing or leasing their Class Vehicles. The

7   misleading statements about Class Vehicles' safety in GM's advertisements and promotional

8   materials, as well as GM's omission of the truth about the SDM Calibration Defect, influenced

9   Plaintiffs and Class members' decisions to purchase or lease Class Vehicles. If GM had instead

10  chosen to disclose the truth about the SDM Calibration Defect, Plaintiffs and Class members

11  would have seen those disclosures. Indeed, Plaintiffs would have had multiple opportunities to

12  receive information about the SDM Calibration Defect if GM chose to disclose it, including at

13  dealerships, on GM's website, in radio or television advertisements, brochures, press releases or

14  in other promotional materials, as well as in news media reports that would likely follow from the

15  revelation of a serious safety defect in millions of GM vehicles.

16          1.    **Labels and window stickers on the Class Vehicles stated that they were
                  equipped with working airbags and seatbelts and failed to disclose the**
17                **SDM Calibration Defect.**

18      142.    To sell vehicles in the United States, GM was required to "certify to the distributor

19  or dealer at delivery that the vehicle or equipment complies with applicable motor vehicle safety

20  standards prescribed" by NHTSA under Chapter 301 of Title 49 of the U.S. Code. GM "may not

21  issue the certificate if, in exercising reasonable care," they have "reason to know the certificate is

22  false or misleading in a material respect." 49 U.S.C. § 30115; *see also* 49 U.S.C. § 30112.

23      143.    Because "[c]ertification of a vehicle must be shown by a label permanently fixed

24  to the vehicle," all Class Vehicles have a permanent label certifying compliance with the safety

25  regulations prescribed by NHTSA. Since all the Class Vehicles are passenger vehicles, the

26  permanent label must state: "This vehicle conforms to all applicable Federal motor vehicle safety,

27  bumper, and theft prevention standards in effect on the date of manufacture shown above." 49

28  C.F.R. § 567.4(g)(5).

144.    These labels were false and misleading because they failed to warn consumers about the risk that the SDM would fail during a frontal crash, and instead indicated that the passenger safety system would function properly. *See* 49 C.F.R. § 571.208 (S4.1.5.4, S4.1.5.5) (Federal motor vehicle safety standards requiring Occupant Restraint Systems with airbags and seatbelts).

145.    Vehicle manufacturers have a duty to disclose known safety defects to the public and to NHTSA. When a vehicle manufacturer learns of a safety defect, federal law requires it to disclose the defect to NHTSA and to the owners, purchasers, and dealers of the vehicle. 49 U.S.C. § 30118(c). Indeed, GM Parent acknowledges these obligations in its public SEC filings. In its Form 10-K for fiscal year 2019, GM Parent states: "If we or NHTSA determine that either a vehicle or vehicle equipment does not comply with a safety standard or if a vehicle defect creates an unreasonable safety risk, the manufacturer is required to notify owners and provide a remedy."

146.    The interiors of the Class Vehicles also contain prominent labels that alert the driver and passengers to the vehicle's airbag system. For example, steering wheels and passenger dashboards typically have labels identifying the airbag and safety restraint system (or "SRS").

147.    GM was also specifically required by law to include in their vehicles warning labels that alerted consumers of the need to perform airbag maintenance. For example, S4.5.1 of 49 C.F.R. § 571.208 states:

> Air bag maintenance or replacement information. If the vehicle manufacturer recommends periodic maintenance or replacement of an inflatable restraint system, as that term is defined in S4.1.5.1(b) of this standard, installed in a vehicle, that vehicle shall be labeled with the recommended schedule for maintenance or replacement. The schedule shall be specified by month and year, or in terms of vehicle mileage, or by intervals measured from the date appearing on the vehicle certification label provided pursuant to 49 CFR Part 567. The label shall be permanently affixed to the vehicle within the passenger compartment and lettered in English in block capital and numerals not less than three thirty-seconds of an inch high. This label may be combined with the label required by S4.5.1(b) of this standard to appear on the sun visor.

148.    Plaintiffs are unaware of any label in any Class Vehicle that alerted consumers to the SDM Calibration Defect or the need to perform maintenance to protect the SDM from preventing airbag deployment or seatbelt tightening when they are needed.

149.    GM also distributed the Class Vehicles with so-called "Monroney" labels (also known as "window stickers") that described the equipment and safety features of the vehicles, including airbags. Dealers sell Class Vehicles to consumers with these labels visible. An image of a Monroney label for the 2012 Silverado is included below as a representative example. In the center of the image, it features a "Five Star" frontal crash rating for drivers. Under "Safety & Security" features, it touts the "dual stage" airbags.



150.    Monroney labels for many of the Class Vehicles are available at: https://monroneylabels.com. Additional exemplars of Monroney labels from some of the Class Vehicles are attached as Exhibit B. On information and belief, the original printed Monroney labels for the Class Vehicles included the same content as pertains to safety and airbags as the exemplar Monroney labels from monroneylabels.com.

151.   As demonstrated by these examples, Monroney labels uniformly assured consumers that the Class Vehicles had working and safe airbags and seatbelts. This information would have suggested to any reasonable consumer that the passenger safety system did not suffer from a defect and would perform its intended function of activating the seatbelts and airbags when needed during a frontal collision.

**2.   GM published owners' manuals for the Class Vehicles that detailed their safety features but did not disclose the SDM Calibration Defect.**

152.   GM (and Old GM before it) published owners' manuals for each of the Class Vehicles, and distributed and made them available throughout the United States. These manuals were directed at consumers and included misleading statements regarding seatbelts, airbags, and passenger safety systems. These statements uniformly omitted any warning to consumers that the SDM could ~~effectively~~ shut off too early during a crash ~~after just 45 milliseconds~~, or that the airbags and seatbelt pretensioners may not deploy when expected.

153.   Representative examples of statements from owners' manuals with materially misleading omissions concerning the effectiveness of their airbags follow in the paragraphs below.

154.   The manual for the 2002 Cadillac Escalade provides extensive detail about the vehicle's airbags, including the below details and images. In addition to explaining the types of airbags and where they are located, the manual specifically alerts consumers that the airbags "are designed to inflate in moderate to severe frontal or near-frontal crashes" where "the impact speed is above the system's designed 'threshold level.'" As to frontal airbags, it explains that they have been "designed to help reduce the risk of injury from the force of an inflating airbag."

## Supplemental Restraint Systems (SRS)

This part explains the frontal and side impact Supplemental Restraint Systems (SRS) or air bag systems.

Your vehicle has four air bags -- a frontal air bag for the driver, another frontal air bag for the right front passenger, a side impact air bag for the driver, and another side impact air bag for the right front passenger.

Frontal air bags are designed to help reduce the risk of injury from the force of an inflating frontal air bag. But these air bags must inflate very quickly to do their job and comply with federal regulations.

### When should an air bag inflate?

The driver's and right front passenger's frontal air bags are designed to inflate in moderate to severe frontal or near-frontal crashes. But they are designed to inflate only if the impact speed is above the system's designed "threshold level."

If your vehicle goes straight into a wall that doesn't move or deform, the threshold level is about 9 to 16 mph (14 to 26 km/h). The threshold level can vary, however, with specific vehicle design, so that it can be somewhat above or below this range.

If your vehicle strikes something that will move or deform, such as a parked car, the threshold level will be higher. The driver's and right front passenger's frontal air bags are not designed to inflate in rollovers, side impacts, or rear impacts, because inflation would not help the occupant.

## How the Air Bag Systems Work

### Where are the air bags?



The driver's frontal air bag is in the middle of the steering wheel.



The right front passenger's frontal air bag is in the instrument panel on the passenger's side.

The driver's side impact air bag is in the side of the driver's seatback closest to the door.

SECOND THIRD AMENDED CLASS ACTION COMPLAINT
4:21-CV-06338-JST

1
2
3
4
5
6
7
8
9
10
11
12



The driver's frontal air bag is in the middle of the steering wheel.



The right front passenger's frontal air bag is in the instrument panel on the passenger's side.

The driver's side impact air bag is in the side of the driver's seatback closest to the door.

13
14

## When Should an Airbag Inflate?

15

16

Frontal airbags are designed to inflate in moderate to severe frontal or near-frontal crashes to help reduce the potential for severe injuries mainly to the driver's or right front passenger's head and chest. However, they are only designed to inflate if the impact exceeds a predetermined deployment threshold. Deployment thresholds are used to predict how severe a crash is likely to be in time for the airbags to inflate and help restrain the occupants.

Whether the frontal airbags will or should deploy is not based on how fast your vehicle is traveling. It depends largely on what you hit, the direction of the impact, and how quickly your vehicle slows down.

17

18

19

20

21

22

23

All of the airbags in the vehicle will have the word AIRBAG embossed in the trim or on an attached label near the deployment opening.

For frontal airbags, the word AIRBAG will appear on the middle part of the steering wheel for the driver and on the instrument panel for the right front passenger. With seat-mounted side impact airbags, the word AIRBAG will appear on the side of the seatback closest to the door.

With roof-rail airbags, the word AIRBAG will appear along the headliner or trim.

Airbags are designed to supplement the protection provided by safety belts. Even though today's airbags are also designed to help reduce the risk of injury from the force of an inflating bag, all airbags must inflate very quickly to do their job.

## Airbag System

The vehicle has the following airbags:

* A frontal airbag for the driver.
* A frontal airbag for the right front passenger.
* A seat-mounted side impact airbag for the driver.
* A seat-mounted side impact airbag for the right front passenger.
* A roof-rail airbag for the driver, passenger seated directly behind the driver, and the third row outboard passenger position.
* A roof-rail airbag for the right front passenger, passenger seated directly behind the right front passenger, and the third row outboard passenger position.

24

25

26

27

28

155.   The manuals for the 2009 Chevy Traverse and 2010 Buick Enclave include similar details and images. Like the manual for the 2002 Cadillac Escalade, they also assure consumers that the vehicle's airbags are "designed to help reduce the risk of injury from the force of an inflating bag" and, thus, that the aggressive deployment problems that plagued first-generation airbags had been alleviated.  It also assures that the frontal airbags have been "designed to inflate

1  in moderate to severe frontal crashes to help reduce the potential for severe injuries….” It

2  continues that airbag “deployment thresholds are used to predict how severe a crash is likely to be

3  in time for the airbags to inflate and help restrain the occupants.” While it provides very specific

4  detail about the way the passenger safety systems should function, the manual notably fails to say

5  that the deployment thresholds are wholly and intentionally ignored ~~just 45 milliseconds~~ early on

6  into a crash sequence, preventing the airbags and seatbelts from functioning when they need to.

7      156.    The manual for the 2014 GMC Acadia provides additional detail about how the

8  passenger safety system functions. It explains that “Airbags are designed to inflate if the impact

9  exceeds the specific airbag system’s deployment thresholds.” Yet again, however, the manual

10  does not indicate that the SDM and its sensors are rendered useless in multi-impact crashes that

11  endure for longer than a specific, ~~45-millisecond time frame~~aggressive cutoff imposed by GM.

## Where Are the Airbags?



The driver frontal airbag is in the center of the steering wheel.



The front outboard passenger frontal airbag is in the passenger side instrument panel.



If the vehicle has a front center airbag, it is in the inboard side of the driver seatback.

### When Should an Airbag Inflate?

This vehicle is equipped with airbags. See *Airbag System on page 3-23*. Airbags are designed to inflate if the impact exceeds the specific airbag system's deployment threshold. Deployment thresholds are used to predict how severe a crash is likely to be in time for the airbags to inflate and help restrain the occupants. The vehicle has electronic sensors that help the airbag system determine the severity of the impact. Deployment thresholds can vary with specific vehicle design.

Frontal airbags are designed to inflate in moderate to severe frontal or near frontal crashes to help reduce the potential for severe injuries, mainly to the driver's or front outboard passenger's head and chest.

Whether the frontal airbags will or should inflate is not based primarily on how fast the vehicle is traveling.

It depends on what is hit, the direction of the impact, and how quickly the vehicle slows down.

Frontal airbags may inflate at different crash speeds depending on whether the vehicle hits an object straight on or at an angle, and whether the object is fixed or moving, rigid or deformable, narrow or wide.

Frontal airbags are not intended to inflate during vehicle rollovers, rear impacts, or many side impacts.

In addition, the vehicle has advanced technology frontal airbags. Advanced technology frontal airbags adjust the restraint according to crash severity.

The front center airbag, if equipped, is designed to inflate in moderate to severe side crashes depending upon the location of the impact, when either side of the vehicle is struck. In addition, the front center airbag is designed to inflate when the sensing system predicts that the vehicle is about to roll over on its

side. The front center airbag is not designed to inflate in frontal impacts, near frontal impacts, or rear impacts.

Seat-mounted side impact airbags are designed to inflate in moderate to severe side crashes depending on the location of the impact.

Seat-mounted side impact airbags are not designed to inflate in frontal impacts, rollovers, or rear impacts.

A seat-mounted side impact airbag is designed to inflate on the side of the vehicle that is struck.

Roof-rail airbags are designed to inflate in moderate to severe side crashes depending on the location of the impact. In addition, these roof-rail airbags are designed to inflate during a rollover or in a severe frontal impact. Roof-rail airbags are not designed to inflate in rear impacts. Both roof-rail airbags will inflate when either side of the vehicle is struck, if the sensing

### 3.    **GM marketed the Class Vehicles to be safe and reliable but failed to mention the SDM Calibration Defect.**

157.    Like its other consumer-facing representations, GM's advertisements for the Class Vehicles left out a crucial part of the story. By uniformly omitting any information about the SDM Calibration Defect, GM misled consumers into believing that their airbags and seatbelts would function properly in a crash, despite its knowledge to the contrary.

158.    A 2013 press release about the 2014 Chevy Silverado 1500, GMC Sierra, and Sierra Denali 1500 is further illustrative of GM's misleading statements about the Class Vehicles. Acknowledging that safety is "as important to truck buyers as it is to car buyers," Gay Kent, GM general director of Vehicle Safety and Crashworthiness, stated that the "Silverado and Sierra set a benchmark for pickup truck safety by offering a full array of advanced features designed to protect occupants before, during and after a collision." The press release noted the vehicle's "[s]ix standard air bags and 360-degree sensor system, including dual-stage frontal air bags, head-curtain side-impact air bags with rollover protect, and front outboard seat-mounted side-impact air bags."

159.    Brochures and press releases for other Class Vehicles use similar language to send a misleading message of safety. Illustrative examples are listed below.

a.    Beginning with the 1999 Chevy Blazer, GM promised to go "to the ends of the earth to bring you driving security," assuring "peace of mind" with its "mainstay features such as Next Generation driver and right-front-passenger airbags."

b.    "Because safety and security are so important to your family," the brochure for the 2002 Chevy Astro reads, "Astro features a comprehensive system to help you feel secure while you're driving." Among other safety features, "[s]tandard driver and front-passenger air bags . . . [are] designed to give you peace of mind. Chevy Astro. It's the midsize van that's serious about safety and security."

c.    The brochure for the 2006 GMC Yukon promises, "should the worst happen, your Yukon will protect you and your passengers with front and rear crush zones, a sturdy steel safety cage, up to four air bags and a host of other important safety features."

1          d.     The brochure for the 2008 Buick Enclave explains that "[s]afety and

2 protection were top priorities in the design of the Enclave" and touts the vehicle's "360°

3 perimeter safety system [that] will deploy the appropriate airbags."

4          e.     Promising "[f]eelings of security and confidence," the brochure for the

5 2009 Chevy Equinox states the vehicle's "dual-stage frontal and head-curtain side-impact air

6 bags" helped earn it "the highest possible government rating for frontal crash tests – five stars."

7          f.     Declaring that "[s]afety never goes out of style," the brochure for the 2009

8 Chevy Traverse highlights the vehicle's "five-star frontal and side-impact crash test ratings" and

9 its "six air bags that help protect all three rows of seating."

10         g.     A press release for the 2009 Cadillac Escalade ESV goes further,

11 proclaiming that the "Escalade is designed to be among the industry's safest and most secure

12 vehicles, with numerous safety systems and crash-avoidance technologies."

13         h.     "Speaking of safety," the brochure for the 2010 Buick Enclave reads,

14 "Enclave has earned an impressive five-star crash rating for both front and side impacts . . . .

15 Five-star rating is for the driver and front passenger seating positions in the frontal crash test and

16 for the front and rear seating positions in the side-impact crash test."

17         i.     The brochure for the 2010 GMC Terrain describes the vehicle as "the state

18 of the art in air bags" and contends that "[s]egment-best safety is anticipated, with features that

19 include . . . six standard air bags: dual frontal airbags; head curtain side air bags and pelvic/thorax

20 seat-mounted side airbags."

21         j.     The brochure for the 2010 Silverado assures that the "head of security

22 never goes off the clock," boasting of a "five-star frontal crash test rating," including through its

23 "driver and right-front passenger dual-stage airbags."

24         k.     A press release for the 2011 Cadillac Escalade Hybrid explains, "[f]ront-

25 image airbags for the driver and passenger have been designed to protect the head during a frontal

26 crash."

27         l.     According to the brochure for the 2011 Cadillac SRX, "[p]assenger safety

28 is a primary consideration throughout the engineering process." If an incident occurs, "the SRX

1    looks out for you and yours," with its "six standard airbags, including advanced, frontal dual-

2    stage and seat mounted side-impact airbags for the driver and front-seat passenger, as well as

3    first- and second- row outboard head-curtain airbags."

4         m.    Describing Buick's "holistic[]" approach to safety, the brochure for the

5    2012 Enclave proclaims, "Enclave's approach to safety helps you and your companions feel safe

6    and secure before, during and after your travels." Inside the vehicle, "all rows have curtain side-

7    impact air bags with rollover protection, along with driver and front-passenger side-impact and

8    dual-stage airbags."

9         n.    In a 2013 press release announcing that NHTSA gave "its highest possible

10   5-star Overall Score" to a number of Chevrolet vehicles, including the Traverse and the

11   Silverado, Kent said "We design safety and crashworthiness into our vehicles very early in

12   development." He continued, "We are committed to offering advanced safety technologies on a

13   broad range of models . . . . All of our vehicles are designed to provide continuous protection for

14   customers before, during and after a crash."

15        o.    A press release for the 2013 Buick Enclave likewise publicized Buick's

16   safety record: "In 2012, every Buick model was named a Top Safety Pick by the Insurance

17   Institute for Highway Safety, underscoring the brand's commitment to safety leadership. The

18   2013 builds on that distinction with the industry's first front center side air bag – a standard

19   feature."

20        p.    "With head curtain side-impact air bags reaching from the front to the third

21   row of seating for outboard passengers," the 2014 brochure for the GMC Yukon XL reads,

22   "Yukon is engineered to help protect passengers regardless of where they're seated."

23        q.    Claiming to "set[] the standard . . . in everything from safety to

24   performance," the brochure for the 2014 Cadillac Escalade touts the vehicle's "eight standard

25   airbags," including "[d]ual-stage driver and front passenger, front-impact, Automatic Occupant

26   Sensing System, driver and front passenger seat-mounted side-impact airbags for thorax and

27   pelvic protection and head-curtain side-impact airbags with rollover protection for all outboard

28   passenger rows."

1          r.      The brochure for the 2014 Buick Enclave promises that the vehicle has

2    "your back, front and sides, proclaiming that "in an industry first, the standard driver's seat side-

3    mounted front center air bag adds another layer of protection by providing cushioning between

4    you and your front passenger to help reduce injuries in side impacts." The brochure includes the

5    below picture, indicating that the airbags will function as expected.



14         160.    Based on information and belief, every single Class Vehicle advertisement omitted

15   any mention that the vehicles' airbags and seatbelts could fail in a serious frontal collision due to

16   the SDM Calibration Defect.

17         **4.      GM provided warranties to repair defects in the Class Vehicles and
            have not done so.**

18         1.      GM also provided Plaintiffs and Class members with an express warranty "to

19   correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the

20   vehicle related to materials or workmanship" in the Class Vehicles.

21         2.      The warranty terms became part of the basis of the bargain when Plaintiffs and

22   Class members purchased or leased their Class Vehicles.

23         1.      3.Plaintiffs and each Class member have had sufficient direct dealings with either

24   Defendants or their agents (including dealerships) to establish privity of contract between

25   Defendants, on the one hand, and Plaintiffs and each Class member, on the other hand, as to the

26   express and implied warranties described in the Claims for Relief below.

27         2.      4.Nonetheless, privity is not required here because Plaintiffs and each Class

28   member are intended third-party beneficiaries of contracts between Defendants and their dealers,

1    and of their implied warranties. The dealers were not intended to be the ultimate consumers of the

2    Class Vehicles and have no rights under the warranty agreements provided with the Class

3    Vehicles; the warranty agreements were designed for and intended to benefit consumers only.

4    Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities

5    due to the safety defect in the SDM Calibration.

6                                                           * * *

7        **3.**    ~~5.~~GM's deceptive actions harmed Plaintiffs and the Class. As a result of GM's

8    unfair, deceptive, and/or fraudulent business practices, and failure to disclose that the Class

9    Vehicles carried a dangerous safety defect that would cause the passenger safety systems to shut

10   off during certain types of accidents, owners and lessees of the Class Vehicles have lost money

11   and/or property.

12   **V.    CLASS ACTION ALLEGATIONS**

13       4.    This case is about GM's legal responsibility for its knowledge, conduct, and

14   products. The proposed Class members' claims all derive directly from a single course of conduct

15   by GM. The objective facts are the same for all Class members. Within each Count asserted by

16   Plaintiffs on behalf of themselves and the proposed Class, the same legal standards govern.

17       5.    Accordingly, Plaintiffs bring this lawsuit as a class action on their own behalf, and

18   on behalf of all other persons similarly situated, as members of the proposed Class pursuant to

19   Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3), and/or (c)(4). This action satisfies

20   the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements

21   of those provisions. Certification of Plaintiffs' claims for class-wide treatment is appropriate

22   because Plaintiffs can prove the elements of the claims on a class-wide basis using the same

23   evidence as would be used in individual actions alleging the same claims.

24       **A.    The Class Definition**

25       6.    The "Class Vehicles" herein include all vehicles in the United States that contain

26   the SDM Calibration Defect that were (1) manufactured, sold, distributed, or leased by

27   Defendants or (2) manufactured, sold, distributed, or leased by Old GM and purchased or leased

28   by Plaintiffs or a Class member after July 10, 2009.

7.    The SDM Calibration Defect exists in all GM trucks and SUVs starting with model year 1999. This would include, for example, trucks and SUVs such as the Silverado, Tahoe, Astro, and Trailblazer. The information presently available to Plaintiffs shows that, after it was introduced in or about 1999, ~~the calibration defect persisted~~ GM continued to implement its defective cutoff strategy in software used in GM SUVs through model year 2018. Discovery will reveal when, if ever, GM discontinued use of the SDM Calibration Defect in its trucks and SUVs. This information is uniquely in the Defendants' hands, as only GM (and Delco, n/k/a Aptiv) possess the software calibration files for GM vehicles that will demonstrate the presence of the defect in the software; these files are not downloadable or otherwise accessible from the vehicles themselves, meaning Plaintiffs are unable to obtain those files on their own.

8.    The proposed Class includes all persons and entities that purchased or leased a Class Vehicle in the state of California.

9.    Excluded from the Class are:

a.    Defendants' officers, directors and employees; Defendants' affiliates and affiliates' officers, directors, and employees; Defendants' distributors and distributors' officers, directors, and employees; and

b.    Judicial officers and their immediate family members and associated court staff assigned to this case.

10.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used in individual actions alleging the same claims.

11.    Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that any Class should be expanded, reduced, divided into additional subclasses under Rule 23(c)(5), or otherwise modified.

**B.    Numerosity: Federal Rule of Civil Procedure 23(a)(1)**

12.    The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. There are millions of Class Vehicles nationwide, a significant number of which are in the state of California. The precise number and

1    identities of the California Class members may be ascertained from Defendants' records and

2    motor vehicle regulatory data. Class members may be notified of the pendency of this action by

3    recognized, Court-approved notice dissemination methods.

4        **C.**    **Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2)**
     **and 23(b)(3)**
5

6        13.    This action involves common questions of law and fact, which predominate over

7    any questions affecting individual Class members. These include, without limitation, the

8    following:

9            a.    Whether the Class Vehicles' SDM software calibration is defective, as

10   described herein;

11           b.    Whether Defendants knew, or should have known, about the SDM

12   Calibration Defect, and, if so, how long they have or should have known about it;

13           c.    Whether Defendants had a duty to disclose the defective nature of the Class

14   Vehicles to Plaintiffs and Class members;

15           d.    Whether Defendants' concealment of the SDM Calibration Defect caused

16   Plaintiffs and Class members to act to their detriment by purchasing or leasing the Class Vehicles;

17           e.    Whether Defendants' certifications concerning vehicle safety were

18   misleading considering the risk that the SDMs will not trigger airbags and seatbelts during certain

19   types of collisions;

20           f.    Whether Defendants' conduct tolls any or all applicable limitations periods

21   by acts of fraudulent concealment, application of the discovery rule, or equitable estoppel;

22           g.    Whether Defendants misrepresented that the Class Vehicles were safe;

23           h.    Whether Defendants concealed the SDM Calibration Defect;

24           i.    Whether Defendants' statements, concealments, and omissions regarding

25   the Class Vehicles were material, in that a reasonable consumer could consider them important in

26   purchasing, leasing, selling, maintaining, or operating such vehicles;

27

28

SECOND THIRD AMENDED CLASS ACTION
COMPLAINT
4:21-CV-06338-JST

1          j.      Whether Defendants engaged in unfair, deceptive, unlawful, and/or

2   fraudulent acts or practices, in trade or commerce, by failing to disclose that the Class Vehicles

3   were designed, manufactured, sold, and leased with defective airbag components;

4          k.      Whether the Class Vehicles were unfit for the ordinary purposes for which

5   they were used, in violation of the implied warranty of merchantability;

6          l.      Whether Defendants' concealment of the true defective nature of the Class

7   Vehicles caused their market price to incorporate a premium reflecting the assumption by

8   consumers that the Class Vehicles were equipped with fully functional passenger safety systems

9   and, if so, the market value of that premium; and

10         m.      Whether Plaintiffs and the other Class members are entitled to damages

11  and other monetary relief and, if so, in what amount.

12  **D.      Typicality: Federal Rule of Civil Procedure 23(a)(3)**

13         14.     Plaintiffs' claims are typical of the claims of Class members whom they seek to

14  represent under Fed. R. Civ. P. 23(a)(3), because Plaintiffs and each Class member purchased or

15  leased a Class Vehicle and were comparably injured through Defendants' wrongful conduct as

16  described above. Plaintiffs and the other Class members suffered damages as a direct proximate

17  result of the same wrongful practices by Defendants. Plaintiffs' claims arise from the same

18  practices and courses of conduct that give rise to the claims of the other Class members.

19  Plaintiffs' claims are based upon the same legal theories as the claims of the other Class

20  members.

21  **E.      Adequacy: Federal Rule of Civil Procedure 23(a)(4)**

22         15.     Plaintiffs will fairly and adequately represent and protect the interests of the Class

23  members as required by Fed. R. Civ. P. 23(a)(4). Plaintiffs' interests do not conflict with the

24  interests of the Class members. Plaintiffs have retained counsel competent and experienced in

25  complex class action litigation, including automobile defect litigation and other consumer

26  protection litigation. Plaintiffs intend to prosecute this action vigorously. Neither Plaintiffs nor

27  their counsel have interests that conflict with the interests of the other Class members. Therefore,

28  the interests of the Class members will be fairly and adequately protected.

1      **F.**     **Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2)**

2      16.     Defendants have acted or refused to act on grounds generally applicable to

3 Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief

4 and declaratory relief, as described below, with respect to the Class as a whole.

5      **G.**     **Superiority: Federal Rule of Civil Procedure 23(b)(3)**

6      17.     A class action is superior to any other available means for the fair and efficient

7 adjudication of this controversy, and no unusual difficulties are likely to be encountered in its

8 management. The damages or other financial detriment suffered by Plaintiffs and the other Class

9 members are relatively small compared to the burden and expense that would be required to

10 individually litigate their claims against Defendants such that it would be impracticable for

11 members of the Class to individually seek redress for Defendants' wrongful conduct.

12      18.     Even if Class members could afford individual litigation, the court system could

13 not. Individualized litigation creates a potential for inconsistent or contradictory judgments and

14 increases the delay and expense to all parties and the court system. By contrast, the class action

15 device presents far fewer management difficulties and provides the benefits of single

16 adjudication, economy of scale, and comprehensive supervision by a single court.

17   **VI.**    **ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED**

18      19.     Defendants have known of the SDM Calibration Defect since at least 2009, when

19 GM learned, through books, records, and personnel, that Old GM had launched the defective

20 calibration strategy despite clear warnings of the risk of doing so, and then continued to use that

21 defective software strategy thereafter. They obtained further knowledge of the risks of the SDM

22 Calibration Defect from lawsuits and multiple suspicious accidents (involving airbag and seatbelt

23 failures in frontal accidents) occurring in practically every year since, which provided additional

24 and confirmatory notice of the continued risks of the SDM Calibration Defect.

25      20.     GM had a duty to disclose the SDM Calibration Defect to consumers and NHTSA.

26 Instead, GM knowingly, affirmatively, and actively concealed the defect from regulators and

27 consumers by continuing to distribute, sell, and/or lease the Class Vehicles to Plaintiffs and the

28

1    Class members; to advertise the safety of the Class Vehicles; and to fail to notify regulators or

2    Plaintiffs and the Class members about the true nature of the Class Vehicles.

3        21.    As of the date of this Complaint, GM still has not disclosed, and continues to

4    conceal, that the Class Vehicles are defective, that the SDM Calibration Defect could prevent the

5    airbags and seatbelts from activating during certain kinds of frontal collisions, and that these

6    Class Vehicles' safety systems may fail them in life-threatening collisions. Despite its knowledge

7    of the SDM Calibration Defect and its attendant safety risks, GM continues to market the Class

8    Vehicles based on superior safety and reliability while omitting the disclosure safety and

9    reliability risks associated with the SDM Calibration Defect.

10        22.    Plaintiffs and members of the proposed Class could not have discovered through

11    the exercise of reasonable diligence that GM was concealing the SDM Calibration Defect in their

12    vehicles and misrepresenting the defective nature of the Class Vehicles.

13        23.    With respect to Class Vehicles that have not experienced airbags or seatbelt

14    failure, Plaintiffs and other Class members did not discover, could not reasonably have

15    discovered, and had no reason to suspect that their Class Vehicles are defective, that GM

16    calibrated the software program that controls the SDM to ~~prevent~~ prematurely cutoff airbag and

17    seatbelt deployment ~~just 45 milliseconds~~ after a crash has begun, that—in affirmatively blocking

18    these critical safety features ~~after 45 milliseconds—GM~~ too early—GM significantly and

19    unnecessarily increased the risk of injury and death in frontal crashes, that the safety of their

20    Class Vehicles is impaired by this defect such that the Class Vehicles' safety system may fail

21    them in potentially deadly collisions, or that, as a result of the foregoing, they overpaid for their

22    vehicles, and/or the value of their vehicles is diminished.

23        24.    With respect to Class Vehicles that have experienced airbag and/or seatbelt failure

24    prior to the filing of this Complaint, Class members did not discover and could not reasonably

25    have discovered that such failure was due to a defect known to GM through a dangerous and

26    defective approach to SDM software calibration.

27        25.    Plaintiffs and other Class members did not discover, and did not know of, facts

28    that would have caused a reasonable person to suspect that GM did not report this material

1    information within their knowledge to consumers, dealerships, or relevant authorities; nor would

2    a reasonable and diligent investigation have disclosed that GM was aware of the defective nature

3    of the SDM software calibration and the Class Vehicles in which it was incorporated.

4         26.    Due to the highly technical nature of the SDM Calibration Defect, Plaintiffs and

5    Class members were unable to independently discover it using reasonable diligence. Absent

6    counsel and third-party consultants with relevant expertise, Plaintiffs and Class members lack the

7    necessary expertise to analyze the software algorithm for the SDMs, or vehicle safety system

8    performance in and an accident, and to understand its defective nature. GM has not issued a recall

9    or issued other similar public statements about the SDM Calibration Defect, and Plaintiffs first

10   learned of the defective nature of the SDM software calibration in their vehicles, and of GM's

11   scheme to design and sell vehicles with defective SDM software calibrations, only in connection

12   with retaining counsel and filing this lawsuit in 2021 (for Plaintiff Vargas and Milstead). Plaintiff

13   Ray learned of the SDM Calibration Defect in connection with retention of counsel in late 2020,

14   and was also aware of the pendency of this putative class action before filing his claims in this

15   pleading.

16        27.    For the foregoing reasons, GM is estopped from relying on any statutes of

17   limitation or repose as a defense in this action. All applicable statutes of limitation and repose

18   have been tolled by operation of the discovery rule and by GM's fraudulent concealment with

19   respect to all claims against GM.

20   **VII.    <u>CAUSES OF ACTION</u>**

21                              **COUNT I:**
                        **FRAUD BY CONCEALMENT**
22                          **(Common Law)**

23        28.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set

24   forth herein.

25        29.    Plaintiffs bring this claim against all Defendants on behalf of themselves and the

26   California State Class under the common law of fraudulent concealment.

27

28

30.     Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

31.     Defendants intentionally and knowingly concealed and suppressed material facts from regulators and consumers regarding the SDM Calibration Defect that causes the airbags and seatbelts to fail in prolonged onset, complex, or otherwise multi-impact accidents, causing a serious risk of injury or death.

32.     A reasonable consumer would not have expected that the Class Vehicles contained a software program that was calibrated to prevent seatbelt tightening and airbag deployment during certain types of frontal crashes that are otherwise severe enough to require them. Defendants knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

33.     Defendants ensured that Plaintiffs and the Class did not discover this information by actively concealing and misrepresenting the true nature of the Class Vehicles' safety systems. Defendants intended for Plaintiffs and the Class to rely on their omissions—which they did by purchasing and leasing the Class Vehicles at the prices they paid.

34.     Defendants had a duty to disclose the SDM Calibration Defect because:

a.     GM had exclusive and/or far superior knowledge and access to the facts about this hidden and complex safety defect. Defendants also knew that these technical facts were not known to or reasonably discoverable by Plaintiffs and the Class; GM knew the SDM Calibration Defect (and its safety risks) was a material fact that would affect Plaintiffs' or Class members' decisions to buy or lease Class Vehicles; GM is subject to statutory duties to disclose known safety defects to consumers and to NHTSA; GM's actions to avoid investigations and a recall due to the defect deprived consumers of an opportunity in which they could have learned about it; and GM made incomplete representations about the safety and reliability of the Class Vehicles and their passenger safety systems, while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle,

- 71 -

1    Defendants intentionally concealed, suppressed, and failed to disclose to Plaintiffs and the Class

2    that the Class Vehicles contained the dangerous SDM Calibration Defect. Because they

3    volunteered to provide information about the Class Vehicles that they offered for sale to Plaintiffs

4    and the Class, Defendants had the duty to disclose the whole truth. They did not.

5        35.    To this day, Defendants have not made full and adequate disclosure and continue

6    to conceal material information regarding the SDM Calibration Defect. The omitted and

7    concealed facts were material because a reasonable person would find them important in

8    purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact

9    the value of the Class Vehicles purchased or leased by Plaintiffs and the Class.

10        36.    Defendants actively concealed or suppressed these material facts, in whole or in

11   part, to maintain a market for their vehicles, to protect profits, and to avoid costly recalls that

12   would hurt the GM brand's image. They did so at the expense of Plaintiffs and the Class. Had

13   they been aware of the SDM Calibration Defect in the Class Vehicles, and Defendants' callous

14   disregard for safety, Plaintiffs and the Class either would not have paid as much as they did for

15   their Class Vehicles, or they would not have purchased or leased them.

16        37.    Accordingly, Defendants are liable to Plaintiffs and the Class for their damages in

17   an amount to be proven at trial, including, but not limited to, their lost overpayment for the Class

18   Vehicles at the time of purchase or lease.

19        38.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to

20   defraud; in reckless disregard of Plaintiffs' and the Class' rights and well-being; and to enrich

21   themselves. Their misconduct warrants an assessment of punitive damages in an amount

22   sufficient to deter such conduct in the future, which amount shall be determined according to

23   proof at trial.

**COUNT II:**
**UNJUST ENRICHMENT**
**(Common Law)**

26        39.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set

27   forth herein.

28

1      40.    Plaintiffs Richard Vargas and Arthur Ray assert this Unjust Enrichment count on

2   behalf of themselves and the California State Class.

3      41.    By reason of their conduct, Defendants caused damages to Plaintiffs and Class

4   members. Plaintiffs and Class members conferred a benefit on the Defendants by overpaying for

5   Class Vehicles at prices that were artificially inflated by Defendants' concealment of the SDM

6   Calibration Defect and misrepresentations regarding the Class Vehicles' safety.

7      42.    As a result of Defendants' fraud and deception, Plaintiffs and Class members were

8   not aware of the true facts concerning the Class Vehicles and did not benefit from the

9   Defendants' misconduct.

10      43.    Defendants knowingly benefitted from their unjust conduct. They sold and leased

11   Class Vehicles equipped with the SDM Calibration Defect for more than what the vehicles were

12   worth, at the expense of Plaintiffs and Class members.

13      44.    Defendants readily accepted and retained these benefits from Plaintiffs and Class

14   members.

15      45.    It is inequitable and unconscionable for Defendants to retain these benefits because

16   they misrepresented that the Class Vehicles were safe, and intentionally concealed, suppressed,

17   and failed to disclose the SDM Calibration Defect to consumers. Plaintiffs and Class members

18   would not have purchased or leased the Class Vehicles or would have paid less for them, had

19   Defendants not concealed the SDM Calibration Defect.

20      46.    Plaintiffs and Class members do not have an adequate remedy at law.

21      47.    Equity cannot in good conscience permit the Defendants to retain the benefits that

22   they derived from Plaintiffs and Class members through unjust and unlawful acts, and therefore

23   restitution or disgorgement of the amount of the Defendants' unjust enrichment is necessary.

24                              **COUNT III:**
25              **Violation of California Consumers Legal Remedies Act**
                       **Cal. Civ. Code § 1750, _et seq._**
26
27      48.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though
     fully set forth herein.
28

1        49.     Plaintiffs bring this claim on behalf of themselves and the California State Class

2  against the Defendants.

3        50.     Plaintiffs and California State Class members are "consumers" within the meaning

4  of Cal. Civ. Code § 1761(d).

5        51.     Defendants, the California Plaintiffs, and California State Class members are

6  "persons" within the meaning of Cal. Civ. Code § 1761(c).

7        52.     The Class Vehicles are "goods" within the meaning of Cal. Civ. Code § 1761(a).

8        53.     The California Legal Remedies Act ("CLRA") prohibits "unfair methods of

9  competition and unfair or deceptive acts or practices undertaken by any person in a transaction

10  intended to result or that results in the sale or lease of goods or services to any consumer[.]" Cal.

11  Civ. Code § 1770.

12        54.     Defendants engaged in unfair or deceptive acts or practices when, in the course of

13  their business they, among other acts and practices, intentionally and knowingly made materially

14  false representations regarding the reliability, safety, and performance of the Class Vehicles

15  and/or the defective SDM software calibration, as detailed above.

16        55.     Specifically, by misrepresenting the Class Vehicles as safe and/or free from

17  defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class

18  Vehicles, Defendants engaged in one or more of the following unfair or deceptive business

19  practices as defined in Cal. Civ. Code § 1770(a):

20        a.  Representing that the Class Vehicles have characteristics, uses, benefits, and qualities

21            which they do not have.

22        b.  Representing that the Class Vehicles are of a particular standard, quality, and grade

23            when they are not.

24        c.  Advertising the Class Vehicles and/or with the intent not to sell or lease them as

25            advertised.

26        d.  Representing that the subject of a transaction has been supplied in accordance with a

27            previous representation when it has not.

28     Cal. Civ. Code §§ 1770(a)(5), (7), (9), and (16).

1       56.    Additionally, in the various channels of information through which Defendants

2    sold and marketed Class Vehicles, Defendants failed to disclose material information concerning

3    the Class Vehicles, which they had a duty to disclose. Defendants had a duty to disclose the

4    defect because, as detailed above: (a) Defendants knew about the defect in the SDM software

5    calibration in the Class Vehicles; (b) Defendants had exclusive knowledge of material facts not

6    known to the general public or the other California State Class members; (c) Defendants actively

7    concealed material facts concerning the software calibration from the general public and Plaintiffs

8    and California State Class members; and (d) Defendants made partial representations about the

9    Class Vehicles that were misleading because they did not disclose the full truth.

10       57.    Defendants' unfair or deceptive acts or practices, including their

11    misrepresentations, concealments, omissions, and/or suppressions of material facts, had a

12    tendency or capacity to mislead and create a false impression in consumers, and were likely to

13    and did in fact deceive reasonable consumers, including Plaintiffs and California State Class

14    members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles,

15    and the true value of the Class Vehicles.

16       58.    Plaintiffs and the other California State Class members have suffered injury in fact

17    and actual damages resulting from Defendants' material omissions.

18       59.    Defendants' violations present a continuing risk to Plaintiffs and California State

19    Class members, as well as to the general public, and therefore affect the public interest.

20       60.    Defendants are on notice of the issues raised in this count and this Complaint by

21    way of, among other things, the individual personal injury litigation and hundreds of public

22    consumer complaints detailed above, as well as their own intrinsic knowledge of defect they have

23    included in the Class Vehicles by design. Plaintiffs also sent a notice letter to Defendants in

24    accordance with Cal. Civ. Code § 1782(a) of the CLRA, notifying Defendants of their alleged

25    violations of Cal. Civ. Code § 1770(a) and demanding that Defendants correct or agree to correct

26    the actions described therein within thirty (30) days of the notice letter. Defendants did not

27    correct or agree to correct their actions within thirty days, and Plaintiffs therefore seek

28

1    compensatory and monetary damages to which Plaintiffs and California Class Members are

2    entitled under the CLRA.

3        61.    Attached hereto as Exhibit C is the venue affidavit required by CLRA, Cal. Civ.

4    Code § 1780(d).

5                            **COUNT IV:**
               **Violations of the California Unfair Competition Law**
6                **Cal. Bus. & Prof. Code § 17200, *et seq.***

7        62.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though

8    fully set forth herein.

9        63.    Plaintiffs bring this claim on behalf of themselves and the California State Class

10   against the Defendants.

11       64.    The California Unfair Competition Law ("UCL"), Cal. Bus. and Prof. Code

12   § 17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."

13       65.    Defendants' knowing and intentional conduct described in this Complaint

14   constitutes unlawful, fraudulent, and unfair business acts and practices in violation of the UCL.

15   Specifically, Defendants' conduct is unlawful, fraudulent, and unfair in at least the following

16   ways:

17           a.    by knowingly and intentionally concealing from Plaintiffs and California

18   State Class members that the Class Vehicles suffer from the SDM Calibration Defect while

19   *obtaining money from the California State Class members;*

20           b.    by marketing Class Vehicles as possessing a functional, safe, and defect-

21   free passenger safety system;

22           c.    by purposefully designing and manufacturing the Class Vehicles to contain

23   a defective SDM software calibration that causes airbags and seatbelts to fail in certain accidents

24   contrary to what was disclosed to regulators and represented to consumers who purchased or

25   leased Class Vehicles, and failing to fix the SDM Calibration Defect free of charge; and

26

27

28

1              d.       by violating the other California laws alleged herein, including the False

2      Advertising Law, Consumers Legal Remedies Act, California Commercial Code, and Song-

3      Beverly Consumer Warranty Act.

4              66.      Defendants' misrepresentations, omissions, and concealment were material to the

5      California Plaintiffs and California State Class members, and Defendants misrepresented,

6      concealed, or failed to disclose the truth with the intention that consumers would rely on the

7      misrepresentations, concealment, and omissions.

8              67.      Defendants' material misrepresentations and omissions alleged herein caused

9      Plaintiffs and the California State Class members to make their purchases or leases of their Class

10     Vehicles. Absent those misrepresentations and omissions, Plaintiffs and California State Class

11     members would not have purchased or leased these vehicles or would not have purchased or

12     leased these Class Vehicles at the prices they paid.

13             68.      Accordingly, Plaintiffs and California State Class members have suffered

14     ascertainable loss and actual damages as a direct and proximate result of Defendants'

15     misrepresentations and their concealment of and failure to disclose material information.

16             69.      Defendants' violations present a continuing risk to Plaintiffs and California State

17     Class members, as well as to the general public. Defendants' unlawful acts and practices

18     complained of herein affect the public interest.

19             70.      Plaintiffs request that this Court enter an order enjoining Defendants from

20     continuing their unfair, unlawful, and/or deceptive practices and restoring to members of the

21     California State Class any money Defendants acquired by unfair competition, including

22     restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and

23     Cal. Bus. & Prof. Code § 3345, and for such other relief set forth below.

**COUNT V:**
**Violations of the California False Advertising Law**
**Cal. Bus. & Prof. Code § 17500, *et seq.***

24

25

26             71.      Plaintiffs re-allege and incorporate by reference all preceding allegations as though

27     fully set forth herein.

28

1       72.    Plaintiffs bring this claim on behalf of themselves and the California State Class

2  against the Defendants.

3       73.    The California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500,

4  prohibits false advertising.

5       74.    Defendants, Plaintiffs, and California State Class members are "persons" within

6  the meaning of Cal. Bus. & Prof. Code § 17506.

7       75.    Defendants violated the FAL by causing to be made or disseminated through

8  California and the United States, through advertising, marketing and other publications,

9  statements regarding the safety of the Class Vehicles that were untrue or misleading, and which

10  were known, or which by the exercise of reasonable care should have been known to Defendants,

11  to be untrue and misleading to consumers, including California State Class members. Numerous

12  examples of these statements and advertisements appear in the preceding paragraphs throughout

13  this Complaint and in Exhibit B.

14       76.    The misrepresentations and omissions regarding the reliability and safety of Class

15  Vehicles as set forth in this Complaint were material and had a tendency or capacity to mislead

16  and create a false impression in consumers, and were likely to and did in fact deceive reasonable

17  consumers, including Plaintiffs and California State Class members, about the true safety and

18  reliability of Class Vehicles, the quality of the Defendants' brands, and the true value of the Class

19  Vehicles.

20       77.    In purchasing or leasing their Class Vehicles, the California State Class members

21  relied on the misrepresentations and/or omissions of Defendants with respect to the safety and

22  reliability of the Class Vehicles. Defendants' representations turned out not to be true because the

23  Class Vehicles are distributed with a dangerous safety defect, rendering the vehicles' airbags and

24  seatbelts inoperative in certain types of accidents.

25       78.    Plaintiffs and the other California State Class members have suffered an injury in

26  fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or

27  deceptive practices. Had they known the truth, Plaintiffs and California State Class members

28

1    would not have purchased or leased the Class Vehicles or would have paid significantly less for

2    them.

3          79.    Plaintiffs and California State Class members had no way of discerning that

4    Defendants' representations were false and misleading, or otherwise learning the facts that

5    Defendants had concealed or failed to disclose. Plaintiffs and California State Class members did

6    not, and could not, unravel Defendants' deception on their own.

7          80.    Defendants had an ongoing duty to Plaintiffs and California State Class members

8    to refrain from unfair or deceptive practices under the California False Advertising Law in the

9    course of their business. Specifically, the Defendants owed Plaintiffs and California State Class

10   members a duty to disclose all the material facts concerning the SDM Calibration Defect in the

11   Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the

12   defect from Plaintiffs and California State Class members, and/or they made misrepresentations

13   that were misleading because they were contradicted by withheld facts.

14         81.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the

15   conduct of Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized

16   course of conduct that is still perpetuated and repeated, both in the State of California and

17   nationwide.

18         82.    Defendants' violations present a continuing risk to Plaintiffs and California State

19   Class members, as well as to the general public. Defendants' unlawful acts and practices

20   complained of herein affect the public interest.

21         83.    Plaintiffs request that this Court enter an order enjoining Defendants from

22   continuing their unfair, unlawful, and/or deceptive practices and restoring to the California State

23   Class any money Defendants acquired by unfair competition, including restitution and/or

24   restitutionary disgorgement, and for such other relief set forth below.

25

26

27

28

2730953.6 2820476.3                          - 79 -                    SECOND THIRD AMENDED CLASS ACTION
                                                                                    COMPLAINT
                                                                              4:21-CV-06338-JST

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

~~COUNT VI:~~
~~Breach of Express Warranty~~
~~Cal. Com. Code §§ 2313 and 10210~~

~~57.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.~~

~~58.     Plaintiff Richard Vargas brings this claim on behalf of himself and the California State Class against the Defendants.~~

~~59.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and "sellers" of motor vehicles under § 2103(1)(d).~~

~~60.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Cal. Com. Code § 10103(a)(16).~~

~~61.     All California State Class members who purchased Class Vehicles in California are "buyers" within the meaning of Cal. Com. Code § 2103(1)(a).~~

~~62.     All California State Class members who leased Class Vehicles in the California are "lessees" within the meaning of Cal. Com. Code § 10103(a)(14).~~

~~63.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).~~

~~64.     In connection with the purchase or lease of Class Vehicles, Defendants provided Plaintiffs and California State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.~~

~~65.     Defendants' warranties formed the basis of the bargain that was reached when Plaintiffs and California State Class members unknowingly purchased or leased Class Vehicles that came equipped with the SDM Calibration Defect.~~

~~66.     However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and California State Class members.~~

1     67.    Plaintiff and California State Class members reasonably relied on Defendants'

2  express warranties when purchasing or leasing their Class Vehicles.

3     68.    Defendants knowingly breached their express warranties to repair defects in

4  materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles.

5  Defendants also breached their express warranties by providing a product containing defects that

6  were never disclosed to Plaintiff and California State Class members.

7     69.    On January 27, 2023, Plaintiff Vargas presented his Class Vehicle and requested a

8  repair for the SDM Calibration Defect under the vehicle's warranty at Anderson Chevrolet, an

9  authorized GM dealership in Lake Elsinore, California. In response, dealership personnel

10  informed Mr. Vargas that there were no open recalls for the SDM software in his vehicle, and

11  thus they would not provide a repair for the SDM Calibration Defect. Based on this refusal, Mr.

12  Vargas left the dealership without obtaining a repair for the SDM Calibration Defect under his

13  warranty.

14     70.    Defendants were on reasonable notice of these issues and an opportunity to cure

15  the breaches due to Mr. Vargas' request for a repair at the dealership, as well as their extensive

16  knowledge of the SDM Calibration Defect, as detailed herein. Defendants have not cured the

17  breaches of their warranties despite years of knowledge of those breaches.

18     71.    As a direct and proximate result of Defendants' breach of express warranties,

19  Plaintiff and California State Class members have been damaged in an amount to be proven at

20  trial.

21                          COUNT VII:COUNT VI:
                    **Breach of Implied Warranty of Merchantability**
22                       **Cal. Com. Code §§ 2314 and 10212**

23     84.    72.Plaintiffs re-allege and incorporate by reference all preceding allegations as

24  though fully set forth herein.

25     85.    73.Plaintiffs bring this claim on behalf of themselves and the California State

26  Class against the Defendants.

27

28

1      86.   74.Defendants are and were at all relevant times "merchant[s]" with respect to

2 motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and "sellers" of motor vehicles

3 under § 2103(1)(d).

4      87.   75.With respect to leases, Defendants are and were at all relevant times "lessors"

5 of motor vehicles under Cal. Com. Code § 10103(a)(16).

6      88.   76.All California State Class members who purchased Class Vehicles in California

7 are "buyers" within the meaning of Cal. Com. Code § 2103(1)(a).

8      89.   77.All California State Class members who leased Class Vehicles in the California

9 are "lessees" within the meaning of Cal. Com. Code § 10103(a)(14).

10      90.   78.The Class Vehicles are and were at all relevant times "goods" within the

11 meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

12      91.   79.A warranty that the Class Vehicles were in merchantable condition and fit for

13 the ordinary purpose for which vehicles are used is implied by law pursuant to Cal. Com. Code

14 §§ 2314 and 10212.

15      92.   80.The Class Vehicles did not comply with the implied warranty of

16 merchantability because, at the time of sale and at all times thereafter, they were defective and not

17 in merchantable condition, would not pass without objection in the trade, and were not fit for the

18 ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the

19 SDM Calibration Defect, which may cause the airbags and seatbelt to fail to deploy during an

20 accident, rendering the Class Vehicles inherently defective and dangerous.

21      93.   81.Defendants were on reasonable notice of these issues and an opportunity to cure

22 the breaches due to their extensive knowledge of the SDM Calibration Defect, as detailed herein.

23 Defendants have not cured the breaches of their warranties despite years of knowledge of those

24 breaches.

25      94.   82.As a direct and proximate result of Defendants' breach of the implied warranty

26 of merchantability, Plaintiffs and California State Class members have been damaged in an

27 amount to be proven at trial.

28

1

**COUNT ~~VIII~~VII:**
**Violation of Song-Beverly Consumer Warranty Act,**
**Breach of Implied Warranty**
**Cal Civ. Code § 1790, *et seq*.**

2

3

4          95.    ~~83.~~Plaintiffs re-allege and incorporate by reference all preceding allegations as

5    though fully set forth herein.

6          96.    ~~84.~~Plaintiffs bring this claim on behalf of themselves and the California State

7    Class against the Defendants.

8          97.    ~~85.~~All California State Class members who purchased Class Vehicles in California

9    are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

10          98.    ~~86.~~All California State Class members who leased Class Vehicles in California are

11    "lessors" within the meaning of Cal. Civ. Code § 1791(h).

12          99.    ~~87.~~The Class Vehicles are "consumer goods" within the meaning of Cal. Civ.

13    Code § 1791(a).

14          100.    ~~88.~~Defendants are the "manufacturer[s]" of the Class Vehicles within the meaning

15    of Cal. Civ. Code § 1791(j).

16          101.    ~~89.~~Defendants impliedly warranted to Plaintiffs and the other members of the

17    California State Class that the Class Vehicles were "merchantable" within the meaning of Cal.

18    Civ. Code §§ 1791.1(a) & 1792; however, the Class Vehicles do not have the quality that a buyer

19    would reasonably expect.

20          102.    ~~90.~~The Class Vehicles would not pass without objection in the automotive trade

21    due to the SDM Calibration Defect. Because the Class Vehicles contain defective SDMs, the

22    Class Vehicles are not in merchantable condition and thus not fit for ordinary purposes.

23          103.    ~~91.~~The Class Vehicles are not adequately labeled because the labeling fails to

24    disclose the SDM Calibration Defect. The Class Vehicles do not conform to the promises and

25    affirmations made by the Defendants regarding safety.

26          104.    ~~92.~~The Defendants' breach of the implied warranty of merchantability caused

27    damage to Plaintiff Vargas and California State Class members who purchased or leased the

28    defective Class Vehicles. The amount of damages due will be proven at trial.

1    105. 93.Pursuant to Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiffs and California

2    State Class members seek an order enjoining Defendants' unfair and/or deceptive acts or

3    practices, damages, punitive damages, and any other just and proper relief available under the

4    Song-Berverly Consumer Warranty Act.

5                              COUNT IX:
                   Violation of the Song-Beverly Consumer Protection Act,
6                           Breach of Express Warranty
                            Cal Civ. Code § 1790, et seq.
7

8        94.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though

9    fully set forth herein.

10       95.    Plaintiff Vargas brings this claim on behalf of himself and the California State

11   Class against the Defendants.

12       96.    All California State Class members who purchased Class Vehicles in California

13   are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

14       97.    All California State Class members who leased Class Vehicles in California are

15   "lessors" within the meaning of Cal. Civ. Code § 1791(h).

16       98.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code

17   § 1791(a).

18       99.    Defendants are "manufacturer[s]" of the Class Vehicles within the meaning of

19   California Civil Code § 1791(j).

20       100.   Defendants are and were at all relevant times "sellers" of motor vehicles under

21   Cal. Civ. Code § 1791(l).

22       101.   With respect to leases, Defendants are and were at all relevant times "lessors" of

23   motor vehicles under Cal. Civ. Code § 1791(i).

24       102.   Defendants made express warranties to members of the California State Class

25   within the meaning of California Civil Code §§ 1791.2 and 1793.2.

26       103.   In connection with the purchase or lease of Class Vehicles, Defendants provided

27   Plaintiff and California State Class members with written express warranties covering the repair

28   or replacement of components that are defective in materials or workmanship.

1    104.    Defendants' warranties formed the basis of the bargain that was reached when

2    Plaintiff and California State Class members unknowingly purchased or leased their Class

3    Vehicles equipped with the SDM Calibration Defect.

4    105.    However, Defendants knew or should have known that their warranties were false

5    and misleading. Specifically, Defendants were aware of the SDM Calibration Defect in the Class

6    Vehicles which made the vehicles inherently defective and dangerous at the time that they were

7    sold and leased to Plaintiff and California State Class members.

8    106.    Plaintiff and California State Class members reasonably relied on Defendants'

9    express warranties when purchasing or leasing the California Class Vehicles.

10    107.    Defendants knowingly breached their express warranties to repair defects in

11    materials and workmanship by failing to repair the SDM Calibration Defect in the Class Vehicles.

12    Defendants also breached their express warranties by providing a product containing defects that

13    were never disclosed to Plaintiff and California State Class members.

14    108.    Defendants were on reasonable notice of these issues and an opportunity to cure

15    the breaches due to their extensive knowledge of the SDM Defect, as detailed herein. Defendants

16    have not cured the breaches of their warranties despite years of knowledge of those breaches, as

17    detailed herein.

18    109.    As a result of Defendants' breach of their express warranties, members of the

19    California State Class received goods whose defect substantially impairs their value to Plaintiffs

20    and the other members of the California State Class. Plaintiffs and members of the California

21    State Class have been damaged as a result of, inter alia, the diminished value of Defendants'

22    products.

23    110.    Pursuant to California Civil Code §§ 1793.2 & 1794, Plaintiffs and members of

24    the California State Class are entitled to damages and other legal and equitable relief including, at

25    their election, the purchase price of their Class Vehicles, or the overpayment or diminution in

26    value of their Class Vehicles.

27    111.    Pursuant to California Civil Code § 1794, the Class is entitled to costs and

28    attorneys' fees.

## VIII.   PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and all others similarly situated, request for the Court to enter judgment against the Defendants, as follows:

a.   An order certifying the proposed Class, designating Plaintiffs as the named representatives of the Class, designating the undersigned as Class Counsel, and making such further orders for the protection of Class members as the Court deems appropriate, under Fed. R. Civ. P. 23;

b.   An order enjoining the Defendants to desist from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles and such other injunctive relief that the Court deems just and proper;

c.   An award to Plaintiffs and Class Members of compensatory, exemplary, and punitive remedies and damages and statutory penalties, including interest, in an amount to be proven at trial;

d.   A declaration that Defendants are financially responsible for all Class notice and the administration of Class relief;

e.   Costs, restitution, and compensatory damages for economic loss and out-of-pocket costs, multiple damages under applicable states' laws; punitive and exemplary damages under applicable law; and disgorgement, in an amount to be determined at trial;

f.   Any applicable statutory and civil penalties;

g.   An award of costs and attorneys' fees, as allowed by law;

h.   An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded.

i.   Leave to amend this Complaint to conform to the evidence produced at trial; and

j.   Such other or further relief as the Court may deem appropriate, just, and equitable under the circumstances.

1    IX.    **DEMAND FOR JURY TRIAL**

2            Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any

3    and all issues in this action triable by a jury.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: ~~January~~ July 27, 2023

Respectfully Submitted,

By: */s/ David S. Stellings*
    David S. Stellings (*pro hac vice*)
    Katherine I. McBride (*pro hac vice*)
    Jessica A. Moldovan (*pro hac vice*)
    **LIEFF CABRASER HEIMANN**
    **& BERNSTEIN, LLP**
    250 Hudson Street, 8th Floor
    New York, NY 10013
    Telephone: 212.355.9500
    Facsimile: 212.355.9592
    dstellings@lchb.com
    kmcbride@lchb.com
    jmoldovan@lchb.com

    Richard Heimann (CA Bar # 063607)
    Nimish R. Desai  (CA Bar # 244953)
    **LIEFF CABRASER HEIMANN**
    **& BERNSTEIN, LLP**
    275 Battery St., 29th Fl.
    San Francisco, CA 94111-3339
    Telephone: 415-956-1000
    Facsimile: 415-956-1008
    rheimann@lchb.com
    ndesai@lchb.com

    Roland Tellis (CA Bar #186269)
    David Fernandes (CA Bar #280944)
    Adam Tamburelli (CA Bar #301902)
    **BARON & BUDD, P.C.**
    15910 Ventura Boulevard, Suite 1600
    Encino, California 91436
    Telephone: (818) 839-2333
    Facsimile: (818)-986-9698
    rtellis@baronbudd.com
    dfernandes@baronbudd.com
    atamburelli@baronbudd.com

    Christopher A. Seeger (*pro hac vice*)
    Christopher L. Ayers (*pro hac vice*)
    **SEEGER WEISS LLP**
    55 Challenger Road, 6th Floor
    Ridgefield Park, NJ 07660
    Telephone: (973) 639-9100
    Facsimile: (973) 639-9393
    cseeger@seegerweiss.com
    cayers@seegerweiss.com

- 88 -

~~SECOND~~ THIRD AMENDED CLASS ACTION
COMPLAINT
4:21-CV-06338-JST

Shauna Itri (*pro hac vice*)
**SEEGER WEISS LLP**
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Telephone: (215) 564-2300
Facsimile: (215) 851-8029
sitri@seegerweiss.com

W. Daniel "Dee" Miles, III (*pro hac vice*)
H. Clay Barnett, III (*pro hac vice*)
J. Mitch Williams (*pro hac vice*)
Rebecca D. Gilliland (*pro hac vice*)
Dylan T. Martin (*pro hac vice*)
**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343
Dee.Miles@beasleyallen.com
Clay.Barnett@beasleyallen.com
Mitch.Williams@beasleyallen.com
Rebecca.Gilliland@beasleyallen.com
Dylan.Martin@beasleyallen.com

David M. Birka-White  (CA Bar # 85721)
**BIRKA-WHITE LAW OFFICES**
178 E. Prospect Avenue
Danville, CA 94526
Telephone: (925) 362-9999
dbw@birka-white.com

James E. Cecchi (*pro hac vice*)
Caroline F. Bartlett (*pro hac vice*)
**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Facsimile:  (973) 994-1744
jcecchi@carellabyrne.com
cbartlett@carellabyrne.com

Joseph H. Meltzer (*pro hac vice*)
Melissa L. ~~Troutner~~ Yeates (*pro hac vice*)
**KESSLER TOPAZ
MELTZER & CHECK, LLP**

- 89 -

~~SECOND~~ THIRD AMENDED CLASS ACTION
COMPLAINT
4:21-CV-06338-JST

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
jmeltzer@ktmc.com
~~mtroutner@ktmc.com~~

myeates@ktmc.com

Charles E. Schaffer (*pro hac vice*)
David C. Magagna Jr. (*pro hac vice*)
**LEVIN, SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
cschaffer@lfsblaw.com
dmagagna@lfsblaw.com

E. Powell Miller (*pro hac vice forthcoming*)
**THE MILLER LAW FIRM, P.C.**
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com

Jason P. Sultzer, Esq. (*pro hac vice*)
**THE SULTZER LAW GROUP P.C.**
270 Madison Avenue, Suite 1800
New York, NY 10016
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| James Milstead, et al., | |
| Plaintiffs, | |
| v. | Case No. 4:21-cv-06338-JST |
| GENERAL MOTORS LLC, et al., | |
| Defendants. | |

**EXHIBIT C TO AFFIDAVIT OF DAVID J. NICHOLS**

| Request No. | Subpoena Request | Estimated Number of Hours Required to Search | Comments |
|---|---|---|---|
| 1. | Documents sufficient to describe the frontal sensing system hardware applicable to the Subject vehicles including but not limited to the (a) SDM, (b) EFS, and (c) ADS. | 24 | There are approximately twenty-four (24) sensing modules included within this request. |
| 2. | Documents describing or explaining the frontal sensing system requirements in the Subject Vehicles. | 16 | |
| 3. | PDD (product definition documentation) applicable to the frontal sensing system in the Subject Vehicles. | 16 | |
| 4. | SDD (software definition documents) applicable to the software in the Subject Vehicles. | 8 | |
| 5. | ADD (algorithm definition documents) applicable to the frontal sensing algorithm in the Subject Vehicles. | 2 | |
| 6. | Calibration/parameter files for the frontal sensing system in the Subject Vehicles. | 114 | There are multiple calibrations for each vehicle model and searching for each calibration will require approximately 1.5 hours to search. |

EXHIBIT
1 - C

| 7. | Sensing algorithm simulation plots for the Subject Vehicles. | **40** | |
| 8. | The production-released configuration workbooks or the frontal sensing system performance summaries applicable to the frontal sensing system calibrations for the Subject Vehicles. | **0** | |
| 9. | End of line test procedures for the following frontal sensing system components in the Subject Vehicles: (a) SDM, (b) EFS, and (c) ADS. | **24** | It will require 1 hour to review records for each sensing module. |
| 10. | Failure Mode Effects Analysis (FMEA) documentation for the following frontal sensing system components in the Subject Vehicles: (a) SDM, (b) EFS, and (c) ADS. | **36** | It will require approximately 1.5 hours to search for each sensing module included in this request. |
| 11. | Pre-Production Approval Process (PPAP) documentation for the following frontal sensing system components in the Subject Vehicles: (a) SDM, (b) EFS, and (c) ADS. | **24** | It will require approximately 1 hour to search for each sensing module included in this request. |
| 12. | Peer and/or Design Solutions Peer Review documentation regarding the SDM hardware, SDM software, and the frontal sensing algorithm for the Subject Vehicles. | **24** | |
| 13. | Frontal Algorithm Design Review documentation presented to GM for the SDMs in the Subject Vehicles. | **0** | |
| 14. | Any Delco Electronics frontal sensing algorithm and frontal calibration best practices in existence at the time of the development of the SDM frontal sensing algorithms and frontal calibrations for the Subject Vehicles. | **42** | |
| 15. | All documents and communications with Chris Caruso related to the frontal sensing algorithm including deployment thresholds, cut-offs, or timers in the Subject Vehicles. | **40** | It will require approximately sixteen (16) hours to perform an electronic file search and twenty-four (24) hours to perform a paper file search to find |

| | | | documents responsive to this request. |
|---|---|---|---|
| 16. | All documents and communications with Chris Caruso related to the frontal sensing algorithm including deployment thresholds, cut-offs, or timers in any GM vehicles other than the Subject Vehicles. | **76** | It will require approximately twenty (20) hours to perform an electronic file search and fifty-six (56) hours to perform a paper file search to find documents responsive to this request. |
| 17. | All documents and communications with Chris Caruso related to the frontal sensing algorithm including deployment thresholds, cut-offs, or timers in any vehicles manufactured by an OEM other than GM. | **0** | Documents responsive to this request are included in request no. 16. |
| 18. | All documents and communications with Chris Caruso related to the design of deployment thresholds, cut-offs, or timers to account for concatenated events. | **16** | It will take require approximately eight (8) hours to perform an electronic file search and eight (8) hours to perform a paper file search to find documents responsive to this request. |
| 19. | All documents and communications relating to the allegations in Plaintiffs' Complaint that "Old GM overrode serious concerns from a team from Delco Electronics (later called Delphi Electronics, now known as Aptiv), including engineering manager, Chris Caruso" regarding the Subject Vehicles, including but not limited to allegations that "Mr. Caruso and a team of software engineers from Delco. . . expressly warned Old GM in or about 1999 that using its strategy to prematurely cut off the potential for airbag and seatbelt deployment during a crash event was a | **8** | |

| | reckless and dangerous design decision." | | |
|---|---|---|---|
| 20. | All documents and communications relating to the allegations in Plaintiffs' Complaint that "a separate team in charge of the design and development for GM cars rejected GM Trucks' approach [to SDM calibrations] after hearing (and heeding) the Delco team's concerns about the earlier [SDM calibration] cut off." | **0** | Documents responsive to this request are included in request no. 19. |
| 21. | All documents and communications relating to or describing the event progression timer ("EP-1 timer") utilized in the Subject Vehicles and the rationale for selecting a given EP-1 timer value for those vehicles. | **16** | It will require approximately eight (8) hours to perform an electronic file search and eight (8) hours to perform a paper file search to find documents responsive to this request. |
| 22. | All documents and communications relating to any concerns or warnings expressed by You to Old GM or GM regarding the SDM frontal calibrations in the Subject Vehicles. | **0** | Documents responsive to this request are included in request no. 19. |
| 23. | All documents and communications exchanged between You or Your attorneys and Plaintiffs or Plaintiffs' Counsel, including any tolling agreements, regarding the Litigation. | **0** | This search has already been completed. |
| | **TOTAL:   526** | | |