UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAMES MILSTEAD, et al.,

    Plaintiffs,

v.

GENERAL MOTORS LLC, et al.,

    Defendants.

Case No. 21-cv-06338-JST   (TSH)

**DISCOVERY ORDER**

Re: Dkt. No. 270

In this lawsuit Plaintiffs allege that every truck and SUV GM sold starting in model year 1999 is defective. Third Amended Complaint ("TAC"), ECF No. 197, ¶ 167. They are defective, Plaintiffs say, because of the software that governs their airbag control unit. This unit, also known as the Sending and Diagnostic Module ("SDM"), is a small computer connected to sensors placed throughout the vehicle. These sensors monitor vehicle performance and tell the SDM when they detect irregular behavior. *Id*. ¶ 2. According to Plaintiffs, based on the signals it receives from these sensors, the SDM *should* fire the airbags and tighten seatbelts when needed in a real-world crash of sufficient severity. But in the Class Vehicles, the software program that controls the SDM is calibrated in such a way that it prematurely prevents airbag and seatbelt deployment, long before any reasonable or acceptable time to do so. This has serious repercussions in foreseeable, real-world accidents that need seatbelt and airbag deployment after the software cuts off access to those features—such as accidents that involve multiple impacts, or that start with a soft initial onset and then increase in severity over time. In such accidents, the airbags and seatbelts in the Class Vehicles can fail. Put simply, because of a persistent, dangerous insistence within the company's Trucks Group, GM used a software calibration that can and does prematurely close the time window to engage airbags and seatbelts in a crash, putting occupants of the Class Vehicles at

serious risk. *Id*. ¶ 3. Or, at least, that's what Plaintiffs allege.

Our subpoena recipient Aptiv (previously known as Delco Electronics and then Delphi Electronics, *id*. ¶ 4), is not a stranger to this case. Aptiv is one of the suppliers that supplied the algorithm and set the calibration for the SDM. Edmunds Decl., ECF No. 273, ¶ 7. As a result, much of the information GM needs to defend itself in this case is in Aptiv's hands. *Id*. ¶¶ 8-10. You would probably have guessed as much from reading the TAC, which goes on and on about Aptiv's role, including the role of Chris Caruso, a long-time employee of one of Aptiv's predecessors. TAC ¶¶ 58-66, 91-114.

In its motion for a protective order, Aptiv does not dispute the relevance of any of GM's 23 requests for production. Rather, it argues that it will take Aptiv 526 hours to search for and collect the requested information. Nichols Decl., ECF No. 270-1, ¶ 10. Aptiv includes a chart breaking down the hours estimate by RFP. Nichols Decl., Ex. C. For its part, GM does not dispute the hours estimate.

In terms of the Rule 26 factors, the subpoena is broad because the case is broad, and so the requested discovery is proportional to the needs of the case. Responding to the subpoena requires some burden, but it is not unduly burdensome given the relevance of the requested materials. Also, according to Wikipedia, in 2024 Aptiv had $19 billion in revenue and 141,000 employees, and a few hundred hours in document collection is not unduly burdensome for a company of that size. Aptiv says that if one person worked on the subpoena for eight hours per week, it would take 59 work weeks to collect and produce the requested documents, Nichols Decl., ¶ 11, but Aptiv does not explain why only one person in this enormous company should work on responding to this subpoena, or why that person should spend only eight hours a week doing so.

Aptiv also argues that "GM's requests are further improper because they are likely to cause Aptiv to waive objections and fail to produce discoverable documents." The Court does not understand the waiver argument, as Aptiv's deadline to object to the subpoena was a long time ago. *See* Fed. R. Civ. Proc. 45(d)(2)(B). As for Aptiv's inability to produce documents by the deadline set for compliance (January 31, 2025), that deadline has passed already. The Court does not set a production deadline in this order. Rather, the Court orders GM and Aptiv to meet and

confer about the timing of document production. If GM concludes that Aptiv is producing documents too slowly, then GM and Aptiv should file a joint discovery letter brief raising that issue with the Court.

Accordingly, Aptiv's motion for a protective order is **DENIED**, and the Court **ORDERS** it to comply with GM's subpoena as narrowed during meet and confer.[1]

**IT IS SO ORDERED.**

Dated: May 22, 2025

THOMAS S. HIXSON
United States Magistrate Judge

---

[1] GM says that it "narrowed the subpoena through a meet and confer process." ECF No. 272 at 13. *See also* Weiner Decl., ECF No. 274, ¶ 11.

3